KIRKLAND & ELLIS LLP
Matthew T. Regan, P.C. (*pro hac vice*)
mregan@kirkland.com
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

*Liaison Counsel for Defendants*

(additional counsel listed below)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: ZF-TRW Airbag Control Units Products Liability Litigation<br><br>ALL CASES | Case No.: 2:19-ml-02905-JAK-FFM<br><br>MDL No. 2905<br><br>Judge: John A. Kronstadt<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:   January 11, 2021<br>Time:   8:30 a.m.<br>Dept.:   Courtroom 10B |

**DEFS.' JOINT MOTION TO DISMISS**

### NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
### CONSOLIDATED CLASS ACTION COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 11, 2021, or as soon as this Motion may be heard by the Honorable John A. Kronstadt in Courtroom 10B, 350 W. First Street, Los Angeles, California, Defendants will, and hereby do, move the Court to dismiss Plaintiffs' Consolidated Class Action Complaint. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the arguments of counsel. This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 20, 2020.

DATED: July 27, 2020

Respectfully submitted,

/s/ Matthew T. Regan, P.C.

KIRKLAND & ELLIS LLP
Matthew T. Regan, P.C. (*pro hac vice*)
mregan@kirkland.com
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

*Liaison Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................2

LEGAL STANDARD...........................................................................................3

ARGUMENT .....................................................................................................4

I.    The Court Should Dismiss Plaintiffs' RICO Claims.................................4

        A.    Plaintiffs Fail To Plead A RICO Enterprise....................................4

        B.    Plaintiffs Fail To Plead Predicate Acts Of Racketeering Activity...............10

                1.    Statements To Government Regulators Are Nonactionable..............11

                2.    Plaintiffs' Predicate Acts Premised On Labeling Or Advertising Fail Because They Are Insufficiently Pleaded. ..................................14

                3.    Plaintiffs' Predicate Acts Premised On ZF's And STMicro's Communications With Each Other And The OEMs Also Fail. .........16

        C.    Plaintiffs Fail To Plead A Cognizable RICO Injury. ....................18

        D.    Plaintiffs Fail To Plead Proximate Causation. ...............................20

        E.    Plaintiffs Fail To Plead A RICO Conspiracy Claim. ....................23

II.    The Court Should Dismiss All Of Plaintiffs' Fraud-Based Claims. ......................24

        A.    Plaintiffs Have Failed To Plead Fraud With Particularity. ...........................24

        B.    The Economic Loss Rule Bars Several Plaintiffs' Claims. .........................26

        C.    Plaintiffs Cannot Allege Personal Jurisdiction Over The Claims Of Absent Nationwide Class Members. ..................................28

        **D.**    Plaintiffs' "Nationwide" Common Law Fraud And Unjust Enrichment Claims Fail For Additional Reasons. ..................................29

III.    The Court Should Dismiss Plaintiffs' Warranty Claims. ..................................31

        A.    Plaintiffs Fail To Allege A Breach Of An Implied Warranty Because Their Vehicles Are Merchantable. ..................................31

i

B.     Plaintiffs' Implied Warranty Claims Fail For Lack Of Privity. ................... 34

C.     Plaintiffs' Warranty Claims Fail For Failure To Provide Pre-Suit Notification. ................................................................................. 35

IV.    Many Of Plaintiffs' Claims Are Untimely. ............................................ 36

A.     Plaintiffs' Warranty-Based Claims Accrue Upon Delivery ........................ 37

B.     Plaintiffs' Common-Law Fraud Claims Are Untimely. ............................. 39

C.     Many of Plaintiffs' Consumer Protection Claims, Which Also Accrue Upon Delivery or Discovery, Are Untimely. ................................................. 40

D.     Plaintiffs' California False Advertising Law Claim Is Similarly Untimely. .................................................................................. 42

V.     The Court Should Dismiss Several Of Plaintiffs' State Law Claims For Failure To Allege Manifestation Of The Purported Defect. .................................. 42

VI.    The Court Should Dismiss Plaintiffs' Equitable Claims Because Duplicative Legal Remedies Exist. ......................................................................... 44

VII.   The Court Should Dismiss Or Strike All Of The Purported Intervenors' Claims And Many Of Plaintiffs' Claims For Additional Defects. .......................... 46

A.     The Purported Intervenors' Claims Are Improper. .................................. 46

B.     The Court Should Strike Certain Plaintiffs' Class Allegations Pursuant To State Statutory Class-Action Bars. ..................................................... 49

CONCLUSION ................................................................................. 50

**DEFS.' JOINT MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J.'s Auto. Sales, Inc. v. Freet*,
  725 N.E.2d 955 (Ind. Ct. App. 2000) .......................................................... 40

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ...................................................................................... 13

*American Suzuki Motor Corp. v. Super. Ct. of L.A. Cty.*,
  37 Cal. App. 4th 1291 (1995) ...................................................................... 33

*Angus v. Shiley*,
  989 F.2d 142 (3d Cir. 1993) ......................................................................... 33

*Anunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ....................................................... 35

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ......................................................................... 20, 21, 22

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) .............................................................. 50

*Auto. Sales, Inc. v. Freet*,
  725 N.E.2d 955 (Ind. Ct. App. 2000) .......................................................... 40

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
  2009 WL 8727693 (C.D. Cal. Feb. 17, 2009) ......................................... 13, 14

*Ayers v. Gen. Motors Corp.*,
  234 F.3d 514 (11th Cir. 2000) ...................................................................... 13

*Bailey v. Interbay Funding, Inc.*,
  2018 WL 1660553 (D. Conn. April 4, 2018) ............................................... 40

*Bailey v. LeBeau*,
  339 S.E.2d 460 (N.C. Ct. App. 1986),
  *aff'd*, 348 S.E.2d 524 (N.C. 1986) .............................................................. 43

*Bearden v. Honeywell Int'l Inc.*,
  2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) .......................................... 50

iii

*Beck v. Prupis*,
   529 U.S. 494 (2000)...........................................................................23

*Bell v. Fed. Nat'l Mortg. Ass'n*,
   2017 WL 4293225 (E.D. Tenn. Sept. 27, 2017)..........................................41

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..................................................31, 33

*Bogdan v. Zimmer, Inc.*,
   165 F. App'x 883 (2d Cir. 2006) ................................................40

*Brand v. Hyundai Motor Am.*,
   226 Cal. App. 4th 1538 (2014) .................................................31

*Breakstone v. Caterpillar, Inc.*,
   2010 WL 2164440 (S.D. Fla. May 6, 2010) ....................................33

*Bridge v. Phoenix Bond & Indem. Co*,
   553 U.S. 639 (2008)............................................................23

*Briehl v. Gen. Motors Corp.*,
   172 F.3d 623 (8th Cir. 1999) ..............................................33, 34

*Brisson v. Ford Motor Co.*,
   349 F. App'x 433 (11th Cir. 2009) ..........................................33

*Bristol-Myers Squibb Co. v. Sup. Ct.*,
   137 S. Ct. 1773 (2017).........................................................28

*Buckley v. BMW N. Am.*,
   2019 WL 6465509 (C.D. Cal. Dec. 2, 2019) ..................................25

*Bunn v. Navistar, Inc.*,
   2019 WL 333552 (M.D. Tenn. Jan. 24, 2019),
   *aff'd*, 797 F. App'x 247 (6th Cir. 2020) ....................................27

*Burr v. Sherwin Williams Co.*,
   268 P.2d 1041 (Cal. 1954).....................................................34

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) ....................................27, 32

iv

**DEFS.' JOINT MOTION TO DISMISS**

*Cabrera v. Bayer Healthcare, LLC*,
  2019 WL 1146828 (C.D. Cal. Mar. 6, 2019) ................................................ 28

*Callahan v. A.E.V., Inc.*,
  182 F.3d 237 (3d Cir. 1999) .......................................................................... 21

*Cardenas v. Toyota Motor Corp.*,
  418 F. Supp. 3d 1090 (S.D. Fla. 2019) .................................................. 26, 27

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
  169 Cal. App. 4th 116 (2008) ....................................................................... 38

*Carlson v. Gen. Motors Corp.*,
  883 F.2d 287 (4th Cir. 1989) ........................................................................ 33

*Carpenter v. Petsmart, Inc.*,
  2020 WL 996947 (S.D. Cal. Mar. 2, 2020) ............................................. 28, 29

*Carpenter v. United States*,
  484 U.S. 19 (1987) ........................................................................................ 18

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ........................................................................................ 5

*Chagby v. Target Corp.*,
  2008 WL 5686105 (C.D. Cal. Oct. 27, 2008),
  *aff'd*, 358 F. App'x 805 (9th Cir. 2009) ........................................................ 9

*Chambers v. King Buick GMC, LLC*,
  43 F. Supp. 3d 575 (D. Md. 2014) .......................................................... 27, 43

*Chaset v. Fleer/Skybox Int'l, LP*,
  300 F.3d 1083 (9th Cir. 2002) ................................................................. 19, 20

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998) ....................................................................... 33

*Chrysler Corp. v. Wilson Plumbing Co.*,
  208 S.E.2d 321 (Ga. Ct. App. 1974) ............................................................. 34

**DEFS.' JOINT MOTION TO DISMISS**

*City of La Crosse v. Schubert, Schroeder & Assocs., Inc.*,
    240 N.W.2d 124 (Wis. 1976),
    *overruled on other grounds by Daanen & Janssen, Inc. v. Cedarapids, Inc.*,
    573 N.W.2d 842 (Wis. 1998) ................................................................. 34

*Cleveland v. United States*,
    531 U.S. 12 (2000) ................................................................................. 11

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) ................................... 5, 10, 13, 14

*Compex Int'l Co. v. Taylor*,
    209 S.W.3d 462 (Ky. 2006),
    *as modified on denial of reh'g* (Jan. 25, 2007) ...................................... 34

*Cont'l Oil Co. v. Gen. Am. Transp. Corp.*,
    409 F. Supp. 288 (S.D. Tex. 1976) ......................................................... 38

*Curl v. Volkswagen of Am., Inc.*,
    871 N.E.2d 1141 (Ohio 2007) ........................................................... 34, 35

*Darisse v. Nest Labs, Inc.*,
    2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ......................................... 50

*Davidson v. Apple*,
    2018 WL 2325426 (N.D. Cal. May 8, 2018) ............................................ 49

*Delgado v. Ocwen Loan Servicing*,
    LLC, 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ................................... 49

*Digicorp, Inc. v. Ameritech Corp.*,
    662 N.W.2d 652 (Wis. 2003) .................................................................. 27

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................... 4, 14, 15, 16

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ................................................................. 10

*Eisen v. Porsche Cars N. Am., Inc.*,
    2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ....................................... 24, 26

**DEFS.' JOINT MOTION TO DISMISS**

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) .......................................................... 25

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) ...................................................................... 16

*Ellis v. J.P. Morgan Chase & Co.*,
   2015 WL 78190 (N.D. Cal. Jan. 6, 2015),
   *aff'd*, 752 F. App'x 380 (9th Cir. 2018) ..................................................... 5, 7

*Fejzulai v. Sam's W., Inc.*,
   205 F. Supp. 3d 723 (D.S.C. 2016) ......................................................... 49, 50

*Ferrari v. Mercedes-Benz USA, LLC*,
   2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) ................................................ 9

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018) ....................................................................... 21

*Flory v. Silvercrest Indus.*,
   633 P.2d 383 (Ariz. 1981) ........................................................................... 34

*Flynn v. CTB, Inc.*,
   2015 WL 5692299 (E.D. Mo. Sept. 28, 2015) ............................................. 27

*Fonseca v. Goya Foods, Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ............................................... 45

*Ford Motor Co. v. Fairley*,
   398 So. 2d 216 (Miss. 1981) ........................................................................ 32

*Ford Motor Co. v. Rice*,
   726 So. 2d 626 (Ala. 1998) .......................................................................... 43

*Frank v. DaimlerChrysler Corp.*,
   741 N.Y.S.2d 9 (Sup. Ct. 2002) .............................................................. 34, 43

*Gardner v. Starkist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ........................................................ 5, 7

*Gelboim v. Bank of Am. Corp.*,
   574 U.S. 405 (2015) ..................................................................................... 46

**DEFS.' JOINT MOTION TO DISMISS**

*Glenn v. Hyundai Motor Am.*,
  2016 WL 3621280 (C.D. Cal. June 24, 2016) ................................................ 30

*Goh v. Prima Fin. Grp., Inc.*,
  2017 WL 7887860 (C.D. Cal. July 26, 2017) ................................................ 17

*Goldstein v. Gen. Motors LLC*,
  2020 WL 1849659 (S.D. Cal. Apr. 13, 2020) ................................................ 24

*Gomez v. Guthy-Renker, LLC*,
  2015 WL 4270042 (C.D. Cal. July 13, 2015) ......................................... 5, 7, 8

*Gram v. Intelligender, LLC*,
  2010 WL 11601035 (C.D. Cal. Oct. 8, 2010) ................................................ 30

*Grassi v. Int'l Comfort Prods., LLC*,
  2015 WL 4879410 (E.D. Cal. Aug. 14, 2015) ................................................ 26

*Gregory v. Atrium Door & Window Co.*,
  415 S.E.2d 574 (N.C. Ct. App. 1992) ........................................................... 34

*Halpin v. Crist*,
  405 F. App'x 403 (11th Cir. 2010) ................................................................ 21

*Harris Moran Seed Co. v. Phillips*,
  949 So. 2d 916 (Ala. 2006) ........................................................................... 27

*Harrison v. Leviton Mfg. Co.*,
  2006 WL 2990524 (N.D. Okla. Oct. 19, 2006) ............................................ 43

*Heber v. Toyota Motor Sales U.S.A., Inc.*,
  2018 WL 3104612 (C.D. Cal. June 11, 2018) .............................................. 26

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) .................................................................................... 20, 21

*Holmes v. Sec. Inv'r Prot. Corp.*,
  503 U.S. 258 (1992) ...................................................................................... 21

*Hornberger v. Gen. Motors Corp.*,
  929 F. Supp. 884 (E.D. Pa. 1996) ................................................................. 31

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ........................................................................ 23

**DEFS.' JOINT MOTION TO DISMISS**

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)........................................................................................22

*Impress Commc'ns v. Unumprovident Corp.*,
   335 F. Supp. 2d 1053 (C.D. Cal. 2003) ..........................................................19

*In re Air Bag Prods. Litig.*,
   7 F. Supp. 2d 792 (E.D. La. 1998).................................................................33

*In re Arris Cable Modem Consumer Litig.*,
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018)....................................................24

*In re Bridgestone/Firestone Inc. Prods. Liab. Litig.*,
   155 F. Supp. 2d 1069 (S.D. Ind. 2001)..........................................................19

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)...........................................................30

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   2012 WL 10731957 (C.D. Cal. June 29, 2012)..........................................5, 8

*In re Dental Supplies Antitrust Litig.*,
   2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ..............................................29

*In re Dicamba Herbicides Litig.*,
   359 F. Supp. 3d 711 (E.D. Mo. 2019) ...........................................................29

*In re Effexor Antitrust Litig.*,
   357 F. Supp. 3d 363 (D.N.J. 2018).................................................................49

*In re Farmers Ins. Exch. Claims Reps.' Overtime Pay Litig.*,
   2008 WL 4763029 (D. Or. Oct. 28, 2008) ....................................................48

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   2017 WL 6402992 (E.D. Mich. Mar. 21, 2017) ............................................48

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ..................................................32

*In re Ford Tailgate Litig.*,
   2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ..............................................45

**DEFS.' JOINT MOTION TO DISMISS**

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997),
   *aff'd*, 172 F.3d 623 (8th Cir. 1999) ............................................................... 33

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ...................................... *passim*

*In re Generic Pharm. Pricing Antitrust Litig.*,
   368 F. Supp. 3d 814 (E.D. Pa. 2019) ............................................................. 50

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ................................... 5, 6, 7, 10

*In re Korean Air Lines Co. Antitrust Litig.*,
   642 F.3d 685 (9th Cir. 2011) ........................................................................ 46

*In re Lipitor Antitrust Litig.*,
   336 F. Supp. 3d 395 (D.N.J. 2018) ............................................................... 49

*In re Mortg. Elec. Registration Sys. Litig.*,
   2016 WL 3931820 (D. Ariz. July 21, 2016),
   *aff'd*, 719 F. App'x 550 (9th Cir. 2017) ...................................................... 48

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) ....................................... 47, 48

*In re Seagate Tech. LLC Litig.*,
   2017 WL 3670779 (N.D. Cal. Aug. 25, 2017) .............................................. 34

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*,
   953 F.2d 162 (4th Cir. 1992) ........................................................................ 47

*In re Solodyn Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017) ............................................... 50

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................... 30, 39

*In re Target Corp. Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ........................................................... 49

*In re TD Bank, N.A.*,
   150 F. Supp. 3d 593 (D.S.C. 2015) ............................................................... 50

x

**DEFS.' JOINT MOTION TO DISMISS**

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*,
  785 F. Supp. 2d 925 (C.D. Cal. 2011) ........................................................ 47

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.* (*Toyota UAM*),
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ................................................*passim*

*In re Webkinz Antitrust Litig.*,
  2009 WL 6346585 (N.D. Cal. Aug. 4, 2009) ............................................ 48

*Johannessohn v. Polaris Indus.*,
  2020 WL 1536416 (D. Minn. Mar. 31, 2020) ............................................ 43

*Johnson v. Nissan N. Am., Inc.*,
  272 F. Supp. 3d 1168 (N.D. Cal. 2017) .................................................... 30

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..................................................... 1, 24, 25

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ...................................................... 32

*Kelly v. United States*,
  140 S. Ct. 1565 (2020) ................................................................... 11, 12

*Kenton v. United Tech. & its Subsidiaries*,
  1990 WL 32121 (Tenn. Ct. App. Mar. 26, 1990) ...................................... 38

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................... 4

*Kia Motors Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. 3d DCA 2008) ....................................................... 33

*Kiehr v. A.O. Smith Corp.*,
  875 F. Supp. 1342 (D. Minn. 1995),
  *aff'd*, 87 F.3d 231 (8th Cir. 1996) .......................................................... 41

*Koellmer v. Chrysler Motors Corp.*,
  276 A.2d 807 (Conn. Cir. Ct. 1970) ......................................................... 34

*Kramer v. Wilson Sporting Goods Co.*,
  2013 WL 12133670 (C.D. Cal. Dec. 13, 2013) ......................................... 31

xi

*Lavigne v. Herbalife, LTD*,
    2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ............................................ 18, 19, 20, 23

*Lee v. Gen. Motors Corp.*,
    950 F. Supp. 170 (S.D. Miss. 1996) ...................................................................... 32

*Leon v. Continental AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) .................................................... 6, 13, 17

*Lesnik v. Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................... 5

*Lewis v. Rodan & Fields, LLC*,
    2019 WL 978768 (N.D. Cal. Feb. 28, 2019) ........................................................... 5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) .............................................................................................. 47

*Lomeli v. Jackson Hewitt, Inc.*,
    2018 WL 1010268 (C.D. Cal. Feb. 20, 2018) .............................................. 5, 7, 8

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ...................................................... 30

*Lynn v. Friedenthal*,
    2011 WL 6960823 (C.D. Cal. Dec. 2, 2011) ......................................................... 13

*Maclin v. Reliable Reports of Tex., Inc.*,
    314 F. Supp. 3d 845 (N.D. Ohio, 2018) ............................................................... 29

*Madrigal v. Hint, Inc.*,
    2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ...................................................... 45

*Mainline Tractor & Equip. Co. v. Nutrite Corp.*,
    937 F. Supp. 1095 (D. Vt. 1996) .......................................................................... 35

*Martin v. Ford Motor Co.*,
    765 F. Supp. 2d 673 (E.D. Pa. 2011) ................................................................... 27

*Martin v. Julius Dierck Equip. Co.*,
    374 N.E.2d 97 (N.Y. 1978) ................................................................................... 34

*Matanky v. Gen. Motors LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019) ............................................................... 50

xii

*Maytray v. Ford Motor Co.*,
   2011 WL 13221015 (C.D. Cal. Nov. 9, 2011) ............................................................. 38

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ..................................................................................... 30

*McNally v. United States*,
   483 U.S. 350 (1987) ..................................................................................................... 11

