1  David S. Stellings (*pro hac vice*)
   dstellings@lchb.com
2  **LIEFF CABRASER HEIMANN &**
   **BERNSTEIN, LLP**
3  250 Hudson Street, 8th Floor
   New York, NY 10013-1413
4  Telephone: 212.355.9500
   Facsimile: 212.355.9592
5
   Roland Tellis (SBN 186269)
6  rtellis@baronbudd.com
   **BARON & BUDD, P.C.**
7  15910 Ventura Boulevard, Suite 1600
   Encino, CA 91436
8  Telephone: 818.839.2333
   Facsimile: 818.986.9698
9
   *Co-Lead Counsel for Plaintiffs*
10
   *Plaintiffs' Steering Committee Members Listed on Signature Page*
11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15  In re ZF-TRW Airbag Control Units        MDL No. 2905
    Products Liability Litigation
16                                           Case No. 2:19-ml-02905-JAK-FFM
    ALL CASES
17                                           **PLAINTIFFS' OPPOSITION TO**
                                             **ZF TRW DEFENDANTS' MOTION**
18                                           **TO STAY DISCOVERY**

19                                           Date:     September 14, 2020
                                             Time:     1:30 p.m.
20                                           Judge:    Hon. John A. Kronstadt
                                             Ctrm:     10B
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

III.  LEGAL STANDARD ........................................................................................ 4

IV.   ZF'S MOTION TO STAY FAILS TO MEET THE NINTH
      CIRCUIT'S TEST .............................................................................................. 5

      A.   Litigation involving automobile defects is within the
           conventional experience of the judiciary. ............................................... 5

      B.   NHTSA's regulatory authority is not "comprehensive" because
           NHTSA has no power to address Plaintiffs' claims. ............................ 8

      C.   Litigation will not undermine NHTSA's expertise or conflict
           with NHTSA's investigation ................................................................... 9

      D.   A stay will prejudice Plaintiffs. ............................................................. 12

      E.   A stay is not otherwise warranted. ........................................................ 14

V.    CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Alpharma, Inc. v. Pennfield Oil Co.*,
411 F.3d 934 (8th Cir. 2005) ..................................................................4

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ..................................................................5

*Brown v. MCI WorldCom Network Servs., Inc.*,
277 F.3d 1166 (9th Cir. 2002) .............................................................4, 5

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) .........................................................4, 5, 6

*Dean v. Colgate-Palmolive Co.*,
No. EDCV 15-0107 JGB, 2015 WL 3999313 (C.D. Cal. June 17, 2015) ...........13

*Edwards v. Oportun, Inc.*,
193 F. Supp. 3d 1096 (N.D. Cal. 2016)...............................................13, 14

*Ellis v. Nissan N. Am. Inc.*,
No. 4:19-CV-00750-FJG, 2020 WL 3105097 (W.D. Mo. June 11, 2020) .........14

*Ezell v. Graco Children's Prod. Inc.*,
No. CIV- 12-787-C, 2013 WL 12091071 (W.D. Okla. Mar. 8, 2013) .................7

*Ford v. Ford Motor Co.*,
No. CV 13-8335 PSG (SSx), 2014 WL 12570925
(C.D. Cal. Jan. 17, 2014) ..................................................................7, 13

*Garcia v. Harley-Davidson Motor Co., Inc.*,
No. 19-cv-02054-JCS, 2019 WL 6050768 (N.D. Cal. Nov. 15, 2019)..........10, 12

*Gerstle v. Am. Honda Motor Co.*,
No. 16-cv-04384-JST, 2017 WL 2797810 (N.D. Cal. June 28, 2017)..................7

*Glenn v. Hyundai Motor Am.*,
No. SA CV 15-2052, 2016 WL 3621280 (C.D. Cal. June 24, 2016) ...........7, 8, 10

*In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*,
No. MDL 961, 1993 WL 204116
(E.D. Pa. June 10, 1993) ................................................................6, 8, 10

*In re Takata Airbag Prod. Liab. Litig.*,
No. 14-24009-CV, 2015 WL 12641693 (S.D. Fla. Sept. 21, 2015)..............passim

*In re Toyota Motor Corp. Hybrid Brake Mktg.*
*Sales Practices & Prods. Liab. Litig.*,
890 F. Supp. 2d 1210 (C.D. Cal. 2011) ............................................10, 11, 13

*In re Toyota Unintended Acceleration*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..........................................6, 10, 11

*Kent v. DaimlerChrysler Corp.*,
200 F. Supp. 2d 1208 (N.D. Cal. 2002)...........................................6, 9, 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)............................................................................14

