**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Thomas F.A. Hetherington*
tom.hetherington@mhllp.com
Kendall J. Burr*
kendall.burr@mhllp.com
Robert P. Debelak III*
bobby.debelak@mhllp.com
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: 713.337.5580
Facsimile:  713.337.8850

*Admitted Pro Hac Vice

(All Counsel Listed Below)

Attorneys for Defendants
STMicroelectronics, Inc., STMicroelectronics N.V.,
and STMicroelectronics International N.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: ZF-TRW Airbag Control Units Products Liability Litigation*<br><br>ALL CASES | **MDL No. 2905**<br><br>**Case No. 2:19-ml-02905-JAK-FFM**<br><br>**Judge: John A. Kronstadt**<br><br>**Defendants STMicroelectronics, Inc., STMicroelectronics, N.V., and STMicroelectronics International, N.V.'s Notice of Motion and Motion to Dismiss the Consolidated Class Action Complaint**<br><br>Filed Under Separate Cover:<br>Declarations and [Proposed] Order<br><br>Date: January 25, 2021<br>Time: 8:30 A.M.<br>Courtroom: Courtroom 10B |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

Please take notice that at 8:30 A.M. on January 25, 2021, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable John A. Kronstadt, located at First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, California 90012, Defendants STMicroelectronics, Inc., STMicroelectronics, N.V., and STMicroelectronics International, N.V. hereby move this Court to dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt. 120) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the Declarations of Denise Tuinfort and Claudio Elia, the record in this action, and such further evidence and argument that the Court may consider.

This Motion is made following the conference of counsel under L.R. 7-3, which took place on July 20, 2020, and on August 6, 2020.

By: */s/ Thomas F.A. Hetherington*___
Jodi K. Swick
jodi.swick@mhllp.com
McDOWELL HETHERINGTON LLP
1 Kaiser Plaza, Suite 340
Oakland, CA 94612
Telephone: 510.628.2145
Facsimile:  510.628.2146

Alec S. DiMario (SBN 309811)
alec.dimario@mhllp.com
McDOWELL HETHERINGTON LLP
1055 E. Colorado Blvd., Ste. 500
Pasadena, CA 91106
Telephone: 213.631.4059
Fax: 510.628.2146

Emily K. Liu*
emily.liu@mhllp.com
McDOWELL HETHERINGTON LLP
1000 Ballpark Way, Ste. 209
Arlington, TX 76011
Telephone: 817.635.7300
Facsimile:  817.635.7308

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND .......................................................................................... 2

I.  Plaintiffs allege that the ACU is defective ............................................................. 3

II. The ST Entities first learned of any ASIC damage in 2016 .............................. 4

RULE 12(B)(2) MOTION: LACK OF PERSONAL JURISDICTION ........................... 6

I.  Plaintiffs fail to allege jurisdictional facts for each claim in this MDL ..................... 6

   A. The "direct-file" Plaintiffs' claims violate MDL procedures.................................... 7

   B. The transferred Plaintiffs do not allege personal jurisdiction over each ST
      Entity in their respective transferred cases ........................................................ 7

II. This Court does not have general jurisdiction over any ST Entity ............................. 8

III. This Court does not have specific jurisdiction over any ST Entity ............................ 9

   A. Plaintiffs cannot establish personal jurisdiction over any ST Entity based on
      their alleged knowledge of where vehicles were sold .......................................... 9

   B. STNV does not engage in forum-related activities ............................................. 10

   C. STINV does not engage in forum-related activities ........................................... 11

   D. Plaintiffs fail to tie ST Inc. activities to California or any other forum ................. 11

   E. Plaintiffs cannot establish alter ego jurisdiction over STNV or STINV ................. 12

   F. Exercising specific jurisdiction over STNV or STINV is unreasonable................. 14

RULE 12(b)(6) MOTION: PLAINTIFFS FAIL TO STATE A CLAIM.......................... 15

I.  Plaintiff's RICO claims against the ST Entities fail for additional reasons ............... 15

   A. Plaintiffs do not plead racketeering acts by any ST Entity ..................................... 16

   B. The ST Entities' conduct did not proximately harm any Plaintiff ........................ 19

      1. Any "omission" to NHTSA did not directly harm Plaintiffs ........................... 19

      2. Intervening actors' conduct undermine proximate causation ........................... 20

II. Plaintiffs' statutory consumer protection claims against the ST Entities fail ............. 21

   A. Plaintiffs fail to allege reliance, causation, or a consumer-defendant nexus ......... 21

   B. Additional state statutory claims against the ST Entities are time barred.............. 24

   C. Out-of-state conduct cannot ground some state claims; Michigan and
      Oklahoma bar claims in regulated industries ...................................................... 25

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Adardour v. Am. Settlements Inc.*,
No. 1:08-CV-798, 2009 WL 1971458 (E.D. Va. July 2, 2009) ...................................22

*Anderson v. ReconTrust Co., N.A.*,
407  P.3d 692 (Mont. 2017)........................................................................................22

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)............................................................................................19, 20

*Arroyo v. PHH Mortg. Corp.*,
No. 13-CV-2335, 2014 WL 2048384 (E.D.N.Y. May 19, 2014)................................22

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Ca.*,
480 U.S. 102 (1987).....................................................................................10, 11, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................15, 18

*Blewett v. Abbott Labs.*,
938 P.2d 842 (Wash. App. 1997) .................................................................................23

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)..................................................................................................21

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017)..........................................................................................6, 9, 10

*Brooks v. GAF Materials Corp.*,
41 F. Supp. 3d 474 (D.S.C. 2014) ...............................................................................23

*Byes v. Telecheck Recovery Servs., Inc.*,
No. CIV.A. 94-3182, 1997 WL 736692 (E.D. La. Nov. 24, 1997)..............................22

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ......................................................................................19

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
492 F.3d 484 (4th Cir. 2007) ......................................................................................25

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ...................................................................25

*Cole v. NIBCO, Inc.*,
  No. 13-7871, 2016 WL 10536025 (D.N.J. Feb. 26, 2016)............................22

*Collins v. Davol, Inc.*,
  56 F. Supp. 3d 1222 (N.D. Ala. 2014)........................................................24

*Cyr v. Ford Motor Co.*,
  No. 345751, 2019 WL 7206100 (Mich. Ct. App. Dec. 26, 2019)..............25

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).....................................................................................8

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................................22

*Doe v. Unocal*,
  248 F.3d 915 (9th Cir. 2001) ..........................................................12, 13, 14

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ...............................................................9, 11

*Eclectic Properties East, LLC v. Marcus and Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) .....................................................................15

*Ellibee v. Aramark Corr. Servs., Inc.*,
  154 P.3d 39 (Kan. App. 2007)....................................................................23

*Elson v. Black*,
  No. 2:18-cv-00116, 2019 WL 4673211 (C.D. Cal. Sept. 25, 2019) ...........13

*Foodland Distribs. v. Al–Naimi*,
  559 N.W.2d 379 (Mich. App. 1996)...........................................................13

*Frappier v. Countrywide Home Loans, Inc.*,
  No. 9-cv-11006, 2013 WL 1308602 (D. Mass. Mar. 31, 2013)...................22

*Gelboim v. Bank of Am. Corp.*,
  135 S. Ct. 897 (2015).....................................................................................6

*Gomez v. Carmax Auto Superstores Cal., LLC*,
    No. 2:14-CV-09019, 2015 WL 350219 (C.D. Cal. Jan. 22, 2015)..............................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..............................................................8

*Goshen v. Mut. Life Ins. Co. of NY*,
    286 A.D.2d 229 (N.Y. App. Div. 2001) ...................................25

*Goshen v. Mut. Life Ins. Co. of NY*,
    774 N.E.2d 1190 (2002) .........................................................25

*Green v. Wells Fargo Bank, N.A.*,
    582 F. App'x 246 (4th Cir. 2014) ...........................................22

*Green v. Wells Fargo Bank, N.A.*,
    927 F. Supp. 2d 244 (D. Md. 2013)........................................22

*Haaland v. Garfield Beach CVS, LLC*,
    No. LACV1801115, 2018 WL 5086493 (C.D. Cal. June 6, 2018) ............................24

*Hall v. Bristol-Myers Squibb Co.*,
    No. 06-5203, 2009 WL 5206144 (D.N.J. Dec. 30, 2009) ..........................22

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ...............................................13

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010)..................................................................20

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .....................................22

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018).....................................19

*In re Clorox Consumer Litig.*,
    301 F.R.D. 436 (N.D. Cal. 2014)............................................22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    MDL No. 1486, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ..................................7, 8

*In re Korean Air Lines Co, Ltd., Antitrust Litig.*,
   642 F.3d 685 (9th Cir. 2011) ........................................................................ 6

*In re Rezulin Products Liab. Litig.*,
   390 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................... 23

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
   No. 05 C 2623, 2009 WL 3460218 (N.D. Ill. Oct. 20, 2009) ..................... 22

*In re Takata Airbag Prods. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ....................................................... 7

*In re Toyota Motor Corp. UAM Litig.*,
   785 F. Supp. 2d 925 (C.D. Cal. June 8, 2011) ............................................ 8

*In re Volkswagen "Clean Diesel" Mktg., Products Liab. Litig.*,
   MDL 2672 CRB, 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) .......... 18, 19

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ................................................. 15, 16

