David S. Stellings (*pro hac vice*)
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA  91436
Telephone: 818.839.2333
Facsimile: 818.986.9698

*Co-Lead Counsel for Plaintiffs*

*Plaintiffs' Steering Committee Members
Listed on Signature Page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re ZF-TRW Airbag Control Units Products Liability Litigation*<br><br>ALL CASES | MDL No. 2905<br><br>Case No. 2:19-ml-02905-JAK-FFM<br><br>**PLAINTIFFS' OPPOSITION TO HONDA DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: January 25, 2021<br>Time: 8:30 a.m.<br>Dept.: Courtroom 10B |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................1

II.   SUMMARY OF ALLEGATIONS........................................................................2

    A.    The Honda Class Vehicles contain defective ZF ACUs. .............................2

    B.    Honda has known about the ACU defect since at least as early as 2012. ......................................................................................................2

    C.    Honda made misleading statements and omissions about the ACU defect. ......................................................................................................3

    D.    Plaintiffs relied upon Honda's misleading statements and omissions. .........3

III.  LEGAL STANDARD ......................................................................................4

IV.  ARGUMENT ................................................................................................4

    A.    Plaintiff Huitzil has standing to pursue his claims......................................4

    B.    Plaintiffs plead Honda's pre-sale knowledge of the ACU defect to support their RICO and consumer protection claims...................................5

    C.    Plaintiffs state claims for breach of warranty. ...........................................9

        1.    Plaintiffs' breach of warranty claims are timely................................9

        2.    Manifestation of a defect is not required for warranty claims..........11

        3.    Privity is not an obstacle to Plaintiffs' breach of warranty claim. ...12

        4.    Honda's replace and repair clause is not a defense to breach. .........13

        5.    Honda's arguments regarding ambiguous terminology are premature. ................................................................................13

    D.    Plaintiffs plead unjust enrichment claims. ................................................15

    E.    Injunctive relief is available to Plaintiff Burns under the CLRA. ..............16

    F.    Plaintiff Rubio pleads an Alabama Deceptive Trade Practices Act claim. ....................................................................................................17

    G.    Plaintiffs identified the Honda Defendants with sufficient particularity. .............................................................................................17

    H.    Plaintiffs plead consumer protection claims under New York, North Carolina, Minnesota, and Texas law.........................................................18

    I.    The Court has jurisdiction over the Foreign Honda Defendants. ...............20

- i -

## TABLE OF CONTENTS
### (continued)

**Page**

    1.    The Court has personal jurisdiction over the Foreign Honda Defendants under RICO....................................................21

    2.    The Court also has personal jurisdiction over the Foreign Honda Defendants under Rule 4(k)(2)............................................21

    3.    The Court also has specific jurisdiction over the Foreign Honda Defendants. ......................................................................22

V.    CONCLUSION.................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abecassis v. Wyatt,*
  902 F. Supp. 2d 881 (S.D. Tex. 2012) ............................................................... 9

*Access N. Sec. Corp. v. Linear Corp.,*
  No. 97-cv-2937, 1998 WL 566815 (S.D.N.Y. Sept. 4, 1998) ......................... 9

*All-Tronics, Inc. v. Ampelectric Co.,*
  354 N.Y.S.2d 154 (N.Y. App. Div. 1974) ..................................................... 12

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.,*
  No. 10-cv-23869, 2012 WL 1570057 (S.D. Fla. May 2, 2012) ...................... 9

*Bauman v. DaimlerChrysler Corp.,*
  644 F.3d 909 (9th Cir. 2011) ......................................................................... 24

*Benkle v. Ford Motor Co.,*
  No. 16-cv-1569, 2017 WL 9486154 (C.D. Cal. Dec. 22, 2017) ............. 10, 13

*Bishop v. Faroy Sales,*
  336 So. 2d 1340 (Ala. 1976) .......................................................................... 12

*Blissard v. FCA US LLC,*
  No. 18-cv-2765, 2018 WL 6177295(C.D. Cal. Nov. 9, 2018) ....................... 15

*Blockhead, Inc. v. Plastic Forming Co.,*
  402 F. Supp. 1017 (D. Conn. 1975) ............................................................... 12

*Bohannon v. Honda Motor Co.,*
  682 F. Supp. 42 (D. Kan. 1988) ..................................................................... 24

*Bollom v. Brunswick Corp.,*
  No. 18-cv-3105, 2020 WL 1816054 (D. Minn. Apr. 10, 2020) .................... 12

*Brand v. Hyundai Motor Am.,*
  226 Cal. App. 4th 1538 (2014) ...................................................................... 10

*Brown v. Dynamic Pet Prods. & Frick's Meat Prods., Inc.,*
  No. 17-cv-659, 2017 WL 4680125 (S.D. Cal. Oct. 18, 2017) ........................ 8

*Bumpers v. Cmty. Bank of N. Va.,*
  747 S.E.2d 220 (N.C. 2013) ........................................................................... 19

*Bussian v. DaimlerChrysler Corp.,*
  411 F. Supp. 614 (M.D.N.C. 2006) ............................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Cabral v. Supple, LLC*,
No. 12-cv-85, 2012 WL 4343867 (C.D. Cal. Sept. 19, 2012) ....................................16

*Century 21-Reeves Realty Inc. v. McConnel Cadillac, Inc.*,
626 So. 2d 1273 (Ala. 1993) ............................................................................9

*Cirulli v. Hyundai Motor Co.*,
No. 08-cv-0854, 2009 WL 4288367 (C.D. Cal. Nov. 9, 2009) ..................................17

*Click v. Gen. Motors LLC*,
No. 18-cv-455, 2020 WL 3118577 (S.D. Tex. Mar. 27, 2020) ..........................10, 16

*Coghlan v. Aquasport Marine Corp.*,
73 F.Supp.2d 769 (S.D.Tex.1999) ..................................................................12

*Coghlan v. Wellcraft Marine Corporation*,
240 F.3d 449 (5th Cir. 2001) ..........................................................................12

*Collazo v. Wen by Chaz Dean, Inc.*,
No. 15-cv-1974, 2015 WL 4398559 (C.D. Cal. July 17, 2015) ..................................8

*Cone v. Vortens, Inc.*,
No. 17-cv-1, 2019 WL 2070423 (E.D. Tex. Mar. 13, 2019) ....................................20

*Conti v. Am. Honda Motor Co.*,
No. 19-cv-2160, 2019 WL 10371067 (C.D. Cal. Oct. 17, 2019) ................................6

*Daigle v. Ford Motor Co.*,
No. 09-cv-3214, 2012 WL 3113854 (D. Minn. July 31, 2012) ..................................9

*Dean v. Colgate-Palmolive Co.*,
No. 15-cv-107, 2015 WL 3999313 (C.D. Cal. June 17, 2015) ..................................17

*DeWitt Stern Grp., Inc. v. Eisenberg*,
14 F. Supp. 3d 480 (S.D.N.Y. 2014) ................................................................15

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ..........................................................................23

*Ehrlich v. BMW of N. Am., LLC*,
801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................................6

*Ernest v. Deere & Co.*,
No. 10-cv-8048, 2004 WL 203138 (Conn. Super. Ct. Jan. 20, 2004) ..........................15

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........................................................................16

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Falco v. Nissan N. Am. Inc.*,
  96 F. Supp. 3d 1053 (C.D. Cal. 2015)..........................................................23

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 3d 1088 (N.D. Cal. 2007) ..........................................................6

*Feiner v. Innovation Ventures LLC*,
  No. 12-cv-62495, 2013 WL 2386656 (S.D. Fla. May 30, 2013)................................15

*Flagg Energy Development Corp. v. General Motors Corp.*,
  No. 92-cv-242198, 1995 WL 80051 (Conn. Super. Ct. Feb. 15, 1995) ......................15

*Forward Momentum, LLC v. Team Health Inc.*,
  No. 17-cv-346, 2019 WL 5616904 (M.D. Ala. Oct. 30, 2019) ..................................15

*Grp. Health Plan, Inc. v. Philip Morris Inc.*,
  621 N.W.2d 2 (Minn. 2001)....................................................................20

*Hasemann v. Gerber Prod. Co.*,
  331 F.R.D. 239 (E.D.N.Y. 2019) ................................................................18

*Hawes v. Honda Motor Co.*,
  738 F. Supp. 1247 (E.D. Ark. 1990)............................................................25

*Henderson v. Gruma Corp.*,
  No. 10-cv-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)..................................16

*Hendricks v. New Video Channel America*,
  2015 WL 3616983 (C.D. Cal. June 8, 2015) ..................................................24

*Herremans v. BMW of N. Am., LLC*,
  No. 14-cv-2363, 2014 WL 5017843(C.D. Cal. Oct. 3, 2014) ......................................7

*Hillsborough LLC v. WSA Constr., LLC*,
  No. 13-cv-703, 2014 WL 6476187 (W.D.N.C. Nov. 19, 2014)..................................15

*Hinchliffe v. Am. Motors Corp.*,
  440 A.2d 810 (Conn. 1981) ......................................................................5

*Hininger v. Case Corp.*,
  23 F.3d 124 (5th Cir. 1994)......................................................................12

*In re All Terrain Vehicles Litig.*,
  No. 88-cv-1914, 1989 WL 30948 (E.D. Pa. 1989)....................................................25

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
  155 F. Supp. 2d 1069 (S.D. Ind. 2001) ..........................................................5

**TABLE OF AUTHORITIES**
(continued)

Page

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
No. 16-md-2744, 2017 WL 1382297 (E.D. Mich. Apr. 18, 2017)................................5

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017)...................................................17, 20

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018)..................................................5

*In re Polaris Mktg., Sales Practs. & Prods. Liab. Litig.*,
364 F. Supp. 3d 976 (D. Minn. 2019)...........................................15

