UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| T. Jackson-Terrell | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) ORDER RE DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) (DKT. 208); ZF DEFENDANTS' MOTION TO DISMISS (DKT. 209); MITSUBISHI DEFENDANTS' MOTION TO DISMISS (DKT. 212); HONDA DEFENDANTS' MOTION TO DISMISS (DKT. 213); TOYOTA DEFENDANTS' MOTION TO DISMISS (DKT. 214); HYUNDAI-KIA DEFENDANTS' MOTION TO DISMISS (DKT. 219); MOBIS DEFENDANTS' MOTION TO DISMISS (DKT. 220); FCA DEFENDANTS' MOTION TO DISMISS (DKT. 230); STMICRO DEFENDANTS' MOTION TO DISMISS (DKT. 241)**

## I.     Introduction

On August 8, 2019, this multi-district litigation ("MDL") was established and transferred to this Court. Dkt. 1. The MDL, which encompasses 20 member cases, concerns airbag control units ("ACUs") that are allegedly defective because they contain a specific component part that is vulnerable to electrical overstress ("EOS"). The alleged defect ("Alleged Defect") can result in the failure of airbags in a vehicle to deploy during a collision.

On July 27, 2020, ZF Active Safety and Electronics US LLC, ZF Passive Safety Systems US Inc., ZF Automotive Inc., ZF TRW Automotive Holdings Corp., and ZF North America, Inc., ZF Friedrichshafen AG, and ZF Holdings B.V. (collectively, the "ZF Defendants") filed a Motion to Dismiss (the "ZF Motion"). Dkt. 209. Plaintiffs opposed the ZF Motion on September 25, 2020 (Dkt. 283) and the ZF Defendants replied on November 9, 2020 (Dkt. 296).

On July 27, 2020, Mitsubishi Motors North America, Inc. and Mitsubishi Motors Corp. (together, the "Mitsubishi Defendants" or "Mitsubishi") filed a Motion to Dismiss (the "Mitsubishi Motion"). Dkt. 212. Plaintiffs opposed the Mitsubishi Motion on September 25, 2020 (Dkt. 288) and the Mitsubishi Defendants replied on November 9, 2020 (Dkt. 294).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

On July 27, 2020, Honda Motor Co., Ltd., American Honda Motor Co., Inc., Honda of America Mfg., Inc., Honda R&D Co., Ltd., and Honda R&D Americas, Inc. ("Honda R&D Americas")[1] (collectively, the "Honda Defendants" or "Honda") filed a Motion to Dismiss (the "Honda Motion"). Dkt. 213. Plaintiffs opposed the Honda Motion on September 25, 2020 (Dkt. 287) and the Honda Defendants replied on November 9, 2020 (Dkt. 295).

On July 27, 2020, Toyota Motor Sales U.S.A. Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation ("Toyota Motor Corp.") (collectively, the "Toyota Defendants" or "Toyota") filed a Motion to Dismiss (the "Toyota Motion"). Dkt. 214.[2] Plaintiffs opposed the Toyota Motion on September 25, 2020 (Dkt. 289) and the Toyota Defendants replied on November 9, 2020 (Dkt. 297).

On July 27, 2020, Hyundai Motor Company, Ltd., Hyundai Motor America, Inc., Kia Motors Corporation, and Kia Motors America, Inc. (collectively, the "Hyundai-Kia Defendants" or "Hyundai-Kia") filed a Motion to Dismiss (the "Hyundai-Kia Motion"). Dkt. 219. Plaintiffs opposed the Hyundai-Kia Motion on September 25, 2020 (Dkt. 285) and the Hyundai-Kia Defendants replied on November 9, 2020 (Dkt. 303).

On July 27, 2020, Hyundai Mobis Co. Ltd. and Mobis Parts America, LLC (collectively, the "Mobis Defendants" or "Mobis") filed a Motion to Dismiss (the "Mobis Motion"). Dkt. 220. Plaintiffs opposed the Mobis Motion on September 25, 2020 (Dkt. 286) and the Mobis Defendants replied on November 9, 2020 (Dkt. 298).

On August 10, 2020, FCA US LLC and Fiat Chrysler Automobiles N.V. (collectively, the "FCA Defendants" or "FCA") filed a Motion to Dismiss (the "FCA Motion"). Dkt. 230. Plaintiffs opposed the FCA Motion on September 25, 2020 (Dkt. 290) and the FCA Defendants replied on November 9, 2020 (Dkt. 302).

On August 17, 2020, STMicroelectronics, Inc., STMicroelectronics, N.V., and STMicroelectronics International, N.V. (collectively, the "STMicro Defendants" or "STMicro") filed a Motion to Dismiss (the "STMicro Motion"). Dkt. 241.[3] Plaintiffs opposed the STMicro Motion on September 25, 2020 (Dkt. 284) and the STMicro Defendants replied on November 9, 2020 (Dkt. 301).

In addition to their individual motions to dismiss, all Defendants filed a Joint Motion to Dismiss (the "Joint Motion") on July 27, 2020. Dkt. 208. Plaintiffs opposed the Joint Motion on September 25, 2020 (Dkt. 281) and Defendants replied on November 9, 2020 (Dkt. 299). Finally, on August 3, 2021, the

---

[1] Defendants state that Honda R&D Americas, Inc. "changed its corporate composition" on April 1, 2020, and "is now Honda R&D Americas, LLC." Dkt. 213 at 15 n.2. All further references in this Order to "Honda R&D Americas" are to both corporate entities.

[2] Toyota Motor Corporation provisionally joined the Toyota Motion pending resolution of its Rule 12(b)(2) challenge. *See* Dkt. 214 (Toyota Motor Corporation's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and Toyota Defendants' Motion to Dismiss Pursuant to 12(b)(6)).

[3] On September 25, 2020, the STMicro Defendants filed an unredacted STMicro Motion pursuant to the September 14, 2020 Order. Dkt. 264. All references to the STMicro Motion in this Order relate to the unredacted version (Dkt. 280).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Toyota Defendants filed a Notice of Supplemental Authority. Dkt. 362.

All nine motions to dismiss (collectively, the "Motions") -- the Joint Motion, the ZF Motion, the Mitsubishi Motion, the Honda Motion, the Toyota Motion, the Hyundai-Kia Motion, the Mobis Motion, the FCA Motion, and the STMicro Motion -- were heard on January 25, 2021, and were taken under submission.

For the reasons stated in this Order, the Motions are decided as stated in this Order.

II.     **Background**

        A.      The Parties

There are 66 Plaintiffs, who collectively reside in 29 different states, and who purchased or leased vehicles from the Vehicle Manufacturer Defendants identified below. The purchases were made between February 2009 and March 2019. Consolidated Class Action Complaint ("CAC"), Dkt. 278 ¶¶ 72-138.[4]

ZF Friedrichshafen AG; ZF Holdings B.V.; and the ZF Defendants (collectively, "ZF" or "ZF TRW") allegedly manufacture and design ACUs. *Id.* ¶¶ 26-29.

Defendants STMicroelectronics, Inc.; STMicroelectronics N.V.; and STMicroelectronics International N.V. (collectively, "STMicro") allegedly manufacture and sell semiconductors and electronic chips. *Id.* ¶¶ 37-38.

The following defendants constitute the "Vehicle Manufacturer Defendants," which are alleged to be "companies that make and sell completed vehicles and their affiliates":

1.  The Toyota Defendants: Toyota Motor Sales U.S.A. Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation;
2.  The Honda Defendants: Honda Motor Co., Ltd.; American Honda Motor Co., Inc.; Honda of America Mfg., Inc.; Honda R&D Co., Inc.; and Honda R&D Americas;
3.  The Hyundai-Kia Defendants: Hyundai Motor America, Inc.; Hyundai Motor Co.; Kia Motors Corporation; and Kia Motors America, Inc.;
4.  The Mitsubishi Defendants: Mitsubishi Motors Corp. and Mitsubishi Motors North America Inc.; and
5.  The FCA Defendants: FCA US LLC and Fiat Chrysler Automobiles N.V.

*Id.* ¶¶ 41, 52.

It is alleged that the Mobis Defendants are affiliates of Hyundai-Kia. *Id.* ¶ 42. Mobis allegedly "manufactures, supplies, and distributes automotive parts to [Hyundai-Kia], including some of the defective ZF TRW ACUs." *Id.* ¶ 50. Mobis Parts America, LLC, allegedly "imports, supplies, and

---

[4]  The CAC initially was filed on May 26, 2020. Dkt. 120. Pursuant to a September 14, 2020 Order (Dkt. 264), an unredacted version of the CAC was filed on September 23, 2020. Dkt. 278.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

provides logistical support for automotive parts for Hyundai and Kia-branded vehicles that are either imported into, or manufactured in, the United States." *Id.* ¶ 51.

B.     Putative Classes

Plaintiffs have brought this action on behalf of a putative class (the "Nationwide Class") and subclasses. Dkt. 278 ¶¶ 547-48. The Nationwide Class includes "[a]ll persons in the United States who purchased or leased a Class Vehicle." *Id.* In addition, "Plaintiffs . . . plead state subclasses within the Nationwide Class, each defined based on purchases or leases of the Class Vehicles within each state." *Id.* ¶ 548.

The Hyundai-Kia Plaintiffs bring this action on behalf of a putative nationwide subclass (the "Hyundai-Kia Class") that is defined as: "All persons in the United States who purchased or leased a Hyundai-Kia Class Vehicle." *Id.* ¶ 549. Plaintiffs assert that "[s]imilar subclasses exist on a statewide basis for all persons in the United States who purchased or leased a Hyundai-Kia Class Vehicle in each state." *Id.*

The FCA Plaintiffs bring this action on behalf of a putative nationwide subclass (the "FCA Class") that is defined as: "All persons in the United States who purchased or leased a FCA Class Vehicle." *Id.* ¶ 550. Plaintiffs assert that "[s]imilar subclasses exist on a statewide basis for all persons in the United States who purchased or leased a FCA Class Vehicle in each state." *Id.*

The Toyota Plaintiffs bring this action on behalf of a putative nationwide subclass (the "Toyota Class") that is defined as: "All persons in the United States who purchased or leased a Toyota Class Vehicle." *Id.* ¶ 551. Plaintiffs assert that "[s]imilar subclasses exist on a statewide basis for all persons in the United States who purchased or leased a Toyota Class Vehicle in each state." *Id.*

The Honda Plaintiffs bring this action on behalf of a putative nationwide subclass (the "Honda Class") that is defined as: "All persons in the United States who purchased or leased a Honda Class Vehicle." *Id.* ¶ 552. Plaintiffs assert that "[s]imilar subclasses exist on a statewide basis for all persons in the United States who purchased or leased a Honda Class Vehicle in each state." *Id.*

The Mitsubishi Plaintiffs bring this action on behalf of a putative nationwide subclass (the "Mitsubishi Class") that is defined as: "All persons in the United States who purchased or leased a Mitsubishi Class Vehicle." *Id.* ¶ 553. Plaintiffs assert that "[s]imilar subclasses exist on a statewide basis for all persons in the United States who purchased or leased a Mitsubishi Class Vehicle in each state." *Id.*

C.     Allegations in the Complaint

ZF allegedly manufactures ACUs for use in motor vehicles, including vehicles made by the Vehicle Manufacturer Defendants. Dkt. 278 ¶¶ 8, 22. ACUs, which are typically installed in the passenger compartment of a vehicle, are connected by electrical wiring to crash sensors located on the front of the vehicle. *Id.* ¶¶ 8, 271-72. The crash sensors detect activity in the front of the vehicle and send corresponding electrical signals to the ACU, which receives and interprets these signals. *Id.* When certain thresholds are met, the ACU issues a command to the vehicle's safety system to deploy the airbags and tighten the seatbelts to protect passengers from an imminent collision. *Id.* ¶¶ 8, 270, 272. Within the ACU, the application-specific integrated circuit ("ASIC") processes the signal from the crash sensors and activates the airbags and seatbelts. *Id.* ¶ 9. "[A]s has been common knowledge in the auto

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

industry for decades," a vehicle crash can cause large bursts of electrical energy to discharge in the front of the vehicle and move through the wiring that connects the crash sensors to the ACU. *Id.* ¶¶ 10, 273. Because these bursts ("transients" or "transient electricity") can damage ASICs, "ACUs (and the ASICs within them) must be sufficiently protected from transient electrical currents to ensure they will function during a crash." *Id.* ¶¶ 10, 274. Thus, "a properly designed ACU has sufficient protections against the levels of transient electricity that could result from a car accident." *Id.*

The "Class Vehicles" in this action are comprised of "all vehicles equipped with a ZF TRW ACU containing a DS84 [ASIC]" (the "DS84 ASIC"). *Id.* ¶¶ 7 n.3, 262, 265. It is alleged that no ACU manufacturer other than ZF uses the DS84 ASIC. *Id.* ¶ 9. "Historically, ZF TRW ACUs" allegedly "included two separate ASICs to manage the dual [safety] functions" of "receiv[ing] information from the crash sensors" and "trigger[ing] the airbags and seatbelt pretensioners after a crash is detected." *Id.* ¶ 275.

In February 2005, STMicro and ZF allegedly began developing a "new ASIC" that would "combine these two functionalities in one, consolidated chip, thereby reducing its size." *Id.* ¶¶ 276-77. It is alleged that ZF "wanted to reduce the size of the ASICs to reduce the costs of mass manufacturing the components." *Id.* ¶ 277. STMicro allegedly custom-designed a specialized microchip, the DS84 ASIC, in close collaboration with ZF. *Id.* ¶ 278. STMicro and ZF allegedly "approved the new DS84 ASIC for production" and ZF began producing ACUs containing the DS84 ASIC by August 2008. *Id.* ¶ 279. These ACUs allegedly "also used different technology for managing signals from the front crash sensors than other prior ZF TRW ACUs." *Id.*

It is alleged that all ACUs that contain the DS84 ASIC (the "Defective ACU") are defective due to their particular vulnerability to a phenomenon called "electrical overstress" ("EOS"). *Id.* ¶¶ 10-11. Specifically, transient electricity caused by collisions has allegedly overheated and "rendered useless" the DS84 ASIC in ZF ACUs "[i]n many crashes over the last ten years." *Id.* ¶ 11. The Alleged Defect, *i.e.*, the vulnerability of the DS84 ASIC to damage from transient electricity caused by a collision, can prevent deployment of the airbags and seatbelts during a collision. *Id.*[5] Defendants allegedly knew of the Alleged Defect "for at least a decade" but "conspired to conceal [it]" from the National Highway Traffic Safety Administration ("NHTSA") and consumers, and "pushed to market and delayed recalling vehicles with the defective ACUs." *Id.* ¶¶ 12, 14; *see id.* ¶¶ 301-18.

The alleged vulnerability of the DS84 ASIC to EOS is due to its combination of "the previously separate functions of handling sensor signals and activating safety restraints." *Id.* ¶ 281. It is alleged that "ACUs made by other manufacturers do not have the same vulnerabilities to transient electricity as the defective ZF TRW ACUs," and that "predecessor ZF TRW ACUs that used two different ASICs to perform the jobs of the DS84 ASIC can also withstand much stronger electrical surges than the defective ZF TRW ACUs." *Id.* ¶¶ 287-88. It is also alleged that "other contemporaneous ZF TRW ACUs that do not use the DS84 ASIC are" "more resistant to electrical surges than" the Defective ACUs. *Id.* ¶ 289. The former ACUs use the MS84 ASIC, which uses " 'PSI-5' technology" for crash sensor communications rather than the " 'DSI' technology" used in the DS84. *Id.* ZF allegedly has "suggested that this difference may explain the relative weakness of ACUs with the DS84 ACU." *Id.*

---

[5] It is alleged that "EOS can also cause other failures of the ACU, including inadvertent airbag deployments and/or loss of recorded data about a crash and the ACU's responses thereto." *Id.* ¶ 262.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

It is alleged that "[a]dding protective components . . . to restrain the flow of electricity to the defective ZF TRW ACU does not appear to fix the defect." *Id.* ¶ 290. Moreover, it is alleged that, "[a]lthough Defendants have downplayed the scope of the defect by blaming observed cases of ASIC EOS on [] purported vehicle-specific variations in wiring around the ACU and crash sensors, the defective ZF TRW ACU is the root cause." *Id.* ¶ 291. It is also alleged that "[i]t is simply not plausible that the many different vehicles that were recalled due to the ACU's vulnerability to ASIC EOS all coincidentally had similarly flawed wiring layouts, despite the lack of coordination among Defendants as to wiring layout and other elements of vehicle design." *Id.* ¶ 291.

On March 16, 2018, NHTSA opened an investigation concerning ZF ACUs installed in Hyundai and Kia vehicles. *Id.* ¶ 358. A resume opening the Preliminary Evaluation published by NHTSA's Office of Defects Investigation ("ODI") includes the following statement:

> On February 27, 2018, Hyundai filed a defect information report leading to NHTSA Recall No. 18V-137. Hyundai indicates that the DIR stemmed from post-collision inspections of the [ACUs] showing that [EOS] of an ACU electronic component occurred in three of the crashes, and that the fourth ACU is under evaluation for the same concern. Hyundai has not identified a remedy for this recall, and states that the cause of the EOS is being investigated with the ACU supplier, ZF-TRW. ODI's current understanding is that the above Kia products also use similar ACUs supplied by ZF-TRW. Additionally, ODI is aware of a prior recall, 16V-668 where EOS appeared to be a root cause of air bag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles.
>
> Under the investigation, ODI will evaluate the scope of Hyundai's recall, confirm Kia's use of the same or similar ZF-TRW ACU, review the root cause analysis of all involved parties, and review and evaluate pertinent vehicle and/or ACU factors that may be contributing to, or causing EOS failures. Additionally, ODI will determine if any other vehicle manufacturers used the same or similar ACUs, as supplied by ZF-TRW, and if so, evaluate whether the field experience of these vehicles indicates potentially related crash events.

NHTSA ODI Resume for PE 18-003 ("PE ODI Resume"), https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF.

On April 19, 2019, NHTSA "upgraded" the investigation to an "Engineering Analysis," which "expand[ed] the scope of the investigation to include the Tier-one supplier [*i.e.*, ZF] and any manufacturers who installed [the subject ZF ACU] in production vehicles." Dkt. 278 ¶ 495; ODI Resume for NHTSA EA 19-001 ("EA ODI Resume"), https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF (stating that ODI "plans to evaluate the susceptibility of the subject ACU designs to electrical signals, as well as other vehicle factors that can either lead to, or reduce the likelihood of, an EOS event" and "evaluate whether an unreasonable risk exists that requires further field action"). The Engineering Analysis, which allegedly "covers more than 12 million vehicles," "remains open and ongoing." Dkt. 278 ¶¶ 264, 283. As of May 26, 2020, Plaintiffs allege that "NHTSA and the Vehicle Manufacturer Defendants have publicly linked at least eight fatalities to apparent failures of the ZF TRW ACUs." *Id.* ¶ 283.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Although it is alleged that "more than 15 million vehicles" are equipped with the Defective ACU, the Vehicle Manufacturer Defendants allegedly have "failed to recall approximately 9 million" of these vehicles. *Id.* ¶¶ 7, 20. "Between September 2016 and July 2018, FCA, Hyundai, and Kia" allegedly "recalled millions of vehicles based on the common defect." *Id.* ¶ 263. It is alleged that Toyota's January 17, 2020 ongoing "recall of nearly 3 million vehicles with defective ZF TRW ACUs" resulted from the expansion of the NHTSA investigation into an Engineering Analysis. *Id.* ¶¶ 264 & n.7, 431. It is alleged that Hyundai-Kia, FCA and Toyota have failed to include in their respective recalls vehicles that also contain defective ZF TRW ACUs. *Id.* ¶¶ 381, 418-19, 431. It is alleged that each of these Vehicle Manufacturer Defendants "conspired [with ZF] to exclude [the unrecalled] Class Vehicles from the recall by concealing the true scope of vehicles equipped with defective ZF TRW ACUs and misleadingly assuring NHTSA and consumers that [the] unrecalled [] Class Vehicles were safe." *Id.* ¶¶ 381-83, 420, 472-73. Moreover, the "partial recalls" conducted by Hyundai-Kia and FCA allegedly have "failed to provide an adequate remedy to consumers who paid for vehicles" covered by the recalls. *Id.* ¶¶ 380, 421. It is alleged that "the remedy offered by Toyota under its partial recall does not repair the defective nature of the ZF TRW ACUs" and "merely adds a noise filter 'between the airbag control module and its wire harness.' " *Id.* ¶ 473.

D. Requested Relief

Plaintiffs seek the following remedies: (1) an injunction barring the Vehicle Manufacturing Defendants from continuing to use allegedly deceptive distribution, sales and leasing practices; (2) compensatory, punitive, and treble damages, as well as statutory penalties; (3) repurchase of the Class Vehicles; (4) a fund for losses and expenses; (5) disgorgement of profits or full restitution; and (6) attorney's fees. *See* Dkt. 278 at 581-83 ("Prayer for Relief").

**II.   Requests for Judicial Notice**

The Honda Defendants seek judicial notice of the following seven exhibits:

1. Warranty Booklet for the 2012 Honda Civic (Ex. 1 to Declaration of Andrew T. Stevenson ("Stevenson Decl."), Dkt. 211-2);
2. Warranty Booklet for the 2013 Honda Accord (Ex. 2 to Stevenson Decl., Dkt. 211-3);
3. Warranty Booklet for the 2013 Honda Civic Hybrid (Ex. 3 to Stevenson Decl., Dkt. 211-4);
4. Warranty Booklet for the 2014 Honda CR-V (Ex. 4 to Stevenson Decl., Dkt. 211-5);
5. Warranty Booklet for the 2014 Honda Civic (Ex. 5 to Stevenson Decl., Dkt. 211-6);
6. Warranty Booklet for the 2015 Honda Civic (Ex. 6 to Stevenson Decl., Dkt. 211-7);
7. Warranty Booklet for the 2015 Acura TLX (Ex. 7 to Stevenson Decl., Dkt. 211-8) (together with the preceding exhibits, the "Honda Warranty Booklets").

Dkt. 211 ("Honda Request for Judicial Notice").

The FCA Defendants seek judicial notice ("FCA Request for Judicial Notice") of the following 11 exhibits:

1. Warranty Booklet for model-year 2013 Jeep vehicles (Ex. B to FCA Request for Judicial Notice ("FCA RFN"), Dkt. 231-2);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

2. Warranty Booklet for model-year 2012 Jeep vehicles (Ex. C to FCA RFN, Dkt. 231-3);
3. Warranty Booklet for model-year 2014 Jeep vehicles (Ex. D to FCA RFN, Dkt. 231-4);
4. Warranty Booklet for model-year 2016 Jeep Gas vehicles (Ex. E to FCA RFN, Dkt. 231-5);
5. Warranty Booklet for model-year 2017 Jeep Gas vehicles (Ex. F to FCA RFN, Dkt. 231-6);
6. Warranty Booklet for model-year 2015 Jeep vehicles (Ex. G to FCA RFN, Dkt. 231-7);
7. Warranty Booklet for model-year 2010 Dodge (Ex. H to FCA RFN, Dkt. 231-8);
8. Warranty Booklet for model-year 2011 Ram Truck 1500/2500/3500 Gas vehicles (Ex. I to FCA RFN, Dkt. 231-9);
9. Warranty Booklet for model-year 2015 Fiat vehicles (Ex. J to FCA RFN, Dkt. 231-10);
10. Warranty Booklet for model-year 2013 Fiat 500 vehicles (Ex. K to FCA RFN, Dkt. 231-11) (together with the preceding exhibits, the "FCA Warranty Booklets");
11. NHTSA EA ODI Resume (Ex. A to FCA RFN, Dkt. 231-1).

Dkt. 231.

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).

Fed. R. Evid. 201(b) permits judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Government publications and other matters of public record are properly subject to judicial notice. *See Daniels-Hall*, 629 F.3d at 998-999 (taking judicial notice of information on the websites of two school districts because they were government entities); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites [] have often been treated as proper subjects for judicial notice"). Therefore, judicial notice of the NHTSA EA ODI Resume is appropriate.

Judicial notice of warranty contracts has been approved in other product liability cases when they were expressly identified in the complaint and their authenticity was not disputed. *See, e.g.*, *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP (ADSx), 2019 WL 7753448, at *6 n.1 (C.D. Cal. Dec. 20, 2019); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 936 n.38 (C.D. Cal. 2012); *Barakezyan v. BMW of N. Am., LLC*, No. 16-CV-00173-SJO, 2016 WL 2840803, at *6 n.3 (C.D. Cal. Apr. 7, 2016). The CAC expressly refers to the express warranties of the Vehicle Manufacturer Defendants. *See, e.g.*, Dkt. 278 ¶ 862. Plaintiffs have not objected to either the Honda or FCA Request for Judicial Notice, nor have they disputed the authenticity of the documents for which the Honda and FCA Defendants seek judicial notice.

For the foregoing reasons, the Honda and FCA Requests for Judicial Notice (Dkts. 211, 231) are **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

**III.**    **Procedural Issues**

     A.      Plaintiffs Added in the CAC

Defendants argue in support of the Joint Motion that Plaintiffs included in the CAC new plaintiffs ("New Plaintiffs") who were not parties to any of the underlying cases transferred to this Court for centralized pretrial proceedings. Dkt. 208 at 71. Defendants contend that it was improper to do so. *Id.* Although Plaintiffs have disputed that including the New Plaintiffs for the first time in the CAC was procedurally improper, on September 25, 2020, they stated their intention to address this issue by filing a new case on behalf of the New Plaintiffs against Defendants in the United States District Court for the Eastern District of Michigan. Dkt. 282 at 20. Defendants did not object to this plan.

The New Plaintiffs[6] filed a complaint in that District on October 2, 2020, which was transferred to this Court on October 26, 2020 for inclusion in this action. It was docketed as *Barry Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. 20-cv-09668 JAK (C.D. Cal.). *See* CV 20-9668 Dkts. 1, 8. Therefore, the New Plaintiffs are deemed properly added as parties to this action. Defendants' argument that they were improperly added is **MOOT**. *See* Dkt. 208 at 71-73.

**IV.**    **Analysis**

     A.      Fed. R. Civ. P. 12(b)(2) Motion

         1.      Legal Standards: Personal Jurisdiction

            a)      Overview

A party may move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The party asserting jurisdiction bears the burden of establishing it. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). If the court does not require an evidentiary hearing, a plaintiff need make only a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto*, 539 F.3d at 1015. However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs.*, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir 1977)).

---

[6] The New Plaintiffs are: Barry Adams ("Adams"), Larae Angel ("Angel"), Bobbi Jo Birk-LaBarge ("Birk-LaBarge"), John Colbert ("Colbert"), Brian Collins ("Collins"), Dorothy Cooks ("Cooks"), Gersen Damens ("Damens"), Joy Davis ("Davis"), James Dean ("Dean"), Dylan DeMoranville ("DeMoranville"), Tiffany Ecklor ("Ecklor"), Tatiana Gales ("Gales"), Ricky Gerischer ("Gerischer"), Constanza Gonzalez ("Gonzalez"), Lawrence Graziano ("Graziano"), Paul Huitzil ("Huitzil"), Danny Hunt ("Hunt"), Richard Kintzel ("Kintzel"), James Kneup ("Kneup"), Steve Laveaux ("Laveaux"), Deloras McMurray ("McMurray"), Carl Miller ("Miller"), Ravichandran Namakkal ("Namakkal"), Michael Nearing ("Nearing"), Burton Reckles ("Reckles"), John Robinson ("Robinson"), Donna Ronan ("Ronan"), Remigiusz Rundzio ("Rundzio"), John Sancomb ("Sancomb"), Dan Sutterfield ("Sutterfield"), and Lore VanHouten ("VanHouten").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

To establish personal jurisdiction, a party must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction would be consistent with federal due process requirements. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Personal jurisdiction may be exercised over a nonresident party who has "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Depending on the nature of the contacts between such a party and the forum state, personal jurisdiction may be general or specific.

> b)   General Jurisdiction

General jurisdiction is established when a defendant's contacts with the forum state are " 'so continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler*, 571 U.S. at 137). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.' " *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). Where there is general jurisdiction, a party may "be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

> c)   Specific Jurisdiction

A person who is not subject to general jurisdiction may still be subject to jurisdiction in actions that arise from the specific, forum-related activities of that person. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit has established a three-part test for determining specific jurisdiction:

(1) the defendant must purposefully avail himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;
(2) the claim must arise out of or result from the defendant's forum-related activities; and
(3) exercise of jurisdiction must be reasonable.

*Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If it does so, then the burden shifts to the party contesting jurisdiction to "present a compelling case" that the third prong of reasonableness has not been satisfied. *Id.*

The first element of the test for specific jurisdiction may be satisfied "by either purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.' " *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). Courts generally apply the purposeful availment analysis in connection with contract claims and the purposeful direction analysis in tort actions. *Schwarzenegger*, 374 F.3d at 802. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. Evidence of direction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

generally consists of action taking place outside the forum that is directed at the forum." *Pebble Beach*, 453 F.3d at 1155 (citation omitted).

Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' evidentiary submissions must be resolved in favor of the party asserting jurisdiction for purposes of deciding whether a prima facie case for jurisdiction has been established. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Unocal*, 27 F. Supp. 2d at 1181.

Purposeful direction is evaluated under the three-part "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *See Brayton Purcell*, 606 F.3d at 1128; *Schwarzenegger*, 374 F.3d at 803. "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotations omitted)). The defendant need not have any physical contacts with the forum. *See Schwarzenegger*, 374 F.3d at 803

d)      *Bristol-Meyers Squibb Co. v. Superior Court*

In *Bristol-Meyers*, 137 S. Ct. 1773 (2017), a nationwide group of consumers brought a products liability action in the San Francisco Superior Court against a prescription drug manufacturer. 137 S. Ct. at 1777. Plaintiffs there asserted state law claims based on injuries allegedly caused by a drug produced and sold by the manufacturer. *Id.* The manufacturer, which was incorporated in Delaware and headquartered in New York, argued that the Superior Court lacked specific jurisdiction as to the claims of non-resident plaintiffs. *Id.* The Superior Court concluded that it had such specific jurisdiction, and the California Court of Appeal and California Supreme Court affirmed. *Id.* at 1778. In its opinion, the California Supreme Court applied a "sliding scale approach" to specific jurisdiction, in which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." *Id.*

The matter was then reviewed by the United States Supreme Court. It rejected the approach of the California Supreme Court and concluded that the Superior Court lacked specific jurisdiction over the claims of the non-resident plaintiffs. The Court concluded that there was no "connection between the forum and the specific claims at issue." *Id.* at 1781. It also explained that there was no "adequate link" between California and the claims of the nonresidents when "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781. That other plaintiffs "were prescribed, obtained, and ingested Plavix in California -- and allegedly sustained the same injuries as did the nonresidents" -- was not a sufficient basis for California to "assert specific jurisdiction over the nonresidents' claims." *Id.*

*Bristol-Meyers* expressly states it "concerns the due process limits on the exercise of specific jurisdiction by a State" and that it "leave[s] open the question of whether the Fifth Amendment imposes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1783-84.

       e)      RICO Nationwide Service Provision

18 U.S.C. § 1965(b) provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Section 1964 is part of the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute. The purpose of the "ends of justice" provision is "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir.1986). "The right to nationwide service in RICO suits is not unlimited, however, and the act of merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, No. CV 06-3093 CJC (CWx), 2007 WL 5289737, at *5 (C.D. Cal. Sept. 12, 2007) (citing *Butchers Union*, 788 F.2d at 539). "In order to demonstrate that a Court has jurisdiction over defendants under § 1965(b), the plaintiff must establish (1) that they have sufficiently alleged a multidistrict conspiracy that encompasses the defendants; (2) that the court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (3) that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id.* (citing *Butchers Union*, 788 F.2d at 539). "Once the defendant has challenged the exercise of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction." *Butcher's Union*, 788 F.2d at 538.

       f)      Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

"In a narrow class of 'federal question' cases, the jurisdictional reach of the court is extended by Rule 4(k)(2), 'which functions as a sort of federal long-arm statute.' " *In re Lupron Mktg. and Sales Pracs. Litig.*, 245 F. Supp. 2d 280, 288 (D. Mass. 2003) (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir.1999)). Rule 4(k) provides as follows:

> (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Rule 4(k)(2) has been deemed sufficient to provide personal jurisdiction over foreign defendants in RICO cases, even where the nationwide service provision of 18 U.S.C. § 1965(b) did not apply to those defendants. *See, e.g.*, *Dale v. Banque Alliance S.A.*, No. 02 Civ. 3592 RCCKNF, 2004 WL 2389894, at *7 n.3, at (S.D.N.Y. Oct. 22, 2004) (Although the RICO statute "does not authorize service of process to be effected abroad, it does not prohibit such service . . . and, therefore, the RICO statute is not inconsistent with the provisions of Fed. R. Civ. P. 4(k)(2).").

If the foreign defendant opposing personal jurisdiction in the United States is subject to jurisdiction in any court in the United States, then Rule 4(k)(2) does not apply:

> [A] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

> 2.   Application

> a)   Whether *Bristol-Myers* Applies in This MDL Proceeding

*Cabrera v. Bayer Healthcare, LLC*, held that *Bristol-Myers* does not apply in the context of a class action brought in a federal court. No. LA CV17-08525 JAK, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 2019). Thus, whether the putative class may have members who do not reside in the forum state was not deemed to be material. The weight of recent district court authority in this Circuit and District is consistent with *Cabrera*. *See Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F.Supp.3d 1192, 1208 (C.D. Cal. 2021); *Carranza v. Terminix Int'l Co. Ltd. P'ship*, 529 F. Supp. 3d 1139, 1146 (S.D. Cal. 2021); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1081 (S.D. Cal. 2020); *Sousa v. 7-Eleven, Inc.*, No. 19-CV-2142 JLS, 2020 WL 6399595, at *3 (S.D. Cal. Nov. 2, 2020); *Vallarta v. United Airlines, Inc.*, 497 F.Supp.3d 790, 803 (N.D. Cal. Oct. 26, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-cv-05007-RBL, 2020 WL 1469621, at *2 (W.D. Wash. Mar. 26, 2020); *Choi v. Kimberly-Clark Worldwide, Inc.*, No. SA CV 19-0468-DOC (ADSx), 2019 WL 4894120, at *5 (C.D. Cal. Aug. 28, 2019); *Pascal v. Concentra, Inc.*, No. 19-cv-02559-JCS, 2019 WL 3934936, at *5 (N.D. Cal. Aug. 20, 2019); *McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2019 WL 3006469, at *7 (S.D. Cal. July 10, 2019); *Benitez v. Powerline Funding, LLC*, No. 8:19-cv-00098-JLS, 2019 WL 4284520, at *2 (C.D. Cal. June 6, 2019); *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1037-38 (C.D. Cal. 2019); *Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB, 2019 WL 4422673, at *6 (C.D. Cal. Aug. 7, 2019).

Two circuit courts have been presented with the same issue addressed in *Cabrera. Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020), did not expressly reach the question whether *Bristol-Myers* applies to class actions. However, it found that putative class members are not parties to an action, and "[m]otions to dismiss nonparties for lack of personal jurisdiction are . . . premature" prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

to class certification. 952 F.3d at 298. *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020), concluded that "a major change in the law of personal jurisdiction and class actions" is "not warranted by the Supreme Court's decision in *Bristol-Myers*," because absent members of a putative class are "more like nonparties, and thus there is no need to locate each and every one of them and conduct a separate personal-jurisdiction analysis of their claims." 953 F.3d at 448.

Defendants rely on *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d 1028 (S.D. Cal. 2020), which held that *Bristol-Myers* barred the claims of unnamed, non-resident plaintiffs in a putative nationwide class action. *See* Dkt. 208 at 53; 441 F. Supp. 2d at 1037. However, more persuasive is the conclusion reached by the majority of other courts that have considered *Carpenter, i.e.*, that it is unnecessary to reach the question whether there is "personal jurisdiction over putative claims brought by putative class members who are not yet parties to [an] action." *Noohi v. Kraft Heinz Co.*, No. CV-19-10658-DSF, 2020 WL 5554255, at *5 (C.D. Cal. July 20, 2020); *see Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1188 (N.D. Cal. 2021); *Carranza*, 529 F. Supp. 3d at 1146; *Massaro v. Beyond Meat, Inc.*, No. 3-20-CV-00510-AJB, 2021 WL 948805, at *11 (S.D. Cal. Mar. 12, 2021); *but see Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1012 (S.D. Cal. 2020). Further, there is force to the position that "where a federal court presides over federal litigation, the interstate sovereignty questions raised by *Bristol-Myers*—which involved California state court litigation—are not present." *Carranza*, 529 F. Supp. 3d at 1146 (citing *Sloan v. Gen. Motors LLC*, 287 F. Supp.3d 840, 859 (N.D. Cal. 2018)); *see Massaro*, 2021 WL 948805, at *11 (citing *Sloan*, 287 F. Supp. 3d at 859) ("[T]he due process concerns relating to whether a state court can hail an out-of-state defendant into its court does not exist in a purely federal case."). They also expressly have held that *Bristol-Myers* does not apply to class actions. *Id.*

Defendants have not cited other cases to support a finding that *Bristol-Myers* applies to both class actions brought in a federal court and also to federal, multidistrict litigation. The few courts to have considered the issue in the context of MDL litigation have not applied *Bristol-Myers*. As one recognized, to do so in an MDL action would "implicate very different federalism concerns than those presented" in *Bristol-Myers*. *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020) (citation omitted); *see In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, No. MDL 2996, 2021 WL 2351628, at *2 n.6 (J.P.M.L. June 7, 2021) (declining to revisit *In re Delta Dental Antitrust Litig.*, 2020 WL 7382602, at *2); *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1137 (S.D. Fla. 2019).

Applying *Bristol-Myers* to federal MDL proceedings would "unravel[] more than forty years of MDL jurisprudence." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d at 1380. Requiring personal jurisdiction over all absent nationwide class members also would "significantly limit[]" "the potential transferee fora for a given MDL." *Id.* at 1381. For some "multi-defendant MDLs," "it may be that no district has personal jurisdiction over all parties," in which case, "[i]f all parties and actions cannot be coordinated within an MDL, the efficiency benefits of the MDL may be severely curtailed. Such a profound change in practice is not warranted by *Bristol-Myers* . . ." *Id.*

For the foregoing reasons, *Bristol-Myers* does not apply in this MDL proceeding. The argument that this Court lacks personal jurisdiction over the claims of putative nationwide class members is premature.

b)       Hyundai-Kia Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(1)   <u>HMA and KMA</u>

Plaintiffs contend that Hyundai Motor America, Inc. ("HMA") and Kia Motors America, Inc. ("KMA") are subject to general jurisdiction in California. Dkt. 278 ¶ 144. The Hyundai-Kia Defendants do not challenge this position. *See* Dkt. 219 at 17-19.

Fed. R. Civ. P. 12(h)(1)(B) provides that if a party fails to raise in a Rule 12 motion a defense that is within Rule 12(b)(2)-(5), it waives that defense. One of those defenses is "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The Hyundai-Kia Defendants raised this defense only as to Hyundai Motor Company, Ltd. ("HMC") and Kia Motors Corporation ("KMC"). Dkt. 219 at 17. Because they did not raise it as to HMA or KMA, they have waived their defense as to these two parties. *See Thompson v. Transamerica Life Ins. Co.*, No. 2:18-cv-05422-CAS, 2018 WL 6790561, at *7 (C.D. Cal. Dec. 26, 2018) (citing Fed. R. Civ. P. 12(h) and (g)) (defendant "waived its personal jurisdiction defense with respect to" one of plaintiff's claims "because it omitted this defense in its motion to dismiss"); *Agasino v. Am. Airlines Inc.*, No. 19-CV-03243-LB, 2019 WL 3387803, at *3 (N.D. Cal. July 26, 2019) (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A) (because defendant "moved to dismiss for improper venue but did not move to dismiss for lack of personal jurisdiction," it "waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *AT&T Corp. v. Teliax, Inc.*, No. 16-CV-01914-WHO, 2016 WL 4241910, at *2 (N.D. Cal. Aug. 11, 2016) (citing Fed. R. Civ. P. 12(h)) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.").

For the foregoing reasons, it is appropriate to exercise personal jurisdiction over HMA and KMA. Therefore, the Hyundai-Kia Motion is **DENIED** as to HMA and KMA.

(2)   <u>HMC and KMC</u>

(a)   Personal Jurisdiction Under 18 U.S.C. § 1965(b).

Plaintiffs argue that there is specific personal jurisdiction over HMC and KMC under 18 U.S.C. § 1965(b). Dkt. 282 at 9; Dkt. 285 at 28. Section 1965(b) provides that, in a civil RICO enforcement action brought under 18 U.S.C. § 1964 in any United States district court, if "it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." 18 U.S.C. § 1965(b). The purpose of this portion of the statute is "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union*, 788 F.2d at 539.

"In order to establish personal jurisdiction under Section 1965(b), Plaintiffs must show: (1) the Court has personal jurisdiction over at least one of the participants in the action; (2) 'there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators[';] and (3) the facts show a *single nationwide* RICO conspiracy exists." *Gilbert v. Bank of Am.*, No. C 13-01171, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014) (citing *Butcher's Union*, 788 F.2d at 539).

For the reasons stated below, Plaintiffs have failed to state a claim for RICO conspiracy as to HMC and KMC. "[M]erely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Butcher's Union*, 788 F.2d at 539. Further, even if there were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

sufficient allegations that HMC and KMC engaged in a RICO conspiracy with the other Hyundai-Kia Defendants -- ZF TRW and STMicro -- Plaintiffs have not alleged a single nationwide RICO conspiracy. This makes inadequate their argument that there is specific personal jurisdiction under 18 U.S.C. § 1965(b) as to HMC and KMC.

*Butcher's Union* is consistent with this conclusion. There, the plaintiffs alleged "a nationwide conspiracy created and carried out by defendant lawyers with the four separate employers" that were named as defendants, as well as "four individual conspiracies between the defendant lawyers, a defendant employer, and [] agents" of a union. 788 F.2d at 537. "The district court properly concluded that the complaint did not allege a single nationwide RICO conspiracy" and instead had alleged four separate conspiracies. *Id.* at 538-39. Alleging four separate conspiracies did not provide a sufficient basis under section 1965(b) for personal jurisdiction over the two defendant employers, notwithstanding that each was alleged to have been part of one of the four conspiracies. *Id.* at 539.

District courts have reached the same outcome. *See, e.g.*, *Gilbert*, 2014 WL 4748494, at *1. In *Gilbert*, plaintiffs named three separate groups of entities as defendants. Plaintiffs alleged that all of these defendants were engaged in a RICO enterprise. *Id.* at *2. Two groups of defendants challenged personal jurisdiction. *Id.* *Gilbert* concluded that plaintiffs "fail[ed] to allege any connection between [those two groups]" and "[a]t best" their "allegations might show two separate conspiracies." *Id.* at *5. Because plaintiffs "failed to allege a single RICO conspiracy," there was no personal jurisdiction under section 1965(b). *Id. Accord Doe v. Walmart Inc.*, No. 18-CV-02125-LHK, 2019 WL 499754, at *7 (N.D. Cal. Feb. 8, 2019) (Although the plaintiffs had argued that they had alleged a single nationwide conspiracy, they "at best allege[d] multiple conspiracies . . . , not one unified conspiracy amongst all the Defendants.")

Plaintiffs have not alleged a single conspiracy among all Defendants. Rather, they expressly have alleged that there are several RICO enterprises, and then tie their RICO conspiracy claims to these enterprises. Plaintiffs have not alleged any relationship between or among any Defendants with respect to these enterprises. Instead, they have alleged that each Defendant participated in a distinct enterprise, and not that there is a single nationwide conspiracy among all Defendants. Thus, even assuming that Plaintiffs have stated a claim for RICO conspiracy as to each of the separate, alleged enterprises, that would not be sufficient to establish personal jurisdiction under section 1965(b). That statute requires "a single nationwide RICO conspiracy." *Butcher's Union*, 788 F.2d at 539.

Because Plaintiffs have not alleged a single nationwide conspiracy among Defendants, section 1965(b) does not provide a proper basis for personal jurisdiction over any Defendant.

(b)     Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

Plaintiffs argue that, under Rule 4(k)(2), there is personal jurisdiction over HMC and KMC. Dkt. 295 at 85; *see* Dkt. 282 at 10. As noted, "[r]eferred to as the federal long-arm statute, Rule 4(k)(2) applies when (1) the claim against the defendant arises under federal law; (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction comports with due process. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, MDL No. 2672 CRB, 2017 WL 4890594, at *17 (N.D. Cal. Oct. 30, 2017) (citing *Holland Am. Line*, 485 F.3d at 461 (9th Cir. 2007)); *see Pebble Beach*, 453 F.3d at 1159.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Defendants argue that the stipulation by the foreign Defendants to accept service of process without the formalities of service under the Hague Service Convention (the "Stipulation" (Dkt. 123)) precludes Plaintiffs from asserting that there is personal jurisdiction over the foreign Defendants under Rule 4(k)(2). Dkt. 300 at 13. This argument is unpersuasive. The Stipulation simply places Defendants in the same position as if service had been effected properly under the Hague Service Convention. Therefore, it does not foreclose Plaintiffs' argument that there is personal jurisdiction over the foreign Defendants under Rule 4(k)(2). Nor does the Stipulation estop Defendants from contesting such an argument.

Defendants do not challenge that Plaintiffs have satisfied the first and second requirements of Rule 4(k)(2). *See* Dkt. 300 at 12-14. Plaintiffs' claims against the foreign Defendants arise under RICO. *See Hungerstation LLC v. Fast Choice LLC*, 857 F. App'x 349, 351 (9th Cir. 2021) ("The first element is uncontested because [the plaintiff] brings several claims that arise under federal statutes."). Moreover, Defendants have not asserted that personal jurisdiction is proper in any state. *See Holland Am. Line*, 485 F.3d at 461 (9th Cir. 2007) (citing *ISI Int'l, Inc., v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)) ("holding that '[a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed' " (alteration in original)); *Hungerstation*, 857 F. App'x at 351 (The second element of Rule 4(k)(2) is satisfied because neither defendant "identifies a state where they are subject to general jurisdiction." (citing *Holland Am. Line*, 485 F.3d at 461)). Therefore, the open issue is the third requirement, *i.e.*, that the exercise of personal jurisdiction comports with due process. Dkt. 300 at 13-14; Dkt. 303 at 8-10.

"The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] entities and the forum state, [the court] consider[s] contacts with the nation as a whole." *Holland Am. Line*, 485 F.3d at 462 (citing *Pebble Beach*, 453 F.3d at 1159).

Courts apply a three-part test to determine whether a defendant has sufficient "minimum contacts" with a forum to justify the exercise of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (citation omitted); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

A plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. The burden then shifts to the party contesting jurisdiction to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 371 F.3d at 802. "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

(i)    Purposeful Direction

The first prong of the specific jurisdiction test may be satisfied with facts sufficient to show either "purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.' " *Brayton Purcell*, 606 F.3d at 1128 (quoting *Pebble Beach*, 453 F.3d at 1155). "[A] purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state." *Freestream Aircraft*, 905 F.3d at 605 (citations omitted); *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018); *Schwarzenegger*, 374 F.3d at 802.

Purposeful direction is measured by the tripartite "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 803); *see Hungerstation*, 857 F. App'x at 351 (citing *Dole Food*, 303 F.3d at 1111). The test focuses on the defendant's "contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

With respect to the first prong of *Calder*, an intentional act is one committed with the "intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214. Consideration of the act is limited to whether an "external manifestation of the actor's will" is reflected, and "does not include any of [the act's] results, even the most direct, immediate, and intended." *Schwarzenegger*, 374 F.3d at 806.

With respect to the second prong of *Calder*, "express aiming" requires "something more" than a "foreign act with foreseeable effects in the forum state." *Wash. Shoe v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F. 3d 1064 (9th Cir. 2017). More recent cases have "reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with the resident of the forum." Picot, 780 F.3d at 1214; *see Walden*, 571 U.S. at 279-80.

With respect to the third prong of *Calder*, the inquiry centers on the foreseeability of harm. *Brayton Purcell*, 606 F.3d at 1131 (citing *Yahoo! Inc.*, 433 F.3d at 1206; *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). This requirement is met even if the "bulk of the harm" occurs outside the forum. *Id*.

Plaintiffs argue that purposeful direction is established based on the direct contacts HMC and KMC each had with the United States, as well as the contacts of their U.S.-based subsidiaries. Dkt. 285 at 31. They argue that, "[i]n addition to direct contacts between a foreign defendant and a forum, . . . 'a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.' " Dkt. 282 at 15 (citing *Daimler*, 571 U.S. at 135 n.13).

*Daimler AG v. Bauman* concluded that general jurisdiction over a parent company cannot be established based on an agency relationship with its subsidiary. 571 U.S. at 139. However, it "left open the question of whether an agency relationship might justify the exercise of *specific* jurisdiction." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (emphasis added) (citing *Daimler*, 571 U.S. at 135 n.13).[7]  *Daimler* made clear that the "agency analysis" set forth in *Doe v. Unocal Corp.* ("*Unocal*"), 248 F.3d 915 (9th Cir. 2001), is "irreconcilable" with "*Daimler*'s reasoning." *Williams*, 851 F.3d at 1024. The *Unocal* test "ask[ed] whether the subsidiary 'performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.' " *Id.* (quoting *Unocal*, 248 F.3d at 928). *Williams* explained that, in light of *Daimler*'s rejection of *Doe*'s standard for assessing an agency relationship, "[a]ssuming . . . that some standard of agency continues to be 'relevant to the exercise of specific jurisdiction,' " establishing an agency relationship requires that the "the parent company . . . have the right to substantially control its subsidiary's activities." *Id.* at 1024-1025 (citations omitted).

In light of the foregoing, the appropriate standard for assessing an agency relationship under *Williams* is "substantial control." Applying that standard, *Williams* concluded that the appellants "neither allege[d] nor otherwise show[ed] that [a Japanese company] had the right to control [its U.S.-based subsidiary's] activities in any manner at all," and consequently failed to establish specific jurisdiction. *Id.* at 1025

Plaintiffs argue that "HMC and KMC . . . exercise substantial control over HMA and KMA." Dkt. 285 at 31. This position is supported by several allegations in the CAC, including the following:

- HMC and KMC "have the power to appoint board members to [HMA and KMA], respectively. They have exercised this power to appoint board members to these subsidiaries that they believe will manage the subsidiaries with the principal goal of benefiting them." Dkt. 278 ¶ 188.
- HMC "reportedly maintains a 'Global Command and Control Center' in Korea," which constantly "monitors every operating line at all Hyundai plants in the world, in real time." *Id.* ¶ 190. Further, HMA employees "report on quality issues to [HMC]." *Id.*
- "Senior Korean executives at [HMC] visit Hyundai plants in the United States." *Id.* ¶ 192.
- "Korean speaking 'coordinators' reportedly work at [HMA] and [KMA] and report on their activities to Korean executives at [HMC] and [KMC], respectively, every business day." *Id.* ¶ 193.
- HMC and HMA "share common executives. For example, Jose Munoz is the current Global Chief Operating Officer of [HMC] as well as the President and CEO of Hyundai Motor North America and the President and CEO of [HMA]." *Id.* ¶ 194.

---

[7]  The Toyota Defendants state that *Williams* "h[olds] that the agency theory of specific jurisdiction did not survive" *Daimler*. Dkt. 297 at 17 (citing *Williams*, 851 F.3d at 1023-24). However, *Williams* expressly recognized that *Daimler* "left" this question "open." 851 F.3d at 1023 (citing *Daimler*, 571 U.S. at 135 n.13); *see Heber v. Toyota Motor Sales U.S.A., Inc.*, No. SACV-16-01525 AG, 2018 WL 3104612, at *2 (C.D. Cal. June 11, 2018) (citing *Williams*, 851 F.3d at 1024) ("The Ninth Circuit has left open the question of whether an agency relationship between a parent and a subsidiary might impute the subsidiary's forum contacts to the parent.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Although the present proceedings under Rule 12 do not involve the resolution of facts, the Hyundai-Kia Defendants do not dispute the substance of these allegations. *See generally* Declaration of Dongjune Song in Support of the Hyundai-Kia Motion, Dkt. 219-1; Declaration of Seul Young Lee in Support of the Hyundai-Kia Motion, Dkt. 219-2.

Plaintiffs' allegations are sufficient to establish that HMC substantially controls the activities of HMA, because they show that the relationship between those entities goes beyond the "normal oversight of a parent over a subsidiary." *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021). However, the allegations presented to show an agency relationship between KMC and KMA are summary ones that, if established, would not be sufficient to show such a relationship. Although Plaintiffs allege that KMC closely monitors KMA, "closely monitoring is not controlling." *Id.*

Plaintiffs have sufficiently alleged that HMC substantially controls HMA, and they are in an agency relationship. Consequently, the allegations as to the forum-related activities of HMA can be imputed to HMC for the purpose of assessing personal jurisdiction. The CAC includes many allegations that HMA targeted the United States with its conduct. For example, it alleges that HMA "makes and/or sells automobiles in the United States." Dkt. 278 ¶ 45. To facilitate such U.S.-based sales, it is alleged that HMA has "[a]ffix[ed] misleading certification labels assuring compliance with safety requirements to the Hyundai . . . Class Vehicles and ship[ed] the Hyundai . . . Class Vehicles to dealerships throughout the United States." *Id.* ¶ 595(d). It is further alleged that HMA has [p]articipat[ed] in the creation of Monroney labels that stated the Hyundai . . . Class Vehicles were equipped with Occupant Restraint Systems but did not disclose the related defect in the ACU." *Id.* ¶ 595(e). The CAC also alleges that HMA has "[p]articipat[ed] in the creation of misleading advertising for the Hyundai . . . Class Vehicles that stressed the safety of [those] vehicles and omitted material facts." *Id.* ¶ 595(f). Finally, it is alleged that HMA engaged in extensive efforts to conceal the Alleged Defect from American consumers and NHTSA. *Id.* ¶ 595(g)-(l).

When these allegations are considered together with the allegations as to HMC's own direct contacts with the United States, they are sufficient to show purposeful direction aimed at the United States. The CAC alleges that HMC submitted applications to the U.S. Environmental Protection Agency ("EPA") and registered for federal trademarks, thereby facilitating the sale of Hyundai vehicles in the United States. Dkt. 278 ¶¶ 189, 191. It further alleges that HMC met with ZF TRW at least four times to discuss the Alleged Defect, and determine what should be communicated about it to NHTSA. *Id.* ¶ 197; *cf. Zakikhan*, 2021 WL 4805454, at *4 ("[T]he FAC alleges that HMC and KMC were intimately involved with the decisions to track vehicle malfunctions, determine the cause of the problem, and ultimately to disclose that information to NHTSA and initiate recall efforts. . . . Plaintiffs have adequately alleged that Defendants HMC and KMC have purposefully directed their conduct to the forum."). Therefore, Plaintiffs have sufficiently alleged that HMC's forum-related activities go beyond "[t]he placement of a product into the stream of commerce." *Holland Am. Line*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)).

The allegations in the CAC as to KMC's direct contacts with the United States, are insufficient, by themselves, to establish purposeful direction. The CAC alleges that KMC, like HMC, "regularly submitted applications to the EPA to obtain certification necessary for the sale of [its] vehicles in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

United States." Dkt. 278 ¶ 189. It further alleges that KMC "registered and maintained registrations with the United States government for trademarks associated with its vehicles and parts." *Id.* ¶ 191. Finally, it alleges that KMC, along with HMC, met with ZF TRW "in Korea at least four times for the purpose of discussing the problems with ZF TRW ACUs in Hyundai-Kia Class Vehicles and what to tell NHTSA." *Id.* ¶ 197. Considered independently, these allegations are insufficient to establish purposeful direction by KMC.

(ii)    Relatedness

Courts have "rel[ied] on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard*, 65 F.3d at 1500 (citation omitted). The issue presented is whether, but for the defendant's alleged tortious conduct, the injury to the plaintiffs would not have occurred. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

The Supreme Court recently held that this is only one aspect of the specific jurisdiction inquiry. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."). After *Ford Motor Co.*, "courts must give real consideration to claims that 'relate to' the defendant's forum contacts," even if those contacts are not the 'but for' cause of the dispute. *Clarke v. Dutton Harris & Co.*, No.: 2:20-cv-00160-JAD-BNW, 2021 WL 1225881, at *4 (D. Nev. Mar. 31, 2021); *see also Nomad Glob. Commc'n Sols., Inc. v. Hoseline, Inc.*, CV 20–138–M–DLC, 2021 WL 1400983, at *4 (D. Mont. Apr. 14, 2021) ("[T]he impact of *Ford Motor Co.* on personal jurisdiction jurisprudence is the invalidation of the Ninth Circuit's but-for test for determining relatedness."); *James Lee Constr., Inc. v. Gov't. Emps. Ins. Co.*, No. CV 20-68-M-DWM, 2021 WL 1139876, at *2 (D. Mont. Mar. 25, 2021) ("[A]s the Supreme Court just made clear, such a 'causation-only approach' improperly narrows the inquiry"). *Ford Motor Co.* did not vacate the but-for test as a basis for assessing relatedness; instead, it created an additional basis for doing so. *See* 141 S. Ct. at 1026.

Plaintiffs have shown that, but for HMA's forum-related activities, which can be imputed to HMC, Plaintiffs' alleged injuries would not have occurred. This remains sufficient to address the relatedness inquiry. It is alleged that, but for HMA's concealment of the Alleged Defect from consumers and NHTSA and its misleading certification labels, Monroney labels and advertising, Plaintiffs would not have purchased or leased the Hyundai Class Vehicles and suffered the resulting, alleged injuries. *See, e.g.,* Dkt. 278 ¶ 86 ("Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Hyundai, Hyundai MOBIS, ZF TRW, and/or STMicro did not conceal material information regarding the vehicle's defective ACU."); ¶ 1452 ("The Hyundai and Kia Defendants and Hyundai MOBIS's scheme and concealment of the ACU defect and true characteristics of the Occupant Restraint Systems in the Class Vehicles were material to [] Plaintiffs and [] Class members, as the Hyundai and Kia Defendants and Hyundai MOBIS intended. Had they known the truth, [] Plaintiffs and [] Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.").

Because HMA's forum-related conduct is alleged to be the but-for cause of Plaintiffs' injuries, the relatedness requirement is satisfied.

(iii)    Reasonableness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Once a "plaintiff succeeds in satisfying both of the first two prongs" of the minimum contacts test, "the burden then shifts to the defendant 'to present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). Defendants have not challenged the reasonableness of exercising specific jurisdiction over HMC.

Courts balance the following factors to evaluate whether the exercise of personal jurisdiction would be reasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft*, 905 F.3d at 607 (citing *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).

HMC's direct contacts with the United States are "attenuated." *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). For example, it does not "have offices or other physical presence in the forum." *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1060 (C.D. Cal. 2015). These facts weigh against a finding of reasonableness.

The "burden on the defendant" factor is considered "in light of the corresponding burden on the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986)). Because HMC has agents based in the United States, this "translate[s] into less of a litigation burden than if [they] maintained no physical presence or agent in the United States." *Id.* at 1199. In addition, it is alleged that "[s]enior Korean executives at [HMC] visit Hyundai plants in the United States." Dkt. 278 ¶ 192; *cf. Harris Rutsky*, 328 F.3d at 1132-33 (no undue burden on the defendant to litigate in California where its employees "frequently travel to California on business"). Another mitigating factor is that Jose Munoz, the current Global Chief Operating Officer of HMC, is also alleged to be the current President and CEO of Hyundai Motor North America and of HMA. Dkt. 278 ¶ 194. It is also alleged that HMC routinely files applications with the EPA and registers trademarks with the United States. *Id.* at ¶¶ 189, 191. This warrants the inference that it has some familiarity with the legal system in the United States, and likely has counsel here. It also has retained counsel who are based here. *Cf. Wargaming.net Ltd. v. Blitzteam LLC*, No.: CV-20-02763 CJC, 2021 WL 3619956, at *5 (C.D. Cal. Jan. 20, 2021). As a large corporation with activities throughout the world, the burden on HMC in litigating outside of Korea is limited. *See Core-Vent Corp.*, 11 F.3d at 1489. In contrast, the burden on Plaintiffs, who are individuals, of litigating in South Korea, where HMC is based, would be significant. None of the Hyundai-Kia Plaintiffs is alleged to have any connection to that forum. Given these different burdens, this factor weighs substantially in favor of exercising personal jurisdiction.

Neither party has presented any arguments about "the extent to which the exercise of jurisdiction would conflict with the sovereignty of the defendants' state." *Core-Vent Corp.*, 11 F.3d at 1489. "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

sister state because important sovereignty concerns exist." *Sinatra*, 854 F.2d at 1199 (citations omitted). However, HMC has not presented any evidence that South Korea has an interest in this litigation. In contrast, the United States has an interest given that the alleged harm occurred here, affects residents here, and involves an industry that is subject to federal regulation. *See Quokka Sports, Inc. v. Cup Int'l Ltd.*, 99 F. Supp. 2d 1105, 1113 (N.D. Cal. 1999); *Hassen v. Nahyan*, No. CV-09-01106 DMG, 2010 WL 9538408, at *12 (C.D. Cal. Sept. 17, 2010) (citing Fed. R. Civ. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1159) (in considering reasonableness of specific jurisdiction under Rule 4(k)(2), the United States has an interest in the outcome of litigation because "the relevant forum is the United States, and it is undisputed that Plaintiff is a United States citizen and current resident"). Further, "there is no conflict with the sovereignty of" a foreign country where the plaintiffs "bring [their] case for conduct that was specifically targeted at the United States, based on [the defendant's] alleged violation of U.S. law." *Volkswagen "Clean Diesel,"* 2017 WL4890594, at *18; *cf. Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F. 4th 972, 984 (9th Cir. 2021) ("[T]he resolution of [the plaintiff's] claims will unlikely undermine Australian sovereignty" because it "seeks only the determination and enforcement of its rights under United States trademark law and California unfair competition law and challenges [the defendant's] sales only in the United States.").

The remaining factors also weigh in favor of jurisdiction. To "consider which forum could most efficiently resolve [a] dispute," courts "focus on the location of the evidence and witnesses." *Harris Rutsky*, 328 F.3d at 1133 (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995)). Presumably, many witnesses are located in the United States. However, "this factor is 'no longer weighed heavily given the modern advances in communication and transportation.' " *Id.* (citing *Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir. 1998)). Nevertheless, "[b]ecause [Plaintiffs'] claims rest on the law of California and the United States," as well as the law of several other states, "the United States would provide 'the most efficient judicial resolution of the controversy,' as well as provide [the plaintiff] 'convenient and effective relief.' " *Ayla, LLC*, 11 F. 4th at 984 (citing *Freestream Aircraft*, 905 F.3d at 607).

When claims are brought under domestic law, "even if a foreign court were available to hear [the] litigation, it would be forced to interpret U.S. law." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1094 (C.D. Cal. 2003). Plaintiffs' claims arise under federal and state law. "This fact alone militates heavily in favor of this Court's assertion of jurisdiction." *Batzel v. Smith,* No. CV 00-9590 SVW, 2001 WL 1893843, at *4 (C.D. Cal. June 6, 2001).

Considering all of the factors, Defendants have failed to show that the exercise of jurisdiction over HMC would be unreasonable. Because the other two elements of the minimum contacts test also weigh in favor of the exercise of specific personal jurisdiction over HMC, doing so under Rule 4(k)(2) is warranted.

(c)     Pendent Personal Jurisdiction

Plaintiffs argue that, "[o]nce personal jurisdiction is established over Plaintiffs' RICO claims under . . . Rule 4(k)(2), the Court can exercise pendent personal jurisdiction over Plaintiffs' non-RICO claims." Dkt. 285 at 30.

Under the doctrine of pendent personal jurisdiction, "a court may assert pendent personal jurisdiction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery*, 368 F.3d at 1180 (citations omitted). It "is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id.* 1180-1181. Whether to grant pendent personal jurisdiction "in a particular case is within the discretion of the district court," which may consider "judicial economy, convenience and fairness to litigants." *Id.* (citing *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)) (quotation marks omitted).

Applying *Action Embroidery*, other district courts in California have elected to exercise pendent personal jurisdiction over state-law claims after finding there is specific personal jurisdiction as to the asserted federal claims. *See Facebook, Inc., v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.,* No. 19-cv-01167-JST, 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted,* 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 678 (N.D. Cal. 2020) (citing *Action Embroidery*, 368 F.3d at 1180), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.* ("*Chrysler-Dodge-Jeep Ecodiesel*"), 295 F. Supp. 3d 927, 1030 (N.D. Cal. 2018); *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1173 (S.D. Cal. 2018); *Apollo Educ. Grp., Inc. v. Somani*, No. C-15-1056 EMC, 2015 WL 4880646, at *2, 5 (N.D. Cal. Aug. 13, 2015); Hill v. Opus Corp., No. CV 10-04806-MMM, 2011 WL 13272268, at *12 (C.D. Cal. Apr. 7, 2011).

Because personal jurisdiction over HMC is appropriate as to Plaintiffs' federal claims under Rule 4(k)(2), pendent personal jurisdiction over HMC as to the state-law claims is also warranted. There is a common nucleus of operative facts between these claims and those advanced under RICO.

\*                    \*                    \*

For the foregoing reasons, the Hyundai-Kia Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to KMC, and it is **DENIED** as to HMC.

       c)    Mobis Defendants

       (1)   <u>MPA</u>

       (a)   General Jurisdiction

Plaintiffs assert that Mobis Parts America, LLC ("MPA") is subject to general jurisdiction in California. Dkt. 278 ¶ 144. The Mobis Defendants concede general jurisdiction over the claims against MPA that were filed in this District and then transferred to this MDL. Dkt. 220 at 21. However, they argue that there is no general jurisdiction over the claims against MPA that were originally filed outside of this District, and then transferred here through the MDL process. *Id.* at 21-22.

The parties agree that MPA is incorporated in Delaware and that its principal place of business is in California. Dkt. 278 ¶ 49; Dkt. 208-3 at 2. Because MPA is "at home" in California, *Daimler*, 571 U.S. at 139, California courts would have general jurisdiction over it. However, in an MDL proceeding, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

transferee court "is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transfer court could have." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.* ("*JUUL Labs*"), 497 F. Supp. 3d 552, 674 (N.D. Cal. 2020) (citing *In re Dynamic Random Access Memory (Dram)*, No. C 02-1486 PJH, 2005 WL 2988715, at *2 (N.D. Cal. Nov. 7, 2005)). Thus, there is general jurisdiction over the claims against MPA that were filed in this District and then transferred to this MDL. However, that determination does not apply with respect to those claims against MPA that were filed in the Eastern District of Michigan or the Southern District of Florida and then transferred to this MDL. Because there was no general jurisdiction over MPA in those districts, there is none here.

For these reasons, there is general jurisdiction only over the claims against MPA that were filed in this District before being transferred to this MDL. This includes the claims against MPA brought by the following plaintiffs: Michael Hernandez ("Hernandez"), Bonnie Dellatorre ("Dellatorre"), Amanda Swanson ("Swanson"), Kenneth Ogorek ("Ogorek"), Joseph Fuller, Tina Fuller and Diana King.

(b)      Specific Jurisdiction

As to Plaintiffs' claims against MPA that were not initially filed in this District, Plaintiffs assert that there is specific personal jurisdiction over MPA here because there was such jurisdiction in the transferor courts. Dkt. 286 at 25. Defendants challenge this assertion as to whether there was jurisdiction where the cases were filed, arguing that "MPA does not sell or lease motor vehicles anywhere in the U.S." so its "business operations have no relevance to the claims being asserted[,] and none of Plaintiffs' claims arise from or relate to such activities." Dkt. 220 at 22 (citation omitted); *see* Dkt. 298 at 7-8.

The three-step minimum contacts test for assessing specific personal jurisdiction is discussed above. Plaintiffs' claims against MPA that were not initially filed in this District were first filed in either the Eastern District of Michigan or the Southern District of Florida. Therefore, whether there is specific personal jurisdiction over MPA here as to those claims depends on whether MPA is subject to specific personal jurisdiction in Michigan or Florida, respectively. *See JUUL Labs*, 497 F. Supp. 3d 552, 674 (N.D. Cal. 2020) (citing *In re Dynamic Random Access Memory (Dram)*, 2005 WL 2988715, at *2) (the transferee court in an MDL "is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transfer court could have").

Plaintiffs, as the party asserting jurisdiction, bear the burden of establishing it. *Mattel*, 354 F.3d at 862. Plaintiffs have not made any allegations in the CAC to show that MPA conducted activities that targeted or affected Michigan or Florida. *See* Dkt. 278 ¶¶ 142-53. Therefore, Plaintiffs have presently failed to carry their burden of the establishing specific personal jurisdiction over MPA in Michigan or Florida.

The claims against MPA brought by the following plaintiffs, all of whom brought their claims in the Eastern District of Michigan or the Southern District of Florida, are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, for lack of personal jurisdiction: Bobbi Jo Birk-LaBarge, Brian Collins, Burton Reckles, Carl Miller, Carl Paul Maurilus ("Maurilus"), Dan Sutterfield, Deloras McMurray, Diana King ("King"), Dylan DeMoranville, Gersen Damens, John Colbert, Larae Angel, Lawrence Graziano, Lore VanHouten, Richard Kintzel and Ricky Gerischer.

The rulings as to personal jurisdiction over MPA are summarized in the following table:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| Claims Against MPA | | | | |
|---|---|---|---|---|
| Plaintiff | Class | Originally Filed | General jurisdiction | Specific jurisdiction |
| Amanda Swanson | Illinois State Class | C.D. Cal. | Yes. | N/A |
| Bobbi Jo Birk-LaBarge | Minnesota State Class | E.D. Mich.* | No. | No. |
| Bonnie Dellatorre | California State Class | C.D. Cal. | Yes. | N/A |
| Brian Collins | Illinois State Class | E.D. Mich.* | No. | No. |
| Burton Reckles | Texas State Class | E.D. Mich.* | No. | No. |
| Carl Miller | Indiana State Class | E.D. Mich.* | No. | No. |
| Carl Paul Maurilus | Florida State Class | S.D. Fla. | No. | No. |
| Dan Sutterfield | Missouri State Class | E.D. Mich.* | No. | No. |
| Deloras McMurray | Tennessee State Class | E.D. Mich.* | No. | No. |
| Diana King | Maryland State Class | C.D. Cal. | Yes. | N/A |
| Dragan Jagnjic[8] | Washington State Class | C.D. Cal. | Yes. | N/A |
| Dylan DeMoranville | Massachusetts State Class | E.D. Mich.* | No. | No. |
| Gersen Damens | New Jersey State Class | E.D. Mich.* | No. | No. |
| John Colbert | Florida State Class | E.D. Mich.* | No. | No. |
| Joseph Fuller | Maryland State Class | C.D. Cal. | Yes. | N/A |
| Kenneth Ogorek | Indiana State Class | C.D. Cal. | Yes. | N/A |
| Larae Angel | Pennsylvania State Class | E.D. Mich.* | No. | No. |
| Lawrence Graziano | Florida State Class | E.D. Mich.* | No. | No. |
| Lore VanHouten | California State Class | E.D. Mich.* | No. | No. |
| Michael Hernandez | California State Class | C.D. Cal. | Yes. | N/A |
| Richard Kintzel | Pennsylvania State Class | E.D. Mich.* | No. | No. |
| Ricky Gerischer | Illinois State Class | E.D. Mich.* | No. | No. |

---

[8] This Plaintiff voluntarily dismissed his claims. Dkt. 291.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 |
|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | |

| Tina Fuller | Maryland State Class | C.D. Cal. | Yes. | N/A |
|---|---|---|---|---|

\* The asterisk next to "E.D. Mich." denotes a "direct-file" plaintiff who initially brought his or her claims as part of the CAC but later filed them separately in the Eastern District of Michigan, from which they then were transferred to the MDL. *See* Dkt. 208-4; Dkt. 301 at 9-10. These plaintiffs are deemed to have originally filed their claims in the Eastern District of Michigan, which is thus considered the transferor court for jurisdictional purposes.

(2) <u>Hyundai MOBIS</u>

The CAC alleges that Hyundai MOBIS Co., Ltd. ("Hyundai MOBIS") is a Korean corporation whose principal place of business is South Korea. Dkt. 278 ¶ 48. Plaintiffs assert that there is specific personal jurisdiction over Hyundai MOBIS in this District under 18 U.S.C. § 1965(b) and Rule 4(k)(2). Dkt. 286 at 26.

As discussed above, Plaintiffs have not alleged a single, multidistrict conspiracy as required under section 1965(b). Therefore, section 1965(b) does not provide a basis for exercising personal jurisdiction over Hyundai MOBIS.

Plaintiffs' assertion of specific personal jurisdiction over Hyundai MOBIS under Rule 4(k)(2) also fails. As noted, "Rule 4(k)(2) applies when (1) the claim against the defendant arises under federal law; (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction comports with due process." *Volkswagen "Clean Diesel*," 2017 WL 4890594, at *17 (N.D. Cal. Oct. 30, 2017) (citing *Holland Am. Line*, 485 F.3d at 461).

It is not clear from the allegations of the CAC that Plaintiffs have brought a RICO claim against Hyundai MOBIS. "Nationwide Count 2" for violation of RICO is brought against "the ZF TRW, STMicro, and Hyundai-Kia Defendants." Dkt. 278 ¶ 588. One section of the CAC discusses Hyundai MOBIS together with the Hyundai-Kia Defendants. *See id.* ¶¶ 42-51. In another, it is alleged that "Hyundai MOBIS Co. Ltd. and Mobis Parts America, LLC are the Hyundai MOBIS Defendants (together, 'Hyundai MOBIS'). *Id.* ¶ 43. The Hyundai-Kia Defendants are Hyundai, Kia, and Hyundai MOBIS." *Id.* However, the paragraph above that one alleges, "Although Hyundai MOBIS Co. Ltd. and Mobis Parts America, LLC are not Vehicle Manufacturer Defendants, Plaintiffs discuss them in this section given their close relationship with Hyundai Motor Co., Ltd.; Hyundai Motor America, Inc.; Kia Motors Corporation; and Kia Motors America." *Id.* ¶ 42. Furthermore, the allegations under the heading for "Nationwide Count 2" exclusively identify and discuss "ZF TRW, STMicro, Hyundai, and Kia," which is consistent with the conclusion that the claim is not brought against Hyundai MOBIS. *See id.* ¶¶ 589-95, 598-609.

Even assuming that Plaintiffs have brought a RICO claim against Hyundai MOBIS, they have failed to make sufficient allegations that Hyundai MOBIS purposefully directed its conduct toward the United States. As noted, this is required to establish specific personal jurisdiction under Rule 4(k)(2). *See Holland Am. Line*, 485 F.3d at 461-62.

Most of the allegations that support a finding that HMC and KMC purposefully directed their activities toward the United States do not refer to Hyundai MOBIS. *See* Dkt. 278 ¶¶ 183, 186-87, 189-94. The allegations that Hyundai MOBIS directed its activities toward the United States are sparse. *See id.* ¶¶ 185, 188, 196-98. The most relevant one states that, "[b]etween October 2015 and July of 2016, ZF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

TRW met with Hyundai Motor Co., Ltd., Kia Motors Corporation, Hyundai MOBIS Co., Ltd. in Korea at least four times for the purpose of discussing the problems with ZF TRW ACUs in Hyundai-Kia Class Vehicles and what to tell NHTSA." *Id.* ¶ 197. There is no allegation that Hyundai MOBIS communicated with NHTSA or any other U.S. Government agency. In contrast, there are allegations that HMC and KMC filed applications with the EPA, and registered trademarks with the United States. The allegations of the CAC do not state more than that Hyundai MOBIS placed its products into the stream of commerce such that they may have entered the United States. However, "without more, [this] is not an act purposefully directed toward a forum state." *Holland Am. Line*, 485 F.3d at 459 (citing *Asahi Metal Indus.*, 480 U.S. at 112).

Because the CAC does not adequately state a RICO claim against Hyundai MOBIS and does not sufficiently allege that Hyundai MOBIS purposefully directed its activities toward the United States, there has not been a sufficient showing of specific personal jurisdiction over that defendant under Rule 4(k)(2). Therefore, the MOBIS Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, for lack of personal jurisdiction as to Hyundai MOBIS.

        d)     Toyota Defendants

        (1)     <u>TMNA and TMS</u>

Plaintiffs assert that Toyota Motor North America, Inc. ("TMNA") and Toyota Motor Sales, U.S.A., Inc. ("TMS") are subject to general jurisdiction in California. Dkt. 278 ¶ 144. The Toyota Defendants do not challenge this assertion, and move to dismiss only Toyota Motor Corporation ("TMC"). *See* Dkt. 214 at 27-39.

Fed. R. Civ. P. 12(h)(1)(B) provides that a party that fails to raise in a Rule 12 motion a defense listed in Rule 12(b)(2)-(5) waives that defense. One such defense is "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The Toyota Defendants raise this defense only as to TMC. Dkt. 214 at 27. Because they do not raise it as to TMNA or TMS, they have waived their defense. *See Thompson*, 2018 WL 6790561, at *7 (citing Fed. R. Civ. P. 12(h) and (g)) (defendant "waived its personal jurisdiction defense with respect to" one of plaintiff's claims "because it omitted this defense in its motion to dismiss); *Agasino*, 2019 WL 3387803, at *3 (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A) (because defendant "moved to dismiss for improper venue but did not move to dismiss for lack of personal jurisdiction," it "waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *AT&T Corp. v. Teliax, Inc.*, 2016 WL 4241910, at *2 (citing Fed. R. Civ. P. 12(h)) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.").

Accordingly, personal jurisdiction can be exercised over TMNA and TMS. For that reason, the Toyota Motion is **DENIED** as to TMNA and TMS.

        (2)     <u>TMEM</u>

Plaintiffs assert that Toyota Motor Engineering & Manufacturing North America, Inc. ("TMEM") is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

subject to personal jurisdiction in California. Dkt. 278 ¶¶ 150-51.[9] The Toyota Defendants do not challenge this assertion, but move to dismiss only Toyota Motor Corporation ("TMC"). *See* Dkt. 214 at 27-39.

As noted, Fed. R. Civ. P. 12(h)(1)(B) provides that a party that fails to raise in a Rule 12 motion a defense listed in Rule 12(b)(2)-(5) waives that defense. One such defense is "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The Toyota Defendants raise this defense only as to TMC. Dkt. 214 at 27. Because they do not raise it as to TMEM, they have waived its defense. *See Thompson*, 2018 WL 6790561, at *7 (citing Fed. R. Civ. P. 12(h) and (g)) (defendant "waived its personal jurisdiction defense with respect to" one of plaintiff's claims "because it omitted this defense in its motion to dismiss"); *Agasino*, 2019 WL 3387803, at *3 (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A) (because defendant "moved to dismiss for improper venue but did not move to dismiss for lack of personal jurisdiction," it "waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *AT&T Corp. v. Teliax, Inc.*, 2016 WL 4241910, at *2 (citing Fed. R. Civ. P. 12(h)) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.").

Accordingly, personal jurisdiction can be exercised over TMEM. For that reason, the Toyota Motion is **DENIED** as to TMEM.

(3)     TMC

Plaintiffs assert that there is specific personal jurisdiction over TMC with respect to Plaintiffs' RICO claims against that party, citing 18 U.S.C. § 1965(b) or Rule 4(k)(2). Dkt. 289 at 29-30. They assert in the alternative that there is specific personal jurisdiction over TMC under the traditional minimum contacts analysis. *Id.* at 30-33.

As discussed above, Plaintiffs have failed to establish personal jurisdiction under section 1965(b) because the CAC does not allege a single nationwide conspiracy. *See Butcher's Union*, 788 F.2d at 539.

Whether there is specific personal jurisdiction under Rule 4(k)(2) or through application of the traditional minimum contacts analysis depends on whether Plaintiffs have shown that TMC purposefully directed its activities toward either: (i) the United States, which is the relevant forum for Rule 4(k)(2) analysis; or (ii) Michigan, Florida and/or California, which are the relevant fora for traditional, respective minimum contacts analyses.

(a)     Purposeful Direction Under Fed. R. Civ. P. 4(k)(2)

(i)     Whether the Conduct of the Subsidiaries of TMC Can Be Imputed to It Under an Agency Theory

Plaintiffs argue that "TMC's pervasive contacts" with the United States, "both directly and *through its*

---

[9] It is not clear whether Plaintiffs assert only specific jurisdiction, or both specific and general jurisdiction, over TMEM. *See* Dkt. 278 ¶¶ 150-51. However, because the Toyota Defendants have waived any challenge to personal jurisdiction as a defense, it is unnecessary to resolve this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*wholly-owned U.S. subsidiaries TMS, TEMA, and TMNA*" may be considered in assessing purposeful direction. Dkt. 289 at 30-31 (emphasis added); *see also* Dkt. 282 at 15 (citing *Williams*, 851 F.3d at 1024-25). Defendants disagree. They argue that the only way that the contacts of a subsidiary may be imputed to its parent company for the purpose of assessing specific jurisdiction is if "the parent exercises 'pervasive control over the subsidiary,' " and Plaintiffs have not shown that here. Dkt. 300 at 18 (citation omitted); *see* Dkt. 214 at 36.

Plaintiffs have not made sufficient allegations that, if established, would show that TMC substantially controls its subsidiaries. Plaintiffs attempt to show that TMC "direct[s] and control[s] the actions of its U.S. subsidiaries," Dkt. 289 at 31 (internal citations omitted), by relying on the following allegations:

- "Toyota's 2019 Corporate Governance Report confirms TMC's exercise of tight control over its U.S. subsidiaries." Dkt. 289 at 31-32 (citing Dkt. 278 ¶ 226).
- "TMC has the power to appoint board members of TMNA, TEMA, and TMA, and it has exercised such power to appoint members who will manage the subsidiaries in furtherance of the principal goal of benefitting TMC." *Id.* at 32 (citing Dkt. 278 ¶ 220).
- "The business unit and regional heads of TMC's North American division report to TMC's global HQ in Japan, and TMC's Chief Risk Officer supervises the North American Division's Chief Risk Officer." *Id.* (citing Dkt. 278 ¶¶ 215, 224).
- "TMC . . . authored and enforces a Code of Conduct that employees of all TMC subsidiaries must follow." *Id.* (citing Dkt. 278 ¶ 223).
- "Each year, TMC conducts inspections of subsidiary management by each department." *Id.* (citing Dkt. 278 ¶ 225).

The CAC also alleges that "[TMC] and its American subsidiaries share many key executives." Dkt. 278 ¶ 227.

These allegations, if established, would not show that TMC exercised substantial control over its U.S.-based subsidiaries at the relevant time. Rather, they would "demonstrate[] normal oversight of a parent over a subsidiary rather than control such that the subsidiary . . . was merely doing the bidding of the parent and therefore the subsidiary's contacts with the forum may be attributed to the parent to establish personal jurisdiction." *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2. "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070 (9th Cir. 2015) (citing *Unocal*, 248 F.3d at 925-26). Although "the veil separating affiliated corporations may . . . be pierced to exercise personal jurisdiction over a foreign defendant in certain limited circumstances," *Id.* (citations omitted), they are not present here. One such circumstance is when a parent corporation exerts substantial control over its subsidiary. But "closely monitoring is not controlling," *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2. Plaintiffs have not demonstrated that the parent-subsidiary relationship at issue involves more than close monitoring.

More substantial allegations of control than those made in the CAC have been deemed insufficient to establish an agency relationship. *Aliign Activation Wear, LLC v. lululemon athletica inc.*, No. 2:20-cv-03339-SVW-JEM, 2020 WL 5790418 (C.D. Cal. Aug. 24, 2020), held that the plaintiff failed to show substantial control by a parent company over its subsidiary by alleging the following: (1) the subsidiary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

is wholly owned by the parent; (2) "the two companies jointly benefit from the transactions separately entered into by each of them;" (3) the subsidiary "holds the intellectual property of [the parent] for the sole purpose of shielding the intellectual property rights from [the parent's] wrongdoing;" (4) the parent's "resources are used to support [the subsidiary's] procurement of intellectual property;" and (5) "the two companies share officers, facilities, personnel, and financial resources" and (6) "have interlocking directors and officers." *Id.* at *2.

TMC has responded as follows to Plaintiffs' assertion that it substantially controls TMA: "TMC does not control the distribution of vehicles in the continental United States;" "TMC does not directly own any of the stock of TMS or TEMA;" and "TMC, TMS, TMNA, and TEMA are separate and independent legal entities." Declaration of Hiromitsu Godo in Support of the Toyota Motion ("Godo Decl."), Dkt. 214-3 ¶¶ 14, 18-19. TMC also states that the three entities (1) have "[s]eparate books, financial records, and bank accounts," (2) "maintain their own board of directors, separate from that of TMC," and (3) "maintain their own work force separate from that of TMC." *Id.* ¶¶ 20-22. After considering similar evidence, *Payvovi v. LG Chem America, Inc.*, 491 F. Supp. 3d 597 (N.D. Cal. 2020), found that the plaintiff had failed to establish an agency relationship between a Korean company, LGC Ltd., and its American subsidiary, LGC America. 491 F. Supp. 3d at 601, 603. LGC America argued that the two are "separate legal entities, that LGC America has its own corporate officers, that LGC Ltd. does not pay any of LGC America's employees or expenses, and that LGC Ltd. does not manage the day-to-day activities of LGC America." *Id.* The circumstances here are parallel.

Similarly, *Heber v. Toyota Motor Sales U.S.A., Inc.*, rejected a claimed agency relationship between TMC and TMA. No. CV 16-01525, 2018 WL 3104612, at *3 (C.D. Cal. June 11, 2018), *aff'd in part and rev'd in part on other grounds*, 823 Fed. App'x 512 (9th Cir. 2020). (internal citation omitted). There, the plaintiffs argued that TMC is " 'responsible for the overall design and developmental testing' of Toyota vehicles and that the vehicles are 'manufactured and assembled by various Toyota entities in accordance with' [TMC's] design and engineering specifications." *Id.* (internal citations omitted). The plaintiffs also argued that TMC's " 'control over its subsidiary is implicit' in their parent-subsidiary relationship and that [TMA] is [TMC's] 'authorized importer and distributor' of Toyota vehicles." *Id.* (internal citations omitted). In response, TMC "submit[ted] evidence that it does not market or sell vehicles in the United States or California, that it does not conduct business in California, that it does not ship vehicles to be sold directly into California, and that it does not control the distribution of vehicles [in the] United States." *Id.* In light of the "[p]laintiffs' minimal unsupported agency allegations and [TMC's] significant evidence to the contrary," it was determined there was not an agency relationship between TMC and TMA and that there was not personal jurisdiction over TMC. *Id.*

Although Plaintiffs have presented more than the "minimal unsupported agency allegations", given TMC's "significant evidence to the contrary," *id.*, TMA's allegations do not go beyond the traditional parent-subsidiary relationship to show substantial control. TMC has stated that it "does not import Toyota motor vehicles into the continental United States," and that it does not "market or distribute" or "design or manufacture" "Toyota motor vehicles" here. Dkt. 214-3 ¶¶ 4-5, 12. It also has asserted that "Toyota vehicles that are manufactured in Japan and sold in the continental United States are imported by [TMS]." *Id.* ¶ 4. Finally, it has stated that it "does not maintain a sales force within the continental United States," "does not engage in advertising or promotion of vehicles in the continental United States," "does not target specific marketing at continental United States citizens," and "does not own or lease any real estate in the continental United States." *Id.* ¶¶ 7-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

For the foregoing reasons, Plaintiffs have not shown that TMC substantially controls its subsidiaries. Thus, the activities of TMC's subsidiaries cannot presently be imputed to it for purposes of establishing personal jurisdiction.

<div align="center">

(ii)    Whether TMC Purposefully Directed Its Own
Conduct Toward the United States

</div>

Plaintiffs also assert that TMC's direct contacts with the United States are sufficient to establish personal jurisdiction. The CAC includes the following allegations with respect to TMC purposefully directing its activities toward the United States:

- TMC includes a "division for North America." Dkt. 278 ¶ 215.
- TMC "regularly submitted applications to obtain certification from the EPA that was necessary for the sale of Toyota vehicles in the United States." *Id.* ¶ 221.
- TMC "has registered and maintained registrations with the U.S. government for trademarks associated with its vehicles and parts." *Id.* ¶ 228.

These allegations are not sufficient to show purposeful direction. Although Plaintiffs have established that TMC placed its vehicles into the stream of commerce with the expectation that they would move to the United States, this is not enough to establish purposeful direction. "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal*, 480 U.S. at 112 (O'Connor, J., plurality opinion). Plaintiffs have not met their burden of providing more facts to show that TMC targeted the United States.

*Asahi* explained that one example of "[a]dditional conduct of the defendant [to] indicate an intent or purpose to serve the market in the forum State" is "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* However, *Williams* made clear that, unless the activities of a subsidiary can be imputed to the parent, that the parent merely sent products to its subsidiary for distribution in the United States is not sufficient to establish purposeful direction. 851 F.3d at 1023-24. In that case, the defendants were "YMC, which designed and manufactured [motors] in Japan, and YMC's wholly owned subsidiary, YMUS, which imported and marketed them in California." *Id.* at 1019. Before assessing whether there was an agency relationship between YMC and YMUS, *Williams* found that the appellants "submitted unrebutted evidence in support of their Rule 12(b)(2) motion that YMC does not conduct any activities within the state of California, nor does it target California via marketing or advertising." *Id.* at 1023. Thus, "[t]he only connection Appellants identif[ied] between YMC and California is via YMUS," which prompted an assessment of whether there was an agency relationship between them. *Id.* Were the fact that YMC manufactured motors in Japan that were then sold in California by YMUS sufficient to establish purposeful direction in California, an agency analysis would have been unnecessary in *Williams*.

Similarly, *Huber* found that Plaintiffs had not established purposeful direction by TMC merely by showing that TMS was TMC's " 'authorized importer and distributor' of Toyota vehicles." 2018 WL 3104612, at *3. Because such an allegation was insufficient, *Huber* then assessed whether there was an agency relationship between those defendants, and found that there was not. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The circumstances here are very similar. It has been established that the vehicles designed and manufactured by TMC are imported and sold in the United States by TMA. *See* Dkt. 214-3 ¶¶ 4-6. However, that TMC placed its vehicles into the stream of commerce with the expectation that they would be imported to the United States, in part, by providing those vehicles to TMA to import and distribute them in the United States, is insufficient to establish purposeful direction in the absence of an agency relationship between TMC and TMA.

For the foregoing reasons, Plaintiffs have not presently shown that TMC purposefully directed its conduct toward the United States. Therefore, the Toyota Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, for lack of personal jurisdiction as to TMC.

          e)       Honda Defendants

          (1)      American Honda and Honda R&D Americas

Plaintiffs assert that American Honda Motor Co., Inc. ("American Honda") and Honda R&D Americas, LLC ("Honda R&D Americas") are subject to general jurisdiction in California. Dkt. 278 ¶ 144. The Honda Defendants have not challenged this claim. *See* Dkt. 213 at 15-19.

Fed. R. Civ. P. 12(h)(1)(B) provides that a party that fails to raise in a Rule 12 motion a defense listed in Rule 12(b)(2)-(5) waives that defense. One such defense is "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The Honda Defendants raise this defense only as to Honda Motor Co., Ltd. ("HMC") and Honda R&D Co., Ltd. ("Honda R&D"). Dkt. 213 at 15-19. Because they do not raise it as to American Honda or Honda R&D Americas, they have waived their defense. *See Thompson*, 2018 WL 6790561, at *7 (citing Fed. R. Civ. P. 12(h) and (g)) (defendant "waived its personal jurisdiction defense with respect to" one of plaintiff's claims "because it omitted this defense in its motion to dismiss"); *Agasino,* 2019 WL 3387803, at *3 (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A) (because defendant "moved to dismiss for improper venue but did not move to dismiss for lack of personal jurisdiction," it "waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *AT&T Corp. v. Teliax, Inc.*, 2016 WL 4241910, at *2 (citing Fed. R. Civ. P. 12(h)) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.").

Accordingly, personal jurisdiction is appropriate as to American Honda and Honda R&D Americas. The Honda Motion is **DENIED** as to American Honda and Honda R&D Americas.

          (2)      Honda of America Manufacturing

Plaintiffs assert that Honda of America Manufacturing, Inc. ("Honda Manufacturing") is subject to personal jurisdiction in California. Dkt. 278 ¶¶ 152-53. The Honda Defendants do not challenge this assertion. *See* Dkt. 213 at 15-19.

As noted, Fed. R. Civ. P. 12(h)(1)(B) provides that a party that fails to raise in a Rule 12 motion a defense listed in Rule 12(b)(2)-(5) waives that defense. One such defense is "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The Honda Defendants raise this defense only as to HMC and Honda R&D. Dkt. 213 at 15-19. Because they did not do so as to Honda Manufacturing, it has been waived as to that party. *See Thompson*, 2018 WL 6790561, at *7 (citing Fed. R. Civ. P. 12(h) and (g))

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(defendant "waived its personal jurisdiction defense with respect to" one of plaintiff's claims "because it omitted this defense in its motion to dismiss"); *Agasino* 2019 WL 3387803, at *3 (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A) (because defendant "moved to dismiss for improper venue but did not move to dismiss for lack of personal jurisdiction," it "waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *AT&T Corp. v. Teliax, Inc.*, 2016 WL 4241910, at *2 (citing Fed. R. Civ. P. 12(h)) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.").

Accordingly, there is personal jurisdiction over Honda Manufacturing, and the Honda Motion is **DENIED** as to Honda Manufacturing.

> f)      Honda Motor Co. and Honda R&D Co.

Plaintiffs contend that there is specific personal jurisdiction over Honda Motor Co. and Honda R&D Co. with respect to Plaintiffs' RICO claims against these parties, citing 18 U.S.C. § 1965(b) or Rule 4(k)(2). Dkt. 287 at 31-32. They contend that, in the alternative, there is specific personal jurisdiction over these Defendants under the traditional minimum contacts analysis. *Id.* at 32.

As discussed above, Plaintiffs have failed to establish personal jurisdiction under section 1965(b) because the CAC does not allege a single nationwide conspiracy. *See Butcher's Union*, 788 F.2d at 539.

Whether there is specific personal jurisdiction under Rule 4(k)(2) or through the application of the traditional minimum contacts analysis depends on whether Plaintiffs have shown that Honda Motor Co. and Honda R&D purposefully directed their activities toward either: (i) the United States, the relevant forum for analysis under Rule 4(k)(2); or (ii) Michigan, Florida and/or California, which are the relevant fora for the traditional, respective minimum contacts analyses.

> (a)      Purposeful Direction Under Fed. R. Civ. P. 4(k)(2)

>> (i)      <u>Whether the Conduct of the Subsidiaries of Honda Motor Co. and Honda R&D Co. Can Be Imputed to Them Under an Agency Theory</u>

Plaintiffs argue that Honda Motor Co. "exercise[s] substantial control over" its U.S.-based subsidiaries. Dkt. 287 at 33.[10] Plaintiffs have not made sufficient allegations to support this position. They are far

---

[10] In their opposition to the Honda Motion, Plaintiffs refer frequently to the "Foreign Honda Defendants," *see, e.g.*, Dkt. 287 at 30, but do not define that term. Based on the context in which "Foreign Honda Defendants" is used, it appears to include HMC and Honda R&D. *See* Dkt. 287 at 32 n.17. Although Plaintiffs provide a general discussion of "the pervasive purposeful contacts" of the "Foreign Honda Defendants", *see id.* at 32, all of their specific examples of such contacts apply only to HMC. Accordingly, references by Plaintiffs to the "Foreign Honda Defendants" in the portion of their opposition to the Honda Motion discussing specific personal jurisdiction, Dkt. 287 at 32-35, are construed as referring to HMC unless the specific discussion makes clear that it is referring to both HMC and Honda R&D. Because Plaintiffs' allegations to show substantial control and purposeful direction by HMC are insufficient, the much less substantial allegations as to Honda R&D necessarily fail to meet the relevant standards.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

less detailed than those made by Plaintiffs as to substantial control by TMC. Because the allegations as to TMC have been found to be insufficient as to the other, related parties, those as to Honda Motor Co. necessarily fail to show substantial control as to the allegedly related Honda entities. *Compare* Dkt. 287 at 33, *with* Dkt. 289 at 31-32. Therefore, the conduct of the subsidiaries of Honda Motor Co. cannot be imputed to it in assessing personal jurisdiction.

        (ii)   <u>Whether Honda Motor Co. or Honda R&D Co. Each Purposefully Directed Its Conduct Toward the United States</u>

Plaintiffs have not alleged facts materially different from those deemed insufficient as to TMC in support of the claim of purposeful direction of conduct toward the United States by either Honda Motor Co. or Honda R&D Co. *Compare* Dkt. 287 at 32-35, *and* Dkt. 289 at 31-33.

\*           \*           \*

For the foregoing reasons, the Honda Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, for lack of personal jurisdiction as to Honda Motor Co. and Honda R&D.

        g)    Mitsubishi Defendants

        (1)   <u>MMNA</u>

Plaintiffs assert that Mitsubishi Motors North America, Inc. ("MMNA") is subject to general jurisdiction in California. Dkt. 278 ¶ 144. The Mitsubishi Defendants do not contest such jurisdiction. Dkt. 212 at 15-19. Fed. R. Civ. P. 12(h)(1)(B) provides that a party that fails to raise in a Rule 12 motion a defense listed in Rule 12(b)(2)-(5) waives that defense. One such defense is "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The Mitsubishi Defendants raise this defense only as to Mitsubishi Motors Corporation ("MMC"). Dkt. 212 at 15-19. Because they do not raise it as to MMNA, they have waived their defense as to this party. *See Thompson*, 2018 WL 6790561, at \*7 (citing Fed. R. Civ. P. 12(h) and (g)) (defendant "waived its personal jurisdiction defense with respect to" one of plaintiff's claims "because it omitted this defense in its motion to dismiss"); *Agasino* 2019 WL 3387803, at \*3 (citing Fed. R. Civ. P. 12(g)(2), (h)(1)(A) (because defendant "moved to dismiss for improper venue but did not move to dismiss for lack of personal jurisdiction," it "waived any personal-jurisdiction arguments and is subject to personal jurisdiction here with respect to this case"); *AT&T Corp. v. Teliax, Inc.*, 2016 WL 4241910, at \*2 (citing Fed. R. Civ. P. 12(h)) ("A party waives a defense based on lack of personal jurisdiction by omitting it from its first Rule 12(b) motion.").

For these reasons, it is appropriate to exercise personal jurisdiction over MMNA. Therefore, the Mitsubishi Motion is **DENIED** as to MMNA.

        (2)   <u>MMC</u>

Plaintiffs assert that there is specific personal jurisdiction over MMC with respect to Plaintiffs' RICO claims against that party, citing 18 U.S.C. § 1965(b) and Rule 4(k)(2). Dkt. 288 at 31. They assert in the alternative that there is specific personal jurisdiction over MMC under the traditional minimum contacts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

analysis. *Id.* at 31-32.

For the reasons stated earlier, Plaintiffs have failed to establish personal jurisdiction under section 1965(b) because they have not sufficiently alleged a single nationwide conspiracy. *See Butcher's Union*, 788 F.2d at 539.

Whether there is specific personal jurisdiction under Rule 4(k)(2) or through application of the traditional minimum contacts analysis depends on whether Plaintiffs have shown that MMC purposefully directed its activities toward either: (i) the United States, which is the relevant forum for Rule 4(k)(2) analysis; or (ii) Michigan, Florida and/or California, which are the relevant fora for traditional, respective minimum contacts analyses.

      (a)     Purposeful Direction Under Fed. R. Civ. P. 4(k)(2)

           (i)    <u>Whether the Conduct of the MMC Subsidiary Can Be Imputed to MMC Under an Agency Theory</u>

Plaintiffs argue that "MMC's contacts with and control over its U.S. subsidiary, MMNA, provide sufficient minimum contacts." Dkt. 288 at 31-32. Defendants disagree. They argue that the contacts of a corporate subsidiary can be imputed to its parent company when assessing specific jurisdiction only when "the parent exercises 'pervasive control over the subsidiary,' " and that Plaintiffs have not made that showing. Dkt. 300 at 18 (citation omitted); *see* Dkt. 294 at 13-15.

Plaintiffs have not made sufficient allegations to show that MMC substantially controls MMNA. Those allegations are far less detailed than those made by Plaintiffs as to substantial control by TMC. Because the allegations as to TMC have been found to be insufficient as to the other, related parties, those as to MMC necessarily fail to show substantial control as to MMNA. Compare Dkt. 288 at 32 *with* Dkt. 289 at 31-32. Therefore, the conduct of MMNA cannot be imputed to MMC in assessing personal jurisdiction.

           (ii)    <u>Whether MMC Purposefully Directed Its Own Conduct Toward the United States</u>

Plaintiffs have not alleged facts materially different from those deemed insufficient as to TMC in support of the claim of purposeful direction of conduct toward the United States by MMC. *Compare* Dkt. 288 at 31-33 *with* Dkt. 289 at 31-33

       \*            \*            \*

For the foregoing reasons, the Mitsubishi Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, for lack of personal jurisdiction as to MMC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

h) ZF Defendants

(1) <u>Domestic ZF Defendants</u>

(a) General Jurisdiction

The parties agree that the ZF Defendants based in the United States (the "Domestic ZF Defendants") are subject to general jurisdiction in Michigan. *See* Dkt. 278 ¶¶ 27-31; Dkt. 209 at 19; Dkt. 283 at 28.[11] Plaintiffs contend that this Court "stands in the shoes of the transferor district in Michigan" and that there is general jurisdiction here over the Domestic ZF Defendants just as there is in the Eastern District of Michigan. Dkt. 283 at 28. The Domestic ZF Defendants respond that, by assuming the role of the Michigan court, there is general jurisdiction in this District only over the claims against them that were originally filed in the Eastern District of Michigan and then transferred to this MDL. Dkt. 209 at 19.

In an MDL proceeding, the transferee court "is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transferor court could have." *JUUL Labs*, 497 F. Supp. 3d at 674 (citing *In re Dynamic Random Access Memory (Dram)*, 2005 WL 2988715, at *2). Thus, there is general jurisdiction here over the claims against the Domestic ZF Defendants that were filed in the Eastern District of Michigan and then transferred to this MDL. However, the analysis differs with respect to those claims against the Domestic ZF Defendants that were filed in this District or the Southern District of Florida and then transferred to this MDL. As to those claims, because the transferor courts could not have exercised general jurisdiction over the Domestic ZF Defendants, assuming the role of those transferor courts does not change this outcome.

For these reasons, there is general jurisdiction only over the claims against the Domestic ZF Defendants that were filed in the Eastern District of Michigan before being transferred to this MDL. This includes the claims against the Domestic ZF Defendants brought by the following plaintiffs: Barry Adams, Bobbi Jo Birk-LaBarge, Brian Collins, Burton Reckles, Carl Miller, Constanza Gonzalez, Dan Sutterfield, Danny Hunt, Deloras McMurray, Desiree Meyer ("Meyer"), Donna Ronan, Dorothy Cooks, Dylan DeMoranville, Gary Samouris ("Samouris"), Gersen Damens, James Dean, John Colbert, John Robinson, John Sancomb, Joy Davis, Larae Angel, Lawrence Graziano, Lore VanHouten, Michael Nearing, Paul Huitzil, Ravichandran Namakkal, Remigiusz Rundzio, Richard Kintzel, Ricky Gerischer, Steve Keister ("Keister"), Steve Laveaux, Tatiana Gales and Tiffany Ecklor. Because there is general jurisdiction over these claims, the ZF Motion is **DENIED** as to them.

---

[11] Defendants refer to "the domestic ZF entities," Dkt. 209 at 19, and Plaintiffs to "the Domestic ZF Defendants," Dkt. 283 at 29, but neither defines those terms. In context, it appears that Plaintiffs are referring to a group comprised of those Defendants that are classified as both "ZF TRW Defendants" and "Domestic Defendants" in the CAC. *See* Dkt. 278 ¶¶ 26, 142. These are: ZF Active Safety and Electronics US LLC ("ZF Active Safety"); ZF Passive Safety Systems US Inc. ("ZF Passive Safety"); TRW Automotive Inc. ("TRW Automotive"); ZF TRW Automotive Holdings Corp. ("ZF TRW Automotive Holdings"); and ZF North America, Inc. ("ZFNA") (collectively, "Domestic ZF Defendants"). *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(b)     Specific Jurisdiction

As to the claims against the Domestic ZF Defendants that initially were filed in this District or the Southern District of Florida, because there is no general jurisdiction here, Plaintiffs must show that there is specific jurisdiction.

To establish specific jurisdiction over the claims against the Domestic ZF Defendants that initially were filed in this District, Plaintiffs must show that there is such specific jurisdiction in California under the applicable legal standards. As for those claims that initially were filed in the Southern District of Florida before being transferred to this MDL, Plaintiffs must show that there is specific jurisdiction in Florida. *See JUUL Labs*, 497 F. Supp. 3d at 674 (citing *In re Dynamic Random Access Memory (Dram)*, 2005 WL 2988715, at *2) (the transferee court in an MDL proceeding "is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transferor court could have"). Plaintiffs have not made such a showing as to jurisdiction in California or Florida.

Because this action involves allegations of tortious conduct, the first element of the test for specific jurisdiction is satisfied by a showing of purposeful direction. *Schwarzenegger*, 374 F.3d at 802. Plaintiffs have not pleaded any facts, which if established, would show that the Domestic ZF Defendants purposefully directed relevant conduct toward California or Florida. *See* Dkt. 278 ¶¶ 158-168.

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs begin by asserting that the Domestic ZF Defendants had "direct involvement in investigating crashes in Class Vehicles throughout the U.S., including crashes in California, Florida, and Arizona," Dkt. 283 at 30. However, this does not support a showing of sufficient minimum contacts with those states. The exercise of personal jurisdiction over a defendant in a state is improper if its contacts with that state are " 'random,' 'fortuitous,' or 'attenuated.' " *Burger King*, 471 U.S. at 475 (1985) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)). The CAC alleges that "ZF TRW," which is an undifferentiated amalgam of all ZF Defendants, occasionally investigated a crash in Florida or California. *See, e.g.*, Dkt. 278 ¶¶ 332-34. Such sporadic contact is insufficient under *Burger King*. Consequently, Plaintiffs have failed to establish purposeful direction, or the corresponding sufficient minimum contacts, by the Domestic ZF Defendants.

Plaintiffs next argue:

> [T]he Domestic ZF Defendants had an active role in the Vehicle Manufacturer Defendants' and NHTSA's investigation of the ACU defect, as well as the concealment of that defect in every forum. For example, the Goodwin Declaration admits that the domestic ZF entities "are responsible for communicating with NHTSA concerning purported electrical overstress issues in the ACUs," and "have also made certain filings with NHTSA related to the ACUs," including a Part 573 Safety Recall Report that was part of a recall targeted at Class Vehicles in every state.

Dkt. 283 at 30 (citing Dkt. 209-4 ¶ 10).

This refers to the Declaration of Emanuel Goodman in Support of the ZF Defendants' Motion to Dismiss (the "Goodman Declaration" (Dkt. 209-4)). Emanuel Goodman ("Goodman"), a "Senior Technical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Specialist for ZF Active Safety and Electronics US LLC," declares generally that "ZF's domestic entities . . . are responsible for communicating with NHTSA concerning purported electrical overstress issues in the ACUs." Dkt. 209-4 ¶ 10. That the Domestic ZF Defendants have communicated generally with a national federal regulatory agency does not support a finding that those Defendants purposefully directed their activities at California or Florida. Moreover, Plaintiffs specifically refer to the "Part 573 Safety Recall Report" that is discussed in the Goodman Declaration. Dkt. 283 at 30 (citing Dkt. 209-4 ¶ 10). Goodman refers to, and provides a URL for, such a report (the "Report") that was filed by TRW Automotive Inc. That is the former name of ZF Automotive U.S. Inc. Dkt. 209-4 ¶ 10; *see id.* ¶ 2. The contents of the Report do not support the claim of jurisdiction.

The Report states:

> ZF is submitting this report based on the recall of vehicles by HMA and KMA that incorporate ACUs supplied by ZF. The ASIC in the ACUs may experience EOS damage caused by negative transient voltages generated in the vehicle environment that are outside the vehicle manufacturer's specification during particular front impact events.

"Part 573 Safety Recall Report," NHTSA (Aug. 15, 2018), https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18E043-6125.PDF. Other than citing the California addresses of HMA and KMA, the Report does not refer to California or Florida. Nor does it show contacts with those states by any of the Domestic ZF Defendants.

Further, even if the Report were construed as establishing purposeful direction toward Florida or California by the corporate predecessor of ZF Automotive U.S., the second prong of the minimum contacts test would not be satisfied. It requires that Plaintiffs' "claim . . . be one which arises out of or relates to the defendant's forum-related activities." *Freestream Aircraft*, 905 F.3d at 603. If the forum-related activities of ZF Automotive U.S. were contacting NHTSA about the recall of the Defective ACUs, none of Plaintiffs' claims arises out of such activities. Rather, their claims arise from the alleged concealment of such a defect. The Report does not reflect concealment. Instead, it shows that one of the Domestic ZF Defendants publicly acknowledged to NHTSA that "[t]he ACUs in the recalled vehicles incorporate a certain application specific integrated circuit (ASIC) that may experience electrical overstress (EOS) damage caused by negative transient voltages generated in the vehicle environment that are outside the vehicle manufacturer's specification," which appears to be precisely the defect that Defendants are alleged to have concealed. "Part 573 Safety Recall Report," NHTSA.

Plaintiffs have not shown purposeful direction by the Domestic ZF Defendants toward California or Florida. Accordingly, they have not shown sufficient minimum contacts to allow the exercise of specific jurisdiction over Plaintiffs' claims against those Defendants that initially were filed in this District or the Southern District of Florida. Because there is no specific jurisdiction over such claims, the ZF Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The rulings as to personal jurisdiction over the Domestic ZF Defendants are summarized in the following table:

| Claims Against the Domestic ZF Defendants | | | | | |
|---|---|---|---|---|---|
| **Plaintiff** | **Class** | **Transferor Court** | **Does this Court have general jurisdiction?** | **Does this Court have specific jurisdiction?** | **Disposition of the ZF Motion as to this plaintiff's claims against the Domestic ZF Defendants?** |
| Amanda Swanson | Illinois State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Angela Bowens | Texas State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Ann Harland[12] | Virginia State Class | C.D. Cal. | No | No | VOLUNTARILY DISMISSED |
| Barry Adams | Montana State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Bobbi Jo Birk-LaBarge | Minnesota State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Bonnie Dellatorre | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Brent DeRouen | Texas State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Brian Chaiken | Florida State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE |
| Brian Collins | Illinois State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Burton Reckles | Texas State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Carl Miller | Indiana State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Carl Paul Maurilus | Florida State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE |
| Carolyn Nelson | Minnesota State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Constanza Gonzalez | North Carolina State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Dan Sutterfield | Missouri State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Danny Hunt | Texas State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Dee Roberts | Washington State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |

---

[12] This Plaintiff voluntarily dismissed her claims. Dkt. 291.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 | |
|---|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Deloras McMurray | Tennessee State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Desiree Meyer | South Dakota State Class | E.D. Mich. | Yes | N/A | DENIED |
| Diana King | Maryland State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Donna Ronan | California State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Dorothy Cooks | Florida State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Dragan Jagnjic[13] | Washington State Class | C.D. Cal. | No | No | VOLUNTARILY DISMISSED |
| Dylan DeMoranville | Massachusetts State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Eric Fishon | New York State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Evan Green | Texas State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Fredericka McPherson | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Gary Samouris | Nevada State Class | E.D. Mich. | Yes | N/A | DENIED |
| Gaylynn Sanchez | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Gersen Damens | New Jersey State Class | E.D. Mich.* | Yes | N/A | DENIED |
| James Dean | Oklahoma State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Jan Freyman | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| John Colbert | Florida State Class | E.D. Mich.* | Yes | N/A | DENIED |
| John Robinson[14] | Texas State Class | E.D. Mich.* | Yes | N/A | DENIED |
| John Sancomb | Wisconsin State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Joseph Fuller | Maryland State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Joy Davis | Texas State Class | E.D. Mich.* | Yes | N/A | DENIED |

---

[13] This Plaintiff voluntarily dismissed his claims. Dkt. 291.
[14] This Plaintiff voluntarily dismissed his claims as to the FCA Defendants. Dkt. 228.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | | | Date | February 9, 2022 |
|---|---|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Kenneth Ogorek | Indiana State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Kevin Burns | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Kinyata Jones | Michigan State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Larae Angel | Pennsylvania State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Lawrence Graziano | Florida State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Lore VanHouten | California State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Mark Altier | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Maximillian Accetta | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Michael Hernandez | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Michael Hines | South Carolina State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE |
| Michael Nearing | Colorado State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Moises Senti | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Paul Huitzil | Connecticut State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Ravichandran Namakkal | New York State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Remigiusz Rundzio | California State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Richard Kintzel | Pennsylvania State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Ricky Gerischer | Illinois State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Sam Choc | Florida State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE |
| Steve Keister | Minnesota State Class | E.D. Mich. | Yes | N/A | DENIED |
| Steve Laveaux | California State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Tatiana Gales | Florida State Class | E.D. Mich.* | Yes | N/A | DENIED |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | |

| Tiffany Ecklor | California State Class | E.D. Mich.* | Yes | N/A | DENIED |
|---|---|---|---|---|---|
| Tina Fuller | Maryland State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Tonya McNeely | North Carolina State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |

\* The asterisk next to "E.D. Mich." denotes a "direct-file" plaintiff who initially brought his or her claims as part of the CAC but later filed them separately in the Eastern District of Michigan, from which they then were transferred to the MDL. *See* Dkt. 208-4; Dkt. 301 at 9-10.

(2)     Foreign ZF Defendants

Plaintiffs assert that there is specific personal jurisdiction over the Foreign ZF Defendants with respect to the RICO claims against those parties, citing 18 U.S.C. § 1965(b) or Rule 4(k)(2). Dkt. 283 at 29. In the alternative they argue that there is specific personal jurisdiction over the Foreign ZF defendants based on the application of the traditional minimum contacts analysis. *Id.* at 31-32.

As discussed above, Plaintiffs have failed to establish personal jurisdiction under section 1965(b) because the CAC does not allege a single nationwide conspiracy. *See Butcher's Union*, 788 F.2d at 539.

Whether there is specific personal jurisdiction under Rule 4(k)(2) or through application of the traditional minimum contacts analysis depends on whether Plaintiffs have shown that the Foreign ZF Defendants purposefully directed their activities toward either: (i) the United States, which is the relevant forum for Rule 4(k)(2) analysis; or (ii) Michigan, Florida and/or California, which are the relevant fora for traditional, respective minimum contacts analyses.

(a)     Purposeful Direction Under Fed. R. Civ. P. 4(k)(2)

(i)     Whether the Conduct of the Subsidiaries of the Foreign ZF Defendants Can Be Imputed to Them Under an Agency Theory

Plaintiffs argue that the contacts of the subsidiaries of the Foreign ZF Defendants can be imputed to those Defendants. Dkt. 282 at 31-33.

Plaintiffs have not made sufficient allegations that, if established, would show that the Foreign ZF Defendants substantially control their subsidiaries. ZF Holdings B.V. is "the direct parent and 100% owner of ZF North America, Inc.," Dkt. 278 ¶ 32; Declaration of Michael Way in Support of the ZF Defendants' Motion to Dismiss ("Way Decl."), Dkt. 209-5 ¶ 9. With respect to ZF Holdings B.V., Plaintiffs' allegations are far less detailed than those made by Plaintiffs as to substantial control by TMC. *Compare* Dkt. 283 at 32-33 *with* Dkt. 289 at 31-32. Because the allegations as to TMC have been found to be insufficient as to the other, related parties, those as to ZF Holdings B.V. necessarily fail to show substantial control as to ZF North America, Inc. Therefore, the conduct of ZF North America, Inc., cannot be imputed to ZF Holdings B.V. in assessing personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

With respect to ZF Friedrichshafen AG, it is alleged to be "the direct parent and 100% owner of ZF Holdings B.V." Dkt. 278 ¶ 33; Way Decl., Dkt. 209-5 ¶ 10. However, it is not alleged that this subsidiary, ZF Holdings B.V., had any direct contacts with the United States. Thus, even assuming that Plaintiffs could establish that ZF Friedrichshafen AG substantially controls ZF Holdings B.V., with the latter's contacts with the United States imputed to the former, doing so would not support the claim of specific jurisdiction over the parent. Moreover, whether the subsidiary of ZF Holdings B.V. has engaged in conduct directed at the United States does not affect the jurisdictional analysis as to ZF Friedrichshafen AG. Plaintiffs have not asserted, and the relevant case law does not support, that the activities of a subsidiary of one entity can be imputed to the parent of that entity, i.e., the "grandparent" of the subsidiary.

For the foregoing reasons, Plaintiffs have not presently shown that the Foreign ZF Defendants substantially control their subsidiaries. Therefore, the agency theory does not support a showing of purposeful direction.

<div style="margin-left:2em">

(ii) <u>Whether the Foreign ZF Defendants Purposefully Directed Their Own Conduct Toward the United States</u>

</div>

Plaintiffs also argue that they have shown purposeful direction by the Foreign ZF Defendants toward the United States, because their "allegations detail the Foreign ZF Defendants' role in the design, development, manufacture, and testing of the ZF ACUs, and the placement of the ZF ACUs in the stream of commerce with the intention of causing sales and leases of Class Vehicles with ZF component parts in the transferor jurisdictions." Dkt. 283 at 31 (citing Dkt. 278 ¶¶ 7, 12, 275-279, 283; *id.* ¶¶ 158-59). The cited allegations do not include such statements. To the extent these allegations discuss the "design, development, manufacture, . . . testing" and distribution of the ACUs, they consistently attribute such activities to "ZF TRW." *See* Dkt. 278 ¶¶ 12, 276-79. Alleging that "ZF TRW," which is comprised of seven distinct corporate entities, took part in designing, manufacturing and distributing a product, without specifying whether those activities took place in, or were directed toward the United States, falls short of establishing purposeful direction by any one of those entities. Such an allegation is particularly deficient given that elsewhere the CAC alleges that one of the seven "ZF TRW" entities, ZF Active Safety Electronics US, "designed the ACUs in Illinois and manufactured them in Michigan." Dkt. 209-4 ¶ 5. Thus, a reasonable inference can be drawn that, when Plaintiffs allege that "ZF TRW" was involved in designing, manufacturing and distributing the Defective ACUs, they are referring to ZF Active Safety Electronics US, and not to any of the Foreign ZF Defendants.

Plaintiffs have not presently shown that the Foreign ZF Defendants purposefully directed their conduct toward the United States. Therefore, they have failed to establish personal jurisdiction as to these entities.

<div style="text-align:center">*          *          *</div>

For the foregoing reasons, the ZF Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to ZF Friedrichshafen AG and ZG Holdings B.V.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

i)     FCA Defendants

(1)     <u>FCA US LLC</u>

(a)     General Jurisdiction

Plaintiffs assert that FCA US LLC ("FCA US") is subject to general jurisdiction in Michigan. Consequently, they contend that there is general jurisdiction in the District to which the case was transferred. Dkt. 278 ¶ 144. The FCA Defendants respond that, by assuming the role of the Michigan court, this Court may find and apply general jurisdiction only over the claims against FCA US LLC that were originally filed in the Eastern District of Michigan before being transferred to this MDL. Dkt. 230 at 21-23; Dkt. 302 at 7.

The parties agree that FCA US is a corporation incorporated in Delaware whose principal place of business is in Michigan. Dkt. 278 ¶ 54; Dkt. 208-3 at 2. Because FCA US is "at home" in Michigan, *Daimler AG*, 571 U.S. at 138-139, Michigan courts would be able to exercise general jurisdiction over it.

In an MDL proceeding, the transferee court "is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transfer court could have." *JUUL Labs*, 497 F. Supp. 3d at 674 (citing *In re Dynamic Random Access Memory (Dram)*, No. C 02-1486 PJH, 2005 WL 2988715, at *2 (N.D. Cal. Nov. 7, 2005)). Thus, there is general jurisdiction in this District over the claims against FCA US LLC that were filed in the Eastern District of Michigan and then transferred to this MDL. However, that determination does not apply with respect to those claims against FCA US LLC that were filed in this District or the Southern District of Florida and then transferred to this MDL. Because there was no general jurisdiction over FCA US in those districts, there is none here.

For these reasons, there is general jurisdiction only over the claims against FCA US that were filed in the Eastern District of Michigan before being transferred to this MDL. This includes the claims against FCA US brought by the following plaintiffs: Barry Adams, Constanza Gonzalez, Desiree Meyer, James Dean, James Kneup, Remigiusz Rundzio, Steve Keister and Steve Laveaux.[15] Therefore, the FCA Motion is **DENIED** as to FCA US, but only with respect to the claims brought by Adams, Gonzalez, Meyer, Dean, Kneup, Robinson, Rundzio, Keister and Laveaux.

(b)     Specific Jurisdiction

There are several remaining plaintiffs -- Fishon, Accetta and Senti -- who brought claims against FCA US in this District. There is no general jurisdiction here over FCA US with respect to such claims. To establish personal jurisdiction in California over FCA US as to these claims requires the application of the traditional minimum contacts test.

Plaintiffs argue that "FCA US . . . admits that it 'designed, tested, assembled, marketed, distributed and sold' FCA Class Vehicles that were sold in California, which demonstrates that it has minimum contacts with the transferor jurisdiction of California." Dkt. 290 at 29 (internal citations omitted). Defendants

---

[15]  The claims against FCA US brought by Robinson would be included in this category if he had not voluntarily dismissed those against the FCA Defendants. *See* Dkt. 229 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

respond that, as to Fishon, Accetta and Senti, Plaintiffs cannot satisfy the requirement for specific jurisdiction, *i.e.*, that the plaintiff's alleged injury arise from the defendant's alleged forum-related conduct, because "[t]here is simply no connection to anything FCA US did in California for" these plaintiffs, "who all purchased their vehicles outside of California." Dkt. 302 at 8; *see* Dkt. 230 at 22-23.

Moreover, contrary to Plaintiffs' assertion, FCA US contends that it "does not design, manufacture, or assemble any motor vehicles in the state of California." Declaration of James Bielenda in Support of the FCA Motion ("Bielenda Decl."), Dkt. 230-3 ¶ 3. Although FCA US concedes that it operates in California, it contends that its "operations in . . . California are limited to two facilities (a single parts distribution center and a single business center) which, together, employ less than 200 employees (i.e., less than .31% of its total United States workforce of 63,000+ employees)." *Id.* ¶ 4.

Assuming, without deciding, that these contacts with California demonstrate purposeful direction by FCA US, Plaintiffs have not met their burden of showing that the claims of Fishon, Accetta and Senti are related to these California-based contacts. Accetta and Senti purchased their Class Vehicles in Florida, and Fishon purchased his in New York. Dkt. 278 ¶¶ 102, 104, 107. Plaintiffs have not provided any evidence to show that the alleged injuries of Accetta, Senti and Fishon relate to any contacts of FCA US with California. Absent such a showing, Plaintiffs cannot establish specific jurisdiction over FCA US in California with respect to these claims.

This case is distinguishable from *Ford Motor Co.* It arose from two accidents involving Ford vehicles, one in Montana and the other in Minnesota; Ford was sued separately in those two states. 141 S. Ct. at 1023. "Ford moved to dismiss the two suits for lack of personal jurisdiction," arguing that "the state court (whether in Montana or Minnesota) had jurisdiction only if [Ford's] conduct in the State had given rise to the plaintiff 's claims." *Id.* Ford argued that the requisite "causal link existed . . . only if the company had designed, manufactured, or—most likely—sold in the State the particular vehicle involved in the accident," which was not alleged in either case. *Id.* Ford had designed each of the vehicles in Michigan and manufactured one in Kentucky and the other in Canada. *Id.* In addition, the vehicles had been originally sold by Ford in Washington and North Dakota." *Id.*

Ford argued that, it "sold the specific cars involved in these crashes outside" Minnesota and Montana, "with consumers later selling them to the States' residents," so "the plaintiffs' claims 'would be precisely the same if Ford had never done anything in Montana and Minnesota.' " *Id.* at 1029. According to Ford, this showed that its contacts with the forum states were not related to the plaintiffs' claims. *Id.*

*Ford Motor Co.* explained that it is "far from clear" "that without the company's Montana or Minnesota contacts the plaintiffs' claims would be just the same." *Id.* It then stated:

> For the owners of these cars might never have bought them, and so these suits might never have arisen, except for Ford's contacts with their home States. Those contacts might turn any resident of Montana or Minnesota into a Ford owner—even when he buys his car from out of state. He may make that purchase because he saw ads for the car in local media. And he may take into account a raft of Ford's in-state activities designed to make driving a Ford convenient there: that Ford dealers stand ready to service the car; that other auto shops have ample supplies of Ford parts; and that Ford fosters an active resale market for its old models."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Id.* Although "jurisdiction in cases like these" should not "ride on the exact reasons for an individual plaintiff's purchase, . . . "the possibilities listed above—created by the reach of Ford's Montana and Minnesota contacts—underscore the aptness of finding jurisdiction here, even though the cars at issue were first sold out of state." *Id.*

In this case, there is no suggestion that FCA US ever engaged in any contacts with New York or Florida. It is not alleged that Fishon, Senti or Accetta had any relationship with the forum state of California. Thus, unlike in *Ford Motor Co.*, it actually is safe to assume that, without FCA US's California contacts, "the plaintiffs' claims would be just the same." Those contacts have no bearing on the decisions by Fishon, Senti and Accetta, made in Florida and New York, respectively, to buy FCA Class Vehicles. For that reason, Plaintiffs cannot show that the claims of Fishon, Senti and Accetta "arise out of or relate to" FCA US's contacts with California. *Id.* at 1025 (citing *Bristol-Myers*, 137 S. Ct. at 1780)).

Therefore, the FCA Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to FCA US, but only with respect to the claims brought by Fishon, Accetta and Senti.

The rulings as to personal jurisdiction over FCA US are summarized in the following table:

| Claims Against FCA US | | | | | |
|---|---|---|---|---|---|
| **Plaintiff** | **Class** | **Where were these claims originally filed?** | **Have Plaintiffs demonstrated the Court has general jurisdiction?** | **Have Plaintiffs demonstrated the Court has specific jurisdiction?** | **Disposition of the FCA Motion as to this plaintiff's claims against FCA US?** |
| Ann Harland[16] | Virginia State Class | C.D. Cal. | N/A | N/A | VOLUNTARILY DISMISSED |
| Barry Adams | Montana State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Constanza Gonzalez | North Carolina State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Desiree Meyer | South Dakota State Class | E.D. Mich. | Yes | N/A | DENIED |
| Eric Fishon | New York State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| James Dean | Oklahoma State Class | E.D. Mich.* | Yes | N/A | DENIED |
| James Kneup | Arizona State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Jan Freyman[17] | Florida State Class | C.D. Cal. | N/A | N/A | VOLUNTARILY DISMISSED |

---

[16] This Plaintiff voluntarily dismissed her claims. Dkt. 291.
[17] This Plaintiff voluntarily dismissed his claims. Dkt. 333.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 | |
|---|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | | |

| John Robinson[18] | Texas State Class | E.D. Mich.* | Yes | N/A | DENIED |
|---|---|---|---|---|---|
| Maximillian Accetta | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Moises Senti | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Remigiusz Rundzio | California State Class | E.D. Mich.* | Yes | N/A | DENIED |
| Steve Keister | Minnesota State Class | E.D. Mich. | Yes | N/A | DENIED |
| Steve Laveaux | California State Class | E.D. Mich.* | Yes | N/A | DENIED |

\* The asterisk next to "E.D. Mich." denotes a "direct-file" plaintiff who initially brought his or her claims as part of the CAC but later filed them separately in the Eastern District of Michigan, from which they then were transferred to the MDL. *See* Dkt. 208-4; Dkt. 301 at 9-10.

(2)   FCA NV

Plaintiffs argue that there is specific personal jurisdiction over FCA NV under 18 U.S.C. § 1965(b). Dkt. 282 at 9; Dkt. 290 at 30. As discussed above, because Plaintiffs have failed to allege a single nationwide conspiracy, the assertion of personal jurisdiction under section 1965(b) necessarily fails.

Plaintiffs argue in the alternative that there is specific personal jurisdiction over FCA NV under Rule 4(k)(2) or through the traditional minimum contacts analysis. Dkt. 290 at 31-34. This depends on whether Plaintiffs have shown that the Foreign ZF Defendants purposefully directed their activities at the United States, the relevant forum for Rule 4(k)(2) analysis, or Michigan and California, the relevant fora for traditional minimum contacts analysis.

(a)   Purposeful Direction Under Fed. R. Civ. P. 4(k)(2)

(i)   Whether the Conduct of FCA US Can Be Imputed to FCA NV Under an Agency Theory

Plaintiffs argue that the contacts of FCA US with the United States can be imputed to FCA NV. Dkt. 290 at 32; Dkt. 282 at 32-33. The FCA Defendants' response is limited: "[c]ourts no longer recognize agency as a basis for jurisdiction in the parent/subsidiary context," because the " 'alter ego' test" should be applied instead. Dkt. 302 at 6 (citing *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017); *Williams*, 851 F.3d at 1024).

*Williams* expressly stated that *Daimler* "left open the question of whether an agency relationship might justify the exercise of specific jurisdiction." 851 F.3d at 1023 (citing *Daimler*, 571 U.S. at 134 n.13); *see Heber v. Toyota Motor Sales U.S.A., Inc.*, No. SA-CV-16-01525 AGJ, 2018 WL 3104612, at *2 (C.D. Cal. June 11, 2018) (citing *Williams*, 851 F.3d at 1024) ("The Ninth Circuit has left open the

---

[18] This Plaintiff voluntarily dismissed his claims against the FCA Defendants. Dkt. 229.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

question of whether an agency relationship between a parent and a subsidiary might impute the subsidiary's forum contacts to the parent."). *Williams* explained that the effect of *Daimler* was to invalidate the "agency analysis" of the Ninth Circuit from *Unocal*. *Williams*, 851 F.3d at 1024 (discussing *Unocal*, 248 F.3d at 928). Going forward, "under any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Id.* (citations omitted). Thus, since *Williams*, the standard for whether an agency relationship between parent and subsidiary is a basis for personal jurisdiction is whether the principal substantially controls its subsidiary. *See Wood v. N. Am. Van Lines, Inc.*, No. 8-20-CV-02092-JLS, 2021 WL 3124155, at *4 (C.D. Cal. July 22, 2021) (applying "substantial control" standard); *Aliign Activation Wear*, 2020 WL 5790418, at *2 (same); *AirWair Int'l Ltd. v. Pull & Bear Espana SA*, No. 19-CV-07641-SI, 2020 WL 2113833, at *4 (N.D. Cal. May 4, 2020) (same); *Essex Cap. Corp. v. Garipalli*, No. CV-17-04055-BRO, 2017 WL 11634362, at *7 (C.D. Cal. Aug. 18, 2017) (same).

Plaintiffs have made several allegations that FCA NV substantially controls FCA US, and that this warrants imputing the contacts of the latter to the former. The CAC alleges that FCA NV, "together with FCA US LLC and its other subsidiaries, operates and holds itself out to the public as a single 'Group' whose day to day operations is managed by a team called the Group Executive Council, which is comprised of employees from both [FCA] N.V. and FCA US LLC." Dkt. 278 ¶ 203. It further alleges that FCA NV "operates a website on behalf of the 'Group,' with a web address that references the 'Group': www.fcagroup.com." *Id.* ¶ 205. On this website, it is alleged that FCA NV "advertises . . . that

> Fiat Chrysler Automobiles (FCA) designs, engineers, manufactures and sells vehicles and related parts, services and production systems worldwide. The Group operates over 100 manufacturing facilities and over 40 R&D centers; and it sells through dealers and distributors in more than 130 countries.

*Id.*

The CAC also alleges that this website "illustrates the unity of identity among the 'Group' by referring to, among other things, 'our people, throughout all FCA facilities worldwide,' 'our production processes,' and 'our teams,' " and "contains a section entitled 'Our Plants,' which lists 18 plants in the United States." *Id.* Finally, the CAC alleges that FCA NV "exercises ultimate control over FCA US LLC marketing and advertising through, among other things, [FCA NV's] Commercial Committee, which oversees matters related to sales and marketing." *Id.* ¶ 213.

In Plaintiffs' opposition to the FCA Motion, they contend for the first time that FCA NV and FCA US have the same chief executive officer, Michael Manley. Dkt. 290 at 32. The FCA Defendants do not dispute this allegation. Dkt. 302 at 6.

The FCA Defendants do, however, dispute Plaintiffs' contention that FCA NV substantially controls FCA US. They contend that "FCA US LLC . . . is an indirect subsidiary of Fiat Chrysler Automobiles N.V. FCA US has one member, FCA North America Holdings LLC, a Delaware limited liability company. FCA North America Holdings LLC in turn has one member, FCA Holdco B.V., a Netherlands company. FCA Holdco B.V. is in turn wholly owned by Fiat Chrysler Automobiles, N.V." Declaration of Giorgio Fossati in Support of the FCA Motion ("Fossati Decl."), Dkt. 230-2 ¶ 7. They then state:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Fiat Chrysler Automobiles N.V. is solely a holding company. It has no sales or production. It does not design, test, manufacture, market, sell, purchase or distribute any vehicles or their component parts. Its activities consist primarily of owning an interest in other entities, various finance and executive management functions, approving major strategic transactions, managing relationships with public shareholders, issuing and receiving dividends, paying taxes, and supporting legal functions.

*Id.* ¶ 8. "While performing high-level functions such as those listed above, Fiat Chrysler Automobiles N.V. does not direct or control the day-to-day business activities of FCA US." *Id.* ¶ 9. Finally, the FCA Defendants aver that "[FCA NV] and FCA US observe corporate formalities," "do not commingle assets," and "maintain separate bank accounts, books and financial statements." *Id.* ¶ 10.

Although Plaintiffs have presented substantial allegations to support the claim that FCA NV substantially controls FCA US, the FCA Defendants have presented competing evidence through a declaration that disputes many of Plaintiffs' key allegations of jurisdictional facts. On a motion to dismiss, "[u]ncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800; *Boschetto*, 539 F.3d at 1015. However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo*, 647 F.3d at 1223.

Plaintiffs request that they be granted leave to conduct jurisdictional discovery "if the [C]ourt has any doubt over its jurisdiction over any defendant." Dkt. 282 at 20. Jurisdictional discovery is "appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). Consequently, Plaintiffs have shown that it would be appropriate to permit focused, jurisdictional discovery.

Therefore, a ruling on the FCA Motion as to FCA NV is **DEFERRED**. On or before February 21, 2022, the parties shall meet and confer regarding jurisdictional discovery and shall complete this discovery within 45 days; provided, however, this is without prejudice to an application to extend the deadline for jurisdictional discovery for good cause shown. Disputes as to the scope or timing of discovery shall be presented to Magistrate Judge Abrams. The parties shall comply with Judge Abrams's rules for discovery motions, available at https://www.cacd.uscourts.gov/honorable-paul-l-abrams.

      j)    STMicro Defendants

      (1)    <u>STMicroelectronics Inc.</u>

      (a)    General Jurisdiction

Defendants argue, and Plaintiffs do not contest, that there is no general jurisdiction over STMicro Inc. Dkt. 280 at 19-20; Dkt. 284 at 25-26. This is correct. It is undisputed that STMicro Inc. is a Delaware corporation whose principal place of business is in Texas. Dkt. 278 ¶ 40; Dkt. 280 at 20. Therefore, any general jurisdiction would be in Delaware and Texas. None of the claims in this action was filed in either of these states.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs assert in the CAC that there is general jurisdiction in this District over STMicro Inc., because there would have been general jurisdiction in Texas *had STMicro Inc. hypothetically been sued there*. Dkt. 278 ¶ 148. This position lacks merit. General jurisdiction over a defendant cannot be established simply because that defendant could have been sued in a state where there is such jurisdiction, with that hypothetical case then potentially transferred by the JPML to the MDL. A transferee court "is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transferor court could have." *JUUL Labs*, 497 F. Supp. 3d at 674 (citing *In re Dynamic Random Access Memory (Dram)*, 2005 WL 2988715, at *2. This is not the same as assuming the jurisdiction that would have applied to a hypothetical transferor court. *Cf. Picot v. Weston*, 780 F.3d 1206, 1215 n.3 (9th Cir. 2015) ("A plaintiff may not create personal jurisdiction over one claim by arguing that jurisdiction might be proper over a different, hypothetical claim not before the court.") (citations omitted).

(b)      Specific Jurisdiction

Plaintiffs filed claims against STMicro Inc. in this District, the Eastern District of Michigan and the Southern District of Florida, which were transferred to this MDL. Therefore, Plaintiffs have the burden of establishing that there is specific jurisdiction over STMicro Inc. in Michigan as to the claims filed there, in Florida as to the claims filed there, and in California as to the claims filed here. *See JUUL Labs*, 497 F. Supp. 3d at 674 (citing *In re Dynamic Random Access Memory (Dram)*, 2005 WL 2988715, at *2).

Plaintiffs have failed to establish specific jurisdiction in Florida. Plaintiffs do not allege any contacts between STMicro Inc. and Florida beyond that STMicro Inc. manufactured and placed into the stream of commerce a product that foreseeably could end up there. Dkt. 278 ¶ 147. This is an insufficient basis for establishing specific jurisdiction, which requires purposeful direction. *See Schwarzenegger*, 374 F.3d at 802. "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc.*, 485 F.3d at 459 (citing *Asahi Metal Indus.*, 480 U.S. at 112).

The CAC includes one material allegation connecting STMicro Inc. to California: "STMicro's website lists 12 offices in the United States through which it conducts sales and other business, including one in Santa Clara, California." Dkt. 278 ¶ 177. The STMicro Defendants do not deny this. Instead, they argue that "Plaintiffs do not explain how [STMicro's California-based offices or activities] have anything to do with their claims here." Dkt. 280 at 23.

Plaintiffs have not established that there is a relationship between their claims and the location of an STMicro Inc. office in California. It is alleged that STMicro Inc. manufactured the DS84 ASIC, Dkt. 278 ¶ 146, in Michigan. There is no parallel allegation about conduct in California that could be linked to Plaintiffs' alleged injuries.

A review of the current allegations does not show that it is plausible that STMicro Inc.'s limited California-based activities have any relationship to Plaintiffs' alleged injuries. The CAC alleges that the DS84 ASIC is a "component part of the ACU" that STMicro Inc. "custom-manufactured . . . for ZF TRW." *Id.* ¶ 9. ZF TRW is alleged to have been the only manufacturer to use the DS84 ASIC. *Id.* Plaintiffs assert that "ZF" has "state[d] that it purchased the DS84 ASICs from STMicro's Michigan office." Dkt. 284 at 27 (citing Dkt. 209-4 ¶ 4). ZF Active Safety and Electronics US then allegedly used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

the DS84 ASIC to make ACUs for installation in the Class Vehicles, Goodman Decl., Dkt. 209-4 ¶ 6. These ACUs were "designed . . . in Michigan and manufactured . . . in Illinois." *Id.* ¶ 5. There is no reference to California, or conduct here, in this discussion of those causal events that allegedly resulted in the DS84 ASIC being installed in the Defective ACUs. Therefore, it is reasonable to conclude that STMicro Inc.'s California-based activities, to the extent they constitute purposeful direction, are not related to Plaintiffs' claims.

Because Plaintiffs have not established general or specific jurisdiction over STMicro Inc. in California or Florida, there is no personal jurisdiction over STMicro with respect to the claims against it that were filed initially in this District or the Southern District of Florida and subsequently transferred to this MDL. *See JUUL Labs*, 497 F. Supp. 3d at 674 (citing *In re Dynamic Random Access Memory (Dram)*, 2005 WL 2988715, at *2). For that reason, the STMicro Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to STMicro Inc., but only with respect to the claims of the following plaintiffs: Swanson, Bowens, Dellatorre, DeRouen, Chaiken, Maurilus, Nelson, Roberts, King, Fishon, Green, McPherson, Sanchez, Fuller, Ogorek, Burns, Jones, Altier, Accetta, Hernandez, Hines, Senti, Choc, Fuller and McNeely.

With respect to the claims that initially were filed in the Eastern District of Michigan, Plaintiffs have established purposeful direction by STMicro Inc. toward Michigan. The CAC alleges that STMicro Inc. "has a permanent office in Livonia, Michigan," and that this office is listed "as the address for the manufacturer of the DS84 ASIC contained in the ZF TRW ACUs at issue in this litigation." Dkt. 278 ¶ 40; *see also* Dkt. 284 at 25. It also alleges that "STMicro custom-manufactured the DS84 ASIC for ZF TRW," and that component is "the brain of the ZF TRW ACUs at issue in this litigation." Dkt. 278 ¶ 9.

The STMicro Defendants have not contested that STMicro Inc. manufactured the DS84 ASIC in Michigan. *See* Dkt. 280 at 23; Dkt. 301 at 12. The STMicro Defendants did not present any evidence on behalf of STMicro Inc., but only did so for STMicroelectronics N.V. and STMicroelectronics International N.V. *See generally* Declaration of Denise Tuinfort in Support of the STMicro Motion ("Tuinfort Decl."), Dkt. 241-1; Declaration of Claudio Elia in Support of the STMicro Motion ("Elia Decl."), Dkt. 241-2.

Establishing a permanent office in a state, and manufacturing a product there, constitutes purposeful direction for the purpose of establishing specific jurisdiction in that state. "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Co.*, 485 F.3d at 459 (citing *Asahi Metal Indus.*, 480 U.S. at 112). However, by establishing that STMicro Inc. had a permanent office in Michigan and manufactured a product there, Plaintiffs have shown "more" than the mere "placement of a product into the stream of commerce." *Asahi*, 480 U.S. at 112. Plaintiffs' allegations of STMicro Inc.'s activities in Michigan satisfy the required showing of the kind of "[a]dditional conduct" that "indicate[s] an intent or purpose to serve the market" there. *Id.*

Plaintiffs also have satisfied the relatedness requirement. After *Ford Motor Co.*, establishing but-for causation is no longer strictly necessary. However, Plaintiffs here have done so. The CAC alleges that the DS84 ASIC is an integral part of what makes the subject ZF TRW ACUs defective, and that "ZF TRW ACUs with the DS84 ASIC" are "much more vulnerable to bursts of electricity than are other ACUs, including other ZF TRW ACUs that do not include the DS84 ASIC." Dkt. 278 ¶ 10; *see also id.* ¶ 146. Therefore, the Alleged Defect, which is advanced as the cause of Plaintiffs' claimed injuries, would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

not exist but for STMicro Inc.'s manufacturing of the DS84 ASIC, which is alleged to have been performed for ZF TRW, in Michigan. For these reasons, Plaintiffs have established that STMicro Inc.'s Michigan-related contacts are sufficiently tied to Plaintiffs' claims.

Because Plaintiffs have satisfied "both of the first two prongs" of the minimum contacts test, the burden shifted to Defendants " 'to present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King*, 471 U.S. at 476-78). Defendants have not presented any evidence or arguments to support such a position as to the reasonableness of exercising specific jurisdiction over STMicro Inc.

The seven-factor balancing test for evaluating reasonableness weighs in favor of establishing specific jurisdiction over STMicro Inc. Its "purposeful interjection" in Michigan is substantial. *Freestream Aircraft*, 905 F.3d 597, 607 (9th Cir. 2018) (citing *Paccar Int'l*, 757 F.2d at 1064-65). STMicro Inc. has a permanent presence there. *Cf. Falco*, 96 F. Supp. 3d at 1060 ("[T]he purposeful interjection . . . does not appear to be particularly strong" where the defendant "does not, for example, have offices or other physical presence in the forum state."). The burden on STMicro Inc. of defending against litigation in Michigan is minimal. STMicro has a permanent office and some operations there. Michigan has a significant interest in adjudicating a dispute arising from an alleged defect in a product that is manufactured there. *See Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (citing *McGee v. International Life Insurance Co.*, 78 S.Ct. 199, 201 (1957))). Adjudicating this dispute in Michigan, where witnesses and evidence are likely to be located, would be efficient. *See Harris Rutsky*, 328 F.3d at 1133 (to "consider which forum could most efficiently resolve [a] dispute," courts "focus on the location of the evidence and witnesses." (citing *Caruth,* 59 F.3d at 129)).

Considering all of these factors, it would not be unreasonable to exercise jurisdiction over STMicro Inc. Because the other two elements of the minimum contacts test also weigh in favor of establishing personal jurisdiction, specific jurisdiction exists over Plaintiffs' claims against STMicro Inc. in Michigan. Therefore, there is specific jurisdiction over those claims in this proceeding.

For the foregoing reasons, the STMicro Motion is **DENIED** as to STMicro Inc. with respect to the claims of the following plaintiffs: Adams, Birk-LaBarge, Collins, Reckles, Miller, Gonzalez, Sutterfield, Hunt, McMurray, Meyer, Ronan, Cooks, DeMoranville, Samouris, Damens, Dean, Colbert, Robinson, Sancomb, Davis, Angel, Graziano, VanHouten, Nearing, Huitzil, Namakkal, Rundzio, Kintzel, Gerischer, Keister, Laveaux, Gales and Ecklor.

The rulings as to personal jurisdiction over STMicro Inc. are summarized in the following table:

| Claims Against STMicro Inc. | | | | | |
|---|---|---|---|---|---|
| Plaintiff | Class | Where were these claims originally filed? | Have Plaintiffs demonstrated the Court has general jurisdiction? | Have Plaintiffs demonstrated the Court has specific jurisdiction? | Disposition of the STMicro Motion as to this plaintiff's claims against STMicro Inc.? |
| Amanda Swanson | Illinois State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 |
|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | |

| | | | | | |
|---|---|---|---|---|---|
| Angela Bowens | Texas State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Ann Harland[19] | Virginia State Class | C.D. Cal. | N/A | N/A | VOLUNTARILY DISMISSED |
| Barry Adams | Montana State Class | E.D. Mich.* | No | Yes | DENIED |
| Bobbi Jo Birk-LaBarge | Minnesota State Class | E.D. Mich.* | No | Yes | DENIED |
| Bonnie Dellatorre | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Brent DeRouen | Texas State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Brian Chaiken | Florida State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE |
| Brian Collins | Illinois State Class | E.D. Mich.* | No | Yes | DENIED |
| Burton Reckles | Texas State Class | E.D. Mich.* | No | Yes | DENIED |
| Carl Miller | Indiana State Class | E.D. Mich.* | No | Yes | DENIED |
| Carl Paul Maurilus | Florida State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE |
| Carolyn Nelson | Minnesota State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Constanza Gonzalez | North Carolina State Class | E.D. Mich.* | No | Yes | DENIED |
| Dan Sutterfield | Missouri State Class | E.D. Mich.* | No | Yes | DENIED |
| Danny Hunt | Texas State Class | E.D. Mich.* | No | Yes | DENIED |
| Dee Roberts | Washington State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Deloras McMurray | Tennessee State Class | E.D. Mich.* | No | Yes | DENIED |
| Desiree Meyer | South Dakota State Class | E.D. Mich. | No | Yes | DENIED |
| Diana King | Maryland State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Donna Ronan | California State Class | E.D. Mich.* | No | Yes | DENIED |
| Dorothy Cooks | Florida State Class | E.D. Mich.* | No | Yes | DENIED |
| Dragan Jagnjic[20] | Washington State Class | C.D. Cal. | N/A | N/A | VOLUNTARILY DISMISSED |
| Dylan DeMoranville | Massachusetts State Class | E.D. Mich.* | No | Yes | DENIED |
| Eric Fishon | New York State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Evan Green | Texas State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |
| Fredericka McPherson | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE |

[19] This Plaintiff voluntarily dismissed her claims. Dkt. 291.
[20] This Plaintiff voluntarily dismissed his claims. Dkt. 291.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | | Date | February 9, 2022 | |
|---|---|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Gary Samouris | Nevada State Class | E.D. Mich. | No | Yes | DENIED | |
| Gaylynn Sanchez | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Gersen Damens | New Jersey State Class | E.D. Mich.* | No | Yes | DENIED | |
| James Dean | Oklahoma State Class | E.D. Mich.* | No | Yes | DENIED | |
| Jan Freyman[21] | Florida State Class | C.D. Cal. | N/A | N/A | VOLUNTARILY DISMISSED | |
| John Colbert | Florida State Class | E.D. Mich.* | No | Yes | DENIED | |
| John Robinson[22] | Texas State Class | E.D. Mich.* | No | Yes | DENIED | |
| John Sancomb | Wisconsin State Class | E.D. Mich.* | No | Yes | DENIED | |
| Joseph Fuller | Maryland State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Joy Davis | Texas State Class | E.D. Mich.* | No | Yes | DENIED | |
| Kenneth Ogorek | Indiana State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Kevin Burns | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Kinyata Jones | Michigan State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Larae Angel | Pennsylvania State Class | E.D. Mich.* | No | Yes | DENIED | |
| Lawrence Graziano | Florida State Class | E.D. Mich.* | No | Yes | DENIED | |
| Lore VanHouten | California State Class | E.D. Mich.* | No | Yes | DENIED | |
| Mark Altier | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Maximillian Accetta | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Michael Hernandez | California State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Michael Hines | South Carolina State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE | |
| Michael Nearing | Colorado State Class | E.D. Mich.* | No | Yes | DENIED | |
| Moises Senti | Florida State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Paul Huitzil | Connecticut State Class | E.D. Mich.* | No | Yes | DENIED | |
| Ravichandran Namakkal | New York State Class | E.D. Mich.* | No | Yes | DENIED | |
| Remigiusz Rundzio | California State Class | E.D. Mich.* | No | Yes | DENIED | |
| Richard Kintzel | Pennsylvania State Class | E.D. Mich.* | No | Yes | DENIED | |

---

[21] This Plaintiff voluntarily dismissed his claims. Dkt. 333.
[22] This Plaintiff voluntarily dismissed his claims as to the FCA Defendants. Dkt. 228.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 |
|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Ricky Gerischer | Illinois State Class | E.D. Mich.* | No | Yes | DENIED | |
| Sam Choc | Florida State Class | S.D. Fla. | No | No | GRANTED WITHOUT PREJUDICE | |
| Steve Keister | Minnesota State Class | E.D. Mich. | No | Yes | DENIED | |
| Steve Laveaux | California State Class | E.D. Mich.* | No | Yes | DENIED | |
| Tatiana Gales | Florida State Class | E.D. Mich.* | No | Yes | DENIED | |
| Tiffany Ecklor | California State Class | E.D. Mich.* | No | Yes | DENIED | |
| Tina Fuller | Maryland State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |
| Tonya McNeely | North Carolina State Class | C.D. Cal. | No | No | GRANTED WITHOUT PREJUDICE | |

\* The asterisk next to "E.D. Mich." Denotes a "direct-file" plaintiff who initially brought his or her claims as part of the CAC but later filed them separately in the Eastern District of Michigan, from which they then were transferred to the MDL. *See* Dkt. 208-4; Dkt. 301 at 9-10.

> (2)  STMicroelectronics N.V. and STMicroelectronics International N.V.

Plaintiffs assert that there is specific personal jurisdiction over STMicroelectronics N.V. and STMicroelectronics International N.V. with respect to Plaintiffs' RICO claims against those parties, citing 18 U.S.C. § 1965(b) and Rule 4(k)(2). Dkt. 284 at 26, 28-29. In the alternative, they contend that there is specific personal jurisdiction over these Defendants under the traditional minimum contacts analysis. *Id.* at 26, 29-31.

For the reasons stated earlier, Plaintiffs have failed to establish personal jurisdiction under section 1965(b) because they have not sufficiently alleged a single nationwide conspiracy. *See Butcher's Union*, 788 F.2d at 539.

Whether there is specific personal jurisdiction under Rule 4(k)(2) or through application of the traditional minimum contacts analysis depends on whether Plaintiffs have shown that these Defendants purposefully directed its activities toward either: (i) the United States, which is the relevant forum for Rule 4(k)(2) analysis; or (ii) Michigan, Florida and/or California, which are the relevant fora for traditional, respective minimum contacts analyses.

> (a)  Purposeful Direction Under Rule 4(k)(2)

> (i)  Whether the Conduct of STMicro Inc. Can Be Imputed to STMicro N.V. and STMicro International N.V. Under an Agency Theory

Plaintiffs argue that STMicro Inc.'s contacts with the United States can be imputed to STMicro N.V. and STMicro International N.V. because those entities "exert substantial control" over STMicro Inc. Dkt. 284 at 29-30; *see* Dkt. 282 at 15-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs have not made sufficient allegations to show that that STMicro N.V. and STMicro International N.V. substantially control STMicro Inc. Those allegations are far less detailed than those made by Plaintiffs as to substantial control by TMC. Because the allegations as to TMC have been found to be insufficient as to the other, related parties, those as to STMicro N.V. and STMicro International N.V. necessarily fail to show substantial control as to STMicro Inc. Compare Dkt. 284 at 29-31 *with* Dkt. 289 at 31-32. Therefore, the conduct of STMicro Inc. cannot be imputed to STMicro N.V. and STMicro International N.V. in assessing personal jurisdiction.

        (ii)     <u>Whether STMicro N.V. and STMicro International N.V Purposefully Directed Their Own Conduct Toward the United States</u>

Plaintiffs have not alleged any facts to show that STMicro N.V. and STMicro International N.V. purposefully directed their own activities toward the United States. The CAC alleges that "STMicroelectronics N.V., either directly or through its wholly owned subsidiaries, designs, develops, manufactures, markets, and sells a broad range of products, including ASICs, throughout the world, including in the United States, this District, and Transferor Jurisdictions." Dkt. 278 ¶ 171. This allegation, if deemed true, establishes that STMicro N.V. places its products into the stream of commerce "with the expectation that they will be purchased by consumers in" the United States. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). However, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112. Moreover, STMicro N.V. disputes this allegation, and claims that it "does not make, market, distribute, or sell products or services in the United States of America." Tuinfort Decl. ¶ 5.

The CAC also alleges that "STMicro[] N.V.'s 2019 Annual Report states that it had 761 employees in the United States in 2019." Dkt. 178 ¶ 178. STMicro N.V. nevertheless contends that it "has no employees in California, Michigan, Florida, New York, Washington, Alabama, or anywhere else in the United States." Tuinfort Decl., Dkt. 241-1 ¶ 11. As a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Mavrix Photo*, 647 F.3d at 1223, Plaintiffs' allegation that STMicro N.V. has employees in the United States does not establish purposeful direction.

Plaintiffs have not made sufficient allegations to establish that STMicro N.V. or STMicro International N.V. purposefully directed its conduct toward the United States.

            *                   *                   *

For the foregoing reasons, the STMicro Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to STMicro N.V. and STMicro International N.V.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

    B.      Fed. R. Civ. P. 12(b)(6) Motion

        1.    <u>Legal Standards</u>

            a)      Failure to State a Claim

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading that states a claim must state facts sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557) (internal quotation marks and citations omitted).

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1900). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1900), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

            b)      Applicable State and Federal Law

When a case is transferred under 28 U.S.C. § 1404(a), "the transferee court must follow the choice-of-law rules of the transferor court." *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir. 1993) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)); *see* § 9:18. Choice of law in the transferee court, Multidist Lit Man § 9:18 ("The [Judicial] Panel [on Multidistrict Litigation] has recognized that the transferee court will be obligated to apply the law the transferor forum would apply.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

2.    <u>Application</u>

a)    RICO Claims

Plaintiffs bring six claims alleging violations of RICO, 18 U.S.C. §§ 1961 *et seq.* Dkt. 278 ¶¶ 566-699. These "[n]ationwide" RICO claims are as follows:

- Nationwide Count 1: Violation of RICO, on behalf of the Nationwide Class against the ZF TRW and STMicro Defendants;
- Nationwide Count 2: Violation of RICO, on behalf of the "Hyundai-Kia Subclass" against the ZF TRW, STMicro and Hyundai-Kia Defendants;
- Nationwide Count 3: Violation of RICO, on behalf of the "FCA Subclass" against the ZF TRW, STMicro and FCA Defendants;
- Nationwide Count 4: Violation of RICO, on behalf of the "Toyota Subclass" against the ZF TRW, STMicro and Toyota Defendants;
- Nationwide Count 5: Violation of RICO, on behalf of the "Honda Class" against the ZF TRW, STMicro and Honda Defendants; and
- Nationwide Count 6: Violation of RICO, on behalf of the "Mitsubishi Class" against the ZF TRW, STMicro and Mitsubishi Defendants.

*Id.* Defendants have moved to dismiss all six counts for failure to state a claim. *See* Dkt. 208.

Plaintiffs allege that Defendants have violated RICO in violation of 18 U.S.C. § 1962(c) and (d). Subsection (b) provides that it is

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Subsection (d) provides that it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* § 1962(d).

To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Sedima*, 473 U.S. at 496-97). RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). "Racketeering activity" is any of the predicate acts listed in 18 U.S.C. § 1961(1). *Id.* § 1961(1).[23]

---

[23]   When considering federal claims, a transferee court in the Ninth Circuit is bound by the Circuit's precedent. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) (citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)); *see also* Choice of law in the transferee court, Multidistrict Lit Man § 9:18 ("For federal question cases, the courts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

A "pattern" "requires the commission of at least two acts of racketeering activity" within a ten-year period, *id.* § 1961(5), although "[t]he Supreme Court has concluded that Congress had a 'fairly flexible concept of a pattern in mind,' " *United States v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To allege a pattern, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose an [implicit or explicit] threat of continued criminal activity." *H.J.*, 492 U.S. at 239 (emphasis in original).

RICO should be "read broadly" and "liberally construed." *Sedima*, 473 U.S. at 498 (internal quotation marks omitted) (citing *United States v. Turkette*, 452 U.S. 576, 586-87 (1981))

(1)    Enterprise

The RICO definition of "enterprise" includes two types of associations: "The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.' " *United States v. Turkette*, 452 U.S. 576, 581-82 (1981) (citing 18 U.S.C. § 1961(4)). Plaintiffs claim that Defendants participated in an association-in-fact enterprise. To plead such an enterprise, Plaintiffs must present facts sufficient to satisfy the *Turkette* requirements: (a) a common purpose for (b) an ongoing organization (c) which functions as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (citing *Turkette*, 452 U.S. at 583); *see also Boyle v. United States*, 556 U.S. 938, 946, (2009). "[T]he definition of a RICO enterprise has 'wide reach' and is to be 'liberally construed to effectuate its remedial purposes.' " *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (citing *Boyle*, 556 U.S. 938, 944-45 (2009)).

Defendants argue that Plaintiffs' allegations fail to show that Defendants associated for a common purpose. Dkt. 208 at 30, Dkt. 299 at 12-13.

(a)    Common Purpose

Plaintiffs allege six different association-in-fact RICO enterprises (the "Enterprises"):

1. the "ACU Enterprise," which consists of ZF and STMicro (Dkt. 278 ¶¶ 509-10);
2. the "Hyundai-Kia Enterprise," which consists of ZF, STMicro, Hyundai and Kia (*id.* ¶ 590);
3. the "FCA Enterprise," which consists of ZF, STMicro and FCA (*id.* ¶ 612);
4. the "Toyota Enterprise," which consists of ZF, STMicro and Toyota (*id.* ¶ 634);
5. the "Honda Enterprise," which consists of ZF, STMicro and Honda (*id.* ¶ 657); and

---

should give close consideration to the transferor court's law, but that law is not binding on the transferee court; in that instance, the transferee is bound only by the law of the transferee circuit and the Supreme Court." (citing *Korean Air Lines Disaster*, 829 F.2d at 1175)); *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 104 (C.D. Cal. 2007) ("Following the D.C. Circuit's decision [in *Korean Air Lines Disaster*] circuit and district courts, including the Ninth Circuit, have uniformly applied the law of the transferee circuit in MDL proceedings involving federal law. . . . The Court follows the approach mandated by *Newton* and *Korean Air Lines Disaster*. Therefore, the Court will give the precedent of transferor circuits 'close consideration,' but the Court is only bound by Ninth Circuit and Supreme Court precedent." (citing, *inter alia*, *Newton*, 22 F.3d at 1460)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

6. the "Mitsubishi Enterprise," which consists of ZF, STMicro and Mitsubishi (*id.* ¶ 680).

Plaintiffs have pleaded sufficient facts to allege that the constituent entities of each of the Enterprises "have associated for 'a common purpose of engaging in a course of conduct.' " *Odom*, 486 F.3d at 552 (citing *Turkette*, 452 U.S. at 583).

The CAC alleges that ZF and STMicro, acting as the ACU Enterprise, had the common purpose of "mislead[ing] consumers and NHTSA concerning the existence, nature, and scope of the defect with ZF TRW ACU's installed in the Class Vehicles," in order to "maximize their revenue by selling as many defective ZF TRW ACUs . . . to Vehicle Manufacturer Defendants as possible." Dkt. 278 ¶ 569. It further alleges that ZF and STMicro also sought to "avoid[] or limit[] the substantial costs and reputational harms associated with breaching warranties to the Vehicle Manufacturer Defendants" and avoid "having to assist with recalling the Class Vehicles." *Id.*

Similarly, the CAC alleges that each of the other Enterprises shared the common purpose of "mislead[ing] consumers and NHTSA concerning the existence, nature, and scope of the defect with ZF TRW ACUs installed in the [respective Vehicle Manufacturer Defendant's] Class Vehicles." *See id.* ¶¶ 569, 590-91, 612-13, 634-35, 657-58, 680-81. They allegedly did so in order to "maximize[] their revenue by selling as many [defective vehicles] as possible and avoiding or limiting the substantial costs associated with recalling the [defective vehicles] and remedying the defective ZF TRW ACUs." *Id.* ¶ 569.

The CAC includes several allegations that the common purpose of each Enterprise included avoiding or minimizing recalls of the corresponding Class Vehicles by misleading consumers and NHTSA about the Defective ACUs. For example, as to the ACU Enterprise, the CAC alleges that ZF shared with STMicro information about "specific field incidents where ACUs in Class Vehicles had failed due to EOS," and similarly that STMicro "consult[ed] with [ZF] concerning observed evidence of EOS in Class Vehicles." *Id.* ¶¶ 574-75; *see also id.* ¶ 299. The CAC further alleges that both ZF and STMicro participated in decisions to add protective components to some of the Class Vehicles with ACUs containing the DS84 ASIC. Dkt. 278 ¶ 585; *but see id.* ¶¶ 328-29 (omitting STM in describing a 2012 decision to change the Hyundai-Kia Class Vehicles). It is also alleged that ZF and STMicro "[c]onceal[ed] that the Class Vehicles were equipped with defective ZF TRW ACUs that were vulnerable to EOS," and "[c]onceal[ed] information about the existence, nature, and scope of the defect from NHTSA and the public." Dkt. 278 ¶¶ 574-75. Finally, the CAC alleges that, "[w]hen forced to acknowledge serious problems with the ACUs . . . , [ZF] and [STMicro] . . . agreed to obscure and minimize the defect by misleadingly blaming other parts, such as writing in the front-end of the vehicle," when "[i]n reality, they knew the defective ZF TRW ACUs were uniquely vulnerable to EOS." *Id.* ¶ 571. These allegations support a reasonable inference that ZF and STMicro shared a common purpose of misleading consumers and NHTSA as to the existence of a defect in the ACUs.

As to the Hyundai-Kia Enterprise, the CAC alleges that ZF reported to Hyundai and Kia "observations consistent with EOS" following a number of crashes between 2011 and 2017. Dkt. 278 ¶ 607. ZF, Hyundai and Kia allegedly communicated on May 17, 2012 "regarding the ongoing investigation of field events with EOS." *Id.* The CAC further alleges that, in July and August of 2012, ZF, STMicro, Hyundai and Kia made a "decision . . . to test and add circuit protection to some, but not all, of the Hyundai and Kia Class Vehicles with ZF TRW ACUs containing the DS84 ASIC." *Id.* Similarly, as to the FCA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Enterprise, the CAC alleges that ZF "communicat[ed] with FCA regarding specific field incidents where ACUs in FCA Class Vehicles had failed due to EOS." *Id.* ¶ 618. It further alleges that, in 2014, ZF, STMicro and FCA made a "decision . . . to add circuit protection to some, but not all, the FCA Class Vehicles with ZF TRW ACUs containing the DS84 ASIC." *Id.* ¶ 629. Similar allegations are made as to each of the other Enterprises. *See id.* ¶¶ 663, 675 (Honda Enterprise); 686, 697 (Mitsubishi Enterprise). These allegations sufficiently state a common purpose among each Enterprise to mislead consumers and NHTSA as to the existence of the Alleged Defect.

Defendants argue that the various relationships among ZF, STMicro and the Vehicle Manufacturer Defendants were formed "in the course of their ordinary business operations" and, therefore, do not satisfy the common purpose requirement. Dkt. 208 at 30. This argument is unpersuasive. That a group of entities shares a legitimate business purpose "does not shield them from RICO liability" when such a purpose is pursued through illegitimate means. *In re Chrysler*, 295 F. Supp. 3d at 980; *see Odom*, 486 F.3d at 552.

In *Odom*, Microsoft and Best Buy entered into an agreement pursuant to which Microsoft invested in Best Buy and promoted Best Buy's products on Microsoft's MSN platform; in return, Best Buy promoted Microsoft products in its stores and advertising. *Odom*, 486 F.3d at 543. They allegedly formed this agreement in furtherance of "the common purpose of increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent means." *Id.* at 552. As to their fraudulent means, the complaint alleged that, pursuant to their agreement, "Best Buy employees distributed different Microsoft compact discs ("Trial CDs")" that allowed Best Buy customers to enroll in a free trial of Microsoft's MSN service. *Id.* at 543. Without the knowledge of each customer and without his or her permission, Best Buy employees would send his or her debit or credit card information to Microsoft, which would create an MSN account for that customer and start billing him or her for an MSN subscription if the account was not canceled before the free trial period expired. *Id. Odom* found that, although the agreement between Microsoft and Best Buy did not itself have fraudulent purposes, it was advanced "by fraudulent means." *Id.* This was sufficient to satisfy the common purpose requirement and to state a RICO claim. *Id.*

It is alleged that ZF, STMicro and each of the Vehicle Manufacturer Defendants furthered their common purpose through fraudulent means. The CAC alleges that Defendants made several false or misleading statements to NHTSA and consumers. *See, e.g.*, Dkt. 278 ¶¶ 365-79, 602 (Hyundai-Kia Defendants); 410-17, 420, 624 (FCA Defendants); 461-70, 647 (Toyota Defendants); 498-510, 670 (Honda Defendants); 527-35, 692 (Mitsubishi Defendants); 574(d)-(e), 575(c)-(d), 580 (ZF and STM Defendants). Under *Odom*, such a showing of a legitimate common purpose advanced by illegitimate means satisfies the common purpose requirement of RICO. *Cf. Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013) (plaintiffs satisfied the common purpose requirement by alleging that corporate entities' purpose was to "limit costs and maximize profits through" fraudulent means). Plaintiffs have satisfied this requirement.

(2)   Racketeering Activity

"A RICO claim requires 'racketeering activity (known as predicate acts).' " *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). The racketeering activities alleged by Plaintiffs are mail fraud and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

wire fraud.

" 'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986). These "includ[e] 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Id.*; *see also In re Chrysler*, 295 F. Supp. 3d at 972 ("Mail and wire fraud are predicate acts that may constitute 'racketeering activity.' " (citing 18 U.S.C. § 1961)).

To allege mail or wire fraud, it is necessary to show (1) "a scheme or artifice to defraud," (2) the use of the United States mails or the United States wires, depending on whether mail or wire fraud is alleged, and (3) "the specific intent to deceive or defraud." *Schreiber*, 806 F.2d at 1399-1400 (citations omitted). The specific intent to defraud " 'may be inferred from a defendant's statements and conduct.' " *Eclectic Props.*, 751 F.3d at 997 (citing *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992)). "In the absence of direct evidence of intent, the party asserting fraud must first prove 'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension,' and then, 'by examining the scheme itself' the court may infer a defendant's specific intent to defraud." *Id.* (citing *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984)).

Allegations of mail or wire fraud, including those made in support of a civil RICO claim, must satisfy the requirement of Rule 9(b) that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991) ("Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme. The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud." (internal citation omitted)); *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004) (citing *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1989)). However, the particularity requirement does not apply to allegations of fraudulent intent, which only must be "alleged generally." *Eclectic Props.*, 751 F.3d at 995 n.5. To be pleaded with particularity, allegations of fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted). This includes alleging " 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citation omitted). In addition, allegations of fraud made against multiple defendants "may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

Plaintiffs argue that they have pleaded both that Defendants made affirmative misrepresentations and failed to satisfy their duties to disclose. Dkt. 281 at 34. "Mail and wire fraud can be premised on either a non-disclosure or an affirmative misrepresentation." *Eller*, 778 F.3d at 1092 (citing *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986)); *see United States v. Dowling*, 739 F.2d 1445, 1448 ("[A] scheme to defraud need not be an active misrepresentation. A nondisclosure or concealment may serve as a basis for the fraudulent scheme." (citations omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(a)     Nondisclosure Theory

Nondisclosure or failure to disclose can "form the basis of a scheme to defraud only when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached." *Id.* at 1450; *Eller*, 778 F.3d at 1092 ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." (quoting *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987))); *In re All Terrain Vehicle Litig.*, 978 F.2d 1265, 1992 WL 332105, at *3 ("A fraudulent concealment claim must rest upon an independent fiduciary or statutory duty to disclose owed to the party seeking relief.").

Plaintiffs argue that Defendants have a statutory duty to disclose based on the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. §§ 30118 *et seq.*, and 49 C.F.R. § 573.6. Dkt. 281 at 22-24. The Safety Act includes the following provision:

> **Notification by manufacturer.** A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail or electronic mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section [49 USCS § 30119(d)], if the manufacturer—
>
> **(1)** learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety . . . .

49 U.S.C. § 30118(c). Plaintiffs' argument raises two issues that are unresolved in this Circuit: (1) whether the Safety Act creates a duty of disclosure; and, if so, (2) whether the breach of such a duty constitutes mail or wire fraud and serves as a predicate act under RICO.

The Eleventh Circuit has addressed these questions in a comprehensive manner. In *Ayres v. GMC*, 234 F.3d 514 (11th Cir. 2000), the plaintiffs brought a claim under Georgia's civil RICO statute against the manufacturers of their respective vehicles and the manufacturer of a vehicle part, which was alleged to be defective. *Id.* at 516. The plaintiffs alleged that the defendants had breached their duty to disclose the defect under the Safety Act, thereby violating the federal mail and wire fraud statutes. *Id.* at 521. Acts violating those statutes are also predicate acts under the Georgia RICO statute. *Id.* at 516.

In assessing whether Congress "intend[ed] for a violation of the Safety Act's notification requirement to constitute the crime of mail or wire fraud," *Ayres* first noted that the Safety Act provides for "its own extensive array of administrative remedies for a violation of its notification obligations." *Id.* at 522-24. These include the United States Secretary of Transportation or " 'any interested person' " initiating an enforcement action. *Id.* at 522 (citing 49 U.S.C. § 30118(b), (e)). In addition, "the Attorney General is authorized to bring a civil action to enforce the Safety Act and the notification obligations." *Id.* (citing 49 U.S.C. §§ 30121(b), 30163). For violations, it provides for civil penalties of between $1000 and $800,000. *Id.* (citing 49 U.S.C. §§ 30121(a), (b), 30165(a)). Further, *Ayres* found that "the Safety Act does not make violation of the notification requirements criminal." *Id.* Finally, *Ayres* determined that the Safety Act does not confer a private cause of action for its enforcement. *Id.* Based on these considerations, *Ayers* concluded:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Given the extensive array of administrative remedies for violation of the Safety Act, including specific provisions for participation by "any interested person," and given the specific provision for the civil enforcement action by the Attorney General with no mention of a corresponding private cause of action, and given the limits on the civil penalties and lack of criminal penalties, and finally given the absence of a private cause of action, we conclude that Congress did not intend for a violation of the Safety Act's notification requirement to constitute the crime of mail or wire fraud. It follows that Congress did not intend for a violation of the Safety Act to be the basis for a private civil RICO action, which would permit unlimited, trebled damages.

*Id.* at 524.

The Ninth Circuit has found that Congress did not intend for the Safety Act to create a private civil right of action. *See Handy v. Gen. Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975). This supports Defendants' argument that violations of the Act are not RICO predicate acts. That Congress opted not to create a private right of action to enforce the Safety Act suggests that Congress also did not intend to allow private plaintiffs to circumvent the lack of a right of action by bringing a civil RICO claim.

For the same reasons, 49 C.F.R. § 573.6, which requires certain reporting of defects in vehicles, does not provide an independent basis for finding a statutory duty to disclose. *See* Dkt. 281 at 23. That regulation was promulgated pursuant to the Safety Act. *See* 49 C.F.R. Subtit. B, Ch. V, Pt. 573.

Because neither that regulation nor the Safety Act creates a duty to disclose, Plaintiffs have not established that Defendants had a statutory duty to disclose defects in the Class Vehicles. Plaintiffs have not shown a statutory or fiduciary duty to disclose. Therefore, the claims of mail or wire fraud by failing to disclose the Alleged Defect are not adequate.

(b)     Affirmative Misrepresentation Theory

Notwithstanding that Plaintiffs, having failed to show a statutory or fiduciary duty of disclosure, are unable to establish predicate acts of mail or wire fraud on a nondisclosure theory, they may be able to satisfy this RICO requirement by alleging affirmative misrepresentation. *See Benny*, 786 F.2d at 1418 ("Proof of an affirmative, material misrepresentation supports a conviction of mail fraud without any additional proof of a fiduciary duty.").

Defendants argue Plaintiffs' allegations of affirmative misrepresentation fail for lack of particularity under Fed. R. Civ. P. 9(b). Dkt. 208 at 40. Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp.*, 940 F.2d at 405. As noted, this must include " 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When a misrepresentation specifically is alleged, in addition to alleging "[t]he time, place, and content of an alleged misrepresentation," the plaintiffs also must allege "circumstances indicating falseness." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 754 (N.D. Cal. 1997). "The statement in question must be false to be fraudulent." *In re GlenFed Sec. Litig.*, 42 F.3d at 1548.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs allege that Defendants made affirmative misrepresentations in three ways: (i) advertising; (ii) in-vehicle labeling, including owner's manuals; and (iii) statements to NHTSA. These are addressed in this sequence.

(i)     Advertisements

With respect to the advertisements by the Vehicle Manufacturer Defendants, Plaintiffs fail to plead an affirmative misrepresentation theory of fraud with particularity. Thus, the CAC does not allege which Defendant made which allegedly misleading statement. Nor does it adequately allege why each statement is false.

Plaintiffs do not specify which Defendant made each allegedly misleading statement. Rule 9(b) requires allegations of the specific details of the misrepresentation "including . . . the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764 (citation and internal quotation marks omitted). It "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65 (citation and internal quotation marks omitted).

The CAC consistently refers to Defendants by their respective vehicle manufacturer names, *e.g.*, "Toyota," rather than as individual corporate entities, *e.g.*, Toyota Motor North America Inc. The CAC does not provide any additional specificity with respect to Defendants' advertisements. Instead, the CAC alleges that "Exhibits 6, 7, 10, 13, 16 and 19 to this Consolidated Complaint collect examples of misleading statements from advertising for the Class Vehicles concerning the seatbelts, airbags, ZF TRW ACUs, and overall vehicle safety." Dkt. 278 ¶ 309. Although these exhibits make clear which group of Defendants allegedly made a particular statement, they do not do so as to individual Defendants when that is relevant. For example, Exhibit 16 is titled "Honda Class Vehicle Safety Advertisements." Dkt. 120-16 ("Exhibit 16 to CAC") at 2. Listed there are many allegedly misleading statements from press releases, vehicle brochures and advertising, all of which are attributed to "Honda." However, in the CAC, "Honda" refers to five separate defendants. *See* Dkt. 278 ¶ 61 ("The Honda Defendants (together, 'Honda') are Honda Motor Co., Ltd.; American Honda Motor Co., Inc.; Honda of America Mfg., Inc.; Honda R&D Co., Ltd.; and Honda R&D Americas, Inc."). Plaintiffs do not make clear which statements, if any, are attributable to Honda Motor Co., Ltd., which is "a Japanese corporation" and "one of the largest automobile manufacturers in the world," as opposed to its "wholly owned U.S. subsidiary" American Honda Motor Co. *Id.* ¶¶ 62-63. Plaintiffs do not clarify this in the section of the CAC discussing the "Honda Class Vehicles" or elsewhere in the CAC. *See id.* ¶¶ 501-509. Although the CAC includes passing references to statements in press releases made by specific persons, *see, e.g., id.* ¶¶ 506-507, these allegations do not make clear to which Defendant each person's statement is attributable.

It is well established that where Plaintiffs "merely lump multiple defendants together," it does not satisfy the specificity requirements of Fed. R. Civ. P. 9(b). *Swartz*, 476 F.3d at 764-65; *see Zakikhan v. Hyundai Motor Co.*, No. 8-20-CV-01584 SBJ, 2021 WL 4805454, at *7-8 (C.D. Cal. June 28, 2021); *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421 SB, 2020 WL 7040125, at *10 (C.D. Cal. Nov. 23, 2020); *Volkswagen 'Clean Diesel'*, 2019 WL 4581340, at *5; *In re Toyota Motor Corp. Unintended*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Acceleration Marketing* ("*Toyota Acceleration Marketing*"), 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011).

*Toyota Acceleration Marketing* is instructive. It arose from alleged defects in "vehicles designed, manufactured, distributed, marketed sold, and leased by Defendants Toyota Motor Corporation" and three of its subsidiaries. *Id.* at 1185. Plaintiffs there advanced RICO claims in the initial complaint that were dismissed on the basis of "a number of pleading deficiencies . . . most importantly the failure to ascribe any predicate act to a particular Defendant rather than impermissibly ascribing conduct to 'Toyota' or 'Defendants' generally." *Id.* at 1201. After an amended complaint was filed, the RICO claims were again dismissed on the same basis. *Id.* Although "[i]n some instances" in the amended complaint "Plaintiffs . . . attributed certain statements to named individuals, . . . the Toyota entity upon whose behalf such statements were made [was] not identified, and the individuals themselves [were] not named as parties." *Id.* (internal citation omitted). "Thus, although the what, when and where [were] sometimes alleged, the 'who' [was] never alleged." *Id.*

Similarly, in *Volkswagen "Clean Diesel*," although the "allegations include[d] the 'time, place, and specific content of the false representations,' " as required by 9(b), their failure to "identify 'the parties to the misrepresentation' " was fatal to the plaintiffs' RICO claim. 2019 WL 4581340, at *8 (citing *Odom*, 486 F.3d at 553). The plaintiffs' allegation "that 'Volkswagen' made these representations, which is the umbrella term used to refer to all Defendants," was not sufficiently specific. *Id.*

Finally, in *Zakikhan*, the plaintiffs "refer[red] to HMC and HMA collectively as 'Hyundai' and KMC and KMA collectively as 'Kia,' " and the complaint "refer[red] to all entities together as Defendants." 2021 WL 4805454, at *8. The plaintiffs' "generalized allegations" as to these defendants were deemed "insufficient to meet the demands of Rule 9(b)." *Id.* (citing *Drake*, 2020 WL 7040125, at *10).

The allegations in the CAC are similar to those in these cases. Thus, the CAC attributes alleged misstatements only through umbrella terms that include several Defendants, e.g., "Toyota," "Mitsubishi" and "Honda," and not to the individual corporate entities that are within each group. Such allegations fail to satisfy the requirements of Rule (9)(b). Although the Vehicle Manufacturer Defendants may know which, if any, party created each advertisement, Rule 9(b) requires pleading with particularity, which Plaintiffs have not done.

Plaintiffs' allegations as to the advertising of the Vehicle Manufacturer Defendants are also deficient. They fail to allege with specificity why the advertising is misleading. For example, after noting that "Exhibits 6, 7, 10, 13, 16 and 19 to this Consolidated Complaint collect examples of misleading statements from advertising for the Class Vehicles concerning the seatbelts, airbags, ZF TRW ACUs, and overall vehicle safety," Dkt. 278 ¶ 309, the CAC alleges that "every single Class Vehicle advertisement omitted any mention that the vehicles' airbags and seatbelts could fail in a serious collision as a result of the defective ACUs." *Id.* ¶ 310. Other than noting the omission of any reference to the Alleged Defect, which is not actionable fraud in the absence of a duty to disclose, the allegations do not make clear the basis for the claim that these advertisements are misleading. "[P]laintiffs [have] failed to make the [CAC] 'specific enough to give [D]efendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.' " *Mostowfi v. 12 Telecom Int'l, Inc.*, 269 F. App'x 621, 625 (9th Cir. 2008) (citing *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The allegations elsewhere in the CAC do not remedy this shortcoming. For example, the CAC alleges that "Hyundai and Kia . . . distributed misleading advertising concerning the Hyundai-Kia Class Vehicles via mail and wire." Dkt. 278 ¶ 368. The only explanation of what allegedly makes this advertising misleading is that it "contains affirmative statements about airbags and seatbelts and omits important facts about the dangers posed by the defective ACUs." *Id.* Again, this explains omissions, not misrepresentations. The CAC then highlights many examples of allegedly misleading advertisements without explaining why they are misleading. *See id.* ¶¶ 369-377. They conclude this section of the CAC with an explanation that refers only to the nondisclosure theory of fraud: "Hyundai and Kia's advertising uniformly *omitted* any description of a defect in the Hyundai-Kia Class Vehicles' ACUs that made them vulnerable to failure during a crash." *Id.* ¶ 378 (emphasis added).

Based on a review of the CAC, there are few, if any, allegations as to Defendants' advertising that explain why it was misleading other than with respect to claims of fraudulent omissions. For example, under the heading "Defendants made misleading statements and omissions concerning the ACU defect for years," it is alleged that

> Defendants have repeatedly represented to consumers and to NHTSA that the Class Vehicles and the Occupant Restraint Systems that contain the defective ZF TRW ACUs can be relied upon to activate the airbags and seatbelts during a crash. These representations were false and misleading *because of what they did not say*. Defendants uniformly *failed to disclose* that the defective ZF TRW ACUs were particularly vulnerable to EOS and that transient electricity from a collision could—at the worst possible moment—prevent the airbags and seatbelts from activating. These *omitted facts* were contrary to Defendants' material representations about the Class Vehicles safety features. Thus, Defendants misled NHTSA and consumers about the safety of the Class Vehicles.

Dkt. 278 ¶ 301 (emphasis added). The only basis for asserting that Defendants' statements to consumers and NHTSA were misleading is their failure to disclose the Alleged Defect. As noted, a fraudulent omission claim is distinct from one for an affirmative misrepresentation. If the present allegations were deemed sufficient, the requirement of a duty of disclosure would become a hollow one.

(ii)     In-Vehicle Labeling and Owner's Manuals

The CAC alleges that the Vehicle Manufacturer Defendants made misrepresentations within the in-vehicle labeling and owner's manuals for many of the Class Vehicles. It includes specific allegations as to the alleged misrepresentations within the following as to each vehicle: (i) the permanent in-vehicle labels ("Permanent Labels"); (ii) the "Monroney" label, or "window sticker" ("Monroney Label"); and (iii) the owner's manual ("Owner's Manual"). *See* Dkt. 278 ¶¶ 302-307, 311.

(a)     *Permanent Labels*

The CAC alleges that three types of permanent, in-vehicle labels include misrepresentations. *First*, under 49 C.F.R. § 567.4(g)(5), each Class Vehicle "ha[s] a permanent label certifying compliance with the safety regulations prescribed by NHTSA under Chapter 301" of Title 49 of the U.S. Code. Dkt. 278 ¶ 302. This label allegedly "must state: 'This vehicle conforms to all applicable Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture shown above.' " *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(quoting 49 C.F.R. § 567.4(g)(5)). The CAC alleges that "[t]hese labels were false and misleading because they failed to warn consumers about the risk of EOS during a crash, and instead indicated that the Occupant Restraint System would function properly in a crash." *Id.* (citing 49 C.F.R. § 571.208 (S4.1.5.4, S4.1.5.5)). The CAC adequately alleges the content of these labels and what makes them misleading without reference to their failure to disclose the Alleged Defect. However, it does not allege to which Defendant each label is attributed. For that reason, these allegations fail to satisfy Fed. R. Civ. P. 9(b).

*Second,* the CAC alleges that "[t]he interiors of the Class Vehicles also contain prominent labels that alert the driver and passengers to the vehicle's airbag system," including "steering wheels and passenger dashboards" that "have labels identifying the airbag and safety restraint system (or 'SRS')." *Id.* ¶ 304. It also alleges that "[t]he Class Vehicles . . . contain a 'readiness indicator' that was supposed to 'monitor [the occupant protection system's] own readiness' and 'be clearly visible from the driver's designated seating position.' " *Id.* ¶ 305 (citing 49 C.F.R. § 571.208) (alteration in original). It is alleged that "this readiness indicator did not warn consumers about the risk of EOS during a crash, and instead indicated that the Occupant Restraint System would function properly in a crash." *Id.* ¶ 305. However, once again, the CAC does not allege which of the Vehicle Manufacturer Defendants is responsible for each label and readiness indicator.

*Finally,* the CAC alleges that "[t]he Vehicle Manufacturer Defendants were . . . specifically required to include in their vehicles warning labels that alerted consumers of the need to perform airbag maintenance," but they "are unaware of any label in any Class Vehicle that alerted consumers about the defective ZF TRW ACUs or the need to perform maintenance on them to protect them from EOS." *Id.* ¶ 306. That a Defendant failed to include this type of label in its vehicles provides further support for the assertion that Defendants fraudulently failed to disclose the Alleged Defect. Such an allegation would not, however, support the theory that Defendants made affirmative misrepresentations.

For the foregoing reasons, the CAC does not make sufficient allegations that the Permanent Labels contained affirmative misrepresentations.

(b)     *Monroney Labels*

Exhibit 1 to the CAC includes "[e]xemplar labels for many of the Class Vehicles." *Id.* ¶ 307; *see* Dkt. 120-1. This exhibit includes Monroney Labels for certain Class Vehicles, which state that those vehicles contain "[a]dvanced multistage front air bags," Dkt. 120-1 at 3, 5-8, 22-26, 29-35; "[f]ront advanced multi-stage airbags – inc: front passenger occupant sensor," *id.* at 9-12; "[d]river & front passenger advanced multi-stage front airbags," *id.* at 28, 61-62; or some other variation thereof, *id.* at 53-55, 72-75, 82-88, 95-97, 101, 103-08, 114, 133-34, 137-38, 142-43, 150. It is alleged that these labels "uniformly assured consumers that the Class Vehicles had working airbags and seatbelts," which "would have suggested to any reasonable consumer that the Occupant Restraint System did not suffer from a defect and would perform its intended function of activating the seatbelts and airbags during a collision." Dkt. 278 ¶ 308. These allegations are sufficient to state a claim that the statements in the Monroney Labels were false or misleading.

There is a different shortcoming in the allegations as to almost all of the Moroney Labels shown in Exhibit 1. Thus, the CAC does not sufficiently allege the responsible Vehicle Manufacturer Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

In general, each label refers only to the "make" of subject vehicle. *See, e.g.*, Dkt. 120-1 at 2 ("Make: Acura"), 62 ("Make: Jeep"), 110 ("Make: Toyota"). Once again, although this sufficiently identifies the vehicle brand, it does not do so as to which of the individual Vehicle Manufacturer Defendants is allegedly responsible for each label. For example, when the make of a vehicle is "Toyota," the CAC does not make clear whether that refers to Toyota Motor Corporation, Toyota Motor North America Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc., or some other non-party entity. This is required by the particularity requirement of Fed. R. Civ. P. 9(b).

There is one exception. Among the copies of Monroney Labels submitted with the CAC, a few are clearly attributed to "FCA US LLC." *See* Dkt. 120-1 at 5-7, 31-35 (the "FCA US Monroney Labels").[24] These Labels state that certain Class Vehicles include "[a]dvanced [m]ultistage [f]ront [a]irbags." *Id.* They also represent that such vehicles have "Government 5-Star Safety Ratings," including a 5-star rating in the category "Front Crash – Driver" and "Front Crash – Passenger." *Id.* With respect to the FCA US Monroney Labels, the CAC pleads with particularity the allegedly misleading statement, why it was allegedly misleading, to which Defendant it is attributable and the year when it was made. Therefore, the CAC satisfies the required pleading standard as to the racketeering activity element of RICO as to Defendant FCA US.

Further, the CAC sufficiently alleges that FCA US engaged in a pattern of racketeering activity, because Monroney Labels as to model years 2013 through 2019 are attributed to FCA US LLC. *Id.* This is sufficient to satisfy the statutory definition of a "pattern of racketeering activity," which requires at least two predicate acts within a span of ten years. *See* 18 U.S.C. § 1961(5).

(c)     *Owner's Manuals*

The CAC alleges that "[t]he Vehicle Manufacturer Defendants published owner'[s] manuals for each of the Class Vehicles" that "were directed at consumers and included misleading statements regarding the seatbelts, airbags, and ZF TRW ACUs." Dkt. 278 ¶ 311. Exhibits 4, 5, 9, 12, 15 and 17 to the CAC include excerpts from the Owner's Manuals. *Id.*

Like the excerpts from advertisements discussed above, these excerpts are attributed to a group of Vehicle Manufacturer Defendants, *i.e.,* "Toyota," rather than an individual defendant. *See, e.g.*, Dkt. 120-13 at 2. This does not meet the particularity requirement of Fed. R. Civ. P. 9(b).

(iii)     <u>Statements to NHTSA</u>

Defendants argue that liability for mail or wire fraud cannot be predicated on their statements to NHTSA because those statements were not made to "obtain[] money or property," Dkt. 208 at 36 (citing 18

---

[24] The Monroney Labels shown on pages five and six of Dkt. 120-1 list "Chrysler Group LLC" in the same position as subsequent Monroney Labels list "FCA US LLC," and the content of these labels appears to be identical. Although Plaintiffs have not identified "Chrysler Group LLC" nor explained its relationship, if any, with FCA US LLC, the CAC refers to the 2014 merger of Chrysler and Fiat, Dkt. 278 ¶ 200. In light of this, and the similarities between the Monroney Labels attributed to Chrysler Group LLC and FCA US LLC, it is a reasonable interpretation of the allegations that the latter entity is the corporate successor of the former. Thus, the Monroney Labels shown on pages five and six listing "Chrysler Group LLC" are properly attributed to FCA US LLC rather than Chrysler Group LLC, which is not a defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

U.S.C. §§ 1341, 1343), and are protected speech under the *Noerr-Pennington* doctrine. *Id.*

The mail and wire fraud statutes bar the use of the mails or wires for "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343. This "disjunctive language" has been "constru[ed] . . . as a unitary whole," meaning " 'the money-or-property requirement of the latter phrase' also limits the former." *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (citing *McNally v. United States*, 483 U.S. 350, 358 (1987)). Thus, the mail and wire fraud statutes criminalize "only deceptive 'schemes to deprive [the victim of] money or property.' " *Id.* (citing *McNally*, 483 U.S. at 356) (alteration in original).

Defendants rely on *Kelly* to argue that their statements to NHTSA are "nonactionable" because "they were not made to obtain money or property." Dkt. 208 at 36. This application of *Kelly* is unpersuasive. In *Kelly*, the defendants were convicted of wire fraud based entirely on an alleged scheme intended to punish a political adversary. This misconduct had the alleged "incidental cost" of depriving the Port Authority of New York and New Jersey of the labor of employees. *Kelly*, 140 S. Ct. at 1569. Because depriving the Port Authority of money or property was not "an object of the officials' scheme," the defendants' convictions for wire fraud were reversed. *Id.*

The allegations here are distinguishable. Defendants allegedly effected a scheme to defraud with the object of depriving consumers of money by selling them defective vehicles worth less than they paid. Although Defendants allegedly furthered this scheme by making fraudulent statements to a regulatory agency, that was not their primary, alleged purpose. Rather, it was "maximiz[ing] their revenue by selling as many [Class Vehicles] with defective ZF TRW ACUs as possible." Dkt. 278 ¶¶ 569, 591, 613, 635, 658, 681; *cf. JUUL Labs*, 497 F. Supp. 3d at 615 (*Kelly* distinguished where "the scheme was to secure the money and property of the end consumers," and "Defendants did so by allegedly lulling Congressional legislators and the regulators at the FDA into inaction, or more limited action, to allow their products to remain on the market.").

Defendants also argue that their statements to federal regulators are not actionable under the *Noerr-Pennington* doctrine, which "derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.' " *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing U.S. Const. amend. I). Under that doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* (citing *Empress LLC v. City & Cty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). Immunity under the *Noerr-Pennington* doctrine "extends to protect defendants from . . . RICO causes of action." *Swallow v. Torngren*, 789 Fed. App'x 610, 611 (9th Cir. 2020) (citing *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-48 (9th Cir. 2009)); *see Sosa*, 437 F.3d at 932.

Defendants' argument that *Noerr-Pennington* applies to their statements to NHTSA is not persuasive because it mischaracterizes this conduct as petitioning activity. *See* Dkt. 299 at 17. The CAC contains several allegations that Defendants made statements to NHTSA in response to statutory reporting requirements or at the request of NHTSA. *See, e.g.*, Dkt. 278 ¶¶ 364, 452-54, 602(c), 624(c), 647(h). The CAC does not allege that "Defendants' statements were made to urge NHTSA 'to exercise its administrative discretion . . . by taking or refraining from an action,' " as Defendants suggest. Dkt. 299 at 17 (citing *Aventis Pharma S.A. v. Amphastar Pharm. Inc.*, No. 5:03-00887-MRP, 2009 WL 8727693, at *11 (C.D. Cal. Feb. 17, 2009)). *Noerr-Pennington* "bars civil liability for activities protected by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

First Amendment right to petition." *Sunwest Assocs. v. Davis,* No. 95-15775, 99 F. 3d 1147, 1996 WL 608496, at *1 (9th Cir. Oct. 22, 1996). Defendants' conduct does not implicate that right. *See* RIGHT TO PETITION, Black's Law Dictionary (11th ed. 2019) ("The constitutional right — guaranteed by the First Amendment — of the people to make formal requests to the government, as by lobbying or writing letters to public officials.").

Defendants have not cited any cases that applied *Noerr-Pennington* to statements made pursuant to a statutory reporting obligation. *Noerr-Pennington* has been applied in the Ninth Circuit to statements made in a non-adjudicatory context. However, that was when the statements were made to a governmental body in support of an affirmative request that it take some action. That fits within the meaning of "petition." *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 889 (9th Cir. 1988) (applying *Noerr-Pennington* to efforts by real estate developer to convince city officials to amend a community redevelopment plan); *see Sunwest Assocs.*, 1996 WL 608496, at *2 (applying *Noerr-Pennington* to the defendants' statements made in connection with their application to city planning commission and city council to rezone property); *Aventis Pharma*, 2009 WL 8727693, at *11; *Borges v. Cty. of Mendocino*, 506 F. Supp. 3d 989, 1001 (N.D. Cal. 2020) (applying *Noerr-Pennington* to complaints by a person to county officials about the plaintiffs' marijuana cultivation and her "efforts . . . to have plaintiffs' property rezoned to prohibit marijuana cultivation"); *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, No. CV 00-1693-PA, 2003 WL 24901381, at *7 (D. Or. July 5, 2003) (applying *Noerr-Pennington* to the defendant's "statements to the Oregon Department of Forestry to obtain an exemption from log export regulations that allowed Defendant to obtain alder from state lands"). It also has been applied to statements made during an adjudicative process before a court or administrative agency. *See Swallow v. Torngren*, No. 17-cv-05261-BLF, 2018 WL 2197614, at *8 (N.D. Cal. May 14, 2018), *aff'd, Swallow v. Torngren*, 789 F. App'x 610, 611 (9th Cir. 2020). No cases have been cited or located in which it has been applied to mandatory reporting to a government agency.

Furthermore, if *Noerr-Pennington* were applied in a context like that alleged in the CAC, it could shield parties from liability for their allegedly fraudulent statements to NHTSA. This could mean, for example, that vehicle manufacturers would be able to make false or misleading reports to NHTSA in response to requests from that agency or as required by statute. *Cf. In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1448 (D. Ariz. 1992) (*Noerr-Pennington* doctrine "created to protect those who would use the regulatory process in good faith"). That result would be inconsistent with the statutory purpose of NHTSA, *i.e.*, to promote vehicle safety.

Although *Kelly* and *Noerr-Pennington* do not protect Defendants from liability for their alleged statements to NHTSA, many of the allegations in the CAC as to fraudulent statements to NHTSA do not satisfy Fed. R. Civ. P. 9(b). Specifically, as to the ZF Defendants, STMicro Defendants, Toyota Defendants, Honda Defendants, FCA Defendants and Mitsubishi Defendants, the CAC again fails to specify the Defendant that allegedly made a particular fraudulent statement to NHTSA. There are many allegations regarding such statements, but they consistently "lump together multiple defendants without specifying the role of each defendant in the fraud," *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764), grouping Defendants by manufacturer name rather than referring to individual corporate entities. *See, e.g.*, Dkt. 278 ¶¶ 452-54, 458, 647(g)-(h) (referring to "Toyota representatives" or "Toyota"); 510 ("Honda submitted a letter to NHTSA" that allegedly included a statement that "was misleading and flat-out wrong.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Although it is alleged that "[m]any of the precise dates and examples of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden by Defendants, and cannot be alleged without access to Defendants' books and records," Dkt. 278 ¶ 580 n.25, *see also id.* ¶ 670 n.33, this does not excuse all of the aforementioned shortcomings. Further, Plaintiffs had access to a number of "Part 573" reports ("573 Reports") to NHTSA. *See Id.* ¶¶ 354, 359, 362, 392-93, 472, 497, 602(c), 624(c), 647(h). This is supported by Plaintiffs' allegation that these "573 defect reports are typically published on NHTSA's public docket." *Id.* ¶ 580 n.26. Despite having access to these reports, the CAC does not allege which of the Toyota, Honda, FCA and Mitsubishi Defendants submitted each report.

In contrast, the CAC does include specific allegations as to 573 Reports submitted by each of HMA and KMA. *See id.* ¶¶ 354, 359, 602(c). The CAC alleges:

> Hyundai and Kia violated the mail and wire fraud acts by using interstate mail and wire to submit paper and electronic versions of Part 573 Safety Recall Reports false[ly] stating that the unrecalled Hyundai and Kia Class Vehicles were not defective. On April 18, 2018, *Hyundai Motor America* stated in a Part 573 Safety Recall Report that the ACU Defect was corrected in unrecalled Hyundai Class Vehicles because those vehicles included "redesigned ACUs." Similarly, *Kia Motors America, Inc.* stated in a June 1, 2018 Part 573 Safety Recall Report that the ACUs in the unrecalled Kia Class Vehicles "have adequate circuit protection." These statements were misleading because the unrecalled Hyundai and Kia Class Vehicles have the same defect (insufficient levels of circuit protection and the use of a DS84 ASIC vulnerable to overstress) as the recalled Hyundai and Kia Class Vehicles.

*Id.* ¶ 602(c) (emphasis added); *see also id.* ¶¶ 359, 363. On the basis of this and similar allegations, the CAC has pleaded with sufficient particularity that HMA and KMA each committed at least one predicate act of racketeering activity.

The RICO requirement that a pattern of racketeering activity be alleged has also been satisfied as to KMA. The CAC alleges that KMA made other false or misleading statements to NHTSA on March 1, 2018, *id.* ¶¶ 355, 602(d), and August 30, 2019, *id.* ¶ 364. A "pattern of racketeering activity" requires at least two predicate acts within a span of ten years. *See* 18 U.S.C. § 1961(5). The CAC alleges three different acts by KMA, which is sufficient as to a pattern. As to HMA, although the CAC also alleges that it made another 573 Report on February 27, 2018, *id.* ¶ 354, this Report is not alleged to have been false or misleading. Therefore, a pattern has not been sufficiently alleged as to HMA.

### (3)    RICO Standing

Plaintiffs have pleaded sufficient predicate acts of racketeering activity as to two Defendants. *First*, Plaintiffs satisfied the pleading standards of Fed. R. Civ. P. 9(b) with the allegations that FCA US made false or misleading statements in at least two Monroney Labels, which form a pattern of racketeering activity and support their RICO claims against FCA US (the "FCA US RICO Claims"). Plaintiffs also have made adequate allegations that KMA made false or misleading statements to NHTSA on at least two occasions, which constitutes a pattern of racketeering activity and supports Plaintiffs' RICO claims against KMA (the "KMA RICO Claims"). Thus, the following RICO standing analysis applies only to these claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

"To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

(a)  Cognizable RICO Injury

A plaintiff attempting to show injury to business or property, in addition to "alleg[ing] 'concrete financial loss,' " *Canyon Cty.*, 519 F.3d at 975 (citing *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)), must show "a harm to a specific business or property interest – a categorical inquiry typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1131 (2006).

The CAC alleges that, due to Defendants' pattern of racketeering activity, "Plaintiffs and Class members have been injured in their business and/or property" by buying or leasing defective Class Vehicles and overpaying for those vehicles, which contained an "undisclosed safety defect." *See, e.g.*, Dkt. 278 ¶ 608. Defendants argue that this is not a cognizable RICO injury, because it involves "mere injury to a valuable intangible property interest." Dkt. 208 at 45 (citing *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002)).

Assessing the injury to "business or property" requirement of the Sherman Act, which in the Ninth Circuit "ha[s] been interpreted in tandem" with RICO's injury requirement, *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002), courts in the Ninth Circuit have concluded that when "a consumer . . . acquir[es] goods or services for personal use, [he or she] is injured in 'property' when the price of those goods or services is artificially inflated by reason of the anticompetitive conduct complained of." *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 959 (N.D. Cal. 2018) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). Relying on *Reiter*, *Canyon County* explained that "[i]n the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money." 519 F.3d at 976.

Applying *Canyon County*, district courts in California have found that the purchaser or lessee of a vehicle can plead a cognizable RICO injury by alleging that he or she overpaid for the vehicle given a defect or the absence of some promised feature. *See In re Chrysler*, 295 F. Supp. 3d at 964-65; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 905 (N.D. Cal. 2018). The reasoning of these cases is persuasive.

Defendants' reliance on *In re GM LLC Ignition Switch Litigation*, 14-MD-2543, 2016 WL 3920353 (S.D.N.Y. July 15, 2016), does not change this outcome. It is distinguishable. There, the plaintiffs "pursue[d] an unprecedented theory of damages, one that turns not on whether the vehicles at issue were sold with known, latent defects . . . but rather on the alleged reduction in resale value of the vehicles due to damage to [the vehicle manufacturer's] reputation and brand." *Id.* at *2 That theory of damages, which was found to be "speculative," *Id.* at *16, is different from the one that Plaintiffs have alleged. Thus, the CAC alleges that each Plaintiff suffered an injury when he or she bought or leased a Class Vehicle because he or she did not receive a vehicle whose value was commensurate with its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

price. Furthermore, *In re GM LLC Ignition Switch Litigation* follows the rule of *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), that "RICO compensates only for injury to 'business or property.' " *Id.* (citing *McLaughlin*, 522 F.3d at 228) (quotation marks omitted). The Ninth Circuit has not adopted this rule. Rather, the Ninth Circuit has explained, in the context of a RICO claim, that "a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money." *Canyon County*, 519 F.3d at 976 (citing *Reiter*, 442 U.S. at 342).

For the foregoing reasons, the CAC sufficiently alleges a cognizable RICO injury as to the FCA US RICO Claims and the Kia Motors America RICO Claims.

(b)     Proximate Causation

The " 'by reason of' language in 18 U.S.C. § 1964(c) requires a civil RICO plaintiff 'to show that a RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well.' " *In re Chrysler*, 295 F. Supp. 3d at 965 (citing *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010)).

Defendants do not contest that Plaintiffs adequately have alleged but-for causation. Instead, they argue that Plaintiffs have failed to satisfy the proximate-cause requirement of RICO. Dkt. 208 at 45-47. The "central question" of RICO proximate-cause analysis is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006*); Limcaco v. Wynn*, No. 2:20-cv-11372 RSWL, 2021 WL 5040368, at *18 (C.D. Cal. Oct. 29, 2021) ("[P]roximate cause . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.' " (citing *Hemi Grp.*, 559 U.S. at 9)). The connection "between the injury asserted and the injurious conduct" must not be " 'too remote,' 'purely contingent,' or 'indirec[t].' " *Id.* (citing *Hemi Grp.*, 559 U.S. at 9) (alteration in original).

Defendants' arguments are unpersuasive. They contend that "many of the alleged 'predicate acts' took place long after most Plaintiffs purchased or leased their Class Vehicles," suggesting that there is not a direct relationship between Defendants' conduct and Plaintiffs' injuries. Dkt. 208 at 47. However, at least some of the alleged predicate acts underlying the FCA US RICO Claims occurred before any of the FCA Plaintiffs purchased or leased their respective Class Vehicles. Among the Monroney Labels that are alleged to be false or misleading and that are clearly attributed to FCA US (the "FCA US Monroney Labels"), one lists "2013" next to the vehicle model "200 Limited," Dkt. 120-1 at 5, and another lists "2015" next to the same vehicle model, *id.* at 7. Another lists "2014" next to the vehicle model "200 LX." *Id.* at 6. Others list "2015 Model Year," *id.* at 31, "2016 Model Year," *id.* at 32, "2017 Model Year," *id.* at 33, "2018 Model Year," *id.* at 34, and "2019 Model Year," *id.* at 35. The FCA Plaintiffs purchased Class Vehicles that were from model years 2009 through 2017, so it is plausible that at least some of the FCA Plaintiffs saw the FCA US Monroney Labels before buying or leasing their respective Class Vehicles. *See* Dkt. 278 ¶¶ 99-112. Therefore, Plaintiffs have satisfied the proximate-cause requirement as to the FCA US RICO Claims.

Similarly, KMA's allegedly fraudulent statements to NHTSA were made on March 1, 2018, Dkt. 278 ¶¶ 355, 602(d)), June 1, 2018, *id.* ¶ 602(c)), and August 30, 2019, *id.* ¶ 364. Several of the Hyundai-Kia Plaintiffs purchased or leased their respective Kia Class Vehicles after at least one of these dates. *See id.* ¶¶ 75 (VanHouten leased a new 2018 Kia Optima on September 9, 2018); 78 (Graziano leased a new 2018 Kia Optima on April 10, 2018); 81 (Collins purchased a new 2018 Kia Optima on July 2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

2018). Therefore, Plaintiffs have satisfied the proximate-cause requirement as to the KMA RICO Claims.

Defendants next advance an argument that is limited to the KMA RICO Claims, which rely on its allegedly fraudulent statements to NHTSA. Defendants argue that "private civil RICO plaintiffs generally cannot recover for alleged misrepresentations to the government, even on a theory that the government was misled into taking or refraining from action that injured plaintiffs, because that causal chain is not sufficiently direct." Dkt. 208 at 46 (citing, *inter alia*, *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873-74 (9th Cir. 2010)).

District courts in California have rejected this position. They have distinguished *Rezner* -- "where government entities, not the plaintiffs, were more directly damaged by the loss of tax monies, *not* the plaintiffs" -- from cases in which "the end consumers are the ones injured by defendants' false representations to federal regulators and others." *JUUL Labs*, 497 F. Supp. 3d at 619 (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, MDL 2672 CRB, 2017 WL 4890594, at *9 (N.D. Cal. Oct. 30, 2017)); *see In re Chrysler*, 295 F. Supp. at 966; *In re Volkswagen "Clean Diesel"*, 2017 WL 4890594 at *9 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008)).

The allegations here are aligned more with those in *JUUL Labs*, *Volkswagen "Clean Diesel,"* and *In re Chrysler* than the ones presented in *Rezner*. The CAC alleges that Plaintiffs, not NHTSA, suffered the harm from the claimed false or misleading statements to that agency. *Cf. In re Chrysler*, 295 F. Supp. 3d at 966 ("Plaintiffs are the ones who bought and leased the Class Vehicles and who are alleged to have overpaid for them as a result of Defendants' fraud. . . . Plaintiffs are in the best position to sue to recover those economic losses.").

Moreover, the "three nonexhaustive factors in considering causation" under RICO weigh in favor of Plaintiffs. *Mendoza*, 301 F.3d at 1169. The three factors are:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001) (quoting *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963 (9th Cir. 1999)), *cert. denied*, 534 U.S. 891 (2001).

As to the first, Plaintiffs are the only direct victims of Defendants' alleged fraudulent and misleading statements to NHTSA. NHTSA has not suffered any reported, direct injury as a result of such conduct. The allegations also support a direct connection between Bosch's alleged RICO violation and the Franchise Dealers' alleged injuries. *Cf. In re Volkswagen*, 2017 WL 4890594, at *8 ("[T]here are no more direct victims of the wrongful conduct because the [plaintiff] Franchise Dealers bought the affected vehicles directly from co-schemer [defendant] Volkswagen. To the extent the Franchise Dealers overpaid for the affected vehicles, or those vehicles declined in value, or the Franchise Dealers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

lost profits from not being able to sell those vehicles, no one other than the Franchise Dealers can assert those injuries.").

*Second*, it will not be difficult to ascertain the difference between the amount the Hyundai-Kia Plaintiffs would have spent for the purchase or lease of Class Vehicles with the ACU defect, and what they would have spent on those without it. This is the alleged amount each of the Hyundai-Kia Plaintiffs overpaid for his or her Class Vehicle. Additionally, any "questions as to the *amount* of damage, as opposed to the plausibility of damage, are best resolved at a later stage in the litigation." *Id.* (citing *Mendoza*, 301 F.3d at 1171).

*Finally*, because all of the direct victims are consolidated in these putative class actions, there is limited risk of multiple recoveries. Analysis as to this factor centers on whether "the existence of other injured parties creates difficulties of apportionment or risks of multiple recovery." *Id.* (citing *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008); *Holmes*, 503 U.S. at 269). All victims of Defendants' alleged conduct who claim to have overpaid for the purchase or lease of their Class Vehicles are within the alleged, putative classes. Consequently, there are no issues with respect to reapportionment or multiple recovery.

For these reasons, Plaintiffs have satisfied the proximate-cause requirement as to the FCA US RICO Claims and the Kia Motors America RICO Claims.

> b)   RICO Conspiracy

Plaintiffs include in each of their RICO causes of action a claim for conspiracy to violate that statute. *See* Dkt. 278 ¶¶ 571, 576, 592, 598, 614, 620, 636, 642, 659, 665, 682, 688. The CAC does not make any separate allegations in support of the conspiracy claims, but relies on those made with respect to the direct claims of violations of RICO.

"Section 1962(d)," which is the conspiracy provision of the RICO statute, "provides that '[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.' " *Baumer v. Pachl*, 8 F.3d 1341, 1345-46 (9th Cir. 1993) (citing 18 U.S.C. § 1962(d)). Stating a claim for RICO conspiracy requires allegations that "two or more people agreed to commit a crime covered by the specific conspiracy statute . . . and that the defendant knowingly and willfully participated in the agreement . . ." *Smith v. U.S.*, 568 U.S. 106, 110 (2013). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) (citation omitted). In addition, "conspiracy to violate RICO requires a showing that defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.' " *Baumer*, 8 F.3d at 1346 (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988), *cert. denied*, 489 U.S. 1067 (1989)); *see United States v. Sanchez*, 850 F. App'x 472, 478-79 (9th Cir. 2021), *cert. dismissed sub nom. Fazah v. United States*, No. (R46-03 / OT 2021), 2021 WL 5313752 (U.S. Nov. 8, 2021) (jury instructions for RICO conspiracy "properly required that each Defendant know about the scheme; know the scheme's object; know that the scheme would result in at least one conspirator's committing a pattern of racketeering acts; and agree and intend to facilitate or further that scheme").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

That a defendant must have "intended to participate in" a RICO enterprise does not require specific intent. *United States v. Wallis* found that a "district judge did not err when it declined to instruct the jury on specific intent" in "stat[ing] the law on RICO conspiracy." 630 Fed. App'x 664, 668 (9th Cir. 2015). "Unlike common law conspiracy, which requires that a participant specifically intend the object of the conspiracy be accomplished, RICO conspiracy requires only 'that two or more people agreed to commit a[t least two] crime[s] covered by the [RICO] … statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)." *Id.* (citing *Smith*, 568 U.S. at 110) (alterations in original); *see also United States v. Baker*, 63 F.3d 1478, 1493 (Proof of specific intent is not required in conviction for RICO conspiracy. Rather, "a defendant can be guilty of conspiring to violate RICO if he possesses the mental state necessary for conviction of the substantive RICO offense." (citation omitted)).

*Baumer* relied in part on *United States v. Muskovsky*, which states that as an element of a RICO conspiracy, a defendant must "[have been] aware of the essential nature and scope of the enterprise and intended to participate in it." 8 F.3d at 1346 (quoting *Muskovsky*, 863 F.2d at 1324). *Muskovsky* then clarified this statement:

> While there is no need to prove that the defendant intended personally to perform the two predicate acts required for RICO liability, the government does have to show more than 'mere association with conspirators, knowledge of a conspiracy, and presence during conspiratorial discussions[.]'

863 F.2d at 1324 (citations omitted).

Where "RICO claims are undoubtedly 'grounded in fraud,' the conspiracy allegations 'must satisfy the heightened pleading requirements of Rule 9(b)'. . . [and] give each of the defendants notice of the specific charges against them." *Tatung Co., Ltd. v. Hsu*, No. CV 13-01743 DOC, 2015 WL 11072178, at *25 (C.D. Cal. Apr. 23, 2015) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *see Nat. Immunogenics Corp. v. Newport Trial Grp.*, No. CV-15-02034 JVS, 2016 WL 11520711, at *13 (C.D. Cal. Aug. 1, 2016) (citing *Vess*, 317 F.3d at 1106) ("[W]hen, as here, the object of the conspiracy is fraudulent, the plaintiff must allege conspiracy under Rule 9(b)'s heightened pleading standards."). This means plaintiffs " 'must allege with particularity (1) an agreement to participate in an unlawful act[;] and (2) an injury caused by an unlawful overt act performed in furtherance of the agreement.' Conclusory allegations that RICO defendants entered into an agreement are insufficient." *Chung Goh v. Prima Fin. Grp., Inc.*, No. CV 17-03630-SVW-PJW, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) (quoting *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520-21 (N.D. Cal. 1990)).

The RICO claims advanced in the CAC are grounded in fraud; the alleged predicate acts are mail fraud and wire fraud. Therefore, Rule 9(b) applies to the RICO conspiracy claims as well. *See Tatung Co.*, 2015 WL 11072178, at *25 ("Although conspiracy claims are not uniformly subject to the heightened standard of Rule 9(b), as the RICO claims are undoubtedly 'grounded in fraud,' the conspiracy allegations 'must satisfy the heightened pleading requirements of Rule 9(b).' " (citing *Vess*, 317 F.3d at 1106)). For the same reasons that the CAC fails to state a RICO claim against any Defendants other than FCA US and KMA, it also fails to state a claim against those Defendants for RICO conspiracy. The CAC does not sufficiently identify those defendants who allegedly entered into an agreement whose

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

purpose was to pursue unlawful ends, or intended to participate in the alleged RICO enterprises. Rather, the CAC groups Defendants by vehicle manufacturer. This is insufficient to state a claim against each Defendant for the same reasons stated earlier.

As to FCA US, HMA and KMA, the CAC does allege sufficient facts to support the claim that each of these Defendants conspired to violate RICO, in violation of Section 1962(d). The CAC alleges that there was agreement, coordination and interdependence among each of these defendants, the ZF Defendants and the STMicro Defendants. It alleges that "ZF TRW, STMicro, Hyundai, and Kia agreed to conduct and participate, directly and indirectly, in the affairs of the Hyundai-Kia Enterprise through a pattern of racketeering activity." Dkt. 278 ¶ 592. It alleges the same agreement to participate in the FCA Enterprise existed among "ZF TRW, STMicro, and FCA." *Id.* ¶ 614. It further alleges that, without these Defendants' "willing participation in the conduct" of the Hyundai-Kia or FCA Enterprise, respectively, each Enterprise's "scheme and common course of conduct would have been unsuccessful." *Id.* ¶¶ 598, 620. Finally, it alleges that each Defendant "did knowingly conduct or participate, directly or indirectly, in the affairs of" its respective Enterprise "through a pattern of racketeering activity." *Id.* ¶¶ 599, 621.

The CAC alleges that information about manifestations of the Alleged Defect was shared among FCA, ZF TRW and STMicro, and among Hyundai, Kia, ZF TRW and STMicro, and that these Defendants worked together to investigate crashes and test Class Vehicles. *See Id.* ¶¶ 323, 324-28, 332-34, 336, 340, 342-49, 595(f) n.28, 596(d) (Hyundai and Kia); 396-97, 405-406, 408, 618(c) (FCA); 585(c)-(f) (Hyundai, Kia and FCA). It also alleges that, "[o]n October 20, 2015, Kia Motors America, Inc., Kia Motors Corporation, Hyundai Motor America, Inc., Hyundai Motor Co., Ltd., Hyundai MOBIS, and ZF TRW met in Korea to discuss the issue of the defective ACUs and EOS." *Id.* ¶ 337. The CAC then alleges that, after ZF TRW made a presentation to NHTSA on February 5, 2016, on February 25, 2016, it again "met with Kia, Hyundai, and Hyundai MOBIS in Korea to discuss its meeting with NHTSA and the continued investigation of airbag failures caused by EOS." *Id.* ¶ 339. The CAC alleges that these Defendants again met in Korea in May and July 2016, with "Kia Motors Corporation provid[ing] information to ZF TRW to report to NHTSA in advance of ZF TRW's meeting with NHTSA." *Id.* ¶ 341.

The CAC alleges that each of FCA, ZF TRW and STMicro depended on the others' concealment of the Alleged Defect, as did Hyundai, Kia, ZF TRW and STMicro. *See Id.* ¶¶ 614 ("For the conspiracy to succeed, FCA, ZF TRW, and STMicro had to commit to secrecy about the existence and scope of the defect with the ZF TRW ACUs contained in FCA Class Vehicles."); 592 ("For the conspiracy to succeed, Hyundai, Kia, ZF TRW, and STMicro had to commit to secrecy about the existence and scope of the defect with the ZF TRW ACUs contained in Hyundai and Kia Class Vehicles."). These allegations show interdependence. The inference is that, if the ZF or STM Defendants had disclosed the Alleged Defect to the public or NHTSA, there would have been no reason for FCA, HMA or KMA to continue attempting to conceal it.

Finally, as discussed above, the CAC alleges that FCA US, HMA and KMA each committed at least one predicate act of racketeering activity. Because each of these Defendants allegedly engaged in racketeering activity in furtherance of the respective RICO Enterprises, it can be inferred that they were "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346. The CAC "does not allege a 'mere association' with" the alleged RICO enterprises. *State Comp. Ins. Fund v. Capen*, No. CV 15-1279 AG, 2015 WL 13322034, at *5 (C.D. Cal. Dec. 18, 2015) (citing *Baumer*, 8 F.3d at 1346).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Because the existence of one "illegal agreement" among FCA, ZF TRW and STMicro, and another among Hyundai, Kia, ZF TRW and STMicro, "can be inferred from the words, actions, or interdependence of activities and persons involved," *Oki*, 298 F.3d at 775, and Plaintiffs adequately have pleaded that FCA US, HMA and KMA "knowingly and willfully participated in th[ose] agreement[s]," *Smith*, 568 U.S. at 110, Plaintiffs have stated a claim for RICO conspiracy as to FCA US, HMA and KMA.

\*                    \*                    \*

For the foregoing reasons, Plaintiffs have stated a claim for RICO violations as to FCA US and KMA. They also have stated a claim for RICO conspiracy as to FCA US, KMA and HMA. Therefore, as to Nationwide Count 2, the Joint Motion is **GRANTED IN PART and DENIED IN PART.** It is **DENIED** as to Plaintiffs' RICO and RICO conspiracy claims against KMA, and as to their RICO conspiracy claim against HMA, and it is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to all other claims against all other Defendants. Similarly, as to Nationwide Count 3, the Joint Motion is **GRANTED IN PART and DENIED IN PART**. It is **DENIED** as to Plaintiffs' RICO and RICO conspiracy claims against FCA US, and it is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to all other claims against all other Defendants. As to Nationwide Counts 1, 4, 5 and 6, the Joint Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

          c)     Non-RICO Nationwide Claims

Defendants argue that Plaintiffs' nationwide claims for common-law fraud and unjust enrichment fail because "Plaintiffs do not specify under which state's (or states') laws they are bringing these 'nationwide' claims." Dkt. 208 at 54.

A group of plaintiffs cannot bring a claim on behalf of a "nationwide" class without alleging the applicable states' laws. *See Vinci v. Hyundai Motor Am.*, No. SA-CV-17-0997 DOC, 2018 WL 6136828, at \*13 (C.D. Cal. Apr. 10, 2018); *Glenn v. Hyundai Motor Am.,* No. SA-CV-15-2052 DOC, 2016 WL 3621280, at \*13 (C.D. Cal. June 24, 2016); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611, at \*11 (N.D. Cal. Sept. 22, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008); *In re Static Random Access Memory (SRAM) Antitrust Litig.* ("*SRAM Antitrust Litigation*"), 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008). Courts have "f[ound] it prudent to refrain from guessing what state law or laws Plaintiffs are using as the basis for their claims" when Plaintiffs have failed to specify. *Vinci*, 2018 WL 6136828, at \*13; *see also Glenn*, 2016 WL 3621280, at \*13.

Because Plaintiffs "must identify which State's or States' law they rely upon" and have not done so, their "nationwide" claims for fraud and unjust enrichment fail. *SRAM Antitrust Litig.*, 580 F. Supp. 2d at 910. Therefore, the Joint Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to Nationwide Counts 7 and 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

C.      State Law Claims

1.      <u>Dismissal of Representative Plaintiffs</u>

After the CAC was filed, several named plaintiffs filed notices of the voluntary dismissal of their claims. *See* Dkts. 291, 333-34, 384. On October 12, 2020, Plaintiffs Ann Harland ("Harland") and Dragan Jagnjic ("Jagnjic") withdrew as named plaintiffs and putative class representatives and voluntarily dismissed their claims, without prejudice. Dkt. 291. Plaintiff Jan Freyman ("Freyman") took the same actions on March 17, 2021 (Dkt. 333); Plaintiff Carma Rockers ("Rockers") did so on March 17, 2021 (Dkt. 334); and Plaintiff Tammy Tyler ("Tyler") did so on November 8, 2021 (Dkt. 384). Plaintiff John Robinson ("Robinson") voluntarily dismissed his claims against the FCA Defendants on August 10, 2020. Dkt. 228.

Harland, Rockers and Tyler were the only named plaintiffs representing the putative classes from Virginia, Kansas and Louisiana, respectively. When those named plaintiffs voluntarily dismissed their respective claims against Defendants, "their claims became moot, thereby depriving the Court of subject matter jurisdiction." *Bernor v. Takeda Pharm. Am., Inc.*, No. LACV 12-04856, 2018 WL 588563, at *5 (C.D. Cal. Jan. 25, 2018) (citing, *inter alia, Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 924 (9th Cir. 2007)).

There has not been a request to substitute new class representatives for those putative classes. Further, because those classes have not been certified, the substitution of class representatives, if requested, may not have been permitted. *See Skilstaf, Inc. v. CVS Caremark Corp.*, No. C 09-02514 SI, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010) ("Ordinarily, substitution of class representatives is permitted only after a class has already been certified. This is because, when the named plaintiff's claim is dismissed at the pleading stage, there is no longer an Article III 'case or controversy' between the parties, and the action must be dismissed." (citations omitted)), *aff'd*, 669 F.3d 1005 (9th Cir. 2012); *Hitt v. Arizona Beverage Co. LLC*, No. 08-cv-809 WQH-POR, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) ("When deciding whether substitution of plaintiffs may be permitted after the named plaintiff's claims are voluntarily dismissed or otherwise become moot, the paramount consideration is whether the putative class has been certified.").

For the foregoing reasons, all claims brought by Harland on behalf of the putative Virginia class (*i.e.*, "Virginia Count[s]" 1 through 4) , those brought by Rockers on behalf of the putative Kansas class (*i.e.*, "Kansas Count[s]" 1 through 4) and those brought by Tyler on behalf of the putative Louisiana class (*i.e.*, "Louisiana Count[s]" 1 through 3) are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

2.      <u>Claims for Equitable Relief</u>

a)      Dismissal Under Fed. R. Civ. P. 12(b)(1)

The FCA Defendants argue that Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because they do not have standing. Dkt. 230 at 23-24. Although the FCA Defendants do not specify which of Plaintiffs' claims should be dismissed on this basis, a review of the cases on which the FCA Defendants rely for this request shows that the request appears to be as to the Unfair Competition Law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

("UCL"), California Consumers Legal Remedies Act ("CLRA") and False Advertising Law ("FAL") claims. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,* 992 F. Supp. 2d 962, 971-72 (C.D. Cal. 2014); *Cahen v. Toyota Motor Corp.*, 717 Fed. App'x 720, 723-24 (9th Cir. 2017).

(1)  Legal Standards

(a)  Article III Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Where a plaintiff lacks standing, a federal court "lacks subject matter jurisdiction over the suit." *Cetacean Cmty. V. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). A party seeking to invoke the limited jurisdiction of a federal court bears the burden of establishing that it has standing to bring the action. *Lopez v. Candaele*, 630 F.3d 775, 784-85 (9th Cir. 2010). "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). To pursue injunctive relief, "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.' " *Davidson*, 889 F.3d at 967 (citation omitted).

(b)  Statutory Standing

The CLRA, UCL and FAL each has a statutory standing requirement.

In 2004, Cal. Bus. & Prof. Code § 17204 was amended by Proposition 64 to restrict "private standing" to bring a claim under the UCL "to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320-21 (Cal. 2011) (citing Cal. Bus. & Prof. Code § 17204; *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227-28 (Cal. 2006)); *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). "Proposition 64 made identical changes to the standing provision of the false advertising law; where once 'any person acting for the interests of itself, its members or the general public' could sue, now standing is limited to 'any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter.' " *Kwikset*, 51 Cal. 4th at 321 (citing Cal. Bus. & Prof. Code § 17535) (internal quotation marks, brackets and citations omitted). "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 322. The latter requirement has been interpreted to require a showing of actual reliance. *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008), *as modified* (Jan. 28, 2008) ("The phrase 'as a result of' in its plain and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.").

Claims brought under the CLRA are subject to similar standing requirements. Under Cal. Civ. Code § 1780(a), CLRA actions may only be brought by a "consumer who suffers any damage as a result of the use or employment of a proscribed method, act, or practice. *See Veera v. Banana Republic, LLC,* 6 Cal. App. 5th 907, 916 n.3 (Cal. Ct. App. 2016) (citations and quotations omitted). Thus, reliance is also required to have standing to bring a claim under the CLRA, because § 1780(a) uses the same "as a result of" language. *See id.* ("[T]he CLRA does not require lost injury or property, but does require damage and causation. 'Under Civil Code section 1780, subdivision (a), CLRA actions may be brought only by a consumer who suffers any damage as a result of the use or employment of a proscribed method, act, or practice.... Accordingly, plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.' ") (citations and internal quotations omitted); *Morizur v. Seaworld Parks & Ent., Inc.*, No. 15-CV-02172-JSW, 2020 WL 6044043, at *17 (N.D. Cal. Oct. 13, 2020) ("[R]eliance is an essential element of a plaintiff's statutory standing to sue under the UCL, FAL, and CLRA."); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015) ("To have UCL and CLRA standing, [the plaintiff] must have purchased a product he would not otherwise have purchased, or paid a price premium for the product, in reliance on [the defendant's] misrepresentations."); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014) ("A plaintiff may bring a claim under the CLRA so long as she 'suffer[ed] any damage as a result of' a proscribed practice under the CLRA. This means that to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's *alleged misrepresentation* and that she suffered economic injury as a result." (citations omitted) (emphasis added)).

The standing requirement of § 1780(a) requires only that a consumer have suffered "any damage" due to the violation. *Hinojos*, 718 F.3d at 1107-8. This is distinct from the requirement of "lost money or property" that applies to standing under the FAL and UCL. The "any damage" requirement has been deemed a "capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices." *Id.* Accordingly, "any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing." *Id.*

(i)     Economic Injury Requirement

"The 'lost money or property' requirement . . . requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant, although 'the quantum of lost money or property necessary to show standing is only so much as would suffice to establish Article III injury in fact.' " *Hinojos*, 718 F.3d at 1104 (internal citations and brackets omitted). The economic injury requirement is satisfied, *inter alia*, when a consumer "purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately," and when a consumer "would not have bought the product but for the misrepresentation." *Kwikset*, 51 Cal. 4th at 330.

The CAC sufficiently alleges that Plaintiffs suffered an economic injury that qualifies as an injury-in-fact. "[T]he Ninth Circuit has repeatedly held that when a consumer alleges that she would not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

purchased property, or would have paid less for it had the seller not misrepresented the property or failed to disclose its limitations, the consumer has plausibly alleged an injury-in-fact. " *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 4d 1067, 1084 (N.D. Cal. 2021); *see, e.g., Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (citing *Kwikset*, 51 Cal. 4th at 317) (" '[P]laintiffs who can truthfully allege they were deceived by a [company's representations] into spending money to purchase [a] product, and would not have purchased it otherwise,' . . . have suffered an economic injury sufficient to confer standing under the UCL and Article III of the Constitution.").

The CAC alleges that, "[h]ad Defendants disclosed the ACU defect at the point of sale, Plaintiffs would have seen such disclosures and would not have bought or leased the vehicles or they would have paid a significantly lower price to purchase or lease them." Dkt. 278 ¶ 22. This is sufficient to allege injury-in-fact. *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1164–65 (C.D. Cal. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("[G]eneral factual allegations of injury (*i.e.,* the overpayment) suffice at the pleadings stage because courts must 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' Because every lead Plaintiff alleges a safety defect, and defective cars are not worth as much as defect-free cars, Plaintiffs plausibly establish an economic loss."); *cf. Sims v. Kia Motors Am., Inc.*, No. SA-CV-13-1791-AGD (FMx), 2014 WL 12558249, at *3 (C.D. Cal. Mar. 31, 2014) (plaintiffs had standing as to claims about purchased vehicles where they had alleged that the "gas tanks have specific defects," "that a car with these defects is worth less than a car without the defects," and that "absent Defendants' representations about safety and Defendants' concealment of the gas tank defects, Plaintiffs would not have purchased the vehicles or would have paid a lower price").

The reliance by the FCA Defendants on *Cahen*, 717 Fed. App'x at 723-24, is unpersuasive. Dkt. 230 at 24. The plaintiffs in *Cahen* alleged that their vehicles were "equipped . . . with computer technology that is susceptible to being hacked by third parties." *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 958 (N.D. Cal. 2015). They did not allege "that any of their vehicles ha[d] actually been hacked, or that they [were] aware of any vehicles that ha[d] been hacked outside of controlled environments." *Id.* at 959. The Ninth Circuit affirmed the dismissal of the action on this basis, finding that the plaintiffs "failed to sufficiently allege an injury due to the risk of hacking itself," because they "[did] not allege that any of their vehicles ha[d] actually been hacked." 717 Fed. App'x at 723. Because it was not alleged that the defect had occurred, plaintiffs' "economic loss theory" was "not credible." *Id.*; *see In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1165 n.11 ("When the economic loss is predicated solely on how a product functions, *and the product has not malfunctioned*, . . . something more is required than simply alleging an overpayment for a 'defective' product.") (emphasis added).

The CAC does allege that a material defect is already present and has had an effect on the Class Vehicles. That is consistent with the allegations in similar cases that were deemed sufficient as to claimed economic loss due to the purchase of a vehicle. *See Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 950; *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *4 (N.D. Cal. Aug. 1, 2017); *Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558249, at *3 (C.D. Cal. Mar. 31, 2014). "[W]hen a complaint includes concrete allegations of a *current universal* vehicle defect, . . . those allegations plausibly and specifically support an overpayment theory of injury. This is because '[a] vehicle with a defect is worth less than one without a defect.' " *Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 950 (citing *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1163).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Also unpersuasive is the citation by the FCA Defendants to *In re Toyota Motor Corp.* Dkt. 302 at 8-9 (citing 790 F. Supp. 2d at 1161). There, the plaintiffs were only required to show "something more . . . than simply alleging an overpayment for a 'defective' product" because, "the product ha[d] not malfunctioned." 790 F. Supp. 2d at 1165 n.11. Those were also the allegations in *Anderson v. Hyundai Motor Co. Ltd.*, which is also cited by the FDA Defendants and which itself cited *In re Toyota Motor Corp.* Dkt. 302 at 8-9 (citing No. SA-CV-13-1842-DMG (RNBx), 2014 WL 12579305, at *7 (C.D. Cal. July 24, 2014)). In contrast, the CAC alleges that a defect already has occurred, so "something more" is not required. Further, *In re Toyota Motor Corp.* explained that the requisite "something more" could be satisfied by "sufficiently detailed, non-conclusory allegations of the product defect." 790 F. Supp. 2d at 1165 n.11. The CAC provides those.

(ii)     Reliance Requirement

To establish standing to bring claims under the UCL, FAL or CLRA, Plaintiffs also must establish actual reliance. *See Davidson v. Kimberly-Clark Corp.*, No. C 14–1783 PJH, 2014 WL 3919857, at *9 (N.D. Cal. Aug. 8, 2014); *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013). The CAC does not satisfy this requirement.

Actual reliance is a required element of standing whether the claims are premised on a fraudulent misrepresentation or omission theory. *See Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *5 (N.D. Cal. Apr. 19, 2016) (citations omitted) ("[W]here the unfair competition or false advertising underlying a plaintiff's claim consists of a defendant's misrepresentation or omission, the UCL and the FAL require a plaintiff to establish actual reliance on the alleged misrepresentation or omission to establish statutory standing."); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *5-6 (N.D. Cal. Sept. 19, 2013) (actual reliance is required for Article III standing for UCL, FAL, and CLRA claims); *Kwikset*, 51 Cal. 4th at 326-27 (2011) (citing *Tobacco II*, 46 Cal. 4th at 306) ("A plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.' ").

"To establish actual reliance, the plaintiff must allege that 'the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.' " *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912–13 (N.D. Cal. 2020) (citing *Tobacco II*, 46 Cal. 4th at 326); *see Daniel*, 806 F.3d at 1225. "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Williams v. Apple*, 449 F. Supp. 3d at 912–13 (citing *Tobacco II*, 46 Cal. 4th at 326). It is unnecessary to establish that a defendant's misrepresentation or omission was " 'the sole or even the predominant or decisive factor influencing his conduct,' only that it 'played a substantial part' in the plaintiff's decision-making." *Id.* at 913 (citing *Tobacco II*, 46 Cal. 4th at 326). A plaintiff may do so by simply proving " 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.' " *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (citing *Mirkin v. Wasserman,* 858 P.2d 568, 574 (Cal. 1993)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The CAC sufficiently alleges that Plaintiffs would have made different decisions with respect to the purchase or lease of vehicles had they been aware of the Alleged Defect. *See* Dkt. 278 ¶ 74. "That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Daniel*, 806 F.3d at 1225 (citing *Tobacco II*, 46 Cal. 4th at 327). An omission is material if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.' " *Tobacco II*, 46 Cal. 4th at 327 (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-77 (Cal. 1997)). The Alleged Defect concerns the safety of the Class Vehicles, including the risk that the airbags will not deploy during a collision. Dkt. 278 ¶ 8. This is sufficient as to whether a reasonable person would consider this material to a decision on whether to purchase or lease a particular vehicle.

The CAC has a different shortcoming. It does not plead the "first sub-element [of reliance] -- that they would have been aware of a disclosure" by Defendants. *Daniel*, 806 F.3d at 1226*; see also Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 910 (N.D. Cal. 2020) (citing *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017)) ("Even though a change in behavior can be presumed if the omitted information is material, a plaintiff alleging fraud must still be able to show she would have been aware of the information had it been disclosed. ").

The ZF Defendants argue that Plaintiffs "plead almost nothing about their individual purchases or what materials they reviewed, and certainly plead no interactions with ZF." Dkt. 209 at 29. In response, Plaintiffs rely on the allegations that " '[h]ad Defendants disclosed the ACU defect at the point of sale, Plaintiffs would have seen such disclosures and would not have bought or leased the vehicles or they would have paid a significantly lower price to purchase or lease them.' " Dkt. 283 at 12 (citing Dkt. 278 ¶ 22). That Plaintiffs would have been aware of a disclosure had there been one is a conclusory allegation that, without more specificity, is not sufficient to establish reliance.

*Cooper* is analogous. 460 F. Supp. 3d at 911. It was determined that the plaintiffs there, relying on a similar allegation that "had [the defendant] disclosed the omitted information, Plaintiffs would have been aware of it," failed to establish reliance because they "ha[d] not alleged any facts in the [complaint] in support of such a theory." *Id.*; *cf. Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019) ("Plaintiffs Madani and Oushana plead no facts whatsoever to establish that they would have been aware of the safety defect, if it were disclosed."); *Gomez v. Carmax Auto Superstores California, LLC*, No. 2:14-CV-09019-CAS PL, 2015 WL 350219, at *9 (C.D. Cal. Jan. 22, 2015) ("[P]laintiff does not plead with particularity when she saw or heard the advertisements.").

"To make the reliance showing, . . . plaintiffs in misrepresentation cases must allege that they actually read the challenged representations." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (collecting cases). "Additionally, to adequately plead reliance for alleged misrepresentations, Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard and allege facts with particularity." *Williams v. Apple*, 449 F. Supp. 3d at 913 (citing *Haskins v. Symantec Corp.*, 654 Fed. App'x 338, 339 (9th Cir. 2016)). As for showing reliance on an alleged omission, the standard is more relaxed, and "[t]here are . . . various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made." *Madani*, 2019 WL 3753433, at *11 (citing *Daniel*, 806 F.3d at 1225; *Myers*, 2016 WL 5897740, at *6). However, plaintiffs are nonetheless required to plead some facts "to establish that they would have been aware of the safety defect, if it were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

disclosed." *Id.*

Plaintiffs have not alleged that they actually read Defendants' alleged misrepresentations, nor have they made sufficient allegations that they would have been aware of a disclosure of the Alleged Defect had one been made. The CAC alleges:

> Each Plaintiff decided to acquire a Class Vehicle based in part on the Vehicle Manufacturer Defendants' representations regarding the safety of the Class Vehicles and the effectiveness of their Occupant Restraint Systems, and/or the Vehicle Manufacturer Defendants presenting themselves as reputable manufacturers that value safety.

Dkt. 278 ¶ 706.

It then alleges that "each Defendant concealed the truth [of the ACU defect], intending for Plaintiffs and Class members to rely on partial representations and omitted facts when acquiring a Class Vehicle—which they did." *Id.* ¶ 716. These allegations are conclusory.

The CAC does not allege that Plaintiffs actually read the claimed misleading representations. Nor does it allege that Plaintiffs were exposed to the materials that should have included a disclosure of the Alleged Defect, or that they would have seen it had it been disclosed. Such allegations have been deemed necessary to plead reliance in a claim as to a vehicle defect. *Compare Daniel*, 806 F.3d at 1226 ("Plaintiffs presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their [vehicles]."), *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266, at *6 (N.D. Cal. June 4, 2018) ("[Plaintiff] . . . alleges that she interacted with sales personnel at Novato Ford, an authorized Ford dealership, who told her the engine had superior performance."), *and Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 910-11 (N.D. Cal. 2021) (citing Madani, 2019 WL 3753433, at *11) (internal citations omitted) ("[Plaintiff's] allegation, that he 'viewed and relied on the Monroney Labels on his cars before leasing his cars,' and that '[h]ad Defendants disclosed the AEB Defect, [Plaintiff] would not have leased the cars or would not have done so on the same terms,' is sufficient to show that he 'would have been aware of the disclosure if it had been made.' "), *with Buckley v. BMW N. Am.*, No. CV 19-1255-MWF-SS, 2019 WL 6465509, at *9 (C.D. Cal. Dec. 2, 2019) (internal citation omitted) ("[A]lthough the [complaint] alleges Plaintiff relied on misrepresentations made by BMW NA and BMW AG in advertisements, including a BMW brochure about the wheels of the Z4, [it] does not allege the other necessary information, such as when Plaintiff viewed the brochure or specific information about the other advertisements, including which advertisements, when he viewed those advertisements, and the material misrepresentations contained in those advertisements that he relied on in purchasing the Z4."), *and Ehrlich*, 801 F. Supp. 2d at 919–20 (citing *Sanchez v. Wal Mart Stores*, No. 06–CV–2573 JAM–KJM, 2009 WL 2971553, at *2–3 (E.D. Cal. Sept. 11, 2009) ("Plaintiff does not allege that, before he bought his MINI, he reviewed any brochure, website, or promotional material that might have contained a disclosure of the cracking defect. . . . [T]he Court agrees with BMW that the FAC is devoid of allegations that Plaintiff would have plausibly been aware of the cracking defect before he purchased his MINI had BMW publicized this information.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Because the CAC does not sufficiently plead reliance, Plaintiffs have not established statutory standing for the UCL, FAL and CLRA claims. Therefore, California Counts 5, 6 and 7 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to all Defendants.

        b)      Pleading Inadequacy of Legal Remedies

Defendants also argue that the claims for equitable relief fail because there is not a sufficient allegation that there are inadequate legal remedies. Dkt. 208 at 69. The CAC asserts a nationwide claim for unjust enrichment -- Nationwide Count 8 -- (*See* Dkt. 278 at 280) and several state unfair or deceptive trade practices claims, including ones pursuant to the UCL and CLRA. *See* Dkt. 278 at 6-19.[25] The CAC seeks various forms of equitable relief, including injunctive relief, restitution and disgorgement, as well as declaratory relief. *See id.* at 581-83.

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). Therefore, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996)); *see Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) ("Under *Sonner*, [plaintiffs] are required, at a minimum, to plead that they lack an adequate remedy at law."). Although *Sonner* most often has been applied to dismiss claims under the CLRA and the UCL, claims for equitable relief under other statutes have been dismissed as well. *See Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (applying *Sonner* to dismiss Illinois UDTPA claim).

Plaintiffs argue that "[t]his case is at the pleading stage" (*id.*) (internal quotation marks omitted), unlike *Sonner*, in which, after four years of litigation and on the eve of trial, the plaintiff strategically dropped her CLRA claims to secure a bench trial. *Sonner*, 971 F.3d at 837. However, "[n]othing in *Sonner* limits its precedential value to such circumstances," *Zaback v. Kellogg Sales Co.*, No. 320CV00268BENMSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020), and Plaintiffs have not presented any basis for such a determination. Instead, Plaintiffs cite cases that preceded *Sonner*. Dkt. 281 at 64 (citing *Infanzon v. Allstate Ins. Co.*, No. 19-CV-6483, 2020 WL 3891671, at *6 (C.D. Cal. Apr. 14, 2020); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233-34 (C.D. Cal. 2017)). More recent decisions have rejected the argument that *Sonner* does not apply at the pleading stage. *See Drake*, 2021 WL 2024860, at *7; *Pelayo v. Hyundai Motor Am., Inc.*, No. 820CV01503JLSADS, 2021 WL 1808628, at *9 (C.D. Cal. May 5, 2021); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121-22 (C.D. Cal. 2021); *Anderson v. Apple Inc.*, 500 F. Supp. 3d at 1009; *Teresa Adams v. Cole Haan, LLC*, No. SA-CV-20-913-JVS (DFMx), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020); *Zaback*, 2020 WL 6381987, at *4 (collecting cases).

Plaintiffs also argue that, pursuant to Fed. R. Civ. P. 8(d), they may plead claims in the alternative. Dkt. 281 at 64. Although "Plaintiffs are . . . entitled to plead alternative claims" under that rule, *In re Ford*

---

[25] Counts AL-3, AL-4, AZ-3, AZ-4, CA-5, CA-6, CA-7, CO-3, CO-4, CT-3, CT-4, FL-3, FL-4, IL-4, IL-5, IL-6, IN-3, IN-4, KS-3, KS-4, LA-2, LA-3, MD-3, MD-4, MA-3, MA-4, MI-3, MI-4, MN-3, MN-4, MN-5, MN-6, MO-3, MO-4, MT-3, MT-4, NV-3, NV-4, NJ-3, NJ-4, NY-3, NY-4, NY-5, NC-3, NC-4, OK-3, OK-4, PA-3, PA-4, SC-3, SC-4, SC-5, SC-6, SD-3, SD-4, TN-3, TN-4, TX-3, TX-4, VA-3, VA-4, WA-3, WA-4, WI-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014), " 'where [an equitable claim] relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Loo v. Toyota Motor Sales, USA, Inc.*, No. 819CV00750VAPADSX, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019) (citing *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5) (alteration in original).

"The dispositive issue in *Sonner* was the plaintiff's failure to plead inadequate remedies at law or explain why the remedies she requested in the complaint would be inadequate." *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021). Plaintiffs rely on one conclusory allegation in the CAC -- "Plaintiffs and Class members do not have an adequate remedy at law." Dkt. 281 at 64 (citing Dkt. 278 ¶ 730). This is insufficient.

"[L]ike *Sonner*, Plaintiffs fail to include any substantive allegations that they lack an adequate legal remedy." *Drake*, 2021 WL 2024860, at *7 (citing *Adams*, 2020 WL 5648605, at *2); *see Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8-19-CV-01298, 2021 WL 62502, at *17 (C.D. Cal. Jan. 4, 2021) ("[C]ourts have dismissed claims under the UCL and CLRA where the plaintiffs failed to allege facts that, if true, would demonstrate inadequacy." (citations omitted)); *Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*, No. CV-20-04149-DDP, 2021 WL 5507225, at *5 (C.D. Cal. Nov. 24, 2021) (dismissing the plaintiff's equitable claims where she "allege[d] . . . that she lacks an adequate remedy at law," and "[b]eyond that, . . . ma[de] no effort to allege, or explain in her Opposition, why her legal remedies are or may be inadequate"); *Adams*, 2020 WL 5648605, at *3 ("The problem for [the plaintiff] is that her complaint does not provide any allegations that explain why she will be irreparably harmed should the Court not grant equitable relief."). Plaintiffs also fail to explain why money damages are not an adequate remedy. *See Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC (GJSx), 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("[C]ourts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole."); *see also In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect, and reject the argument that injunctive relief . . . is appropriate.").

For the foregoing reasons, the Joint Motion is **GRANTED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to Plaintiffs' claims for equitable relief.[26] Because the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") only provides equitable remedies, Illinois Counts 5 and 6, for violation of the UDTPA, are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend; provided, however, any claims for damages based on Illinois Counts 5 and 6 for alleged violations of the UDTPA are precluded.[27]

---

[26] Because the UCL " 'provides only for equitable remedies,' " California Count 7 also fails on this basis. *Sonner*, 971 F.3d at 839 n.2 (citing *Hodge v. Superior Ct.*, 51 Cal. Rptr. 3d 519, 523 (Cal. Ct. App. 2006)); *see Sharma*, 524 F. Supp. 3d at 909 ("Plaintiffs cannot seek legal remedies under the UCL."); "Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV1101197CJANX, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146-49 (Cal. 2003)).

[27] *See In re Takata Airbag Prod. Liab. Litig.*, 464 F. Supp. 3d 1291, 1311 (S.D. Fla. 2020) (citing *Universal Gaming Grp. v. Taft Stettinius & Hollister LLP*, No. 1-15-0878, 2017 WL 1240860, at *9 (Ill. App. Ct. 2017)) ("[A]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

3.    Fraud Claims

a)    Alabama Counts 3 and 4

The CAC advances a claim against the Honda Defendants for an alleged violation of the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq.* Dkt. 278 ¶¶ 759-75 ("Alabama Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 776-93 ("Alabama Count 4").

The CAC does not specify which of the Honda Defendants, the ZF Defendants or the STMicro Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standards of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)). Therefore, Alabama Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to the Honda Defendants, the ZF Defendants and the STMicro Defendants.

b)    Arizona Counts 3 and 4

The CAC advances a claim against the FCA Defendants for an alleged violation of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. Ann. §§ 44-1521 *et seq.* Dkt. 278 ¶¶ 821-34 ("Arizona Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 835-48 ("Arizona Count 4").

The Arizona CFA prohibits

> [t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

Ariz. Rev. Stat. Ann. § 44-1522(A).

"The elements of a private claim under the [Arizona CFA] are a false promise or misrepresentation, made in connection with the sale or advertisement of merchandise, and the plaintiff's consequent and proximate injury from reliance on such a misrepresentation; such reliance need not be reasonable." *Ferren v. Westmed Inc.*, No. CV-19-00598-TUC-DCB, 2021 WL 2012654, at *4 (D. Ariz. May 20, 2021) (citation omitted).

---

plaintiff cannot seek damages under Illinois's Uniform Deceptive Trade Practices Act."); *Israel Travel Advisory Serv. Inc. v. Israel Identity Tours, Inc.*, No. 92 C 2379, 1994 WL 30984, at *5 (N.D. Ill. Jan. 28, 1994) ("The Illinois Uniform Deceptive Trade Practices Act only provides a cause of action for injunctive relief; damages are not available." (citing 815 ILCS § 510/3)), *aff'd*, 61 F.3d 1250 (7th Cir. 1995).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The FCA Defendants argue that Plaintiffs have failed to allege "the vital elements of reliance or causation." Dkt. 230 at 28. Although under the Arizona CFA "reliance need not be reasonable, . . . even unreasonable reliance must be based on the plaintiff's actual exposure to the omission." *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017); *see Cheatham v. ADT Corp.,* 161 F. Supp. 3d 815, 825-26 (D. Ariz. 2016) (citing *Parks v. Macro–Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979) ("A misrepresentation causes injury where the consumer actually relies on it, but 'unlike common law fraud, this reliance need not be reasonable.' ").

Plaintiffs argue that "because FCA failed to disclose material, safety-related defects, allegations of reliance can be inferred." Dkt. 290 at 23 (citations omitted). To support the argument that such an inference is appropriate under Arizona law, they cite *Siemer v. Associates First Capital Corp.*, No. 97-cv-281, 2001 WL 35948712 (D. Ariz. Mar. 30, 2001). *Id.* at 23-24 n.7. *Siemer* determined that, although reliance is a necessary element of a private Arizona CFA cause of action, "Plaintiffs ha[d] sufficiently demonstrated reliance by their purchase of credit life insurance." *Siemer*, 2001 WL 35948712, at *4. However, in that proceeding, "Plaintiffs [we]re seeking certification of a state-wide class concerning [Defendants'] scheme of selling credit life insurance pursuant to a deceptive standardized form." *Id.* The presumption that a member of the class had relied on Defendants' misrepresentations was reasonable. Thus, to be a member of the class under the applicable definition, a person must have purchased insurance by using the allegedly deceptive form. Therefore, exposure and corresponding reliance could be inferred. The allegations here do not support the application of this reasoning.

Plaintiffs have not adequately pleaded actual reliance. Therefore, Arizona Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

        c)      Colorado Counts 3 and 4

The CAC advances a claim against the Mitsubishi Defendants for an alleged violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq.* Dkt. 278 ¶¶ 1010-22 ("Colorado Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1023-35 ("Colorado Count 4").

The CAC does not specify which of the Mitsubishi Defendants, the ZF Defendants or the STMicro Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standards of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)).

Therefore, Colorado Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to the Mitsubishi Defendants, the ZF Defendants and the STMicro Defendants.

        d)      Connecticut Counts 3 and 4

The CAC advances a claim against the Honda Defendants for an alleged violation of the Connecticut Unlawful Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110a *et seq.* Dkt. 278 ¶¶ 1064-77 ("Connecticut Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1078-91 ("Connecticut Count 4").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Once again, the CAC does not specify which of the Honda Defendants, the ZF Defendants or the STMicro Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standards of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)).

Therefore, Connecticut Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to the Honda Defendants, the ZF Defendants and the STMicro Defendants.

e)      Florida Counts 3 and 4

The CAC advances a claim against the FCA Defendants, Honda Defendants, Hyundai-Kia Defendants, Toyota Defendants and Hyundai MOBIS for violation of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.* Dkt. 278 ¶¶ 1129-47 ("Florida Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1148-62 ("Florida Count 4").

"Under Florida law, a valid Florida Deceptive and Unfair Trade Practices Act claim must establish three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 5844872, at *3 (S.D. Fla. June 20, 2016) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). "A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. Dist. Ct. App. 2000); *see Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (citing *State, Off. of Att'y Gen. v. Com. Com. Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. Dist. Ct. App. 2007)) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.").

Florida Counts 3 and 4 are not sufficiently alleged because they lack the required particularity as to the Honda Defendants, the Toyota Defendants, Hyundai MOBIS, the ZF Defendants and the STMicro Defendants. They also fail for the same reason with respect to the Hyundai-Kia Defendants other than HMA and KMA and the FCA Defendants other than FCA US.

In support of these claims, the CAC alleges,

> [B]y misrepresenting the Class Vehicles and/or the defective ACUs installed in them as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the ACU defect, the FCA, Honda, Hyundai, Kia, Toyota Defendants, and Hyundai MOBIS engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

Dkt. 278 ¶ 1140. It further alleges,

> [B]y failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU defect, the ZF TRW and STMicro Defendants engaged in unfair methods of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce prohibited by Fla. Stat. § 501.204(1).

*Id.* ¶ 1155.

These vague and conclusory allegations that these Defendants misrepresented the Class Vehicles or failed to disclose the Alleged Defect, are the only ones made in support of these causes of action. The CAC does not include any specific factual allegations as to which of these Defendants engaged in particular fraudulent conduct. Instead, the CAC once again "lump[ed] together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764). This is inadequate to meet the standards of Fed. R. Civ. P. 9(b). For these reasons, Florida Counts 3 and 4 fail as to these Defendants.

Defendants also argue that the "economic loss rule—which generally states that a plaintiff may not recover damages in tort that do not involve physical injury—bars damages for affirmative misrepresentations in Florida . . . ." Dkt. 208 at 51 & n.10 (citing *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103-04 (S.D. Fla. 2019)). *Cardenas* held that Florida's economic loss rule bars a plaintiff's common-law fraudulent concealment claim seeking recovery of purely economic damages. However, *Cardenas* also concluded that the plaintiff stated a claim under FDUTPA, which is not affected by the economic loss rule. 418 F. Supp. 3d at 1103, 1105. By relying only on *Cardenas*, Defendants have not made a persuasive argument that the economic loss rule applies to Plaintiffs' FDUTPA claims.

Finally, Defendants argue these causes of action are time-barred as to Plaintiffs Choc, McPherson and Chaiken, whose claims accrued in 2013, and Accetta and Gales, whose claims accrued in 2015. Dkt. 208 at 65. Plaintiffs respond that Defendants' alleged fraudulent concealment of the Alleged Defect tolled the limitations period. Dkt. 281 at 63. "Pursuant to Florida Statute § 95.11(3)(f), the statute of limitations for a FDUTPA claim is four years." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017) (citing Fla. Stat. § 95.11(3)(f); *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti Spa, Platinum Yacht Collection No. Two, Inc.*, 505 Fed. App'x 899, 906 (11th Cir. 2013)). "The statute of limitations accrues at the time the product at issue is purchased." *Id.* (citing *S. Motor Co. of Dade Cty. v. Doktorczyk*, 957 So.2d 1215, 1218 (Fla. Dist. Ct. App. 2007)). Choc and Gales have brought claims against the Toyota Defendants, Dkt. 278 ¶ 1134, and Plaintiffs' FDUTPA claims already have been dismissed as to those Defendants. That has also been the outcome as to the claims McPherson and Chaiken against the Honda Defendants. *Id.* ¶ 1131. All of those Plaintiffs also bring FDUTPA claims against the ZF Defendants and the STMicro Defendants; those claims already have been dismissed as against those Defendants as well. *See id.* ¶ 1149.[28]

Among these Plaintiffs, only Accetta has brought a FDUTPA claim against the FCA Defendants that has not been dismissed. *See id.* ¶ 1130. Accetta is alleged to have purchased his Class Vehicle on August 25, 2015, so his FDUTPA claims accrued on that date. *See id.* ¶ 104. Accetta filed a complaint

---

[28]  Because the FDUTPA claims of Choc, McPherson, Chaiken and Gales fail to include allegations with sufficient particularity, Defendants' argument that these claims are also time-barred is not addressed in this Order. However, given that Defendants have raised the statute of limitations as an affirmative defense, to the extent that Plaintiffs intend to amend the CAC as to these claims, Plaintiffs shall include in the amended complaint allegations through which they seek to address Defendants' argument that these claims are time barred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

in this District on May 21, 2019, which is within the four-year limitations period. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00693 (C.D. Cal.).

For the foregoing reasons, Florida Count 4 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, because it is only pleaded against the ZF and STMicro Defendants. Florida Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, only as to the Honda Defendants, the Toyota Defendants, Hyundai MOBIS, as well as to the Hyundai-Kia Defendants except KMA and HMA and the FCA Defendants except FCA US. Plaintiffs have stated a claim under the FDUTPA against KMA, HMA and FCA US.

f)       Illinois Counts 3 and 4

The CAC advances a claim against the Hyundai-Kia Defendants and Hyundai MOBIS for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* Dkt. 278 ¶¶ 1194-1211 ("Illinois Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1212-28 ("Illinois Count 4").

"The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) 'is a regulatory and remedial statute intended to protect consumers … against fraud, unfair methods of competition, and other unfair and deceptive business practices.' " *Rodriguez v. Chase Home Fin., LLC*, No. 10 C 05876CH, 2011 WL 5076346, at *2 (N.D. Ill. Oct. 25, 2011) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)) (alteration in original). To state a claim under the ICFA, "the plaintiff must allege: '(1) a deceptive act or unfair practice occurred; (2) the defendant intended for plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff sustained actual damages; and (5) such damages were proximately caused by the defendant's deception." *Id.* (citing *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009)).

The ZF Defendants argue that these claims should be dismissed for lack of sufficient allegations as to causation. Dkt. 209 at 30-31 & n.12-13 (citing *Preston v. Am. Honda Motor Co.*, No. CV-18-38-R, 2018 WL 5099507, at *3 (C.D. Cal. May 24, 2018), *aff'd in relevant part*, 783 F. App'x 669 (9th Cir. 2019); *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009)). *Preston* is on point. There, the plaintiffs failed to establish causation because they "d[id] not allege that they read or relied on the Monroney stickers or any other pre-sale communication before purchasing their vehicles." 2018 WL 5099507, at *3. Because they did not establish any "causal link between the allegedly deceptive omission and the harm," their ICFA claim failed. *Id.* The Ninth Circuit affirmed, concluding that "[t]he district court correctly dismissed the amended complaint because plaintiffs did not 'allege that they read or relied on the Monroney stickers or any other pre-sale communication before purchasing their vehicles.' " 783 Fed. App'x at 670. " '[T]o maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause.' " *Id.* (quoting *De Bouse*, 922 N.E.2d at 316) (alterations in original); *see Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC AN, 2011 WL 1832941, at *7 (C.D. Cal. May 12, 2011) (citing *Oshana v. The Coca-Cola Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005); *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (Ill. 2002)) ("To adequately plead the proximate causation element, a plaintiff must allege 'his or her knowledge of the deceptive acts and purported misstatements.' . . . In the context of deceptive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

advertising, this requires a Plaintiff to allege that she personally 'saw, heard or read any of defendant's ads.' ").

As in *Preston*, the CAC does not sufficiently allege that Plaintiffs ever read, relied on or were even exposed to the alleged misrepresentations or omissions. Therefore, its allegations are not sufficient on the issue of proximate causation as to the ICFA claims. Therefore, Illinois Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

g)   Indiana Counts 3 and 4

The CAC advances a claim against the Kia Defendants and Hyundai MOBIS for violation of the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code §§ 24-5-0.5-3 *et seq.* CAC ¶¶ 1285-1300 ("Indiana Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 1301-17 ("Indiana Count 4").

Defendants argue that these claims are time-barred. Dkt. 208 at 65; *see* Dkt. 219 at 32. Plaintiffs respond that Defendants' alleged fraudulent concealment of the Alleged Defect tolled the limitations period. Dkt. 281 at 63 & n.21 (citing *Carroll v. BMW of N. Am., LLC*, No. 19-cv-224, 2019 WL 4243153, at *7 (S.D. Ind. Sept. 6, 2019)).

"An action under the IDCSA must be brought within two years after the deceptive act." *Carroll*, 2019 WL 4243153, at *7 (citing Ind. Code § 24-5-0.5-5(b)). "[T]he statutory period commences to run at the occurrence of the deceptive act." *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964-65 (Ind. Ct. App. 2000).

Plaintiffs' argument that fraudulent concealment tolls the IDCSA's limitations period is not sufficiently supported by the allegations in the CAC. "The statute of limitations may be tolled if the defendant fraudulently conceals the action giving rise to liability." *Carroll*, 2019 WL 4243153, at *7 (citing *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987); Ind. Code § 34-11-5-1). However, "the doctrine of fraudulent concealment is 'narrowly defined,' as the concealment must be 'active and intentional,' and there must be some trick or contrivance intended by the defrauder. . . . Mere silence will not constitute concealment, absent a duty to speak arising from a fiduciary or confidential relationship." *Id.* (citing *Ludwig*, 510 N.E.2d at 697). Plaintiffs have not alleged that there was a fiduciary or confidential relationship between any Indiana Plaintiff or any Defendant, nor have they sufficiently alleged that Defendants engaged in any "trick or contrivance." Therefore, the application of fraudulent concealment is not sufficiently supported by the present allegations in the CAC.[29]

The Indiana Plaintiffs, Miller and Ogorek, purchased their respective Class Vehicles on October 22, 2016, and July 26, 2013, respectively. CAC ¶¶ 82-83. Each filed his or her claims in this action on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00963 (C.D. Cal.). At that time, absent some form of tolling, the limitations period had run. Therefore, Indiana Counts 3 and 4 are

---

[29]  Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Indiana Counts 3 and 4 have been dismissed without prejudice, so that the Indiana Plaintiffs have the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

**DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

> h)    Maryland Counts 3 and 4

The CAC advances a claim against the Hyundai-Kia Defendants and Hyundai MOBIS for violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Com. Law §§ 13-101 *et seq.* CAC ¶¶ 1441-57 ("Maryland Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1458-72 ("Maryland Count 4").

The MCPA prohibits "unfair, abusive or deceptive trade practices," including "any [f]alse . . . or misleading oral or written statement . . . which has the capacity, tendency or effect of deceiving or misleading consumers" and "any . . . [f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code Com. Law § 13-301. "Private parties who bring a suit must establish that they "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014) (citing *Green v. Wells Fargo Bank, N.A.*, Civ. Action No. DKC 12–1040, 2014 WL 360087, at *3 n. 3 (D. Md. Jan. 31, 2014)). "An MCPA claim 'sounds in fraud,' and must be pleaded with particularity." *Nyarko v. BMW of N. Am., LLC*, No. CV RDB-18-3618, 2020 WL 1491361, at *7 (D. Md. Mar. 27, 2020)(citing Fed. R. Civ. P. 9(b); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013)).

Maryland Counts 3 and 4 fail for lack of particularity as to the Hyundai-Kia Defendants, other than KMA and HMA, and as to Hyundai MOBIS, the ZF Defendants and the STMicro Defendants. In support of these claims, the CAC alleges as follows:

> In the course of their business, the Hyundai and Kia Defendants and Hyundai MOBIS, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles or the defective ACUs, as detailed above.

CAC ¶ 1449. It then alleges:

> Specifically, by misrepresenting the Class Vehicles and/or the defective ACUs installed in them as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the ACU defect, the Hyundai and Kia Defendants and Hyundai MOBIS engaged in one or more of the following unfair or deceptive business practices prohibited by Md. Code Com. Law § 13-303:

> . . .

*Id.* ¶ 1450.

The CAC then alleges examples of such alleged misconduct, none of which attributes a particular misrepresentation or omission to a particular Defendant. Identical allegations are made as to the ZF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Defendants and the STMicro Defendants. *Id.* ¶ 1464-65. The vague and conclusory allegations that these Defendants misrepresented the Class Vehicles or failed to disclose the Alleged Defect, are not then supported by any specific factual allegations. Thus, there are no allegations as to which of these Defendants engaged in particular fraudulent conduct. Instead, the CAC "lump[ed] together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764). These allegations do not meet the standards of Fed. R. Civ. P. 9(b), which have been addressed above. Therefore, Maryland Counts 3 and 4 do not adequately state claims against these Defendants.

The ZF Defendants also argue that Plaintiffs have failed to plead reliance as required under the MCPA. Dkt. 209 at 28 & n.11 (citing *Tait*, 2011 WL 1832941, at *7); *see* Dkt. 209-1 at 4. "Consumers must prove that they relied on the misrepresentation in question to prevail on a damages action under the MCPA." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (citing *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 (Md. 2000)); *see also Nyarko v. BMW of N. Am., LLC*, No. CV RDB-18-3618, 2020 WL 1491361, at *7 (D. Md. Mar. 27, 2020) (citing *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012)) ("To state a claim under the MCPA, plaintiffs must allege that the defendant's conduct was '(1) an unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] them actual injury.' ") (alterations in original). The same is true for "[a] party seeking to recover damages on a material omission theory under the MCPA." *Bank of Am., N.A.*, 822 F. Supp. 2d at 534. Plaintiffs' claims under the MCPA seek damages and injunctive relief. CAC ¶¶ 1457, 1472.

The standard for assessing reliance depends on whether an MCPA claim is based on alleged misrepresentation or fraudulent omission. "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Bank of Am., N.A.*, 822 F. Supp. 2d at 532; *see Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013) ("To establish reliance under the MCPA, Plaintiffs must plead and prove that the false or misleading statement substantially induced their choice."). As discussed above, Plaintiffs have not shown that they were exposed to, or relied on Defendants' alleged misrepresentations. Therefore, the CAC does not adequately allege a claim under the MCPA based on a misrepresentation theory. However, "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Bank of Am., N.A.*, 822 F. Supp. 2d at 535. The CAC sufficiently alleges that, had Defendants disclosed the Alleged Defect to Plaintiffs at or before the point of sale, Plaintiffs would not have purchased or leased their Class Vehicles.

Defendants next argue that the economic loss rule bars Plaintiffs' claims under the MCPA. Dkt. 208 at 51-52 & n.30[30] To state a claim under the MCPA, Plaintiffs must "plead actual injury or harm." *Lloyd v. General Motors Corp.*, 397 Md. 108, 148 (Md. Ct. App. 2007). "[I]n order to articulate a cognizable injury under the [MCPA], the injury must be objectively identifiable." *Id.* at 143. In *Lloyd*, a class action "brought . . . to recover from the respondents the cost of repairing and/or replacing the front seats in each [class] vehicle," the petitioners satisfied this requirement. *Id.* at 117, 150. "They allege[d] that the

---

[30] Defendants argue that this rule applies to the following claims: Nationwide Count 7 as brought by Plaintiffs in AL, CA, FL, MD, MI, MO, NJ, NC, OK, PA, SC, TN, and WI; AL Counts 3-4; CA Counts 5-7; FL Counts 3-4; MD Counts 3-4; MI Counts 3-4; MO Counts 3-4; NJ Counts 3-4; NC Counts 3-4; OK Counts 3-4; PA Counts 3-4; SC Counts 3-6; TN Counts 3-4; and WI Count 3. Dkt. 208 at 51 n.9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

seats [in their vehicles were] unsafe because they collapse[d] rearward in moderate and severe rear-impact collisions." *Id.* at 117-18. None "ha[d] experienced personal injury as a result of the mechanical failure that caused the alleged defect." *Id.* at 118. Rather, all "allege[d] that, as a result of the respondents' misrepresentation or omission, they suffered a loss, measured by the amount it will cost them to repair the defective seatbacks." *Id.* at 149. This loss was deemed a sufficiently pleaded to state a claim under the MCPA. *Id.* at 150.

*Lloyd* was distinguished in *Chambers v. King Buick GMC, LLC.* 43 F. Supp. 3d 575, 621 (D. Md. 2014). In that putative class action arising from an alleged vehicle defect, the plaintiff alleged that, when she purchased a vehicle from the defendant, it was not disclosed to her that the vehicle previously had been used for short-term rentals. *Id.* at 583. The plaintiff's purely economic loss was found to be aligned more with the loss alleged in another vehicle defect case, *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670 (D. Md. 2010), than *Lloyd*. In *Jones*, as in *Chambers*, the plaintiff alleged that the defendant violated the MCPA by "failing to disclose," among other things, that the vehicle she was purchasing had previously been used as a short-term rental vehicle. 752 F. Supp. 2d at 683. *Jones* concluded that the plaintiff failed to plead actual injury under the MCPA:

> The complaint does not point to any "cost of remedy" or any other actual harm with respect to Koons' alleged concealment of the car's prior use as a rental car. Jones merely states that she would not have purchased the car or "would have demanded significant price concessions." . . . She does not allege that she incurred additional repair costs, for instance, because of the car's prior use. Nor does she allege that the concealed fact caused any diminution in the value of the car.

*Id.* at 684. Relying on *Jones*, *Chambers* also found that the plaintiff failed to state an MCPA claim, because her only alleged injury was that "she paid significantly more for the vehicle than it was worth and was thus overcharged." *Chambers*, 43 F. Supp. 3d at 622.

In the CAC, Plaintiffs provide the following allegations as to their loss:

> But for Defendants' fraud, Plaintiffs and Class members would not have purchased the Class Vehicles, or would have paid less for them. Plaintiffs and Class members have suffered damages as a result of Defendants' fraud because they have been deprived of the benefit of their bargain in acquiring vehicles with full functional ACUs, airbags, and seatbelts.

CAC ¶ 720.

As shown, these allegations include two forms of harm. *First*, each Plaintiff would not have purchased his or her Class Vehicle had the Alleged Defect been disclosed. *Second,* each also was deprived of the difference between the value of the defect-free vehicle he or she thought he or she was purchasing. Plaintiffs' alleged loss is closer to the one alleged in *Lloyd* than in *Chambers* and *Jones*. Although, as in *Chambers* and *Jones*, Plaintiffs do not seek to recover the cost of repairing or replacing their respective Class Vehicles, they do argue that "the concealed fact caused . . . diminution in the value of the [Class Vehicles]." *Jones*, 752 F. Supp. 2d at 684. This is an injury that is "objectively identifiable." *Lloyd*, 397 Md. at 143. Thus, it is sufficient to state a claim under the MCPA. *Cf. Robinson v. Gen. Motors LLC,* No. CV 20-663-RGA-SRF, 2021 WL 3036353, at *15 (D. Del. July 19, 2021) (internal citations omitted)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

("[Plaintiff] alleges that, had GM disclosed the Defect, she 'would not have purchased, or would have paid significantly less, for' her Class Vehicle. [Plaintiff] also alleges that, as a result of GM's failure to disclose the Defect, she 'paid or will be required to pay significantly more to repair or replace the CUE than is reasonably anticipated and represented, and the Vehicles have suffered diminution in value.' Thus, [Plaintiff] has stated a cognizable injury as required to state a claim under the MCPA.").

Finally, Defendants argue that "Maryland[] . . . consumer protection claims are . . . precluded when an alleged defect has not manifested." Dkt. 208 at 68 (citing *Chambers*, 43 F. Supp. 3d at 622). However, the CAC alleges that "ZF TRW ACUs with the DS84 ASIC have a dangerous defect," in that they "are much more vulnerable to bursts of electricity than are other ACUs." Dkt. 278 ¶ 10. All Class Vehicles have a ZF TRW ACU with a DS84 ASIC. *See Id.* ¶ 7 n.3. This is sufficient to state that the Alleged Defect is present in all Class Vehicles.

For the foregoing reasons, Plaintiffs have adequately stated a claim under the MCPA, based on alleged fraudulent omissions, but only as to HMA and KMA. Therefore, Maryland Count 4 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, because it only names ZF and STMicro as Defendants. Maryland Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to all of the Hyundai-Kia Defendants except HMA and KMA.

i)      Massachusetts Counts 3 and 4

The CAC advances a claim against the Kia Defendants and Hyundai MOBIS for an alleged violation of the Massachusetts consumer protection law ( the "Massachusetts Law"), Mass. Gen. Laws ch. 93a, §§ 1 *et seq.* Dkt. 278 ¶¶ 1500-14 ("Massachusetts Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1515-30 ("Massachusetts Count 4").

Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, § 2(a). "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.' " *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (citing *PMP Assoc., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)). "To prevail on a Chapter 93A claim, the plaintiff 'must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result.' " *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (citing *Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.*, 384 F.Supp.2d 442, 446 (D. Mass. 2005)).

Massachusetts Counts 3 and 4 fail for lack of particularity as to all Defendants except KMA. Each of the allegations supporting these claims describes the allegedly "unfair or deceptive acts or practices" of "[t]he Kia Defendants," "Hyundai MOBIS" or "[t]he ZF TRW and STMicro Defendants." *See*, e.g., Dkt. 278 ¶¶ 1506, 1521. As noted, each of these terms refers to multiple corporate entities. *See*, e.g., *id.* ¶ 43 ("The Kia Defendants (or 'Kia') are Kia Motors Corporation and Kia Motors America, Inc. Hyundai MOBIS Co. Ltd. and Mobis Parts America, LLC are the Hyundai MOBIS Defendants (together, 'Hyundai MOBIS')."). Plaintiffs have not made any allegations about which of these Defendants specifically engaged in which allegedly deceptive or unfair conduct. Instead, they have impermissibly "lump[ed]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764). This is inadequate to meet the standards set by Fed. R. Civ. P. 9(b). Therefore, Massachusetts Counts 3 and 4 fail as to all Defendants except KMA.

The ZF Defendants also argue that Plaintiffs' claims under the Massachusetts Law fail because they have not pleaded causation. Dkt. 209 at 30-31 (citing *Frappier v. Countrywide Home Loans, Inc.*, 2013 WL 1308602, at *19 (D. Mass. Mar. 31, 2013)). "Causation is a necessary prerequisite for recovery under Chapter 93A." *Frappier v. Countrywide Home Loans, Inc.*, No. 09-CV-11006-DJC, 2013 WL 1308602, at *19 (D. Mass. Mar. 31, 2013), *aff'd*, 750 F.3d 91 (1st Cir. 2014). To establish causation, a plaintiff need not show "actual reliance on a misrepresentation," only "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 630 n.12 (Mass. 2008) (citations and internal quotation marks omitted). The CAC alleges that, had the Alleged Defect been disclosed by Defendants, Plaintiffs would not have purchased or leased the Class Vehicles and would not have suffered the corresponding, alleged harm. *See,* e.g., Dkt. 278 ¶ 1508. This is sufficient to establish causation when actual reliance is not required.

The Hyundai-Kia Defendants argue that Plaintiffs have only pleaded an economic injury, and "[a] solely monetary loss is not a cognizable injury" under Massachusetts Law. Dkt. 219 at 35. The type of loss that is recoverable under the Massachusetts Law includes "a readily quantifiable loss of money or property." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 504 n. 20 (Mass. 2013). To establish a cognizable loss, a plaintiff must "show 'real' economic damages," as opposed to an "injury as a violation of some abstract 'right' like the right not to be subject to a deceptive act that happened to cause no economic harm." *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010).

Decisions by Massachusetts courts have distinguished between those plaintiffs who "received everything they had bargained for," and, therefore, did not allege a cognizable injury under the Massachusetts Law, and those who had been deprived of something of value for which they had paid. For example, in *Iannacchino*, the plaintiffs sought to represent a class of owners of Ford vehicles that allegedly "contain[ed] defective outside door handle systems." *Iannacchino*, 451 Mass. at 626. The plaintiffs alleged that, due to this defect, "the doors on [their] vehicles might open accidentally in certain types of collisions, putting vehicle occupants at risk of significant personal injury or death." *Id.* Although none of the plaintiffs personally had experienced the alleged effect of this defect, *Iannacchino* found that establishing that Ford had not complied with a federal safety statute would be sufficient to establish a concrete economic loss – "overpayment" – that would be "measurable by the cost to bring the vehicles into compliance." *Id.* at 631 Such an injury was deemed to be cognizable under the Massachusetts Law. *Id.* at 631-32. A plaintiff who bargains to purchase a vehicle that complies with federal safety statutes and receives one that does not has not received the benefit of his or her bargain. This is deemed to be sufficient to show a real economic loss.

In contrast, in *Bellermann v. Fitchburg Gas & Elec. Light Co.* the plaintiffs did not claim that they had received a product that was worth less than they had paid for it. 54 N.E.3d 1106, 1008 (Mass. 2016). Instead, they alleged that the defendant's noncompliance with a state regulation could have caused a harm to them that never actually materialized. The plaintiffs had received everything that they had bargained for, and the fact that they could have been deprived of some value for which they had paid was deemed to be too speculative to state a cognizable injury under the Massachusetts Law. *Id.* at 75-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

76.

Similarly, the plaintiff in *Shaulis v. Nordstrom, Inc.* alleged that she had purchased a sweater at a retail store based on a deceptive price tag. 865 F.3d 1, 5 (1st Cir. 2017). Her alleged injury was that she had purchased a sweater that, absent Nordstrom's deception, she would not have purchased. *Id.* "This contention" was deemed to be "simply another way of saying that [she] was wrongfully deceived by Nordstrom." *Id.* at 11. "She identifie[d] no objective injury traceable to the purchased item itself—for example, that the sweater was poorly made or that its materials were misrepresented." *Id.* Because she thus had received all of the value for which she had bargained – a defect-free sweater – she failed to allege a cognizable injury that was "distinct from the claimed deceptive conduct itself." *Id.* (citations omitted).

*Rule* is similar. There, the plaintiff purchased a heartworm medication for dogs ("ProHeart 6") from its manufacturer, and had the medication administered to her dog. 607 F.3d at 251. After discovering that the manufacturer had failed to disclose a risk of death for dogs taking the medication, she brought a claim against the manufacturer under the Massachusetts Law. *Id.* The plaintiff was found not to have pleaded a cognizable injury; the one she alleged was deemed to be too speculative. Because "she [had] used the product and *in fact* suffered no economic injury at all," that she could have suffered harm was not a sufficient injury. *Id.* at 253 (emphasis in original). Instead, she had received the full benefit of her bargain – as *Shaulis* described it, "effective medication without side effects." *Shaulis*, 865 F.3d at 11.

Unlike the complaints in *Bellermann*, *Shaulis* and *Rule*, the CAC alleges that the Plaintiffs have not received the full value of the product for which they bargained. They allegedly bargained for a vehicle that was free of defects, but received a vehicle that was inherently defective. Thus, their overpayment for the quality of being defect-free constitutes a concrete economic injury that is sufficiently distinct from Defendants' alleged deceptive conduct.

For the foregoing reasons, Plaintiffs have adequately alleged causation and injury under the Massachusetts Law. Therefore, they have stated a claim under the Massachusetts Law, but only with respect to KMA. Consequently, Massachusetts Count 4 is **DISMISSED WITHOUT PREJUDICE,** *i.e.*, with leave to amend, because it is not pleaded with particularity as to any Defendant. With respect to Massachusetts Count 3, Plaintiffs have stated a claim as to KMA, but KMC already has been dismissed for lack of personal jurisdiction.

j)      Michigan Counts 3 and 4

The CAC advances a claim against the Kia Defendants and Hyundai MOBIS for an alleged violation of the Michigan Consumer Protection Act ("Michigan CPA"), Mich. Comp. Laws §§ 445.901 *et seq.* Dkt. 278 ¶¶ 1558-72 ("Michigan Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 1573-87 ("Michigan Count 4").

To state a claim for violation of the Michigan CPA, "a plaintiff must establish: 1) that the defendant made a material misrepresentation that was false; 2) the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; 3) that the plaintiff acted in reliance upon it; and 4) resulting damages." *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(citing *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727 (Mich. Ct. App. 1996)).

The Hyundai-Kia Defendants argue that Plaintiffs have failed to plead the required element of reliance. Dkt. 219 at 27. Reliance is a required element under the Michigan CPA. *See In re OnStar Cont. Litig.*, 278 F.R.D. at 378; *Shain v. Advanced Techs. Grp., LLC*, No. CV 16-10367, 2017 WL 768929, at *11 (E.D. Mich. Feb. 28, 2017). However, "members of a class proceeding under the [Michigan] Consumer Protection Act need not individually prove reliance on the alleged misrepresentations. It is sufficient if the class can establish that a reasonable person would have relied on the representations." *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 429 Mich. 410, 418 (Mich. 1987); *see Shain*, 2017 WL 768929, at *11 (citations omitted) ("[W]hile *Dix* holds that 'class allegations can be based on what a reasonable person would have relied upon, a named plaintiff bringing a putative class action under the MCPA must still allege actual reliance.' "). Based on the allegations in the CAC, it can reasonably be inferred that, when purchasing or leasing a vehicle, a reasonable person would have relied on Defendants' safety-related representations made in their statements to NHTSA, Monroney Labels, in-vehicle labels and owner's manuals. Therefore, the CAC adequately pleads reliance under the Michigan CPA.

Defendants next argue that the economic loss rule bars Plaintiffs' claims under the Michigan CPA. "Michigan's economic-loss doctrine prohibits buyers from bringing tort suits against sellers for economic losses arising from the product that the parties exchanged in a commercial context." *Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 777 (6th Cir. 2019) (citing *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 615 (Mich. 1992)). "The phrase 'economic loss' generally refers to non-physical commercial losses (like the money spent on a faulty product or the lost sales caused by its poor performance) in contrast to the injuries that have long been the central domain of tort law: physical injuries 'to the plaintiff's person or property (property other than the product itself).' " *Id.* (citing *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990)).

Michigan courts have carved out a narrow exception to the applicable economic loss rule -- for fraudulent inducement claims. *See Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 532 N.W. 2d 541, 544-45 (Mich. Ct. App. 1995). *Huron Tool*, which first adopted this exception, distinguished between two situations. In the first, the "parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Id.* at 545. In the second, "the only misrepresentation by the dishonest party concerns the quality or character of the goods sold." *Id.* In the latter scenario, "the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." *Id.* Therefore, *Huron Tool* held that the fraudulent inducement exception to the economic loss rule did not apply there. *Id.*; *see General Motors Corp. v. Acme Ref. Co.,* 513 F. Supp. 2d 906, 912-13 (E.D. Mich. 2007). *Huron Tool* presented "an exception to this exception, *i.e.,* the economic-loss doctrine does apply to claims for fraudulent inducement if the allegedly fraudulent misrepresentations relate solely to the 'quality or character of the goods sold.' " *Irwin Seating Co. v. Int'l Bus. Machines Corp.*, 306 F. App'x 239, 243 (6th Cir. 2009) (citing *Huron Tool*, 532 N.W. 2d at 545).

The CAC alleges that Defendants fraudulently misrepresented the Class Vehicles as safe while failing to disclose the Alleged Defect. These alleged fraudulent misrepresentations concern the quality of the Class Vehicles. Therefore, the exception for fraudulent inducement does not apply, and the economic loss rule does. *See Think Operations, LLC v. Top Shelf Barber Supplies, LLC,* No. 1:19-CV-752, 2021

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

WL 21597, at *5 (W.D. Mich. Jan. 4, 2021) (citing *Huron Tool*, 532 N.W. 2d at 544) ("[I]f a seller of goods makes a representation about the character or quality of the goods to induce a commercial buyer to purchase those goods, the buyer should make that representation a part of the warranties in the agreement, if that representation is important to the buyer. The buyer cannot resort to a tort claim after the fact to cover for its failure to specify its expectations in the contract.").

That Plaintiffs' claims under the Michigan CPA are barred by the economic loss rule is consistent with the principle that, "[u]nder Michigan law, where a party seeks to recover solely for economic injuries caused by a defective product purchased for commercial purposes, contract principles, as supplied by the Uniform Commercial Code (UCC), provide the exclusive remedy." *G.H.S. Corp. v. Cenveo, Inc.*, No. 1:15-CV-00007-RHB, 2016 WL 8467614, at *5 (W.D. Mich. Mar. 4, 2016) (citing *Neibarger*, 486 N.W.2d at 618–19).

The CAC also advances claims under Michigan law for breach of express and implied warranties that are supported by similar allegations. *Cf. Think Operations*, 2021 WL 21597, at *4 (citing *Huron Tool*, 532 N.W.2d at 545) (alterations in original) ("Fraud that falls within the economic loss rule is often 'undergirded by factual allegations identical to those supporting [the] breach of contract counts[.]' "). These claims provide an adequate remedy for Plaintiffs' "economic injuries caused by a defective product purchased for commercial purposes." *G.H.S. Corp.*, 2016 WL 8467614, at *5; *see DBI Invs., LLC v. Blavin,* 617 F. App'x 374, 382 (6th Cir. 2015) (citing *Huron Tool,* 532 N.W.2d at 545) ("Claims of fraud 'extraneous to the contract' are permissible, whereas 'fraud interwoven with the breach of contract' cannot support an independent claim.").

For the foregoing reasons, Michigan Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

k)     Minnesota Counts 3 Through 6

The CAC advances a claim against the FCA Defendants, Honda Defendants, Kia Defendants and Hyundai MOBIS for an alleged violation of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. §§ 325F.68 *et seq.* and Minn. Stat. § 8.31, subd. 3a, Dkt. 278 ¶¶ 1621-37 ("Minnesota Count 3"), and for violation of the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §§ 325D.43 *et seq.* Dkt. 278 ¶¶ 1638-52 ("Minnesota Count 4"). It also includes claims against the ZF and STMicro Defendants under the same statutes. *Id.* ¶¶ 1653-67 (MPCFA) ("Minnesota Count 5"), ¶¶ 1668-80 (MDTPA) ("Minnesota Count 6").

The FCA Defendants and the Hyundai-Kia Defendants argue that "Minnesota law allows only injunctive relief under the [MDTPA]." Dkt. 230 at 32; Dkt. 219 at 34. "Under the MDTPA, '[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it,' and the 'prevailing party' can collect costs." *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1096–97 (D. Minn. 2017) (citing Minn. Stat. § 325D.45 subd. 1, 2) (alteration in original). "The statute does not provide for monetary damages; 'the sole statutory remedy for [Plaintiffs' MDTPA claim] is injunctive relief.' " *Id.* (citing *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016)) (alteration in original). Therefore, damages are not an available remedy for Minnesota Counts 4 and 6.

The FCA, Hyundai-Kia and Honda Defendants argue that Plaintiffs have failed to plead the necessary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

element of reliance. Dkt. 230 at 28-29 & n. 21 (citing *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, 344 (D. Minn. 1999)), *aff'd*, 286 F.3d 1051 (8th Cir. 2002)); Dkt. 219 at 27 & n. 13 (citing *Parkhill*, 188 F.R.D. at 344); Dkt. 213 at 33 (citing *Parkhill*, 188 F.R.D. at 344). The holding in *Parkhill* -- that claims for damages under the MDTPA and the MPCFA require a showing of reliance -- was expressly rejected by the Minnesota Supreme Court. *Grp. Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 14-15 (Minn. 2001) (citing *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn.1999); *Parkhill*, 188 F.R.D. at 345) ("[W]e reject the view expressed in two federal court decisions that our misrepresentation in sales laws require proof of individual reliance in all actions seeking damages.").

After *Group Health*, to state a claim under the MDTPA or the MPCFA, a plaintiff need not "plead[] and prov[e] traditional common law reliance," but must plead causation. 621 N.W.2d at 13. However, *Group Health* left open the possibility that reliance will still be required in certain circumstances:

> [W]here, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. Therefore, in a case such as this, it will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement.

*Id.*; *accord In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008) ("The *Group Health* decision, however, did not entirely remove the element of reliance in Minnesota consumer fraud claims. . . . "[C]ausation is still a necessary element of a damages action under the consumer fraud statutes, and proof of a reliance component is still required."); *Luckey*, 245 F. Supp. 3d at 1096 ("The Minnesota Supreme Court clarified, in *Group Health Plan*, that a plaintiff ultimately must prove 'causation,' or a 'legal nexus' between the offending conduct and the plaintiff's damages, but that personal reliance by the plaintiff is not the only way to demonstrate the requisite legal nexus." (citing *Grp. Health Plan*, 621 N.W.2d at 14)).

Following *Group Health*, *Luckey* rejected the argument "that Plaintiffs must have personally perceived and relied on [its] misrepresentations in order to state a claim under [the MDTPA]." *Id.* Nonetheless, *Luckey* determined that, because the plaintiffs had failed to allege causation, they had failed to state a claim under the MDTPA. *Id.* at 1098. "Because there [were] no factual allegations about who heard or saw and relied on [the defendant's] sales statements and when, it [was] not clear how the existence of the alleged misrepresentations caused Plaintiffs' damages." *Id.*

Similarly, in *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004), an MPCFA claim "fail[ed] for want of proof of a causal nexus between the defendants' conduct and [the plaintiff's] injuries." 377 F.3d at 926. "[F]or a plaintiff 'to prove causation, a necessary element of her statutory consumer fraud claims, she must at least present circumstantial evidence of some reliance on [defendants'] alleged misrepresentations." *Id.* (quoting *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 351 (Minn. Ct. App. 2001)). The plaintiff failed to do so. *Id.*

Plaintiffs have alleged the scenario contemplated in *Group Health*. They "allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws." 621 N.W.2d at 13. Therefore, "it is not possible that the damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." *Id.* Plaintiffs have not pleaded any facts sufficient to show that Plaintiffs were exposed to, or relied on Defendants' "deceptive, misleading, or fraudulent" statements. Therefore, the CAC does not include allegations sufficient to satisfy the causation requirement. Accordingly, the claims under the MDTPA and the MPCFA are not adequate as alleged in the CAC.

Therefore, Minnesota Counts 3 through 6 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

    I)  Missouri Counts 3 and 4

The CAC advances a claim against the Kia Defendants and Hyundai MOBIS for an alleged violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq.* Dkt. 278 ¶¶ 1708-21 ("Missouri Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 1722-35.

Missouri Counts 3 and 4 fail for lack of particularity as to all Defendants except KMA. Each of the allegations supporting these claims describes the allegedly "unfair or deceptive acts or practices" of "[t]he Kia Defendants," "Hyundai MOBIS" or "[t]he ZF TRW and STMicro Defendants." *See*, e.g., *Id.* ¶¶ 1714, 1729. As noted, each of these terms represents multiple corporate entities. *See*, e.g., *id.* ¶ 43 ("The Kia Defendants (or 'Kia') are Kia Motors Corporation and Kia Motors America, Inc. Hyundai MOBIS Co. Ltd. and Mobis Parts America, LLC are the Hyundai MOBIS Defendants (together, 'Hyundai MOBIS')."). As noted, Plaintiffs have not made any allegations showing which of these Defendants specifically engaged in which allegedly deceptive or unfair conduct. Instead, Plaintiffs have impermissibly "lump[ed] together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764). This is inadequate to meet the standards set by Fed. R. Civ. P. 9(b. *See Hays v. Nissan N. Am. Inc.*, 297 F. Supp. 3d 958, 962-63 (W.D. Mo. 2017) (citations omitted) ("The heightened pleading requirement of Rule 9(b) applies to a claim under a state consumer fraud statute, such as the MMPA. An MMPA claim requires a plaintiff to allege facts such as 'time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.' "). Therefore, Plaintiffs have failed to state a claim under the MMPA with respect to Hyundai MOBIS, the ZF Defendants and the STMicro Defendants.[31]

The Hyundai-Kia Defendants argue that the claims of the only Missouri Plaintiff, Sutterfield, should be dismissed as untimely. Dkt. 219 at 32. The statute of limitations for claims brought under the MMPA is five years. *See Boulds v. Chase Auto Fin. Corp.*, 266 S.W.3d 847, 851 (Mo. Ct. App. 2008) (citations omitted) ("The MMPA contains no statute of limitations, and therefore the five-year period for civil actions laid out in § 516.120(1) applies."). Sutterfield purchased his Class Vehicle on September 27, 2013. Dkt. 278 ¶ 92. He filed his claims in this action on May 26, 2020.[32] Thus, they were filed more than five years after his purchase.

---

[31] Plaintiffs also have not stated a claim under the MMPA with respect to KMC. Because the claims against KMC all have been dismissed without prejudice for lack of personal jurisdiction, an analysis of their sufficiency is unnecessary.

[32] Adams is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The CAC alleges generally that "Defendants' fraudulent concealment tolls the statute of limitations." *Id.* ¶ 545(a). "It is plaintiff's burden to plead with particularity the facts to support its claim that the doctrine of fraudulent concealment tolls the statute of limitations." *Simply Thick, LLC v. Thermo Pac, LLC*, No. 4:13-CV-1036 CAS, 2014 WL 3543403, at *3 (E.D. Mo. July 17, 2014); *see Keehn v. Ruzicka Elec. & Sons, Inc.*, 251 S.W.3d 388, 390 (Mo. Ct. App. 2008).

To establish that a statute of limitations should be tolled on fraudulent concealment grounds, a plaintiff must plead that the concealment was "fraudulent or intentional," and that there was "something of an affirmative nature designed to prevent, and which d[id] prevent, discovery of the cause of action." *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 919–20 (8th Cir. 2008) (citing *Hasenyager v. Bd. of Police Com'rs of Kansas City,* 606 S.W.2d 468, 471 (Mo. Ct. App. 1980)) (internal quotation marks omitted). In addition, "a plaintiff must show that she detrimentally relied on a false claim by the defendant." *Bayes v. Biomet, Inc.*, No. 4:13-CV-00800-SRC, 2020 WL 5095346, at *14 (E.D. Mo. Aug. 28, 2020) (citations omitted).

Plaintiffs have pleaded with particularity that KMA made affirmative misrepresentations to NHTSA. The CAC alleges:

> On April 18, 2018, Hyundai Motor America stated in a Part 573 Safety Recall Report that the ACU Defect was corrected in unrecalled Hyundai Class Vehicles because those vehicles included "redesigned ACUs." Similarly, Kia Motors America, Inc. stated in a June 1, 2018 Part 573 Safety Recall Report that the ACUs in the unrecalled Kia Class Vehicles "have adequate circuit protection." These statements were misleading because the unrecalled Hyundai and Kia Class Vehicles have the same defect (insufficient levels of circuit protection and the use of a DS84 ASIC vulnerable to overstress) as the recalled Hyundai and Kia Class Vehicles.

Dkt. 278 ¶ 602(c).

The CAC also alleges that KMA made other false or misleading statements to NHTSA on March 1, 2018, *id.* ¶¶ 355, 602(d), and August 30, 2019. *Id.* ¶ 364. However, Plaintiffs have not pleaded that any Plaintiff detrimentally relied on, or was exposed to, Defendants' allegedly misleading statements to NHTSA. Plaintiffs have not pleaded with particularity the element of detrimental reliance, which is a necessary component of the allegation that KMA's fraudulent concealment tolled the running of the statute of limitations.

Therefore, Missouri Counts 3 and 4 **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[33]

    m)  Montana Counts 3 and 4

The CAC advances a claim against the FCA Defendants for an alleged violation of the Montana Unfair

---

[33] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Missouri Counts 3 and 4 have been dismissed without prejudice, so that the Missouri Plaintiffs have the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Trade Practices and Consumer Protection Action of 1973 ("Montana CPA"), Mont. Code Ann. §§ 30-14-101 *et seq.* Dkt. 278 ¶¶ 1764-76 ("Montana Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 1777-89 ("Montana Count 4").

"The Montana Consumer Protection Act provides a private cause of action for actual and treble damages upon proof that a consumer suffered "ascertainable loss of money or property" caused by the "use or employment" of "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Anderson v. ReconTrust Co., N.A.*, 390 Mont. 12, 21-22 (Mont. 2017) (citing Mont. Code Ann. §§ 30-14-103, 30-14-133(1)). "For purposes of section 30–14–103, an unlawful, 'unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " *PNC Bank, Nat. Ass'n v. Wilson*, No. CV 14-80-BU-DWM-JCL, 2015 WL 3887602, at *8 (D. Mont. June 23, 2015) (citing *Rohrer v. Knudson,* 203 P.3d 759, 764 (Mont. 2009)). "Any consumer who sustains a loss as a result of conduct that is unlawful may pursue a cause of action for relief." *Id.* (citing Mont. Code Ann. § 30–14–133).

The FCA, ZF and STMicro Defendants argue that Plaintiffs fail to plead reliance or causation, which are "vital elements of Plaintiffs' fraud claims." Dkt. 230 at 28 & n. 21 (citing *Anderson v. ReconTrust Co., N.A.*, 407 P.3d at 700); *see* Dkt. 209 at 28-29 & n.11 (citing *Anderson*, 407 P.3d at 700); Dkt. 280 at 32-33 (citing *Anderson*, 407 P.3d at 700). Plaintiffs respond that Montana law does not require reliance. Dkt. 290 at 21-22 & n.6 (citing *PNC Bank*, WL 3887602, at *6).

There is some authority as to whether reliance or causation is required to state a claim under the MCPA. The case cited by the FCA, ZF and STMicro Defendants implies that reliance is required. *See Anderson v. ReconTrust Co., N.A.*, 390 Mont. at 23 ("As previously noted regarding the causation of harm and detrimental reliance elements of [the plaintiffs'] other claims, the amended complaint was devoid of any factual assertion that, *but for their reliance on [the defendant's] initial alleged misrepresentation regarding their loan modification eligibility*, [the plaintiffs] would have timely cured their default and avoided foreclosure. The District Court correctly concluded that [the plaintiffs'] amended complaint failed to state sufficient facts entitling them to relief on all essential elements of their asserted MCPA claim.") (emphasis added). The case cited by Plaintiffs reached a different result. *See PNC Bank*, 2015 WL 3887602, at *7 (A "claim under the Consumer Protection Act does not require [a plaintiff] to plead and prove the individual elements of fraud . . . , including detrimental reliance. Instead, he need only identify plausible unfair or deceptive acts committed by [the defendant].").

The Supreme Court of Montana addressed an issue of Montana law, and did so after the district court considered the same one. Under these circumstances, *Anderson* controls. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (citing *Wichita Royalty Co. v. City Nat. Bank of Wichita Falls*, 306 U.S. 103, 107 (1939)) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted."); *Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir.1995) ("When interpreting state law, federal courts are bound by decisions of the state's highest court." (citation omitted)).

Applying *Anderson* to the Montana CPA, reliance on a defendant's unfair or deceptive acts is required to state a claim. As noted, Plaintiffs have not pleaded that any Plaintiff was exposed to, or relied on the statements made by Defendants that allegedly included affirmative misrepresentations or fraudulent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

omissions. For that reason, Montana Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE,** *i.e.*, with leave to amend.

> n)  Nevada Counts 3 and 4

The CAC advances a claim against the Toyota Defendants for an alleged violation of the Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. §§ 598.0903 *et seq.* Dkt. 278 ¶¶ 1815-26 ("Nevada Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 1827-38 ("Nevada Count 4").

Nevada Counts 3 and 4 fail for lack of particularity. Each of the allegations supporting these claims describes the allegedly "unfair or deceptive acts or practices" of "the Toyota Defendants" or "the ZF TRW and STMicro Defendants." *See*, e.g., *Id.* ¶¶ 1819, 1831. As noted, each of these terms represents multiple corporate entities. *See*, e.g., *id.* ¶ 56 ("The Toyota Defendants . . . are Toyota Motor Corporation; Toyota Motor North America Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; and Toyota Motor Sales, U.S.A., Inc."). The CAC does not specify which of the Toyota Defendants, the ZF Defendants or the STMicro Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standard of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)).

Nevada Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

> o)  New Jersey Counts 3 and 4

The CAC advances a claim against the Kia Defendants and Hyundai MOBIS for an alleged violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1 *et seq.* Dkt. 278 ¶¶ 1866-79 ("New Jersey Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 1880-93 ("New Jersey Count 4").

The NJCFA prohibits "any person" from using "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. § 56:8-2. "[T]o state a claim under the [NJ]CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV03-4558(HAA), 2008 WL 4126264, at *27 (D.N.J. Sept. 2, 2008) (citations and quotation marks omitted); *see Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1200 (N.D. Cal. 2017) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (N.J. 2007)). "Claims under the CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F.Supp.2d 707, 709 (D.N.J. 2010) (citations omitted).

The Hyundai-Kia Defendants argue that New Jersey Counts 3 and 4 fail because Plaintiffs "cannot plead that a defect proximately caused any alleged injuries." Dkt. 219 at 28 & n.15 (citing *Ironworkers*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Loc. Union No. 68 v. AstraZeneca Pharms. LP*, 585 F. Supp. 2d 1339, 1345-46 (M.D. Fla. 2008), *aff'd on other grounds sub nom. Ironworkers Loc. Unon 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352 (11th Cir. 2011)). Similarly, the ZF Defendants argue that these claims "should be dismissed" because New Jersey "require[s] 'a causal link between the deceptive omission and the harm.' " Dkt. 209 at 30-31 & n.12 (citing *Zuniga v. Am. Home Mortg.*, No. 14-CV-2973, 2016 WL 6647932, at *4-5 (D.N.J. Nov. 8, 2016)).

"To properly plead a causal connection, a plaintiff 'must allege facts establishing a causal [connection] with the particularity required by Rule 9(b).' " *Slebodnik v. Reynolds & Reynolds Co.*, No. 3:14-CV-03772 FLW, 2014 WL 6609132, at *7 (D.N.J. Nov. 20, 2014) (citing *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 303 (D.N.J. 2009) (alteration in original). When pleading a claim under the NJCFA based on fraudulent or deceptive statements, without "alleg[ing] when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements," Plaintiffs cannot "properly plead a 'causal nexus' with the particularity required by Rule 9(b)." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008); *see Friest v. Luxottica Grp. S.p.A.*, No. 216CV03327SDWLDW, 2016 WL 7668453, at *7 (D.N.J. Dec. 16, 2016) (dismissing NJCFA claim where the complaint "d[id] not allege Plaintiff saw the advertisement before purchasing prescription glasses from Defendants"); *Slebodnik*, 2014 WL 6609132, at *8 (citing *Dewey*, 558 F. Supp. 2d at 526; *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 507-508 (D.N.J. 2012) ("Plaintiffs plead a causal connection in only general and vague terms. Critically, Plaintiffs do not allege any facts that connect Defendant's alleged unlawful conduct—selling license plate frames that are not in compliance with some state motor vehicle laws—and Plaintiffs' alleged ascertainable loss. For example, Plaintiffs do not allege that Plaintiffs have even seen or read Defendant's advertising on license plate frames."); *Crozier*, 901 F. Supp. 2d at 507–08 (D.N.J. 2012) ("Absent any showing that Plaintiffs had 'seen, read, or relied upon' [the defendant's allegedly misleading statements], the Court must find that Plaintiffs have not stated a plausible claim for relief" under the NJCFA."); *Glass v. BMW of N. Am., LLC*, No. CIV.A. 10-5259 ES, 2011 WL 6887721, at *12 (D.N.J. Dec. 29, 2011) (citing *Hughes v. Panasonic Consumer Elecs. Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839, at *11 (D.N.J. July 21, 2011)) ("Plaintiff here . . . fails to meet the requirements of Rule 9(b). Specifically, with regard to the [defendant's allegedly misleading statements], Plaintiff does not allege with specificity when the statements were made, or articulate at what point—if ever—she was exposed to the advertisements or the statement on [the defendant's] website.").

The CAC does not allege that any Plaintiff was ever exposed to any Defendant's allegedly misrepresentations or fraudulent omissions. Such allegations are required to establish a causal nexus between Defendants' conduct and Plaintiffs' injuries to state a claim under the NJCFA. For that reason, New Jersey Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

> p)   New York Counts 3 Through 5

The CAC advances claims against the FCA Defendants and the Honda Defendants for alleged violations of New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349 and 350. Dkt. 278 ¶¶ 1925-40 ("New York Count 3"), 1955-70 ("New York Count 5"). It also includes a claim against the ZF and STMicro Defendants for an alleged violation of GBL § 349. *Id.* ¶¶ 1941-54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

"To state a claim for deceptive practices" under § 349 or § 350, "a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement. *Quintana v. B. Braun Med. Inc.*, No. 17-CV-06614 (ALC), 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (citing *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 524-25 (S.D.N.Y. 2003)). The ZF Defendants argue that Plaintiffs have failed to plead the required element of causation. Dkt. 209 at 30-31 & n.12 (citing *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 54 (App. Div. 2004); *Baron v. Pfizer, Inc.*, 2006 WL 1623052, at *4-5 (N.Y. Sup. Ct. May 2, 2006)).

"To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (citations omitted); *see Whalen v. Pfizer, Inc.*, 9 Misc. 3d 1124(A) 1, 3 (N.Y. Sup. Ct. 2005) ("The Court of Appeals has been clear that a plaintiff *need not show* that s/he relied on the misrepresentations in order to have a claim under GBL § 349. However, to assert a GBL § 349 claim, a plaintiff must allege that s/he was exposed to the alleged misrepresentations." (citations omitted)).

A plaintiff fails to state a claim under GBL §§ 349 or 350 if that party has not pleaded that he or she saw or relied on the defendant's alleged misrepresentations. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) ("None of these allegations provides any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view either the website or the product brochure. In other words, the relevant factual background to support the above statements is simply lacking. As a result, Plaintiff has failed to sufficiently plead the third element of this [GBL] claim."), *adhered to on reconsideration*, No. 18CV0334SJFSIL, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019); *Quintana*, 2018 WL 3559091, at *10 (dismissing GBL §§ 349 and 350 claims because the "allegations d[id] not suggest Plaintiff ever saw [the defendant's allegedly misrepresentative] statements and under what circumstances"); *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL 12586074, at *12, 15 & n.86 (C.D. Cal. Oct. 20, 2014) (dismissing GBL § 349 claim "[b]ecause plaintiffs d[id] not allege what, when or where they were exposed to the purported misrepresentations," even though the complaint "plead[ed] collectively that all named plaintiffs were exposed to and saw the allegedly 'material, deceptive marketing claims and packaging' "); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 611 (D.N.J. 2016) ("The Complaint is devoid of any facts which would create an inference that, at the time of their purchase, [any plaintiff] w[as] aware of the allegedly false advertising claims, which Plaintiffs obtained from Defendant's website for purposes of filing the instant action.").

The CAC does not sufficiently allege that any Plaintiff has seen, read or relied on any particular statements made by any Defendant. For that reason, Plaintiffs have not established causation under GBL §§ 349 and 50.

Therefore, New York Counts 3 through 5 are **DISMISSED WITHOUT PREJUDICE,** *i.e.*, with leave to amend.

q)      North Carolina Counts 3 and 4

The CAC advances a claim against the FCA Defendants and the Honda Defendants for an alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCDTPA"), N.C. Gen. Stat. §§ 75-1.1 *et seq.* Dkt. 278 ¶¶ 2002-15 ("North Carolina Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 2016-28 ("North Carolina Count 4").

"To state a claim for unfair or deceptive trade practices" under the NCDTPA, "the plaintiff must allege facts plausibly showing that '(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.' " *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 287 (4th Cir. 2014) (citing *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 88 (N.C. 2013)).

North Carolina Counts 3 and 4 fail for lack of particularity as to all Defendants except FCA US. The allegations supporting these claims describes the allegedly "unfair or deceptive acts or practices" of "the FCA and Honda Defendants," or "[t]he ZF TRW and STMicro Defendants." *See*, e.g., Dkt. 278 ¶¶ 2008, 2021. As noted, each of these terms represents multiple corporate entities. *See*, e.g., *id.* ¶ 52 ("The FCA Defendants . . . are Fiat Chrysler Automobiles N.V. and FCA US LLC." The CAC does not specify which of the FCA Defendants, the Honda Defendants, the ZF Defendants or the STMicro Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standards of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)). Therefore, North Carolina Counts 3 and 4 are insufficient as to all Defendants except FCA US. For that reason, North Carolina Count 4, which is not pleaded against FCA US, is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

The ZF and FCA Defendants argue that Plaintiffs have failed to plead the required element of reliance. Dkt. 209 at 28-29 & n.11 (citing *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009)); Dkt. 230 at 28-29 & n.21 (citing *Kelly*, 671 F. Supp. 2d at 799). Plaintiffs appear to concede that reliance is required for claims under NCDTPA claims based on affirmative misrepresentations. *See* Dkt. 290 at 21 n.6.

"When the alleged UDTPA violation is a misrepresentation, a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement." *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) (citations omitted). To plead detrimental reliance, "a plaintiff must plausibly allege actual reliance and reasonable reliance." *Id.* (citing *Caper Corp.,* 578 Fed. App'x at 287). Here, Plaintiffs have not pleaded that any Plaintiff was exposed to a particular misrepresentation made by any Defendant. Therefore, they have not established actual reliance.

Defendants argue that claims under the NCDTPA are "precluded when an alleged defect has not manifested." Dkt. 208 at 68 & n.36 (citing *Bailey v. LeBeau*, 339 S.E.2d 460, 463 (N.C. Ct. App. 1986), *aff'd*, 348 S.E.2d 524 (N.C. 1986)). However, *Bailey* is distinguishable. There, the plaintiff alleged that, when he purchased a used car, he was told that "certain engine parts had been replaced within six months." *Bailey*, 339 S.E.2d at 350. At trial the plaintiff had received treble damages for his claim under the NCDTPA. The Court of Appeals reversed that award, finding that, "[w]hile there [wa]s evidence in this record that defendants misrepresented that the engine parts had been replaced within six months prior to the sale of the automobile, there [wa]s no evidence that plaintiff suffered an 'injury' because of such representation." *Id.* at 352. "[T]he record contain[ed] no evidence which tend[ed] to show that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

automobile broke down because the parts had not been replaced within six months." *Id.* Thus, the plaintiff failed to prove that he had suffered an injury, as required by the NCDTPA.

The CAC presents different alleged facts. It alleges that, due to the presence of the Alleged Defect in each Class Vehicle, each Vehicle is worth less than each Plaintiff paid for it. *See, e.g.*, Dkt. 278 ¶ 727 ("[Defendants] sold and leased Class Vehicles . . . for more than what the vehicles were worth, at the expense of Plaintiffs and Class members."). This is sufficient to establish an injury under the NCDTPA.

Finally, Defendants argue that the economic loss rule bars Plaintiffs' claims under the NCDTPA. Dkt. 208 at 51-52 & n.12 (citing *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 626 (M.D.N.C. 2006)). Plaintiffs respond that, in North Carolina, an "exception[] to the economic loss rule exist[s] for fraudulent inducement based on misrepresentations or omissions." Dkt. 281 at 54 (citing *Takata*, 2020 WL 2764196, at *9-10).

"It is well settled in North Carolina that the economic loss rule prohibits recovery for purely economic loss in tort when a contract, an express warranty, or the Uniform Commercial Code operates to allocate risk." *Malone v. Tamko Roofing Prod. Inc.*, No. 3:13-cv-00089-MOC-DCK, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013). "The economic loss rule has been extended to bar UDTPA claims in cases with 'allegations of a defective product where the only damage alleged is damage to the product itself and the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims.' " *Withers v. BMW of N. Am., LLC*, No. 3:20-CV-00034-GCM, 2021 WL 4204332, at *6 (W.D.N.C. Sept. 15, 2021) (citing *Bussian*, 411 F. Supp. 2d at 627 (M.D.N.C. 2006); *see also Wireless Comms., Inc. v. Epicor Software Corp.*, No. 3:10CV556-DSC, 2011 WL 90238, at *4 (W.D.N.C. Jan. 11, 2011)). "However, the economic loss rule does not bar a claim where there is a duty, independent of a contractual duty, which arises by operation of law." *Id.* (citing *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 165 (4th Cir. 2018); *City of High Point v. Suez Treatment Sols. Inc.*, No. 1:19CV540, 2020 WL 1307017, at *5 (M.D.N.C. Mar. 19, 2020)); *Wheeler v. BMW of N. Am. LLC*, 534 F. Supp. 3d 527, 534 (W.D.N.C. 2021) (citing *Cadrillion*, 889 F.3d at 166) ("[T]he economic loss rule . . . does not extend to torts based on an independent duty that is 'identifiable' and 'distinct' from the breach of contract claim.").

In vehicle defects cases, to determine whether a plaintiff's NCDTPA claims are barred by the economic loss rule, courts examine whether the plaintiff has established that the defendant had a duty to disclose the defect "prior to the sale of the vehicle and the execution of the warranties. See *Jones v. BMW of N. Am., LLC*, No. 1:20-CV-00057, 2020 WL 5752808, at *10 (M.D.N.C. Sept. 25, 2020) (citing *Definitive Staffing Sols., Inc. v. Staffing Advantage*, L.L.C., No. 7:18-CV-187-FL, 2019 WL 3660878, at *6 (E.D.N.C. Aug. 6, 2019)); *see Withers*, 2021 WL 4204332, at *6. "North Carolina imposes a duty to disclose on parties negotiating at arm's length where (1) one party has taken affirmative steps to conceal material facts from the other or (2) one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Jones*, 2020 WL 5752808, at *9 (citing *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997)).

The CAC includes sufficient allegations to support the claim that FCA US had a duty to disclose the Alleged Defect. This includes allegations that FCA US took affirmative steps to conceal the Alleged Defect, and, unlike Plaintiffs, had knowledge of it. *Cf. Withers*, 2021 WL 4204332, at *6 ("Plaintiff has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

pled with sufficient particularity that BMW may have had a duty, independent of any contractual duty, to disclose information regarding the engine valve defect. Plaintiff alleges facts that relate to the inducement of the contract, including that: BMW knew the engine valve was defective long before Plaintiff purchased the Vehicle; BMW took steps before Plaintiff purchased the Vehicle to represent to customers that the engine oil consumption levels were normal; BMW took steps before Plaintiff purchased the Vehicle to conceal the engine valve defect from customers; Plaintiff was not aware of the defect prior to purchasing the Vehicle; knowledge of the defect would have impacted Plaintiff's decision to purchase the Vehicle; and Plaintiff had no ability to discover the defect through reasonable diligence."); *Jones*, 2020 WL 5752808, at *10 (M.D.N.C. Sept. 25, 2020).

Because the CAC sufficiently alleges that the NCDTPA claims arise from breach of a duty that is independent of the warranty claims, the economic loss rule does not bar their NCDTPA claims.

For the foregoing reasons, North Carolina Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to FCA NV and the Honda Defendants. It survives as to FCA US only to the extent it is based on a theory of fraudulent omissions.

r)      Oklahoma Counts 3 and 4

The CAC advances a claim against the FCA Defendants for an alleged violation of the Oklahoma Consumer Protection Act ("Oklahoma CPA"), Okla. Stat. Ann. tit. 15, §§ 751 *et seq.* Dkt. 278 ¶¶ 2056-70 ("Oklahoma Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 2071-85.

"To establish an OCPA claim, a plaintiff must show (1) that the defendant engaged in an 'unlawful practice' as that term is defined in section 753 of the Act, '(2) that the challenged practice occurred in the course of [the] defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.' " *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1215 (W.D. Okla. 2015) (citing *Patterson v. Beall,* 19 P.3d 839, 846 (Okla. 2000)).

Oklahoma Counts 3 and 4 fail for lack of particularity as to all Defendants except FCA US. The allegations supporting these claims describes the allegedly "unfair or deceptive business practices" of "the FCA Defendants," or "deceptive trade practices" of "the ZF TRW and STMicro Defendants." *See*, e.g., Dkt. 278 ¶¶ 2063, 2078. As noted, each of these terms represents multiple corporate entities. *See*, e.g., *id.* ¶ 52 ("The FCA Defendants . . . are Fiat Chrysler Automobiles N.V. and FCA US LLC."). Plaintiffs have not made any allegations showing which of these Defendants, except FCA US, specifically engaged in which allegedly deceptive or unfair conduct. Instead, Plaintiffs have impermissibly "lump[ed] together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764). This is inadequate to meet the standards set by Fed. R. Civ. P. 9(b). Therefore, Oklahoma Counts 3 and 4 fail as to all Defendants except FCA US. For that reason, Oklahoma Count 4, which is not pleaded against FCA US, is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

The FCA, ZF and STMicro Defendants argue that Oklahoma Count 3 fails on the basis that "[c]laims brought under Oklahoma's CPA are preempted if they are based on transactions regulated under other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

administrative or regulatory schemes." Dkt. 230 at 33 (citing Okla. Stat. Ann. tit. 15, § 754(2); *Dinwiddie*, 111 F.Supp.3d at 1216); Dkt. 209 at 38 (citations omitted); Dkt. 280 at 36.

Okla. Stat. tit. 15, § 754 provides:

> Nothing in the Oklahoma Consumer Protection Act shall apply to ... [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state of the United States.

Courts construing this exemption "have found [it] to be applicable when the alleged conduct about which the plaintiff has complained is regulated by a government agency." *Dinwiddie*, 111 F. Supp. 3d at 1216 (W.D. Okla. 2015) (citing *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228 (W.D. Okla. 2008)).

The FCA, ZF and STMicro Defendants have failed to show that the Oklahoma statutory exemption applies to Plaintiffs' claims. In support of their position, the ZF Defendants argue that "automotive manufacturing is heavily regulated," citing the Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq.*, and the "Motor Vehicle Safety Standards" promulgated by NHTSA. Dkt. 209 at 38. However, to the extent that automotive manufacturing is regulated, the conduct that forms the basis for the alleged wrongdoing, is not encompassed by that broad category. Plaintiffs' claims arise specifically from Defendants' alleged failure to disclose the Alleged Defect, and their misrepresentations concerning such Defect, in advertising, labeling, owner's manuals and statements to NHTSA. These claims concern Defendants' alleged handling of the Alleged Defect, rather than the existence of the Alleged Defect itself. Defendants have not shown that such conduct is governed by any government agency.

For the foregoing reasons, Oklahoma Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, only as to FCA NV. As to FCA US, Plaintiffs have stated a claim under the Oklahoma CPA.

s)     Pennsylvania Counts 3 and 4

The CAC advances a claim against the Hyundai-Kia Defendants and Hyundai MOBIS for an alleged violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-1 *et seq.* Dkt. 278 ¶¶ 2117-33 ("Pennsylvania Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 2134-49 ("Pennsylvania Count 4").

Pennsylvania Counts 3 and 4 fail for lack of particularity as to all Defendants except HMA and KMA. The allegations supporting these claims describes the allegedly "unfair or deceptive business practices" of "the Hyundai and Kia Defendants and Hyundai MOBIS," or the "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" allegedly engaged in by "the ZF TRW and STMicro Defendants." *See*, e.g., Dkt. 278 ¶¶ 2126, 2142. As noted, each of these terms represents multiple corporate entities. *See*, e.g., *id.* ¶ 43 ("The Hyundai Defendants . . . are Hyundai Motor Co., Ltd.; Hyundai Motor America, Inc. The Kia Defendants . . . are Kia Motors Corporation and Kia Motors America, Inc. Hyundai MOBIS Co. Ltd. and Mobis Parts America, LLC are the Hyundai MOBIS Defendants . . . . The Hyundai-Kia Defendants are Hyundai, Kia, and Hyundai MOBIS.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs have not made any allegations showing which of these Defendants, except HMA and KMA, specifically engaged in which allegedly deceptive or unfair conduct. Instead, Plaintiffs have impermissibly "lump[ed] together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 (citing *Swartz*, 476 F.3d at 764). This is inadequate to meet the standards set by Fed. R. Civ. P. 9(b). Therefore, Pennsylvania Counts 3 and 4 fail as to all Defendants except HMA and KMA. For that reason, Pennsylvania Count 4, which is not pleaded against HMA and KMA, is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

The ZF Defendants argue that Plaintiffs fail to plead the required element of reliance. Dkt. 209 at 28-29 & n.11 (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438-39 (Pa. 2004)). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca*, 578 Pa. at 501 (2004) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (2001)); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 156–57 (Pa. Super. 2002); *Sexton v. PNC Bank*, 792 A.2d 602, 607 (Pa. Super. 2002)). However, "a manufacturer has a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer." *Zwiercan v. General Motors Corp.*, 58 Pa. D. & C. 4th 251, 2002 WL 31053838, at *3 (Pa. Com. Pl. 2002). When there is such a duty to disclose, "[r]eliance can be presumed . . . , because a consumer must rely upon what the manufacturer discloses in order to make a purchasing decision. If a manufacturer does not disclose material information it was duty bound to provide, then the customer may be presumed to have relied upon the manufacturer's silence." *Drayton v. Pilgrim's Pride Corp.*, No. CIV.A. 03-2334, 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004) (discussing *Zwiercan*, 58 Pa. D. & C. 4th at 259). The CAC contains sufficient allegations to support the claim that Defendants had a duty to disclose the Alleged Defect, and that Plaintiffs' reliance upon their omission as to such Defect can be presumed.

Defendants next argue that the economic loss rule bars Plaintiffs' claims under the UTPCPL. Dkt. 208 at 51-52 & n.10 (citing *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684-85 (E.D. Pa. 2011)). Plaintiffs respond by asserting that Pennsylvania law recognizes an "exception[] to the economic loss rule . . . for fraudulent inducement based on misrepresentations or omissions." Dkt. 281 at 54 & n.13 (citing *Knight v. Springfield Hyundai,* 81 A.3d 940, 952 (Pa. Sup. Ct. 2013)).

"Under Pennsylvania law, the economic loss doctrine provides that a plaintiff cannot maintain a tort action premised on the breach of a legal duty that arises solely from a contract." *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 533 (M.D. Pa. 2021) (citing *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018)).

After the briefing on the Motions was completed, the Third Circuit, relying on two recent decisions of the Pennsylvania Superior Court, held that "the economic loss doctrine no longer may serve as a bar to UTPCPL claims." *Earl v. NVR, Inc.*, 990 F.3d 310, 314 (3d Cir. 2021) (citing *Knight*, 81 A.3d; *Dixon v. Nw. Mut.*, 146 A.3d 780 (Pa. Super. Ct. 2016)); *see In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1119 ("Pennsylvania's appellate courts and the Third Circuit now agree that the economic loss doctrine does not preclude UTPCPL claims."). Applying *Earl*, the economic loss rule does not bar Plaintiffs' UTPCPL claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

For the foregoing reasons, Pennsylvania Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to the Hyundai and Kia Defendants, with the exception of HMA and KMA. With respect to the latter two Defendants, Plaintiffs have stated a claim under the UTPCPA.

> t) South Carolina Counts 3 Through 6

The CAC advances claims against the Toyota Defendants for alleged violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 *et seq.*,Dkt. 278 ¶¶ 2177-90 ("South Carolina Count 3"), and for violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("MDDA"), S.C. Code Ann. § 56-15-10 *et seq. Id.* ¶¶ 2205-19 ("South Carolina Count 5")). It also includes claims against the ZF and STMicro Defendants under the same statutes. *Id.* ¶¶ 2191-2204 (SCUTPA) ("South Carolina Count 4"), 2220-34 (MMDA) ("South Carolina Count 6").

South Carolina Counts 3 through 6 fail for lack of particularity. The allegations supporting these claims describe either the allegedly "unfair or deceptive business practices" of "the Toyota Defendants" or the alleged "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" engaged in by "the ZF TRW and STMicro Defendants." *See, e.g.*, *id.* ¶¶ 2183, 2197, 2212, 2227. As noted, each of these terms represents multiple corporate entities. *See, e.g.*, *id.* ¶ 56 ("The Toyota Defendants . . . are Toyota Motor Corporation; Toyota Motor North America Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; and Toyota Motor Sales, U.S.A., Inc."). The CAC does not specify which of the Toyota Defendants, the ZF Defendants or the STMicro Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standards of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)). Therefore, Plaintiffs have failed to state a claim under SCUTPA or the South Carolina MDDA.

South Carolina Counts 3 through 6 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

> u) South Dakota Counts 3 and 4

The CAC advances a claim against the FCA Defendants for an alleged violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law ("SDDTPA"), S.D. Codified Laws §§ 37-24-1 *et seq.* Dkt. 278 ¶¶ 2262-76 ("South Dakota Count 3"). It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 2277-91 ("South Dakota Count 4").

Under the SDDTPA, it is a deceptive practice to "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise." S.D. Codified Laws § 37-24-6(1). S.D. Codified Laws § 37-24-31 "allows a plaintiff in a civil action a claim for damages pursuant to the South Dakota Deceptive Trade Practices Act but specifically requires a causal connection between the alleged deceptive practice and the damages suffered by a plaintiff." *Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*, No. CIV.06-4166, 2009 WL 3150984, at *7 (D.S.D. Sept. 28, 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The ZF Defendants argue that Plaintiffs fail to plead the required element of causation. Dkt. 209 at 30. "[T]o recover in an action under the South Dakota Deceptive Trade Practices Act, a plaintiff must have relied on the alleged misrepresentation." *Rainbow Play Sys.*, 2009 WL 3150984, at *7 (citing *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184 (S.D. 2007)); *see In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1014 (C.D. Cal. 2015) (citing *Nw. Pub. Serv., a Div. of Nw. Corp. v. Union Carbide Corp.*, 236 F.Supp.2d 966, 973–74 (D.S.D. 2002)), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ("A claim for damages under the SDDTPL requires 'proof of an intentional misrepresentation or concealment of a fact on which [the] plaintiff relied and that caused an injury to plaintiff.'") (alteration in original); *see also Nw. Pub. Serv.*, 236 F. Supp. 2d at 973-74 (finding that "proof of an intentional misrepresentation or concealment of a fact on which plaintiff relied and that caused an injury to plaintiff" is required to win summary judgment on an SDDTPA claim).

The CAC does not sufficiently allege that any Plaintiff was exposed to, or relied on, any particular statement made by any Defendant. Therefore, Plaintiffs have failed to plead reliance, which is required to state a claim under the SDDTPA. Therefore, South Dakota Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

v)       Tennessee Counts 3 and 4

The CAC advances a claim against the Hyundai Defendants and Hyundai MOBIS for an alleged violation of the Tennessee Consumer Protection Act of 1977 ("Tennessee CPA"), Tenn. Code Ann. §§ 47-18-101 *et seq.* Dkt. 278 ¶¶ 2319-34 ("Tennessee Count 3"). It also includes a claim against the ZF Defendants and the STMicro Defendants under the same statute. *Id.* ¶¶ 2335-50 ("Tennessee Count 4").

Defendants argue that the claims of the only Tennessee Plaintiff, McMurray, should be dismissed as untimely. Dkt. 208 at 66; *see* Dkt. 219 at 32-33. Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

Tenn. Code Ann. § 47-18-110 provides that the statute of limitations for Tennessee CPA claims is "one (1) year from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110. It further provides that "in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief." *Id.* Section 47-18-109 "is the provision of the TCPA providing for a private cause of action for unfair or deceptive acts or practices." *Roberson v. Medtronic, Inc.*, 494 F. Supp. 2d 864, 871 n. 7 (W.D. Tenn. 2007). "The Tennessee Supreme Court has interpreted statutes of repose like § 47-18-110's five-year limit as 'absolute time limit[s] within which action must be brought.' " *Id.* at 872 (citing *Penley v. Honda Motor Co., Ltd.*, 31 S.W.3d 181, 184 (Tenn. 2000)) (alteration in original). It has been found not to be subject to tolling for fraudulent concealment. *See Bell v. Fed. Nat'l Mortg. Ass'n*, No. 2:16-CV-327, 2017 WL 4293225, at *6 (E.D. Tenn. Sept. 27, 2017).

McMurray purchased her Class Vehicle on August 28, 2014. Dkt. 278 ¶ 96. She filed her claims in this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

action on May 26, 2020.[34] She did so outside of the one-year limitations period for Tennessee CPA claims, and outside of the five-year statute of repose.

Tennessee Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[35]

w)      Texas Counts 3 and 4

The CAC advances a claim against the FCA, Honda, Hyundai and Toyota Defendants, and Hyundai MOBIS, for violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.* Dkt. 278 ¶¶ 2386-2406 ("Texas Count 3").[36] It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 2407-25 ("Texas Count 4").

"To recover under the DTPA, the plaintiff must show that (1) he is a consumer, (2) the defendant engaged in a false, misleading, or deceptive act, and (3) the act constituted a producing cause of economic damages or damages for mental anguish." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 857 (Tex. App. 2005) (citations omitted).

The Hyundai-Kia, STMicro and Honda Defendants argue that Plaintiffs fail to plead the required element of reliance. Dkt. 219 at 27 & n.13 (citing Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B)); Dkt. 280 at 32-33 & n.7 (citing *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 446 (N.D. Cal. 2014)); Dkt. 213 at 33 (citing Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B)). The STMicro Defendants argue that causation is also required. Dkt. 280 at 33 & n.8 (citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1123 (N.D. Cal. 2015)).

Texas Bus. & Com. Code § 17.50 provides:

A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

---

[34] McMurray is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

[35] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Tennessee Counts 3 and 4 have been dismissed without prejudice, so that the Tennessee Plaintiff has the opportunity to seek to make such allegations.

[36] Robinson is the only Texas Plaintiff to assert claims against the FCA Defendants. He voluntarily dismissed such claims on August 10, 2020. Dkt. 228. Therefore, Texas Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, with respect to the FCA Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(B) relied on by a consumer to the consumer's detriment . . . .

Tex. Bus. & Com. Code Ann. § 17.50(a). Thus, "[u]nder the DTPA, a consumer may bring an action when he has relied to his detriment on a false or misleading representation, and the reliance is a producing cause of damages." *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 387 (Tex. App. 2010) (citations and quotation marks omitted); *see Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) ("Reliance is a necessary element of [the plaintiff's] DTPA claim.").

The CAC does not sufficiently allege that any Plaintiff was ever exposed to, or relied on, the allegedly misrepresentations or fraudulent omissions of any Defendant. Therefore, Texas Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

x)      Washington Counts 3 and 4

The CAC advances a claim against the Hyundai and Toyota Defendants, and Hyundai MOBIS, for an alleged violation of the Washington Consumer Protection Act ("Washington CPA"), Wash. Rev. Code §§ 19.86.010 *et seq.* Dkt. 278 ¶¶ 2516-32 ("Washington Count 3").[37]  It also includes a claim against the ZF and STMicro Defendants under the same statute. *Id.* ¶¶ 2533-48 ("Washington Count 4").

To state a claim under the Washington CPA, a plaintiff must allege "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act." *Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 626 (W.D. Wash. 2006) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (Wash. 1986)).

The ZF Defendants argue that Plaintiffs fail to plead the necessary element of causation. Dkt. 209 at 30-31 & n.12 (citing *Maple v. Costco Wholesale Corp.*, 649 F. App'x 570, 572 (9th Cir. 2016)). "Where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, . . . there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 83 (Wash. 2007); *see Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 57 (Wash. 2009) ("Washington requires a private CPA plaintiff to establish the deceptive act caused injury." (citing *Hangman Ridge*, 105 Wash. 2d at 794)). On the ground that such a causal link was lacking, *Maple* affirmed the dismissal of a claim under the Washington CPA, where the plaintiff had not pleaded having read the defendant's misleading statements. *Maple*, 649 F. App'x at 572 (citing *Indoor Billboard/Wash.*, 162 Wash. 2d at 83).

The CAC does not sufficiently allege that any Plaintiff was exposed to, or relied on, any Defendant's misleading statement or fraudulent omission. Therefore, Plaintiffs have not pleaded causation, which is required to state a claim under the Washington CPA. *Cf. Woodell v. Expedia Inc.*, No. C19-0051JLR, 2019 WL 3287896, at *11 (W.D. Wash. July 22, 2019) (dismissing Washington CPA claim for failure to plead proximate causation where the plaintiff "d[id] not allege that she read or even noticed" the

---

[37] Jagnjic is the only Washington Plaintiff to assert claims against the Hyundai Defendants. He voluntarily dismissed those claims on October 12, 2020. Dkt. 291. Therefore, Washington Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, with respect to the Hyundai Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

defendants' alleged misleading statement).

For the foregoing reasons, Washington Counts 3 and 4 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

> y)   Wisconsin Count 3

The CAC advances a claim against the Mitsubishi Defendants for an alleged violation of the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. §§ 100.18 *et seq.* Dkt. 278 ¶¶ 2576-90 ("Wisconsin Count 3").

Wisconsin Count 3 fails for lack of particularity. The allegations supporting this claim describe the "assertions, representations and statements of fact which are untrue, deceptive or misleading" that are alleged to have been made by "the Mitsubishi Defendants." *See, e.g.*, *id.* ¶ 2583-84. The term "Mitsubishi Defendants" refers to two separate corporate entities. *See id.* ¶ 67 ("The Mitsubishi Defendants . . . are Mitsubishi Motors North America, Inc. and Mitsubishi Motors Corporation."). The CAC does not specify which of the Mitsubishi Defendants engaged in which allegedly fraudulent conduct. Consequently, it does not meet the standards of Fed. R. Civ. P. 9(b), which requires pleading fraud claims with particularity. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d at 919 ("A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." (citing *Swartz*, 476 F.3d at 764)). Therefore, Plaintiffs have failed to state a claim under the Wisconsin DTPA.

For the foregoing reasons, Wisconsin Count 3 is **DISMISSED WITHOUT PREJUDICE,** *i.e.*, with leave to amend.

> 4.   Warranty Claims

> a)   Alabama Counts 1 and 2

> (1)   Alabama Count 1: Breach of Express Warranty

The CAC includes a claim against the Honda Defendants for breach of express warranty pursuant to Ala. Code §§ 7-2-313 and 7-2a-210. Dkt. 278 ¶¶ 732-46 ("Alabama Count 1").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(a)     Pre-Suit Notice

In support of the Joint Motion, Defendants argue that Alabama Count 1 should be dismissed due to "Plaintiffs' failure to demonstrate compliance with the pre-suit notice requirements in" that state. Dkt. 208 at 60-61. "Under Alabama law, notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint." *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283 (M.D. Ala. 2001) (citing *Hart v. Yamaha–Parts Distribs., Inc.,* 787 F.2d 1468 (11th Cir. 1986)). When a buyer "seeks recovery for economic loss" due to "alleged defects," such notice must be provided to the "remote manufacturer," *i.e.*, "a manufacturer who is not involved in any transaction with and, therefore, is not in privity with the buyer." *Id.* at 1281, 84-85 (citation omitted).

Plaintiffs have alleged that "[t]he Alabama Plaintiff and Alabama State Class members have provided the Honda Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Alabama State Class members within a reasonable amount of time after the ACU defect became public." Dkt. 278 ¶ 744. This is sufficient to satisfy the notice requirement. Defendants argue that "Plaintiffs fail to provide the contents or documents purporting to provide notice." Dkt. 208 at 61. However, whether there is a sufficient factual basis for this allegation is not an issue that can be determined on a motion to dismiss. *See Hobbs*, 134 F. Supp. 2d at 1285 ("[G]enerally speaking, the issue of sufficiency of notice is a question of fact for a jury to determine.").

(b)     Presentment for Repair

The Honda Defendants argue that Alabama Count 1 fails because "the Honda Plaintiffs have failed to allege that any of them presented their vehicles for repair at a Honda dealer, as required under the Limited Warranty." Dkt. 213 at 26.

The warranty booklets, which were filed as exhibits by the Honda Defendants, provide that Honda -- or, Acura with respect to such vehicles -- "will repair or replace any part that is defective in material or workmanship under normal use" (the "Honda Limited Warranty"). *See* Exs. 1 through 7 to Stevenson Decl., Dkts. 211-2, 211-3, 211-4, 211-5, 211-6, 211-7, 211-8. "In Alabama, the crux of all express warranty claims is that the goods did not conform to the warranty." *Ex parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997) (citing Ala. Code 1975 § 7–2–313). "[T]he language of an express warranty to repair cannot be construed as a representation that a product is free of defects." *Fowler v. Goodman Mfg. Co. LP*, No. 2:14-CV-968-RDP, 2014 WL 7048581, at *6 (N.D. Ala. Dec. 12, 2014) (citations omitted). "An express warranty to repair anticipates that defects may occur and that, if detected during the term of the warranty, they will be remedied under the terms of the warranty." *Id.*

The Honda Limited Warranty provides that, if a defect to a vehicle occurs, the manufacturer is obligated to repair or replace the vehicle. A manufacturer cannot breach this obligation unless it was first presented with the opportunity to repair or replace. Because the CAC does not allege that the Honda Plaintiffs ever presented their Class Vehicles for repair or replacement, its allegations in support of the breach of the Honda Limited Warranty are insufficient.

The CAC alleges that "[t]he Honda Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU defect or replace the defective ACUs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

in the Honda Class Vehicles." Dkt. 278 ¶ 743. However, the CAC does not allege that Rubio, the only plaintiff representing the putative "Alabama State Class," ever presented, or otherwise offered, his Class Vehicle to any of the Honda Defendants for repair or replacement. *See id.* ¶ 125. Nor does it allege that the Honda Defendants ever refused to repair or replace a Class Vehicle when asked to do so. In the absence of such allegations, the averment in the CAC that the Honda Defendants failed to repair or replace the defective ACUs is inadequate to assert a claim for breach of the Honda Limited Warranty.

Plaintiffs argue that they were not required to "present their vehicles for repair to a Honda dealer" as a prerequisite to recovering under the Honda Limited Warranty, because "doing so would have been futile." Dkt. 287 at 23 (citing *Benkle v. Ford Motor Co.*, No. SACV161569DOCJCGX, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) *and Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 512-13 (C.D. Cal. 2012)). However, there are insufficient allegations in the CAC to support this position. Their failure to do so distinguishes the circumstances here from those presented in the cases cited by Plaintiffs.

In *Benkle*, two plaintiffs had their respective vehicles repaired by the manufacturer, Ford Motor Co. ("Ford"). They argued that Ford had "breached its Limited Warranty by providing inadequate repairs." *Benkle*, 2017 WL 9486154, at *11. Ford later argued that other plaintiffs in the action could not bring their own claims for breach of express warranty because they had "not present[ed] their vehicles for repair." *Id.* "Plaintiffs respond[ed] that these Plaintiffs were not required to present their vehicles for repair . . . because Ford refused to provide an adequate repair and thus any repair would not have fixed the defect." *Id.* Thus, when Ford was presented with an opportunity to repair or replace a defective vehicle, it did so by replacing the defective electronic throttle body ("ETB") with a "replacement ETB[]" that was "substantially certain to fail again." *Id.* at *12. These circumstances were sufficient to make an adequate showing that presenting other vehicles to Ford for repair would have been futile. *Id.*

In *Keegan*, it was alleged that the plaintiffs' vehicles, which were America Honda products, were defective because "the rear control arm originally installed in the vehicles was too short." *Keegan*, 284 F.R.D. at 511. This defect was alleged to "affect[] the alignment and geometry of the rear suspension, causing the vehicles to become misaligned," which led to other problems with the operation of the vehicles. *Id.* In a response to the presence of the defect, American Honda "issued a technical service bulletin . . . to its dealers and began covering 'certain costs associated with temporary correction' of the defect, such as replacing the rear control arm." *Id.* at 512. However, the plaintiffs argued that "the recommended modification [was] 'only a temporary fix' that d[id] not address the underlying problem," because replacing the rear control arm with a longer one would not have corrected the other problems with the class vehicles that had already been caused by the installation of the arm that was too short. *Id.* Thus, based on how American Honda intended to repair the class vehicles, the plaintiffs were able to establish that presenting them to American Honda for repair would have been futile.

Plaintiffs have not made similar allegations in this action. The CAC does not include allegations as to the manner in which the Honda Defendants would act to repair Class Vehicles if they were presented for repair. Absent any such allegations as to how the Honda Defendants would have repaired the Class Vehicles or the defective ACUs, there is not a sufficient contention of the futility of doing so.

This outcome is consistent with the manner in which Alabama courts have applied the statute of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

limitations for breach of express warranty claims. Under Alabama law, a cause of action for breach of
an express warranty to repair or replace a vehicle accrues "at the time the manufacturer breaches its
contractual obligation to repair" the vehicle. *Brown v. Gen. Motors Corp.*, 14 So. 3d 104, 113 (Ala.
2009). In *Brown*, the Alabama Supreme Court overturned *Tittle v. Steel City Oldsmobile GMC Truck,
Inc.*, 544 So. 2d 883 (Ala.1989), which held that such a warranty accrues at the time the vehicle is
delivered to the buyer. *Id.* Given that, under Alabama law, the statute of limitations begins to run at the
time the manufacturer fails to repair the vehicle, it is a logical inference that Plaintiffs are required to
plead sufficient facts showing that the Honda Defendants failed to do so, or that presenting the vehicles
for repair would have been futile given the proposed method for doing so.

Because Plaintiffs failed to make adequate allegations to show breach of express warranty under
Alabama law, Alabama Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

<div align="center">(2)   <u>Alabama Count 2: Breach of Implied Warranty</u></div>

The CAC also advances a claim against the Honda Defendants for breach of the implied warranty of
merchantability under Ala. Code §§ 7-2-314 and 7-2a-212. Dkt. 278 ¶¶ 747-58 ("Alabama Count 2"). In
support of the Joint Motion, Defendants argue that Alabama Count 2 fails because in Alabama, as "[i]n
many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence
of privity." Dkt. 208 at 59 (citations omitted).

The Honda Defendants make the similar argument that, under Alabama law, "implied warranty claims
may be brought only against a 'seller' or 'lessor.' " Dkt. 213 at 23 (citing Ala. Code § 7-2-314). Although
they appear to concede that American Honda is a seller or lessor, they argue that the rest of the Honda
Defendants are not. Dkt. 213 at 24. The remaining Honda Defendants in this action are American
Honda, Honda Manufacturing and Honda R&D Americas. Thus, the issue is whether a claim can be
stated for breach of the implied warranty of merchantability against Honda Manufacturing and Honda
R&D Americas.

Ala. Code § 7-2-314 provides, in relevant part:

> Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable
> is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Ala. Code § 7-2-314(1). "The implied warranty of merchantability extends from the seller to the buyer."
Freeman v. NIBCO, Inc., 526 F. Supp. 3d 1112, 1132 (N.D. Ala. 2020) (citing *Rhodes v. Gen. Motors
Corp., Chevrolet Div.*, 621 So. 2d 945, 947 (Ala. 1993)). Therefore, under Alabama law, "without privity
of contract, there is no right of action against a manufacturer for direct economic loss." *Rhodes*, 621 So.
2d at 947. Plaintiffs have not alleged that the Alabama Plaintiffs were in privity with Honda
Manufacturing or Honda R&D Americas. Therefore, the CAC fails to state a claim for breach of the
implied warranty of merchantability against these Defendants.

For the foregoing reasons, Alabama Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to
amend, as to Honda Manufacturing and Honda R&D Americas. The CAC states a claim for breach of
implied warranty under Alabama law with respect to American Honda.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

b)   Arizona Counts 1 and 2

(1)   <u>Arizona Count 1: Breach of Express Warranty</u>

The CAC includes a claim against the FCA Defendants for breach of express warranty pursuant to Ariz. Rev. Stat. Ann. §§ 47-2313 and 47-2A210. Dkt. 278 ¶¶ 794-808 ("Arizona Count 1"). In support of the Joint Motion, Defendants argue that Arizona Count 1 should be dismissed due to "Plaintiffs' failure to demonstrate compliance with the pre-suit notice requirements in" that state. Dkt. 208 at 60-61. Under Arizona law, "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Ariz. Rev. Stat. § 47-2607(C)(1); *see Burge v. Freelife Int'l, Inc.*, No. CV09-1159-PHX-JAT, 2009 WL 3872343, at *5 (D. Ariz. Nov. 18, 2009) (citing Ariz. Rev. Stat. § 47-2607). This notice requirement also has been construed as requiring notice to "the manufacturer of a product." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 976 (N.D. Cal. 2014) (citing *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1115-16 (D. Ariz. 2003)).

The CAC expressly alleges that "[t]he Arizona Plaintiff and Arizona State Class members have provided the FCA Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Arizona State Class members within a reasonable amount of time after the ACU defect became public." Dkt. 278 ¶ 806. This is sufficient to satisfy Arizona's notice requirement. *Cf. Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976, at *3 (D. Ariz. June 22, 2010) ("The notice 'need take no special form,' and the complaint itself may provide adequate notice." (citing *Davidson v. Wee*, 379 P.2d 744, 749 (Ariz. 1963))).

Defendants next argue that "Plaintiffs fail to provide the contents or documents purporting to provide notice." Dkt. 208 at 61. However, the factual sufficiency of the notice is not determined at the pleading stage; rather, it is a "question of fact for the jury to decide." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 977. Plaintiffs have alleged that they provided pre-suit notice to the FCA Defendants, which is sufficient to state a claim for breach of express warranty under Arizona law. Whether there is a sufficient factual basis for this allegation is not an issue that can be determined on a motion to dismiss.

The FCA Defendants next argue that Plaintiffs' express warranty claims against them fail because "the express warranties are simply inapplicable to Plaintiffs' claims, which are based on an alleged 'design' defect." Dkt. 230 at 25. The CAC alleges that "FCA Defendants provided the Arizona Plaintiff and Arizona State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 801. The FCA Defendants argue that "it is . . . well established that a 'materials or workmanship' warranty does not cover design defects," Dkt. 230 at 25 (citing *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668-69 (9th Cir. 2013) (applying California law); *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019) (applying New Jersey Law)). However, it is the FCA Defendants' burden to establish that Plaintiffs have failed to state a claim, and they have not carried that burden by establishing that, as a matter of Arizona law, such a warranty excludes design defects, or that such defects are the only ones at issue. *See id.*

The FCA Defendants also argue that "[a]ll of Plaintiffs' express warranty claims against [FCA] NV fail because the warranties underlying Plaintiffs' claims were issued by FCA US, not [FCA] NV." Dkt. 230

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

at 25 (emphasis omitted). As noted, the CAC alleges that the "*FCA Defendants*" provided Plaintiffs with "written express warranties." Dkt. 278 ¶ 801 (emphasis added). However, Plaintiffs appear to concede that FCA NV did not do so. Instead, they argue that "FCA NV is liable for the warranty based on its relationship with FCA US LLC" and that "dismiss[ing] the express warranty claims against F[CA] NV would be premature at this stage." Dkt. 290 at 17.

Plaintiffs cite one case to support this argument; it is distinguishable. Dkt. 290 at 18 (citing *Stewart v. Electrolux Home Prod.*, Inc., 304 F. Supp. 3d 894, 911 (E.D. Cal. 2018)). *Stewart* does not address Arizona law, which applies to Arizona Count 1. Further, it found only that because a disagreement as to which entity issued an express warranty "is a dispute about the veracity of the allegations, not the sufficiency of the pleading," it should not be resolved on a motion to dismiss. *Stewart*, 304 F. Supp. 3d at 911. Here, there is no dispute about the veracity of the allegations. Although the CAC alleges that the FCA Defendants provided Plaintiffs' express warranties, Plaintiffs concede that FCA NV did not. Moreover, even without that concession, judicial notice has been taken of certain of the express warranties provided to the FCA Plaintiffs. The exhibits offered by the FCA Defendants show that these express warranties are by "FCA US LLC." *See, e.g.*, Exhibit F to the FCA Request for Judicial Notice, "2017 Jeep Warranty Information Booklet - Gas," Dkt. 231-6 at 3.[38] For these reasons, there is not a dispute about the veracity of the allegations in the CAC.

For the foregoing reasons, Plaintiffs have stated a claim for breach of express warranty under Arizona law, as to FCA US. As to FCA NV, Arizona Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)     Arizona Count 2: Breach of Implied Warranty

The CAC advances a claim against the FCA Defendants for breach of the implied warranty of merchantability pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2a212. Dkt. 278 ¶¶ 809-20 ("Arizona Count 2").

In support of the Joint Motion, Defendants argue that Arizona Count 2 fails because in Arizona, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59 (citations omitted). "Arizona courts have consistently held that absent privity of contract, a purchaser cannot maintain a claim for breach of implied warranty under the U.C.C. against a manufacturer." *Plagens v. Nat'l RV Holdings*, 328 F. Supp. 2d 1068, 1073 (D. Ariz. 2004) (citations omitted); *see Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 24 (Ariz. Ct. App. 2006) ("Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty." (citations omitted)).

The CAC does not allege that Kneup, who is the Arizona Plaintiff, was in privity of contract with any of the FCA Defendants. Kneup is alleged to have purchased his Class Vehicle from "an authorized FCA dealership." *See* Dkt. 278 ¶ 99. However, Plaintiffs have not cited any dispositive authority from Arizona

---

[38] Among the exhibits are warranty booklets that are attributed to "Chrysler Group LLC," rather than "FCA US LLC." *See, e.g.*, Exhibit B to the FCA Request for Judicial Notice, "2013 Jeep Warranty Information Booklet," Dkt. 231-2 at 3. Chrysler Group LLC has been deemed the corporate predecessor of FCA US. *See* Dkt. 302 at 9 n.4 ("[T]hose booklets make clear that FCA US (which is identified by its former name – Chrysler Group LLC – in some of the booklets) issued the warranties upon which Plaintiffs base their claims.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

that, by alleging a plaintiff purchased a vehicle from an authorized dealership, the privity requirement
has been satisfied. The CAC does not include any additional allegations as to the relationship between
Kneup and the FCA Defendants, or between these Defendants and the dealership from which Kneup
allegedly purchased his Class Vehicle. Thus, the CAC does not adequately allege the requisite privity
of contract. For this reason, Arizona Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to
amend.

c)      California Counts 1 Through 4

(1)      California Count 1: Breach of Express Warranty

The CAC advances a claim against the Vehicle Manufacturer Defendants for breach of express
warranty pursuant to Cal. Com. Code §§ 2313 and 10210. Dkt. 278 ¶¶ 849-69 ("California Count 1").
The FCA Defendants, Toyota Defendants and Honda Defendants argue that this claim fails because
the limited warranties each provides do not cover design defects. *See* Dkts. 213 at 26-27 (Honda), 214
at 20 (Toyota), 230 at 25-26 (FCA).

The CAC alleges that "the Vehicle Manufacturer Defendants provided the California Plaintiffs and
California State Class members with written express warranties covering the repair or replacement
of components that are *defective in materials or workmanship*." Dkt. 278 ¶ 862 (emphasis added). "In
California, express warranties covering defects in materials and workmanship exclude defects in
design." *Troup*, 545 F. App'x at 668 (citation omitted); *see Sater v. Chrysler Grp.*, No. CV 14-00700
VAP, 2015 WL 736273, at *4 (C.D. Cal. Feb. 20, 2015); *Gertz v. Toyota Motor Corp.*, No. CV 10-1089
PSG, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011). "A manufacturing defect exists when an item
is produced in a substandard condition," whereas "[a] design defect . . . exists when the product is built
in accordance with its intended specifications, but the design itself is inherently defective." *McCabe v.
Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) (citations omitted).

Although the CAC does not define the ACU defect as a "design defect," it is appropriate to look to the
"gravamen of the complaint" to ascertain whether a plaintiff is pleading a design or manufacturing
defect. *Troup*, 545 F. App'x at 669. The allegations in the CAC make clear that the Alleged Defect is
one of design rather than manufacturing. *See, e.g.*, Dkt. 278 ¶ 10 ("ZF TRW ACUs with the DS84 ASIC
have a dangerous defect."); 146 ("the defective ZF TRW ACU Design"); 434 ("In or around 2015, ZF
TRW, STMicro, and Toyota began implementing design changes to defective ZF TRW ACUs installed
in Toyota vehicles for sale in Europe . . . ."); 449 ("In November 2018, representatives of Toyota Motor
Corporation and ZF TRW discussed a redesign of the ACU . . . .").

The existence of a manufacturing defect "is often demonstrated by showing the product performed
differently from other ostensibly identical units of the same product line." *McCabe*, 100 Cal. App. 4th at
1120. Here, by contrast, the CAC alleges both that all of the Class Vehicles made by a particular
Vehicle Manufacturer Defendant share the same defect, and that is also true for all of the Class
Vehicles made by all of the different manufacturers. *See, e.g.*, Dkt. 278 ¶¶ 20 ("[A]ll ZF TRW ACUs with
the DS84 ASIC are defective . . . ."); 50 n.6 ("The ZF TRW-designed ACUs manufactured by Hyundai
MOBIS contain the same defective DS84 ASIC supplied by STMicro and ZF TRW as all of the Class
Vehicles."); 282 ("Although the defective ZF TRW ACUs installed in the Class Vehicles vary slightly in
terms of their circuit protection, they all suffer from the same basic vulnerability to transient electricity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

and EOS."). These are consistent and specific allegations of a uniform design defect present across all Class Vehicles.

Because Plaintiffs have alleged a design defect which is not covered by Defendants' limited warranties, the claims for violation of breach of express warranty under California law fail as presently alleged. Therefore, California Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

<div align="center">

(2)    California Count 2: Violations of Song-Beverly Act for Breach of Express Warranty
</div>

The CAC advances a claim against the Vehicle Manufacturer Defendants for violations of the Song-Beverly Act for breach of express warranty pursuant to Cal. Civ. Code §§ 1791.2 and 1793.1. Dkt. 278 ¶¶ 870-91 ("California Count 2"). Because the CAC alleges only a design defect that is not covered by any express warranty, the claims for breach of express warranty in violation of the Song-Beverly Act necessarily fail as well. *Cf. Garlough v. FCA US LLC*, No. 2:20-CV-01879-JAM-AC, 2021 WL 1534205, at *9 (E.D. Cal. Apr. 19, 2021) (dismissing breach of express warranty claim under the Song-Beverly Act where the plaintiff alleged a design defect).

California Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

<div align="center">

(3)    California Count 3: Breach of Implied Warranty
</div>

The CAC advances a claim against the Vehicle Manufacturer Defendants for breach of implied warranty pursuant to Cal. Com. Code §§ 2314 and 10212. Dkt. 278 ¶¶ 892-908 ("California Count 3"). In support of the Joint Motion, Defendants argue that California Counts 2 and 3 fail because in California, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59 (citations omitted). Plaintiffs respond that "California do[es] not require privity for implied warranties," Dkt. 281 at 59, but in the only case cited to support that proposition, the parties had agreed that privity *is required* for Plaintiffs' "UCC-based implied warranty claim." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982 (N.D. Cal. 2014).

The California Plaintiffs allegedly purchased their Class Vehicles from authorized dealerships. *See* Dkt. 278 ¶¶ 73-75, 100-101, 113-14, 126, 134-36. This is not sufficient to allege that they were in privity with any Defendant. "Generally, an authorized dealership of a vehicle manufacturer is not an agent *per se* of the manufacturer." *Murphy v. Toyota Motor Sales, USA, Inc.*, No. 22-CV-05892 VAP, 2021 WL 2801452, at *6 (C.D. Cal. July 1, 2021) (citing *Acedo v. DMAX, Ltd.*, No. 15-02443 MMM, 2015 WL 12696176, at *28 (C.D. Cal. Nov. 13, 2015)). California district courts "have found under certain circumstances, it is possible for plaintiffs to allege sufficient facts to show an agency relationship between a manufacturer and an authorized dealership to bring claims against the manufacturer for actions of the dealership." *Id.* (collecting cases). However, the CAC does not include any allegations that an agency relationship existed between any manufacturer and any dealership.

The third-party beneficiary exception does not support Plaintiffs' claims. "In the case that is often cited in support of this exception, a California court held that a homeowner could assert a breach of implied warranty claim against a subcontractor even though the two were not in direct privity because the homeowner was 'a third-party beneficiary of the contract between' the subcontractor and contractor."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Skiathitis v. Nyko Techs., Inc.*, No. CV 18-3584 PSG, 2018 WL 6427360, at \*11 (C.D. Cal. Sept. 12, 2018) (quoting *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978)). District courts in California have reached different outcomes as to whether the third-party beneficiary exception "allows a consumer who purchases a product from a retail store to bring a breach of implied warranty claim against the product's manufacturer." *Id.* at \*11; *compare In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787-88 (N.D. Cal. 2017) (Ninth Circuit precedent forecloses a finding of privity) *with Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018) (third-party beneficiary exception remains viable).

Plaintiffs may be seeking to rely on the "third-party beneficiary exception to the privity requirement" that, as noted in *In re MyFord*, some California courts have recognized. 46 F. Supp. 3d at 983 (citations omitted). Even if the third-party beneficiary exception applies, the CAC does not allege that the Plaintiffs are the intended third-party beneficiaries of any contracts between the Vehicle Manufacturer Defendants and the retailers from whom they acquired their Class Vehicles. *Cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184-85 (C.D. Cal. 2010) (referencing *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008); *In re Sony VAIO Comput. Notebook Trackpad Litig.*, No. 09-cv-2109-BEN (RBB), 2010 WL 4262191, at \*3 (S.D. Cal. Oct. 28, 2010)) (internal citations omitted) ("Here, Plaintiffs have pled that they purchased vehicles from a network of dealers who are agents of Defendants. Like the plaintiffs in *Gilbert, Cartwright,* and *In re Sony VAIO,* Plaintiffs allege they were the intended consumers. Like those plaintiffs, they allege facts tending to support that they are third-party beneficiaries; therefore, Plaintiffs' breach of implied warranty claim is not precluded by the lack of vertical privity."); *Sonneveldt v. Mazda Motor of Am., Inc.,* No. 8-19-CV-01298 JLS, 2021 WL 62502, at \*15 (C.D. Cal. Jan. 4, 2021) ("Plaintiffs do not cite to any allegations in their FAC supporting their argument that the third-party beneficiary exception applies to their implied-warranty claims.").

The allegations of the CAC are not sufficient to establish privity or to warrant the application of the third-party beneficiary exception. Therefore, the claim for breach of implied warranty pursuant to Cal. Com. Code § 2314 fails as alleged, and California Count 3 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

<div style="text-align:center">(4)    <u>California Count 4: Violations of Song-Beverly Act for Breach of Implied Warranty</u></div>

The CAC advances a claim against the Vehicle Manufacturer Defendants for violations of the Song-Beverly Act for breach of the implied warranty of merchantability pursuant to Cal. Civ. Code §§ 1791.1 and 1792. Dkt. 278 ¶¶ 909-27 ("California Count 4"). Defendants argue that these claims for breach of implied warranty fail because the CAC does not allege that the subject vehicles are unmerchantable. Dkt. 208 at 56-59; Dkt. 299 at 22-23. "Merchantability, for purposes of the Song-Beverly Act, means that the consumer goods: . . . [a]re fit for the ordinary purposes for which such goods are used.' " *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009); *see Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used.").

The CAC alleges that the ACUs that contain the DS84 ASIC are defective due to their particular vulnerability to EOS. Dkt. 278 ¶ 10. It also alleges that Plaintiffs are at risk of suffering serious injuries

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

in the event of a collision because the Alleged Defect -- the vulnerability of the DS84 ASIC to damage from transient electricity caused by a collision -- would prevent deployment of the airbags and seatbelts in such an incident. *Id.* ¶ 11. Defendants argue that "Plaintiffs do not state an implied warranty claim here because they do not allege that the defect has forced them to stop driving their cars, rendered them incapable of being sold, or made them unsuitable for their ordinary purpose of providing transportation." Dkt. 299 at 22.

District courts in California have determined that implied warranty claims are sufficiently stated where a plaintiff alleges that a vehicle fails to provide safe, reliable transportation. *See, e.g.*, *Stockinger v. Toyota Motor Sales USA Inc.*, No. LACV-17-00035 VAP, 2017 WL 10574372, at *13 (C.D. Cal. July 7, 2017) (allegations of "noxious and foul odors" sufficient to support a claim for breach of implied warranty of merchantability); *Villanueva v. Am. Honda Motor Co.*, No. CV-19-1390 MWF, 2019 WL 8112467, at *8 (C.D. Cal. Oct. 10, 2019) (allegations of a "persistent braking defect, which impairs safety over an extended period of time" found sufficient to show unmerchantability despite continued use of the vehicles); *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700 VAP, 2015 WL 736273, at *10 (C.D. Cal. Feb. 20, 2015) (breach of implied warranty plausibly alleged where trucks were "useless or unsafe" to drive because of a defect that could lead to a loss of steering control); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244 (C.D. Cal. 2011) (allegations that a "water leak defect poses 'the danger of catastrophic engine and/or electrical system failure as a result of water entering and flooding a vehicle's interior cabin while the vehicle is in operation' " and that "[it] can cause engine failure, suddenly and unexpectedly, at any time and under any driving condition or speed, thereby contributing to traffic accidents, which can result in personal injury or death").

The principles of these decisions are persuasive. Adopting them in connection with an assessment of the adequacy of the pleadings shows that, even if Plaintiffs continued to drive their Class Vehicles, and have not suffered serious bodily harm as a result of the Alleged Defect, they have alleged sufficient facts to state a plausible claim that the vehicles are not fit for their ordinary purpose, which is "to provide . . . safe, reliable transportation.' " *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1120 (C.D. Cal. 2021) (quoting *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014)).

Defendants also argue that many of Plaintiffs' claims, including those for breach of implied warranty, are time-barred. Dkt. 208 at 61-64. Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls" the relevant statute of limitations. Dkt. 281 at 63.

Turning first to the limitations period, Cal. Com. Code § 2725 provides in relevant part:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Cal. Comm. Code § 2725(1), (2).

Under Section 2725, there is a four-year limitations period for a claim for breach of implied warranty pursuant to the Song-Beverly Act. *See Mexia,* 174 Cal. App. 4th at 1305-1306 ("California courts have held that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by the same statute that governs the statute of limitations for warranties arising under the Uniform Commercial Code: section 2725 of the Uniform Commercial Code."); *Sater,* 2015 WL 736273, at *8 ("In California, the statute of limitations for an implied warranty claim under the SBA is four years." (citations omitted)).

The claim of each California Plaintiff accrued at the time he or she purchased or leased his or her Class Vehicle. *See* Dkt. 278 ¶ 900 ("The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, . . . [and] were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the ACU defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous."); *cf. Sater*, 2015 WL 736273, at *8 (citing *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1102 (N.D. Cal. 2014)); *MacDonald*, 37 F. Supp. 3d at 110-02 (claim accrued at the time of purchase where the allegations were that "the defect was inherent, and existed at the time of sale").

"In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *Mexia*, 174 Cal. App. 4th at 1305.

The following table summarizes the timing of the purchases and leases at issue in the CAC and when the corresponding complaint was filed:

| California Plaintiff | Date of Class Vehicle Purchase or Lease | Date Complaint Filed | Make of Vehicle |
|---|---|---|---|
| Remigiusz Rundzio | July 22, 2012 (Dkt. 278 ¶ 100) | May 21, 2019 (*Bell v. ZF Friedrichshafen AG*, No. 8:19-cv-00963 (C.D. Cal.)) | Jeep |
| Steve Laveaux | May 2017 (*id.* ¶ 101) | October 2, 2020 (*Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. 20-cv-09668 (C.D. Cal.)) | Jeep |
| Kevin Burns[39] | June 14, 2013 (*id.* ¶ 126) | July 18, 2019 (*Berry v. TRW ZF Auto. Holdings Corp.*, No. 8:19-cv-01403 (C.D. Cal.)) | Honda |

---

[39]  The Honda Defendants argue that the Honda Limited Warranty expressly limited the period of the implied warranty of merchantability to the length of the Honda Limited Warranty, which was three years. Dkt. 213 at 22-23. Thus, they argue that the implied warranty of merchantability for Burns's vehicle ended in 2016. *Id.* at 23. A determination as to when that implied warranty ended, and whether the statutory limitations period of four years for bringing a claim for its breach applies, is unnecessary, as Burns filed his complaint more than four years after his claim accrued.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | | Date | February 9, 2022 |
|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | |

| | | | |
|---|---|---|---|
| Michael Hernandez | March 2019 (*id.* ¶ 73) | April 29, 2019 (*Hernandez v. Hyundai*, 8:19-cv-00782 (C.D. Cal.)) | Hyundai |
| Bonnie Dellatorre | October 14, 2013 (*id.* ¶ 74) | December 27, 2019 (*Dellatorre v. ZF TRW Auto. Holdings Corp.*, No. 8:19-cv-02497 (C.D. Cal.)) | Kia |
| Lore VanHouten | September 9, 2018 (*id.* ¶ 75) | October 2, 2020 (*Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. 20-cv-09668 (C.D. Cal.)) | Kia |
| Donna Ronan | May 26, 2018 (*id.* ¶ 134) | October 2, 2020 (*Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. 20-cv-09668 (C.D. Cal.)) | Mitsubishi |
| Tiffany Ecklor | July 5, 2013 (*id.* ¶ 135) | October 2, 2020 (*Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. 20-cv-09668 (C.D. Cal.)) | Mitsubishi |
| Gaylynn Sanchez | July 31, 2015 (*id.* ¶ 136) | August 14, 2019 (*Fuller v. ZF TRW Auto. Holdings Corp.*, No. 8:19-cv-01566 (C.D. Cal.)) | Mitsubishi |
| Mark Altier | April 24, 2014 (*id.* ¶ 113) | May 6, 2019 (*Altier v. ZF TRW Auto. Holdings Corp.*, No. 8:19- cv-00846 (C.D. Cal.)) | Toyota |
| Alejandra Renteria | August 4, 2013 (*id.* ¶ 114) | May 21, 2019 (*Bell v. ZF Friedrichshafen AG*, No. 8:19-cv-00963 (C.D. Cal.)) | Toyota |

As to Plaintiffs Laveaux, Hernandez, VanHouten and Ronan, each filed a complaint less than four years
after their respective claims accrued. Therefore, the claims for Laveaux, Hernandez, VanHouten and
Ronan for breach of implied warranty pursuant to the Song-Beverly Act are not time-barred.
Defendants' motions to dismiss these claims are **DENIED**.

As to Plaintiffs Rundzio, Burns, Dellatorre, Ecklor, Sanchez, Altier and Renteria, based on a review of
the face of the pleadings, none filed his or her action within the limitations period. Therefore, as to these
Plaintiffs, it is necessary to determine whether the alleged fraudulent concealment by Defendants is
sufficiently alleged to warrant the denial of the Motions.

"The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through
deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871,
875 (Cal. 2013). "To invoke the doctrine in the complaint, [Plaintiffs] must plead with particularity the
facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in
trying to uncover the facts." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415-16 (9th Cir. 1987) (citing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Conerly v. Westinghouse Electric Corp.,* 623 F.2d 117, 120 (9th Cir. 1980)); *see Sater*, 2015 WL
736273, at *9 (plaintiff must plead " '(a) the substantive elements of fraud, and (b) an excuse for late
discovery of the facts.' " (citing *Invs. Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533
(2011))); *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) ("This doctrine requires
the plaintiff (1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2)
demonstrate that he or she used due diligence in an attempt to uncover the facts." (citing *Hunter v.
Gates*, 68 Fed. App'x 69, 71 (9th Cir. 2003) (internal citation omitted))). In addition, Plaintiffs "must
allege facts showing affirmative conduct upon the part of the defendant which would, under the
circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief."
*Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). Defendants' "silence or
passive conduct does not constitute fraudulent concealment." *Volk*, 816 F.2d at 1416 (citing *Rutledge*,
576 F.2d at 250).

As noted, the CAC fails to plead the fraud claims with sufficient particularity as to all Vehicle
Manufacturer Defendants except FCA US, Hyundai Motors America and Kia Motor America. Thus, the
CAC uses group pleading without specific allegations as to each individual Defendant. The allegations
of fraudulent concealment, which largely parallel those made to support the claims of fraud, have the
same shortcoming. This applies to all Defendants except FCA US, HMA and KMA. *See Sater*, 2015 WL
736273, at *9 n.10 (Plaintiffs "ha[ve] the burden to plead and prove equitable tolling under a theory of
fraudulent concealment." (citing *Investors Equity*, 195 Cal. App. 4th at 1533)). For that reason, the
Song-Beverly claims for breach of implied warranty brought by Burns, Ecklor, Sanchez, Altier and
Renteria, which are not alleged against FCA US, HMA or JMA, are time-barred. Therefore, California
Count 4, as brought by Burns, Ecklor, Sanchez, Altier and Renteria, is **DISMISSED WITHOUT
PREJUDICE**, *i.e.*, with leave to amend.

Plaintiffs have pleaded, as predicate acts for their RICO claims, mail and wire fraud with particularity as
to FCA US, HMA and KMA. The question is whether they also have pleaded fraudulent concealment by
those Defendants with particularity. "For fraudulent concealment tolling to apply, the plaintiff must show
'(1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts.' The
substantive elements of fraud include '(1) a knowingly false representation by the defendant; (2) an
intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages.' "
*Cousyn for Cousyn Grading & Demo Inc v. Ford Motor Co.*, No. ED-CV-17-2051 DOC, 2019 WL
3491930, at *7 (C.D. Cal. July 30, 2019) (citations omitted). "Reliance is an essential element of a
fraudulent concealment claim." *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 928 (2010) (citation
omitted).

As discussed, the CAC does not sufficiently allege reliance on Defendants' alleged misrepresentations
or omissions. Thus, it does not allege exposure to these acts. Therefore, the CAC does not adequately
plead fraudulent concealment. For that reason, California Count 4, as brought by Rundzio and
Dellatorre, is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[40]

---

[40] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to
address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it
is appropriate to require allegations on the issue in any amended complaint. For those reasons, as brought by
certain Plaintiffs, California Count 4 has been dismissed without prejudice, so that these Plaintiffs have the
opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

d)      Colorado Counts 1 and 2

The CAC includes a claim against the Mitsubishi Defendants for breach of express warranty pursuant to Colo. Rev. Stat. §§ 4-2-213 and 4-2.5-210. Dkt. 278 ¶¶ 982-97 ("Colorado Count 1"). It also advances a claim against the Mitsubishi Defendants for breach of the implied warranty of merchantability under Colo. Rev. Stat. Ann. §§ 4-2-314 and 4-2.5-212. *Id.* ¶¶ 998-1009 ("Colorado Count 2").

In support of the Joint Motion, Defendants argue that Colorado Count 1 should be dismissed due to "Plaintiffs' failure to demonstrate compliance with the pre-suit notice requirements in" that state. Dkt. 208 at 60-61. Under Colorado law, "[t]o state a claim for breach of an express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) 'the breach proximately caused the losses claimed as damages,' and (4) the defendant received timely notice of the breach." *Haynes Mech. Sys., Inc. v. Bluon Energy, LLC*, No. 18-cv-03004 KLM, 2021 WL 3128652, at *6 (D. Colo. July 23, 2021) (citing *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020)); *see* Colo. Rev. Stat. § 4–2–607(3)(a) ("Where a tender has been accepted: (a) [t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy . . . .").

The CAC alleges that "[t]he Colorado Plaintiff and Colorado State Class members have provided the Mitsubishi Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Colorado State Class members within a reasonable amount of time after the ACU defect became public." Dkt. 278 ¶ 995. This is sufficient to satisfy the Colorado notice requirement. *See Palmer v. A.H. Robins Co.*, 684 P.2d 187, 206 (Colo. 1984) ("[N]o prescribed form of notice is required."); *Prutch v. Ford Motor Co.*, 618 P.2d 657, 661 n.6 (Colo. 1980) ("UCC s 2-607, comment 4, makes clear that, where notice is given, no formal requisites must be met. It is sufficient if the notice lets 'the seller know that the transaction is still troublesome and must be watched.' ").

Defendants argue that "Plaintiffs fail to provide the contents or documents purporting to provide notice." Dkt. 208 at 61. Plaintiffs have alleged that they provided pre-suit notice to the Mitsubishi Defendants, which is sufficient to state a claim for breach of express warranty under Colorado law. Whether there is a sufficient factual basis to support this allegation is not an issue that can be determined on a motion to dismiss.

Finally, Defendants argue that the breach of warranty claims are time barred breach under Colorado law. Dkt. 208 at 62; *see* Dkt. 212 at 34. Colo. Rev. Stat. § 4-2-725 provides,

(1) An action for breach of any contract for sale must be commenced within the time period prescribed in section 13-80-101, C.R.S. This period of limitation may not be varied by agreement of the parties.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made; except, that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

when the breach is or should have been discovered.

Colo. Rev. Stat. § 4-2-725(1)-(2). Colo. Rev. Stat. § 13-80-101 provides that the limitations period for breach of contract claims is "three years after the cause of action accrues." Colo. Rev. Stat. § 13-80-101(1)(a).

Nearing is the only Colorado Plaintiff. It is alleged that he purchased his Class Vehicle on September 23, 2013. Dkt. 278 ¶ 137. He filed his claims in this action on May 26, 2020.[41] This was after the three-year limitations period.

Plaintiffs argue that "fraudulent concealment tolls the statute of limitations." Dkt. 288 at 30 (citing *O'Connor v. BMW of N. Am., LLC*, No. 18-cv-3190, 2020 WL 1303285, at *4 (D. Colo. Mar. 19, 2020)).

Under Colorado law, a statute of limitations can be tolled for fraudulent concealment. *See First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197, 1200 (Colo. 1987). To establish fraudulent concealment in order to toll a statute of limitation, a plaintiff must plead:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages."

*Id*.

Although reliance is an element of fraudulent concealment, it "may be inferred from circumstantial evidence where the defendant concealed a material fact from the plaintiff." *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110 (Colo. 2011); *see Patterson v. BP Am. Prod. Co.*, 360 P.3d 211, 226 (Colo. Ct. App. 2015) (citing *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 111 (Colo. 2011)).

Defendants contend that Plaintiffs have not met the standards of Fed. R. Civ. P. 9(b) in seeking to assert fraudulent concealment as a response to the affirmative defense of an untimely filing of the action. Dkt. 299 at 27. Fraudulent concealment must be pleaded with particularity. Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Plaintiffs have not plausibly pleaded that the Mitsubishi Defendants knew of the Alleged Defect at the time that Nearing purchased his Class Vehicle, or that they learned of it during the limitations period and concealed it. Although the CAC alleges that "Mitsubishi, STMicro, and ZF TRW were aware of the risk of EOS in the ZF TRW ACUs since at least 2012," Dkt. 278 ¶ 519, the specific factual allegations are inconsistent with that timeline. The only allegation that Mitsubishi knew of the Alleged Defect in 2012 is that, on April 26, 2012, "Mitsubishi's engineers conducted testing '[t]o confirm ACU manufactured by ZF TRW protection level for transient,' " which they allegedly did "based on a known

---

[41]  Nearing is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

concern with the ACUs." *Id.* ¶ 520. Plaintiffs do not allege that this testing resulted in a determination that the ZF TRW ACU was defective. The first "consumer reports of airbag nondeployment," "including reports directly to Mitsubishi's own Customer Relations department," were in 2014. *Id.* ¶ 521; *see id.* ¶ 518 ("Since at least 2014, dozens of consumers have reported to Mitsubishi or NHTSA that the airbags in their Mitsubishi Class Vehicle failed to deploy after a crash."). There are no additional allegations of the discovery and concealment of the defect during the limitations period.

Nearing purchased his vehicle in 2013. The CAC does not sufficiently allege that the Mitsubishi Defendants had the requisite knowledge of the Alleged Defect at that time or at a particular time during the limitations period and concealed it from Nearing. For that reason, the CAC does not sufficiently allege fraudulent concealment to support the claim that the statute of limitations was tolled for a sufficient time to have made timely the filing of the complaint by Nearing.

For the foregoing reasons, Colorado Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

        e)     Connecticut Counts 1 and 2

           (1)    <u>Connecticut Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the Honda Defendants for breach of express warranty pursuant to Conn. Gen. Stat. §§ 42a-2-313 and 42a-2A-503. Dkt. 278 ¶¶ 1036-51 ("Connecticut Count 1"). The Honda Defendants argue that this claim fails because the Honda Limited Warranty "does not constitute an express warranty under Connecticut law." Dkt. 213 at 27.

Under Connecticut law, "[a] plaintiff asserting a claim for breach of express warranty must show (1) the existence of the warranty; (2) a breach of the warranty; and (3) damages proximately caused by the breach. *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 544 (D. Conn. 2020) (citing *McConologue v. Smith & Nephew Inc.*, 8 F. Supp. 3d 93, 114 (D. Conn. 2014)). Therefore, to state a claim, Plaintiffs must show the existence of an express warranty.

As noted, the Honda Limited Warranty provides that Honda -- or, Acura with respect to such vehicles -- "will repair or replace any part that is defective in material or workmanship under normal use." *See* Exs. 1 through 7 to Stevenson Decl., Dkts. 211-2, 211-3, 211-4, 211-5, 211-6, 211-7, 211-8. Under Connecticut law, such a "repair-and-replace clause" "is not a warranty at all." *Napoli-Bosse*, 453 F. Supp. 3d at 546. Courts in Connecticut have determined that the statutory definition of "express warranty" "exclude[s] repair-and-replace clauses." *Id.* (citing Conn. Gen. Stat. § 42a-2-313(2)). Plaintiffs' citation *of Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, No. CV92-0242198S, 1995 WL 80051, at *5 (Conn. Super. Ct. Feb. 15, 1995), to the contrary, Dkt. 287 at 24-25, is not persuasive, as that case has been overturned.

*Flagg Energy Development* considered whether a repair-and-replace clause constitutes a "warranty [that] explicitly extends to future performance of the goods . . . ." *Flagg Energy Dev. Corp.*, 1995 WL 80051, at *2 ("A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

discovered." (citing Conn. Gen. Stat. § 42-a-2-725(2))). The Superior Court found that it did. *Id.* at *5. However, the Connecticut Supreme Court concluded that "the repair or replacement clause contains no terms that, as a matter of law, would constitute an explicit warranty of future performance, as § 42a-2-725 (2) requires." *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 244 Conn. 126, 150 (1998), *overruled on other grounds by Ulbrich v. Groth*, 310 Conn. 375 (2013). The 2020 *Napoli-Bosse* decision "predict[ed] that the Connecticut Supreme Court will join those courts that have found § 2-313 to exclude repair-and-replace clauses." 453 F. Supp. 3d at 546.

The Honda Limited Warranty does not constitute an express warranty under Conn. Gen. Stat. § 42a-2-313. Therefore, Plaintiffs' claim for breach of express warranty under that provision fails.

For the foregoing reasons, Connecticut Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)     Connecticut Count 2: Breach of Implied Warranty

The CAC also includes a claim against the Honda Defendants for breach of the implied warranty of merchantability pursuant to Conn. Gen. Stat. §§ 42a-2-314 and 42a-2a-504. Dkt. 278 ¶¶ 1052-63 ("Connecticut Count 2"). In support of the Joint Motion, Defendants argue that Connecticut Count 2 fails because in Connecticut, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59 & n.21 (citing *Koellmer v. Chrysler Motors Corp.*, 276 A.2d 807, 812 (Conn. Cir. Ct. 1970)). "Connecticut law has maintained a privity requirement that prevents parties who are not in contractual privity with the warrantor from enforcing any implied warranty." *Kahn v. Volkswagen of Am., Inc.*, No. FSTCV075004090S, 2008 WL 590469, at *8 (Conn. Super. Ct. Feb. 13, 2008) (citations omitted); *see TD Properties, LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (D. Conn. 2009) (citation omitted).

The CAC does not allege that Huitzil, the Connecticut Plaintiff, was in privity of contract with any of the Honda Defendants. Huitzil is alleged to have purchased his Class Vehicle from "an authorized Honda dealership." Dkt. 278 ¶ 127. However, Plaintiffs have not cited any dispositive authority from Connecticut that alleging a plaintiff purchased a vehicle from an authorized dealership is sufficient to plead privity as to another, allegedly related party. The CAC does not include any additional allegations as to the relationship between Huitzil and the Honda Defendants, or between these Defendants and the dealership from which Huitzil purchased his Class Vehicle. *Cf. Kahn*, 2008 WL 590469, at *8 ("Courts applying Connecticut law have . . . recognized that it may be possible to satisfy the privity requirement by pleading facts which establish an agency relationship between a vehicle manufacturer and the Dealership." (citing *Koellmer*, 6 Conn. Cir. Ct. at 485)). Thus, the CAC does not adequately allege the requisite privity of contract. For this reason, Connecticut Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

f)  Florida Counts 1 and 2

(1)  <u>Florida Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the FCA, Honda, Hyundai-Kia and Toyota Defendants for breach of express warranty pursuant to Fla. Stat. §§ 672.313 and 680.21. Dkt. 278 ¶¶ 1092-1112 ("Florida Count 1").

"To plead a cause of action for breach of express warranties under the Florida Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011) (citation omitted).

The Honda Defendants argue that "the Complaint does not allege that the warrantor, American Honda, failed to honor its obligations before the warranty expired. This omission alone disposes of the Florida Plaintiffs' express warranty claims under" Florida law. Dkt. 213 at 25 & n.7 (citing *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013) (applying Florida law)). The Honda Defendants further argue that "the Honda Plaintiffs have failed to allege that any of them presented their vehicles for repair at a Honda dealer, as required under the Limited Warranty." Dkt. 213 at 26.

The warranty booklets, which were filed as exhibits by the Honda Defendants, provide that Honda -- or, Acura with respect to such vehicles -- "will repair or replace any part that is defective in material or workmanship under normal use" (the "Honda Limited Warranty"). *See* Exs. 1 through 7 to Stevenson Decl., Dkts. 211-2, 211-3, 211-4, 211-5, 211-6, 211-7, 211-8. Similarly, the warranty booklets, which were filed as exhibits by the FCA Defendants, provide in relevant part:

**2.1 Basic Limited Warranty**

**A.  Who Is Covered?**
You are covered by the Basic Limited Warranty if you are a purchaser for use of the vehicle.

**B.  What's Covered**
The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation . . . . You pay nothing for these repairs. These warranty repairs or adjustments — including all parts and labor connected with them — will be made by your dealer at no charge, using new or remanufactured parts.

*See, e.g.*, Dkt. 231-2 at 8.

Although warranty booklets for the Hyundai, Kia or Toyota Defendants have not been provided, the CAC alleges that, "[i]n connection with the purchase or lease of Class Vehicles, the FCA, Honda, Hyundai, Kia, and Toyota Defendants provided the Florida Plaintiffs and Florida State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 1104.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). "To assert a cause of action for breach of express warranty under Florida law, a consumer must allege that the manufacturer did not comply with the limited express warranty's terms." *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1231 (M.D. Fla.) (citing *Ocana v. Ford Motor Co.*, 992 So.2d 319, 323 (Fla. Dist. Ct. App. 2008)) *aff'd in part, vacated in part, remanded,* 349 F. App'x 433 (11th Cir. 2009).

With respect to the claims in the CAC, the terms of each alleged express warranty include that the manufacturer will repair or replace any part that is defective in materials or workmanship. When such terms are alleged, "[t]he consumer must allege that the manufacturer refused or failed to adequately repair a covered item." *Id.* at 1231 (citing *Ocana,* 992 So.2d at 324); *see Bailey v. Monaco Coach Corp.,* 350 F. Supp. 2d 1036, 1044 (N.D. Ga. 2004) ("Pursuant to Florida law, a repair-or-replace warranty is breached only if the warrantor does not remedy the covered defects within a reasonable time."), *aff'd,* 168 F. App'x 893 (11th Cir. 2006).

*Brisson* is instructive. There, the plaintiffs brought a claim for breach of express warranty under Florida law with respect to their vehicles. 602 F. Supp. 2d at 1231. Ford Motor Co. ("Ford"), was the manufacturer of the vehicles. It "provide[d] an express warranty to repair or replace defective parts for three years or 36,000 miles, whichever occurs first." *Id.* at 1230. The plaintiffs' claim for breach of express warranty was dismissed because it failed to "allege that Ford did not comply with a provision of the express warranty. There [was] no indication from the pleading that any of the named Plaintiffs ever took their truck for repair or ever gave notice of the breach, much less within the three-year or 36,000-mile warranty period . . . ." *Id.* at 1231. The Eleventh Circuit affirmed, finding that "[t]he express warranty claim was properly dismissed because plaintiffs failed to allege that they ever presented their vehicles to a Ford dealership for repair or that the Ford dealership failed to make the repair." *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (citing *Ocana,* 992 So.2d at 324-25).

Plaintiffs have not alleged that they ever presented the Class Vehicles for repair. Therefore, the CAC does not include adequate allegations to support the claim for a breach of any express warranty. The CAC alleges that "[t]he FCA, Honda, Hyundai, Kia, and Toyota Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU defect or replace the defective ACUs in the Class Vehicles." Dkt. 278 ¶ 1109. However, the CAC does not allege that any of the Florida Plaintiffs ever attempted to have his or her Class Vehicle repaired or replaced by any Defendant. *See id.* ¶¶ 76, 77, 102, 103, 104, 115, 116, 119, 128, 129. Nor does it allege that any Defendant ever refused to repair or replace a Class Vehicle when given that opportunity.

In the absence of such allegations, the averment that the FCA, Honda, Hyundai, Kia and Toyota Defendants failed to repair or replace the defective ACUs is not supported or plausible. Therefore, Plaintiffs have not adequately alleged that any of those Defendants breached its express warranty. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1231 (S.D. Fla. 2014) (citing *Ocana,* 992 So.2d at 324) (Under Florida law, "there can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms."); *Aprigliano v. Amer. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 n.4 (S.D. Fla. 2013) (citations omitted) ("[T]he Court is not persuaded principles of equity and fair play are served by making a manufacturer of a product liable to a subsequent purchaser outside the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

warranty period for an alleged defect the manufacturer never had the opportunity to repair or replace, as provided in the terms of the written warranty.").

Plaintiffs argue that they were not required to "present their vehicles for repair" as a condition to asserting claims for a breach of express warranties, because "doing so would have been futile." Dkt. 287 at 23 (citing *Benkle*, 2017 WL 9486154, at *12; *Keegan*, 284 F.R.D. at 512). However, the CAC does not present sufficient allegations to support this position. That distinguishes this case from those cited by Plaintiffs.[42]

The CAC does not sufficiently allege that it would have been futile for Plaintiffs to have presented their Class Vehicles to Defendants for repair or replacement. The absence of such allegations or ones that they presented their vehicles to any Defendant for repair or replacement, makes the CAC insufficient to state a claim of express warranty under Florida law. Therefore, Florida Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)     Florida Count 2: Breach of Implied Warranty

The CAC advances a claim against the FCA, Honda, Hyundai-Kia and Toyota Defendants for breach of the implied warranty of merchantability pursuant to Fla. Stat. §§ 672.314 and 680.212. Dkt. 278 ¶¶ 1113-28 ("Florida Count 2"). In support of the Joint Motion, Defendants argue that Florida Count 2 fails because in Florida, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59 (citations omitted). "Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of North America*, LLC, 904 So.2d 450, 458 (Fla. App. 2005). Plaintiffs do not dispute that privity of contract is required for such a claim for breach of implied warranty under Florida law. *See* Dkt. 281 at 59-60.

The CAC does not allege that any Florida Plaintiff was in privity with any Defendant. Some of the Florida Plaintiffs allegedly purchased or leased their Class Vehicles from authorized dealerships. *See, e.g.*, Dkt. 278 ¶¶ 102-104. However, such allegations are not sufficient to plead privity as to another, allegedly related party. *See Pelayo v. Hyundai Motor Am., Inc.*, No. 820CV01503JLSADS, 2021 WL 1808628, a *8-9 (C.D. Cal. May 5, 2021) ("A manufacturer is not in privity with a buyer who purchases through a third-party seller, such as an authorized dealer." (citing *Brisson*, 349 F. App'x at 434-35) (applying Florida law)). The CAC does not include any additional allegations as to the relationship between any Florida Plaintiff and any Defendant, or between any Defendant and the dealership from which a Class Vehicle was purchased or leased. Thus, the CAC does not adequately allege the requisite privity of contract. For this reason, Florida Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

---

[42] Those cases, including *Benkle* and *Keegan,* were discussed earlier. That discussion is incorporated here by this reference.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

g)    Illinois Counts 1 and 2

(1)    Illinois Count 1: Breach of Express Warranty

The CAC advances a claim against the Hyundai-Kia Defendants for breach of express warranty under 810 Ill. Comp. Stat. 5/2-313 and 5/2A-210. Dkt. 278 ¶¶ 1163-79 ("Illinois Count 1"). Under Illinois law, an alleged design defect cannot form the basis for an express warranty claim where the allegation is that defendants provided "written warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 1172; *see Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (applying Illinois law and holding that the plaintiff pointed "to no part of the record showing that a warranty against defective design was part of his contract with any defendant," so "he has failed to state a claim for breach of express warranty."); *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 788-89 (2001); *see also Schepler v. Am. Honda Motor Co.*, No. CV 18-6043-GW (AFMx), 2019 WL 398000, at *8 (C.D. Cal. Jan. 29, 2019) (recognizing that "that both California and Illinois have held that warranties for materials and/or workmanship fail to cover design defects").

Applying these standards to the CAC, it is insufficient for the same reasons discussed earlier as to other, similar claims. Therefore, Illinois Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)    Illinois Count 2: Breach of Implied Warranty

The CAC advances a claim against the Hyundai-Kia Defendants for breach of the implied warranty of merchantability under 810 Ill. Comp. Stat. 5/2-314 and 5/2A-212. Dkt. 278 ¶¶ 1180-93 ("Illinois Count 2").

In support of the Joint Motion, Defendants argue that Illinois Count 2 fails because in Illinois, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59-60 & n.21 (citing *Mellander v. Kileen*, 407 N.E.2d 1137, 1138 (Ill. App. Ct. 1980)). The Hyundai-Kia Defendants also make this argument. Dkt. 219 at 33 & n.19 (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988)).

"Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker v. Porsche Cars N. Amer., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *see Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 832 (2004) (applying Illinois law and affirming that, "[i]n order for a plaintiff to file a claim for economic damages under the UCC for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller." (citations omitted)). The same claim, but for personal injury, does not require vertical privity. *See Cameron v. Battery Handling Sys., Inc.*, 524 F. Supp. 3d 860, 866 (C.D. Ill. 2021) ("[I]n Illinois, a plaintiff need not allege vertical privity to survive a motion to dismiss a claim for breach of the implied warranty of merchantability in a personal injury case.").

Because Plaintiffs' claim is one for economic damages, it must be supported by allegations of vertical privity. The CAC alleges that Gerischer and Swanson, the Illinois Plaintiffs, purchased their respective Class Vehicles from authorized dealerships. Dkt. 278 ¶¶ 79-80. Under Illinois law, this does not *per se*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

establish privity. *See Voelker*, 353 F.3d at 526 (plaintiff who leased vehicle from authorized Porsche dealership did not allege privity with Porsche). Thus, the CAC does not sufficiently allege that either of the Illinois Plaintiffs was in privity of contract with any Defendant. Therefore, the CAC fails to state a claim for breach of the implied warranty of merchantability under Illinois law.

For the foregoing reasons, Illinois Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

    h)  Indiana Counts 1 and 2

The CAC advances a claim against the Kia Defendants for breach of express warranty under Ind. Code §§ 26-1-2-313 and 26-1-2.1-210. Dkt. 278 ¶¶ 1258-73 ("Indiana Count 1"). It also includes a claim against the Kia Defendants for breach of the implied warranty of merchantability under Ind. Code §§ 26-1-2-314 and 26-1-2.1-212. *Id.* ¶¶ 1274-84 ("Indiana Count 2").

In support of the Joint Motion, Defendants do not present any specific challenges to Indiana Counts 1 and 2. *See generally* Dkt. 208. In support of the Hyundai-Kia Motion, the Hyundai-Kia Defendants only challenge as untimely the breach of warranty claims of Indiana Plaintiff Ogorek. Dkt. 219 at 32.[43] Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63-64 n.21 (citing *Carroll v. BMW of N. Am., LLC*, No. 1:19-cv-0000224, 2019 WL 4243153, at *7 (S.D. Ind. Sept. 6, 2019)).

"Under Indiana law, the statute of limitations for a breach of warranty action is four years." *Carroll*, 2019 WL 4243153, at *7 (citing Ind. Code § 26-1-2-725(1)). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* (citing Ind. Code § 26-1-2-725(2)). "The statute of limitations may be tolled if the defendant fraudulently conceals the action giving rise to liability." *Id.* (citing *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987); Ind. Code § 34-11-5-1). However, "the doctrine of fraudulent concealment is 'narrowly defined,' as the concealment must be 'active and intentional,' and there must be some trick or contrivance intended by the defrauder. Mere silence will not constitute concealment, absent a duty to speak arising from a fiduciary or confidential relationship." *Id.* (quoting *Ludwig*, 510 N.E.2d at 697).

The Indiana Plaintiffs, Miller and Ogorek, purchased their respective Class Vehicles on October 22, 2016, and July 26, 2013. Dkt. 278 ¶¶ 82-83. Each filed his or her claims in this action on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00963 (C.D. Cal.). Each filing was more than four years after the respective purchase. Absent an exception, each of the claims would be time barred.

The CAC does not sufficiently allege either a fiduciary or confidential relationship between any Indiana Plaintiff or any Defendant. Nor does it sufficiently allege that the relevant Defendants engaged in any "trick or contrivance." Therefore, the doctrine of fraudulent concealment is not supported by the allegations in the CAC.

---

[43] Although the Hyundai-Kia Defendants argue that the claim of Indiana Plaintiff Miller under the Indiana DCSA is untimely, Dkt. 219 at 32, they do not also make that argument as to Miller's claims for breach of warranty. However, because the allegations of the CAC support the view that the limitations period had expired prior to when Miller filed his claims, and in the interest of judicial and party efficiency, this issue is addressed in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

For the foregoing reasons, Indiana Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[44]

  i)  Maryland Counts 1 and 2

The CAC advances a claim against the Hyundai-Kia Defendants for breach of express warranty under Md. Code Com. Law §§ 2-313 and 2A-210. Dkt. 278 ¶¶ 1411-27 ("Maryland Count 1"). It also advances a claim against the Hyundai-Kia Defendants for breach of the implied warranty of merchantability under Md. Code Com. Law §§ 2-314 and 2A-212. *Id.* ¶¶ 1428-40 ("Maryland Count 2").

The Hyundai-Kia Defendants argue that the Maryland Plaintiffs' breach of warranty claims are time-barred. Dkt. 219 at 32. The limitations period for a claim for breach of contract under Maryland law is "four years after the cause of action has accrued." Md. Code Com. Law § 2-725(1). "A cause of action accrues when the breach occurs," and "[a] breach of warranty occurs when tender of delivery is made . . . ." *Id.* § 2-725(2). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

Joseph Fuller, Tina Fuller and King are the Maryland Plaintiffs. Dkt. 278 ¶ 1444. Joseph Fuller purchased his Class Vehicle on April 28, 2014. *Id.* ¶ 86. Tina Fuller purchased hers on April 29, 2014. *Id.* ¶ 87. King purchased hers on July 17, 2013. *Id.* ¶ 88. King filed her claims on July 18, 2019. *See* Complaint, *Christopher Berry, et al v. ZF TRW Auto. Holdings Corp., et al.*, No. CV 19-1403 (C.D. Cal.). Joseph and Tina Fuller filed their respective claims on August 14, 2019. *See* Complaint, *Joseph Fuller, et al. v. ZF TRW Auto. Holdings Corp., et al.*, No. CV 19-1566 (C.D. Cal.). Each of these filings was more than four years after the respective purchases. Therefore, absent an exception to the tolling period, each of these claims would be untimely.

"Under Maryland law, the statute of limitations governing warranty claims is tolled if 'a cause of action is kept from a party by the fraud of an adverse party.' " *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 536 (D. Md. 2011) (citing Md. Code Cts. & Jud. Proc. § 5-203). To state a claim for fraudulent concealment under Maryland law, a plaintiff must allege:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Green v. H & R Block, Inc.*, 355 Md. 488, 525 (Md. 1999) (citation omitted). Under Fed. R. Civ. P. 9(b), "the party alleging fraudulent concealment for the purpose of tolling the statute of limitations must plead the circumstances with particularity." *Doll*, 814 F. Supp. 2d at 536-37 (citation omitted).

*Doll* presented facts similar to those alleged here. *Doll* concluded that the plaintiffs in that case had

---

[44] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Indiana Counts 1 and 2 have been dismissed without prejudice, so that the Indiana Plaintiffs have the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

alleged fraudulent concealment with sufficient particularity to justify the deferral of a determination as to whether the claims were time barred. 814 F. Supp. 2d at 538. In *Doll*, it was alleged that Ford "both concealed and failed to disclose essential information concerning the [plaintiffs'] vehicles' defective torque converter." *Id.* at 534. *Doll* concluded that the "[p]laintiffs ha[d] alleged sufficient facts to demonstrate that Ford was under a duty pursuant to the [federal Motor Vehicle] Safety Act to disclose the torque converter defects." *Id.* at 537 (referring to 49 U.S.C. §§ 30101 *et seq.*). Next, it determined that the "[p]laintiffs [had] adequately argue[d] that had Ford disclosed the vehicles' defect, the [p]laintiffs would have acted differently." *Id.* at 538. With respect to the third element, *Doll* concluded that the "[p]laintiffs ha[d] alleged a set of facts that support[ed] the notion that Ford actively intended to conceal facts regarding this defect." *Id.* "Specifically, [the p]laintiffs claim[ed] that Ford had exclusive knowledge of the defect from both internal and external sources but purposely concealed this information from the [p]laintiffs and Class members." *Id.* Finally, *Doll* determined that the "[p]laintiffs [had] allege[d] sufficient facts that they justifiably relied on Ford's concealment and therefore suffered damages." *Id.*

Applying this analysis to the CAC shows that it includes allegations of fraudulent concealment that are sufficient to warrant a deferral of the determination whether these claims are time barred. However, Plaintiffs have not pleaded when any Plaintiff discovered the Alleged Defect. Nevertheless, "[t]he precise time period during which Plaintiffs learned of the [Alleged D]efect . . . involves issues of fact ill-suited for resolution at this stage." *Nyarko v. BMW of N. Am., LLC*, No. CV RDB-18-3618, 2020 WL 1491361, at *9 (D. Md. Mar. 27, 2020).

For the foregoing reasons, the viability of the Hyundai-Kia Defendants' statute of limitations defense cannot be determined based on the pleadings. Plaintiffs have adequately alleged a breach of express and implied warranty under Maryland law. Such a determination is without prejudice to Defendants' statute of limitations defense being renewed based on a factual record.

>　　　j)　　　Massachusetts Counts 1 and 2

The CAC advances a claim against the Kia Defendants for breach of express warranty under Mass. Gen. Laws ch. 106, §§ 2-313 and 2A-210. Dkt. 278 ¶¶ 1473-87 ("Massachusetts Count 1"). It also includes a claim against the Kia Defendants for breach of the implied warranty of merchantability under Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212. *Id.* ¶¶ 1488-99 ("Massachusetts Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Massachusetts Plaintiffs are time-barred. Dkt. 208 at 62 & n.26-27 (citing Mass. Gen. Laws ch. 106, §§ 2-725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

DeMoranville is the only Massachusetts Plaintiff. He purchased his Class Vehicle on April 14, 2017. *Id.* ¶ 89. He filed his claims in this action on May 26, 2020.[45] The statute of limitations for a breach of contract action in Massachusetts is four years from when the breach occurred. Mass. Gen. Laws ch. 106, § 2-725(1). For a breach of warranty claim, the breach generally occurs "when tender of delivery is made." *Id.* § 2-725(2). DeMoranville filed his claims in this action within the limitations period.

---

[45] DeMoranville is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The Hyundai-Kia Defendants argue that "the CAC is devoid of any allegations regarding any express warranty language or which, if any, of the Defendant entities are parties to them. As such, Plaintiffs' express warranty claims must be dismissed." Dkt. 219 at 34 & n.20 (citing *Penniston v. Brown & Williamson Tobacco Corp.*, 2000 WL 1585609, at *5 (D. Mass. June 15, 2000)). The only authority cited by the Hyundai-Kia Defendants does not require that allegations in support of a breach of warranty claim under Massachusetts law go beyond what is alleged in the CAC. 2000 WL 1585609, at *5. *Penniston* does not expressly address the sufficiency of allegations regarding the express warranty itself. *Id.* ("[I]t is impossible to discern from the Amended Complaint when [the plaintiff] alleges that any of the misrepresentations were made . . . . Similarly, without knowing the content of the statements, the court can make no judgment as to the existence of an express warranty.").

The CAC alleges that, "[i]n connection with the purchase or lease of Kia Class Vehicles, the Kia Defendants provided the Massachusetts Plaintiff and Massachusetts State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 1480. This allegation provides sufficient detail about the express warranties at issue.

For the foregoing reasons, Plaintiffs have stated a claim for breach of express and implied warranties under Massachusetts law against the Kia Defendants.

k)      Michigan Counts 1 and 2

The CAC advances a claim against the Kia Defendants for breach of express warranty under Mich. Comp. Laws §§ 440.2313 and 440.2860. Dkt. 278 ¶¶ 1531-45 ("Michigan Count 1"). It also includes a claim against the Kia Defendants for breach of the implied warranty of merchantability under Mich. Comp. Laws §§ 440.2314 and 440.2862. *Id.* ¶¶ 1546-57 ("Michigan Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Michigan Plaintiffs are time-barred. Dkt. 208 at 62 & n.26-27 (citing Mich. Comp. Laws § 440.2725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

Jones is the sole Michigan Plaintiff. She purchased her Class Vehicle on March 16, 2015. *Id.* ¶ 90. She filed her claims on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00963 (C.D. Cal.). The statute of limitations for a breach of contract action under Michigan law is four years from when the breach occurs. Mich. Comp. Laws § 440.2725(1). For a breach of warranty claim, the breach generally occurs "when tender of delivery is made." *Id.* § 440.2725(2). Therefore, absent an exception to the limitations period, these claims would be time-barred.

Under Michigan law, "the statute of limitations is tolled when a party conceals the fact that the plaintiff has a cause of action." *Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, No. 260320, 2007 WL 1264008, at *3 (Mich. Ct. App. May 1, 2007) (citing Mich. Comp. Laws § 600.5855; *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996)). "Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974)).

The CAC does not sufficiently allege fraudulent concealment. It does not include any allegations as to due diligence by Jones or her discovery of the Alleged Defect. "[A]n injured party has a positive duty to use diligence in discovering his cause of action within the limitations period." D*ayco Corp.*, 523 F.2d at 394 (citing *Wood v. Carpenter*, 101 U.S. 135, 139 (1879)). "If the plaintiff has delayed beyond the limitations period, he must fully plead the facts and circumstances surrounding his belated discovery 'and the delay which has occurred must be shown to be consistent with the requisite diligence.' " *Id.* (quoting *Wood*, 101 U.S. at 143).

The CAC alleges:

> Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to whether Jones could have exercised due diligence to discover the Alleged Defect. Further, the CAC is without any detailed allegations as to when and how Jones discovered the Alleged Defect. *Dayco* held that the "mere allegation of due diligence without asserting what steps were taken is insufficient under the *Wood* standard." *Dayco*, 523 F.2d at 394.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim. Therefore, Michigan Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[46]

> l)      Minnesota Counts 1 and 2

The CAC advances claims against the FCA, Honda and Kia Defendants for breach of express warranty under Minn. Stat. §§ 336.2-313 and 336.2A-210. Dkt. 278 ¶¶ 1588-1605 ("Minnesota Count 1"). It also includes claims against these Defendants for breach of the implied warranty of merchantability under Minn. Stat. §§ 336.2-314 and 336.2A-212. *Id.* ¶¶ 1606-20 ("Minnesota Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Minnesota Plaintiffs are time-barred. Dkt. 208 at 62 & n.26-27 (citing Minn. Stat. § 336.2-725(1), (2)). Plaintiffs

---

[46]  Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Michigan Counts 1 and 2 have been dismissed without prejudice, so that the Michigan Plaintiffs have the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

Keister, Nelson and Birk-LaBarge are the Minnesota Plaintiffs. Dkt. 278 ¶ 1592. Keister purchased his Class Vehicle on August 30, 2011. *Id.* ¶ 105. He filed his claims in the Eastern District of Michigan on May 17, 2019, and they were later transferred to this MDL. *See* Complaint, *Regina Heilman-Ryan et al v. ZF TRW Auto. Holdings Corp. et al*, No. CV 19-6899 (C.D. Cal.). Nelson purchased her Class Vehicle on October 14, 2013. Dkt. 278 ¶ 130. She filed her claims on August 14, 2019. *See* Complaint, *Joseph Fuller, et al. v. ZF TRW Auto. Holdings Corp., et al.*, No. CV 19-1566 (C.D. Cal.). Birk-LaBarge purchased her Class Vehicle on October 24, 2014. Dkt. 278 ¶ 91. She filed her claims in this action on May 26, 2020.[47]

"The statute of limitations for breach of warranty in Minnesota is four years." *Strong v. Stryker Corp.*, No. CIV. 10-2315 MJD/FLN, 2010 WL 4967876, at *5 (D. Minn. Dec. 1, 2010) (citing Minn. Stat. § 336.2-725, subd. 1. "A warranty claim accrues upon tender of delivery." *Id.* (citing Minn. Stat. § 336.2-725, subd. 2; *Highway Sales v. Blue Bird Corp.*, 559 F.3d 782, 789 (8th Cir. 2009)). Breach of warranty claims can be tolled based on a defendant's fraudulent concealment. *Id.* (citing Minn. Stat. § 336.2-725, subd. 4; *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877 (8th Cir. 2000)). Therefore, absent an exception to the limitations period, these claims would be time-barred.

"In order to toll the limitation period on the grounds of fraudulent concealment, a plaintiff must establish the following: "(1) Defendant['s] concealment of Plaintiff['s] cause of action, (2) failure by Plaintiff[ ] to discover the existence of [his] cause of action, and (3) due diligence by Plaintiff[ ] in attempting to discover the claim." *Olson v. Amatuzio*, No. CV 18-124 (DWF/TNL), 2018 WL 4087944, at *5 (D. Minn. Aug. 27, 2018), *aff'd*, 799 F. App'x 433 (8th Cir. 2020) (citing *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1022 (D. Minn. 1997)) (alteration in original). "The concealment must be fraudulent or intentional and, in the absence of a fiduciary relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Cohen v. Appert*, 463 N.W.2d 787, 790 (Minn. Ct. App. 1990) (citing *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975)). The elements of fraudulent concealment must be pleaded with particularity under Fed. R. Civ. P. 9(b). *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

Plaintiffs have not sufficiently pleaded the third element -- due diligence by Plaintiffs in attempting to discover the claim -- because they have not provided any allegations about Plaintiffs' investigation into and discovery of the Alleged Defect. *See Olson v. Amatuzio*, 799 F. App'x 433, 437 (8th Cir.), *cert. denied*, 141 S. Ct. 255 (2020) (The "complaint does not contain facts that suggest [the plaintiff] could not have discovered the alleged concealment by reasonable diligence. . . . [He] thus did not 'state with particularity the circumstances constituting fraud.' " (quoting Fed. R. Civ. P. 9(b))).

The CAC alleges:

Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using

---

[47] Birk-LaBarge is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to when each Plaintiff was on notice of the existence of the Alleged Defect; what efforts, if any, he or she made to discover it; and when he or she did discover it. *See Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 888 (D. Minn. 2011) (citing *Klehr v. A.O. Smith Corp.,* 87 F.3d 231, 235 (8th Cir. 1996)) ("The relevant question with respect to fraudulent concealment is when the plaintiff had such notice that the exercise of reasonable diligence would have alerted the plaintiff of the existence of a cause of action."). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975) (citing *Duxbury v. Boice*, 72 N.W. 838-39 (Minn. 1897)). Additionally, that party "must establish that it was actually unaware that the defect existed before a finding of fraudulent concealment can be sustained." *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990*)*. Plaintiffs have not discharged their burden of establishing fraudulent concealment.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim. Minnesota Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[48]

m)    Missouri Counts 1 and 2

The CAC advances a claim against the Kia Defendants for breach of express warranty under Mo. Rev. Stat. §§ 400.2-313 and 400.2A-210. Dkt. 278 ¶¶ 1681-95 ("Missouri Count 1"). It also includes a claim against these Defendants for breach of the implied warranty of merchantability under Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212. *Id.* ¶¶ 1696-1707 ("Missouri Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Missouri Plaintiff are time-barred. Dkt. 208 at 62 & n.26-27 (citing Mo. Stat. § 400.2-725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

The statute of limitations for breach of warranty claims under Missouri law is four years, and "begins to run when tender of delivery is made, unless the goods are sold with a warranty for future performance." *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008) (citing Mo. Stat. § 400.2-725(1), (2)). As noted, Sutterfield, the only Missouri Plaintiff, purchased his Class Vehicle on September 27, 2013, Dkt. 278 ¶ 92, and filed his claims in this action on May 26, 2020, which was more than four years later. It already has been determined that Plaintiffs have not adequately pleaded fraudulent concealment

---

[48] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Minnesota Counts 1 and 2 have been dismissed without prejudice, so that the Minnesota Plaintiffs have the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

under Missouri law. Therefore, the CAC does not sufficiently allege that Sutterfield's claims for breach of warranty are viable notwithstanding the four-year limitations period.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim. Therefore, Missouri Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[49]

n)      Montana Counts 1 and 2

The CAC advances a claim against the FCA Defendants for breach of express warranty under Mont. Code Ann. §§ 30-2-313 and 30-2A-210. Dkt. 278 ¶¶ 1736-51 ("Montana Count 1"). It also includes a claim against the FCA Defendants for breach of the implied warranty of merchantability under Mont. Code Ann. §§ 30-2-314 and 30-2A-212. *Id.* ¶¶ 1752-63 ("Montana Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Montana Plaintiff are time-barred. Dkt. 208 at 62 & n.26-27 (citing Mont. Code § 30-2-725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a); Dkt. 290 at 17.

The statute of limitations for breach of warranty claims under Montana law is four years. Mont. Code § 30-2-725(1). The "cause of action accrues when the breach occurs," and the breach "occurs when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods." *Id.* § 30-2-725(2). Adams, who is the only Montana Plaintiff, purchased his Class Vehicle in November 2012. Dkt. 278 ¶ 106. He filed his claims in this action on May 26, 2020,[50] and they were later transferred to this MDL. *See* Complaint, *Barry Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. CV 20-09668 (C.D. Cal.). Therefore, absent an exception to the limitations period, these claims would be time-barred.

Under Montana law, fraudulent concealment tolls the limitations period "until the facts constituting the claim have been discovered or, *in the exercise of due diligence,* should have been discovered by the injured party if (a) the facts constituting the claim are by their nature concealed or self-concealing; or (b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause." Mont. Code Ann. § 27-2-102(3) (emphasis added); *see Yellowstone Conf. of United Methodist Church v. D.A. Davidson, Inc.*, 741 P.2d 794, 798 294 (Mont. 1987) (citing *Much v. Sturm Ruger and Co., Inc.*, 502 F. Supp. 743, 745 (D. Mont. 1980)); *Knight v. City of Missoula*, 827 P.2d 1270, 1274 (Mont. 1992) ("[T]he doctrine of fraudulent concealment [] toll[s] the statute of limitations until the cause of action is discovered or could have been discovered through due diligence." (citing *Johnson v. St. Patrick's Hosp.*, 417 P.2d 469, 471 (Mont. 1966))), *as clarified on denial of reh'g* (Apr. 2, 1992). To establish fraudulent concealment, Plaintiffs

---

[49] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Missouri Counts 1 and 2 have been dismissed without prejudice, so that the Missouri Plaintiffs have the opportunity to seek to make such allegations.

[50] Adams is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
| --- | --- | --- | --- |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

must show that they "exercise[d] due diligence." *Humphrey v. Remington Arms Co., LLC*, 593 Fed. App'x 638, 639 (9th Cir. 2015); *see Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (Mont. 2003) (citing *Gregory v. City of Forsyth*, 609 P.2d 248, 251 (Mont. 1980)) ("[O]rdinary diligence must be exercised by the aggrieved party in the discovery of the facts constituting the fraud or deceptive practice.").

The CAC alleges:

> Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to when Adams was on notice of the existence of the Alleged Defect; what efforts, if any, he made to discover it; and when he did discover it. Plaintiffs have not discharged their burden of establishing fraudulent concealment.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim. Therefore, Montana Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[51]

o)   Nevada Counts 1 and 2

(1)   <u>Nevada Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the Toyota Defendants for breach of express warranty under Nev. Rev. Stat. §§ 104.2313 and 104A.2210. Dkt. 278 ¶¶ 1790-1803 ("Nevada Count 1"). Nev. Rev. Stat. § 104.2714 provides that, when a buyer "has accepted goods and given notification . . . the buyer may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Nev. Rev. Stat. § 104.2714(1). To plead breach of express warranty, a plaintiff must establish "that a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained." *Nev. Cont. Servs., Inc. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003) (citations in footnote omitted).

The Toyota Defendants argue that, "[t]o establish a breach" of the express warranty provided by TMS, which "guarantees free "repairs and adjustments needed to correct defects in materials or workmanship' for the first 36 months or 36,000 miles the vehicle is in operation," Plaintiffs must allege

---

[51] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Montana Counts 1 and 2 have been dismissed without prejudice, so that the Montana Plaintiffs have the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

"that they presented their vehicles to an authorized Toyota dealer for repair within the warranty period." Dkt. 214 at 18 & n.2 (citing *Wood v. Winnebago Indus.*, No. 2:18-cv-1710 JCM (BNW), 2020 WL 3453076, at *6 (D. Nev. Mar. 23, 2020)). This argument is not persuasive. The Toyota Defendants have not established as a matter of Nevada law that a plaintiff is required to provide an opportunity for repair or replacement as a prerequisite to bringing a claim for breach of express warranty. They rely on *Winnebago*. However, in that case, the plaintiff's obligation to present his allegedly defective recreational vehicle to an authorized service center for repairs arose from 15 U.S.C. § 2310(e). *Winnebago*, 2020 WL 3453076, at *6. That statute applied because he brought a claim for breach of express warranty under the Magnuson-Moss Warranty Act. Although that statute is identified in the CAC as a basis for subject matter jurisdiction, ¶ 139, Plaintiffs have not relied on it as the basis of this express warranty claim.

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the "Nevada Plaintiff" are time-barred. Dkt. 208 at 62 & n.26-27 (citing Nev. Rev. Stat. § 104.2725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a); Dkt. 290 at 17.

The statute of limitations for breach of warranty claims under Nevada law is four years. Nev. Rev. Stat. § 104.2725(1). The "cause of action accrues when the breach occurs," and the breach "occurs when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods." *Id.* § 104.2725(2). Samouris, who is the only Nevada Plaintiff, purchased his Class Vehicle on July 28, 2018. Dkt. 278 ¶ 118. He filed his claims in the Eastern District of Michigan on April 26, 2019, and they were later transferred to this MDL. *See* Complaint, *Gary E. Samouris et al v. ZF-TRW Auto. Holdings Corp. et al.*, No. CV 19-06896 (C.D. Cal.). This was within the four-year limitations period. Therefore, his claims are not barred by the statute of limitations.

Plaintiffs have stated a claim for breach of express warranty under Nevada law.

(2)  Nevada Count 2: Breach of Implied Warranty

The CAC also includes a claim against the Toyota Defendants for breach of the implied warranty of merchantability under Nev. Rev. Stat. §§ 104.2314 and 104A.2212. Dkt. 278 ¶¶ 1804-14 ("Nevada Count 2").

The Toyota Defendants argue that Plaintiffs have not pleaded privity, which is required to state a claim for breach of implied warranty under Nevada law. Dkt. 214 at 22 & n.11 (citing *Long v. Flanigan Warehouse Co. & Inland Ladder Co.*, 382 P.2d 399, 402 (Nev. 1963); *KB Home Nev. Inc. v. Dunrite Constr., Inc.*, 402 P. 3d 1253 (Nev. 2017)).

Under Nevada law, "contractual privity is a prerequisite for a breach of warranty action." *Belcher v. Nev. Rock & Sand Co.*, 516 F.2d 859, 860 (9th Cir. 1975) (citing *Amundsen v. Ohio Brass Co.*, 513 P.2d 1234 (Nev. 1973)). The CAC does not allege that Samouris, who is the Nevada Plaintiff, was in privity of contract with any of the Toyota Defendants. Samouris allegedly purchased his Class Vehicle from "an authorized Toyota dealership." *See* Dkt. 278 ¶ 118. However, Plaintiffs have not cited any dispositive authority from Nevada that alleging a plaintiff purchased a vehicle from an authorized dealership is sufficient to plead privity as to another, allegedly related party. The CAC does not include

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

any additional allegations as to the relationship between Samouris and the Toyota Defendants, or between these Defendants and the dealership from which Samouris purchased his Class Vehicle. Thus, the CAC does not adequately allege the requisite privity of contract. For this reason, Nevada Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

        p)     New Jersey Counts 1 and 2

        (1)    <u>New Jersey Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the Kia Defendants for breach of express warranty under N.J. Stat. Ann. §§ 12A:2-313 and 12A:2A-210. Dkt. 278 ¶¶ 1839-53 ("New Jersey Count 1"). "To plead a claim for breach of express warranty under New Jersey law, a plaintiff 'must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.' " *Brown v. Hyundai Motor Am.*, No. CV1811249SDWJAD, 2019 WL 4126710, at *3 (D.N.J. Aug. 30, 2019) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).

The CAC does not sufficiently allege that the Kia Defendants provided express warranties that covered the Alleged Defect. As noted, the Alleged Defect has been characterized by Plaintiffs as a design defect. The warranties that are alleged to have been provided by the Kia Defendants are "written express warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 1846. "[U]nder New Jersey law, a warranty that limits its coverage to defects in 'materials' and 'workmanship' does not, without more, apply to defects in 'design.' " *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019); *see Robinson v. Kia Motors Am., Inc.*, No. CIV.A. 13-006, 2015 WL 5334739, at *12 (D.N.J. Sept. 11, 2015) (quoting *Nelson v. Nissan N. Am., Inc.*, No. 11-5712, 2014 WL 7331075, at *2-3 (D.N.J. Dec. 19, 2014) ("[D]esign defects cannot be encompassed within the meaning of defects in workmanship or materials.").

Because the CAC does not adequately plead that the express warranties the Kia Defendants provided covered the Alleged Defect, it does not state a claim for breach of express warranty under New Jersey law. Therefore, New Jersey Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

        (2)    <u>New Jersey Count 2: Breach of Implied Warranty</u>

The CAC advances a claim against the Kia Defendants for breach of the implied warranty of merchantability under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212. Dkt. 278 ¶¶ 1854-65 ("New Jersey Count 2"). Defendants argue that an implied warranty of merchantability "is not breached until a possible defect manifests." Dkt. 208 at 56-57 (citing *Sheris v. Nissan N. Am., Inc.*, No. 07-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Nos. 96-3125(JBS), 96-1814(JBS), 96-3198(JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997)); *see* Dkt. 219 at 33.

"The implied warranty of merchantability means that 'the thing sold is reasonably fit for the general purpose for which it is manufactured and sold.' " *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 FLW DEA, 2015 WL 3487756, at *12 (D.N.J. June 2, 2015) (quoting *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846 (SDW), 2011 WL 2976839, at *22 (D.N.J. July 21, 2011)); *see Dzielak v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Whirlpool Corp.*, 26 F. Supp. 3d 304, 329 (D.N.J. 2014) ("[T]he UCC, as adopted by New Jersey, specifically states that an implied warranty of merchantability ensures that goods sold are 'fit for the ordinary purposes for which such goods are used.' " (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011))). "For an automobile, the implied warranty of merchantability is breached . . . when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.' " *Sheris*, 2008 WL 2354908, at *6 (quoting *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Nos. 96-3125, 96-1814, 96-3198 (JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997)).

The CAC alleges that "ZF TRW ACUs with the DS84 ASIC have a dangerous defect" in that they "are much more vulnerable to bursts of electricity than are other ACUs." Dkt. 278 ¶ 10. All Class Vehicles have a ZF TRW ACU with a DS84 ASIC. *See id.* ¶ 7 n.3. These allegations sufficiently state that the Alleged Defect is present in all Class Vehicles, and makes all of them unfit for the ordinary purpose of safe transportation. A vehicle is not safe for driving if, in the event of a serious collision, its airbags are unlikely to deploy. The implied warranty claims do not fail because the CAC does not allege that each Class Vehicle has been involved in a collision in which the airbags did not deploy due to the Alleged Defect. Whether the Alleged Defect has caused or will cause the airbags not to deploy in a particular Class Vehicle is a question of fact. Plaintiffs have alleged that this is a system-wide defect that makes driving each Class Vehicle dangerous. That is sufficient to plead a breach of the implied warranty of merchantability.

Finally, in support of the Joint Motion Defendants argue that the breach of warranty claims of the New Jersey Plaintiff are time-barred. Dkt. 208 at 62 & n.26-27 (citing N.J. Stat. § 12A:2-725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a); Dkt. 290 at 17.

The statute of limitations for breach of warranty claims under New Jersey law is four years. N.J. Stat. § 12A:2-725(1). The "cause of action accrues when the breach occurs," and the breach "occurs when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods." *Id.* § 12A:2-725(2). Damens, who is the sole New Jersey Plaintiff, purchased his Class Vehicle on June 30, 2014. Dkt. 278 ¶ 93. He filed his claims in the Eastern District of Michigan on October 2, 2020, and they were later transferred to this MDL. *See* Complaint, *Barry Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. CV 20-09668 (C.D. Cal.). This was outside of the four-year limitations period for New Jersey breach of warranty claims.

For fraudulent concealment to toll the statute of limitations in New Jersey, a plaintiff must establish the following:

    1. an affirmative act of concealment by each defendant,
    2. that the defendant's actions misled the plaintiff or relaxed its inquiry, and
    3. that the plaintiff exercised due diligence during the statutory period.

*In re Elec. Carbon Prod. Antitrust Litig.*, 333 F. Supp. 2d 303, 315 (D.N.J. 2004) (citing *In re Lower Lake Erie Iron Ore Antitrust Litig.,* 998 F.2d 1144, 1178-79 (3d Cir. 1993)).

As to the third element, the CAC alleges:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to when the Plaintiff was on notice of the existence of the Alleged Defect; what efforts, if any, he or she made to discover it; and when he or she did discover it. In the absence of such allegations, Plaintiffs cannot establish that fraudulent concealment tolls the limitations period. *Cf. Fuqua v. Bristol-Myers Squibb Co.,* 926 F. Supp. 2d 538, 550 (D.N.J. 2013) ("While Plaintiffs allege that they were unable to obtain access to the concealed information regarding the contamination, they fail to aver what actions they took to discover that information and, relatedly, the Complaints are also devoid of any facts relating to the exercise of due diligence on the part of Plaintiffs to discover the existence of fraud notwithstanding Defendant's alleged wrongdoing." (internal citation omitted)).

Because the CAC does not sufficiently allege fraudulent concealment with corresponding tolling of the limitations period, it does not provide an adequate basis to conclude that viable claims have been alleged. Damens filed his claims outside of the limitations period for breach of warranty claims. Therefore, New Jersey Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[52]

  q)  New York Counts 1 and 2

    (1)  <u>New York Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the FCA and Honda Defendants for breach of express warranty under N.Y. U.C.C. Law §§ 2-313 and 2-A-210. Dkt. 278 ¶¶ 1894-1910 ("New York Count 1"). The Honda and FCA Defendants argue that this claim fails because their limited warranties do not cover design defects. *See* Dkt. 230 at 25-26.

The CAC alleges that, "[i]n connection with the purchase or lease of Class Vehicles, the FCA and Honda Defendants provided the New York Plaintiffs and New York State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 1903. Under New York law, such warranties do not cover design defects. *See Garcia v. Chrysler Grp. LLC,* 127 F. Supp. 3d 212, 219 (S.D.N.Y. 2015) ("The Basic Limited Warranty covers defects in 'material, workmanship or factory preparation' that existed when the vehicle left the manufacturing plant in all parts other than tires and headphones for 36 months or for 36,000 miles on the odometer, whichever occurred first. . . . Notably, it does not cover design defects." (internal citations omitted)); *Cali v. Chrysler Grp. LLC*, No. 10 CIV. 7606 (JSR), 2011 WL 383952, at *2

---

[52] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, New Jersey Count 2 has been dismissed without prejudice, so that the New Jersey Plaintiff has the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(S.D.N.Y. Jan. 18, 2011) ("Chrysler's Basic Limited Warranty covers only defects in 'material, workmanship or factory preparation'—not defects in vehicle design."), *aff'd*, 426 F. App'x 38 (2d Cir. 2011).

"[A] manufacturing defect . . . results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm" and "a design defect . . . results when the product as designed is unreasonably dangerous for its intended use." *McCarthy v. Olin Corp.,* 119 F.3d 148, 154–55 (2d Cir.1997). Although the CAC does not explicitly define the ACU defect as a "design defect, the allegations in the CAC make clear that the Alleged Defect is one of design rather than manufacturing. *See, e.g.,* Dkt. 278 ¶¶ 10 ("ZF TRW ACUs with the DS84 ASIC have a dangerous defect."); 146 ("the defective ZF TRW ACU Design"); 434 ("In or around 2015, ZF TRW, STMicro, and Toyota began implementing design changes to defective ZF TRW ACUs installed in Toyota vehicles for sale in Europe . . . ."); 449 ("In November 2018, representatives of Toyota Motor Corporation and ZF TRW discussed a redesign of the ACU . . . .").

Because the CAC alleges a design defect, which is not covered by Defendants' limited warranties, the claims for violation of breach of express warranty under New York law are not adequately alleged. Therefore, New York Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)    New York Count 2: Breach of the Implied Warranty of Merchantability

The CAC advances a claim against the FCA and Honda Defendants for breach of the implied warranty of merchantability under N.Y. U.C.C. Law §§ 2-314 and 2-A-212. Dkt. 278 ¶¶ 1911-24 ("New York Count 2"). In support of the Joint Motion, Defendants argue that New York Count 2 fails because in New York, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59 (citations omitted).

"New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability . . . where the only loss alleged is economic." *Catalano v. BMW of N. Am., LLC,* 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *see Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 448 N.E.2d 792, 792 (N.Y. 1983) ("[T]here being no privity between the purchaser and the defendant there can be no implied warranty" under New York law.); *Gould v. Helen of Troy Ltd.*, No. 16-CV-02033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017) (" 'The law is clear that, absent any privity of contract between Plaintiff and Defendant, a breach of implied warranty claim cannot be sustained as a matter of law except to recover for personal injuries.' " (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015)).

Once again, Plaintiffs rely on *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011), to argue that "New York do[es] not require privity between buyer and manufacturer where, as here, the defective product is dangerous." Dkt. 281 at 59. However, *Doll* relies on *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996), 814 F. Supp. 2d at 540-41, and "courts within the Second Circuit have more recently questioned whether *Hubbard* is an accurate interpretation of New York law." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 311 (N.D.N.Y. 2019) (collecting cases); *see Johnson v. Ford Motor Co.*, No. 3:13-6529, 2015 WL 7571841, at *6 (S.D.W. Va. Nov. 24, 2015) ("[S]everal courts since the *Hubbard* decision have not followed its line of reasoning due to its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

contradiction of decades of established New York case law."); *Dixon v. Ford Motor Co.*, No. 14–CV–6135 (JMA)(ARL), 2015 WL 6437612, at *5 (E.D.N.Y. 2015) ("[A]lthough no New York state court has explicitly rejected (or even discussed *Hubbard*), numerous New York state court decisions have rejected economic loss claims based on a lack of privity in situations where the product at issue was clearly dangerous." (citations omitted)).

The CAC does not allege that the New York Plaintiffs were in privity of contract with any of the FCA or Honda Defendants, which is required under New York law. Fishon and Namakkal, who are the New York Plaintiffs, are alleged to have purchased their Class Vehicle from authorized dealerships. *See* Dkt. 278 ¶¶ 107, 131. However, Plaintiffs have not cited any dispositive authority from New York that alleging that a plaintiff purchased a vehicle from an authorized dealership is sufficient to plead privity as to another, allegedly related party. The CAC does not include any additional allegations as to the relationship between each of the New York Plaintiffs and the FCA or Honda Defendants, respectively, or between these Defendants and the dealership from which Fishon and Namakkal each purchased his Class Vehicle. Thus, the CAC does not adequately allege the requisite privity of contract. For this reason, New York Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

        r)     North Carolina Counts 1 and 2

            (1)   <u>North Carolina Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the FCA and Honda Defendants for breach of express warranty under N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210. Dkt. 278 ¶¶ 1971-87 ("North Carolina Count 1"). In support of the Joint Motion, Defendants argue that Plaintiffs' claims for breach of express and implied warranties "should . . . be dismissed based on Plaintiffs' failure to demonstrate compliance with the pre-suit notice requirements in various states. In many states, consumers must provide the seller with an opportunity to cure before bringing an action for breach of warranty." Dkt. 208 at 60-61 & n.23 (citing N.C. Gen. Stat. § 25-2-607(3)(a)).

"The Uniform Commercial Code requires that a buyer 'must *within a reasonable time* after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.' " *Gregorio v. Ford Motor Co.,* 522 F. Supp. 3d 264, 284 (E.D. Mich. 2021) (citing U.C.C. § 2-607(3)(a)). North Carolina has adopted U.C.C. § 2-607(3)(a). *Id.* "In North Carolina, the notice requirement is considered satisfied when a plaintiff presents his car to an authorized dealer for repair within the warranty period. *Id.* at 286 (citing *Riley v. Ken Wilson Ford, Inc.*, 426 S.E.2d 717, 721 (N.C. Ct. App. 1993) and *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 972 (N.D. Cal. 2018)); *see also Riley*, 426 S.Ed.2d at 721 ("What is a reasonable time depends upon the facts of each case and the policies underlying the notice requirement. The most important policy behind the notice requirement is to allow the seller the opportunity to cure the breach and minimize its damages . . . . Plaintiffs fulfilled the policies behind the notice requirement by giving defendant adequate opportunities to repair their car. They repeatedly attempted to have the car repaired by the defendant within the warranty period." (citations omitted)).

The CAC alleges:

    The North Carolina Plaintiffs and North Carolina State Class members have provided the FCA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

and Honda Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the North Carolina State Class members within a reasonable amount of time after the ACU defect became public. Additionally, a notice letter was sent on behalf of the North Carolina Plaintiffs and North Carolina State Class members to FCA US LLC, Honda Defendants, Hyundai Defendants, Kia Defendants, Mitsubishi Motors North America, Inc., Toyota Defendants, Hyundai MOBIS Co. Ltd., and ZF TRW Defendants on April 24, 2020.

Dkt. 278 ¶ 1985.

Plaintiffs have the obligation of adequately pleading the elements of their claims. One of these elements is reasonable notice. Although Plaintiffs have alleged in a conclusory fashion that notice was provided, whether it was done within a reasonable time is a fact question that is not appropriate for resolution on a motion to dismiss.

For the foregoing reasons, Plaintiffs have adequately stated a claim for breach of express warranty under North Carolina law.

(2)      North Carolina Count 2: Breach of Implied Warranty

The CAC advances a claim against the FCA and Honda Defendants for breach of the implied warranty of merchantability under N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212. Dkt. 278 ¶¶ 1988-2001 ("North Carolina Count 2"). In support of the Joint Motion, Defendants argue that North Carolina Count 2 fails because in North Carolina, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59 (citations omitted); *see* Dkt. 213 at 23-24.

North Carolina law requires "privity . . . to assert a claim for breach of an implied warranty involving only economic loss." *Energy Invs. Fund, L.P. v. Metric Constructors, Inc.*, 525 S.E.2d 441, 446 (N.C. 2000); *City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 626 (M.D.N.C. 2020) (citing *Terry v. Double Cola Bottling Co.*, 138 S.E.2d 753, 754 (N.C. 1964)); *Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 623 S.E.2d 334, 339 (N.C. Ct. App. 2006)).

The CAC does not allege that the North Carolina Plaintiffs were in privity of contract with FCA or Honda Defendants. McNeely, who is one of the North Carolina Plaintiffs, allegedly purchased her Class Vehicle from "an authorized Honda dealership." *See* Dkt. 278 ¶ 132. However, Plaintiffs have not cited any dispositive authority from North Carolina alleging that a plaintiff purchased a vehicle from an authorized dealership is sufficient to plead privity as to another, allegedly related party. The CAC does not include any additional allegations as to the relationship between McNeely and the Honda Defendants, or between these Defendants and the dealership from which McNeely purchased her Class Vehicle. Thus, the CAC does not adequately allege the requisite privity of contract. For this reason, North Carolina Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

s)      Oklahoma Counts 1 and 2

The CAC advances a claim against the FCA Defendants for breach of express warranty under Okla.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Stat. Ann. tit. 12A, §§ 2-313 and 2A-210. Dkt. 278 ¶¶ 2029-43 ("Oklahoma Count 1"). It also includes a claim against the FCA Defendants for breach of the implied warranty of merchantability under Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212. *Id.* ¶¶ 2044-55 ("Oklahoma Count 2"). The FCA Defendants argue that this claim fails because its limited warranties do not cover design defects. Dkt. 230 at 25-26. Defendants have not cited any Oklahoma statute or caselaw to support this position. Therefore, as to this issue, the FCA Motion is **DENIED** without prejudice to the renewal of this issue later in these proceedings.

Defendants next argue in support of the Joint Motion that the breach of warranty claims of the Oklahoma Plaintiff are time-barred. Dkt. 208 at 62 & n.26-27 (citing Okla. Stat. tit.12A, § 2-725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

The statute of limitations for breach of warranty claims under Oklahoma law is five years. Okla. Stat. Ann. tit. 12A, § 2-725(1). The "cause of action accrues when the breach occurs," and the breach "occurs when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods." *Id.* § 2-725(2). The sole Oklahoma Plaintiff, Dean, purchased his Class Vehicle on March 15, 2015. Dkt. 278 ¶ 106. More than five years later, on May 26, 2020,[53] he filed his claims in the Eastern District of Michigan, and they were later transferred to this MDL. *See* Complaint, *Barry Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. CV 20-09668 (C.D. Cal.).

"Fraudulent concealment is an implied exception to the statute of limitations defense." *AMC W. Hous. LP v. NIBCO, Inc.*, No. CIV-18-959-D, 2019 WL 4491331, at *6 (W.D. Okla. Sept. 18, 2019) (citing *Kansas City Life Ins. Co. v. Nipper*, 51 P.2d 741, 747 (Okla. 1935)). "[A] plaintiff relying on fraudulent concealment to toll the statute of limitations 'must not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts.' " *Id.* (quoting *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 55 (Okla. 2008)). "[I]f the means of knowledge exist and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry" and a plaintiff cannot successfully assert fraudulent concealment in answer to the defense of the statute of limitations." *Id.* (quoting *Masquat*, 195 P.3d at 55).

The CAC alleges:

> Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

---

[53] Dean is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

This conclusory allegation does not present sufficient detail as to when Dean was on notice of the existence of the Alleged Defect; what efforts, if any, he made to discover it; and when he did discover it. In light of the absence of such allegations, the CAC does not adequately plead that this breach of warranty claim was timely filed.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim. Therefore, Oklahoma Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.[54]

t)      Pennsylvania Counts 1 and 2

The CAC advances a claim against the Hyundai-Kia Defendants for breach of express warranty under 13 Pa. Cons. Stat. §§ 2313 and 2A210. Dkt. 278 ¶¶ 2086-2102 ("Pennsylvania Count 1"). It also includes a claim against the Hyundai-Kia Defendants for breach of the implied warranty of merchantability under 13 Pa. Cons. Stat. §§ 2314 and 2A212. *Id.* ¶¶ 2103-16 ("Pennsylvania Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of Angel and Kintzel, who are the Pennsylvania Plaintiffs, are time-barred. Dkt. 208 at 62 & n.26-27 (citing 13 Pa. Cons. Stat. § 2725(a), (b)); *see* Dkt. 219 at 32. Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

The applicable statute, 13 Pa. Cons. Stat. § 2725, provides that the statute of limitations for a breach of contract is four years "after the cause of action has accrued." 13 Pa. Cons. Stat. § 2725(a). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 2725(b). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.*

Under Pennsylvania law, an express warranty that provides for repair and replacement of a vehicle has been deemed "as one that 'explicitly extends to future performance of the goods.' " *Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div.*, 625 A.2d 1172, 1178 (Pa. 1993). Thus, a cause of action for the alleged breach of such a warranty does not accrue until the breach was, or should have been, discovered. *See Maddalo v. Ford Motor Co.*, No. CIV. A. 95-1434, 1995 WL 649563, at *1 n.1 (E.D. Pa. Oct. 31, 1995) (citing *Nationwide Ins.*, 625 A.2d at 1178).

The CAC does not present any allegations as to when each Pennsylvania Plaintiff discovered, or should have discovered, the existence of the Alleged Defect. Assuming *arguendo* that Angel, whose Class Vehicle was a 2013 Hyundai Sonata Hybrid, Dkt. 278 ¶ 94, should have discovered the Alleged Defect in February 2018, when Hyundai "announc[ed] its first recall of Sonatas," *id.* ¶ 321(a), she filed

---

[54]  Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Oklahoma Counts 1 and 2 have been dismissed without prejudice, so that the Oklahoma Plaintiff has the opportunity to seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

her claims on May 26, 2020, which was within four years of that announcement.[55] There are no parallel allegations in the CAC as to when Kintzel discovered, or should have discovered, the Alleged Defect. However, he also filed his complaint on May 26, 2020**,** which is less than four years from the announcement in February 2018.[56]

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). It is not apparent from the face of the complaint that Angel and Kintzel each filed his or her respective breach of express warranty claim outside of the limitations period. However, that is because there are no substantive allegations as to when each discovered or should have discovered the Alleged Defect. Therefore, Plaintiffs have not sufficiently alleged a basis for the timeliness of these claims. Although they were not obligated to make allegations in anticipation of an affirmative defense, in the interest of party and judicial efficiency, and because an amended complaint is necessary on other grounds, including as to Pennsylvania Count 2, they should do so in that complaint. The issue can then be addressed together with the many related issues as to whether fraudulent concealment has been adequately alleged.

Turning to the claims for breach of implied warranties, "while express warranties can be said to explicitly extend to future performance, implied warranties do not." *Werwinski v. Ford Motor Co.*, No. CIV.A. 00-943, 2000 WL 1201576, at *3 (E.D. Pa. Aug. 15, 2000) (citing *Nationwide Ins.*, 625 A.2d at 1178), *aff'd*, 286 F.3d 661 (3d Cir. 2002). Thus, a cause of action accrues at the time of the breach, not when there is a disclosure or discovery of the breach. Based on the allegations in the CAC, the breach would have occurred at the time of the sale of each vehicle. Therefore, as to Angel, who purchased her Class Vehicle on May 4, 2013, Dkt. 278 ¶ 94, the four-year limitations period expired on May 4, 2017. As noted, she filed her claims in this action on May 26, 2020. Therefore, she did so outside the limitations period. Kintzel purchased his Class Vehicle on December 30, 2015. *Id.* ¶ 95. He filed his claims in this action on May 26, 2020.Therefore, he did so outside the four-year limitations period, which expired on December 30, 2019.

Plaintiffs argue that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a). Under Pennsylvania law, "[t]he doctrine of fraudulent concealment tolls the statute of limitations when 'through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry.' " *Gaddy v. City of Phila. Police Dep't*, No. CIV.A. 14-3435, 2015 WL 328235, at *3 (E.D. Pa. Jan. 23, 2015) (citing *Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). As discussed above, Plaintiffs have not met their burden of pleading fraudulent concealment with particularity, because they have not adequately alleged the requisite diligence. *See Mathews v. Kidder, Peabody & Co., Inc.,* No. CIV.A.99-85, 2000 WL 33726916, at *28 (W.D. Pa. Aug. 18, 2000) (fraudulent concealment must be pleaded with particularity under Fed. R. Civ. P. 9(b), and it requires a showing of due diligence), *aff'd*, 260 F.3d 239 (3d Cir. 2001).

---

[55] Angel is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.
[56] Kintzel is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

For the foregoing reasons, Pennsylvania Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend. Plaintiffs have not sufficiently stated timely claims under Pennsylvania law against the Hyundai-Kia Defendants.

u)      South Carolina Counts 1 and 2

The CAC advances a claim against the Toyota Defendants for breach of express warranty under S.C. Code Ann. §§ 36-2-313 and 36-2A-210. Dkt. 278 ¶¶ 2150-64 ("South Carolina Count 1"). It also includes a claim against the Toyota Defendants for breach of express warranty under S.C. Code Ann. §§ 36-2-313 and 36-2A-210. *Id.* ¶¶ 2165-76 ("South Carolina Count 2").

In support of the Joint Motion, Defendants argue that Plaintiffs' claims for breach of express and implied warranties "should . . . be dismissed based on Plaintiffs' failure to demonstrate compliance the pre-suit notice requirements in various states. In many states, consumers must provide the seller with an opportunity to cure before bringing an action for breach of warranty." Dkt. 208 at 60-61 & n.23 (citing S.C. Code § 36-2-607(3)(a)).

S.C. Code Ann. § 36-2-607 provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy." S.C. Code Ann. § 36-2-607(3)(a). It "does not prescribe any form for the required notification." *United States v. S. Contracting of Charleston, Inc.*, 862 F. Supp. 107, 111 (D.S.C. 1994). "Courts have thus developed their own guidelines for determining what constitutes adequate notice. Some courts have held that virtually any complaint about the transaction will satisfy the requirement." *Id.* (citing *N. States Power Co. v. ITT Meyer Indus.*, 777 F.2d 405 (8th Cir. 1985); *Boeing Airplane Co. v. O'Malley,* 329 F.2d 585 (8th Cir. 1964)). "Other courts require the buyer to notify the seller that the buyer considers the seller to be legally in breach." *Id.* (citing *E. Air Lines v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976)). *Southern Contracting* stated a preference for the former standard, which it called the "lenient standard." *Id.*; *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 885 (N.D. Cal. 2018) ("South Carolina appears to follow a lenient standard for notice . . . ." (citing *S. Contracting*, 862 F. Supp. at 111)), *order clarified,* No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), and *on reconsideration,* 438 F. Supp. 3d 1017 (N.D. Cal. 2020).

Under both of these standards, Plaintiffs have provided adequate notice. *See* Dkt. 278 ¶ 2162 ("The South Carolina Plaintiff and South Carolina State Class members have provided the Toyota Defendants with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the South Carolina State Class members within a reasonable amount of time after the ACU defect became public. Additionally, a notice letter was sent on behalf of the South Carolina Plaintiff and South Carolina State Class members to FCA US LLC, Honda Defendants, Hyundai Defendants, Kia Defendants, Mitsubishi Motors North America, Inc., Toyota Defendants, Hyundai MOBIS Co. Ltd., and ZF TRW Defendants on April 24, 2020."). Whether there is a sufficient factual basis for this allegation is not an issue that can be determined on a motion to dismiss.

Defendants argue that the breach of warranty claims of the South Carolina Plaintiffs are time-barred. Dkt. 208 at 61-62. Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Claims for breach of warranty under South Carolina law "are subject to a six-year statute of limitations." *Harrell v. BMW of N. Am., LLC*, 517 F. Supp. 3d 527, 533 (D.S.C. 2021) (citing S.C. Code Ann. § 36-2-725). Hines, who is the only South Carolina Plaintiff, purchased his Class Vehicle on October 11, 2013. Dkt. 278 ¶ 119. He filed his claims in this action in the Southern District of Florida on April 30, 2019, and they were later transferred to this MDL. *See* Complaint, *Thomas Payne et al v. ZF Friedrichshafen AG et al*, No. CV 19-06894 (C.D. Cal.). This was within the six-year limitations period.

Plaintiffs have made sufficient allegations to state a claim for breach of express and implied warranty under South Carolina law.

v)      South Dakota Counts 1 and 2

The CAC advances a claim against the FCA Defendants for breach of express warranty under S.D. Codified Laws §§ 57A-2-313 and 57A-2A-210. Dkt. 278 ¶¶ 2235-49 ("South Dakota Count 1"). It also includes a claim against the FCA Defendants for breach of the implied warranty of merchantability under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212. *Id.* ¶¶ 2250-61 ("South Dakota Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the South Dakota Plaintiff are time-barred. Dkt. 208 at 62 & n.26-27 (citing S.D. Codified Laws § 57A-2-725(1)-(2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

The statute of limitations for breach of warranty claims under South Dakota law is four years. S.D. Codified Laws § 57A-2-725(1). The "cause of action accrues when the breach occurs," and the breach "occurs when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods." *Id.* § 2-725(2). The sole South Dakota Plaintiff, Meyer, purchased her Class Vehicle on May 14, 2012. Dkt. 278 ¶ 110. She filed her claims in the Eastern District of Michigan on May 17, 2019, and they were later transferred to this MDL. *See* Complaint, *Regina Heilman-Ryan et al v. ZF TRW Auto. Holdings Corp. et al*, No. CV 19-6899 (C.D. Cal.). This was more than four years after the purchase. Therefore, absent an exception to the limitations period, these claims would be time-barred.

A plaintiff must plead the following elements for a statute of limitations to be tolled for fraudulent concealment:

> (1) the [defendants] knowingly concealed material facts that constitute plaintiffs' causes of action or, being fiduciaries, knowingly remained silent and failed to disclose those facts despite a duty to do so; (2) plaintiffs exercised due diligence in attempting to discover their causes of action; and (3) despite plaintiffs' due diligence, the [defendants'] concealment prevented plaintiffs from discovering their causes of action.

*Eagleman v. Diocese of Rapid City*, 862 N.W.2d 839, 850 (S.D. 2015).

As to Plaintiffs' diligence in discovering the Alleged Defect, the CAC alleges:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class
Vehicles, Plaintiffs and class members were unable to independently discover the defect using
reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs
and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of
EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to when Meyer was on notice of the
existence of the Alleged Defect; what efforts, if any, she made to discover it; and when she did discover
it. Therefore, Plaintiffs have not discharged their burden of establishing fraudulent concealment.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not
adequately state a timely claim. South Dakota Counts 1 and 2 are **DISMISSED WITHOUT
PREJUDICE**, *i.e.*, with leave to amend.[57]

w)      Tennessee Counts 1 and 2

The CAC advances a claim against the Hyundai Defendants for breach of express warranty under
Tenn. Code Ann. §§ 47-2-313 and 47-2A-210. Dkt. 278 ¶¶ 2292-2306 ("Tennessee Count 1"). It also
includes a claim against the Hyundai Defendants for breach of the implied warranty of merchantability
under Tenn. Code Ann. §§ 47-2-314 and 47-2A-212. *Id.* ¶¶ 2307-18 ("Tennessee Count 2").

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Tennessee
Plaintiff are time-barred. Dkt. 208 at 62 & n.26-27 (citing Tenn. Code § 47-2-725(1), (2)). Plaintiffs
respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281
at 63; *see* Dkt. 278 ¶ 545(a).

Tenn. Code Ann. § 47-2-725 provides that the statute of limitations for breach of warranty claims under
Tennessee law is four years. Tenn. Code Ann. § 47-2-725(1). Tennessee's six-year statute of repose
for products liability actions applies to breach of warranty claims, and generally does not permit tolling
beyond that deadline. *See* Tenn. Code Ann. § 29-28-103(a) ("Any action against a manufacturer or
seller of a product for injury to person or property caused by its defective or unreasonably dangerous
condition must be brought within the period fixed by §§ 28-3-104, 28-3-105, 28-3-202 and 47-2-725, but
notwithstanding any exceptions to these provisions, it must be brought within six (6) years of the date of
injury . . . ."). Tennessee courts "have construed statutes of repose as an absolute time limit within
which actions must be brought." *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 184 (Tenn. 2000) (citing
*Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995)). This statute of repose does not have an exception
for fraudulent concealment. *See Damron v. Media Gen., Inc.,* 3 S.W.3d 510, 513 (Tenn. Ct. App. 1999)
("[T]here is no fraudulent concealment exception to Tenn. Code Ann. § 29-28-103.")

---

[57] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to
address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it
is appropriate to require allegations on the issue in any amended complaint. For those reasons, South Dakota
Counts 1 and 2 have been dismissed without prejudice, so that the South Dakota Plaintiff has the opportunity to
seek to make such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

As noted, McMurray purchased her Class Vehicle on August 28, 2014. Dkt. 278 ¶ 96. She filed her claims in this action on May 26, 2020. This is outside the four-year limitations period, but within the six-year statute of repose. Absent an exception to the statute of limitations, McMurray's claims would be time-barred.

Under Tennessee law, the running of the statute of limitation will be tolled if a plaintiff pleads the following elements:

> (1) The defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;

> (2) The plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;

> (3) The defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and

> (4) The defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Pike v. United States*, 868 F. Supp. 2d 667, 682 (M.D. Tenn. 2012). In addition, plaintiffs "must demonstrate that they exercised reasonable care and diligence in pursuing their claim." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 463 (Tenn. 2012) (citations omitted). "The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim." *Id.* (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001)).

As to Plaintiffs' diligence in discovering the Alleged Defect, the CAC alleges:

> Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to when McMurray was on notice of the existence of the Alleged Defect; what efforts, if any, she made to discover it; and when she did discover it. Therefore, Plaintiffs have not discharged their burden of establishing fraudulent concealment.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim. Therefore, Tennessee Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

x)      Texas Counts 1 and 2

(1)      <u>Texas Count 1: Breach of Express Warranty</u>

The CAC advances a claim against the FCA, Honda, Hyundai and Toyota Defendants for breach of express warranty under Tex. Bus. & Com. Code Ann. §§ 2.313 and 2A.210. Dkt. 278 ¶¶ 2351-69 ("Texas Count 1").[58]

In support of the Joint Motion, Defendants argue that Texas Count 1 should be dismissed due to "Plaintiffs' failure to demonstrate compliance with the pre-suit notice requirements in" that state. Dkt. 208 at 60-61. They argue that, "[i]n many states, consumers must provide the seller with an opportunity to cure before bringing an action for breach of warranty." *Id.* at 61 (citing Tex. Bus. & Com. Code § 2.607(c)(1)). Similarly, the Honda Defendants argue that Plaintiffs "have failed to allege that any of them presented their vehicles for repair at a Honda dealer, as required under the Limited Warranty." Dkt. 213 at 26.

To state a claim for breach of express warranty under Texas law, a plaintiff must plead the following:

> (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury.

*Becker v. Cont'l Motors, Inc.*, 709 Fed. App'x 263, 266-67 (5th Cir. 2017) (citation omitted).

The CAC, like the complaint in *Becker*, alleges that Defendants made the "affirmation of fact or promise" that they would "repair or replace[] [] components that are defective in materials or workmanship" in the Class Vehicles. Dkt. 278 ¶ 2362; *cf. Becker*, 709 Fed. App'x at 265 (The defendant's warranty provided that it would " 'at its option repair or replace on an exchange basis any engine, component or part manufactured or supplied by it . . . which upon examination is found to the satisfaction of [defendant] to be defective in material or workmanship' "). To establish that such an express warranty has been breached, Plaintiffs "must show not only that the product was presented to the defendant for repair but also that the defendant failed or refused to repair the defect." *Becker*, 709 Fed. App'x at 267 (quoting *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 82 (Tex. App. 2005)).

The CAC includes the conclusory allegation that "[t]he Texas Plaintiffs and Texas State Class Members have provided the FCA, Honda, Hyundai and Toyota Defendants with reasonable notice and opportunity to cure the breaches of their express warranties." Dkt. 278 ¶ 2367. This is insufficient to state a claim under Texas law, i.e., that Plaintiffs actually presented their Class Vehicles to Defendants for repair and that Defendants failed or refused to repair the Alleged Defect.

---

[58] Robinson is the only Texas Plaintiff to assert claims against the FCA Defendants. He voluntarily dismissed those claims on August 10, 2020. Dkt. 228. Therefore, Texas Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, with respect to the FCA Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Because the CAC does not adequately allege that Defendants were provided notice and a meaningful opportunity to cure the Alleged Defect, it does not state a claim for breach of express warranty under Texas law. Therefore, Texas Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)     Texas Count 2: Breach of Implied Warranty

The CAC advances a claim against the FCA, Honda, Hyundai and Toyota Defendants for breach of the implied warranty of merchantability under Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212. Dkt. 278 ¶¶ 2370-85 ("Texas Count 2"). The Honda and Toyota Defendants argue that Texas Count 2 fails because Plaintiffs have not alleged a defect that has manifested. Dkt. 213 at 24 (citing *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1053-54 (S.D. Tex. 2016)); Dkt. 214 at 22 (citing *Rosa*, 177 F. Supp. 2d at 1053).

"To establish a breach of the implied warranty of merchantability, a plaintiff must show that the product (1) contained a defect that renders it unfit for its ordinary purpose, (2) the defect existed when it left the manufacturer's possession, and (3) the defect caused the plaintiff to suffer injury." *Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2021 WL 4061708, at *6 (N.D. Cal. Sept. 7, 2021) (citing *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 81 (Tex. App. 2005).

The CAC alleges that "ZF TRW ACUs with the DS84 ASIC have a dangerous defect," in that they "are much more vulnerable to bursts of electricity than are other ACUs." Dkt. 278 ¶ 10. All Class Vehicles have a ZF TRW ACU with a DS84 ASIC. *Id.* ¶ 7 n.3. This is sufficient to state the claim that the Alleged Defect is present in all Class Vehicles, and makes all of them unfit for their ordinary purpose, which is safe transportation. A vehicle is no longer safe for transportation if, in the event of a serious collision, the airbags are likely not to deploy. The implied warranty claims do not fail because the CAC does not allege that each Class Vehicle has been involved in a collision in which the airbags did not deploy due to the Alleged Defect. Whether the Alleged Defect has caused or will cause the airbags not to deploy in a particular Class Vehicle is a question of fact. The CAC sufficiently alleges that this is a system-wide defect that makes driving each Class Vehicle dangerous. This is sufficient to plead a breach of the implied warranty of merchantability.

Defendants also argue that Plaintiffs' implied warranty claims fail because they have not pleaded privity. Dkt. 208 at 59. However, "Texas law does not require privity and permits implied warranty claims by a downstream purchaser directly against the remote manufacturer for economic damages." *Integrated Marine Servs. v. Hoist Liftruck Mfg.*, No. H-12-1379, 2012 WL 3779308, at *2 n.2 (S.D. Tex. Aug. 30, 2012) (citing *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977)).

Finally, Defendants argue Plaintiffs' breach of warranty claims under Texas law are time-barred. Dkt. 208 at 62 & n.26-27 (citing Tex. Bus. & Com. Code § 2.725(a), (b)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

The statute of limitations for breach of warranty claims under Texas law is four years. Tex. Bus. & Com. Code § 2.725(a). The "cause of action accrues when the breach occurs," and the breach "occurs when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Id.* § 2.725(b). The remaining Texas Plaintiffs purchased their vehicles between 2012 and 2018. Dkt. 278 ¶¶ 97, 120-23, 133. Therefore, absent a tolling of the limitations period due to fraudulent concealment, the claims of some of the Texas Plaintiffs would be time-barred.

"Fraudulent concealment tolls the statute of limitations when a defendant knowingly conceals facts from a plaintiff that are necessary to support a claim." *Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 343-44 (E.D. Tex. 2003), *aff'd*, 84 Fed. App'x 442 (5th Cir. 2004) (citing *L.C.L. Theatres v. Columbia Pictures Indus.*, 566 F.2d 494, 496 (5th Cir. 1978)). "The doctrine of fraudulent concealment focuses on whether the plaintiff has exercised due diligence in seeking to learn the facts which would disclose the fraud." *Id.* (citations omitted). Thus, to support such a claim, "a plaintiff must show 1) the defendant's wrongdoing was concealed from the plaintiff, either through active concealment by the defendant or because the nature of the wrongdoing was such that it was self-concealing; 2) the plaintiff acted diligently once he had inquiry notice, i.e., once he knew of or should have known of the facts giving rise to his claim, and 3) the plaintiff did not have inquiry notice within the limitations period." *S.E.C. v. Microtune, Inc.*, 783 F. Supp. 2d 867, 874 (N.D. Tex. 2011), *aff'd sub nom. S.E.C. v. Bartek*, 484 F. App'x 949 (5th Cir. 2012)

The CAC alleges:

> Due to the highly technical nature of the defect with the ZF TRW ACUs installed in the Class Vehicles, Plaintiffs and class members were unable to independently discover the defect using reasonable diligence. Prior to the retention of counsel and without third-party experts, Plaintiffs and class members lack the necessary expertise to analyze the ZF TRW ACUS for signs of EOS or to even identify the Class Vehicles with ZF TRW ACUs.

Dkt. 278 ¶ 544.

This conclusory allegation does not present sufficient detail as to when each of the Texas Plaintiffs was on notice of the existence of the Alleged Defect; what efforts, if any, each made to discover it; and when each did discover it. Therefore, Plaintiffs have not discharged their burden of establishing fraudulent concealment.

Bowens purchased her Class Vehicle on May 17, 2015. Dkt. 278 ¶ 133. She filed her claims in this action on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00693 (C.D. Cal.). This was outside of the four-year limitations period.

Reckles purchased his Class Vehicle on August 16, 2012. Dkt. 278 ¶ 97. He filed his claims in this action on May 26, 2020.[59] This was outside of the four-year limitations period.

DeRouen purchased his Class Vehicle on June 7, 2016. *Id.* ¶ 120. He filed claims in this action on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00693 (C.D. Cal.). This was within the four-year limitations period.

---

[59] Reckles is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Hunt purchased his Class Vehicle on January 1, 2018. Dkt. 278 ¶ 121. He filed claims in this action on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00693 (C.D. Cal.). This was within the four-year limitations period.

Green purchased his Class Vehicle on September 15, 2015. Dkt. 278 ¶ 122. He filed his claims in this action on May 21, 2019. *See* Complaint, *Bell v. ZF Friedrichshafen AG*, No. CV 19-00693 (C.D. Cal.). This was within the four-year limitations period.

Finally, Davis purchased her Class Vehicle on May 15, 2014. Dkt. 278 ¶ 123. She filed her claims in the Eastern District of Michigan on May 26, 2020.[60] This was outside of the four-year limitations period.

Because the exception to the statute of limitation has not been pleaded sufficiently, the CAC does not adequately state a timely claim as to Bowens, Reckles and Davis. Their claims are brought against the Hyundai and Honda Defendants. Therefore, Texas Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to the Hyundai and Honda Defendants.[61]

DeRouen, Hunt and Green each has have stated a claim for breach of implied warranty under Texas law against the Toyota Defendants. Dkt. 278 ¶ 2374. These claims have been adequately pleaded.

y)     Washington Counts 1 and 2

(1)     Washington Count 1: Breach of Express Warranty

The CAC advances a claim against the Hyundai and Toyota Defendants for breach of express warranty under Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210. Dkt. 278 ¶¶ 2485-2501 ("Washington Count 1").[62]

The Toyota Defendants argue that their "express warranty does not cover design defects." Dkt. 214 at 20.

It is alleged that "the Hyundai and Toyota Defendants provided the Washington Plaintiffs and Washington State Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship." Dkt. 278 ¶ 2494. District courts in Washington have interpreted Washington law on this issue. Several have concluded that express warranties with similar "materials or workmanship" language did not cover design defects. *See Nauman*

---

[60] Davis is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

[61] Because the statute of limitations is an affirmative defense that may be waived, a plaintiff is not obligated to address it with allegations in an initial complaint. However, once it has been raised in a response to a complaint, it is appropriate to require allegations on the issue in any amended complaint. For those reasons, Texas Count 2, as to the Honda and Hyundai Defendants, has been dismissed without prejudice, so that the Texas Plaintiffs have the opportunity to seek to make such allegations.

[62] Jagnjic is the only Washington Plaintiff to assert claims against the Hyundai Defendants. He voluntarily dismissed those claims on October 12, 2020. Dkt. 291. Therefore, Washington Counts 1 and 2 are **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, with respect to the Hyundai Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*v. Gen. Motors LLC*, No. C21-5150 BHS, 2021 WL 4502666, at *2 (W.D. Wash. Oct. 1, 2021) (express warranty " 'cover[ed] repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period,' " and did not cover design defects); *Harris v. Gen. Motors LLC*, No. C20-257 TSZ, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020) (warranty "cover[ed] repairs to correct any vehicle defect 'related to materials or workmanship during the warranty period,' " and did not cover design defects (citing *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *8 & n.5 (N.D. Cal. Aug. 1, 2017)), *order vacated in part on reconsideration*, No. C20-257 TSZ, 2020 WL 10692982 (W.D. Wash. Oct. 19, 2020). These interpretations are consistent with the Ninth Circuit decisions that have construed warranties with this language under California law. *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013).

Because the CAC has alleged a design defect, which is not covered by the limited warranties by the Toyota Defendants, the claims for violation of breach of express warranty under Washington law fail.

Washington Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

(2)      Washington Count 2: Breach of Implied Warranty

The CAC advances a claim against the Hyundai and Toyota Defendants for breach of the implied warranty of merchantability under Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212. Dkt. 278 ¶¶ 2502-15 ("Washington Count 2"). The Toyota and Hyundai-Kia Defendants argue that privity is required to plead this claim. Dkt. 214 at 22 & n.11 (citing *Tex. Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 627-28 (Wash. 2003); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Cost., Inc.*, 831 P.2d 724, 729-30 (Wash. 1992); *Beaty v. Ford Motor Co.*, No. C17-5201RBL, 2018 WL 3320854, at *4-5 (W.D. Wash. Jan. 16, 2018)); Dkt. 219 at 33 & n.19 (citing *Lohr v. Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17, 2017)).

"[T]o bring implied warranty claims" under Washington law, "plaintiffs must establish contractual privity." *Lohr*, 2017 WL 1037555, at *7 (citing *Tex. Enters.*, 66 P.3d at 628). The CAC does not sufficiently allege that the remaining Washington Plaintiff, Roberts, was in privity with any of the Toyota Defendants. It is alleged that Roberts purchased her Class Vehicle from "an authorized Toyota dealership." *See* Dkt. 278 ¶ 124. However, Plaintiffs have not cited any dispositive Washington authority that alleging a plaintiff purchased a vehicle from an authorized dealership is sufficient to plead privity as to another, allegedly related party. The CAC does not include any additional allegations as to the relationship between Roberts and the Toyota Defendants, or between these Defendants and the dealership from which Roberts purchased her Class Vehicle. Thus, the CAC does not adequately allege the requisite privity of contract. For this reason, Washington 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

z)      Wisconsin Counts 1 and 2

(1)      Wisconsin Count 1: Breach of Express Warranty

The CAC advances a claim against the Mitsubishi Defendants for breach of express warranty under Wis. Stat. §§ 402.313 and 411.210. Dkt. 278 ¶¶ 2549-63 ("Wisconsin Count 1").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

In support of the Joint Motion, Defendants argue that the breach of warranty claims of the Wisconsin Plaintiff, Sancomb, are time-barred. Dkt. 208 at 62 & n.26-27 (citing Wis. Stat. § 402.725(1), (2)). Plaintiffs respond that "Defendants' alleged concealment of the ACU defect for years tolls the statute." Dkt. 281 at 63; *see* Dkt. 278 ¶ 545(a).

The statute of limitations for a breach of contract action in Wisconsin is six years from when the breach occurs. Wis. Stat. § 402.725(1). For a breach of warranty claim, the breach generally occurs "when tender of delivery is made." *Id.* § 02.725(2). Sancomb purchased his Class Vehicle on September 19, 2014. Dkt. 278 ¶ 138. He filed his claims in the CAC on May 26, 2020.[63] This was within the six-year limitations period.

The Mitsubishi Defendants argue that Plaintiffs have failed to provide adequate pre-suit notice. Dkt. 212 at 33 (citations omitted). Under Wisconsin law, "when a buyer accepts goods, the buyer 'must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Wilson v. Tuxen*, 754 N.W.2d 220, 232 (Wis. Ct. App. 2008) (citing Wis. Stat. § 402.607(3)(a)). "[I]f the seller is not aware that the goods are defective, the notice can serve to inform the seller of the defect and give the seller an opportunity to remedy it." *Id.* (citation omitted). "The principal reason for requiring notice 'is to enable the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer.'" *Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 862 (Wis. 1982) (citation omitted).

The CAC adequately alleges that the Wisconsin Plaintiff, Sancomb, provided the requisite notice to MMNA. It alleges that "a notice letter was sent on behalf of the Wisconsin Plaintiff and Wisconsin State Class members to . . . Mitsubishi Motors North America, Inc . . . on April 24, 2020." Dkt. 278 ¶ 2573. Whether he provided notice within a reasonable time is a fact question that is not resolved on a motion to dismiss. *See Barlow v. DeVilbiss Co.*, 214 F. Supp. 540, 544 (E.D. Wis. 1963) (citing *Schaefer v. Weber*, 60 N.W.2d 696, 699 (Wis. 1953)).

With respect to the other Mitsubishi Defendant, MMC, the CAC does not include sufficient allegations that notice was provided. The CAC does not allege that Sancomb provided notice to MMC. *See* Dkt. 278 ¶ 2573. Alleging that MMC received notice through "numerous NHTSA complaints," *see id.*, is not sufficient. *Cf. Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 839-840 (E.D. Wis. 2021) (pending lawsuit filed by those other than the plaintiffs did not constitute notice).

Plaintiffs have pleaded sufficient facts to state a claim for breach of express warranty against MMNA. Because Plaintiffs have not pleaded facts sufficient to satisfy the pre-suit notice requirement under Wisconsin law as to MMC, Wisconsin Count 1 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to that Defendant.

(2)   <u>Wisconsin Count 2: Breach of Implied Warranty</u>

The CAC advances a claim against the Mitsubishi Defendants for breach of the implied warranty of

---

[63] Sancomb is among the New Plaintiffs who initially filed claims in the CAC on May 26, 2020. For the reasons already stated, the New Plaintiffs' complaint is deemed to have been filed on May 26, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

merchantability under Wis. Stat. §§ 402.314 and 411.212. Dkt. 278 ¶¶ 2564-75 ("Wisconsin Count 2"). In support of the Joint Motion, Defendants argue that Wisconsin Count 2 fails because in Wisconsin, as "[i]n many states, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Dkt. 208 at 59-60 & n.21 (citing *City of La Crosse v. Schubert, Schroeder & Assocs., Inc.*, 240 N.W.2d 124, 125 (Wis. 1976), *overruled on other grounds by Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842 (Wis. 1998)); Dkt. 212 at 32.

Under Wisconsin law, privity is required to establish a claim for breach of implied warranty. *See Lamont v. Winnebago Indus., Inc.,* 569 F. Supp. 2d 806, 815-16 (E.D. Wis. 2008); T&*M Farms v. CNH Indus. Am., LLC*, No. 19-C-0085, 2020 WL 1082768, at *5 (E.D. Wis. Mar. 5, 2020) ("In Wisconsin, the only contract claim that a buyer can pursue against a non-seller manufacturer of goods is a claim for breach of the manufacturer's express warranty." (citations omitted)).

The CAC does not adequately allege that Sancomb was in privity with either of the Mitsubishi Defendants. Therefore, Plaintiffs cannot bring a claim for breach of implied warranty under Wisconsin law. Wisconsin Count 2 is **DISMISSED WITHOUT PREJUDICE**, *i.e.*, with leave to amend.

5.    <u>Summary of State-Law Claim Dispositions</u>

The rulings as to Plaintiffs' state-law claims are summarized in the following table:

| Cause of Action | Defendant(s) | Disposition |
|---|---|---|
| Alabama Count 1 | Honda Defendants | Dismissed without prejudice |
| Alabama Count 2 | Honda Defendants | Dismissed without prejudice, as to Honda Manufacturing and Honda R&D Americas |
| Alabama Count 3 | Honda Defendants | Dismissed without prejudice |
| Alabama Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Arizona Count 1 | FCA Defendants | Dismissed without prejudice, as to FCA NV |
| Arizona Count 2 | FCA Defendants | Dismissed without prejudice |
| Arizona Count 3 | FCA Defendants | Dismissed without prejudice |
| Arizona Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| California Count 1 | Vehicle Manufacturer Defendants | Dismissed without prejudice |
| California Count 2 | Vehicle Manufacturer Defendants | Dismissed without prejudice |
| California Count 3 | Vehicle Manufacturer Defendants | Dismissed without prejudice |
| California Count 4 | Vehicle Manufacturer Defendants | Claims of Burns, Ecklor, Sanchez, Altier, Renteria, Rudnzio, and Dellatoree are dismissed without prejudice |
| California Count 5 | Vehicle Manufacturer Defendants | Dismissed without prejudice |
| California Count 6 | All Defendants | Dismissed without prejudice |
| California Count 7 | All Defendants | Dismissed without prejudice |
| Colorado Count 1 | Mitsubishi Defendants | Dismissed without prejudice |
| Colorado Count 2 | Mitsubishi Defendants | Dismissed without prejudice |
| Colorado Count 3 | Mitsubishi Defendants | Dismissed without prejudice |
| Colorado Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Connecticut Count 1 | Honda Defendants | Dismissed without prejudice |
| Connecticut Count 2 | Honda Defendants | Dismissed without prejudice |
| Connecticut Count 3 | Honda Defendants | Dismissed wtihout prejudice |
| Connecticut Count 4 | ZF Defendants, STM Defendants | Dismissed wtihout prejudice |
| Florida Count 1 | FCA Defendants, Honda Defendants, Hyundai Defendants, Kia Defendants, Toyota Defendants | Dismissed without prejudice |
| Florida Count 2 | FCA Defendants, Honda Defendants, Hyundai Defendants, Kia Defendants, Toyota Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| Florida Count 3 | FCA Defendants, Honda Defendants, Hyundai Defendants, Kia Defendants, Toyota Defendants, Hyundai MOBIS | Dismissed without prejudice as to the Honda Defendants, the Toyota Defendants, Hyundai MOBIS, as well as to the Hyundai-Kia Defendants except KMA and HMA and the FCA Defendants except FCA US |
| Florida Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Illinois Count 1 | Hyundai Defendants, Kia Defendants | Dismissed without prejudice |
| Illinois Count 2 | Hyundai Defendants, Kia Defendants | Dismissed without prejudice |
| Illinois Count 3 | Hyundai Defendants, Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Illinois Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Illinois Count 5 | Hyundai Defendants, Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Illinois Count 6 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Indiana Count 1 | Kia Defendants | Dismissed without prejudice |
| Indiana Count 2 | Kia Defendants | Dismissed without prejudice |
| Indiana Count 3 | Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Indiana Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Kansas Count 1 | Hyundai Defendants | Dismissed without prejudice |
| Kansas Count 2 | Hyundai Defendants | Dismissed without prejudice |
| Kansas Count 3 | Hyundai Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Kansas Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| Louisiana Count 1 | Kia Defendants | Dismissed without prejudice |
| Louisiana Count 2 | Kia Defendants | Dismissed without prejudice |
| Louisiana Count 3 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Maryland Count 1 | Hyundai Defendants, Kia Defendants | Plaintiffs have stated a claim |
| Maryland Count 2 | Hyundai Defendants, Kia Defendants | Plaintiffs have stated a claim |
| Maryland Count 3 | Hyundai Defendants, Kia Defendants, Hyundai MOBIS | Dismissed without prejudice, as to all of the Hyundai-Kia Defendants except HMA and KMA |
| Maryland Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Massachusetts Count 1 | Kia Defendants | Plaintiffs have stated a claim |
| Massachusetts Count 2 | Kia Defendants | Plaintiffs have stated a claim |
| Massachusetts Count 3 | Kia Defendants, Hyundai MOBIS | Plaintiffs have stated a claim |
| Massachusetts Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Michigan Count 1 | Kia Defendants | Dismissed without prejudice |
| Michigan Count 2 | Kia Defendants | Dismissed without prejudice |
| Michigan Count 3 | Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Michigan Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Minnesota Count 1 | FCA Defendants, Honda Defendants, Kia Defendants | Dismissed without prejudice |
| Minnesota Count 2 | FCA Defendants, Honda Defendants, Kia Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| Minnesota Count 3 | FCA Defendants, Honda Defendants, Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Minnesota Count 4 | FCA Defendants, Honda Defendants, Kia Defendants, Hyundai Defendants | Dismissed without prejudice |
| Minnesota Count 5 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Minnesota Count 6 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Missouri Count 1 | Kia Defendants | Dismissed without prejudice |
| Missouri Count 2 | Kia Defendants | Dismissed without prejudice |
| Missouri Count 3 | Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Missouri Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Montana Count 1 | FCA Defendants | Dismissed without prejudice |
| Montana Count 2 | FCA Defendants | Dismissed without prejudice |
| Montana Count 3 | FCA Defendants | Dismissed without prejudice |
| Montana Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Nevada Count 1 | Toyota Defendants | Plaintiffs have stated a claim |
| Nevada Count 2 | Toyota Defendants | Dismissed without prejudice |
| Nevada Count 3 | Toyota Defendants | Dismissed without prejudice |
| Nevada Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| New Jersey Count 1 | Kia Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| New Jersey Count 2 | Kia Defendants | Dismissed without prejudice |
| New Jersey Count 3 | Kia Defendants, Hyundai MOBIS | Dismissed without prejudice |
| New Jersey Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| New York Count 1 | FCA Defendants, Honda Defendants | Dismissed without prejudice |
| New York Count 2 | FCA Defendants, Honda Defendants | Dismissed without prejudice |
| New York Count 3 | FCA Defendants, Honda Defendants | Dismissed without prejudice |
| New York Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| New York Count 5 | FCA Defendants, Honda Defendants | Dismissed without prejudice |
| North Carolina Count 1 | FCA Defendants, Honda Defendants | Plaintiffs have stated a claim |
| North Carolina Count 2 | FCA Defendants, Honda Defendants | Dismissed without prejudice |
| North Carolina Count 3 | FCA Defendants, Honda Defendants | Dismissed without prejudice, as to FCA NV and the Honda Defendants |
| North Carolina Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Oklahoma Count 1 | FCA Defendants | Dismissed without prejudice |
| Oklahoma Count 2 | FCA Defendants | Dismissed without prejudice |
| Oklahoma Count 3 | FCA Defendants | Dismissed without prejudice, as to FCA NV |
| Oklahoma Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Pennsylvania Count 1 | Hyundai Defendants, Kia Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| Pennsylvania Count 2 | Hyundai Defendants, Kia Defendants | Dismissed without prejudice |
| Pennsylvania Count 3 | Hyundai Defendants, Kia Defendants, Hyundai MOBIS | Dismissed without prejudice, as to the Hyundai-Kia Defendants, except HMA and KMA |
| Pennsylvania Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| South Carolina Count 1 | Toyota Defendants | Plaintiffs have stated a claim |
| South Carolina Count 2 | Toyota Defendants | Plaintiffs have stated a claim |
| South Carolina Count 3 | Toyota Defendants | Dismissed without prejudice |
| South Carolina Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| South Carolina Count 5 | Toyota Defendants | Dismissed without prejudice |
| South Carolina Count 6 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| South Dakota Count 1 | FCA Defendants | Dismissed without prejudice |
| South Dakota Count 2 | FCA Defendants | Dismissed without prejudice |
| South Dakota Count 3 | FCA Defendants | Dismissed without prejudice |
| South Dakota Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Tennessee Count 1 | Hyundai Defendants | Dismissed without prejudice |
| Tennessee Count 2 | Hyundai Defendants | Dismissed without prejudice |
| Tennessee Count 3 | Hyundai Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Tennessee Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | | |
|---|---|---|
| Texas Count 1 | FCA Defendants, Honda Defendants, Hyundai Defendants, Toyota Defendants | Dismissed without prejudice |
| Texas Count 2 | FCA Defendants, Honda Defendants, Hyundai Defendants, Toyota Defendants | Dismissed without prejudice, as to the Hyundai and Honda Defendants |
| Texas Count 3 | FCA Defendants, Honda Defendants, Hyundai Defendants, Toyota Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Texas Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Virginia Count 1 | FCA Defendants | Dismissed without prejudice |
| Virginia Count 2 | FCA Defendants | Dismissed without prejudice |
| Virginia Count 3 | FCA Defendants | Dismissed without prejudice |
| Virginia Count 4 | ZF Defendants, STM Defendants | Dismissed without prejudice |
| Washington Count 1 | Hyundai Defendants, Toyota Defendants | Dismissed without prejudice |
| Washington Count 2 | Hyundai Defendants, Toyota Defendants | Dismissed without prejudice |
| Washington Count 3 | Hyundai Defendants, Toyota Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Washington Count 4 | Hyundai Defendants, Toyota Defendants, Hyundai MOBIS | Dismissed without prejudice |
| Wisconsin Count 1 | Mitsubishi Defendants | Dismissed without prejudice, as to MMC |
| Wisconsin Count 2 | Mitsubishi Defendants | Dismissed without prejudice |
| Wisconsin Count 3 | Mitsubishi Defendants | Dismissed without prejudice |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (FFMx) | Date | February 9, 2022 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

**V.    Conclusion**

For the reasons stated in this Order, the motions are decided as stated in this Order.

Plaintiffs shall file any amended complaint within 60 days of this Order. The parties shall meet and confer on or before February 21, 2022 regarding jurisdictional discovery as to FCA NV, as discussed above, and shall complete this discovery within 45 days of this Order; provided, however, this is without prejudice to an application to extend the deadline for jurisdictional discovery for good cause shown. If such an application is made and granted, a determination will be made at that time as to whether there will be an extension for filing any amended complaint. Any disputes as to the scope or timing of discovery shall be presented to Magistrate Judge Abrams.

**IT IS SO ORDERED.**

_____ : _____

| Initials of Preparer | TJ |
|---|---|