1   Roland Tellis (SBN 186269)
    rtellis@baronbudd.com
2   **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
3   Encino, CA 91436
    Telephone: 818.839.2333
4   Facsimile: 214.520.1181

5   David S. Stellings (*pro hac vice*)
    dstellings@lchb.com
6   **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
7   250 Hudson Street, 8th Floor
    New York, New York 10013-1413
8   Telephone: 212.355.9500
    Facsimile: 212.355.9592

9

10  *Co-Lead Counsel for Plaintiffs*

11  (additional counsel listed below)

12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

16

17  *In re ZF-TRW Airbag Control Units*      MDL No. 2905
    *Products Liability Litigation*
18                                           Case No. 2:19-ml-02905-JAK-FFM
19  ALL CASES
                                             **DISCOVERY MATTER**
20

21                                           **Joint Stipulation Regarding Plaintiffs'**
                                             **Motion to Compel ZF Automotive US**
22                                           **Inc.; ZF Active Safety and Electronics US**
                                             **LLC; ZF North America, Inc.; ZF**
23                                           **Passive Safety Systems US Inc.; and ZF**
                                             **TRW Automotive Holdings Corp. to**
24                                           **Produce Documents Pursuant to**
                                             **Subpoena**
25

26

27

28

                                    i

1        Plaintiffs, by and through Co-Lead Counsel, hereby respectfully submit

2  Plaintiffs' and ZF Automotive US Inc.; ZF Active Safety and Electronics US LLC;

3  ZF North America, Inc.; ZF Passive Safety Systems US Inc.; and ZF TRW

4  Automotive Holdings Corp.'s (collectively "ZF") Joint Stipulation Under L.R. 37-

5  2.1 Regarding Plaintiffs' Motion to Compel ZF to produce documents in response

6  to Plaintiffs' Rule 45 Subpoenas.

7        The parties agree they have met and conferred telephonically in good faith

8  regarding the issues set forth in this joint statement and have reached impasse.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Table of Contents**

I.   Introductions ........................................................................................... 1

   A.   Plaintiffs' Introduction ................................................................... 1

   B.   ZF's Introduction .......................................................................... 2

II.   Plaintiffs' Statement ............................................................................. 4

   A.   Subpoena Request 5: ZF must produce documents that show who drafted, edited, and reviewed ten communications about the defect sent to NHTSA. .... 4

   B.   Subpoena Requests 6 and 7: ZF must produce basic information identifying which specific ZF entity employed its fact witnesses. ................. 16

   C.   Conclusion ..................................................................................... 18

III.   ZF's Statement ..................................................................................... 19

   A.   Plaintiffs Plainly Seek Discovery to aid their Forthcoming, Amended Complaint Against ZF. ............................................................................... 19

   B.   Plaintiffs Cannot Articulate How their Requests Are Relevant to their Pending Claims ........................................................................................... 21

   C.   Plaintiffs' Requests Pose an Undue Burden. ............................. 25

   D.   Conclusion ..................................................................................... 26

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

I.    **Introductions**

    A.    **Plaintiffs' Introduction**

This litigation concerns more than 15 million Class Vehicles that contain airbag control units ("ACUs") that were designed, manufactured, and sold by ZF. These ACUs have a deadly defect: bursts of electricity generated by car crashes can cause the airbags and seatbelts in Class Vehicles to fail when they are needed most: during a head-on collision. The Class Vehicles come from some of the largest automobile brands in the world, including Honda, Toyota, FCA (Chrysler), Hyundai, Kia, and Mitsubishi.

Plaintiffs allege that ZF and a microchip manufacturer (STMicroelectronics) conspired with each other and the Vehicle Manufacturer Defendants to perpetuate mail and wire fraud schemes as to each of the Class Vehicle brands. The schemes defrauded both the federal safety regulator—the National Highway Traffic Safety Administration ("NHTSA")—and millions of unsuspecting consumers about the defective nature of the Class Vehicles and ACUs. The Court sustained these claims against three Defendants—Hyundai Motor America ("HMA"), Kia Motors America ("KMA"), and FCA US LLC ("FCA")—and granted Plaintiffs leave to amend the remaining RICO claims. *See* ECF 396 at 80. In so holding, the Court expressly recognized that ZF companies were part of the alleged conspiracies it sustained against HMA, KMA, and FCA. *See* ECF 396 at 78-79.

With this motion, Plaintiffs seek two discrete and targeted productions from ZF:

    (1) documents sufficient to identify the fact witnesses and particular ZF entities that reviewed 10 specific communications sent to NHTSA, and

    (2) documents sufficient to identify the particular ZF entities that employed several key ZF fact witnesses.

*See* Ex. B (Subpoena Ex. A) at Nos. 5-7.

These documents are highly relevant to the well-pled RICO claims against

1

1  FCA, HMA, and KMA. Plaintiffs seek an order to compel production of these
2  documents under Rule 45 no later than March 31, 2022, in light of ZF's position
3  that Plaintiffs' document requests served on June 9, 2020 are no longer operative
4  after the Court's Order on Defendants' Motions to Dismiss.

5  **B.      ZF's Introduction**

6  Last month, the District Court dismissed all of Plaintiffs' claims against ZF
7  in a comprehensive, 178-page ruling. *See* ECF 396. Now, facing a looming
8  deadline to amend their complaint, there should be no confusion about why
9  Plaintiffs seek these documents on an emergency basis just days before their
10  amendment is due.

11  It is not because Plaintiffs have an urgent need for these documents to
12  support their pending claims against HMA, KMA, and FCA. The fact discovery
13  cut-off is at least a year away, and Plaintiffs are not filing emergency discovery
14  motions against any of those defendants. Instead, Plaintiffs want this discovery to
15  try and plead a claim against ZF. But that is plainly improper, and courts routinely
16  reject this type of discovery request because Rule 45 is not a tool to take pre-suit
17  discovery to develop claims. Because there is no reason to deviate from that settled
18  case law, the Court should deny the motion.

19  Plaintiffs do not shy from why they served subpoenas on the same ZF entities
20  they originally sued and who Plaintiffs have said they will name in the Amended
21  Complaint. *See infra* n. 2. To attempt to plead around the deficiencies identified
22  by the District Court—in particular, Plaintiffs' failure to identify the ZF entity that
23  "[allegedly] made a particular . . . statement to NHTSA," *see* ECF 396 at 72—
24  Plaintiffs look to several ZF entities (*none* of which is currently a party) to provide
25  corporate and employment information bearing no relevance to the claims that
26  survived dismissal. That is inappropriate. Discovery is meant to develop pending
27  claims, not to identify new ones. *See* Fed. R. Civ. P. 26(b)(1) (tying discovery to a
28  "party's claim or defense"). As a result, courts consistently reject attempts to

2

rehabilitate failed claims by taking discovery from a dismissed party.

