UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

Case No.: **ML 19-2905-JAK (PLAx)**                                            Date: **July 25, 2022**

Title:  **In Re:  ZF-TRW Airbag Control Units Products Liability Litigation**

---

PRESENT: THE HONORABLE   **PAUL L. ABRAMS**
UNITED STATES MAGISTRATE JUDGE

| **Christianna Howard** | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

ATTORNEYS PRESENT FOR PLAINTIFF(S):          ATTORNEYS PRESENT FOR DEFENDANT(S):
NONE                                                                          NONE

PROCEEDINGS:  (IN CHAMBERS)   Plaintiffs' Motion to Compel (ECF No. 502) and Application to Seal (ECF No. 500)

On June 22, 2022, plaintiffs and defendant STMicroelectronics, Inc. ("defendant ST" or "ST") filed a Joint Stipulation in support of their positions regarding plaintiffs' Motion seeking to compel ST to produce "failure analysis reports."  (ECF No. 501-1, 502).  On June 29, 2022, plaintiffs and defendant ST filed supplemental briefs.  (ECF Nos. 507, 508).  The Court previously ordered the hearing, scheduled for July 13, 2022, off calendar.  (ECF No. 513).

**Application to Seal**

In connection with the Joint Stipulation, plaintiffs on June 22, 2022, also filed an Application requesting to seal portions of the Joint Stipulation that reference information derived from discovery produced by defendants and designated as confidential, and to seal the following exhibits that were designated as confidential:  Exhibits 1-4 and Exhibit 9.  (ECF No. 500).  On June 29, 2022, defendant ST filed a Response to the Application (ECF No. 505), explaining that Exhibits 1-3 and 9 contain confidential information and should be sealed.  No other defendant filed a response.  As such, the only exhibit not addressed by any defendant is Exhibit 4, described by plaintiffs as a "document ZF produced to the [National Highway Traffic Safety Administration ("NHTSA")] that ZF designated highly confidential."  (ECF No. 500 at 2[1]).

The Stipulated Protective Order, issued on March 3, 2020, provides in pertinent part:

> The Designating Party . . . agrees to file a brief within 7 days after [a] motion to seal is filed, or such other time as may be permitted by the Court, that either supports the relevant motion to seal and explains the reasons why the Designating Party contends the information should be sealed or provides an alternative version of the Designating Party's Covered Information that the Designating Party

---

[1]      For ease of reference, the Court cites to the ECF-generated page numbers.

>contends is appropriate for public filing and explains the reasons why any redacted information should be sealed. The Designating Party's failure to submit a brief explaining why the Covered Information should be sealed shall result in a waiver of confidentiality rights as to the filed documents under this Order.

(ECF No. 104 at 23-24).

In light of the response filed by defendant ST (ECF Nos. 505, 506), the Court **grants in part** plaintiffs' Application to Seal with respect to Exhibits 1-3 and 9. As for Exhibit 4, neither ZF, the designating party, nor any other defendant, filed a response to plaintiffs' request to seal this document. Nor has any defendant requested an extension of the 7-day time limit to do so. Accordingly, the Court **denies in part** the Application to Seal as to Exhibit 4. As stated in the Stipulated Protective Order, after a motion to seal is filed, the designating party's failure to file a brief stating why information should be sealed results in a waiver of confidentiality rights. Based on the foregoing, the Court **grants in part** the Application to Seal as to those portions of plaintiff's Opposition containing information derived from defendants' designated confidential information, with the exception of any portion containing information derived solely from Exhibit 4.

**The Discovery Dispute**

The Court now turns to the instant discovery dispute. At issue are three document requests from the Requests for Production ("RFP") served by plaintiffs on defendant ST in August 2020 that ask for the following:

>**RFP No. 31**: All Documents and Communications relating to any incident (and suspected or alleged incident), crash, complaint, property damage claim, repair or replacement request, and warranty claim made by any Defendant associated with a non-deployment of airbags and/or failure of seatbelt pretensioners, unusual airbag deployment, missing Crash Data, and any other indication of possible EOS in the ZF TRW ACUs.
>
>**RFP No. 32**: All Documents and Communications Concerning testing and analyses conducted following incidents or crashes involving vehicles with ZF TRW ACUs, regardless of location, including vehicles with possible or confirmed EOS.
>
>**RFP No. 33**: All Documents and Communications relating to any root cause analysis Concerning EOS in ZF TRW ACUs or to DS84 ASICs.

(ECF No. 501-1 at 14-16).

