1   Roland Tellis (SBN 186269)
    rtellis@baronbudd.com
2   **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
3   Encino, CA 91436
    Telephone: 818.839.2333
4   Facsimile: 214.520.1181

5   David S. Stellings (*pro hac vice*)
    dstellings@lchb.com
6   **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
7   250 Hudson Street, 8th Floor
    New York, New York 10013-1413
8   Telephone: 212.355.9500
    Facsimile: 212.355.9592

9

10  *Co-Lead Counsel for Plaintiffs*

11  (additional counsel listed below)

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16

17  *In re ZF-TRW Airbag Control Units*      MDL No. 2905
    *Products Liability Litigation*
18                                           Case No. 2:19-ml-02905-JAK-FFM
19  ALL CASES
                                             **DISCOVERY MATTER**
20
                                             **Joint Stipulation Regarding Plaintiffs'**
21                                           **Motion to Compel STMicroelectronics,**
                                             **Inc. to Produce DS84 ASIC Failure**
22                                           **Analyses**
23

24

25         Plaintiffs, by and through Co-Lead Counsel, hereby respectfully submit

26  Plaintiffs' and STMicroelectronics, Inc.'s Joint Stipulation Under L.R. 37-2.1

27  Regarding Plaintiffs' Motion to Compel STMicroelectronics, Inc. to Produce DS84

28  ASIC Failure Analyses.

i

# **Table of Contents**

I.   Plaintiffs' Introductory Statement ........................................................ 1

II.  STMicroelectronics, Inc.'s Introductory Statement ............................... 4

III. Plaintiffs' Statement ............................................................................. 6

    A. Background ...................................................................................... 7

        1. ST USA possesses written failure analyses that contain detailed evidence showing DS84 ASICs malfunctioned due to the alleged defect that gives rise to Plaintiffs' claims. .......................................... 7

        2. Plaintiffs have requested, and ST USA refused to produce, the written failure analyses. .................................................................... 11

    B. Legal Standard ................................................................................ 15

    C. Legal Argument .............................................................................. 18

        1. Plaintiffs have demonstrated the withheld failure analyses are relevant to their claims. ............................................................... 18

        2. Discovery of failure analyses is proportionate to the needs of the case. 18

        3. The Court should overrule ST USA's objection to the relevant time period. ........................................................................................ 23

        4. The Court should overrule ST USA's objection to the geographic scope of Plaintiffs' requests. ........................................................ 25

        5. ST USA's incorrect assertion that it has not "appeared" in this litigation is not a valid objection to production. ...................................... 26

        6. ST USA's objection to producing documents because ZF may also have them is invalid. ............................................................................ 28

        7. ST USA's confidentiality objection is invalid. ............................... 28

        8. Plaintiffs have complied with the meet-and-confer requirement. .......... 29

    D. Conclusion ...................................................................................... 30

IV.  STMicroelectronics, Inc.'s Statement .................................................. 30

    A. Background ...................................................................................... 30

        1. ST Inc. was fully dismissed from this case in February 2022 ............... 30

        2. Plaintiffs repeatedly ignore discovery rules. .................................. 31

        3. Plaintiffs misrepresent the Court's statements regarding discovery during dismissal briefing. .............................................................. 33

        4. Plaintiffs make numerous inaccurate statements about the litigation and

ii

facts underlying it. ...................................................................34

B. ARGUMENT .............................................................................34

   1.  The dismissal of ST Inc. mooted Plaintiffs' prior, pending discovery requests against it. ..........................................................34

   2.  Plaintiffs' Motion to compel is premature, as Plaintiffs yet again failed to follow the procedural rules for discovery. ...........................................36

   3.  ST Inc. is entitled to respond to the Amended Complaint and move to stay before discovery proceeds. ...............................................37

   4.  Plaintiffs' discovery requests and Motion to Compel seek information that is irrelevant to their claims, overbroad, and not fairly limited in time or scope. .........................................................39

   5.  ST Inc. should be given adequate time to search for, gather, and produce documents. .....................................................45

C. Conclusion .............................................................................46

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1   **I.       Plaintiffs' Introductory Statement**

2           This litigation concerns more than 15 million Class Vehicles that contain

3   airbag control units ("ACUs") made by the ZF Defendants.[1] These ACUs have a

4   deadly defect: the ACU's brain, an application-specific integrated circuit ("ASIC")

5   called the DS84, is too weak to withstand bursts of electricity that occur in certain

6   types of moderate and severe frontal crashes.[2] This defect can cause the ACU to fail

7   during a head-on collision, which in turn can cause the vehicle's airbags and

8   seatbelts not to activate during the crash. The Class Vehicles that contain this defect

9   represent some of the most established automobile brands in the world, including

10  Honda, Toyota, FCA (Chrysler), Hyundai, Kia, and Mitsubishi.

11          As the Court recognized in its February 9, 2022 Order on Defendants'

12  Motions to Dismiss: "It is alleged that all ACUs that contain the DS84 ASIC . . . are

13  defective due to their particular vulnerability to a phenomenon called 'electrical

14  overstress' ('EOS')." ECF 396 at 5. The Court specifically held the "Alleged

15  Defect" was "the vulnerability *of the DS84 ASIC* to damage from transient

16  electricity," which "can prevent deployment of the airbags and seatbelts during a

17  collision." *Id.* (emphasis added).[3]

18          Defendant ST Microelectronics, Inc. ("ST USA") is the company that sold

19  well over ten million DS84 ASICs to ZF Active Safety and Electronics US LLC. It

20  also worked closely with Defendants ZF Automotive US Inc., ZF Active Safety and

21  Electronics US LLC, and ZF Passive Safety Systems US Inc. and its affiliate

22  STMicroelectronics, S.r.l. ("ST Italy") to design the DS84 ASIC between 2005 and

---

[1] The ZF Defendants are the entities identified in paragraph 26 of the Consolidated Amended Complaint, ECF 477.

[2] Transients can also occur when the vehicle is not crashing. *See* ECF 477 at ¶¶494-497.

[3] The Court also held: "the CAC alleges that 'ZF TRW ACUs with the DS84 ASIC have a dangerous defect,' in that they 'are much more vulnerable to bursts of electricity than are other ACUs.' . . . All Class Vehicles have a ZF TRW ACU with a DS84 ASIC. This is sufficient to state that the Alleged Defect is present in all Class Vehicles." *Id.* at 99.

1

2008. Its other affiliate, STMicroelectronics SDN BHD ("ST Malaysia"), manufactured the DS84 ASIC so ST USA could deliver on its sales to ZF Active Safety and Electronics US LLC. ST USA also coordinated with these companies to identify electrical overstress as the cause of DS84 ASIC malfunctions in crashes with airbag and seatbelt failures. Given ST USA's essential role in the design and sale of the defective component part at the center of this litigation, Plaintiffs bring claims against ST USA under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and several state laws.

On March 21, 2022, the Court "strongly advise[d] the parties not to sit idly by while potential motions to dismiss are being drafted and/or litigated because it's quite possible that once the pleadings are settled, the discovery deadlines would be fast upon you." 3/21/22 H'rg Tr. 13:3-6. Consistent with this guidance and the Federal Rules of Civil Procedure, Plaintiffs seek to move discovery against ST USA forward. Because ST USA created documents that are critically relevant to the ACU defect at the heart of this litigation, it's very important that ST USA participate in the discovery process mandated by the Federal Rules.

Plaintiffs' motion to compel targets perhaps the most relevant category of documents in this case: ST USA's "failure analysis" reports that show when and whether DS84 ASICs malfunctioned due to electrical overstress. These documents are highly relevant to all of Plaintiffs' claims because every claim is based on the susceptibility of the DS84 ASIC to failure due to electrical overstress. Of course, analyses of these types of failures are responsive to the Requests for Production ("RFP") that Plaintiffs served on ST USA in August 2020, nearly two years ago.

Following the Court's denial of Defendants' motions to stay on August 20, 2021, Plaintiffs met and conferred with ST USA several times over the course of more than nine months about ST USA's improper objections to Plaintiffs' August 2020 RFP that required production of the written failure analyses in its possession. On February 9, 2022 the Court dismissed Plaintiffs' claims against ST USA, largely

1  because the Court found that Plaintiffs had not adequately specified which ST

2  corporate entity had engaged in each alleged act.  Between February 9 and May 26

3  of this year, ST USA refused to engage in any party discovery until Plaintiffs filed

4  their amended complaint, so Plaintiffs sought the same failure analyses by third-

5  party subpoena on ST USA. Over *ten* months of lengthy telephonic meet and

6  confers, ST USA has never once committed to search for and produce responsive

7  written failure analyses in response to any of Plaintiffs' discovery requests, even

8  now when there are indisputably live claims against the company.

9       In light of this long history of obstruction by ST USA, Plaintiffs expressly

10  warned ST USA on a March 21, 2022 telephone call that they would promptly

11  initiate motion practice about their party discovery requests once they filed their

12  amended complaint. During that telephone call, Plaintiffs specifically noted that ST

13  USA had never responded to discovery demands on a pace consistent with Local

14  Rule 37, which provided ST USA with ten days to disclose its final positions on

15  documents requests following receipt of a Rule 37-1 correspondence. Plaintiffs

16  noted that, going forward, they would require strict compliance with Local Rule 37,

17  given ST USA's repeated refusals to cooperate in good faith by failing to

18  voluntarily produce documents of indisputable relevance to Plaintiffs' claims.

19       Because ST USA refused to commit to production of any responsive failure

20  analyses during a Rule 37 conference held on June 6, 2022, Plaintiffs respectfully

21  request that the Court order ST USA to produce reports in its possession, custody,

22  or control describing the failure analysis of DS84 ASICs for signs of electrical

23  overstress. Because there will likely be fewer than 1,000 responsive analyses and

24  because ST USA has had this request for almost two years, the Court should issue

25  an order that compels ST USA to complete its production by August 30, 2022. This

26  proposed deadline falls six days after the two-year anniversary of the service of

27  Plaintiffs' document requests on ST USA. In this context, ST USA has had more

28  than enough time to collect responsive failure analyses.

## II.      **STMicroelectronics, Inc.'s Introductory Statement**

On May 26, 2022, Plaintiffs filed their 1,355-page Consolidated Amended Class Action Complaint together with a 458-page complaint in the underlying *Adams* case. The very next day, Plaintiffs sought to meet and confer with ST Inc. about the subject of this Motion to Compel—even though their prior discovery requests were mooted, and even though ST Inc. has not yet responded to the Amended Complaint and need not do so until the stipulated August 2, 2022 deadline to which Plaintiffs agreed. Plaintiffs' effort to immediately pursue that discovery now while ST Inc. is still evaluating Plaintiffs' Amended Complaint is nothing more than a continuation of Plaintiffs' effort to harass ST Inc. And because their prior discovery requests are mooted by the dismissal of all claims against ST Inc. in February, there is no properly pending discovery for Plaintiffs to move to compel compliance with. For this reason, Rule 37-2 is inapplicable.

Even if this Court permits Plaintiffs to revive their prior discovery requests against ST Inc., it should not have to participate in that discovery until it has responded to Plaintiffs' Amended Complaint. If Plaintiffs' prior discovery is treated as re-served concurrent with their new pleading against ST Inc., this Motion should still be denied because Plaintiffs have ignored the timing limitations contained in Federal Rules 16, 26, and 34, which only allow a party to serve discovery 21 days after serving a pleading, and which the receiving party then has 30 days to respond to.  After that time, Plaintiffs can initiate a Rule 37 Motion, if necessary.

