Eric S. Mattson (admitted *pro hac vice*)
emattson@sidley.com
J. Simone Jones (admitted *pro hac vice*)
jsimone.jones@sidley.com
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: +1 312 853 7000
Facsimile: +1 312 853 7036

Lisa M. Gilford (SBN 171641)
lgilford@sidley.com
Stacy Horth-Neubert (SBN 214565)
shorthneubert@sidley.com
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6044
Facsimile: +1 213 896 6600

*Counsel for Honda Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re ZF-TRW Airbag Control Units Products Liability Litigation* | MDL No. 2905<br>Case No. 2:19-ml-02905-JAK-FFM<br><br>**HONDA DEFENDANTS' MOTION TO DISMISS** |

## NOTICE OF MOTION AND MOTION TO DISMISS
## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as this Motion may be heard by the Honorable John A. Kronstadt in Courtroom 10B, 350 W. First Street, Los Angeles, California, Defendants Honda Motor Co., Ltd., American Honda Motor Co., Inc., and Honda Development and Manufacturing of America, LLC will, and hereby do, move the Court to dismiss Plaintiffs' Consolidated Amended Class Action Complaint. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the attached declarations, Defendants' Joint Notice of Motion and Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint, and the arguments of counsel. This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 25, 2022. Plaintiffs oppose the requested relief.

Dated: August 2, 2022

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ Eric S. Mattson*
Eric S. Mattson

*Attorney for Defendants Honda Motor Co., Ltd., American Honda Motor Co., Inc., and Honda Development and Manufacturing of America, LLC*

1

## TABLE OF CONTENTS

2

Page

3  Introduction ..................................................................................................... 1

4  Factual Background .......................................................................................... 1

5  Argument .......................................................................................................... 4

6  I.    The Court lacks personal jurisdiction over Honda Motor. .................................. 4

7        A.    Honda Motor is a Japanese corporation that is not subject to
              general jurisdiction in California or anywhere else in the United
8              States. .................................................................................................... 5

9        B.    Honda Motor did not make any of the vehicles purchased by the
              Honda Plaintiffs, and it lacks sufficient contacts with the relevant
10             forums to make it subject to specific jurisdiction. ................................ 5

11 II.   Plaintiff Huitzil lacks standing because he totaled his vehicle, leaving
         him without any "injury in fact." ..................................................................... 10

12 III.  The Court should dismiss Plaintiffs' RICO Claim (Nationwide Count 7)
13       and RICO Conspiracy Claim (Nationwide Count 8) against the Honda
         Defendants because Plaintiffs fail to plead predicate acts of racketeering
14       activity. ............................................................................................................ 11

15       A.    Plaintiffs have again failed to plead a non-disclosure theory. ............ 12

16       B.    Plaintiffs' predicate acts premised on labeling or advertising are
              insufficiently pleaded. ...................................................................... 14

17       C.    Plaintiffs' predicate acts based on ZF's and STMicro's
18             communications with each other and the Honda Defendants also
              fail. .................................................................................................... 15

19       D.    Plaintiffs' RICO conspiracy claim nationwide (Count 8) should
20             likewise be dismissed. ...................................................................... 17

21 IV.   Plaintiffs' remaining claims should be dismissed for failure to state a
         claim under Rule 12(b)(6). .............................................................................. 18

22       A.    Plaintiffs fail to sufficiently allege that the Honda Defendants
23             knew of the alleged defect when Plaintiffs bought their vehicles. .......... 19

24       B.    The Honda Plaintiffs' claims for breach of the implied warranty of
              merchantability are both untimely and legally deficient. ........................ 20

25       C.    The Honda Plaintiffs' express warranty claims are likewise
26             untimely and legally deficient. ............................................................. 22

27       D.    Plaintiff's Song-Beverly claim is untimely ......................................... 23

28

E.   Plaintiffs' unjust enrichment claims improperly duplicate their express warranty claims and are otherwise deficient..............................24

F.   Plaintiff Burns has no basis to seek injunctive relief under the Consumers Legal Remedies Act. ............................................25

G.   Plaintiff Rubio's claim under the Alabama Deceptive Trade Practices Act should be dismissed because he is already pursuing a common law fraud claim...........................................25

H.   Consumer protection claims against the Honda Defendants not accused of advertising, marketing, or selling Class Vehicles should be dismissed. .........................................26

I.   The Court should dismiss state law claims that require a showing of causation or reliance. ...................................27

Conclusion .....................................................................30

HONDA DEFENDANTS' MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     Page(s)

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) ...................................................................22

*Alperin v. Vatican Bank*,
   410 F.3d 532 (9th Cir. 2005) ....................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................18

*Barakezyan v. BMW of North America, LLC*,
   No. CV-16-173, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016).........................10, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................18

*Benkle v. Ford Motor Co.*,
   No. 16-cv-1569, 2017 WL 9486154 (C.D. Cal. Dec. 22, 2017) ...........................23

*Brisson v. Ford Motor Co.*,
   349 F. App'x 433 (11th Cir. 2009).........................................................21

*Bumpers v. Cmty. Bank of N. Va.*,
   747 S.E.2d 220 (N.C. 2013) ...................................................................29

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
   818 F.2d 1466 (9th Cir. 1987) ................................................................13

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
   No. 20-CV-3131, 2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) ...........................9

*Carpenter v. United States*,
   484 U.S. 19 (1987)....................................................................................16

*Cent. Mining, Inc. v. Simmons Mach. Co.*,
   547 So. 2d 529 (Ala. 1989)......................................................................22

*Cipollone v. Liggett Group*,
   505 U.S. 504 (1992)..................................................................................23

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983)..................................................................................25

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*,
    601 F. Supp. 2d 1201 (S.D. Cal. 2009) ..................................................13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..................................................................................5

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
    907 S.W.3d 472 (Tex. 1995) ...................................................................19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ..........................................................12, 14

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) .................................................................12

*Edwards v. N. Am. Power & Gas, LLC*,
    120 F. Supp. 3d 132 (D. Conn. 2015) .....................................................24

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)..................................................................................18

*In re Ford Motor Co. E-250 Van Prods. Liab. Litig. (No. II)*,
    No. 03-4558, MDL No. 1687, 2011 WL 601279 (D.N.J. Feb. 16,
    2011) ........................................................................................................24

*Ford Motor Co. v. Rice*,
    726 So. 2d 626 (Ala. 1998).......................................................................21

*Ford Motor Credit Co. LLC v. McBride*,
    811 S.E.2d 690 (N.C. Ct. App. 2018)......................................................23

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
    53 F. Supp. 3d 943 (S.D. Tex. 2014).......................................................25

*Goh v. Prima Fin. Grp., Inc.*,
    2017 WL 7887860 (C.D. Cal. July 26, 2017) ........................................17

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................29

*Gonzalez v. Law Office of Allen Robert King*,
 195 F. Supp. 3d 1118 (C.D. Cal. 2016) ................................................................. 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) .......................................................................................... 5

*Grassi v. Int'l Comfort Prods., LLC*,
 2015 WL 4879410 (E.D. Cal. Aug. 14, 2015) ........................................... 15

*Grodzitsky v. American Honda Motor Co.*,
 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ............................................... 20

*Heber v. Toyota Motor Sales, U.S.A.*,
 16-cv-161525, 2018 WL 3104612 (C.D. Cal. June 11, 2018) ................... 8

*Helicopter Consultants of Maui, Inc. v. Thales Avionics Inc.*,
 No. 3:08-CV-24, 2010 WL 11565653 (N.D. Tex. Apr. 8, 2010) ............ 21

*Herremans v. BMW of N. Am., LLC*,
 No. 14-cv-2363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ................. 19

*Howard v. Am. Online, Inc.*,
 208 F.3d 741 (9th Cir. 2000) ..................................................................... 18

*International Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ........................................................................................ 5

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ................................................................... 14

*Koch v. Acker, Merrall & Condit Co.*,
 18 N.Y.3d 940 (2012) ............................................................................. 27, 28

*Koellmer v. Chrysler Motors Corp.*,
 276 A.2d 807 (Conn. Cir. Ct. 1970) ......................................................... 22

*Lavigne v. Herbalife, LTD*,
 No. 18-cv-7480, 2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ............... 18

*Leon v. Cont'l AG*,
 301 F. Supp. 3d 1203 (S.D. Fla. 2017) ................................................. 16, 17

*Lucas v. Subaru of Am., Inc.*,
No. 03-cv-476082, 2005 WL 1155009 (Conn. Super. Ct. Apr. 20,
2005) ........................................................................................................... 21

*Lujan v. Defenders of Wildlife*,
504 U.S. 565 (1992) ................................................................................... 10

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*,
351 F. Supp. 2d 436 (M.D.N.C. 2005) ....................................................... 24

*McCabe v. Daimler AG*,
948 F. Supp. 2d 1347 (N.D. Ga. 2013) ....................................................... 22

*Mirkin v. Wasserman*,
858 P.2d 568 (Cal. 1993) ............................................................................ 15

*Missaghi v. Apple, Inc.*,
No. 13-cv-2003, 2013 WL 12203021 (C.D. Cal. May 31, 2013) ............... 21

