Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
Scott H. Morgan
smorgan@thompsoncoburn.com
Kacey R. Riccomini (SBN 292340)
kriccomini@thompsoncoburn.com
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, Missouri  63101
Tel:  (314) 552-6000 / Fax:  (314) 552-7000

*Attorneys for Defendant FCA US LLC*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re ZF-TRW Airbag Control Units Products Liability Litigation*<br><br>ALL CASES | MDL No. 2905<br><br>Case No. 2:19-ml-02905-JAK-FFM<br><br>Judge:  John A. Kronstadt<br><br>**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[CLASS ACTION]**<br><br>Date:  TBD<br>Time: 8:30 a.m.<br>Courtroom: 10B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this Motion may be heard in Courtroom 10B of the above-captioned court, located at 350 West First Street, Los Angeles, CA 90012, Defendant FCA US LLC ("FCA US") will and hereby does move this Court for an order, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Consolidated Amended Class Action Complaint ("CACAC"), in its entirety.  The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and materials cited therein, and on such other and further matters as may be presented to the Court at or prior to the hearing.

This Motion is made following conferences between counsel held pursuant to L.R. 7-3, which took place on July 26, 2022.

Dated:  August 2, 2022

**THOMPSON COBURN LLP**

By: */s/ Stephen A. D'Aunoy*

Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
Scott H. Morgan
smorgan@thompsoncoburn.com
Kacey R. Riccomini (SBN 292340)
kriccomini@thompsoncoburn.com
One U.S. Bank Plaza
St. Louis, Missouri  63101
Telephone:  (314) 552-6000

*Attorneys for Defendant FCA US LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................1

II.   RELEVANT FACTS .................................................................................1

    A.    Allegations Regarding Plaintiffs' Vehicle Purchases. ..........................1

    B.    The Alleged Defect.............................................................................2

    C.    The 2016 Recall and the Ongoing NHTSA Investigation....................3

    D.    The Warranties for Plaintiffs' Vehicles...............................................4

    E.    The Classes, Claims Pleaded, Alleged Injuries, And Relief Sought.............................................................................................5

III.  ARGUMENT .............................................................................................6

    A.    Dismissal Under Rule 12(b)(1). ..........................................................6

    B.    Dismissal Under Rule 12(b)(6). ..........................................................8

        1.    The RICO Claims (Nationwide Counts 3, 4)..............................8

        2.    The Express Warranty Claims..................................................11

        3.    The Implied Warranty Claims..................................................14

        4.    The Consumer Protection and Fraud Claims. ...........................15

        5.    Unjust Enrichment...................................................................25

IV.   CONCLUSION........................................................................................26

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahern v. Apple, Inc.*, 2019 WL 5102621 (N.D.Cal. 2019) ........................................21

*Alcorn v. BP Prod. N. Am., Inc.*, 2004 WL 1745761 (D.Minn. 2004) ....................25

*Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F.Supp.2d 1331
    (S.D.Fla. 2013) ........................................................................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................8

*Baba v. Hewlett-Packard Co.*, 2011 WL 317650 (N.D.Cal. 2011) ........................20

*Baker v. Trans Union LLC*, 2008 WL 2329099 (D.Ariz. 2008) ............................26

*Beck* v. *FCA US LLC*, 273 F.Supp.3d 735 (E.D.Mich. 2017) ................................21

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ................................................................8

*Blissard v. FCA US LLC*, 2018 WL 6177295 (C.D.Cal. 2018)........................14, 21

*Boudreau v. Baughman*, 322 N.C. 331 (1988)........................................................12

*Bristow First Assembly of God v. BP p.l.c.*, 210 F.Supp.3d 1284
    (N.D.Okla. 2016)................................................................................................*passim*

*Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013) ....................13

*Buckley v. BMW N.Am.*, 2019 WL 6465509 (C.D.Cal. 2019) ................................15

*Burnette v. Nicolet, Inc.*, 818 F.2d 1098 (4th Cir. 1986) ........................................23

*Cheval Int'l v. Smartpak Equine, LLC*, 2016 WL 1064496 (D.S.D.
    2016)........................................................................................................................18

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ......................13

*Cole v. NIBCO, Inc.*, 2016 WL 10536025 (D.N.J. 2016) (Oklahoma)....................18

*Damon v. Groteboer*, 937 F.Supp.2d 1048 (D.Minn. 2013)....................................24

*Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F.Supp.3d 1202
    (W.D.Okla. 2015)....................................................................................................24

ii

**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ................................................................8, 9

*Edwards v. Marin Park, Inc.,* 356 F.3d 1058 (9th Cir. 2004) .......................................9

*Ellis v. La.-Pac. Corp.*, 699 F.3d 778 (4th Cir. 2012) ................................................24

*Feuerstein v. Home Depot, U.S.A., Inc.*, 2014 WL 2557122 (D.Ariz. 2014) ................................................................................12

*Firetrace USA, LLC v. Jesclard*, 800 F.Supp.2d 1042 (D.Ariz. 2010) ...................25

*Foulkrod v. Ford Motor Co.*, 2019 WL 3064478 (C.D.Cal. 2019), FCA US ...........................................................14, 15

*Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511 (2012) ........................................26

*Gonzalez v. Mazda Motor Corp.*, 2017 WL 6450450 (N.D.Cal. 2017) .................21

*Gould v. M & I Marshall & Isley Bank*, 860 F.Supp.2d 985 (D.Ariz. 2012) ................................................................................22

*Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682 (Minn. 2014) ..................................21

*Grodzitsky v. American Motor Co.*, 2013 WL 690822 (C.D.Cal. 2013) ...........21, 24

*Guttman v. La Tapatia Tortilleria, Inc.*, 2015 WL 7283024 (N.D.Cal. 2015) ................................................................................18

*Howard v. Am. Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ........................................8

*In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259 (N.D.Ill. 2010) ................................................................................26

*In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N.D.Cal. 2014) .............................18

*In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.,* 2020 WL 919259 (D.Minn. 2020) ..................................................................21

*In re Sling Media Slingbox Adver. Litig.*, 202 F.Supp.3d 352 (S.D.N.Y. 2016) ................................................................................18

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 522484 (C.D.Cal. 2022) ..............................................................1, 15

iii

*Interboro Packaging Corp. v. City of Minneapolis*, 2009 WL 2928755 (Minn.App. 2009)................................................................................26

*Jaskulske v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 5530758 (D.Minn. 2014)...........................................................................21

*Johnson v. Weinberger*, 851 F.2d 233 (9th Cir. 1988)................................7

*Kahn v. FCA US LLC*, 2019 WL 3955386 (C.D.Cal. 2019)....................13

*Kelly v. Ga.-Pa. LLC*, 671 F.Supp.2d 785 (E.D.N.C. 2009)...................18

*Kilgore v. Ocwen Loan Servicing, LLC*, 89 F.Supp.3d 526 (E.D.N.Y. 2015)..................................................................................18

*Kinzer v. Remington Arms Co., Inc.*, 2011 WL 13113618 (W.D.Okla. 2011)..................................................................................12

*Kopel v. Kopel*, 2017 WL 372074 (Fla. 2017)......................................26

*Lindholm v. BMW of N. Am., LLC*, 862 F.3d 648 (8th Cir. 2017).........20

*Madani v. Volkswagen Group of Am.*, 2019 WL 652867 (N.D.Cal. 2019)..................................................................................21

*Manchester v. Sivantos GmbH*, 2019 WL 3531419 (C.D.Cal. 2019).....................26

*McLaughlin v. Monaco RV LLC*, 2015 WL 5355465 (M.D.Fla. 2015)..................12

*Merch. One, Inc. v. TLO, Inc.*, 2020 WL 248608 (S.D.Fla. 2020).............20, 21, 23

*Milman v. FCA U.S., LLC*, 2018 WL 5867481 (C.D.Cal. 2018)..................8, 22, 24

*Mostowfi v. i2 Telecom Int'l, Inc.,* 269 Fed.Appx. 621 (9th Cir. 2008) ...................9

*Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 7267851 (W.D.Okla. 2011)...........................................................................25

*Norman v. Nash Johnson and Sons' Farms, Inc.*, 537 S.E.2d 248 (N.C.App. 2000)...........................................................................26

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995).................................................22

*Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.Supp.2d 664 (M.D.N.C. 2011)...........................................................25

iv

**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Pappas v. Tzolis*, 20 N.Y.3d 228 (2012) ................................................. 25

*Parker v. Bank of Am.*, 2011 WL 13119101 (D.Ariz. 2011) ................................. 18

*Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F.Supp.2d 951 (D.Minn. 2000)............................................................................ 18

*Parrish v. Bank*, 2016 WL 3906814 (W.D.Okla. 2016) ................................. 18

*Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp.3d 194 (D.N.J. 2020)............................................................................ 23

*Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091 (S.D.N.Y. 2018) .................. 18

*Ratcliff v. Am. Honda Motor Co., Inc.*, 2018 WL 3542865 (M.D.N.C. 2018)............................................................................ 23

*Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192 (C.D.Cal. 2017)............................................................................ 25

*Sadeghi-A v. Daimler Trucks N. Am. LLC*, 2022 WL 769975 (D.Minn. 2022)............................................................................ 12

*Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613 (D.Ariz. 2017).................. 18

*Simon v. Metro. Prop. & Cas. Ins. Co.*, 2009 WL 10664188 (W.D.Okla. 2009)........................................................................ 25

*Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249 (C.D.Cal. 2014) ...................... 17

*Slover v. Equitable Variable Life Ins. Co.*, 443 F.Supp.2d 1272 (N.D.Okla. 2006)........................................................................ 26

*Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021) ........................... 18, 20

*Southeastern Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200 (N.C.App. 2002)............................................................................ 25

*Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, 2014 WL 1745050 (S.D.Fla. 2014)........................................................................ 25

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313 (8th Cir. 2018)........................................................... 18

*Sud v. Costco Wholesale Corp.*, 731 Fed.Appx. 719 (9th Cir. 2018).................. 21

v

*Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432 (S.D.N.Y. 2011).................18

*Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493 (S.D. 1990).....................22, 23

*Taragan v. Nissan N.Am., Inc.*, 2013 WL 3157918 (N.D.Cal. 2013)...............22, 23

*U.S. ex rel. Ash Equip. Co. v. Morris, Inc.*, 2015 WL 5725507 (D.S.D. 2015).........................................................................................................25

*U.S. v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980).......................................................11

*Vaith v. Gen. Motors LLC*, 2018 WL 3489600 (D.Minn. 2018) ...........................18

*Villa Marin Chevrolet, Inc. v. Gen. Motors Corp.*, 1999 WL 1052494 (E.D.N.Y. 1999) ............................................................................................22

*Vitt v. Apple Computer, Inc.*, 2010 WL 11545683 (C.D.Cal. 2010) .......................17

*Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649 (N.D.Cal. 2020)..........................................................................................................24

*Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610 (S.D.N.Y. 2013)............................................................................................................18

*Weske v. Samsung Elecs., Am., Inc.*, 934 F.Supp.2d 698 (D.N.J. 2013).................20

*Whalen v. Wells Fargo Home Mortg.*, 2015 WL 12646482 (C.D.Cal. 2015)............................................................................................................16

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012).............................18

*Withers v. eHarmony, Inc.*, 2011 WL 8156007 (C.D.Cal. 2011) ...........................18

*Wozniak v. Ford Motor Co.*, 2019 WL 108845 (E.D.Mich. 2019).........................18

**Statutes and Constitutional Provisions**

18 U.S.C. § 1341 .........................................................................................................9

18 U.S.C. § 1343 .........................................................................................................9

18 U.S.C. § 1962 ...............................................................................................*passim*

Cal. Civ. Code § 1791 ...............................................................................................14

Okla. Stat. Ann. tit. 15, § 754(2) ..............................................................................24

**Rules**

Rule 8................................................................................................................15

Rule 9................................................................................................9, 10, 15, 16

Rule 12................................................................................................................6, 8

**Other Authorities**

https://www.nhtsa.gov/equipment/air-bags...............................................................19

## I.  **INTRODUCTION**

After this Court previously dismissed many of Plaintiffs' claims,[1] Plaintiffs have now filed an amended complaint in which they largely just re-assert the same causes of action based on the same rote allegations.[2]

As before, Plaintiffs plead speculative and generalized allegations of a defect in airbag control units ("ACUs") manufactured by ZF-TRW ("ZF") and installed in vehicles manufactured by FCA US LLC ("FCA US").  At the core of their claims is the notion that there is some purported "risk" that *if* a highly attenuated combination of random factors all come together, then it is *possible* an electrical overstress ("EOS") may result, and *possible* the airbag or seatbelt pretensioners may not properly deploy in the event of an accident.  There is still no claim any Plaintiff owning a vehicle manufactured by FCA US experienced any problem, let alone a non-deployment of their vehicles' airbags or seatbelt pretensioners.  And, Plaintiffs again acknowledge that how an ACU is incorporated into the design of a *particular* vehicle varies significantly – even across different models and model-year vehicles built by the same manufacturer.[3]

This Court should dismiss again all of the claims it previously rejected.  It should also grant dismissal based on the additional grounds presented herein.

## II.  **RELEVANT FACTS**

### A.  **Allegations Regarding Plaintiffs' Vehicle Purchases.**

Ten Plaintiffs assert claims against FCA US.  Most of their allegations are *identical* to one another.  *See* CACAC, ¶¶ 125-54.  They plead the same conclusory allegations about a "concrete injury" based on the notion they "did not receive the

---

[1] *See*, *generally*, *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 522484 (C.D.Cal. 2022) ("CCAC MTD Order") (ECF #396).

[2] *See*, *generally*, Consolidated Amended Class Action Complaint, ECF #477 ("CACAC").

[3] *See, e.g.*, CACAC, ¶ 538.

1

full benefit of the bargain," and would not have purchased their vehicles, or would have paid less for them, if they had they known about the alleged defect. *Id.* at ¶¶ 127, 130, 133, 136, 139, 142, 145, 148, 151, 154.  There are no allegations any Plaintiff ever presented a vehicle for repair, was denied a repair, or paid anything for a repair. *Id.* at ¶¶ 125-54.  No Plaintiff alleges experiencing any problem involving a vehicle's airbag. *Id.*  And, there are no allegations Plaintiffs have stopped driving their vehicles, or sold them at a loss. *Id.*  The basic facts as alleged by Plaintiffs are summarized as follows:

| Plaintiff | Vehicle | Purchase State | Date of Purchase | CACAC ¶ |
| --- | --- | --- | --- | --- |
| Kneup | New 2013 Jeep Wrangler | AZ | May 30, 2013 | 125 |
| Rundzio | New 2012 Jeep Wrangler | CA | July 22, 2012 | 128 |
| Laveaux | Used 2014 Jeep Wrangler | CA | May 2017 | 131 |
| Senti | New 2016 Jeep Wrangler | FL | April 19, 2016 | 134 |
| Accetta | Used 2015 Jeep Compass | FL | August 25, 2015 | 137 |
| Keister | Used 2010 Dodge Nitro | MN | August 30, 2011 | 140 |
| Fishon | Used 2014 Jeep Wrangler | NY | May 12, 2017 | 143 |
| Gonzalez | Used 2012 Jeep Wrangler | NC | February 2, 2019 | 146 |
| Dean | Used 2015 Fiat 500 | OK | March 15, 2015 | 149 |
| Meyer | New 2012 Jeep Liberty | SD | May 14, 2012 | 152 |

All Plaintiffs allege they purchased their vehicles from an FCA US dealership except for Accetta and Gonzalez, who allege purchasing used vehicles from third-party sellers ("Off Lease Only" for Accetta, and "Bob Mayberry Hyundai" for Gonzalez). *See id.* at ¶¶ 137, 146.

**B.   The Alleged Defect.**

According to Plaintiffs, ACUs manufactured by ZF with a DS84 ASIC are defective because the ASIC "malfunctions due to electrical overstress … when exposed to a relatively small burst of stray electricity" which may cause airbags and

2

seatbelts "not to activate" in a collision.  CACAC, ¶ 10.  It is alleged that an EOS event can also cause "inadvertent airbag deployments, partial or incomplete airbag and seatbelt deployments, the failure to generate or record data about a crash, the failure to unlock doors automatically after a crash, and the failure to turn off a fuel supply or high-voltage battery after a crash." *Id.* at ¶ 453.

