1   Roland Tellis (SBN 186269)
    rtellis@baronbudd.com
2   **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
3   Encino, CA 91436
    Telephone: 818.839.2333
4   Facsimile: 214.520.1181

5   David S. Stellings (*pro hac vice*)
    dstellings@lchb.com
6   **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
7   250 Hudson Street, 8th Floor
    New York, New York 10013-1413
8   Telephone: 212.355.9500
    Facsimile: 212.355.9592

9

10  *Co-Lead Counsel for Plaintiffs*

11  (additional counsel listed below)

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16

17  *In re ZF-TRW Airbag Control Units*      MDL No. 2905
    *Products Liability Litigation*
18                                            Case No. 2:19-ml-02905-JAK-PLA

19  ALL CASES
                                              **DISCOVERY MATTER**
20

21                                            **Joint Stipulation Regarding Plaintiffs'**
                                              **Motion to Compel ZF Friedrichshafen**
22                                            **AG to Produce Documents in Response**
                                              **to Jurisdictional Document Requests 21**
23                                            **and 24**

24

25

26

27

28

                                            i
─────────────────────────────────────────────────────────
**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>Table of Contents</u>

I.    Plaintiffs' Introductory Statement ..................................................... 1

II.   ZF's Introductory Statement ............................................................ 3

III.  Plaintiffs' Statement ...................................................................... 6

    A. Factual Background ..................................................................... 6

       1. ZF Germany has overseen the domestic ZF Defendants who designed, manufactured, and sold the Defective ACU for years.............................. 6

       2. By no later than summer of 2015, the ZF Defendants learned that NHTSA was investigating the defective DS84 ACUs and promptly conspired to mislead NHTSA about them................................................. 7

       3. ZF Germany reviewed, approved, and caused the transmittal of multiple misleading statements to NHTSA, in violation of the Mail Fraud Statute. ..................................................................... 8

    B. Procedural History ..................................................................... 9

       1. The Stipulated Order on jurisdictional discovery permits Plaintiffs to move to compel at any time after a Defendant entirely refuses such discovery.............................................................................. 10

       2. ZF Germany has clearly opposed Plaintiffs' right to jurisdictional discovery in its entirety............................................................. 10

       3. The Court has not yet decided the merits of Plaintiffs' requests for jurisdictional discovery from ZF Germany. ...................................... 10

       4. Consistent with the Court's guidance, Plaintiffs now renew their request for jurisdictional discovery with their amended complaint on file. ....... 12

    C. Plaintiffs' motion to compel seeks a targeted subset of documents that are responsive to Requests 21 and 24 of their August 7, 2020 Requests for Production. ................................................................................ 13

    D. Legal Standard ........................................................................ 17

    E. Legal Argument ....................................................................... 18

       1. Plaintiffs have demonstrated a "colorable basis" for jurisdiction based on ZF Germany's approval and control of at least three predicate acts of mail fraud.............................................................................. 18

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

2.  The jurisdictional discovery sought by Plaintiffs is proportionate to the
needs of the case. .................................................................................22

3.  Plaintiffs' request for jurisdictional discovery is ripe. ...........................25

F.  Conclusion ...........................................................................................27

V.  ZF's Statement .............................................................................................28

A.  Background ...........................................................................................28

B.  Legal Standard ......................................................................................37

C.  Argument ..............................................................................................39

1.  Judge Kronstadt Already Denied Jurisdictional Discovery Based on
Plaintiffs' Same Allegations and Arguments. .........................................39

2.  Plaintiffs' Allegations Do Not Warrant Jurisdictional Discovery. ........41

3.  Any Dispute Regarding Jurisdictional Discovery Should be Resolved in
the Context of the Motion to Dismiss Itself. ..........................................51

D.  Conclusion ...........................................................................................52

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1    Plaintiffs, by and through Co-Lead Counsel, hereby respectfully submit

2    Plaintiffs' and ZF Friedrichshafen AG's Joint Stipulation Under L.R. 37-2.1

3    Regarding Plaintiffs' Motion to Compel ZF Friedrichshafen AG to Produce

4    Documents in Response to Jurisdictional Document Requests 21 and 24.

5    **I.    <u>Plaintiffs' Introductory Statement</u>**

6    This case concerns defective airbag control units ("ACUs") designed,

7    manufactured and sold by the ZF Defendants. ECF 477 at ¶¶453-542. In this

8    motion, Plaintiffs seek to compel one of these ZF Defendants—ZF Friedrichshafen

9    AG ("ZF Germany")—to produce a targeted set of documents in response to

10   Plaintiffs' jurisdictional discovery requests. Specifically, Plaintiffs seek documents

11   and communications about drafts of just three identified PowerPoint presentations

12   made to the National Highway Traffic Safety Administration ("NHTSA"), and the

13   meetings with NHTSA where those presentations were used.  As described in

14   Plaintiffs' amended complaint, these presentations include misleading statements to

15   the U.S. regulator intended to conceal and minimize the defect in the ACUs and

16   further the Defendants' schemes to keep making, selling, and profiting from them.

17   These three PowerPoints and related meetings form the core of Plaintiffs'

18   allegations about ZF Germany's activities supporting the exercise of personal

19   jurisdiction over the company in this litigation. But the facts about ZF Germany's

20   role in these PowerPoints—which were created for and presented to a regulator *in*

21   *the United States*—are in dispute. Plaintiffs allege that ZF Germany reviewed and

22   approved the presentations for NHTSA, and caused their transmission to the U.S.

23   regulator. ZF Germany's direct involvement is demonstrated by the documents

24   themselves, which list ZF Germany as a corporate author and attribute the copyright

25   specifically to that entity. *See* § III.A.3. In light of ZF Germany's interest in

26   protecting a very recent, and very large, investment in the companies that

27   manufacture the ACU at issue, this hands-on role in communications with an

28   important regulator about a key product in its portfolio is not surprising. *See*

1

1   § III.A.1-2.

2          The ZF Defendants would tell a different story, though, and submitted a

3   declaration in support of their motion to dismiss that characterizes ZF Germany's

4   role in these and other communications with NHTSA as one of "only limited

5   oversight." ECF 209-4, ¶10. But this vague and self-serving description tells

6   Plaintiffs and the Court very little about what ZF expressly concedes to be at least

7   *some* degree of oversight by ZF Germany in the communications. Plaintiffs seek

8   documents necessary to do just that.

9          The resolution of these competing narratives through the targeted discovery

10  Plaintiffs seek is necessary to assess the Court's personal jurisdiction over ZF

11  Germany in this matter. If ZF Germany did indeed—as Plaintiffs contend and the

12  evidence supports—cause these misleading presentations to be sent to the United

13  States to further a fraudulent scheme, this would be sufficient to establish personal

14  jurisdiction over the foreign entity. This is so because a defendant's purposeful

15  direction of misconduct toward the forum supports the exercise of jurisdiction in

16  that forum (here, the United States). *See* § III.E.1.

17         While this dispute is of great importance to this case, which itself concerns

18  important issues about a material safety defect in millions of vehicles, Plaintiffs

19  submit that it will not be difficult or burdensome to resolve. Indeed, Plaintiffs limit

20  this motion to a core set of documents that go to the heart of their allegations of ZF

21  Germany's forum-directed activities, the search for and production of which will

22  undoubtedly contribute to the just, speedy, and relatively inexpensive determination

23  of hotly contested issues in this case. *See* Fed. R. Civ. P. 1.

24         Under these circumstances, the Court should exercise its discretion and order

25  ZF Germany to produce documents and communications about three misleading

26  presentations to a United States regulator that bear its name and copyright.

27

28

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

## II.    ZF's Introductory Statement

Offering nothing new to its prior, rejected requests for jurisdictional discovery, Plaintiffs' motion ignores Judge Kronstadt's prior dismissal order, the controlling law, and unambiguous sworn testimony from domestic ZF witnesses that confirm Plaintiffs' allegations about ZF's foreign parent company are untrue. Jurisdictional discovery remains inappropriate and unnecessary, and Plaintiffs' motion should be denied.

This is Plaintiffs' second request for jurisdictional discovery from ZF Friedrichshafen AG, the German "great-grandparent" corporation previously dismissed for lack of jurisdiction.  The Court still lacks jurisdiction over this foreign entity, which is far removed from the domestic ZF entities that designed and sold the ACU products at issue in this case.  Notwithstanding their amendment, Plaintiffs' assertion of personal jurisdiction over ZF Friedrichshafen AG fails for the same reasons as before.  Plaintiffs do not plausibly allege that ZF Friedrichshafen AG was the "alter ego" of its domestic subsidiaries.  *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2022 WL 522484, at *34–35 (C.D. Cal. Feb. 9, 2022).  Nor can Plaintiffs base personal jurisdiction on the German entity's contacts with the United States.  As before, Plaintiffs argue that a document copyright mark, "© ZF Friedrichshafen AG," appeared in the footer on certain documents presented in the United States.  That mark cannot establish jurisdiction by law, and the footer was the result of rote corporate practice, irrespective of the document content, by the domestic entities who prepared the presentations in question.  As explained in a sworn declaration by one of the domestic ZF employees responsible for preparing and presenting those documents to NHTSA, ZF Friedrichshafen AG had no involvement in the content of the documents.  *See* August 2, 2022 Goodman Decl., Dkt. 528-2, ¶¶ 11(f), 20 ("2022 Goodman Decl.").

Besides the footer, Plaintiffs base their motion on generic speculation that ZF Friedrichshafen AG (the parent above hundreds of entities globally) would want to

1    "protect[]" its "investment" in the U.S. subsidiaries.  This conclusory statement, if

2    accepted, would entitle jurisdictional discovery in every parent-subsidiary

3    relationship.

4        In short, this Court should deny Plaintiffs' request for jurisdictional

5    discovery from ZF Friedrichshafen AG for three primary reasons.  ***First***, Plaintiffs'

6    jurisdictional allegations as to ZF Friedrichshafen AG are the same as what Judge

7    Kronstadt rejected in the prior motion to dismiss.  There, Plaintiffs alleged ZF

8    Friedrichshafen AG "controlled all communications relating to the ACU defect on

9    behalf of the entire corporate family, including with NHTSA."  *See* Dkt. 283 at 24.

10   Plaintiffs based their "control" argument then, as here, on a ZF Friedrichshafen AG

11   copyright mark on certain presentations that ZF's domestic entities made to

12   NHTSA.  *See id*. at 23–24.  Plaintiffs also asked for jurisdictional discovery—"if

13   the Court deem[ed] it necessary"—to "develop the record" regarding ZF

14   Friedrichshafen AG's control over domestic ZF entities.  *See* Dkt. 282 at 15.

15       Judge Kronstadt did not "deem[] it necessary."  After crediting Plaintiffs'

16   allegations as true, he found there were not "sufficient allegations" that ZF

17   Friedrichshafen AG "substantially control[s] [its] subsidiaries" and that Plaintiffs

18   "[fell] short of establishing purposeful direction by" ZF Friedrichshafen AG.  *See In*

19   *re ZF-TRW*, 2022 WL 522484, at *34–35.  To be sure, Judge Kronstadt

20   acknowledged that jurisdictional discovery may be appropriate to resolve "any

21   doubt over [the Court's] jurisdiction" over a foreign entity, *see id*. at *39, but

22   notably did not identify any such doubts about the lack of jurisdiction over ZF

23   Friedrichshafen AG.  This was no oversight: in the very same order, Judge

24   Kronstadt granted Plaintiffs' request for jurisdictional discovery as to a separate

25   foreign defendant affiliated with a vehicle manufacturer defendant.  *See id*.

26   Plaintiffs offer no new factual or legal bases to revisit Judge Kronstadt's prior

27   ruling, and jurisdictional discovery is unwarranted.

28       ***Second***, as Judge Kronstadt held, jurisdictional discovery is "appropriately

4

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1   granted where pertinent facts bearing on the question of jurisdiction are

2   controverted or where a more satisfactory showing of the facts is necessary." *See*

3   *id*. (citation omitted).  Plaintiffs ignore this standard, as their only basis for

4   jurisdictional discovery stems from the aforementioned copyright marks.  Under

5   relevant case law, a company's mark or logo **cannot be used** to establish

6   jurisdiction, which dooms Plaintiffs' motion.

7        More importantly, the facts here are not controverted.  Mr. Goodman's sworn

8   declaration explains the lack of involvement of ZF Friedrichshafen AG in those

9   presentations:  "[T]he copyright mark and corporate name in the title were the result

10  of standard corporate practice that employees of the domestic ZF entities (including

11  myself) implemented when creating the presentations using the template 'master'

12  slides."  2022 Goodman Decl. ¶ 11.  Mr. Goodman confirms that the presentations

13  "were prepared and approved exclusively by employees of the domestic ZF

14  entities," and not by ZF Friedrichshafen AG.  *Id.* ¶¶ 11(f), 20.  In the face of this

15  unambiguous testimony, Plaintiffs do not explain how the requested jurisdictional

16  discovery would "bear[] on the question of jurisdiction" or why that discovery "is

17  necessary."  *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

18        ***Third***, if any question as to the need for jurisdictional discovery remains,

19  Judge Kronstadt should decide it concurrently with ZF's motion to dismiss—just as

20  he did last time.  His prior dismissal opinion demonstrates at least three potential

21  rulings—the first two of which do not require jurisdictional discovery.  First, he

22  could again find Plaintiffs' allegations do not establish jurisdiction.  Second, he

23  could conclude that Plaintiffs' allegations establish jurisdiction and deny the motion

24  without the need for discovery.  Or, third, he could defer that portion of ZF's

25  motion to dismiss pending a period of jurisdictional discovery, and set the

26  discovery and briefing that may be required as to the Rule 12(b)(2) issues. Thus, if

27  any question about jurisdictional discovery remains, Judge Kronstadt should again

28  take the requested jurisdictional discovery up with the motion to dismiss.

