1

Roland Tellis (SBN 186269)
rtellis@baronbudd.com

2

BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600

3

Encino, CA 91436
Telephone: 818.839.2333

4

Facsimile: 818.986.9698

5

David S. Stellings (*pro hac vice*)
dstellings@lchb.com

6

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP

7

250 Hudson Street, 8th Floor
New York, New York 10013-1413

8

Telephone: 212.355.9500
Facsimile: 212.355.9592

9

10

*Co-Lead Counsel for Plaintiffs*

11

(additional counsel listed below)

12

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

16

*In re ZF-TRW Airbag Control Units Products Liability Litigation*

MDL No. 2905

17

Case No. 2:19-ml-02905-JAK-PLA

ALL CASES

18

District Judge: Hon. John A. Kronstadt
Chief Magistrate: Hon. Paul L. Abrams

19

20

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**

21

**SUPPORT OF THEIR OBJECTIONS TO CHIEF MAGISTRATE JUDGE**

22

**ABRAMS'S ORDER (ECF 546)**

23

24

25

26

27

28

2456585.1

# TABLE OF CONTENTS

I. Introduction ......................................................................................................1

II. Factual Background ..........................................................................................3

    A.    Plaintiffs' claims arise out of or relate to a fraudulent scheme to mislead consumers and NHTSA about the ACU Defect.......................3

    B.    ZF Germany has not substantiated its denial of involvement in the scheme to mislead NHTSA. ..............................................................5

III. Standard of Review..........................................................................................8

IV. Legal Standard for Jurisdictional Discovery ....................................................9

V. Argument .......................................................................................................10

    A.    Chief Magistrate Judge Abrams's decision was contrary to law because it gave no weight to allegations in the complaint which ZF Germany never denied. ...............................................................10

    B.    Chief Magistrate Judge Abrams' holding that Plaintiffs had not alleged a colorable basis for ZF Germany's purposeful direction toward the United States was clearly erroneous and contrary to law. ..................................................................................................13

    C.    Chief Magistrate Judge Abrams clearly erred in holding that the declarations refuted any involvement by ZF Germany. ....................16

    D.    Chief Magistrate Judge Abrams' holding that the Court had previously addressed and declined to order discovery based on Plaintiffs' jurisdictional theory was contrary to law............................19

VI. Conclusion ....................................................................................................20

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Agricola Baja Best v. Harris Moran Seed Co.*,
44 F. Supp. 3d 974 (S.D. Cal. 2014) .................................................16

4

*Baker v. Wehinger*,
No. 18-cv-5800, 2019 WL 6720990 (C.D. Cal. Mar. 20, 2019) ...........9

5

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
223 F.3d 1082 (9th Cir. 2000) ................................................................9

6

*Blockchange Ventures I GP, LLC v. Blockchange, Inc.*,
No. 21-cv-891, 2021 WL 3115437 (S.D.N.Y. July 22, 2021) .............19

7

*Burri L. PA v. Skurla*,
35 F.4th 1207 (9th Cir. 2022) ..............................................................11

8

*Davis v. Asano Bussan Co.*,
212 F.2d 558 (5th Cir. 1954) ................................................................10

9

*Davis v. Chase Bank U.S.A., N.A.*,
2010 WL 1531410 (C.D. Cal. 2010) ......................................................8

10

*Estakhrian v. Obenstine*,
No. 11-cv-3480, 2011 WL 13128846 (C.D. Cal. Oct. 24, 2011) ........15

11

*General Ind. Co. v. Birmingham Sound Reproducers, Ltd.*,
26 F.R.D. 559 (E.D.N.Y.1961).............................................................10

12

*Google Inc. v. Egger*,
2009 WL 1228485 (N.D. Cal. Apr. 30, 2009).......................................9

13

*Grimes v. City & Cnty. of San Francisco*,
951 F.2d 236 (9th Cir. 1991) ................................................................8

14

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ..............................................................10

15

*Herring Networks, Inc. v. AT&T Servs., Inc.*,
No. 16-cv-1636, 2016 WL 4055636 (C.D. Cal. July 25, 2016) ..........14

16

*Inamed Corp. v. Kuzmak*,
275 F. Supp. 2d 1100 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) .....................................................................................................11

17

*Laub v. United States DOI*,
342 F.3d 1080 (9th Cir. 2003) ..........................................................9, 10

18

*Logtale, Ltd. v. Canton*,
No. 20-cv-1207, 2021 WL 5908412 (N.D. Cal. Dec. 14, 2021) .........12

19

*Myers v. Bennett L. Offs.*,
238 F.3d 1068 (9th Cir. 2001) ........................................................13, 15

20

*NORCAL Mut. Ins. Co. v. Newton*,
84 Cal. App. 4th 64, 79, 100 Cal. Rptr. 2d 683 (2000) .......................15

21

*Orchid Biosciences, Inc. v. St. Louis University*,
198 F.R.D. 670 (S.D. Cal. 2001) .........................................................17

22

*Phan v. Grand Bahama Cruise Line, LLC*,
No. 15-cv-5019, 2016 WL 5407919 (N.D. Cal. Sept. 28, 2016) ........12

23

24

25

26

27

28

*Precision Orthopedic Implants, Inc. v. Limacorporate S.P.A.*,
   No. 16-cv-2945, 2016 WL 7187299 (C.D. Cal. Dec. 9, 2016) ............................ 14

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................................. 11

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ............................................................................. 14

*Smith v. Nerium Int'l, LLC*,
   No. 18-cv-1088, 2018 WL 6444898 (C.D. Cal. Nov. 7, 2018) ........................ 9, 14

