KIRKLAND & ELLIS LLP
Matthew T. Regan, P.C. (*pro hac vice*)
mregan@kirkland.com
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

*Counsel for ZF Active Safety and Electronics US LLC, ZF Automotive US Inc., ZF Passive Safety Systems US Inc., and ZF TRW Automotive Holdings Corp.*

(additional counsel listed below)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: ZF-TRW Airbag Control Units Products Liability Litigation | Case No.: 2:19-ml-02905-JAK-PLA |
| ALL CASES | MDL No. 2905 |
| | John A. Kronstadt (U.S.D.J.) |
| | Paul L. Abrams (U.S.M.J.) |
| | **JOINT STATUS REPORT FOR SEPTEMBER 12, 2022 STATUS CONFERENCE** |

Pursuant to the Court's Order of June 21, 2022 (ECF 504), the parties submit this Joint Status Report in advance of the September 12, 2022 status conference.  The parties identify below the primary issues they believe merit the Court's attention but will be prepared to discuss other items as the Court desires.[1]

## I.   Mediations Between Plaintiffs and the Toyota, Mitsubishi, and Hyundai-Kia Defendants

On June 7, 2022, the Court appointed Pat Juneau to serve as Settlement Special Master. *See* ECF 493. Since then, Plaintiffs, the Toyota Defendants, the Mitsubishi Defendants, and the Hyundai-Kia Defendants have held several meetings with Mr. Juneau to discuss the parameters of a possible settlement structure. The parties have agreed to continue their discussions. Specifically, Mr. Juneau will mediate in-person settlement discussions between Plaintiffs and each of these Defendant groups in the coming weeks. Plaintiffs will mediate with the Mitsubishi Defendants on September 8, 2022, the Toyota Defendants on September 20, 2022, and the Hyundai-Kia Defendants on October 19, 2022.

In light of these ongoing discussions, which may moot the need for further adversarial motion practice, the participating parties agree that the Court should extend the deadlines for the Mitsubishi, Toyota, and Hyundai-Kia Defendants' motions to dismiss by sixty days. Under this proposal, the following briefing schedule would apply:

| November 22, 2022 | Deadline for Defendants to file Motions to Dismiss |
| January 23, 2023 | Deadline for Plaintiffs to file Oppositions to Motions to Dismiss |
| March 9, 2023 | Deadline for Defendants to file Replies in support of Motions to Dismiss |

## II.   Rule 12(B) Briefing Schedule

For briefing on the motions to dismiss filed by the ZF Defendants, Hyundai Mobis, Co., Ltd., the Honda Defendants, FCA US LLC, and STMicroelectronics, Inc., the Court

---

[1] Consistent with the directive on the Court's website, the Parties understand that the September 12, 2022 status conference will proceed by Zoom.

previously set October 10, 2022 as the deadline for Plaintiffs' opposition. Because this date is a Court holiday, the parties propose extending this deadline and the deadline for Defendants' reply by one day. Under this proposal, the deadline for Plaintiffs' opposition would be October 11, 2022, and the deadline for Defendants' reply would be November 16, 2022.

## III.    Structure of Plaintiffs' Opposition to Defendants' Rule 12 Motions

### A.    Plaintiffs' Position

On August 2, 2022, Defendants filed five individual motions to dismiss and one joint motion to dismiss. The briefs alone span 189 pages. The joint brief includes at least 5 pages of single-spaced text (and several more if the 21 footnotes are counted). *See* ECF 530, at 4-5, 28-31. To reduce the burden on the Court, Plaintiffs request leave to file a single omnibus response with the same page limit as the cumulative total page limit for all of Defendants' briefs. To be clear, Plaintiffs are not requesting an extension of their page limit; Plaintiffs seek only to reorganize the structure of their briefing so they may file a single, comprehensive opposition brief rather than 6 separate briefs with the same aggregate page length.