*Meier v. Daimler Chrysler Co., LLC*,
   2008 WL 2252539 (Conn. Super. May 7, 2008) ......................................................... 38

*Mellander v. Kileen*,
   407 N.E.2d 1137 (Ill. App. Ct. 1980) ......................................................................... 34

*Mesa v. BMW of N. Am., LLC*,
   904 So. 2d 450 (Fla. 3rd DCA 2005) ........................................................................... 34

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ................................................................................... 39

*Milan Supply Chain Sols. Inc. v. Navistar Inc.*,
   2019 WL 3812483 (Tenn. Ct. App. Aug. 14, 2019) ..................................................... 27

*Milman v. FCA U.S., LLC*,
   2018 WL 5867481 (C.D. Cal. Aug. 30, 2018) ............................................................. 45

*Molock v. Whole Foods Mkt. Grp., Inc.*,
   952 F.3d 293 (D.C. Cir. 2020) ..................................................................................... 29

*Morris v. Osmose Wood Preserving*,
   667 A.2d 624 (Md. 1995) ............................................................................................. 34

*Morris v. Sears, Roebuck & Co.*,
   765 So. 2d 419 (La. Ct. App. 2000) ............................................................................. 41

*Mosqueda v. Am. Honda Motor Co.*,
   2020 WL 1698710 (C.D. Cal. Mar. 6, 2020) ............................................................... 27

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 F. App'x 621 (9th Cir. 2008) ......................................................................... *passim*

*Mullins v. Premier Nutrition Corp.*,
   2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ............................................................... 44

**DEFS.' JOINT MOTION TO DISMISS**

*Murphy v. Proctor & Gamble Co.*,
  695 F. Supp. 2d 600 (E.D. Mich. 2010) ................................................................ 26, 27

*Nelson v. Int'l Harvester Corp.*,
  394 N.W.2d 578 (Minn. Ct. App. 1986) .............................................................. 38

*Nigrelli Sys., Inc. v. E.I. DuPont de Nemours & Co.*,
  31 F. Supp. 2d 1134 (E.D. Wis. 1999) ................................................................ 27

*O'Neill v. Simplicity Inc.*,
  574 F.3d 501 (8th Cir. 2009) .............................................................................. 32

*Ocana v. Ford Motor Co.*,
  992 So. 2d 319 (Fla. 3d DCA 2008) .................................................................... 35

*Oddo v. Arcoaire Air Conditioning & Heating*,
  2017 WL 372975 (C.D. Cal. Jan. 24, 2017) ........................................................ 32

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .............................................................................. 4

*Oscar v. Univ. Students Co-op. Ass'n*,
  965 F.2d 783 (9th Cir. 1992) ............................................................................ 1, 4

*Parcell v. Wright Med. Tech., Inc.*,
  2012 WL 2675258 (D. Ariz. July 6, 2012) .......................................................... 38

*Peters v. Countrywide Home Loans, Inc.*,
  2016 WL 2869059 (D.N.J. May 17, 2016) (New Jersey) .................................. 27

*Peterson v. Mazda Motor of Am., Inc.*,
  44 F. Supp. 3d 965 (C.D. Cal. 2014) .................................................................. 43

*Philips v. Ford Motor Co.*,
  726 F. App'x 608 (9th Cir. 2018) ........................................................................ 44

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) .............................................................................. 31

*Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*,
  675 P.2d 887 (Kan. 1984) .................................................................................. 34

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
  630 F.3d 866 (9th Cir. 2010) .............................................................................. 21

xiv

*Rickman v. BMW of N. Am.*,
  2020 WL 3468250 (D.N.J. June 25, 2020) .................................................... 22

*Rinehart v. Saint Luke's S. Hosp., Inc.*,
  2011 WL 3348234 (D. Kan. Aug. 3, 2011) .................................................... 41

*Roberson v. Medtronic, Inc.*,
  494 F. Supp. 2d 864 (W.D. Tenn. 2007) ...................................................... 41

*Roy v. FedEx Ground Package Sys., Inc.*,
  353 F. Supp. 3d 43 (D. Mass. 2018) ............................................................ 29

*Rupert v. Bond*,
  68 F. Supp. 3d 1142 (N.D. Cal. 2014) ......................................................... 13

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*,
  625 F. Supp. 2d 508 (E.D. Mich. 2008) ...................................................... 38

*Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*,
  544 P.2d 306 (Idaho 1975) .......................................................................... 34

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................... 31

*Sapp v. Ford Motor Co.*,
  687 S.E.2d 47 (S.C. 2000) ........................................................................... 27

*Schroeder v. United States*,
  569 F.3d 956 (9th Cir. 2009) ....................................................................... 44

*Selzer v. Brunsell Bros., Ltd.*,
  652 N.W.2d 806 (Wis. Ct. App. 2002) ........................................................ 38

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ..................................................................................... 49

*Shamamyan v. FCA US LLC*,
  2020 WL 3643481 (C.D. Cal. Apr. 1, 2020) ............................................... 35

*Shaw v. Nissan N. Am., Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016) .................................................*passim*

*Sheris v. Nissan N. Am., Inc.*,
  2008 WL 2354908 (D.N.J. June 3, 2008) ..................................................... 32

**DEFS.' JOINT MOTION TO DISMISS**

*Sherman v. Sea Ray Boats, Inc.*,
   649 N.W.2d 783 (Mich. Ct. App. 2002)......................................................38

*Sisemore v. Dogencorp*,
   LLC, 212 F. Supp. 3d 1106 (N.D. Okla. 2016)...........................................43

*Skilling v. United States*,
   561 U.S. 358 (2010)....................................................................................18

*Sloan v. Gen. Motors LLC*,
   2020 WL 1955643 (C.D. Cal. Apr. 23, 2020)............................................27

*Smith v. Capital One Bank USA, N.A.*,
   2016 WL 4742386 (W.D. Wis. Sept. 12, 2016)..........................................41

*Sonner v. Premier Nutrition Corp.*,
   962 F.3d 1072 (9th Cir. 2020) ..............................................................44, 45

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) .................................................................13, 14

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
   2014 WL 1745050 (S.D. Fla. April 30, 2014)............................................40

*Spencer-Wallington, Inc. v. Serv. Merch., Inc.*,
   562 So. 2d 1060 (La. Ct. App. 1990).........................................................41

*Stalvey v. Am. Bank Holdings, Inc.*,
   2013 WL 6019320 (D.S.C. Nov. 13, 2013).................................................50

*State ex rel. W. Seed Prod. Corp. v. Campbell*,
   442 P.2d 215 (Or. 1968) ............................................................................34

*State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.*,
   505 So. 2d 1223 (Ala. 1987).......................................................................34

*Statler v. Dell, Inc.*,
   841 F. Supp. 2d 642 (E.D.N.Y. 2012) ........................................................41

*Stockinger v. Toyota Motor Sales USA, Inc.*,
   2017 WL 10574372 (C.D. Cal. Jul. 7, 2017)..............................................45

**DEFS.' JOINT MOTION TO DISMISS**

*Strauss v. Angie's List, Inc.*,
2018 WL 5722561 (D. Kan. Nov. 1, 2018),
*aff'd*, 951 F.3d 1263 (10th Cir. 2020) ........................................................ 40

*Szymczak v. Nissan N. Am., Inc.*,
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) .............................................. 32

*Tait v. BSH Home Appliances Corp.*,
2011 WL 1832941 (C.D. Cal. May 12, 2011) ........................................ 49, 50

*Taragan v. Nissan N. Am., Inc.*,
2013 WL 3157918 (N.D. Cal. June 20, 2013) .............................................. 33

*Tatum v. Chrysler Grp., LLC*,
2011 WL 1253847 (D.N.J. March 28, 2011) ................................................ 43

*Tatung Co. v. Shu Tze Hsu*,
43 F. Supp. 3d 1036 (C.D. Cal. 2014) ......................................................... 18

*Tex Enters., Inc. v. Brockway Standard, Inc.*,
66 P.3d 625 (Wash. 2003) ........................................................................... 34

*Tietsworth v. Sears, Roebuck & Co.*,
2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) .............................................. 35

*Tomka v. Hoechst Celanese Corp.*,
528 N.W.2d 103 (Iowa 1995) ...................................................................... 34

*United States v. Benny*,
786 F.2d 1410 (9th Cir. 1986) ..................................................................... 16

*United States v. Green*,
592 F.3d 1057 (9th Cir. 2010) ..................................................................... 16

*United States v. Kato*,
878 F.2d 267 (9th Cir. 1989) ....................................................................... 11

*United States v. LeVeque*,
283 F.3d 1098 (9th Cir. 2002) ..................................................................... 11

*United States v. Miller*,
953 F.3d 1095 (9th Cir. 2020) ..................................................................... 11

**DEFS.' JOINT MOTION TO DISMISS**

*United States v. Shields*,
844 F.3d 819 (9th Cir. 2016) ...................................................... 16

*Val Mourik v. Big Heart Pet Brands*, *Inc.*,
2018 WL 1116715 (N.D. Cal. Mar. 1, 2018) ................................ 31

*Villanueva v. Am. Honda Motor Co.*,
2019 WL 8112467 (C.D. Cal. Oct. 10, 2019) ........................ 30, 49

*Vinci v. Hyundai Motor Am.*,
2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) .............................. 30

*Vullings v. Bryant Heating & Cooling Sys.*,
2019 WL 687881 (E.D. Pa. Feb. 19, 2019) .................................. 38

*Walls v. Am. Tobacco Co.*,
11 P.3d 626 (Okla. 2000) ............................................................ 27

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) .............................................. 33, 43

*Wenokur v. AXA Equitable Life Ins. Co.*,
2017 WL 4357916 (D. Ariz. Oct. 2, 2017) .................................. 29

*Werwinski v. Ford Motor Co.*,
286 F.3d 661 (3d Cir. 2002) ....................................................... 27

*White v. Ford Motor Co.*,
525 So. 2d 96 (La. Ct. App. 1988) .............................................. 39

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ...................................................... 44

*Williams v. Dow Chem. Co.*,
255 F. Supp. 2d 219 (S.D.N.Y. 2003) ......................................... 11

*Williamson v. S.A. Gear Co.*,
2017 WL 283373 (S.D. Ill. Jan. 23, 2017) .................................... 6

*Yetter v. Ford Motor Co.*,
428 F. Supp. 3d 210 (N.D. Cal. 2019) .............................. 24, 25, 38

*Yost v. Gen. Motors Corp.*,
651 F. Supp. 656 (D.N.J. 1986) .................................................. 34

xviii

**DEFS.' JOINT MOTION TO DISMISS**

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................ 42

*Ziegelmann v. DaimlerChrysler Corp.*,
    649 N.W.2d 556 (N.D. 2002) ..................................................................... 34

*Zwiercan v. Gen. Motors Corp.*,
    2002 WL 1472335 (Pa. Com. Pleas May 22, 2002) ...................................... 33

**Statutes**

13 Pa. Cons. Stat. § 2607 ............................................................................... 36

13 Pa. Cons. Stat. § 2725 ............................................................................... 37

42 Pa. Cons. Stat. § 5524 ............................................................................... 39

15 U.S.C. § 2310 ............................................................................................ 36

18 U.S.C. § 1341 .............................................................................. 11, 12, 18

18 U.S.C. § 1343 .............................................................................. 11, 12, 18

18 U.S.C. § 1346 ............................................................................................ 18

18 U.S.C. § 1961 ............................................................................................ 10

18 U.S.C. § 1962 ..................................................................................... 10, 23

18 U.S.C. § 1964 ............................................................................................ 18

28 U.S.C. § 1407 ..................................................................................... 46, 47

49 U.S.C. § 30118 .......................................................................................... 13

49 U.S.C. § 30121 .......................................................................................... 13

49 U.S.C. § 30162 .......................................................................................... 13

49 U.S.C. § 30163 .......................................................................................... 13

735 Ill. Comp. Stat. 5/13-215 ........................................................................ 39

810 Ill. Comp. Stat. 5/2-607 .......................................................................... 36

810 Ill. Comp. Stat. 5/2-725 .......................................................................... 37

**DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ala. Code § 6-2-3 ................................................................................................. 39

Ala. Code § 7-2-607 ............................................................................................. 36

Ala. Code § 7-2-725 ............................................................................................. 37

Ala. Code § 8-19-10 ............................................................................................. 49

Ariz. Rev. Stat. § 12-543 ..................................................................................... 39

Ariz. Rev. Stat. § 47-2A506 ................................................................................ 37

Ariz. Rev. Stat. § 47-2607 ................................................................................... 36

Ariz. Rev. Stat. § 47-2725 ................................................................................... 37

Cal. Civ. Pro. § 338 ............................................................................................. 39

Cal. Com. Code § 2314 ........................................................................................ 32

Cal. Com. Code § 2607 ........................................................................................ 36

Cal. Com. Code § 2725 ............................................................................. 37, 38, 39

Colo. Rev. Stat. § 4-2-607 ................................................................................... 36

Colo. Rev. Stat. § 4-2-725 ........................................................................... 37, 38

Colo. Rev. Stat. § 13-80-101 ........................................................................ 38, 39

Conn. Gen. Stat. § 42-110g ................................................................................. 40

Conn. Gen. Stat. § 42a-2-725 .............................................................................. 37

Conn. Gen. Stat. § 52-577 ................................................................................... 39

Fla. Stat. § 95.11 ....................................................................................... 38, 39, 40

Fla. Stat. § 672.607 .............................................................................................. 36

 Ind. Code § 24-5-0.5-5 ....................................................................................... 40

Ind. Code § 26-1-2-725(1) ................................................................................... 37

Ind. Code § 26-1-2-725(2) ................................................................................... 37

Ind. Code § 34-11-2-7 .......................................................................................... 40

**DEFS.' JOINT MOTION TO DISMISS**

Kan. Stat. § 60-512 ....................................................................................41

Kan. Stat. § 60-513 ....................................................................................39

Kan. Stat. § 84-2-607 .................................................................................36

Kan. Stat. § 84-2-725 .................................................................................37

La. Civ. Code art. 2534 ..............................................................................39

La. Civ. Code art. 3492 ..............................................................................39

La. Stat. § 51:1409 ...............................................................................41, 49

Mass. Gen. Laws ch. 106, § 2-725 ............................................................37

Mass. Gen. Laws ch. 260 § 2A ..................................................................39

Md. Code Com. Law § 2-607 .....................................................................36

Md. Code Com. Law § 2-725 .....................................................................37

Md. Code Cts & Jud. Proc. § 5-101 ...........................................................39

Mich. Comp. Laws § 440.2725 ..................................................................37

Mich. Comp. Laws § 600.5813 ..................................................................40

Minn. Stat. § 336.2-607 .............................................................................36

Minn. Stat. § 336.2-725 .............................................................................37

Minn. Stat. § 541.05, subd. 1 ...............................................................40, 41

Mo. Stat. § 400.2-607 ................................................................................36

Mo. Stat. § 400.2-725 ................................................................................37

Mont. Code § 27-2-203 ..............................................................................39

Mont. Code § 30-2-607 ..............................................................................36

Mont. Code § 30-2-725 ..............................................................................37

Mont. Code § 30-14-133 ............................................................................49

N.C. Gen. Stat. § 1-52 ...............................................................................39

**DEFS.' JOINT MOTION TO DISMISS**

N.C. Gen. Stat. § 25-2-607 .................................................................................................36

N.C. Gen. Stat. § 25-2-725 .................................................................................................37

N.J. Stat. § 2A:14-1 ............................................................................................................40

N.J. Stat. § 12A:2–607 .......................................................................................................36

N.J. Stat. § 12A:2-725 ........................................................................................................37

N.Y. Gen. Bus. Law § 349 .................................................................................................41

N.Y. U.C.C. Law § 2-607 ...................................................................................................36

N.Y. U.C.C. Law § 2-725 ...................................................................................................37

Nev. Rev. Stat. § 104.2725 .................................................................................................37

Okla. Stat. tit. 12, § 95 .......................................................................................................39

Okla. Stat. tit. 12A, § 2-725 .........................................................................................37, 38

S.C. Code § 15-3-530 ..........................................................................................................39

S.C. Code § 36-2-607 ..........................................................................................................36

S.C. Code § 36-2-725 ..........................................................................................................38

S.C. Code § 39-5-140 ..........................................................................................................49

S.D. Codified Laws § 15-2-13 ............................................................................................40

S.D. Codified Laws § 57A-2-725 .......................................................................................37

S.D. Codified Laws § 67A-2-607 .......................................................................................36

Tenn. Code § 28-3-105 .......................................................................................................39

Tenn. Code § 47-2-607 .......................................................................................................36

Tenn. Code § 47-2-725 .......................................................................................................37

Tenn. Code § 47-18-109 .....................................................................................................49

Tenn. Code § 47-18-110 .....................................................................................................41

Tex. Bus. & Com. Code § 2.607 ........................................................................................36

**DEFS.' JOINT MOTION TO DISMISS**

Tex. Bus. & Com. Code § 2.725 ............................................................................... 37

Tex. Civ. Prac. & Rem. Code § 16.004 ..................................................................... 39

U.C.C. § 2-607 ......................................................................................................... 36

UCC § 2-725 ............................................................................................................ 37

Va. Code § 8.2–607 ................................................................................................. 36

Va. Code § 8.2-725 .................................................................................................. 37

Va. Code § 59.1-204 ................................................................................................ 49

Wash. Rev. Code § 4.16.080 .................................................................................... 39

Wash. Rev. Code § 62A.2-607 ................................................................................. 36

Wash. Rev. Code § 62A.2-725 ................................................................................. 37

Wis. Stat. § 402.607 ................................................................................................ 36

Wis. Stat. § 402.725 ........................................................................................... 37, 38

Wis. Stat. § 425.307 ................................................................................................ 41

**Rules**

Fed. R. Civ. P. 9 ........................................................................................................ 4

N.Y. C.P.L.R. § 213 ............................................................................................ 40, 41

**Other Authorities**

15 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §
    3866 (4th ed. 2016) ............................................................................................ 47

Restatement (Second) of Agency § 14J (1958) ....................................................... 35

**DEFS.' JOINT MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs allege that the various airbag control units (ACUs) in the vehicles they bought are all defective because the ACUs are vulnerable to electrical overstress (EOS). None of the named Plaintiffs have alleged they have actually been injured as a result of this issue, but Plaintiffs allege that they overpaid for the vehicles in light of the alleged defect, and seek to recover for purely economic losses. Their Consolidated Class Action Complaint (Complaint or CAC) does not state any claims for relief.

**RICO:** Congress intended the Racketeer Influenced and Corrupt Organizations Act to help prosecutors "combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (en banc). Plaintiffs try to repackage their fraud and consumer protection allegations as a racketeering operation, but fail to establish multiple elements of a RICO violation, such as the existence of a RICO "enterprise." Plaintiffs instead premise their RICO claims on the ordinary business relationships between automotive parts suppliers and vehicle manufacturers, but those relationships, pursued to further individual goals, are not a RICO violation or an unlawful conspiracy. Plaintiffs similarly fail to plead a pattern of racketeering activity, a RICO injury, or proximate cause.

**Fraud-based claims:** Plaintiffs' non-warranty claims (including their common-law fraud, unjust enrichment, and statutory consumer protection claims) all sound in fraud and thus must satisfy Rule 9(b). But Plaintiffs have not alleged the basic "who, what, when, where, and how of the misconduct charged" required by that rule. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Despite its length, the Complaint alleges no details about any of the named Plaintiffs' allegedly fraudulent transactions. As numerous courts have held, that is insufficient for fraud claims, whether premised on affirmative misrepresentations or omissions.

**Warranty-based claims:** Plaintiffs' implied-warranty claims fail because no Plaintiff alleges that his or her vehicle has actually experienced the alleged defect, or any other facts indicating his or her vehicle was unmerchantable.