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ...............................................................14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*MacPherson v. Buick Motor Co.*,
  217 N.Y. 382 (1916) ................................................................................ 6

*Marsikian v. Mercedes Benz USA, LLC*,
  No. CV 08-04876 AHM (JTLx), 2009 WL 8379784 (C.D. Cal. May 4, 2009) .... 8

*Nader v. Allegheny Airlines, Inc.*,
  426 U.S. 290 (1976) ................................................................................. 9

*Phillips v. Ford Motor Co.*,
  Case No. 14-CV-02989-LHK, 2016 WL 693283 (N.D. Cal. Feb. 22, 2016) .... 8, 9

*Prescott v. Bayer HealthCare LLC*,
  No. 20-cv-00102-NC, 2020 WL 4430958 (N.D. Cal. July 31, 2020) ................... 6

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) .................................................................... 5

*Reniger v. Hyundai Motor Am.*,
  122 F. Supp. 3d 888 (N.D. Cal. 2015) ................................................... 7, 8

*Rhoades v. Avon Prods.*, Inc.,
  504 F.3d 1151 (9th Cir. 2007) .................................................................. 5

*Robles v. Domino's Pizza, LLC*,
  913 F.3d 898 (9th Cir.), *cert. denied*,
  140 S. Ct. 122, 205 L. Ed. 2d 41 (2019) ............................................... 5, 12

*Sanchez-Knutson v. Ford Motor Co.*,
  52 F. Supp. 3d 1223 (S.D. Fla. 2014) ..................................................... 7

*Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir. 2002) .................................................................. 4

*Silvas v. Gen. Motors, LLC*,
  No. 2:14–CV–89, 2014 WL 1572590 (S.D. Tex. Apr. 17, 2014) ..................... 9

*United States v. Gen. Motors Corp.*,
  518 F.2d 420 (D.C. Cir. 1975) ................................................................ 10

*United States v. W. Pac. R. Co.*,
  352 U.S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) ............................... 5

- iii -

Plaintiffs[1] respectfully submit this memorandum of points and authorities in opposition to Defendants ZF Active Safety and Electronics US LLC; ZF Passive Safety, Systems US Inc.; TRW Automotive Inc.; ZF TRW Automotive Holdings Corp.; and ZF North America, Inc.'s (collectively, "ZF") Motion to Stay Discovery, ECF No. 188.[2]

## I.   **INTRODUCTION**

This case concerns approximately 15 million vehicles equipped with defective airbag control units ("ACUs") designed by ZF. These ACUs are vulnerable to electrical overstress ("EOS"), which can cause a vehicle's airbag and seatbelt system to fail when it is needed most: during a head-on collision. Plaintiffs and millions of other similarly-situated consumers overpaid for these defective vehicles and bore the risks of death and injury for years.

Defendants have taken no steps to repair approximately 9 million vehicles affected by this defect. Their efforts to repair the remaining vehicles were belated and inadequate. More fundamentally, for both recalled and unrecalled vehicles, Defendants have done *nothing* to compensate consumers by, for example, refunding the overpayment damages suffered at the point of purchase or lease. And, no amount of investigation by the National Highway Traffic Safety Administration ("NHTSA") changes this fact. *See In re Takata Airbag Prod. Liab. Litig.*, MDL No. 2599, 2015 WL 12641693, at *2 (S.D. Fla. Sept. 21, 2015) (refusing to stay based on primary jurisdiction because "courts routinely make determinations regarding [vehicular] defects" even where, as here, defect related to airbags and NHTSA was actively investigating same defect). Indeed, for decades courts have permitted

---

[1] "Plaintiffs" herein refers to the 65 individuals named in the Consolidated Complaint, ECF No. 120.

[2] The following Defendants support ZF's motion, but raise no arguments of their own: American Honda Motor Co., Inc.; Honda of America Mfg., Inc.; Honda R&D Americas, Inc.; Hyundai Mobis Co., Ltd.; Hyundai Motor America, Inc.; Kia Motors America, Inc.; FCA US LLC; and Mitsubishi Motors North America, Inc.

1   consumers to seek damages in automotive defect consumer class actions without an

2   investigation or recall determination by NHTSA. Accordingly, this lawsuit seeks

3   such damages.

4       Although Plaintiffs filed suit nearly a year and a half ago, this case has barely

5   progressed. Hardly any discovery has occurred. Several of the Defendants

6   (including FCA US LLC and all foreign defendants) have not provided any

7   discovery at all.

8       But a year and a half of prejudicial delay is not enough for ZF. It asks the

9   Court to abdicate its traditional role as the forum for consumer automobile defect

10  claims and instead further delay the litigation while NHTSA investigates the

11  defective ZF TRW ACUs.