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ............................................................................... 8, 11

*Kelly v. Ga.-Pac. LLC*,
   671 F. Supp. 2d 785 (E.D.N.C. 2009) ....................................................... 22

*Kramer Motors, Inc. v. British Leyland Ltd.*,
   628 F.2d 1175 (9th Cir. 1980) .................................................................... 14

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
   809 F. Supp. 2d 857 (N.D. Ill. 2011) ......................................................... 25

*Luckey v. Alside, Inc.*,
   245 F. Supp. 3d 1080 (D. Minn. 2017) ...................................................... 22

*Maple v. Costco Wholesale Corp.*,
   649 F. App'x 570 (9th Cir. 2016) ............................................................... 22

*McCormies v. PennyMac Loan Servs., LLC*,
   No. 18-6003-CV, 2018 WL 4279224 (W.D. Mo. May 31, 2018) ............... 23

*McElroy v. Amylin Pharm., Inc.*,
    No. 1:12-cv-297, 2013 WL 12099073 (E.D. Tenn. Aug. 5, 2013) ............................ 22

*Meadow v. Nibco, Inc.*,
    No. 3-15-1124, 2016 WL 2986350 (M.D. Tenn. May 24, 2016) ................................ 22

*Mitsui Sumitomo Ins. USA, Inc. v. Kyocera Mita Corp.*,
    No. 15-1860, 2015 WL 5842324 (C.D. Cal. Oct. 6, 2015) ........................................ 10

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ...................................................................................... 9

*Morris v. Osmose Wood Preserving*,
    639 A.2d 147 (Md. App. 1994) .................................................................................... 23

*Morris v. Osmose Wood Preserving*,
    667 A.2d 624 (Md. 1995) ............................................................................................ 23

*Peterson v. USAA Life Ins. Co.*,
    353 F. Supp. 3d 1099 (D. Colo. 2018) ........................................................................ 22

*Peterson v. USAA Life Ins. Co.*,
    No. 18-1447, 2020 WL 2609831 (10th Cir. May 22, 2020) ....................................... 22

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ...................................................................................... 9

*Picus v. Wal-Mart Stores, Inc.*,
    256 F.R.D. 651 (D. Nev. 2009) ................................................................................... 22

*Preston v. Am. Honda Motor Co.*,
    783 F. App'x 669 (9th Cir. 2019) ............................................................................... 22

*Preston v. Am. Honda Motor Co.*,
    No. 18-38, 2018 WL 5099507 (C.D. Cal. May 24, 2018) ......................................... 22

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ....................................................................... 6, 12, 13

*Rasnic v. FCA US LLC*,
    No. 17-2064, 2017 WL 6406880 (D. Kan. Dec. 15, 2017) ....................................... 22

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    136 S. Ct. 2090 (2016) ..................................................................................... 17

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ......................................................... 22

*Salazar v. Cnty. of Orange*,
    No. 11-1125, 2012 WL 12896196 (C.D. Cal. Mar. 12, 2012) ................... 8, 11

*Scanlon v. Curtis Int'l Ltd.*,
    No. 1:19-CV-00937, 2020 WL 3076065 (E.D. Cal. June 10, 2020) ............ 13

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...................................................................... 6, 14

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., Ltd.*,
    475 F.3d 783 (6th Cir. 2007) ........................................................................ 13

*Sinatra v. Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ...................................................................... 14

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
    No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. April 30, 2014) ............ 24

*Statler v. Dell, Inc.*,
    841 F. Supp. 2d 642 (E.D.N.Y. 2012) ......................................................... 25

*Tatung Co., Ltd. v. Shu Tze Hsu*,
    43 F. Supp. 3d 1036 (C.D. Cal. 2014) ..................................................... 16, 17

*Thuney v. Lawyer's Title of Arizona*,
    No. 2:18-cv-1513, 2019 WL 467653 (D. Ariz. Feb. 6, 2019) .................... 25

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) .................................................................... 22

*United States v. Shields*,
    844 F.3d 819 (9th Cir. 2016) ........................................................................ 17

*United States v. Sidorenko*,
    102 F. Supp. 3d 1124 (N.D. Cal. 2015) ....................................................... 17

*Vacco v. Microsoft Corp.*,
   793 A.2d 1048 (Conn. 2002) ........................................................................ 23

*Vantage Mobility Int'l LLC v. Kersey Mobility LLC*,
   No. CV-19-04684, 2020 WL 1432835 (D. Ariz. Mar. 24, 2020) ................ 22

*Vantage Mobility Int'l LLC v. Kersey Mobility LLC*,
   No. CV-19-04684, 2020 WL 411188 (D. Ariz. Jan. 24, 2020) .................... 22

*White v. Just Born, Inc.*,
   No. 2:17-cv-4025, 2018 WL 3748405 (W.D. Mo. Aug. 7, 2018) ............... 22

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
   854 A.2d 425 (Pa. 2004) ............................................................................ 22

*Zine v. Chrysler Corp.*,
   600 N.W. 2d 384 (Mich. Ct. App. 1999) .................................................. 22

*Zuniga v. Am. Home Mortg.*,
   No. 14-cv-2973, 2016 WL 6647932 (D.N.J. Nov. 8, 2016) ........................ 22

**Statutes**

18 U.S.C. § 1961(5) .......................................................................................... 18

18 U.S.C. § 1964 .............................................................................................. 19

28 U.S.C. § 1407(a) ....................................................................................... 6, 8

Ala. Code § 8-19-10 ........................................................................................ 22

Ala. Code § 8-19-14 ........................................................................................ 24

Ariz. Rev. Stat. § 12–541(5) ........................................................................... 25

Fla. Stat. § 95.11(3)(f) ..................................................................................... 24

Mich. Comp. Laws Ann. § 445.904(4)(a) ....................................................... 25

N.Y. C.P.L.R. § 213(2) .................................................................................... 25

N.Y. Gen. Bus. Law § 349 ............................................................................. 25

Okla. Stat. tit. 15 § 754(2) ............................................................................. 25

**Rules**

FED. R. CIV. P. 12(b)(2)..............................................................................................1, 6, 14

FED. R. CIV. P. 12(b)(6)..................................................................................................2, 15

## INTRODUCTION

After pursuing litigation against the other Defendants for a year, the named Plaintiffs added claims against STMicroelectronics, Inc. ("ST Inc."); its foreign parent, STMicroelectronics N.V. ("STNV"); and a foreign subsidiary of STNV, STMicroelectronics International N.V. ("STINV", and together, the "ST Entities") in their Consolidated Class Action Complaint (Dkt. 120, the "Complaint"). Plaintiffs allege that the ST Entities manufactured a single part—the DS84 ASIC (the "ASIC")—that was placed into the Airbag Control Units (ACUs) that ZF[1] built and then sold to the various Vehicle Manufacturer Defendants. Plaintiffs bring none of their warranty, equitable, or fraud claims against the ST Entities. Rather, they allege six nationwide RICO counts and twenty-eight statutory consumer protection claims. All claims fail as insufficiently pleaded, but separately fail because Plaintiffs have not followed the correct procedure to join any of the ST Entities into this MDL, and the Court lacks jurisdiction over the purported claims.

Plaintiffs do not allege facts sufficient to permit the exercise of personal jurisdiction over any ST Entity. Thirty-one new Plaintiffs directly filed claims in the Complaint, flouting MDL procedures and pleading no facts that subject any ST Entity to this Court's jurisdiction. The other thirty-five Plaintiffs—whose actions were transferred into this MDL and who are likewise suing the ST Entities for the first time—do not plead facts subjecting any ST Entity to personal jurisdiction in each (or any) of the now-consolidated actions, where these cases must be tried when they are eventually severed and remanded. Plaintiffs cannot establish general jurisdiction, since STNV and STINV are based in The Netherlands and Switzerland, respectively, and ST Inc. is headquartered in Texas where no Plaintiff filed suit. Nor can they establish specific jurisdiction, since Plaintiffs do not allege that any ST Entity engaged in purposeful activities in the forums where they filed, nor how such activities relate to their claims. Plaintiffs' claims must be dismissed under Rule 12(b)(2).

Plaintiffs' claims against the ST Entities are also deficient under Rule 12(b)(6). As

---

[1] As in the Complaint, here "ZF" refers to the entire ZF TRW Defendant group. (¶ 26.) Unless otherwise specified, paragraph references are to the Complaint (Dkt. 120.)

to the RICO claims, the arguments made in the joint brief regarding lack of racketeering acts or proximate cause apply with even more force to the ST Entities because they are another step removed from any consumer interaction, and were not included in any communications beyond what Plaintiffs allege they had directly with ZF. Plaintiffs do not plead the details of *any* act of mail or wire fraud or any other actionable racketeering act by the ST Entities. Separately, RICO's proximate causation inquiry demands a "directness" between the alleged racketeering act and the plaintiff's injury, and the ST Entities' limited conduct alleged here is separated by several intervening actors, rendering it too indirect.