*In re Porsche Cars N. Am., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012) ......................................10

*In re Takata Airbag Prods. Liab. Litig.*,
255 F. Supp. 3d 1241 (S.D. Fla. 2017) ......................................11

*In re Takata Airbag Prods. Liab. Litig.*,
No. 14-md-24009, 2017 WL 775811 (S.D. Fla. Feb. 27, 2017)................................11

*In re Takata Airbag Prods. Liab. Litig.*,
No. 15-md-2599, 2016 WL 5848843 (S.D. Fla. Sept. 21, 2016) ..............................11

*In re Toyota Unintended Acceleration Mktg., Sales Practs., and Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .........................................14

*In re Toyota Unintended Acceleration Mktg., Sales Practs., and Prods. Liab. Litig.*,
No. 10-ml-2151, 2012 WL 12929769 (C.D. Cal. May 4, 2012) ................................13

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
No. 16-2765, 2017 WL 1902160 (D.N.J. May 8, 2017)..............................17

*Johannessohn v. Polaris Indus., Inc.*,
No. 16-cv-3348, 2020 WL 1536416 (D. Minn. Mar. 31, 2020)..................................20

*Kayne v. Ho*,
No. 09-cv-6816, 2012 WL 12883918 (C.D. Cal. Sept. 6, 2012)................................22

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) ...............................................13

*Keegan v. Am. Honda Motor Co.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) ......................................12

*Kinzer v. Remington Arms Co., Inc.*,
No. 09-cv-1242, 2010 WL 11451121 (W.D. Okla. Sept. 1, 2010)................................5

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Luna v. FCA US LLC*,
   No. 19-cv-8229, 2020 WL 3605554 (N.D. Cal. July 2, 2020) ......................................9

*Malone v. CarMax Auto Superstores Cal., LLC*,
   No. 14-cv-8978, 2015 WL 3889157 (C.D. Cal. June 23, 2015)................................10

*McCarthy v. Toyota Motor Corp.*,
   No. 18-cv-201, 2018 WL 6318841 (C.D. Cal. Sept. 14, 2018)..................................14

*McCarthy v. Toyota Motor Corp.*,
   No. 18-cv-201, 2019 WL 3220579 (C.D. Cal. Apr. 9, 2019)......................................6

*McManus v. Fleetwood Enters., Inc.*,
   320 F.3d 545 (5th Cir. 2003)....................................................................................11

*MedPricer.com Inc. v. Becton, Dickinson & Co.*,
   No. 13-cv-1545, 2014 WL 3700992 (D. Conn July 25, 2014)..................................15

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ................................................................................10

*Milman v. FCA U.S., LLC*,
   No. 18-cv-686, 2018 WL 5867481 (C.D. Cal. Aug. 30, 2018) ................................14

*Morris v. Walmart Inc.*,
   2:19-cv-650, 2020 WL 470287 (N.D. Ala. Jan. 29, 2020) ......................................17

*Mujo v. Jani-King Int'l Inc.*,
   431 F. Supp. 3d 18 (D. Conn. 2019) ........................................................................16

*Munning v. Gap, Inc.*,
   No. 16-cv-3804, 2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) ................................18

*Napoli-Bosse v. Gen. Motors, LLC*,
   No. 18-cv-1720, 2020 WL 1677089 (D. Conn. Apr. 6, 2020) ..................................15

*Negrel v. Drive N Style Franchisor SPV LLC*,
   No. 18-cv-583, 2018 WL 6136151 (C.D. Cal. 2018) ................................................11

*New Prime, Inc. v. Harris Transp. Co.*,
   No. COA12-271, 2012 WL 3192718 (N.C. Ct. App. Aug. 7, 2012)..........................16

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019)......................................................................................5

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007)......................................................................................6

- vii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Parkhill v. Minnesota Mutual Life Insurance Co.*,
174 F. Supp. 2d 951 (D. Minn. 2000)..................................................................20

*Partridge v. Stryker Corp.*,
No. 10-cv-1003, 2010 WL 4967845 (D. Minn. 2010)....................................................9

*Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*,
530 S.E.2d 321 (N.C. 2000).........................................................................12

*Romano v. Motorola, Inc.*,
No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007)............................16

*Rosa v. American Water Heater Co.*,
177 F. Supp. 3d 1025 (S.D. Tex. 2016)................................................................12

*Rose v. General Motors Corp.*,
323 F. Supp. 2d 1244 (N.D. Ala. 2004)................................................................12

*Sain v. Adams Auto Group, Inc.*,
781 S.E.2d 655 (N.C. Ct. App. 2016)...................................................................19

*Smith v. Fiat-Roosevelt Motors, Inc.*,
556 F.2d 728 (5th Cir. 1977)...........................................................................12

*St. Paul Mercury Ins. Co. v. Crawford & Co.*,
No. 16-cv-8462, 2017 WL 5891047 (C.D. Cal. June 6, 2017)....................................15

*State Comp. Ins. Fund v. Capen*,
No. 15-cv-1279, 2015 WL 13322034 (C.D. Cal. Dec. 18, 2015)................................5

*Szymczak v. Nissan N. Am., Inc.*,
No. 10-cv-7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)................................10

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ..........................................................................8

*Warren v. Honda Motor Co.*,
669 F. Supp. 365 (D. Utah 1987)........................................................................25

*WHC Franchise Corp. v. Four JS Family, LLP*,
No. 05-cv-663, 2005 WL 8158394 (N.D. Tex. Nov. 30, 2005) ................................15

*Williams v. Wells Fargo Bank N.A.*,
No. 11-cv-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ................................16

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ..........................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Woo v. American Honda Motor Co.*,
   No. 19-cv-07042, 2020 WL 2768961 (N.D. Cal. May 28, 2020) ............................... 14

**Statutes and Codes**

18 U.S.C. §1965(b) .................................................................................22

Alabama Deceptive Trade Practices Act .........................................................17

California Legal Remedies Act ....................................................................16

California's False Advertising Law ...............................................................17

Conn. Gen. Stat. §42a-2-302 ......................................................................11

Minnesota Consumer Fraud Act and Uniform Deceptive Trade Practices Act. ............19

New York's General Business Law §349 ....................................................17, 18

New York's General Business Law §350 ....................................................17, 18

North Carolina's Unfair Deceptive Trade Practices Act .......................................19

Tex. Bus. & Com. Code §1750(a)(3) .............................................................20

Texas Deceptive Trade Practices-Consumer Protection Act ...................................20

U.C.C. §2-725(4) ...................................................................................9

**Rules**

Fed. R. Civ. P. 4(k)(2) .........................................................................21, 22

Fed. R. Civ. P. 8(d)(2)-(3) .........................................................................15

Fed. R. Civ. Proc. 9(b) ..............................................................................5

1  Plaintiffs Sigfredo Rubio ("Rubio"), Kevin Burns ("Burns"), Paul Huitzil
2  ("Huitzil"), Fredricka McPherson ("McPherson"), Brian Chaiken ("Chaiken"), Carolyn
3  Nelson ("Nelson"), Ravichandran Namakkal ("Namakkal"), Tonya McNeely
4  ("McNeely"), and Angela Bowens ("Bowens") (collectively "Plaintiffs"), respond in
5  opposition to the Honda Defendants'[1] Motion to Dismiss Plaintiffs' Consolidated Class
6  Action Complaint ("CAC") [Dkt. No. 213].

7  ## I.   INTRODUCTION

8  Plaintiffs allege that 15 million Class Vehicles have defective airbag control units
9  ("ACUs") that have caused airbags and seatbelts to fail during high-speed, head-on
10  collisions.[2] As a result, the Class Vehicles have seatbelts and airbags unreliably perform
11  their sole purpose: saving lives and preventing injury during crashes.

12  The defective ACUs in Honda Class Vehicles are virtually identical to the ACUs
13  in millions of Class Vehicles with admitted defects which were already recalled by other
14  Vehicle Manufacturer Defendants. The ACUs were designed and made by the same
15  supplier, ZF. They also have the same DS84 application-specific integrated circuit
16  ("ASIC") that is uniquely vulnerable to electrical overstress ("EOS"). Honda's own
17  crash tests in 2012 and 2014 observed EOS in the ZF ACUs at issue in this litigation.

18  Despite receiving notice of airbag failures from hundreds of complaints and
19  observing signs of EOS in more than a dozen Class Vehicles returned to ZF, Honda
20  refuses to acknowledge a defect or take any steps to warn or compensate the consumers
21  who paid for the Honda Class Vehicles. To add insult to Plaintiffs' injury, the first page
22  of its brief trumpets: "no Honda vehicles have been recalled"—as if this fact somehow
23  disproves wrongdoing. Of course, Honda's intransigent refusal to admit a defect is not a
24  defense to any of Plaintiffs' claims. The Court should deny Honda's motion to dismiss.

25  ---

26  [1] The Honda Defendants are Honda Motor Co., Ltd., American Honda Motor Co., Inc., Honda of America Mfg., Inc., Honda R&D Co., Ltd., and Honda R&D Americas, Inc. (together, "Honda" or "Defendants").
27  [2] Exhibit 1 to Plaintiffs' opposition to Defendants' joint brief defines "ACU" and other
28  acronyms used by Plaintiffs.

## II.   **SUMMARY OF ALLEGATIONS**

**A.**   **The Honda Class Vehicles contain defective ZF ACUs.**

Plaintiffs are purchasers of Honda Class Vehicles, all of which are equipped with defective ZF ACUs that are vulnerable to EOS, which, in turn, can prevent deployment of the airbags and seatbelts during a crash. CAC ¶¶262-291, 477-483. The Honda vehicle models with the defective ZF ACUs include Accords, Civics, CR-Vs, Fits, Ridgelines, and Acuras. *Id.* ¶478.