Plaintiffs do not fight that case law.  Instead, Plaintiffs attempt to justify these emergency requests by inventing a "dual relevance" concept.  Plaintiffs argue that the identity of specific ZF employees (and the specific ZF entities that employed them) is relevant to the remaining claims against the current defendants. That does not add up, including because Plaintiffs left a paper trail that reveals their true intentions.  For example, in the March 7 status report, Plaintiffs pressed:  "ZF . . . Must Quickly Produce Certain Targeted Documents *Relevant to the Amended Complaint*."  *See* ECF 413 at 13 (emphasis added).  Nor is it credible to suggest that Plaintiffs need employment information from a third party to litigate their ongoing claims against other, unaffiliated corporations.  And the fact that Plaintiffs seek these materials on an emergency basis only confirms that Plaintiffs really seek pre-suit discovery to develop claims against ZF.  If it were for anything else, there would be no rush and Plaintiffs would have no problem obtaining this information (if actually deemed relevant) in the normal course of post-complaint discovery (for which there is not even a schedule yet).

Finally, Plaintiffs leave no doubt about what is really driving the motion when they ask ZF to *produce* the requested information by March 31—11 days before Plaintiffs' Amended Complaint is due.  By Local Rule, the earliest this motion could be noticed for *hearing* is April 11 (saying nothing for this Court's availability).[1]  Asking this Court to hear the motion the same day it was filed again betrays its true and improper purpose.

For those reasons, and those discussed in Section III below, the Court should reject Plaintiffs' efforts to misuse a Rule 45 subpoena and deny the motion.

---

[1] *See* L.R. 37-3 ("The motion must be noticed to be heard on a regular Motion Day for the appropriate judge at least twenty-one days after the filing of the motion."). ZF has the right to file a "supplemental memorandum of law not later than fourteen days before the hearing date." *See* L.R. 37-2.3.

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

## II.   **Plaintiffs' Statement**

### A.   **Subpoena Request 5: ZF must produce documents that show who drafted, edited, and reviewed ten communications about the defect sent to NHTSA.**

In this case, Plaintiffs allege Defendants "knew of the Alleged Defect for at least a decade but conspired to conceal it from . . . NHTSA[] and consumers, and pushed to market and delayed recalling vehicles with the defective ACUs." ECF 396 at 5 (internal quotations and brackets omitted). The Court held: "Plaintiffs are the only direct victims of Defendants' alleged fraudulent and misleading statements to NHTSA." *Id*. at 76. Misleading statements to NHTSA are some of the predicate acts that form the basis of Plaintiffs' RICO claims against FCA, HMA, and KMA, which the Court sustained.

Between 2016 and the present, ZF sent at least ten written communications to NHTSA through mail or wire. Counts 2 and 3 of Plaintiffs' Consolidated Complaint—which the Court sustained—explained how many of these communications were misleading. *See* ECF 120 at ¶¶602(e), 624(d) (February 5, 2016 presentation), ¶¶602(f), 624(e) (September 2016 letter), ¶¶602(g), 624(f) (March 8, 2018 presentation sent on March 12, 2018).[2]

ZF's misleading statements to NHTSA were often a joint effort of multiple ZF entities. For example, a February 5, 2016 written presentation that ZF sent to NHTSA contains several misleading statements, such as: (1) false statements that a Hyundai-Kia crash and five FCA crashes with no airbag deployment were "commanded nondeployments" due to Hyundai-Kia's and FCA's "deployment

---

[2] While the Court recognized Plaintiffs had pled "many" "fraudulent statements to NHTSA," it dismissed claims as to ZF because the complaint "fail[ed] to specify the Defendant that allegedly made a particular fraudulent statement to NHTSA." In other words, Plaintiffs' "many allegations regarding such statements" "consistently lump[ed] together multiple [ZF] defendants without specifying the role of each defendant in the fraud . . . , grouping [ZF] Defendants by manufacturer name rather than referring to individual corporate entities." ECF 396 at 72.

strategy," when in fact the airbags failed to deploy because of the ACU defect, and (2) a false statement that "[d]eployment occurred" in two suspicious FCA wrecks, when in reality the secondary airbags failed in both wrecks and the seatbelts also failed in one of them. *See* Ex. B (ZF-MDL-0000001310 at -1322, -1323, -1329). Both these misleading statements furthered the fraudulent schemes about Hyundai-Kia and FCA Class Vehicles because they downplayed or denied the ACU defect. They are therefore squarely relevant to Counts 2 and 3, which the Court sustained as to HMA, KMA, and FCA, and held that ZF was part of those racketeering enterprises. *See* ECF 396 at 80. Indeed, the Court specifically cited the February 5, 2016 presentation in the portion of the opinion that sustained the conspiracy allegations for Counts 2 and 3. *See id.* at 78.

Significant evidence confirms that several ZF entities had joint responsibility for the February 5, 2016 presentation. For example:

1. The metadata for the document identifies Marc Bolitho as the "author," who swore under oath only one month later: "I am the Director of Passive Safety Electronics of ZF TRW Automotive Holdings Corp."

2. The cover page of the document (pictured below) identifies ZF's foreign parent "ZF Friedrichshafen AG" as the company responsible for the presentation.[3]

_____

[3] Notably, ZF has never denied that the foreign parent company received copies of communications to NHTSA before they were sent. Instead, ZF filed a declaration vaguely stating, "ZF Friedrichshafen AG, for example, exercises only limited oversight over ZF's domestic entities communications with NHTSA." ECF 209-4 at ¶10. This admission of at least some "oversight" leaves open the plausible inference that ZF's foreign parent received draft copies of presentations to NHTSA and approved them before they were sent.

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

## Electrical Overstress (EOS) and Airbag Control Units (ACUs)

February 5, 2016

ZF Friedrichshafen AG

3. Each page contains text in the bottom right corner that identifies ZF Friedrichshafen AG as the copyright holder.

4. Each page other than the cover page also states: "[t]his document is the property of ZF TRW," an apparent reference to ZF TRW Automotive Holdings Corp. (the only company with the phrase "ZF TRW" in its corporate name).

5. ZF Automotive US Inc. admitted in a chronology filed with NHTSA in 2018 that it attended the February 5, 2016 meeting.[4]

6. The presentation describes technical details of the defective ACUs, which employees of ZF Active Safety and Electronics US, LLC likely provided.[5]

The other nine written communications with NHTSA have similar indicia of joint responsibility by several ZF entities. In light of this evidence, documents that directly show the specific individuals who drafted, edited, and received copies of each of ZF's misleading communications with NHTSA are highly relevant. Those documents will enable Plaintiffs to identify which individuals had critical roles in the scheme to mislead NHTSA, select potential deponents with knowledge of

---

[4] This chronology used the abbreviation "ZF" to refer to TRW Automotive US Inc., the former name of ZF Automotive US Inc.