In responding to RFP Nos. 31-33, defendant ST objected to each request as "overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks Documents from persons or entities other than STMicroelectronics, Inc., where such Documents are not in STMicroelectronics, Inc.'s possession, custody, or control." (Id. at 14-16). Defendant ST also objected "to the extent [each request] seeks information about any foreign occurrences or communications, which are not relevant to the claims or defenses of any party in this litigation. To that extent, the Request is additionally overbroad and not proportional to the needs of the case because the Documents sought are not necessary to resolve the issues in this case, and the burden and expense of searching for and identifying such Documents outweighs any possible benefit." (Id.). For RFP Nos. 32 and 33, defendant ST objected, respectively, that the terms "incident" and "root cause analysis" were vague and ambiguous. For RFP No. 31, defendant ST stated it was not able to identify any responsive documents. (Id.

at 14-16).

**Legal Standard**

The Court will examine the issues in the Motion using the general standard set forth in Federal Rule of Civil Procedure 26 ("Rule 26"). Rule 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. Information need not be admissible in evidence to be discoverable. Id. However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Finally, the Court is mindful of the imperative that the Federal Rules of Civil Procedure be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added); see also Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (a court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").

Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). Even so, the scope of discovery is not without limits as Rule 26(b) provides discovery is limited to information that is relevant to a claim or defense in the lawsuit *and* proportional to the needs of the case. The party seeking to compel discovery "has the initial burden of demonstrating relevance" under Rule 26. See Integon Preferred Ins. Co. v. Saavedra, 2019 WL 4228372, at *2 (C.D. Cal. July 12, 2019) (citations omitted). Thereafter, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Sullivan v. Prudential Ins. Co. of Am., 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

**Background Summary and the Parties' Positions on the Motion to Compel**

In this multidistrict litigation, plaintiffs allege the following: certain defendants in this action -- referred to as the "ZF entities" or "ZF" -- manufactured airbag control units ("ACU") that were installed in over 15 million vehicles. The ACU's "brain" is "an application-specific integrated circuit ('ASIC') called the DS84." (ECF No. 501-1 at 4). The ACUs have a "deadly defect": the DS84 ASIC "is too weak to withstand bursts of electricity that occur in certain types of moderate and severe frontal crashes." (Id.). This electrical overstress ("EOS") can prevent a vehicle's airbags and seatbelts from deploying during a crash. (Id.).

Plaintiffs allege that from 2005 to 2008, defendant ST worked closely with various ZF entities and ST's affiliate in Italy to design the DS84 ASIC, and was responsible for selling over ten million DS84 ASICs to ZF. Plaintiffs further allege that defendant ST's other affiliate in Malaysia manufactured the DS84 ASIC so defendant ST could deliver on its sales to ZF, and that defendant ST coordinated with the foregoing companies to identify electrical overstress as the cause of DS84 ASIC malfunctions in crashes with airbag and seatbelt failures. (ECF

No. 501-1 at 4-5).

Plaintiffs' pleading accuses defendants of conspiring to conceal the alleged ACU defect from consumers and the NHTSA. As a result of this deception, plaintiffs allege they suffered injury when buying or leasing a class vehicle because, due to the alleged defect, each plaintiff failed to receive a vehicle whose value was commensurate with its price. (ECF No. 396 at 74-75). Plaintiffs assert RICO claims, as well as violations of state laws, against defendant ST, an entity that plaintiffs allege played an "essential role in the design and sale of the defective component part at the center of this litigation." (ECF No. 501-1 at 5).

On February 9, 2022, the District Judge issued a 178-page order ruling on various defendants' motions to dismiss, sustaining plaintiffs' RICO claims against defendants Hyundai Motor America, Kia Motors America, and FCA US LLC, and dismissing all claims against defendant ST with leave to amend. (ECF No. 396). On May 26, 2022, plaintiffs filed a 1335-page Consolidated Amended Complaint, again alleging claims against defendant ST. (ECF No. 477). The District Judge set August 2, 2022, as the deadline for ST to file a motion to dismiss the Consolidated Amended Complaint, and to file a motion to stay discovery. (ECF No. 504).