Finally, if the Court does require production in advance of ST Inc.'s response to the Amended Consolidated Complaint, that production should be tailored only to failure analysis reports that refer to airbag non-deployment events that purportedly occurred in field events in the United States within a purported Class Vehicle and within the last six years—not all reports from everywhere in all of time.

***Plaintiffs fail to properly pursue discovery against ST Inc.—and this Motion is just the most recent example.*** Since ST Inc. was belatedly joined to this case well

4

1   after every other defendant, Plaintiffs have repeatedly failed to follow the rules to

2   obtain discovery against it—a pattern of which this Motion is yet another example.

3       Though other Defendant parties were sued in 2019, Plaintiffs did not attempt

4   to bring claims against ST Inc. until a year later in May 2020 (which were then

5   dismissed in favor of a new filing Plaintiffs made in October 2020). Plaintiffs then

6   served their Requests for Production on ST Inc. on August 24, 2020, and ST Inc.

7   timely served its Objections and Responses on September 23, 2020. Then, for a full

8   year (until September 2021), Plaintiffs never challenged or sought to meet and confer

9   about those responses. Though Plaintiffs contend they waited until what they call

10  "the Court's denial of *Defendants'* motions to stay on August 20, 2021," ST Inc.

11  *never filed or joined* that motion to stay.

12      And despite Plaintiffs' claim, ST Inc. has never "obstructed" discovery. When

13  it was a party, it actively participated and produced tens of *thousands* of pages of

14  documents, and made required disclosures. That effort only ceased when the Court

15  dismissed all claims against ST Inc. Then, Plaintiffs sought an extension of time to

16  re-plead while they pursued unsuccessful third-party discovery against ST Inc. in this

17  Court, ultimately taking more than three months before re-filing. There is no basis

18  for Plaintiffs to attribute their own lack of diligence to ST Inc.

19      ***ST Inc. is entitled to respond to the Amended Complaint and move to stay***

20  ***discovery.*** Plaintiffs should not be permitted to seek additional discovery against ST

21  Inc. until after it responds to Plaintiffs' Amended Complaint and the Court considers

22  ST Inc.'s anticipated Motion to Stay. That motion to stay should be granted,

23  particularly because "The purpose of [Rule] 12(b)(6) is to enable defendants to

24  challenge the legal sufficiency of complaints ***without*** subjecting themselves to

25  discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.

26  1987) (emphasis added). The better course is to first "determine whether there is any

27  reasonable likelihood that plaintiffs can construct a claim before forcing the parties

28  to undergo the expense of discovery." *Id.* This applies with particular force to ST Inc.

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1  given that every claim Plaintiffs allege against it in their new pleading was previously

2  dismissed, many for incurable defects.

3      ***Plaintiffs' Motion to Compel is substantively deficient and seeks documents***

4  ***not relevant to their case; any permitted discovery should be narrowly tailored.***

5  Even if this Court were to consider it, Plaintiffs' Motion remains substantively

6  deficient just as its prior Motion to Compel was. Plaintiffs' overbroad requests seek

7  information relating to hypothetical injury theories from places and vehicles not

8  represented in the supposed class or by the representative Plaintiffs. In this, Plaintiffs

9  fail to make the required showing that the failure analyses they seek bear substantial

10  similarity to the defect theory they advance. *White v. Ford Motor Company*, 312 F.3d

11  998, 1009 (9th Cir. 2002) (only substantially similar events are relevant to show a

12  defect or notice of the defect). Indeed, the requests should be tailored because

13  Plaintiffs are not entitled to this limitless fishing expedition. "Discovery must be

14  narrowly tailored . . . and must not be a fishing expedition." *Hightower v. JPMorgan*

15  *Chase Bank, N.A.*, No. CV111802PSGPLAX, 2012 WL 12878310, at *1 (C.D. Cal.

16  July 30, 2012) (quotation and citation omitted).

17      To the extent any production is required in advance of ST Inc.'s response to

18  the Amended Consolidated Complaint, that production should be limited to reports

19  (i) that reflect purported occurrences in field events in the United States (not

20  worldwide occurrences); (ii) that relate to nondeployment of airbags or seatbelt

21  pretensioners (and not other hypothetical failures of the ZF-TRW ACUs, like

22  inadvertent deployment) within Class Vehicles; and (iii) for the six years prior to

23  Plaintiffs' filing of their October 2020 suit against ST Inc.—not the seventeen years

24  of production they seek.

25      For all of these reasons, Plaintiffs' Motion should be denied.

26  **III.**    **Plaintiffs' Statement**

27      *All* of Plaintiffs' claims in this matter go to the existence of a defect that

28  causes the DS84 ASIC to fail due to EOS. Accordingly, any "failure analyses" of

DS84 ASICs for signs of EOS are critical to this issue because they will shed light on why the DS84 ASIC failed in specific instances. ST USA has refused to produce them, so Plaintiffs seek an order to compel it to do so.

### A.    Background

####   1.    ST USA possesses written failure analyses that contain detailed evidence showing DS84 ASICs malfunctioned due to the alleged defect that gives rise to Plaintiffs' claims.

ST USA does not dispute that it supplied the ZF Defendants with all the DS84 ASICs they used to make the at-issue ACUs for Class Vehicles. ST USA obtained these DS84 ASICs from ST Malaysia, a closely-related subsidiary that manufactures chips to fulfill ST USA's orders. *See* ECF 477 at ¶¶558-559.

Plaintiffs allege that ST USA and its affiliate, ST Italy, jointly designed the DS84 ASIC with ZF's input. *Id.* at ¶¶544-556. The evidence supports this allegation. ZF's sworn interrogatory responses identify several ST USA employees who attended meetings about the design of the DS84 ASIC. These ST USA employees included account manager Antonella Grimaldi, market development engineer Christopher Thibeault, account executive Frank Battaglia, field applications engineer Ingo Kissel, vice president Joseph Bolsenga, and marketing manager Roger Forchhammer, at the very least. ZF's sworn interrogatory responses also state: "Throughout 2005, 2006, and 2007, STMicro designed, tested, and modified the DS84 with ZF's input." Ex. 1 (ZF Interrog.) at 24. These responses defined "STMicroelectronics, Inc." as "STMicro" and identified no other STMicroelectronics company.[4] *Id.* at 9.

But regardless of the degree to which ST USA participated in the design of

---

[4] As part of its effort to obscure its role in the design of the DS84 ASIC and mischaracterize itself as solely an uninvolved seller of the chip, ST USA has previously made vague references to its conversations with ZF's counsel to try to explain away these interrogatory responses, but it has failed to explain why its employees (including its engineers) attended meetings about the design of the DS84 ASIC between 2005 and 2007—years before DS84 ASICs were made and sold.

1   DS84 ASIC, there is no real dispute that ST USA authored written failure analyses

2   about EOS and DS84 ASICs. ST USA produced two such reports to NHTSA in

3   2018, which it subsequently produced to Plaintiffs in September 2020 as part of a

4   108-page production of documents previously sent to the agency.

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**



**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**



Based on documents produced by ZF, FCA, and Mitsubishi, the multicompany ST quality assurance team also performed failure analyses on DS84 ASICs when ZF performed so-called returned material analyses (or "RMAs") in response to the Vehicle Manufacturer Defendants' warranty claims about malfunctioning DS84

ACUs. ZF's records identify dozens of these warranty claims. *See* Ex. 4 (ZF-MDL-1121).

### 2. Plaintiffs have requested, and ST USA refused to produce, the written failure analyses.

Three of Plaintiffs' RFP cover the written failure analyses described above. Pursuant to local rule 37-2.1, this section of the Joint Stipulation contains the complete text of the relevant requests, which Plaintiffs served on August 24, 2020, and ST USA's responses dated September 23, 2020.

During the June 6, 2022 conference of the parties pursuant to Local Rule 37, ST USA did not dispute Plaintiffs' contention that the below requests would require production of the written failure analyses, if enforced.

### a. Request 31

Plaintiffs' RFP 31 sought:

> All Documents and Communications relating to any incident (and suspected or alleged incident), crash, complaint, property damage claim, repair or replacement request, and warranty claim made by any Defendant associated with a non-deployment of airbags and/or failure of seatbelt pretensioners, unusual airbag deployment, missing Crash Data, and any other indication of possible EOS in the ZF TRW ACUs.

This request covers written failure analyses because ST USA conducted these analyses when the ZF Defendants sent to ST USA DS84 ASICs retrieved from vehicles that showed signs of ACU malfunctions, and asked ST USA to analyze the ASICs for signs of EOS.

In response, ST USA stated:

> STMicroelectronics, Inc. objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks Documents from persons or entities other than STMicroelectronics, Inc., where such Documents are not in STMicroelectronics, Inc.'s possession, custody, or control. STMicroelectronics, Inc. further objects to this Request to the extent it seeks information about any foreign

11

occurrences or communications, which are not relevant to the claims or defenses of any party in this litigation. To that extent, the Request is additionally overbroad and not proportional to the needs of the case because the Documents sought are not necessary to resolve the issues in this case, and the burden and expense of searching for and identifying such Documents outweighs any possible benefit. As worded, STMicroelectronics, Inc. is not able to identify any Documents responsive to this Request.

### b.    Request 32

Plaintiffs' RFP 32 sought:

All Documents and Communications Concerning testing and analyses conducted following incidents or crashes involving vehicles with ZF TRW ACUs, regardless of location, including vehicles with possible or confirmed EOS.

This request covers written failure analyses because they describe testing and analyses conducted following incidents or crashes involving vehicles with ZF TRW ACUs.

In response, ST USA stated:

STMicroelectronics, Inc. objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks Documents from persons or entities other than STMicroelectronics, Inc., where such Documents are not in STMicroelectronics, Inc.'s possession, custody, or control. STMicroelectronics, Inc. further objects to this Request to the extent it seeks information about foreign occurrences or communications, which are not relevant to the claims or defenses of any party in this litigation. To that extent, the Request is additionally overbroad and not proportional to the needs of the case because the Documents sought are not necessary to resolve the issues in this case, and the burden and expense of searching for and identifying such Documents outweighs any possible benefit. STMicroelectronics, Inc. further objects to this Request as vague and ambiguous in its use of the undefined term "incident." As worded, STMicroelectronics, Inc. is not able to identify any Documents responsive to this Request.

### c.     Request 33

Plaintiffs' RFP 33 sought:

> All Documents and Communications relating to any root cause analysis Concerning EOS in ZF TRW ACUs or to DS84 ASICs.

This request covers written failure analyses that identify EOS as the root cause for DS84 ASIC malfunctions.

In response, ST USA stated:

> STMicroelectronics, Inc. objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks Documents from persons or entities other than STMicroelectronics, Inc., where such Documents are not in STMicroelectronics, Inc.'s possession, custody, or control. STMicroelectronics, Inc. objects to this Request on the grounds that it is vague and ambiguous, including but not limited to the failure to define "root cause analysis." STMicroelectronics, Inc. further objects to this Request to the extent it seeks information about any foreign occurrences or communications, which are not relevant to the claims or defenses of any party in this litigation. To that extent, the Request is overbroad and not proportional to the needs of the case because the Documents sought are not necessary to resolve the issues in this case, and the burden and expense of searching for and identifying such Documents outweighs any possible benefit.