*Morrill v. Scott Fin. Corp.*,
873 13 F.3d 1136 (9th Cir. 2017) .................................................................. 6

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. 2008) ........................................................ 12, 14

*Nestle USA, Inc. v. Crest Foods, Inc.*,
No. 16-cv-7519, 2017 WL 3267665 (C.D. Cal. July 28, 2017) .................... 8

*In re NJOY, Inc.*,
No. cv 14-00428, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) .......... 27, 29

*Parks v. Ainsworth Pet Nutrition, LLC*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019) ........................................................ 24

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ................................................................... 6, 8

*Phillips v. Hobby Lobby Stores, Inc.*,
No. 2:16-cv-837, 2018 WL 4635734 (N.D. Ala. Sept. 27, 2018) .............. 26

*In re Porsche Cars N. Am., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012) ....................................................... 24

HONDA DEFENDANTS' MOTION TO DISMISS

*Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*,
    948 F. Supp. 2d 1131 (D. Haw. 2013) ..................................................................... 13

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) ..................................................................... 19

*Romero v. HP, Inc.*,
    No. 16-cv-5415, 2015 WL 386237 (N.D. Cal. Jan. 27, 2017) ............................... 25

*Rosa v. Am. Water Heater Co.*,
    177 F. Supp. 3d 1025 (S.D. Tex. 2016) ................................................................. 21

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................................... 4

*In re Seagate Tech. LLC Litig.*,
    2017 WL 3670779 (N.D. Cal. Aug. 25, 2017) ....................................................... 22

*In re Seagate Tech. LLC Litig.*,
    233 F. Supp. 3d 776 (N.D. Cal. Feb. 9, 2017) ....................................................... 22

*Selby v. Goodman Mfg. Co., LP*,
    No. 13-CV-2162, 2014 WL 2740317 (N.D. Ala. June 17, 2014) ........................... 24

*Simon v. SeaWorld Parks & Ent., Inc.*,
    No. 3:21-CV-1488, 2022 WL 1594338 (S.D. Cal. May 19, 2022) ......................... 28

*Skilling v. United States*,
    561 U.S. 358 (2010) ................................................................................................ 16

*Soto v. Bushmaster Firearms Int'l, LLC*
    331 Conn. 53 (2019) ................................................................................................ 29

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ............................................................................................ 11

*Stanwood v. Mary Kay, Inc.*,
    941 F. Supp. 2d 1212 (C.D. Cal. 2012) ................................................................. 27

*Szewczyk v. United Parcel Serv., Inc.*,
    No. 19-cv-1109, 2019 WL 5423036 (E.D. Pa. Oct. 22, 2019) ................................. 6

*Toca v. Tutco, LLC*,
    430 F. Supp. 3d 1313 (S.D. Fla. 2020) ................................................................. 24

*United States v. Benny*,
   786 F.2d 1410 (9th Cir. 1986) ........................................................... 13

*Varner v. Domestic Corp.*,
   No. 16-22482-CIV, 2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ............... 28, 29

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................... 15

*Walker v. Equity 1 Lenders Grp.*,
   No. 09-cv-325, 2009 WL 1364430 (S.D. Cal. May 14, 2009) .......................... 25

*Whittington v. Mobiloil Fed. Credit Union*,
   No. 1:16-CV-482, 2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ................... 24

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ....................................................... 9, 10

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ...................................................... 19, 20

*Zuehlsdorf v. FCA US LLC*,
   No. CV 18-1877, 2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) ...................... 24

**Statutes**

18 U.S.C. § 1341 ................................................................. 12, 16

18 U.S.C. § 1343 ................................................................. 12, 16

18 U.S.C. § 1346 .................................................................... 16

18 U.S.C. § 1961(1) ................................................................. 12

18 U.S.C. § 1962(d) ................................................................. 17

Ala. Code § 8-19-15 ................................................................. 26

Cal. Civ. Code § 1791.1(c) .......................................................... 23

Cal. Com. Code § 2316 ............................................................... 21

Conn. Gen. Stat. Ann. § 42a-1-201 ................................................... 21

Conn. Gen. Stat. Ann. § 42a-2-316 ................................................... 21

HONDA DEFENDANTS' MOTION TO DISMISS

Fla. Stat. Ann. § 671.201 ..........................................................................21

Fla. Stat. Ann. § 672.316 ..........................................................................21

National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118 .....................13

New York Gen. Bus. Law § 349........................................................27, 28

New York Gen. Bus. Law § 350........................................................27

Tex. Bus. & Com. Code § 1.201 .................................................................21

Tex. Bus. & Com. Code § 2.316.................................................................21

Tex. Bus. & Com. Code § 17.50(a)(1)(B) .................................................29

**Court Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................11

Fed. R. Civ. P. 12(b)(2) ............................................................................10

Fed R. Civ. P. 9(b) ....................................................................12, 14, 16, 18

Fed R. Civ. P. 12(b)(6) ............................................................................1, 18

**Other Authorities**

49 C.F.R. § 567.4 .......................................................................................8

49 C.F.R. § 591.5 .......................................................................................8

49 C.F.R. § 573.6 .......................................................................................13

## Introduction

Despite the addition of hundreds of pages of allegations in the Consolidated Amended Class Action Complaint ("Amended Complaint"), Plaintiffs continue to premise their claims against Honda on the same flawed assumption: that Honda's use of airbag control units ("ACUs") that are similar to ACUs that other car companies have recalled somehow makes Honda liable under a variety of legal theories—even though no Honda vehicles have been recalled to date.

The claims against the Honda Defendants should be dismissed for the reasons stated in the Defendants' joint brief. This Honda-specific brief outlines additional reasons for dismissal: (1) Honda's corporate parent, Honda Motor Co., Ltd. ("Honda Motor") is a Japanese company not subject to personal jurisdiction in this Court; (2) the only Honda Plaintiff suing under Connecticut law lacks standing because he totaled his car more than a year ago, leaving him with no injury in fact; (3) Plaintiffs' RICO claims do not adequately plead predicate acts of racketeering activity; and (4) Plaintiffs' remaining counts fail to state claims under Rule 12(b)(6).

## Factual Background

Despite its length, the Amended Complaint features one fewer Honda Plaintiff than the prior complaint and continues to provide only sketchy details about the Honda Plaintiffs and their interactions, if any, with the Honda Defendants:

- Sigfredo Rubio, an Alabama resident, bought a new Acura TLX in 2015 from a Honda dealership in Montgomery, Alabama. Am. Compl. ¶¶ 188-90.

- Kevin Burns, a California resident, bought a new Honda Civic Hybrid in 2013 from a Honda dealership in Walnut Creek, California. *Id*. ¶¶ 191-93.

- Paul Huitzil, a Connecticut resident, bought a used 2013 Honda Accord in 2015 from a Honda dealership in Westport, Connecticut. *Id*. ¶ 194-96. The vehicle was declared a total loss in 2019 after an accident. *Id*. ¶ 194.

- Fredericka McPherson, a Florida resident, bought a used 2013 Honda

1

Accord in 2015 from a Honda dealership in Tampa. *Id*. ¶¶ 197-99.

- Brian Chaiken, a Florida resident, bought a used 2013 Honda CR-V in 2015 from a Honda dealership in Miami. *Id*. ¶¶ 200-02.
- Ravichandran Namakkal, a New York resident, bought a new Honda Civic in 2014 from a Honda dealership in Queens, New York. *Id*. ¶¶ 203-05.
- Tonya McNeely, a North Carolina resident, bought a used 2012 Honda Civic in 2015 from a Honda dealership in Concord, North Carolina. *Id*. ¶¶ 206-08.
- Angela Bowens, a Texas resident, bought a new Honda Civic in 2015 from a Honda dealership in Dallas. *Id*. ¶¶ 209-11.

Like the original Complaint, the Amended Complaint includes generalized, boilerplate language about the Honda Plaintiffs' vehicle purchases. For example, Plaintiffs Rubio, Burns, Chaiken, and Namakkal all say they "saw representations and statements on Honda's website," but never indicate what the representations were, when they saw them, or where on the sprawling website they appeared. *Id*. ¶¶ 189, 192, 201 204. Similarly, Plaintiff McPherson alleges that she relied on "statements about the Class Vehicle made by a salesperson," but does not allege what the salesperson said or when they said it. *Id*. ¶ 198.

Each of the Honda vehicles came with a three-year/36,000 mile new vehicle limited warranty that began when the car was delivered to its first purchaser or when it was first leased. *See, e.g., id*. ¶¶ 2214, 2224, 2742; Dkt. No. 211 (Request for Judicial Notice ("RJN")), Exs. 1-6 at 9. The Acura listed above came with a longer limited warranty: four years or 50,000 miles, whichever comes first. *Id*. Ex. 7 at 9.

The limited warranties generally provide that American Honda Motor Co., Inc. ("American Honda") will repair or replace—free of charge—parts that are defective in material or workmanship under normal use. RJN, Exs. 1-7 at 10. But they also limit the duration of any implied warranty of merchantability to the duration of the limited warranty (three years/36,000 miles or four years/50,000 miles, depending on the

1  vehicle). *Id*. at 9. In other words, the limited warranty and any implied warranties of

2  merchantability expire at the same time.