## C.   The 2016 Recall and the Ongoing NHTSA Investigation.

In September 2016, FCA US initiated a voluntary recall of approximately 1.4 million vehicles it manufactured with ACUs manufactured by ZF (Recall No. 16V-668).[4]  CACAC, ¶ 512.  This recall involved only those vehicles manufactured with a ZF ACU which featured "front sensor wiring … routed independently along the left and right side of the vehicles." *Id.* at ¶¶ 513-14, 1360.  Other vehicles with a ZF ACU were not recalled because the "root cause" of the issues with the ZF ACUs "was determined to be a combination of the relative susceptibility of the subject ORC ASIC to negative transients ***and*** the front acceleration sensor signal ***cross-car wire routing*** in certain crash events." *Id.* at ¶ 514 (emphasis added).  In other words, negative events were traced to a certain combination of ACU and ***wiring architecture***. *See id.*

In April 2019, NHTSA expanded its earlier investigation of the ZF ACUs as part of a formal Engineering Analysis ("EA") (NHTSA No. EA 19-001); this investigation is ongoing, but only as to certain vehicles. *Id.* at ¶ 13.  This expansion does ***not*** equate to a finding of defect, but is just an effort aimed at determining whether there is even an issue at all. *See id.* at ¶¶ 13, 1459; *see also* ECF #231-1, ODI Resume EA 19-001 ("ODI Resume")[5] ("ODI ***plans to evaluate … susceptibility***

_____

[4]Recalled vehicles included model year 2010-2014 Chrysler 200, Chrysler Sebring, Dodge Avenger, Jeep Compass, and Jeep Patriot vehicles, as well as model year 2010-2012 Dodge Caliber vehicles. *Id.* at ¶ 514.  Each of these vehicles are included in Plaintiffs' definition of "Class Vehicle." *See* CACAC, ¶ 541.

[5]The Court previously granted FCA US's request to take judicial notice of the ODI Resume when ruling on the prior motions to dismiss. *See* CCAC MTD Order, 2022 WL 522484, at **6-7.

3

of the subject ACU designs to electrical signals, ***as well as other vehicle factors*** that can either lead to, or reduce the likelihood of, an EOS event" and "***will evaluate whether an unreasonable risk exists***" (emphases added)).  NHTSA's "current understanding" is that a "crash event ***may***, in and of itself, produce harmful signals on the sensor wiring capable of damaging the ASIC," but "the probability of this occurring ***appears to be low***." *Id.* (emphasis added).

As NHTSA has acknowledged, the EOS condition that led to FCA US's earlier voluntary recall was observed only "in vehicles equipped with sensor harnessing ***routed across the front of the vehicle***" and "[o]ther FCA vehicles that also used the subject ACU, but not the cross-car harnessing, had ***not*** experienced EOS failures, despite similar time in service." *Id.* at p. 2 (emphasis added).  NHTSA has specifically stated it has "not identified any EOS failures in the non-recalled FCA population." *Id.*  The previously-recalled FCA US vehicles are ***not*** part of NHTSA's current investigation.  *Id.*; *see also* CACAC, ¶ 514.

**D.**     **The Warranties for Plaintiffs' Vehicles.**

When sold new, Plaintiffs' vehicles were covered by a Basic Limited Warranty, issued by FCA US,[6] which "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." *See* ECF #231, Exhibits B-K, p. 5; *see also* CACAC, ¶ 2316.  For each of the vehicles at issue, this warranty "lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first" (except for the Fiat 500 vehicle owned by Plaintiff Dean, which lasts 4 years/50,000 miles).  *See* ECF #231, Exhibits B, E-G, J-K, at p. 6; *id.* at Exhibits C-D, H-I, at p. 7.  To obtain any repair under these warranties, Plaintiffs were required to present their vehicles at an authorized dealership.  *Id.* at Exhibit B,

---

[6]Some warranties were issued under FCA US's former name, Chrysler Group LLC.  This Court has already ruled it can take judicial notice of the warranty booklets for the vehicles at issue.  *See* CCAC MTD Order, 2022 WL 522484, at **6-7.

4

pp. 22, 28; Exhibit C, pp. 24, 30; Exhibit D, pp. 25, 31; Exhibit E, pp. 22, 28; Exhibit F, pp. 18, 23; Exhibit G, pp. 24, 30; Exhibit H, pp. 25, 31; Exhibit I, pp. 27, 33; Exhibit J, pp. 20, 26; Exhibit K, pp. 20, 26.

**E.    The Classes, Claims Pleaded, Alleged Injuries, And Relief Sought.**

Subject to certain exclusions for those associated with Defendants or the Court, Plaintiffs plead claims against FCA US on behalf of a nationwide class as well as various statewide subclasses.  CACAC, ¶¶ 1505(b), 1506.  Plaintiffs define the "Nationwide FCA Class" as "[a]ll persons in the United States who purchased or leased a FCA Class Vehicle, including its territories."[7]  *Id.* at ¶ 1505(b).  The statewide subclasses are defined to include "all persons who purchased or leased their Class Vehicle" in one of the following states:  Arizona, California, Florida, Minnesota, New York, North Carolina, Oklahoma, or South Dakota.  *Id.* at ¶ 1506; *see also*, *e.g.*, *id.* at ¶¶ 2310, 2393, 2731, 3365, 3770, 3862, 4239.

Plaintiffs plead claims on behalf of the Nationwide FCA Class under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d) ("RICO").[8]  Plaintiffs also bring claims on behalf of each of the statewide subclasses for breach of express and implied warranties,[9] fraud by omission, unjust enrichment, and/or violation of specific state statutes, identified below:

---

[7]Plaintiffs define Class Vehicles as "FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota vehicles that all were equipped with a DS84 ACU and ASIC and sold in the United States," including, with respect to FCA US, the following vehicles:  2010-14 Chrysler 200; 2010 Chrysler Sebring; 2010-14 Dodge Avenger; 2010-17 Jeep Compass; 2010-13 Jeep Liberty; 2010-17 Jeep Patriot; 2010-18 Jeep Wrangler; 2010-12 Dodge Caliber; 2009-12 Dodge Ram 1500; 2010-12 Dodge Ram 2500/3500; 2011-12 Dodge Ram 3500/4500/5500 Cab-Chassis; 2010-12 Dodge Nitro; and 2012-19 Fiat 500.  CACAC, ¶¶ 541, 1504.  Pursuant to stipulation, however, Plaintiffs are not pursuing claims against FCA US for vehicles manufactured on or before June 10, 2009.  *See* ECF #228.

[8]*See* Index of Claims Against FCA Entities, attached hereto as Exhibit 1.

[9]Plaintiffs do not, however, bring implied warranty claims under Arizona, New York, and North Carolina law; or express warranty claims under California or New York law.  CACAC ¶¶ 2309-2556, 3768-3860, 3861-3946.

**Arizona:**  Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521, *et seq*. ("AZCFA").

**California:**  California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq*. ("Song-Beverly"); California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. ("FAL"); California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA"); California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL").

**Florida:**  Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA").

**Minnesota:**  Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*., and § 8.31, subd. 3a ("MNCFA"); Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43, *et seq*. ("MNDTPA").

**New York:**  New York General Business Law, N.Y. Gen. Bus. Law § 349 ("GBL 349") and § 350 ("GBL 350").

**North Carolina:**  North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*. ("NCDTPA").

**Oklahoma:**  Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, § 751, *et seq*. ("OKCPA").

**South Dakota:**  South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D.C.L. § 37-24-1, *et seq*. ("SDCPA").

According to Plaintiffs, they are entitled to recover under these causes of action because they "did not receive the full benefit of the bargain" when they purchased their vehicles (*see, e.g.*, CACAC, ¶ 127), and have incurred unspecified ongoing "out-of-pocket and loss-of-use expenses" (*id.* at ¶ 4579(e)).  However, no Plaintiff claims he/she has stopped driving his/her vehicle or paid for any repairs. *See generally*, CACAC.  Plaintiffs seek, *inter alia*, "compensatory, exemplary, treble, and punitive remedies and damages and statutory penalties"; a "Defendant-funded program" for payment of the above-mentioned out-of-pocket and loss-of-use expenses and damages claims; injunctive/equitable relief; disgorgement; restitution; and attorney's fees. *See* CACAC, ¶ 4579; *id.* at pp. 1333-35 ("Prayer for Relief").

## III.   ARGUMENT

### A.   Dismissal Under Rule 12(b)(1).

FCA US previously argued Plaintiffs' claims fail for lack of standing. *See*

6

ECF #230, pp. 13-14.   However, the Court construed FCA US's arguments as pertaining only to statutory standing for Plaintiffs' CLRA, UCL, and FAL claims (which it dismissed), rather than also being premised upon a lack of Article III standing.  *See* CCAC MTD Order, 2022 WL 552484, \*\*66-72.

FCA US is moving to dismiss **all claims** against it for lack of Article III standing.  And, such a dismissal is consistent with the authorities the Court cited in its general discussion of standing.  As the Court noted, "something more" than a mere risk of malfunction is required to plausibly plead a concrete injury based on a purported overpayment, and courts have distinguished situations where a product "has not malfunctioned" (no standing) from those where actual malfunctions have occurred (which may, if properly supported, be sufficient for standing).  *Id.* at \*68 (internal quotation omitted).