1     For these reasons, as set out below, the Court should deny Plaintiffs' request.

2 **III.**   **Plaintiffs' Statement**

3     **A.**   **Factual Background**

4

5       **1.**   **ZF Germany has overseen the domestic ZF Defendants who designed, manufactured, and sold the Defective ACU for years.**

6

7     Plaintiffs allege that all of the ZF Defendants were core members of five

8 RICO enterprises, each of which perpetuated fraudulent schemes to defraud

9 consumers and NHTSA about the existence, nature, and scope of the ACU Defect

10 in the Class Vehicles. ECF 477-1 at ¶¶1602-1615, 1743-1756, 1875-1889, 2011-

11 2024, 2142-2155. The purpose of the fraudulent schemes was for all participants to

12 profit by deceiving consumers into overpaying for defective Class Vehicles with

13 defective component parts. ECF 477-1 at ¶¶1603, 1744, 1876, 2012, 2143.

14     The Domestic ZF Companies (which previously operated under the "TRW"

15 corporate name) first began to manufacture and sell defective DS84 ACUs for

16 vehicles starting with model years 2009 and 2010. In the spring of 2015, ZF

17 Germany purchased the Domestic ZF Companies. *See* ECF 477 at ¶250. Sales of

18 new Class Vehicles with defective DS84 ACUs continued for at least four model

19 years thereafter, through 2019. Thus, for the latter half of a decade-long scheme to

20 manufacture and sell defective ACUs,[1] ZF Germany benefitted from the illegal

21 profits reaped by Defendants' fraud. ECF 477 at ¶¶562-606; ECF 477-1 at ¶¶1667,

22 1792, 1928, 2063, 2194.

23     After the 2015 acquisition, the Domestic ZF Defendants' performance was

24 indisputably material to ZF Germany's bottom line. This merger required ZF

25 Germany to pay a stunning $12 billion, and was the largest merger in ZF

26

27 [1] *See, e.g.*, ECF 477-1 at ¶1543 (shipments of Hyundai-Kia Class Vehicles "occurred at least in each year from 2010 to 2019"); at ¶1690 (same for FCA Class Vehicles); at ¶1819 (same for Toyota Class Vehicles), at ¶1952 (same for Honda Class Vehicles).

28

1    Germany's 100-year history. As ZF Germany stated at the time, one of the domestic

2    entities, Defendant ZF TRW Automotive Holdings Corp. "[was] almost as big as

3    ZF." *See id.*

4         In light of its unprecedented $12-billion investment in the TRW companies,

5    ZF Germany began to oversee the domestic ZF Defendants immediately following

6    the acquisition in 2015. For example, Plaintiffs allege that "after ZF Germany

7    acquired ZF TRW Corp. and its subsidiaries, Dr. Franz Kleiner, a member of ZF

8    Germany's Board of Management, took over responsibility for the acquired

9    company." ECF 477 at ¶251. And, "[a]fter Dr. Kleiner retired, ZF Germany

10   appointed Dr. Martin Fischer as his replacement on the ZF Board of Management,

11   who took over responsibilities including active and passive safety systems and the

12   North America Region." *Id.* Moreover, by no later than July 2017, one of ZF

13   Germany's board members assumed control of the legal and compliance divisions

14   of all the former TRW companies, including the ZF Defendants. *See id.* at ¶257.

15              **2.    By no later than summer of 2015, the ZF Defendants learned
16                      that NHTSA was investigating the defective DS84 ACUs and
17                      promptly conspired to mislead NHTSA about them.**

18        Around the same time ZF Germany bought the Domestic ZF Defendants and

19   their affiliates, NHTSA began to investigate the DS84 ACUs at the center of this

20   litigation. The ZF Defendants knew about the investigation by no later than the

21   summer of 2015, when they informed several vehicle manufacturers about it. *See*

22   ECF 396, ¶1267; Ex. 1 (Kia 573 report chronology stating that ZF TRW "advise[d]

23   Kia that NHTSA is investigating airbag non-deployment issues with wide range of

24   models regarding TRW ACU" in the "Summer 2015"). NHTSA's investigation into

25   DS84 ACUs posed a serious business threat to ZF Germany, which had just

26   spent billions of dollars to purchase the companies that make them. Indeed, millions

27   of vehicles in the United States had the DS84 ACUs, and the profitability of the

28   TRW companies ZF Germany had just acquired largely depended upon the sale of

safety equipment such as ACUs. *See* ECF 477 at ¶¶1259-1263.

As such, to continue to profit from the fraudulent scheme to sell consumers Class Vehicles with defective DS84 ACUs, ZF Germany coordinated with the other ZF Defendants and the Vehicle Manufacturer Defendants to mislead NHTSA about the nature and scope of the defect in the ACUs. *See* ECF 477 at ¶¶941, 955, 1086, 1099, 1116, 1255, 1264, 1272, 1299, 1345, 1348, 1350, 1391, 1408, 1446, 1449.

### 3.   ZF Germany reviewed, approved, and caused the transmittal of multiple misleading statements to NHTSA, in violation of the Mail Fraud Statute.

ZF Germany played an active role in misleading NHTSA about the defect in the DS84 ACUs. As Plaintiffs' amended complaint explains, ZF Germany reviewed and approved at least three misleading PowerPoint presentations, with full knowledge that its affiliates would then send these presentations to NHTSA using mail and wire. *See* ECF 477 at ¶¶245, 1299, 1345, 1408; *see* ECF 477-1 at ¶¶1587-1589, 1727-1729, 1859-1861, 1995-1997, 2126-2128. These three presentations—which were respectively sent to NHTSA on March 14, 2016, in July or August of 2016, and March 12, 2018—contain well over a dozen statements that wrongly concealed or downplayed the ACU Defect in furtherance of Defendants' fraudulent schemes. *See* ECF 477 at ¶¶1273-1295, 1301, 1316-1342, 1347, 1393-1403, 1407. These three presentations are attached hereto as Exhibits 2, 3, and 4.

ZF Germany's involvement with these three misleading NHTSA presentations is clear from the very face of the documents. Indeed, the cover pages of each of the two 2016 PowerPoints expressly identify "ZF Friedrichshafen AG" as the corporate author under the presentation title. Ex. 2 (ZF-MDL-1310); Ex. 3 (ZF-MDL-12177). And all three misleading PowerPoints have copyright legends on the bottom righthand corner of virtually every page that attribute ownership of the content copyright to "© ZF Friedrichshafen AG." *See* Ex. 2 (ZF-MDL-1310); Ex. 3 (ZF-MDL-12177); Ex. 4 (ZF-MDL-148). Given these clear hallmarks of ZF

8

1   Germany's approval and control of the contents of these misleading presentations,

2   Plaintiffs allege that ZF Germany caused its domestic subsidiaries to transmit the

3   presentations to NHTSA. *See* ECF 477-1 at ¶¶1587-1589, 1727-1729, 1859-1861,

4   1995-1997, 2126-2128. This misconduct supports Plaintiffs' claims that ZF

5   Germany committed more than two predicate acts of mail and/or wire fraud in

6   furtherance of the five RICO enterprises, in violation of 18 U.S.C. §1962(c), and

7   conspired to perpetuate a fraudulent scheme involving the use of mail and wires, in

8   violation of 18 U.S.C. §1962(d).

9        None of the declarations proffered by ZF Germany in its first motion to

10   dismiss rebutted this clear evidence of its involvement with the presentations. The

11   declarations did not deny ZF Germany's ownership of the information contained in

12   the misleading presentations or address the prominent references to ZF Germany on

13   the title pages and copyright legends. *See, e.g.*, ECF 209-4. Instead, the relevant

14   declaration merely says: "ZF Friedrichshafen AG, for example, exercises only

15   limited oversight over ZF's domestic entities [sic] communications with NHTSA.

16   The content of those entities representations to NHTSA are managed by the

17   domestic entities themselves." *Id.* at ¶10. This vague statement is not a denial. If

18   anything, it *invites* discovery because it concedes that ZF Germany exercises at

19   least *some* degree of "oversight" on these matters —the nature and shape of which

20   is squarely relevant to personal jurisdiction as to ZF Germany, and which can be

21   fleshed out through the very limited discovery sought in this motion.[2]

22      **B.**   **Procedural History**

23

24        As explained more fully below, Plaintiffs have timely and repeatedly sought

25   _____

26   [2] Moreover, insofar as this one domestic ZF employee claims in a declaration that it was the Domestic ZF Defendants that "managed" "the content" of the above

27   misrepresentations to NHTSA, that claim does not undermine Plaintiffs' allegation of ultimate approval and control by ZF Germany of the presentations sent in its

28   name. A newspaper editor, for example, still has shared responsibility for content "managed" by a journalist when she approves that content for publication.

jurisdictional discovery from ZF Germany and the other Foreign Defendants.

> **1.      The Stipulated Order on jurisdictional discovery permits
> Plaintiffs to move to compel at any time after a Defendant
> entirely refuses such discovery.**

On May 28, 2020, the Court entered a stipulated order that governs service of

process and jurisdictional discovery on foreign defendants in this matter. This order

permits Plaintiffs to serve jurisdictional discovery requests. ECF 126 at ¶3(c). This

order also requires Defendants to "advise Plaintiffs as to whether that Foreign

Defendant intends to oppose Plaintiffs' entitlement to jurisdictional discovery in its

entirety" "within 21 days of service of the jurisdictional discovery requests."

ECF 126 at ¶3(c). The stipulated order provides no deadline for when a party must

seek court assistance on a dispute about jurisdictional discovery requests.

> **2.      ZF Germany has clearly opposed Plaintiffs' right to
> jurisdictional discovery in its entirety.**

On August 7, 2020, Plaintiffs served ZF Germany with jurisdictional

discovery requests.

On August 27, 2020, ZF Germany sent Plaintiffs a letter stating:

> In accordance with paragraph 3.c of the Court's Order approving the
> parties' Stipulation Regarding Service of Process on Foreign
> Defendants (Dkt. 126), I am writing to notify you that the Foreign ZF
> Entities oppose and object to Plaintiffs' requests for jurisdictional
> discovery in their entirety. As ZF explained in its Motion to Dismiss
> (Dkt. 209), Plaintiffs' Consolidated Amended Complaint presents no
> basis for the Court to exercise personal jurisdiction over the Foreign
> ZF Entities. Accordingly, Plaintiffs' jurisdictional discovery requests
> are improper.

> **3.      The Court has not yet decided the merits of Plaintiffs'
> requests for jurisdictional discovery from ZF Germany.**

On September 25, 2020, Plaintiffs filed their opposition papers to all of the

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1   Defendants' motions to dismiss the first consolidated complaint in this matter.

2   Therein, Plaintiffs expressly requested jurisdictional discovery from all Defendants

3   in the event the Court had doubts about jurisdiction. *See* ECF 282 at 14-15.

4        On February 9, 2022, the Court entered an order dismissing Plaintiffs' claims

5   against the ZF entities. The order was silent as to whether jurisdictional discovery

6   should be allowed against ZF Germany. *See* ECF 396.

7        On February 10, 2022, Plaintiffs requested clarification from Judge

8   Kronstadt with respect to jurisdictional discovery. *See* 2/10/2022 H'rg Tr. at 29:20-

9   30:9. Judge Kronstadt instructed the parties to meet and confer about the issue and

10   state their positions in a joint status report to be submitted in advance of a March

11   21, 2022 hearing before this Court. *See id.* at 39:5-40:4

12        On March 7, 2022, the parties submitted a joint status report that addressed

13   jurisdictional discovery, among other topics. ZF Germany again confirmed impasse

14   on this issue by stating that Plaintiffs should not receive any jurisdictional

15   discovery at all. ZF Germany and the other foreign Defendants also claimed

16   Plaintiffs had waived their right to jurisdictional discovery. *See* ECF 413 at 38-46.

17        On March 21, 2022, the Court issued these rulings on these issues:

18

19        I find that Judge Kronstadt's order on the motion to dismiss when
          combined with his comments at the status conference does not

20        constitute a determination as to whether jurisdictional discovery as to
          these Defendants would never be appropriate and I reject the argument

21        that Plaintiffs have waived seeking such discovery for all time based
          on the parties' stipulation regarding service on foreign Defendants.

22

23        But as with the parts manufacturer Defendants, there appear to be no
          currently pending claims as to these Defendants and the claims that

24        were alleged failed to result in an order that jurisdiction or
          jurisdictional discovery was warranted. So any jurisdictional discovery

25        as to these Defendants would have to wait until there's a live
          complaint against them. And if there isn't an agreement among the

26        parties at that time about production of jurisdictional discovery,

27        Plaintiffs will be required to make a proper showing as to each
          Defendant that such discovery is warranted in order to assert

28

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

jurisdiction against them in an amended complaint.

3/21/22 H'rg Tr. 13:22 – 14:14.

**4.    Consistent with the Court's guidance, Plaintiffs now renew their request for jurisdictional discovery with their amended complaint on file.**

Consistent with this Court's instruction "to wait until there's a live complaint" against ZF Germany before pursuing jurisdictional discovery against ZF Germany (3/12/22 H'rg Tr. 13:22-14:14), Plaintiffs waited until May 26, 2022, when they re-named ZF Germany as a Defendant in their amended complaint, to renew jurisdictional discovery efforts against ZF Germany.

The week after filing their amended complaint, Plaintiffs asked ZF Germany for a telephonic meet and confer concerning their jurisdictional discovery requests. Specifically on June 3, 2022, after ZF's counsel stated, "We do not believe the Court has jurisdiction over ZF Friedrichshafen AG," Plaintiffs' counsel responded:

> We don't agree on jurisdiction over ZF Germany. In any event, your arguments on[ly] [sic] show a need for jurisdictional discovery. We'd suggest a meet and confer to determine whether ZF Germany intends to stand on its objections to producing any documents in response to our jurisdictional discovery requests, which were served in August 2020. Please send some dates or times that work for you on that issue.