*Sonneveldt v. Mazda Motor of Am., Inc.*,
   No. 19-cv-1298, 2020 WL 9312379 (C.D. Cal. Apr. 22, 2020) ........................... 11

*United States v. Howell*,
   231 F.3d 615 (9th Cir. 2000) ................................................................................. 9

*Wanachek Mink Ranch v. Alaska Brokerage Int'l, Inc.*,
   No. 06-cv-89, 2009 WL 1247039 (W.D. Wash. May 4, 2009) ............................. 19

*Wang v. Wu*,
   No. 16-cv-84, 2016 WL 10957847 (C.D. Cal. Dec. 7, 2016) ................................. 9

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   556 F.2d 406 (9th Cir. 1977) ......................................................................... 10, 17

**Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................. 8

**Rules**

Federal Rule of Civil Procedure 26 ............................................................................. 9

Federal Rule of Civil Procedure 72 ("Rule 72") ......................................................... 8

Pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. §
636(b)(1)(A), Plaintiffs respectfully object to fundamental parts of Magistrate
Judge Abrams's Order (ECF 546) denying Plaintiffs' Motion to Compel ZF
Friedrichshafen AG ("ZF Germany") to Produce Documents in Response to
Jurisdictional Document Requests 21 and 24 (ECF 536). For the reasons below,
Plaintiffs request that the Court sustain their objections and permit jurisdictional
discovery against ZF Germany.

# I. <u>INTRODUCTION</u>

The ZF Defendants have barely provided any discoverable information in
this three-year-old, multidistrict litigation. None of the ZF Defendants have made a
meaningful production of documents this year.[1] And ZF Germany has never
provided any discovery at all.

Against this backdrop, Plaintiffs made a highly targeted request for
jurisdictional discovery: that ZF Germany search for documents and
communications about just *three* PowerPoint presentations sent to NHTSA that
bear ZF Germany's name and copyright. These presentations are attached hereto as
Exhibits 1, 2, and 3. These presentations relate to Plaintiffs' claims because they
contain many misleading statements about the ACU Defect made to a U.S.
regulator, and Plaintiffs allege RICO conspiracies to conceal the ACU Defect from
consumers and NHTSA.

If this search for responsive documents shows that ZF Germany received and
reviewed the three misleading presentations before their transmittal to NHTSA, the
transmittals of the presentations can and should be imputed to ZF Germany as

---

[1] In 2022, the ZF Defendants have produced exactly *one* document. This document
is one of the three misleading presentations to NHTSA at issue in this dispute. ZF
should have produced this document in 2020 with its production of documents
shared with NHTSA, which ZF had previously claimed was complete. Plaintiffs
learned of ZF's failure to complete its NHTSA production when they observed an
excerpted version of this withheld presentation in a production by another
Defendant. ZF produced the withheld document only after Plaintiffs complained.

jurisdictional contacts under a ratification theory of agency. *See* §V.A-B. If on the other hand, ZF Germany has no documents about the presentations at all, it can run a few basic email searches and certify that it ran a reasonable search and found no responsive documents, thereby closing out this issue with limited, if any, burden.

ZF Germany refused even this modest request and instead submitted declarations from three witnesses with limited partial denials of ZF Germany's involvement with the presentations. Chief Magistrate Judge Abrams relied upon these declarations to deny Plaintiffs' motion. These witnesses, however, have incomplete knowledge of the at-issue presentations and ZF Germany's communications about them, and do not undermine the core of Plaintiffs' basis for jurisdiction over ZF Germany.

Plaintiffs respectfully submit Chief Magistrate Judge Abrams' decision was contrary to law and clearly erroneous for four reasons.

First, Chief Magistrate Judge Abrams erred by not accepting the truth of Plaintiffs' uncontroverted allegations, as the applicable legal standard at the pleading stage requires. This standard is designed to be favorable to Plaintiffs because it is procedurally unfair for this Court to close its doors as to claims against ZF Germany without *any* discovery about ZF Germany's involvement in jurisdictional contacts, particularly in light of Plaintiffs' well-pled allegations as to those contacts.

Second, Chief Magistrate Judge Abrams applied the wrong legal standard in concluding that Plaintiffs had failed to demonstrate a colorable basis for jurisdiction. Specifically, he held that ZF Germany's affirmative input in the presentations would be necessary to impute the ZF's domestic subsidiaries' transmittal of the presentations to ZF Germany, which was contrary to law. Instead, Ninth Circuit law confirms that ratification by ZF Germany suffices. Ratification turns on knowledge and acquiescence, not affirmative input.

Third, Chief Magistrate Judge Abrams erred by finding that ZF's

declarations refuted "any involvement" by ZF Germany in the three presentations to NHTSA, when none of the testimony supported that conclusion. At the very best, ZF's limited declarations denied only *some* involvement based on the incomplete views of just one of at least two co-authors of the presentations. The other witnesses who submitted declarations admit they lack personal knowledge to lay the foundation for Chief Magistrate Judge Abrams' conclusion. *None* of ZF's declarations denied that ZF Germany received and reviewed the presentations that were sent to a U.S. regulator bearing its name.

Fourth, Chief Magistrate Judge Abrams' decision was contrary to law insofar as he reasoned that the Court had previously addressed Plaintiffs' theory of jurisdiction. This ruling was contrary to law because the Court's holding on the original complaint expressly denied jurisdiction based solely on group pleading issues, without reaching the merits of the theory.

In light of these errors, Plaintiffs respectfully request the Court set aside Chief Magistrate Judge Abrams' decision and order ZF Germany to run a targeted search for and produce documents and communications about the three at-issue presentations, or to certify that it conducted a reasonable search and found no responsive documents.