Consolidating Plaintiffs' response to Defendants' arguments into one brief will reduce duplication of overlapping arguments across Defendants' joint and individual briefs. For example, several Defendants' individual briefs largely rehash the same points made in the joint brief, including their arguments about particularity under Rule 9(b),[2] their challenges to the Court's prior holding that "a legitimate business purpose does not shield [Defendants] from RICO liability when such a purpose is pursued through illegitimate

---

[2] *Compare* ECF 530 at 15-18 *with* ECF 527 at 14-18, ECF 528 at 15-20, ECF 529-1 at 14-18, ECF 531 at 6, and ECF 532 at 9-11, 15-18 (all Defendants rehashing similar 9(b) particularity arguments after raising the same point in the joint brief). Defendants effectively concede these arguments are duplicative below by offering an example of ZF's purportedly unique argument given its role as a component manufacturer. This argument only confirms the repetitive nature of Defendants' briefs, because Mobis and ST make the same argument.

means" (ECF 396 at 62),[3] and their statute-of-limitations defenses to Plaintiffs' warranty claims.[4] This duplication of points in the joint brief defeats the purpose of a joint brief and is contrary to this Court's prior guidance. *See* 6/15/2020 Tr. 24:5-7 (The Court: "to the extent there are individual issues that are being made, those briefs should not repeat what's in the 50-page [joint] brief."); 2/24/2020 H'rg Tr. 44:20-24 (The Court: "the supplemental briefs should be focused not on: I want to add to what they said – we said in the joint brief, I want to add this special thought about that. I think that should be in one brief.").

Significant overlap in Defendants' arguments also extends across the individual briefs. Several of these briefs raise common issues that would have been more efficiently raised in a joint filing, including whether:

- Plaintiffs needed to plead reliance with greater particularity,[5]

- Plaintiffs may plead knowledge generally under Rule 9(b),[6]

- Plaintiffs alleged false vehicle labels and advertisements with sufficient particularity,[7]

---

[3] *Compare* ECF 528 at 9-13 (arguing "legitimate business purpose" of the alleged enterprise) *with* ECF 530 at 6-13 (ZF rehashing argument that purportedly "legitimate" activities are beyond the reach of mail fraud and RICO); ECF 531 at 12-13 (same arguments about "legitimate" conduct by ST). Insofar as ZF asserts these arguments differ because one attacks the enterprise element and another attacks predicate acts, Plaintiffs will have common responses to both points. For example, for both of these very similar arguments, Plaintiffs will argue that a scheme of defrauding consumers about a dangerous safety defect is not "legitimate."

[4] *Compare* ECF 530 at 33-36, ECF 527 at 20-22, and ECF 532 at 14-15.

[5] *Compare* ECF 528 at 27-30, ECF 528 at 21-24, ECF 531 at 23-25, 27, ECF 532 at 18.

[6] *Compare* ECF 527 at 19-20 *with* ECF 532 at 18-21. In asserting that the knowledge of each Defendant group presents some individual issues, Defendants fail to address that common legal arguments about Rule 9's lenient standard for pleading state of mind will apply to all these arguments. *See* Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[7] *Compare* ECF 527 at 14-15 *with* ECF 532 at 9-11.

- anyone other than the automobile dealers who directly sold or leased Class Vehicles to Plaintiffs can be liable for Defendants' fraud,[8]
- manufacturers that do not directly sell their products to Plaintiffs can have duties to disclose a known safety defect,[9]
- implied warranty claims require privity,[10]
- express warranty claims required presentment of the vehicles for repair,[11]
- Plaintiffs may pursue unjust enrichment claims when an express warranty arguably also applies,[12]
- Plaintiffs plead a cognizable injury under Article III,[13] and

---

[8] *Compare* ECF 527, 26-27; ECF 528 at 29-30; ECF 531 at 25-27. Defendants' suggestion that parts suppliers are differently situated from vehicle manufacturers again ignores that Plaintiffs will have common responses as to both groups: i.e., that role in the supply chain does not matter where, as here, all of the Defendants knew about the dangerous safety defect and the widespread practice of their consumer-facing co-conspirator Defendants misrepresenting the safety of Class Vehicles.

[9] *Compare* ECF 527 at 12-14; ECF 528 at 16, 26-29; ECF 531 at 11-12, 26-27; ECF 532 at 21-24; ECF 529-1 at 13-14

[10] *Compare* ECF 527 at 20-22 *with* ECF 530 at 22-25.

[11] *Compare* ECF 527 at 22-23 *with* ECF 532 at 14. Insofar as FCA and Honda appear to suggest these warranty defenses vary because different contracts apply, they ignore the language of these contracts is very similar and therefore raises common issues.