**DEFS.' JOINT MOTION TO DISMISS BRIEF**

Plaintiffs' claims also fail for a variety of other reasons: they are untimely, they seek equitable remedies when adequate legal remedies exist, they assert class action claims foreclosed by state-law class action bars, and they are asserted by improper intervenors. For these reasons and those that follow here and in the Defendants' individual briefs, the Complaint should be dismissed.[1]

## BACKGROUND

The named Plaintiffs are 66 residents of 29 different states, who between February 2009 and March 2019 purchased or leased dozens of vehicles of disparate makes, models, and model years manufactured by FCA US, Honda, Hyundai-Kia, Mitsubishi, or Toyota, and certain related foreign entities (collectively, the Vehicle Manufacturer Defendants). CAC ¶¶ 41, 72–138.[2] Plaintiffs do not provide any details about the circumstances of their individual vehicle purchases or leases. *Id.* ¶¶ 72–138.

In April 2019, the National Highway Traffic Safety Administration (NHTSA) announced it was looking into vehicles equipped with certain ACU models that contain a specialized microchip called the DS84 Application Specific Integrated Circuit (ASIC). Plaintiffs allege that STMicro[3] manufactured the chip and supplied it to ZF,[4] which supplied the finished ACU to the Vehicle Manufacturer Defendants. *Id.* ¶¶ 9, 21, 264. Plaintiffs say that ACUs "receive and interpret signals from front crash sensors in the front

---

[1] For the Court's convenience, Exhibits 1 and 2 to this submission summarize the claims implicated by Defendants' joint arguments.

[2] Plaintiffs define "Vehicle Manufacturer Defendants" broadly to include any domestic vehicle manufacturer defendant and any related foreign entity. CAC ¶ 41. Defendants use the same term here, but deny that every Defendant that Plaintiffs identify as a "Vehicle Manufacturer Defendant" actually manufactures vehicles.

[3] "STMicro" refers collectively to Defendants STMicroelectronics, Inc., STMicroelectronics N.V., and STMicroelectronics International N.V., though STMicro disputes the Complaint's characterization and conflation of these distinct entities.

[4] "ZF" refers collectively to Defendants ZF Active Safety and Electronics US LLC, ZF Passive Safety Systems US Inc., ZF Automotive US Inc., ZF TRW Automotive Holdings Corp., and ZF North America, Inc.

**DEFS.' JOINT MOTION TO DISMISS**

of the vehicle" and, when those "sensors detect an imminent crash, they notify the ACU and the ACU commands the safety system to deploy the airbags and tighten the seatbelts." *Id.* ¶ 8. The designs of ZF's ACUs vary across vehicle manufacturers and even across models and model years for the same manufacturer. *Id.* ¶¶ 291, 596a, 618a, 640a, 663a, 686a. Over time, ZF supplied manufacturers with different ACU designs based on different specifications and including different levels of protection to the ASIC. *Id.* ¶ 291. As NHTSA has explained, it is investigating whether, in rare circumstances, a crash may produce electrical signals that may cause some of the ACUs to stop working. NHTSA's investigation is ongoing, and it has issued no findings as of this filing. *Id.* ¶ 21. To date, three of the Vehicle Manufacturer Defendants (FCA US, Hyundai-Kia, and Toyota) have recalled some of their vehicles containing ZF ACUs with DS84 ASICs, and have provided remedies to consumers (including the relevant Plaintiffs) free of charge. *Id.* ¶¶ 263–264.

The Complaint arises from dozens of putative class actions initiated by private plaintiffs across the country after NHTSA announced its investigation. Despite NHTSA's observations about the differences between the various years, makes, and models of the vehicles at issue, Plaintiffs broadly claim that all ZF ACUs with the DS84 ASIC are defective, and seek to hold Defendants liable for alleged diminution in the value of Plaintiffs' vehicles. Plaintiffs assert various types of fraud, warranty, and statutory unfair trade practice and consumer protection claims. They also seek treble damages against all Defendants as various "association-in-fact" enterprises under RICO, 18 U.S.C. §§ 1961–68. As relief, Plaintiffs seek (1) an injunction against the Vehicle Manufacturer Defendants' allegedly deceptive distribution, sales and lease practices; (2) compensatory, punitive, and treble damages, and statutory penalties; (3) repurchase of the Class Vehicles; (4) a fund for losses and expenses; (5) disgorgement of profits or full restitution; and (6) attorneys' fees. CAC ¶ 2591.

## LEGAL STANDARD

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts need not accept as true "allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Where claims are grounded in fraud, a plaintiff must plead the circumstances constituting the alleged fraud with particularity. Fed. R. Civ. P. 9(b).

## ARGUMENT

## I.   The Court Should Dismiss Plaintiffs' RICO Claims.[5]

Plaintiffs cite nothing that even vaguely resembles racketeering activity, premising their RICO claims on ordinary business relationships between suppliers and manufacturers. These relationships, pursued to further the individual goals of each Defendant, are not a RICO violation or an unlawful conspiracy. *See, e.g.*, *Oscar*, 965 F.2d at 786.

To establish the sort of criminal operation RICO is intended to target, Plaintiffs must allege five separate elements: (1) the existence of a RICO "enterprise" distinct from Defendants' ordinary business operations; (2) that Defendants participated in the enterprise through the commission of certain predicate crimes; (3) that the alleged predicate crimes formed a "pattern … of racketeering activity"; (4) that the alleged predicate crimes proximately caused harm to Plaintiffs; and (5) that Plaintiffs suffered injuries to their business or property. *See, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Plaintiffs do not come close to plausibly pleading the facts required to establish many of these elements.

## A.   Plaintiffs Fail To Plead A RICO Enterprise.

To establish a RICO enterprise, Plaintiffs must allege facts showing "an ongoing organization, formal or informal," "that the various associates function as a continuing unit," and that the enterprise has a "common purpose," a structure or organization, and the longevity necessary to accomplish the purpose. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc); *see also, e.g.*, *Eclectic Props.*, 751 F.3d at 997. Plaintiffs must also show that each Defendant "participated in the conduct of the '*enterprise*'s

---

[5] Nationwide Counts 1–6.

4

**DEFS.' JOINT MOTION TO DISMISS**

affairs,' not just their *own* affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

Plaintiffs allege not one but *six* RICO enterprises: "the ACU Enterprise" (ZF and STMicro) (CAC ¶ 568), and then five separate enterprises among ZF, STMicro, and each of the Vehicle Manufacturer Defendants (*e.g.*, *id.* ¶ 590 (describing "the Hyundai-Kia Enterprise"); *id.* ¶ 612 (describing "the FCA Enterprise")). Plaintiffs' allegations are virtually identical for each of the six purported "enterprises," alleging in each case that the members formed an "association-in-fact enterprise," the common purpose of which was "to mislead consumers and NHTSA concerning the existence, nature, and scope of the defect with ZF TRW ACUs installed in the Class Vehicles" in order to maximize revenue and avoid "substantial costs and reputational harms." *Id.* ¶¶ 568–569; *see id.* ¶¶ 590–591, 612–613, 634–635, 657–658, 680–681.

Instead of showing that Defendants were associated for any "common purpose" attributable to a RICO "enterprise," Plaintiffs' allegations, taken as true, show only that Defendants "associated" in the course of their ordinary business operations: the supply and purchase of automotive parts, the use of those parts in making vehicles, and the sale of those vehicles. This is not enough. Courts "overwhelmingly reject[] attempts to characterize routine commercial relationships as RICO enterprises." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016).[6]

---

[6] *See also, e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 959 (N.D. Cal. 2019); *Lewis v. Rodan & Fields, LLC*, 2019 WL 978768, at *3 (N.D. Cal. Feb. 28, 2019); *Lomeli v. Jackson Hewitt, Inc.*, 2018 WL 1010268, at *8 (C.D. Cal. Feb. 20, 2018); *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *9 (C.D. Cal. July 13, 2015); *Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at *4–6 (N.D. Cal. Jan. 6, 2015), *aff'd*, 752 F. App'x 380 (9th Cir. 2018); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.* (*Toyota UAM*), 826 F. Supp. 2d 1180, 1203 (C.D. Cal. 2011); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009).

**DEFS.' JOINT MOTION TO DISMISS**

In *Shaw*, for example, the plaintiffs alleged Nissan and its supplier BorgWarner formed an association-in-fact RICO enterprise with the "common purpose" to design and sell vehicles with a defective part and conceal that defect "to continue profiting and avoid incurring any expenses associated with repairing the defect, recalling the product, or addressing investigations by federal regulators." 220 F. Supp. 3d at 1051. *Shaw* held that type of activity is not a RICO enterprise. *Id.* at 1053–57.

Using buzzwords like "common purpose" is insufficient to plead a cognizable RICO enterprise. As *Shaw* explained, these sorts of allegations "fail to demonstrate a common purpose, much less a fraudulent one." *Id.* at 1057. "At best, the allegations here only demonstrate that the parties 'are associated in a manner directly related to their own primary business activit[ies].'" *Id.* That is because parts suppliers and vehicle manufacturers exchange information and testing data as part of their "ordinary business activities." *Id.* at 1056. When a supplier "investigates potential shortcomings of [a] part" and "recommend[s] certain remedial measures, … these actions seem more consistent with the behavior of a responsive supplier" than "a participant in some fraudulent enterprise." *Id.* at 1057. Allegations of concealment or fraud in an otherwise commonplace business relationship are not enough to transform that relationship into a RICO enterprise. *Id.*; *see also Jamster*, 2009 WL 1456632, at *5. And so, as in *Shaw*, it makes no difference that Plaintiffs accuse Defendants of working together to conceal information from consumers. 220 F. Supp. 3d at 1054–57.

*Shaw* is hardly an outlier. Other courts have held that RICO claims premised on allegations that vehicle manufacturers or component suppliers acted "to sell more" vehicles merely describe "a routine business relationship" and fail to plead an actionable common purpose, even if the plaintiffs allege that the defendants "conceal[ed] the scope or nature of [alleged vehicle] defects." *Id.* at 1054; *see, e.g.*, *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1232–36 (S.D. Fla. 2017); *Toyota UAM*, 826 F. Supp. 2d at 1202–03; *In re Gen. Motors LLC Ignition Switch Litig.* (*GM Ignition Switch*), 2016 WL 3920353, at *11 (S.D.N.Y. July 15, 2016); *Williamson v. S.A. Gear Co.*, 2017 WL 283373, at *6–7 (S.D.

6

**DEFS.' JOINT MOTION TO DISMISS**

Ill. Jan. 23, 2017). Nor is this principle unique to automotive-defect cases. *See, e.g.*, *Gardner*, 418 F. Supp. 3d at 461; *Ellis*, 2015 WL 78190, at *4–6; *Lomeli*, 2018 WL 1010268, at *8; *Jamster*, 2009 WL 1456632, at *5. In short, "there has been a remarkable uniformity in [courts'] conclusion[s] that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez*, 2015 WL 4270042, at *11.

Plaintiffs' alleged "enterprises" follow the same pattern that was found wanting in *Shaw* and many other cases. Plaintiffs allege ZF, STMicro, and each Vehicle Manufacturer Defendant (which Plaintiffs define broadly to include various related, but distinct, corporate entities) formed a RICO enterprise with the "common purpose" to design and sell vehicles with a defective part and conceal that defect to "maximize[] their revenue by selling as many [ ] vehicles … as possible and avoiding or limiting the substantial costs associated with recalling the [ ] vehicles" and remedying the alleged defect. *See, e.g.*, CAC ¶¶ 634–635, 650–651 (Toyota Enterprise). Plaintiffs similarly allege that ZF and STMicro formed the "ACU Enterprise" with the "common purpose" to "mislead consumers and NHTSA concerning the existence, nature, and scope of the defect with ZF TRW ACUs installed in the Class Vehicles" and to "maximize[] their revenue by selling as many defective ZF TRW ACUs … to Vehicle Manufacturer Defendants as possible." *Id.* ¶¶ 568–569. They also allege, like the *Shaw* plaintiffs, that ZF and STMicro were "avoiding or limiting the substantial costs and reputational harms associated with breaching warranties to the Vehicle Manufacturer Defendants" or "having to assist with recalling the Class Vehicles." *Id.* ¶ 569; *see id.* ¶¶ 583–584.

These garden-variety business relationships are not the sort of relationship required to state a RICO claim. "While Plaintiffs repeatedly state that" the various "enterprise" groups "shared a common fraudulent purpose, they have not alleged plausible facts that satisfy the common purpose requirement. Rather, the facts alleged … suggest ordinary business activity on the part of the relevant actors." *Shaw*, 220 F. Supp. 3d at 1056. As to the ACU Enterprise, Plaintiffs allege ZF collaborated with STMicro to design the ACUs,

7

**DEFS.' JOINT MOTION TO DISMISS**

STMicro designed and manufactured the DS84 ASIC included in the ACUs, ZF manufactured and supplied the ACUs, ZF and STMicro communicated about field incidents and tests, and ZF and STMicro collected revenue from the sale of the ACUs and the DS84 ASICs, respectively. CAC ¶¶ 574–575; *see also id.* ¶¶ 583–585. Plaintiffs similarly allege as to each additional enterprise that the respective Vehicle Manufacturer Defendants collaborated with ZF to develop specifications for the ACUs, ordered and purchased the ACUs, manufactured ACUs for certain vehicles using ZF designs, installed the ACUs in certain vehicles, labeled and advertised vehicles containing the ACUs, communicated about field incidents and tests with ZF and STMicro, and collected revenue from the sale of the vehicles. *Id.* ¶¶ 595–597, 617–619, 639–641, 662–664, 685–687; *see also id.* ¶¶ 605–607, 627–629, 650–652, 673–675, 695–697.

Those allegations describe ordinary business activities between vehicle manufacturers and component suppliers, with each entity merely "furthering [its own] primary business," *Lomeli*, 2018 WL 1010268, at *8, and "pursuing its own independent economic interests," *Countrywide*, 2012 WL 10731957, at *9—not the stuff of a racketeering operation. RICO liability "must be predicated on a relationship more substantial than a routine contract between a service provider and its client," *Gomez*, 2015 WL 4270042, at *11, and "parties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise,'" *Countrywide*, 2012 WL 10731957, at *8. *See Toyota UAM*, 826 F. Supp. 2d at 1202–03; *GM Ignition Switch*, 2016 WL 3920353, at *11.

Moreover, while Plaintiffs allege that Defendants "commit[ted] to secrecy about the existence and scope of the defect with the ZF TRW ACUs contained in Class Vehicles" and, "[w]hen forced to acknowledge serious problems with the ACUs … also agreed to obscure and minimize the defect," CAC ¶ 571; *see also id.* ¶¶ 592, 614, 636, 659, 682 (all similar), their allegations actually confirm the *lack* of a common purpose. As in *Shaw*, "there were several instances where the parties demonstrated they lacked common purpose by reaching independent conclusions" when evaluating accidents and performing independent testing on the very issues that give rise to Plaintiffs' claims. 220 F. Supp. 3d

**DEFS.' JOINT MOTION TO DISMISS**

at 1057; *see also Ferrari v. Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *4 & n.3 (N.D. Cal. Dec. 12, 2016). For instance, Plaintiffs affirmatively allege that ZF and Hyundai-Kia each independently "investigated" certain "airbag failures" in some vehicles, and that ZF, STMicro, and Hyundai-Kia "performed inspections" and "analyses," and reached divergent conclusions. CAC ¶¶ 334–335. Plaintiffs also recognize that "at least some product improvements were undertaken" with regard to the ACUs, "which is inconsistent with the common purpose asserted." *Shaw*, 220 F. Supp. 3d at 1057. Plaintiffs allege that ZF, STMicro, and Hyundai-Kia decided to "test and add protective components to some, but not all, of the Hyundai and Kia Class Vehicles," CAC ¶ 585(d); *see id.* ¶ 607(d) (similar); that ZF, STMicro, and FCA US decided to "add circuit protection to some, but not all, [of] the FCA Class Vehicles," *id.* ¶ 629(c); *see id.* ¶ 585(f) (similar); and that ZF, STMicro, and Honda decided to "add circuit protection to some, but not all, [of] the Honda Class Vehicles," *id.* ¶ 675(b).

"Unlike a participant in some fraudulent enterprise, these actions seem more consistent with the behavior of a responsive supplier," not a racketeer. *Shaw*, 220 F. Supp. 3d at 1057. Investigating "potential shortcomings of [a] part" and initiating or cooperating with remedial measures, including recalls and regulatory investigations, is not the stuff of fraud, much less of a criminal RICO enterprise. *Id.*; *see also Ferrari*, 2016 WL 7188030, at *4 & n.3. Thus, even assuming the vehicles in this case "were produced with a part that could have been improved," that would be no substitute for "specific facts that move … allegations from the realm of the possible to the plausible" for purposes of establishing a "common purpose" under RICO. *Shaw*, 220 F. Supp. 3d at 1057.

In sum, Plaintiffs plead only insufficient "conclusory allegations" of a common *business* purpose, including that Defendants' common purpose "consisted of 'marketing, advertising, promoting, offering and selling'" certain products. *Chagby v. Target Corp.*, 2008 WL 5686105, at *2 (C.D. Cal. Oct. 27, 2008), *aff'd*, 358 F. App'x 805 (9th Cir. 2009). That is insufficient as a matter of law: Plaintiffs cannot simply allege that "Defendants' primary business activity … was conducted fraudulently." *Toyota UAM*, 826 F. Supp. 2d

9

at 1202–03. They must plead "specific facts indicating that [D]efendants acted with an objective *unrelated to* ordinary business or government aims." *Comm. to Protect*, 235 F. Supp. 3d at 1175 (emphasis added). Plaintiffs cannot sidestep that requirement by "artfully inserting modifiers" describing conduct as "fraudulent" or "unlawful" because "[w]ithout the adjectives … the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose." *Jamster*, 2009 WL 1456632, at *5; *see Toyota UAM*, 826 F. Supp. 2d at 1202–03. Plaintiffs' RICO claims must be dismissed for failure to plead a RICO enterprise.

### B.   Plaintiffs Fail To Plead Predicate Acts Of Racketeering Activity.

Plaintiffs' RICO claims independently fail because they do not plead facts showing the required pattern of racketeering activity. 18 U.S.C. § 1962(c). "[R]acketeering activity" includes "any act which is indictable under" several criminal statutes. *Id.* § 1961(1). Plaintiffs premise their RICO claims on alleged predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, which are subject to Rule 9(b)'s heightened "particularity" pleading standard. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Plaintiffs claim that each enterprise "used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme to conceal the ACU defect," and "devised and knowingly carried out a material scheme and/or artifice to defraud or obtain money from the Plaintiffs and the Nationwide Class by means of materially false or fraudulent pretenses, representations, or omissions of material facts." CAC ¶¶ 578–579; *see id.* ¶¶ 600–601, 622–623, 645–646, 668–669, 690–691 (all similar). The communications Plaintiffs cite in support of these conclusory allegations are presentations, letters, and responses Defendants made to NHTSA; the Vehicle Manufacturer Defendants' print and website consumer advertisements and safety certifications; and ZF's and STMicro's routine invoicing, correspondence, and shipping practices. *Id.* ¶¶ 580, 602, 624, 647, 670, 692. None of those allegations pleads a viable claim for mail and wire fraud.

**DEFS.' JOINT MOTION TO DISMISS**

### 1.   Statements To Government Regulators Are Nonactionable.

Most of the statements Plaintiffs identify—and virtually all of the statements allegedly made by ZF and STMicro—are statements to NHTSA. Under well-settled law, these statements are nonactionable as mail or wire fraud because (1) they were not made to obtain money or property, and (2) they are protected by the First Amendment under the *Noerr-Pennington* doctrine.

***First***, to constitute mail or wire fraud, statements must be made to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343; *see also United States v. Miller*, 953 F.3d 1095, 1102–03 (9th Cir. 2020). As the Supreme Court recently reaffirmed, "a scheme to alter [ ] a regulatory choice is *not* one to appropriate the government's property" within the meaning of the mail and wire fraud statutes. *Kelly v. United States*, 140 S. Ct. 1565, 1572 (2020) (emphasis added). This is because regulatory approval "implicates the Government's role as sovereign, not as property holder," and therefore does not entail a transfer of "money or property." *Cleveland v. United States*, 531 U.S. 12, 15, 24 (2000); *see also, e.g.*, *McNally v. United States*, 483 U.S. 350, 359 n.8 (1987) ("[T]he mail fraud statute … had its origin in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to the Government's interests as property holder."). As a result, statements made to obtain regulatory approval or forestall oversight cannot form the basis for mail or wire fraud. *See, e.g.*, *United States v. LeVeque*, 283 F.3d 1098, 1102 (9th Cir. 2002); *United States v. Kato*, 878 F.2d 267, 268–69 (9th Cir. 1989). Courts have thus held plaintiffs cannot plead mail or wire fraud by alleging that defendants sought a federal agency's approval "by intentionally concealing the dangerously defective nature of [a] product" or by "presenting false, inaccurate and/or misleading information about scientific testing." *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 222–24 (S.D.N.Y. 2003).