12      A discovery stay would be inappropriate, inefficient and ineffective.

13  NHTSA's investigation began nearly two and a half years ago, and if history is any

14  guide, the investigation could continue for several more years. By way of example,

15  NHTSA's similar investigation of Takata airbag inflators began in the middle of

16  2014 and remains open to this very day. The Takata investigation has led to recalls

17  as recently as this year.

18      And Plaintiffs' claims will continue regardless of what NHTSA finds. At

19  most, the agency's findings may become just one piece in the large evidentiary

20  mosaic that will be created through the MDL coordinated discovery process.  Most

21  importantly, however, *while NHTSA can mandate recalls, it cannot require*

22  *Defendants to pay damages to Plaintiffs or Class members*.  The process is

23  designed to work together with parallel litigation, not to replace or subsume it.

24      Although ZF invokes the primary jurisdiction doctrine as the principal reason

25  for further delay, it never suggests that NHTSA has *any* jurisdiction over Plaintiffs'

26  claims, that NHTSA's investigation will resolve those claims, or that NHTSA can

27  issue anything other than minimum safety standards that act as a floor for this

28  Court. Nor does ZF suggest that this MDL is likely to cause any specific conflicts

with any issue Congress assigned exclusively to NHTSA. Nor could it.

What ZF does do, however, is ignore the litany of automobile defect cases where courts (including several in this Circuit) squarely rejected the same primary jurisdiction arguments raised by ZF here. This Court need not break new ground, and ZF offers no reason for it to do so.

Accordingly, the Court should deny ZF's motion for a stay and order ZF and the other Defendants to commence with discovery.

## II. <u>BACKGROUND</u>

The 15 million class vehicles implicated by this case share one common trait: a ZF TRW ACU containing a specialized microchip called the DS84 application-specific integrated circuit ("ASIC"). *See* Consolidated Class Action Complaint ("CAC"), ¶¶ 280 – 291. ZF has known that these ACUs were vulnerable to EOS since at least as early as 2008, when the ACUs shut down during testing and showed signs of EOS damage. *See id.* ¶ 293. Nonetheless, ZF pushed these ACUs to market and failed to warn consumers.

This decision cost lives. Collectively, NHTSA and the Vehicle Manufacturer Defendants[3] have linked multiple airbag and/or seatbelt failures in crashes to ZF TRW ACUs that showed signs of EOS in the DS84 ASIC. To date, they attribute at least eight known deaths to the defect. *Id.* ¶ 14. ZF does not meaningfully dispute these conclusions.

Hyundai, Kia, FCA, and Toyota have already recalled 16 different vehicle models across a wide range of years based on the ZF TRW ACU defect. ZF asserts

---

[3] The Vehicle Manufacturer Defendants are Hyundai Motor Co., Ltd.; Hyundai Motor America, Inc.; Kia Motors Corporation; Kia Motors America, Inc.; FCA US LLC; Fiat Chrysler Automobiles N.V.; Toyota Motor Corporation; Toyota Motor North America Inc., Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Sales, U.S.A., Inc.; Honda Motor Co. Ltd.; American Honda Motor Co., Inc.; Honda of America Mfg., Inc.; Honda R&D Co., Ltd.; Honda R&D Americas, Inc.; Mitsubishi Motors Corporation; and Mitsubishi Motors North America, Inc.

1    its ACUs "vary significantly across different makes, years, and models of vehicles"

2    (ECF No. 188 at 2), which proves Plaintiffs' point that a shared design flaw in the

3    ZF TRW ACUs is the only plausible explanation for the observed EOS across these

4    different makes and models. *See* CAC, ¶¶ 290, 291, 292. Indeed, ZF admits that

5    NHTSA has been actively investigating the design flaw in ZF TRW ACUs since at

6    least as early as March 16, 2018. *See* ECF No. 188 at 5.

7         Although ZF notes that recalls have occurred as a result of NHTSA's

8    investigation, its quotes of NHTSA's public reports highlight that the most recent

9    set of NHTSA document requests were served in July 2019—more than a year ago.

10    *See* ECF. No. 188 at 6. ZF provides no estimate of when NHTSA's investigation

11    might conclude, nor does it describe any plans to fix the more than 9 million

12    unrecalled class vehicles. In short, ZF seeks to stall this litigation pending an open-

13    ended regulatory investigation that is incapable of resolving Plaintiffs' claims.[4]

14    **III.**   **<u>LEGAL STANDARD</u>**

15         The primary jurisdiction doctrine "applies in a limited set of circumstances."

16    *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It is not

17    "intended to secure expert advice for the courts from regulatory agencies every time

18    a court is presented with an issue conceivably within the agency's ambit," and it

19    "does not require that all claims within an agency's purview be decided by the

20    agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th

21    Cir. 2002). "[A]s it often results in added expense and delay," the primary

22    jurisdiction doctrine "is to be invoked sparingly." *Alpharma, Inc. v. Pennfield Oil*

23    *Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (citation omitted).