For similar reasons, many of Plaintiffs' state consumer protection claims also fail. Because of the ST Entities' separation from Plaintiffs in the supply and communication chain, a sufficient consumer-merchant nexus under many states' laws is not sufficiently alleged, and there can be no reliance by any Plaintiff on anything the ST Entities allegedly said or did. Additionally, the Joint Brief's limitations arguments are even stronger as to the ST Entities because they were only sued in May 2020—more than a year after NHTSA announced its investigation and the underlying lawsuits were filed. Other state law claims are barred by prohibitions on extraterritorial application, and others do not permit consumer claims in the heavily regulated automotive industry. All claims pending against the ST Entities should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiffs' allegations (which are taken as true only for the purposes of this Motion, as they must be) place the ST Entities on the outskirts of the supply chain in this lawsuit. Plaintiffs say they bought vehicles that were overpriced because a part in them, the ACU, is defective. (¶ 10.) There is no allegation that the ST Entities manufactured, designed, or tested those vehicles or ACUs. Instead, as alleged, the ST Entities are a subcomponent manufacturer, and are yet another degree removed in the supply chain from even ZF, who is itself a degree removed from the Vehicle Manufacturers. Plaintiffs allege that they bought their vehicles from dealerships (¶¶ 73–138), which in turn received them from the Vehicle Manufacturer Defendants (¶¶ 5, 60, 63 (describing dealership networks)), who in turn

bought ACUs from ZF. (¶ 8.) Plaintiffs allege that the ST Entities manufactured the ASIC that ZF placed into those ACUs.

## I. Plaintiffs allege that the ACU is defective.

Plaintiffs claim that the ST Entities were "responsible for manufacturing the DS84 ASICs that are part of the defective ZF TRW ACU design[.]" (¶ 146.) According to Plaintiffs, in early 2005, the ST Entities and ZF "kicked off a process to develop a new ASIC." (¶ 276.) They say that the ST Entities "custom-designed the DS84 ASIC for ZF TRW" (¶ 278) and that the ST Entities ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████  Plaintiffs then allege that "by August 2008, the parties approved the new DS84 ASIC for production, and ZF began producing the defective ACUs containing the DS84." (¶ 279.) Plaintiffs do not allege that the ST Entities were involved with the manufacturing, design, testing, implementation, marketing, or sale of the ACUs to the Vehicle Manufacturers, or of the Class Vehicles to distributors or consumers.

As to the lone ASIC that the ST Entities allegedly manufactured, Plaintiffs do not claim that it is inherently defective. Rather, they allege that it is "vulnerable" or "susceptible" to electrical overstress (¶¶ 10, 12, 18), and so "must be sufficiently protected from transient electrical currents to ensure they will function during a crash." (¶ 10.) Plaintiffs maintain that "a properly designed ACU has sufficient protections against the levels of transient electricity that could result from a car accident." (¶ 274.) Throughout the Complaint, it is consistently the ACU as a whole that is alleged to be defective. (*See, e.g.*, ¶ 23 ("This lawsuit seeks redress on behalf of Plaintiffs … with defective ZF TRW ACUs…."), ¶¶ 71–138 (Plaintiff specific allegations), ¶ 717 ("[T]he vehicles contained defective ACUs that are vulnerable to EOS.").) In fact, Plaintiffs think the ACUs are defective precisely because they "do not adequately protect the DS84 ASIC" (¶ 280) and that a "properly designed ACU can withstand" the electrical overstress of a crash event (¶¶ 271–74.) Plaintiffs assert that the transient energy that needs to be protected against starts with vehicle sensors, "travel[s] through the sensor wiring to the ACU during a collision" (¶

280) where the "surge of transient electricity" may cause an unprotected ASIC "to fail." (¶ 281.) Plaintiffs do not allege that the ST Entities had any involvement with these ACUs, sensors, or wiring systems.

## II.   The ST Entities first learned of any ASIC damage in 2016.

Plaintiffs allege that the ST Entities conducted "thermal shutdown testing" on the ASIC "in or around 2008," where they "recognized additional protection to the ASIC was necessary" and told ZF then "about the need for additional protection." (¶ 293.) Plaintiffs broadly claim that the "vulnerability of the ZF TRW ACUs" became "increasingly apparent following numerous crashes between 2011 and 2019," (¶¶ 294, 295), and that "ZF TRW routinely requested STMicro's assistance to test the DS84 ASIC following suspicious crash events." (¶ 295.) But, Plaintiffs allege that it would be several more years before any ST Entity learned about the ASIC's presence in any vehicle that experienced an ACU failure. (¶¶ 294–98.) Even then, only three events are pleaded: that "STMicro" learned of electrical overstress on an ASIC that came from an ACU in a Toyota Auris (via testing) in June 2016, and then with another test on a different ASIC from another Toyota Auris in July 2017. (¶¶ 297, 298.) Notably, *none* of the named Plaintiffs allege that they bought or leased a Toyota Auris (which is not even alleged to be marketed or sold in the U.S.), and both of these alleged crash events were in other countries (Turkey and Portugal) and so do not ground Plaintiffs' claims. And, the vast majority of the Toyota Class Vehicles pre-date the ST Entities' alleged 2016 knowledge. (*See* Chart, ¶ 72.)

Other than these two foreign Toyota vehicles, Plaintiffs allege only that the ST Entities learned in January 2016 of a single other instance of electrical overstress on an ASIC through an ACU failure in a 2012 Kia Forte. (¶ 296.) Only two named Plaintiffs are alleged to have bought or leased a Kia Forte, and both did so in 2013, years before the ST Entities' alleged knowledge of this isolated incident. (*Id.*) Though Plaintiffs allege that ZF and other Vehicle Manufacturer Defendants knew of other airbag failures and conducted other testing (*see, e.g.*, ¶¶ 14–15), there is no allegation that this information ever reached the ST Entities. In fact, even where the ST Entities did allegedly learn of airbag non-

deployment events, Plaintiffs allege only that an *ASIC* was sent to the ST Entities in each of these three instances—they do not allege that the ACU, or any other identifying information, was provided to the ST Entities that would enable them to know what manufacturers, makes, models, or model years used the ASIC, nor any information that would allow them to investigate the cause of the alleged electrical overstress in the ACU.

Critically important is what Plaintiffs do *not* allege about the ST Entities. Though they bring claims against the ST Entities based on supposed omissions to NHTSA and the Plaintiff-consumers, Plaintiffs do not claim that any ST Entity had *any* interaction with a Vehicle Manufacturer. Plaintiffs do not allege that any ST Entity interacted with the independent dealers that sold the vehicles. Most obviously, Plaintiffs do not allege that any ST Entity had any communications with any Plaintiff-consumer. They do not allege that any ST Entity publicly advertised or marketed the ASIC, ACU, or any of the vehicles. The only party that the ST Entities is alleged to have communicated with is ZF, and there Plaintiffs allege that the ST Entities told ZF that the ASIC may "need [] additional protection." (¶ 293.) Beyond their interactions with ZF, Plaintiffs do not allege that any ST Entity knew what ZF told NHTSA or Vehicle Manufacturers when it marketed or sold the ACUs, let alone what anyone told distributors, dealers, or consumers when vehicles were being marketed or sold. The ST Entities are thus not only further removed in the supply chain, they were not part of the communication chain.

This is the sum of the ST Entities' alleged "knowledge" and the basis for all of Plaintiffs' claims against them: they allegedly manufactured the ASIC to meet ZF's specifications, the ASIC was "vulnerable" to electrical overstress, and they told ZF that it may need "additional protection" in 2008." (*Id.*) Eight years later, they supposedly learned that three ASICs were damaged, with no additional information about what led to the damage (¶ 294–99), though the ASIC was allegedly employed in more than 12 million vehicles. (¶ 264.) Plaintiffs claim that with this "knowledge," the ST Entities should have but "did not completely or timely inform consumers or regulators about the defect and the serious safety risks that it caused." (¶ 300.)

**RULE 12(B)(2) MOTION: LACK OF PERSONAL JURISDICTION**

Under Rule 12(b)(2), Plaintiffs bear the burden of making a prima facie showing that this Court can exercise personal jurisdiction over each ST Entity. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). This requires showing that the court can exercise either general ("all-purpose") or specific ("case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Ca.*, 137 S. Ct. 1773, 1779–80 (2017). A defendant may offer evidence refuting the plaintiff's allegations. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (plaintiff may not rest on bare allegations when affidavit contradicts them).

Plaintiffs cannot meet that burden here. The Complaint does not allege *which* Plaintiffs are suing on *which* claims against *which* defendants in *which* underlying actions consolidated in this MDL. This defies MDL procedures, since each action must be remanded for trial in its original court. Plaintiffs cannot establish general or specific jurisdiction because no ST Entity is "at home" in any of the original forums, and Plaintiffs allege no purposeful activities in those forums that give rise to Plaintiffs' claims.

## I.   Plaintiffs fail to allege jurisdictional facts for each claim in this MDL.

Plaintiffs initiated this MDL proceeding and must meet the jurisdictional challenges inherent in the MDL process. In an MDL, "individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co, Ltd., Antitrust Litig.*, 642 F.3d 685, 700 (9th Cir. 2011); *see also Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015) (cases consolidated into an MDL "retain their separate identities"). The cases transferred into this MDL must ultimately be severed and remanded to their original courts for trial. 28 U.S.C. § 1407(a); *In re Korean Air*, 642 F.3d at 700 (transferee court administering an MDL must sever and remand the cases for trial, and may not transfer any case to itself for trial or consolidate the action for all purposes).