**B.**   **Honda has known about the ACU defect since at least as early as 2012.**

Since at least as early as 2012 – prior to the date that any Plaintiff purchased his or her vehicle (the earliest such purchase occurred in June 2013, *id.* ¶¶125-132) – Honda had knowledge of the defect in ZF ACUs. Specifically:

- In October 2012, two consumers complained to NHTSA that the airbags in Honda CR-Vs had failed to deploy during high speed crashes. One reported a serious injury. *See id.* Ex. 14.
- In December 2012, EOS occurred in a ZF ACU during a Honda crash test. Although this test involved an Australian vehicle, it had the same ZF ACUs at issue in this litigation. ZF and Honda concluded that ASIC EOS caused some of the airbags in the vehicle not to deploy during the crash test. *See id.* ¶485.
- According to ZF's records, Honda returned five Class Vehicles to ZF in 2012 with ZF ACUs that showed signs of EOS. *See id.* ¶491.
- In 2013, two consumers complained to NHTSA that airbags in a Honda Acura and Civic had failed to deploy during an accident. One reported a death. See id. Ex. 14. During the same year, Honda returned a Civic and a CR-V to ZF that showed signs of EOS. *See id.* ¶491.
- In January 2014, EOS occurred in a ZF ACU during a Honda crash test. Although this test involved a Japanese vehicle, the ZF ACU was again the same in all relevant respects. *Id.* ¶486.
- In 2014, seven consumers reported crashes with failed airbags in Honda Class Vehicles to NHTSA. Two reported injuries that required medical attention. Id. Ex. 14. During the same year, Honda returned six Class Vehicles to ZF that showed signs of EOS. *See id.* ¶491.
- Honda recognized the implications of the two observed instances of EOS in its crash tests and surreptitiously made design changes for 2015 Honda Accords, 2015 – 2017 Honda CR-Vs, and for 2016 – 2017 Honda Fits. These design changes did not fix the defect, but do evidence awareness that the recorded instances of EOS in the two foreign crash tests evidenced a defect in the U.S. models and warranted an attempted fix. Honda nonetheless failed to warn

PLAINTIFFS' OPPOSITION TO HONDA'S MOTION TO DISMISS

consumers who had bought older models with ZF ACUs or to warn any consumers about the ZF ACUs generally. *Id*. ¶487.

- In 2016, Honda learned of the first recall of ZF ACUs from ZF and FCA's public announcements. *See id*. ¶¶492, 494.

- On February 10 and 13, 2017, the brother of the driver of a Honda Class Vehicle reported to Honda that his sister had died when vehicle crashed into a barrier at 50 mph and the airbags failed to deploy. *Id*. ¶489.

- In 2018, Honda learned of further recalls involving the ZF ACUs from ZF, Hyundai, and Kia's public announcements. *Id*. ¶¶354, 359, 363, 493.

- On or around December 19, 2018, Honda received a complaint that the driver of a 2016 Honda CR-V fell asleep while driving on a highway, veered off the road, hit a guard rail, and crashed into a tree. The airbags failed to deploy. The driver flew from the vehicle and died. *Id*. ¶490.

- Between 2012 and the present, Honda received over 300 consumer complaints involving the Honda Class Vehicles, nondeployment of airbags, and serious injury. *Id*. ¶488.

**C.    Honda made misleading statements and omissions about the ACU defect.**

Despite its knowledge of the ACU defect, Honda concealed the truth about the defective ACUs for years. *Id*. ¶¶484-497.

At the same time, Honda also affirmatively touted the safety of its Class Vehicles. Honda does not deny that it shipped every Class Vehicle to dealerships with standard certifications promising the inclusion of airbags and seatbelts, with window stickers advertising airbags and seatbelts, with owner's manuals containing statements that the airbags and seatbelts would work during a crash, and with other labels indicating that the vehicle had working airbags. *See id*. ¶¶302-308, 499, 500, Ex. 15 (quotations regarding ACUs, seatbelts, and airbags from Honda Class Vehicle owner's manuals).

Honda also does not deny advertising the safety of Class Vehicles and the reliability of their seatbelts and airbags. *See id*. ¶¶501-509. Plaintiffs provide dozens of examples of such advertising, the typicality of which Honda does not dispute. *Id*. Ex. 16.

**D.    Plaintiffs relied upon Honda's misleading statements and omissions.**

Plaintiffs purchased their Honda Class Vehicles based on the reasonable, but mistaken, belief that they had working airbags and seatbelts, and are now left with unsafe vehicles for which they overpaid at the time of purchase. *Id*. ¶¶125-132.

1   Unknown to Plaintiffs, Honda conspired with Defendants ZF and STMicro to conceal

2   the existence of the defective ACUs from consumers like Plaintiffs (*id.* ¶¶655-657),

3   which would have been material to Plaintiffs' decision to purchase the Vehicles. *Id.*

4   None of the Plaintiffs would have purchased the Vehicles, or they would have paid less

5   for them, if they had known of the defective ACUs in advance of their purchases.

6   Plaintiffs were harmed from the day they drove their Vehicles off the lot because they

7   did not get what they paid for—a safe vehicle. *Id.* ¶¶125-132. Plaintiffs seek restitution

8   and compensation for the damage caused by Honda's wrongful conduct.

### III.   LEGAL STANDARD

10   The standards for Honda's motions to dismiss pursuant to Rules 12(b)(2) and

11   12(b)(6) are discussed in Plaintiffs' Legal Standards Brief.

### IV.   ARGUMENT

13   Honda's motion to dismiss lacks merit. All Plaintiffs have standing to sue because

14   they suffered a concrete economic injury when they paid for their Vehicles, regardless of

15   later actions. In addition, Plaintiffs' breach-of-warranty claims are timely and viable.

16   Plaintiffs' equitable claims are properly alleged in the alternative. Honda's remaining

17   arguments for the dismissal of Plaintiffs' common law and consumer protection claims

18   ignore both the applicable law and the Complaint's allegations. Honda's motion to

19   dismiss should be denied.

20   **A.   Plaintiff Huitzil has standing to pursue his claims.**

21   All Plaintiffs have standing because they overpaid for Class Vehicles with a

22   dangerous safety defect. *See* Opp. to Joint Br. §§II.F; IV.A.3.

23   Honda challenges standing as to one Plaintiff (Huitzil) because he does not allege

24   "his insurance company paid him less for his totaled vehicle than it would have paid but

25   for the allegedly defective ACU." Dkt. No. 213 at 9. Honda's post-purchase damages

26   model contradicts the U.C.C., which states the "measure of damages for breach of

27   warranty is the difference *at the time and place of acceptance* between the value of the

28   goods accepted and the value they would have had if they had been as warranted."

- 4 -

C.G.S.A. §42a-2-714(2) (emphasis added).  Developments after the point of purchase are irrelevant to such damages. *See Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 820 (9th Cir. 2019) (holding damages "need not account for benefits received after purchase [where] the focus is on the value of the service at the time of purchase") (alteration in original); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-md-2744, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017) ("That is why the defendant's argument that plaintiffs who have not been injured personally, or who have not yet sold their vehicles for a nominal loss, is a non-starter."). Honda fails to cite a single authority to support its contention that payment Plaintiff Huitzil received from a third-party insurer subsequent to his vehicle purchase could possibly negate his standing to recover an earlier overpayment. Honda also provides no evidence supporting its premature factual assertion that insurance payments somehow offset the value of an overpayment.

Honda's assertion that Plaintiff Huitzil must show the ACU "actually manifested the alleged defect in the accident" (Dkt. No. 213 at 23) similarly ignores that, under the U.C.C. (in Connecticut and elsewhere), "a warranty is breached at the time of delivery," *see* C.G.S.A. §42a-2-725(2), and thus "there is no requirement that a defect manifest itself before a buyer may sue." *Kinzer v. Remington Arms Co., Inc.*, No. 09-cv-1242, 2010 WL 11451121, at *4 (W.D. Okla. Sept. 1, 2010) (applying Connecticut law).[3]

**B.     Plaintiffs plead Honda's pre-sale knowledge of the ACU defect to support their RICO and consumer protection claims.**

Rule 9 imposes no heightened pleading requirement for knowledge. Instead, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b). *See also State Comp. Ins. Fund v. Capen*, No. 15-cv-1279, 2015 WL 13322034, at *6 (C.D. Cal. Dec. 18, 2015) (a complaint merely needs

---

[3] *See In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 285-86 (S.D.N.Y. 2018) (rejecting manifestation of defect requirement under Connecticut law) (citing to *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 813-14 (Conn. 1981)); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1097 (S.D. Ind. 2001) (same).

"adequate factual allegations to plausibly infer that [d]efendant specifically intended to defraud under Rule 8") (citations and quotations omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind — or scienter — of the defendants may be alleged generally."); *McCarthy v. Toyota Motor Corp.*, No. 18-cv-201, 2019 WL 3220579, at *4 (C.D. Cal. Apr. 9, 2019).

"Plaintiffs need not prove their case on the pleadings. Instead, they must allege details showing that it is *plausible* that Honda had knowledge of the defect." *Conti v. Am. Honda Motor Co. Inc.*, No. 19-cv-2160, 2019 WL 10371067, at *5 (C.D. Cal. Oct. 17, 2019). As explained in Section II.B above, Plaintiffs plead ample bases showing that Honda knew of the dangerous defect in ZF ACUs by (1) describing two Honda crash tests in 2012 and 2014 that confirmed EOS in ZF ACUs, (2) identifying the dates of warranty claims by Honda between 2012 and 2015 that identified signs of EOS in 17 Class Vehicles, (3) identifying the dates and content of complaints that put Honda on notice of the defect, and (4) pleading that Honda attempted inadequate design changes precisely because it observed and recognized the defect. Courts have held that allegations such as these plausibly establish a defendant's pre-sale knowledge of a defect for purposes of consumer fraud claims. *See, e.g*., *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (finding knowledge through "pre-release testing data, early consumer complaints to BMW and dealers, testing done in response to complaints, replacement part sales data, aggregate data from BMW dealers, and other internal sources"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 3d 1088, 1096-97 (N.D. Cal. 2007) (same).