[5] *See* ECF 209-4 (Decl. of Emanuel Goodman), ¶¶4-6 (ZF Active Safety and Electronics US LLC designed and manufactured the ACUs), ¶¶10 ("As part of my role as Senior Technical Specialist for ZF Active Safety and Electronics US LLC, I have participated in-person [sic] meetings and other discussions with representative [sic] of the National Highway Traffic Safety Administration ('NHTSA') regarding the ACUs.").

misleading statements, and identify the corporate entities who are responsible for individual misconduct in furtherance of HMA's, KMA's, and FCA's RICO conspiracies. Examples of such documents would include native versions of nonfinal drafts of each communication and emails that show who received copies of draft versions of the communications.

> **1.      Plaintiffs' Request 5 seeks production of documents that will identify the individuals who drafted, edited, or received versions of ZF's communications to NHTSA.**

Request 5 of Exhibit A to Plaintiffs' subpoena seeks:

> Documents sufficient to show the identities of any individuals who wrote, edited, made comments upon, or received any final or draft versions of the presentations or letters contained in ZF-MDL-0000000137, ZF-MDL-0000000138, ZF-MDL-0000000552, ZFMDL-0000000595, ZF-MDL-0000000471, ZF-MDL-0000000208, ZF-MDL-0000009945, ZF-MDL-0000009948, ZF-MDL-0000001310, or ZF-MDL-0000009924 before they were sent to NHTSA.

Each document identified by this request is a communication sent to NHTSA about the defective ACUs.

> **2.      ZF refused to produce any documents in response to Request 5.**

ZF's response to Request 5 states:

> ZF incorporates its General Objections. ZF objects to this request as not relevant to the remaining litigation. The documents cited in this request relate to communications between ZF and NHTSA, which are not parties to the litigation. ZF further objects to this request as unduly burdensome. The request seeks information about documents dating back over eight years. In addition, the request also asks for the identities of anyone who "wrote, edited, made comments upon, or received any final or draft versions" of the cited documents. ZF further objects to this request as overbroad to the extent it seeks information related to ACUs that are not subject to the remaining litigation, such as the MS84 ASIC.

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

ZF is willing to meet and confer with Plaintiffs to better understand the relevance, nature of, and basis for this Request.

ZF's general objections state:

1. ZF responds to the Subpoenas on behalf of ZF (as defined above) only.

2. ZF objects to the Subpoenas to the extent they seek to impose on ZF duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the appropriate Local Rules, any applicable Court orders, or any stipulation or agreement between Plaintiffs and ZF.

3. ZF objects to the Subpoenas to the extent they seek documents beyond the scope of permissible non-party discovery.

4. In the event ZF later produces documents in response to the Subpoenas, ZF will produce documents in such a manner and format as required by the Federal Rules of Civil Procedure and the applicable Local Rules, and any agreement that may be reached by the Plaintiffs and ZF. ZF objects to the extent the Subpoenas require more than such efforts.

5. ZF objects to the Subpoenas to the extent they seek the disclosure of information, documents, or communications protected by the attorney-client privilege, the work product exemption from discovery, and/or any other applicable constitutional, statutory, or common law privilege. No privileged information, document, or communication will intentionally be provided in response to these Subpoenas. By responding to any particular Subpoena request, ZF does not intend to nor does it waive any applicable privilege that it may have, and ZF specifically intends to assert the same.

6. Inadvertent production of any document which is confidential, contains confidential information, is privileged, or was prepared in anticipation of litigation shall not constitute waiver of any privilege or of any other ground for objection of discovery of such document, the information contained therein, or the subject matter thereof, or of ZF's right to object to the use of that document or the information contained therein.

7. ZF objects to each Subpoena request to the extent it is unduly burdensome, overbroad, or calls for documents not relevant to the remaining claims or defenses in MDL No. 2905 or not proportional to the needs of that litigation. ZF's production of any documents in response to the Subpoena requests shall not be an admission of the relevance of any

such information.

8. ZF objects to the Subpoenas to the extent they request documents or seek information already known to Plaintiffs, in Plaintiffs' possession, or information that is as readily available to Plaintiffs as it is to ZF, including, but not limited to, requests that could be directed to remaining parties in MDL No. 2905.

9. ZF objects to the Subpoenas as overly broad and unduly burdensome to the extent they request information that is published, publicly available, or otherwise generally accessible to Plaintiffs.

10. ZF objects to the Subpoenas to the extent they presume facts. ZF submits these responses and objections without waiver of any right to object to any requested discovery, and without affirming any conclusory or argumentative statements made by Plaintiffs in these Subpoenas. In providing responses and objections to these Subpoenas, ZF does not waive, and expressly reserves, all objections as to competency, relevancy, materiality, and admissibility of the responses or subject matter thereof as well as all objections to any other discovery requests in any proceeding.

11. ZF objects to the Subpoenas to the extent they request ZF to provide information not in its possession, custody, or control, including any documents from any foreign affiliates, third-party suppliers, or vehicle manufacturers. Any such Subpoena request is overbroad, unduly burdensome, inconsistent with, and imposes obligations beyond, the obligations required under the Federal Rules of Civil Procedure.

12. ZF objects to the Subpoenas to the extent they purport to require the use of unreasonably burdensome or expensive data recovery processes to identify "all" or "any" documents or things requested. To the extent discovery moves forward, in searching for responsive materials, ZF will conduct a reasonable search of its records for those documents it agrees to produce.

13. ZF specifies that its responses are based upon the knowledge, information, and belief that it has acquired to the present date. These responses and objections, and any subsequent document production are, therefore, subject to change. Pursuant to the applicable provisions of the Federal Rules of Civil Procedure and any other applicable rules, ZF reserves its right to amend these responses, assert additional objections, and supplement any document production in the future, as it completes its

9

review and analysis in response to these Subpoenas.

14. ZF objects to each Subpoena request to the extent it is vague, ambiguous, confusing, fails to adequately define terms, or fails to describe the documents or information sought with reasonable particularity. ZF further objects to each Subpoena request to the extent it purports to attribute any special or unusual meaning to any terms or phrases.

15. To the extent ZF responds to a Subpoena request, it does not admit to Plaintiffs' characterizations of any documents, facts, theories, or conclusions.

16. ZF objects to the Subpoenas as overbroad and unduly burdensome, including to the extent the information sought could be directed to the remaining parties in the litigation.

17. ZF objects to the Subpoenas to the extent that they seek documents on an unreasonably short timeframe.

### 3.   The Court should overrule ZF's objections and compel production.

None of ZF's objections are proper grounds to resist production. The Court should overrule them all.

#### a.   ZF's relevance objection fails.

ZF's principal objection to Request 5 is that the documents are not relevant. ZF is wrong.

The broad standard of relevance applies to both parties and nonparties because "[t]he scope of discovery under Rule 45 is the same as under Rule 26(b)." *Sabre GLBL, Inc. v. Kimpton Hotel & Rest. Grp*., LLC, No. 21-mc-80053-MMC (JSC), 2021 WL 1839689, at *1 (N.D. Cal. May 6, 2021) (citing Fed. R. Civ. P. 45 advisory committee's note (1970)).