The Motion to Compel seeks compliance with RFP Nos. 31, 32, and 33. As plaintiffs explain, these particular requests collectively ask defendant ST to produce "'failure analysis' reports that show when and whether DS84 ASICs malfunctioned due to electrical overstress." (ECF No. 501-1 at 5). Describing such reports as "critically relevant to the ACU defect at the heart of this litigation," plaintiffs assert that there is "no real dispute" that defendant ST authored written failure analyses about events involving electrical overstress of DS84 ASICs. Plaintiffs acknowledge they received two such reports in September 2020 that had been provided to the NHTSA in 2018. (Id. at 5, 11). As described by plaintiffs, the reports analyze and confirm electrical overstress in the DS84 ASICS of several Toyota and Hyundai vehicles. The reports also identify several ST defendant employees "who will be able to testify as fact witnesses about such analyses." (Id. at 11). Plaintiffs contend the two failure analyses reports in their possession "barely scratch the surface," as discovery documents produced by other defendants show that defendant ST possesses DS84 failure analyses for at least fourteen various crashes, crash tests, or other "field incidents" that occurred during 2011 to 2017. Although excerpts of the fourteen analyses have been produced, plaintiffs urge further production is needed, as the individuals who authored the analyses are only identified in defendant ST's original, complete reports. (Id. at 11-14). Plaintiffs further assert that reports responsive to the discovery requests concern more than just airbag failures, as the Consolidated Amended Complaint broadly defines the alleged ACU defect as "the vulnerability of the DS84 ASIC to damage from transient electricity." (ECF No. 508 at 2). Based on this expanded definition that does not limit the alleged defect to airbag non-deployment, plaintiffs argue production should not be limited to airbag failures that plaintiffs themselves experienced. In other words, any failure analysis reports that shed light on the vulnerability of the DS84 ASIC in the class vehicles are relevant, whether or not those analyses address airbag failures. (Id. at 2).

As for defendant ST's objections, plaintiffs urge the Court to overrule them as baseless. In particular, plaintiffs assert that not only are the requested reports critical to whether the DS84 ASICs/ACUs are defective -- a dispositive fact for each of plaintiffs' claims -- but the proportionality factors set forth in Rule 26 also weigh in favor of production. (ECF No. 501-1 at 22). In particular, the issues at stake in this lawsuit are very important because the ACU defect relates to vehicle safety; the amount in controversy is "massive" as billions of dollars in compensatory damages are at stake; defendant ST has far greater access to the requested reports than plaintiffs; the burden or expense of the requested production does not outweigh the likely benefit of this information; and defendant ST has far greater resources than plaintiffs. (Id. at 22-26). Plaintiffs point out that because defendant ST maintains its written failure analyses in document repositories, including databases and/or electronic folders, the reports can be located via key word searches. Since using a key word search for document discovery is common practice, plaintiffs suggest the following steps for defendant ST to follow: (1) use a search term, such as "DS84," in the "customer part number" information field to limit the potentially responsive documents to those

that concern the DS84 ASIC; (2) run specific key word searches targeting responsive concepts, tests, and signs of electrical overstress (such as "EOS," "electrical overstress," "transient," "decap," "decapsulation," "die level," "curve trace," "burn," "fatigue," and "delamination"); and (3) produce all documents located as a result of the foregoing key word searches. (Id. at 24).

Addressing defendant ST's argument that the relevant time period for responsive documents should align with the applicable statute of limitations, plaintiffs counter that ST's earlier actions are relevant to events occurring later within the statute of limitations time span, as ST began its work on the DS84 ASIC in 2005 and continuously sold the DS84 ASIC for use in class vehicles between 2007 and 2019. (Id. at 26-27). Plaintiffs also challenge defendant ST's objection as to the geographic scope of the requests. In the Consolidated Amended Complaint, plaintiffs reference alleged crashes, crash tests, and inadvertent airbag deployments in Canada, China, Japan, Spain, Portugal, Turkey, and Morocco. (ECF No. 501-1 at 28). As both foreign and domestic DS84 ASICs share the same alleged design flaw, plaintiffs contend that foreign failure analysis reports will provide relevant evidence concerning the alleged defect. Plaintiffs further assert that foreign reports will confirm a ZF entity made misleading statements to the NHTSA about foreign incidents involving the ACU defect as part of the fraudulent scheme at the center of plaintiffs' RICO claims. (Id. at 28).