### d.     ST USA also raised several general objections.

ST USA also stated the following general objections:

> 1. STMicroelectronics, Inc. objects to Plaintiffs' "Definitions" and "Instructions" to the extent they seek to impose obligations with respect to discovery beyond those required by the applicable statutes, the Federal Rules of Civil Procedure, or the rules and orders of the court, and further objects to the extent that they are inconsistent with any of the parties' current or future agreed protocols for the production of documents and Electronically Stored Information ("ESI").

> 2. STMicroelectronics, Inc. objects to Plaintiffs' definition of "Communication," set forth in Paragraph 3 of Plaintiffs' "Definitions," because it is vague, confusing, overly broad, and unduly burdensome. By

13

way of example only, the definition purports to include the transmittal of information through things like "understandings" which is unhelpful in defining the documents sought through a request for production.

3. STMicroelectronics, Inc. objects to Plaintiffs' definition of "STMicro" as including other corporate entities, and in particular STMicroelectronics N.V. and STMicroelectronics International N.V. Plaintiffs have stipulated, and the Court has ordered, that those entities are not subject to non-jurisdictional discovery until after resolution of the Motion to Dismiss. (*See* Dkt. 165.) Any responses below are therefore limited to documents within the possession, custody, or control of STMicroelectronics, Inc. only, and STMicroelectronics, Inc. objects to any Definition, Instruction, or Document Request ("Request") that seeks or purports to seek documents not in the possession, custody, or control of STMicroelectronics, Inc. As one example, and without limitation, STMicroelectronics, Inc. did not manufacture the DS84 ASIC within the relevant time frame.

4. STMicroelectronics, Inc. further objects to any Requests purporting to seek documents from any foreign entity to the extent that any such Request imposes obligations that conflict with any foreign or international convention, treaty, law, or regulation, including but not limited to any data protection or privacy laws.

5. STMicroelectronics, Inc. further objects to each Request because Plaintiffs have not sufficiently pleaded that the Court has jurisdiction over any of the claims pending against STMicroelectronics, Inc. (or any other STMicroelectronics entity).

6. STMicroelectronics, Inc. objects to the Requests to the extent that they call for the disclosure of non-public, private, personal, confidential, proprietary, or trade secret information that has been maintained in confidence or is legally required to be maintained in confidence. This includes any documents that are shielded from production by statutory or decisional law of the United States, the State of California, and all other relevant jurisdictions.

7. STMicroelectronics, Inc. objects to these Requests to the extent that they seek information about any foreign or international communications, which are not relevant to this litigation nor can they impact the named Plaintiffs or proposed class members, all of whose relevant transactions occurred in the United States.

14

8. STMicroelectronics, Inc. objects to the use of the terms "all" or "any," which render the Requests that use those terms unduly burdensome, overbroad, unreasonable and oppressive, and call for information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

9. STMicroelectronics, Inc. objects to these Requests to the extent they seek to improperly impose upon STMicroelectronics, Inc. the duty to interpret, construe, or speculate on various matters, including but not limited to legal documents and legal relationships, technical terms and/or standards at issue in the underlying matter or to provide responses that improperly seek legal or expert opinions or conclusions or call for speculation.

10. STMicroelectronics, Inc. objects to Plaintiffs' definition of "Document," set forth in Paragraph 7 of Plaintiffs' "Definitions," because it is overly broad, confusing, and cumbersome. The definition refers to an expansive list of things, including without limitation "negotiations," "agreements," and "inquiries," which makes every request incorporating the definition overly broad, unduly burdensome, vague, and confusing. In responding to these Requests, STMicroelectronics, Inc. ascribes the customary and ordinary legal meaning to the word "Document" as generally accompanies discovery requests.

11. STMicroelectronics, Inc. objects to Plaintiffs' definition of "ESI," "Electronically Stored Information," or "Electronic Data," set forth in Paragraph 10 of Plaintiffs' "Definitions," because it is vague, confusing, and overly broad. STMicroelectronics, Inc., along with the other Defendants, is currently negotiating stipulations with Plaintiffs that will govern the production of ESI. Thus, STMicroelectronics, Inc. objects to each Request to the extent it seeks the production of electronically stored information and correspondence before such stipulations are reached.

12. STMicroelectronics, Inc. objects to Plaintiffs' definition of "NHTSA," set forth in Paragraph 13 of Plaintiffs' "Definitions," because it is vague, overly broad, and unduly burdensome in its use of the terms "representatives" and "agents."

## B.    Legal Standard

"[T]he federal policy of discovery is a liberal one. . . . Rule 26(b)(1) . . .

provide[s] that relevant information need not be admissible at trial if the discovery

appears reasonably calculated to lead to the discovery of admissible information.

Thus, the scope of discovery under the Federal Rules of Civil Procedure is

extremely broad. The question of relevancy should be construed liberally and

discovery should be allowed unless the information has no conceivable bearing on

the case." *Fernandez v. Fisher*, No. 19-cv-6036, 2020 WL 7050570, at *2 (C.D.

Cal. Oct. 8, 2020), *review denied*, No. 19-cv-6036, 2020 WL 7775617 (C.D. Cal.

Nov. 20, 2020) (citations and quotations omitted); *see also Atzin v. Anthem, Inc.*,

No. 17-cv-176816, 2021 WL 3085327, at *2 (C.D. Cal. Jan. 13, 2021) ("Relevance

has been construed broadly to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be

in the case.") (quotations and citations omitted); *Al Indus., Inc. v. Envision TEC,*

*Inc.*, No. 11-cv-1708, 2020 WL 13200193, at *1 (C.D. Cal. Oct. 29, 2020); *In re*

*Application Pursuant 28 U.S.C. § 1782 of Japan Display Inc. v. Tianma Am., Inc.*,

No. 21-MC-374, 2021 WL 5990191, at *4 (C.D. Cal. Oct. 1, 2021).

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense and
> proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount
> in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden
> or expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The parties share the proportionality burden:  Plaintiffs must show relevance,

and Defendants must show the burden or expense of the discovery outweighs its

likely benefit. *See White v. James*, No. 16-cv-8875, 2018 WL 6174728, at *1 (C.D.

Cal. Jan. 23, 2018) ("a party claiming that a request is important to resolve the

16

issues should be able to explain the ways in which the underlying information bears on the issues" but the nonmovant should provide information substantiating excessive burden because it "ordinarily has far better information – perhaps the only information – with respect to that part of the determination") (quoting Advisory Committee Note to 2015 Amendment); *Atzin*, 2021 WL 3085327, at *2 ("The party seeking to compel discovery has the initial burden of demonstrating relevance under Rule 26. Thereafter, the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (quotations and citations omitted); *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, No. 14-cv-01232, 2017 WL 2908869, at *7 (D. Nev. July 6, 2017) ("Generally, the party opposing discovery has the burden of showing that it is irrelevant, overly broad, or unduly burdensome."). And any claim of excessive burden is just one factor to be weighed against ST USA's superior access to its failure analyses, ST USA's vast resources, the billions in dollars in damages claimed by Plaintiffs for themselves and class members, the importance of the ACU Defect and other issues in this case, and the importance of failure analyses to resolving this case.

Under Rule 34, responding parties must produce responsive documents and data within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). That means a party must search for, and produce, responsive documents and data not only in its own possession, but also that of its agents, persons over which it exercises control, and others from whom it has the right to obtain the record upon demand. *See St. Jude Med. S.C., Inc.*, 104 F. Supp. 3d 1150, 1159-1160 (D. Or. 2015); *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 15-cv-700, 2015 WL 12564315, at *3 (S.D. Cal. Dec. 2, 2015) (ordering party to obtain his own publications and presentations from third party to extent he had practical ability to do so).

C.      **Legal Argument**

1.      **Plaintiffs have demonstrated the withheld failure analyses are relevant to their claims.**

This case turns on whether ACUs with the DS84 ASIC are susceptible to electrical overstress. As this Court explained: "It is alleged that all ACUs that contain the DS84 ASIC . . . are defective due to their particular vulnerability to a phenomenon called 'electrical overstress' ('EOS')." ECF 396 at 5. The Court also held the "Alleged Defect" was "the vulnerability *of the DS84 ASIC* to damage from transient electricity," which "can prevent deployment of the airbags and seatbelts during a collision." *Id.* (emphasis added).[5] Plaintiffs' Consolidated Amended Complaint alleges the same defect with greater particularity than the prior complaint. ECF 477 at pp. 188-231.

Nothing could be more relevant to this alleged defect than written analyses showing that DS84 ASICs have actually failed due to EOS in crashes and crash tests with ACU malfunctions (such as airbag nondeployments) or other incidents (such as "inadvertent deployments" where an airbag goes off when the vehicle is not crashing). ECF 477 at pp. 195-199. Accordingly, Plaintiffs have carried their burden of showing the discovery sought is relevant.

2.      **Discovery of failure analyses is proportionate to the needs of the case.**

All six factors of Rule 26's proportionality test favor production of ST USA's failure analyses.

---

[5] The Court also held Plaintiffs allege "that 'ZF TRW ACUs with the DS84 ASIC have a dangerous defect,' in that they 'are much more vulnerable to bursts of electricity than are other ACUs.' . . . All Class Vehicles have a ZF TRW ACU with a DS84 ASIC. This is sufficient to state that the Alleged Defect is present in all Class Vehicles." ECF 396 at 99.

18

1
2
3
           **a.**     **Written failure analyses confirming the existence of a**
                       **dangerous defect are very important to the resolution**
                       **of this case.**

4      As explained above, written failure analyses of whether and when DS84

5  ASICs failed due to electrical overstress are not merely relevant to this litigation;

6  they are critical to whether the DS84 ASIC and DS84 ACU are defective, a

7  dispositive fact for every one of Plaintiffs' claims.

8
9
           **b.**     **The issues at stake in this litigation are very**
                       **important.**

10     The ACU Defect in this case is very important because it implicates the

11  performance of airbags and seatbelts in at least 15 million Class Vehicles. These

12  features are so important that Congress passed laws requiring their inclusion in all

13  passenger vehicles more than three decades ago. *See* Pub.L. 102–240 (requiring

14  airbags); Public Law 89-563 (requiring seatbelts). And, as the ZF Defendants have

15  admitted: "Safety is important to . . . consumers[.] . . . J.D. Power lists safety as the

16  most desired aspect of vehicle features." ECF 477 at ¶5.

17
18
19
20                                         attachment to FCA's September 2016

21  defect report, *available at* https://static.nhtsa.gov/odi/rcl/2016/RMISC-16V668-

22  4323.pdf (FCA admitting to three known fatalities from the ACU Defect).

23  According to NHTSA, motor vehicle crashes are the 13th leading cause of death in

24  the United States, and the leading cause of death for 11, 12, 17, 18, 19, 20, and 21

25  year olds.[6] These facts alone show the ACU Defect is important.

26  _____
    [6] NHTSA's National Center for Statistics and Analysis, Research Note Titled
27  "Motor Vehicle Traffic Crashes as a Leading Cause of Death in the United States,
    2016 and 2017," (July 2020), *available at*
28  https://crashstats.nhtsa.dot.gov/Api/Public/Publication/812927#:~:text=Motor%20v
    ehicle%20crashes%20were%20the,11%2C%20and%2017%20to%2022.