3

### How to Get Warranty Service, Limitations and Disclaimers

4

5  For further information or assistance, please contact Honda Automobile Customer Service.

All of the limited warranties in this booklet are subject to the following limitations and disclaimers:

These limitations or exclusions may not apply to your vehicle because some states do not allow limitations on how long an implied warranty lasts, or they may not allow exclusion or limitation of incidental or consequential damages.

6

7  **Honda disclaims any responsibility for loss of time, loss of the use of the parts, or vehicle in which the parts are installed, transportation damage, and any other incidental or consequential damage. Any implied warranties, including the implied warranty of merchantability and fitness for a particular purpose, are limited to the duration of this written warranty.**

8

9  These warranties give you specific legal rights, and you may also have other rights which vary from state to state.

10

11

12  *Id*., Ex. 1 at 38, Exs. 2-7 at 39.

13      The limited warranties provide detailed instructions for how customers can

14  obtain warranty service, specifically advising them to "take your vehicle along with

15  proof of the purchase date to a Honda automobile dealer during normal service hours."

16  *Id*., Ex. 1 at 36, Exs. 2-7 at 37. For vehicles that cannot be driven, the limited warranty

17  directs customers to "contact the nearest Honda automobile dealer for towing

18  assistance." *Id*.

19      Beginning in 2016, several automakers—but not Honda—began recalling some

20  of the many models and model year vehicles with ACUs made by Defendant ZF TRW.

21  *See, e.g.*, Am. Compl. ¶¶ 15, 509, 516, 523. The National Highway Traffic Safety

22  Administration (NHTSA) announced an investigation in April 2019 into other makes,

23  models, and model year vehicles, including some Honda models. *Id*. ¶¶ 13. To date,

24  NHTSA has not ordered Honda to recall any vehicles in response to the investigation,

25  nor has Honda initiated such a recall. *Id*. ¶ 401; *id*. at 203 n.12. And Plaintiffs do not

26  claim the alleged ACU defect has actually manifested in a single Honda Class Vehicle,

27  which are defined to encompass eight Honda and Acura vehicles spanning four model

28

HONDA DEFENDANTS' MOTION TO DISMISS

1    years. *Id*. ¶ 64.[1]

2         In the Amended Complaint, Plaintiffs sued three Honda entities, alleging:

3    - Honda Motor, a Japanese corporation with its principal place of business in Tokyo. *Id*. ¶ 56. Honda Motor designs, develops, manufactures, markets, and sells vehicles. *Id*.

6    - American Honda, a California corporation with its headquarters in Torrance. *Id*. ¶ 57. American Honda is responsible for advertising, marketing, leasing, and selling Honda automobiles throughout the United States, including through a network of authorized dealerships. *Id*.

10   - Honda Development and Manufacturing of America, LLC ("Honda Development"), an Ohio corporation with its principal place of business in Ohio. *Id*. ¶ 58. Honda Development makes Honda vehicles in the United States. *Id*. ¶ 64.

14                              **Argument**

15   **I.    The Court lacks personal jurisdiction over Honda Motor.**

16        As it did in response to the Honda Defendants' initial motion to dismiss, the Court should dismiss all claims against Honda Motor—a Japanese parent company—for lack of personal jurisdiction.

19        When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Bare-bones" assertions of minimum contacts with the forum are insufficient, as are legal conclusions unsupported by specific factual allegations. *See Alperin v. Vatican Bank*, 410 F.3d 532, 539 n.1 (9th Cir. 2005).

---

[1] The Honda Class Vehicles are defined as 2013-2015 Honda Accords; 2012-2015 Honda Civics, including GXs, SIs, and hybrids; 2012-2016 Honda CR-Vs; 2013-2014 Honda Fit EVs; 2012-2017 Honda Fits; 2012-2014 Honda Ridgelines; 2014-2019 Acura RLXs and hybrids; 2012-2014 Acura TLs; 2015-2017 Acura TLXs; and 2012-2014 Acura TSXs and TSX sport wagons. Am. Compl. ¶ 541(u)-(dd).

While the standards for personal jurisdiction have evolved, the fundamental test remains whether maintaining the suit against a foreign defendant violates "traditional notions of fair play and substantial justice"—the standard the Supreme Court set 75 years ago in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction comes in two types: (1) general jurisdiction, which applies when a corporation is so connected with a venue that it is considered "at home" in it and can be sued over any matter in that venue, and (2) specific jurisdiction, which applies when there is "an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). As explained below, Honda Motor is not subject to jurisdiction of either type.

### A.   Honda Motor is a Japanese corporation that is not subject to general jurisdiction in California or anywhere else in the United States.

A company is subject to general jurisdiction in its state of incorporation and where it has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Beyond those scenarios, general jurisdiction is almost never found. Even engaging in "a substantial, continuous, and systematic course of business" in a state is not enough to subject a corporation to general jurisdiction. *Id.* at 137-38.

Plaintiffs have not alleged that Honda Motor is subject to general jurisdiction. *See* Am. Compl. ¶ 371 (alleging only that the Court has specific jurisdiction over Honda Motor). Accordingly, the jurisdictional question before this Court involves specific jurisdiction—not general jurisdiction.

### B.   Honda Motor did not make any of the vehicles purchased by the Honda Plaintiffs, and it lacks sufficient contacts with the relevant forums to make it subject to specific jurisdiction.

Plaintiffs have identified no activity or occurrence in any forum state that might subject Honda Motor to personal jurisdiction in this MDL. It has no presence in those states, and did not even manufacture any of Plaintiffs' vehicles.

The Ninth Circuit uses a three-part test to determine whether a district court may exercise specific jurisdiction over a defendant. It considers whether "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). If any of these criteria are missing, the court lacks jurisdiction. *Id.* Plaintiffs bear the burden of making a prima facie case on the first two criteria; if they meet that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Morrill v. Scott Fin. Corp.*, 873 13 F.3d 1136, 1142 (9th Cir. 2017).

Honda Motor is a Japanese corporation. Am. Compl. ¶ 56; Takahashi Decl. ¶ 2. It did not make any of the Honda Plaintiffs' vehicles; they were all manufactured in the United States or Canada. *See* Jongkind Decl. ¶¶ 2-3; *see* Mattson Decl. ¶¶ 2-3. Nor did Honda Motor take other actions in Japan that might meet the Ninth Circuit's test for specific jurisdiction. To begin, Honda Motor does not advertise, market, design, or develop vehicles in this country. Nor does it sell vehicles in the United States. Instead, it sells vehicles destined for the U.S. market to American Honda, with title transferring dockside in Japan, Takahashi Decl. ¶ 14—although again, none of the Honda Plaintiffs' vehicles were made in Japan or made by Honda Motor, and those Plaintiffs' claims, not those of hypothetical class members, are what matter for jurisdictional purposes. *Szewczyk v. United Parcel Serv., Inc.*, No. 19-cv-1109, 2019 WL 5423036, at *8 (E.D. Pa. Oct. 22, 2019) ("it is well-established that when a single named plaintiff seeks to bring a claim on behalf of a class or collective, that named plaintiff must establish that the court has personal jurisdiction over the defendant with respect to his or her claim.").

Honda Motor also has no offices in the United States, owns no manufacturing plants or other property in the United States, pays no taxes in the United States, maintains no bank accounts in the United States, and has no agent for service of process

in the United States. *Id.* ¶¶ 4-10. Far from purposefully availing itself of the privileges of doing business in this country, Honda Motor's contacts with the United States are sparse at best.

After the Court found it lacked jurisdiction over Honda Motor in response to the first round of motion to dismiss briefing, Plaintiffs amended their complaint and tried to beef up their jurisdictional allegations. But these new allegations are largely just wordier versions of the allegations the Court previously found insufficient. For example, instead of alleging that "Honda Motor Co., Ltd. has brought litigation in United States courts to protect its trademarks from infringement and counterfeiting," Compl. ¶ 248, Plaintiffs now allege, "During the relevant period, Honda Japan purposefully availed itself of the United States' legal protections, including registering and maintaining registrations with the United States government for trademarks associated with its vehicles and parts, which it uses to identify and distinguish its vehicles and parts in the United States, this District, and the transferor jurisdictions. Honda Japan is recognized in the registrations as the owner of the Honda trademarks. Honda Japan has brought litigation in United States courts to protect its trademarks from infringement and counterfeiting." Am. Compl. ¶¶ 373-374. But adding legal conclusions and higher word counts do not transform insufficient allegations into sufficient ones. And even these new, irrelevant allegations are misleading: According to PacerPro, Honda Motor has not filed a trademark case in the United States since 2006. Green Decl. ¶ 2.