Here, there are no pleaded facts showing any of the Plaintiffs who purchased FCA US vehicles experienced any problems with those vehicles.  *Id.*  Instead, they just rely on speculation and "information and belief" allegations – along with a recall stating that differently-designed vehicles "may" exhibit a problem – to support their diminished value allegations.  *See, e.g.*, *id.* at ¶¶ 501, 512-14.  This places Plaintiffs' claims against FCA US squarely in the category where standing is lacking.  *See, e.g.*, *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) ("When '[s]peculative inferences' are necessary … to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." (internal quotation omitted)).  Thus, dismissal is required.

Furthermore, just as before, Plaintiffs fail to plead the facts necessary to establish the reliance required for statutory standing under the UCL, FAL, or CLRA.  As this Court previously explained, that would require specific, non-conclusory facts plausibly showing Plaintiffs "actually read the claimed misleading representations," such that they "would have been aware of a disclosure of the Alleged Defect had one

1   been made." *See* CCAC MTD Order, 2022 WL 552484, *70.  Yet, again, Plaintiffs

2   just proffer conclusory allegations.  For example, Rundzio vaguely alleges he "saw

3   representations and statements on Jeep's website" and "recalls reviewing the

4   Monroney sticker and in-vehicle airbag label" without providing any factual detail

5   whatsoever.  *See* CACAC, ¶ 129.  Indeed, his allegations appear to be simply copied

6   verbatim from those made by the other plaintiffs.  *See, e.g.*, *id.* at ¶¶ 126, 135, 138,

7   150.  And, this is even clearer from Laveaux's allegations, who purchased a ***used***

8   vehicle but nevertheless repeats the same conclusory averments about seeing a

9   "Monroney label."  *Id.* at ¶ 132.  Since the facts required for statutory standing are

10  still lacking, the UCL, FAL, and CLRA claims should be dismissed again.

11  **B.   Dismissal Under Rule 12(b)(6).**

12      To survive dismissal under Rule 12(b)(6), a complaint must plead ***facts***

13  supporting a "plausible" claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell*

14  *Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Conclusory legal allegations are

15  ignored, and "a formulaic recitation of the elements of a cause of action will not do."

16  *Id.*  And "there is no plausibility 'where the well-pleaded facts do not permit the

17  court to infer more than the mere possibility of misconduct.'"  *Milman v. FCA U.S.,*

18  *LLC*, 2018 WL 5867481, *3 (C.D.Cal. 2018) (internal quotation omitted).

19      **1.   *The RICO Claims (Nationwide Counts 3, 4).***

20      To state a RICO claim under 18 U.S.C. § 1962(c) or (d), Plaintiffs must allege

21  facts plausibly showing "(1) the conduct of (2) an enterprise that affects interstate

22  commerce (3) through a pattern (4) of racketeering activity or collection of unlawful

23  debt … [and] the conduct must be (5) the proximate cause of harm to the victim."

24  *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir.

25  2014); *see also Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (claim

26  for RICO "conspiracy" under § 1962(d) is only viable if plaintiffs "adequately plead

27  a substantive violation of RICO").  As detailed in the Defendants' Joint Brief,

28

Plaintiffs' RICO claims are subject to dismissal because, *inter alia*, they have failed to plead any RICO "enterprise" or "conspiracy."

Furthermore, the RICO claims asserted against FCA US are also subject to dismissal because Plaintiffs fail to sufficiently allege predicate acts of "racketeering activity" as required for such claims.  Plaintiffs base their RICO claims on allegations of mail and wire fraud under 18 U.S.C. § 1341 and § 1343.  *See* CACAC, ¶¶ 1869-91.  Both are subject to Rule 9(b)'s heightened "particularity" pleading standard. *Mostowfi v. i2 Telecom Int'l, Inc.,* 269 Fed.Appx. 621, 623 (9th Cir. 2008); *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004).  But, Plaintiffs' allegations are wholly insufficient to satisfy this standard or plead any fraud.

As this Court has already explained, a mere nondisclosure or failure to disclose can only support a RICO claim if there is some fiduciary duty or specific statute requiring disclosure that has been breached.  CCAC MTD Order, 2022 WL 552484, **50-51 ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." (internal quotation omitted)).  And, just as before, no such duty or statute is identified here.  *See*, *generally*, CACAC.

This means Plaintiffs' RICO claims necessarily depend on pleading, with all the specificity Rule 9(b) requires, some ***affirmative misrepresentations***.  *See* CCAC MTD Order, 2022 WL 55484, *51.  And where, as here, the defendants appear "routine participants in American commerce, a significant level of factual specificity is required" before a court can "infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Eclectic Props. East*, 751 F.3d at 997-98.  Thus, allegations which are merely "consistent with" some fraud, but also an "innocent alternative," do not suffice.  *Id.* at 998-99.  The factual allegations must plausibly show "a scheme which was reasonably calculated to deceive persons" – otherwise, a court "cannot properly infer fraudulent intent."  *Id.* at 1000.

FCA US acknowledges the Court previously found various Monroney labels attached to the CCAC (and now attached to the CACAC) were sufficient to plead the "racketeering activity element" of a RICO claim.  *See* CCAC MTD Order, 2022 WL 552484, **55-56.   In reaching this conclusion, however, the Court focused its analysis on whether the labels attached to the prior complaint could be linked to a particular defendant – rather than on whether Plaintiffs' allegations satisfied Rule 9(b), whether the attached labels actually included affirmative false representations (rather than a mere omission), or whether the labels plausibly suggested some fraudulent intent by FCA US.  *Id.*  But, Plaintiffs' pleaded allegations, even including the labels they attach, do not plausibly show any of this.

All Plaintiffs plead is that some of them (but not all) "recall[] reviewing" a Monroney label for their vehicle, and they then attach a "compendium" of example labels printed from the internet (these are not alleged to be the actual labels found on any Plaintiff's vehicle – there is just an "information and belief" allegation that they "included the same content").  *See, e.g.*, CACAC, ¶¶ 128(c), 1137.  While Plaintiffs baldly characterize the labels as "misleading," all the labels do is ***list*** (in bullet-point form) different components installed on a vehicle, such as a "3.6L gas V6 engine," "Fog lamps," "Air conditioning," or "Supplemental side curtain front/rear air bags." *See, e.g.*, *id.* at Exhibit 7, p. 17; *see also id.* at ¶¶ 1129-30, 1688.

There is no allegation any of this listed information is actually false, *i.e.*, that FCA US ever sold any vehicle that lacked the listed components.  *See*, *generally*, CACAC.  Rather, what Plaintiffs allege is ***not*** some affirmative misrepresentation or false statement – they are pleading an ***omission*** based on the nondisclosure of a purported defect.  To construe the allegations otherwise, this Court would have to conclude that whenever any component listed on a Monroney label (and there are many) develops some problem or is alleged to have some defect, the mere listing of the component on the label transforms the case into one involving some affirmative

fraud and false representation.  No law supports this view.  And, indeed, in analyzing other types of statements, such as advertisements, this Court correctly reasoned that a mere statement a vehicle included airbags did ***not*** plausibly suggest any affirmative misrepresentation, but just an omission.  *See, e.g.*, CCAC MTD Order, 2022 WL 552484, *53 ("The only explanation of what allegedly makes this advertising misleading is that it 'contains affirmative statements about airbags and seatbelts and omits important facts about the dangers posed by the defective ACUs' … ***Again, this explains omissions, not misrepresentations***." (emphasis added)).    Plaintiffs' allegations about Monroney labels are no different.  And, their allegations about other supposed "affirmative misrepresentations" (*e.g.*, "certification labels," "readiness indicators," "in-vehicle labeling," "thousands of advertisements," owner's manuals, statements to NHTSA, purchase orders, *etc.*) suffer this same flaw, in addition to being completely generic.  *See* CACAC, ¶¶ 1688-92.

Furthermore, as the Ninth Circuit has explained, "there is no fraudulent scheme without specific intent."  *U.S. v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980); *see also* CCAC MTD Order, 2022 WL 552484, *49 (a "specific intent to deceive or defraud" is required (internal quotation omitted)).    Thus, Plaintiffs' inability to plead facts plausibly showing FCA US had pre-sale knowledge of any defect (*see* § III.B.4(a), *infra*) thoroughly undercuts any notion some fraud has been pleaded, or can be pleaded, based on the communications they identify.

Plaintiffs' RICO claims should be dismissed.

### 2.    *The Express Warranty Claims.*[10]

In addition to the statute of limitations and other grounds explained in the Defendants' Joint Brief (pp. 26-33), the express warranty claims asserted against FCA US must be dismissed for two further reasons.

*First*, the express warranties are simply inapplicable to Plaintiffs' claims.