After that June 3 email, Plaintiffs asked at least two more times for a meet and confer about ZF Germany's responses to Plaintiffs' jurisdictional discovery requests, including on June 13, 2022 and June 21, 2022.

Instead of agreeing to meet and confer in response to this repeated outreach, ZF Germany waited until June 28, 2022 to respond in writing, and asked for Plaintiffs to identify the particular requests they may move to compel on. ZF Germany offered no reason for needing 25 days to make this request, or for why particular requests needed to be identified when ZF Germany had repeatedly

12

insisted that Plaintiffs had no right to take *any* jurisdictional discovery at all.

Plaintiffs then called ZF's counsel on July 5, 2022. During this call, Plaintiffs' counsel identified two specific document requests that Plaintiffs would imminently move on. Plaintiffs also noted that the pace of ZF Germany's response to the request for a meet and confer was not consistent with its obligations under Local Rule 37-1, and proposed a briefing schedule for a Rule 37 stipulation in light of the apparent impasse between the parties.

On July 12, 2022, ZF Germany confirmed the parties had reached impasse.

**C.     Plaintiffs' motion to compel seeks a targeted subset of documents that are responsive to Requests 21 and 24 of their August 7, 2020 Requests for Production.**

In this motion, Plaintiffs seek an order compelling a very targeted production from ZF Germany: documents and communications about drafts of the three PowerPoint presentations to NHTSA marked as Exhibits 2, 3, and 4, and the meetings with NHTSA where those presentations were used. While the Requests are broader in scope than the targeted set of documents at issue in this motion, the discovery sought is clearly responsive to two of Plaintiffs' jurisdictional document requests served in August 2020:

> **Request 21** seeks: "Documents that show ZF Holdings B.V. and ZF Friedrichshafen AG's involvement in NHTSA Preliminary Evaluation 18-003, NHTSA Engineering Analysis 19-001 and Relevant Recalls."

> **Request 24** seeks: "Documents that show ZF Friedrichshafen AG's exercise of 'limited oversight over ZF's domestic entities communications with NHTSA' as set forth in paragraph 10 of the Declaration of Emanuel Goodman (ECF No. 209-4)."

Documents and communications about drafts of Exhibits 2, 3, and 4 are responsive to Request 21 because Exhibits 2, 3, and 4 are presentations made to NHTSA in the course of the investigations that ultimately led to the recalls

of millions of Hyundai, Kia, and FCA Class Vehicles based on the ACU Defect

(both of which were defined as "Relevant Recalls"). Documents and

communications about drafts of Exhibits 2, 3, and 4 are also responsive to Request

24 because each of these exhibits are communications with NHTSA about the ACU

Defect, and ZF Germany's documents about drafts of these Exhibits or the

underlying meetings with NHTSA will likely show the degree of ZF Germany's

contemporaneous involvement in communications with NHTSA.

Pursuant to Local Rule 37, this section includes verbatim ZF Germany's

objections to Requests 21 and 24. In response to Request 21, ZF lodged the

following specific objections on July 13, 2022:

> ZF Friedrichshafen AG further objects to this Request as overbroad,
> unduly burdensome, and not proportional or relevant to the needs and
> issues of the case, because, among other reasons, Plaintiffs have not
> established that they are entitled to jurisdictional discovery, there is no
> basis for Plaintiffs to take jurisdictional discovery of ZF
> Friedrichshafen AG, and the Court previously dismissed ZF
> Friedrichshafen AG on jurisdictional grounds.

> ZF Friedrichshafen AG further objects to this Request to the extent it
> seeks information relating to issues beyond personal jurisdiction. ZF
> Friedrichshafen AG further objects to the Request because "show . . .
> involvement in" is vague and ambiguous and fails to describe the
> documents or information sought with reasonable particularity. ZF
> Friedrichshafen AG further objects to the Request as overbroad,
> unduly burdensome, and not proportional or relevant to the needs of
> this case because it seeks documents and communications over a 17-
> year time period. ZF Friedrichshafen AG further objects to this
> Request to the extent it seeks the disclosure of documents protected by
> the attorney client privilege, the work product exemption from
> discovery, and/or any other applicable constitutional, statutory, or
> common law privilege. ZF Friedrichshafen AG further objects to this
> Request to the extent it seeks documents not in the possession,
> custody, or control of ZF Friedrichshafen AG.

> Finally, Plaintiffs did not re-assert claims against ZF Holdings B.V. in
> their May 26, 2022 Consolidated Amended Class Action Complaint

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

(ECF 477), and any request to take discovery from or about ZF Holdings B.V. is irrelevant and objectionable.

In response to Request 24, ZF Germany lodged the following specific objections on July 13, 2022:

> ZF Friedrichshafen AG further objects to this Request as overbroad, unduly burdensome, and not proportional or relevant to the needs and issues of the case, because, among other reasons, Plaintiffs have not established that they are entitled to jurisdictional discovery, there is no basis for Plaintiffs to take jurisdictional discovery of ZF Friedrichshafen AG, and the Court previously dismissed ZF Friedrichshafen AG on jurisdictional grounds.

> ZF Friedrichshafen AG further objects to this Request to the extent it seeks information relating to issues beyond personal jurisdiction. ZF Friedrichshafen AG further objects to the Request because "Documents that show ZF Friedrichshafen AG's exercise of 'limited oversight . . .'" is vague and ambiguous and fails to describe the documents or information sought with reasonable particularity. ZF Friedrichshafen AG further objects to the Request as overbroad, unduly burdensome, and not proportional or relevant to the needs of this case because it seeks documents and communications over a 17-year time period. ZF Friedrichshafen AG further objects to this Request to the extent it seeks the disclosure of documents protected by the attorney client privilege, the work product exemption from discovery, and/or any other applicable constitutional, statutory, or common law privilege. ZF Friedrichshafen AG further objects to this Request to the extent it seeks documents not in the possession, custody, or control of ZF Friedrichshafen AG.

ZF Germany's July 13, 2022 objections to RFPs 21 and 24 also incorporated these eleven "General Objections":

> 1. ZF Friedrichshafen AG incorporates its Preliminary Statement.

> 2. ZF Friedrichshafen AG objects to the Requests because Plaintiffs have failed to establish personal jurisdiction as to ZF Friedrichshafen AG and there is no basis for Plaintiffs to take jurisdictional discovery of ZF Friedrichshafen AG. In its forthcoming motion to dismiss, ZF

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

Friedrichshafen AG expects to move to dismiss all claims asserted against it, including under Rule 12(b)(2) for lack of personal jurisdiction.

3. ZF Friedrichshafen AG objects to the Requests to the extent they seek documents unrelated to the issue of personal jurisdiction.

4. ZF Friedrichshafen AG objects to the Requests, including the instructions and definitions, to the extent they seek to impose upon ZF Friedrichshafen AG duties and/or responsibilities greater than those imposed by applicable authority.

5. ZF Friedrichshafen AG objects to the Requests to the extent they seek the disclosure of information, documents, or communications protected by the attorney-client privilege, the work product exemption from discovery, and/or any other applicable constitutional, statutory, or common law privilege. No privileged information, document, or communication will intentionally be provided in response to these Requests. By responding to any particular Request, ZF Friedrichshafen AG does not intend to nor does it waive any applicable privilege that it may have, and ZF Friedrichshafen AG specifically intends to assert the same.

6. ZF Friedrichshafen AG objects to the Requests to the extent they seek documents or information that is published, publicly available, already known to Plaintiffs, in Plaintiffs' possession, or as readily available to Plaintiffs as it is to ZF Friedrichshafen AG.

7. ZF Friedrichshafen AG objects to these Requests to the extent they request ZF Friedrichshafen AG to provide information not in the possession, custody, or control of ZF Friedrichshafen AG.

8. ZF Friedrichshafen AG objects to the Requests as overly broad and unduly burdensome to the extent they seek information that is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

9. ZF Friedrichshafen AG objects to Plaintiffs' definitions and instructions to the extent they purport to alter the plain meaning and/or scope of any specific Request, at least on the ground that such alteration renders the Request vague, ambiguous, overbroad, and uncertain. ZF Friedrichshafen AG's responses to such Requests shall not be construed as an admission, agreement, or acquiescence to such a

16

definition.

10. ZF Friedrichshafen AG objects to each Request to the extent it is vague, ambiguous, confusing, purports to attribute any special or unusual meaning to any terms or phrases, fails to adequately define terms, or fails to describe the documents or information sought with reasonable particularity.

11. ZF Friedrichshafen AG does not admit to Plaintiffs' characterizations of any documents, facts, theories, or conclusions. ZF Friedrichshafen AG's responses shall not be construed in any way as an admission that any definition or characterization provided by Plaintiffs is either factually accurate or legally binding on ZF Friedrichshafen AG.

### D.    Legal Standard

"The decision whether to grant jurisdictional discovery is within the discretion of the district court." *Smith v. Nerium Int'l, LLC*, No. 18-cv-1088, 2018 WL 6444898, at *2 (C.D. Cal. Nov. 7, 2018) (Abrams, J.) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). "'[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed.'" *Smith*, 2018 WL 6444898, at *2 (Abrams, J.) (quoting *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (brackets in original).

To obtain jurisdictional discovery, Plaintiffs need to first show "a colorable basis for personal jurisdiction." *Smith*, 2018 WL 6444898, at *2 (Abrams, J.) (citing *Google Inc., v. Egger*, 2009 WL 1228485, *1 (N.D. Cal. Apr. 30, 2009) (quotations omitted). "A colorable basis for personal jurisdiction is 'something less than a prima facie showing that requires the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Smith*, 2018 WL 6444898, at *2 (Abrams, J.) (quoting *HaloSongs, Inc. v. Sheeran*, 2017 WL 5198248, *4 (C.D. Cal. Jan. 13, 2017) (emphasis in original).

"As with other types of discovery, jurisdictional discovery requests must

1  comply with the broad parameters of Federal Rule of Civil Procedure 26. Under

2  that rule, relevant discovery on jurisdictional issues must be 'proportional to the

3  needs of the case, considering the importance of the issues at stake in the action, the

4  amount in controversy, the parties' relative access to relevant information, the

5  parties' resources, the importance of the discovery in resolving the issues, and

6  whether the burden or expense of the proposed discovery outweighs its likely

7  benefit.'" *Wang v. Wu*, No. 16-cv-84, 2016 WL 10957847, at *2 (C.D. Cal. Dec. 7,

8  2016) (quoting Fed. R. Civ. Proc. 26).

9  **E.      Legal Argument**

10
11  **1.      Plaintiffs have demonstrated a "colorable basis" for jurisdiction based on ZF Germany's approval and control of at least three predicate acts of mail fraud.**
12

13  To show a colorable basis for personal jurisdiction over ZF Germany in this

14  MDL, Plaintiffs' must allege that ZF Germany "purposefully directed" its conduct

15  to the forum. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., &*

16  *Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1027 (N.D. Cal. 2018) (citing

17  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004))

18  ("Because the RICO and fraud-on-consumer claims are all predicated on torts, a

19  purposeful direction analysis applies instead of a purposeful availment analysis.").

20  Because ZF Germany is a German corporation not subject to jurisdiction anywhere

21  in the United States, the entire United States is the relevant forum for this

22  assessment. *See* Fed. R. Civ. Proc. 4(k)(2); ECF 396 at 43 (analyzing personal

23  jurisdiction over ZF Germany under Rule 4(k)(2)). "'A showing that a defendant

24  purposefully directed his conduct toward a forum state . . . usually consists of

25  evidence of the defendant's actions outside the forum state that are directed at the

26  forum, such as the distribution in the forum state of goods originating elsewhere.'"

27  *In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 1027 (quoting same).

28  There can be little dispute that the mailing of three separate PowerPoint

1   presentations to NHTSA with several statements that misleadingly denied or

2   downplayed the ACU Defect give rise, or relate, to valid RICO claims against ZF

3   Germany. As the Court previously held, the alleged RICO "Enterprises shared the

4   common purpose of misleading consumers and NHTSA concerning the existence,

5   nature, and scope of the defect with ZF TRW ACUs installed in the respective

6   Vehicle Manufacturer Defendant's Class Vehicles." ECF 396 at 61 (quotations,

7   brackets, and citations omitted). Plaintiffs' first complaint already succeeded in

8   pleading valid RICO claims based in part on certain Defendants' fraudulent

9   mailings to NHTSA. *See id.* at 70-73, 80. The Amended Complaint now does the

10  same for ZF Germany and the other ZF Defendants based on their efforts to mislead

11  NHTSA. *See* ECF 477 at §§ IV.F.2., IV.F.4., IV.F.8., and IV.F.14; ECF 477-1 at

12  ¶¶1587-1589, 1727-1729, 1859-1861, 1995-1997, 2126-2128. As this Court ruled

13  on July 13, 2022 after a "preliminary review of the Amended Complaint": "there is

14  a reasonable possibility that ZF's anticipated motion to dismiss may be denied in

15  full or in part." ECF 517 at 4.[3]

16        ZF Germany's approval of the three misleading PowerPoint presentations

17   _____

18  [3] In its reply in support of its motion to stay discovery, ZF effectively argued that
    the First Amendment would shield misleading statements to NHTSA with impunity
    as long as those lies arise outside the context of a formal report required by statute.
19  ECF 513 at 3-4. To support this argument, ZF misquoted Judge Kronstadt's
    decision, which held misleading statements "in response to statutory reporting
20  requirements *or at the request of NHTSA*" were not protected petitioning. ECF 396
    (emphasis added). Because NHTSA was actively investigating defective ACUs
21  when ZF made the misleading statements in Exhibits 2, 3, and 4, it made the
    statements "at the request of NHTSA" within the meaning of Judge Kronstadt's
22  decision. It is also no defense that ZF Germany's U.S. subsidiaries mailed the
    misleading statements approved by ZF Germany, because "the defendant's
23  knowing participation in the scheme at the time of the prohibited communications
    is sufficient . . . to show that the defendant 'caused' each use of the mails or wires."
24  *United States v. Lothian*, 976 F.2d 1257, 1263 (9th Cir. 1992); *see also Perreira v.
    United States*, 347 U.S. 1, 8-9 (1954) ("Where one does an act with knowledge that
25  the use of the mails will follow in the ordinary course of business, or where such
    use can reasonably be foreseen, even though not actually intended, then he 'causes'
26  the mails to be used") (citing *United States v. Kenofskey*, 243 U.S. 440, 443
    (1917)).