## II. FACTUAL BACKGROUND

**A.      Plaintiffs' claims arise out of or relate to a fraudulent scheme to mislead consumers and NHTSA about the ACU Defect.**

Plaintiffs allege that all of the ZF Defendants were members of five RICO enterprises,[2] each of which perpetuated fraudulent schemes to defraud consumers

---

[2] This Court previously held, the alleged RICO "Enterprises shared the common purpose of misleading consumers and NHTSA concerning the existence, nature, and scope of the defect with ZF TRW ACUs installed in the respective Vehicle Manufacturer Defendant's Class Vehicles." ECF 396 at 61 (quotations, brackets, and citations omitted). Plaintiffs' first complaint already succeeded in pleading valid RICO enterprises that included ZF companies based in part on fraudulent mailings to NHTSA. *See id.* at 70-73, 80.

and NHTSA about the existence, nature, and scope of the ACU Defect in the Class Vehicles. ECF 477-1 at ¶¶1602-1615, 1743-1756, 1875-1889, 2011- 2024, 2142-2155. The purpose of the fraudulent schemes was for all participants to profit by deceiving consumers into overpaying for defective Class Vehicles with defective component parts. ECF 477-1 at ¶¶1603, 1744, 1876, 2012, 2143.

The Domestic ZF Companies (which previously operated under the "TRW" corporate name) first began to manufacture and sell defective DS84 ACUs for vehicles starting with model years 2009 and 2010. In the spring of 2015, ZF Germany purchased the Domestic ZF companies. *See* ECF 477 at ¶250. Sales of new Class Vehicles with defective DS84 ACUs continued for at least four model years thereafter, through 2019. Thus, for the latter half of a decade-long scheme to manufacture and sell defective ACUs,[3] ZF Germany benefitted from the illegal profits reaped by Defendants' fraud. ECF 477 at ¶¶562-606; ECF 477-1 at ¶¶1667, 1792, 1928, 2063, 2194.

After the 2015 acquisition, the Domestic ZF Defendants' performance was indisputably material to ZF Germany's bottom line. The merger required ZF Germany to pay a stunning $12 billion, and was the largest merger in ZF Germany's 100-year history. As ZF Germany stated at the time, one of the domestic entities, Defendant ZF TRW Automotive Holdings Corp. "[was] almost as big as ZF." *See* ECF 477, ¶250.

In light of its unprecedented $12-billion investment in the TRW companies, ZF Germany began to oversee the domestic ZF Defendants immediately following the acquisition in 2015. For example, Plaintiffs allege that "after ZF Germany acquired ZF TRW [Automotive Holdings] Corp. and its subsidiaries, Dr. Franz

---

[3] *See, e.g.*, ECF 477-1 at ¶1543 (shipments of Hyundai-Kia Class Vehicles "occurred at least in each year from 2010 to 2019"); at ¶1690 (same for FCA Class Vehicles); at ¶1819 (same for Toyota Class Vehicles), at ¶1952 (same for Honda Class Vehicles).

Kleiner, a member of ZF Germany's Board of Management, took over responsibility for the acquired company," i.e., for ZF TRW Automotive Holdings Corp. ECF 477 at ¶251. ZF press releases confirm this allegation by describing him as the company's CEO. *See* Ex. 4; Ex. 5; *see also* Ex. 6 ("The Board member responsible for the North America market region and the Active & Passive Safety Technology Division - and hence for the integration activities - is Dr. Franz Kleiner."). And, "[a]fter Dr. Kleiner retired, ZF Germany appointed Dr. Martin Fischer as his replacement on the ZF Board of Management, who took over responsibilities including active and passive safety systems and the North America Region." *Id.* Moreover, by no later than July 2017, one of ZF Germany's board members assumed control of the legal and compliance divisions of all the former TRW companies, including the ZF Defendants. *See id.* at ¶257.

**B.     ZF Germany has not substantiated its denial of involvement in the scheme to mislead NHTSA.**

Over the course of more than two years, the ZF Defendants sent NHTSA three PowerPoint presentations with many misleading statements about the ACU Defect. *See* Ex. 1; Ex. 2; Ex. 3; ECF 477, ¶¶1272-1303, 1314-1348, 1391-1408. These misleading presentations to a U.S. regulator relate to Plaintiffs' RICO claims because they furthered the scheme that gives rise to Plaintiffs' claims, and helped cause Plaintiffs' economic injuries. *See* ECF 477, ¶¶1260, 1264-1265; ECF 477-1, ¶¶1603, 1744, 1876, 2012, 2143. Accordingly, Plaintiffs rely upon ZF Germany's responsibility for the three misleading statements to NHTSA as one basis for jurisdiction over the company.

As explained more fully in the legal argument section below, legal responsibility for these presentations does not depend upon direct involvement by a ZF Germany employee in every aspect of the presentation. Instead, for purposes of jurisdiction, the acts of ZF Germany's domestic subsidiaries may be imputed to ZF Germany under a variety of agency theories, depending on the factual record.

Although domestic ZF employees appear to have drafted the three misleading presentations to NHTSA, several undisputed allegations support the conclusion that these drafters (and the domestic subsidiaries who employed them) acted as legal agents of ZF Germany when preparing the three presentations, under the doctrine of ratification.[4]

- First, ZF Germany received and reviewed drafts of these presentations before their wholly-owned subsidiaries sent them to NHTSA, and did not stop the prominent uses of its trademarked name, even though it had the legal right to prevent those uses under trademark law.[5] *See* ECF 477, ¶¶1299, 1345, 1408.