[12] *Compare* ECF 527 at 24-25 *with* ECF 532 at 25. Defendants' suggestion that their unjust enrichment arguments differ because different state laws apply ignores that, while "[t]he particular elements of unjust enrichment may vary somewhat from state to state, . . . the essence of such a claim is that it requires plaintiffs to allege facts showing that defendants 'received a benefit and under the circumstances of the case, retention of the benefit would be unjust.'" *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 709 (E.D. Mich. 2020) (applying common analysis to unjust enrichment claims under several state laws).

[13] *Compare* ECF 527 at 10-11 *with* ECF 532 at 6-8. Defendants' suggestion that their standing arguments present slightly different issues again ignores that Plaintiffs will have the common response that the Court has already held economic injury at the point of purchase is an injury in fact. ECF 396 at 83-86.

- shipments of critical parts made in furtherance of a fraudulent scheme can constitute mail fraud.[14]

Because Plaintiffs' response to these very similar arguments will inevitably include common points and authorities, an omnibus brief will more efficiently organize the issues and aid the Court's review. Indeed, as this Court has previously observed: "I don't want to read multiple briefs saying the same thing. It's just not efficient, especially if the goal is to keep things moving. I'd like to read those arguments once . . . ." 2/24/2020 H'rg Tr. 44:16-19.

A single omnibus opposition brief will also aid the Court because Plaintiffs would strive to deal with all the disputed elements of each claim together. This will allow the Court to fully consider the elements of each claim together, which is superior to the route Defendants chose of separately discussing the elements of legal claims across several separate briefs. *See, e.g.*, Joint Br. 6-13 (addressing only the enterprise and conspiracy elements of the RICO claims and deferring all other RICO issues to other briefs). Notably, the Court's thorough opinion on the first motion to dismiss presented the issues in precisely this manner (i.e., on a claim by claim basis). *See* ECF 396.

Allowing Plaintiffs to consolidate their response will not prejudice Defendants, and Plaintiffs are not seeking an extension of the existing page limit. Indeed, FCA and several other automakers did not oppose a very similar consolidated briefing proposal in the similar *Takata* airbag litigation. *See* Ex. 1 (10/2/18 Unopposed Motion). Moreover, to assist the parties' and the Court's review of their proposed filing, Plaintiffs will file a chart that identifies where their omnibus response addresses the argument in each of the Defendants' six briefs.

Plaintiffs met and conferred with Defendants regarding this proposal, and offered Defendants the option to reallocate their cumulative page limits on reply to a longer joint reply, if they wish. Plaintiffs also informed Defendants they were willing to extend the

---

[14] *Compare* ECF 528 at 15-17, ECF 531 at 16-17, and ECF 529-1 at 14-16.

deadline for their replies if the shift to an omnibus response required further negotiations amongst the five movant Defendant groups. Defendants nonetheless object to an omnibus response by Plaintiffs. When asked why during the meet and confer process, Defendants did not identify any actual prejudice. Instead, they relied on Plaintiffs' prior agreement to division of pages among joint and individual briefs that Defendants proposed in early June of this year. Plaintiffs previously agreed to Defendants' page limit proposal based on the good faith assumption that Defendants would not insist on separately raising a litany of overlapping arguments that are plainly better suited for a joint brief. Because the efficiencies of an omnibus response became clear only upon receipt of Defendants' duplicative arguments, Plaintiffs are well within their rights to revisit the allocation of their page limits now.

Defendants' complaint that Plaintiffs' proposal will enable them to "spend nearly unlimited pages on favored arguments" is meritless because Plaintiffs' proposal does not call for "unlimited pages." Instead, Plaintiffs would have the same page limit that Defendants had (200 pages). And even under the current briefing structure, Plaintiffs already have the right to address Defendants' arguments however they wish in their separate briefs.[15] The only question before the Court then is whether the Court prefers a single streamlined omnibus response brief (which Plaintiffs propose) over six separate briefs. As explained above, the Court has already answered this question: the Court prefers joint briefs when they are possible. Because of the overlapping nature of Defendants' arguments, a single response brief is possible here and will be easier for the Court to analyze than separate briefs.

Defendants' further complaint that Plaintiffs' proposal will force "Defendants to disentangle Plaintiffs' enormous would-be opposition on reply" is also meritless. Again,

---

[15] Defendants cite no legal authority supporting their assumption that Plaintiffs have to use their joint brief to only address points Defendants chose to make in the joint brief. Defendants also ignore that Plaintiffs can respond to overlapping arguments under the current structure by addressing an argument once and cross-referencing.

the two proposals before the Court call for equally "enormous" briefs. And it was Defendants, *not* Plaintiffs, who claimed they needed a cumulative limit of 200 pages and required Plaintiffs to "disentangle" 189 pages of largely duplicative points. Plaintiffs did so in less than a month and concluded after their analysis of the overlapping briefs that an omnibus response will streamline the presentation for the Court and the parties.