Plaintiffs' "fraud on the regulator" theme contravenes these fundamental principles: Plaintiffs do not and cannot allege that Defendants sought to deprive any government

**DEFS.' JOINT MOTION TO DISMISS**

officials of money or property. Instead, each of the allegedly fraudulent communications is related to NHTSA's core regulatory functions:

- An allegedly "false and misleading slide deck presentation" that ZF mailed to NHTSA in 2016 about the scope of the vehicles affected by the defective ZF TRW ACUs, CAC ¶¶ 580(d), 602(e), 624(d), 647(d), 670(c), 692(c);

- Allegedly "false and misleading" statements in a letter that ZF sent NHTSA in 2016 in connection with an FCA US recall, *id.* ¶ 580(e) & n.27; *see also id.* ¶¶ 602(f), 624(e), 647(e), 670(d), 692(d);

- Allegedly "false and misleading" statements from a letter and accompanying presentation that ZF sent to a NHTSA attorney in 2018 in connection with NHTSA's ongoing investigation of the ZF ACUs, *id.* ¶¶ 580(f), 602(g), 624(f), 647(f), 670(e), 692(e);

- Regulatory recall reports submitted by Hyundai-Kia, FCA US, and Toyota that included allegedly false and misleading statements, *id.* ¶¶ 602(c), 624(c), 647(h);

- Hyundai-Kia's allegedly fraudulent communication to NHTSA in 2018 about "the observed instances of EOS on the Hyundai Sonata [and] Kia Forte vehicles," *id.* ¶ 602(d);

- Allegations that Toyota fraudulently "[c]oncealed that Occupant Restraint Systems in Toyota Class Vehicles had failed in the field due to EOS in defective ZF TRW ACUs," *id.* ¶ 647(c); and

- Allegedly "misleading" statements from Toyota's "written response to NHTSA's investigation requests in or around August 29, 2019," *id.* ¶ 647(g).

Each of these supposed predicate acts involves statements to NHTSA in an alleged attempt to influence a regulator, not to "obtain[] money or property." *Kelly*, 140 S. Ct. at 1572. Indeed, Plaintiffs affirmatively allege that Defendants intended "to persuade NHTSA that ZF TRW ACUs in most of the Class Vehicles were not defective and that the ZF TRW ACUs that had suffered EOS in the field may not have caused the airbags not to deploy," CAC ¶ 580(d); *see also id.* ¶¶ 602(e), 624(d), 647(d), 670(c), 692(c), and that Defendants otherwise "intended that government regulators would rely on their [statements] made about the Class Vehicles to approve them for importation, marketing, and sale to consumers in the United States," *id.* ¶ 581; *see also id.* ¶¶ 603, 625, 648, 671, 693. Under the binding authorities discussed above, these alleged attempts to influence regulatory decisions do not constitute mail or wire fraud. 18 U.S.C. §§ 1341, 1343; *Kelly*, 140 S. Ct. at 1572.

**DEFS.' JOINT MOTION TO DISMISS**

***Second***, Plaintiffs' "fraud on the regulator" theory runs headlong into the *Noerr-Pennington* doctrine. That doctrine "derives from the First Amendment's guarantee of 'the right of the people … to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). It provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* The *Noerr-Pennington* doctrine applies to RICO claims, just as it does to other statutory contexts. *Comm. to Protect*, 235 F. Supp. 3d at 1155; *see also, e.g.*, *Sosa*, 437 F.3d at 931–32 & n.6; *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1156 (N.D. Cal. 2014); *Lynn v. Friedenthal*, 2011 WL 6960823, at *7 (C.D. Cal. Dec. 2, 2011). Protected lobbying and petitioning conduct includes urging a federal agency to "exercise its administrative discretion … by taking or refraining from an action." *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 8727693, at *11 (C.D. Cal. Feb. 17, 2009). Advocating for or against regulatory action "closely resembles traditional legislative or executive lobbying," which is the "realm in which petitioning rights enjoy their greatest protection." *Id.* This sort of activity enjoys *Noerr-Pennington* immunity "even when," as Plaintiffs allege, defendants supposedly use "unethical and deceptive methods." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499–500 (1988).

Each of the alleged predicate acts identified above, as well as the allegation that ZF and STMicro "failed to timely, accurately, and completely disclose the vulnerability of the defective ACUs [and] ASIC EOS to NHTSA," CAC ¶ 580(a),[7] is protected under *Noerr-Pennington*. Urging NHTSA "to exercise its administrative discretion … by taking or

---

[7] This failure-to-disclose allegation is also not actionable because "the duty to disclose information to NHTSA pursuant to the Motor Vehicle Safety Act [ ] cannot be a RICO predicate act." *Leon*, 301 F. Supp. 3d at 1236; *Ayers v. Gen. Motors Corp.*, 234 F.3d 514, 521–22 (11th Cir. 2000). The Safety Act creates a comprehensive scheme of administrative remedies the government may pursue for violation of the Act's notification requirements. *Ayers*, 234 F.3d at 522; *see, e.g.*, 49 U.S.C. §§ 30118(b), (e), 30121, 30162(a), 30163. In light of this "extensive administrative scheme," Congress "did not intend to equate a violation of the Safety Act's notification requirements in and of itself with the felony of mail or wire fraud." *Ayers*, 234 F.3d at 522; *accord Leon*, 301 F. Supp. 3d at 1236.

13

**DEFS.' JOINT MOTION TO DISMISS**

refraining from an action" is precisely the "realm in which petitioning rights enjoy their greatest protection." *Aventis*, 2009 WL 8727693, at *11. These statements cannot form the basis of predicate acts of mail or wire fraud. *E.g.*, *Sosa*, 437 F.3d at 931–32; *Comm. to Protect*, 235 F. Supp. 3d at 1155.

### 2. Plaintiffs' Predicate Acts Premised On Labeling Or Advertising Fail Because They Are Insufficiently Pleaded.

Plaintiffs also fail to plead RICO predicate acts against the Vehicle Manufacturer Defendants based on allegedly misleading vehicle labels and advertising. Both the mail and wire fraud statutes require "the formation of a scheme to defraud" and "the specific intent to defraud," *Eclectic Props.*, 751 F.3d at 997, and allegations invoking either statute are subject to Rule 9(b)'s heightened "particularity" standard, *Mostowfi*, 269 F. App'x at 623. When, as here, Defendants have operated "legitimate businesses for years …, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 997–98.

Many of the alleged predicate acts Plaintiffs identify—including all remaining alleged acts by the Vehicle Manufacturer Defendants—are nonactionable as mail or wire fraud. Plaintiffs allege that:

- Each Vehicle Manufacturer Defendant "violated the mail fraud act by affixing false and/or misleading safety certifications" in their respective Class Vehicles "and shipping them to dealers through interstate carriers," CAC ¶¶ 602(a), 624(a), 647(a), 670(a), 692(a);

- Each Vehicle Manufacturer Defendant "violated the mail and/or wire fraud acts by using mail and/or wire in connection with the creation of Monroney stickers [*i.e.*, window stickers describing the equipment and features of the vehicles] and owners' manuals for [its respective Class Vehicles] that contained false and/or misleading statements and assurances," *id.* ¶¶ 602(a), 624(a), 647(a), 670(a), 692(a); and

- Each Vehicle Manufacturer Defendant "violated the mail and wire [fraud] acts by falsely advertising the safety of [their respective Class Vehicles] through broadcast media, through social media, on its website, and in printed materials," *id.* ¶¶ 602(b), 624(b), 692(b); *see id.* ¶¶ 647(b), 670(b) (both similar).

14

**DEFS.' JOINT MOTION TO DISMISS**

In none of these allegations have Plaintiffs "detail[ed] with particularity the time, place, and manner of each act of fraud, plus the role of each defendant," "set forth an explanation as to why the statement or omission complained of was false and misleading," *Mostowfi*, 269 F. App'x at 624, or adequately pleaded "the formation of a scheme to defraud" or "the specific intent to defraud," *Eclectic Props.*, 751 F.3d at 997.

For instance, Plaintiffs fail to plead "the who, what, when, where, and how of the misconduct charged." *Toyota UAM*, 826 F. Supp. 2d at 1201. This is a demanding task. In *Toyota UAM*, plaintiffs alleged that four subsidiaries and manufacturers formed an association-in-fact enterprise and committed the necessary predicate acts through "(1) wire and mail communications made to consumers in the form of commercials, marketing materials, and internet marketing; (2) wire and mail communications to dealers; (3) wire and mail communications to [NHTSA]; and (4) wire and mail communications in public statements." *Id.* at 1199–1200. The court dismissed those RICO claims, holding that the plaintiffs failed to meet the "pleading-with-particularity requirement regarding the [ ] predicate acts," because they "fail[ed] to ascribe any predicate act to a particular Defendant rather than impermissibly ascribing conduct to 'Toyota' or 'Defendants' generally," and, even when plaintiffs "attributed certain statements to named individuals, … the Toyota entity upon whose behalf such statements were made is not identified, and the individuals themselves are not named as parties." *Id.* at 1200–201. "Thus, although the what, when and where are sometimes alleged, the 'who' is never identified." *Id.* at 1201.

The present case is even more straightforward than *Toyota UAM* because Plaintiffs fail to plead not just one but *several* of "the who, what, when, where, and how" components of the alleged fraud. While Plaintiffs attach "examples" of each Vehicle Manufacturer Defendant's Monroney labels, advertisements, and statements regarding vehicle safety, *see* CAC ¶ 602(a)–(b) & Exs. 1, 4–7 (HKMC); *id.* ¶ 624(a)–(b) & Exs. 1, 9–10 (FCA); *id.* ¶ 647(a)–(b) & Exs. 1, 12–13 (Toyota); *id.* ¶ 670(a)–(b) & Exs. 1, 15–16 (Honda); *id.* ¶ 692(a)–(b) & Exs. 1, 17, 19 (Mitsubishi), they do not detail the who, what, when, where, and how of even those isolated examples, including which Plaintiffs saw what, which

Defendant said what, and when, where, and how each individual Plaintiff was allegedly deceived.

Plaintiffs next rely on the Vehicle Manufacturer Defendants' alleged failures "to warn consumers of a defect" and the allegation that the press releases and advertisements "omitted any description of the defect." CAC ¶¶ 602(a)–(b), 624(a)–(b), 647(a)–(b), 670(a)–(b), 692(a)–(b). But Plaintiffs do not adequately explain "why the statement or omission complained of was false and misleading." *Mostowfi*, 269 F. App'x at 624. To state a claim for mail or wire fraud, a plaintiff generally must identify "an 'affirmative, material misrepresentation,'" *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010). An omission or non-disclosure "can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged"—*e.g.*, a "fiduciary duty" or "explicit statutory duty created by legislative enactment." *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986); *see also, e.g.*, *United States v. Shields*, 844 F.3d 819, 822–23 (9th Cir. 2016) (similar); *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (similar). Plaintiffs do not allege any applicable fiduciary or explicit statutory duty and therefore cannot rely on alleged omissions or non-disclosures.

At bottom, Plaintiffs' allegations relating to mislabeling or advertising acts do not reflect the "significant level of factual specificity" that is "required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 997–98. Just as in *Shaw*, the gravamen of Plaintiffs' allegations in this case is that Defendants "knew of a product defect but chose to nonetheless conceal the defect and market the vehicle to unsuspecting consumers." 220 F. Supp. 3d at 1056 (citing *Toyota UAM*, 826 F. Supp. 2d at 1199–1200). That does not equate to criminal fraud.

### 3. Plaintiffs' Predicate Acts Premised On ZF's And STMicro's Communications With Each Other And The OEMs Also Fail.

Finally, the alleged predicate acts include assertions made "[u]pon information and belief" that ZF and STMicro "used mail and wire to successfully execute the ACU Enterprise's fraudulent scheme, including sending invoices to the Vehicle Manufacturers,

corresponding with [each other], and shipping the defective ACUs." CAC ¶ 580(b)–(c). These allegations fall short for at least two reasons.

**First**, allegations made "upon information and belief" are categorically insufficient when plaintiffs fail to indicate the factual basis for their supposed information and belief. *See, e.g.*, *Goh v. Prima Fin. Grp., Inc.*, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017). Information-and-belief pleading is especially insufficient here given that Rule 9(b) applies, so Plaintiffs must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant," and "set forth an explanation as to why the statement or omission complained of was false and misleading." *Mostowfi*, 269 F. App'x at 624.

Plaintiffs do none of that here. Instead, they plead in conclusory terms that ZF's and STMicro's unspecified and unidentified invoicing, correspondence, and shipping practices all helped "successfully execute the ACU Enterprise's fraudulent scheme." CAC ¶ 580(b)–(c). Plaintiffs do not identify anything fraudulent about the referenced invoices, correspondence, or shipping practices—*e.g.*, they do not allege the invoices were inaccurate or contained false information. While they allege ZF and STMicro committed these acts "since around 2008," *id.*, they fail to identify *any* examples of invoices, correspondence, or shipping practices, let alone with the particularity Rule 9(b) demands. There is thus nothing indicating that ZF's or STMicro's acts were anything other than routine business activities. *See, e.g.*, *Leon*, 301 F. Supp. 3d at 1235 (dismissing RICO claims when plaintiffs alleged "'regular contact' between" defendants but did "not mention who at each company was in contact, what they were in contact about, or when, where, and how these communications occurred … let alone the precise detail required by Rule 9(b)," and "fail[ed] to specify who … shipped what [ ] parts to [whom]; when or where these shipments occurred; or how these shipments constituted part of a scheme to defraud").

In short, in making these allegations against ZF and STMicro, Plaintiffs simply allege that certain correspondence was sent and then claim that it was fraudulent, without alleging what was actually sent, who sent it, when it was sent, or how it was fraudulent. Such allegations "are insufficient both because they are conclusory and because they are

17

**DEFS.' JOINT MOTION TO DISMISS**

based on 'information and belief,' without providing 'the factual basis for the belief.'"
*Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1062 (C.D. Cal. 2014).

*Second*, even if Plaintiffs had pleaded the acts themselves adequately, ZF's or STMicro's routine invoicing, correspondence, and shipping practices are not actionable mail or wire fraud. The mail and wire fraud statutes do not criminalize all alleged fraud that uses the mails or wires. Rather, they require a false communication intended (1) to "deprive another of the intangible right of honest services"; (2) "to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article"; or (3) to "obtain[] money or property" from the victim. 18 U.S.C. §§ 1341, 1343, 1346; *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses…."). In short, they require a scheme to obtain money or property, or to carry out a scheme of bribes and kickbacks. *See Skilling v. United States*, 561 U.S. 358, 368–69 & n.1 (2010).

Plaintiffs do not allege a bribery or kickback scheme. Nor do they allege a scheme "to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious … article." 18 U.S.C. § 1341. Plaintiffs therefore must rely on a purported scheme to "obtain[] money or property." *Id.* § 1343. At best, though, Plaintiffs' allegations demonstrate that ZF used the mail or wires to obtain money or property from *the Vehicle Manufacturer Defendants* (*i.e.*, the parties purchasing the allegedly defective ACUs), not from *Plaintiffs*. That is not sufficient. And as to STMicro, there is no allegation that it even sold anything to the Vehicle Manufacturer Defendants, let alone to Plaintiffs.

## C.    Plaintiffs Fail To Plead A Cognizable RICO Injury.

Plaintiffs also fail to plead the required RICO injury. "By its terms, RICO compensates only for injury to 'business or property.'" *GM Ignition Switch*, 2016 WL 3920353, at *16 (quoting 18 U.S.C. § 1964(c)). Accordingly, Plaintiffs must show that Defendants injured their "business or property." *Lavigne v. Herbalife, LTD*, 2019 WL

6721619, at \*5 (C.D. Cal. Oct. 22, 2019); *see also Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). In applying the "business or property" limitation, "RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss,'" and "[a]n expectancy interest alone is insufficient." *Lavigne*, 2019 WL 6721619, at \*6. For this reason, "'loss of value' or 'benefit of the bargain' damages, … are generally unavailable to RICO suits and plainly unavailable when … a RICO claim sounds in fraud in the inducement." *GM Ignition Switch*, 2016 WL 3920353, at \*16. This is because a plaintiff's alleged "expectation" does not constitute an injury to business or property under RICO absent "proof of *concrete financial loss*." *Id.* Plaintiffs pursuing a theory of "diminished value" are pursuing "purely speculative" losses, not a cognizable RICO injury. *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1063–64 & n.21 (C.D. Cal. 2003).

Applying these principles, courts across the country reject diminution-in-value and benefit-of-the-bargain injuries under RICO in automotive product-defect cases. For example, in *In re Bridgestone/Firestone Inc. Products Liability Litigation*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), the plaintiffs claimed they suffered a RICO injury "because they paid inflated prices to buy or lease products the market has now devalued because their previously concealed design defects render[ed] them unsafe." *Id.* at 1091. The court rejected this theory, explaining that "[d]espite their description of injury in the past tense, [the] assertion of financial loss is grounded in the possibility of future events that may cause them to suffer the loss associated with products they claim are defective or diminished in value"—namely, that they might "receive on trade-in or resale of their [vehicles] less than they would have received absent the alleged defects." *Id.* But the mere *potential* of diminished resale value is not an injury to business or property. Instead, RICO "affords a monetary remedy only to plaintiffs who have *actually realized the diminished value* or experienced product failure, and not to those who allege a risk (or even a probability) of such loss." *Id.* (emphasis added). Plaintiffs here do not plead that they have realized any such loss.

**DEFS.' JOINT MOTION TO DISMISS**

Likewise, the plaintiffs in *GM Ignition Switch* alleged that, because their vehicles were equipped with defective ignition switches, the defendant "never gave [the plaintiffs] what it promised." 2016 WL 3920353, at *17. Dismissing the RICO claims, the court explained that the plaintiffs' purported expectation in the resale value of their vehicles was "at best implied," and that "no court has recognized brand devaluation (on which [any] implied-resale theory turns) as a cognizable injury." *Id.*

So too here. Plaintiffs primarily assert injury due to the "purchase or lease of defective Class Vehicles" and alleged "[o]verpayment at the time of purchase or lease for Class Vehicles with an undisclosed safety defect." CAC ¶ 586(a)–(b); *see id.* ¶¶ 608(a)–(b), 630(a)–(b), 653(a)–(b), 676(a)–(b), 698(a)–(b) (all similar); *see also, e.g.*, *id.* ¶¶ 570, 582, 604, 626, 648, 672, 694. In other words, Plaintiffs are seeking to recover for disappointed expectations upon purchasing a product. That is not a cognizable RICO injury. A cognizable RICO injury requires "concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset*, 300 F.3d at 1086–87; *GM Ignition Switch*, 2016 WL 3920353, at *16. No such loss has been alleged here.

Although Plaintiffs also allege injury due to unspecified "[o]ther, ongoing out-of-pocket and loss-of-use expenses," CAC ¶¶ 586(c), 608(c), 630(c), 653(c), 676(c), 698(c), those alleged injuries are wholly conclusory. Plaintiffs do not identify any actual out-of-pocket or loss-of-use expenses incurred and do not even provide examples of the expenses that might fall into that category. These conclusory allegations also fail to adequately plead the kind of "concrete financial loss" required under civil RICO. *Lavigne*, 2019 WL 6721619, at *6.