24         ZF's motion focuses exclusively on four factors listed in *Syntek*

25    *Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002), as

26    relevant to the determination of whether to apply the primary jurisdiction doctrine:

27    _____

28    [4] NHTSA has not joined ZF's request for a stay.

         - 4 -

(1) the litigation's need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body where (3) that body has comprehensive regulatory authority and where (4) the issue requires expertise or uniformity in administration. *See* ECF No. 188 at 7 (asserting primary jurisdiction "turns on four factors"). Although these factors are relevant, *Syntek* does not provide the exclusive framework to evaluate primary jurisdiction. Indeed, as the Ninth Circuit held several years after *Syntek*, "[n]o fixed formula exists for applying the doctrine of primary jurisdiction." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008).

In addition to the four *Syntek* factors, "courts must . . . consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (emphasis added). "[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Id*. at 761. At bottom, "the 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is 'efficiency.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (quoting *Rhoades v. Avon Prods.*, Inc., 504 F.3d 1151, 1165 (9th Cir. 2007)) (emphasis added). ZF's motion fails to account for efficiency and delay in the litigation, despite the Ninth Circuit's emphasis on this important factor.

## IV.  ZF'S MOTION TO STAY FAILS TO MEET THE NINTH CIRCUIT'S TEST

### A.  Litigation involving automobile defects is within the conventional experience of the judiciary.

For the first and second *Syntek* factors, courts typically assess whether an issue in a litigation "needs" to be resolved by an agency. As part of this analysis, courts consider whether a case raises "issues of fact not within the conventional experience of judges." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956); *see also Brown*, 277 F.3d at 1172; *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910–

1   11 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019) (referral to

2   agency was "'needless' because the application of the ADA to the facts of this case

3   are well within the court's competence"); *Prescott v. Bayer HealthCare LLC*,

4   No. 20-cv-00102-NC, 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020) (stating

5   first factor is whether issue is within "conventional experience of judges"). Courts

6   also consider whether litigation implicates "quasi-legislative powers," such as

7   formal "rulemaking" authority. *See Clark v. Time Warner Cable*, 523 F.3d 1110,

8   1115 (9th Cir. 2008).

9        This case falls squarely within the conventional competence of the judiciary.

10   For more than a century, courts have regularly addressed safety defects in

11   automobiles. Indeed, several automobile defect cases are considered cornerstones of

12   American common law and are read by every first year law student. *See, e.g.,*

13   *MacPherson v. Buick Motor Co.*, 217 N.Y. 382 (1916) (Judge Cardozo's landmark

14   decision that privity of contract not required in case arising from defective wheel).

15        Accordingly, even when NHTSA is actively investigating a safety defect that

16   goes to the "heart of plaintiffs' claims" (*see* ECF No. 188 at 8), courts routinely

17   hold those defects do "not raise issues of fact not within the conventional

18   experience of judges." *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1218-

19   19 (N.D. Cal. 2002) (holding defect involving shifting from park to reverse was

20   "within the conventional competence of the courts" despite active NHTSA

21   investigation); *see also In re Takata Airbag Prod. Liab. Litig.*, MDL No. 2599,

22   2015 WL 12641693, at *2 (S.D. Fla. Sept. 21, 2015) (refusing to stay based on

23   primary jurisdiction because "courts routinely make determinations regarding

24   [vehicular] defects" even where, as here, defect related to airbags and NHTSA was

25   actively investigating same defect); *In re Gen. Motors Corp. Pickup Truck Fuel*

26   *Tank Prod. Liab. Litig.*, No. MDL 961, 1993 WL 204116, at *6 (E.D. Pa. June 10,

27   1993) (holding determination of defect in fuel tank under investigation by NHTSA

28   "would be made in a style similar to other product liability cases"); *In re Toyota*

1   *Unintended Acceleration*, 754 F. Supp. 2d 1145, 1198-1200 (C.D. Cal. 2010)

2   (holding unintended acceleration defect was "within the conventional competence

3   of the courts" and denying stay motion despite NHTSA's ongoing investigation);

4   *Glenn v. Hyundai Motor Am.*, No. SA CV 15-2052, 2016 WL 3621280, at *17 (C.D.