This Court, as a transferee court administering an MDL, may exercise personal jurisdiction over each claim asserted by each Plaintiff against each Defendant "only to the

same degree that the original transferor court could have." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486, 2005 WL 2988715, at *2 (N.D. Cal. Nov. 7, 2005) (citation omitted). Plaintiffs added new Plaintiffs in violation of MDL procedures, and added the ST Entities as new defendants without alleging how they are connected to the transferor forums or establishing personal jurisdiction in any forum over any ST Entity.

### A. The "direct-file" Plaintiffs' claims violate MDL procedures.

Thirty-one Plaintiffs (nearly half) are new, suing for the first time in the consolidated Complaint. (*See* list at Dkt. 208-4.) As explained in Defendants' joint brief, these purported "intervenors" improperly injected themselves into this MDL. (*See* Dkt. 208 at 46–48.) This Court has already held that new Plaintiffs must file separate actions before they can be added into this MDL. (*See* Dkt. 62 (striking complaint of Plaintiffs Dellatore and Ogorek and instructing them to refile as a new civil case).) The new intervenor-Plaintiffs have made the same error and ignored this Court's prescribed process for joining this MDL. The Court should therefore dismiss their claims, consistent with this Court's prior ruling.

Alternatively, these "direct-file" Plaintiffs must make a prima facie showing that this Court can exercise jurisdiction over their direct-file claims based on each ST Entity's contacts with California. *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019) (courts must analyze direct-file claims separately from those of transferred claims). As demonstrated further below, they cannot make that showing.

### B. The transferred Plaintiffs do not allege personal jurisdiction over each ST Entity in their respective transferred cases.

The Plaintiffs whose underlying actions were transferred into this MDL also fail to establish jurisdiction over each ST Entity. The Complaint is confusingly vague and does not provide the required notice. Plaintiffs do not even articulate whether they seek to add all ST Entities as defendants in each transferred action, much less show how each transferor court could exercise jurisdiction over each ST Entity.

This MDL involves cases transferred from California, Florida, Michigan, New York, Washington, and Alabama. "[A]n MDL proceeding like the present one is merely a

collection of individual cases, combined to achieve efficiencies in pretrial proceedings." *In re Toyota Motor Corp. UAM Litig.*, 785 F. Supp. 2d 925, 930 (C.D. Cal. June 8, 2011). Again: MDL procedures *require* that the cases be severed and remanded for trial. 28 U.S.C. § 1407(a). Since this Court can only exercise jurisdiction to the "degree that the original transferor court[s] could have" (*DRAM*, 2005 WL 2988715, at *2), each Plaintiff must allege how the courts where they originally filed have jurisdiction over each ST Entity.

Plaintiffs do not even try. The Complaint does not give the ST Entities notice about *which* Plaintiffs are asserting *which* claims against *which* ST Entity in *which* underlying cases, nor where each ST Entity would face trial on remand. Rather than allege general or specific jurisdiction for each forum, they assert vague, omnibus allegations by all Plaintiffs against all ST Entities. This is not permitted at law, nor by this Court's order instructing Plaintiffs to refrain from such group allegations in their consolidated Complaint. (*See* Dkt. 106 at p. 3 ("Plaintiffs should specify which allegations apply to which Defendant(s), and should avoid making unnecessary group allegations in the Consolidated Complaint."); *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually." (citation omitted)); *Salazar v. Cnty. of Orange*, No. 11-1125, 2012 WL 12896196, at *2–3 (C.D. Cal. Mar. 12, 2012) (dismissing "shotgun pleading" that failed to distinguish between defendants).

As pleaded, the Complaint does not empower this Court to exercise jurisdiction "to the same degree that the original transferor court[s] could have" for each of the transferred cases. *DRAM*, 2005 WL 2988715, at *2 (citation omitted).

## II.     This Court does not have general jurisdiction over any ST Entity.

Plaintiffs do not allege that this Court has general personal jurisdiction over any ST Entity. A defendant is only subject to general jurisdiction where it is "essentially at home," and a business entity is only "at home" in two "paradigm" forums: (1) its place of incorporation and (2) its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

STNV and STINV are foreign entities and are not "at home" anywhere in the United States. Plaintiffs concede that STNV and STINV are both incorporated under the laws of the Netherlands, and that their principal places of business are in Geneva, Switzerland. (¶¶ 38-39.) Neither is "at home" in California or in any other of the originating forums.

ST Inc. is not "at home" in those forums either. As Plaintiffs concede, ST Inc. is incorporated in Delaware and its headquarters is in Coppell, Texas. (¶¶ 40, 148.) None of the underlying actions were originally filed in Delaware or Texas. Plaintiffs hypothesize that "[i]f a case were filed in Texas, it would almost certainly be transferred here" (¶ 148), but courts reject such hypothetical jurisdictional allegations. *Picot v. Weston*, 780 F.3d 1206, 1215 n.3 (9th Cir. 2015) ("A plaintiff may not create personal jurisdiction over one claim by arguing that jurisdiction might be proper over a different, hypothetical claim not before the court." (citation omitted)). This MDL includes no *actual* case transferred from Texas or Delaware, so ST Inc. is not subject to general jurisdiction here.

## III. This Court does not have specific jurisdiction over any ST Entity.

Plaintiffs also fail to allege facts supporting specific jurisdiction over any ST Entity. Courts follow a three-part test to assess whether they have specific jurisdiction over a nonresident: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (Kronstadt, J.); *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (claims must relate to "the very controversy that establishes jurisdiction"). These factors are all lacking here.

### A. Plaintiffs cannot establish personal jurisdiction over any ST Entity based on their alleged knowledge of where vehicles were sold.

Plaintiffs try to establish specific jurisdiction over each ST Entity on the ground that each was allegedly aware that the ASIC they allegedly manufactured would be incorporated

into airbags that would be installed in vehicles sold in California and other states. (¶¶ 147, 179.) But mere awareness that components would eventually be incorporated into products sold in a forum does not constitute purposeful availment or direction. *See Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Ca.*, 480 U.S. 102, 112 (1987) (awareness that a product would be sold in a forum state does not constitute purposeful direction towards that state); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1777.

As described above, there were many intermediate steps between the ST Entities and Plaintiffs beyond each ST Entity's control or knowledge. Tellingly, Plaintiffs do not allege that any ST Entity knew about or was involved in determining how or where DS84 ASICs would be incorporated into ACUs, where those ACUs would be incorporated into vehicles, where those vehicles would be imported and distributed to dealers, or where dealers would sell the vehicles to customers. Component manufacturers are not subject to jurisdiction in a forum simply because their components are later incorporated into products sold there. *See, e.g.*, *Mitsui Sumitomo Ins. USA, Inc. v. Kyocera Mita Corp.*, No. 15-1860, 2015 WL 5842324, at *3 (C.D. Cal. Oct. 6, 2015) (no jurisdiction over component manufacturer that did not "maintain[] any control over the eventual destination of the diodes after selling them"). Plaintiffs' allegations of mere "awareness" about the ASIC's use in the stream of commerce do not establish specific personal jurisdiction over any ST Entity in any forum.

## B. STNV does not engage in forum-related activities.

Plaintiffs do not allege any purposeful forum-related activities by STNV, the foreign parent entity. STNV is a holding company incorporated in The Netherlands and does not make, market, distribute, or sell products or services in the United States. (*See* Tuinfort Dec., ¶¶ 4–5.) It has no offices, facilities, real estate, or bank accounts in California or the other forum states (Michigan, Florida, New York, Washington, or Alabama), nor anywhere else in the United States. (*Id.* ¶¶ 7–9.) It is not registered to do business in those states or elsewhere in the United States. (*Id.* ¶ 10.) It has no employees in those states or elsewhere in the United States. (*Id.* ¶ 11.) STNV's business operations are all conducted through subsidiaries organized and operated according to the laws of their respective countries of

incorporation. (*Id.* ¶ 12.)

Plaintiffs do not allege otherwise, nor do they identify forum-related activities by STNV that relate to their claims. *Dole Food*, 303 F.3d at 1111. Plaintiffs do not allege a single fact suggesting that STNV is involved in the manufacture or sale of the ASIC. Plaintiffs allege that STNV securities are traded on the New York Stock Exchange (¶ 172), but do not suggest that their claims arise out of such securities trading. Other than maintaining a registered agent in New York solely for service of process relating to its U.S. securities registration, STNV conducts no business in the U.S. (Tuinfort Dec., ¶ 6.)

### C. STINV does not engage in forum-related activities.

Plaintiffs likewise fail to allege that STINV engaged in forum-related activities. Indeed, Plaintiffs allege little about STINV. It is a subsidiary of STNV and is incorporated in The Netherlands. (*See* Elia Dec., ¶¶ 4–5.) It has no offices, facilities, real estate, or bank accounts in the United States. (*Id.* ¶¶ 6–8.) It is not registered to do business in California, Michigan, Florida, New York, Washington, or Alabama. (*Id.* ¶ 9.) It has no domestic employees in those states either. (*Id.* ¶ 10.) As such, like its parent STNV, STINV is a foreign entity with no connection to this case, and Plaintiffs identify no reason for suing it here. Plaintiffs do not allege that STINV was involved in the manufacture or sale of the ASIC or any other purposeful activities in the United States. Again, group allegations against corporate affiliates do not suffice; they must establish jurisdiction over *each* entity. *Keeton*, 465 U.S. at 781 n.13; *see also Salazar*, 2012 WL 12896196, at *2–3. Plaintiffs do not come close to meeting that burden.