Honda fails to address Plaintiffs' allegations. For example, Honda argues that Plaintiffs' allegations of customer complaints are not the "type of allegation[s] [that] plausibly plead pre-sale knowledge." Dkt. No. 213 at 10; see also *Conti*, 2019 WL 10371067, at *5 (finding knowledge in part based on allegations that "soon after the 2018 vehicles were released, customers submitted numerous complaints through the

1    [NHTSA] and third-party websites.") But the cases Honda relies on for this proposition

2    involved complaints the manufacturer received after a plaintiff's vehicle purchase, or

3    where it was unclear when they were received. *See Wilson v. Hewlett-Packard Co.*, 668

4    F.3d 1136, 1148 (9th Cir. 2012) (noting 12 of 14 complaints were undated, and the two

5    dated complaints were made over two years after plaintiffs' purchases); *Herremans v.*

6    *BMW of N. Am., LLC*, No. 14-cv-2363, 2014 WL 5017843, at *17 (C.D. Cal. Oct. 3,

7    2014) (complaint allegations insufficient where plaintiffs "provide[d] no detail

8    concerning the customer complaints, when they were submitted, what they said, or how

9    many came directly to BMW and how many went to NHTSA"). Here by contrast,

10   Plaintiffs identified several complaints and warranty claims as well as a crash test

11   confirming ACU EOS that occurred before June 4, 2013, when Plaintiffs first purchased

12   a Class Vehicle. *See* Section II.B above.

13   Regarding its *own* crash tests, Honda incredibly claims none of its companies

14   could have known about them. But the Complaint pleads *all* the Honda Defendants knew

15   about these critical tests. *See* CAC ¶¶485, 486. This allegation is plausible in part

16   because Honda itself identified the documents concerning those tests and produced them

17   in response to NHTSA's document requests as part of the ZF ACU investigation.

18   Honda's production of these documents to NHTSA is the only reason Plaintiffs even

19   know about these otherwise secret internal tests. The knowledge of these tests and their

20   relevance to U.S. Class Vehicles is further confirmed by Honda's decision to make

21   undisclosed and inadequate design changes in response to these tests for some (but not

22   all) later model years. *See id.* ¶487.

23   Insofar as Honda objects to the use of the term "Honda," the misleading

24   statements quoted by Plaintiff repeatedly identify "Honda" generically as the entity

25   assuring safety to consumers. *See* CAC ¶503 (Accord brochure stating: "Your Safety Is

26   Our Responsibility. At Honda, Your Safety Has Always Been Our Highest Priority");

27   Ex. 16 at 22 (Civic brochure stating: "Solid on safety – Honda is committed to providing

28   one of the highest levels of standard safety features to help ensure occupant safety and

protection."); Ex. 16 at 29 (CR-V brochure stating: "So when you're out there chasing down everything on your Leap List, know you've got Honda's unwavering commitment to safety all around you.").  As the below exemplar brochure for the 2014 Honda Fit illustrates, the guarantee of "Solid on Safety" came from "Honda" and not a specific entity or individual. CAC ¶502.



Because Honda holds itself out in this manner to consumers, Plaintiffs are permitted to group the Honda Defendants together given their shared responsibility. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (permitting grouping of defendants where defendants are "alleged to have engaged in precisely the same conduct"); *Brown v. Dynamic Pet Prods. & Frick's Meat Prods., Inc.*, No. 17-cv-659, 2017 WL 4680125, at *3 (S.D. Cal. Oct. 18, 2017) (permitting grouping of multiple defendants where they "worked in concert as parent and subsidiary entities in the marketing and selling" of the allegedly defective product); *Collazo v. Wen by Chaz Dean, Inc.*, No. 15-cv-1974, 2015 WL 4398559, at *6 (C.D. Cal. July 17, 2015) (permitting grouping of multiple defendants where they "acted 'jointly' in the design, manufacture, marketing, sale, and distribution" of products). Moreover, Plaintiffs have specifically alleged the roles of the different Honda entities in design, testing, manufacturing, advertising, and sales. *See* CAC ¶¶62-66, 244 (alleging Honda Motor Co. Ltd.'s involvement in crash tests).

**C.**   **Plaintiffs state claims for breach of warranty.**

Plaintiffs plead breach of warranty claims by alleging that they were promised vehicles without known safety defects but received the opposite. This is a classic breach of contract. Defendants' contrary arguments are unavailing.

**1.**   **Plaintiffs' breach of warranty claims are timely.**

While conceding the timeliness of Plaintiff Rubio's claims under Alabama law, Honda asserts the remaining Plaintiffs' implied and express warranty claims are untimely because they were brought after the expiration of their Vehicles' Limited Warranty. Honda is mistaken for three independent reasons.

*First*, the time period of Honda's warranties are tolled by Honda's fraudulent concealment. *See* Opp. to Joint Br. §IV.H. Indeed, equitable tolling applies to a warranty claim. *See* U.C.C. §2-725(4) ("This section does not alter the law on tolling of the statute of limitations[.]").[4]

*Second*, Plaintiffs' warranty claims are timely because they have alleged that Honda's breach occurred at the time of sale, and thus during the warranty period. *See* CAC ¶¶750, 900, 924, 1055, 1121, 1612, 1916, 1993, 2377 (implied warranty), ¶¶740,

---

[4] *See also Luna v. FCA US LLC*, No. 19-cv-8229, 2020 WL 3605554, at *5 (N.D. Cal. July 2, 2020) ("Several courts have determined that fraudulent concealment tolling applies to claims brought under the Song-Beverly Act."); *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-cv-23869, 2012 WL 1570057, at *10-11 (S.D. Fla. May 2, 2012) (upholding yacht owner's express-warranty claim at summary judgment based on evidence defendants knew yacht was defective at the time of the sale); *Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 904 (S.D. Tex. 2012) ("Fraudulent concealment tolls limitations from the initial act of fraudulent concealment until a plaintiff exercising reasonable diligence would become aware of her claim"); *Partridge v. Stryker Corp.*, No. 10-cv-1003, 2010 WL 4967845, at *4 (D. Minn. 2010) (denying motion to dismiss because fraudulent concealment tolled warranty claims); *Access N. Sec. Corp. v. Linear Corp.*, No. 97-cv-2937, 1998 WL 566815, at *4-6, (S.D.N.Y. Sept. 4, 1998) (applying equitable tolling to a breach of warranty claim under N.Y. U.C.C. §2-725). The summary judgment cases cited by Honda are inapposite. *See Daigle v. Ford Motor Co.*, No. 09-cv-3214, 2012 WL 3113854, at *7 (D. Minn. July 31, 2012) (finding warranty claim had no merit when plaintiff purchased his vehicle after the new vehicle warranty had already expired); *Century 21-Reeves Realty Inc. v. McConnel Cadillac, Inc.*, 626 So. 2d 1273, 1275 (Ala. 1993) (failing to ascribe pre-sale knowledge of the defect to GM, and noting that GM disclosed the defect and offered services to repair affected vehicles).

     PLAINTIFFS' OPPOSITION TO HONDA'S MOTION TO DISMISS

863, 1044, 1105, 1599, 1904, 1981, 2363 (express warranty). It is well-settled that "[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304 (2009); *see also Malone v. CarMax Auto Superstores Cal., LLC*, No. 14-cv-8978, 2015 WL 3889157, at *7 (C.D. Cal. June 23, 2015) (same). Accordingly, there is no "requirement that the purchaser discover and report to the seller a latent defect within that time period." *Mexia*, 174 Cal. App. 4th at 1310; *see Benkle v. Ford Motor Co.*, No. 16-cv-1569, 2017 WL 9486154, at *13 (C.D. Cal. Dec. 22, 2017) (same under Texas, California, and Florida law). This is especially true when the product is dangerous and poses a safety risk. *See Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014); *Click v. Gen. Motors LLC*, No. 18-cv-455, 2020 WL 3118577, at *13 (S.D. Tex. Mar. 27, 2020).

   *Third*, the warranties' durational limits are unconscionable and unenforceable, given Honda's pre-sale knowledge of the defective ACUs (CAC ¶¶12, 483-491) and the significant disparity in bargaining power between Honda and Plaintiffs. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 622 (M.D.N.C. 2006) (finding warranty's time limits unconscionable where the vehicles "contain[ed] a latent defect of which [d]efendants were actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition"); *Szymczak v. Nissan N. Am., Inc.*, No. 10-cv-7493, 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011) (durational limitation unconscionable under New York law because plaintiffs "had no meaningful choice about the time limits contained in the warranty, there was a disparity between the parties' bargaining power, and [defendant] knew or should have known of the propensity of the [defective component] to fail"); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012) ("Plaintiffs have alleged sufficient facts to support the inference that the [w]arranties' durational limitation on all implied warranties was

PLAINTIFFS' OPPOSITION TO
HONDA'S MOTION TO DISMISS

1   unconscionable[] . . . [to] state a claim for breach of the implied warranty of

2   merchantability" under Texas law, among others).[5]

3       Importantly, unconscionability involves questions of fact inappropriate for

4   resolution at the pleading stage. *See Negrel v. Drive N Style Franchisor SPV LLC*, No.