As explained above, Request 5 seeks documents that are highly relevant to claims against KMA, HMA, and FCA based on their conspiracies with ZF. The Court sustained these claims:

10

> "As to FCA US, HMA and KMA, the CAC does allege sufficient facts to
> support the claim that each of these Defendants conspired to violate
> RICO, in violation of Section 1962(d). The CAC alleges that there was
> agreement, coordination and interdependence among each of these
> defendants, the ZF Defendants and the STMicro Defendants."

ECF 396 at 79. The object of the conspiracy was to conceal the defect from

NHTSA and the public. *See id.* (holding that Plaintiffs pled interdependence

because the RICO scheme depended on ZF's nondisclosure of the defect "to the

public or NHTSA"). Because FCA, HMA, and KMA are "liable for the acts of their

co-conspirators," including ZF, *Oki Semiconductor Co. v. Wells Fargo Bank, Nat.

Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002), proof of liability at trial will require

evidence of FCA's, HMA's, and KMA's agreement, coordination, and

interdependence with ZF. Moreover, ZF's statements "during and in furtherance of

the conspiracy" will be admissible against FCA, HMA, and KMA. *See* Fed. R.

Evid. 801(d)(2)(E).  The details of ZF's participation in the racketeering enterprise

also are directly relevant to Plaintiffs' live RICO claims against FCA, HMA and

KMA.

The documents sought by Request 5 will allow Plaintiffs to identify which

individuals had the greatest involvement in the fraudulent NHTSA

communications, select deponents with knowledge of misleading statements, and

prove that FCA, HMA, and KMA conspired with particular ZF entities. Because

Plaintiffs have pled conspiracies against these Defendants, they are entitled to seek

discovery of their alleged co-conspirators, regardless of whether ZF is also a party.[6]

*Sprint Nextel Corp. v. Ace Wholesale, Inc*., No. 2:14-cv-2119, 2015 WL 3649623,

at *3 (D. Nev. June 10, 2015) (holding "information regarding business dealings

between Defendants and each of the Third Parties" was "discoverable" as it was

---

[6] Plaintiffs contend that in this instance, ZF remains a party Defendant, because the
forthcoming amended complaint will name ZF again.

1  relevant to a "trafficking scheme," would "assist in identifying Defendants' co-

2  conspirator," and "allow deposition of Third Parties' corporate designees, which

3  will help discover Defendants' methods of carrying out the trafficking scheme").

4  That the ZF entities will continue as Defendants in the amended complaint is all the

5  more reason to compel this discovery and stop ZF's delay tactics.

6                    **b.      ZF's undue burden objection fails.**

7        ZF's undue burden objection fails. Assessment of whether a subpoena is

8  unduly burdensome "requires the court to consider such factors as relevance, the

9  need of the party for the documents, the breadth of the document request, and the

10 time period covered by it, the particularly with which the documents are described

11 and the burden imposed." *Sabre*, 2021 WL 1839689, at *3 .

12       As explained above, Plaintiffs need the documents sought by Request 5 to

13 identify additional individuals involved in the co-conspiracy and to clarify the roles

14 of their individual employers in the conspiracy.

15       On its face, the document request is not broad and describes the at-issue ten

16 communications to NHTSA with particularity, using the bates-stamps for each one.

17 ZF knows exactly which ten documents to investigate. Moreover, each of these

18 communications occurred within 3 ½ years of when Plaintiffs filed their original

19 complaint – well within the statute of limitations for RICO claims, even without

20 any tolling.

21       Moreover, ZF undeniably has exclusive control of the internal documents

22 that will show who wrote, edited, or received the ten communications with

23 NHTSA. As such, Plaintiffs were not required to first seek these documents from

24 the existing Defendants before they served ZF with the subpoena. *See Brown v.*

25 *Rasley*, No. 13-cv-2084, 2017 WL 6451706, at *3 (E.D. Cal. Dec. 18, 2017) (Rule

26 45 standard merely "a showing that the records are only obtainable through that

27 third party."); *Jackson v. Paramo*, No. 17-cv-882, 2018 WL 4537746, at *1 (S.D.

28 Cal. Sept. 21, 2018) (same); *see also Sanders v. Los Angeles Cty.*, No. 15-cv-907,

12

2018 WL 11027948, at *1 (C.D. Cal. Mar. 20, 2018) ("a motion for issuance of a subpoena duces tecum must be supported by a clear indication of the documents sought and a showing that the records are obtainable only through the identified third party.").

Even if there were some burden to compile the limited information Plaintiffs seek in the subpoena, that does not weigh against production. "A burden alone is not enough to quash a subpoena; instead, Rule 45 requires that the burden be 'undue' before a court must quash or modify a subpoena." *In re Rainwater*, No. 1:18-MC-10051, 2018 WL 2088736, at *3 (D. Idaho May 4, 2018) (*citing U.S. v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 628 (S.D. Cal. 2001) ("'Undue' burden requires parties to show more than expense or difficulty.").

Here, ZF cannot even show a modest difficulty, because compliance with Request 5 necessitates a simple search: all ZF must do is identify the custodians and authors of ten documents (who are already known to ZF from the document metadata) and check their emails for who else received and discussed earlier drafts of the ten documents. This can be accomplished with straightforward keyword searches around the time period of the communications. If a reasonable search process like this results in a production that does not necessarily disclose absolutely everyone who wrote, edited, or received the 10 presentations, Plaintiffs will still accept that production as compliant—ZF merely has to reasonably attempt to find the requested information. This concession disposes of ZF's objection to identifying "anyone" with perfect coverage.[7]

Insofar as ZF objects to producing information related to the MS84 ASIC, Plaintiffs will accept a production in response to Request 5 that only includes

---

[7] ZF's objections do not contend that any other party has the documents sought by Request 5. Accordingly, there is no dispute that Plaintiffs have complied with Rule 45's requirement of seeking the responsive documents from party discovery, where possible.

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

1    information about the ACUs containing DS84 ASICs and related vehicles.

2    Plaintiffs will seek discovery about the MS84 ASIC in other contexts, given the

3    Court's recognition that the MS84 ASIC is relevant. *See* ECF 396 at 5 (discussing

4    the MS84 ASIC as a relevant comparator ACU that was more resistant to electrical

5    surges than the DS84 ASIC).