In opposing the Motion to Compel, defendant ST argues the document requests at issue suffer from numerous procedural and substantive defects. In particular, the Requests for Production served in August 2020 became moot after the District Judge dismissed the claims against ST in February 2022. Furthermore, even if the requests are not considered moot, the Motion to Compel should still be denied as premature given that after ST was served with the Consolidated Amended Complaint, plaintiffs ignored the applicable time limits for discovery (i.e., discovery may commence 21 days after the date a pleading is served, the producing party then has 30 days to respond, and after the response deadline has passed the parties can confer about any objections). (ECF No. 501-1 at 7, 37-38). Given plaintiffs' voluminous Consolidated Amended Complaint, defendant ST asserts a right to review the pleading before having to engage in document gathering and production, as the amended claims against ST may again end up being dismissed. Accordingly, defendant ST states that its document production, if ordered, should be delayed to allow adequate time to file a response to the Consolidated Amended Complaint and a motion to stay discovery. (Id. at 40-41).

In addition to procedural defects, defendant ST contends the RFPs seek documents that are irrelevant and overbroad, as plaintiffs are requesting information that goes well beyond their pleaded allegations of airbag non-deployment. ST explains that plaintiffs' claims "stem from a theory of economic damages only, based on their vehicles' supposed diminution of value because of some potential that certain vehicles sold in the U.S. between 2010 and 2019 *might* not deploy an airbag in certain, rare situations because the DS84 ASIC *might* fail during certain crashes." (ECF No. 501-1 at 42 (emphases in original)). Plaintiffs' document requests exceed their theory of the case by seeking all failure analysis reports, including reports regarding incidents in which an airbag deployed inadvertently, without regard to whether the electrical overstress incidents took place in the United States or a foreign country, and without regard to when such incidents took place. Defendant ST argues that, if required, production should be limited only to failure reports regarding electrical overstress events in (1) purported domestic class vehicles (excluding all vehicles located outside the United States), (2) with reported airbag non-deployment or seatbelt non-activation (excluding incidents of inadvertent deployment), (3) from October 2014 to the present (i.e., six years from plaintiffs' October 2020 filing against defendant ST which exceeds the four-year limitations period for plaintiffs' claims), and (4) addressing reported field events (i.e., actual incidents or crashes). (Id. at 43-48).

**Analysis**

As a threshold matter, the Court rejects defendant ST's mootness argument. Although the claims against ST were

dismissed in February 2022, the District Judge granted leave to amend. Plaintiffs subsequently filed a Consolidated Amended Complaint that appears to assert similar claims and allegations against ST. Accordingly, defendant ST is once again a party to this lawsuit, and the previously-served discovery requests are not moot.[2] See Ocean Garden Prod. Inc. v. Blessings Inc., 2020 WL 4284383, at *4 (D. Ariz. July 27, 2020) (dismissal with leave to amend did not render discovery requests permanently moot).

The Court has carefully reviewed the parties' filings in connection with the Motion to Compel, and concludes that RFP Nos. 31, 32, and 33, as limited by the Court below, seek records that are relevant to plaintiffs' claims regarding the alleged ACU defect and are proportional to the needs of the case. Plaintiffs allege that from 2005 to 2008, defendant ST worked closely with other defendants to design the DS84 ASIC. Defendant ST then sold over ten million DS84 ASICs to ZF, which were then used in ACUs and, in turn, installed in millions of vehicles. The DS84 ASICs are allegedly defective because of their vulnerability to electrical overstress, which can occur during a crash and cause the ACU to fail, preventing the deployment of airbags or seatbelts. Plaintiffs allege defendants purposefully concealed this dangerous defect. Based on the foregoing, to the extent the failure analysis reports as sought by these RFPs address DS84 ASIC malfunctions due to electrical overstress with respect to airbags and seatbelts (including both non-deployment and inadvertent deployment, as the allegations in the amended pleading reference both), such documents are relevant and must be produced, as they could shed light on the scope of the alleged defect and the extent of the risk of airbag and seatbelt failures, identify which ST employees conducted the analyses and/or authored the reports, and may additionally show when and to what extent defendants were aware of the alleged defect. Additionally, the Court agrees with plaintiffs that the document requests should not be limited to only analyses of collisions and other incidents. Rather, to the extent the DS84 ASICs were subjected to testing to assess the effect of electrical overstress on airbag and/or seatbelt functioning, any reports addressing such tests are also relevant and must be produced. To the extent, however, any reports address electrical overstress and DS84 ASICs but do not involve or concern airbags and/or seatbelts, the Court determines that any document request asking for such reports is overbroad, as this information would have little to no bearing on plaintiffs' claims.