1

### c. Billions of dollars are at stake in this litigation.

2   The amount in controversy in this case is massive. An automobile is typically

3   the second-most expensive household expense in this country. *See* ECF 477 at ¶2.

4   This case involves at least 15 million vehicles, each of which originally sold for

5   tens of thousands of dollars. Working safety features are a critical component of

6   this economic value. *Id.* at ¶¶5, 1165-1166, 1457-1458. Accordingly, billions of

7   dollars in compensatory damages are at stake in this litigation. And Plaintiffs'

8   RICO claims mandate those damages be trebled. *See* 18 U.S.C. §1964(c).

9   When weighing the proportionality factors, the Court in the similar *Takata*

10  litigation held: "The amount in controversy is substantial." *In re: Takata Airbag*

11  *Prod. Liab. Litig.*, No. 15-2599, 2016 WL 5795347, at *4 (S.D. Fla. June 24, 2016),

12  *report and recommendation adopted sub nom. In re Takata Airbag Prod. Liab.*

13  *Litig.*, No. 15-md-02599, 2016 WL 5844932 (S.D. Fla. June 30, 2016) (compelling

14  production of documents). This Court should reach the same conclusion based on

15  the similar facts before it.

16

### d. ST USA has far greater access to relevant information

17  about the ACU Defect than Plaintiffs.

18  ST USA indisputably has access to more information about the ACU Defect

19  than Plaintiffs do. Plaintiffs are lay consumers who do not understand what causes

20  microchips to fail, whereas ST USA was a key participant in the design of the DS84

21  ASIC and wrote failure analyses describing highly technical and proprietary tests

22  used to confirm the DS84 ASIC failed due to EOS. This motion seeks these

23  documents because Plaintiffs lack access to this confidential information and the

24  technical know-how to replicate ST USA's proprietary tests, which require

25  specialized uses of lasers and chemicals in a laboratory environment. *See* ECF 477

26  at ¶622.

27

28

        **e.**    **The burden or expense of collecting and producing DS84 ASIC failure analyses does not outweigh their likely benefit to this litigation.**

The burden or expense of collecting and producing DS84 ASIC failure analyses is not substantial, and certainly the burden doesn't outweigh their benefit. As Plaintiffs have explained to ST USA on multiple meet and confers over the past three months, ST USA maintains its written failure analyses in document repositories, including databases and/or electronic folders, that will permit ST USA to search for all of its failure analyses by key words. The Rules of Civil Procedure recognize this practice is common. *See* Advisory Committee Notes to 2006 Amendment to Rule 26 ("Electronic storage systems often make it easier to locate and retrieve information. . . . Information systems are designed to provide ready access to information used in regular ongoing activities. . . . The volume of—and the ability to search—much electronically stored information means that in many cases the responding party will be able to produce information from reasonably accessible sources that will fully satisfy the parties' discovery needs.").

A few simple searches would allow ST USA to identify a relatively small universe of documents that are highly likely to be responsive. For example, as a first step, ST USA can search "154901" and/or DS84 in the "customer part number" information field in the data repositories ST USA uses for its failure analyses. *See* Ex. 2 (ST_INC 62) at ST_INC 63 (identifying information field); Ex. 3 (ST_INC 95) at ST_INC 96 (same). This search will limit the universe of responsive documents to those that concern the DS84 ASIC. As a second step, ST can then run keyword searches targeting responsive concepts, tests, and signs of EOS, such as: "EOS," "electrical overstress," "transient," "decap," "decapsulation," "die level," "curve trace," "burn," "fatigue," and "delamination." Once this second search is done, ST USA could immediately produce all documents hitting such terms without conducting any manual review, because technical analyses performed

21

1  by engineers (not attorneys) at the request of a contractual counterparty (ZF) do not

2  need to be reviewed for attorney-client or work-product privilege. No legal

3  privilege could ever exist for these documents, and regardless, ST USA's decision

4  to share the documents with ZF shattered any pretense of confidentiality.

5      The federal rules do not permit ST USA to refuse to run straightforward

6  searches like this to expedite its review of documents and insist upon pointlessly

7  burdensome manual review as part of a ploy to hide evidence based on meritless

8  objections. *See* Advisory Committee Notes to 2015 Amendment to Rule 26

9  ("Courts and parties should be willing to consider the opportunities for reducing the

10  burden or expense of discovery as reliable means of searching electronically stored

11  information become available."); *Ford Motor Co. v. Edgewood Properties, Inc.*,

12  257 F.R.D. 418, 427 (D.N.J. 2009) ("[i]n many settings involving electronically

13  stored information, reliance solely on a manual search process for the purpose of

14  finding responsive documents may be infeasible or unwarranted. In such cases, the

15  use of automated search methods should be viewed as reasonable, valuable, and

16  even necessary.")

17      Insofar as ST USA wishes to conduct an unnecessary layer of review for

18  responsiveness, it may voluntarily do so, but Plaintiffs' request does not impose

19  that burden. And in any event, even in a manual review the burden of reviewing a

20  few hundred analyses is not undue. Courts routinely require parties to engage in far

21  more extensive searches. *See, e.g., Green Payment Solutions, LLC v. First Data*

22  *Corp.*, 18-cv-1463, 2018 WL 6333696, at *2-3 (C.D. Cal. Oct. 30, 2018) (rejecting

23  overbroad and unduly burdensome objections and ordering party to perform an ESI

24  search on 75 custodians). "Just because complying with a discovery request will

25  involve expense or may be time consuming, does not make it unduly burdensome."

26  *Cancino Castellar v. McAleenan*, No. 3:17-cv-491, 2020 WL 1332485, at *6 (S.D.

27  Cal. Mar. 23, 2020) (citations omitted).

28

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

**f.    ST USA has much greater resources than Plaintiffs.**

Consideration of ST USA's resources and undue burden also favor compelling production. Plaintiffs are individual consumers, whereas ST USA is part of a multinational chip manufacturer. Its corporate parent earned $2 billion in net income last year and profited from the sales of DS84 ASICs in the United States and rest of the world for a decade. ST USA in particular likely earned at least $30 million from the sale of the DS84 ASIC alone.[7] *Arrow Enter. Computing Solutions, Inc. v. BlueAlly*, LLC, 2017 WL 876266 (W.D. N.C. Mar. 3, 2017) (explaining that courts look "at a party's ability to fulfill the [discovery] request, especially financially") (citing Advisory Committee Notes to 2015 Amendment to Rule 26).

**3.    The Court should overrule ST USA's objection to the relevant time period.**

ST USA's objection to the relevant time period of Plaintiffs' requests is baseless because ST USA does not dispute that its work on the DS84 ASIC began in 2005 and that it continuously sold DS84 ASICs for use in Class Vehicles between 2007 and 2019. *See, e.g., See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB, 2018 WL 340640, at *1 N.D. Cal. Jan. 9, 2018, at *4 (holding documents concerning at-issue technology were relevant to plaintiffs' claims and compelling production for nearly twenty year period from "January 1, 1999 through August 2017"); *Scherer v. FCA US, LLC*, 538 F. Supp. 3d 1002, 1006-07 (S.D. Cal. 2021) ("Defendant has not satisfied its burden of proving that the [requested] discovery, which the Court has determined is relevant to this case, is unduly burdensome or disproportional to the needs of this case.  Defendant is ordered to supplement its discovery responses accordingly.").

---

[7] Plaintiffs' review of ST Inc. invoices for the DS84 ASIC from 2014 to the present indicate that the unit price for each chip was $2.07. This unit price does not appear to vary by quantity in the invoices ST Inc. has produced. Plaintiffs estimated the value of ST Inc.'s total sales by multiplying the unit price by 15 million (a conservative estimate for the number of Class Vehicles in this matter).

23

1        As applied to the failure analyses at issue in this motion, this objection is

2   particularly baseless because, as explained above, a reasonable search process for

3   failure analyses could use unique identifiers like part numbers and the unusual

4   character string "DS84" to identify all potentially responsive failure analyses.

5   Because DS84 ASICs had the same flawed design throughout the relevant period,

6   any failure analysis of a DS84 ASIC for signs of EOS is relevant, regardless of the

7   date of its creation.

8        Insofar as ST USA objects to the relevant period based on a statute-of-

9   limitations defense, this argument fails because Plaintiffs plead Defendants'

10   fraudulent concealment tolls the statute of limitations. *See* ECF 477 at pp. 534-551.

11   And in any event, discovery is not limited by the statute of limitations because

12   earlier actions are relevant to events within the statute of limitations. *See, e.g.*,

13   *Gottesman v. Santana*, No. 16-cv-2902, 2017 WL 5889765, at *5 (S.D. Cal. Nov.

14   28, 2017) ("The statute of limitations is not a rigid barrier separating discoverable

15   information from information outside the scope of discovery."); *Hatamian v.*

16   *Advanced Micro Devices, Inc.*, No. 14-cv-226, 2015 WL 7180662, at *2 (N.D. Cal.

17   Nov. 16, 2015) ("[C]ourts allow discovery to extend to events before and after the

18   period of actual liability so as to provide context."); *Allen v. Similasan Corp.*, No.

19   12-cv-376, 2014 WL 2212120, at *2 (S.D. Cal. May 27, 2014) (noting statutes of

20   limitations is an affirmative defense that does not generally affect discovery);  *P.V.*

21   *ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 11-cv-04027, 2012 WL 676993,

22   at *3 (E.D. Pa. Mar. 1, 2012) (even where the  statute of limitations has run, "earlier

23   events . . .  may show knowledge or intent, or may otherwise be relevant to the

24   claim or defense of a party, as well as to the subject matter involved in the pending

25   action") (internal quotations and citations omitted)); *Liberty Dialysis - Hawaii LLC*

26   *v. Kaiser Found. Health Plan, Inc*., No. 17-cv-318, 2019 WL 4364383, at *7 (D.

27   Haw. Sept. 12, 2019) (appropriate time frame for discovery is keyed to relevance of

28   material).

**4.     The Court should overrule ST USA's objection to the
geographic scope of Plaintiffs' requests.**

Plaintiffs request failure analyses of both domestic and foreign DS84 ASICs
because DS84 ASICs in foreign countries had the same design flaw and same types
of malfunctions as DS84 ASICs in the United States. *See* ECF 477 at ¶¶635-639,
643-676, 687-697, 763-768, 944-955, 970-1005, 1057-1076, 1084-1091 (crashes,
crash tests, and inadvertent deployments in Canada, China, Japan, Spain, Portugal,
Turkey, and Morocco). Accordingly, foreign failure analyses will include evidence
that also show a defect in domestic DS84 ASICs and ACUs. The transnational
nature of the evidence of a defect in this case is neither surprising nor unusual,
because the laws of physics that give rise to vehicular defects are the same around
the world. *See, e.g.*, *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., &
Prod. Liab. Litig.*, No. 17-md-2777, 2018 WL 4826866, at *2 (N.D. Cal. Oct. 4,
2018) (ordering production of communications with foreign regulators about
emissions).