The Court was also unpersuaded by Plaintiffs' previous allegation that Honda Motor "regularly submitted applications to obtain certification from the EPA that was necessary for the sale of Honda vehicles in the United States." Compl. ¶¶ 221 (alleging that Toyota applied for EPA certification), 239 (alleging that Honda Motor did the same); Order at 35 ("Because the allegations as to [Toyota] have been found to be insufficient as to the other, related parties, those as to Honda Motor Co. necessarily fail."). For the same reasons that Plaintiffs' allegation about Honda Motor's alleged

efforts to obtain EPA certification cannot support the exercise of personal jurisdiction, their allegations about compliance with other certifications and regulations also miss the mark. *See, e.g.*, Am. Compl. ¶¶ 378, 384 (alleging that Honda Motor designed vehicles to meet federal safety regulations), *id.* ¶¶ 381, 383-385 (alleging that Honda Motor placed certification labels on vehicles with U.S. certifications and took other steps consistent with these certifications), *id.* ¶ 382 (alleging that Honda Motor certified vehicles for sale in the United States). Here again, the new allegations about Honda Motor's supposed involvement in safety certification are misleading: federal regulations (49 C.F.R. §§ 567.4 & 591.5)—not Honda Motor—impose the cited safety certification requirements.

**Pervasive Contacts.** Plaintiffs allege that Honda Motor is subject to specific jurisdiction due to its "pervasive contacts with the United States," Am. Compl. ¶ 371, but that conclusion cannot be true in light of the facts recited above (e.g., the fact that none of Plaintiffs' vehicles were made by Honda Motor; Honda Motor's absence from the United States, etc.). Also irrelevant are the allegations that have nothing to do with the claims at issue in this case, like obtaining EPA approvals to sell cars destined for the U.S. market, *id.* ¶¶ 377-78, 381-85, or owning and protecting trademarks, *id.* ¶¶ 373-75. Even if these allegations involved an act or transaction within the forum, they have nothing to do with Plaintiffs' claims about allegedly defective ACUs. That means they fail the second part of the Ninth Circuit's three-part test: that the claim arise out of Honda Motor's "forum-related activities." *Pebble Beach*, 453 F.3d at 1155.

**Substantial Control.** Ignoring the corporate form and attributing the actions of American Honda and Honda Development—distinct corporate entities—to the ultimate parent, Honda Motor, Plaintiffs allege that Honda Motor exerts substantial control over its U.S. subsidiaries. *See id.* ¶¶ 386-409. But allegations about the ordinary acts of a corporate parent "interacting with its wholly owned subsidiaries in the United States," *id.* ¶ 387, and allowing its directors to visit its subsidiaries, *id.* ¶ 399, cannot establish jurisdiction. As this Court has observed, allegations about "how a corporate parent

normally acts toward a subsidiary" cannot justify the exercise of jurisdiction over the parent. *See Nestle USA, Inc. v. Crest Foods, Inc.*, No. 16-cv-7519, 2017 WL 3267665, at *8 (C.D. Cal. July 28, 2017); *see also Heber v. Toyota Motor Sales, U.S.A.*, 16-cv-161525, 2018 WL 3104612, at *2-3 (C.D. Cal. June 11, 2018), *aff'd in part, rev'd in part on other grounds*, 823 F. App'x 512 (9th Cir. 2020); Takahashi Decl. ¶¶ 11-14 (describing distinctiveness between Honda Motor and U.S. subsidiaries).

Plaintiffs' allegations about normal corporate parent oversight over subsidiaries similarly fail to carry the day. *See, e.g.*, Am. Compl. ¶¶ 398-99 (describing Honda Japan's Corporate Governance Basic Policies), ¶ 400 (describing "supervision and guidance" that Honda Japan's Audit Division provides subsidiaries), ¶¶ 392-93, 398-99 (describing Honda Japan's alleged power to appoint board members to its subsidiaries), ¶ 397 (describing Honda's distribution of Conduct Guidelines to subsidiaries' employees). In determining whether to attribute the conduct of a subsidiary to a parent, the Ninth Circuit requires allegations suggesting that the subsidiary is "merely doing the bidding of the parent." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017); *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-3131, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021). As this Court observed in response to similar allegations earlier in this case, a Japanese parent's corporate governance reports, ability to appoint board members, and code of conduct "would 'demonstrate[] normal oversight of a parent over a subsidiary rather than control such that the subsidiary was . . . merely doing the bidding of the parent.'" Order at 30.

Relatedly, Plaintiffs allege that American Honda's and Honda Development's activities are so important to Honda Motor that "it would perform those services itself" if those two entities did not exist. *See* Am. Compl. ¶ 387. Once again, courts have found this sort of allegation insufficient to support jurisdiction. *See Williams*, 851 F.3d at 1024 (finding that "[a]nything a corporation does through [a subsidiary] is presumably something that the corporation would do 'by other means' if [the subsidiary] did not exist."). Similarly, Plaintiffs' allegations that Honda Motor designed and manufactured

vehicles "with full knowledge" that American Honda would then distribute them across
the United States, Am. Compl. ¶ 381, cannot confer jurisdiction over a company that
did not make any of Plaintiffs' vehicles. In any event, mere knowledge that a subsidiary
will distribute a product is insufficient to support specific jurisdiction. *Williams*, 851
F.3d at 1023 n.3 (finding no specific jurisdiction where parent company knew the
product would be distributed by a subsidiary in California).

Plaintiffs further allege, "upon information and belief," that Honda Motor was
responsible for not recalling Honda vehicles with ZF ACUs. Am. Compl. ¶ 401. The
"information and belief" qualifier makes this allegation dubious, *see Barakezyan v.
BMW of North America, LLC*, No. CV-16-173, 2016 WL 2840803, at *3 (C.D. Cal.
Apr. 7, 2016), but even accepting it as true, this is not the action Plaintiffs are
challenging in this case. They say they were damaged at the point of sale when they
purchased an allegedly defective vehicle, and they believe the presence or absence of a
recall makes no difference. In Plaintiffs' view, "Defendants' fraud has done harm to
Plaintiffs that no recall (or fine by NHTSA) can remedy." Am. Compl. ¶ 21.

Finally, Plaintiffs' allegation that Honda Motor, "upon information and belief,"
bore "ultimate responsibility" for design decisions, *id.* ¶ 379, does not allege actions
that satisfy either the first or second prongs of the Ninth Circuit's test. *See Williams*,
851 F.3d at 1019-20 (upholding dismissal of claims against Japanese parent company
for lack of personal jurisdiction in design defect class action where parent company
"designed and manufactured" allegedly defective product).

Plaintiffs' allegations fall far short of the requirement that Honda Motor have
"purposefully availed" itself of "the privileges of conducting activities in the forum."
All claims against it should be dismissed under Fed. R. Civ. P. 12(b)(2).

**II.     Plaintiff Huitzil lacks standing because he totaled his vehicle, leaving him
without any "injury in fact."**

A plaintiff suing in federal court must establish standing under Article III of the
Constitution by showing three elements: (1) an "injury in fact," (2) causation, and (3)

1  redressability, or a likelihood that "the injury will be 'redressed by a favorable
2  decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 565, 560-561 (1992) (citation
3  omitted). To satisfy the "injury in fact" element, the plaintiff must allege harm that is
4  "'concrete and particularized' and 'actual or imminent, not conjectural or
5  hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

6      The lone Plaintiff from Connecticut, Paul Huitzil, did not suffer a cognizable
7  injury in fact that can satisfy Article III's standing requirement. *See* Am. Compl. ¶¶
8  194-196. Unlike the other Honda Plaintiffs, Huitzil alleges that his Honda vehicle was
9  declared a total loss more than three years ago after an accident. He alleges that the
10  airbags did not deploy, but does not allege that the non-deployment was caused by the
11  alleged defect in his car's ACU. *Id.* ¶ 194.

12      Like other Plaintiffs, Huitzil's claimed injury is limited to economic losses
13  ostensibly arising from alleged overpayment when he bought the car and a diminution
14  in the car's value due to the alleged defect. *Id.* ¶¶ 194-96. But whatever the merits of
15  this theory of injury may be with respect to other Plaintiffs, for Huitzil it is conjectural
16  and hypothetical, not concrete and actual. In addition to failing to allege that his vehicle
17  actually manifested the alleged defect in the accident, Huitzil has failed to allege that
18  his insurance company paid him less for his totaled vehicle than it would have paid but
19  for the allegedly defective ACU. Nor is he in a position to sell the car (or the ACU)
20  after it has been totaled, which means any economic injury, if it ever existed, can never
21  be realized. Accordingly, Connecticut Counts 1, 2, 4, and 6 against the Honda
22  Defendants should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing.

23  **III.  The Court should dismiss Plaintiffs' RICO Claim (Nationwide Count 7) and
24      RICO Conspiracy Claim (Nationwide Count 8) against the Honda
       Defendants because Plaintiffs fail to plead predicate acts of racketeering
25      activity.**

26      To establish RICO liability, Plaintiffs must allege five separate elements: (1) the
27  existence of a RICO "enterprise" distinct from Defendants' ordinary business
28  operations; (2) that Defendants participated in the enterprise through the commission of

11

certain predicate crimes; (3) that the alleged predicate crimes formed a pattern of racketeering activity; (4) that the alleged predicate crimes proximately harmed Plaintiffs; and (5) that Plaintiffs suffered injuries to their business or property. *See, e.g., Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Defendants have jointly addressed Plaintiffs' failure to plead a RICO enterprise. *See* Defs.' Joint Br., Argument § I. Because Plaintiffs fail to meet that element, their RICO claims should be dismissed.