---

[10]Counts B.2.a; B.6.a; B.12.a; B.17.a; B.18.a.; B.21.a (Arizona, Florida, Minnesota, North Carolina, Oklahoma, and South Dakota laws).

11

Those claims are based on an alleged "design" defect.  *See, e.g.*, CACAC, ¶ 233(a) (DS84 is a "critical part of the defective ZF TRW ACU ***design***"); *id.* at ¶ 471 (defect would not exist if vehicles had "a properly ***designed*** ACU"); *id.* at ¶ 490 (same); *id.* at ¶¶ 1669(a), 1794(a), 2065(a), 2196(a) (noting "the defective ***design*** of the ACU"); *id.* at ¶ 826 (noting "the ***design*** flaws of the DS84 ACUs") (all emphases added). But, as Plaintiffs acknowledge, FCA US's warranties do ***not*** cover ***design*** defects – only defects in "materials or workmanship."  *See, e.g.*, CACAC, ¶¶ 2316, 2742, 3373, 3870, 3954, 4245; *see also* ECF #231, Exhibits B-K, p. 5.

FCA US made this argument in its prior Motion to Dismiss.  *See* ECF #230, pp. 15-16.  The Court declined to dismiss the Arizona and Oklahoma express warranty claims because FCA US did not cite state-specific case law.  *See* CCAC MTD Order, 2022 WL 522484, **103, 131.  The Court did not address the Florida, Minnesota, and South Dakota claims because it dismissed them on alternate grounds.  *Id.* at **113-15, 121-23, 129-30, 134-35.  And, it did not address this argument with respect to the North Carolina claim.  *Id.* at **129-30.

Courts in these states, however, have consistently recognized this distinction between "materials or workmanship" warranties covering manufacturing defects and warranties for design defects; and, these courts have routinely dismissed breach of express warranty claims where the plaintiffs received a ***manufacturing*** warranty but plead a ***design*** defect.[11]  This Court should do the same here.

_____

[11] **AZ**: *Feuerstein v. Home Depot, U.S.A., Inc.*, 2014 WL 2557122, *7 (D.Ariz. 2014) (amendment futile where "warranty only pertains to defects in 'workmanship or materials.' Plaintiffs only allege defects in the [product]'s ***design*** …" (emphasis added)); **FL**: *McLaughlin v. Monaco RV LLC*, 2015 WL 5355465, *5 (M.D.Fla. 2015) ("materials or workmanship" warranty excludes design); **MN**: *Sadeghi-A v. Daimler Trucks N. Am. LLC*, 2022 WL 769975, *7 (D.Minn. 2022) ("The case law overwhelmingly holds that design defects are not covered by warranties for materials and workmanship." (brackets, citations, and quotation marks omitted)). **OK**: *Kinzer v. Remington Arms Co., Inc.*, 2011 WL 13113618, *2 (W.D.Okla. 2011) ("[T]he written warranty provided by Defendant to Plaintiff would not apply in this case, because as noted by Plaintiff, the warranty ***does not include design defects*** which are alleged in this case." (emphasis added)); **NC**: *Boudreau v. Baughman*, 322

12

*Second*, and just as fundamentally, Plaintiffs have failed to plead the facts necessary to support any breach.  They base their claims on purported breaches of "selling and leasing FCA Class Vehicles with a defect that was never disclosed" and "failing to repair the ACU defect or replace the defective ACUs and ASICs."  *See*, *e.g.*, CACAC, ¶¶ 2320, 2747, 3377, 3874, 3958, 4249.  Neither suffices.

The written warranties at issue here nowhere promised a defect-free vehicle – rather, they only promised a free repair of certain defects upon presentment and request at an authorized dealership.  *See* § II.D, *supra*.  Courts agree such warranty language is not a promise of a defect-free vehicle, and actually provides notice that a vehicle may have defects.  *See*, *e.g.*, *Kahn v. FCA US LLC*, 2019 WL 3955386, *7 (C.D.Cal. 2019) (finding FCA US's warranties "d[o] not expressly warrant that the Vehicle would be wholly free of defects" and "specifically contemplate that repairs would need to be made over the term of the warranty").  Thus, Plaintiffs have not, and cannot, state a breach of express warranty claim based on the notion that their vehicles were sold "with a defect."

Furthermore, there is no allegation any Plaintiff even sought (let alone was denied) a repair while the express warranty was in effect, as would be necessary for any breach to have occurred.  *See*, *generally*, CACAC.  As no presentation occurred, it is now impossible for any Plaintiff to maintain a legally viable express warranty claim, particularly since all warranties have clearly expired.[12]  *See, e.g., Clemens v.*

---

N.C. 331, 345-46 (1988) ("A design defect is an injury-producing hazard accompanying normal use of a product that was intentionally manufactured according to design … A manufacturing defect, on the other hand, is caused by a miscarriage in the manufacturing process that produces an unintended result." (citations omitted)).  **SD**: While South Dakota has not addressed this question, the Eighth Circuit, citing case law around the country, has reached the same conclusion. *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) ("a design defect cannot also be a defect in material and workmanship").

[12]With the exception of Laveaux, Fishon and Gonzalez, who purchased their vehicles ***used***, Plaintiffs all purchased their vehicles between 2012 and early 2016. *See* § II.A, *supra*.  Thus, all of the express warranties FCA US issued for these vehicles have long-since expired.

13

*DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (holding post-warranty repairs cannot be basis for express warranty claim); *Blissard v. FCA US LLC*, 2018 WL 6177295, *5 (C.D.Cal. 2018) ("there can be no breach if no [] repairs were sought until [the] warranties had expired").

FCA US previously made this argument. *See* ECF #209, p. 16. This Court agreed and dismissed the Florida claim on grounds that the prior complaint "d[id] not allege that any … [p]laintiff[] ever attempted to have his or her Class Vehicle repaired or replaced by any Defendant" or that "any Defendant ever refused to repair or replace a Class Vehicle when given that opportunity." CCAC MTD Order, 2022 WL 552484, *115. Nothing has changed. *See* CACAC, ¶¶ 134-39. And, this same argument is equally applicable to the other express warranty claims asserted (although the Court previously did not reach this argument[13]). Accordingly, all of Plaintiffs' express warranty claims should be dismissed.

### 3.  *The Implied Warranty Claims.*[14]

The implied warranty claims of Rundzio, Laveaux, Accetta, Keister, Dean, and Meyer must be dismissed because they are time-barred under the applicable four and five-year statutes of limitation, which began to run on the date of delivery of the vehicle. *See* Joint Brief, pp. 33-35. And, the implied warranty claim brought by Laveaux under the California Song-Beverly Act (Count B.3.b) is also subject to dismissal for the additional reason that he purchased his vehicle ***used***, and that Act does not create implied warranties in favor of used vehicle purchasers against product manufacturers like FCA US. *See, e.g.*, *Foulkrod v. Ford Motor Co*., 2019

---

[13]This Court previously dismissed Plaintiffs' Arizona, Minnesota, and South Dakota express warranty claims on alternate grounds. CCAC MTD Order, 2022 WL 552484, **103-04, 121-23, 131-31, 134-35. However, it did not reach or address this argument with respect to the North Carolina claim. *Id.* at **129-30.

[14]Counts B.3.a-b; B.6.b; B.12.b; B.18.b; B.21.b.

WL 3064478, *4 (C.D.Cal. 2019).[15]

### 4.    The Consumer Protection and Fraud Claims.[16]

Rule 9(b)'s heightened pleading standard applies to Plaintiffs' fraud-based claims (which are based on purported misrepresentations and omissions).  But, Plaintiffs' generic allegations do not meet even Rule 8(a)'s basic pleading standards, let alone the heightened pleading standards of Rule 9(b).  All the various claims asserted against FCA US are just based on rote allegations it "misrepresent[ed] the … Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects."  *See*, *e.g.*, CACAC, ¶¶ 2331, 2447, 2473, 2781, 3404, 3419, 3778, 3811, 3885, 3982, 4273.  Plaintiffs' omission-based claims are equally boilerplate, and also conflate FCA US with entirely unrelated defendants, like Honda or Toyota.  *See*, *e.g.*, CACAC, ¶¶ 2517, 2815, 3466, 3826, 3914.  The failure to specify which Defendant said or did what, and the completely generic ascription of the ***same*** conduct to nearly two dozen different Defendants, makes clear that the fraud by omission claims are wholly inadequate. *See* Joint Brief, pp. 15-18; *see also Buckley v. BMW N.Am.*, 2019 WL 6465509, **11-12 (C.D.Cal. 2019).  And, these claims fail for other reasons as well.

### (a)    No actionable representations or omissions.

While Plaintiffs now plead some "individualized" allegations, even the most cursory review of them confirms they are insufficient.