27

28

1  caused the transmittal of false statements (copyrighted to ZF Germany) to NHTSA

2  in the United States. Anyone at ZF Germany reading these three presentations

3  would have known the misleading statements would be sent to the United States

4  because the documents expressly declare they are intended for use in meetings with

5  NHTSA, a U.S. regulator.[4] This is sufficient to allege that ZF Germany

6  "purposefully directed" its relevant actions to the forum.  In *Just Film*, for example,

7  the court upheld civil RICO claims against defendants Cohen and Mezei based on

8  their predicate acts of mail fraud in which they had "caused" letters to be sent to

9  further a scheme to defraud. *Just Film, Inc. v. Merch. Servs., Inc*., No. 10-cv-1993,

10  2011 WL 3809908, at *11 (N.D. Cal. Aug. 29, 2011), *order clarified*, 2012 WL

11  10555 (N.D. Cal. Jan. 3, 2012). In the same opinion, the court denied these

12  defendants' personal jurisdiction challenge because they had "caused letters to be

13  sent to merchants" in California to advance their RICO scheme, which supported

14  the exercise of personal jurisdiction in California federal court. *Id.* at *17.

15  Likewise, in *In re JUUL Labs,* the court sustained RICO predicate acts of

16  mail and wire fraud including marketing and packaging transmitted to further the

17  defendants' scheme to sell nicotine products to youth.  *In re Juul Labs Inc., Mktg.,*

18  *Sales Pracs., & Prod. Liab. Litig*., 497 F. Supp. 3d 552, 611 (N.D. Cal. 2020).

19  Defendants Monsees and Bowen's role in the "development and implementation"

20  of this marketing campaign," and their pushing for its "nationwide" implementation

21  (including in the forum states), supported the exercise of jurisdiction over those

22  defendants in an MDL in California federal court. *Id.* at 675. *See also Chrysler-*

23  *Dodge-Jeep Ecodiesel,* 295 F. Supp. 3d at 1029 (personal jurisdiction in the United

24  States was proper under Fed. R. Civ. P. 4(k)(2) as to defendant Bosch GmbH, a

25  German company, where Bosch GmbH and other RICO defendants implemented a

26  ─────────────

27  [4] *See* Ex. 3 (ZF-MDL-1310) at ZF-MDL-1312 ("We make this presentation to provide NHTSA with the details of our investigation . . . ."); Ex. 4 (ZF-MDL-12177) at 2, 3 (similar references to NHTSA); Ex. 4 (ZF-MDL-148) at ZF-MDL-149 (same).

28

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1   plan to sell defective vehicles into the United States); *In re Volkswagen "Clean*
2   *Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 17-ml-2672, 2017 WL
3   4890594, at *18 (N.D. Cal. Oct. 30, 2017) (same).

4       Other courts have applied similar reasoning to exercise jurisdiction over
5   defendants who purposefully direct their foreign misconduct to the relevant forum.
6   *See Leibman v. Prupes*, No. 14-cv-9003, 2015 WL 898454, at *9 (C.D. Cal. Mar. 2,
7   2015) (New Jersey defendant sent extortionate emails to plaintiff, a California
8   resident, which established jurisdiction in California); *Wright v. Bloom*, No. 12-cv-
9   746, 2012 WL 5940760, at *4 (N.D. Cal. Nov. 27, 2012) (German defendants'
10  alleged misconduct occurred entirely in Europe, but the actions were known to be
11  likely to cause harm to plaintiffs' business in California, thus supporting the
12  exercise of jurisdiction due to purposeful direction of misconduct at California);
13  *DocuSign, Inc. v. Clark*, No. 21-cv-4785, 2022 WL 2136071, at *5 (N.D. Cal. June
14  14, 2022) (California court had personal jurisdiction over fraud claim against
15  Maryland defendant where defendant's misrepresentations were "made in"
16  Maryland but induced reliance by California plaintiff in California); *Sedillo as*
17  *trustee of Filo & Fran Sedillo Revocable Tr. v. Team Techs., Inc.*, No. 20-cv-1628,
18  2020 WL 6870711, at *3 (N.D. Tex. Nov. 23, 2020) ("A defendant's transmission
19  of a communication into the forum state is sufficient to be considered purposeful
20  availment if the content of that communication gives rise to an intentional tort cause
21  of action.").

22      As with these cases, ZF Germany's approval of misleading presentations—
23  directed to regulators in the United States— to further their fraudulent scheme to
24  mislead them about the ACU Defect, establish ZF Germany's purposeful direction
25  of misconduct to the forum. The "colorable basis" for personal jurisdiction over ZF
26  Germany is clear.

27
28

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

2.     **The jurisdictional discovery sought by Plaintiffs is proportionate to the needs of the case.**

All six factors of Rule 26's proportionality test favor allowing the targeted jurisdictional discovery Plaintiffs seek.

a.     **Factor 1: The jurisdictional discovery at issue is very important to this case.**

Given the Court's prior dismissal of ZF Germany on jurisdictional grounds, the jurisdictional discovery sought by Plaintiffs is potentially case dispositive as to ZF Germany. Therefore, it is very important.

b.     **Factor 2: The issues at stake in this litigation are very important.**

The ACU Defect in this case is very important because it implicates the performance of airbags and seatbelts in at least 15 million Class Vehicles. These safety features are so important that Congress passed laws requiring their inclusion in all passenger vehicles more than three decades ago. *See* Pub.L. 102–240 (requiring airbags); Public Law 89-563 (requiring seatbelts). And, as the ZF Defendants have admitted: "Safety is important to . . . consumers[.] . . . J.D. Power lists safety as the most desired aspect of vehicle features." ECF 477 at ¶5.

Investigations by NHTSA and the Vehicle Manufacturer Defendants have already linked the ACU Defect to at multiple deaths. *See* ECF 477 at ¶¶10, 735-752, 763-768, 753-759, 769-777, 997-1003, 1011-1025; attachment to FCA's September 2016 defect report, *available at* https://static.nhtsa.gov/odi/rcl/2016/RMISC-16V668-4323.pdf (FCA admitting to three known fatalities from the ACU Defect). According to NHTSA, motor vehicle crashes are the 13th leading cause of death in the United States, and the leading

cause of death for 11, 12, 17, 18, 19, 20, and 21 year olds.[5] These facts alone show the ACU Defect is important.

### c. Factor 3: Billions of dollars are at stake in this litigation.

The amount in controversy in this case is massive. An automobile is a very significant expense—typically, the second greatest single expenditure following only the cost of shelter. *See* ECF 477 at ¶2. This case involves at least 15 million vehicles, each of which originally sold for tens of thousands of dollars. Working safety features are a critical component of this economic value. *Id.* at ¶¶5, 1165-1166, 1457-1458. Accordingly, billions of dollars in compensatory damages are at stake in this litigation. And Plaintiffs' RICO claims mandate those damages be trebled. *See* 18 U.S.C. §1964(c).

When weighing the proportionality factors, the Court in the similar *Takata* litigation held: "The amount in controversy is substantial." *In re: Takata Airbag Prod. Liab. Litig.*, No. 15-2599, 2016 WL 5795347, at *4 (S.D. Fla. June 24, 2016), *report and recommendation adopted sub nom. In re Takata Airbag Prod. Liab. Litig.*, No. 15-md-02599, 2016 WL 5844932 (S.D. Fla. June 30, 2016) (compelling production of documents). This Court should reach the same conclusion based on the similar facts before it.

### d. Factor 4: ZF Germany has far greater access to relevant information about the ACU Defect than Plaintiffs.

ZF Germany indisputably has access to more information about its own role in the preparation, review, approval, and control of ZF's misrepresentations to

---

[5] NHTSA's National Center for Statistics and Analysis, Research Note Titled "Motor Vehicle Traffic Crashes as a Leading Cause of Death in the United States, 2016 and 2017," (July 2020), *available at* https://crashstats.nhtsa.dot.gov/Api/Public/Publication/812927#:~:text=Motor%20vehicle%20crashes%20were%20the,11%2C%20and%2017%20to%2022.

NHTSA about the ACU Defect than Plaintiffs do. Plaintiffs only possess the misrepresentations themselves. Although these documents contain compelling evidence of ZF Germany's approval and control, only ZF Germany and the other ZF Defendants have access to the documents that will directly identify the individuals who drafted, reviewed, and approved the misleading statements.

### e. Factor 5: The burden or expense of collecting and producing the jurisdictional discovery sought by this motion does not outweigh their likely benefit to this litigation.

In support of its jurisdictional arguments, ZF Germany has proffered testimony claiming it "exercises only limited oversight over ZF's domestic entities' communications with NHTSA." ECF 209-4, ¶10. If ZF Germany intends to stand by these sworn statements, it cannot seriously contend that searching for documents about its oversight of *three* meetings with NHTSA and the development and transmittal of *three* misleading PowerPoints for those meetings will require much work. Electronic searches can readily identify these documents using reasonable time period limitations and obvious unique search terms such as "DS84" and "NHTSA."[6] Such searches would only need to be run on the files of ZF Germany's document custodians with relevant knowledge of oversight for communications with NHTSA. Executing each search would require only a few minutes of work and basic technical knowledge that ZF Germany's IT department surely possesses.

Responsiveness and privilege review of documents identified by such a search process is not undue here. If ZF Germany's involvement is "limited" as its

---

[6] Because ZF Germany has refused to lift a finger in response to any of Plaintiffs' jurisdictional discovery requests, the parties have not had the opportunity to negotiate reasonable search terms. Plaintiffs are prepared to do so promptly and in good faith if the Court compels ZF Germany to produce documents materials in response to this motion. ZF Germany's complains about a "17-year time period" do not apply to the targeted request for discovery here. Instead, the parties can agree upon a time period tied to when preparation for each of the three meetings with NHTSA began and when updates about the result of each meeting ended.

1   declarant suggests, then reasonable electronic searches should not identify many

2   responsive documents. The discovery sought by Plaintiffs here could only be

3   burdensome if ZF Germany has a large volume of relevant materials to go through.

4   And because the existence of many hits on reasonable terms (such as "NHTSA") in

5   ZF Germany's custodial files would tend to disprove ZF Germany's position that its

6   oversight is "limited" in any relevant respect, the burden to produce the responsive

7   files in that scenario would not be *undue*. On the contrary, ZF Germany will have

8   put the discovery at issue by relying on suspect testimony. *See Cancino Castellar v.*

9   *McAleenan*, No. 3:17-cv-491, 2020 WL 1332485, at *6 (S.D. Cal. Mar. 23, 2020)

10  (citations omitted) ("Just because complying with a discovery request will involve

11  expense or may be time consuming, does not make it unduly burdensome.").

### f.   Factor 6: ZF Germany has far greater resources than Plaintiffs.

14      Consideration of ZF Germany's resources and undue burden also favor

15  compelling production. Plaintiffs are individual consumers, whereas ZF Germany is

16  part of a multinational chip manufacturer. Its corporate parent earned €39 billion

17  (~$39 billion) in revenue and €783 million (~$790 million) in net income last year.

18  *Arrow Enter. Computing Solutions, Inc. v. BlueAlly*, LLC, 2017 WL 876266 (W.D.

19  N.C. Mar. 3, 2017) (explaining that courts look "at a party's ability to fulfill the

20  [discovery] request, especially financially") (citing Advisory Committee Notes to

21  2015 Amendment to Rule 26).

### 3.   Plaintiffs' request for jurisdictional discovery is ripe.

24      Since September 2020, Plaintiffs have requested jurisdictional discovery

25  from ZF Germany three times. As the Court made clear by its rejection of

26  Defendants' waiver argument on March 21, 2022, none of these requests resulted in

27  a decision that resolved the merits of the dispute with ZF Germany about Plaintiffs'

28  entitlement to jurisdictional discovery in this matter. Now is an appropriate time for

1   the Court to decide Plaintiffs' request for jurisdictional discovery.

2       ZF Germany's insistence on further delay is contrary to Rule 1's directive for

3   "the just, speedy, and inexpensive determination of every action and proceeding."

4   Fed. R. Civ. Proc. 1. ZF Germany's suggestion that its grounds for challenging

5   jurisdiction will not be clear until it files a new motion to dismiss is wrong because

6   ZF Germany already submitted and relied upon sworn testimony stressing its "only

7   limited oversight over ZF's domestic entities' communications with NHTSA."

8   ECF 209-4, ¶10. Because its counsel has not withdrawn this sworn testimony

9   already in the record in this case, it is reasonable to assume ZF Germany will stand

10  by it. That ZF Germany may provide more color in a motion to dismiss is beside

11  the point, because it cannot deny that the declaration it previously submitted

12  *admitted* that *some* amount of "oversight" took place. Discovery will answer the

13  question of how "limited" this oversight really was as to just three specifically

14  identified presentations.

15      Moreover, ZF Germany's delay in responding to Plaintiffs' efforts to meet

16  and confer this June have already slowed this motion's filing more than enough. As

17  a result of ZF Germany's feet dragging, this motion will not likely be decided until

18  at least late August. This will push any production in response to the motion until

19  after Plaintiffs' submit their response to ZF Germany's motion to dismiss. *See*

20  ECF 126 ¶ 3.c.ii. (order stating production need not occur until 60 days after Court

21  resolution of a dispute).