- Second, ZF TRW Automotive Holdings Corp.—the company run by a member of ZF Germany's management board—mailed the three misleading presentations to NHTSA. *See* ECF 477 at ¶¶251, 1301, 1347, 1407.

- Third, all three presentations have a copyright legend on virtually every page ascribing ownership to ZF Germany under federal intellectual property laws. *See* Exs. 1, 2X, 3.

- Fourth, two of the presentations from 2016 use ZF Germany's full corporate name on the title page of the presentations in the location where documents typically identify an author. *See* Ex. 1 at 1, Ex. 2 at 1.

There is no dispute that ZF Germany is the sole registered owner of the trademark for "ZF Friedrichshafen AG," the corporate name repeatedly used in the three misleading PowerPoint presentations to NHTSA. Public records held by the

---

[4] As explained below, ratification occurs based on "manifestation of assent" or "other conduct indicative of consent by the principal," even absent an affirmative communication expressing approval. *See* Restatement (Third) Of Agency § 4.01 (2006), comment b.

[5] Plaintiffs' amended complaint also alleged that ZF Germany "approved" these three presentations before their transmittal to NHTSA. Although Plaintiffs dispute that the limited, heavily-caveated testimony of only *one* co-author of the presentations denying "approval" rebuts Plaintiffs' allegation of approval for the reasons explained below, neither that witness nor any of the other two ZF witnesses deny that ZF Germany reviewed the presentations before transmittal.

1  United States Patent and Trademark Office confirm that ZF Germany has held this

2  trademark for over a decade. *See* Ex. 7.

3          ZF Germany has not offered any evidence that the domestic ZF employees'

4  use of its trademarked name on the three presentations was unauthorized. Instead,

5  the evidence proffered by ZF Germany shows that its domestic subsidiaries placed

6  ZF Germany's trademarked name on these presentations using PowerPoint

7  templates pursuant to a widespread "corporate practice" of using ZF Germany's

8  name, including in official communications with U.S. regulators. *See* ECF 528-8 at

9  ¶11. ZF Germany's admitted practice of allowing employees of ZF's domestic

10  subsidiaries to use its trademark name on communications for at least *two* years

11  straight (i.e., between February 2016 and March 2018, the date range of the three

12  presentations) further confirms that the domestic ZF subsidiaries acted as ZF

13  Germany's agents. The name "ZF Friedrichshafen AG" is not merely a "corporate

14  logo" (such as "Toyota"), as ZF Germany has sometimes suggested. Instead, it is

15  the full, formal corporate name that identifies a particular legal entity.

16          ZF Germany also does not deny that it claims legal ownership of the

17  copyrighted misleading material in the three presentations sent to NHTSA. While

18  the proffered testimony tends to show a copyright legend with ZF Germany's name

19  was added pursuant to a corporate practice, that fact is consistent with Plaintiffs'

20  allegation of ownership by ZF Germany, because a copyright claim is still valid

21  when added pursuant to such a practice.[6] Moreover, the testimony relied upon by

22  ZF Germany does not deny ZF Germany's involvement in the admitted decision to

23  require *all* employees of domestic ZF companies to place copyright legends

24  ascribing ownership to ZF Germany of all the documents they drafted.[7] If anything,

25  _____

26  [6] Notably, ZF's declarations do not contend ZF Germany's copyright legends fail to
establish a valid ownership interest under federal intellectual property laws.

27  [7] Plaintiffs plead, and ZF's evidence does not rebut, that ZF Germany's copyright

28  legends were also placed on non-PowerPoint documents prepared by employees of
the domestic ZF subsidiaries. *See, e.g.*, ECF 477 at ¶¶246-247, 995. Plaintiffs are

the domestic ZF subsidiaries' admitted practice of ascribing ownership of all their
employees' work product to ZF Germany confirms that the domestic subsidiaries
and their employees act as ZF Germany's agents when creating and sending that
work product. If these domestic companies were truly pursuing their independent
businesses instead of serving ZF Germany, they would claim ownership of their
own work, using their own corporate names.

Finally, insofar as ZF Germany's witnesses vaguely denied its "approval" or
"oversight" of the three presentations, the doctrine of ratification does not require a
showing of affirmative approval beyond ZF Germany's acquiescence of the usage
of ZF Germany's name after review of the presentations, and ZF Germany's
standing authorization for a widespread use of ZF Germany's name in work product
prepared by the domestic subsidiaries. *See* Section V.A-C below.

### III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 72 ("Rule 72") and 28 U.S.C. § 636(b)(1)(A)
"govern the authority of magistrate judges to enter non-dispositive discovery orders
and the review of those orders." *Davis v. Chase Bank U.S.A., N.A.*, 2010 WL
1531410, at *1 (C.D. Cal. 2010) (citing *Grimes v. City & Cnty. of San Francisco*,
951 F.2d 236, 240 (9th Cir. 1991). Section 636(b)(1)(A) provides that "a district
court judge may reconsider any pretrial matter where it has been shown that the
magistrate's order is clearly erroneous or contrary to law." 28 U.S.C.
§ 636(b)(1)(A). Similarly, Rule 72(a) provides that, "[t]he district judge in the case
must consider timely objections and modify or set aside any part of the order that is
clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard applies to the magistrate judge's factual
determinations and discretionary decisions, which can be overturned "only if the
district court is left with the definite and firm conviction that a mistake has been

---

entitled to the reasonable inference that the same corporate practice described by
Mr. Goodman applied to these types of documents too.

made." *Baker v. Wehinger*, No. 18-cv-5800, 2019 WL 6720990, at *4 (C.D. Cal. Mar. 20, 2019). The "contrary to law" standard, on the other hand, "applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Id.*

In conducting its review, a district court may consider evidence presented for the first time in a party's objection to a magistrate judge's order. *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). And any "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the *prima facie* jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal.").