In any event, Defendants fail to explain how "disentangling" one brief is any harder than "disentangling" six briefs with overlapping arguments. The Defendants have each retained very elite law firms. It is not unduly difficult for them to respond to a single brief, particularly when Plaintiffs have committed to provide a chart that maps out where their omnibus brief addresses the arguments in each brief by the Defense, and offered to stipulate to a reasonable extension of Defendants' deadline for a reply brief. Although Defendants never made any proposal for an extended reply brief deadline during the meet and confer process, Plaintiffs will stand by this good faith offer if the Court grants Plaintiffs' request for an omnibus brief over Defendants' objection.

Finally, Defendants cannot seriously contend that their cumulative limit of 200 pages of briefing prevented any of them from pursuing a potentially meritorious grounds for dismissal. Defendants used these pages to raise a litany of arguments, including several that the Court previously addressed and rejected in the first round of motion to dismiss briefing. *See* Joint *Compare* ECF 530 at 6-13 *with* ECF 396 at 60-62 (Defendants revisiting the Court's holding on the alleged RICO enterprises); ECF 532 at 9-11 *with* ECF 396 at 69-70 (FCA revisiting the Court's holding on Monroney labels); ECF 532 at 6-8 *with* ECF 396 at 83-85 (FCA revisiting the Court's holding on Article III standing).

For the foregoing reasons, the Court should permit Plaintiffs to file an omnibus response to Defendants' motions to dismiss. The page limit should be equal to 200 pages, which was the cumulative page limit that applied to Defendants' opening briefs.

### B.     Defendants' Position

The Court should reject Plaintiffs' request to modify the agreed-upon format for motion-to-dismiss briefing mid-stream.   After this Court dismissed Plaintiffs' prior

complaint in part under Rule 9(b) because Plaintiffs lumped all Defendants together, Plaintiffs now seek omnibus briefing that will allow them to lump all Defendants' arguments together in their response to motions to dismiss.  Though Plaintiffs have, at every turn, tried to group all Defendants together, each Defendant is entitled to make its own arguments for dismissal—a format Plaintiffs already agreed to.

Specifically, after Plaintiffs filed their Consolidated Amended Class Action Complaint (in which they voluntarily chose to re-assert claims against eight different Defendant groups), ECF 477, the parties met and conferred regarding the format that would govern the current round of briefing.  After those discussions, Plaintiffs agreed on a format, *see* ECF 494 (Joint Stipulation); the Court entered an order ratifying that format, ECF 504; and Defendants (with considerable effort and cooperation) complied with that format in filing their recent motions, ECF 527–32.  That format is identical (albeit with modified page limits) to that which the parties followed in the last round of motion-to-dismiss briefing in 2020.

Now, however, after receiving Defendants' recent briefs and despite their earlier agreement and the Court's order, Plaintiffs propose simply ignoring the set format and page limits, and filing one consolidated ***200-page*** opposition, allowing them to spend nearly unlimited pages on favored arguments and leaving it to Defendants to disentangle Plaintiffs' enormous would-be opposition on reply.  This approach is unjustified, inappropriate, and would be unfair.

***First***, Plaintiffs overstate the overlap in Defendants' various briefs, including between (i) Defendants' joint brief and the respective individual briefs, and (ii) across the Defendants' various individual briefs.  As to the supposed overlap between the joint brief and individual Defendant briefs, Plaintiffs wrongly assert above that "several Defendants' individual briefs . . . rehash the same points made in the joint brief."  For this point, Plaintiffs cite as supposed examples (a) Defendants' purported "challenges to the Court's prior holding that 'a legitimate business purpose does not shield [Defendants] from RICO liability when such a purpose is pursued through illegitimate means,'" (b) Honda and FCA

purportedly repeating "statute-of-limitations defenses to Plaintiffs' warranty claims," and (c) other Defendants allegedly making duplicative Rule 9(b) particularity arguments. *See* supra at 3–4. Each of these examples is meritless:

- The Court's prior opinion held that "a legitimate business purpose does not shield [Defendants] from RICO liability when such a purpose is pursued through illegitimate means" in the context of discussing whether RICO enterprises were adequately pled. *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2022 WL 522484, at \*48 (C.D. Cal. Feb. 9, 2022) (citation omitted). But ZF and ST's individual briefs do not address RICO's "enterprise" requirement or repeat the joint brief. Instead, they only discuss whether Plaintiffs have failed to plead *predicate acts*, an entirely different RICO requirement. *See*, *e.g.*, ECF 528 (ZF Brief); ECF 531 (ST Brief); *see also In re ZF-TRW*, 2022 WL 522484, at \*49–59 (dismissing RICO claims against ZF for this exact reason last time).