### D.   Plaintiffs Fail To Plead Proximate Causation.

Yet another reason for dismissal of Plaintiffs' RICO claims is the failure to plead proximate causation. The "central question" for "proximate causation … is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also, e.g.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10–12 (2010) (reaffirming that "in the RICO context, the focus is on the directness of the

relationship between the conduct and the harm," and dismissing RICO claims because plaintiff's "theory of causation is far too indirect"); *Fields v. Twitter, Inc.*, 881 F.3d 739, 744–50 (9th Cir. 2018) (similar, applying RICO proximate-causation precedents in context of Anti-Terrorism Act, which "use[s] 'the same words'"). RICO's rigorous proximate-causation requirements mean that private civil RICO plaintiffs generally cannot recover for alleged misrepresentations to the government, even on a theory that the government was misled into taking or refraining from action that injured plaintiffs, because that causal chain is not sufficiently direct. *See, e.g.*, *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873–74 (9th Cir. 2010) (organizer of unlawful tax-shelter scheme did not proximately cause injury to participant in scheme when United States was direct victim of fraud); *Halpin v. Crist*, 405 F. App'x 403, 405–06 (11th Cir. 2010) (party that unlawfully obtained license to operate prison canteen did not proximately cause injury to inmates when Department of Corrections was direct victim of fraud); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 261–67 (3d Cir. 1999) (similar). The "'direct relationship' requirement," *Hemi*, 559 U.S. at 11–12, serves to limit the universe of potential plaintiffs to the "immediate victims of an alleged RICO violation," *Anza*, 547 U.S. at 460. *See also Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 269–70 (1992).

Plaintiffs' RICO claims do not plausibly allege the required direct relationship. Plaintiffs allege that "ZF TRW, STMicro, [and the relevant Vehicle Manufacturer Defendant] obtained money directly or indirectly from sales or leases to Plaintiffs and the Nationwide [Vehicle Manufacturer Defendant] Class by means of materially false or fraudulent misrepresentations and omissions of material facts." CAC ¶¶ 591, 613, 681; *see id.* ¶¶ 569, 635, 658 (all similar). But while Plaintiffs allege that Defendants "obtained money directly or indirectly," the thrust of each enterprise is Defendants' alleged efforts to defraud *NHTSA*, not Plaintiffs or putative class members themselves. Far from the "direct relationship" between the conduct and the harm required for proximate causation (*Hemi*, 559 U.S. at 12), Plaintiffs' alleged injuries could have resulted only from a lengthy, multi-step causal chain involving the overarching influence and independent actions of

21

**DEFS.' JOINT MOTION TO DISMISS**

government actors and the resulting regulation (or lack thereof), which breaks the proximate causation required under RICO. *See Anza*, 547 U.S. at 459. Moreover, as in *Anza*, there is "no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly," because if Plaintiffs' allegations are accurate, NHTSA and other regulatory bodies "can be expected to pursue appropriate remedies." *Id.* at 460.

Underscoring the disconnect between Plaintiffs' alleged injuries and Defendants' alleged acts, many of the alleged "predicate acts" took place long after most Plaintiffs purchased or leased their Class Vehicles. For instance, Plaintiffs largely rely on purported statements and actions from 2016 and 2018, including a February 2016 presentation, a September 2016 letter, and a March 2018 letter and presentation (CAC ¶¶ 580(d)–(f), 602(e)–(g), 624(d)–(f), 647(d)–(f), 670(c)–(e), 692(c)–(e)); safety recall reports issued in September 2016, April 2018, June 2018, and January 2020 (*id.* ¶¶ 602(c), 624(c), 647(h)); and other statements from March 2018 and August 2019 (*id.* ¶¶ 602(d), 647(g)). The vast majority of named Plaintiffs, however, had already purchased or leased their vehicles by the end of 2015, and fewer than ten purchased or leased their vehicles after January 1, 2018. *See id.* ¶¶ 72–138 (46 of 66 named Plaintiffs purchased or leased their vehicles between February 21, 2009 and December 30, 2015; 57 of 66 named Plaintiffs purchased or leased their vehicles between February 21, 2009 and January 1, 2018). Predicate acts that allegedly occurred *after* a purchase or lease could not have caused that Plaintiff to overpay.

Finally, based on the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), Plaintiffs lack RICO standing because they are indirect purchasers. *See, e.g.*, *Rickman v. BMW of N. Am.*, 2020 WL 3468250, at *8 (D.N.J. June 25, 2020) (explaining that "the so-called 'indirect purchaser rule'" from *Illinois Brick* is an "absolute bar to RICO standing" because "federal jurisprudence interpreting antitrust principles governs RICO claims, because Congress modeled RICO's civil action provision on a substantially similar provision in the Clayton Act"); *see also id.* at *9 (collecting cases).

22

### E.     Plaintiffs Fail To Plead A RICO Conspiracy Claim.

Plaintiffs also allege RICO conspiracy claims under 18 U.S.C. § 1962(d) as to each enterprise. Those claims are entirely derivative of the substantive RICO claims; indeed, Plaintiffs do not include *any* separate or particularized allegations in support of their RICO conspiracy claims. They simply tack § 1962(d) claims onto each of their § 1962(c) counts, alleging in conclusory terms that Defendants "agreed to conduct and participate, directly and indirectly," in the affairs of each enterprise, and that "[f]or the conspiracy to succeed, [each Defendant] had to commit to secrecy about the existence and scope of the [ACU] defect," *id.* ¶¶ 571, 592, 614, 636, 659, 682, and that "[w]ithout [each Defendant's] willing participation," the various enterprises' "scheme[s] and common course[s] of conduct would have been unsuccessful," *id.* ¶¶ 576, 598, 620, 642, 665, 688. Plaintiffs plead no facts showing any unlawful agreement among the alleged conspirators. Such bare-bones allegations do not satisfy federal pleading requirements—let alone the heightened requirements of Rule 9(b), which require particularized allegations that each defendant "agreed to participate in an unlawful act." *Lavigne*, 2019 WL 6721619, at *9.

Like common law conspiracy, RICO requires that the defendant take an overt act in furtherance of the conspiracy. For RICO, that overt act must itself be a prohibited racketeering or independently wrongful act. *See Beck v. Prupis*, 529 U.S. 494, 505–06 (2000). The Supreme Court has held and reaffirmed that an "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)." *Bridge v. Phoenix Bond & Indem. Co*, 553 U.S. 639, 651 (2008) (citing *Beck*, 529 U.S. at 505–06). Plaintiffs here have not identified any Defendant's purported "overt act" in furtherance of the alleged conspiracies, and have not pleaded that they suffered injury caused by any such acts.

In any event, "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *see also, e.g.*, *Lavigne*, 2019 WL 6721619, at *9.

**DEFS.' JOINT MOTION TO DISMISS**

## II.   The Court Should Dismiss All Of Plaintiffs' Fraud-Based Claims.[8]

### A.   Plaintiffs Have Failed To Plead Fraud With Particularity.

Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." For fraud-based claims, this means plaintiffs must lay out "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The rule applies to affirmative misrepresentations and fraudulent omissions alike. *Id.*; *see also Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012); *Goldstein v. Gen. Motors LLC*, 2020 WL 1849659, at *10 (S.D. Cal. Apr. 13, 2020).

All of Plaintiffs' non-warranty claims sound in fraud, including not only their "nationwide" common law fraud claims, CAC ¶¶ 700–721, and their previously discussed RICO claims, *id.* ¶¶ 566–699, but also their "nationwide" claim for unjust enrichment, *id.* ¶¶ 722–731, and their state statutory claims, *see id.* ¶¶ 732–2590 (depicting Defendants as "intentionally misrepresent[ing], omit[ting], conceal[ing], and/or fail[ing] to disclose material facts"). Rule 9(b) applies to each of these claims. *See, e.g.*, *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 231 (N.D. Cal. 2019) (common law fraud claims must satisfy Rule 9(b)); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8, *10 (N.D. Cal. Jan. 4, 2018) (same as to unjust enrichment claims sounding in fraud); *Mostowfi*, 269 F. App'x at 623 (same as to RICO claims); *Kearns*, 567 F.3d at 1125 (same as to state statutory claims).

Although Plaintiffs pursue classwide relief, no class has been certified, so the question is whether the 66 named Plaintiffs have alleged the "who, what, when, where, and how" of the fraud that allegedly tainted their individual purchases. *See Kearns*, 567 F.3d

---

[8] Nationwide Counts 1–8, AL Counts 3–4, AZ Counts 3–4, CA Counts 5–7, CO Counts 3–4, CT Counts 3–4, FL Counts 3–4, IL Counts 3–6, IN Counts 3–4, KS Counts 3–4, LA Counts 2–3, MD Counts 3–4, MA Counts 3–4, MI Counts 3–4, MN Counts 3–6, MO Counts 3–4, MT Counts 3–4, NV Counts 3–4, NJ Counts 3–4, NY Counts 3–5, NC Counts 3–4, OK Counts 3–4, PA Counts 3–4, SC Counts 3–6, SD Counts 3–4, TN Counts 3–4, TX Counts 3–4, VA Counts 3–4, WA Counts 3–4, and WI Count 3.

**DEFS.' JOINT MOTION TO DISMISS**

at 1126 (analyzing whether class representative alleged fraud with particularity as to his individual claims). Yet far from alleging who misled them, with what materials, and when, where, and how the deception occurred, Plaintiffs offer boilerplate. Repeating the same allegations time and again, each Plaintiff alleges that he or she reasonably expected a non-defective vehicle, but that Defendants concealed the alleged defect and persuaded them to buy vehicles they wouldn't have bought (or would have paid less for) had they known of the alleged defect. CAC ¶¶ 73–138. This is not "particularity"; it is high-level haziness.

Plaintiffs go on to claim Defendants "made misleading statements and omissions concerning the ACU defect for years," *id.* at p. 97, pointing to various labels, stickers, indicators, advertisements, owners' manuals, websites, press releases, and brochures, *id.* ¶¶ 302–311, 365–378, 410–417, 461–470, 498–510, 527–535; 602(a)–(b); 624(a)–(b); 647(a)–(b); 670(a)–(b), 692(a)–(b). Yet no specific statements are attributed to any specific Defendant; they are attributed instead to, at most, an undifferentiated corporate family of Defendants, like "Toyota" or "Honda." That by itself flunks the first part of Rule 9(b)— the "who" in "who, what, when, where, and how." *See, e.g.*, *Buckley v. BMW N. Am.*, 2019 WL 6465509, at *11–12 (C.D. Cal. Dec. 2, 2019); *Toyota UAM*, 826 F. Supp. 2d at 1201.

Even more conspicuously absent are any allegations about which particular label, sticker, indicator, advertisement, owners' manual, website, press release, or brochure each of the named Plaintiffs reviewed (if any) before their purchase, as Rule 9(b) requires. Each named Plaintiff—individually, not *en masse*—must allege with particularity what they saw and heard, when they saw and heard it, what statements they relied on, what statements they found material, and who was responsible for the statements they now claim tricked them into buying their vehicles. *See Kearns*, 567 F.3d at 1126 (upholding dismissal for failure to specify these items as to named plaintiff in case alleging that a putative class overpaid for various vehicles); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing complaint where plaintiff "failed to specifically allege that he saw any of the statements that he claims are misleading, or where he saw them, under what circumstances, how they impacted his purchasing decision, etc."); *Yetter*, 428

**DEFS.' JOINT MOTION TO DISMISS**

F. Supp. 3d at 232. Again, the Complaint provides no details about *any* information that *any* named Plaintiff reviewed before buying a vehicle, let alone what misrepresentations or omissions any Plaintiff actually read or saw. Under Rule 9(b), this requires dismissal of all claims sounding in fraud.

Nor can Plaintiffs save their claims by asserting that they are alleging fraudulent omissions, not just affirmative misrepresentations. Rule 9(b) applies to "omissions" allegations too, and it requires Plaintiffs to allege not only what information was omitted, but also "where the omitted information should or could have been revealed" and "representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen*, 2012 WL 841019, at *3; *see also Heber v. Toyota Motor Sales U.S.A., Inc.*, 2018 WL 3104612, at *6 (C.D. Cal. June 11, 2018); *Grassi v. Int'l Comfort Prods., LLC*, 2015 WL 4879410, at *5 (E.D. Cal. Aug. 14, 2015). Plaintiffs simply never answer a basic question: What "advertisements, offers, or other representations" did each individual named Plaintiff rely on to make their purchases, such that they would have been aware of a disclosure had one been made? Because Plaintiffs have not answered that and other questions necessary to satisfy Rule 9(b), all of their fraud-based claims should be dismissed.

### B.     The Economic Loss Rule Bars Several Plaintiffs' Claims.[9]

The economic loss rule—which generally states that a plaintiff may not recover damages in tort that do not involve physical injury—bars damages for affirmative misrepresentations in Florida, Michigan, Missouri, Pennsylvania, Tennessee, and Wisconsin.[10] It also bars claims for fraudulent omission in Alabama, California, Florida,

---

[9] Nationwide Count 7 as brought by Plaintiffs in AL, CA, FL, MD, MI, MO, NJ, NC, OK, PA, SC, TN, and WI; AL Counts 3–4; CA Counts 5–7; FL Counts 3–4; MD Counts 3–4; MI Counts 3–4; MO Counts 3–4; NJ Counts 3–4; NC Counts 3–4; OK Counts 3–4; PA Counts 3–4; SC Counts 3–6; TN Counts 3–4; and WI Count 3.

[10] *See, e.g.*, *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103–04 (S.D. Fla. 2019) (Florida); *Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 602 (E.D. Mich.

**DEFS.' JOINT MOTION TO DISMISS**

Maryland, Michigan, Missouri, New Jersey, Pennsylvania, South Carolina, Tennessee, and Wisconsin.[11] Under this rule, Plaintiffs may not recover in fraud for claims that "merely restate contractual obligations," *Mosqueda*, 2020 WL 1698710, at *12, or for claims for inadequate value governed by warranty law, *Cardenas*, 418 F. Supp. 3d at 1103. Some states, such as North Carolina, Pennsylvania, and Oklahoma, bar statutory fraud claims for the same reason.[12]

That is fatal for Plaintiffs' fraud-based claims in these states. Plaintiffs do not allege any personal injury, but instead claim only economic loss from the allegedly diminished value of their vehicles. As a result, the Florida, Michigan, Missouri, Pennsylvania, Tennessee, and Wisconsin Plaintiffs cannot recover for affirmative misrepresentations; the Alabama, California, Florida, Maryland, Michigan, Missouri, New Jersey, Pennsylvania, South Carolina, Tennessee, and Wisconsin Plaintiffs cannot recover for their fraudulent omission-based claims; and the North Carolina, Pennsylvania, and Oklahoma Plaintiffs

---

2010) (Michigan); *Flynn v. CTB, Inc.*, 2015 WL 5692299, at *11 (E.D. Mo. Sept. 28, 2015) (Missouri); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684–85 (E.D. Pa. 2011) (Pennsylvania); *Bunn v. Navistar, Inc.*, 2019 WL 333552, at *5 (M.D. Tenn. Jan. 24, 2019) (Tennessee), *aff'd*, 797 F. App'x 247 (6th Cir. 2020); *Digicorp, Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 654–55, 667 (Wis. 2003) (Wisconsin).

[11] *See, e.g.*, *Harris Moran Seed Co. v. Phillips*, 949 So. 2d 916, 931–33 (Ala. 2006) (Alabama); *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *23–24 (C.D. Cal. Apr. 23, 2020) (California); *Mosqueda v. Am. Honda Motor Co.*, 2020 WL 1698710, at *12 (C.D. Cal. Mar. 6, 2020) (California); *Cardenas*, 418 F. Supp. 3d at 1103–04 (Florida); *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 622 (D. Md. 2014) (Maryland); *Murphy*, 695 F. Supp. 2d at 602 (Michigan); *Flynn*, 2015 WL 5692299, at *11 (Missouri); *Peters v. Countrywide Home Loans, Inc.*, 2016 WL 2869059, at *5 (D.N.J. May 17, 2016) (New Jersey); *Martin*, 765 F. Supp. 2d at 684–85 (Pennsylvania); *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2000) (South Carolina); *Milan Supply Chain Sols. Inc. v. Navistar Inc.*, 2019 WL 3812483, at *6 (Tenn. Ct. App. Aug. 14, 2019) (Tennessee); *Nigrelli Sys., Inc. v. E.I. DuPont de Nemours & Co.*, 31 F. Supp. 2d 1134, 1136–39 (E.D. Wis. 1999) (Wisconsin).

[12] *See, e.g.*, *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 614, 626 (M.D.N.C. 2006) (North Carolina); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (Pennsylvania); *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 630 (Okla. 2000) (Oklahoma).

---

**DEFS.' JOINT MOTION TO DISMISS**

cannot recover for their statutory fraudulent concealment and consumer protection act claims.

### C. Plaintiffs Cannot Allege Personal Jurisdiction Over The Claims Of Absent Nationwide Class Members.

If the Court does not dismiss the Complaint in its entirety, it should dismiss the claims of Plaintiffs who purport to represent an absent nationwide class asserting fraud and unjust enrichment claims, but do not plausibly allege "any adequate link between [the transferor forum] and the nonresidents' claims." *Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S. Ct. 1773, 1781 (2017).[13] In *Bristol-Myers*, the Supreme Court held that a California court did not have specific personal jurisdiction over the claims of hundreds of mass-tort plaintiffs who had "purchased and used [Plavix] in other states." *Id.* at 1779. As the Court explained, "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California," which meant the "mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1780.

The same logic requires that Plaintiffs' effort to represent a "nationwide" class be rejected. Defendants recognize that this Court has not accepted a similar argument in the past. *See Cabrera v. Bayer Healthcare, LLC*, 2019 WL 1146828 (C.D. Cal. Mar. 6, 2019). But the law on this issue has continued to evolve, as summarized in a recent and thorough opinion by another district court in this circuit. *Carpenter v. Petsmart, Inc.*, 2020 WL 996947, at *5 (S.D. Cal. Mar. 2, 2020). As that court noted, the "specific personal jurisdiction inquiry is defendant-focused," with "primary concern" being "the burden on the defendant." *Id.* These concerns are just as acute in class actions as they are in mass-tort

---

[13] Exhibit 3 lists, as to each Defendant, the Plaintiffs who brought claims on behalf of a nationwide class in a forum where certain Defendants are not subject to general jurisdiction.

**DEFS.' JOINT MOTION TO DISMISS**

actions like *Bristol-Myers*. "It makes little logical sense to allow broader personal jurisdiction over a defendant when there are fewer named plaintiffs in the case." *Id.* at *6. Nor do the procedural safeguards in Rule 23 address the Supreme Court's "primary concern," because those safeguards "are meant primarily to protect the absent class members and create criteria for binding the absent class members," not to "favor or protect defendants." *Id.*[14] The same due process concerns that required dismissal of the claims of many mass-tort plaintiffs in *Bristol-Myers* also foreclose a nationwide class here. *See, e.g.*, *Carpenter*, 2020 WL 996947, at *3–6 (holding that plaintiffs could not represent a nationwide class); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 723–24 (E.D. Mo. 2019); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850–51 (N.D. Ohio, 2018); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 56 (D. Mass. 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). Like the claims of the out-of-state plaintiffs in *Bristol-Myers*, Plaintiffs' claim to represent absent nationwide class members should be dismissed.

### D.   Plaintiffs' "Nationwide" Common Law Fraud And Unjust Enrichment Claims Fail For Additional Reasons.

Personal jurisdiction aside, the Court should dismiss or strike the "nationwide" class allegations in Counts 7 (common law fraud) and 8 (unjust enrichment), CAC ¶¶ 700–731, for three additional reasons. ***First***, Plaintiffs do not specify under which state's (or states') laws they are bringing these "nationwide" claims. This is fatal to their claims because "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether

---

[14] Although some courts not applying *Bristol-Myers* to nationwide class actions have done so on the theory that absent class members are not yet parties to the case, that logic does not merit denying Defendants' motion here. As one judge on the D.C. Circuit has explained, "a named plaintiff attempting to bring a class action has two legally cognizable interests. The first is his underlying claim on the merits; the second is the claim that he is entitled to represent a class." *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 302 (D.C. Cir. 2020) (Silberman, J., dissenting). This second claim—that the Plaintiffs *in this case* could represent a nationwide class—is what *Bristol-Myers* requires dismissing.