5   Cal. June 24, 2016) (denying motion to stay claims based on shattering sunroofs

6   despite NHTSA investigation). This case presents no reason for a different

7   approach. From the perspective of NHTSA's regulatory authority and the primary

8   jurisdiction doctrine, ZF's defective ACUs present the same legal issue as the

9   defective airbag inflators, fuel tanks, sunroofs, transmission, or accelerators

10  addressed by these precedents.

11        For this reason, courts have repeatedly rejected the argument that a plaintiff's

12  claims should be deferred to NHTSA merely because they implicate vehicle safety.

13  *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1238 (S.D. Fla.

14  2014) ("Ford's argument of deferral to NHTSA because Plaintiff's claims implicate

15  vehicle safety issues has been offered and rejected"); *Gerstle v. Am. Honda Motor*

16  *Co.*, No. 16-cv-04384-JST, 2017 WL 2797810, at *5 (N.D. Cal. June 28, 2017)

17  (denying motion to stay in part because "[c]ourts have also refused to invoke the

18  primary jurisdiction doctrine when plaintiffs are bringing state contract and tort

19  claims, regardless of any NHTSA action"); *Ford v. Ford Motor Co.*, No. CV 13-

20  8335 PSG (SSx), 2014 WL 12570925, at *5 (C.D. Cal. Jan. 17, 2014) (holding

21  claim regarding defect in rear axle was "not outside the conventional experiences of

22  judges, and does not involve issues that are within the NHTSA's discretion.");

23  *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 906 (N.D. Cal. 2015) (holding

24  ZF's "first factor favors resolution by the Court, as the Court is better able to handle

25  a products defect case involving numerous allegations of warranty violation" than

26  NHTSA); *Ezell v. Graco Children's Prod. Inc.*, No. CIV- 12-787-C, 2013 WL

27  12091071, at *1 (W.D. Okla. Mar. 8, 2013) (denying primary jurisdiction based on

28  NHTSA's authority because claims involved requests for defect-related "damages,

a matter within the normal competence of the courts"). The same reasoning controls here.

ZF's vague allusions to NHTSA's safety regulations do not offer any reason to depart from these many directly-on-point precedents. No rule-making or otherwise "quasi-legislative" process is implicated by this case. Nor does this case implicate any ambiguous language in NHTSA's statutory framework or regulations. Accordingly, ZF fails to show any "need" for the Court to abandon its traditional role as the forum for consumer automobile defect claims or for NHTSA to specially address the existence of a defect.

## B.   NHTSA's regulatory authority is not "comprehensive" because NHTSA has no power to address Plaintiffs' claims.

The third *Syntek* factor also weighs against a stay because NHTSA's regulatory authority does not extend to Plaintiffs' claims. The National Traffic and Motor Vehicle Safety Act specifically "limits the jurisdiction of the NHTSA to *exclude* warranty laws . . . and common law liability." *Reniger*, 122 F. Supp. 3d at 907 (emphasis added); *see also Marsikian v. Mercedes Benz USA, LLC*, No. CV 08-04876 AHM (JTLx), 2009 WL 8379784, at *9 (C.D. Cal. May 4, 2009); *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, No. MDL 961, 1993 WL 204116, at *2 (E.D. Pa. June 10, 1993). NHTSA similarly lacks any authority to rule on Plaintiffs' RICO claims or to require Defendants to pay damages to Plaintiffs. *See Glenn*, 2016 WL 3621280, at *17 (denying motion to stay in part because a "recall does not provide . . . monetary damages," which "weighs against application of the primary jurisdiction doctrine") (quoting *Phillips v. Ford Motor Co.*, Case No. 14-CV-02989-LHK, 2016 WL 693283, at *11 (N.D. Cal. Feb. 22, 2016)). Instead, NHTSA's regulations merely establish "minimum standards" that do not grant "immunity from civil suit." *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 1993 WL 204116, at *5.

Moreover, while NHTSA has the authority to conduct recalls, "there is little

- 8 -

authority to suggest that Congress intended for NHTSA to have exclusive authority over automobile safety." *Philips*, 2016 WL 693283, at *12; *see also Kent*, 200 F. Supp. 2d at 1218 ("[T]he Court does not find that exercise of the doctrine of primary jurisdiction is necessary at this stage of the case, either to ensure uniformity of regulation or because NHTSA is better-equipped than the Court to address the issues raised by [p]laintiffs' claims.").[5]  As such, ZF merely argues that NHTSA has comprehensive "investigative" authority pertaining to recalls, but not pertaining to product liability, fraud, or breach of contract. ECF No. 188 at 10-11. These assertions about "investigative" authority and "analysis of the data" (*see id.* at 12) are irrelevant to whether NHTSA has "comprehensive regulatory authority" that actually encompasses Plaintiffs claims. Instead, the statute creating NHTSA expressly limits NHTSA's authority over Plaintiffs' claims, which only the judiciary can address.