### D. Plaintiffs fail to tie ST Inc. activities to California or any other forum.

Plaintiffs' jurisdictional allegations against ST Inc., the United States subsidiary, are similarly defective. Plaintiffs attempt to subject ST Inc. to specific jurisdiction in California on the ground that ST Inc. knew that ASICs would be incorporated into airbags likely to be installed in vehicles that would be sold in California. (¶ 147.) Such allegations are wholly inadequate. *See Asahi*, 480 U.S. at 112 (awareness of where products might be sold is not purposeful availment or direction). Plaintiffs also categorically allege that "STMicro"—

1   their conflated term for all three ST Entities—has twelve United States offices; that its

2   largest customer is Apple, based in California; and that it has distributors and employees in

3   the United States. (¶¶ 177–78.) But Plaintiffs do not explain how those offices or activities

4   have anything to do with their claims here, and again rely on improper group allegations

5   conflating the activities of multiple defendants. As such, ST Inc. is not subject to specific

6   jurisdiction in California for any direct-filed or transferred claims.

7          Nor does the Complaint allege purposeful, forum-related activities by ST Inc. where

8   other transferred actions were filed. Plaintiffs identify no activity by ST Inc. in Florida,

9   New York, Washington, or Alabama. And Plaintiffs' allegations about ST Inc.'s activities

10  in Michigan (¶ 146) do not clarify *which* Plaintiffs seek to assert jurisdiction on that basis

11  and for *which* transferred actions. The Complaint simply does not provide notice regarding

12  how each Plaintiff seeks to assert specific jurisdiction over ST Inc. and in which cases.

13         **E. Plaintiffs cannot establish alter ego jurisdiction over STNV or STINV.**

14         Even if this Court finds specific jurisdiction over ST Inc. despite the above defects

15  (it should not), Plaintiffs cannot establish jurisdiction over the two foreign ST Entities based

16  on an alter ego theory. Plaintiffs allege that STNV "exerts a close degree of control over

17  the actions of its United States subsidiaries, and exerts control over their daily affairs." (¶

18  174.) Plaintiffs do not make the same assertion against STINV, and in any event, such

19  conclusory allegations do not suffice.

20         Establishing alter ego jurisdiction requires that the plaintiff plead facts establishing

21  "(1) that there is such unity of interest and ownership that the separate personalities [of the

22  two entities] no longer exist and (2) that failure to disregard [their separate identities] would

23  result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)

24  (internal quotation marks and citation omitted). Under this rigorous standard, parent

25  corporations are generally insulated from liability for their subsidiaries' actions; the

26  corporate veil may only be "pierced to exercise personal jurisdiction over a foreign

27  defendant in certain limited circumstances." *Ranza*, 793 F.3d at 1071 (citation omitted).

28  Courts consider whether the entities commingle funds, use the same offices and employees,

disregard corporate formalities, fail to segregate records, and have identical directors and officers. *Scanlon v. Curtis Int'l Ltd.*, No. 1:19-CV-00937, 2020 WL 3076065, at *5 (E.D. Cal. June 10, 2020).[2]

No such elements are alleged or present here. STNV and STINV maintain their own accounting records, finances, and financial obligations separate and apart from those of their subsidiaries or affiliates. (Tuinfort Dec., ¶ 16; Elia Dec., ¶ 14.) STNV, STINV, and ST Inc. are separate and distinct entities. (Tuinfort Dec., ¶ 13; Elia Dec., ¶ 12.) They each observe corporate formalities and have their own directors, officers, and employees. (Tuinfort Dec., ¶ 15; Elia Dec., ¶ 13.) They each maintain separate corporate and financial records, do not comingle assets, and maintain independent bank accounts. (Tuinfort Dec., ¶ 16; Elia Dec., ¶ 14.) STNV provides certain administrative services to its subsidiaries, including those described in its 2019 Annual Report (¶ 174), but those do not amount to exercising close control over its subsidiaries or their daily affairs. (Tuinfort Dec., ¶ 14.)

Plaintiffs' other allegations reveal only "[r]outine interaction and coordination between a parent and its subsidiary," and thus do not establish "pervasive control" sufficient to establish alter ego liability. *Elson v. Black*, No. 2:18-cv-00116, 2019 WL 4673211, at *6 (C.D. Cal. Sept. 25, 2019) (collecting cases). Plaintiffs assert that United States offices "report to a global head of sales & marketing" at STNV, that all ST Entities operate as part of a unified brand, and that STNV and STINV have the power to appoint members to ST Inc.'s board. (¶¶ 170, 174–77.) These ordinary activities do not justify disregarding the corporate form. *See Unocal*, 248 F.3d at 926 (no alter ego jurisdiction where a subsidiary simply reports to its parent); *Ranza*, 793 F.3d at 1074 (no alter ego jurisdiction even though parent ensured that the brand was marketed consistently worldwide); *cf. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (no alter

---

[2] The alter ago standards in the transferor jurisdictions are similarly demanding. In Michigan for example, "there is a presumption that the corporate form will be respected." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing and applying state law standard); *see also Foodland Distribs. v. Al–Naimi*, 559 N.W.2d 379, 381 (Mich. App. 1996) (Michigan courts will not pierce the corporate veil unless the corporate entity was used as a mere instrumentality to commit a fraud or wrong).

1   ego liability even where parent and subsidiary shared same officers, directors, staff, and

2   office space); *Kramer Motors, Inc. v. British Leyland Ltd.*, 628 F.2d 1175, 1177 (9th Cir.

3   1980) (even overlapping board membership does not constitute an alter ego relationship).[3]

4        In short, STNV or STINV do not exercise such "pervasive control" that ST Inc. is

5   merely an "instrumentality" of either STNV or STINV. *Unocal*, 248 F.3d at 926. Plaintiffs

6   do not plead, nor could they, that STNV or STINV are the "alter egos" of ST Inc.

7        **F. Exercising specific jurisdiction over STNV or STINV is unreasonable.**

8        The inquiry's third prong independently bars Plaintiffs' claims because exercising

9   such jurisdiction over STNV and STINV would not be "reasonable." *Schwarzenegger*, 374

10  F.3d at 802 ("[T]he exercise of jurisdiction must comport with fair play and substantial

11  justice, i.e. it must be reasonable.") (citation omitted); *Sinatra v. Nat'l Enquirer, Inc*., 854

12  F.2d 1191, 1198–99 (9th Cir. 1988) (listing factors in reasonableness inquiry). Indeed, "the

13  unique burdens placed upon one who must defend oneself in a foreign legal system should

14  have significant weight in assessing the reasonableness of stretching a long-arm of personal

15  jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

16       STNV and STINV did not "purposeful[ly] interject[]" themselves in the affairs of

17  California or any other state, and would face a significant burden if subjected to litigation

18  here. *Sinatra*, 854 F.2d at 1198. It would also be wholly inefficient and unnecessary to

19  compel foreign entities to defend this suit because Plaintiffs do not allege that STNV or

20  STINV were involved in activities giving rise to their claims, and do not identify any need

21  or justification for piercing the corporate veil. Given this, exercising specific jurisdiction

22  over STNV and STINV would be harassing, inconvenient, and wholly unnecessary, and

23  would not be "reasonable" or "comport with fair play and substantial justice."

24  *Schwarzenegger*, 374 F.3d at 802. All claims against them should be dismissed with

25  prejudice under Rule 12(b)(2).

26

27  _____

28       [3] In fact, SEC regulations require use of the nomenclature "ST Group." *See* SEC
    Form 20-F, https://www.sec.gov/files/form20-f.pdf, at 6 (definition of "group").

-14-

**RULE 12(b)(6) MOTION: PLAINTIFFS FAIL TO STATE A CLAIM**

Under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible only where based on "factual content;" conclusory allegations or conclusions of law are not enough and may be disregarded.[4] *Id.*

## I.    Plaintiff's RICO claims against the ST Entities fail for additional reasons.

The RICO claims against the ST Entities fail for two unique reasons beyond those in the Joint Brief. First, Plaintiffs do not allege racketeering acts committed by any ST Entity—the conduct alleged was committed by other parties. Second, Plaintiffs' increased distance from any ST Entity's conduct compounds their proximate causation problems.

RICO "sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity[.]" *Eclectic Props. E., LLC v. Marcus and Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Id.* (citation omitted). Plaintiffs say the ST Entities participated in six enterprises through a pattern of racketeering acts: one composed of just them and ZF (the "ACU Enterprise" (¶ 568)), and five more, composed of the ST Entities, ZF, and each of the Vehicle Manufacturer Defendants, called, respectively, the "Hyundai-Kia Enterprise," (¶ 590), "FCA Enterprise," (¶ 613); "Toyota Enterprise" (¶ 634), "Honda Enterprise" (¶ 657), and the "Mitsubishi Enterprise," (¶ 680).

It is not enough for Plaintiffs to plead what the *enterprise* or other parties in an enterprise did; *each* Plaintiff must plead what racketeering acts *each* ST Entity committed that harmed them—not some generalized conduct committed by an "enterprise" made up of several Defendant groups, each of which is made up of multiple legal entities. *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 913 (C.D. Cal. 2012) (with "multiple defendants, a plaintiff must also 'identif[y] the role of [each

---

[4] The chart attached at Exhibit 1 summarizes the ST Entities' defenses against each of Plaintiffs' claims.