5   18-cv-583, 2018 WL 6136151, at *6 (C.D. Cal. Aug. 27, 2018) ("[C]ourts . . . cannot

6   resolve *bona fide* questions of unconscionability before the litigants have had an

7   opportunity to present such evidence."); Conn. Gen. Stat. §42a-2-302(2) ("When it is

8   claimed or appears to the court that the contract or any clause thereof may be

9   unconscionable the parties shall be afforded a reasonable opportunity to present evidence

10  as to its commercial setting, purpose and effect to aid the court in making the

11  determination."). Thus, Plaintiffs' allegations are sufficient at this stage.

12      **2.    <u>Manifestation of a defect is not required for warranty claims.</u>**

13      Honda asserts Texas law requires a defect to manifest and cause additional

14  consequential damage (in this case, a physical injury or death) to permit recovery for

15  economic loss. The Fifth Circuit has squarely rejected this argument.

16      In *McManus v. Fleetwood Enters., Inc.*, defendant sold a motor home and claimed

17  it could tow a family's passenger car. In truth, a customer also needed to purchase brakes

18  to tow a car *and be able to stop safely.* Defendant opposed class certification of contract

19  claims in part because some purchasers had never tried to tow a vehicle. Applying Texas

20  law, the Fifth Circuit disagreed: "it is immaterial whether or not the class members even

21  intended to use their motor homes for towing . . . ." 320 F.3d 545, 552 (5th Cir. 2003).

22  Accordingly, class members were not required to show they suffered any further harm

23  aside from purchasing a good that was inferior to the promised good.

24

25

26  ---

[5] *See In re Takata Airbag Prods. Liab. Litig.*, No. 14-md-24009, 2017 WL 775811, at *9 (S.D. Fla. Feb. 27, 2017) (upholding claims under California and Florida law); *In re Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599, 2016 WL 5848843, at *12 (S.D. Fla. Sept. 21, 2016) (Alabama law); *In re Takata Airbag Prods. Liab. Litig.*, 255 F. Supp. 3d 1241, 1259-60 (S.D. Fla. 2017) (Minnesota, North Carolina, Texas, and California law).

27

28

1   Similarly, in *Coghlan v. Wellcraft Marine Corp.*, defendant promised a boat made
2   entirely of fiberglass, but sold plaintiff a boat constructed of plywood encased by
3   fiberglass. 240 F.3d 449, 451 (5th Cir. 2001). The district court dismissed on the grounds
4   Honda urges here, holding that the plaintiffs did not claim "any real damages." *Id*. Judge
5   Edith Jones reversed, holding that plaintiff claimed a cognizable injury under Texas law
6   because plaintiffs "did not receive the benefit of their bargain." *Id.*

7   Honda's reliance on *Rosa v. American Water Heater Co.* is misplaced because that
8   decision heavily relied upon the incorrect and overturned lower court decision in
9   *Coghlan* as purported support for its "manifestation of a defect" rule. 177 F. Supp. 3d
10  1025, 1051 (S.D. Tex. 2016) (citing *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d
11  769, 770 (S.D.Tex.1999)). Accordingly, *Rosa* is wrongly decided and contrary to Texas
12  law and Fifth Circuit precedent.

13  **3.    Privity is not an obstacle to Plaintiffs' breach of warranty claim.**

14  Courts routinely find that "individuals who purchase a vehicle from an authorized
15  dealership can maintain an implied warranty cause of action against the manufacturer[.]"
16  *Keegan v. Am. Honda Motor Co.,* 838 F. Supp. 2d 929, 947 (C.D. Cal. 2012).[6] Although
17  Honda does not appear to dispute that American Honda Motor Co., Inc. is a seller or
18  lessor, it claims other Honda entities are not. Dkt. No. 213 at 13, 16. At best, this is a
19  factual dispute that requires discovery regarding the various Honda Defendants' roles as
20  a manufacturer of Class Vehicles.[7]

21

22  [6] *See also Smith v. Fiat-Roosevelt Motors, Inc.*, 556 F.2d 728, 730 (5th Cir. 1977)
    (Florida); *All-Tronics, Inc. v. Ampelectric Co.*, 354 N.Y.S.2d 154, 156 (N.Y. App. Div.
23  1974) (New York); *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 326
    (N.C. 2000) (North Carolina); *Hininger v. Case Corp.*, 23 F.3d 124, 128 (5th Cir. 1994)
24  (Texas); *Bollom v. Brunswick Corp.*, No. 18-cv-3105, 2020 WL 1816054, at *9 (D.
    Minn. Apr. 10, 2020) (Minnesota); *Blockhead, Inc. v. Plastic Forming Co.*, 402 F. Supp.
25  1017, 1025 (D. Conn. 1975) (Connecticut).

26  [7] Honda's reliance on *Rose v. General Motors Corp.*, 323 F. Supp. 2d 1244 (N.D. Ala.
    2004), is misplaced because it was decided on summary judgment and under Alabama
27  law. *See also Bishop v. Faroy Sales*, 336 So. 2d 1340, 1343 (Ala. 1976) ("a seller is
    anyone who sells, including a manufacturer or distributor").
28

**4.    Honda's replace and repair clause is not a defense to breach.**

Honda contends Plaintiffs' express warranty claims must be dismissed because Plaintiffs failed to present their vehicles for repair to a Honda dealer. However, no presentment is necessary because doing so would have been futile. *See, e.g., Benkle*, 2017 WL 9486154, at *11-13 (where California, Florida, and Alabama plaintiffs alleged that repairs would have been inadequate, they were not required to allege that they presented their vehicles for repairs to state claims for breach of express warranty); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 511-12 (C.D. Cal. 2012); *see also In re Toyota Unintended Acceleration Mktg., Sales Practs., and Prods. Liab. Litig.*, No. 10-ml-2151, 2012 WL 12929769, at *23 (C.D. Cal. May 4, 2012) ("[W]hether Plaintiffs have sufficiently pleaded a claim that they are excused from literal compliance with their obligation to seek repair of the vehicle must be analyzed based on their factual obligations as a whole.").

Plaintiffs allege presentment would be futile because Honda has refused to issue a recall of the Vehicles (and, indeed, denies any defect in its brief) notwithstanding: (1) NHTSA's investigation of the Class Vehicles (CAC ¶481); (2) the fact that the Vehicles are equipped with the same ACUs that other Vehicle Manufacturer Defendants identified as defective when announcing their recalls (*id.* ¶482); and (3) Honda's knowledge of the defective ACUs in the Class Vehicles (*id.* ¶¶484-497). Plaintiffs also allege that any warranty repairs to their Vehicles would have been inadequate in light of the inadequate changes Honda made to other Class Vehicles. *Id.* ¶512. These allegations establish Honda had reasonable notice and opportunity to cure to cure the defect. *See id.* ¶¶744, 867, 1049, 1110, 1603, 1908, 1985, 2367. Accordingly, requiring Plaintiffs to present their Class Vehicles for repair, only to be denied a remedy, would be futile.

**5.    Honda's arguments regarding ambiguous terminology are premature.**

Insofar as Honda asserts the express warranty claim of Plaintiff Burns "alleges only a design defect," (Dkt. No. 213 at 15-16), it is premature to draw such a distinction at this stage. *See McCarthy v. Toyota Motor Corp.*, No. 18-cv-201, 2018 WL 6318841,

at *8 (C.D. Cal. Sept. 14, 2018) ("The Court cannot conclude at this stage whether the [alleged defect] is the result of defective design, workmanship, materials, or manufacture, and thus the Court cannot determine whether the warranty, as alleged, covers the [alleged defect]. These are issues that are better dealt with at the summary judgment stage.").

Honda's cited authorities are distinguishable.  In *Milman v. FCA U.S., LLC*, No. 18-cv-686, 2018 WL 5867481, at *6 (C.D. Cal. Aug. 30, 2018), plaintiff conceded that only a design defect was at issue. In *Woo v. American Honda Motor Co.*, No. 19-cv-07042, 2020 WL 2768961, at *5 (N.D. Cal. May 28, 2020), the complaint contained "no facts" to support the assertion that the defect was in "material and/or workmanship." Here, on the other hand, Plaintiffs not only allege that Honda "knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair [or replace] the ACU defect" (CAC ¶1048), but also that the Class Vehicles were designed and ***manufactured*** with defective airbag components (*id.* ¶556(i)).  These allegations are sufficient to survive a motion to dismiss. *See In re Toyota Unintended Acceleration Mktg., Sales Practs., and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (disagreeing with "[d]efendants' assessment that [p]laintiffs' claims [were] based solely on alleged design defects" where plaintiffs alleged a "failure to design, assemble and manufacture the ETCS-I wiring harness").

Honda's similar suggestion that its "repair and replace" warranties "are not express warranties" under Connecticut law also fails. Dkt. No. 213 at 16-17. Plaintiff Huitzil's Connecticut claim goes beyond a failure to "repair and replace" by alleging "[t]he Honda Defendants also breached their express warranties by providing a product containing defects that were never disclosed to the Connecticut Plaintiff and Connecticut State Class members." CAC ¶1048. Instead, by agreeing to replace and repair, "the seller has assumed the affirmative obligation to [replace and] remedy any defects. Such language is not a mere limitation of remedy but an express warranty." *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, No. 92-cv-242198, 1995 WL 80051, at *5 (Conn.

1   Super. Ct. Feb. 15, 1995); *see Ernest v. Deere & Co.*, No. 10-cv-8048, 2004 WL

2   203138, at *2 (Conn. Super. Ct. Jan. 20, 2004) (naming "repair or replacement" warranty

3   an express warranty). *Napoli-Bosse v. Gen. Motors, LLC*, relied upon by Honda, is

4   wrongly decided and acknowledges there is no binding Connecticut Supreme Court

5   precedent. No. 18-cv-1720, 2020 WL 1677089, at *6 (D. Conn. Apr. 6, 2020).