6                    **c.    ZF's argument that responsive materials are also**

7                          **relevant to the amended complaint is not a valid basis**

8                          **for withholding documents.**

9         Finally, ZF's assertions that the documents sought by Plaintiffs are relevant

10   to the forthcoming amended complaint is not a valid objection. Because all

11   Plaintiffs' claims against all Defendants depend on the same dangerous ACU defect

12   and ZF's scheme to conceal the defect extended to all the ACUs, it should come as

13   no surprise that discovery into the claims sustained by the Court will also require

14   production of documents that happen to be relevant to the claims the Court

15   dismissed with leave to amend. Given the Court's holding that the "the Alleged

16   Defect is present in all Class Vehicles" (Dkt. 396 at 99), the Court was aware of

17   this dynamic when it advised on February 10, 2020: "some of [the] issues [in

18   discovery] can go forward." Ex. C, 2/10/2022 Hr'g Tr. 19:4-17.

19        Put another way, dual relevance to issues common to the sustained claims

20   and dismissed claims (such as ZF's misrepresentations to NHTSA about the defect)

21   is not a reason to withhold responsive documents. Where, as here, Plaintiffs have

22   shown that materials are relevant to sustained claims, it should not matter that those

23   materials also implicate claims that will be cured by amendment. A contrary rule

24   would effectively make relevance a barrier to production, when the law clearly

25   holds that relevance is a reason to produce documents.

26        While ZF claims that Plaintiffs are merely "troll[ing]" for documents about

27   dismissed claims, none of the cases they cite involve discovery of documents that

28   had dual relevance to sustained and dismissed claims. And, unlike this case, the

third party targeted by the discovery in these cases were not part of a well-pled RICO claim. *See Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, 2020 WL 3103945, at *3 (D. Ariz. June 11, 2020) (plaintiff used third-party subpoenas to try to obtain information from the defendant's employees and their spouses); *In re German Auto. Mfrs. Antitrust Litig*., No. 3:17-md-02796-CRB, 2020 WL 3060748, at *2 (N.D. Cal. June 9, 2020) (Plaintiffs had not pled any claims against any defendants that were sustained by the court after two decisions dismissing all claims, and therefore there was no case for relevance to any sustained claims); *MetroPCS v. Thomas*, 327 F.R.D. 600, 626-27 (N.D. Tex. 2018) (in an action related to a scheme to unlock cellular phones in Pennsylvania, plaintiff could not subpoena the deposition of a woman in Texas whose son may have been involved in a similar (but unrelated) scheme in Texas, as it was irrelevant to the Pennsylvania scheme); *Deluxe Fin. Servs., LLC v. Shaw*, No. 16–cv–3065 (JRT/HB), 2017 WL 7369890, at *5 (D. Minn. Feb. 13, 2017) (in a trade secrets action against one former employee, plaintiff company could not subpoena documents to prove up similar trade secret violations of a second, non-party former employee).  These cases are inapplicable here, where the Court sustained RICO claims against multiple Defendants, and held that ZF was part of the racketeering enterprise in all those sustained claims.

ZF's related objection to Plaintiffs' demand that the Court compel immediate production prior to the deadline for the amended complaint fails for similar reasons. Immediate production before the amended complaint is filed serves the interests of judicial efficiency by avoiding the need to consider further amendments to the pleadings later based on basic information that Plaintiffs will inevitably discover this year. Providing this information now will also minimize improper factual disputes about each ZF's entity's role at the pleading stage.

**B.      Subpoena Requests 6 and 7: ZF must produce basic information identifying which specific ZF entity employed its fact witnesses.**

Because corporations only act through their individual employees, discovery identifying the specific entity that employs each fact witness is routine in every case about corporate misconduct. Typically, these types of disclosures occur automatically with a corporate defendant's initial Rule 26(a) disclosures. Here, however, the Court eliminated the initial disclosure requirement because "it would be surprising if material that is required for Rule 16 disclosure isn't produced in response to that discovery." Ex. C, 2/24/2020 Hr'g Tr. 22:7-17. Despite this guidance from the Court, ZF refused to provide information identifying the employers of its fact witnesses over more than six months of discovery, even though Plaintiffs served discovery requests that sought this information.

Information that show which ZF entity employed ZF's fact witnesses is relevant to this case because, again, the conspiracy claims sustained by the Court are based on conspiracies between and among corporations: specifically, HMA, KMA, FCA, STMicroelectronics, and ZF. Information that identifies the ZF entity(ies) for which each individual fact witness acted is undeniably relevant to these conspiracies. *See Sprint Nextel Corp.*, 2015 WL 3649623, at *3 (holding "information regarding business dealings between Defendants and each of the Third Parties" was "discoverable" it was relevant to a "trafficking scheme," would "assist in identifying Defendants' co-conspirator," and "allow deposition of Third Parties' corporate designees, which will help discover Defendants' methods of carrying out the trafficking scheme").

**1.      Plaintiffs' Requests 6 and 7 seek documents showing the employer of particular ZF fact witnesses.**

Plaintiffs' Request 6 seeks documents that will identify which ZF entities employed the fact witnesses who played a role in the preparation and approval of misleading statements sent to NHTSA. Specifically, this request states:

16

Documents sufficient to show whether and for what years between 2005 and the present YOU sent a form W-2 Wage and Tax Statement to each individual identified in documents responsive to request 5. Insofar as you claim the copies of form W-2s are the only available documents responsive to this request, you may redact any information other than the year of issuance of the responsive form W-2, the employer's name, the employer's identification number, and the employee's first name, middle initial, and last name.

Plaintiffs' Request 7 seeks documents that will identify several key fact witnesses disclosed by ZF. ZF identified most of these fact witnesses as document custodians during party discovery or as persons with relevant knowledge in response to Plaintiffs' interrogatories, but failed to identify the specific ZF entities at which the witnesses worked. Specifically, this request states:

Documents sufficient to show whether and for what years between 2005 and the present YOU sent a form W-2 Wage and Tax Statement to each of the following individuals: Emanuel (Manny) Goodman, Marc Bolitho, Natalia Medley, George Backos, Raymond Beveridge, Carl Bevins, Ed Carpenter, Richard Cording, Matthew Gray, Jeff Guinot, Rich Guyon, SH Han, Greg Heyboer, SJ Hong, Hiro Kawakubo, Farid Khairallah, Raad Konja, Kazuyuki Kubota, Keith Miciuda, Niyant Patel, Jashmita Patel, Jim Pawloski, Kyle Pellar-Kosbar, Hari Ramnath, Sharath Reddy, Carrie Richardson, Chris Roberts, Dennis Shelton, Mariusz, Skowron, Tom VanDamme, Ed Wampuszyc, Alex Westmeyer, Tom Wilson, William Wong, Johannes Konle, Matthias Goebel, Martin Mayer, Armin Schmidt, B. Nalepa, and Holder Sradnick. Insofar as you claim the copies of form W-2s are the only available documents responsive to this request, you may redact any information other than the year of issuance of the responsive form W-2, the employer's full name, the employer's identification number, and the employee's first name, middle initial, and last name.