The Court next considers the relevant time period for this document production. Based on the parties' arguments and a review of the Consolidated Amended Complaint, the Court determines that the failure analysis reports (with the limitations described above) are discoverable even if they were drafted before the limitations period commenced, as this discovery has bearing on important issues, such as confirming the existence of the ACU defect and explaining its impact on the safety of airbags and seatbelts, identifying the employees of defendant ST who conducted the analyses, and establishing when defendants learned of the defect. Accordingly, production of such reports is warranted for the period starting in 2008 (when the design process of the DS84 ASIC concluded), to October 2020 (when this action against defendant ST was filed). Regarding geographic

---

[2] The Court notes defendant ST's assertion that the challenged discovery, served in August 2020, relates only to plaintiffs' lawsuit filed in May 2020 in the Central District of California, which was ultimately dismissed for lack of jurisdiction as to defendant ST. In October 2020 -- after the at-issue document requests were served -- plaintiffs filed a lawsuit in the Eastern District of Michigan, naming ST as a defendant. The District Judge concluded there was jurisdiction over ST in the Michigan case. (See ECF No. 501-1 at 34-35). To the extent defendant ST asserts the document requests were permanently mooted by its dismissal from the California action, the Court disagrees. As ST is currently named as a defendant in the Consolidated Amended Complaint, and taking into account the fact that MDLs are created in part to "eliminate duplicative discovery" (ECF No. 1 at 2), the Court is not persuaded that the dismissal of defendant ST from the California action permanently rendered plaintiffs' discovery requests moot. Nor is the Court convinced that the timing of plaintiffs' Motion to Compel renders the Motion defective, given that the discovery was propounded in August 2020 and the parties have conferred numerous times regarding the document requests. (Id. at 32).

limitations, the Amended Consolidated Complaint alleges that defendants were notified about various incidents in foreign countries involving defective ACUs. To the extent any failure analysis reports address events (i.e., collisions or incidents), as well as testing (as described above), that took place in foreign countries during the relevant time period, such reports are discoverable as they also provide further insight regarding the scope of the ACU defect and regarding when, and to what extent, defendants were aware of the defect. Accordingly, defendant ST must produce all responsive failure analysis reports in its possession, custody, or control that address foreign collisions/incidents or testing, consistent with the limitations set forth above.

In reaching this determination, the Court has considered and overruled defendant ST's objections. Although defendant ST apparently intends to file a motion to dismiss and a motion to stay discovery, the deadline for filing the motions is not until August 2, 2022, and to date neither motion has been filed. Moreover, defendant ST has not set forth any detailed facts showing that moving forward with the document production at this time would be unduly burdensome with respect to labor and/or cost. See Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."); see also Apple Inc. v. Samsung Electronics Co. Ltd., 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases, holding that 'the technical burden . . . of creating a new dataset for the instant litigation does not excuse production.'"). In any event, the Court notes that "[d]efendants routinely respond to discovery prior to disposition of a motion to dismiss." See Sonneveldt v. Mazda Motor of Am., Inc., 2021 WL 4814990, at *2 (C.D. Cal. May 4, 2021). Even if defendant ST's anticipated motion to dismiss is ultimately granted, this would not necessarily eliminate the need for discovery, as numerous claims against other defendants remain active -- claims that, at least to some extent, could potentially still involve defendant ST, given ST's role regarding the DS84 ASIC with respect to design and sales, as well as ST's written analyses addressing electrical overstress malfunctioning. Under these circumstances, even if dismissed from the case, defendant ST may still be subject to third-party discovery. (See ECF No. 454 (plaintiffs' motion to compel defendant ST to comply with subpoena for documents must be filed in the Eastern District of Michigan)).

Based on the foregoing, plaintiffs' Motion to Compel is **granted in part as modified by the Court.** Defendant ST is **ordered** to search for all failure analysis reports in its possession, custody or control that are responsive to plaintiffs' RFP Nos. 31, 32, and 33, consistent with the Court's limitations set forth above and excluding the two failure analysis reports plaintiffs have already received. **No later than September 2, 2022,** defendant ST is **ordered** to produce all responsive reports, along with a declaration signed under penalty of perjury by an authorized representative of defendant ST that a thorough search was conducted of all documents in defendant ST's possession, custody, or control, and that all responsive failure analysis reports have been produced. The declarant must also detail the procedures defendant ST employed to search for the responsive reports, and the extent of the search. To the extent the Court's Order requires defendant ST to produce documents that contain confidential information, the governing Stipulated Protective Order adequately addresses this issue. (ECF No. 104).

IT IS SO ORDERED.

cc:     Counsel of Record

Initials of Deputy Clerk     ch     