This basic principle is also why the Federal Aviation Administration
grounded all domestic Boeing 737 Max airplanes after a safety defect caused two of
these airplanes owned by foreign airlines to crash in Ethiopia and Indonesia, even
though no crashes occurred in the United States. ZF itself has confirmed this
principle's applicability to the ACU Defect. In August 2018, ZF submitted a Defect
Report to NHTSA in connection with the Hyundai-Kia recalls that described
observations of EOS is DS84 ACUs in Egyptian and Chinese vehicles as part of the
"chronology of all principal events that were the basis for the determination that the
defect related to motor vehicle safety" required by 49 C.F.R. 573.6(c)(6). *See* Ex. 5
(Defect Report with chronology).

Evidence of foreign DS84 ASIC failures are also relevant for another,
independent reason: ZF made misleading statements to NHTSA about foreign
incidents involving the ACU Defect as part of the fraudulent scheme at the center

25

of Plaintiffs' RICO claims against ST USA. *See, e.g.*, Ex. 6 (ZF-MDL-1310) (presentation to NHTSA stating: "this presentation covers global field incidents"); ECF 477 at ¶¶1276-1280, 1287-1288, 1321-1324, 1329-1330 (exemplar misleading statements about foreign incidents). ST USA's failure analyses of foreign DS84 ASICs will confirm these statements were misleading.

Insofar as ST USA complains that its affiliates, such as ST Italy and ST Malaysia, also possess copies of the same failure analyses, that complaint is not a valid objection. *See In Re Apple iPhone Antitrust Litig.*, No. 11-cv-6714, 2020 WL 5993223, at *5 (N.D. Cal. Oct. 9, 2020) ("A U.S. subsidiary cannot avoid the obligation to produce documents it does have by arguing that its foreign parent has more or better documents."). If ST Inc. possesses, controls, or has custody of responsive communications, their foreign or international nature is not a basis for withholding them. *See* Wright & Miller, Fed. Pract. & Pro.: Civil §2210 ("if a party has possession, custody, or control, it must produce documents and things even though the documents and things are themselves beyond the jurisdiction of the court."); *D&D Techs. (USA), Inc. v. Safetech Hardware Inc.*, No. 12-cv-1538, 2013 WL 12142955, at *1 (C.D. Cal. Nov. 8, 2013) ("That the documents are located in a foreign country does not bar their discovery."); *Ford Motor Co. v. InterMotive, Inc.*, No. 4:17-cv-11584 2020 WL 3263825, at *3 n.6  (E.D. Mich. June 17, 2020) ("if a party could so easily evade discovery by destroying its own copies and relying on . . . copies maintained by its affiliate abroad, then every United States company would have a foreign affiliate for storing sensitive documents.").

### 5. ST USA's incorrect assertion that it has not "appeared" in this litigation is not a valid objection to production.

On the June 6, 2022 meet and confer pursuant to Local Rule 37, ST USA objected to production because ST USA purportedly had not "appeared" in this litigation. This assertion is plainly incorrect, because Plaintiffs properly served a summons on ST USA and because ST USA's attorneys filed notices of appearances

1  in this litigation and never withdrew them. *See* ECF 146; 154; ECF 155; ECF 156;
2  ECF 157; ECF 158.

3      Nonetheless, ST USA persisted with its position, apparently based on the
4  purported theory that the Court's February 9, 2022 Order dismissing claims against
5  ST USA—without prejudice and with leave to amend—required the entire case to
6  restart from ground zero, despite service of formal document requests and
7  responses in 2020 and multiple meet and confers about those requests between
8  August 2020 and the present. According to ST USA, the Consolidated Amended
9  Complaint started a "new lawsuit" and ST USA must "appear" again by moving to
10  dismiss the complaint before Plaintiffs can properly move to compel.

11      ST USA's assertions are wrong. Plaintiffs did not file a new lawsuit. Instead,
12  with the Court's express leave, they amended their previously filed claims against
13  ST USA to address the deficiencies identified by the Court's February 9, 2022
14  Order. Plaintiffs' Consolidated Amended Complaint brings the same basic RICO
15  claims as their original complaint, albeit with greater particularity. *Compare* ECF
16  477-1 (RICO counts) *with* ECF 278 (Nationwide Counts 1-6).[8] In this context, no
17  further summons or service to ST USA is necessary.

18      But even if correct, none of ST USA's assertions matter under the Federal
19  Rules of Civil Procedure, because party discovery never depends on the status of
20  the pleadings or the pendency of motions to dismiss. Instead, all parties are obliged
21  to engage in document discovery after the Rule 26(f) conference takes place. *See*
22  Rule 26(d)(1) ("*Timing*. A party may not seek discovery from any source before the
23  parties have conferred as required by Rule 26(f)."). This conference took place in
24  January 2020. *See* ECF 5 (setting February 24, 2020 conference "for the purposes
25  stated in Fed. R. Civ. P. 16(a), 16(b), 16(c), and 26(f)."); ECF 80 (joint report on
26  26(f) conference).

27
28
[8] Plaintiffs' state claims also did not change materially. Plaintiffs added greater particularity to these claims and re-pled some state law claims on a state-by-state instead of nationwide basis.

27

In addition, the Court itself has confirmed repeatedly that discovery is not tied to Defendants' motions to dismiss. During the February 24, 2020 conference, Judge Kronstadt noted: "often I permit discovery to proceed while motions to dismiss are pending." 6/10/22 H'rg Tr. 37:14-15. During that conference, Judge Kronstadt permitted service of document requests shortly following service of the consolidated complaint, with full knowledge that Defendants would move to dismiss. *See id.* at 29:17-30:9. On August 20, 2021, the Court also denied Defendants' stay motions and ordered discovery to "proceed in accordance with the timing that applies under the applicable civil rules pursuant to which the pending requests were issued," despite the pendency of Defendants' motions to dismiss. *See* ECF 363 at 7. In this context, ST USA has no basis for suggesting that it must somehow "appear" in this case (again) by moving to dismiss (again) before it has obligations to comply with the Federal Rules of Civil Procedure and engage in discovery on Plaintiffs' Rule 34 requests. Whatever arguments ST USA has for further delaying discovery must be made in a new motion to stay, if at all.

### 6.    ST USA's objection to producing documents because ZF may also have them is invalid.

During the June 6, 2022 Local Rule 37 conference, ST USA objected to producing failure analyses because ZF *may* also have copies of them. This objection is not valid, because both ZF and ST USA could make this objection based on each other's potential possession of the same documents, and no one would ever produce the relevant documents. Instead, as parties to this litigation, both ZF and ST USA must produce the responsive failure analyses in their possession.

### 7.    ST USA's confidentiality objection is invalid.

ST USA's objection to producing confidential or proprietary information is invalid because the protective order in this case states: "Absent a further Court order, discovery cannot be withheld on the basis of confidentiality alone." ECF 104 at 3. Because no separate Court order protects the materials covered by ST Inc.'s

1   sixth general objection, the objection is invalid. *United Artists Corp. v. United*

2   *Artist Studios LLC*, No. 19-cv-00828, 2019 WL 9049050, at *5 (C.D. Cal. Oct. 7,

3   2019) ("[C]onfidentiality is not a basis for withholding information in the ordinary

4   course of discovery, especially with a protective order in place to restrict access and

5   use."); *Farber*, 234 F.R.D. at 191 (finding privacy concerns alleviated by a

6   "carefully drafted protective order").

**8.**   **Plaintiffs have complied with the meet-and-confer**

**requirement.**

9       Over the course of nine months, Plaintiffs wrote ST USA five separate times

10   about its improper objections to RFPs 31-33 and its refusal to produce DS84 ASIC

11   failure analyses. *See* Ex. 7 (9/1/21 Ltr.) at 4-5; Ex. 8 (11/3/21 Ltr.) at 2-3; Ex. 9

12   (1/18/22 Ltr.) at 2-3; Ex. 10 (2/7/22 Email); Ex. 11 (5/27/22 Email). Plaintiffs and

13   ST USA have met and conferred telephonically about ST USA's improper

14   objections to these RFP several times, including on September 27, 2021; October 6,

15   2021; and June 6, 2022. During all this time, ST USA has steadfastly refused to

16   make any commitments as to whether or when it will produce documents in

17   response to RFPs 31-33. *See, e.g.*, ECF 394 at 7-8.

18       These repeated efforts to resolve this dispute with ST USA without Court

19   intervention go far beyond the requirements of Rule 37, which provide ST USA

20   with ten days to provide its formal position after receipt of a Rule 37

21   correspondence. *See* L.R. 37-1 ("Unless relieved by written order of the Court upon

22   good cause shown, counsel for the opposing party must confer with counsel for the

23   moving party within ten days after the moving party serves a letter requesting such

24   conference."). Moreover, ST USA waived its rights to request additional time to

25   formulate its position by failing to show good cause for further delay within the ten-

26   day timeline required by Rule 37. And, in any event, ST USA has had plenty of

27   time and opportunities to make specific commitments regarding the production of

28   responsive failure analyses during the past nine months.

**D.   Conclusion**

For the foregoing reasons, Plaintiffs respectfully request an order compelling ST USA to produce all written failure analyses of DS84 ASICs for signs of electrical overstress by no later than August 30, 2022.

**IV.   STMicroelectronics, Inc.'s Statement**

Plaintiffs prematurely seek to compel documents from ST Inc. in a procedurally improper and substantively deficient manner. Despite their protestations, the reason discovery has not proceeded is solely Plaintiffs' doing. Plaintiffs waited until May 2020—a year after the other lawsuits were filed—to try and name ST Inc. (which was then dismissed).

Then, other Defendant parties moved to stay the action, but ST Inc. did not join that motion. Plaintiffs' narrative about a stay and delays is blame-shifting to cover for their own inaction for over two years. Now motivated by the impact of their continued failure to assert any claim against ST Inc., Plaintiffs cite a need for urgency to obtain discovery they are not entitled to. Not only do they misrepresent the background, Plaintiffs' failure to properly serve discovery or honor the timelines demanded by the Federal Rules render their Rule 37 motion inappropriate because there is no properly pending discovery with which to compel compliance.

**A.   Background**

**1.   ST Inc. was fully dismissed from this case in February 2022.**

On February 9, 2022, the Court dismissed every claim alleged against ST Inc. in the Consolidated Amended Complaint. ECF No. 396. Though Plaintiffs try to minimize the scope of the District Court's dismissal order, they cannot avoid the reality that they failed to state any claims against ST Inc. Plaintiffs also undersell the bases for that dismissal, which were not, as Plaintiffs suggest, limited to curable jurisdictional and Rule 9(b) grounds. The District Court dismissed many of Plaintiffs' claims because of incurable defects, including that ST Inc. had no legal duty of disclosure to NHTSA, made no affirmative representations to any consumer or

vehicle manufacturer, and had no interaction with Plaintiffs sufficient to ground reliance or causation of any state law claims.[9] Because of the Court's dismissal order, ST Inc. was no longer a party to this litigation. *See Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) ("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later[.]"); *Brown v. Los Angeles Sheriff's Dep't*, No. CV 15-0483, 2015 WL 13762889, at *1 (C.D. Cal. June 15, 2015) (where a complaint has been dismissed, even with leave to amend, "[t]here is . . . no operative complaint" and "there is no defendant").