In addition, the RICO claims against the Honda Defendants independently fail because Plaintiffs do not plead sufficient facts alleging the required pattern of racketeering activity, i.e., predicate acts (elements 2 and 3). "[R]acketeering activity" includes "any act which is indictable under" specified statutes. 18 U.S.C. § 1961(1). Plaintiffs premise their RICO claims on mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, which are subject to Rule 9(b)'s heightened "particularity" pleading standard. *See* Order at 63; *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

Following a detailed analysis of Plaintiffs' allegations in their prior complaint, the Court dismissed *all* of Plaintiffs' RICO claims against the Honda Defendants because they failed to adequately allege predicate acts. *See* Order at 62-73. The Court's decision was premised in significant part on Plaintiffs' failure to (1) plead a viable non-disclosure theory, and (2) meet Rule 9(b)'s specificity requirements with respect to the advertisements, labels, and other media that allegedly contained the fraudulent statements. Despite adding hundreds of pages to their Amended Complaint, Plaintiffs' allegations suffer from the same basic shortcomings and should be dismissed again, this time with prejudice.

### A.    Plaintiffs have again failed to plead a non-disclosure theory.

Consistent with their prior complaint, Plaintiffs base a portion of the alleged predicate acts on their claims that the Honda Defendants failed to disclose the alleged

ACU defect. *See, e.g.*, Am. Compl. ¶ 2008. The Court previously dismissed the omission-based claims, holding that Plaintiffs' reliance on the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30118 and 49 C.F.R. § 573.6, was misplaced because that statute did not create a duty to disclose. Order at 64-65 (concluding that "Plaintiffs have not shown a statutory or fiduciary duty to disclose"); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme."). The Amended Complaint now explicitly disavows the Safety Act as a basis for Plaintiffs' omissions theory. *See* Am. Compl. ¶ 2008 n. 42. Instead, Plaintiffs claim that the Honda Defendants' "concealment of the ACU Defect violated several independent duties to disclose it." *See, e.g. id*. ¶ 2008.

Yet Plaintiffs fail to identify *any* "independent duty, such as a fiduciary duty or an explicit statutory duty," to support their omissions claim. *California Architectural*, 818 F.2d at 1472; *see also United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986). For example, they allege—without reference to the origin or basis for the duty—that the Honda Defendants "each had a duty to disclose because they knew that a defect" in the Class Vehicles allegedly created safety concerns. *Id*. ¶ 2008(b); *see also id.* ¶ 1482 (referencing "duty to disclose" without allegations about the basis of the duty). These sorts of generalized allegations are insufficient, as the Court's prior order made clear. *See, e.g.*, *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1156 (D. Haw. 2013) (dismissing fraudulent nondisclosure claim where "Plaintiff fails to allege in the Complaint itself that Kaiser had a duty to disclose or the specific facts and circumstances that created such a duty"); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 601 F. Supp. 2d 1201, 1218 (S.D. Cal. 2009) (same). Because Plaintiffs have again failed to adequately allege "a statutory or fiduciary duty to disclose," Order at 65, the Court should dismiss Plaintiffs' omission-based RICO claims against the Honda Defendants.

**B.      Plaintiffs' predicate acts premised on labeling or advertising are insufficiently pleaded.**

The mail and wire fraud statutes both require "the formation of a scheme to defraud" and "the specific intent to defraud," *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014), and allegations invoking either statute are subject to Rule 9(b)'s requirement that the pleader identify the "who, what, when, where and how of the misconduct charged," *Mostowfi*, 269 F. App'x at 623-24. When, as here, Defendants have operated "legitimate businesses for years …, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 997–98.

The Court previously dismissed all RICO claims against the Honda Defendants largely because of Plaintiffs' failure to meet Rule 9(b)'s exacting particularity requirements. *See* Order at 65-73. The Amended Complaint likewise falls short of the Rule's threshold for at least two reasons. *First*, although Plaintiffs attach various examples of Monroney labels, advertisements, and statements about vehicle safety, *see* Am. Compl. Exs. 7 (Monroney labels), 11 (advertisements), 18 (statements in manuals), they fail to allege which Plaintiff saw which label, advertisement, or manual, or even to identify what within those statements was fraudulent. Plaintiffs' Exhibit 19 highlights this shortcoming. While the Amended Complaint promises that Exhibit 19 "identifies the paragraphs where each Plaintiff alleged the specific representations that they reviewed and relied upon," Am. Compl. ¶ 1486, the paragraphs pertinent to each named Honda Plaintiff include only generalized references to the Plaintiff viewing "representations and statements on Honda's website" or "the Monroney sticker"— *without* identifying which particular statement on the website or the sticker is being referenced. *See, e.g.*, Am. Compl. ¶ 204 (Plaintiff Ravichandran Namakkal), ¶ 201 (Brian Chaiken). This flunks Rule 9(b)'s "what" requirement and leaves the Honda Defendants guessing about which statements were allegedly fraudulent. *See Kearns v.*

1  *Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (upholding dismissal on Rule 9(b)

2  grounds where complaint did not "specify what the television advertisements or other

3  sales material *specifically stated*") (emphasis added); *Vess v. Ciba-Geigy Corp. USA*,

4  317 F.3d 1097, 1106 (9th Cir. 2003) (requiring that defendants be given "notice of the

5  particular conduct" being challenged).[2]

6      *Second*, because Plaintiffs do not sufficiently allege what specific materials they

7  reviewed, they cannot allege that "had the omitted information been disclosed [they]

8  would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 858 P.2d

9  568, 574 (Cal. 1993). Although Plaintiffs claim they "would not have purchased the

10 Honda Class Vehicles, or would not have paid as much as they did for them" had they

11 known about the alleged defect, *see, e.g.,* Am. Compl. ¶ 2027, the fact that they cannot

12 state with particularity what information they *did* review means they cannot "explain[]

13 how [they] would have been aware of the information about the [alleged defect] even if

14 Defendant had disclosed it." *Grassi v. Int'l Comfort Prods., LLC*, 2015 WL 4879410,

15 at *5 (E.D. Cal. Aug. 14, 2015).

16      **C.    Plaintiffs' predicate acts based on ZF's and STMicro's**
17           **communications with each other and the Honda Defendants also fail.**

18      Plaintiffs next assert that the alleged predicate acts included ZF and STMicro's

19 sending invoices, corresponding with each other, and shipping defective ACUs. *See,*

20 *e.g.*, Am. Compl. ¶¶ 1974 (ZF Electronics USA "received orders from Honda [Motor]

21 and Honda [Development]"), ¶ 1975 (correspondence between ZF Electronics USA and

22 ST USA that "required ST USA to ship millions of defective DS84 ASICS"), 2001

23 (identifying invoices between the entities). These allegations are insufficient for two

24

25  _____
    [2] Plaintiffs' continuing inability to adequately allege facts on this front is particularly
26  notable in light of the fact that Defendants raised the same argument before. *See* Dkt.
    208 (Defs.' Joint Motion to Dismiss) at 15-16 ("While Plaintiffs attach 'examples' of
27  each Vehicle Manufacturer Defendant's Monroney labels, advertisements, and
    statements regarding vehicle safety . . . they do not detail . . . which Plaintiffs saw what,
28  which Defendant said what, and when, where, and how each individual Plaintiff was
    allegedly deceived.").

1  reasons.

2   *First*, Plaintiffs do not allege anything fraudulent about the referenced invoices,

3  correspondence, or shipping practices—*e.g.*, that the invoices or correspondence

4  contained false information. Equally important, although Plaintiffs claim to identify

5  specific invoices and correspondence, they fall far short of explaining "who at each

6  company was in contact, what they were in contact about," and other information

7  necessary to allege that the communications were something other than routine business

8  activities. *See, e.g.*, *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1235 (S.D. Fla. 2017)

9  (dismissing RICO claims when plaintiffs alleged "'regular contact' between"

10 defendants but did "not mention who at each company was in contact, what they were

11 in contact about, or when, where, and how these communications occurred …let alone

12 the precise detail required by Rule 9(b).").

13  *Second*, setting aside Plaintiffs' continuing failure to adequately plead their

14 claims, ZF's or STMicro's routine invoicing, correspondence, and shipping practices

15 are not actionable mail or wire fraud. The mail and wire fraud statutes do not criminalize

16 all alleged fraud that uses the mails or wires. Rather, they require a false communication

17 intended (1) to "deprive another of the intangible right of honest services"; (2) "to sell,

18 dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for

19 unlawful use any counterfeit or spurious coin, obligation, security, or other article"; or

20 (3) to "obtain[] money or property" from the victim. 18 U.S.C. §§ 1341, 1343, 1346;

21 *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud

22 statutes share the same language in relevant part, and accordingly we apply the same

23 analysis to both sets of offenses"). In short, they require a scheme to obtain money or

24 property, or to carry out a scheme of bribes and kickbacks. *See Skilling v. United States*,

25 561 U.S. 358, 368–69 & n.1 (2010).