*First*, the "individualized" allegations are largely ***identical*** across the various Plaintiffs.  For instance, nine out of the ten Plaintiffs plead verbatim allegations about taking their Class Vehicle for a test drive.  *See id.* at ¶¶ 126(d), 129(d), 132(c), 135(c), 138(d), 141(c), 144(b), 147(d), 150(c).  Most plead identical (or nearly so)

---

[15]FCA US made these arguments in its prior Motion to Dismiss (ECF #230), but this Court did not reach them. *See, generally*, CCAC MTD Order.

[16]Counts B.2.b & d; B.3.c-f; B.6.c & e; B.12.c, d, & g; B.16.a, c, & d; B.17.b & d; B.18.c & e; B.21.c & e.

allegations that they "recall reviewing" their vehicles' Monroney and airbag safety labels. *Id.* at ¶¶ 126(c), 129(c), 132(b), 135(b), 138(c), 150(b), 153(c); *see also id.* at ¶ 147(c). And, where something beyond a mere "cut and paste" allegation is made, the averments provide no details at all which could suffice for pleading some fraud. *See, e.g.*, *id.* at ¶ 138(b) (pleading Accetta "conducted online research on the Class Vehicle's safety features," but failing to describe when he conducted such research, which websites he reviewed, or what such research revealed); *id.* at ¶ 144(a) (alleging Fishon viewed some advertising that merely "tout[ed] [his vehicle's] features and highlight[ed] that Jeeps are manufactured in the Unitied [sic] States").

*Second*, in the handful of instances where Plaintiffs' allegations are not identical, many of the supposed representations are ascribed to ***dealer*** salespersons, not anyone at FCA US. *See, e.g.*, *id.* at ¶ 132(a) (alleging Laveaux discussed "safety features" with an unidentified person at a third-party dealership when purchasing his used vehicle). Without pleaded ***facts*** sufficient to establish an agency relationship between FCA US and the selling dealerships, however, these statements may not be attributed to FCA US and cannot support any fraud-based claims. *See, e.g.*, *Whalen v. Wells Fargo Home Mortg.*, 2015 WL 12646482, *5 (C.D.Cal. 2015) ("where a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with particularity"). Furthermore, and in any event, there are no pleaded facts that could support the notion of some fraudulent conduct occurring. Instead, Plaintiffs simply aver they had conversations about "safety" generally. *See, e.g.*, CACAC, ¶ 129(b) (just averring that "[a] salesperson and [Rundzio] had conversations about the Class Vehicle's safety features"); *id.* at ¶ 141(b) (Keister and "[a] salesperson spoke about the Class Vehicle's price, mileage, condition, and remaining warranty"). And where even a modicum of specificity is provided, what is recounted are textbook examples of puffery, which cannot support any claim. *See, e.g.*, *id.* at ¶ 150(a) (alleging Dean

was told his vehicle was "durable, safe, and got good gas mileage"); *id.* at ¶ 153(b) (alleging Meyer was told his vehicle's safety was "superior" to other vehicles).[17]

*Third,* Plaintiffs' boilerplate Monroney and/or airbag sticker allegations plead no actionable misrepresentation or omission at all.  Some Plaintiffs simply allege 1) they "recall" seeing a Monroney sticker and/or an airbag label; and, separately, that 2) the sticker and/or label "indicate[s]" the vehicle is "safe and had properly-functioning airbags and seatbelts." *See, e.g., id.* at ¶¶ 129(c); *see also id.* at ¶¶ 126(c), 132(b), 135(b), 138(c), 147(c), 150(b), 153(c).  No further details are provided.  No Plaintiff identifies any particular label they saw, much less some particular language they read and relied on in making their vehicle purchase.  In essence, Plaintiffs are trying to plead some fraud based on allegations which merely suggest they ***may have glanced at some label***, without pleading what specifically they actually saw, read, or understood from the label – even though this is essential to any notion of reliance.

*Fourth*, Plaintiffs' test-drive allegations cannot fill the gap.  Each Plaintiff just alleges he or she took a vehicle for a test drive and no warning light suggesting an issue with the vehicle's airbag illuminated during that test drive. *See, e.g.*, CACAC, ¶ 125(d) ("At no time prior to or at the time of [Kneup's] purchase did the airbag warning light on the Class Vehicle's dashboard illuminate or flash to indicate any issue with the Class Vehicle's airbag system."); *see also id.* at ¶¶ 129(d), 132(c), 135(c), 138(d), 141(c), 144(b), 147(d), 150(c), 153(d).  For this to be relevant to any fraud-based claim, however, there would obviously need to be some pleaded facts showing FCA US specifically engineered the vehicles with warning lights that fail to illuminate in the presence of a faulty air-bag.  But, of course, no such allegations

---

[17]*See, e.g., Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, *7 (C.D.Cal. 2014) ("[i]f defendants' assertion of safety *is merely a statement of opinion*—mere puffing—they cannot be held liable for its falsity" (emphasis added, citations and quotation marks omitted)); *Vitt v. Apple Computer, Inc.*, 2010 WL 11545683, *3 (C.D.Cal. 2010) ("Courts have consistently and repeatedly held that the terms 'reliable,' 'durable,' 'dependable,' and 'high performance' constitute non-actionable puffery." (subsequent proceedings omitted)).

have been pleaded.  *See*, *generally*, CACAC.

*None* of Plaintiffs' allegations are sufficient to plead any misrepresentation or omission, much less establish the reliance and causation elements which are essential to their fraud-based claims, and must be supported by actual facts.  *See, e.g.*, *Withers v. eHarmony, Inc.*, 2011 WL 8156007, *2 (C.D.Cal. 2011) (reliance is an "essential element" of fraud claim that "cannot be inferred or presumed where a consumer has never heard or seen the deceptive representation").[18]  Thus, all of their fraud-based claims fail and must be dismissed.

> (b)    *Lack of pre-sale knowledge.*

An omission-based claim premised on a failure to disclose a defect cannot survive without factual allegations showing the defendant had *actual knowledge* of the alleged defect *prior* to the plaintiff's purchase.  *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (plaintiff "must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss").[19]  Plaintiffs' allegations are nowhere close to sufficient.

---

[18] *See also Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, **8-10 (S.D.N.Y. 2018); *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D.Ariz. 2017); *Parrish v. Bank*, 2016 WL 3906814, *2 (W.D.Okla. 2016); *Cheval Int'l v. Smartpak Equine, LLC*, 2016 WL 1064496, *12 (D.S.D. 2016); *Guttman v. La Tapatia Tortilleria, Inc.*, 2015 WL 7283024, **3, 5 (N.D.Cal. 2015); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 448 (N.D.Cal. 2014); *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F.Supp.2d 1331, 1342 (S.D.Fla. 2013); *Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 624 (S.D.N.Y. 2013); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, *14 (S.D.N.Y. 2011); *Kelly v. Ga.-Pa. LLC*, 671 F.Supp.2d 785, 799 (E.D.N.C. 2009); *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F.Supp.2d 951, 960 (D.Minn. 2000).

[19] *See also Smith v. Gen. Motors LLC*, 988 F.3d 873, 884-86 (6th Cir. 2021); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 340 (8th Cir. 2018); *Wozniak v. Ford Motor Co.*, 2019 WL 108845, *4, n.5 (E.D.Mich. 2019) (Arizona, California, Florida, Minnesota, New York, North Carolina); *Vaith v. Gen. Motors LLC*, 2018 WL 3489600, *9 (D.Minn. 2018); *Cole v. NIBCO, Inc.*, 2016 WL 10536025, *21 (D.N.J. 2016) (Oklahoma); *In re Sling Media Slingbox Adver. Litig.*, 202 F.Supp.3d 352, 359 (S.D.N.Y. 2016); *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F.Supp.3d 526, 534-35 (E.D.N.Y. 2015); *Aprigliano*, 979 F.Supp.2d at 1343-44; *Parker v. Bank of Am.*, 2011 WL 13119101, *4 (D.Ariz. 2011).

18

Essentially, Plaintiffs just point to 20 scattered incidents over a decade where a vehicle airbag either did not deploy or deployed improperly/prematurely, and then speculate this means FCA US "knew" of some systemic and pervasive design defect across a multitude of model/year vehicle configurations and millions of different vehicles.  *See* CACAC, ¶¶ 793-934.  To reach even this minimal number, Plaintiffs include many vehicles built with the cross-car wire routing that FCA US **already** recalled in 2016 (*see, e.g.*, *id.* at ¶¶ 514, 806, 813, 828, 848, 859, 873, 880, 892, 903, 913, 916), even though no Plaintiff owns a vehicle that was the subject of that recall. Plaintiffs also include incidents where engineers actually examined the vehicle and found "no indication" of any defect (*see, e.g.*, *id.* at ¶¶ 800, 838, 843, 890, 901, 921), as well as incidents where the assertion of some EOS event is based solely on "information and belief" coupled with reports merely stating that "the airbag warning lamp was illuminated" (*see, e.g.*, *id.* at ¶ 888) or citing an inability to "access the crash diagnostics due to electrical system damage" or "cuts in the battery cables" (*see, e.g.*, *id.* at ¶¶ 910, 919, 925, 931).