22      Because the Court cannot fairly decide the jurisdictional issue without

23  allowing Plaintiffs to review and submit relevant materials produced in

24  jurisdictional discovery, ZF Germany's delay tactics will already require Plaintiffs

25  to seek leave for a surreply opposing the motion to dismiss. Accordingly, further

26  delay in this motion will ultimately delay the already very lengthy briefing schedule

27  on ZF Germany's forthcoming motion to dismiss. Had ZF Germany voluntarily

28  agreed to jurisdictional discovery in June, this could have been avoided.

**F.     Conclusion**

For the foregoing reasons, Plaintiffs respectfully request an order compelling ZF Germany to produce documents and communications about drafts of the PowerPoint presentations marked as Exhibits 2, 3, and 4 or the February 5, 2016, July 19, 2016, and March 8, 2018 meetings with NHTSA where those presentations were used.

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

## V.  ZF's Statement

Plaintiffs seek to open a distant German "great-grandparent" to discovery because that entity's copyright mark appears on three presentations.  Plaintiffs seek this discovery despite Judge Kronstadt's prior ruling that the Court lacked jurisdiction over that entity—a ruling the Court made after determining that the Court did not need jurisdictional discovery.  Plaintiffs' support for their renewed request is the very same PowerPoint presentations and copyright marks that were not sufficient for jurisdictional discovery during the last round of briefing.  There is nothing new here, and the same outcome—dismissal without jurisdictional discovery—is warranted.

Independently, Plaintiffs' request fails because the presence of a copyright mark alone does not create a sufficient basis to subject a foreign entity to jurisdictional discovery.  This is especially so in light of the testimony of Mr. Goodman, who explained in a sworn declaration that the presence of the copyright mark in question was the result of standard corporate practice by the Domestic ZF Entities, not some controlling parent entity pulling the strings, as Plaintiffs' wholly speculative narrative would suggest.  Mr. Goodman's sworn declaration confirms that the presentations in question were prepared and approved by the domestic ZF entities alone.[7]

### A.  Background

The ZF Domestic and Foreign Defendants.  The Amended Complaint names five distinct ZF entities: four domestic ZF entities[8] as well as ZF Friedrichshafen

---

[7]  In support of ZF's statement, it incorporates three sworn declarations that it submitted in support of its August 2, 2022 Motion to Dismiss Plaintiffs' Amended Complaint: (i) the 2022 Goodman Decl., Dkt. 528-2; (ii) the August 2, 2022 Declaration of Natalia Medley ("Medley Decl."), Dkt. 528-4; and (iii) the August 2, 2022 Declaration of Michael Way ("2022 Way Decl."), Dkt. 528-3.  The declarations are attached as Exhibits 5, 6, and 7, respectively.

[8]  The four entities are: ZF Active Safety and Electronics US LLC; ZF Passive

---

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1  AG, which is the corporate great-grandparent company to the Domestic ZF Entities.

2  The Domestic ZF Entities—and specifically Defendant ZF Active Safety and

3  Electronics US LLC—manufacture automotive components and sell and ship them

4  to vehicle manufacturers for installation into vehicles.  *See* Dkt. 209-4 ¶ 4.  On May

5  15, 2015, ZF acquired those domestic entities (then known as TRW and affiliates).

6  Today, those subsidiary entities sit in a corporate chain that indirectly leads to ZF

7  Friedrichshafen AG, a German corporation headquartered in Friedrichshafen,

8  Germany.  *See* 2022 Way Decl. ¶¶ 9–11.

9        The Domestic ZF Entities' 2016 & 2018 Communications with NHTSA.  In

10  2016, the Domestic ZF Entities voluntarily disclosed to NHTSA that electrical

11  overstress ("EOS") had been observed in ZF-manufactured airbag control units in

12  specific and rare circumstances.  Specifically, on February 5, 2016, the Domestic

13  ZF Entities provided a PowerPoint presentation to NHTSA titled "Electrical

14  Overstress . . . and Airbag Control Units," which provided an overview of the EOS

15  issue.  Ex. 2.  That presentation was prepared and approved exclusively by

16  employees of ZF's domestic entities; no representative or employee of ZF

17  Friedrichshafen AG told any ZF domestic entity what to say in the presentations or

18  otherwise controlled the presentations.  *See* 2022 Goodman Decl. ¶¶ 11, 11(f), 12–

19  13, 20, 23–24.  Nor did representatives or employees of ZF Friedrichshafen AG

20  attend the meeting with NHTSA; again, only domestic ZF employees attended.  *See*

21  *id*. ¶¶ 23–24.

22        On July 19, 2016, the Domestic ZF Entities provided an update presentation

23  to NHTSA based on their ongoing analysis titled, "Update on Electrical Overstress .

24  . . and Airbag Control Units."  Ex. 3.  Again, only domestic ZF employees were

25  involved in the preparation and approval of this July 2016 presentation, and only

26  domestic ZF employees were present at the meeting with NHTSA.  *See* 2022

27

28  Safety Systems US Inc.; ZF Automotive US Inc.; and ZF TRW Automotive
Holdings Corp. ("Domestic ZF Entities").

29

1  Goodman Decl. ¶¶ 11, 11(f), 14–15, 20, 23–24.  No representative or employee of

2  ZF Friedrichshafen AG told any ZF domestic entity what to say in the presentations

3  or otherwise controlled the presentations.  *See id.*  Nor did representatives or

4  employees of ZF Friedrichshafen AG attend the meeting with NHTSA; again, only

5  domestic ZF employees attended.  *See id.* ¶¶ 23–24.

6       Then, as ZF's analysis continued, the Domestic ZF Entities again voluntarily

7  met with NHTSA on March 8, 2018, this time presenting a slideshow titled,

8  "Update on Electrical Overstress . . . and Airbag Control Units."  Ex. 4.  As with

9  the prior presentations, the March 2018 presentation was prepared and approved by

10  domestic ZF employees without input from ZF Friedrichshafen AG.  *See* 2022

11  Goodman Decl. ¶¶ 11, 11(f), 16–19, 20, 23–24; Medley Decl. ¶ 6.  And again, ZF

12  Friedrichshafen AG representatives did not attend the meeting; only domestic ZF

13  employees did.  *See* 2022 Goodman Decl. ¶¶ 23–24; Medley Decl. ¶ 6.  Indeed, as

14  the Vice President, Product and Regulatory Office for ZF Active Safety and

15  Electronics US LLC stated, "ZF Friedrichshafen AG had no involvement in

16  directing the domestic ZF entities' investigation related to the ACUs or in directing

17  their ACU-related interactions with United States regulators."  Medley Decl. ¶ 5.

18  "Rather, the substantive decisions relating to all aspects of investigating potential

19  EOS issues relating to the ACUs was entirely in the hands of personnel employed

20  by the domestic ZF entities."  *Id.*

21       Notwithstanding that the three presentations were exclusively the product of

22  the Domestic ZF Entities, each bears references to ZF and/or ZF Friedrichshafen

23  AG.  For instance, the two 2016 presentations contain corporate logos for both

24  "ZF" and "TRW" (the legacy name for the domestic entities) and, after the cover

25  slide, each slide contains a "confidential and proprietary" disclaimer on behalf of

26  "ZF TRW."  *See* Exs. 2, 3.  Among these logos on the 2016 presentations, "ZF

27  Friedrichshafen AG" is listed as a subheading on the cover slide and a "ZF

28  Friedrichshafen AG" copyright mark appears on all slides after the cover slide.  *See*

30

1    Exs. 2-3.  Similarly, each slide in the 2018 presentation contains a corporate logo

2    for "ZF," a "confidential and proprietary" disclaimer on behalf of "ZF Group," and

3    a "ZF Friedrichshafen AG" copyright mark.  *See* Ex. 4.

4         However, as explained below, these marks were not reflective of any

5    substantive involvement by ZF Friedrichshafen AG in preparing, approving, or

6    otherwise providing any input into the substance or contents of these presentations.

7    Rather, they merely reflect the Domestic ZF Entities' standard practice, which

8    included the use of those marks, when preparing presentations.  *See* 2022 Goodman

9    Decl. ¶¶ 11–22.  To be clear, ZF Friedrichshafen AG "did not draft, edit, or approve

10   the substantive content" of those presentations.  2022 Goodman Decl. ¶ 20; *see also*

11   Medley Decl. ¶ 5–6.

12        The Domestic ZF Entities produced the three presentations to Plaintiffs in

13   March 2022, two months before Plaintiffs filed their first consolidated complaint.

14        <u>Plaintiffs' Original Complaint in 2020</u>.  On May 26, 2020, Plaintiffs filed

15   their original consolidated class action complaint.  Dkt. 120; Dkt. 278 (unredacted

16   version).  In that complaint, Plaintiffs asserted that the Court had personal

17   jurisdiction over ZF Friedrichshafen AG based, *inter alia*, on "Rule 4(k) . . . given

18   [ZF Friedrichshafen AG's] pervasive contacts with the United States."  *Id.* ¶ 156.

19   Plaintiffs alleged that ZF Friedrichshafen AG "targeted [U.S.] consumers . . . with

20   advertising for the Class Vehicles; purposely availed [itself] of commerce in the"

21   U.S.; "controlled the design, distribution, and sale of either vehicles with defective

22   ZF TRW ACUs or the ACUs themselves; and communicated with . . . [the] other

23   [defendants] regarding the defective ZF TRW ACUs using mail and wire in the

24   United States."  *Id.* ¶ 157.

25        In 2020, to support their "pervasive contacts" claim, Plaintiffs specifically

26   alleged ZF Friedrichshafen AG had control over the Domestic ZF Entities'

27   communications with NHTSA.  Plaintiffs based their allegation on the same

28   "copyright marks" that are at issue in the present motion:

31

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

> Upon information and belief, ZF Friedrichshafen AG **controlled all ZF TRW company communications** relating to the defective ZF TRW ACUs since the TRW acquisition in 2015. . . .  All such presentations since 2015 **contain copyright marks** identifying ZF Friedrichshafen AG as the owner of the materials.  Presumably, it **was the author** as well.  The presentations also contain language stating: "This document is the property of ZF TRW and is disclosed in confidence.  It may not be copied, disclosed to others, or used for manufacturing, without the prior consent of ZF TRW."  Based on this language, ZF Friedrichshafen AG's **consent was required** to send the presentation to NHTSA and/or the Vehicle Manufacturer Defendants, and ZF Friedrichshafen AG **provided consent**.  Accordingly, ZF Friedrichshafen AG **had final approval** over the statements contained in these presentations

*Id.* ¶ 168 (emphasis added).

The Parties' Foreign Entity Discovery Stipulation.  Over several weeks in spring 2020, Plaintiffs and the then-foreign defendants extensively negotiated a stipulation regarding service of process and discovery from foreign defendants, which the Court entered on May 28, 2020 ("Stipulated Order").  *See* Dkts. 123, 126.  Under the parties' agreement, if Plaintiffs served jurisdictional discovery on a foreign defendant like ZF Friedrichshafen AG, ZF had 21 days to "advise Plaintiffs as to whether . . . [ZF Friedrichshafen AG] intend[ed] to oppose Plaintiffs' entitlement to jurisdictional discovery in its entirety."  Dkt. 126 ¶ 3(c).

On August 7, 2020, Plaintiffs served 27 jurisdictional requests for production to ZF Friedrichshafen AG (as well as the other ZF foreign defendant at the time, ZF Holdings B.V.).  Those requests included the two requests at issue here.[9]

On August 27, 2020, ZF timely notified Plaintiffs that ZF "oppose[ed] and object[ed] to Plaintiffs' requests for jurisdictional discovery in their entirety."  *See* August 27, 2020 Letter from M. Regan to David Fernandes, Ex. 8.

---

[9]  Judge Kronstadt dismissed ZF Holdings B.V., which is one of the intermediate entities that sits between the Domestic ZF Entities and ZF Friedrichshafen AG.  *In re ZF-TRW*, 2022 WL 522484, at *34–35.  Plaintiffs did not re-assert claims against that entity in their Amended Complaint.

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1      ZF's Motion to Dismiss the Original Complaint.  On July 27, 2020—before

2    Plaintiffs served their jurisdictional discovery requests—ZF moved to dismiss all of

3    Plaintiffs' claims, including under Rule 12(b)(2) for lack of personal jurisdiction.

4    Dkt. 209 at 11–15.  In doing so, ZF noted that ZF Friedrichshafen AG should be

5    dismissed for lack of personal jurisdiction, including under Rule 4(k)(2).

6      In support of ZF's jurisdictional challenge, it provided declarations from Mr.

7    Goodman, a Senior Technical Specialist for ZF Active Safety and Electronics US

8    LLC (Dkt. 209-4), and Michael Way, the Assistant Secretary for the Domestic ZF

9    Entities, (Dkt. 209-5).  Both explained ZF Friedrichshafen AG's lack of control

10   over the activities of the Domestic ZF Entities.

11     For his part, Mr. Goodman stated that the Domestic ZF Entities' "day-to-day

12   decisions relating to the design, manufacturing, and sale of the subject ACUs

13   [were] and [are] not controlled by . . . ZF Friedrichshafen AG."  Dkt. 209-4 ¶ 9.