## IV. LEGAL STANDARD FOR JURISDICTIONAL DISCOVERY

"District courts in the Ninth Circuit require a plaintiff to establish a 'colorable basis' for personal jurisdiction before granting jurisdictional discovery." *Google Inc. v. Egger*, 2009 WL 1228485, *1 (N.D. Cal. Apr. 30, 2009). A "colorable basis" for personal jurisdiction is "something less than a *prima facie* showing. *Smith v. Nerium Int'l, LLC*, No. 18-cv-1088, 2018 WL 6444898, at *2 (C.D. Cal. Nov. 7, 2018). All that the plaintiff must do is to come forward with "some evidence" tending to establish personal jurisdiction over the defendant. *Id.* (citations and some internal quotations omitted). "As with other types of discovery, jurisdictional discovery requests must comply with the broad parameters of Federal Rule of Civil Procedure 26." *Wang v. Wu*, No. 16-cv-84, 2016 WL 10957847, at *2 (C.D. Cal. Dec. 7, 2016) (quoting Fed. R. Civ. Proc. 26).

"A district court is vested with broad discretion to permit or deny discovery" related to questions of jurisdiction. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003). "Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,' discovery should

be granted when, as here, the jurisdictional facts are contested or more facts are needed. *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). Jurisdictional discovery should also be granted where "discovery on th[e] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

Jurisdictional discovery should be allowed, "for example, where there was a question as to whether jurisdiction could be established over an alien corporation through the employment of another as agent." *Wells Fargo & Co.,* 556 F.2d at 430 n.24 (citing as examples: *Davis v. Asano Bussan Co.*, 212 F.2d 558, 564-65 (5th Cir. 1954) and *General Ind. Co. v. Birmingham Sound Reproducers, Ltd.*, 26 F.R.D. 559 (E.D.N.Y.1961)).

## V. <u>ARGUMENT</u>

**A.** **Chief Magistrate Judge Abrams's decision was contrary to law because it gave no weight to allegations in the complaint which ZF Germany never denied.**

<u>Chief Magistrate Judge Abrams's Order, ECF 546 at 7:</u>

> [P]laintiffs' suggestion that no declarant denied that ZF Germany claims ownership of the content of the presentations, or denies that ZF Germany "received and reviewed drafts," thereby suggesting a greater level of involvement, is again nothing but pure speculation without an evidentiary foundation.

<u>Plaintiffs' Objection:</u>

Chief Magistrate Judge Abrams' rejection of uncontroverted allegations in Plaintiffs' amended complaint was contrary to law because he treated Plaintiffs' uncontroverted allegations as "speculation" that he could disregard, in contravention to the applicable legal standard. At the pleading stage, "a court must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff." *Burri L. PA v. Skurla*, 35 F.4th

1207, 1213 (9th Cir. 2022); *see also Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-cv-1298, 2020 WL 9312379, at *2 (C.D. Cal. Apr. 22, 2020) (holding on motion for jurisdictional discovery that "uncontroverted allegations in the plaintiff's complaint must be taken as true") (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)). Because Chief Magistrate Judge Abrams' decision not to credit Plaintiffs' uncontroverted allegations is a legal error, it is subject to *de novo* review. *See* §III above.

As explained in Section II above, the testimony proffered by ZF Germany did not deny that it received and reviewed drafts of each of the three misleading presentations before their transmittal to NHTSA. *See* ECF 477, ¶¶1299, 1345, 1408. Because neither ZF nor Chief Magistrate Judge Abrams identified evidence controverting these allegations, the Court had to assume that ZF Germany did receive and review the presentations prior to transmittal to NHTSA when determining whether Plaintiffs had shown a colorable basis for jurisdictional discovery at the pleading stage. This uncontroverted allegation supports a ratification theory because ZF Germany's review of drafts of the presentations to NHTSA shows that it knew about the presentations and the prominent usage of its own name therein. *See Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1119 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) (Under a ratification theory, "[a] principal is liable when the principal knows the agent holds himself or herself out as clothed with certain authority and remains silent.") (citations and quotations omitted).

Plaintiffs also alleged that ZF Germany was the legal owner of the misleading presentations under federal law, in light of the copyright marks placed on the documents. *See, e.g.*, ECF 477, ¶260. Again, given the lack of any evidence controverting the allegation, Chief Magistrate Judge Abrams also had to accept ZF Germany's legal ownership of the content of the three misleading presentations as true for the purposes of analyzing whether Plaintiffs' basis for jurisdiction was

colorable. ZF Germany's legal ownership based on the addition of copyright legends by employees of ZF's domestic subsidiaries supports a ratification theory of agency because that ownership confirms that ZF Germany accepted the benefit of work of employees of the domestic ZF subsidiaries. *See Logtale, Ltd. v. Canton*, No. 20-cv-1207, 2021 WL 5908412, at *4 (N.D. Cal. Dec. 14, 2021) ("a person may ratify an act by receiving or retaining benefits it generates if the person has knowledge of material facts") (citing Restatement (Third) of Agency §§ 4.01 cmt. d, 4.06) (internal punctuation omitted).