- Honda's warranty-limitations argument in its individual brief was not a simple "rehashing" of the joint brief's more general statute-of-limitations discussion; instead, Honda focused on explaining the terms of its individual express warranty, and how that express warranty modifies the time limits that govern the assertion of implied warranty claims—an argument specific to Honda, appropriate for Honda's individual brief, and not "duplicative" of the limited framework provided in the joint one. *See* ECF 527 at 20–22 (Honda Brief). Likewise, the implied warranty argument in FCA's individual brief is only a paragraph long, not some extended "duplication" of the joint brief that would justify departing from the agreed-upon briefing format. ECF 532 at 14–15.

- Plaintiffs' concerns about duplicative Rule 9(b) "particularity" arguments are similarly overstated. While the Defendants collectively addressed Plaintiffs' failure to plead their fraud-based claims with particularity in the joint brief, Plaintiffs ignore that Defendants' particularity arguments are not all the same, which required further discussion in the individual briefs. This was especially necessary because different Defendants provide different information (if any) to consumers; ZF, for example, argues that consumers were not exposed to its information because it was only a component-parts manufacturer, ECF 528 at 23–24—an argument appropriate for ZF, but not appropriate for a joint brief submitted on behalf of many differently-situated Defendants. Other Defendants are likewise entitled to have their particularity arguments presented on their individual merits, not—as Plaintiffs now belatedly propose—glossed over via omnibus briefs that lump multiple Defendants together.

Similarly, Plaintiffs exaggerate the extent of overlap across topics in Defendants' individual briefing.  For instance, Plaintiffs contend that both Honda's and FCA's briefs address the requirement of "knowledge."  *See supra* at 4–5 (citing ECF 527 at 19–20 and ECF 532 at 18-21).  But Plaintiffs ignore that those Defendants focus their respective arguments on the allegations unique to each Vehicle Manufacturer, such as FCA's recall or testing done on Honda vehicles.  ECF 527 at 19–20; ECF 532 at 18–21.  These arguments are not the same and were necessarily dealt with in separate briefs by separate parties represented by separate counsel.  It makes no difference that Plaintiffs believe they will have a "common response" to these arguments.  Plaintiffs are free to offer a common response if they want, just as Defendants were free to argue the allegations unique to each Vehicle Manufacturer raise unique, defendant-specific issues.

Plaintiffs also argue that the issue of whether "anyone other than the automobile dealers who directly sold or leased Class Vehicles to Plaintiffs can be liable for Defendants' fraud" is overlapping.  But this vague construction elides the arguments actually made in the individual briefs, an analysis of which demonstrates why they were necessarily made Defendant-by-Defendant.  For example, Honda's argument that Plaintiffs have failed to plead various conduct against the "Honda Motor" and "Honda Development" as opposed to the "American Honda" Defendants, ECF 527 at 26–27, was appropriate for Honda's individual brief and was not, for instance, duplicative of ST Inc.'s argument that it is not responsible for the conduct of other parties because it had no knowledge of any representations being made to any consumers by virtue of its distance from any consumer in the supply and communication chain, ECF 531 at 10–11.

Other bulleted items also miss the mark.  As just a few examples:

- Whether "express warranty claims required presentment of the vehicles for repair" is not an overlapping issue; Honda's brief specifically relies on the presentment "required under [Honda's] limited warranty," ECF 527 at 23, whereas FCA's argument relies in part on its own warranties' individual terms, ECF 532 at 13.

- Honda's and FCA's unjust enrichment arguments are not duplicative, as they cite the laws of different states, with Honda also explaining that unjust enrichment claims against it fail because several Honda Plaintiffs bought their vehicles "on the used car market." ECF 527 at 24; ECF 532 at 25.