**DEFS.' JOINT MOTION TO DISMISS**

the claim has been adequately plead[ed]." *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *13 (C.D. Cal. Apr. 10, 2018); *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (requiring plaintiffs to "identify which State's or States' laws they rely upon").[15]

*Second*, Nationwide Counts 7 and 8 fail for lack of standing because they necessarily invoke the laws of states where Plaintiffs do not reside and were not injured, *i.e.*, nearly half of the states in the United States. Courts routinely hold that without a named plaintiff from every state, plaintiffs cannot possibly have standing to assert a "nationwide" claim. *See, e.g.*, *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175–76 (N.D. Cal. 2017).[16] For this additional reason, Nationwide Counts 7 and 8 must be dismissed.

*Third*, Plaintiffs' claims could never be certified for class treatment under Rule 23. As is evident from the Defendants' joint and individual briefing, state fraud and unjust enrichment laws differ materially in myriad ways, with varying statutes of limitation, tolling doctrines, applicable defenses, and elements of the claims, just to name a few. Thus, courts in this District and others have stricken or dismissed nationwide fraud and unjust enrichment class allegations at the pleading stage. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012) (class could not be certified because law of each plaintiff's state of purchase would apply); *Vinci*, 2018 WL 6136828, at *8 (finding material differences in states' fraud and unjust enrichment laws; dismissing nationwide class

---

[15] *See also Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *13 (C.D. Cal. June 24, 2016) (dismissing unjust enrichment claim brought on behalf of nationwide class where plaintiffs did not specify the applicable law); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *11 (N.D. Cal. Sept. 22, 2014); *Gram v. Intelligender, LLC*, 2010 WL 11601035, at *4 (C.D. Cal. Oct. 8, 2010).

[16]*See also Villanueva v. Am. Honda Motor Co.*, 2019 WL 8112467, at *15 (C.D. Cal. Oct. 10, 2019) (plaintiffs lack standing to bring claims under laws of states other than ones they reside in; noting courts "routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) (dismissing nationwide class at pleading stage because "the named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device").

**DEFS.' JOINT MOTION TO DISMISS**

allegations at pleading stage).[17] The Court should do the same here and strike or dismiss the nationwide class allegations in Counts 7 and 8.

### III.   The Court Should Dismiss Plaintiffs' Warranty Claims.[18]

#### A.   Plaintiffs Fail To Allege A Breach Of An Implied Warranty Because Their Vehicles Are Merchantable.[19]

Plaintiffs erroneously assume that the implied warranty of merchantability is breached whenever the product might have a defect that may later manifest. But this assumption is contrary to the purpose and function of the warranty and is contrary to settled law. The warranty is not breached until a possible defect manifests.

The implied warranty of merchantability "arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards." *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996). It does not assure that the product will fulfill the buyer's expectations but instead guarantees a minimal level of quality. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). "Thus, a new car need not 'be perfect in every detail'; rather, its implied merchantability 'requires only that a vehicle be reasonably suited for ordinary use.'" *Brand v. Hyundai Motor Am.*, 226 Cal.

---

[17] *See also Kramer v. Wilson Sporting Goods Co*., 2013 WL 12133670, at *5 (C.D. Cal. Dec. 13, 2013) (striking nationwide fraud claims at pleading stage; noting "significant and material differences between California law and the laws of other states"); *Val Mourik v. Big Heart Pet Brands*, *Inc.*, 2018 WL 1116715, at *2–3 (N.D. Cal. Mar. 1, 2018); *Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009) (striking nationwide fraud class at pleading stage); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming grant of motion to strike nationwide class allegations).

[18] AL Counts 1–2, AZ Counts 1–2, CA Counts 1–4, CO Counts 1–2, CT Counts 1–2, FL Counts 1–2, IL Counts 1–2, IN Counts 1–2, KS Counts 1–2, LA Counts 1–2, MD Counts 1–2, MA Counts 1–2, MI Counts 1–2, MN Counts 1–2, MO Counts 1–2, MT Counts 1–2, NV Counts 1–2, NJ Counts 1–2, NY Counts 1–2, NC Counts 1–2, OK Counts 1–2, PA Counts 1–2, SC Counts 1–2, SD Counts 1–2, TN Counts 1–2, TX Counts 1–2, VA Counts 1–2, WA Counts 1–2, and WI Counts 1–2.

[19] AL Count 2, AZ Count 2, CA Counts 3–4, CO Count 2, CT Count 2, FL Count 2, IL Count 2, IN Count 2, KS Count 2, LA Count 2, MD Count 2, MA Count 2, MI Count 2, MN Count 2, MO Count 2, MT Count 2, NV Count 2, NJ Count 2, NY Count 2, NC Count 2, OK Count 2, PA Count 2, SC Count 2, SD Count 2, TN Count 2, TX Count 2, VA Count 2, WA Count 2, and WI Count 2.

---

31

**DEFS.' JOINT MOTION TO DISMISS**

App. 4th 1538, 1546 (2014). "Since cars are designed to provide transportation … where a car can provide safe, reliable transportation, it is generally considered merchantable." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012). The text of the Uniform Commercial Code (UCC) applicable in each relevant state requires that the goods be "fit for the ordinary purposes for which such goods are used." *See, e.g.*, Cal. Com. Code § 2314(2)(c).

The requirement that the good be fit for its ordinary purpose is directed to the *functionality* of the product. Hence, defendants frequently establish compliance with the warranty as a matter of law by showing that the questioned product has performed satisfactorily for an extended period. *See Oddo v. Arcoaire Air Conditioning & Heating*, 2017 WL 372975, at *15–16 (C.D. Cal. Jan. 24, 2017); *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (vehicle was merchantable where it had been driven more than 20,000 miles without incident); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (dismissing claims for breach of the implied warranty of merchantability where plaintiffs drove their vehicles for years before experiencing the ignition switch issue); *see also Bussian*, 411 F. Supp. 2d at 624; *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 174 (S.D. Miss. 1996); *Ford Motor Co. v. Fairley*, 398 So. 2d 216, 219 (Miss. 1981); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011).

It follows that a product that has continued to perform its function satisfactorily is not unmerchantable simply because it contains a theoretical defect that may or may not manifest during the product's expected life. "It is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect*." *O'Neill v. Simplicity Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) (emphasis added).

Again, the warranty of merchantability is meant only to guarantee that a product meets minimum standards, and certainly not to ensure a particular "value," as Plaintiffs suggest. CAC ¶ 556(l) ("Whether Defendants' concealment of the true defective nature of

the Class Vehicles caused the market price of the Class Vehicles to incorporate a premium reflecting the assumption by consumers that the Class Vehicles were equipped with fully functional Occupant Restraint Systems and, if so, the market value of that premium"); *id.* ¶ 556(m) ("Whether the Class Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the defective ACUs at issue").

Moreover, where the product has not actually malfunctioned, there is no breach of the implied warranty. *Birdsong,* 590 F.3d at 958; *see, e.g.*, *Angus v. Shiley*, 989 F.2d 142, 147 (3d Cir. 1993). This principle has been repeatedly applied in automotive cases where plaintiffs allege that the vehicle contains a latent safety defect:

- In *American Suzuki Motor Corp. v. Superior Court of Los Angeles County*, 37 Cal. App. 4th 1291, 1296 (1995), the court rejected a claim that the vehicle in question was not merchantable because of its alleged propensity to roll over.

- In *Taragan v. Nissan North America, Inc.*, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013), the court dismissed an implied warranty claim premised on allegations that a defect in the vehicle's key ignition interlock system made the vehicle susceptible to rollaway incidents because none of the plaintiffs experienced such an incident. The risk of a future malfunction did not give rise to a present claim.

- In *Kia Motors America Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. 3d DCA 2008), a Florida appellate court rejected economic loss claims similar to the ones brought here arising from an allegedly life-threatening defect from premature brake wear. The court placed Florida within the "majority jurisprudence" that denied recovery for those consumers whose vehicles had not "manifested a deficiency." *Id.*; *see also Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (per curiam) (affirming dismissal of warranty claims where plaintiffs did not allege that they experienced a defect within the period); *Breakstone v. Caterpillar, Inc.*, 2010 WL 2164440, at *5–6 (S.D. Fla. May 6, 2010).

- And there are numerous similar cases throughout the country. *See Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999); *In re Air Bag Prods. Litig.*, 7 F. Supp. 2d 792, 803 (E.D. La. 1998); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1532 (E.D. Mo. 1997), *aff'd*, 172 F.3d 623 (8th Cir. 1999); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99–100 (S.D.N.Y. 1997); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 1472335, at *3–4 (Pa. Com. Pleas May 22, 2002).

Finally, the implied warranty of merchantability is not intended to provide compensation for the type of loss claimed here. It is not concerned with the product's "economic performance." As the Fourth Circuit held in *Carlson v. General Motors Corp.*,

33

**DEFS.' JOINT MOTION TO DISMISS**

the concept of merchantability is concerned with the product's functionality and does not encompass the consumer's expectations concerning resale value. 883 F.2d 287, 297–98 (4th Cir. 1989). Accordingly, courts have dismissed claims based upon unmanifested defect allegations because the damages are simply too speculative. *See, e.g.*, *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 12 (Sup. Ct. 2002); *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 564–65 (N.D. 2002). And even if resale value were a valid interest protected by the implied warranty of merchantability, it would not sustain a claim where the plaintiff alleges only an unrealized, hypothetical loss of value, as is the case here. *See Briehl*, 172 F.3d at 629–29; *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1986).

## B.   Plaintiffs' Implied Warranty Claims Fail For Lack Of Privity.[20]

In many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity. *See, e.g.*, *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 786–87 (N.D. Cal. Feb. 9, 2017) (privity required under California law); *In re Seagate Tech. LLC Litig.*, 2017 WL 3670779, at \*7–10 (N.D. Cal. Aug. 25, 2017) (privity required under Florida, New York, and Tennessee law).[21] It is fundamental that "[o]ne who receives

---

[20] AL Count 2, AZ Count 2, CA Counts 3–4, CT Count 2, FL Count 2, IL Count 2, KS Count 2, MD Count 2, NY Count 2, NC Count 2, WA Count 2, WI Count 2.

[21] *See also State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.*, 505 So. 2d 1223, 1227 (Ala. 1987); *Flory v. Silvercrest Indus.*, 633 P.2d 383, 388 (Ariz. 1981); *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048–49 (Cal. 1954); *Koellmer v. Chrysler Motors Corp.*, 276 A.2d 807, 812 (Conn. Cir. Ct. 1970); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3rd DCA 2005); *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 312–13 (Idaho 1975); *Mellander v. Kileen*, 407 N.E.2d 1137, 1138 (Ill. App. Ct. 1980); *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995); *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 898–99 (Kan. 1984); *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006), *as modified on denial of reh'g* (Jan. 25, 2007); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 637–38 (Md. 1995); *Martin v. Julius Dierck Equip. Co.*, 374 N.E.2d 97, 100 (N.Y. 1978); *Gregory v. Atrium Door & Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992); *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007); *State ex rel. W. Seed Prod. Corp. v. Campbell*, 442 P.2d 215, 217–18 (Or. 1968); *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003) (en banc); *City of La Crosse v. Schubert, Schroeder & Assocs., Inc.*, 240

---

34

goods from another for resale to a third person is not thereby the other's agent in the transaction." Restatement (Second) of Agency § 14J (1958). Accordingly, authorized dealers are not the manufacturer's agents for purposes of privity. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (dismissing implied warranty claim because "there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale"); *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009); *Curl v. Volkswagen of Am. Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007); *see also Ocana v. Ford Motor Co*., 992 So. 2d 319, 326 (Fla. 3d DCA 2008) (dealership was not manufacturer's agent for purpose of establishing privity between automaker and consumer).

A court in this district recently held that an implied warranty claim cannot be maintained against a vehicle manufacturer when a plaintiff acquires a vehicle from a dealership but does not allege "that the dealership is Defendant's authorized agent" or that he or she was a third-party beneficiary. *Shamamyan v. FCA US LLC*, 2020 WL 3643481, at *6 (C.D. Cal. Apr. 1, 2020). Moreover, merely pleading a "legal conclusion that they purchased a vehicle from a manufacturer's 'authorized agent' to establish third-party beneficiary status" is not enough. *Id.*

Plaintiffs purchased vehicles from dealers, not from Defendants. CAC ¶¶ 73–138. Consequently, this Court should find that Plaintiffs lack privity and dismiss the implied warranty claims.

### C.   Plaintiffs' Warranty Claims Fail For Failure To Provide Pre-Suit Notification.[22]

The express and implied warranty claims should also be dismissed based on Plaintiffs' failure to demonstrate compliance with the pre-suit notice requirements in

---

N.W.2d 124, 125 (Wis. 1976), *overruled on other grounds by Daanen & Janssen, Inc. v. Cedarapids, Inc*., 573 N.W.2d 842 (Wis. 1998); *Mainline Tractor & Equip. Co. v. Nutrite Corp*., 937 F. Supp. 1095, 1107–08 (D. Vt. 1996).

[22] AL Counts 1–2, AZ Counts 1–2, CA Counts 1–4, CO Counts 1–2, FL Counts 1–2, IL Counts 1–2, KS Counts 1–2, MD Counts 1–2, MN Counts 1–2, MO Counts 1–2, MT

various states. In many states, consumers must provide the seller with an opportunity to cure before bringing an action for breach of warranty. *See generally* 15 U.S.C. § 2310(e); U.C.C. § 2-607.[23] Plaintiffs here allege generally that they have provided Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of NHTSA complaints filed by *other* vehicle owners as well as individual notice letters they sent after the NHTSA investigation became public in 2019. Plaintiffs fail to provide the contents or documents purporting to provide notice and also fail to provide any information about NHTSA complaints filed against a number of the Defendants. Moreover, most of the purported notices were sent a few weeks before the filing of the Consolidated Class Action Complaint and nearly a year after the underlying suits were filed (*e.g.*, sent April 24, 2020 when the Complaint was filed May 26, 2020).[24] These notices fail to afford a "reasonable opportunity to cure."

## IV.   Many Of Plaintiffs' Claims Are Untimely.

For many of Plaintiffs' claims, the statute of limitations has already run. Those Plaintiffs seek to bring Defendants into court regarding transactions which occurred years—sometimes a decade—before filing the Complaint. CAC ¶ 111. Plaintiffs' allegations of fraud do not change the basic fact that many of these claims, particularly

---

Counts 1–2, NJ Counts 1–2, NY Counts 1–2, NC Counts 1–2, PA Counts 1–2, SC Counts 1–2, SD Counts 1–2, TN Counts 1–2, TX Counts 1–2, VA Counts 1–2, WA Counts 1–2, and WI Counts 1–2.

[23] Ala. Code § 7-2-607(3)(a); Ariz. Rev. Stat. § 47-2607(C)(1); Cal. Com. Code § 2607(3)(A); Colo. Rev. Stat. § 4-2-607(3)(a); Fla. Stat. § 672.607(3)(a); 810 Ill. Comp. Stat. 5/2-607(3)(a); Kan. Stat. § 84-2-607(3)(a); Md. Code Com. Law § 2-607(3)(a); Minn. Stat. § 336.2-607(3)(a); Mo. Stat. § 400.2-607(3)(a); Mont. Code § 30-2-607(3)(a); N.J. Stat. § 12A:2-607(3)(a); N.Y. U.C.C. Law § 2-607(3)(a); N.C. Gen. Stat. § 25-2-607(3)(a); 13 Pa. Cons. Stat. § 2607(c)(1); S.C. Code § 36-2-607(3)(a); S.D. Codified Laws § 67A-2-607(3)(a); Tenn. Code § 47-2-607(3)(a); Tex. Bus. & Com. Code § 2.607(c)(1); Va. Code § 8.2-607(3)(a); Wash. Rev. Code § 62A.2-607(3)(a); Wis. Stat. § 402.607(3)(a).

[24] *See* CAC ¶¶ 756, 774, 791, 806, 818, 867, 888, 906, 966, 995, 1007, 1049, 1061, 1110, 1127, 1177, 1191, 1271, 1283, 1299, 1315, 1331, 1342, 1378, 1425, 1438, 1485, 1497, 1513, 1528, 1543, 1555, 1603, 1618, 1693, 1705, 1749, 1761, 1802, 1813, 1851, 1863, 1908, 1922, 1985, 1999, 2041, 2053, 2100, 2114, 2162, 2174, 2247, 2259, 2304, 2316, 2367, 2383, 2405, 2423, 2438, 2450, 2499, 2513, 2561, 2573.

**DEFS.' JOINT MOTION TO DISMISS**

breach of warranty, accrued on the date of the transaction. And even for claims where Plaintiffs could plausibly plead that a claim accrued only upon discovery, they have not properly pleaded when discovery was or reasonably should have been made.

### A.    Plaintiffs' Warranty-Based Claims Accrue Upon Delivery.[25]

Under the UCC, a breach of warranty claim accrues upon delivery of the goods, and the cause of action accrues when the breach occurs, "regardless of the aggrieved party's lack of knowledge of the breach." U,C.C. § 2-725(1), (2). The vast majority of states, including each of the 29 states at issue here except for Florida and Louisiana, have adopted Section 2-725 of the UCC and apply it to the sale of vehicles. Twenty-six of these states have adopted the UCC's date-of-delivery accrual rule,[26] with almost all adopting a four-year statute of limitations for such claims.[27] That limitations period has thus already run for many of Plaintiffs' warranty claims.

---

[25] AL Counts 1–2, AZ Counts 1–2, CA Counts 1–4, CO Counts 1–2, CT Counts 1–2, IL Counts 1–2, IN Counts 1–2, KS Counts 1–2, MD Counts 1–2, MA Counts 1–2, MI Counts 1–2, MN Counts 1–2, MO Counts 1–2, MT Counts 1–2, NV Counts 1–2, NJ Counts 1–2, NY Counts 1–2, NC Counts 1–2, OK Counts 1–2, PA Counts 1–2, SC Counts 1–2, SD Counts 1–2, TN Counts 1–2, TX Counts 1–2, VA Counts 1–2, WA Counts 1–2, and WI Counts 1–2.

[26] Ala. Code § 7-2-725(2); Ariz. Rev. Stat. § 47-2725(B); Cal. Com. Code § 2725(2); Colo. Rev. Stat. § 4-2-725(2); Conn. Gen. Stat. § 42a-2-725(2); 810 Ill. Comp. Stat. 5/2-725(2); Ind. Code § 26-1-2-725(2); Kan. Stat. § 84-2-725(2); Md. Code Com. Law § 2-725(2); Mass. Gen. Laws ch. 106, § 2-725(2); Mich. Comp. Laws § 440.2725(2); Minn. Stat. § 336.2-725(2); Mo. Stat. § 400.2-725(2); Mont. Code § 30-2-725(2); Nev. Rev. Stat. § 104.2725(2); N.J. Stat. § 12A:2-725(2); N.Y. U.C.C. Law § 2-725(2); N.C. Gen. Stat. § 25-2-725(2); Okla. Stat. tit. 12A, § 2-725(2); 13 Pa. Cons. Stat. § 2725(b); S.D. Codified Laws § 57A-2-725(2); Tenn. Code § 47-2-725(2); Tex. Bus. & Com. Code § 2.725(b); Va. Code § 8.2-725(2); Wash. Rev. Code § 62A.2-725(2); Wis. Stat. § 402.725(2).

[27] Twenty-four of the 26 states have a four-year statute of limitations. *See* Ala. Code § 7-2-725(1); Ariz. Rev. Stat. §§ 47-2725(A), 47-2A506(A); Cal. Com. Code § 2725(1); Conn. Gen. Stat. § 42a-2-725(1); 810 Ill. Comp. Stat. 5/2-725(1); Ind. Code § 26-1-2-725(1); Kan. Stat. § 84-2-725(1); Md. Code Com. Law § 2-725(1); Mass. Gen. Laws ch. 106, § 2-725(1); Mich. Comp. Laws § 440.2725(1); Minn. Stat. § 336.2-725(1); Mo. Stat. § 400.2-725(1); Mont. Code § 30-2-725(1); Nev. Rev. Stat. § 104.2725(1); N.J. Stat. § 12A:2-725(1); N.Y. U.C.C. Law § 2-725(1); N.C. Gen. Stat. § 25-2-725(1); 13 Pa. Cons. Stat. § 2725(a); S.D. Codified Laws § 57A-2-725(1)-(2); Tenn. Code § 47-2-725(1); Tex. Bus. & Com. Code § 2.725(a); Va. Code § 8.2-725(1); Wash. Rev. Code § 62A.2-725(1).