## C.   Litigation will not undermine NHTSA's expertise or conflict with NHTSA's investigation.

In assessing an agency's expertise and the risks to uniformity in administration (the fourth *Syntek* factor), courts often look to whether plaintiffs' claims challenge the administrative agency's regulations or other conduct. Where plaintiffs do not challenge an agency's authority or decision, courts typically hold the litigation does not threaten any conflict with the agency's jurisdiction. *See, e.g., Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304 (1976) (primary jurisdiction doctrine did not apply because the plaintiff's suit did not challenge the reasonableness of the rates set by the Civil Aeronautics Board or any other practice

---

[5] ZF relies on *Silvas v. Gen. Motors, LLC*, No. 2:14–CV–89, 2014 WL 1572590 (S.D. Tex. Apr. 17, 2014), an out-of-circuit case that conflicts with *Philips* insofar as it suggests that NHTSA's recall jurisdiction is exclusive. In any event, even if the Court lacks authority to enter a recall-related injunction, as *Silvas* suggests, this is not a reason to stay Plaintiffs' claims for damages, which NHTSA cannot award. The Court can consider any limits on its power to issue injunctive relief when and if Plaintiffs move for that relief. Notably, *Silvas* addressed a motion for a preliminary injunction and not a motion for a stay.

approved by the agency); *In re Toyota Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1224 (C.D. Cal. 2011) ("Plaintiffs' claims are based on California consumer protection statutes and common-law breach of contract, not the Motor Vehicle Safety Act, and do not require resolving questions of compliance with NHTSA regulations.").

Although NHTSA certainly has some technical expertise relating to automobiles, this litigation will not turn on technical expertise alone. Resolving this case will also require expertise on warranty laws and consumer protection statutes, and other legal issues that only the judiciary possesses. Moreover, courts frequently address technical issues of comparable complexity to the ACU defect here. *See Kent*, 200 F. Supp. 2d at 1218-19 (transmission defect); *Takata*, 2015 WL 12641693, at *2 (airbag inflator defect); *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 1993 WL 204116, at *6 (fuel tank defect); *Toyota Unintended Acceleration*, 754 F. Supp. 2d at 1198-1200 (accelerator defect); *Glenn*, 2016 WL 3621280, at *17 (sunroof defect). ZF fails to demonstrate that an ACU defect is more complex than any of the automobile defects previously addressed by the judiciary.

In any event, litigation does not threaten any inconsistency with NHTSA's technical expertise. Plaintiffs' claims do not challenge NHTSA's regulations or other actions by the agency. Rather, Plaintiffs' statutory and common law claims exist outside the scope of NHTSA's regulations, which "were designed as a preventative measure 'supplementary and of and in addition to'" common law remedies. *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 1993 WL 204116, at *6 (quoting *United States v. Gen. Motors Corp.*, 518 F.2d 420, 434 (D.C. Cir. 1975)); *Reniger*, 122 F. Supp. 3d at 907; *Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-cv-02054-JCS, 2019 WL 6050768, at *7 (N.D. Cal. Nov. 15, 2019) (refusing to apply primary jurisdiction doctrine where, as here, "Garcia's claims do not arise under the Motor Vehicle Safety Act").

Despite its conclusory assertions, ZF fails to articulate any actual conflict between Plaintiffs' Claims and NHTSA's regulatory authority. Instead, ZF merely speculates regarding a potential conflict, as demonstrated by ZF's own words:

- "the orders or findings that NHTSA *may* issue or reach from its investigation *may* affect the relief, if any, available to Plaintiffs," ECF No. 188 at 8 (emphasis added),
- "NHTSA's orders *could* well affect significant aspects of the litigation," *id*. at 12 (emphasis added),
- "NHTSA's determination on the need (or not) for further recalls *could* shape the relevant relief for Plaintiffs," *id*. at 14 (emphasis added),
- "And NHTSA's interpretation of its disclosure regulation *could* affect Plaintiffs' duty-to- disclose theory." *Id*. (emphasis added).

Such speculation cannot form the basis of a stay. *See Toyota Unintended Acceleration* 754 F. Supp. 2d at 1199-2000 (rejecting application of primary-jurisdiction doctrine in part because "Toyota has not shown that an actual conflict exists between Plaintiffs' claims or requested relief and the NHTSA investigation"); *Toyota Hybrid Brake*, 890 F. Supp. 2d at 1224 (rejecting argument that court should defer to NHTSA "over recalls when a recall is already underway and [the recall] addresses the concerns by Plaintiffs," because NHTSA had neither confirmed the defect in its investigation nor was there a subsequent finding that the defect had been properly remedied); *Takata*, 2015 WL 12641693, at *3 (declining to impose six-month stay where "the Court's determination of the pending claims and the underlying issue of the purported defect will not impede NHTSA's progress on its investigation and recall, nor should it impact Defendants' ability to comply with NHTSA's orders.").