1  defendant[ ] in the alleged fraudulent scheme'" (citation omitted)); *Tatung Co., Ltd. v. Shu*

2  *Tze Hsu*, 43 F. Supp. 3d 1036, 1062 (C.D. Cal. 2014) ("[a]fter disregarding the allegations"

3  that "merely lump multiple defendants together" the Court had "very few allegations" about

4  the specific defendant) (internal marks omitted).

5          **A. Plaintiffs do not plead racketeering acts by any ST Entity.**

6          In each RICO count, Plaintiffs plead that the ST Entities engaged in two categories

7  of racketeering conduct: first, the conduct they allege constitutes "participat[ion] in the"

8  enterprises, and then the conduct they allege harmed them. For the first, Plaintiffs claim that

9  the ST Entities participated in the enterprises by (1) "Designing and manufacturing the

10  DS84 ASIC included in the Defective ACUs," (2) "Testing the ACUs in the Class Vehicles

11  and consulting with ZF TRW concerning observed evidence of EOS in Class Vehicles;" (3)

12  "Concealing that the Class Vehicles were equipped" with defective ACUs "that were

13  vulnerable to EOS;" (4) "Concealing information about the existence, nature, and scope of

14  the defect from NHTSA and the public;" and (5) "Collecting revenue flowing from the sale

15  of the DS84 ASIC." (¶ 575 (describing ACU Enterprise).) [5]

16          The only racketeering acts Plaintiffs allege are mail and wire fraud (¶ 577), which

17  require "(1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use

18  of the United States mail or interstate telephone wires in furtherance thereof." *In re

19  WellPoint, Inc.*, 903 F. Supp. 2d at 913 (citation omitted). But the conduct alleged against

20  the ST Entities does not fit this definition. The business practice of "[d]esigning and

21  manufacturing" a component does not require the use of the mails or wires—or, at least

22

23          [5] The same five types of conduct are alleged for the Hyundai-Kia Enterprise. (¶ 597.)

24  Nearly the same is alleged for the FCA Enterprise, but the second category is changed to
"Consulting with ZF TRW concerning observed evidence of EOS in FCA Class Vehicles"
instead of "testing" for it. (¶ 619.) The same is true for Toyota, also alleging that the ST

25  Entities' role was "consulting" instead of "testing", and that revenue flowed "from the sale
and lease of the Toyota Class Vehicles" instead of the sale of the ASIC. (¶ 641.) The Honda

26  pleading pattern is the same as Toyota's: consulting with ZF, and collecting revenues from
the sale and lease "of the Honda Class Vehicles." (¶ 664.) The disclosure allegation is

27  changed slightly to "Concealing that Occupant Restraint Systems in Honda Class Vehicles
had failed in the field[.]" The Mitsubishi Enterprise allegations are also nearly the same,

28  though the "Testing/Consulting" conduct is omitted completely. (¶ 687.)

Plaintiffs do not plead when or how they were used. *Id.* Nor does internally "[t]esting" a part or "consulting with" ZF, a commercial customer, without more, implicate the mails or wires. Instead, Plaintiffs allege that the ST Entities, two of which are foreign, learned about the ASIC's use in certain vehicles due to crash events in foreign countries. Plaintiffs do not explain what, if any, of the alleged conduct occurred in the United States, and RICO generally counsels against extraterritorial application. *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2103 (2016) (explaining presumption against extraterritorial application of RICO). All that is left to support the claims are generic allegations about "concealing information;" but the use of the mails or wires remains unexplained.

Plaintiffs then try to define the conduct that harmed them. Here, Plaintiffs first plead that the racketeering acts were committed by the "enterprise" as a whole (¶ 580), which is not enough. *Tatung Co.*, 43 F. Supp. 3d at 1062. Plaintiffs here again claim the ST Entities failed to make proper disclosures to NHTSA and to the consumer-public. (¶ 580(a).) Plaintiffs critically do *not* allege that any ST Entity made any other statements that were rendered misleading by an omission. But by relying purely on omissions, rather than affirmative statements that any ST Entity made, Plaintiffs fail to explain where any ST Entity used the mails or wires, as required.

Plaintiffs allege that the ST Entities failed to file a 573 Report with NHTSA (¶ 580(a)), which is the mechanism that they claim the ST Entities should have employed to made their disclosure. But, as noted in the Joint Brief, communications or lack thereof with a regulatory authority do not qualify as acts of mail or wire fraud. (*See* Dkt. 208 at 13 (describing the *Noerr-Pennington* doctrine).) As to the consumer-public, Plaintiffs have not identified any statutory or fiduciary duty that would require the ST Entities as a component supplier to make any disclosure—and in the absence of a duty, there is no mail or wire fraud for an omission. *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) ("'[a] nondisclosure [ ] can support a [wire] fraud charge only when there exists an independent duty that has been breached . . .'" (citation omitted)). Even if an ST Entity was obligated to file a 573 Report as Plaintiffs claim, that is only a single omission—not the "pattern" that

RICO requires. *See* 18 U.S.C. § 1961(5) (a "pattern" requires at least two acts).

Otherwise, Plaintiffs allege that *ZF* used the mails and wires to correspond with the ST Entities, but that is ZF's conduct. (¶ 580(b).) On the other side of the coin, Plaintiffs allege "upon information and belief" that the ST Entities sent "invoices to the Vehicle Manufacturers, corresponding with [the ST Entities,] and shipping the defective ACUs." (¶ 580(c).) But this appears to refer to ZF's alleged conduct, not any ST Entity's. There is no allegation that any ST Entity sold the ASIC directly to, or even communicated with, any Vehicle Manufacturer. Nor does it make sense that Vehicle Manufacturers would buy ASICs directly when they were already buying the ACUs containing the ASIC from ZF. Whatever Plaintiffs intended to say about the ST Entities here is, at a minimum, not "well pleaded" or "plausible." *Iqbal*, 556 U.S. at 678. Regardless, no specific invoices or sales, nor any other use of the mails or wires, is identified, and "information and belief" pleading is insufficient. Paragraphs (d) to (f) also refer to ZF's conduct—not any ST Entity's.[6]

Nor can the ST Entities be liable for other parties' acts. A party may be imputed with a third party's mail and wire fraud only if it was a knowing participant to a scheme and had a specific intent to defraud. *In re Volkswagen "Clean Diesel" Mktg., Products Liab. Litig.*, MDL 2672 CRB, 2017 WL 4890594, at *15 (N.D. Cal. Oct. 30, 2017). Where parts manufacturers are found vicariously liable for others' mail and wire usage, like in the EcoDiesel litigation, the part manufacturer was "actively involved in developing the hidden [defeat device]" that had no legitimate purpose, and even "falsely touted to the market and lawmakers that 'clean diesel' vehicles" were "compliant with emission standards"—strong indications of direct conduct, a scheme, and its knowing participation and intent. *In re*

---

[6] The other Nationwide Counts follow the same pleading pattern. No conduct by any ST Entity is identified in the Hyundai-Kia Enterprise Count other than that the ST Entities allegedly knew about certain statements Hyundai-Kia made which they "conspired to conceal," with no detail about which ST Entity should have disclosed what, to who, or when, as Rule 9(b) requires. (*See, e.g.*, ¶ 602(a),(b); s*ee also* ¶ 624(a),(b) (FCA Enterprise), ¶ 647(a),(b) (Toyota Enterprise), ¶ 670(a),(b) (Honda Enterprise), ¶ 692(a),(b) (Mitsubishi Enterprise)). Plaintiffs provide only a bald assertion that the ST Entities knew about each Vehicle Manufacturer's "standard practice of selling" vehicles "under these false or misleading pretenses," and "conspired" to "conceal the existence and scope of the defect." *Id.* All other alleged conduct was committed by ZF or the Vehicle Manufacturers. *Id.*

*Chrysler-Dodge-Jeep Ecodiesel Mktg., Litig.*, 295 F. Supp. 3d 927, 974 (N.D. Cal. 2018); *In re Volkswagen*, 2017 WL 4890594, at *14 (recounting Bosch's public advertising and lobbying efforts). Here, the ASIC had a legitimate purpose in the ACUs; the ST Entities allegedly communicated only with ZF; and the ST Entities are not alleged to have known how the ASIC would be installed or protected in ACUs or vehicles. Thus, they cannot be charged with any "co-conspirator's" acts. Without plausible vicarious or individual mail or wire fraud acts, Plaintiffs do not plead any racketeering act committed by any ST Entity.

### B. The ST Entities' conduct did not proximately harm any Plaintiff.

RICO only permits a private right of action to a "person injured in his business or property by reason of a violation of section 1962[.]" 18 U.S.C. § 1964. Here, the law requires a direct causal link between the alleged racketeering act and the injury. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). "[C]ourts must scrutinize the causal link between the RICO violation and the injury, identifying with precision both the nature of the violation and the cause of the injury to the plaintiff." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (citing *Anza*). Both nondisclosure theories fail the proximate causation analysis because any alleged NHTSA omission is too attenuated from the alleged harm, and intermediate actors disconnect Plaintiffs from the ST Entities' alleged conduct.