6   **D.    Plaintiffs plead unjust enrichment claims.**

7        As explained in Plaintiffs' opposition to Defendants' joint brief, Plaintiffs plead

8   unjust enrichment claims in the alternative, as they are permitted to do. *See* Opp. to Joint

9   Br. §IV.I; *see also St. Paul Mercury Ins. Co. v. Crawford & Co.*, No. 16-cv-8462, 2017

10  WL 5891047, at *5 (C.D. Cal. June 6, 2017) (holding "[a] cause of action for unjust

11  enrichment, pleaded in the alternative, should not be dismissed as duplicative of other

12  causes of action[,]" even where there is an allegation of a contract); Fed. R. Civ. P.

13  8(d)(2)-(3).[8]  Therefore, Plaintiffs' alternative legal claims do not require dismissal of

14  their unjust enrichment causes of action.

15       Moreover, contrary to Honda's arguments, unjust enrichment claims can be

16  maintained for the purchase of a used car. "[J]ust because the benefit conferred by

17  Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants – but instead

18  passed through a third party – does not preclude an unjust-enrichment claim. Indeed to

19  hold otherwise would be to undermine the equitable purpose of unjust enrichment

20  claims." *Williams v. Wells Fargo Bank N.A.*, No. 11-cv-21233, 2011 WL 4901346, at *5

21  _____

22  [8] In any event, unjust enrichment claims can coexist with contract claims. *See Feiner v.
    Innovation Ventures LLC*, No. 12-cv-62495, 2013 WL 2386656, at *5 (S.D. Fla. May 30,
23  2013) ("[U]njust enrichment claims are available under Florida law even where adequate
    legal remedies exist."); *In re Polaris Mktg., Sales Practs. & Prods. Liab. Litig.*, 364 F.
24  Supp. 3d 976, 986 (D. Minn. 2019); *Forward Momentum, LLC v. Team Health Inc.*, No.
    17-cv-346, 2019 WL 5616904, at *3 (M.D. Ala. Oct. 30, 2019); *MedPricer.com Inc. v.
25  Becton, Dickinson & Co.*, No. 13-cv-1545, 2014 WL 3700992, at *3 (D. Conn. July 25,
    2014); *DeWitt Stern Grp., Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 487 (S.D.N.Y. 2014);
26  *Hillsborough LLC v. WSA Constr., LLC*, No. 13-cv-703, 2014 WL 6476187, at *2
    (W.D.N.C. Nov. 19, 2014); *WHC Franchise Corp. v. Four JS Family, LLP*, No. 05-cv-
27  663, 2005 WL 8158394, at *2 (N.D. Tex. Nov. 30, 2005); *Blissard v. FCA US LLC*, No.
    18-cv-2765, 2018 WL 6177295, at *15 (C.D. Cal. Nov. 9, 2018).
28

(S.D. Fla. Oct. 14, 2011).[9] In any event, each of the used Honda Class Vehicles were purchased at authorized Honda dealers. *See* CAC ¶¶127-29, 132. It is premature at this stage to conclude that Honda derived no benefit from these transactions.

Finally, Honda's suggestion that California and Texas law do not have a claim for unjust enrichment is wrong. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (treating "unjust enrichment as an independent cause of action" under California law); *Click*, 2020 WL 3118577, at *10 ("Although some Texas appellate courts do not recognize unjust enrichment as an independent cause of action, the Texas Supreme Court and the Fifth Circuit have recognized unjust enrichment claims.") (internal citations and quotations omitted).

### E.   Injunctive relief is available to Plaintiff Burns under the CLRA.

Honda argues that Plaintiff Burns' request for injunctive relief under the California Legal Remedies Act ("CLRA") should be dismissed because he does not allege he plans to purchase another Honda vehicle. Dkt. No. 213 at 18-19. This Court has already rejected this exact argument. *See Henderson v. Gruma Corp*., No. 10-cv-4173, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) (holding, even if the plaintiffs did not plan to purchase the same products, dismissing plaintiffs' request for injunctive relief would surely "thwart the objective of California's consumer protection laws, which is to protect both consumers and competitors . . . ."); *Cabral v. Supple, LLC*, No. 12-cv-85, 2012 WL 4343867, at *2 (C.D. Cal. Sept. 19, 2012) (same); *Dean v. Colgate-Palmolive*

---

[9] *See also Romano v. Motorola, Inc.*, No. 07-cv-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct **contact** with direct **benefit** in arguing that [b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.") (emphasis and alteration in original); *Mujo v. Jani-King Int'l Inc.*, 431 F. Supp. 3d 18, 40-41 (D. Conn. 2019) ("Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit."); *New Prime, Inc. v. Harris Transp. Co.*, No. 12-cv-271, 2012 WL 3192718, at *4 (N.C. Ct. App. Aug. 7, 2012) ("Many jurisdictions do not require that the plaintiff confer a direct benefit on the defendant in order to recover under a theory of unjust enrichment.").

- 16 -

*Co.*, No. 15-cv-107, 2015 WL 3999313, at *8 (C.D. Cal. June 17, 2015) (same).  The Court should reject the argument once again.

### F.  Plaintiff Rubio pleads an Alabama Deceptive Trade Practices Act claim.

Contrary to Honda's assertion that the Alabama Deceptive Trade Practices Act ("ADTPA") "makes clear that Plaintiff Rubio cannot pursue both a statutory and common law claim" (Dkt. No. 213 at 19), Plaintiffs may "plead fraud claims under common law and fraud claims under the ADTPA because there is no prohibition against a plaintiff pleading two alternative, inconsistent mutually exclusive claims." *Morris v. Walmart Inc.*, 2:19-cv-650, 2020 WL 470287, at *6 (N.D. Ala. Jan. 29, 2020).  While Plaintiff Rubio will have to elect a remedy, he can do so later. *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405 (S.D.N.Y. 2017), *modified on reconsideration*, 14-md-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). Insofar as Honda repeats the argument that injunctive relief is not available, the same reasoning for Plaintiff Burns' claims for injunctive relief applies.

### G.  Plaintiffs identified the Honda Defendants with sufficient particularity.

Likewise unavailing is Honda's argument that Plaintiffs' claims under California's False Advertising Law ("FAL") and New York's General Business Law ("GBL") §§349 and 350 fail against certain Honda entities who are allegedly uninvolved in advertising, marketing, or selling the Vehicles.[10]  Honda objects to these entities being grouped with other Honda Defendants, but group pleading is permissible so long as the complaint puts the defendants on notice of the claims against them.  *See Cirulli v. Hyundai Motor Co.*, No. 08-cv-0854, 2009 WL 4288367, at *4 (C.D. Cal. Nov. 9, 2009) (grouping of defendants Hyundai Motor America and Hyundai Motor Company was permissible because the complaint put defendants on notice of claims against them); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *9 (D.N.J. May 8, 2017) (permitting group pleading and noting "Plaintiffs cannot be

---

[10] Defendants identify these entities as Honda Motor Co., Ltd.; Honda of America Mfg., Inc.; Honda R&D Co., Ltd.; and Honda R&D Americas, Inc.

expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery").

Importantly, courts have permitted group pleading in cases, as here, where the defendants are related entities and share the same counsel. *See, e.g.*, *Munning v. Gap, Inc.*, No. 16-cv-3804, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) (permitting "lumping" of defendants, and stating, "because the [d]efendants all share a parent-subsidiary relationship with . . . the parent company and because all the [d]efendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely."). Here, the Complaint puts the Honda Defendants on notice of the claims against them, as it details how the Honda entities made misleading statements and omitted material facts about the airbags, seatbelts, and ACUs in the Honda Class Vehicles. *See* CAC ¶¶498-510. Accordingly, the Court should uphold Plaintiffs' FAL and GBL claims.

## H.   **Plaintiffs plead consumer protection claims under New York, North Carolina, Minnesota, and Texas law.**

First, Honda argues Plaintiff Namakkal's claim under GBL §349 fails because the Complaint purportedly does not allege that he saw any of Honda's misleading statements.  Dkt. No. 213 at 21. But Honda wrongly assumes a reliance requirement where there is none.  For New York, "[n]either section 349 nor section 350 contains a reliance requirement, and a proper claim under section 349 or 350 does not require proof that a consumer actually relied on the misrepresentation." *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 257 (E.D.N.Y. 2019). Where, as here, "the alleged misrepresentation at issue in the case was found uniformly on all packaging" (i.e., in this case standard Monroney stickers, in-vehicle labels, and in-vehicle certifications), there is no requirement of proving individualized exposure to specific misrepresentations. *Id.* at 264-66. Instead, the plaintiff need only show the such in-vehicle representations were "sufficiently uniform to conclude that it is likely that a reasonable consumer could have been misled." *Id.* at 267. Plaintiff Namakkal pleads such standardized misrepresentations

on Honda Class Vehicles here. CAC ¶¶302-308, 499, 500, Ex. 15 (specific quotations regarding ACUs, seatbelts, and airbags from Honda Class Vehicle owner's manuals).

Second, Honda argues Plaintiff McNeely's claim under North Carolina's Unfair Deceptive Trade Practices Act ("UDTPA") should be dismissed for failure to allege actual injury caused by Honda's conduct or reliance thereon. Dkt. No. 213 at 21. As discussed above, the Complaint details numerous misrepresentations made by Honda in its advertising and elsewhere. The Complaint also alleges that Plaintiff McNeely was, in fact, deceived by Honda's misrepresentations, concealments, omissions, and suppressions of material facts regarding the safety and reliability of the Honda Class Vehicles and/or the defective ACUs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles. *See* CAC ¶2009. Moreover, the Complaint alleges that had Plaintiff McNeely known the truth behind Honda's misrepresentations, she would not have purchased or leased her Honda Class Vehicle or would have paid significantly less for it. *See id.* ¶2010. In other words, Plaintiff McNeely has adequately pled that she "affirmatively incorporated the alleged misrepresentation into . . . her decision-making process." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 227 (N.C. 2013). "[I]f it were not for the misrepresentation, [Plaintiff McNeely] would likely have avoided the injury altogether." *Id.*[11] Therefore, Plaintiff McNeely adequately pleads a claim under North Carolina UDTPA.