## 2. ZF refused to produce any documents in response to Plaintiffs' Requests 6 and 7.

ZF's response to Request 6 states:

ZF incorporates its General Objections. ZF objects to this request as not

17

relevant to the remaining claims in the case. Wage and tax information about employees of a non-party has no bearing on any claim remaining after the Court's February 9, 2022 order.

ZF is willing to meet and confer with Plaintiffs to better understand the relevance, nature of, and basis for this Request.

ZF's response to Request 7 states:

ZF incorporates its General Objections. ZF objects to this request as not relevant to the remaining claims in the case. Wage and tax information about employees of a non-party has no bearing on any claim remaining after the Court's February 9, 2022 order.

ZF is willing to meet and confer with Plaintiffs to better understand the relevance, nature of, and basis for this Request.

ZF's general objections are quoted above.

### 3. The Court should overrule ZF's objections.

Aside from the general objections, which Plaintiffs addressed above, ZF objects to Requests 6 and 7 solely based on relevance.[8] This objection fails because employment information that shows which corporate entity is responsible for the acts of fact witnesses is relevant to the conspiracy claims against FCA, HMA, and KMA, all of which will require proof that ZF companies conspired with FCA, HMA, KMA. Because Plaintiffs can only prove that claim through evidence of what particular ZF employees did, they must have access to which companies employed the key fact witnesses. That is all that Requests 6 and 7 seek.

### C. Conclusion

For the foregoing reasons, the Court should compel ZF to produce

---

[8] ZF rightfully does not press any undue burden objection in response to Requests 6 and 7. The Court's motion to dismiss opinion explains why the time period in this case stretches back to 2005 (*see* ECF 396 at 5), and Plaintiffs' formal offer to accept a written representation identifying particular employers eliminates any burden. *See* ECF 413 at 17. Moreover, no party to the litigation other than ZF has the information sought by Requests 6 and 7.

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

documents responsive to Requests 5, 6, and 7. The Court should set a production
deadline of March 31, 2022.

**III.**   **ZF's Statement**

      Plaintiffs seek to use the subpoenas to gather pre-suit discovery to re-plead
claims the District Court dismissed.  Because that is an improper purpose for a
subpoena—and for the other reasons discussed below—the Court should deny
Plaintiffs' motion to compel.[9]

      **A.**   **Plaintiffs Plainly Seek Discovery to aid their Forthcoming,
Amended Complaint Against ZF.**

      Plaintiffs have all but admitted they seek discovery to find facts to bolster
deficient claims that Plaintiffs have said they will re-plead against ZF:

- At a status conference the day after the dismissal order, Plaintiffs' counsel
made clear: "[T]here may be things that come up in the meet-and-confer
and the discovery process that could affect that [amended complaint]
deadline," such as document productions "that would be germane and
helpful to an amended Complaint . . . ."  Ex. C, Feb. 10, 2022 Hr'g Tr. at
41:11–42:5.

---

[9] Because the ZF entities have all been dismissed and Plaintiffs have served Rule 45
subpoenas on the ZF entities as non-parties domiciled in Michigan, case law
suggests that the Eastern District of Michigan is the proper place to litigate
compliance with Plaintiffs' subpoenas.  *See In re Packaged Seafood Prods.
Antitrust Litig.*, 2018 WL 454440, at *1–*2 (S.D. Cal. Jan 17, 2018) (because
transferee court under Rule 45 does not have jurisdiction over subpoenas duces
tecum, plaintiffs may only "pursue their [m]otion" to compel in "the court where
compliance is required"); *VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal.
2002) (transferee court in MDL only has power over deposition subpoenas, not
Rule 45 document subpoenas).  Further, the District Court also found that it had no
jurisdiction over claims filed against ZF in California.  *See* ECF 396 at 39.
Nonetheless, in the interest of efficiency and given the clear impropriety of
Plaintiffs' subpoenas on other grounds, ZF will not seek to transfer the compliance
dispute to that jurisdiction.  ZF does so without waiving its rights to raise such
arguments in connection with future disputes that may arise. Plaintiffs contend this
Court is a proper forum for compelling production in response to their  subpoenas.
Plaintiffs' position on this issue will be set forth in a contemporaneous dispute with
STMicroelectronics, Inc., which made a similar objection. Plaintiffs see no reason
for case law citations on objections that ZF is not pressing.

- In the March 7, 2022 status report—which came after Plaintiffs served their Rule 45 subpoenas on ZF—Plaintiffs pressed ZF to "Quickly Produce Certain Targeted Documents Relevant to the Amended Complaint." *See* ECF 413 at 13; *see also id.* at 17 (citing the "approaching April 11, 2022 deadline for Plaintiffs to amend the complaint" in requesting the Court's guidance about discovery from ZF).

- Plaintiffs' attempt to expedite this motion—and request for a March 31 production deadline—leaves no doubt about the requests' true purpose. If the requested discovery was truly relevant to Plaintiffs' remaining claims against non-ZF entities, there would be no urgent need for immediate production.

With that history, case after case confirms the subpoenas are improper. The reasoning is rooted in a core principle of the civil litigation system: "[D]iscovery *follows* the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." *Carter v. DeKalb Cty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013) (quotation marks and citation omitted) (emphasis in original).

Accordingly, courts routinely quash subpoenas that seek information to plead a claim. *See, e.g.*, *Vantage Mobility Int'l, LLC v. Kersey Mobility*, *LLC*, 2020 WL 3103945, at *2–*3 (D. Ariz. June 11, 2020) (quashing subpoenas served on dismissed parties because plaintiff could "not serve subpoenas on non-parties to search for evidence to support new causes of action"); *Davis v. U.S. Marshals Serv.*, 849 F. App'x 80, 86–87 (5th Cir. 2021) (affirming denial of motion to compel compliance with Rule 45 subpoena after subpoena target was dismissed from case because responsive information did not bear on remaining claim); *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361–62 (8th Cir. 2003) (in conspiracy case, affirming order quashing subpoena that requested, among other things, employment records; noting that plaintiff was on a "fishing expedition" by seeking "not only information to buttress her action as it presently stands, but also

additional defendants or plaintiffs to join in her suit"); *Meta v. Target Corp.*, 2015 WL 7459981, at *2 (E.D. Wisc. Nov. 24, 2015) (quashing subpoena because it sought information from third party to support future claims against that entity). *See also In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 408 (N.D. Cal. 2020) (rejecting attempt to seek discovery related to dismissed claims because "Supreme Court and Ninth Circuit precedent bar discovery based on previously dismissed claims").

Plaintiffs do not cite a single case to the contrary.  Instead, Plaintiffs pivot and claim their requests are relevant to claims the District Court did not dismiss.[10] (As noted above, Plaintiffs' actions prove otherwise.)  Plaintiffs then argue it would be more "efficien[t]" to obtain this information before filing an Amended Complaint. *Supra* at 15.  Tellingly, Plaintiffs do not identify a single case that supports that justification either.  *Every* plaintiff would like the opportunity to seek pre-suit discovery to develop hypothetical claims.  But that is not the system that Congress designed.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1) at Adv. Comm. Note (noting 2015 rule change "signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings[]").  There is no basis for an emergency subpoena intended to circumvent the Federal Rules.