Plaintiffs named ST Inc. in an amendment to the *Adams* case and the Amended Consolidated Complaint, both filed on May 26, 2022. One day later, Plaintiffs sought to confer with ST Inc. regarding its responses to Plaintiffs' stale discovery requests before ST Inc. even had a chance to review the Amended Consolidated Complaint. Despite their own delays and disregard for proper procedure, Plaintiffs now ask this Court to compel compliance with their mooted discovery requests—based on a factual and legal presentation that wholly ignores the critical distinctions between ST Inc. (who was dismissed) and other Defendants who remained parties after the Court sustained some claims against them.

### 2. Plaintiffs repeatedly ignore discovery rules.

Plaintiffs first tried to name ST Inc. in the Consolidated Complaint in May 2020. ST Inc. then filed a Motion to Dismiss, arguing that the Court lacked personal jurisdiction over it in the Central District of California. In response, Plaintiffs sued ST Inc. in the *Adams* matter in October 2020 in the Eastern District of Michigan.

---

[9] *Id.*, p. 65 ("Because neither that regulation nor the Safety Act creates a duty to disclose, Plaintiffs have not established that Defendants had a statutory duty to disclose defects in the Class Vehicles. Plaintiffs have not shown a statutory or fiduciary duty to disclose."); p. 68 ("As noted, a fraudulent omission claim is distinct from one for an affirmative misrepresentation. If the present allegations were deemed sufficient, the requirement of a duty of disclosure would become a hollow one."); p. 87 ("The CAC does not allege that Plaintiffs actually read the claimed misleading representations. Nor does it allege that Plaintiffs were exposed to the materials that should have included a disclosure of the Alleged Defect, or that they would have seen it had it been disclosed.").

31

1   *Barry Adams, et al. v. ZF Active Safety and Elecs. US LLC, et al.*, No. 20-cv-09668

2   JAK (C.D. Cal.). (The Court subsequently agreed that it had no jurisdiction over

3   claims Plaintiffs brought against ST Inc. in California, but it did find jurisdiction over

4   claims brought against ST Inc. in Michigan. *See* Doc 396 at 51-53.)

5          The discovery requests that ground Plaintiffs' motion here were served on ST

6   Inc. in August 2020 and related only to the claims brought in the now-dismissed

7   California action, which are moot. *Dan v. United States*, No. CV 01-25 MCA/LFG-

8   ACE, 2002 WL 35649769, at *2 (D.N.M. Sept. 19, 2002) ("When a party or a claim

9   is dismissed from a lawsuit, discovery motions related to that claim or party are

10  rendered moot.") (citations omitted); *See Cohn v. Wilkes Gen. Hosp.*, 127 F.R.D.

11  117, 121 (W.D.N.C. 1989) ("By allowing Plaintiff to amend his complaint for a third

12  time, [Defendant] is no longer a party to this lawsuit. Accordingly, Plaintiff's motion

13  to compel [Defendant] to produce certain documents is denied."). As it stands today,

14  there are no discovery requests pending against ST Inc. in the *Adams* lawsuit nor

15  pursuant to any other complaint that Plaintiffs subsequently filed.

16         Regardless, ST Inc. timely objected and responded to the now-defunct

17  discovery in September 2020 (while the Consolidated Complaint filed against it in

18  the Central District of California was pending). Plaintiffs then chose to take *no action*

19  challenging those responses for a *year*, until September 2021. During that year, other

20  parties filed stay motions, but ST Inc. did not, nor did it join the stay motions that

21  other parties filed—though Plaintiffs now attribute that delay to ST Inc.

22         Then, after the Court dismissed claims against it and while ST Inc. was a non-

23  party to this action, Plaintiffs served subpoenas on ST Inc. seeking to develop the

24  claims they intended to bring against ST Inc. before their deadline to amend their

25  complaint. ST Inc. timely objected. Plaintiffs sought to compel responses from ST

26  Inc., first neglecting this Court's meet and confer requirements and disregarding the

27  jurisdictional requirements for non-party subpoenas served under Rule 45. This Court

28  agreed and denied Plaintiffs' prior Motion to Compel for lack of jurisdiction on April

32

18, 2022. ECF No. 454 at 6 ("the plain language of Rule 45 clearly provides that a party moving to compel compliance with a subpoena for documents must file that motion in the district where compliance is required.").  Rather than pursuing the discovery in the correct forum, Plaintiffs abandoned any other discovery against ST Inc. until now.

### 3. Plaintiffs misrepresent the Court's statements regarding discovery during dismissal briefing.

In their continued conflation of ST Inc. with other Defendants, Plaintiffs also incorrectly suggest that the Court permitted discovery to proceed against ST Inc. even if it files a dismissal motion. This is false. At the March 21, 2022 hearing that Plaintiffs describe, the Court addressed matters relating *only* to the Defendants with claims then pending against them that survived dismissal (Toyota, Hyundai-Kia, Honda, FCA, and Mitsubishi). The Court's statements to those Defendants about proceeding with discovery while those Defendants' "potential motions to dismiss are being drafted and/or litigated" was limited to dismissal motions asserting the same claims against *those* parties.

The same is not true for ST Inc., who both the District Court and this Court recognized was dismissed, a non-party. At the February hearing immediately following the dismissal order, Judge Kronstadt stated, "I understand," after ZF's counsel noted: "[I]f one of our clients is a nonparty, then the scope of discovery as to nonparty could be different than as to a party." See 2/10/2022 Hr'g Tr. 20:2-19.  At a hearing on March 21 on other discovery issues, this Court similarly acknowledged that "all these former Defendants [meaning ST, ZF, and Mobis] may technically be right about their current status in the case." *See* 3/21/2022 Hr'g Tr. 10:5-6; *see also* 8:23-9:4 ("Turning to the ZF and STM Defendants, the parts manufacturers, at this point, these -- and ***I'll call them 'former Defendants' at this time*** . . ." (emphasis added)). That recognized status of ST Inc. as a non-party against whom a new suit

had to be filed cuts *against* Plaintiffs' discovery effort now—not in favor of it, as
they suggest.

**4.** **Plaintiffs make numerous inaccurate statements about the**
**litigation and facts underlying it.**

Beyond its mischaracterization of the procedural background, Plaintiffs'
discovery statement is also riddled with fallacies about the facts underlying this
litigation, and ST Inc.'s purported role in it. By way of example:

- This is not a personal injury case. Plaintiffs are not seeking redress for
  physical injuries experienced by any consumer. Instead, Plaintiffs bring
  economic claims based on their vehicles' supposed diminution of value—
  a dubious damages theory given the numerous vehicle manufacturers who
  have issued recalls for certain Class Vehicles, and an economy touting all-
  time high resale prices for vehicles, which several current or former named
  Plaintiffs (and untold purported class members) have already taken
  advantage of.

- Plaintiffs mistakenly suggest that "the ACU's brain" is the "application-
  specific integrated circuit," or "the DS84 ASIC."

- Plaintiffs mistakenly characterize "ST Malaysia" as "a closely-related
  subsidiary that manufactures chips to fulfill ST USA's orders."

- Plaintiffs mistakenly claim that a "decapsulation analysis" is some kind of
  specialized or proprietary function that can be performed only by ST Inc.

This list is non-exhaustive.  For now, ST Inc. disputes Plaintiffs' statement of
facts above, among others, and will address them in its forthcoming motion to dismiss
or otherwise as necessary.

**B.** **ARGUMENT**

**1.** **The dismissal of ST Inc. mooted Plaintiffs' prior, pending**
**discovery requests against it.**

That ST Inc. was previously a party to this case is not sufficient to pursue
discovery against it concurrent with a new pleading. The law is clear that a dismissal,

34

even without prejudice, means that ST Inc. was no longer a party to the action. *Brown*, 2015 WL 13762889, at *1 (where a complaint has been dismissed with leave to amend, "[t]here is . . . no operative complaint" and "there is no defendant"). Plaintiffs conceded this reality when they attempted to serve *third-party* discovery (rather than pursue party discovery) after ST Inc. was dismissed.

Dismissal did not merely pause the discovery: it rendered Plaintiffs' then-pending discovery requests moot. *See, e.g., Stevenson v. Astrue*, No. C 06-05422 JSW, 2007 WL 9711964, at *7 (N.D. Cal. May 1, 2007) (dismissing claims without prejudice and denying plaintiff's motion to compel discovery as moot); *Covelli v. Avamere Home Health Care LLC*, No. 3:19-CV-0486-JR, 2019 WL 5839301, at *3 (D. Or. Nov. 7, 2019) (same); *Carson v. Experian Info. Sols., Inc.*, No. 817-CV-02232 (JVS)(KES), 2019 WL 3073993, at *8 (C.D. Cal. July 9, 2019) (dismissing certain claims without prejudice and vacating magistrate ruling compelling discovery from defendant).

Nor does repleading claims against a dismissed defendant automatically revive prior discovery requests premised on a distinct and fully dismissed pleading. As the Federal Rules of Civil Procedure make abundantly clear, discovery requests may be propounded by one "party" to a legal proceeding upon "any other party" to that proceeding (*see, e.g.*, FRCP 34(a)), and only as long as the request is for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FRCP 26(b)(1) (emphasis added). In other words, discoverability hinges entirely on the claims asserted by the parties in the same case where the discovery requests are propounded. Further, nothing in these rules or any caselaw suggests that discovery propounded in one action (the C.D. Cal. action) can simply be assumed to be effective and enforceable in an entirely different action (the E.D. Mich. action)—particularly where the first action was dismissed and no similar requests were propounded in the second.

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1
2

## 2. Plaintiffs' Motion to compel is premature, as Plaintiffs yet again failed to follow the procedural rules for discovery.

3  Even if it did revive older discovery, Plaintiffs cannot control the timing and

4  sequence of discovery—only the Court does. Fed. R. Civ. P. 16(b)-(c). Ordinarily,

5  discovery waits until after the parties have had a Rule 26 conference, which can

6  obviously only occur after a party has answered a suit or moved to dismiss. And

7  while "courts may permit expedited discovery before the Rule 26(f) conference upon

8  a showing of good cause[,]" good cause only exists "'where the need for expedited

9  discovery, in consideration of the administration of justice, outweighs the prejudice

10 to the responding party.'" *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F.

11 Supp. 2d 1160, 1179 (C.D. Cal. 2008) (quoting *Semitool, Inc. v. Tokyo Electron*

12 *America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)), *abrogated on other grounds*

13 *by United States v. State Water Res. Control Board*, 988 F.3d 1194 (9th Cir. 2021).

14 There is no "good cause" for any kind of expedited discovery here, where Plaintiffs

15 have previously sought extensions on their pleading deadline and all their alleged

16 damages are purely economic.

17 Even if the Court treated Plaintiffs' prior, mooted document requests as served

18 with the new Complaint, and even if the Court allowed those old requests served in

19 the dismissed California action to be treated as served in the later, *Adams* action in

20 Michigan, the Federal Rules still provide ST Inc. more time than Plaintiffs want to

21 be bound by. Because ST Inc. was fully dismissed, it was served with a new

22 complaint. Federal Rule 26(d)(2) only permits a party to serve document discovery

23 requests 21 days after service of a complaint. The party then has 30 days to respond.

24 Fed. R. Civ. P. 34(b)(2)(A). Following that, the parties can confer on the objections

25 and scope of responses. *See* L.R. 37.1. That timing allows a Defendant to move to

26 dismiss, answer, or move to stay before being subject to discovery.