26  Plaintiffs do not allege a bribery or kickback scheme. Nor do they allege a scheme

27 "to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or

28 procure for unlawful use" any counterfeit or spurious articles. 18 U.S.C. § 1341.

Plaintiffs therefore must rely on a purported scheme to "obtain[] money or property." *Id*. § 1343. At best, however, Plaintiffs' allegations suggest that ZF used the mail or wires to obtain money or property *from Honda* (the party purchasing the allegedly defective ACUs)—not from Plaintiffs. And as to STMicro, there is no allegation that it ever sold anything to the Honda Defendants, let alone to Plaintiffs. *See* Am. Compl. ¶ 7 (indicating that the ST entities' role was to sell the DS84 chip to the ZF entities). Neither is sufficient. *Cf. Leon*, 301 F. Supp. 3d at 1206 (dismissing RICO claim where "Plaintiffs never allege what each Airbag Manufacturer Defendant stood to gain from the alleged acts of mail and wire fraud or how those acts deceived Plaintiffs as opposed to vehicle manufacturer clients").

### D. Plaintiffs' RICO conspiracy claim nationwide (Count 8) should likewise be dismissed.

Plaintiffs also allege a RICO conspiracy claim under 18 U.S.C. § 1962(d) as to the alleged Honda/ZF/ST enterprise. This claim is entirely derivative of the substantive RICO claim, Am. Compl. ¶¶ 2035 & 2040—the allegations underpinning Count 8 are essentially the same as those for Count 7, with an added gloss of legal conclusions alluding to a generalized conspiracy. *See, e.g., id*. ¶ 2038 ("The words, actions, or interdependence of activities of each of these Defendants support the inference of an agreement."), ¶ 2075 ("The success of the Honda-ZF-ST Enterprise's fraudulent scheme depended upon ST USA, ST Italy, and ST Malaysia, ZF Passive Safety USA, ZF Electronics USA, and ZF Automotive USA's cooperation. All these companies had to maintain strict confidence…."). Notably, Plaintiffs plead no facts showing any unlawful agreement among the alleged conspirators, aside from general allegations that each "knew of the activities" of the other. *See, e.g., id*. ¶¶ 2044, 2053, 2055. Moreover, many of the allegations are alleged "on information and belief," rendering them categorically insufficient as Plaintiffs fail to indicate the factual basis for their supposed information and belief. *See, e.g., id*. ¶¶ 2053, 2060, 2065; *see, e.g., Goh v. Prima Fin. Grp., Inc.*, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017). These bare-bones

allegations do not satisfy basic federal pleading requirements, let alone the heightened requirements of Rule 9(b), which requires particularized allegations that each defendant "agreed to participate in an unlawful act." *Lavigne v. Herbalife, LTD*, No. 18-cv-7480, 2019 WL 6721619, at *9 (C.D. Cal. Oct. 22, 2019).

In any event, "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *see also, e.g., Lavigne*, 2019 WL 6721619, at *9. Since they have failed to do so here, their RICO conspiracy claim should be dismissed.

## IV.     Plaintiffs' remaining claims should be dismissed for failure to state a claim under Rule 12(b)(6).

To the extent any of Plaintiffs' claims survive the arguments articulated in Defendants' joint brief or the arguments outlined above, they should be dismissed under Rule 12(b)(6) for failure to state a claim. Rule 12(b)(6) is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). A complaint must contain "enough facts to state a claim to relief that is plausible on its face," and these facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007). Plaintiffs may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are "merely consistent" with unlawful conduct, but are also consistent with lawful conduct, are insufficient. *Id*.

In ruling on a motion to dismiss, courts may consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice.[3] *Gonzalez v.*

---

[3] On February 9, 2022, the Court granted Honda's Request for Judicial Notice, taking notice of the warranty booklets for the 2012 Honda Civic, 2013 Honda Accord, 2013 Honda Civic Hybrid, 2014 Honda CR-V, 2014 Honda Civic, 2015 Honda Civic, and 2015 Acura TLX.

*Law Off. of Allen Robert King*, 195 F. Supp. 3d 1118, 1124-25 (C.D. Cal. 2016) (citing *United States v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### A. Plaintiffs fail to sufficiently allege that the Honda Defendants knew of the alleged defect when Plaintiffs bought their vehicles.

Plaintiffs' failure to plead that the Honda Defendants knew of the alleged ACU defect when they purchased their vehicles requires the dismissal of Plaintiffs' nationwide RICO claims, as well as their consumer protection claims under the laws of Alabama, California, and Texas.[4] As was the case at the time of the last motion to dismiss filing, neither NHTSA nor the Honda Defendants have found a defect relating to the ACUs in Honda vehicles. Plaintiffs nevertheless claim the Honda Defendants "knew" of a defect almost a decade ago.

To support their conclusion, Plaintiffs point to consumer complaints about airbag non-deployments as evidence that the Honda Defendants "knew" of the alleged defect before sale. *See* Am. Compl. ¶¶ 531, 1055-1056. This type of allegation does not plausibly plead pre-sale knowledge. *See, e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-48 (9th Cir. 2012) (finding complaints insufficient in part because they "merely establish the fact that some consumers are complaining" and therefore "are insufficient to show that [the manufacturer] had knowledge [of the defect]" (citation omitted)); *Herremans v. BMW of N. Am., LLC*, No. 14-cv-2363, 2014 WL 5017843, at *2 (C.D. Cal. Oct. 3, 2014).

Likewise unavailing is Plaintiffs' reliance on testing they say took place in 2012 and 2014 involving an Australian Honda Accord and Japanese Honda City, respectively, along with references to isolated airbag non-deployments. *See, e.g.,* Am.

---

[4] *See, e.g., Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) (under Alabama Deceptive Trade Practices Act, plaintiff must allege defendant knew of the fact that was allegedly concealed); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss."); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.3d 472, 479 (Tex. 1995) ("To be actionable under the DTPA, a failure to disclose material information necessarily requires that the defendant have known the information and have failed to bring it to the plaintiff's attention.").

Compl. ¶¶ 1057-1079 (testing); 1084-1091 (alleged inadvertent deployments). Plaintiffs never explain how testing of these vehicles or exceedingly rare airbag non-deployments translate to knowledge of a systemic defect in the different vehicles at issue in this case. *Id*. ¶ 1052. Adding to the speculative nature of their allegations, Plaintiffs note that "an inadvertent airbag deployment without a crash event can be a sign of ASIC EOS." *Id*. ¶ 1084. But virtually all vehicle parts can be "vulnerable" to various forces that "could" lead to problems, and simply identifying a handful of such instances does not constitute pre-sale "knowledge" of a defect. *Grodzitsky v. American Honda Motor Co.*, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) (dismissing claims for failing to sufficiently allege knowledge and rejecting allegations that defect could be inferred from consumer complaints, aggregate dealer data, pre-release testing, and other "speculative" sources); *see also Wilson*, 668 F.3d at 1146-48. The question here is whether Plaintiffs have plausibly pleaded that the Honda Defendants *knew* of a "defect" prior to sale. Rather than doing that, Plaintiffs allege that various Defendants took steps after the tests described above—before any Plaintiffs bought their vehicles—to strengthen Honda vehicles' resistance to electrical overstress. *Id*. ¶ 1094.

In sum, because Plaintiffs fail to allege that the Honda Defendants knew about the defect before they purchased the vehicles, their RICO claims and their consumer fraud claims in Alabama (Count 3), California (Count 4), and Texas (Count 2) should be dismissed.

**B.   The Honda Plaintiffs' claims for breach of the implied warranty of merchantability are both untimely and legally deficient.**

Plaintiffs accuse the Honda Defendants of breaching the implied warranty of merchantability under the laws of five states—Alabama, California, Connecticut, Florida, and Texas. *See* Am. Compl. ¶¶ 2222-2233, 2392-2411, 2650-2661, 2751-2768, 4335-4349. Plaintiffs' claims under California, Connecticut, Florida, and Texas law were filed between two and four years too late under the express terms of the Honda limited warranty, which modified the duration of any implied warranty of

merchantability. The laws of those state make clear that these modifications are allowed if the language altering the warranty mentions "merchantability" and is "conspicuous."[5] Language is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it," and explicitly includes "[l]anguage in the body of a record or display . . . in contrasting type, font or color to the surrounding text of the same size."[6]

The limited warranty excerpted above at page 3 easily satisfies these requirements. It explicitly references "merchantability": **"Any implied warranties, including the implied warranty of merchantability and fitness for a particular purpose, are limited to the duration of this written warranty."** It also details the implied warranty's duration, using bolded text to distinguish this language from the surrounding text. *See id.*; RJN, Exs. 1 at 38, Exs. 2-7 at 39. Because most of the implied warranties of merchantability ended years ago, having expired in 2016 (Burns, Huitzil, McPherson, and Chaiken) and 2018 (Bowens), these claims must be dismissed. *See, e.g.*, *Lucas v. Subaru of Am., Inc.*, No. 03-cv-476082, 2005 WL 1155009, at *6 (Conn. Super. Ct. Apr. 20, 2005); *Missaghi v. Apple, Inc.*, No. 13-cv-2003, 2013 WL 12203021, at *5 (C.D. Cal. May 31, 2013); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (Florida); *Helicopter Consultants of Maui, Inc. v. Thales Avionics Inc.*, No. 3:08-CV-24, 2010 WL 11565653, at *4 (N.D. Tex. Apr. 8, 2010).