Plaintiffs rely on "information and belief" allegations to suggest these reported issues were caused by the purported defect **even though** airbags can fail to deploy for numerous reasons having nothing to do with any defect.[20]  And, even if the reports cited above were sufficient to establish knowledge (and they are not), they are **certainly** insufficient with respect to the earlier purchasers, such as Keister, Meyer,

---

[20]*See, e.g.*, https://www.nhtsa.gov/equipment/air-bags (last visited August 1, 2022) (FAQ explaining "[a]ir bags are not intended to deploy in all crashes" and "activation of an airbag in a crash is dependent on several important factors including: the characteristics of the crash (e.g., speed, other vehicles involved, impact direction); the individual vehicle air bag system's design strategy; and the crash sensor locations"; airbags may not deploy in accident because of, *inter alia*, "sufficiently moderate" crash conditions, undersized or no occupant in the passenger seat, or, in the case of a used vehicle, failure of prior owner to replace airbags after a collision).

Rundzio, and Kneup.[21]  For example, only **one** of these incidents occurred prior to Keister's purchase (August 2011); only **two** occurred before Meyer's and Rundzio's purchases (May and July 2012); and only **three** occurred before Kneup's purchase (May 2013).  *See id.* at ¶¶ 125, 128, 140, 152; *see also id.* at ¶¶ 796-801, 806-19. This is clearly insufficient to demonstrate pre-sale knowledge of a defect.  *See, e.g.*, *Baba v. Hewlett-Packard Co.*, 2011 WL 317650, *3 (N.D.Cal. 2011); *Weske v. Samsung Elecs., Am., Inc.*, 934 F.Supp.2d 698, 703 (D.N.J. 2013).

Plaintiffs' other allegations are equally deficient.  For example, they point to things like:  (1) a few dozen warranty returns (over the course of many years) where the cited reason was an "[a]irbag warning lamp on"; (2) "design change[s]" and the inclusion of "additional protective components" over the course of many years of vehicle development; and (3) the investigation which resulted in FCA US recalling certain vehicles (not those owned by any Plaintiff here) in 2016.  *See, e.g.*, CACAC, ¶¶ 794-95, 821, 826-27, 869-72.  But, the mere existence of some warranty returns is clearly insufficient to plead knowledge of any defect, particularly when the overall numbers involved are so miniscule as to be just "a blip on [a manufacturer's] complaints-and-repairs radar" (*Smith*, 988 F.3d at 885-86).  That enhancements and improvements have been made over time cannot help Plaintiffs either – every new model-year sees a multitude of such improvements; and, in any event, an upgraded design (*e.g.*, the "additional protective components" added "for the 2015 model year" (CACAC, ¶ 826)) suggests no **pre-sale** knowledge of a defect in **earlier** model-year vehicles, and no knowledge of **any** defect at all in subsequent models.  Furthermore, as Plaintiffs acknowledge, the investigation leading to FCA US's recall of certain vehicles in 2016 recall did **not** identify any problem (or any EOS incidents) in other, differently designed vehicles.  *See id.* at ¶¶ 513-14; *see also* ECF #231-1, pp. 1-2.

---

[21]Incidents post-dating a plaintiff's own vehicle purchase cannot be relevant to pre-sale knowledge, or support any claim.  *See, e.g.*, *Lindholm v. BMW of N. Am., LLC*, 862 F.3d 648, 652 (8th Cir. 2017).

20

While Plaintiffs also attach consumer complaints about 101 general airbag failures across a 10-year period, that cannot support pre-sale knowledge either. *See* ECF #477-4. Indeed, none of the complaints even mention EOS, which is critical since airbags can fail to deploy for a wide variety of reasons having nothing to do with any defect. Many note the cause of airbag non-deployment was "not diagnosed" and/or that the manufacturer, *i.e.*, FCA US, was "***not*** notified of the failure." *See, e.g.*, *id.* at pp. 2, 5, 6-13, 16, 18-19, 23-25. Others attribute non-deployment to something other than a "defect," *e.g.*, "due to the speed limit (40 mph) driven and due to more of a side impact than frontal," seatbelt not reengaging after driver "had to rock forward" "earlier in the drive" to "view approaching traffic," "rate of deceleration necessary to activate the air bag and air bag system was not present," or "vehicle was not being driven at a speed that would facilitate the deployment of the air bags." *Id.* at pp. 1-2, 14, 17.

Courts have held time and again that the sort of allegations pleaded here are insufficient to demonstrate pre-sale knowledge of any defect, and dismissed fraud and omission claims on this basis. *See*, *e.g.*, *Grodzitsky v. American Motor Co.*, 2013 WL 690822, *6 (C.D.Cal. 2013); *Madani v. Volkswagen Group of Am.*, 2019 WL 652867, **7-8 (N.D.Cal. 2019); *Beck* v. *FCA US LLC*, 273 F.Supp.3d 735, 753 (E.D.Mich. 2017) (collecting cases). This Court should do the same here.

        *(c)*     *No Duty to Disclose.*

Actual pleaded facts establishing a legal duty to disclose is required for any omission-based claim. *See*, *e.g.*, *Sud v. Costco Wholesale Corp.*, 731 Fed.Appx. 719, 720 (9th Cir. 2018).[22] Plaintiffs have failed to plead such facts.

---

[22]*See also In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.,* 2020 WL 919259, *7 (D.Minn. 2020); *Merch. One, Inc. v. TLO, Inc.*, 2020 WL 248608, *7 (S.D.Fla. 2020); *Ahern v. Apple, Inc.*, 2019 WL 5102621, **11-12 (N.D.Cal. 2019); *Blissard*, 2018 WL 6177295, *11; *Gonzalez v. Mazda Motor Corp.*, 2017 WL 6450450, *4 (N.D.Cal. 2017); *Bristow First Assembly of God v. BP p.l.c.*, 210 F.Supp.3d 1284, 1291 (N.D.Okla. 2016); *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 5530758, *4 (D.Minn. 2014); *Graphic Commc'ns Local 1B Health &*

21

<u>Consumer protection claims:</u>  Plaintiffs allege a duty to disclose existed because FCA US (1) "possessed exclusive knowledge"; (2) "intentionally concealed the … Defect from ... [p]laintiff[s]"; and (3) "made misrepresentations that were rendered misleading because they were contradicted by withheld facts."  *See* CACAC, ¶¶ 2330, 2780, 3403, 3418, 3777, 3810, 3884, 3981, 4272.  But, these averments are unsupported by any ***facts*** and thus are legally insufficient.  Plaintiffs' allegation that FCA US "possessed exclusive knowledge" is belied by the CACAC, which charges 22 different entities, the vast majority of which are direct competitors of FCA US, with the ***same*** knowledge of a purported defect.  *See*, *generally*, CACAC.  Moreover, Plaintiffs' reliance on ***publicly available*** information in the form of online complaints further renders any "exclusive knowledge" allegations implausible.  *See, e.g.*, *Milman*, 2018 WL 5867481, *11.  And, Plaintiffs offer no facts to support intentional concealment, nor do they describe any specific misrepresentations that were "rendered misleading because they were contradicted by withheld facts."  *Id.*  These pleading failures mandate dismissal of all of Plaintiffs' omission-based fraud claims.  *See, e.g.*, *Taragan v. Nissan N.Am., Inc.*, 2013 WL 3157918, **6-7 (N.D.Cal. 2013).

<u>Fraud by omission:</u>  As to their fraud by omission – and CLRA, FAL, and UCL claims – Plaintiffs allege a duty to disclose existed because:  (1) "FCA [US] had exclusive access to and far superior knowledge about technical facts regarding the … Defect"; (2) "FCA [US] knew that the … Defect gave rise to serious safety concerns" and this would have been material to plaintiffs; (3) named plaintiffs and class members "lack[ed] the sophisticated expertise … necessary to discover the

*Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695-97 (Minn. 2014); *Gould v. M & I Marshall & Isley Bank*, 860 F.Supp.2d 985, 989 (D.Ariz. 2012); *Villa Marin Chevrolet, Inc. v. Gen. Motors Corp.*, 1999 WL 1052494, *6 (E.D.N.Y. 1999); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995); *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 499 (S.D. 1990).