14   "The core decisions related to the design, testing, and manufacture, and

15   modifications to the ACUs at issue were made before ZF Friedrichshafen AG's

16   acquisition of TRW affiliates in 2015."  *Id.*

17     Mr. Goodman, who participated in in-person meetings and other discussions

18   with NHTSA, also stated that ZF's communications with NHTSA "were made on

19   behalf of ZF's domestic entities, who are responsible for communicating with

20   NHTSA concerning purported electrical overstress issues in the ACUs."  *Id.* ¶ 10.

21   He confirmed that the "content of [the domestic ZF] entities' representations to

22   NHTSA are managed by the domestic entities themselves."  *Id.*  Mr. Goodman

23   stated that "ZF Friedrichshafen AG [did] not exercise day-to-day control over the

24   domestic entities' communications with NHTSA."  *Id.*  Rather, Mr. Goodman

25   stated in general terms and without reference to any particular presentation or

26   communication that "ZF Friedrichshafen AG . . . exercise[d] only limited oversight

27   over ZF's domestic entities['] communications with NHTSA."  *Id.*  Mr. Goodman

28   also clarified that "TRW" and "ZF TRW" were distinct corporate entities from ZF

1   Friedrichshafen AG, and that the presence of "property of ZF TRW" in the NHTSA

2   presentations did not support Plaintiffs' allegation that ZF Friedrichshafen AG

3   "authored or managed the day-to-day content of" the NHTSA presentations.  *Id*.

4        Mr. Way similarly stated that ZF Friedrichshafen AG does not "exercise[]

5   control over the day-to-day activities of any of the other businesses," including

6   "any U.S.-based entity."  Dkt. 209-5 ¶ 13(f).  Mr. Way confirmed that "[t]he U.S.-

7   based entities are responsible for making their own pricing decisions, developing

8   their own customer relationships, coordinating shipment of their own products, and

9   setting their own strategy."  *Id*.  Mr. Way further explained the separation between

10   ZF Friedrichshafen AG and the Domestic ZF Entities, including separate

11   management, boards of directors, finances and accounting, books and records,

12   building and facilities, and more.  *Id.* ¶ 13 *et seq*.

13        <u>Plaintiffs' 2020 Opposition to ZF's Original Motion to Dismiss</u>.  Despite the

14   declarations submitted in support of ZF's first motion to dismiss, Plaintiffs doubled

15   down in their attempt to establish "purposeful[] direct[ion]" by ZF Friedrichshafen

16   AG, claiming that the foreign entity controlled the Domestic ZF Entities' NHTSA

17   communications.  *See* Dkt. 283 at 21–24.  As support, Plaintiffs again cited the

18   same copyright marks:

19          Further, ZF AG **controlled all communications** relating to the ACU
20          defect on behalf of the entire corporate family, **including with**
       **NHTSA**.  CAC ¶168.  ZF AG also has the power to appoint board
21          members for all the relevant U.S. subsidiaries, and ensures that each
       subsidiary act only in furtherance of ZF AG's goals.  *Id*. ¶159.  ZF AG
22          retains the right to **exercise significant control** over its U.S.
       subsidiaries. . . . In either event, the Foreign ZF Defendants do not
23          rebut Plaintiffs' allegations that "[a]ll such presentations since 2015
24          **contain copyright marks** identifying ZF Friedrichshafen AG as the
25          **owner** of the materials."  CAC ¶168.

26

27   *Id*. at 24 (emphasis added).  Plaintiffs also disputed that ZF Friedrichshafen AG

28   "exercise[ed] only limited oversight over ZF's domestic entities['] communications

1  with NHTSA," *id.* (quoting Dkt. 209-4 ¶ 10), and argued that Mr. Goodman's

2  declaration "reveal[s] a conflict in the evidence concerning [ZF Friedrichshafen

3  AG's] control of their domestic entities," *id.*

4        While contending that their allegations alone sufficed to establish

5  jurisdiction, Plaintiffs alternatively requested that—"if the Court deems it

6  necessary"—they be given "leave to conduct jurisdictional discovery to develop the

7  record regarding, among other things . . . the Foreign Defendants' conduct in the

8  U.S. related to the allegations in the Complaint, including details of their control

9  over the Domestic Defendants."  Dkt. 282 at 15.

10       At oral argument on the motion to dismiss in January 2021, Plaintiffs again

11  cited ZF Friedrichshafen AG's purported control over the Domestic ZF entities'

12  communications with NHTSA, and the need for jurisdictional discovery if the

13  Court harbored doubts:

14       MR. STELLINGS:  Right.  We have uncontradicted allegations, Your
        Honor, that ZF AG **was the primary decision maker** regarding what
15       steps should be taken by the part makers and automakers to deal with
        the defective ACUs and ASICs, **including communications with**
16       **NHTSA.**  And that's in paragraph 168.

17

18       . . .

19

20       The last point I'll make, Your Honor, is just we obviously think Your
        Honor has way more than enough to assert personal jurisdiction over
21       these foreign defendants, but if you decide for any of them, even one
        of them, not to assert jurisdiction, **we respectfully request that the**
22       **Court allow us the opportunity to get that jurisdictional discovery**.

23

24  Dkt. 331 at 59:18–23, 60:16–22 (emphasis added).

25       <u>Judge Kronstadt's February 9, 2022 Dismissal Order</u>.  On February 9, 2022,

26  Judge Kronstadt granted ZF's motion and dismissed all claims against ZF,

27  including all claims against ZF Friedrichshafen AG.  *In re ZF-TRW*, 2022 WL

28  522484, at *34–35.  Notwithstanding that the Court credited Plaintiffs' allegations

1   as true and resolved conflicts between contested facts in Plaintiffs' favor, *see id*. at

2   \*7 (citation omitted), Judge Kronstadt rejected Plaintiffs' two bases for jurisdiction

3   over ZF Friedrichshafen AG.  ***First***, under an agency theory, Judge Kronstadt found

4   that "Plaintiffs have not made sufficient allegations that, if established, would show

5   that the Foreign ZF Defendants substantially control their subsidiaries."  *Id*. at \*34–

6   35.  ***Second***, under a purposeful direction theory, Judge Kronstadt found that

7   Plaintiffs "[fell] short of establishing purposeful direction by any one of [the ZF]

8   entities."  *Id*. at \*35.

9       Judge Kronstadt acknowledged that jurisdictional discovery "is

10   'appropriately granted where pertinent facts bearing on the question of jurisdiction

11   are controverted or where a more satisfactory showing of the facts is necessary.'"

12   *Id*. at \*39 (quoting *Boschetto*, 539 F.3d at 1020).  Indeed, as part of his ruling,

13   Judge Kronstadt allowed "focused" jurisdictional discovery as to a different foreign

14   Defendant, FCA NV, regarding whether it "substantially control[led]" its domestic

15   subsidiary.  *See id*. at \*39–40.  Yet regarding ZF Friedrichshafen AG, Judge

16   Kronstadt granted ZF's motion to dismiss for lack of personal jurisdiction in full

17   without finding that jurisdictional discovery was needed to resolve "controverted"

18   facts or make a "more satisfactory showing" of those facts.

19       <u>Plaintiffs' Amended Complaint and Attempts to Renew Their Prior Requests</u>.

20   Plaintiffs filed their Amended Complaint on May 26, 2022.  Dkt. 477.  As in their

21   original complaint, Plaintiffs allege that ZF Friedrichshafen AG "controlled all ZF-

22   branded company communications relating to the defective DS84 ACUs,"

23   including the Domestic ZF Entities' communications with NHTSA.  *See id*. ¶ 260.[10]

24   And as they had in their original complaint in 2020, Plaintiffs allege that certain

25   "slide deck presentations for NHTSA and the Vehicle Manufacturer Defendants . . .

26   ───────────────
    [10]  Plaintiffs baselessly allege that ZF, including ZF Friedrichshafen AG, misled
27   NHTSA "to continue to profit from the fraudulent scheme to sell consumers Class
    Vehicles with defective DS84 ACUs."  Plaintiffs made that allegation in their
28   original complaint, which Judge Kronstadt dismissed.  Needless to say, ZF denies
    this allegation.

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1   contain . . . copyright marks identifying ZF Friedrichshafen AG as the owner of the

2   materials." *Id*. ¶ 260.  Plaintiffs renewed their allegation that: "Based on this

3   copyright mark, [ZF Friedrichshafen AG's] consent was required to send the

4   presentations to NHTSA in the U.S. and/or the Vehicle Manufacturer Defendants,

5   and [ZF Friedrichshafen AG] provided consent." *Id*.

6          <u>The Parties' Meet-and-Confer Efforts</u>.  Following the filing of the Amended

7   Complaint, the parties participated in several discussions aimed at resolving

8   Plaintiffs' requests.  ZF will not address every facet of Plaintiffs' lengthy (and

9   mostly irrelevant) characterizations of those discussions.  Instead, ZF simply notes

10  that Plaintiffs' recitation omits several phone calls and emails (*e.g.*, a June 23 phone

11  call) and disregards that ZF attempted to schedule this dispute for a time when it

12  could be handled more efficiently.  *See* June 10, 2022 Email from M. Thompson to

13  J. Nicolaou, Ex. 9; June 28, 2022 Email from M. Thompson to J. Nicolaou, Ex. 10.

14         Plaintiffs insisted in pressing ahead with this statement, which they served

15  two weeks before ZF moved to dismiss Plaintiffs' amended allegations.  ZF filed its

16  motion to dismiss yesterday, August 2, 2022.

17     **B.    Legal Standard**

18

19         Courts may grant jurisdictional discovery "where pertinent facts bearing on

20  the question of jurisdiction are controverted or where a more satisfactory showing

21  of the facts is necessary."  *Boschetto*, 539 F.3d at 1020 (citation omitted) (affirming

22  denial of jurisdictional discovery where plaintiff's request was "based on little more

23  than a hunch" that defendant engaged in additional sales with California residents

24  without any supporting evidence or specific allegations).  Several principles govern

25  jurisdictional discovery of foreign entities:

26         **Assessing the need for jurisdictional discovery is often deferred pending**

27  **resolution of a motion to dismiss**.  Courts frequently rule on jurisdictional

28  discovery at the same time as resolving a motion to dismiss, and they deny

37

1  jurisdictional discovery where, after analyzing the dismissal motion, jurisdictional

2  discovery "would not demonstrate facts sufficient to constitute a basis for

3  jurisdiction." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D.

4  Cal. 2020) (citation omitted) (denying jurisdictional discovery).

5      **Plaintiff must make a non-speculative showing—supported by**

6  **evidence—that jurisdiction exists**.  To obtain jurisdictional discovery, a plaintiff

7  must "establish a 'colorable basis' for personal jurisdiction." *Martinez v. Manheim*

8  *Cent. Cal.*, 2011 WL 1466684, at *4 (E.D. Cal. Apr. 18, 2011).  Where a plaintiff's

9  claim of personal jurisdiction is "both attenuated and based on bare allegations in

10  the face of specific denials made by the defendant[], the Court need not permit ***even***

11  ***limited discovery***." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir.

12  2006) (emphasis added) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562

13  (9th Cir. 1995)).

14      Relatedly, courts deny jurisdictional discovery where a plaintiff fails to offer

15  evidence or arguments that contradicts sworn declarations provided by a defendant.

16  *See Martinez v. Morgan Stanley & Co*, 2010 WL 11512383, at *3 (S.D. Cal. May 6,

17  2010).  It is not enough for a plaintiff to contest a defendant's factual assertion

18  regarding jurisdiction or hope that jurisdictional discovery might yield something

19  that would undermine a defendant's assertion.  *See Smith v. Nerium Int'l, LLC*,

20  2018 WL 6444898, at *5–7 (C.D. Cal. Nov. 7, 2018) (denying jurisdictional

21  discovery from domestic defendants where "plaintiffs provide no evidence

22  undercutting [defendant's] declaration statements regarding to whom the

23  conference call statements were directed").

24      **The standard for obtaining jurisdictional discovery is higher when the**

25  **request is directed at a foreign defendant**.  Courts "exercise special vigilance to

26  protect foreign litigants from the danger that unnecessary, or unduly burdensome,

27  discovery may place them in a disadvantageous position." *Société Nationale*

28  *Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546

(1987); *see also Simon v. Republic of Hungary*, 2012 WL 13069771, at *8–9 (D.D.C. Sept. 30, 2012) (denying jurisdictional discovery as to a foreign defendant).

As a result, jurisdictional discovery as to a foreign defendant should be denied even where, "without discovery it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (affirming denial of jurisdictional discovery, which "is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States—as it properly may do").

## C.    Argument

The Court should deny Plaintiffs' request for three primary reasons. *First*, Judge Kronstadt already denied Plaintiffs' request for jurisdictional discovery from ZF Friedrichshafen AG after considering the very same allegations and arguments that Plaintiffs present again here. *Second*, even if Judge Kronstadt had not already denied jurisdiction and jurisdictional discovery, Plaintiffs are not legally entitled to jurisdictional discovery here. *Third*, if there is any question as to the need for jurisdictional discovery, Judge Kronstadt should assess it concurrently with his review of ZF's pending motion to dismiss the Amended Complaint.

### 1.    Judge Kronstadt Already Denied Jurisdictional Discovery Based on Plaintiffs' Same Allegations and Arguments.

Nothing has changed since Judge Kronstadt denied Plaintiffs' effort to obtain jurisdictional discovery from ZF Friedrichshafen AG.   It should be denied again.

The facts giving rise to Plaintiffs' present request for jurisdictional discovery have been known to Plaintiffs since March 2020—29 months—when ZF produced the three NHTSA presentations upon which Plaintiffs focus.  In 2020, as they do

1   now, Plaintiffs based their request on ZF Friedrichshafen AG's alleged control over

2   the Domestic ZF Entities, purportedly evidenced by the same copyright marks

3   underlying their current jurisdictional claim.  *See* Dkt. 278 ¶ 168 (alleging that ZF

4   Friedrichshafen AG "was the author" of the presentations and that its "consent was

5   required to send" them).  And Plaintiffs relied on those same marks in opposing

6   ZF's motion to dismiss the original complaint and alternative request for

7   jurisdictional discovery at that time.  *See* Dkt. 283 at 23–24; Dkt. 282 at 15.