Plaintiffs also alleged that Dr. Franz Kleiner, a member of ZF Germany's management board, was the most senior executive officer of ZF TRW Automotive Holdings Corp.—the domestic ZF company that sent the three misleading PowerPoint presentations to NHTSA. *See* ECF 477 at ¶¶251, 1301, 1347, 1407. Because ZF Germany offered no evidence rebutting Dr. Kleiner's responsibility for ZF TRW Automotive Holdings Corp.'s actions, the Court had to assume the truth of Plaintiffs' allegations. Chief Magistrate Judge Abrams' opinion does not mention Dr. Kleiner or explain the basis for disregarding Plaintiffs' allegations. Accordingly, Dr. Kleiner's dual role as a member of ZF Germany's management board and as the CEO of the domestic subsidiary that indisputably mailed the misleading presentations further confirms ZF Germany's ratification of those presentations.

Respectfully, Chief Magistrate Judge Abrams' decision to give no weight to these uncontroverted allegations was contrary to law. On a motion for jurisdictional discovery, "Plaintiffs are not required" "to provide significant evidence supporting their agency theories." "Rather, Plaintiffs must present only a 'colorable basis' for jurisdiction." *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-5019, 2016 WL 5407919, at *3 (N.D. Cal. Sept. 28, 2016) (granting jurisdictional discovery even though Plaintiffs "failed to controvert the declarations the Bahamas Paradise Defendants submitted to show a lack of agency."). Plaintiffs' uncontroverted

allegations show a colorable basis for their theory that the misleading presentations to NHTSA should be imputed to ZF Germany as jurisdictional contacts under a ratification theory. *See Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1073, n.3 (9th Cir. 2001) (holding plaintiff pled ratification theory where the alleged principal "was aware" of the misconduct done in its name "but yet failed to do anything about it"). Because these misleading presentations give rise to or relate to Plaintiffs' RICO claims, they alone will support a finding that ZF Germany purposefully directed activity at the United States that requires the Court to exercise personal jurisdiction over the company.

**B.      Chief Magistrate Judge Abrams' holding that Plaintiffs had not alleged a colorable basis for ZF Germany's purposeful direction toward the United States was clearly erroneous and contrary to law.**

Chief Magistrate Judge Abrams's Order, ECF 546 at 7:

> [E]ven if one or more employees of ZF Germany received and reviewed drafts of the presentations, there simply is no evidence that ZF Germany provided any input into the presentations themselves or purposefully directed activities aimed at the United States.
>
> The facts and arguments presented in the Motion are "both attenuated and based on bare allegations in the face of specific denials made by defendant." The Court finds, therefore, that plaintiffs have not shown this Court a colorable basis for jurisdictional discovery as to ZF Germany, and/or that the facts presented in the declarations in opposition to the Motion are controverted, or need further development.

Plaintiffs' Objection:

Plaintiffs respectfully object to this portion of Chief Magistrate Abrams's Order as clearly erroneous because Plaintiffs carried their burden to show a colorable basis that ZF Germany purposefully directed activities aimed at the United States, based on the ratified acts of its agents (i.e., the employees of domestic subsidiaries whom ZF Germany allowed to place ZF Germany's name on the misleading presentations NHTSA).

Insofar as the Court found that Plaintiffs needed to proffer "evidence," this holding was contrary to the legal standard at the pleading stage. Instead, as explained above, any uncontroverted allegations in the operative complaint must be accepted as true and the Court must assess whether those uncontroverted allegations establish the requisite "colorable basis" for jurisdictional discovery—which is an even lower standard than a prima facie showing. *Smith v. Nerium Int'l, LLC*, No. 18-cv-1088, 2018 WL 6444898, at *2 (C.D. Cal. Nov. 7, 2018). Because this aspect of the decision was a legal error, it is subject to *de novo* review. *See* §III above.

Moreover, contrary to Chief Magistrate Judge Abrams' reasoning, ZF Germany need not itself have given affirmative "input" into the three misleading presentations if Plaintiffs can show its agents did. This is so because, "[f]or purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Proof of agency does not necessarily require a showing that a ZF Germany employee gave affirmative input on the content of any of the three presentations, as Chief Magistrate Judge Abrams appears to have concluded. *See Herring Networks, Inc. v. AT&T Servs., Inc.*, No. 16-cv-1636, 2016 WL 4055636, at *7, n.4 (C.D. Cal. July 25, 2016) (holding that acts of employees of AT&T Services, Inc. could be attributed to AT&T, Inc. for the purposes of jurisdiction and relying in footnote on theories of ratification and ostensible agency); *Precision Orthopedic Implants, Inc. v. Limacorporate S.P.A.*, No. 16-cv-2945, 2016 WL 7187299, at *6, n. 20 (C.D. Cal. Dec. 9, 2016) (holding defendant who ratified contract with misrepresentations was subject to jurisdiction, even though "he was not involved with negotiations and had no direct contact with" plaintiff).

Instead, "[a]n agency relationship can be established for the purposes of personal jurisdiction where the plaintiff makes a prima facie showing that the agent had actual or apparent authority, or that the principal ratified the agent's conduct." *Estakhrian v. Obenstine*, No. 11-cv-3480, 2011 WL 13128846, at *4 (C.D. Cal.

Oct. 24, 2011). And where Plaintiffs provide some colorable basis to support a ratification theory that still falls short of a prima facie showing, jurisdictional discovery is appropriate. *See Estakhrian*, 2011 WL 13128846, at \*7. Chief Magistrate Judge Abrams' decision not to assess a ratification theory was a legal error, subject to de novo review. *See* §III above.