- Honda's Article III standing argument (made against only one particular Plaintiff) is likewise different from FCA's, with Honda centering its argument on the unique fact that the Plaintiff in question totaled his vehicle (and so cannot, for example, claim resale-value as an injury). ECF 527 at 11.

More fundamentally, Plaintiffs center on a series of legal questions in their bulleted list, when the individual briefs focus on the application of that law to the specific facts pleaded about each Defendant group. Whether "Plaintiffs may plead knowledge generally under Rule 9(b)" is not the question implicated by Defendants' briefs. Rather, whether Plaintiffs have pleaded facts sufficient about each individual Defendant's knowledge *is*— an inquiry and argument that cannot be handled in omnibus fashion.

In short, Defendants' various individual briefs were used precisely how the parties envisioned when Plaintiffs agreed to the format for motion-to-dismiss briefing: to address Defendant-specific issues and allegations not appropriate for Defendants' joint brief encompassing six different Defendant groups. Yet having expressly agreed to "file separate oppositions to each Defendant Group's supplemental briefs," ECF 494 § II.2, Plaintiffs now wish to change course. No circumstances have changed to warrant modifying the briefing schedule, and such an about-face is neither necessary nor justified.

***Second***, Plaintiffs are wrong that their proposal to file a single 200-page proposal "will not prejudice Defendants," because "Plaintiffs are not seeking an extension of the existing page limit." *See supra* at 6. Defendants understand Plaintiffs to calculate that "limit" based on the current briefing order's allowance that they may file (i) a 50-page opposition to Defendants' joint brief, *see* ECF 494 § II.2.a (permitting "a brief of no more than 50 pages in opposition to Defendants' joint brief"), plus (ii) a collective 150 pages (five times 30 pages) of opposition briefing in opposition to the five Defendant groups who filed individual briefs on August 2 (ZF, ST, Honda, FCA, and Hyundai Mobis), *see* ECF

494 § II.2.b (allowing Plaintiffs to file "separate oppositions to each Defendant Group's supplemental briefs," which "shall not exceed 30 pages per Defendant Group").[16]   But focusing only on the total number of pages afforded by the Court's briefing order ignores the format of that order—which, it bears repeating, was based entirely on what the parties themselves agreed to.

Plaintiffs' proposal would permit them to shift enormous numbers of pages to whatever arguments or Defendants they are most concerned about—notwithstanding the limitations Defendants faced in preparing their respective briefs.  For example, Defendants briefed RICO enterprise issues within the confines of their 50-page joint brief (which also needed to discuss other issues), but Plaintiffs' proposal would permit them a much longer response on that issue.  That is unfair.  Likewise, whereas each Defendant group had at most 80 collective pages to assert arguments (50 pages in the joint brief[17] and 30 pages in that Defendant group's individual brief), Plaintiffs' proposal would allow them to use many more pages (well in excess of 100) addressing arguments implicating a particular Defendant while giving shorter shrift (at Plaintiffs' discretion) to other Defendants.  Again, this is not fair.  Finally, as a logistical matter, Plaintiffs' proposal does nothing to reduce the overall amount of briefing and would put the burden on Defendants to disentangle which portions of an enormous 200-page opposition applied to them, eliminating the clarity provided by the current Defendant-by-Defendant approach, and creating more work for both Defendants and the Court.

---

[16]   A sixth defendant group, representing the Mitsubishi entities, joined the joint brief but did not file its individual brief because it is part of the Settlement Special Master process.

[17]   In the case of some Defendants, they did not even get the benefit of the full 50 pages in the joint brief, as certain arguments in that brief only concerned certain claims (such as warranty claims) implicating only certain types of Defendants (like the vehicle manufacturer defendants).  Yet all Defendants went along with such an approach as a compromise because that is what the Court's order called for.  To change the rules for Plaintiffs mid-stream would unfairly benefit Plaintiffs.

**IV.    Sealing of the Complaint and Plaintiffs' Forthcoming Opposition(s) to the Motions to Dismiss**

Prior to filing their opposition(s) to Defendants' motions to dismiss, Plaintiffs seek the Court's guidance on how to proceed with a potential application to seal in light of the pendency of STMicroelectronics, Inc.'s pending motion to seal portions of the amended complaint. *See* ECF 503.

By way of background, Plaintiffs originally filed the entire amended complaint under seal pursuant to a stipulation with the parties and this Court's Order. *See* ECF 465. This approach allowed all the Defendants time to review the pleading and determine which portions they would move to seal. Ultimately, only STMicroelectronics, Inc. moved to seal any part of the amended complaint.