**DEFS.' JOINT MOTION TO DISMISS**

The UCC also provides that warranty claims do not extend to future performance unless the terms of the warranty explicitly state otherwise. *See, e.g.*, Cal. Com. Code § 2725(2). As a result, *implied* warranty claims do not extend to future performance.[28] The limitations period begins to run "when delivery of the goods is tendered." *Selzer v. Brunsell Bros., Ltd.*, 652 N.W.2d 806, 827 (Wis. Ct. App. 2002). And by the same logic, there is no "discovery" rule: because the warranty does not extend to future performance, discovery of defects in the future does not toll the statute of limitations. *See, e.g., Maytray v. Ford Motor Co.*, 2011 WL 13221015, at *2 (C.D. Cal. Nov. 9, 2011) (dismissing implied warranty claim with prejudice because discovery rule does not apply to implied warranties); *Vullings v. Bryant Heating & Cooling Sys.*, 2019 WL 687881, at *3 (E.D. Pa. Feb. 19, 2019); *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 521–22 (E.D. Mich. 2008).

Plaintiffs' claims under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791.1, 1791.2 (California Counts 2 and 4), are also untimely for any vehicle acquired prior to April 2015, as the Song-Beverly Act has no separate statute of limitations—it is, instead, coextensive with the underlying four-year statute of limitations

---

Colorado has a three-year statute of limitations, Colo. Rev. Stat. §§ 4-2-725(1), 13-80-101; Florida has a five-year statute of limitations for express warranty and a four-year statute for implied warranty, Fla. Stat. § 95.11(2)(b), (3)(k); Oklahoma has a five-year statute of limitations, Okla. Stat. tit. 12A, § 2-725; and South Carolina and Wisconsin have six-year statute of limitations periods, S.C. Code § 36-2-725(1); Wis. Stat. § 402.725(1).

[28] *See, e.g., Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 134 (2008) ("Because an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, courts have consistently held it is not a warranty that 'explicitly extends to future performance of the goods.'"); *see also Meier v. Daimler Chrysler Co., LLC*, 2008 WL 2252539, at *6 (Conn. Super. May 7, 2008); *Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783, 791 (Mich. Ct. App. 2002); *Vullings v. Bryant Heating & Cooling Sys.*, 2019 WL 687881, at *3 (E.D. Pa. Feb. 19, 2019); *Kenton v. United Tech. & its Subsidiaries*, 1990 WL 32121, at *5–6 (Tenn. Ct. App. Mar. 26, 1990); *Parcell v. Wright Med. Tech., Inc.*, 2012 WL 2675258, at *5 (D. Ariz. July 6, 2012); *Yetter*, 428 F. Supp. 3d at 221; *Nelson v. Int'l Harvester Corp.*, 394 N.W.2d 578, 582 (Minn. Ct. App. 1986), *overruled on other grounds by Lloyd F. Smith Co. v. Den-Tal-Ez, Inc.*, 491 N.W.2d 11 (Minn. 1992); *Cont'l Oil Co. v. Gen. Am. Transp. Corp.*, 409 F. Supp. 288, 292 (S.D. Tex. 1976).

**DEFS.' JOINT MOTION TO DISMISS**

under Cal. Com. Code § 2725(1). *See Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1305–06 (2009).

Similarly, while Louisiana has not adopted the UCC, its redhibition statute bars the claim of the sole Louisiana Plaintiff, Tammy Tyler. Under Louisiana law, a claim must be brought four years from the date of delivery or one year from the date of discovery, *whichever occurs first*. La. Civ. Code art. 2534(1). Simply knowing that there is some issue is enough for the "date of discovery" period of prescription to be triggered; there is no requirement that the plaintiff know the specific cause of the defect. *See White v. Ford Motor Co.*, 525 So. 2d 96, 98 (La. Ct. App. 1988). As Tyler purchased her vehicle in January 2013, CAC ¶ 85, her claim is time-barred and the discovery rule cannot salvage it, as she waited more than four years after delivery to bring her claim.

### B.    Plaintiffs' Common-Law Fraud Claims Are Untimely.[29]

Plaintiffs' Nationwide Count 7 alleges common-law fraud on behalf of a nationwide class, or, in the alternative, "on behalf of the State Subclasses." CAC ¶¶ 701, 707, 713. However, as discussed above, Plaintiffs must indicate which state's (or states') laws support their fraud claim and so the nationwide claim must fail. *See SRAM Antitrust Litig.*, 580 F. Supp. 2d at 910. Most of the potentially relevant states have statutes of limitations of two to four years, with Louisiana's being only one year.[30] As detailed in each

---

[29] Nationwide Count 7 as brought by Plaintiffs in AL, AZ, CA, CO, CT, FL, IL, IN, KS, LA, MD, MA, MI, MN, MT, NY, NC, OK, PA, SC, SD, TN, TX, and WA.

[30] A one-year statute of limitations exists in Louisiana. *See* La. Civ. Code art. 3492. Two-year statutes of limitation exist in Alabama, Kansas, Montana, Oklahoma, and Pennsylvania. *See* Ala. Code § 6-2-3; Kan. Stat. § 60-513(a)(3); Mont. Code § 27-2-203; Okla. Stat. tit. 12, § 95(A)(3); 42 Pa. Cons. Stat. § 5524(7). Three-year statutes of limitation exist in Arizona, California, Colorado, Connecticut, Maryland, Massachusetts, North Carolina, South Carolina, Tennessee, and Washington. *See* Ariz. Rev. Stat. § 12-543(3); Cal. Civ. Pro. § 338; Colo Rev. Stat. § 13-80-101(1)(c); Conn. Gen. Stat. § 52-577; Md. Code Cts. & Jud. Proc. § 5-101; Mass. Gen. Laws ch. 260 § 2A; N.C. Gen. Stat. § 1-52(9); S.C. Code § 15-3-530(7); Tenn. Code § 28-3-105; Wash. Rev. Code § 4.16.080(4). Four-year statutes of limitation exist in Florida and Texas. *See* Fla. Stat. § 95.11; Tex. Civ. Prac. & Rem. Code § 16.004. A five-year statute of limitations exists in Illinois. *See* 735 Ill. Comp. Stat. 5/13-215. Six-year statutes of limitation exist in Indiana, Michigan,

---

**DEFS.' JOINT MOTION TO DISMISS**

Defendants' individual briefs, many of the named Plaintiffs did not bring their claims in a timely manner and must be dismissed.

### C. Many of Plaintiffs' Consumer Protection Claims, Which Also Accrue Upon Delivery or Discovery, Are Untimely.[31]

Plaintiffs' claims under the state consumer protection acts of Connecticut, Florida, Indiana, Kansas, Louisiana, Minnesota, New York, Tennessee, and Wisconsin are all untimely on their face and should be dismissed. Causes of action under these statutes accrue "at the occurrence of the deceptive act," *i.e.*, the time of purchase. *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000). Here, many purchases pleaded in the Complaint are untimely:

- **Connecticut**: The only Connecticut plaintiff (Huitzil) purchased his used 2013 vehicle in 2015. CAC ¶ 127. But the statute of limitations for Connecticut Unfair Trade Practices Act claims is three years, Conn. Gen. Stat. § 42-110g(f), and has been interpreted as a "statute of repose," from which there is no discovery rule, *see Bailey v. Interbay Funding, Inc.*, 2018 WL 1660553, at *13 (D. Conn. April 4, 2018); *Bogdan v. Zimmer, Inc.*, 165 F. App'x 883, 886 (2d Cir. 2006).

- **Florida**: The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) has a four-year statute of limitations, Fla. Stat. § 95.11(3)(f), and "[i]t is well-settled there is no 'delayed discovery rule' applicable to FDUTPA claims," *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, 2014 WL 1745050, at *6 (S.D. Fla. April 30, 2014). Although some Florida plaintiffs' claims are timely, the claims of Plaintiffs Choc, McPherson, and Chaiken all accrued in 2013, *see* CAC ¶¶ 115, 128–129; and Plaintiffs Accetta and Gales' claims accrued in 2015, *id.* ¶¶ 104, 116.

- **Indiana**: The Indiana Deceptive Sales Act has a two-year statute of limitations, Ind. Code. § 24-5-0.5-5(b), and this statute is "an occurrence statute of limitation, rather than a discovery statute of limitation." *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964–65 (Ind. Ct. App. 2000). The only Indiana plaintiffs (Miller and Ogorek) purchased their vehicles in 2013 and 2016, *see* CAC ¶¶ 82–83.

- **Kansas**: The Kansas Consumer Protection Act "has a three-year statute of limitations, which starts running with the occurrence of the alleged conduct constituting the violation, not the discovery of the violations." *Strauss v. Angie's List, Inc.*, 2018 WL 5722561, at *11 (D. Kan. Nov. 1, 2018) (granting motion to

---

Minnesota, New Jersey, New York, and South Dakota. *See* Ind. Code § 34-11-2-7(4); Mich. Comp. Laws § 600.5813; Minn. Stat. § 541.05 subd. 1(6); N.J. Stat. § 2A:14-1; N.Y. C.P.L.R. § 213; S.D. Codified Laws § 15-2-13(6).

[31] CT Counts 3–4, FL Counts 3–4, IN Counts 3–4, KS Counts 3–4, LA Counts 2–3, MN Counts 3–6, NY Counts 3–5, TN Counts 3–4, and WI Count 3.

**DEFS.' JOINT MOTION TO DISMISS**

dismiss), *aff'd*, 951 F.3d 1263 (10th Cir. 2020); *Rinehart v. Saint Luke's S. Hosp., Inc.*, 2011 WL 3348234, at *4 (D. Kan. Aug. 3, 2011) (similar); Kan. Stat. § 60-512(2). The only Kansas plaintiff (Rockers) purchased her vehicle in 2013. CAC ¶ 84.

- **Louisiana**: The Louisiana Unfair Trade & Consumer Protection Act has a one-year limitations period, La. Stat. § 51:1409(E), and "[t]he date of the alleged wrongful act begins the running of the prescription, even if the plaintiff was unaware of the act." *Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419, 422 (La. Ct. App. 2000); *see also Spencer-Wallington, Inc. v. Serv. Merch., Inc.*, 562 So. 2d 1060, 1063 (La. Ct. App. 1990). Here, the only Louisiana plaintiff (Tyler) purchased her vehicle in 2013. CAC ¶ 85.

- **Minnesota**: The Minnesota Consumer Protection Act also has a six-year limitations provision, Minn. Stat. § 541.05, subd. 1(2), which is not subject to a discovery rule, *Kiehr v. A.O. Smith Corp.*, 875 F. Supp. 1342, 1352–53 (D. Minn. 1995), *aff'd*, 87 F.3d 231 (8th Cir. 1996). Minnesota plaintiff Keister purchased his used 2010 vehicle in 2011, and Minnesota plaintiff Nelson purchased her vehicle in 2013. CAC ¶¶ 105, 130.

- **New York**: New York's General Business Law has a three-year limitations period, N.Y. Gen. Bus. Law § 349; N.Y. C.P.L.R. § 213(2), which begins to accrue upon delivery, not discovery. *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). The only New York plaintiff (Fishon) purchased a used, 2014 vehicle. CAC ¶ 107.

- **Tennessee**: The Tennessee Consumer Protection Act (TCPA) has a one-year limitations provision. Tenn. Code § 47-18-110. Additionally, although that one-year provision is subject to a discovery rule, the TCPA also has a five-year statute of repose—five years is an "absolute time limit[] within which action must be brought." *Roberson v. Medtronic, Inc.*, 494 F. Supp. 2d 864, 872 (W.D. Tenn. 2007); *Bell v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 4293225, at *6 (E.D. Tenn. Sept. 27, 2017) (similar). Here, Tennessee Plaintiff McMurray purchased her vehicle in 2014. CAC ¶ 96. She first made claims in the Complaint filed on May 26, 2020.

- **Wisconsin**: The only Wisconsin representative (Sancomb) purchased a used 2013 vehicle in 2014. CAC ¶ 138. The Wisconsin Consumer Act, however, bars claims made either two years after the transaction or last payment at issue or one year after the violation at issue. *Smith v. Capital One Bank USA, N.A.*, 2016 WL 4742386, at *4 (W.D. Wis. Sept. 12, 2016); Wis. Stat. § 425.307(1).

Consumer protection claims from the above states should be dismissed.

### D. Plaintiffs' California False Advertising Law Claim Is Similarly Untimely.[32]

Plaintiffs' false advertising claim under California Business and Professions Code § 17500 (FAL), is similarly untimely. The FAL imposes a three-year statute of limitations. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010). While the FAL's statute of limitations can be tolled based on a theory of fraudulent concealment, such a theory must also meet Rule 9(b)'s "fraud with particularity" standard, and merely stating a defendant concealed and misrepresented the facts on which a reasonable consumer would have relied is not sufficient. *See id.* As Plaintiffs have not met Rule 9(b)'s standard for their fraud claims, they have similarly not met it for their tolling argument under the FAL.

### V. The Court Should Dismiss Several Of Plaintiffs' State Law Claims For Failure To Allege Manifestation Of The Purported Defect.

Several of Plaintiffs' claims require the manifestation of a defect, which has not occurred. Plaintiffs have alleged that only two Plaintiffs experienced a deployment issue—Dylan DeMoranville (CAC ¶ 89) and Paul Huitzil (*id.* ¶ 127)—but failed to plead any facts tying either incident to the alleged ACU defect which is the subject of this action. There is no allegation that Plaintiffs tested their vehicles or ACUs following these incidents, nor is there even a passing, conclusory reference to EOS when alleging the airbags did not deploy. Thus, even as to Plaintiffs DeMoranville and Huitzil, no defect of the kind allegedly at issue in this litigation has been alleged.

**Warranty Claims:**[33] As discussed in Section III.A., *supra*, under the laws of all of the states at issue here, an implied warranty claim cannot be maintained when a defect has not manifested. *See, e.g.*, *GM Ignition Switch*, 2016 WL 3920353, at *35 ("[M]anifestation *is* required to plead a viable breach of warranty claim under Missouri law."). As such, these claims must be dismissed for failure to plead an essential element.

---

[32] CA Count 5.

[33] *See supra* n.19.

**DEFS.' JOINT MOTION TO DISMISS**

**Song-Beverly Claims:**[34] Furthermore, the Song-Beverly Act requires Plaintiffs to plead that some symptom of the defect manifested within the implied warranty period. *See Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014). Lacking such allegations, several Plaintiffs' Song-Beverly claims must similarly be dismissed.

**State Consumer Protection Claims:**[35] Alabama, Maryland, New Jersey, New York, North Carolina, and Oklahoma, consumer protection claims are also precluded when an alleged defect has not manifested.[36] Because none of those Plaintiffs alleges the supposed defect manifested in their vehicles, Plaintiffs' claims under the state consumer protection laws of those states should be dismissed.[37]

---

[34] CA Count 4.

[35] AL Counts 3–4, MD Counts 3–4, NJ Counts 3–4, NY Counts 3–5, NC Counts 3–4, and OK Counts 3–4.

[36] *See Sisemore v. Dogencorp*, LLC, 212 F. Supp. 3d 1106, 1109–10 (N.D. Okla. 2016); *Chambers*, 43 F. Supp. 3d at 622; *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 122–23 (2002); *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998) ("This lawsuit involves this question: Does an alleged product defect that has not manifested itself in such a way as to cause any observable adverse physical or economic consequences constitute an 'injury' that will support a claim of fraudulent suppression? We simply hold that it does not."); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99–100 (S.D.N.Y. 1997); *Bailey v. LeBeau*, 339 S.E.2d 460, 463 (N.C. Ct. App. 1986), *aff'd*, 348 S.E.2d 524 (N.C. 1986); *Johannessohn v. Polaris Indus.*, 2020 WL 1536416, at *27 (D. Minn. Mar. 31, 2020); *Tatum v. Chrysler Grp., LLC*, 2011 WL 1253847, at *5 (D.N.J. March 28, 2011) ("[I]n [Consumer Fraud Act] cases, where an allegedly-defective product was covered by a warranty, '[a] claim that a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis of a claim under the CFA. Rather, a plaintiff must sufficiently allege that the defendant manufacturer *knew with certainty* that the product at issue or one of its components was going to fail.'"); *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *5 (N.D. Okla. Oct. 19, 2006).

[37] Even if the Court determined that Plaintiffs DeMoranville and Huitzil properly pleaded a defect manifestation of the sort alleged in the Complaint, those Plaintiffs only brought claims under the state laws of Massachusetts and Connecticut, respectively. Therefore, the consumer protection claims under the laws of Maryland, New Jersey, New York, North Carolina, and Oklahoma law should still be dismissed.

**DEFS.' JOINT MOTION TO DISMISS**

## VI.   The Court Should Dismiss Plaintiffs' Equitable Claims Because Duplicative Legal Remedies Exist.

In their various Causes of Action and their Prayer for Relief, Plaintiffs seek restitution and disgorgement (as remedies for UCL and unjust enrichment),[38] and injunctive relief (as a remedy for RICO, the CLRA, and other statutes).[39] Because adequate legal relief is available, the Court should dismiss these requested remedies. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010).

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). California federal district courts routinely dismiss equitable claims in consumer class actions, including UCL and equitable relief claims, when the plaintiff does not establish the lack of an adequate remedy at law, such as a claim for damages under their warranty or fraud-based claims. *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018) (citing cases), *aff'd sub nom.*, *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020); *see also Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018). More recently, the Ninth Circuit held that equitable claims, regardless of whether they are

---

[38] CAC ¶¶ 731 (nationwide unjust enrichment), 946 (FAL), 967 (CLRA), 981 (Cal. UCL), 2591(f))

[39] *Id.*; *see also id.* ¶¶ 587 (RICO), 609 (RICO), 631 (RICO), 654 (RICO), 677 (RICO), 699 (RICO), 775 (Ala. DTPA), 793 (Ala. DTPA), 834 (Ariz. DTPA), 848 (Ariz. CFA), 891 (Cal. Song-Beverly Act), 927 (Cal. Song-Beverly Act), 946 (FAL), 967 (Cal. UCL), 968 (CLRA), 981 (Cal. UCL), 1022 (Colo. CPA), 1035 (Colo. CPA), 1077 (Conn. UTPA), 1091 (Conn. UTPA), 1147 (Fla. UDTPA), 1162 (Fla. UDTPA), 1211 (Ill. CFDBPA), 1228 (Ill. CFDBPA), 1243 (Ill. UDTPA), 1257 (Ill. UDTPA), 1300 (Ind. DCSA), 1317 (Ind. DCSA), 1358 (Kan. CPA), 1372 (Kan. CPA), 1395 (La. CPL), 1410 (La. CPL), 1457 (Md. CPA), 1472 (Md. CPA), 1514 (Mass. ch. 93A), 1530 (Mass. ch. 93A), 1572 (Mich. CPA), 1587 (Mich. CPA), 1637 (Minn. CFA), 1652 (Minn. DTPA), 1667 (Minn. CFA), 1680 (Minn. DTPA), 1721 (Mo. MPA), 1735 (Mo. MPA), 1776 (Mont. DTPA), 1789 (Mont. CPA), 1826 (Nev. DTPA), 1838 (Nev. DTPA), 1879 (N.J. CFA), 1893 (N.J. CFA), 1940 (N.Y. § 349), 1954 (N.Y. § 349), 1970 (N.Y. FAA), 2015 (N.C. UDTPA), 2028 (N.C. UDTPA), 2070 (Okla. CPA), 2085 (Okla. CPA), 2133 (Pa. CPA), 2149 (Pa. CPA), 2190 (S.C. UTPA), 2204 (S.C. UTPA), 2219 (S.C. Mfrs. Act), 2234 (S.C. Mfrs. Act), 2276 (S.D. CPA), 2291 (S.D. CPA), 2334 (Tenn. CPA), 2350 (Tenn. CPA), 2406 (Tex. DTPA), 2425 (Tex. DTPA), 2468 (Va. CPA), 2484 (Va. CPA), 2532 (Wash. CPA), 2548 (Wash. CPA), 2590 (Wis. DTPA), 2591(b), (e).