Moreover, as to the more than 5 million vehicles that have been recalled but for which its owners have received no compensation for overpayment, ZF does not articulate what additional relief, if any, NHTSA could order. Nor does ZF show that

NHTSA is empowered to provide the full scope of Plaintiffs' requested relief, including monetary damages and non-recall related injunctive relief (such as prohibiting new sales of the Class Vehicles or ordering disclosures warning consumers about the defective ZF TRW ACUs).[6]

Because ZF has failed to demonstrate any conflict between this litigation and NHTSA's investigation, the primary jurisdiction doctrine does not apply.

### D.    A stay will prejudice Plaintiffs.

"[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Robles*, 913 F.3d at 910.

Although Plaintiffs began filing cases against ZF in April 2019—nearly one and a half years ago—barely any discovery has occurred to date despite Plaintiffs' best efforts. Defendants' voluntarily re-production of materials collected by NHTSA's investigation consisted of a small fraction of the materials relevant to the claims and defenses in this case; most Defendants have produced only a few hundred documents. These voluntary productions contain virtually no emails or communications regarding the design and testing of the ZF TRW ACUs prior to NHTSA's investigation. They barely scratch the surface of the discovery needed here.

Further delay serves no legitimate purpose. ZF offers no evidence that NHTSA's investigation is nearing its completion, and a stay based on primary jurisdiction could cause years of additional delay. An ongoing NHTSA investigation cannot justify this severe delay. *See Takata*, 2015 WL 12641693, at

---

[6] *See Garcia*, 2019 WL 6050768, at *6 ("As far as this Court is aware, while automobile defect cases are relatively common, no court within the Ninth Circuit has dismissed a request for injunctive relief in such a case under the primary jurisdiction doctrine. Many courts have declined to do so, even in some cases where … NHTSA has undertaken at least some steps to investigate the purported defect at issue.").

1   *3  (rejecting Toyota and other defendants' request for six-month stay based on the

2   doctrine of primary jurisdiction doctrine in part because "it may take years for

3   NHTSA to reach a conclusion as to the existence of any defect, or NHTSA may not

4   reach any conclusion regarding the purported defect"); *Dean v. Colgate-Palmolive*

5   *Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313, at *6 (C.D. Cal. June 17, 2015)

6   (refusing to apply primary jurisdiction where defendant failed to provide any

7   estimate of "when [the government investigation] is expected to conclude");

8   *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (finding "a

9   fair possibility of harm to Plaintiff  because the length of the stay is an indefinite

10  one."). Indeed, NHTSA's activities relating to Takata airbag inflators is illustrative

11  of the extensive delay associated with NHTSA's oversight. Although NHTSA first

12  began investigating this issue in the middle of 2014, NHTSA's active review

13  concerning these inflators is *still* ongoing today.

14          Finally, for more than 5 million vehicles that Hyundai, Kia, FCA, and Toyota

15  have already recalled, the vehicle manufacturers have admitted to ACU defects, and

16  there is no indication whatsoever that NHTSA disagrees with them. *See* ECF No.

17  121  ¶¶17 – 19, 354, 398, 362, 392, 393, 429 497. ZF fails to identify any further

18  action that NHTSA is likely to take with respect to these millions of recalled

19  vehicles or to explain how further agency investigation as to these admittedly

20  defective vehicles would have any impact on Plaintiffs' claims regarding these cars.

21  Accordingly, even if the Court were inclined to abandon its traditional authority

22  over automobile defect cases for the unrecalled vehicles covered by NHTSA's

23  investigation, the litigation must at the very least proceed regarding these five

24  million vehicles. *See Toyota Hybrid Brake,* 890 F. Supp. 2d  at1224 (primary

25  jurisdiction did not apply where "the investigation by the NHTSA is now closed"

26  and "a year and a half has passed since the recall"); *Ford v. Ford Motor Co.*, 2014

27  WL 12570925, at *5  (denying motion to stay in part because "NHTSA has

28  apparently concluded that Ford's recall was adequate to satisfy its concerns"); *c.f.*

*Ellis v. Nissan N. Am. Inc.*, No. 4:19-CV-00750-FJG, 2020 WL 3105097, at *3 (W.D. Mo. June 11, 2020) (denying motion to dismiss based on primary jurisdiction doctrine where plaintiff alleged recall was insufficient).