### 1. Any "omission" to NHTSA did not directly harm Plaintiffs.

Plaintiffs first allege that ZF and the ST Entities "knew and intended that government regulators would rely on their material omissions made about the Class Vehicles to approve them for importation, marketing, and sale to consumers in the United States." (¶ 581.) Even if an omission by the ST Entities could qualify as a racketeering act, none of the ST Entities' representations (or lack thereof) to any government regulator can ground a claim. As the Supreme Court of the United States holds, (mis)representations to a government entity are generally not direct enough to harm an individual third party. *Anza*, 547 U.S. at 457–59. In *Anza*, Ideal Steel sued its principal competitor, National Steel Supply, claiming that it

"adopted a practice of failing to charge the requisite New York sales tax to cash-paying customers, even when conducting transactions that were not exempt from sales tax [.]" *Id.* at 453–54. Ideal claimed that this allowed National Steel to reduce its prices, which in turn harmed Ideal as a third-party. *Id.* at 454. Ideal brought RICO claims on the theory that, by submitting fraudulent tax returns, National Steel "committed various acts of mail fraud (when they sent the returns by mail) and wire fraud (when they sent them electronically)." *Id.* The Court rejected Ideal's RICO claim under a proximate causation analysis, finding that the "cause of Ideal's harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged RICO violations (defrauding the State)." *Id.* at 458; *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11 (2010) (finding a "disconnect between the asserted injury and the alleged fraud" where the "City's harm was directly caused by the customers").

The same is true here: Plaintiffs' alleged injury (overpaying for vehicles) is disconnected from the alleged racketeering act (failing to file a 573 Report with NHTSA). Plaintiffs claim that the ST Entities "knew and intended that government regulators would rely on their material omissions" to "approve them for importation, marketing, and sale to consumers in the United States" (¶ 581) which then somehow led Plaintiffs to "overpa[y] for the Class Vehicles as the result of their concealing the ACU Defect." (¶ 570.) But Plaintiffs do not explain how a NHTSA disclosure would have lowered their vehicle's price, which was set by third party Vehicle Manufacturers and dealers. Plaintiffs assert that their vehicles "never should have been introduced into the U.S. stream of commerce," and seemingly assume that NHTSA would have required a recall of every Class Vehicle or prohibited their sale. (¶ 582.) This is speculative at best, and is undercut by the fact that even now, a year into its expanded investigation, NHTSA has not prohibited the vehicles' sale. Plaintiffs simply do not connect any NHTSA omissions to their pleaded injury.

### 2. Intervening actors' conduct undermine proximate causation.

Plaintiffs' second theory alleges that consumers were "directly harmed" by Defendants' omissions to them in purchasing or leasing vehicles that they would not have otherwise. (¶ 582.) Whatever other parties may have told them, the ST Entities' conduct did

-20-

1   not directly harm Plaintiffs because there are too many intervening actors in the supply and

2   causation chain between the ASIC and Plaintiffs.

3   In some circumstances, third-party reliance, such as through a communication or

4   supply chain, may satisfy RICO's proximate cause requirement, but that is true when a

5   third-party relies on the misrepresentation, and the plaintiff in turn relies on that third-party.

6   *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). Plaintiffs here do not

7   allege any such chain of reliance. Again, it is not only the layers of parties between Plaintiffs

8   and each ST Entity that defeats proximate causation, it is the ST Entities' exclusion from

9   the alleged communications, which makes any omission too indirect to have caused

10  Plaintiffs' injury. While Plaintiffs allege that the Vehicle Manufacturers made false

11  representations, these independent representations—which the ST Entities are not alleged

12  to have known of—destroy the casual chain because they are "independent factors that

13  account for [Plaintiffs'] injury" and "constitute an intervening cause breaking the chain of

14  causation between" any ST Entity's conduct and the injury. *Bridge*, 553 U.S. at 658–59.

15  Plaintiffs' inability to define a racketeering act by any ST Entity, let alone a pattern

16  of them, or one that directly harmed them, is fatal to their RICO claims.

17  **II.   Plaintiffs' statutory consumer protection claims against the ST Entities fail.**

18  Plaintiffs' state statutory claims against the ST Entities also fail for unique reasons.

19  The separation from Plaintiffs means that Plaintiffs cannot show reliance, causation, or the

20  needed consumer-defendant nexus that most states require. And, the ST Entities were sued

21  a year after the cases were filed, so limitations has run on additional claims.

22  **A. Plaintiffs fail to allege reliance, causation, or a consumer-defendant nexus.**

23  Another consequence of each ST Entity's distance from Plaintiffs is that no Plaintiff

24  can plausibly plead reliance on any ST Entity's conduct, or that any ST Entity caused their

25  injury. Reliance is required for Plaintiffs' consumer protection claims brought under the

26  laws of Arizona, California, Indiana, Maryland, Montana, North Carolina, Oklahoma,

27

28

-21-

Pennsylvania, Texas, and Virginia.[7] To adequately plead reliance, Plaintiffs must "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Gomez v. Carmax Auto Superstores Cal., LLC*, No. 2:14-CV-09019-CAS-PL, 2015 WL 350219, at *6 (C.D. Cal. Jan. 22, 2015). Similarly, causation is required for claims brought under the Alabama, Colorado, Connecticut, Florida, Illinois, Kansas, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nevada, New Jersey, New York, South Carolina, Tennessee, Texas and Washington statutes.[8]

---

[7] **Arizona:** *Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, No. CV-19-04684, 2020 WL 411188, at *9 (D. Ariz. Jan. 24, 2020), *reconsideration denied*, No. CV-19-04684, 2020 WL 1432835 (D. Ariz. Mar. 24, 2020). **California:** *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016). **Indiana:** *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2009 WL 3460218, at *5 (N.D. Ill. Oct. 20, 2009). **Maryland:** *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 255 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014). **Montana:** *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017). **North Carolina:** *Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009). **Oklahoma:** *Cole v. NIBCO, Inc.*, No. 13-7871, 2016 WL 10536025, at *21 (D.N.J. Feb. 26, 2016). **Pennsylvania:** *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438–39 (Pa. 2004). **Texas:** *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 446 (N.D. Cal. 2014). **Virginia:** *Adardour v. Am. Settlements Inc.*, 1:08-CV-798, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009).

[8] **Alabama:** ALA. CODE § 8-19-10. **Colorado:** *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1114 (D. Colo. 2018), *aff'd*, No. 18-1447, 2020 WL 2609831 (10th Cir. May 22, 2020). **Connecticut:** *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 87 (3d Cir. 2015). **Florida:** *Hall v. Bristol-Myers Squibb Co.*, No. 06-5203, 2009 WL 5206144, at *8 (D.N.J. Dec. 30, 2009). **Illinois:** *Preston v. Am. Honda Motor Co., Inc.*, No. 18-38, 2018 WL 5099507, at *3 (C.D. Cal. May 24, 2018), *aff'd in relevant part*, 783 F. App'x 669 (9th Cir. 2019). **Kansas:** *Rasnic v. FCA US LLC*, No. 17-2064, 2017 WL 6406880. at *8 (D. Kan. Dec. 15, 2017). **Louisiana:** *Bves v. Telecheck Recovery Servs., Inc.*, No. CIV.A. 94-3182, 1997 WL 736692, at *5 (E.D. La. Nov. 24, 1997). **Massachusetts:** *Frappier v. Countrywide Home Loans, Inc.*, No. 9-cv-11006, 2013 WL 1308602, at *19 (D. Mass. Mar. 31, 2013). **Michigan:** *Zine v. Chrysler Corp.*, 600 N.W. 2d 384, 398 (Mich. Ct. App. 1999). **Minnesota:** *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1098 (D. Minn. 2017). **Missouri:** *White v. Just Born, Inc.*, No. 2:17-cv-4025, 2018 WL 3748405, at *3 (W.D. Mo. Aug. 7, 2018). **Montana:** *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700. **Nevada:** *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). **New Jersey:** *Zuniga v. Am. Home Mortg.*. No. 14-cv-2973. 2016 WL 6647932. at *4–5 (D.N.J. Nov. 8. 2016). **New York:** *Arrovo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *11 (E.D.N.Y. May 19, 2014). **South Carolina:** *Meadow v. Nibco, Inc.*, No. 3-15-1124, 2016 WL 2986350, at *7–8 (M.D. Tenn. May 24, 2016). **Tennessee:** *McElroy v. Amylin Pharm., Inc.*, No. 1:12-cv-297, 2013 WL 12099073, at *8 (E.D. Tenn. Aug. 5, 2013). **Texas:** *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1123 (N.D. Cal. 2015). **Washington:** *Maple v. Costco Wholesale Corp.*, 649 F. App'x 570, 572 (9th Cir. 2016).

Aside from conclusory allegations, Plaintiffs plead no *facts* supporting reliance or causation. The Pennsylvania Plaintiffs, for example, allege that the ST Entities engaged in a "scheme and concealment of the ACU defect" and that, "[h]ad they known the truth, [they] would not have purchased or leased the Class Vehicles, or would have paid significantly less for them." (¶ 2144.) Plaintiffs do not describe the content of any omission by any ST Entity, where each ST Entity should have revealed these omissions, any representative advertisements by them that failed to include the information, or how Plaintiffs relied on each alleged omission. Instead, Plaintiffs lodge the same conclusory allegations for each Plaintiff group without factually supporting any alleged conduct taken by each ST Entity. (*See, e.g.*, ¶ 2418 ("Had they known the truth, the Texas Plaintiffs and Texas State Class members would not have purchased or leased the Class Vehicles. . .").) Absent factual allegations that any omission was made by any ST Entity *to Plaintiffs* (rather than ZF or another party) that caused their injury, Plaintiffs fail to state consumer claims in these states.