Third, Honda argues the failure to plead reliance requires dismissal of Plaintiff Nelson's claims under the Minnesota Consumer Fraud Act and Uniform Deceptive Trade Practices Act. Dkt. No. 213 at 22. However, the Minnesota Supreme Court has

---

[11] Honda's reliance on *Sain v. Adams Auto Group, Inc.*, is misplaced. In that case, the court found that plaintiff's operative complaint was "wholly devoid of allegations tending to show [defendant] made any direct statements to Plaintiffs, or Plaintiffs' decision to purchase the vehicle was based on any actual misrepresentations or omissions made by [defendant]." 781 S.E.2d 655, 660 (N.C. Ct. App. 2016). In fact, plaintiffs in *Sain* pointed to misrepresentations they did not witness, at an auction which they did not attend. Comparing Plaintiff McNeely to the plaintiffs in *Sain* is a stretch, as Plaintiff McNeely alleges she was aware of and relied on Honda's misrepresentations.

1   squarely rejected the holding of *Parkhill v. Minnesota Mutual Life Insurance Co.*, 174 F.

2   Supp. 2d 951 (D. Minn. 2000), cited by Honda, that proof of reliance is required.  *See*

3   *Grp. Health Plan, Inc. v. Philip Morris Inc*., 621 N.W.2d 2, 14 (Minn. 2001) ("[W]e

4   reject the view expressed in two federal court decisions that our misrepresentation in

5   sales laws require proof of individual reliance in all actions seeking damages."); *see also*

6   *Johannessohn v. Polaris Indus., Inc*., No. 16-cv-3348, 2020 WL 1536416, at *3 (D.

7   Minn. Mar. 31, 2020) ("Under the MCFA, a plaintiff need not prove traditional common

8   law reliance.").  Thus, Plaintiff Nelson "need only plead that the defendant engaged in

9   conduct prohibited by the statutes and that the plaintiff was damaged thereby." *See Grp.*

10  *Health*, 621 N.W.2d at 12.  Plaintiff makes those allegations.  CAC ¶¶1629-1630, 1635,

11  1644-1645, 1650.

12      Finally, contrary to Honda's one sentence argument (Dkt. No. 213 at 22), Plaintiff

13  Bowens' claim brought under the Texas Deceptive Trade Practices-Consumer Protection

14  Act ("DTPA") does not require reliance.  Plaintiff Bowens alleges violations based on

15  Honda's unconscionable actions (*see* CAC ¶2397), and reliance is not required for such

16  claim. *See* Tex. Bus. & Com. Code §1750(a)(3); *Cone v. Vortens, Inc.*, No. 17-cv-1,

17  2019 WL 2070423, at *6 (E.D. Tex. Mar. 13, 2019) (Defendant conceded "reliance is

18  not . . . required" under Texas DTPA subsection proscribing unconscionable conduct.);

19  *GM Ignition*, 257 F. Supp. 3d at 449 (complaint sufficiently alleged "unconscionable"

20  violation of the Texas DTPA by alleging that if plaintiffs had known about the defect,

21  they would have altered their purchasing behavior; defendant was positioned to take

22  advantage of plaintiffs' lack of knowledge of car manufacturing; and that defendant's

23  unconscionable conduct caused plaintiffs' injury).  Accordingly, all of Plaintiffs'

24  consumer protection claims have been properly pled.

25  **I.    The Court has jurisdiction over the Foreign Honda Defendants.**

26      Plaintiffs have satisfied their burden of establishing a *prima facie* showing of

27  personal jurisdiction over the Foreign Honda Defendants. As explained below, Honda

28  Motor Co., Ltd. ("Honda Motor") and Honda of America Mfg., Inc. manufacture Honda

vehicles, Honda Motor, Honda R&D Co. Ltd., and Honda R&D Americas, LLC[12] design Honda vehicles, and American Honda Motor Co., Inc. ("AHM") advertises and distributes Honda vehicles. The Domestic Honda Defendants, to their credit, do not challenge personal jurisdiction, and the Foreign Honda Defendants have pervasive contacts with the U.S. and each transferor forum, both directly and through the Domestic Honda Defendants, such that the Court's exercise of personal jurisdiction over them does not offend due process.

### 1. **The Court has personal jurisdiction over the Foreign Honda Defendants under RICO.**

The Court can exercise jurisdiction over the Foreign Honda Defendants under 18 U.S.C. §1965(b) because: (a) each Honda Plaintiff adequately alleged a single multidistrict RICO conspiracy involving all Foreign and Domestic Honda Defendants[13]; (b) the Court has jurisdiction over at least one of the participants in the alleged RICO conspiracy[14]; (c) the Foreign Honda Defendants identify no other district court that has personal jurisdiction over all of the co-conspirators; and (d) the Foreign Honda Defendants accepted service of process through their U.S.-based attorneys (Dkt. 123). *See* Legal Standards Br. §II.A.1.[15]

### 2. **The Court also has personal jurisdiction over the Foreign Honda Defendants under Rule 4(k)(2).**

Alternatively, the Court can exercise personal jurisdiction over the Foreign Honda Defendants under Rule 4(k)(2), which allows plaintiffs to "establish personal jurisdiction over foreign defendants in RICO cases, even where the courts have conceded that . . .

---

[12] In the CAC, Honda R&D Americas, LLC was named as Honda R&D Americas, Inc. Since then, it has "changed its corporate composition." Dkt. No. 213 at 4 fn.2.

[13] *See* Opp. to Joint Br. at §IV.A.

[14] The Domestic Honda Defendants do not challenge jurisdiction. *See* Dkt. 213 at §I.

[15] Once personal jurisdiction is established over Plaintiffs' RICO claims under 18 U.S.C. §1965(b) or Rule 4(k)(2), the Court can exercise pendent personal jurisdiction over Plaintiffs' non-RICO claims. *See* Legal Standards Br. at §IV.A.4.

- 21 -

1   18 U.S.C. §1965(b) did not reach those defendants." *Kayne v. Ho*, No. 09-cv-6816, 2012

2   WL 12883918, at *5 (C.D. Cal. Sept. 6, 2012). Rule 4(k)(2) applies here because:  (a)

3   Plaintiffs' claims arise under RICO; (b) the Foreign Honda Defendants accepted service

4   of process; and (c) the Foreign Honda Defendants have not identified any court in which

5   it is subject to personal jurisdiction. *See* Legal Standards Br. at §II.A.2.

6   **3.      The Court also has specific jurisdiction over the Foreign Honda**
**        Defendants.**

7

8       The Complaint's allegations demonstrate that the Foreign Honda Defendants have

9   pervasive purposeful contacts with the U.S. and transferor jurisdictions, including its

10  design, development, manufacture, marketing, and selling of Honda Class Vehicles.

11  CAC ¶¶233-50. These contacts easily support personal jurisdiction over them both

12  directly and through their direction and control of their U.S. subsidiaries.[16]

13      Honda Motor designs, develops, manufactures, markets, and sells Honda

14  automobiles around the world, including in the U.S. CAC ¶62; Dkt. No. 213-2 ¶3.

15  Honda Motor is the parent company of Honda of America Mfg. Inc., which

16  manufactures and assembles automobiles in the U.S., including in the transferor

17  jurisdictions, on Honda Motor's behalf. CAC ¶64; Dkt. No. 213-2 ¶11. Honda Motor is

18  also the parent company of AHM, which is a California corporation that advertises,

19  markets, leases, and serves as the exclusive distributor of Honda and Acura automobiles

20  in the U.S., including the transferor jurisdictions. CAC ¶63; Dkt. No. 213-2 ¶15. Honda

21  Motor admits that it is not only the parent of Honda of America Mfg., Inc., it co-owns its

22  stock through its subsidiary AHM. Dkt. No. 213-2 at ¶11. Honda R&D Americas, LLC

23  engages in design, prototype fabrication and testing of automobile engines, development

24  of new materials and electronics, and interior and exterior design of automobiles. CAC

25  ¶65; Dkt. 212-2 at ¶11.[17] Honda Motor also owns the U.S. trademarks for Honda and

26  Acura vehicles, and it has filed suit to protect its trademarks. *Id.* ¶¶248-250.

27  ────────────

[16] *See* Legal Standards Br. at §II.B.

28  [17] As of April 1, 2020, the function of Honda R&D Co., Ltd., the other Foreign Honda

*Footnote continued on next page*

1    The Foreign Honda Defendants maintain the right to and do exercise substantial

2 control over the Domestic Honda Defendants. For example, Honda Motor has the power

3 to appoint board members to manage the U.S. entities, *id.* ¶238, and it has ultimate

4 responsibility for the design and specifications for all Honda Class Vehicles sold in the

5 U.S. *Id.* ¶247. Honda Motor also provides specific guidelines regarding decision-making

6 and management judgment to those entities' employees. *Id.* ¶¶240-43, 245. Honda Motor

7 and its American subsidiaries also routinely share senior executives, *id.* ¶246. In fact,

8 Honda Motor publicly holds out all its Honda entities as a single entity. *Id.* ¶234.[18]

9    Importantly, the Foreign Honda Defendants do not dispute that they work through

10 AHM—their wholly-owned and "sole authorized dealer of Honda and Acura vehicles

11 and other products in the United States," Dkt. No. 213-2 at ¶¶11, 15—with the specific

12 intent to sell the products they manufacture in the U.S. Dkt. No. 213 at 6.