### B.    Plaintiffs Cannot Articulate How their Requests Are Relevant to their Pending Claims

Setting aside the improper purpose of the subpoenas, Plaintiffs fail to meet the heightened relevance requirement for subpoenas or credibly link their requests to their surviving claims.  *See Pizana v. Sanmedica Int'l, LLC*, 2021 WL 1060440,

---

[10] Although Plaintiffs contend otherwise, the District Court never directed the parties to conduct discovery related to dismissed claims.  In fact, the District Court said, "I understand," after ZF's counsel noted: "[I]f one of our clients is a nonparty, then the scope of discovery as to a nonparty could be different than as to a party. . . ." *See* Ex. C, 2/10/2022 Hr'g Tr. 20:2–19.

at *5 (E.D. Cal. Mar. 18, 2021) (denying motion to compel where party "failed to demonstrate the heightened relevance requirement for non-party discovery").

### 1.    Request No. 5 is not relevant to Plaintiffs' surviving claims.

Plaintiffs' only argument for the relevance of Request No. 5 (which seeks information regarding which particular ZF individuals wrote, edited, or received ten documents) is that the information would "allow Plaintiffs to identify which individuals had the greatest involvement in the [allegedly] fraudulent NHTSA communications, select deponents with knowledge of misleading statements, and prove that FCA, HMA, and KMA conspired with particular ZF entities." *Supra* at 11.  This argument has several flaws.

*First*, it is incredible to suggest Plaintiffs must identify a list of *third-party* fact deponents before Plaintiffs file the operative complaint and before motions to dismiss are briefed and discovery schedules even set.  Regardless, Plaintiffs already have what they say they need:  When ZF was a party, it disclosed a list of 24 custodians, produced employee organization charts, and identified personnel in its interrogatory responses.

*Second*, Plaintiffs cannot seriously contend these documents "will allow Plaintiffs to identify which individuals had the *greatest* involvement in the [allegedly] fraudulent NHTSA communications." *Id.* (emphasis added). In fact, Plaintiffs' request does just the opposite.  It seeks the identities of "***any*** individuals who wrote, edited, made comments upon, or ***received*** any final or ***draft*** versions of the [NHTSA documents.]"  Pl'fs Req. No. 5 (emphasis added).  The overbreadth of the request confirms that something else is driving it.

*Third*, seeking the information to "prove that FCA, HMA, and KMA conspired with particular ZF entities" sets up a strawman.  *Supra* at 11.[11]  Though

---

[11] Though not relevant to the present discovery dispute, ZF denies the various allegations in Plaintiffs' statement, including that the ACU at issue was defective, that ZF misled NHTSA, and that Plaintiffs are entitled to any relief.

"proof of liability at trial" may require "evidence of FCA's, HMA's, and KMA's [alleged] agreement, coordination and interdependence[,]" *id.*, Plaintiffs provide no reason why the identities of *ZF* personnel who received or authored the NHTSA documents bears on that question.

**Fourth**, to the extent the identity of ZF individuals is even relevant, Plaintiffs should develop such evidence, if it exists, through party discovery with FCA, HMA, and KMA—the entities against whom Plaintiffs' claims are actually pending.  "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410, 412 (C.D. Cal. 2014) (quashing subpoena where information could have been obtained from a party); *see also AECOM Tech. Servs., Inc. v. Zachry Construction Corp.*, 2020 WL 1934973, at *3 (C.D. Cal. Feb. 3, 2020) (similar).  If there were a conspiracy between ZF and FCA, HMA, or KMA, then FCA, HMA, and KMA should have documents or other evidence identifying the specific ZF entities with whom they allegedly conspired.  Denying the motion to compel thus does not prejudice Plaintiffs.  Their claims against those entities will rise and fall on the record that Plaintiffs develop in discovery from those parties.

**Finally**, Plaintiffs lone authority—*Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 2015 WL 3649623, at *3 (D. Nev. June 10, 2015)—is far afield.  There, the subpoena targets *did not contest or respond* to the requests, and the court held that any objections were waived.  *Id.* at *4.  That plaintiff also first sought the relevant information from the defendants (rather than the third parties).  *Id.* at *1.  *Sprint* is nothing like this case.

### 2.   Request Nos. 6 and 7 are not relevant to Plaintiffs' surviving claims.

Plaintiffs similarly fail to link Request Nos. 6 and 7 (which request employment information, including tax filings, for more than 40 ZF employees)

23

1    with the few remaining claims.  This shows, yet again, that Plaintiffs' relevance

2    assertions are mere pretext.

3        Plaintiffs' lone paragraph on the point does not explain how third-party

4    employee tax information bears on the pending claims, let alone meets Rule 45's

5    "heightened relevance requirement." *Pizana*, 2021 WL 1060440, at *5.  Plaintiffs

6    state that "employment information that shows which corporate entity is

7    responsible for the acts of fact witnesses is relevant to the conspiracy claims against

8    FCA, HMA, and KMA, all of which will require proof that ZF companies

9    conspired with FCA, HMA, KMA." *Supra* at 18.  But Plaintiffs cannot explain

10   why the identity of any particular ***ZF*** entity that allegedly participated in a RICO

11   conspiracy is relevant to the pending RICO claims against *others*.  What matters—

12   at most—is that those vehicle manufacturers allegedly conspired with ZF; but the

13   particular ZF corporate entity is beside the point when evaluating the claims that

14   Plaintiffs have asserted against HMA, KMA, and FCA.  Nor do Plaintiffs cite any

15   RICO law or allegations sustained in their Complaint to support the claim that

16   "they must have access to which companies employed the key fact witnesses." *Id.*[12]

17        Plaintiffs otherwise recycle arguments related to the District Court's

18   decision to waive the initial disclosure requirement.  Plaintiffs do not identify any

19   party-discovery requests to ZF that sought the subpoenaed information, nor did they

20   press for this information while ZF was providing then-party discovery during the

21   pendency of the motion to dismiss.  Plaintiffs' failure to obtain this information

22   while ZF was a party reveals that the emperor has no clothes.  The only reason

23   _____

[12] Plaintiffs repeatedly mischaracterize the District Court's decision as "holding"
24   that ZF was part of a RICO enterprise.  The Court *assumed* (as it had to in a Rule
     12(b)(6) motion) that Plaintiffs' allegations were true—and even then *still*
25   dismissed all claims against ZF.  Further, Plaintiffs portray the District Court's
     decision as dismissing ZF on a narrow pleading technicality.  That is not correct.
26   The opinion also foreclosed Plaintiffs' ability to allege predicate acts by omission
     or failure to disclose.  *See* ECF 396 at 65.  In fact, it is unclear what "affirmative
27   misrepresentations" Plaintiffs could identify because Plaintiffs' own interrogatory
     responses confirmed they had no interaction with ZF whatsoever.
28

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

1   Plaintiffs urgently need this information—information they did not request for more

2   than two years—is to support their efforts to amend their complaint, not to bolster

3   their still-pending claims against other defendants.  And even if Plaintiffs requested

4   this information pre-dismissal, that is not a basis to grant third-party discovery

5   now.[13]

6       **C.     Plaintiffs' Requests Pose an Undue Burden.**

7           In addition to the improper purpose of the subpoenas, Plaintiffs had an

8   independent duty to "take reasonable steps to avoid imposing undue burden or

9   expense" on non-party ZF.  *See* Fed. R. Civ. P. 45(d)(1); *see also Simon v. Taylor*,

10  2014 WL 6633917, at *21–23 (D.N.M. Nov. 18, 2014) ("nonparties enjoy

11  considerable protection from discovery requests" as compared to parties; outlining

12  the protections of dismissed non-parties).