27 Plaintiffs seem to argue that these Rules do not apply to an Amended

28 Complaint and are instead limited only to original pleadings, though they again offer

36

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1    no authority for this implicit and strained reading of the Rules. In this, Plaintiffs try

2    to abuse the procedural status of ST Inc. as a former, dismissed party to rob ST Inc.

3    of the time it should be afforded to respond to Plaintiffs' pleading.

4               **3.      ST Inc. is entitled to respond to the Amended Complaint**

5                        **and move to stay before discovery proceeds.**

6               ST Inc. has a right to assess and respond to Plaintiffs' 1,355 page Amended

7    Complaint without simultaneously having to engage in document gathering and

8    production efforts related to requests served pursuant to a now-dismissed pleading.

9    This is especially so given Plaintiffs' position that their Amended Complaint is not

10   materially different from the original—which strongly suggests that it should meet

11   the same end as their last pleading and be fully dismissed. "The purpose of [Rule]

12   12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints

13   ***without*** subjecting themselves to discovery." *Rutman Wine Co.*, 829 F.2d at 738 (9th

14   Cir. 1987) (emphasis added) (affirming dismissal of claims and rejecting plaintiff's

15   argument it was entitled to discovery).

16              This natural order for proceedings leaves the horse in front of the cart. ST Inc.

17   should not have to participate in discovery without knowing what claims, if any, have

18   been sufficiently stated by Plaintiffs against ST Inc. *In re Google Digital Advert.*

19   *Antitrust Litig.*, 2020 WL 7227159, at *8 (N.D. Cal. Dec. 8, 2020) (delaying

20   discovery until after motions to dismiss "allows all parties to commence discovery

21   with a better understanding of which claims, if any, they must answer"); *see also*

22   *Zavala v. Kruse-W., Inc.*, 2019 WL 3219254, at *2 (E.D. Cal. July 19, 2019)

23   ("Where, as here, the operative complaint is challenged by motion practice, delaying

24   discovery until the claims and defenses in the case are better defined reduces

25   expenses, minimizes the burden of unnecessary discovery, and conserves judicial

26   resources." (citation omitted)). For that reason, ST Inc. intends to move to stay

27   discovery concurrent with its motion to dismiss.

28              That stay is warranted and should be granted. Courts routinely stay discovery

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

until after motions to dismiss have been filed and decided "promote[s] efficiency [and] conserve[s] the parties' resources, recognizing that engaging in discovery prior to adjudication of a strong motion to dismiss would represent a potential 'waste of resources.'" *Kincheloe v. American Airlines, Inc.*, 2021 WL 5847884, at *1, 3 (N.D. Cal. Dec. 9, 2021) (finding it would be a "substantial undertaking" to permit discovery to proceed, given defendants' motion to dismiss). Judge Kronstadt also recognizes that it "is sounder practice to determine whether there is any reasonable likelihood that plaintiff[] can construct a claim before forcing the parties to undergo the expense of discovery." *Escamilla v. City of Santa Ana*, 2021 WL 4317974, at *2 (C.D. Cal. Sep. 22, 2021) (Kronstadt, J.) (quoting *Rutman*, 829 F.2d at 738). So while discovery may be permissible against Defendants that were not fully dismissed in the Court's dismissal order, the same is not true for ST Inc.

This reasoning applies with particular force here, when ST Inc.'s prior motion to dismiss the original Complaint disposed of ***all claims*** asserted against ST Inc. and led to ST Inc.'s dismissal from the litigation. And contrary to Plaintiffs' suggestion, and as described above, the Court did not merely dismiss all claims against ST Inc. on Rule 9(b) grounds. Dismissal turned on several substantive bases, including these incurable defects: that ST Inc. had no legal duty of disclosure, made no affirmative misrepresentations (or any statements at all), and had no interaction at all with the Plaintiffs sufficient to ground reliance or causation of any state law claims. Plaintiffs could not, and in fact did not, repair these deficiencies in the Amended Complaint. As a result, the Amended Complaint still fails to state any legally sufficient claim against ST Inc., and no discovery will change the incurable deficiencies plaguing Plaintiffs' legally deficient theories as to ST Inc.

Before determining whether any of Plaintiffs' discovery requests should be granted on the merits, ST Inc. should be permitted to respond to the Amended Complaint and move to stay discovery.

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1      **4.      Plaintiffs' discovery requests and Motion to Compel seek**
2              **information that is irrelevant to their claims, overbroad, and**
3              **not fairly limited in time or scope.**

4       Even if this Court is inclined to entertain Plaintiffs' Motion now, the Motion

5   remains substantively deficient just like their prior Motion to Compel. On top of their

6   procedural shortcomings and prematurity, Plaintiffs' overbroad requests seek

7   information relating to hypothetical occurrences not experienced by any named class

8   representative that Plaintiffs think may have occurred in places and vehicles not

9   represented by the supposed class representatives. Again, Plaintiffs' claims stem

10  from a theory of economic damages only, based on their vehicles' supposed

11  diminution of value because of some potential that certain vehicles sold in the U.S.

12  between 2010 to 2019 *might* not deploy an airbag in certain, rare situations because

13  the DS84 ASIC *might* fail during certain crashes. According to Plaintiffs, this

14  diminishes the value of their vehicles for which they seek economic damages.

15      But only two of the 53 Plaintiffs appear to allege that they were even involved

16  in an accident (and even those Plaintiffs do not claim EOS was the cause for their

17  alleged non-deployments). Counter to Plaintiffs' hypothetical theory, NHTSA has

18  neither declared that all vehicles containing ZF TRW ACUs with the DS84 ASIC are

19  defective nor issued any other findings despite a three-year investigation. Indeed,

20  NHTSA has not even included ST Inc. as a party to its investigation, despite

21  requesting certain limited documentation (which was previously provided to

22  Plaintiffs in discovery).

23      Despite their narrowly pleaded experience, Plaintiffs' Requests seek

24  documents going well beyond this stated allegation of non-deployment. But their

25  effort to expand non-deployment to inadvertent deployment or other supposed

26  indications of ASIC failure do not satisfy the Ninth Circuit's threshold for substantial

27  similarity. *See White*, 312 F.3d at 1009 (other incidents must be substantially similar

28  before they are admissible to show a defect or notice of the defect). Similarly,

39

1    Plaintiffs' effort to broaden their net by characterizing the ASIC as "vulnerable" is

2    vague and hypothetical, a brand of discovery sophistry that is generally rejected by

3    courts. *See Cheng v. AIM Sports, Inc.*, No. CV103814PSGPLAX, 2011 WL

4    13196557, at *1 (C.D. Cal. Mar. 30, 2011) (citing *Zewdu v. Citigroup Long Term*

5    *Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. 2010) (a party's "failure to narrowly

6    tailor their requests for production amounts to an improper fishing expedition.")).

7        Based on this impermissibly broadened theory of events that no Plaintiff

8    actually alleges occurred to it, Plaintiffs seek all failure analysis reports regardless of

9    time, place, or what the supposed "indication" of EOS in the report is. This is not

10   reasonably tailored to Plaintiffs' theory or the classes they hope to represent because

11   it goes far beyond Plaintiffs' stated defect theory, and so is not "relevant to any []

12   claim or defense," let alone "proportional to the needs of the case." FED. R. CIV. P.

13   26(b) At minimum, discovery should be narrowed to: (1) situations involving non-

14   deployment; (2) purportedly occurring in the field in the United States, which

15   represents the only consumers that can be part of Plaintiffs' purported classes; and

16   (3) a temporal limitation of six years from Plaintiffs' October 2020 filing against ST

17   Inc., which exceeds the four-year limitations period for their claims. *Cheng*, 2011

18   WL 13196557, at *1.  Finally, any production should be limited to testing following

19   reported field events (and not "all written failure analyses"), as that is what Plaintiffs'

20   original requests sought.

21        ***1. Any production should be limited to airbag nondeployment events.*** The

22   Amended Complaint does not allege that any representative Plaintiff was involved in

23   any incident where their vehicle's airbags to deploy unexpectedly or inadvertently.

24   Absent a class member with this condition, they cannot represent a class of persons

25   with that purported experience. *See Lewis v. Casey*, 116 S. Ct. 2174, 2183 (1996)

26   ("even named plaintiffs who represent a class must allege and show that they

27   personally have been injured, not that injury has been suffered by other, unidentified

28

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1   members of the class to which they belong and which they purport to represent.")

2   (internal citations omitted).

3       The only issue any Plaintiff pleads about is airbag nondeployment—and even

4   then, only two of the fifty-three class members allege that they were involved in any

5   incident where their airbags did not deploy. Further, the NHTSA investigation on

6   which Plaintiffs base their case (EA19-001) does not include any "unusual" or

7   "inadvertent" airbag deployment as a symptom of a potentially defective DS84 ASIC

8   or ACU. *See* ODI Resume for EA19-001 (problem description limited to *non-*

9   *deployment* of air bags and seat belt pretensioners). As a result, any incidents of

10  "inadvertent" airbag deployment (or other speculative symptoms of EOS) are not

11  substantially similar to Plaintiffs' allegations and are irrelevant to Plaintiffs' claims.

12      In reality, Plaintiffs are merely fishing for documents untethered to any

13  experience of any named Plaintiff in the fervent hope that they will find something—

14  anything—that will allow them to keep ST Inc. in this case. Even if the Court permits

15  fishing, "the Federal Rules of Civil Procedure allow the Courts to determine the pond,

16  the type of lure, and how long the parties can leave their lines in the water." *Blagman*

17  *v. Apple Inc.*, No. CV138496PSGPLAX, 2014 WL 12607841, at *2 (C.D. Cal. Jan.

18  6, 2014) (quotations omitted); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951,

19  968 (explaining that Rule 26 was amended in 2000 to limit discovery to matters more

20  directly related to a "claim or defense" than previously allowed).

21      Further, at the time Plaintiffs' discovery was sent in August 2020, their then-

22  live pleading alleged only airbag non-deployment. Even to the extent their new

23  pleading describes other possible, speculative indications of EOS (that no named

24  Plaintiff is alleged to have experienced), Plaintiffs cannot be heard to expand their

25  discovery by amending their complaint and then demanding production through Rule

26  37-2 on a single day's notice. This sort of gambit is precisely why the Rules provide

27  more time before a party can serve discovery following a new pleading.

28      If any discovery is permitted, it should be tailored to the allegations about what

41

1    the named Plaintiffs claim occurred with their vehicles and the safety issue that they

2    allege makes the other vehicles unsafe: nondeployment of airbags and seatbelt

3    pretensioners only—not inadvertent deployment.

4         ***2. Geographic limitations are appropriate.*** Besides seeking information about

5    events not substantially similar to Plaintiffs' alleged experience, Request 31 also fails

6    as overbroad as it sets no geographic limitation for where the supposed "incident"

7    occurred, thus covering incidents happening in other countries and events not

8    experienced by any consumers in the purported classes. Request 32, for example,

9    intentionally unqualifies its geographic scope and seeks information unrelated to

10   domestic incidents: "All Documents and Communications Concerning testing and

11   analyses conducted following incidents or crashes involving vehicles with ZF TRW

12   ACUs, *regardless of location*, including vehicles with possible or confirmed EOS."

13   (emphasis added).