In addition, Plaintiffs do not allege that the defect has manifested in any Honda vehicles, providing another basis for the Court to dismiss the implied warranty claims under Texas and Alabama law. *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1053 (S.D. Tex. 2016) (noting "extensive body of case law indicating that Texas law does not permit plaintiffs to recover unless they have experienced some injury to a product with a limited usable life"); *Ford Motor Co. v. Rice*, 726 So. 2d 626, 629 (Ala.

---

[5] Cal. Com. Code § 2316; Conn. Gen. Stat. Ann. § 42a-2-316; Fla. Stat. Ann. § 672.316; Tex. Bus. & Com. Code § 2.316.
[6] Conn. Gen. Stat. Ann. § 42a-1-201; Fla. Stat. Ann. § 671.201; Tex. Bus. & Com. Code § 1.201.

1998) (acknowledging that "courts have generally concluded that claims based upon allegations of inherent product 'defects' that have not caused any tangible injury are not viable"). Plaintiffs also fail to allege that they were in privity with American Honda, as required by California, Connecticut, and Florida law. *See, e.g.*, Order at 127 (California), 136 (Connecticut), 139 (Florida); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 786–87 (N.D. Cal. 2017) (privity required under California law); *In re Seagate Tech. LLC Litig.*, 2017 WL 3670779, at *7–10 (N.D. Cal. Aug. 25, 2017) (same for Florida); *Koellmer v. Chrysler Motors Corp.*, 276 A.2d 807, 812 (Conn. 1970) (same for Connecticut).

For the reasons outlined above, the Court should dismiss California Count 1, Connecticut Count 1, Florida Count 2, Alabama Count 2, and Texas Count 1 against the Honda Defendants.

### C. The Honda Plaintiffs' express warranty claims are likewise untimely and legally deficient.

Plaintiffs' express warranty claims are based on the Honda Defendants' alleged failure to repair the ACU in their vehicles pursuant to the Limited Warranty. Am. Compl. ¶¶ 2214-2218, 3870-3874, 2742-2747. But the Complaint does not allege that the warrantor, American Honda, failed to honor its obligations before the warranty expired. This omission alone disposes of the Honda Plaintiffs' express warranty claims under the laws of Alabama and Florida.[7] "The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986).

The Honda Plaintiffs' express warranty claims under North Carolina law should be dismissed even though courts in that jurisdiction have not yet addressed the precise scenario before the Court. Express warranty claims in North Carolina require a breach,

---

[7] *Accord Cent. Mining, Inc. v. Simmons Mach. Co.*, 547 So. 2d 529, 531 (Ala. 1989) (affirming dismissal under Alabama law where plaintiff did not seek warranty repair or replacement until express warranty expired); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013) (same under Florida law).

meaning a claim that American Honda failed to uphold its obligations under the express warranty. *See, e.g., Ford Motor Credit Co. LLC v. McBride*, 811 S.E.2d 640, 646 (N.C. Ct. App. 2018). Because those obligations were expressly limited in time, and because Plaintiffs did not seek repairs during that window, those claims too should be dismissed.

Apart from the timeliness issue, the Honda Plaintiffs have failed to allege that they presented their vehicles for repair at a Honda dealer, as required under the limited warranty. Their conclusory claims about the alleged futility of doing so fall short of what the law requires. *See, e.g.*, *Benkle v. Ford Motor Co.*, No. 16-cv-1569, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) (finding that plaintiffs adequately alleged futility where vehicle manufacturer had already replaced defective part with the same part that was "substantially certain to fail again"). These shortcomings independently require dismissal of the express warranty claims. *See, e.g.*, *Barakezyan*, 2016 WL 2840803, at *6. And because American Honda is the sole warrantor of the limited warranties, Honda Motor cannot have breached those warranties. *See Cipollone v. Liggett Group*, 505 U.S. 504, 525-26 (1992).

The Court should dismiss Alabama Count 1, Florida Count 1, and North Carolina Count 1 against American Honda and Honda Motor.

### D.   Plaintiff's Song-Beverly claim is untimely.

For new consumer goods, the duration of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act cannot exceed one year. Cal. Civ. Code § 1791.1(c) (stating "in no event" shall the implied warranty last "more than one year following the sale of new consumer goods to a retail buyer"). Plaintiff Burns alleges that he purchased his Honda vehicle in 2013, Am. Compl. ¶¶ 191-193, but does not allege that he experienced any problems within a year of purchasing it. His Song-Beverly claim is therefore untimely, and California Count 2 should be dismissed against the Honda Defendants.

### E.    Plaintiffs' unjust enrichment claims improperly duplicate their express warranty claims and are otherwise deficient.

Alabama, California, Connecticut, Florida, New York, North Carolina, and Texas prohibit Plaintiffs from asserting unjust enrichment claims alongside express warranty claims.[8] In these states, the precise parameters of the express warranty, not the elastic bands of equity, determine the scope of a defendant's duty. In relying on the limited warranty to assert claims for unjust enrichment, Plaintiffs attempt to do what courts have forbidden.

Apart from that problem, Plaintiffs Huitzil, McPherson, Chaiken, and McNeely purchased their vehicles on the used car market and therefore have no plausible unjust enrichment claim against any of the Honda Defendants. Although they allege that they conferred a benefit on the Honda Defendants, they fail to explain how that might be true given the distance between them and any Honda Defendant. Plaintiffs bought nothing from any Honda Defendant. Courts routinely dismiss these types of unjust enrichment claims. *See*, *e.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842- 43 (S.D. Ohio 2012) (dismissing unjust enrichment claim because plaintiff failed to demonstrate that he conferred a benefit on vehicle manufacturer); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-4558, MDL No. 1687, 2011 WL 601279, at *6

---

[8] *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1327 (S.D. Fla. 2020) (under Florida law, "a plaintiff cannot maintain a claim for unjust enrichment if there is an express warranty governing the plaintiff's rights"); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248-249 (S.D.N.Y. 2019) (dismissing unjust enrichment claim under New York law where it duplicated breach of express warranty claim); *Zuehlsdorf v. FCA US LLC*, No. CV 18-1877, 2019 WL 2098352, at *13 (C.D. Cal. Apr. 30, 2019) (dismissing unjust enrichment claim under California law where plaintiff also alleged breach of contract claim based on the same transaction); *Whittington v. Mobiloil Fed. Credit Union*, No. 16-CV-482, 2017 WL 6988193, at *16 (E.D. Tex. Sept. 14, 2017) (finding unjust enrichment claim unavailable under Texas law where parties' relationship was governed by contract); *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 147-48 (D. Conn. 2015) (concluding that plaintiff cannot plead an unjust enrichment claim under Connecticut law if he also alleges an express contract); *Selby v. Goodman Mfg. Co., LP*, No. 13-CV-2162, 2014 WL 2740317, *6 (N.D. Ala. June 17, 2014) (dismissing unjust enrichment claim under Alabama law where plaintiff also pleaded express limited warranty); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005) (unjust enrichment claims may not be brought under North Carolina law where parties' relationship is governed by contract).

1   (D.N.J. Feb. 16, 2011) (finding that plaintiff who bought a used vehicle from authorized
2   dealer failed to state an unjust enrichment claim under California law).

3       Finally, to the extent brought under California or Texas law, the Honda Plaintiffs'
4   unjust enrichment claims should be dismissed because unjust enrichment in those states
5   is not an independent cause of action. *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F.
6   Supp. 3d 943, 961 (S.D. Tex. 2014); *Walker v. Equity 1 Lenders Grp.*, No. 09-cv-325,
7   2009 WL 1364430, at *9 (S.D. Cal. May 14, 2009).

8       The Court therefore should dismiss Alabama Count 7, California Count 8,
9   Connecticut Count 6, Florida Count 7, New York Count 6, North Carolina Count 4, and
10  Texas Count 6 against the Honda Defendants.

### F.   Plaintiff Burns has no basis to seek injunctive relief under the Consumers Legal Remedies Act.

13      As the Supreme Court has made clear, "[t]he equitable remedy is unavailable
14  absent a showing of irreparable injury, a requirement that cannot be met where there is
15  no showing of any real or immediate threat that the plaintiff will be wronged again—a
16  'likelihood of substantial and immediate irreparable injury." *City of L.A. v. Lyons*, 461
17  U.S. 95, 111 (1983). Consistent with this rule, California courts have "adopted the
18  majority position that '[a plaintiff] must allege that [he or she] intends to purchase the
19  products at issue in the future' to establish standing for injunctive relief." *Romero v.
20  HP, Inc.*, No. 16-cv-5415, 2015 WL 386237, at *9 (N.D. Cal. Jan. 27, 2017).