22

FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

ACU Defect on their own"; and (4) "FCA [US] made incomplete representations … while purposefully withholding material facts about a known safety defect." CACAC, ¶¶ 2446, 2358, 2472, 2495, 2516, 2814, 3465, 3825, 3913, 4009, 4301. These allegations do not suffice for a number of reasons.

*First*, Florida, North Carolina, and South Dakota do not recognize a duty to disclose absent a fiduciary or other relationship of trust or confidence, nor do these states hold that a duty to disclose exists in an arms-length transaction. *Merch. One, Inc. v. TLO, Inc*., 2020 WL 248608, \*\*6-7 (S.D.Fla. 2020); *Ratcliff v. Am. Honda Motor Co., Inc.*, 2018 WL 3542865, \*3 (M.D.N.C. 2018).[23]

*Second*, "far superior knowledge" and/or materiality alone are insufficient to establish a duty to disclose under Arizona, California, Florida, Minnesota, New York, North Carolina, Oklahoma, and South Dakota law. *See* Note 22, *supra*.

*Third*, while a plaintiff's inability to independently discover information and/or a defendant's incomplete representations and/or purposeful withholding of material facts regarding a safety defect ***may*** establish a duty to disclose, Plaintiffs' factual allegations support neither theory. To start, the fact that the CACAC relies upon ***publicly available*** information belies any inability to discover any purported defect. And, as to misleading partial representations, Plaintiffs just point to things like the Part 573 Safety Recall Report for the 2016 recall as constituting some "misleading" representation. *See* CACAC, ¶¶ 1366-67. But, obviously, a report which identifies a defect in, and announces a recall for, one particular subset of vehicles is not "misleading" simply because it does not include other vehicles.

In other words, Plaintiffs plead no ***facts*** actually supporting a duty to disclose under any state's law. This pleading failure mandates dismissal of all of Plaintiffs' omission-based fraud claims. *See*, *e.g.*, *Taragan*, 2013 WL 3157918, \*\*6-7

---

[23]*See also Burnette v. Nicolet, Inc*., 818 F.2d 1098, 1101 (4th Cir. 1986); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp.3d 194, 232 (D.N.J. 2020); *Taggart*, 462 N.W.2d at 499.

23

FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Grodzitsky*, 2013 WL 690822, **6-7.[24]

    (d)    *Additional Grounds for Dismissal of Certain Fraud Claims.*

**FAL (omission)**:  Omissions are not actionable under the FAL.  *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, *12 (N.D.Cal. 2020).  But Plaintiffs plead an omission-based claim.  CACAC, ¶ 2466.  Thus, this portion of Count B.3.c must be dismissed.

**MNDTPA:**  Minnesota law allows only injunctive relief under the MNDTPA, and because Keister has not pleaded facts supporting the notion that he is "likely to be damaged again" by any alleged misrepresentation or omission, his claim under that statute (Count B.12.d) must be dismissed.  *See* CACAC, ¶¶ 140-42, 3412-27; *Damon v. Groteboer*, 937 F.Supp.2d 1048, 1071 (D.Minn. 2013).

**NCDTPA:**  No claim under North Carolina's consumer fraud statute is permitted absent "egregious or aggravating circumstances," and this requirement is not satisfied by allegations that a manufacturer "fail[ed] to give … notice[] about [an] allegedly defective [product]."  *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787-88 (4th Cir. 2012).  Gonzalez's claim under that statute (Count B.17.b) must be dismissed because she pleads no facts supporting this vital element of her claim.  *See* CACAC, ¶¶ 146-48; 3878-92.

**OKCPA:**  Claims brought under Oklahoma's consumer fraud statute are preempted if they are based on transactions regulated under other administrative or regulatory schemes.  Okla. Stat. Ann. tit. 15, § 754(2); *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F.Supp.3d 1202, 1216 (W.D.Okla. 2015).  The automotive industry is obviously heavily regulated, as evidenced by Plaintiffs' own allegations about government investigations.  CACAC, ¶¶ 11, 13, 15.  Thus, Dean's OKCPA claim

---

[24]As to the UCL claim, no "unlawful" or "unfair" claim survives because all of the other California claims fail and there are no factual allegations supporting the notion that "a public policy that is tethered to specific constitutional, statutory or regulatory provisions" was violated nor facts weighing any conduct "against the gravity of the harm."  *See, e.g.*, *Milman*, 2018 WL 5867481, *14.

(Count B.18.c) must be dismissed.

### 5.    *Unjust Enrichment*[25]

This Court previously dismissed Plaintiffs' nationwide unjust enrichment claim because Plaintiffs failed to specify which states' laws they relied upon.  CCAC MTD Order, 2022 WL 522484, **64-65.  Plaintiffs now replead their unjust enrichment claim as seven state-specific claims, brought on behalf of the respective state subclasses who have claims against FCA US.  *See* CACAC, ¶¶ 2384-91, 2542-56, 2840-53, 3491-3500, 3851-60, 4035-42, 4327-34.  These claims still fail for the reasons set forth in Defendants' Joint Brief, and the additional reasons below.

*First*, unjust enrichment claims are not legally viable where an express warranty governs the parties' relationship.  *See, e.g.*, *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, *22 (C.D.Cal. 2017).[26]  Plaintiffs admit their relationships with FCA US are governed by an express warranty that defines the parties' rights and expectations.  *See*, *e.g.*, CACAC, ¶ 2318 ("the FCA Class Vehicles were covered by express warranties").  Thus, their unjust enrichment claims fail.

*Second,* Plaintiffs admit they purchased their vehicles from various third party dealerships, meaning they conveyed ***no direct benefit*** on FCA US.  *Id.* at ¶¶ 125-54.  The lack of allegations showing a direct benefit is likewise fatal to Plaintiffs' unjust

---

[25]Counts B.2.f, B.3.h, B.6.g, B.12.i, B.16.f, B.18.g, B.21.g. (asserting unjust enrichment claims against FCA US under the laws of Arizona, California, Florida, Minnesota, New York, Oklahoma, and South Dakota, but not North Carolina). However, even if Meyer had pleaded such a claim against FCA US under North Carolina law, it would fail for all the same reasons set forth below.

[26]*See also U.S. ex rel. Ash Equip. Co. v. Morris, Inc.*, 2015 WL 5725507, *4 (D.S.D. 2015); *Firetrace USA, LLC v. Jesclard*, 800 F.Supp.2d 1042, 1052 (D.Ariz. 2010); *Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, 2014 WL 1745050, *8 (S.D.Fla. 2014); *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012); *Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.Supp.2d 664, 696 (M.D.N.C. 2011); *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 7267851, *1 (W.D.Okla. 2011); *Simon v. Metro. Prop. & Cas. Ins. Co.*, 2009 WL 10664188, *4 (W.D.Okla. 2009); *Alcorn v. BP Prod. N. Am., Inc.*, 2004 WL 1745761, *4 (D.Minn. 2004); *Southeastern Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200, 206-07 (N.C.App. 2002).

enrichment claim.[27]

*Third*, "California does not recognize a standalone cause of action for unjust enrichment." *Manchester v. Sivantos GmbH*, 2019 WL 3531419, *5 (C.D.Cal. 2019) (citations omitted).

## IV.   **CONCLUSION**

For the reasons set forth herein and in the Joint Brief, FCA US respectfully requests that this Court dismiss the Consolidated Amended Class Action Complaint.

Dated:  August 2, 2022

**THOMPSON COBURN LLP**

By: */s/ Stephen A. D'Aunoy*
Kathy A. Wisniewski
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
Scott H. Morgan
Kacey R. Riccomini (SBN 292340)

*Attorneys for Defendant FCA US LLC*

---

[27]*See Kopel v. Kopel*, 2017 WL 372074, *5 (Fla. 2017); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 511-12 (2012); *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, *3 (N.D.Ill. 2010) (applying North Carolina law); *Interboro Packaging Corp. v. City of Minneapolis*, 2009 WL 2928755, *8 (Minn.App. 2009); *Baker v. Trans Union LLC*, 2008 WL 2329099, *2 (D.Ariz. 2008); *Slover v. Equitable Variable Life Ins. Co.*, 443 F.Supp.2d 1272, 1280 (N.D.Okla. 2006); *Norman v. Nash Johnson and Sons' Farms, Inc.*, 537 S.E.2d 248, 266 (N.C.App. 2000).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2022, I electronically filed the foregoing

document using the CM/ECF system which will send notification of such filing to

the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic

Mail Notice List.

*/s/ Stephen A. D'Aunoy*
Stephen A. D'Aunoy

**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**