8        Judge Kronstadt considered Plaintiffs' arguments and allegations and

9   dismissed all claims against ZF.  Judge Kronstadt found that "Plaintiffs have not

10  made sufficient allegations that, if established, would show that the Foreign ZF

11  Defendants substantially control their subsidiaries" and that Plaintiffs "[fell] short

12  of establishing purposeful direction by any one of [the ZF] entities."  *In re ZF-*

13  *TRW*, 2022 WL 522484, at *34–35.  And although Judge Kronstadt acknowledged

14  that jurisdictional discovery may be appropriate to resolve "any doubt over [the

15  Court's] jurisdiction," *see id*. at *39 (quoting *Boschetto*, 539 F.3d at 1020), Judge

16  Kronstadt did not identify any such doubts about ZF Friedrichshafen AG.

17       In their statement above, Plaintiffs offer no new facts or arguments

18  warranting jurisdictional discovery that they did not already press (unsuccessfully)

19  two years ago:

20

21

22

23

24

25

26

27

28

40

| Plaintiffs' Arguments Today | Plaintiffs' 2020 Opposition |
|---|---|
| ZF Friedrichshafen AG "reviewed and approved the presentations for NHTSA, and caused their transmission to the U.S. regulator." | ZF Friedrichshafen AG "controlled all communications . . . including with NHTSA;" ZF Friedrichshafen AG "authored or managed the day-to-day content of those communications." Dkt. 283 at 24.  "ZF Friedrichshafen AG's consent was required to send the presentation to NHTSA . . . and ZF Friedrichshafen AG provided consent." Dkt. 278 ¶ 168. |
| ZF Friedrichshafen AG's "direct involvement is demonstrated by the documents themselves, which list ZF [Friedrichshafen AG] as a corporate author and attribute the copyright specifically to that entity." | "[A]ll such presentations since 2015 contain copyright marks identifying ZF Friedrichshafen AG as the owner of the materials." Dkt. 283 at 24. |
| "[T]he facts about [ZF Friedrichshafen AG's] role in" the NHTSA presentations "are in dispute." | Mr. Goodman's testimony "reveal[s] a conflict in the evidence concerning [ZF Friedrichshafen AG's] control of [its] domestic entities."  Dkt. 283 at 24. |

Having failed to offer new facts or arguments that would warrant a different result this time, Plaintiffs provide no basis to revisit Judge Kronstadt's decision not to award jurisdictional discovery as to ZF Friedrichshafen AG.  *See Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 599 (S.D.N.Y. 2017) (denying plaintiffs' request for jurisdictional discovery where the court "has already denied plaintiffs' request for jurisdictional discovery" and plaintiffs "offer no persuasive reason to stray from that ruling"); *Iglesias v. Pernod Ricard, S.A.*, 2020 WL 13367969, at *4 (S.D. Fla. Dec. 7, 2020) (denying renewed motion for jurisdictional discovery where plaintiffs "failed . . . to remedy the shortfalls previously identified" in their earlier motion for jurisdictional discovery).

### 2. Plaintiffs' Allegations Do Not Warrant Jurisdictional Discovery.

Independent of the prior dismissal, Plaintiffs have not established that

41

1    jurisdictional discovery is warranted here.  Plaintiffs' motion relies upon the wrong

2    legal standard for jurisdictional discovery; the correct standard confirms that leave

3    to take jurisdictional discovery is not warranted here, particularly given the

4    uncontroverted (and, in fact, incontrovertible) evidence put forth by ZF.

5           Plaintiffs argue that jurisdictional discovery should be granted on a showing

6    of a colorable basis for jurisdiction and proportionality alone.  This is incorrect.  As

7    Judge Kronstadt held, jurisdictional discovery "is 'appropriately granted where

8    pertinent facts bearing on the question of jurisdiction are controverted or where a

9    more satisfactory showing of the facts is necessary.'"  *In re ZF-TRW*, 2022 WL

10   522484, at *39 (quoting *Boschetto*, 539 F.3d at 1020).

11          Plaintiffs cannot meet this standard because they fail to articulate a theory as

12   to "what facts would be discovered and what they would show if" they were

13   permitted jurisdictional discovery, *see Manheim*, 2011 WL 1466684, at *5,

14   rendering their request "both attenuated and based on bare allegations in the face of

15   specific denials," *see Pebble Beach*, 453 F.3d at 1160 (denying jurisdictional

16   discovery).

17          For instance, Plaintiffs fail to meet their burden of offering evidence

18   contradicting Mr. Goodman's *2020* statements that:

19   •   "ZF Friedrichshafen AG . . . do[es] not exercise day-to-day control over

20       the domestic entities' communications with NHTSA;"

21   •   "ZF Friedrichshafen AG . . . exercises only limited oversight over ZF's

22       domestic entities['] communications with NHTSA;" and

23   •   "The content of those entities' representations to NHTSA are managed by

24       the domestic entities themselves."

25   Dkt. 209-4. ¶ 10.

26          Nor can Plaintiffs offer any evidence contradicting the statements in Mr.

27   Goodman's more recent declaration, which affirms that:

28   •   "Neither the mark '© ZF Friedrichshafen AG' nor the corporate name on

42

1    the title of two of the cover of two of the presentations was included to

2    signify that ZF Friedrichshafen AG played any role in determining the

3    content of those presentations, nor in preparing the presentations, revising

4    them, or approving their use;"

5    • "Instead, the copyright mark and corporate name in the title were the

6    result of standard corporate practice that employees of the domestic ZF

7    entities (including myself) implemented when creating the presentations

8    using template 'master' slides in Microsoft PowerPoint;"

9    • "The presentations were created by myself with the help of Marc Bolitho,

10    another employee of a domestic ZF entity;"

11    • "ZF Friedrichshafen AG did not draft, edit, or approve the substantive

12    content that I added to the slides when preparing the February 5, 2016,

13    July 19, 2016, or March 8, 2018 presentations;" and

14    • "ZF Friedrichshafen AG personnel . . . did not attend the actual February

15    5, 2016, July 19, 2016, or March 8, 2018 meetings with NHTSA."

16    2022 Goodman Decl. ¶¶ 11, 11(e), 20, 23.

17        Plaintiffs have only three counters to this unambiguous evidence:  (i) the ZF

18    Friedrichshafen AG copyright on the NHTSA presentations, which Plaintiffs have

19    leaned on (unsuccessfully) for 2 years now, (ii) Mr. Goodman's assertion in 2020

20    that ZF Friedrichshafen AG exercised "only limited oversight" over some

21    unspecified communications with NHTSA, and (iii) the purely speculative notion

22    (backed by no evidence whatsoever) that ZF Friedrichshafen AG must have

23    controlled its new domestic subsidiaries' communications given the magnitude of

24    its investment.  All of these would fail to establish jurisdiction on their own and

25    cannot warrant jurisdictional discovery.

26        The copyright marks.  The mere presence of a copyright mark does not

27    establish the requisite level of contact to create jurisdiction.  *See Plan 3, Inc. v. GE*

28    *Grp. Adm'rs, Inc.*, 2005 WL 8175573, at *5–6 (D. Md. Feb. 21, 2005) (finding that

1   a "subsidiary's use of a parent company's letterhead [sic] or logo is insufficient" to

2   show that the parent company purposefully directed any activities toward the forum

3   state; denying jurisdictional discovery); *Indus. Bank of Korea v. ASI Corp.*, 2018

4   WL 6164315, at *11–13 (C.D. Cal. Apr. 26, 2018) (ruling that use of parent's logo

5   or trademark was not enough to render parent company the alter ego of subsidiary

6   and thereby subject parent company to court's jurisdiction; denying jurisdictional

7   discovery); *Yagman v. Kelly*, 2018 WL 2138461, at *8–9 (C.D. Cal. Mar. 20, 2018)

8   (holding "[o]ne or more of the Company Defendants' use of the 'Aetna' logo or

9   trade name does not render the Defendants alter egos of one another;" denying

10  jurisdictional discovery); *Eagle Canyon Owners' Ass'n v. Waste Mgmt., Inc., USA*,

11  2017 WL 3017501, at *5 (C.D. Cal. July 13, 2017) ("Use of a licensed logo on

12  contracts, trucks, or online doesn't make a parent company party to a contract or

13  subject to personal jurisdiction.").

14          Nor does a copyright mark show that ZF Friedrichshafen AG reviewed,

15  approved, or caused the presentations to be transmitted; Plaintiffs can only

16  speculate as to these facts.  Indeed, in their statement above, Plaintiffs plainly guess

17  that discovery **might** reveal that ZF Friedrichshafen AG employees "drafted,

18  reviewed, and approved the misleading statements."  But Plaintiffs cannot establish

19  personal jurisdiction (or an entitlement to jurisdictional discovery) merely by

20  registering disagreement with the sworn testimony of Mr. Goodman, Ms. Medley,

21  and Mr. Way.  *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 982 (C.D. Cal.

22  2013) ("If defendants adduce evidence controverting the allegations . . .  the

23  plaintiff must 'come forward with facts, by affidavit or otherwise, supporting

24  personal jurisdiction.'") (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.

25  1986)).

26          Given the unambiguous and uncontroverted declarations submitted by ZF,

27  the decision in *Martinez v. Morgan Stanley & Co.*, 2010 WL 11512383, (S.D. Cal.

28  May 6, 2010), is instructive.  There, the plaintiff sought jurisdictional discovery in

44

1  support of a motion to remand, and the defendants (as here) pointed to sworn

2  declarations submitted in opposition. *Id*. at *3.  Denying the plaintiff's

3  jurisdictional discovery request, the court noted that the defendants had "presented

4  competent proof, by way of declarations, which support[ed] their assertion" as to

5  jurisdiction, observing that the plaintiff "makes no substantive challenge to these

6  declarations." *Id.*  The court continued: "Although [p]laintiff attempts to dismiss

7  the import of the declarations by characterizing them as 'conclusory declarations,'

8  this ignores the fact that these are ***sworn*** declarations provided by executive

9  employees of [d]efendants." *Id.* (emphasis in original).  Finding that "plaintiff

10  ha[d] not provided any evidence or argument that contradicts the evidence

11  submitted by [d]efendants" and noting that plaintiff's true motive was to take

12  discovery "in order to assure herself there is no evidence refuting [d]efendants'

13  assertions," the court concluded that jurisdictional discovery was not warranted and

14  denied the request. *Id*.; *see also Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891,

15  905 (N.D. Cal. 2021) (granting motion to dismiss and denying request for

16  jurisdictional discovery because the court rejected plaintiffs' "bare allegations in

17  the face of specific denials"); *Reynolds*, 481 F. Supp. at 1010 (granting motion to

18  dismiss and denying request for jurisdictional discovery where defendants

19  submitted a declaration explaining that there was no basis for jurisdiction and the

20  plaintiffs "simply stat[ed] that facts are disputed" and offered "no more than a

21  hunch that discovery would yield jurisdictionally relevant facts . . . especially in

22  light of [defendant's] specific denials") (citations omitted).

23       The same is the case here, where Plaintiffs likewise "seek[] to conduct a

24  fishing expedition in hopes of establishing" contrary jurisdictional facts "without

25  having any apparent basis for believing this to be the case." *Martinez*, 2010 WL

26  11512383, at *3.  The Court should deny the request here all the same.

27       Mr. Goodman's "Limited Oversight" Statement.  Nor is Mr. Goodman's

28  2020 testimony that ZF Friedrichshafen AG exercised "only limited oversight" over

1    unspecified communications with NHTSA sufficient grounds for jurisdictional

2    discovery here.  Setting aside that (again) Judge Kronstadt already considered Mr.

3    Goodman's 2020 declaration and denied jurisdiction without the need for

4    discovery, Plaintiffs fail to explain how documents showing ZF Friedrichshafen

5    AG's "limited oversight" would confer personal jurisdiction or otherwise affect the

6    outcome of ZF's motion to dismiss.[11]

7           This is particularly true given the higher standard to take jurisdictional

8    discovery from a foreign defendant and the "higher jurisdictional threshold" and

9    "unusually extensive contacts" that Plaintiffs must satisfy for the Court to exercise

10   jurisdiction over ZF Friedrichshafen AG.  And lest there be any doubt as to the

11   2020 "limited oversight statement," Mr. Goodman's more recent testimony

12   confirms that ZF Friedrichshafen AG had *no* involvement in the three specific

13   presentations at issue in this motion.  *See* 2022 Goodman Decl. ¶¶ 11, 11(f), 20; *see*

14   *also* Medley Decl. ¶ 5 ("ZF Friedrichshafen AG had no involvement in directing

15   the domestic ZF entities' . . . ACU-related interactions with United States

16   regulators.").  Given that, Plaintiffs' request amounts to a "fishing expedition," and

17   should therefore be denied.  *See Rosen v. Terapeak, Inc.*, 2015 WL 12724071, at

18   *10 (C.D. Cal. Apr. 28, 2015); *Panterra Networks, Inc. v. Convergence Works,*

19   *LLC*, 2009 WL 4049956, at *4 (N.D. Cal. Nov. 20, 2009) (denying jurisdictional

20   discovery where plaintiff "failed to offer any evidence to contradict the evidence

21   submitted by defendants").