Under a ratification theory, "[t]he sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal. To be effective as a ratification, the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification." Restatement (Third) Of Agency § 4.01 (2006), comment b.[8] Here, ZF Germany engaged in "conduct indicative of assent" because the Plaintiffs alleged (and ZF does not dispute) that ZF Germany (1) reviewed each of the three presentations before they were sent to NHTSA, (2) saw that the presentations identified ZF Germany as the corporate author and legal owner of the content under federal law, (3) did not object even though its trademark clearly permitted it to do so, and instead (4) authorized a widespread corporate practice of allowing all the employees of its domestic subsidiaries to habitually assign their work product to ZF Germany and use ZF Germany's name when preparing important written documents. *See Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1073, n.3 (9th Cir. 2001) (holding plaintiff pled ratification theory where the alleged principal "was aware" of the misconduct done in its name "but yet failed to do anything about it"); *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 79, 100 Cal. Rptr. 2d 683, 695 (2000) ("A principal's failure to promptly disaffirm an agent's conduct on her

---

[8] As the Ninth Circuit has recently explained, "ratification may create an agency relationship when none existed before if the acts are 'done by an actor ... who is not an agent but pretends to be.'" *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019).

behalf constitutes a ratification."); *c.f. Agricola Baja Best v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 983 (S.D. Cal. 2014) (while "branding with a parent corporation's logo is, alone, insufficient to establish an agency relationship[,]" it does constitute evidence that "may support [plaintiff's] agency argument.").

In this context, Chief Magistrate Judge Abrams committed clear error by denying jurisdictional discovery because "the record [was] not sufficiently developed to enable [the Court] to determine whether the [jurisdictional] tests are met." *Harris Rutsky*, 328 F.3d at 1135-36; *see also Asano Bussan Co.*, 212 F.2d at 564-65 (reversing judgment and noting "plaintiff was not required to rely exclusively on affidavits furnished by the defendants for [an] answer to that question, but had a right to employ interrogatories to develop fully the authority or lack of authority[.]"); *Birmingham Sound Reproducers, Ltd.*, 26 F.R.D. at 561 (noting that "courts must allow litigants reasonable opportunity to prove that the court has jurisdiction over the cause" and ordering defendant to respond to "jurisdictional discovery").

**C.   Chief Magistrate Judge Abrams clearly erred in holding that the declarations refuted any involvement by ZF Germany.**

Chief Magistrate Judge Abrams's Order, ECF 546 at 7:

> "The subject declarations clearly refute ***any involvement*** by ZF Germany with respect to the three presentations." (emphasis added).

Plaintiffs' Objection:

Plaintiffs respectfully object to the Chief Magistrate Abrams's Order because he abused his discretion by finding that the declarations filed by ZF Germany refuted "any involvement" by ZF Germany as to the three presentations. In fact, these declarations do not deny "any involvement" by ZF Germany. At most, they merely deny *some* but not *all* involvement, leaving open the need for discovery to resolve exactly what that involvement was. *See Orchid Biosciences, Inc. v. St. Louis*

*University*, 198 F.R.D. 670, 674-75 (S.D. Cal. 2001) (holding declarations proffered by Defendants failed to "meet the relatively high burden of establishing that 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'") (citing *Wells Fargo*, 556 F.2d at 430 n. 24)). Because this aspect of the decision relates to a factual finding, the clear error standard applies. *See* §III above.

As an initial matter, two of the witnesses offering declarations admit they lack personal knowledge necessary to deny ZF Germany's alleged involvement. Michael Way, for example, does not claim *any* knowledge of the presentations. ECF 537-8. Natalia Medley, on the other hand, acknowledges ZF hired her *after* two of the presentations were sent to NHTSA. *See* ECF 537-7 at ¶2. She therefore cannot know anything about ZF Germany's involvement in the two earlier presentations. Plaintiffs explained this in the supplemental memorandum (ECF 543 at 5), and Chief Magistrate Judge Abrams' opinion cited no evidence explaining how these two witnesses supplied a reasonable foundation for his finding.

This leaves one declaration by Emanuel Goodman as the sole evidence relied upon by Chief Magistrate Judge Abrams for his conclusion of "no involvement" by ZF Germany in the presentations. Although Mr. Goodman himself contributed to the three misleading presentations, Mr. Goodman's knowledge of the communications with ZF Germany about the presentations is facially incomplete. He acknowledges the presentations had other authors as well, and that other ZF employees approved the presentations. *See* ECF 536-6, ¶¶11(e), 11(f). He does not claim to have been involved in every conversation or email about the presentations, or to have done a reasonable search of ZF Germany's emails to assess the level of ZF Germany's involvement. Mr. Goodman's access to information is thus inherently a partial picture; only a reasonable search by ZF Germany for responsive communications can fill these gaps.

Moreover, even Mr. Goodman's denials do not actually "refute any

involvement by ZF Germany with respect to the three presentations," as Chief Magistrate Judge Abrams found. ECF 546 at 7. While Mr. Goodman does testify that the use of ZF Germany's name originated from the use of templates pursuant to a corporate practice, this testimony *confirms* ZF Germany's involvement because, as explained above, ZF Germany owns the exclusive legal right to use its own name. The only reasonable inference from the existence of the widespread and longstanding corporate practice Mr. Goodman identifies is that ZF Germany authorized the employees of its wholly owned subsidiaries in the U.S. to habitually create and send documents using ZF Germany's name. This inference is particularly compelling because ZF does not dispute that the executive in charge of ZF TRW Automotive Holdings Corp. (the ultimate domestic parent of all the domestic legacy TRW companies) was also an officer on ZF Germany's management board.