Although it is clear that at least some part of the amended complaint will become publicly available after the Court decides the pending motion to seal, it remains unclear precisely which parts will become public until that motion is decided. Because Plaintiffs are likely to quote from portions of the amended complaint that are presently under seal during the pendency of STMicroelectronics, Inc.'s motion, and because they cannot know precisely which portions may be sealed until a decision on that issue, they respectfully ask for the Court's guidance as to how they should file their opposition(s). For example, Plaintiffs are willing to temporarily file their opposition briefing under seal and to re-file their brief(s) with appropriate redactions after the Court decides the pending motion to seal portions of the amended complaint, if that is the Court's preference.

Defendants take no position on Plaintiffs' request for guidance.

DATED: September 7, 2022

Respectfully submitted,

*/s/ Ronald Tellis*

BARON & BUDD, P.C.
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
Shannon Royster (SBN 314126)
sroyster@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com
Katherine McBride (*pro hac vice*)
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212-355-9500

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
Phong-Chau G. Nguyen (SBN 286789)
pgnguyen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000

*Co-Lead Counsel for Plaintiffs*

1

*/s/ Matthew T. Regan, P.C.*

2   KIRKLAND & ELLIS LLP
    Mark C. Holscher (SBN 139582)
3   mark.holscher@kirkland.com
    555 South Flower Street
4   Los Angeles, CA 90071
    Telephone: 213-680-8400
5   Facsimile: 213-680-8500
6

7   Tammy A. Tsoumas (SBN 250487)
    tammy.tsoumas@kirkland.com
8   2049 Century Park East, Suite 3700
    Los Angeles, CA 90067
9   Telephone: 310-552-4200
    Facsimile: 310-552-5900
10

11

12  Matthew T. Regan, P.C. (*pro hac vice*)
    mregan@kirkland.com
13  300 North LaSalle
    Chicago, IL 60654
14  Telephone: 312-862-2000
    Facsimile: 312-862-2200
15

16

17  Judson Brown, P.C. (*pro hac vice*)
    jdbrown@kirkland.com
18  Michael A. Glick (*pro hac vice*)
    michael.glick@kirkland.com
19  Jason Wilcox (*pro hac vice*)
    jason.wilcox@kirkland.com
20  1301 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
21  Telephone: 202-389-5000
    Facsimile: 202-389-5200
22

23

24  *Counsel for ZF Active Safety and Electronics*
    *US LLC, ZF Automotive US Inc., ZF Passive*
25  *Safety Systems US Inc., and ZF TRW*
    *Automotive Holdings Corp.*
26

27

28

16

*/s/ Robert P. Debelak III*

McDOWELL HETHERINGTON LLP
Jodi K. Swick (SBN 228634)
jodi.swick@mhllp.com
1 Kaiser Plaza, Ste. 340
Oakland, CA 94612
Telephone: 510-628-2145
Facsimile: 510-628-2146

Colleen T. Flaherty (SBN 327563)
colleen.flaherty@mhllp.com
1055 E. Colorado Blvd., Ste. 500
Pasadena, CA 91106
Telephone: 213-631-4059
Facsimile: 510-628-2146

Thomas F.A. Hetherington (*pro hac vice*)
tom.hetherington@mhllp.com
Kendall J. Burr (*pro hac vice*)
kendall.burr@mhllp.com
Robert P. Debelak III (*pro hac vice*)
bobby.debelak@mhllp.com
1001 Fannin St., Ste. 2700
Houston, TX 77002
Telephone: 713-337-5580
Facsimile: 713-337-8850

Emily K. Felix (*pro hac vice*)
emily.felix@mhllp.com
1000 Ballpark Way, Ste. 209
Arlington, TX 76011
Telephone: 817-635-7300
Facsimile: 817-635-7308

*Counsel for STMicroelectronics, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Eric S. Mattson*

SIDLEY AUSTIN LLP
Lisa M. Gilford (SBN 171641)
lgilford@sidley.com
Stacy Horth-Neubert (SBN 214565)
shorthneubert@sidley.com
555 West Fifth Street
Los Angeles, CA 90013
Telephone: 213-896-6000
Facsimile: 213-896-6600

Eric S. Mattson (*pro hac vice*)
emattson@sidley.com
J. Simone Jones (*pro hac vice*)
simone.jones@sidley.com
One South Dearborn Street
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036