---

44

brought under federal law or any other state's laws, cannot survive a Rule 12 challenge when plaintiffs have not demonstrated that they have no adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072, 1082 (9th Cir. 2020).

Plaintiffs do not plausibly demonstrate that they have no adequate remedy at law. In the entire Complaint, the only cause of action for which they even suggest that they lack an adequate legal remedy is their nationwide unjust enrichment count. *See* CAC ¶ 730. This alone justifies dismissal of all other equitable counts in Plaintiffs' Complaint, including requests for disgorgement under California law, requests for injunctions under various consumer protection laws, and civil RICO. *Id.* ¶¶ 587, 609, 631, 654, 677, 699, 946, 967, 2591. Even for their unjust enrichment count, Plaintiffs' conclusory allegation is not only insufficient under Rule 8(a), but contradicted by the rest of the Complaint. For example, Plaintiffs assert that recourse to equity is required to prevent the Vehicle Manufacturer Defendants from retaining the financial benefits of transactions when Plaintiffs "would not have purchased or leased the Class Vehicles, or would have paid less for them had the Vehicle Manufacturer Defendants not concealed the ACU Defect." CAC ¶¶ 728–731. But that is the same conduct that forms the basis of their warranty and fraud-based claims. Equitable claims must be dismissed when, like here, Plaintiffs' equitable claims duplicate other legal claims. *See, e.g.*, *Fonseca v. Goya Foods, Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing equitable claims that "relie[d] upon the same factual predicates as … [the] legal causes of action").[40]

---

[40] *See also, e.g.*, *Milman v. FCA U.S., LLC*, 2018 WL 5867481, at *15 (C.D. Cal. Aug. 30, 2018) (similar); *Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *4–5 (C.D. Cal. Dec. 14, 2017) (dismissing equitable-relief demands under the UCL and CLRA); *Stockinger v. Toyota Motor Sales USA, Inc.*, 2017 WL 10574372, at *22 (C.D. Cal. Jul. 7, 2017) (similar); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (similar), *modified in part*, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

**DEFS.' JOINT MOTION TO DISMISS**

**VII.   The Court Should Dismiss Or Strike All Of The Purported Intervenors' Claims And Many Of Plaintiffs' Claims For Additional Defects.**

**A.      The Purported Intervenors' Claims Are Improper.**

This Court ordered—and Plaintiffs purported to file—a "consolidated" class action complaint, *i.e.*, a complaint that consolidated the claims of plaintiffs who had filed an underlying suit. The Court did not invite Plaintiffs to add new parties to the Consolidated Complaint and Plaintiffs did not ask the Court for leave to do so. Yet, nearly *half* of the named plaintiffs in the Complaint are not parties to any of the underlying cases transferred to this Court for centralized pretrial proceedings.[41] Instead, these purported "intervenors" were named as parties *for the first time* in the Complaint and have thus improperly injected themselves into these proceedings. Under 28 U.S.C. § 1407(a), all cases consolidated in this MDL must eventually be remanded to their original courts for trial. Because the purported intervenors are not parties to *any* of the underlying cases—or, indeed, any case—their inclusion in the Complaint is improper.[42]

Cases transferred under § 1407, like those that constitute this MDL, "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). The cases are "intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685, 699–700 (9th Cir. 2011) (jurisdiction of transferee court "is generally coextensive with pretrial proceedings" and the court "does not have authority to transfer a case to itself for trial" or "consolidate actions for all purposes" as "individual cases that are consolidated or coordinated for pretrial

---

[41] A list of purported intervenors is attached as Exhibit 4.

[42] The Complaint also reveals the opposite problem: there are nearly 100 individuals who originally asserted claims as part of the underlying lawsuits who do not assert claims in the Consolidated Class Action Complaint (including all of the plaintiffs in at least 15 of the underlying cases). Defendants believe those original plaintiffs' claims have been superseded by the filing of the Consolidated Complaint. The parties have discussed, but have not resolved, that issue, and the Defendants will likely seek guidance from the Court as to how to address these "orphaned" plaintiffs as part of the August 31, 2020 Joint Status Report and September 14, 2020 Status Conference.

**DEFS.' JOINT MOTION TO DISMISS**

purposes remain fundamentally separate actions"). "[A]n MDL proceeding … is merely a collection of individual cases, combined to achieve efficiencies in pretrial proceedings," and "MDL courts cannot lose sight of the separate and distinct nature of those actions" or "fail[] to take into account that the cases are destined to be returned to their transferee jurisdictions." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 785 F. Supp. 2d 925, 930 (C.D. Cal. 2011). Once pretrial issues are addressed, each of the consolidated cases *must* ("shall") be remanded "to the district court from which it was transferred." 28 U.S.C. § 1407(a); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

Here, the purported intervenors and their claims must be stricken or dismissed because they are not attached to any case having a "separate identity," and they are not attached to any case which would allow the claims pleaded to "resume their independent status once the pretrial stage of litigation is over."[43] And the lack of a transferor court for a return transfer is not the only problem. This Court's ability to adjudicate the claims pleaded by the purported intervenors is called into question because the transferee judge in an MDL "*has no jurisdiction* to impose obligations on one who is not a party *to one of the transferred cases*." 15 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3866 (4th ed. 2016) (collecting cases) (emphases added); *see also In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165–66 (4th Cir. 1992) ("[A] transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred.").

---

[43] Even if the purported intervenors had requested leave to intervene, their addition would still create a jurisdictional limbo. This is because, "[w]ere the Court to permit the addition of these Plaintiffs, the Court would be without options at the time of remand as to these proposed Plaintiffs' claims [because they] have no 'home,' i.e., no transferor court.… The Court cannot simply 'assimilate' these proposed Plaintiffs' claims into this MDL action." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6178891, at *8 (E.D. Mich. Dec. 12, 2011).

47

**DEFS.' JOINT MOTION TO DISMISS**

This Court has already rejected an attempt by two Plaintiffs who tried to improperly intervene directly in this MDL.[44] This is consistent with courts around the country that routinely strike intervenors like those here who attempt to sidestep required MDL procedures. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 6402992, at *3, *4 (E.D. Mich. Mar. 21, 2017) (striking entire consolidated complaint that included intervenors who "never filed any lawsuit anywhere, in any court" and were "simply trying to make an end run around the proper procedural framework that governs MDL proceedings"); *In re Mortg. Elec. Registration Sys. Litig.*, 2016 WL 3931820, at *5, *7, *11 (D. Ariz. July 21, 2016), *aff'd*, 719 F. App'x 550 (9th Cir. 2017); *Packaged Ice Antitrust Litig.*, 2011 WL 6178891, at *8; *In re Webkinz Antitrust Litig.*, 2009 WL 6346585, at *1 (N.D. Cal. Aug. 4, 2009); *In re Farmers Ins. Exch. Claims Reps.' Overtime Pay Litig.*, 2008 WL 4763029, at *3–5 (D. Or. Oct. 28, 2008).

The purported intervenors did not originally file any underlying action. They did not seek or obtain leave to be joined as parties in any underlying action. They did not file their own actions in this Court, or any other court. Their claims have not been transferred to the MDL. In fact, because they did not do any of these things, their claims are not even subject to this Court's Order governing pretrial procedures. *See* Mar. 6, 2020 Order (Dkt. 106). And, again, once pretrial proceedings are concluded, these purported intervenors will have no "home" court to which they can return. For these reasons, the Court should strike or dismiss the claims of the purported intervenors identified in Exhibit 4.[45]

---

[44] In December 2019, Plaintiffs Dellatore and Ogorek attempted to file a class action complaint directly into this MDL. Dec. 13, 2019 Compl. (Dkt. 61). This Court struck their complaint, noting, "Complaints to initiate a new case in this district that are related to the MDL case must be filed as a new civil case. Counsel shall refile this case as a new case, at which time the Court will review the case to determine if it relates to this MDL." Dec. 20, 2019 Order (Dkt. 62).

[45] The following state law claims must be dismissed because once the purported intervenors are dismissed/stricken, there will be no plaintiff with standing to bring them: all Arizona claims (AZ Counts 1–4), all Colorado claims (CO Counts 1–4), all Connecticut claims (CT Counts 1–4), all Florida claims against Kia (FL Counts 1–3), all Illinois claims against Kia (IL Counts 1–3, 5), all Massachusetts claims (MA Counts 1–4), all Minnesota claims

**DEFS.' JOINT MOTION TO DISMISS**

**B.     The Court Should Strike Certain Plaintiffs' Class Allegations Pursuant To State Statutory Class-Action Bars.**

Plaintiffs' claims under the Alabama, Louisiana, Montana, South Carolina, Tennessee and Virginia statutes may be brought only on an individual basis, and not in a class action. Each of those states bar class actions under their respective statutes.[46] Federal courts in this District enforce such state class action bars, following Justice Stevens's concurrence in the United States Supreme Court's plurality decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), so long as the bars are "substantive" because they are "intertwined with a state right or remedy," *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8 (C.D. Cal. May 12, 2011). This District is not alone: enforcing state class action bars is the majority approach nationwide. *See Delgado v. Ocwen Loan Servicing*, LLC, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (collecting cases); *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 726 (D.S.C. 2016); *Davidson v. Apple*, 2018 WL 2325426, at *11 (N.D. Cal. May 8, 2018) (majority-view cases have "considered the issue in more detail" than those taking the minority view).

The Court should apply that majority approach here and dismiss the representative claims brought under the Alabama, Louisiana, Montana, South Carolina, Tennessee, and Virginia statutes. As district courts across the country have explained, each of these states' statutory bars is substantive or intertwined with the right to sue, and should therefore be enforced in federal court.[47]

---

against Kia (MN Counts 1–4), all Missouri claims (MO Counts 1–4), all Montana claims (MT Counts 1–4), all New Jersey claims (NJ Counts 1–4), all New York claims against Honda (NY Counts 1–3, 5), all North Carolina claims against FCA US (NC Counts 1–3), all Oklahoma claims (OK Counts 1–4), all Pennsylvania claims (PA Counts 1–4), all Tennessee claims (TN Counts 1–4), all Texas claims against FCA US and Hyundai (TX Counts 1–3), and all Wisconsin claims (WI Counts 1–3). *See, e.g.*, *Villanueva*, 2019 WL 8112467, at *15.

[46] Ala. Code § 8-19-10(f); La. Stat. § 51:1409(A); Mont. Code § 30-14-133(1); S.C. Code § 39-5-140(a); Tenn. Code § 47-18-109(a)(1); Va. Code § 59.1-204.

[47] *See, e.g.*, *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416 (D.N.J. 2018) (Alabama, Tennessee, and Montana); *Delgado*, 2017 WL 5201079, at *10 (Alabama and Tennessee); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 389 (D.N.J. 2018) (same); *In re Target*

1

## CONCLUSION

2

For these reasons and the reasons provided in the Defendants' individual briefs, the

3

Complaint should be dismissed in its entirety.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

*Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1164–65 (D. Minn. 2014) (Louisiana);

23

*In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 843–44, 844 n.138 (E.D. Pa. 2019) (Montana); *In re Solodyn Antitrust Litig.*, 2017 WL 4621777, at *20 (D.

24

Mass. Oct. 16, 2017) (Montana); *Fejzulai*, 205 F. Supp. 3d at 725 (South Carolina); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) (South Carolina); *Stalvey v. Am.*

25

*Bank Holdings, Inc.*, 2013 WL 6019320, at *3–5 (D.S.C. Nov. 13, 2013) (South Carolina);

26

*Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 798 (E.D. Mich. 2019) (Tennessee);

*Tait*, 2011 WL 1832941, at *9–10 (Tennessee); *Bearden v. Honeywell Int'l Inc.*, 2010 WL

27

3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (Tennessee); *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *10 (N.D. Cal. Aug. 15, 2016) (Virginia); *Arcand v. Brother Int'l Corp.*,

28

673 F. Supp. 2d 282, 293–94 (D.N.J. 2009) (Virginia).

**DEFS.' JOINT MOTION TO DISMISS**

1    DATED: July 27, 2020                 Respectfully submitted,

2                                         */s/ Matthew T. Regan, P.C.*

3                                         KIRKLAND & ELLIS LLP
                                          Mark C. Holscher (SBN 139582)
4                                         mark.holscher@kirkland.com
5                                         555 South Flower Street
                                          Los Angeles, CA 90071
6                                         Telephone: 213-680-8400
7                                         Facsimile: 213-680-8500

8                                         Tammy A. Tsoumas (SBN 250487)
9                                         tammy.tsoumas@kirkland.com
                                          2049 Century Park East, Suite 3700
10                                        Los Angeles, CA 90067
11                                        Telephone: 310-552-4200
                                          Facsimile: 310-552-5900
12
13                                        Matthew T. Regan, P.C. (pro hac vice)
                                          mregan@kirkland.com
14                                        300 North LaSalle
15                                        Chicago, IL 60654
                                          Telephone: 312-862-2000
16                                        Facsimile: 312-862-2200

17
                                          Judson Brown, P.C. (pro hac vice)
18                                        jdbrown@kirkland.com
19                                        Michael A. Glick (pro hac vice)
                                          michael.glick@kirkland.com
20                                        Jason Wilcox (pro hac vice)
21                                        jason.wilcox@kirkland.com
                                          1301 Pennsylvania Avenue, N.W.
22                                        Washington, D.C. 20004
23                                        Telephone: 202-389-5000
                                          Facsimile: 202-389-5200
24
25                                        *Counsel for ZF Active Safety and Electronics*
                                          *US LLC, ZF Passive Safety Systems US Inc.,*
26                                        *ZF Automotive US Inc., ZF TRW Automotive*
                                          *Holdings Corp., ZF North America, Inc., ZF*
27                                        *Friedrichshafen AG, and ZF Holdings B.V.*
28

                                         51
                         **DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Robert P. Debelak III*

McDOWELL HETHERINGTON LLP
Jodi K. Swick (SBN 228634)
jodi.swick@mhllp.com
1 Kaiser Plaza, Ste. 340
Oakland, CA 94612
Telephone: 510.628.2145
Facsimile: 510.628.2146

Alec S. DiMario (SBN 309811)
alec.dimario@mhllp.com
1055 E. Colorado Blvd., Ste. 500
Pasadena, CA 91106
Telephone: 213.631.4059
Facsimile: 510.628.2146

Thomas F.A. Hetherington
tom.hetherington@mhllp.com
Kendall J. Burr
kendall.burr@mhllp.com
Robert P. Debelak III
bobby.debelak@mhllp.com
1001 Fannin St., Ste. 2700
Houston, TX 77002
Telephone: 713.337.5580
Facsimile: 713.337.8850

Emily K. Liu
emily.liu@mhllp.com
2000 East Lamar Blvd., Ste. 780
Arlington, TX 76006
Telephone: 817.635.7300
Facsimile: 817.635.7308

*Counsel for STMicroelectronics, Inc.,*
*STMicroelectronics N.V., and*
*STMicroelectronics International N.V.*

52

**DEFS.' JOINT MOTION TO DISMISS**

1

*/s/ Eric S. Mattson*

2  SIDLEY AUSTIN LLP

3  Lisa M. Gilford (SBN 171641)
lgilford@sidley.com

4  Stacy Horth-Neubert (SBN 214565)
shorthneubert@sidley.com

5  555 West Fifth Street

6  Los Angeles, CA 90013
Telephone: 213-896-6000

7  Facsimile: 213-896-6600

8

9  Eric S. Mattson
emattson@sidley.com

10  One South Dearborn Street

11  Chicago, IL 60603
Telephone: 312-853-7000

12  Facsimile: 312-853-7036

13

14  *Counsel for American Honda Motor Co., Inc.,
Honda of America Mfg., Inc., and Honda R&D*

15  *Americas, Inc.*

16

17  */s/ Douglas W. Robinson*

18  PALMIERI, TYLER, WIENER, WILHELM &
WALDRON LLP

19  Douglas W. Robinson (SBN 255909)

20  drobinson@ptwww.com
Christopher J. Green (SBN 295874)

21  cgreen@ptwww.com

22  1900 Main Street, Suite 700
Irvine, CA 92614

23  Telephone: 949-851-9400

24  Facsimile: 949-825-5401

25  *Counsel for Mitsubishi Motors North America,
Inc.*

26

27

28

**DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ John Beisner*

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Lance A. Etcheverry (SBN 199916)
lance.etcheverry@skadden.com
Caroline Van Ness (SBN 281675)
caroline.vanness@skadden.com
Matthew J. Tako (SBN 307013)
matthew.tako@skadden.com
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: 650-470-4500
Facsimile: 650-470-4570

John Beisner (SBN 81571)
john.beisner@skadden.com
1440 New York Avenue N.W.
Washington, D.C. 20005
Telephone: 202-371-7000
Facsimile: 202-393-5760

*Counsel for Hyundai Motor America, Inc. and
Kia Motors America, Inc.*

54

**DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Matthew A. Goldberg*

DLA PIPER LLP (US)
Christopher M. Young (SBN 163319)
christopher.young@dlapiper.com
Michelle Chung (SBN 312833)
michelle.chung@dlapiper.com
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
Telephone: 310-595-3000
Facsimile: 310-595-3300

Matthew A. Goldberg
mathew.goldberg@dlapiper.com
Nathan P. Heller
nathan.heller@dlapiper.com
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, PA 19103
Telephone: 215-656-3300
Facsimile: 215-656-3301

*Counsel for Hyundai Mobis Co., Ltd. and Mobis Parts America, LLC*

**DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Brandi L. Burke*

THOMPSON COBURN LLP
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy
kwisniewski@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
Brandi L. Burke
bburke@thompsoncoburn.com
One US Bank Plaza
St. Louis, MO 63101
Telephone: 314-552-6000
Facsimile: 314-552-7000

Kacey R. Riccomini (SBN 292340)
kriccomini@thompsoncoburn.com
2029 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310-282-2500
Facsimile: 310-282-2501

*Counsel for FCA US LLC*

*/s/ Thomas J. Murray*

KING AND MURRAY PLLC
Thomas J. Murray
tmurray@kingandmurray.com
Stephen W. King
sking@kingandmurray.com
355 S. Old Woodward, Suite 100
Birmingham, MI 48009
Telephone: (248) 792-2397

*Counsel for Fiat Chrysler Automobiles N.V.*

**DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Michael Mallow
_____

SHOOK, HARDY & BACON LLP
Michael Mallow
mmallow@shb.com
Rachel Straus
rstraus@shb.com
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: 424-285-8330
Facsimile: 424-204-9093

Amir Nassihi
anassihi@shb.com
One Montgomery, Suite 2600
San Francisco, CA 94104
Telephone: 415-544-1900
Facsimile: 415-391-0281

BOWMAN AND BROOKE LLP
Vincent Galvin (SBN 104448)
vincent.galvin@bowmanandbrooke.com
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: 408-279-5393
Facsimile: 408-279-5845

Mark V. Berry (SBN 70162)
mark.berry@bowmanandbrooke.com
970 West 190th Street, Suite 700
Torrance, CA 90502
Telephone: 310-768-3068
Facsimile: 310-719-1019

*Counsel for Toyota Motor North America, Inc.,
Toyota Motor Sales, U.S.A., Inc., Toyota
Motor Engineering & Manufacturing North
America, Inc.*

**DEFS.' JOINT MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE OF CERTIFICATION

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: July 27, 2020

*/s/ Matthew T. Regan, P.C.*

*Counsel for ZF Active Safety and Electronics US LLC, ZF Passive Safety Systems US Inc., ZF Automotive US Inc., ZF TRW Automotive Holdings Corp., ZF North America, Inc., ZF Friedrichshafen AG, and ZF Holdings B.V.*

**DEFS.' JOINT MOTION TO DISMISS**

**CERTIFICATE OF SERVICE**

I certify that on July 27, 2020, a copy of the foregoing DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT was served electronically through the Court's electronic filing system upon all parties appearing on the court's ECF service list.

DATED: July 27, 2020

/s/ Matthew T. Regan, P.C.

*Counsel for ZF Active Safety and Electronics US LLC, ZF Passive Safety Systems US Inc., ZF Automotive US Inc., ZF TRW Automotive Holdings Corp., ZF North America, Inc., ZF Friedrichshafen AG, and ZF Holdings B.V.*