### E.     A stay is not otherwise warranted.

To the extent ZF seeks to invoke this Court's "inherent power to stay an action until resolution of interrelated proceedings," (ECF No. 188 at 7-8), no such stay is appropriate here.

In deciding whether to impose a stay, the Court considers (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Edwards*, 193 F. Supp. 3d at 1100-01. "If there is 'even a fair possibility' of harm to the opposing party, the moving party 'must make out a clear case of hardship or inequity in being required to move forward.'" *Id.* at 1101 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

Here, ZF has failed to demonstrate that a stay is warranted. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" to justify a stay, especially considering the prejudice to Plaintiffs noted above. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Aside from its arguments under the primary jurisdiction doctrine (addressed above), ZF fails to identify any hardship other than the normal burdens of litigation. Accordingly, its request for a stay pursuant to the Court's inherent authority should also be denied.

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the ZF TRW Defendants' motion to stay discovery.

| | |
|---|---|
| 1 | Dated:  August 12, 2020 | Respectfully submitted, |

**BARON & BUDD, P.C.**

By: /s/ *Roland Tellis*   _____

**BARON & BUDD, P.C.**
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333
Facsimile: 818.986.9698

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com
Katherine McBride
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile:  212.355.9592

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

*Co-Lead Counsel for Plaintiffs*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

- 15 -

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
W. Daniel "Dee" Miles, III (ASB-7656-M75W)
Dee.Miles@Beasleyallen.com
H. Clay Barnett, III (ASB-4878-N68B)
Clay.Barnett@Beasleyallen.com
J. Mitch Williams (ASB-8560-X19D)
Mitch.Wlliams@Beasleyallen.com
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
Anne K. Davis (SBN 267909)
adavis@bfalaw.com
Joshua Samra (SBN 313050)
jsamra@bfalaw.com
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

**BOIES SCHILLER FLEXNER LLP**
Stephen N. Zack (FBN: 145215)
szack@bsfllp.com
Tyler E. Ulrich (FBN: 94705)
tulrich@bsfllp.com
Ryan B. Witte (FBN: 60628)
rwitte@bsfllp.com
100 South East 2nd Street, Suite 2800
Miami, FL 33131
Telephone: 305-539-8400

**CASEY GERRY SCHENK
FRANCAVILLA
BLATT & PENFIELD, LLP**
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
Patricia Camille Guerra
camille@cglaw.com
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

**DICELLO LEVITT GUTZLER LLC**
Adam J. Levitt (*pro hac vice*)
alevitt@dicellolevitt.com
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900

2017557.10

- 16 -

**KELLER ROHRBACK L.L.P**
Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

**KESSLER TOPAZ MELTZER AND CHECK LLP**
Joseph H Meltzer (*pro hac vice*)
jmeltzer@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: 610-667-7706
Facsimile: 610-667-7056

**LEVI & KORSINSKY, LLP**
Rosemary M. Rivas (SBN 209147)
rrivas@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
Joseph E. Levi
jlevi@zlk.com
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

**PODHURST ORSECK, P.A.**
Peter Prieto (FBN 501492)
pprieto@podhurst.com
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382

**ROBBINS GELLER RUDMAN & DOWD LLP**
Mark J. Dearman
mdearman@rgrdlaw.com
Jason H. Alperstein
jalperstein@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
Facsimile: 561/750-3364

**ROBBINS GELLER RUDMAN & DOWD LLP**
Rachel L. Jensen (CBN 211456)
rjensen@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423

**ROBINS KAPLAN LLP**
Stacey P. Slaughter (MN Bar No. 0296971)
Sslaughter@robinskaplan.com
J. Austin Hurt (MN Bar No. 0391802)
Ahurt@robinskaplan.com
Michael J. Pacelli (MN Bar No. 0399484)
Mpacelli@robinskaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*Plaintiffs' Steering Committee*

**PRITZKER LEVINE LLP**
Jonathan K. Levine (SBN 220289)
jkl@pritkzkerlevine.com
Elizabeth C. Pritzker
ecp@pritzkerlevine.com
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

*Plaintiffs' Liaison Counsel*

- 18 -

1

**CERTIFICATE OF SERVICE**

2         I certify that on August 12, 2020, a copy of the foregoing document was

3  served electronically through the Court's CM/ECF System upon all parties who

4  have appeared in this case.

5

DATED:  August 12, 2020               /s/ *Roland Tellis*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2017557.10                  - 19 -              PLAINTIFFS' OPPOSITION TO ZF TRW
DEFENDANTS' MOTION TO STAY DISCOVERY