Next, the Connecticut, Kansas, Maryland, Missouri, South Carolina, Texas and Washington statutes only apply to consumer-facing sellers, which no ST Entity is.[9] Similarly, the Arizona, New Jersey and New York statutory claims all fail because each requires a *direct* communication between the seller and purchaser.[10]

---

[9] **Connecticut:** *See Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1067 (Conn. 2002) (plaintiff's injuries "too remote" from Microsoft's conduct because of two layers of intermediate parties, the computer equipment manufacturers and the retailers). **Kansas:** The Kansas Act is limited to individuals who contract directly with suppliers for goods or services. *Ellibee v. Aramark Corr. Servs., Inc.*, 154 P.3d 39, 41 (Kan. App. 2007). **Maryland:** Components sold to a commercial buyer for commercial purposes are not consumer goods. *Morris v. Osmose Wood Preserving*, 639 A.2d 147, 154-55 (Md. (MD App. 1994), *rev'd in part on other grounds,* 667 A.2d 624 (Md. 1995). **Missouri:** *McCormies v. PennyMac Loan Servs., LLC*, No. 18-6003-CV, 2018 WL 4279224, at *6 (W.D. Mo. May 31, 2018) (liability inappropriate when the plaintiff failed to allege a purchase from the defendant, a third-party to the original transaction). **South Carolina:** A manufacturer making no direct sale or communication to a consumer is not liable. *Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 487 (D.S.C. 2014). **Texas:** The Texas statute does not "reach upstream manufacturers and suppliers when their misrepresentations are not communicated to the consumer." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). **Washington:** An indirect purchaser cannot suffer a cognizable injury. *Blewett v. Abbott Labs.*. 938 P.2d 842. 847 (Wash. App. 1997).

[10] **Arizona:** Where there is no communication between a subsequent purchaser and an original seller, a misrepresentation claim fails. *Grimmelmann v. Pulte Home Corp.*. No. CV-08-1878, 2009 WL 1211771, at *3 (D. Ariz. May 1, 2009). **New Jersey:** *See Jacobsen*

-23-

These arguments also undermine Plaintiffs' fraudulent concealment claim, at Nationwide Count 7(c). Though the Complaint brings that Count only "against the Vehicle Manufacturer Defendants," (Dkt. 120 at p. 257), Plaintiffs have stated in meeting and conferring that the fraudulent concealment claim is brought against the ST Entities. Even if permitted, that claim fails for the reasons argued in the Joint Brief and because fraudulent concealment claims also require reliance, causation, and a direct relationship not present here, as other Defendants also argue. (*See* Dkt. 209 at 15-24 (ZF's Motion to Dismiss)); *see also Haaland v. Garfield Beach CVS, LLC*, No. LA CV 18-01115, 2018 WL 5086493, at *4 (C.D. Cal. June 6, 2018) (Kronstadt, J.) (dismissing California fraudulent concealment claim for failure to allege reliance or causation).

### B. Additional state statutory claims against the ST Entities are time barred.

The limitations arguments made in the Joint Brief are even stronger for the ST Entities because the ST Entities were not sued until May 26, 2020—more than a year after the underlying lawsuits were filed. (*See* Dkt. 120.) For this reason, the statutory claims brought against the ST Entities under the Alabama, Arizona, Florida, and New York statutes are also time barred. Three of these states do not apply the discovery rule to their consumer protection claims or have separate statutes of repose that run regardless of discovery:

- **Alabama's** statute requires that a claim be brought within "four years from the date of the transaction giving rise to the cause of action[.]" ALA. CODE § 8-19-14; *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (describing four-year "statute of repose"). The only Alabama plaintiff purchased a new vehicle in 2015 (¶ 125) so the Alabama state claim must be dismissed.

- **Florida's** statute also has a four-year statute of limitations, FLA. STAT. § 95.11(3)(f), and "there is no 'delayed discovery rule' applicable to FDUTPA claims," *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *6 (S.D. Fla. April 30, 2014). In addition to the time-barred claims of Plaintiffs Choc, McPherson, Chaiken, Accetta, and Gales discussed in the Joint Brief, Plaintiffs Senti and Colbert's claims against the ST Entities are time barred because they accrued on May 16, 2016, and April 19, 2016 (¶¶ 77, 102), when they bought their vehicles.

---

*Diamond Ctr., LLC v. ADT Sec. Servs., Inc.,* No. A-1578-14T1, 2016 WL 3766236, at *14 (N.J. Super. Ct. App. Div. July 15, 2016) (upholding dismissal of consumer fraud claim against manufacturer of a security system where manufacturer had no direct contact with the purchaser-plaintiff). **New York:** *See In re Rezulin Products Liab. Litig.*, 390 F. Supp. 2d 319, 336–39 (S.D.N.Y.337 (SDNY 2005) (dismissing consumer claim against pharmaceutical drug manufacturer when representations were not intended for patients).

- **New York**: New York's General Business Law has a three-year limitations period, N.Y. GEN. BUS. LAW § 349; N.Y. C.P.L.R. § 213(2), which accrues upon delivery, not discovery. *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). The only New York plaintiffs, Fishon and Namakkal, purchased their vehicles on May 12, 2017, and May 31, 2014, respectively, thus barring their claims. (CAC ¶¶ 107, 131.)

Finally, **Arizona** applies a one-year statute of limitations from discovery of the claimed fraud. ARIZ. REV. STAT. § 12–541(5); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011). The last underlying case consolidated here was filed on May 20, 2019, and Plaintiffs must have known of their potential claims at least when they filed those suits. These four claims are also time barred.

### C. Out-of-state conduct cannot ground some state claims; Michigan and Oklahoma bar claims in regulated industries.

Arizona, Illinois, New York, and South Carolina apply extraterritoriality principles and limit their state's consumer protection laws only to conduct occurring within the state.[11] Plaintiffs allege no conduct by any ST Entity in any of those states, so those claims should be dismissed. Finally, Michigan and Oklahoma preclude consumer protection claims in heavily regulated industries, like the automotive industry. MICH. COMP. LAWS ANN. § 445.904(4)(a); OKLA. STAT. TIT. 15 § 754(2). That preclusion extends to component manufacturers like the ST Entities. *Cyr v. Ford Motor Co.*, No. 345751, 2019 WL 7206100, at *2 (Mich. Ct. App. Dec. 26, 2019) (applying to "the manufacture, sale, and lease of automobiles, and the provision of express and implied warranties concerning those automobiles *and their components* . . ." (emphasis added)).

### CONCLUSION

All claims against the ST Entities should be dismissed with prejudice.

---

[11] **Arizona:** *Thuney v. Lawyer's Title of Ariz.*, No. 2:18-cv-1513, 2019 WL 467653, at *7 (D. Ariz. Feb. 6, 2019) (statute applies only where the conduct occurred entirely within the state). **New York**: *Goshen v. Mut. Life Ins. Co. of NY*, 286 A.D.2d 229, 230 (N.Y. App. Div. 2001) (plaintiff must "allege deceptive acts or practices which took place in New York State" (citation omitted)). *aff'd.* 774 N.E.2d 1190 (2002). **Illinois:** *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 860 (N.D. Ill. 2011). **South Carolina:** *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489-90 (4th Cir. 2007) (statute applies only to conduct occurring entirely within the state).

Dated: August 17, 2020

McDOWELL HETHERINGTON LLP

By: */s/ Thomas F.A. Hetherington*
Thomas F.A. Hetherington*
tom.hetherington@mhllp.com
Kendall J. Burr*
kendall.burr@mhllp.com
Robert P. Debelak III*
bobby.debelak@mhllp.com
McDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: 713.337.5580
Facsimile:  713.337.8850

*Admitted Pro Hac Vice*

*Attorneys for Defendants*
*STMicroelectronics, Inc., STMicroelectronics N.V.,*
*and STMicroelectronics International N.V.*

## CERTIFICATE OF SERVICE

I certify that on August 17, 2020, a copy of the foregoing was served electronically though the Court's electronic filing system upon all parties appearing on the Court's ECF service list. A copy of the foregoing was served by first class mail upon the following counsel not appearing on the Court's ECF service list:

Ilhwan Justin Park
DLA Piper US
500 8th Street NW
Washington DC 2000

Ricardo J Marenco
Robbins Geller Rudman and Dowd LLP
120 East Palmetto Park Road Suite 500
Boca Raton FL 33432

Jenny L Paquette
Kessler Topaz Meltzer and Check LLP
One Sansome Street Suite 1850
San Francisco CA 94104-4432

Mark Jurgen Heise
Boies Schiller and Flexner LLP
100 SE 2nd Street Suite 2800
Miami FL 33131-2144

Dated: August 17, 2020

By: */s/ Thomas F.A. Hetherington*
Thomas F.A. Hetherington

*Attorneys for Defendants*
*STMicroelectronics, Inc., STMicroelectronics N.V.,*
*and STMicroelectronics International N.V.*

-27-