13    These contacts with the U.S. and transferor jurisdictions, including the Foreign

14 Honda Defendants' manufacture and distribution both directly and through its

15 subsidiaries established as exclusive distribution channels, clearly demonstrate that the

16 Court can exercise jurisdiction over Plaintiffs' claims against them. *See* Legal Standards

17 Br. at §II.B; *see also Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1060 (C.D. Cal.

18 2015) (foreign parent's "involve[ment] in" and "authority over the manufacturing

19 process," use of a subsidiary "as its distribution agent," and involvement "in the

20 marketing of the vehicles, with the intent of selling them in [the forum]," are sufficient to

21 establish a consumer's "claims under various consumer protection statutes arise out of

22 and/or relate to [Nissan parent's] forum-related activities"). In fact, AHM's role as

23

24 *Footnote continued from previous page*
Defendant, related to the development of automobile products was merged into Honda

25 Motor. Dkt. No. 213-2 at ¶2.

26 [18] While the Takahashi Declaration asserts Honda Motor does not exercise control over
the day-to-day of its subsidiaries, Dkt. No. 213-2 at ¶12, this conclusory assertion both

27 conflicts with the allegations in the Complaint and does not address the test of whether
they have the *right* to that control, which is an important factor under the agency theory

28 of personal jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 936 (9th Cir. 2001).

exclusive distributor of the Foreign Honda Defendants' products in the U.S. previously has been sufficient for personal jurisdiction over the Foreign Honda Defendants. *Bohannon v. Honda Motor Co.*, 682 F. Supp. 42, 43-44 (D. Kan. 1988). As in *Bohannon*, the Foreign Honda Defendants use of a distributor agent to accomplish sales on their behalf is not grounds to insulate them from the reach of this Court. *Id.* Indeed, "creating, controlling, *or* employing the distribution system that brought [the] product to the forum" is the type of "additional conduct" that weighs in favor of jurisdiction, not against it. *Hendricks v. New Video Channel America*, 14-cv-2989, 2015 WL 3616983, at *6 (C.D. Cal. June 8, 2015) (emphasis added) (internal citations omitted).

Honda Motor established its U.S. subsidiaries to target U.S. consumers, CAC ¶234, and the U.S. market is so substantial to the business of Honda Motor that if the Domestic Honda Defendants did not exist, the Foreign Honda Defendants would have to perform the tasks of their U.S. subsidiaries themselves. *Id.* ¶235. Honda Motor also derives more revenue from the U.S. than any other country. *Id.* ¶236. For example, for fiscal year ending March 31, 2018 alone, Honda Motor reported $65 *billion* in sales in the United States, a little under half of its revenue. *Id.* (emphasis added).[19] In short, the Foreign Honda Defendants have "taken affirmative action" to see that their products reach all fifty states by designating "an American corporation whose principal purpose is to market and distribute those products throughout the country." *See* Dkt. No. 213 at 6; *see Bohannon*, 682 F. Supp. at 43–44.

Finally, Honda R&D Co. Ltd.'s argument that the Court does not have jurisdiction over it because it has been recently merged into Honda Motor, is unpersuasive. Dkt. No. 213 at 6. The interconnectedness of Honda Motor and Honda R&D Co. Ltd. is another

---

[19] The Foreign Honda Defendants do not mention in their declaration the revenue or sales the Foreign Honda Defendants derive from their U.S. subsidiaries to refute Plaintiffs' allegations that the sales are so substantial the Foreign Honda Defendants would conduct these activities themselves if the Domestic Honda Defendants did not exist. Courts have found that this is a key question that, along with the control Honda Motor exercises over AHM, Honda of America Mfg., Inc., and Honda R&D Americas, LLC as its agents, is critical in determining jurisdiction. *See* Legal Standards Br. at §II.B.

reason for the Court to exercise jurisdiction over both entities. *See Warren v. Honda Motor Co.*, 669 F. Supp. 365, 370–71 (D. Utah 1987) (jurisdiction existed where "Honda Motor and Honda R&D present a unified image to the public" and "the two are totally interdependent," "Honda Motor's purposeful acts of placing the product in a worldwide market, including the United States … can be attributed to its subsidiary corporation and designer, Honda R&D."). Courts have exercised jurisdiction over Honda R&D where, as here (CAC ¶247), its design decisions were made in anticipation of sales in the U.S. *See Hawes v. Honda Motor Co.*, 738 F. Supp. 1247, 1251 (E.D. Ark. 1990); *In re All Terrain Vehicles Litig.*, No. 88-cv-1914, 1989 WL 30948, at *9 (E.D. Pa. Feb. 23, 1989).

Plaintiffs' allegations are sufficient to establish a *prima facie* case that the claims against the Foreign Honda Defendants arise from activities directed at the U.S., including at all of the transferor jurisdictions, and that, given the extensive contacts, the substantial benefits the Foreign Honda Defendants derive from the U.S. market, and the control it maintains over their subsidiaries, the exercise of jurisdiction here would be reasonable.

## V.   CONCLUSION

For the foregoing reasons, Honda's motion to dismiss should be denied.  If the Court grants any part of Honda's motion, Plaintiffs respectfully request leave to amend.


Dated:  September 25, 2020            Respectfully submitted,


                                      */s/ Roland Tellis*
                                      **BARON & BUDD, P.C.**
                                      Roland Tellis (SBN 186269)
                                      rtellis@baronbudd.com
                                      David Fernandes (SBN 280944)
                                      dfernandes@baronbudd.com
                                      Adam Tamburelli (SBN 301902)
                                      atamburelli@baronbudd.com
                                      15910 Ventura Boulevard, Suite 1600
                                      Encino, CA  91436
                                      Telephone: 818.839.2333

Facsimile: 818.986.9698

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com
Katherine McBride
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
Phong-Chau G. Nguyen (SBN 286789)
pgnguyen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: 415.956.1000

*Co-Lead Counsel for Plaintiffs*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA  90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
W. Daniel "Dee" Miles, III (ASB-7656-M75W)
Dee.Miles@Beasleyallen.com
H. Clay Barnett, III (ASB-4878-N68B)
Clay.Barnett@Beasleyallen.com

- 26 -

PLAINTIFFS' OPPOSITION TO
HONDA'S MOTION TO DISMISS

J. Mitch Williams (ASB-8560-X19D)
Mitch.Wlliams@Beasleyallen.com
272 Commerce Street
Montgomery, AL  36104
Telephone: 334.269.2343

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
Anne K. Davis (SBN 267909)
adavis@bfalaw.com
Joshua Samra (SBN 313050)
jsamra@bfalaw.com
555 12th Street, Suite 1600
Oakland, CA  94607
Telephone: 415.445.4003
Facsimile: 415.445.4020

**BOIES SCHILLER FLEXNER LLP**
Stephen N. Zack (FBN: 145215)
szack@bsfllp.com
Tyler E. Ulrich (FBN: 94705)
tulrich@bsfllp.com
Ryan B. Witte (FBN: 60628)
rwitte@bsfllp.com
100 South East 2nd Street, Suite 2800
Miami, FL  33131
Telephone: 305.539.8400

**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
Patricia Camille Guerra
camille@cglaw.com
110 Laurel Street
San Diego, CA  92101
Telephone: 619.238.1811
Facsimile: 619.544.9232

**DICELLO LEVITT GUTZLER LLC**
Adam J. Levitt (*pro hac vice*)

alevitt@dicellolevitt.com
Ten North Dearborn Street, Eleventh Floor
Chicago, IL  60602
Telephone: 312.214.7900

**KELLER ROHRBACK L.L.P**
Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone: 206.623.1900
Facsimile: 206.623.3384

**KESSLER TOPAZ MELTZER AND CHECK LLP**
Joseph H Meltzer (*pro hac vice*)
jmeltzer@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: 610.667.7706
Facsimile: 610.667.7056

**LEVI & KORSINSKY, LLP**
Rosemary M. Rivas (SBN 209147)
rrivas@zlk.com
388 Market Street, Suite 1300
San Francisco, CA  94111
Telephone: 415.373.1671
Facsimile: 415.484.1294

**LEVI & KORSINSKY, LLP**
Joseph E. Levi
jlevi@zlk.com
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212.363.7500
Facsimile: 212.363.7171

**PODHURST ORSECK, P.A.**
Peter Prieto (FBN 501492)
pprieto@podhurst.com
SunTrust International Center
One S.E. Third Ave., Suite 2300

- 28 -

Miami, FL  33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382

**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
Mark J. Dearman
mdearman@rgrdlaw.com
Jason H. Alperstein
jalperstein@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: 561.750.3000
Facsimile: 561.750.3364

**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
Rachel L. Jensen (CBN 211456)
rjensen@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619.231.1058
Facsimile: 619.231.7423

**ROBINS KAPLAN LLP**
Stacey P. Slaughter (MN Bar No. 0296971)
Sslaughter@robinskaplan.com
J. Austin Hurt (MN Bar No. 0391802)
Ahurt@robinskaplan.com
Michael J. Pacelli (MN Bar No. 0399484)
Mpacelli@robinskaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*Plaintiffs' Steering Committee*

**PRITZKER LEVINE LLP**
Jonathan K. Levine (SBN 220289)
jkl@pritkzkerlevine.com
Elizabeth C. Pritzker

ecp@pritzkerlevine.com
1900 Powell Street, Suite 450
Emeryville, CA  94608
Telephone: 415.692.0772
Facsimile: 415.366.6110

*Plaintiffs' Liaison Counsel*

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on September 25, 2020, I electronically filed the foregoing

3  document with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to all counsel of record, including counsel for Defendants.

5

6                                        */s/Roland Tellis*

7                                        Roland Tellis

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO
HONDA'S MOTION TO DISMISS