13          Plaintiffs' requests *are* unduly burdensome.  "[W]hen a subpoena should not

14  have been issued, literally everything done in response to it constitutes undue

15  burden or expense within the meaning of Civil Rule 45." *Hill v. Robert's American*

16  *Gourmet Food, LLC*, 2013 WL 5118943, at *3 (N.D. Cal. Sep. 13 2013) (internal

17  quotation marks and citation omitted) (quashing subpoena and imposing sanctions

18  because party served improper subpoena); *see also Hallamore Corp. v. Capco Steel*

19  *Corp.*, 259 F.R.D. 76, 81 (D. Del. 2009) (quashing improper subpoena served on

20  third party) (citing *CareToLive v. von Eschenbach*, 2008 WL 552431, at *3 (S.D.

21  Ohio Feb. 26, 2008) (granting partial sanctions against plaintiff for serving

22  improper subpoena on third party because "Rule 45 makes clear the obligation of

23  parties to respect the rights of third parties and that a party should avoid using the

24  subpoena process to impose undue burden")).  Accordingly, because Plaintiffs

25  _____

26  [13] Although Plaintiffs' complaints about the pace of *party* discovery are misplaced
    in the context of litigating a third-party subpoena, Plaintiffs' narrative lacks context.
27  *See* ECF 413 at 23–25.  Meanwhile, Plaintiffs were not on the ball in responding to
    discovery.  As of February 13, 2022, Plaintiffs had produced just *ten* documents
28  *combined*.

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

should not have issued these subpoenas to further Plaintiffs' improper objective, compliance would unduly burden ZF.

Further, the searches that Plaintiffs propose are not as easy as Plaintiffs speculate for a global company with more than 150,000 employees in 42 countries and substantial M&A activity over the years.  For example, Request No. 5 seeks "the identities of *any* individuals who wrote edited, made comments upon, or received *any* final or draft versions of [10 NHTSA documents]."  *Supra* at 7.  On its face, that request would require multiple ZF entities to dig through potentially dozens of drafts, emails relaying those drafts, and the records of any employees who could have ever looked at them.[14]  The Court should not impose that burden on third parties, much less impose that burden on an expedited time frame that requires ZF to locate, review, and produce that information in a little over a week.

**D.    Conclusion**

The Court should deny Plaintiffs' motion to compel ZF to produce documents responsive to Plaintiffs' Request Nos. 5–7.

Dated: March 21, 2022                      Respectfully submitted,

                                           /s/David Stellings
                                           David Stellings

                                           LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP
                                           David Stellings (*pro hac vice*)
                                           dstellings@lchb.com

---

[14] Plaintiffs' request for non-final versions of these documents before they were presented or communicated to NHTSA also raises potential privilege concerns.

1    John T. Nicolaou (*pro hac vice*)
2    jnicolaou@lchb.com
     Katherine McBride
3    kmcbride@lchb.com
4    250 Hudson Street, 8th Floor
     New York, New York 10013-1413
5    Telephone: 212.355.9500

6
     LIEFF CABRASER HEIMANN &
7    BERNSTEIN, LLP
8    Elizabeth J. Cabraser (SBN 83151)
     ecabraser@lchb.com
9    Nimish R. Desai (SBN 244953)
10   ndesai@lchb.com
     Phong-Chau G. Nguyen (SBN 286789)
11   pgnguyen@lchb.com
12   275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339
13   Telephone: 415.956.1000

14
     BARON & BUDD, P.C.
15   Roland Tellis (SBN 186269)
16   rtellis@baronbudd.com
     David Fernandes (SBN 280944)
17   dfernandes@baronbudd.com
18   Elizabeth Smiley (SBN 318165)
     esmiley@baronbudd.com
19   15910 Ventura Boulevard, Suite 1600
20   Encino, CA 91436
     Telephone: 818-839-2333
21   Facsimile: 818-986-9698

22
     *Co-Lead Counsel for Plaintiffs*
23

24
     Respectfully submitted,
25
     DATED: March 21, 2022        */s/Michael A. Glick*
26   KIRKLAND & ELLIS LLP
27   Mark C. Holscher (SBN 139582)
     mark.holscher@kirkland.com
28   555 South Flower Street

27

Los Angeles, CA 90071
Telephone: 213-680-8400
Facsimile: 213-680-8500

Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: 310-552-4200
Facsimile: 310-552-5900

Matthew T. Regan, P.C. (*pro hac vice*)
mregan@kirkland.com
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

Judson Brown, P.C. (*pro hac vice*)
jdbrown@kirkland.com
Michael A. Glick (*pro hac vice*)
michael.glick@kirkland.com
Jason Wilcox (*pro hac vice*)
jason.wilcox@kirkland.com
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-389-5000
Facsimile: 202-389-5200

*Counsel for ZF Active Safety and Electronics
US LLC, ZF Passive Safety Systems US Inc.,
ZF Automotive US Inc., ZF TRW Automotive
Holdings Corp., ZF North America, Inc.*

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

1

**SIGNATURE OF CERTIFICATION**

2

     Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other

3

signatories listed, and on whose behalf the filing is submitted, concur in the filing's

4

content and have authorized the filing.

5

6

DATED: March 21, 2022        */s/ David Stellings*

7

                 David Stellings

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on March 21, 2022, a copy of the foregoing **Joint Stipulation Regarding Plaintiffs' Motion to Compel ZF Automotive US Inc.; ZF Active Safety and Electronics US LLC; ZF North America, Inc.; ZF Passive Safety Systems US Inc.; and ZF TRW Automotive Holdings Corp. to Produce Documents Pursuant to Subpoena** was served electronically through the Court's electronic filing system upon all Parties appearing on the Court's ECF service list.

DATED: March 21, 2022          */s/ David Stellings*
                                              David Stellings

Stipulation on Discovery Dispute re Plaintiffs' Subpoenas on Domestic ZF Entities