14        Plaintiffs try to ground their request by concluding that "foreign failure

15   analyses will include evidence that also show a defect in domestic DS84 ASICs and

16   ACUs." But their reliance on *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales*

17   *Pracs., & Prod. Liab. Litig.*, No. 17-md-2777, 2018 WL 4826866 (N.D. Cal. Oct. 4,

18   2018) for this point is inapt. That case dealt with deliberate modifications to a "defeat

19   device" (not a product defect) that was employed in certain eco-friendly vehicles that

20   masked their true emission levels. *Id.* The manufacturer of the EDC17 unit claimed

21   that the part was modified after sale and that it was not responsible for that

22   modification. *Id.* ("Bosch contends that it was not responsible for modifying the

23   EDC17 in the manner that may have turned it into a defeat device."). The Court thus

24   found communications with other regulators may be relevant because they may show

25   that party's involvement with the modification and affirmative misrepresentations.

26   *Id.* (the foreign "communications may include admissions, denials, or other

27   statements by Bosch . . .").

28        None of that is true here, as none of the reports Plaintiffs seek can contradict

any statements ST Inc. supposedly made to consumers or OEMs because Plaintiffs do not allege that ST Inc. made any statements made to consumers or OEMs at all. Moreover, the plaintiffs in *In re Chrysler-Dodge-Jeep EcoDiesel* were rebuffed by the court because of the ongoing government investigations into potential product defects, whereas ST Inc. is not the subject of any governmental investigation. *Id.*

Again, Plaintiffs' alleged classes include no vehicles other than those sold in the U.S., and they do not explain how some incident occurring in a foreign country is "substantially similar" to one in the U.S.  They do not even allege that ST Inc.— the party from whom they seek the discovery—ever sold or manufactured any DS84 ASIC in other countries. Their inability to connect the dots between the geographic locations fails to show how any incidents may be "substantially similar," renders the sought-after information not relevant and inadmissible, and not important "in resolving the issues." *White v. Ford Motor Company*, 312 F.3d at 1009; FED. R. CIV. P. 26(b)(1). And because foreign occurrences are by definition non-class members and non-Class Vehicles, there is no "likely benefit" to their production. *Id.*

***3. The Reports request should be narrowed in time.*** Third, there is no time limit in any of the three Requests that Plaintiffs cite in their Motion. This alone makes each overbroad. To deflect this, Plaintiffs' motion argues that ST Inc. must search for documents from 2005 forward—a time period covering seventeen years. Plaintiffs argue, as they did in their prior, denied motion to compel, that 2005 is the correct bookend because the design and development of the DS84 ASIC supposedly started that year. First, the class vehicles only cover model years from 2010 forward; and any hypothetical issues that any purported class member had with the DS84 ASIC could only occur after that time.

Even then, these older-vehicle purchasers cannot be part of the class because any claims they have are *long* expired. The statutes of limitations on Plaintiffs' claims extend two-to-four years before their October 2020 complaint was filed against ST Inc. in the *Adams* case in the Eastern District of Michigan (which is now Plaintiffs'

43

1    live, underlying pleading against ST Inc.). As even Plaintiffs' cited authorities agree,

2    limitations periods are a strongly relevant consideration for how far back a party

3    should have to search. *Gottesman v. Santana,* No. 16-CV-2902, 2017 WL 5889765

4    (S.D. Cal. Nov. 29, 2017) (citing *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649,

5    655 (D. Kan. 2004) ("[D]iscovery of information both before and after the liability

6    period . . . may be relevant and/or reasonably calculated to lead to the discovery of

7    admissible evidence and courts commonly extend the scope of discovery ***to a***

8    ***reasonable number of years*** both prior to and following such period." (emphasis

9    added).)  An appropriate period for document gathering is thus six years from their

10    October 2020 filing against ST Inc., which covers the longest four-year limitations

11    period and an additional two years.

12        To argue for a longer time period, Plaintiffs claim that the applicable

13    limitations periods were tolled by fraudulent concealment. But the Court rejected this

14    argument in its February 2022 dismissal order, finding that Plaintiffs failed to

15    adequately plead tolling under Fed. R. Civ. P. 9(b). Their new pleading is no better

16    in that, despite its length, it still lumps Defendants together in pleading fraudulent

17    concealment—it just spells out various entity names rather than using a group term.

18    *See, e.g.*, ECF 477, ¶ 1597 ("To further the goals of the Hyundai-Kia-ZF-ST

19    Enterprise and to their mutual gain, Kia Korea, Hyundai Korea, Kia USA, Hyundai

20    USA, Hyundai Mobis, ZF Electronics USA, ZF Passive Safety USA, ZF Automotive

21    USA, ZF TRW Corp., ZF Germany, ST USA, and ST Malaysia concealed what they

22    knew about the existence, scope, and material safety risks of the ACU Defect in the

23    Hyundai-Kia Class Vehicles."). Still, Plaintiffs do not allege that ST Inc. made any

24    representations to any consumer or even any OEM. How ST Inc. concealed

25    something from parties it is several degrees removed from in a supply chain defies

26    logic, and certainly is not explained in Plaintiffs' Amended Complaint or Motion.

27        ***4. Production should be limited to reported field events; Plaintiffs' Motion***

28    ***should not broaden through their Requests.*** Finally, Plaintiffs' Motion seeks "all

44

1  written failure analyses," though this exceeds the scope of their quoted requests,

2  which requested testing following certain field events. Plaintiffs' Request 31 sought

3  documents "relating to any incident (and suspected or alleged incident), crash,

4  complaint, property damage claim, repair or replacement request, and warranty claim

5  …" Similarly, Request 32 seeks only documents concerning "testing and analyses

6  following incidents or crashes …" While their requests are limited to testing

7  following alleged consumer experiences of airbag nondeployment in "incidents" and

8  "crashes," their Motion more broadly asks for "all" analyses. At minimum, any

9  production should be limited to testing following these reported field events.

10  To the extent that the Court entertains Plaintiffs' premature Motion, ST Inc.

11  should be required only to gather and produce reports failure reports related to EOS

12  events in (1) purported domestic Class Vehicles, (2) with reported airbag non-

13  deployment or seatbelt non-activation (3) from October 2014 to the present, and

14  (4) following reported field events.

15       **5.    ST Inc. should be given adequate time to search for, gather,**

16           **and produce documents.**

17  Further, if the Court entertains Plaintiffs' Motion, ST Inc. should be permitted

18  adequate time to search for, gather, and produce responsive documents. Plaintiffs

19  make bald assumptions about the way such document searches might be handled,

20  including running specific search terms (that are not included or identified anywhere

21  in the Requests they seek to compel compliance with) through a global system of

22  documents. Plaintiffs cannot now use or propose search terms never agreed upon. If

23  the Court permits discovery, it should define the scope and permit ST Inc. the ability

24  (and time) to define how those searches are best conducted on its own records.

25  Requiring gathering now is a waste of discovery efforts when ST Inc. does not

26  even know whether a viable claim has been asserted against it. *Escamilla*, 2021 WL

27  4317974, at *2 (Kronstadt, J.) ("is sounder practice to determine whether there is any

28  reasonable likelihood that plaintiff[] can construct a claim before forcing the parties

45

1 to undergo the expense of discovery.") (internal quotations omitted).

2     **C.    Conclusion**

3     Plaintiffs' motion to compel is premature and based only on the urgency they

4 feel due to years of their own delay—none of which justifies their failure to comply

5 with the rules for discovery. Before any discovery occurs, ST Inc. should be given

6 an opportunity to respond to the complaint and move to stay concurrent with that

7 motion. For all of these reasons, the Court should fully deny their Motion to Compel

8 until they do comply with the Rules and law governing discovery.

9     To the extent that the Court entertains Plaintiffs' motion to compel now, any

10 production should be tailored to Plaintiffs' pleaded theory, requiring production only

11 in cases of purported airbag non-deployment or failed seat pretension due to EOS in

12 domestic Class Vehicles following reported field events from October 2014 to the

13 present.

14

15

16   Dated: June 22, 2022                 Respectfully submitted,

17

18                                     /s/*David Stellings*
                                    David Stellings

19

20                                     LIEFF CABRASER HEIMANN &
                                    BERNSTEIN, LLP

21                                     David Stellings (*pro hac vice*)

22                                     dstellings@lchb.com
                                    John T. Nicolaou (*pro hac vice*)

23                                     jnicolaou@lchb.com

24                                     Katherine McBride
                                    kmcbride@lchb.com

25                                     250 Hudson Street, 8th Floor

26                                     New York, New York 10013-1413
                                    Telephone: 212.355.9500

27

28                                     LIEFF CABRASER HEIMANN &

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**

1   BERNSTEIN, LLP
2   Elizabeth J. Cabraser (SBN 83151)
    ecabraser@lchb.com
3   Nimish R. Desai (SBN 244953)
4   ndesai@lchb.com
    Phong-Chau G. Nguyen (SBN 286789)
5   pgnguyen@lchb.com
6   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
7   Telephone: 415.956.1000

8
9   BARON & BUDD, P.C.
    Roland Tellis (SBN 186269)
10  rtellis@baronbudd.com
    David Fernandes (SBN 280944)
11  dfernandes@baronbudd.com
12  Elizabeth Smiley (SBN 318165)
    esmiley@baronbudd.com
13  15910 Ventura Boulevard, Suite 1600
14  Encino, CA 91436
    Telephone: 818-839-2333
15  Facsimile: 818-986-9698

16
17  *Co-Lead Counsel for Plaintiffs*

18

19

20
    */s/ Robert P. Debelak III*
21
    McDOWELL HETHERINGTON LLP
22  Jodi K. Swick (SBN 228634)
23  jodi.swick@mhllp.com
    1 Kaiser Plaza, Ste. 340
24  Oakland, CA 94612
    Telephone: 510.628.2145
25  Facsimile: 510.628.2146
26
    Colleen T. Flaherty (SBN 327563)
27  1055 E. Colorado Blvd., Ste. 500
28  Pasadena, CA 91106

47

1

2

Telephone: 213.631.4059
Facsimile: 510.628.2146

3

4

5

6

7

8

9

Thomas F.A. Hetherington (*pro hac vice*)
tom.hetherington@mhllp.com
Kendall J. Burr (*pro hac vice*)
kendall.burr@mhllp.com
Robert P. Debelak III (*pro hac vice*)
bobby.debelak@mhllp.com
1001 Fannin St., Ste. 2700
Houston, TX 77002
Telephone: 713.337.5580
Facsimile: 713.337.8850

10

11

12

13

14

Emily K. Liu (*pro hac vice*)
emily.liu@mhllp.com
1000 Ballpark Way, Ste. 209
Arlington, TX 76011
Telephone: 817.635.7300
Facsimile: 817.635.7308

15

16

*Counsel for STMicroelectronics, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

48

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE OF CERTIFICATION

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: June 22, 2022

*/s/ David Stellings*
David Stellings

**CERTIFICATE OF SERVICE**

I certify that on June 22, 2022, a copy of the foregoing **Joint Stipulation Regarding Plaintiffs' Motion to Compel STMicroelectronics, Inc. to Produce DS84 ASIC Failure Analyses** was served electronically through the Court's electronic filing system upon all Parties appearing on the Court's ECF service list.

DATED: June 22, 2022                    */s/ David Stellings*
                                        David Stellings

**Joint Stipulation re Plaintiffs' Discovery Dispute with STMicroelectronics, Inc.**