21      Here, the Amended Complaint does not allege that Plaintiffs intend to purchase
22  another Honda vehicle in the future. Plaintiff Burns' request for an injunction under the
23  Consumers Legal Remedies Act (California Count 4), Am. Compl. ¶¶ 2457-2481,
24  should therefore be dismissed.

### G.   Plaintiff Rubio's claim under the Alabama Deceptive Trade Practices Act should be dismissed because he is already pursuing a common law fraud claim.

27      The plain text of the Alabama Deceptive Trade Practices Act makes clear that
28  Plaintiff Rubio cannot pursue both a statutory and common law claim: "[A]n election

to pursue the civil remedies prescribed in this chapter shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this section." Ala. Code § 8-19-15; *see also Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-cv-837, 2018 WL 4635734, at *8 (N.D. Ala. Sept. 27, 2018) (plaintiffs "cannot pursue both a statutory or common law fraud claim together with a claim under ADTPA"). By asserting claims under both the Alabama statute and a fraud by omission and concealment claim, Rubio is violating this rule. Am. Compl. ¶¶ 2231-2251, 2271-2285.

In the alternative, the Court should strike Rubio's request for injunctive relief—a remedy available only to address future wrongs, not past conduct. *Phillips*, 2018 WL 4635734, at *9 (dismissing ADTPA claim where plaintiff failed to allege it would ever purchase the relevant product again). Rubio's Alabama statutory claim is premised entirely on past conduct, not future harm. *See, e.g.*, Am. Compl. ¶¶ 2241-2247. Although he claims the alleged violations present a continuing risk, *see id.* ¶ 2248, this is belied by his knowledge of the alleged defect.

The Court therefore should dismiss Alabama Count 3 against the Honda Defendants or, at a minimum, strike the claim's request for injunctive relief.

### H. Consumer protection claims against the Honda Defendants not accused of advertising, marketing, or selling Class Vehicles should be dismissed.

Plaintiffs bring an assortment of consumer protection claims against the Honda Defendants, but Plaintiffs' own allegations show that not all of the Honda Defendants engaged in the type of consumer-facing conduct necessary to fall within the scope of these claims. The consumer claims based on false advertising or alleged misrepresentations, or that otherwise require consumer-directed behavior, should be dismissed as to the Honda Defendants that do not advertise, market, or sell the Honda Class Vehicles: Honda Motor, which did not manufacture, sell, or market any of the

Honda Plaintiffs' vehicles, *see* Jongkind Decl. ¶ 3; Am. Compl. ¶ 56, and Honda Development, which is alleged to be involved in "the design, development, prototyping, testing, and manufacturing of Honda vehicles," Am. Compl. ¶ 58.

Neither Honda Motor nor Honda Development is a legitimate target under the circumstances alleged here. For example, the California False Advertising Law prohibits "'untrue or misleading' statements in connection with the sale of property." *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Cal. Bus. & Prof. Code § 17500). Similarly, the claims under New York General Business Law §§ 349 and 350 require "consumer-oriented" conduct that is materially deceptive. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). "To be consumer-oriented, conduct must have a 'broad impact on consumers at large.'" *In re NJOY, Inc.*, No. cv 14-00428, 2014 WL 12586074, at *14 (C.D. Cal. Oct. 20, 2014). Although Plaintiffs' claims center around conclusory allegations that Honda Motor and Honda Development advertised, marketed, and sold vehicles with characteristics that were different than advertised, nowhere do Plaintiffs plausibly allege that Honda Motor or Honda Development actually engaged in this conduct. To the contrary, the Amended Complaint makes clear that American Honda—not Honda Motor or Honda Development—allegedly was responsible for consumer-facing conduct, such as the content on Honda's website, in advertising, and in "brochures distributed in the United States." *See, e.g.*, Am. Compl. ¶¶ 189, 192.

Accordingly, the Court should dismiss California Count 3 and New York Counts 1 and 3 against Honda Motor and Honda Development.

**I.    The Court should dismiss state law claims that require a showing of causation or reliance.**

Plaintiffs' claims under state statutes requiring reliance or causation should be dismissed because Plaintiffs have not adequately alleged which specific statements they saw or heard, which specific statements they relied on, or which specific statements caused them to buy a Honda Class Vehicle. The Honda Defendants already have

1    detailed the individual Plaintiffs' shortcomings with respect to identifying which

2    specific statements they heard, which stickers they observed, or which advertisements

3    they consumed. *See* Argument § III(B) *supra*; Defs' Joint Br. Argument § II(B). That

4    failure rears its head here again because a plaintiff who fails to allege what he or she

5    relied on cannot adequately allege reliance or causation.

6            In light of this shortcoming, the Court should dismiss Plaintiffs' statutory claims

7    under the laws of the states listed in the footnote.[9] *First*, California Counts 3, 4, and 5

8    require a plaintiff to "allege reliance on the specific marketing materials claimed to [be]

9    misleading in order to establish standing to bring claims under the UCL, FAL, or

10   CLRA." *Simon v. SeaWorld Parks & Ent., Inc.*, No. 21-CV-1488, 2022 WL 1594338,

11   at *3 (S.D. Cal. May 19, 2022) (collecting cases). In *Simon*, the court was unmoved by

12   "vague and general allegations about the website and language on the ticket that

13   Plaintiff claims led him to have certain beliefs," because the plaintiff failed to identify

14   "what statements he saw there, and which of those statements he relied upon in making

15   his purchase." *Id*. at *4. So too here. Plaintiff Kevin Burns—the only California Plaintiff

16   with claims against the Honda Defendants—relies on generalized allegations, referring

17   to "representations and statements on Honda's website" and an unidentified "in-vehicle

18   airbag label." Am. Compl. ¶ 192. Hazy allegations like that do not suffice.

19           *Second,* claims under New York Gen. Bus. Law § 349—pertinent to New York

20   Count 1—require allegations that a plaintiff suffered injury "*as a result of* the allegedly

21   deceptive act." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)

22   (emphasis added). To allege causation, "a plaintiff must state in his complaint that he

23   has seen the misleading statements of which he complains before he came into

24   possession of the products he purchased." *Goldemberg v. Johnson & Johnson*

25   *Consumer Cos*., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *accord In re NJOY, Inc.*, 2014

26

27   [9] *See Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *15 (S.D.
     Fla. Feb. 7, 2017) (concluding that, consistent with Florida law, "[t]he consumer
28   protection statutes for California, Michigan, Minnesota, North Carolina and Texas all
     require a showing of actual reliance on a defendant's misrepresentations").

WL 12586074, at *15. While the Amended Complaint alleges that the New York Plaintiffs' "reliance was reasonable," Am. Compl. ¶ 3814, nowhere does it allege which statements the only Honda-specific plaintiff from New York actually saw, *id.* ¶ 204 (referring to generalized "representations and statements on Honda's website"). New York Count 1 therefore should be dismissed.

The same analysis applies to North Carolina Count 2, brought pursuant to the North Carolina Unfair and Deceptive Trade Practices Act; Texas Count 2, brought pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act; Connecticut Count 2, brought pursuant to Connecticut's Unlawful Trade Practices Act; and Florida Count 3, brought pursuant to Florida's Deceptive and Unfair Trade Practices Act. *See Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226-27 (N.C. 2013) (holding that plaintiff must have "affirmatively incorporated the alleged misrepresentation into his or her decision-making process"); Tex. Bus. & Com. Code § 17.50(a)(1)(B) (requiring that offending act be "relied on by a consumer to the consumer's detriment"); *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 94 (2019) (holding that "standing to bring a CUTPA claim will lie only when the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries"); *Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017). Like the other Plaintiffs discussed above, Plaintiffs Tonya McNeely (North Carolina), Angela Bowens (Texas), Paul Huitzil (Connecticut), and Fredericka McPherson (Florida) fail to identify the particular statements or misrepresentations they saw and relied on. *See* Am. Compl. ¶¶ 206 (McNeely), 210 (Bowens), 194 (Huitzil), 198 (McPherson).

In sum, the Court should dismiss California Counts 3, 4, and 5; New York Count 1; North Carolina Count 2; Texas Count 2; Connecticut Count 2; and Florida Count 3 against the Honda Defendants.

1

**Conclusion**

2         For the foregoing reasons and those detailed in Defendants' Joint Motion to

3   dismiss Plaintiffs' Consolidated Class Action Complaint, the Honda Defendants

4   respectfully request that the Court dismiss all claims against the Honda Defendants with

5   prejudice.

6

7   Dated: August 2, 2022                    Respectfully submitted,

8                                            SIDLEY AUSTIN LLP

9                                            */s/ Eric S. Mattson*

10                                           Eric S. Mattson

11                                           *Attorney for Defendants Honda Motor*
                                             *Co., Ltd., American Honda Motor Co.,*
12                                           *Inc., and Honda Development and*
13                                           *Manufacturing of America, LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on August 2, 2022, a copy of the Honda Defendants' Motion to Dismiss was served electronically through the court's electronic filing system upon all parties appearing on the court's ECF service list.

*/s/ Eric S. Mattson*
Eric S. Mattson

*Attorney for Defendants Honda Motor Co., Ltd., American Honda Motor Co., Inc., and Honda Development and Manufacturing of America, LLC*