22          Even if ZF Friedrichshafen AG did exercise "limited oversight" over the

23   three at-issue presentations—and the evidence shows it did not—it would not

24   _____

25   [11]  Plaintiffs incorrectly analogize ZF Friedrichshafen AG's "limited oversight" of
     the Domestic ZF Entities' communications with NHTSA to that of a newspaper
26   editor's "shared responsibility" for the content of a journalist.  Plaintiffs cite no
     authority suggesting that editorial oversight rises to the requisite level of contact to
27   create jurisdiction.  Regardless, the attached declarations make clear there was no
     such editorial oversight.
28

1    establish a colorable basis for jurisdiction over ZF Friedrichshafen AG.  Plaintiffs

2    claim that ZF Friedrichshafen AG's alleged control constitutes "purposeful

3    direction," which is required to establish jurisdiction under Rule 4(k)(2).  But

4    showing that a foreign entity purposefully directed activities toward the U.S. is a

5    high bar, which Plaintiffs do not reach.[12]

6          When "a plaintiff [is] seeking to hale a foreign citizen before a court in the

7    United States," the plaintiff "must meet a higher jurisdictional threshold than is

8    required when the defendant is a United States citizen."  *Core-Vent Corp. v. Nobel*

9    *Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993).  As the Supreme Court admonished,

10   "[g]reat care and reserve should be exercised when extending our notions of

11   personal jurisdiction into the international field." *Asahi Metal Indus. v. Sup. Ct. of*

12   *Cal., Solano Cty.,* 480 U.S. 102, 115 (1987) (citation omitted); *see also Daimler AG*

13   *v. Bauman*, 571 U.S. 117, 141 (2014) (noting desire to avoid "risks to international

14   comity").  Accordingly, jurisdiction under Rule 4(k)(2) is appropriate only where a

15   foreign defendant has "***unusually extensive contacts*** with the United States."  *AMA*

16   *Multimedia LLC v. Wanat*, 2017 WL 5668025, at *5 (D. Ariz. Sept. 29, 2017)

17   (emphasis added) (granting motion to dismiss), *aff'd*, 970 F.3d 1201 (9th Cir.

18   2020).

19          In *AMA Multimedia*, purposeful direction did not exist where a foreign

20   defendant merely "hosted" and "displayed" at-issue content on its website, and

21   there was no evidence that the foreign defendant "was the individual who uploaded

22

23   ---

[12]  Nor would the requested jurisdictional discovery support jurisdiction under an
"agency" theory, which Plaintiffs advanced in 2020, *see* Dkt. 282 at 9, but appear to
have abandoned here.  To the extent that Plaintiffs do pursue such an "agency"
24   theory, that argument fails.  "The existence of a parent-subsidiary relationship is
insufficient, on its own, to justify imputing one entity's contacts with a forum state
25   to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike,*
*Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  Meeting the "agency" test is difficult: it
26   requires that the parent and subsidiary be "not really separate entities" because the
parent exercises "***pervasive control*** over the subsidiary."  *Id.* at 1073 (emphasis
27   added).  Plaintiffs do not allege pervasive control, and the declarations of Mr.
Goodman, Ms. Medley, and Mr. Way refute any such allegation.
28

the" at-issue content.  *See AMA Multimedia*, 2017 WL 5668025, at *5, *8; *cf. Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229–30 (9th Cir. 2011) (jurisdiction existed over domestic defendant where that domestic defendant posted at-issue content themselves).  Similarly here, Plaintiffs do not allege that ZF Friedrichshafen AG actually transmitted the presentations to NHTSA, or otherwise communicated with it.

Plaintiffs cite three cases where a plaintiff sufficiently alleged facts to support the exercise of personal jurisdiction over a foreign defendant.  All are distinguishable.  In *In re Chrysler*, personal jurisdiction was sufficiently pleaded where plaintiffs alleged "*the direct participation* of the foreign entities" in the improper enterprise, by, for example, "develop[ing] and disseminat[ing]" misleading material or "develop[ing]," "calibrat[ing]," "manufacturing and/or assembling," allegedly defective engines.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 946, 973, 1029–30 (N.D. Cal. 2018) (emphasis added).  Similarly, in *In re Volkswagen*, a foreign defendant was alleged to have "designed and manufactured" an electronic control unit that acted as a "defeat device"—*i.e.*, it evaded emission control testing.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594, at *1, *2, *17 (N.D. Cal. Oct. 30, 2017).  Finally, in *Wright*, a foreign defendant was alleged to have engaged in a fraudulent scheme to sell "pirated" products of the plaintiff U.S. supplier by "directly contacting [plaintiff's] customers and through retail sales from [defendant's] website."  *See Wright v. Bloom*, 2012 WL 5940760, at *1, *4 (N.D. Cal. Nov. 27, 2012).

These cases are distinguishable.  First, none analyzed a request for jurisdictional discovery.  Second, in each case, the plaintiff alleged "direct participation" on behalf of the foreign defendant.  In *In re Chrysler* and *In re Volkswagen*, the plaintiffs alleged that the foreign defendants actually built the defective product; in *Wright*, the foreign defendant allegedly contacted the

plaintiff's customers directly and made false statements to them.  Here, Plaintiffs do not allege that ZF Friedrichshafen AG designed, tested, manufactured, or sold the allegedly defective ACU.  As to the NHTSA communications, Plaintiffs do not allege that ZF Friedrichshafen AG actually wrote, drafted, or sent the at-issue presentations.  (As Mr. Goodman's declarations and Ms. Medley's declaration make clear, that was all done by the Domestic ZF Entities.)  Rather, Plaintiffs claim that ZF Friedrichshafen AG merely *oversaw* the ZF domestic entities' communications, by reviewing, approving, and causing the transmittal of the presentations.  Even if that were true (and the declarations show it is not true), it would not rise to the same level of "direct participation" required to exercise jurisdiction over a foreign entity.[13]

Plaintiffs' Speculative Investment Theory.  Given Mr. Goodman's (and Ms. Medley's) clear and uncontroverted testimony confirming the lack of involvement in the NHTSA communications at issue, Plaintiffs are left to speculate that ZF Friedrichshafen AG must have been involved in the specific communications given the price of its 2015 acquisition of then-TRW.  The Court need not credit such conclusory speculation, which cannot justify jurisdictional discovery.  *See SSV,*

---

[13]  In their legal standards section, Plaintiffs cite *HaloSongs, Inc. v. Sheeran*, 2017 WL 5198248 (C.D. Cal. Jan. 13, 2017) and *Wang v. Wu*, 2016 WL 10957847 (C.D. Cal. Dec. 7, 2016), where limited jurisdictional discovery was permitted as to foreign defendants.  These cases are inapposite.  In *HaloSongs*, jurisdictional discovery was permitted based on the plaintiffs' allegations that the foreign defendants directly participated in the allegedly improper use of a copyrighted song by approving of the use of the song and visiting the U.S. recording studio while the allegedly improper recording took place.  2017 WL 5198248, at *5, *9–10.  In *Wang*, plaintiff alleged that a foreign defendant bank wrongfully failed to release plaintiff's share of the proceeds of a sale of a company.  2016 WL 10957847, at *1.  With one exception, the court denied all of the plaintiffs' requests for jurisdictional discovery, because they would not affect plaintiff's opposition to defendant's jurisdictional challenge and because they were "too speculative, too broad, and not proportional to the issues in the action."  *Id*. at *3.  The court did order the defendant to produce communications between plaintiff and defendant because they related to the foreign defendant's "***direct interactions with*** and solicitations to" plaintiff.  *Id*. at *4. (emphasis added).

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1   *LLC v. HPR Distributors LLC*, 2022 WL 2234959, at *6 (C.D. Cal. Mar. 28, 2022)

2   ("The Court also need not permit discovery when it is based on speculation that

3   contradicts actual evidence.") (citing *Pebble Beach*, 453 F.3d at 562); *Cousteau*

4   *Soc'y, Inc. v. Cousteau*, 2019 WL 4452972, at *5 (C.D. Cal. June 19, 2019)

5   (similar).[14]

6                                            * * * * *

7          Because Judge Kronstadt can resolve ZF's motion to dismiss without the

8   requested jurisdictional discovery, it follows that such discovery is not relevant at

9   all.  But even if the requested jurisdictional discovery had tangential relevance, it

10  must also be proportional under Rule 26(b)(1), as Plaintiffs acknowledge.  Plaintiffs

11  fail on all six counts.

12         ***First***, the jurisdictional discovery that Plaintiffs seek is not important to the

13  resolution of the case or ZF's motion to dismiss, as evidenced by Judge Kronstadt's

14  dismissal of ZF after evaluating the same evidence and rejecting Plaintiffs' same

15  arguments.  *See In re ZF-TRW*, 2022 WL 522484, at *34–35; *see also Dao v.*

16  *Liberty Life Assurance Co. of Bos.*, 2016 WL 796095, at *5 (N.D. Cal. Feb. 23,

17  2016) (rejecting motion to compel in part because "it [was] not clear that the

18  discovery sought [was] necessary or even especially important to resolving the

19  issues in [the] litigation").

20         ***Second***, the parties possess equal access to the information underlying

21  Plaintiff's claim to jurisdiction—the three presentations at issue containing the "©

22  ZF Friedrichshafen AG" mark—as well as the straightforward explanation as to

23  why those presentations bore that mark, as provided in sworn testimony from one

24  of the authors, Mr. Goodman.  2022 Goodman Decl. ¶¶ 10, 11 *et seq*., 23.

25         ***Third***, it would be burdensome to identify custodians, collect

26  communications in Europe, negotiate search terms, and search and translate the

27  ─────────────
    [14]  Plaintiffs cite no case that says that the size of a parent's investment in an
28  indirect subsidiary suffices to establish jurisdiction or serve as a basis for
    jurisdictional discovery.  That is not the law.

documents—potentially in German—***all with the goal of proving a negative*** (*i.e.*, that a German great-grandparent company with thousands of employees did not control the content of the presentations).  And again, these burdens would be incurred for little benefit.

***Fourth***, while this is not the forum to debate Plaintiffs' damages claim, Plaintiffs inflate the amount in controversy, including by ignoring (i) the substantial hurdles they face in this litigation (such as overcoming a second round of Rule 12 motions and certifying a class or classes of disparate car owners who purchased disparate vehicles from disparate manufacturers featuring more than a half dozen different ACU designs), and (ii) the fact that some Plaintiffs cannot claim they are suffering any damage at all in light of the opportunity to take advantage of free recalls offered by the vehicle manufacturers.

***Fifth***, ZF Friedrichshafen AG's assets and revenue are irrelevant to whether it is subject to jurisdiction in this Court and whether Plaintiffs meet their burden for seeking jurisdictional discovery.

***Finally***, the issues at stake in this litigation are not implicated by Plaintiffs' request.  The requested discovery is unrelated to Plaintiffs' substantive allegations concerning airbag safety.  Plaintiffs seek jurisdictional discovery to purportedly develop facts regarding a corporate great-grandparent's alleged oversight over one of its distant subsidiaries.  And Plaintiffs' Amended Complaint seeks to recover only for economic damages—not personal injury.

### 3. Any Dispute Regarding Jurisdictional Discovery Should be Resolved in the Context of the Motion to Dismiss Itself.

Finally, if there is any question as to whether Plaintiffs are entitled to jurisdictional discovery or if it would be helpful to resolving ZF's pending motion to dismiss, it should be answered by Judge Kronstadt in the context of his evaluation of that motion.  In that scenario, reserving the question of jurisdictional discovery for Judge Kronstadt is the most efficient path forward for both the parties

and the Court.  That would allow Judge Kronstadt to determine if "pertinent facts

bearing on the question of jurisdiction are controverted or [if] a more satisfactory

showing of the facts is necessary."  *In re ZF-TRW*, 2022 WL 522484, at \*39

(citation omitted).  *See also In re Terrorist Attacks on Sept. 11, 2001*, 689

F. Supp. 2d 552, 569 (S.D.N.Y. 2010) (magistrate judge reserving decision as to

jurisdictional discovery for the district court judge "[b]ecause it is possible that [the

district court judge] will conclude that the [p]laintiffs' theories of specific

jurisdiction are not viable . . . , [and defendant] should not be subjected to extensive

additional discovery before [the district court judge] decides the issue").

### D.    Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' request to take

jurisdictional discovery from ZF Friedrichshafen AG.

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 3, 2022          Respectfully submitted,

/s/David Stellings
David Stellings

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com
Katherine McBride
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
Phong-Chau G. Nguyen (SBN 286789)
pgnguyen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

BARON & BUDD, P.C.
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Elizabeth Smiley (SBN 318165)
esmiley@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
Facsimile: 818-986-9698

53

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1

*Co-Lead Counsel for Plaintiffs*

2

3

/s/Matthew T. Regan

4

Matthew T. Regan, P.C.

5

KIRKLAND & ELLIS LLP

6

Mark C. Holscher (SBN 139582)

7

mark.holscher@kirkland.com

555 South Flower Street

8

Los Angeles, CA 90071

Telephone: 213-680-8400

9

Facsimile: 213-680-8500

10

11

Tammy A. Tsoumas (SBN 250487)

tammy.tsoumas@kirkland.com

12

2049 Century Park East, Suite 3700

Los Angeles, CA 90067

13

Telephone: 310-552-4200

14

Facsimile: 310-552-5900

15

Matthew T. Regan, P.C. (*pro hac vice*)

16

mregan@kirkland.com

300 North LaSalle

17

Chicago, IL 60654

18

Telephone: 312-862-2000

Facsimile: 312-862-2200

19

20

Judson Brown, P.C. (*pro hac vice*)

jdbrown@kirkland.com

21

Michael A. Glick (*pro hac vice*)

22

michael.glick@kirkland.com

Jason Wilcox (*pro hac vice*)

23

jason.wilcox@kirkland.com

24

1301 Pennsylvania Avenue, N.W.

Washington, D.C. 20004

25

Telephone: 202-389-5000

26

Facsimile: 202-389-5200

27

*Counsel for ZF Friedrichshafen AG*

28

54

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE OF CERTIFICATION

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: August 3, 2022          */s/David Stellings*
                                          David Stellings

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2022, a copy of the foregoing **Joint Stipulation
Regarding Plaintiffs' Motion to Compel ZF Friedrichshafen AG to Produce
Documents in Response to Jurisdictional Document Requests 21 and 24** was
served electronically through the Court's electronic filing system upon all Parties
appearing on the Court's ECF service list.

DATED: August 3, 2022          */s/ David Stellings*
                                David Stellings

**Joint Stipulation re Plaintiffs' Discovery Dispute with ZF Friedrichshafen AG**