As for Chief Magistrate Judge Abrams' finding that Mr. Goodman's testimony supported a conclusion that ZF Germany played no role "in influencing or directing the content of those presentations" (ECF 546 at 7), Mr. Goodman's testimony did not go that far. Instead, he merely testified that ZF Germany "did not draft, edit, or approve the ***substantive*** content that ***I added*** to the slides when preparing the February 5, 2016, July 19, 2016, or March 8, 2018 presentations that I created using these master slides." ECF 536-6 at ¶20 (emphasis added). This testimony does not deny that ZF Germany reviewed or made comments on the presentations. Instead, it merely denies comments on "substantive" content that one of at least two co-authors added, without providing any clarity on what other content ZF Germany commented upon. This limited testimony is, of course, consistent with the limits of Mr. Goodman's personal knowledge.

Finally, insofar as Chief Magistrate Judge Abrams relied upon Mr. Goodman's vague denial of ZF Germany's "oversight" of the three presentations (ECF 547 at 7), proactive supervision or oversight of presentations is not necessary

to support a ratification theory of agency, especially when the ratified PowerPoint presentations expressly use ZF Germany's name and ZF Germany failed to rebut the allegation that it received and reviewed the presentations before transmittal to NHTSA. *See* §V.A above. Even setting aside the limits of Mr. Goodman's personal knowledge, a vague denial of "oversight" is not equivalent to a denial of involvement in this context and does not resolve the parties' factual dispute. *See Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21-cv-891, 2021 WL 3115437, at *8 (S.D.N.Y. July 22, 2021) (permitting jurisdictional discovery where denial in Defendants' declaration was "vague" as to whether the "term 'assets' is meant to artfully refer to some narrower set of goods or tangible items"); *Wanachek Mink Ranch v. Alaska Brokerage Int'l, Inc.*, No. 06-cv-89, 2009 WL 1247039, at *4 (W.D. Wash. May 4, 2009) (allowing jurisdictional discovery where declarations submitted by Defendants "do not conclusively establish that they took or directed no purposeful actions toward Washington or the United States").

Because the proffered declarations do not support the conclusion that ZF Germany had no involvement at all, Chief Magistrate Judge Abrams clearly erred in holding the declarations "refuted any involvement by ZF Germany."

**D.    Chief Magistrate Judge Abrams' holding that the Court had previously addressed and declined to order discovery based on Plaintiffs' jurisdictional theory was contrary to law.**

Chief Magistrate Judge Abrams's Order, ECF 546 at 6:

> Plaintiffs' evidence that they argue tends to establish the need for jurisdictional discovery consists of the copyright mark attributed to ZF Germany in the footer of all three of the NHTSA presentations, and the fact that ZF Germany's corporate name appears on the title page of two of the three presentations. (JS at 8 (citing Exs. 2, 3, 4)). They conclusorily allege that these marks represent "clear hallmarks of ZF Germany's approval and control of the contents of these misleading presentations." (*Id.* at 8-9). These appear to be much the same allegations previously considered by the District Judge in connection with ZF Germany's previous motion to dismiss, and for which the

District Judge did not find that personal jurisdiction had been sufficiently alleged, and no reason to order jurisdictional discovery.

<u>Plaintiffs' Objection:</u>

Plaintiffs respectfully object to Chief Magistrate Judge Abrams' Order as contrary to law because it is premised on the incorrect conclusion that the Court's prior decision on Defendants' motions to dismiss held that ZF Germany's copyrighted documents submitted to NHTSA and other allegations in the complaint provide an insufficient basis to order jurisdictional discovery as to ZF Germany. This aspect of the Order is subject to *de novo* review because it relates to the legal interpretation of this Court's decision on the first motion to dismiss.

While Plaintiffs did previously allege that ZF Germany held a copyright in the presentations, the Court found Plaintiffs had failed to plead purposeful direction supporting personal jurisdiction—not because such facts were insufficient to warrant jurisdictional discovery—but solely because Plaintiffs grouped all the ZF Defendants together as "'ZF TRW,' which is comprised of seven distinct corporate entities." ECF 396 at 44. This issue has been remedied with a more detailed amended complaint that clarifies the alleged roles of each Defendant. Indeed, in another recent opinion, Chief Magistrate Judge Abrams held there was a reasonable possibility that the amended complaint fixed the group pleading problem. *See* ECF 517.

## VI. <u>CONCLUSION</u>

Because Chief Magistrate Judge Abrams gave no weight to Plaintiffs' uncontroverted allegations in contravention of the applicable legal standard and clearly erred by making factual findings in favor of ZF Germany without appropriate evidentiary support, the Court should vacate his ruling and permit jurisdictional discovery against ZF Germany.

Dated: August 29, 2022

Respectfully submitted,

/s/*David Stellings*

David Stellings

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com
Katherine McBride
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
Phong-Chau G. Nguyen (SBN 286789)
pgnguyen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

BARON & BUDD, P.C.
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Elizabeth Smiley (SBN 318165)
esmiley@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
Facsimile: 818-986-9698

*Co-Lead Counsel for Plaintiffs*

2456585.1

- 21 -

**CERTIFICATE OF SERVICE**

I certify that on August 29, 2022, a copy of the foregoing **Plaintiffs'
Memorandum of Points and Authorities in Support of Their Objections to Chief
Magistrate Judge Abrams's Order (ECF 546)** was served electronically through the
Court's electronic filing system upon all Parties appearing on the Court's ECF
service list. Plaintiffs will email unredacted versions of the Opposition and twelve
exhibits to all parties.

DATED: August 29, 2022          */s/ David Stellings*
                                 David Stellings