*Counsel for Honda Motor Co., Ltd., American
Honda Motor Co., Inc., and Honda
Development and Manufacturing of America,
LLC*

*/s/ Douglas W. Robinson*

PALMIERI, TYLER, WIENER, WILHELM & WALDRON LLP
Douglas W. Robinson (SBN 255909)
drobinson@ptwww.com
Erica M. Sorosky (SBN 251314)
esorosky@ptwww.com
Christopher J. Green (SBN 295874)
cgreen@ptwww.com
1900 Main Street, Suite 700
Irvine, CA 92614
Telephone: 949-851-9400
Facsimile: 949-825-5401

*Counsel for Mitsubishi Motors Corporation and Mitsubishi Motors North America, Inc.*


*/s/ Stephen A. D'Aunoy*

THOMPSON COBURN LLP
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy
kwisniewski@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
One US Bank Plaza
St. Louis, MO 63101
Telephone: 314-552-6000
Facsimile: 314-552-7000

Kacey R. Riccomini (SBN 292340)
kriccomini@thompsoncoburn.com
2029 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310-282-2500
Facsimile: 310-282-2501

*Counsel for FCA US LLC*

|  |  |
|---|---|
| 1 | _/s/ Matthew J. Tako_ |
| 2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| 3 | Lance A. Etcheverry (SBN 199916) |
| 4 | lance.etcheverry@skadden.com |
| 5 | Caroline Van Ness (SBN 281675) caroline.vanness@skadden.com |
| 6 | Matthew J. Tako (SBN 307013) |
| 7 | matthew.tako@skadden.com 525 University Avenue, Suite 1400 |
| 8 | Palo Alto, CA 94301 |

/s/ Matthew J. Tako

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Lance A. Etcheverry (SBN 199916)
lance.etcheverry@skadden.com
Caroline Van Ness (SBN 281675)
caroline.vanness@skadden.com
Matthew J. Tako (SBN 307013)
matthew.tako@skadden.com
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: 650-470-4500
Facsimile: 650-470-4570

John Beisner (SBN 81571)
john.beisner@skadden.com
1440 New York Avenue N.W.
Washington, D.C. 20005
Telephone: 202-371-7000
Facsimile: 202-393-5760

_Counsel for Hyundai Motor Corporation,_
_Hyundai Motor America, Inc., Kia Corp., and_
_Kia America, Inc._

*/s/ Matthew A. Goldberg*

DLA PIPER LLP (US)
Christopher M. Young (SBN 163319)
christopher.young@dlapiper.com
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
Telephone: 310-595-3000
Facsimile: 310-595-3300

Matthew A. Goldberg (*pro hac vice*)
mathew.goldberg@dlapiper.com
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: 215-656-3300
Facsimile: 215-656-3301

*Counsel for Hyundai Mobis Co., Ltd.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Michael Mallow*

SHOOK, HARDY & BACON LLP
Michael Mallow
mmallow@shb.com
Rachel Straus
rstraus@shb.com
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: 424-285-8330
Facsimile: 424-204-9093

Amir Nassihi
anassihi@shb.com
One Montgomery, Suite 2600
San Francisco, CA 94104
Telephone: 415-544-1900
Facsimile: 415-391-0281

BOWMAN AND BROOKE LLP
Vincent Galvin (SBN 104448)
vincent.galvin@bowmanandbrooke.com
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: 408-279-5393
Facsimile: 408-279-5845

Mark V. Berry (SBN 70162)
mark.berry@bowmanandbrooke.com
970 West 190th Street, Suite 700
Torrance, CA 90502
Telephone: 310-768-3068
Facsimile: 310-719-1019

*Counsel for Toyota Motor North America, Inc.,
Toyota Motor Sales, U.S.A., Inc., Toyota Motor
Engineering & Manufacturing North America,
Inc.*

**SIGNATURE OF CERTIFICATION**

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: September 7, 2022          */s/ Matthew Regan*
                                   Matthew Regan

**CERTIFICATE OF SERVICE**

I certify that on September 7, 2022, a copy of the foregoing **JOINT STATUS
REPORT FOR SEPTEMBER 12, 2022 STATUS CONFERENCE** was served
electronically through the Court's electronic filing system upon all Parties appearing on
the Court's ECF service list.


DATED: September 7, 2022          */s/ Matthew Regan*
                                 Matthew Regan