David S. Stellings (*pro hac vice*)
dstellings@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Co-Lead Counsel for Plaintiffs*

*Plaintiffs' Steering Committee Members Listed on Signature Page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re ZF-TRW Airbag Control Units Products Liability Litigation*<br><br>ALL CASES | MDL No. 2905<br><br>Case No. 2:19-ml-02905-JAK-FFM<br><br>**VOLUME THREE OF CONSOLIDATED AMENDED CLASS ACTION COMPLAINT (STATE COUNTS)** |

# **TABLE OF CONTENTS**

VII. Counts (Continued from Volume II) ..............................................................824

    B.    State-Specific Claims ...................................................................824

        1.    Alabama ...............................................................824

        2.    Arizona ................................................................847

        3.    California ..............................................................865

        4.    Colorado ..............................................................900

        5.    Connecticut ..........................................................921

        6.    Florida .................................................................939

        7.    Illinois .................................................................966

        8.    Indiana ................................................................991

        9.    Maryland ............................................................1012

        10.    Massachusetts ......................................................1034

        11.    Michigan ............................................................1054

        12.    Minnesota ...........................................................1073

        13.    Missouri .............................................................1101

        14.    Nevada ...............................................................1121

        15.    New Jersey ..........................................................1141

        16.    New York ............................................................1158

        17.    North Carolina .....................................................1178

        18.    Oklahoma ...........................................................1197

        19.    Pennsylvania .......................................................1217

        20.    South Carolina .....................................................1240

21.  South Dakota ................................................................ 1260

22.  Texas ............................................................................. 1279

23.  Washington .................................................................... 1302

24.  Wisconsin ...................................................................... 1317

VIII.  PRAYER FOR RELIEF ............................................................ 1333

IX.   DEMAND FOR JURY TRIAL ................................................. 1335

# VII.   Counts (Continued from Volume II)

**B.     State-Specific Claims**

    **1.     Alabama**

        **a.     Alabama Count 1: Breach of Express Warranty (Ala. Code §§ 7-2-313 and 7-2a-210) Against Honda Japan and Honda USA**

2207. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2208. Plaintiff Sigfredo Rubio (hereinafter, the "Alabama Plaintiff") brings this count individually and on behalf of members of the Alabama State Class who purchased or leased Honda Class Vehicles, against Honda Japan and Honda USA.

2209. Honda Japan and Honda USA are and were at all relevant times "merchants" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), "sellers" of motor vehicles under § 7-2-103(1)(d).

2210. With respect to leases, Honda Japan and Honda USA are and were at all relevant times "lessors" of motor vehicles under Ala. Code § 7-2A-103(1)(p).

2211. All Alabama State Class members who purchased Honda Class Vehicles in Alabama are "buyers" within the meaning of Ala. Code § 7-2-103(1)(a).

2212. All Alabama State Class Members who leased Honda Class Vehicles in Alabama are "lessees" within the meaning of Ala. Code § 7-2A-103(1)(n).

2213. The Honda Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

2214. In connection with the purchase or lease of Honda Class Vehicles, Honda Japan and Honda USA provided the Alabama Plaintiff and Alabama State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Honda Class Vehicles as safe and reliable,

and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

2215. However, Honda Japan and Honda USA knew or should have known that the warranties were false and/or misleading. Specifically, Honda Japan and Honda USA were aware of the ACU Defect in the Honda Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Alabama Plaintiff and Alabama State Class members.

2216. The Alabama Plaintiff and Alabama State Class members were aware the Honda Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and Honda Japan and Honda USA when the Alabama Plaintiff and Alabama State Class members unknowingly purchased and leased Honda Class Vehicles that came equipped with defective ACUs and ASICs.

2217. Honda Japan and Honda USA misrepresented the Honda Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Alabama Plaintiff and Alabama State Class members were exposed to those misrepresentations, and the Alabama Plaintiff and Alabama State Class members had no way of discerning that Honda Japan's and Honda USA's representations were false and misleading or otherwise learning the material facts that Honda Japan and Honda USA had concealed or failed to disclose. Accordingly, the Alabama Plaintiff and Alabama State Class members reasonably relied on Honda Japan's and Honda USA's express warranties when purchasing or leasing their Honda Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2218. Honda Japan and Honda USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Honda Class

Vehicles. Honda Japan and Honda USA also breached their express warranties by selling and leasing Honda Class Vehicles with a defect that was never disclosed to the Alabama Plaintiff and Alabama State Class members.

2219.  The Alabama Plaintiff and Alabama State Class members have provided Honda Japan and Honda USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Alabama State Class members within a reasonable amount of time after the ACU Defect became public. See ECF No. 396 at 121 ("Plaintiffs have alleged that '[t]he Alabama Plaintiff and Alabama State Class members have provided Honda Japan and Honda USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Alabama State Class members within a reasonable amount of time after the ACU defect became public.' Dkt. 278 ¶ 744. This is sufficient to satisfy the notice requirement."). Additionally, on April 24, 2020, a notice letter was sent on behalf of the Alabama Plaintiff and Alabama State Class members to Honda Japan and Honda USA.

2220.  Alternatively, the Alabama Plaintiff and Alabama State Class members were excused from providing Honda Japan and Honda USA with notice and an opportunity to cure the breach, or to present their Honda Class Vehicles for repair, because it would have been futile. As alleged above, Honda Japan and Honda USA have long known that the Honda Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Honda Japan and Honda USA have not instituted a recall or any other repair program, or even acknowledged that the ACU Defect exists—even though Honda Class Vehicles are subject to the NHTSA investigation. Therefore, the Alabama Plaintiff and Alabama State Class members had no reason to believe that Honda Japan and Honda USA would have repaired the

1  ACU Defect if the Alabama Plaintiff and Alabama State Class members presented

2  their Class Vehicles to Honda Japan and Honda USA for repair.

3      2221.  As a direct and proximate result of Honda Japan's and Honda USA's

4  breach of their express warranties, the Honda Class Vehicles were and are defective

5  and the ACU Defect in the Alabama Plaintiff's and Alabama State Class members'

6  Kia Class Vehicles was not remedied. Therefore, the Alabama Plaintiff and

7  Alabama State Class members have been damaged, in an amount to be proven at

8  trial, through their overpayment at the time of purchase or lease for Honda Class

9  Vehicles with an undisclosed safety defect that would not be remedied.

10          **b.**      **Alabama Count 2: Breach of Implied Warranty of**

11                    **Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212)**
                  **Against Honda USA**[1]

12      2222.  Plaintiffs reallege and incorporate by reference all preceding

13  allegations as though fully set forth herein.

14      2223.  The Alabama Plaintiff brings this count individually and on behalf of

15  members of the Alabama State Class who purchased or leased Honda Class

16  Vehicles, against Honda USA.

17      2224.  A warranty that the Honda Class Vehicles were in merchantable

18  condition and fit for the ordinary purpose for which such goods are used is implied

19  by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

20      2225.  Honda USA is and was at all relevant times a "merchant" with respect

21  to motor vehicles Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "seller" of motor

22  vehicles under § 7-2-103(1)(d).

23      2226.  With respect to leases, Honda USA is and was at all relevant times a

24  "lessor" of motor vehicles under Ala. Code § 7-2A-103(1)(p).

25

26

27

28  _____

[1] The Court held in its February 9, 2022 Order that the Alabama Plaintiff stated a
claim against Honda USA for breach of express warranty. *See* ECF No. 396 at 123.

2227. All Alabama State Class members who purchased Honda Class Vehicles in Alabama are "buyers" within the meaning of Ala. Code § 7-2-103(1)(a).

2228. All Alabama State Class members who leased Honda Class Vehicles in Alabama are "lessees" within the meaning of Ala. Code 7-2A-103(1)(n).

2229. The Honda Class Vehicles were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

2230. The Honda Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Honda Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Honda Class Vehicles inherently defective and dangerous.

2231. The Alabama Plaintiff and Alabama State Class members have provided Honda USA with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by Alabama State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Alabama Plaintiff and Alabama State Class members to Honda USA.

2232. Alternatively, the Alabama Plaintiff and Alabama State Class members were excused from providing Honda USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Honda USA has long known that the Honda Class Vehicles contained the ACU Defect, and that the

ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Honda USA has not instituted a recall or any other repair program, or even acknowledged that the ACU Defect exists—even though Honda Class Vehicles are subject to the NHTSA investigation. Therefore, the Alabama Plaintiff and Alabama State Class members had no reason to believe that Honda USA would have repaired the ACU Defect if the Alabama Plaintiff and Alabama State Class members presented their Class Vehicles to Honda USA for repair.

2233. As a direct and proximate result of Honda USA's breach of the implied warranty of merchantability, the Alabama Plaintiff and Alabama State Class members have been damaged through their overpayment at the time of purchase or lease for Honda Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

       **c.**      **Alabama Count 3: Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1,** *et seq.***) Against Honda Japan, Honda USA, and Honda Engineering USA**

2234. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2235. The Alabama Plaintiff brings this count individually and on behalf of members of the Alabama State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2236. Honda Japan, Honda USA, and Honda Engineering USA, Alabama Plaintiff, and Alabama State Class members are "persons" within the meaning of Ala. Code § 8-19-3(5).

2237. The Alabama Plaintiff and Alabama State Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

2238. The Honda Class Vehicles and ACUs installed in them are "goods" within the meaning of Ala. Code. § 8-19-3(3).

2239. Honda Japan, Honda USA, and Honda Engineering USA were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

2240. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" Ala. Code § 8-19-5.

2241. In the course of their business, Honda Japan, Honda USA, and Honda Engineering USA, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Honda Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

2242. Honda Japan, Honda USA, and Honda Engineering USA had an ongoing duty to the Alabama Plaintiff and Alabama State Class members to refrain from unfair or deceptive practices under the Alabama DTPA in the course of their business. Specifically, Honda Japan, Honda USA, and Honda Engineering USA owed the Alabama Plaintiff and Alabama State Class members a duty to disclose all the material facts concerning the ACU Defect in the Honda Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Alabama Plaintiff and Alabama State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2243. By misrepresenting the Honda Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Honda Japan, Honda USA, and Honda Engineering USA engaged in one or more of the following unfair or deceptive business practices prohibited by Ala. Code § 8-19-5:

a.     Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Honda Class Vehicles;

b.     Representing that the Honda Class Vehicles and/or the defective ACUs and ASICs installed in them have characteristics, uses, benefits, and qualities which they do not have;

c.     Representing that the Honda Class Vehicles and/or the defective ACUs and ASICs installed in them are of a particular standard, quality, and grade when they are not;

d.     Advertising the Honda Class Vehicles and/or the defective ACUs and ASICs installed in them with the intent not to sell or lease them as advertised; and

e.     Engaging in unconscionable, false, misleading, and deceptive acts and practices in the conduct of trade or commerce pertaining to the Honda Class Vehicles and/or the defective ACUs and ASICs installed in them.

Ala. Code §§ 8-19-5(2), (5), (7), (9) and (27).

2244. Honda Japan's, Honda USA's, and Honda Engineering USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Honda Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Alabama Plaintiff and Alabama State Class members, about the true safety and reliability of Honda Class Vehicles and/or the defective ACUs and ASICs installed

1  in them, the quality of the Honda Class Vehicles, and the true value of the Honda

2  Class Vehicles.

3        2245. Honda Japan's, Honda USA's, and Honda Engineering USA's

4  misrepresentations, concealments, omissions, and suppressions of material facts

5  regarding the ACU Defect and true characteristics of the Occupant Restraint

6  Systems in the Honda Class Vehicles were material to the decisions of the Alabama

7  Plaintiff and Alabama State Class members to purchase and lease those vehicles, as

8  Honda Japan, Honda USA, and Honda Engineering USA intended. The Alabama

9  Plaintiff and Alabama State Class members were exposed to those

10  misrepresentations, concealments, omissions, and suppressions of material facts,

11  and relied on Honda Japan's, Honda USA's, and Honda Engineering USA's

12  misrepresentations that the Honda Class Vehicles and their Occupant Restraint

13  Systems were safe and reliable in deciding to purchase and lease Honda Class

14  Vehicles. Plaintiffs allege the information they relied upon in Section II.B above.

15  To aid review of this information, Exhibit 19 provides paragraph numbers for each

16  Plaintiff. The Alabama Plaintiff's and Alabama State Class members' reliance was

17  reasonable, as they had no way of discerning that Honda Japan's, Honda USA's,

18  and Honda Engineering USA's representations were false and misleading, or

19  otherwise learning the facts that Honda Japan, Honda USA, and Honda Engineering

20  USA had concealed or failed to disclose. The Alabama Plaintiff and Alabama State

21  Class members did not, and could not, unravel Honda Japan's, Honda USA's, and

22  Honda Engineering USA's deception on their own.

23        2246. Had the Alabama Plaintiff and Alabama State Class members known

24  the truth about the ACU Defect, the Alabama Plaintiff and Alabama State Class

25  members would not have purchased or leased Honda Class Vehicles, or would have

26  paid significantly less for them.

27        2247. The Alabama Plaintiff and Alabama State Class members suffered

28  ascertainable losses and actual damages through their overpayment at the time of

1  purchase and lease for Honda Class Vehicles with an undisclosed safety defect as a

2  direct and proximate result of Honda Japan's, Honda USA's, and Honda

3  Engineering USA's concealment, misrepresentations, and/or failure to disclose

4  material information.

5      2248. Honda Japan's, Honda USA's, and Honda Engineering USA's

6  violations present a continuing risk to the Alabama Plaintiff and Alabama State

7  Class members, as well as to the general public, because the Class Vehicles remain

8  unsafe due to the defective ACUs and ASICs therein. Additionally, Honda Japan's,

9  Honda USA's, and Honda Engineering USA's unlawful acts and practices

10  complained of herein affect the public interest.

11      2249. Honda Japan, Honda USA, and Honda Engineering USA were

12  provided notice of the issues raised in this count and this Complaint by the NHTSA

13  investigations, the numerous complaints filed against them, and the individual

14  notice letters sent by Alabama State Class members within a reasonable amount of

15  time after the ACU Defect became public. Additionally, pursuant to Ala. Code § 8-

16  19-10(e) on April 24, 2020, a notice letter was sent on behalf of the Alabama

17  Plaintiff and Alabama State Class members to Honda Japan, Honda USA, and

18  Honda Engineering USA. Because Honda Japan, Honda USA, and Honda

19  Engineering USA failed to adequately remedy their unlawful conduct within the

20  requisite time period, the Alabama Plaintiff seeks all damages and relief to which

21  the Alabama Plaintiff and Alabama State Class members are entitled. Pursuant to

22  Ala. Code § 8-19-10(e) on May 25, 2022, a notice letter was also sent on behalf of

23  the Alabama Plaintiff and Alabama State Class members to ST Italy and ST

24  Malaysia.

25      2250. Alternatively, the Alabama Plaintiff and Alabama State Class members

26  were excused from providing Honda Japan, Honda USA, and Honda Engineering

27  USA with notice and an opportunity to cure the breach, because it would have been

28  futile. As alleged above, Honda Japan, Honda USA, and Honda Engineering USA

1   have long known that the Honda Class Vehicles contained the ACU Defect, and

2   that the ACU Defect has caused ACUs and ASICs to malfunction in crashes

3   involving Class Vehicles; however, to date, Honda Japan, Honda USA, and Honda

4   Engineering USA have not instituted a recall or any other repair program, or even

5   acknowledged that the ACU Defect exists—even though Honda Class Vehicles are

6   subject to the NHTSA investigation. Therefore, the Alabama Plaintiff and Alabama

7   State Class members had no reason to believe that Honda Japan, Honda USA, and

8   Honda Engineering USA would have repaired the ACU Defect if the Alabama

9   Plaintiff and Alabama State Class members presented their Class Vehicles to

10  Honda Japan, Honda USA, and Honda Engineering USA for repair.

11       2251. Pursuant to Ala. Code § 8-19-10, the Alabama Plaintiff and the

12  Alabama State Class members seek an order enjoining Honda Japan's, Honda

13  USA's, and Honda Engineering USA's unfair or deceptive acts and/or practices and

14  awarding damages and any other just and proper relief available under the Alabama

15  DTPA.

16       **d.    Alabama Count 4: Violation of the Alabama Deceptive
17             Trade Practices Act (Ala. Code §§ 8-19-1, *et seq.*) Against ZF
             Electronics USA, ZF Passive Safety USA, ZF Automotive
18             USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and
             ST Malaysia**

19       2252. Plaintiffs reallege and incorporate by reference all preceding

20  allegations as though fully set forth herein.

21       2253. The Alabama Plaintiff brings this count individually and on behalf of

22  members of the Alabama State Class against ZF Electronics USA, ZF Passive

23  Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively,

24  the ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the

25  "ST Defendants").

26       2254. The ZF Defendants, the ST Defendants, the Alabama Plaintiff, and

27  Alabama State Class members are "persons" within the meaning of Ala. Code § 8-

28  19-3(5).

2255. The Alabama Plaintiff and Alabama State Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

2256. The Class Vehicles and ACUs installed in them are "goods" within the meaning of Ala. Code. § 8-19-3(3).

2257. The ZF and ST Defendants were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

2258. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" Ala. Code § 8-19-5.

2259. The ZF and ST Defendants had an ongoing duty to the Alabama Plaintiff and Alabama State Class members to refrain from unfair or deceptive practices under the Alabama DTPA in the course of their business. Specifically, the ZF and ST Defendants owed the Alabama Plaintiff and Alabama State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Alabama Plaintiff and Alabama State Class members.

2260. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

2261. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Alabama DTPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle

1   Manufacturer Defendants on the design and inclusion of the airbag readiness

2   indicators in the Class Vehicles, which falsely assured Plaintiffs and Class

3   Members that the Occupant Restraint Systems in the Class Vehicles would function

4   properly in a crash.

5       2262. By misrepresenting, failing to disclose, and actively concealing the

6   dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and

7   ST Defendants engaged in deceptive acts or practices prohibited by Ala. Code § 8-

8   19-5, including engaging in unconscionable, false, misleading, and/or deceptive

9   acts or practices in the conduct of trade or commerce.

10      2263. The ZF and ST Defendants' unfair or deceptive acts or practices,

11  including their misrepresentations, concealments, omissions, and suppressions of

12  material facts, were designed to mislead and had a tendency or capacity to mislead

13  and create a false impression in consumers that the Class Vehicles had properly-

14  functioning and reliable airbags and seatbelts, and that the Occupant Restraint

15  System did not contain the ACU Defect and would perform its intended function of

16  activating the seatbelts and airbags during a collision. Indeed, those

17  misrepresentations, concealments, omissions, and suppressions of material facts did

18  in fact deceive reasonable consumers, including the Alabama Plaintiff and Alabama

19  State Class members, about the true safety and reliability of Class Vehicles and/or

20  the defective ACUs and ASICs installed in them, the quality of the Class Vehicles,

21  and the true value of the Class Vehicles.

22      2264. The Alabama Plaintiff and Alabama State Class members justifiably

23  relied on the ZF and ST Defendants' misrepresentations, omissions, and

24  concealment, as they had no way of discerning that the Class Vehicles contained

25  the ACU Defect, as alleged above. The Alabama Plaintiff and Alabama State Class

26  members did not, and could not, unravel the ZF and ST Defendants' deception on

27  their own.

28

2265. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Alabama Plaintiff and Alabama State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Alabama Plaintiff and Alabama State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2266. The Alabama Plaintiff and Alabama State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

2267. The ZF and ST Defendants' violations present a continuing risk to the Alabama Plaintiff and Alabama State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

2268. The ZF and ST Defendants were provided notice of the issues raised in this count and this Complaint by the NHTSA investigations, the numerous complaints filed against them, and the individual notice letters sent by Alabama State Class members within a reasonable amount of time after the allegations of the ACU Defect became public. Additionally, pursuant to Ala. Code § 8-19-10(e) on April 24, 2020, a notice letter was sent on behalf of the Alabama Plaintiff and Alabama State Class members to the ZF Defendants, and on June 5, 2020, notice letter was sent on behalf of the Alabama Plaintiff and Alabama State Class members to ST USA. Because these Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the Alabama Plaintiff seeks all damages and relief to which the Alabama Plaintiff and Alabama State Class members are entitled.

2269. Alternatively, any requirement to give notice to the Defendants under Ala. Code § 8-19-10(e) is excused because, *inter alia*, on information and belief the ZF and ST Defendants do not maintain a place of business or do not keep assets within Alabama. Moreover, the Alabama Plaintiff and Alabama State Class members were excused from providing the ZF and ST Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, the ZF and ST Defendants have long known that the Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, the ZF and ST Defendants have not even acknowledged that the ACU Defect exists—even though the Vehicle Manufacturer Defendants Class Vehicles' are subject to the NHTSA investigation. Therefore, the Alabama Plaintiff and Alabama State Class members had no reason to believe that the ZF and ST Defendants would have repaired the ACU Defect if the Alabama Plaintiff and Alabama State Class members presented their Class Vehicles the ZF and ST Defendants for repair.

2270. Pursuant to Ala. Code § 8-19-10, the Alabama Plaintiff and Alabama State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts and/or practices and awarding damages and any other just and proper relief available under the Alabama DTPA.

**e.     Alabama Count 5: Fraud by Omission and Concealment Against Honda Japan, Honda USA, and Honda Engineering USA**

2271. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2272. The Alabama Plaintiff brings this count individually and on behalf of members of the Alabama State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2273. Honda Japan, Honda USA, and Honda Engineering USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2274. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2275. Honda Japan, Honda USA, and Honda Engineering USA had a duty to disclose the ACU Defect to the Alabama Plaintiff and Alabama State Class members because:

    a.    Honda Japan, Honda USA, and Honda Engineering USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Alabama Plaintiff and Alabama State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    Honda Japan, Honda USA, and Honda Engineering USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Honda Class Vehicles containing the ACU Defect would have been a material fact to

the Alabama Plaintiff's and Alabama State Class members'
decisions to buy or lease Honda Class Vehicles; and

    d.    Honda Japan, Honda USA, and Honda Engineering USA made
incomplete representations about the safety and reliability of the
Honda Class Vehicles and their Occupant Restraint System,
while purposefully withholding material facts about a known
safety defect. In uniform advertising and materials provided
with each Class Vehicle, Honda Japan, Honda USA, and Honda
Engineering USA intentionally concealed, suppressed, and
failed to disclose to the Alabama Plaintiff and Alabama State
Class members that the Honda Class Vehicles contained the
ACU Defect. Because they volunteered to provide information
about the Honda Class Vehicles that they marketed and offered
for sale and lease to the Alabama Plaintiff and Alabama State
Class members, Honda Japan, Honda USA, and Honda
Engineering USA had the duty to disclose the whole truth.

2276. In breach of their duties, Honda Japan, Honda USA, and Honda
Engineering USA failed to disclose that the Honda Class Vehicles were not safe
and reliable, and that their Occupant Restraint Systems, including their airbags and
seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2277. Honda Japan, Honda USA, and Honda Engineering USA intended for
the Alabama Plaintiff and Alabama State Class members to rely on their
omissions—which they did by purchasing and leasing the Honda Class Vehicles at
the prices they paid believing that the Occupant Restraint Systems in their Honda
Class Vehicles would function properly.

2278. That reliance was reasonable, because a reasonable consumer would
not have expected that the Honda Class Vehicles contained a safety defect that
poses such a serious risk. Honda Japan, Honda USA, and Honda Engineering USA

knew that reasonable consumers expect that their vehicle has working airbags and

seatbelt pretensioners and would rely on those facts in deciding whether to

purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's

products are safe and reliable, and whether that manufacturer stands behind its

products, are material concerns to a consumer. Especially here when at least nine

people have already died due to the ACU Defect, and many more have been

injured.

2279. Additionally, Honda Japan, Honda USA, and Honda Engineering USA

ensured that the Alabama Plaintiff and Alabama State Class members did not

discover this information by actively concealing and misrepresenting the true nature

of the Honda Class Vehicles' Occupant Restraint System to consumers and

NHTSA.

2280. Honda Japan, Honda USA, and Honda Engineering USA actively

concealed and suppressed these material facts, in whole or in part, to maintain a

market for their Class Vehicles, to protect profits, and to avoid costly recalls that

would expose them to liability for those expenses and harm the commercial

reputations of Defendants and their products. They did so at the expense of the

Alabama Plaintiff and Alabama State Class members.

2281. To this day, Honda Japan, Honda USA, and Honda Engineering USA

have not fully and adequately disclosed the ACU Defect, and they continue to

conceal material information about the defect from consumers and NHTSA. The

omitted and concealed facts were material because a reasonable person would find

them important in purchasing, leasing, or retaining a new or used motor vehicle,

and because they directly impact the value of the Honda Class Vehicles purchased

or leased by the Alabama Plaintiff and Alabama State Class members.

2282. Had they been aware of the ACU Defect in the Honda Class Vehicles,

and Honda Japan's, Honda USA's, and Honda Engineering USA's callous

disregard for safety, the Alabama Plaintiff and Alabama State Class members either

would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2283. As alleged in Section V above, if Honda Japan, Honda USA, and Honda Engineering USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Alabama Plaintiff and Alabama State Class members would have seen such a disclosure.

2284. Accordingly, Honda Japan, Honda USA, and Honda Engineering USA are liable to the Alabama Plaintiff and Alabama State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Honda Class Vehicles at the time of purchase or lease.

2285. Honda Japan's, Honda USA's, and Honda Engineering USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Alabama Plaintiff's and Alabama State Class members' rights and well-being; and to enrich themselves. Honda Japan's, Honda USA's, and Honda Engineering USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **f.    Alabama Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2286. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2287. The Alabama Plaintiff brings this count individually and on behalf of members of the Alabama State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2288. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2289. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2290. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Alabama Plaintiff and Alabama State Class members because:

      a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.    Given the ACU Defect's hidden and technical nature, the Alabama Plaintiff and Alabama State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

      c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Alabama Plaintiff's and Alabama State Class members' decisions to buy or lease Class Vehicles; and

      d.     The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2291. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2292. The ZF and ST Defendants intended for the Alabama Plaintiff and Alabama State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2293. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2294. Additionally, the ZF and ST Defendants ensured that the Alabama Plaintiff and Alabama State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2295. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Alabama Plaintiff and Alabama State Class members.

2296. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Alabama Plaintiff and Alabama State Class members.

2297. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Alabama Plaintiff and Alabama State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2298. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Alabama Plaintiff and Alabama State Class members would have seen such a disclosure.

2299. Accordingly, the ZF and ST Defendants are liable to the Alabama Plaintiff and Alabama State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

2300. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Alabama Plaintiff's and Alabama State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### g. Alabama Count 7: Unjust Enrichment Against Honda Japan, Honda Engineering USA, and Honda USA

2301. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

2302. The Alabama Plaintiff brings this count individually and on behalf of members of the Alabama State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda Engineering USA, and Honda USA.

2303. The Alabama Plaintiff and Alabama State Class members conferred tangible and material monetary benefits upon Honda Japan, Honda USA, and Honda Engineering USA when they purchased or leased the Honda Class Vehicles. Honda Japan, Honda USA, and Honda Engineering USA readily accepted and retained these benefits.

2304. The Alabama Plaintiff and Alabama State Class members would not have purchased or leased the Honda Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Honda Japan, Honda USA, and Honda Engineering USA profited from the sale and lease of the Honda Class Vehicles to the detriment and expense of the Alabama Plaintiff and Alabama State Class members.

2305. Honda Japan, Honda USA, and Honda Engineering USA appreciated these monetary benefits. These benefits were the expected result of Honda Japan, Honda USA, and Honda Engineering USA acting in their pecuniary interest at the expense of their customers. Honda Japan, Honda USA, and Honda Engineering

USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Alabama Plaintiff and Alabama State Class members regarding the nature and quality of the Honda Class Vehicles while profiting from this deception.

2306. It would be unjust, inequitable, and unconscionable for Honda Japan, Honda USA, and Honda Engineering USA to retain these monetary benefits, including because they were procured as a result of Honda Japan's, Honda USA's, and Honda Engineering USA's wrongful conduct alleged above.

2307. The Alabama Plaintiff and Alabama State Class members are entitled to restitution of the benefits Honda Japan, Honda USA, and Honda Engineering USA unjustly retained and/or any amounts necessary to return the Alabama Plaintiff and Alabama State Class members to the position they occupied prior to dealing with Honda Japan, Honda USA, and Honda Engineering USA, with such amounts to be determined at trial.

2308. The Alabama Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Alabama Plaintiff's claims for damages are dismissed or judgment is entered in favor of Honda Japan, Honda USA, and Honda Engineering USA, the Alabama Plaintiff will have no adequate legal remedy.

2. **Arizona**

a. **Arizona Count 1: Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47-2313 and 47-2A210) Against FCA**[2]

2309. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[2] The Court held in its February 9, 2022 Order that the Arizona Plaintiff stated a claim against FCA for breach of express warranty. *See* ECF No. 396 at 125.

2310. Plaintiff James Kneup (hereinafter, "Arizona Plaintiff") brings this count individually and on behalf of members of the Arizona State Class who purchased or leased FCA Class Vehicles, against FCA.

2311. FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), and a "seller" of motor vehicles under § 47-2103(A)(4).

2312. With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Ariz. Rev. Stat. Ann. § 47-2a103(A)(16).

2313. All Arizona State Class members who purchased FCA Class Vehicles in Arizona are "buyers" within the meaning of Ariz. Rev. Stat. Ann. § 47-2103(A)(1).

2314. All Arizona State Class members who leased FCA Class Vehicles in Arizona are "lessees" within the meaning of Ariz. Rev. Stat. Ann. § 47-2A103(A)(14).

2315. The FCA Class Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

2316. In connection with the purchase or lease of FCA Class Vehicles, FCA provided the Arizona Plaintiff and Arizona State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the FCA Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

2317. However, FCA knew or should have known that the warranties were false and/or misleading. Specifically, FCA was aware of the ACU Defect in the FCA Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Arizona Plaintiff and Arizona State Class members.

2318. The Arizona Plaintiff and Arizona State Class members were aware the FCA Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and FCA when the Arizona Plaintiff and Arizona State Class members unknowingly purchased and leased FCA Class Vehicles that came equipped with defective ACUs and ASICs.

2319. FCA misrepresented the FCA Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Arizona Plaintiff and Arizona State Class members were exposed to those misrepresentations, and the Arizona Plaintiff and Arizona State Class members had no way of discerning that FCA's representations were false and misleading or otherwise learning the material facts that FCA had concealed or failed to disclose. Accordingly, the Arizona Plaintiff and Arizona State Class members reasonably relied on FCA's express warranties when purchasing or leasing their FCA Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2320. FCA knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the FCA Class Vehicles. FCA also breached its express warranties by selling and leasing FCA Class Vehicles with a defect that was never disclosed to the Arizona Plaintiff and Arizona State Class members.

2321. The Arizona Plaintiff and Arizona State Class members have provided FCA with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by Arizona State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Arizona Plaintiff and Arizona State

1  Class members to FCA.[3] This Court found that Plaintiffs' allegations regarding
2  notice are sufficient. *See* ECF No. 396 at 124.

3      2322.  Alternatively, the Arizona Plaintiff and Arizona State Class members
4  were excused from providing FCA with notice and an opportunity to cure the
5  breach, because it would have been futile. As alleged above, FCA has long known
6  that the FCA Class Vehicles contain the ACU Defect, and that the ACU Defect has
7  caused ACUs and ASICs to malfunction in crashes involving Class Vehicles;
8  however, to date, FCA has not instituted a recall or any other repair program with
9  respect to the unrecalled FCA Class Vehicles, or even acknowledged that the ACU
10  Defect exists in all FCA Class Vehicles, including the recalled FCA Class
11  Vehicles—even though FCA Class Vehicles are subject to the NHTSA
12  investigation. Therefore, the Arizona Plaintiff and Arizona State Class members
13  had no reason to believe that FCA would have repaired the ACU Defect if the
14  Arizona Plaintiff and Arizona State Class members presented their Class Vehicles
15  to FCA for repair.

16      2323.  As a direct and proximate result of FCA's breach of its express
17  warranties, the FCA Class Vehicles were and are defective and the ACU Defect in
18  the Arizona Plaintiff's and Arizona State Class members' FCA Class Vehicles was
19  not remedied. Therefore, the Arizona Plaintiff and Arizona State Class members
20  have been damaged, in an amount to be proven at trial, through their overpayment
21  at the time of purchase or lease for FCA Class Vehicles with an undisclosed safety
22  defect that would not be remedied.

23          **b.    Arizona Count 2: Violation of the Arizona Consumer Fraud
24          Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against FCA**

25      2324.  Plaintiffs reallege and incorporate by reference all preceding
26  allegations as though fully set forth herein.

27  _____

28  [3] This Court held that Plaintiffs' sufficiently alleged that they provided the required
notice. *See* ECF No. 396 at 124.

2325.  The Arizona Plaintiff brings this count individually and on behalf of members of the Arizona State Class who purchased or leased FCA Class Vehicles, against FCA.

2326.  FCA, the Arizona Plaintiff, and Arizona State Class members are "persons" within the meaning of Ariz. Rev. Stat. Ann. § 44-1521(6).

2327.  The FCA Class Vehicles and ACUs installed in them are "merchandise" within the meaning of Ariz. Rev. Stat. Ann § 44-1521(5).

2328.  The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful business practices. Ariz. Rev. Stat. Ann § 44-1522(A).

2329.  In the course of its business, FCA, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA Class Vehicles and/or the defective ACUs, as detailed above.

2330.  FCA had an ongoing duty to the Arizona Plaintiff and Arizona State Class members to refrain from unfair or deceptive practices under the Arizona DTPA in the course of its business. Specifically, FCA owed the Arizona Plaintiff and Arizona State Class members a duty to disclose all the material facts concerning the ACU Defect in the FCA Class Vehicles because it possessed exclusive knowledge, it intentionally concealed the ACU Defect from the Arizona Plaintiff and Arizona State Class members, and it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2331.  By misrepresenting the FCA Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, FCA engaged in deceptive acts or practices, as outlined in Ariz. Rev. Stat. § 44-1522(A), including using or employing deception, fraud, false pretense, false promise or

1   misrepresentation, or the concealment, suppression or omission of a material fact

2   with intent that others rely upon such concealment, suppression, or omission, in

3   connection with the advertisement and sale or lease of the FCA Class Vehicles.

4          2332. FCA's unfair and deceptive acts or practices, including its

5   misrepresentations, concealments, omissions, and suppressions of material facts,

6   were designed to mislead and had a tendency or capacity to mislead and create a

7   false impression in consumers that the FCA Class Vehicles had properly-

8   functioning and reliable airbags and seatbelts, and that the Occupant Restraint

9   System did not contain the ACU Defect and would perform its intended function of

10  activating the seatbelts and airbags during a collision. Indeed, those

11  misrepresentations, concealments, omissions, and suppressions of material facts did

12  in fact deceive reasonable consumers, including the Arizona Plaintiff and Arizona

13  State Class members, about the true safety and reliability of FCA Class Vehicles

14  and/or the defective ACUs and ASICs installed in them, the quality of the FCA

15  Class Vehicles, and the true value of the FCA Class Vehicles.

16         2333. FCA's misrepresentations, concealments, omissions, and suppressions

17  of material facts regarding the ACU Defect and true characteristics of the Occupant

18  Restraint Systems in the FCA Class Vehicles were material to the decisions of the

19  Arizona Plaintiff and Arizona State Class members to purchase and lease those

20  vehicles, as FCA intended. The Arizona Plaintiff and Arizona State Class members

21  were exposed to those misrepresentations, concealments, omissions, and

22  suppressions of material facts, and relied on the FCA's misrepresentations that the

23  FCA Class Vehicles and their Occupant Restraint Systems were safe and reliable in

24  deciding to purchase and lease FCA Class Vehicles. Plaintiffs allege the

25  information they relied upon in Section II.B above. To aid review of this

26  information, Exhibit 19 provides paragraph numbers for each Plaintiff.

27         2334. The Arizona Plaintiff's and Arizona State Class members' reliance

28  was reasonable, as they had no way of discerning that FCA's representations were

false and misleading, or otherwise learning the facts that FCA had concealed or failed to disclose. The Arizona Plaintiff and Arizona State Class members did not, and could not, unravel FCA's deception on their own.

2335. Had the Arizona Plaintiff and Arizona State Class members known the truth about the ACU Defect, the Arizona Plaintiff and Arizona State Class members would not have purchased or leased FCA Class Vehicles, or would have paid significantly less for them.

2336. The Arizona Plaintiff and Arizona State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for FCA Class Vehicles with an undisclosed safety defect as a direct and proximate result of FCA's concealment, misrepresentations, and/or failure to disclose material information.

2337. FCA's violations present a continuing risk to the Arizona Plaintiff and Arizona State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, FCA's unlawful acts and practices complained of herein affect the public interest.

2338. The Arizona Plaintiff and Arizona State Class members seek an order enjoining FCA's unfair and/or deceptive acts or practices and awarding damages and any other just and proper relief available under the Arizona CFA.

     **c.**    **Arizona Count 3: Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq*.) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2339. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2340. The Arizona Plaintiff brings this count individually and on behalf of members of the Arizona State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the

"ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2341. The ZF Defendants, ST Defendants, Arizona Plaintiff, and Arizona State Class members are "persons" within the meaning of Ariz. Rev. Stat. Ann. § 44-1521(6).

2342. The Class Vehicles and ACUs installed in them are "merchandise" within the meaning of Ariz. Rev. Stat. Ann § 44-1521(5).

2343. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful business practices. Ariz. Rev. Stat. Ann § 44-1522(A).

2344. The ZF and ST Defendants had an ongoing duty to the Arizona Plaintiff and Arizona State Class members to refrain from unfair or deceptive practices under the Arizona CFA in the course of their business. Specifically, the ZF and ST Defendants owed the Arizona Plaintiff and Arizona State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Arizona Plaintiff and Arizona State Class members.

2345. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

2346. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Arizona CFA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle

1   Manufacturer Defendants on the design and inclusion of the airbag readiness

2   indicators in the Class Vehicles, which falsely assured Plaintiffs and Class

3   Members that the Occupant Restraint Systems in the Class Vehicles would function

4   properly in a crash.

5          2347. By misrepresenting, failing to disclose, and actively concealing the

6   dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and

7   ST Defendants engaged in deceptive acts or practices prohibited by Ariz. Rev. Stat.

8   § 44-1522(A), including using or employing deception or fraud, and/or the

9   concealment, suppression and/or omission of a material fact with intent that others

10  rely upon such concealment, suppression, or omission.

11         2348. The ZF and ST Defendants' unfair or deceptive acts or practices,

12  including their misrepresentations, concealments, omissions, and suppressions of

13  material facts, were designed to mislead and had a tendency or capacity to mislead

14  and create a false impression in consumers that the Class Vehicles had properly-

15  functioning and reliable airbags and seatbelts, and that the Occupant Restraint

16  System did not contain the ACU Defect and would perform its intended function of

17  activating the seatbelts and airbags during a collision. Indeed, those

18  misrepresentations, concealments, omissions, and suppressions of material facts did

19  in fact deceive reasonable consumers, including the Arizona Plaintiff and Arizona

20  State Class members, about the true safety and reliability of Class Vehicles and/or

21  the defective ACUs and ASICs installed in them, the quality of the Class Vehicles,

22  and the true value of the Class Vehicles.

23         2349. The Arizona Plaintiff and Arizona State Class members justifiably

24  relied on the ZF and ST Defendants' misrepresentations, omissions, and

25  concealment, as they had no way of discerning that the Class Vehicles contained

26  the ACU Defect, as alleged above. The Arizona Plaintiff and Arizona State Class

27  members did not, and could not, unravel the ZF and ST Defendants' deception on

28  their own.

2350. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Arizona Plaintiff and Arizona State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Arizona Plaintiff and Arizona State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2351. The Arizona Plaintiff and Arizona State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

2352. The ZF and ST Defendants' violations present a continuing risk to the Arizona Plaintiff and Arizona State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

2353. The Arizona Plaintiff and Arizona State Class members seek an order enjoining the ZF and ST Defendants' unfair and/or deceptive acts or practices and awarding damages and any other just and proper relief available under the Arizona CFA.

### d.    Arizona Count 4: Fraud by Omission and Concealment Against FCA

2354. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2355. The Arizona Plaintiff brings this count individually and on behalf of members of the Arizona State Class who purchased or leased FCA Class Vehicles, against FCA.

2356. FCA is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2357. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2358. FCA had a duty to disclose the ACU Defect to the Arizona Plaintiff and Arizona State Class members because:

    a.    FCA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Arizona Plaintiff and Arizona State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    FCA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the FCA Class Vehicles containing the ACU Defect would have been a material fact to the Arizona Plaintiff's and Arizona State Class members' decisions to buy or lease FCA Class Vehicles; and

    d.    FCA made incomplete representations about the safety and reliability of the FCA Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts

about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, FCA intentionally
concealed, suppressed, and failed to disclose to the Arizona
Plaintiff and Arizona State Class members that the FCA Class
Vehicles contained the ACU Defect. Because they volunteered
to provide information about the FCA Class Vehicles that they
marketed and offered for sale and lease to the Arizona Plaintiff
and Arizona State Class members, FCA had the duty to disclose
the whole truth.

2359. In breach of its duties, FCA failed to disclose that the FCA Class
Vehicles were not safe and reliable, and that their Occupant Restraint Systems,
including their airbags and seatbelt pretensioners could fail in the event of a crash
due to the ACU Defect.

2360. FCA intended for the Arizona Plaintiff and Arizona State Class
members to rely on its omissions—which they did by purchasing and leasing the
FCA Class Vehicles at the prices they paid believing that the Occupant Restraint
Systems in their Class Vehicles would function properly.

2361. That reliance was reasonable, because a reasonable consumer would
not have expected that the FCA Class Vehicles contained a safety defect that poses
such a serious risk. FCA knew that reasonable consumers expect that their vehicle
has working airbags and seatbelt pretensioners and would rely on those facts in
deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether
a manufacturer's products are safe and reliable, and whether that manufacturer
stands behind its products, are material concerns to a consumer. Especially here
when at least nine people have already died due to the ACU Defect, and many more
have been injured.

2362. Additionally, FCA ensured that the Arizona Plaintiff and Arizona State
Class members did not discover this information by actively concealing and

misrepresenting the true nature of the FCA Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2363. FCA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for its Class Vehicles, to protect profits, and to avoid costly recalls that would expose it to liability for those expenses and harm the commercial reputations of Defendants and their products. It did so at the expense of the Arizona Plaintiff and Arizona State Class members.

2364. To this day, FCA has not fully and adequately disclosed the ACU Defect, and it continues to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the FCA Class Vehicles purchased or leased by the Arizona Plaintiff and Arizona State Class members.

2365. Had they been aware of the ACU Defect in the FCA Class Vehicles, and FCA's callous disregard for safety, the Arizona Plaintiff and Arizona State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2366. As alleged in Section V above, if FCA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Arizona Plaintiff and Arizona State Class members would have seen such a disclosure.

2367. Accordingly, FCA is liable to the Arizona Plaintiff and Arizona State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the FCA Class Vehicles at the time of purchase or lease.

2368. FCA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Arizona Plaintiff's and Arizona State Class members' rights and well-being; and to enrich themselves. FCA's misconduct

warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

  **e.**  **Arizona Count 5: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2369. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2370. The Arizona Plaintiff brings this count individually and on behalf of members of the Arizona State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2371. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2372. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2373. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Arizona Plaintiff and Arizona State Class members because:

a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.    Given the ACU Defect's hidden and technical nature, the Arizona Plaintiff and Arizona State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Arizona Plaintiff's and Arizona State Class members' decisions to buy or lease Class Vehicles; and

d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2374. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint

1  Systems, including their airbags and seatbelt pretensioners could fail in the event of
2  a crash due to the ACU Defect.

3       2375. The ZF and ST Defendants intended for the Arizona Plaintiff and
4  Arizona State Class members to rely on their omissions—which they did by
5  purchasing and leasing the Class Vehicles at the prices they paid believing that the
6  Occupant Restraint Systems in their Class Vehicles would function properly.

7       2376. That reliance was reasonable, because a reasonable consumer would
8  not have expected that the Class Vehicles contained a safety defect that poses such
9  a serious risk. The ZF and ST Defendants knew that reasonable consumers expect
10 that their vehicle has working airbags and seatbelt pretensioners and would rely on
11 those facts in deciding whether to purchase, lease, or retain a new or used motor
12 vehicle. Whether a manufacturer's products are safe and reliable, and whether that
13 manufacturer stands behind its products, are material concerns to a consumer.
14 Especially here when at least nine people have already died due to the ACU Defect,
15 and many more have been injured.

16       2377. Additionally, the ZF and ST Defendants ensured that the Arizona
17 Plaintiff and Arizona State Class members did not discover this information by
18 actively concealing and misrepresenting the true nature of the Class Vehicles'
19 Occupant Restraint Systems to consumers and NHTSA.

20       2378. The ZF and ST Defendants actively concealed and suppressed these
21 material facts, in whole or in part, to maintain a market for the DS84 ACU, to
22 protect profits, and to avoid costly recalls that would expose them to liability for
23 those expenses and harm the commercial reputations of Defendants and their
24 products. They did so at the expense of the Arizona Plaintiff and Arizona State
25 Class members.

26       2379. To this day, the ZF and ST Defendants have not fully and adequately
27 disclosed the ACU Defect, and they continue to conceal material information about
28 the defect from consumers and NHTSA. The omitted and concealed facts were

material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Arizona Plaintiff and Arizona State Class members.

2380. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Arizona Plaintiff and Arizona State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2381. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Arizona Plaintiff and Arizona State Class members would have seen such a disclosure.

2382. Accordingly, the ZF and ST Defendants are liable to the Arizona Plaintiff and Arizona State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

2383. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Arizona Plaintiff's and Arizona State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f.     Arizona Count 6: Unjust Enrichment Against FCA

2384. Plaintiffs reallege and incorporate by reference all allegations in Sections 1-VI above as though fully set forth herein.

2385. The Arizona Plaintiff brings this count individually and on behalf of members of the Arizona State Class who purchased or leased FCA Class Vehicles, against FCA.

2386. The Arizona Plaintiff and Arizona State Class members conferred tangible and material economic benefits upon FCA when they purchased or leased the FCA Class Vehicles. FCA readily accepted and retained these benefits.

2387. The Arizona Plaintiff and Arizona State Class members would not have purchased or leased the FCA Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA profited from the sale and lease of the FCA Class Vehicles to the detriment and expense of the Arizona Plaintiff and Arizona State Class members.

2388. FCA appreciated these benefits. These benefits were the expected result of FCA acting in its pecuniary interest at the expense of its customers. FCA knew of these benefits because it was aware of the ACU Defect, yet it failed to disclose this knowledge and misled the Arizona Plaintiff and Arizona State Class members regarding the nature and quality of the FCA Class Vehicles while profiting from this deception.

2389. It would be unjust, inequitable, and unconscionable for FCA to retain these benefits, including because they were procured as a result of FCA's wrongful conduct alleged above.

2390. The Arizona Plaintiff and Arizona State Class members are entitled to restitution of the benefits FCA unjustly retained and/or any amounts necessary to return the Arizona Plaintiff and Arizona State Class members to the position they occupied prior to dealing with FCA, with such amounts to be determined at trial.

2391. The Arizona Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Arizona Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the Arizona Plaintiff will have no adequate legal remedy.

3. **California**

    a. **California Count 1: Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212) Against FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA**

2392. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2393. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA.

2394. Plaintiff Kevin Burns brings this count individually and on behalf of members of the California State Class who purchased or leased Honda Class Vehicles, against Honda USA.

2395. Plaintiff Michael Hernandez brings this count individually and on behalf of members of the California State Class who purchased or leased Hyundai Class Vehicles, against Hyundai USA.

2396. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count individually and on behalf of members of the California State Class who purchased or leased Kia Class Vehicles, against Kia USA.

2397. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count individually and on behalf of members of the California State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi USA.

2398. Plaintiffs Mark Altier and Alejandra Renteria bring this count individually and on behalf of members of the California State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

2399. For purposes of this count, "California Plaintiffs" refers to Plaintiffs Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez, Altier, and Renteria.

2400. For purposes of this count, "Class Vehicles" refers to FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

2401. The California Plaintiffs purchased and leased their Class Vehicles from FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota authorized dealers, and are therefore in privity with those Defendants. Moreover, the California Plaintiffs were the intended and direct beneficiaries of agreements between the Vehicle Manufacturer Defendants and their dealers regarding sales and leases of the Class Vehicles, because, upon information and belief, the agreements expressly were made for the direct benefit of California State Class members. Moreover, their false and misleading representations found in marketing materials and brochures for each of the Class Vehicles, which were intended for car purchasers, rather than the dealers themselves.

2402. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

2403. FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA are and were at all relevant times "merchants" with respect to motor vehicles, Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

2404. FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

2405. All California State Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

2406. All California State Class members who leased Class Vehicles in California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

2407. The Class Vehicles were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

2408. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles contain the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Class Vehicles inherently defective and dangerous.

2409. The California Plaintiffs and California State Class members have provided FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the NHTSA investigations, the numerous complaints filed against them, and the individual notice letters sent by California State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on May 23, 2019, California State Class members sent a notice letter to them. Moreover, a second notice letter was sent on behalf of the California Plaintiffs and California State Class members to FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA on April 24, 2020.

2410. Alternatively, the California Plaintiffs and California State Class members were excused from providing FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, they have long known that the Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Honda USA and Mitsubishi USA have not instituted a recall or any other repair program with respect to the Honda and Mitsubishi Class Vehicles, or even acknowledged that the ACU Defect exists in all of those Class Vehicles—

even though Honda and Mitsubishi Class Vehicles are subject to a NHTSA investigation. Similarly, FCA, Hyundai USA, Kia USA, and Toyota Sales USA have not instituted a recall or any other repair program with respect to the unrecalled FCA, Hyundai, Kia, and Toyota Class Vehicles, or even acknowledged that the ACU Defect exists in all of those Class Vehicles, including the recalled FCA, Hyundai, Kia, and Toyota Class Vehicles. Therefore, they have refused to recall or repair defective vehicles, and for those that were recalled, the repair was inadequate because it did not fix the ACU Defect. As such, the California Plaintiffs and California State Class members had no reason to believe that FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and Toyota Sales USA would have repaired the ACU Defect if they presented their Class Vehicles to them for repair.

2411. As a direct and proximate result of FCA's, Honda USA's, Hyundai USA's, Kia USA's, Mitsubishi USA's, and Toyota Sales USA's breach of the implied warranty of merchantability, the California Plaintiffs' and California State Class members' Class Vehicles were and are defective, and the ACU Defect in their Class Vehicles were not remedied. Therefore, the California Plaintiffs and California State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

      **b.**    **California Count 2: Violations of Song-Beverly Consumer Warranty Act For Breach of Implied Warranty of Merchantability (Cal. Civ. Code §§ 1791.1 and 1792) Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, and Toyota Sales USA[4]**

2412. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[4] The Court held in its February 9, 2022 Order that Plaintiffs Laveaux, Hernandez, Van Houten and Ronan have stated claims for breach of implied warranty under the

2413. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA.

2414. Plaintiff Kevin Burns brings this count individually and on behalf of members of the California State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2415. Plaintiff Michael Hernandez brings this count individually and on behalf of members of the California State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

2416. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count individually and on behalf of members of the California State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2417. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count individually and on behalf of members of the California State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

2418. Plaintiffs Mark Altier and Alejandra Renteria bring this count individually and on behalf of members of the California State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

2419. For purposes of this count, "California Plaintiffs" refers to Plaintiffs Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez, Altier, and Renteria.

2420. For purposes of this count, "Class Vehicles" refers to FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

2421. The California Plaintiffs purchased their Class Vehicles from FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA authorized dealers, and are therefore in privity with those Defendants. Moreover, the California Plaintiffs were the intended and direct beneficiaries of agreements between the

_____

Song-Beverly Act. *See* ECF No. 396 at 131.

1   Vehicle Manufacturer Defendants and their dealers regarding sales and leases of the

2   Class Vehicles, as, upon information and belief, the agreements expressly were

3   made for the direct benefit of California State Class members. Moreover, their false

4   and misleading representations found in marketing materials and brochures for each

5   of the Class Vehicles, which were intended for car purchasers, rather than the

6   dealers themselves.

7       2422. FCA, Honda Japan, Honda Engineering USA, Hyundai Korea, Kia

8   Korea, and Mitsubishi Japan are "manufacturer[s]" of the Class Vehicles within the

9   meaning of Cal. Civ. Code § 1791(j).

10      2423. FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and

11  Toyota Sales USA are and were at all relevant times "sellers" of motor vehicles

12  under Cal. Civ. Code § 1791(l).

13      2424. FCA, Honda USA, Hyundai USA, Kia USA, Mitsubishi USA, and

14  Toyota Sales USA are and were at all relevant times "lessors" of motor vehicles

15  under Cal. Civ. Code § 1791(i).

16      2425. All California State Class members who purchased Class Vehicles in

17  California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

18      2426. All California State Class members who leased Class Vehicles in

19  California are "lessees" within the meaning of Cal. Civ. Code § 1791(h).

20      2427. The Class Vehicles are "consumer goods" within the meaning of Cal.

21  Civ. Code § 1791(a).

22      2428. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai

23  Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA,

24  and Toyota Sales USA impliedly warranted to the California Plaintiffs and

25  California State Class members that their Class Vehicles were "merchantable"

26  within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

27

28

2429. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

> a.   Pass without objection in the trade under the contract description.
>
> b.   Are fit for the ordinary purposes for which such goods are used.
>
> c.   Are adequately contained, packaged, and labeled.
>
> d.   Conform to the promises or affirmations of fact made on the container or label.

2430. The Class Vehicles would not pass without objection in the automotive trade due to the ACU Defect. Because the Class Vehicles contain the ACU Defect, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

2431. The Class Vehicles are not adequately labeled because the labeling fails to disclose the ACU Defect. The Class Vehicles do not conform to the promises and affirmations made by FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, and Toyota Sales USA regarding safety.

2432. As a direct and proximate result of the breaches of the implied warranty of merchantability by FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, and Toyota Sales USA, the California Plaintiffs' and California State Class members' Class Vehicles were and are defective, and the ACU Defect in their Class Vehicles were not remedied. Therefore, the California Plaintiffs and California State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for the Class Vehicles with an undisclosed safety defect that would not be remedied.

2433. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, the California Plaintiffs and California State Class members seek an order enjoining FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, and Toyota Sales USA from continuing their unfair and/or deceptive acts or practices, and for damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**c.    California Count 3: False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA**

2434. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

2435. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA.

2436. Plaintiff Kevin Burns brings this count individually and on behalf of members of the California State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2437. Plaintiff Michael Hernandez brings this count individually and on behalf of members of the California State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

2438. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count individually and on behalf of members of the California State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2439. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count individually and on behalf of members of the California State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

2440. Plaintiffs Mark Altier and Alejandra Renteria bring this count individually and on behalf of members of the California State Class who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

2441. For purposes of this count, "California Plaintiffs" refers to Plaintiffs Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez, Altier, and Renteria.

2442. For purposes of this count, "Class Vehicles" refers to the FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

2443. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Sales USA, the California Plaintiffs, and the California State Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

2444. The California False Advertising Law ("California FAL") prohibits false advertising. California Bus. & Prof. Code § 17500.

2445. In the course of their business, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA, through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

2446. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA had an ongoing duty to the California Plaintiffs and California State Class members to refrain from unfair or deceptive practices under the California FAL in the course of their business. Specifically, they owed the

California Plaintiffs and California State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because:

       a.    They possessed exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

       b.    They knew consumers lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

       c.    They knew that the ACU Defect gave rise to serious safety concerns for the consumers who purchased and lease Class Vehicles; and

       d.    They made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect.

2447. By misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

2448. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA made or caused to be made and disseminated throughout California advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were

known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including the California Plaintiffs and California State Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs and in the Exhibits hereto.

2449. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's and Toyota Sales USA's unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the California Plaintiffs and California State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs installed in them, the quality of the Class Vehicles and their brands, and the true value of the Class Vehicles.

2450. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's misrepresentations, omissions, and concealment of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Class Vehicles were material to the decisions of the California Plaintiffs and California State Class members to purchase and lease those vehicles, as FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA intended. The California Plaintiffs and California State Class members were exposed to those

misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's misrepresentations that the Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2451. The California Plaintiffs and California State Class members' reliance was reasonable, as they had no way of discerning that those representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The California Plaintiffs and California State Class members did not, and could not, unravel those Defendants' deception on their own.

2452. Had the California Plaintiffs and California State Class members known the truth about the ACU Defect, they would not have purchased or leased Class Vehicles, or would have paid significantly less for them.

2453. The California Plaintiffs and California State Class members suffered ascertainable losses and actual damages as a direct and proximate result of FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's concealment, misrepresentations, and/or failure to disclose material information.

2454. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's violations present a continuing risk to the California Plaintiffs and California State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the

defective ACUs and ASICs therein. The unlawful acts and practices complained of herein affect the public interest.

2455. The California Plaintiffs and California State Class members seek an order enjoining FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's false advertising, any such orders or judgments as may be necessary to restore to the California Plaintiffs and California State Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

2456. The California Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the California Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, the California Plaintiffs would have no adequate legal remedy.

> **d.** **California Count 4: Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi USA, Toyota USA, Toyota Sales USA, ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia[5]**

2457. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2458. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA, as well as ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany

---

[5] Plaintiffs bring this count against ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia based on their omissions and concealment of material facts only.

(collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA
(collectively, the "ST Defendants").

2459. Plaintiff Kevin Burns brings this count individually and on behalf of
members of the California State Class who purchased or leased Honda Class
Vehicles, against Honda Japan, Honda USA, Honda Engineering USA, the ZF
Defendants, and the ST Defendants.

2460. Plaintiff Michael Hernandez brings this count individually and on
behalf of members of the California State Class who purchased or leased Hyundai
Class Vehicles, against Hyundai Korea and Hyundai USA, the ZF Defendants, and
the ST Defendants.

2461. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count
individually and on behalf of members of the California State Class who purchased
or leased Kia Class Vehicles, against Kia Korea, Kia USA, the ZF Defendants, and
the ST Defendants.

2462. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count
individually and on behalf of members of the California State Class who purchased
or leased Mitsubishi Class Vehicles, against Mitsubishi Japan, Mitsubishi USA, the
ZF Defendants, and the ST Defendants.

2463. Plaintiffs Mark Altier and Alejandra Renteria bring this count
individually and on behalf of members of the California State Class who purchased
or leased Toyota Class Vehicles, against Toyota USA, Toyota Sales USA, the ZF
Defendants, and the ST Defendants.

2464. For purposes of this count, "California Plaintiffs" refers to Plaintiffs
Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez,
Altier, and Renteria.

2465. For purposes of this count, "Defendants" refers to FCA, Honda Japan,
Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea,
Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Sales USA, ZF

1  Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp.,

2  ZF Germany, ST Italy, ST Malaysia, and ST USA.

3  2466. For purposes of this count, "Class Vehicles" refers to FCA, Honda,

4  Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

5  2467. The Class Vehicles and ACUs installed in them are "goods" within the

6  meaning of Cal. Civ. Code § 1761(a).

7  2468. Defendants, the California Plaintiffs, and California State Class

8  members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

9  2469. The California Plaintiffs and California State Class members are

10  "consumers" within the meaning of Cal. Civ. Code § 1761(d).

11  2470. The California Legal Remedies Act ("CLRA") prohibits "unfair

12  methods of competition and unfair or deceptive acts or practices undertaken by any

13  person in a transaction intended to result or that results in the sale or lease of goods

14  or services to any consumer[.]" Cal. Civ. Code § 1770.

15  2471. In the course of their business, Defendants, through their agents,

16  employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally

17  misrepresenting, omitting, concealing, and/or failing to disclose material facts

18  regarding the reliability, safety, and performance of the Class Vehicles and the

19  defective ACUs, as detailed above.

20  2472. Defendants had an ongoing duty to the California Plaintiffs and

21  California State Class members to refrain from unfair or deceptive practices under

22  the CLRA in the course of their business. Specifically, Defendants owed the

23  California Plaintiffs and California State Class members a duty to disclose all the

24  material facts concerning the ACU Defect in the Class Vehicles because:

25          a.     Defendants possessed exclusive access to and far superior

26                knowledge about technical facts regarding the ACU Defect;

27

28

b.  Consumers lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.  Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who purchased and leased Class Vehicles; and

d.  Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect.

2473. By misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a.  Representing that the Class Vehicles and/or the defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have.

b.  Representing that the Class Vehicles and/or the defective ACUs installed in them are of a particular standard, quality, and grade when they are not.

c.  Advertising the Class Vehicles and/or the defective ACUs installed in them with the intent not to sell or lease them as advertised.

d.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

1    Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

2         2474. Defendants' unfair or deceptive acts or practices, including their

3    misrepresentations, concealments, omissions, and/or suppressions of material facts,

4    were designed to mislead and had a tendency or capacity to mislead and create a

5    false impression in consumers that the Class Vehicles had properly-functioning and

6    reliable airbags and seatbelts, and that the Occupant Restraint System did not

7    contain the ACU Defect and would perform its intended function of activating the

8    seatbelts and airbags during a collision. Indeed, those misrepresentations,

9    concealments, omissions, and suppressions of material facts did in fact deceive

10   reasonable consumers, including the California Plaintiffs and California State Class

11   members, about the true safety and reliability of Class Vehicles and/or the defective

12   ACUs installed in them, the quality of the Class Vehicles, and the true value of the

13   Class Vehicles.

14        2475. Defendants' misrepresentations, concealments, omissions, and

15   suppressions of material facts regarding the ACU Defect and true characteristics of

16   the Occupant Restraint Systems in the Class Vehicles were material to the decisions

17   of the California Plaintiffs and California State Class members to purchased and

18   leased those vehicles, as Defendants intended. The California Plaintiffs and

19   California State Class members were exposed to those misrepresentations,

20   concealments, omissions, and suppressions of material facts, and relied on

21   Defendants' misrepresentations that the Class Vehicles and their Occupant Restraint

22   Systems were safe and reliable in deciding to purchase and lease Class Vehicles.

23   Plaintiffs allege the information they relied upon in Section II.B above. To aid

24   review of this information, Exhibit 19 provides paragraph numbers for each

25   Plaintiff.

26        2476. The California Plaintiffs' and California State Class members' reliance

27   was reasonable, as they had no way of discerning that Defendants' representations

28   were false and misleading, or otherwise learning the facts that Defendants had

1    concealed or failed to disclose. The California Plaintiffs and California State Class
2    members did not, and could not, unravel Defendants' deception on their own.

3        2477. The California Plaintiffs and California State Class members suffered
4    ascertainable losses and actual damages as a direct and proximate result of
5    Defendants' concealment, misrepresentations, and/or failure to disclose material
6    information.

7        2478. Defendants' violations present a continuing risk to the California
8    Plaintiffs and California State Class members, as well as to the general public,
9    because the Class Vehicles remain unsafe due to the defective ACUs and ASICs
10   therein. Defendants' unlawful acts and practices complained of herein affect the
11   public interest.

12       2479. Defendants were provided notice of the issues raised in this count and
13   this Complaint by the NHTSA investigations, the numerous complaints filed
14   against them, and the individual notice letters sent by California State Class
15   members within a reasonable amount of time after the ACU Defect became public.
16   Additionally, on May 23, 2019, California State Class members sent a notice letter
17   pursuant to Cal. Civ. Code § 1782 to them. Moreover, a notice letter was sent on
18   behalf of the California Plaintiffs and California State Class members pursuant to
19   Cal. Civ. Code § 1782 to FCA, Honda Japan, Honda USA, Honda Engineering
20   USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi USA,
21   Toyota USA, Toyota Sales USA, and the ZF Defendants on April 24, 2020, and a
22   notice letter was sent to Mitsubishi Japan and ST USA on June 5, 2020. Finally, a
23   notice letter was sent to ST Italy and ST Malaysia pursuant to Cal. Civ. Code
24   § 1782 on May 25, 2022. Because Defendants failed to adequately remedy their
25   unlawful conduct within the requisite time period, the California Plaintiffs seek all
26   damages and relief to which the California Plaintiffs and California State Class
27   members are entitled.

28

2480. Pursuant to Cal. Civ. Code § 1782, Plaintiffs' counsel, on behalf of the California Plaintiffs and California State Class members, sent a notice letter to ST Italy and ST Malaysia on May 25, 2022, which demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice. As such, the California Plaintiffs' and California State Class members' claims against ST Italy and ST Malaysia under this count right now are for injunctive relief only. If ST Italy and ST Malaysia fail to correct or agree to correct the actions described in the notice letter, the California Plaintiffs will amend this Complaint to include all compensatory and monetary damages against ST Italy and ST Malaysia to which the California Plaintiffs and California Class members are entitled.

2481. Pursuant to Cal. Civ. Code § 1780(a), the California Plaintiffs and California State Class members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against all Defendants except ST Italy and ST Malaysia. With respect to ST Italy and ST Malaysia, the California Plaintiffs and California Class members seek an order enjoining those Defendants' unfair or deceptive acts or practices, and any other just and proper equitable relief available under the CLRA.

> **e. California Count 5: Unlawful, Unfair, or Fraudulent Business Practices Under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, Toyota Sales USA, ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST Malaysia, and ST USA**

2482. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

2483. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA, as well as ZF Electronics USA, ZF

Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2484. Plaintiff Kevin Burns brings this count individually and on behalf of members of the California State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, Honda Engineering USA, the ZF Defendants, and the ST Defendants.

2485. Plaintiff Michael Hernandez brings this count individually and on behalf of members of the California State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA, the ZF Defendants, and the ST Defendants.

2486. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count individually and on behalf of members of the California State Class who purchased or leased Kia Class Vehicles, against Kia Korea, Kia USA, ZF Defendants, and the ST Defendants.

2487. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count individually and on behalf of members of the California State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan, Mitsubishi USA, the ZF Defendants, and the ST Defendants.

2488. Plaintiffs Mark Altier and Alejandra Renteria bring this count individually and on behalf of members of the California State Class who purchased or leased Toyota Class Vehicles, against Toyota USA, Toyota Sales USA, Toyota Engineering USA, the ZF Defendants, and the ST Defendants.

2489. For purposes of this count, "California Plaintiffs" refers to Plaintiffs Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez, Altier, and Renteria.

2490. For purposes of this count, "Defendants" refers to FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea,

Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, Toyota Sales USA, ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST Malaysia, and ST USA.

2491. For purposes of this count, "Class Vehicles" refers to FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

2492. California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

2493. Defendants committed an unlawful business act or practice in violation of §17200 by violating the Federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, the California FAL, the CLRA, and other laws alleged herein.

2494. Defendants committed fraudulent acts or practices in violation of §17200.[6] Specifically, as alleged in detail above, Defendants designed, developed, tested, manufactured, and/or installed defective ACUs into Class Vehicles, knowingly and intentionally marketed and sold those Class Vehicles with the defective ACUs installed while misrepresenting the safety of the Class Vehicles, and/or and omitting, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles from both NHTSA and consumers alike, including the California Plaintiffs and California State Class members.

2495. Defendants had an ongoing duty to the California Plaintiffs and California State Class members to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed the California Plaintiffs and

---

[6] Plaintiffs bring their claim under the fraudulent prong of the UCL against ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia based on their omissions and concealment of material facts only.

California State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because:

    a.    Defendants possessed exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Consumers lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who purchased and leased Class Vehicles; and

    d.    Defendants made, helped to make, or conspired to make incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect.

2496. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Class Vehicles' Occupant Restraint Systems did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the California Plaintiffs and California State Class members, about the true safety and reliability of Class Vehicles, the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2497. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of

the Occupant Restraint Systems in the Class Vehicles were material to the decisions
of the California Plaintiffs and California State Class members to purchase and
lease those vehicles, as Defendants intended. The California Plaintiffs and
California State Class members were exposed to those misrepresentations,
concealments, omissions, and suppressions of material facts, and relied on
Defendants' misrepresentations that the Class Vehicles and their Occupant Restraint
Systems were safe and reliable in deciding to purchase and lease Class Vehicles.
Plaintiffs allege the information they relied upon in Section II.B above. To aid
review of this information, Exhibit 19 provides paragraph numbers for each
Plaintiff.

2498. The California Plaintiffs' and California State Class members' reliance
was reasonable, as they had no way of discerning Defendants' representations were
false and misleading, or otherwise learning that the Class Vehicles contained the
ACU Defect, as alleged above. The California Plaintiffs and California State Class
members did not, and could not, unravel Defendants' deception on their own.

2499. Had they known the truth about the ACU Defect, the California
Plaintiffs and California State Class members would not have purchased or leased
the Class Vehicles, or would have paid significantly less for them.

2500. Additionally, Defendants committed unfair business acts and practices
in violation of § 17200 when they concealed the existence and nature of the ACU
Defect and the dangers and risks posed by the Class Vehicles and the ACU Defect
installed in them from consumers and NHTSA while misrepresenting or conspiring
to misrepresent that the Class Vehicles and the defective ACUs and ASICs installed
in them were reliable and safe when, in fact, they are not. These acts and practices
offend established public policy and the harm they cause to consumers greatly
outweighs any benefits associated with those practices. Defendants' conduct has
also impaired competition within the automotive vehicles market and has prevented
the California Plaintiffs and the California State Class members from making fully

1    informed decisions about whether to purchase or lease Class Vehicles and/or the

2    price to be paid to purchase or lease them.

3       2501. The California Plaintiffs and California State Class members suffered

4    ascertainable losses as a direct and proximate result of Defendants' unlawful,

5    fraudulent, and unfair business acts and practices.

6       2502. Defendants' acts and practices described above present a continuing

7    risk to the California Plaintiffs and California State Class members, as well as to the

8    general public, because the Class Vehicles remain unsafe due to the defective ACUs

9    and ASICs therein. Defendants' unlawful acts and practices complained of herein

10    affect the public interest.

11       2503. Pursuant to Cal. Bus. & Prof. Code § 17200, the California Plaintiffs

12    and California State Class members seek an order enjoining Defendants' unfair

13    and/or deceptive acts or practices, any such orders or judgments as may be

14    necessary to restore to the California Plaintiffs and California State Class members

15    any money acquired by unfair competition, including restitution and/or

16    restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203, and

17    any other just and proper relief available under the California UCL.

18       2504. The California Plaintiffs plead this claim separately as well as in the

19    alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the

20    California Plaintiffs' claims for damages are dismissed or judgment is entered on

21    them in favor of Defendants, the California Plaintiffs will have no adequate legal

22    remedy.

23       **f.**      **California Count 6: Fraud by Omission and Concealment**

24             **Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia**

25             **Korea, Kia USA, Toyota USA, Toyota Sales USA, Mitsubishi Japan, and Mitsubishi USA**

26       2505. Plaintiffs reallege and incorporate by reference all preceding

27    allegations as though fully set forth herein.

28

2506. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA.

2507. Plaintiff Kevin Burns brings this count individually and on behalf of members of the California State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2508. Plaintiff Michael Hernandez brings this count individually and on behalf of members of the California State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

2509. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count individually and on behalf of members of the California State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2510. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count individually and on behalf of members of the California State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

2511. Plaintiffs Mark Altier and Alejandra Renteria bring this count individually and on behalf of members of the California State Class who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

2512. For purposes of this count, "California Plaintiffs" refers to Plaintiffs Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez, Altier, and Renteria.

2513. For purposes of this count, "Class Vehicles" refers to FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

2514. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA are liable for both fraudulent concealment and non-disclosure. See, e.g., Restatement (Second) of Torts §§ 550-51 (1977).

2515. As explained in Section V, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the `vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2516. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA had a duty to disclose the ACU Defect to the California Plaintiffs and the California State Class members because:

    a.    FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the California Plaintiffs and California State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles

containing the ACU Defect would have been a material fact to
the California Plaintiffs' and California State Class members'
decisions to buy or lease FCA, Class Vehicles; and

d.    FCA, Honda Japan, Honda USA, Honda Engineering USA,
Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi
Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA
made incomplete representations about the safety and reliability
of the Class Vehicles and their Occupant Restraint System,
while purposefully withholding material facts about a known
safety defect. In uniform advertising and materials provided
with each Class Vehicle, FCA, Honda Japan, Honda USA,
Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia
Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota
USA, and Toyota Sales USA intentionally concealed,
suppressed, and failed to disclose to the consumers that the
Class Vehicles contained the ACU Defect. Because they
volunteered to provide information about the Class Vehicles that
they marketed and offered for sale and lease to consumers, FCA,
Honda Japan, Honda USA, Honda Engineering USA, Hyundai
Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan,
Mitsubishi USA, Toyota USA, and Toyota Sales USA had the
duty to disclose the whole truth.

2517. In breach of their duties, FCA, Honda Japan, Honda USA, Honda
Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi
Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA failed to disclose that
the Class Vehicles were not safe and reliable, and that their Occupant Restraint
Systems, including their airbags and seatbelt pretensioners could fail in the event of
a crash due to the ACU Defect.

2518.  FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA intended for the California Plaintiffs and California State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2519.  That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2520.  Additionally, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA ensured that the California Plaintiffs and California State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2521.  FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for

those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the California Plaintiffs and California State Class members.

2522. To this day, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the California Plaintiffs and California State Class members.

2523. Had they been aware of the ACU Defect in the Class Vehicles, and FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's callous disregard for safety, the California Plaintiffs and California State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2524. As alleged in Section V above, if FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the California Plaintiffs and California State Class members would have seen such a disclosure.

2525. Accordingly, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, and Toyota Sales USA are liable to the California Plaintiffs and California State Class members for their damages in an amount to be

proven at trial, including, but not limited to, their lost overpayment for the Class
Vehicles at the time of purchase or lease.

2526. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's,
Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Mitsubishi Japan's,
Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's acts were done
maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard
of the California Plaintiffs' and California State Class members' rights and well-
being; and to enrich themselves. FCA's, Honda Japan's, Honda USA's, Honda
Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's,
Mitsubishi Japan's, Mitsubishi USA's, Toyota USA's, and Toyota Sales USA's
misconduct warrants an assessment of punitive damages, as permitted by law, in an
amount sufficient to deter such conduct in the future, which amount shall be
determined according to proof at trial.

### g. California Count 7: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia

2527. Plaintiffs reallege and incorporate by reference all preceding
allegations as though fully set forth herein.

2528. The California Plaintiffs bring this count individually and on behalf of
members of the California State Class who purchased or leased Class Vehicles,
against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF
TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST
Malaysia, and ST USA (collectively, the "ST Defendants").

2529. The ZF and ST Defendants are liable for both fraudulent concealment
and non-disclosure. See, e.g., Restatement (Second) of Torts §§ 550-51 (1977).

2530. As explained in Section IV.A, the ACU Defect in Class Vehicles poses
serious risks to vehicle occupants, including that it can cause: (1) airbags and
seatbelts not to activate during a crash because crashes can sometimes release

electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2531. The ZF and ST Defendants had a duty to disclose the ACU Defect to the California Plaintiffs and California State Class members because:

      a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.    Given the ACU Defect's hidden and technical nature, the California Plaintiffs and California State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

      c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the California Plaintiffs' and California State Class members' decisions to buy or lease Class Vehicles; and

      d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle

Manufacturer Defendants on the design and inclusion of the
airbag readiness indicators in the Class Vehicles, which falsely
assured Plaintiffs and Class Members that the Occupant
Restraint Systems in the Class Vehicles would function properly
in a crash.

2532. In breach of their duties, the ZF and ST Defendants failed to disclose
that the Class Vehicles were not safe and reliable, and that their Occupant Restraint
Systems, including their airbags and seatbelt pretensioners could fail in the event of
a crash due to the ACU Defect.

2533. The ZF and ST Defendants intended for the California Plaintiffs and
California State Class members to rely on their omissions—which they did by
purchasing and leasing the Class Vehicles at the prices they paid believing that the
Occupant Restraint Systems in their Class Vehicles would function properly.

2534. That reliance was reasonable, because a reasonable consumer would
not have expected that the Class Vehicles contained a safety defect that poses such a
serious risk. The ZF and ST Defendants knew that reasonable consumers expect
that their vehicle has working airbags and seatbelt pretensioners and would rely on
those facts in deciding whether to purchase, lease, or retain a new or used motor
vehicle. Whether a manufacturer's products are safe and reliable, and whether that
manufacturer stands behind its products, are material concerns to a consumer.
Especially here, when at least nine people have already died due to the ACU
Defect, and many more have been injured.

2535. Additionally, the ZF and ST Defendants ensured that the California
Plaintiffs and California State Class members did not discover this information by
actively concealing and misrepresenting the true nature of the Class Vehicles'
Occupant Restraint Systems to consumers and NHTSA.

2536. The ZF and ST Defendants actively concealed and suppressed these
material facts, in whole or in part, to maintain a market for the DS84 ACU, to

protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the California Plaintiffs and California State Class members.

2537. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the California Plaintiffs and California State Class members.

2538. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the California Plaintiffs and California State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2539. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the California Plaintiffs and California State Class members would have seen such a disclosure.

2540. Accordingly, the ZF and ST Defendants are liable to the California Plaintiffs and California State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

2541. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the California Plaintiffs' and California State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**h.** **California Count 8: Unjust Enrichment Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA**

2542. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above though fully set forth herein.

2543. Plaintiffs Remigiusz Rundzio and Steve Laveaux bring this count individually and on behalf of members of the California State Class who purchased or leased FCA Class Vehicles, against FCA.

2544. Plaintiff Kevin Burns brings this count individually and on behalf of members of the California State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2545. Plaintiff Michael Hernandez brings this count individually and on behalf of members of the California State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

2546. Plaintiffs Bonnie Dellatorre and Lore Van Houten bring this count individually and on behalf of members of the California State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2547. Plaintiffs Tiffany Ecklor and Gaylynn Sanchez bring this count individually and on behalf of members of the California State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

2548. Plaintiffs Mark Altier and Alejandra Renteria bring this count individually and on behalf of members of the California State Class who purchased or leased Toyota Class Vehicles, against Toyota USA, Toyota Engineering USA, and Toyota Sales USA.

2549. For purposes of this count, "California Plaintiffs" refers to Plaintiffs Rundzio, Laveaux, Burns, Hernandez, Dellatorre, Van Houten, Ecklor, Sanchez, Altier, and Renteria.

2550. For purposes of this count, "Class Vehicles" refers to FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Class Vehicles.

2551. When they purchased and leased the Class Vehicles, the California Plaintiffs and California State Class members conferred tangible and material economic benefits upon FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA, who readily accepted and retained these benefits.

2552. The California Plaintiffs and California State Class members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA profited from the sale and lease of the Class Vehicles to the detriment and expense of the California Plaintiffs and California State Class members.

2553. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA appreciated these economic benefits. These benefits were the expected result of FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the California Plaintiffs and California State Class members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2554. It would be unjust, inequitable, and unconscionable for FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2555. The California Plaintiffs and California State Class members are entitled to restitution of the benefits FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Mitsubishi Japan, Mitsubishi USA, Toyota USA, Toyota Engineering USA, and Toyota Sales USA unjustly retained and/or any amounts necessary to return the California Plaintiffs and California State Class members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2556.     The California Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the California Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, the California Plaintiffs will have no adequate legal remedy.

**4.     Colorado**

    **a.     Colorado Count 1: Breach of Express Warranty (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210) Mitsubishi Japan and Mitsubishi USA**

2557. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2558. Plaintiff Michael Nearing (hereinafter, "Colorado Plaintiff") brings this count individually and on behalf of members of the Colorado State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

2559. Mitsubishi Japan and Mitsubishi USA are and were at all relevant times "merchants" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

2560. With respect to leases, Mitsubishi Japan and Mitsubishi USA are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

2561. All Colorado State Class members who purchased Mitsubishi Class Vehicles in Colorado are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-103(1)(a).

2562. All Colorado State Class members who leased Mitsubishi Class Vehicles in Colorado are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(p).

2563. The Mitsubishi Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

2564. In connection with the purchase or lease of Mitsubishi Class Vehicles, Mitsubishi Japan and Mitsubishi USA provided the Colorado Plaintiff and Colorado State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Mitsubishi Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

2565. However, Mitsubishi Japan and Mitsubishi USA knew or should have known that the warranties were false and/or misleading. Specifically, Mitsubishi Japan and Mitsubishi USA were aware of the ACU Defect in the Mitsubishi Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Colorado Plaintiff and Colorado State Class members.

2566. The Colorado Plaintiff and Colorado State Class members were aware the Mitsubishi Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and Mitsubishi Japan and Mitsubishi USA when the Colorado Plaintiff and Colorado State Class members unknowingly purchased and leased Mitsubishi Class Vehicles that came equipped with defective ACUs and ASICs.

2567. Mitsubishi Japan and Mitsubishi USA misrepresented the Mitsubishi Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Colorado Plaintiff and Colorado State Class members were exposed to those misrepresentations, and the Colorado Plaintiff and Colorado State Class members had no way of discerning that Mitsubishi Japan's and Mitsubishi USA's representations were false and misleading or otherwise learning the material facts that Mitsubishi Japan and Mitsubishi USA had concealed or failed to disclose. Accordingly, the Colorado Plaintiff and Colorado State Class members reasonably relied on Mitsubishi Japan's and Mitsubishi USA's express warranties when purchasing or leasing their Mitsubishi Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2568. Mitsubishi Japan and Mitsubishi USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Mitsubishi Class Vehicles. Mitsubishi Japan and Mitsubishi USA also breached their express warranties by selling and leasing Mitsubishi Class Vehicles with a defect that was never disclosed to the Colorado Plaintiff and Colorado State Class members.

2569. The Colorado Plaintiff and Colorado State Class members have provided Mitsubishi Japan and Mitsubishi USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by

Colorado State Class members within a reasonable amount of time after the ACU Defect became public. *See* ECF No. 396 at 133 ("Plaintiffs have alleged that they provided pre-suit notice to the Mitsubishi Defendants, which is sufficient to state a claim for breach of express warranty under Colorado law."). On April 24, 2020 and June 5, 2020, notice letters were sent on behalf of the Colorado Plaintiff and Colorado State Class members to Mitsubishi USA and Mitsubishi Japan, respectively.

2570. Alternatively, the Colorado Plaintiff and Colorado State Class members were excused from providing Mitsubishi Japan and Mitsubishi USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Mitsubishi Japan and Mitsubishi USA have long known that the Mitsubishi Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Mitsubishi Japan and Mitsubishi USA have not instituted a recall or any other repair program, or even acknowledged that the ACU Defect exists—even though Mitsubishi Class Vehicles are subject to the NHTSA investigation. Therefore, the Colorado Plaintiff and Colorado State Class members had no reason to believe that Mitsubishi Japan and Mitsubishi USA would have repaired the ACU Defect if the Colorado Plaintiff and Colorado State Class members presented their Class Vehicles to Mitsubishi Japan and Mitsubishi USA for repair.

2571. As a direct and proximate result of Mitsubishi Japan's and Mitsubishi USA's breach of their express warranties, the Mitsubishi Class Vehicles were and are defective and the ACU Defect in the Colorado Plaintiff's and Colorado State Class members' Mitsubishi Class Vehicles was not remedied. Therefore, the Colorado Plaintiff and Colorado State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Mitsubishi Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.    Colorado Count 2: Breach of Implied Warranty of Merchantability (Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212) Against Mitsubishi USA**

2572. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2573. The Colorado Plaintiff brings this count individually and on behalf of members of the Colorado State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi USA.

2574. A warranty that the Mitsubishi Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212.

2575. The Mitsubishi Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

2576. With respect to leases, the Mitsubishi Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

2577. All Colorado State Class members who purchased Mitsubishi Class Vehicles in Colorado are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-103(1)(a).

2578. All Colorado State Class members who leased Mitsubishi Class Vehicles in Colorado are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(p).

2579. The Mitsubishi Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

2580. The Mitsubishi Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Mitsubishi Class Vehicles contain the ACU Defect,

which may cause the airbags and seatbelt pretensioners to fail to deploy during a
crash, the failure to unlock doors automatically after a crash, the failure to turn off a
fuel supply or high-voltage battery after a crash, or the airbags to inadvertently
deploy, rendering the Mitsubishi Class Vehicles inherently defective and
dangerous.

2581. The Colorado Plaintiff and Colorado State Class members have
provided Mitsubishi USA with reasonable notice and opportunity to cure the
breaches of their express warranties by way of the numerous NHTSA complaints
filed against them, and the individual notice letters sent by Colorado State Class
members within a reasonable amount of time after the ACU Defect became public.
On April 24, 2020 and June 5, 2020, notice letters were sent on behalf of the
Colorado Plaintiff and Colorado State Class members to Mitsubishi USA and
Mitsubishi Japan, respectively.

2582. Alternatively, the Colorado Plaintiff and Colorado State Class
members were excused from providing Mitsubishi Japan and Mitsubishi USA with
notice and an opportunity to cure the breach, because it would have been futile. As
alleged above, Mitsubishi USA have long known that the Mitsubishi Class Vehicles
contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs
to malfunction in crashes involving Class Vehicles; however, to date, Mitsubishi
Japan and Mitsubishi USA have not instituted a recall or any other repair program,
or even acknowledged that the ACU Defect exists—even though Mitsubishi Class
Vehicles are subject to the NHTSA investigation. Therefore, the Colorado Plaintiff
and Colorado State Class members had no reason to believe that Mitsubishi Japan
and Mitsubishi USA would have repaired the ACU Defect if the Colorado Plaintiff
and Colorado State Class members presented their Class Vehicles to Mitsubishi
Japan and Mitsubishi USA for repair.

2583. As a direct and proximate result of Mitsubishi Japan's and Mitsubishi
USA's breach of the implied warranty of merchantability, the Colorado Plaintiff

1    and Colorado State Class members have been damaged in an amount to be proven

2    at trial.

3

           **c.**      **Colorado Count 3: Violation of the Colorado Consumer**

4                   **Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*) Against Mitsubishi Japan and Mitsubishi USA**

5        2584. Plaintiffs reallege and incorporate by reference all preceding

6    allegations as though fully set forth herein.

7        2585. The Colorado Plaintiff brings this count individually and on behalf of

8    members of the Colorado State Class who purchased or leased Mitsubishi Class

9    Vehicles, against the Mitsubishi Japan and Mitsubishi USA.

10       2586. Mitsubishi Japan, Mitsubishi USA, the Colorado Plaintiff, and

11    Colorado State Class members are "persons" within the meaning of Colo. Rev. Stat.

12    § 6-1-102(6).

13       2587. The Colorado Consumer Protection Act ("Colorado CPA") prohibits

14    unfair, unconscionable, and deceptive acts or practices in the course of the person's

15    business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

16       2588. In the course of their business, Mitsubishi Japan and Mitsubishi USA,

17    through their agents, employees, and/or subsidiaries, violated the Colorado CPA by

18    knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to

19    disclose material facts regarding the reliability, safety, and performance of the

20    Mitsubishi Class Vehicles, the safety of their Occupant Restraint Systems, and the

21    ACU Defect, as detailed above.

22       2589. Mitsubishi Japan and Mitsubishi USA had an ongoing duty to the

23    Colorado Plaintiff and Colorado State Class members to refrain from unfair or

24    deceptive practices under the Colorado DTPA in the course of their business.

25    Specifically, Mitsubishi Japan and Mitsubishi USA owed the Colorado Plaintiff and

26    Colorado State Class members a duty to disclose all the material facts concerning

27    the ACU Defect in the Mitsubishi Class Vehicles because they possessed exclusive

28    knowledge, they intentionally concealed the ACU Defect from the Colorado

Plaintiff and Colorado State Class members, and they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2590. By misrepresenting the Mitsubishi Class Vehicles and the defective ACUs and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect, Mitsubishi Japan and Mitsubishi USA engaged in one or more of the following unfair or deceptive business practices prohibited by Colo. Rev. Stat. § 6-1-105:

     a.    Representing that the Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them have characteristics, uses, benefits, and qualities which they do not have;

     b.    Making false representations about the approval or certification of the Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them;

     c.    Making false representations regarding the characteristics, uses, and benefits of the Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them;

     d.    Representing that the Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them are of a particular standard, quality, and grade when they are not;

     e.    Advertising the Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them with the intent not to sell or lease them as advertised;

     f.    Engaging in the other unconscionable, false, misleading, or deceptive acts or practices pertaining to the Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them alleged above.

Colo. Rev. Stat. §§ 6-1-105(1)(b), (e), (g), (i), and (3).

2591. Mitsubishi Japan's and Mitsubishi USA's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers that the Mitsubishi Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Colorado Plaintiff and Colorado State Class members, about the true safety and reliability of Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Mitsubishi Class Vehicles, and the true value of the Mitsubishi Class Vehicles.

2592. Mitsubishi Japan's and Mitsubishi USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Mitsubishi Class Vehicles were material to the decisions of the Colorado Plaintiff and Colorado State Class members to purchase and lease those vehicles, as Mitsubishi Japan and Mitsubishi USA intended. The Colorado Plaintiff and Colorado State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Mitsubishi Japan's and Mitsubishi USA's misrepresentations that the Mitsubishi Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Mitsubishi Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2593. The Colorado Plaintiff's and Colorado State Class members' reliance was reasonable, as they had no way of discerning that Mitsubishi Japan's and Mitsubishi USA's representations were false and misleading, or otherwise learning the facts that Mitsubishi Japan and Mitsubishi USA had concealed or failed to disclose. The Colorado Plaintiff and Colorado State Class members did not, and could not, unravel Mitsubishi Japan's and Mitsubishi USA's deception on their own.

2594. Had the Colorado Plaintiff and Colorado State Class members known the truth about the ACU Defect, the Colorado Plaintiff and Colorado State Class members would not have purchased or leased Mitsubishi Class Vehicles, or would have paid significantly less for them.

2595. The Colorado Plaintiff and Colorado State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Mitsubishi Class Vehicles with an undisclosed safety defect as a direct and proximate result of Mitsubishi Japan's and Mitsubishi USA's concealment, misrepresentations, and/or failure to disclose material information.

2596. Mitsubishi Japan's and Mitsubishi USA's violations present a continuing risk to the Colorado Plaintiff and Colorado State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, Mitsubishi Japan's and Mitsubishi USA's unlawful acts and practices complained of herein affect the public interest.

2597. Pursuant to Colo. Rev. Stat. § 6-1-113, the Colorado Plaintiff and the Colorado State Class members seek an order enjoining Mitsubishi Japan's and Mitsubishi USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Colorado CPA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

  **d.**  **Colorado Count 4: Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2598. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2599. The Colorado Plaintiff brings this count individually and on behalf of members of the Colorado State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2600. The ZF Defendants, the ST Defendants, the Colorado Plaintiff, and Colorado State Class members are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

2601. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices in the course of the person's business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

2602. The ZF and ST Defendants had an ongoing duty to the Colorado Plaintiff and Colorado State Class members to refrain from unfair or deceptive practices under the Colorado CPA in the course of their business. Specifically, the ZF and ST Defendants owed the Colorado Plaintiff and Colorado State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Colorado Plaintiff and Colorado State Class members.

2603. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally omitting, concealing, and failing to disclose material

1    facts regarding the existence, nature, and scope of the ACU Defect in the Class

2    Vehicles, as detailed above.

3        2604.  Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF

4    Automotive USA, through their agents, employees, and/or subsidiaries, violated the

5    Colorado CPA by knowingly and intentionally misrepresenting the Class Vehicles

6    as safe and reliable and the defective ACU and ASICs installed in them as properly-

7    functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive

8    Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer

9    Defendants on the design and inclusion of the airbag readiness indicators in the

10   Class Vehicles, which falsely assured Plaintiffs and Class Members that the

11   Occupant Restraint Systems in the Class Vehicles would function properly in a

12   crash.

13       2605.  By misrepresenting, failing to disclose and actively concealing the

14   dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and

15   ST Defendants engaged in deceptive trade practices prohibited by Colo. Rev. Stat.

16   § 6-1-105, including failing to disclose material information.

17       2606.  The ZF and ST Defendants' unfair or deceptive acts or practices,

18   including their misrepresentations, concealments, omissions, and suppressions of

19   material facts, were designed to mislead and had a tendency or capacity to mislead

20   and create a false impression in consumers that the Class Vehicles had properly-

21   functioning and reliable airbags and seatbelts, and that the Occupant Restraint

22   System did not contain the ACU Defect and would perform its intended function of

23   activating the seatbelts and airbags during a collision. Indeed, those

24   misrepresentations, concealments, omissions, and suppressions of material facts did

25   in fact deceive reasonable consumers, including the Colorado Plaintiff and

26   Colorado State Class members, about the true safety and reliability of Class

27   Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the

28   Class Vehicles, and the true value of the Class Vehicles.

2607. The Colorado Plaintiff and Colorado State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Colorado Plaintiff and Colorado State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

2608. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Colorado Plaintiff and Colorado State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Colorado Plaintiff and Colorado State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2609. The Colorado Plaintiff and Colorado State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and/or failure to disclose material information.

2610. The ZF and ST Defendants' violations present a continuing risk to the Colorado Plaintiff and Colorado State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

2611. Pursuant to Colo. Rev. Stat. § 6-1-113, the Colorado Plaintiff and Colorado State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Colorado CPA.

1          e.      **Colorado Count 5: Fraud by Omission and Concealment Against Mitsubishi Japan and Mitsubishi USA**

2

3          2612. Plaintiffs reallege and incorporate by reference all preceding

4   allegations as though fully set forth herein.

5          2613. The Colorado Plaintiff brings this count individually and on behalf of

6   members of the Colorado State Class who purchased or leased Mitsubishi Class

7   Vehicles, against Mitsubishi Japan and Mitsubishi USA.

8          2614. Mitsubishi Japan and Mitsubishi USA are liable for both fraudulent

9   concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-

10  51 (1977).

11         2615. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

12  serious risks to vehicle occupants, including that it can cause: (1) airbags and

13  seatbelts not to activate during a crash because crashes can sometimes release

14  electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

15  vehicle has not crashed, which is dangerous because it is shocking and difficult for

16  the driver to operate a vehicle when the airbag deploys without warning; and (3)

17  failures of other important post-crash operations of the safety system, such as

18  unlocking doors to facilitate escape or extraction of drivers and passengers by

19  emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

20         2616. Mitsubishi Japan and Mitsubishi USA had a duty to disclose the ACU

21  Defect to the Colorado Plaintiff and Colorado State Class members because:

22              a.      Mitsubishi Japan and Mitsubishi USA had exclusive access to

23                      and far superior knowledge about technical facts regarding the

24                      ACU Defect;

25              b.      Given the ACU Defect's hidden and technical nature, the

26                      Colorado Plaintiff and Colorado State Class members lack the

27                      sophisticated expertise in vehicle components and electrical

28

phenomena that would be necessary to discover the ACU Defect on their own;

c.  Mitsubishi Japan and Mitsubishi USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Mitsubishi Class Vehicles containing the ACU Defect would have been a material fact to the Colorado Plaintiff's and Colorado State Class members' decisions to buy or lease Mitsubishi Class Vehicles; and

d.  Mitsubishi Japan and Mitsubishi USA made incomplete representations about the safety and reliability of the Mitsubishi Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Mitsubishi Japan, and Mitsubishi USA intentionally concealed, suppressed, and failed to disclose to the Colorado Plaintiff and Colorado State Class members that the Mitsubishi Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Mitsubishi Class Vehicles that they marketed and offered for sale and lease to the Colorado Plaintiff and Colorado State Class members, Mitsubishi Japan and Mitsubishi USA had the duty to disclose the whole truth.

2617. In breach of their duties, Mitsubishi Japan and Mitsubishi USA failed to disclose that the Mitsubishi Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2618. Mitsubishi Japan and Mitsubishi USA intended for the Colorado Plaintiff and Colorado State Class members to rely on their omissions—which they

did by purchasing and leasing the Mitsubishi Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2619. That reliance was reasonable, because a reasonable consumer would not have expected that the Mitsubishi Class Vehicles contained a safety defect that poses such a serious risk. Mitsubishi Japan and Mitsubishi USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2620. Additionally, Mitsubishi Japan and Mitsubishi USA ensured that the Colorado Plaintiff and Colorado State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Mitsubishi Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2621. Mitsubishi Japan and Mitsubishi USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Colorado Plaintiff and Colorado State Class members.

2622. To this day, Mitsubishi Japan and Mitsubishi USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and

1   because they directly impact the value of the Mitsubishi Class Vehicles purchased

2   or leased by the Colorado Plaintiff and Colorado State Class members.

3       2623. Had they been aware of the ACU Defect in the Mitsubishi Class

4   Vehicles, and Mitsubishi Japan's and Mitsubishi USA's callous disregard for

5   safety, the Colorado Plaintiff and Colorado State Class members either would not

6   have paid as much as they did for their Class Vehicles, or they would not have

7   purchased or leased them.

8       2624. As alleged in Section V above, if Mitsubishi Japan and Mitsubishi

9   USA had fully and adequately disclosed the ACU Defect to consumers and

10  NHTSA, the Colorado Plaintiff and Colorado State Class members would have

11  seen such a disclosure.

12      2625. Accordingly, Mitsubishi Japan and Mitsubishi USA are liable to the

13  Colorado Plaintiff and Colorado State Class members for their damages in an

14  amount to be proven at trial, including, but not limited to, their lost overpayment

15  for the Mitsubishi Class Vehicles at the time of purchase or lease.

16      2626. Mitsubishi Japan's and Mitsubishi USA's acts were done maliciously,

17  oppressively, deliberately, with intent to defraud; in reckless disregard of the

18  Colorado Plaintiff's and Colorado State Class members' rights and well-being; and

19  to enrich themselves. Mitsubishi Japan's and Mitsubishi USA's misconduct

20  warrants an assessment of punitive damages, as permitted by law, in an amount

21  sufficient to deter such conduct in the future, which amount shall be determined

22  according to proof at trial.

23          **f.**    **Colorado Count 6: Fraud by Omission and Concealment**
24                 **Against ZF Electronics USA, ZF Passive Safety USA, ZF**
               **Automotive USA, ZF TRW Corp., ZF Germany, ST Italy,**
25                 **ST USA, and ST Malaysia**

26      2627. Plaintiffs reallege and incorporate by reference all preceding

27  allegations as though fully set forth herein.

28

2628.  The Colorado Plaintiff brings this count individually and on behalf of members of the Colorado State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2629.  The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2630.  As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2631.  The ZF and ST Defendants had a duty to disclose the ACU Defect to the Colorado Plaintiff and Colorado State Class members because:

      a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.    Given the ACU Defect's hidden and technical nature, the Colorado Plaintiff and Colorado State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

      c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the

vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Colorado Plaintiff's and Colorado State Class members' decisions to buy or lease Class Vehicles; and

    d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2632. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2633. The ZF and ST Defendants intended for the Colorado Plaintiff and Colorado State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2634. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor

1     vehicle. Whether a manufacturer's products are safe and reliable, and whether that

2     manufacturer stands behind its products, are material concerns to a consumer.

3     Especially here when at least nine people have already died due to the ACU Defect,

4     and many more have been injured.

5        2635. Additionally, the ZF and ST Defendants ensured that the Colorado

6     Plaintiff and Colorado State Class members did not discover this information by

7     actively concealing and misrepresenting the true nature of the Class Vehicles'

8     Occupant Restraint Systems to consumers and NHTSA.

9        2636. The ZF and ST Defendants actively concealed and suppressed these

10    material facts, in whole or in part, to maintain a market for the DS84 ACU, to

11    protect profits, and to avoid costly recalls that would expose them to liability for

12    those expenses and harm the commercial reputations of Defendants and their

13    products. They did so at the expense of the Colorado Plaintiff and Colorado State

14    Class members.

15       2637. To this day, the ZF and ST Defendants have not fully and adequately

16    disclosed the ACU Defect, and they continue to conceal material information about

17    the defect from consumers and NHTSA. The omitted and concealed facts were

18    material because a reasonable person would find them important in purchasing,

19    leasing, or retaining a new or used motor vehicle, and because they directly impact

20    the value of the Class Vehicles purchased or leased by the Colorado Plaintiff and

21    Colorado State Class members.

22       2638. Had they been aware of the ACU Defect in the Class Vehicles, and the

23    ZF and ST Defendants' callous disregard for safety, the Colorado Plaintiff and

24    Colorado State Class members either would not have paid as much as they did for

25    their Class Vehicles, or they would not have purchased or leased them.

26       2639. As alleged in Section V above, if the ZF and ST Defendants had fully

27    and adequately disclosed the ACU Defect to consumers and NHTSA, the Colorado

28    Plaintiff and Colorado State Class members would have seen such a disclosure.

2640. Accordingly, the ZF and ST Defendants are liable to the Colorado Plaintiff and Colorado State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

2641. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Colorado Plaintiff's and Colorado State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### g. Colorado Count 7: Unjust Enrichment Against Mitsubishi Japan and Mitsubishi USA

2642. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

2643. The Colorado Plaintiff brings this count individually and on behalf of members of the Colorado State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

2644. The Colorado Plaintiff and Colorado State Class members conferred tangible and material economic benefits upon Mitsubishi Japan and Mitsubishi USA when they purchased or leased the Mitsubishi Class Vehicles. Mitsubishi Japan and Mitsubishi USA readily accepted and retained these benefits.

2645. The Colorado Plaintiff and Colorado State Class members would not have purchased or leased the Mitsubishi Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Mitsubishi Japan and Mitsubishi USA profited from the sale and lease of the Mitsubishi Class Vehicles to the detriment and expense of the Colorado Plaintiff and Colorado State Class members.

2646. Mitsubishi Japan and Mitsubishi USA appreciated these monetary benefits. These benefits were the expected result of the Mitsubishi Defendants acting in their pecuniary interest at the expense of their customers. Mitsubishi Japan and Mitsubishi USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Colorado Plaintiff and Colorado State Class members regarding the nature and quality of the Mitsubishi Class Vehicles while profiting from this deception.

2647. It would be unjust, inequitable, and unconscionable for Mitsubishi Japan and Mitsubishi USA to retain these benefits, including because they were procured as a result of Mitsubishi Japan's and Mitsubishi USA's wrongful conduct alleged above.

2648. The Colorado Plaintiff and Colorado State Class members are entitled to restitution of the benefits Mitsubishi Japan and Mitsubishi USA unjustly retained and/or any amounts necessary to return the Colorado Plaintiff and Colorado State Class members to the position they occupied prior to dealing with Mitsubishi Japan and Mitsubishi USA, with such amounts to be determined at trial.

2649. The Colorado Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Colorado Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the Colorado Plaintiff will have no adequate legal remedy.

**5.**     **Connecticut**

    **a.**     **Connecticut Count 1: Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann. §§ 42a-2-314 and § 42a-2a-504) Against Honda USA**

2650. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2651. Plaintiff Paul Huitzil (hereinafter, "Connecticut Plaintiff") brings this count individually and on behalf of members of the Connecticut State Class who purchased or leased Honda Class Vehicles, against Honda USA.

2652. A warranty that the Honda Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Conn. Gen. Stat. Ann. §§ 42A-2-314 and § 42a-2a-504.

2653. Honda USA is and was at all relevant times a "merchant" with respect to motor vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42a-2-103(2), and a "seller" of motor vehicles under § 42a-2-103(1)(c).

2654. With respect to leases, Honda USA is and was at all relevant times a "lessor" of motor vehicles under Conn. Gen. Stat. Ann. § 42a-2A-102(a)(23).

2655. All Connecticut State Class members who purchased Honda Class Vehicles in Connecticut are "buyers" within the meaning of Conn. Gen. Stat. Ann. § 42a-2-103(1)(a).

2656. All Connecticut State Class members who leased Honda Class Vehicles in Connecticut are "lessees" within the meaning of Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

2657. The Honda Class Vehicles are and were at all relevant times "goods" within the meaning of Conn. Gen. Stat. Ann. §§ 42a-2-105(1) and 42a-2-103(2).

2658. The Honda Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Honda Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Honda Class Vehicles inherently defective and dangerous.

2659. The Connecticut Plaintiff and Connecticut State Class members have provided Honda USA with reasonable notice and opportunity to cure the breaches

1   of their implied warranties by way of the numerous NHTSA complaints filed

2   against them, and the individual notice letters sent by Connecticut State Class

3   members within a reasonable amount of time after the ACU Defect became public.

4   Additionally, on April 24, 2020, a notice letter was sent on behalf of the

5   Connecticut Plaintiff and Connecticut State Class members to Honda USA.

6       2660.  Alternatively, the Connecticut Plaintiff and Connecticut State Class

7   members were excused from providing Honda USA with notice and an opportunity

8   to cure the breach, because it would have been futile. As alleged above, Honda

9   USA has long known that the Honda Class Vehicles contained the ACU Defect,

10  and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes

11  involving Class Vehicles; however, to date, Honda USA has not instituted a recall

12  or any other repair program, or even acknowledged that the ACU Defect exists—

13  even though Honda Class Vehicles are subject to the NHTSA investigation.

14  Therefore, the Connecticut Plaintiff and Connecticut State Class members had no

15  reason to believe that Honda USA would have repaired the ACU Defect if the

16  Connecticut Plaintiff and Connecticut State Class members presented their Class

17  Vehicles to Honda USA for repair.

18      2661.  As a direct and proximate result of Honda USA's breach of the

19  implied warranty of merchantability, the Connecticut Plaintiff and Connecticut

20  State Class members have been damaged through their overpayment at the time of

21  purchase or lease for Honda Class Vehicles with an undisclosed safety defect in an

22  amount to be proven at trial.

23          **b.**     **Connecticut Count 2: Violation of the Connecticut Unlawful
24                     Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110a, *et
                       seq.*) Against Honda Japan, Honda USA, and Honda
25                     Engineering USA**

26      2662. Plaintiffs reallege and incorporate by reference all preceding

27  allegations as though fully set forth herein.

28

2663. The Connecticut Plaintiff brings this count individually and on behalf of members of the Connecticut State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2664. Honda Japan, Honda USA, and Honda Engineering USA, the Connecticut Plaintiff, and Connecticut State Class members are "persons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(3).

2665. Honda Japan, Honda USA, and Honda Engineering USA were and are engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

2666. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

2667. In the course of their business, Honda Japan, Honda USA, and Honda Engineering USA, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Honda Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

2668. Honda Japan, Honda USA, and Honda Engineering USA had an ongoing duty to the Connecticut Plaintiff and Connecticut State Class members to refrain from unfair or deceptive practices under the Connecticut UTPA in the course of their business. Specifically, Honda Japan, Honda USA, and Honda Engineering USA owed the Connecticut Plaintiff and Connecticut State Class members a duty to disclose all the material facts concerning the ACU Defect in the Honda Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Connecticut Plaintiff and Connecticut State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2669. By misrepresenting the Honda Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Honda Japan, Honda USA, and Honda Engineering USA engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Conn. Gen. Stat. § 42-110b(a).

2670. Honda Japan's, Honda USA's, and Honda Engineering USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Honda Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Connecticut Plaintiff and Connecticut State Class members, about the true safety and reliability of Honda Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Honda Class Vehicles, and the true value of the Honda Class Vehicles.

2671. Honda Japan's, Honda USA's, and Honda Engineering USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Honda Class Vehicles were material to the decisions of the Connecticut Plaintiff and Connecticut State Class members to purchase and lease those vehicles, as Honda Japan, Honda USA, and Honda Engineering USA intended. The Connecticut Plaintiff and Connecticut State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of

material facts, and relied on Honda Japan's, Honda USA's, and Honda Engineering USA's misrepresentations that the Honda Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Honda Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2672. The Connecticut Plaintiff's and Connecticut State Class members' reliance was reasonable, as they had no way of discerning that Honda Japan's, Honda USA's, and Honda Engineering USA's representations were false and misleading, or otherwise learning the facts that Honda Japan, Honda USA, and Honda Engineering USA had concealed or failed to disclose. The Connecticut Plaintiff and Connecticut State Class members did not, and could not, unravel Honda Japan's, Honda USA's, and Honda Engineering USA's deception on their own.

2673. Had the Connecticut Plaintiff and Connecticut State Class members known the truth about the ACU Defect, the Connecticut Plaintiff and Connecticut State Class members would not have purchased or leased Honda Class Vehicles, or would have paid significantly less for them.

2674. The Connecticut Plaintiff and Connecticut State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Honda Class Vehicles with an undisclosed safety defect as a direct and proximate result of Honda Japan's, Honda USA's, and Honda Engineering USA's concealment, misrepresentations, and/or failure to disclose material information.

2675. Honda Japan's, Honda USA's, and Honda Engineering USA's violations present a continuing risk to the Connecticut Plaintiff and Connecticut State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, Honda

Japan's, Honda USA's, and Honda Engineering USA's unlawful acts and practices

complained of herein affect the public interest.

2676. Pursuant to Conn. Gen. Stat. Ann. § 42-110g, the Connecticut Plaintiff

and Connecticut State Class members seek an order enjoining Honda Japan's,

Honda USA's, and Honda Engineering USA's unfair or deceptive acts or practices

and awarding damages and any other just and proper relief available under the

Connecticut UTPA.

**c.      Connecticut Count 3: Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110a, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2677. Plaintiffs reallege and incorporate by reference all preceding

allegations as though fully set forth herein.

2678. The Connecticut Plaintiff brings this count individually and on behalf

of members of the Connecticut State Class against ZF Electronics USA, ZF Passive

Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively,

the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the

"ST Defendants").

2679. The ZF Defendants, the ST Defendants, the Connecticut Plaintiff, and

Connecticut State Class members are "persons" within the meaning of Conn. Gen.

Stat. Ann. § 42-110a(3).

2680. The ZF and ST Defendants were and are engaged in "trade" or

"commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

2681. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA")

prohibits "unfair methods of competition and unfair or deceptive acts or practices in

the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

2682. The ZF and ST Defendants had an ongoing duty to the Connecticut

Plaintiff and Connecticut State Class members to refrain from unfair or deceptive

practices under the Connecticut UTPA in the course of their business. Specifically,

the ZF and ST Defendants owed the Connecticut Plaintiff and Connecticut State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Connecticut Plaintiff and Connecticut State Class members.

2683. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

2684. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2685. By misrepresenting, failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in deceptive trade practices prohibited by Conn. Gen. Stat. § 42-110b, including failing to disclose material information.

2686. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-

functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Connecticut Plaintiff and Connecticut State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2687. The Connecticut Plaintiff and Connecticut State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Connecticut Plaintiff and Connecticut State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

2688. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Connecticut Plaintiff and Connecticut State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Connecticut Plaintiff and Connecticut State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2689. The Connecticut Plaintiff and Connecticut State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

2690. The ZF and ST Defendants' violations present a continuing risk to the Connecticut Plaintiff and Connecticut State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective

1   ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices

2   complained of herein affect the public interest.

3       2691. Pursuant to Conn. Gen. Stat. Ann. § 42-110g, the Connecticut Plaintiff

4   and Connecticut State Class members seek an order enjoining the ZF and ST

5   Defendants' unfair or deceptive acts or practices and awarding damages and any

6   other just and proper relief available under the Connecticut UTPA.

7       **d.    Connecticut Count 4: Fraud by Omission and Concealment**
        **Against Honda Japan, Honda USA, and Honda Engineering**
8       **USA**

9       2692. Plaintiffs reallege and incorporate by reference all preceding

10  allegations as though fully set forth herein.

11      2693. The Connecticut Plaintiff brings this count individually and on behalf

12  of members of the Connecticut State Class who purchased or leased Honda Class

13  Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

14      2694. Honda Japan, Honda USA, and Honda Engineering USA are liable for

15  both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of

16  Torts §§ 550-51 (1977).

17      2695. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

18  serious risks to vehicle occupants, including that it can cause: (1) airbags and

19  seatbelts not to activate during a crash because crashes can sometimes release

20  electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

21  vehicle has not crashed, which is dangerous because it is shocking and difficult for

22  the driver to operate a vehicle when the airbag deploys without warning; and (3)

23  failures of other important post-crash operations of the safety system, such as

24  unlocking doors to facilitate escape or extraction of drivers and passengers by

25  emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

26      2696. Honda Japan, Honda USA, and Honda Engineering USA had a duty to

27  disclose the ACU Defect the Connecticut Plaintiff and Connecticut State Class

28  members because:

a. Honda Japan, Honda USA, and Honda Engineering USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b. Given the ACU Defect's hidden and technical nature, the Connecticut Plaintiff and Connecticut State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c. Honda Japan, Honda USA, and Honda Engineering USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Honda Class Vehicles containing the ACU Defect would have been a material fact to the Connecticut Plaintiff's and Connecticut State Class members' decisions to buy or lease Honda Class Vehicles; and

d. Honda Japan, Honda USA, and Honda Engineering USA made incomplete representations about the safety and reliability of the Honda Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Honda Japan, Honda USA, and Honda Engineering USA intentionally concealed, suppressed, and failed to disclose to the Connecticut Plaintiff and Connecticut State Class members that the Honda Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Honda Class Vehicles that they marketed and offered for sale and lease to the Connecticut Plaintiff and Connecticut State Class members, Honda Japan, Honda USA,

and Honda Engineering USA had the duty to disclose the whole truth.

2697. In breach of their duties, Honda Japan, Honda USA, and Honda Engineering USA failed to disclose that the Honda Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2698. Honda Japan, Honda USA, and Honda Engineering USA intended for the Connecticut Plaintiff and Connecticut State Class members to rely on their omissions—which they did by purchasing and leasing the Honda Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2699. That reliance was reasonable, because a reasonable consumer would not have expected that the Honda Class Vehicles contained a safety defect that poses such a serious risk. Honda Japan, Honda USA, and Honda Engineering USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2700. Additionally, Honda Japan, Honda USA, and Honda Engineering USA ensured that the Connecticut Plaintiff and Connecticut State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Honda Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2701. Honda Japan, Honda USA, and Honda Engineering USA actively concealed and suppressed these material facts, in whole or in part, to maintain a

market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Connecticut Plaintiff and Connecticut State Class members.

2702. To this day, Honda Japan, Honda USA, and Honda Engineering USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Honda Class Vehicles purchased or leased by the Connecticut Plaintiff and Connecticut State Class members.

2703. Had they been aware of the ACU Defect in the Honda Class Vehicles, and Honda Japan's, Honda USA's, and Honda Engineering USA's callous disregard for safety, the Connecticut Plaintiff and Connecticut State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2704. As alleged in Section V above, if Honda Japan, Honda USA, and Honda Engineering USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Connecticut Plaintiff and Connecticut State Class members would have seen such a disclosure.

2705. Accordingly, Honda Japan, Honda USA, and Honda Engineering USA are liable to the Connecticut Plaintiff and Connecticut State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Honda Class Vehicles at the time of purchase or lease.

2706. Honda Japan's, Honda USA's, and Honda Engineering USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Connecticut Plaintiff's and Connecticut State Class members' rights and well-being; and to enrich themselves. Honda Japan's, Honda

USA's, and Honda Engineering USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

###### e. Connecticut Count 5: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia

2707. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2708. The Connecticut Plaintiff brings this count individually and on behalf of members of the Connecticut State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2709. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2710. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2711. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Connecticut Plaintiff and Connecticut State Class members because:

a.     The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.     Given the ACU Defect's hidden and technical nature, the Connecticut Plaintiff and Connecticut State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.     The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Connecticut Plaintiff's and Connecticut State Class members' decisions to buy or lease Class Vehicles; and

d.     The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2712. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint

Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2713. The ZF and ST Defendants intended for the Connecticut Plaintiff and Connecticut State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2714. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2715. Additionally, the ZF and ST Defendants ensured that the Connecticut Plaintiff and Connecticut State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2716. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Connecticut Plaintiff and Connecticut State Class members.

2717. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were

1    material because a reasonable person would find them important in purchasing,

2    leasing, or retaining a new or used motor vehicle, and because they directly impact

3    the value of the Class Vehicles purchased or leased by the Connecticut Plaintiff and

4    Connecticut State Class members.

5        2718. Had they been aware of the ACU Defect in the Class Vehicles, and the

6    ZF and ST Defendants' callous disregard for safety, the Connecticut Plaintiff and

7    Connecticut State Class members either would not have paid as much as they did

8    for their Class Vehicles, or they would not have purchased or leased them.

9        2719. As alleged in Section V above, if the ZF and ST Defendants had fully

10   and adequately disclosed the ACU Defect to consumers and NHTSA, the

11   Connecticut Plaintiff and Connecticut State Class members would have seen such a

12   disclosure.

13       2720. Accordingly, the ZF and ST Defendants are liable to the Connecticut

14   Plaintiff and Connecticut State Class members for their damages in an amount to be

15   proven at trial, including, but not limited to, their lost overpayment for the Class

16   Vehicles at the time of purchase or lease.

17       2721. The ZF and ST Defendants' acts were done maliciously, oppressively,

18   deliberately, with intent to defraud; in reckless disregard of the Connecticut

19   Plaintiff's and Connecticut State Class members' rights and well-being; and to

20   enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment

21   of punitive damages, as permitted by law, in an amount sufficient to deter such

22   conduct in the future, which amount shall be determined according to proof at trial.

23              **f.    Connecticut Count 6: Unjust Enrichment Against Honda
                        Japan, Honda USA, and Honda Engineering USA**
24

25       2722. Plaintiffs reallege and incorporate by reference all allegations in

26   Sections I-VI above as though fully set forth herein.

27

28

2723. The Connecticut Plaintiff brings this count individually and on behalf of members of the Connecticut State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2724. The Connecticut Plaintiff and Connecticut State Class members conferred tangible and material monetary benefits upon Honda Japan, Honda USA, and Honda Engineering USA when they purchased or leased the Honda Class Vehicles. Honda Japan, Honda USA, and Honda Engineering USA readily accepted and retained these benefits.

2725. The Connecticut Plaintiff and Connecticut State Class members would not have purchased or leased the Honda Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Honda Japan, Honda USA, and Honda Engineering USA profited from the sale and lease of the Honda Class Vehicles to the detriment and expense of the Connecticut Plaintiff and Connecticut State Class members.

2726. Honda Japan, Honda USA, and Honda Engineering USA appreciated these monetary benefits. These benefits were the expected result of Honda Japan, Honda USA, and Honda Engineering USA acting in their pecuniary interest at the expense of their customers. Honda Japan, Honda USA, and Honda Engineering USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Connecticut Plaintiff and Connecticut State Class members regarding the nature and quality of the Honda Class Vehicles while profiting from this deception.

2727. It would be unjust, inequitable, and unconscionable for Honda Japan, Honda USA, and Honda Engineering USA to retain these benefits, including because they were procured as a result of Honda Japan's, Honda USA's, and Honda Engineering USA's wrongful conduct alleged above.

2728. The Connecticut Plaintiff and Connecticut State Class members are entitled to restitution of the benefits Honda Japan, Honda USA, and Honda

1  Engineering USA unjustly retained and/or any amounts necessary to return the

2  Connecticut Plaintiff and Connecticut State Class members to the position they

3  occupied prior to dealing with Honda Japan, Honda USA, and Honda Engineering

4  USA, with such amounts to be determined at trial.

5  2729. The Connecticut Plaintiff pleads this claim separately as well as in the

6  alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the

7  Connecticut Plaintiff's claims for damages are dismissed or judgment is entered in

8  favor of Defendants, the Connecticut Plaintiff will have no adequate legal remedy.

9  **6.  Florida**

10  **a.  Florida Count 1: Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21) Against FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA**

11

12

13  2730. Plaintiffs reallege and incorporate by reference all preceding

14  allegations as though fully set forth herein.

15  2731. Plaintiffs Moises Senti and Maximillian Accetta bring this count

16  individually and on behalf of members of the Florida State Class who purchased or

17  leased FCA Class Vehicles, against FCA.

18  2732. Plaintiffs Fredericka McPherson and Brian Chaiken bring this count

19  individually and on behalf of members of the Florida State Class who purchased or

20  leased Honda Class Vehicles, against Honda Japan and Honda USA.

21  2733. Plaintiff Carl Paul Maurilus brings this count individually and on

22  behalf of members of the Florida State Class who purchased or leased Hyundai

23  Class Vehicles, against Hyundai Korea and Hyundai USA.

24  2734. Plaintiffs John Colbert and Lawrence Graziano bring this count

25  individually and on behalf of members of the Florida State Class who purchased or

26  leased Kia Class Vehicles, against Kia Korea and Kia USA.

27

28

2735. Plaintiffs Samuel Choc, and Tatiana Gales bring this count individually and on behalf of members of the Florida State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

2736. For purposes of the count, Plaintiffs Senti, Accetta, McPherson, Chaiken, Maurilus, Colbert, Graziano, Choc, and Gales shall be referred to as the "Florida Plaintiffs."

2737. FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

2738. With respect to leases, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

2739. All Florida State Class members who purchased FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles in Florida are "buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

2740. All Florida State Class members who leased FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles in Florida are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(n).

2741. FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

2742. In connection with the purchase or lease of FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles, FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA provided the Florida Plaintiffs and Florida State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that

are defective in materials or workmanship, and (b) descriptions of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

2743. However, FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA knew or should have known that the warranties were false and/or misleading. Specifically, they were aware of the ACU Defect in the FCA, Honda, Kia, and Toyota Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Florida Plaintiffs and Florida State Class members.

2744. The Florida Plaintiffs and Florida State Class members were aware the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA when the Florida Plaintiffs and Florida State Class members unknowingly purchased and leased FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles that came equipped with defective ACUs and ASICs.

2745. FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA misrepresented the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Florida Plaintiffs and Florida State Class members were exposed to those misrepresentations, and the Florida Plaintiffs and Florida State Class members had no way of discerning that those representations were false and misleading or otherwise learning the material facts that FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA had concealed or failed to disclose. Accordingly, the Florida Plaintiffs and Florida State Class members reasonably relied on those Defendants' express warranties when purchasing or leasing their FCA, Honda, Hyundai, Kia, and

Toyota Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2746. The Florida Plaintiffs and Florida State Class members reasonably relied on of FCA's, Honda Japan's, Honda USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, and Toyota Sales USA's express warranties when purchasing or leasing their FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles.

2747. FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles. FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA also breached their express warranties by selling and leasing FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles with a defect that was never disclosed to the Florida Plaintiffs and Florida State Class members.

2748. The Florida Plaintiffs and Florida State Class members have provided FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Florida State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Florida Plaintiffs and Florida State Class members to FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA, on April 24, 2020.

2749. Alternatively, the Florida Plaintiffs and Florida State Class members were excused from providing FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA with notice and an

opportunity to cure the breach, because it would have been futile. As alleged above, FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA have long known that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Honda Japan and Honda USA have not instituted a recall or any other repair program, or even acknowledged that the ACU Defect exists—even though Honda Class Vehicles are subject to the NHTSA investigation. Similarly, FCA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA have not instituted a recall or any other repair program with respect to the unrecalled FCA, Hyundai, Kia, and Toyota Class Vehicles, or even acknowledged that the ACU Defect exists in all of those Class Vehicles, including the recalled FCA, Hyundai, Kia, and Toyota Class Vehicles. Therefore, they have refused to recall or repair defective FCA, Hyundai, Kia, and Toyota Class Vehicles, and for those that were recalled, the repair was inadequate because it did not fix the ACU Defect. As such, the Florida Plaintiffs and Florida State Class members had no reason to believe that FCA, Honda Japan, Honda USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, and Toyota Sales USA would have repaired the ACU Defect if the Florida Plaintiffs and Florida State Class members presented their FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles to them for repair.

2750. As a direct and proximate result of FCA's, Honda Japan's, Honda USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, and Toyota Sales USA's breach of their express warranties, the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles were and are defective and the ACU Defect in the Florida Plaintiffs' and Florida State Class members' Class Vehicles were not remedied. Therefore, the Florida Plaintiffs and Florida State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the

time of purchase or lease for the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.  Florida Count 2: Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212) Against FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA**

2751. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2752. Plaintiffs Moises Senti and Maximillian Accetta bring this count individually and on behalf of members of the Florida State Class who purchased or leased FCA Class Vehicles, against FCA.

2753. Plaintiffs Fredericka McPherson and Brian Chaiken bring this count individually and on behalf of members of the Florida State Class who purchased or leased Honda Class Vehicles, against Honda USA.

2754. Plaintiff Carl Paul Maurilus brings this count individually and on behalf of members of the Florida State Class who purchased or leased Hyundai Class Vehicles, against Hyundai USA.

2755. Plaintiffs John Colbert and Lawrence Graziano bring this count individually and on behalf of members of the Florida State Class who purchased or leased Kia Class Vehicles, against Kia USA.

2756. Plaintiffs Samuel Choc and Tatiana Gales bring this count individually and on behalf of members of the Florida State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

2757. For purposes of the count, Plaintiffs Senti, Accetta, McPherson, Chaiken, Maurilus, Colbert, Graziano, Choc, and Gales shall be referred to as the "Florida Plaintiffs."

2758. The Florida Plaintiffs purchased their Class Vehicles from FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA authorized dealers, and are therefore in privity with those Defendants. Moreover, the Florida Plaintiffs

were intended and direct beneficiaries of agreements between FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA and their dealers regarding sales and leases of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles.

2759. A warranty that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

2760. FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

2761. FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

2762. All Florida State Class members who purchased FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles in Florida are "buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

2763. All Florida State Class members who leased FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles in Florida are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(n).

2764. The FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

2765. The FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were

1    sold and leased, the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles

2    contained the ACU Defect, which may cause the airbags and seatbelt pretensioners

3    to fail to deploy during a crash, the failure to unlock doors automatically after a

4    crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or

5    the airbags to inadvertently deploy, all of which render the FCA, Honda, Hyundai,

6    Kia, and Toyota Class Vehicles inherently defective and dangerous.

7        2766. The Florida Plaintiffs and Florida State Class members have provided

8    FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA with

9    reasonable notice and opportunity to cure the breaches of their express warranties

10   by way of the numerous NHTSA complaints filed against them, and individual

11   notice letters sent by the Florida State Class members within a reasonable amount

12   of time after the ACU Defect became public. Additionally, a notice letter was sent

13   on behalf of the Florida Plaintiffs and Florida State Class members to FCA, Honda

14   USA, Hyundai USA, Kia USA, and Toyota Sales USA on April 24, 2020.

15       2767. Alternatively, the Florida Plaintiffs and Florida State Class members

16   were excused from providing FCA, Honda USA, Hyundai USA, Kia USA, and

17   Toyota Sales USA with notice and an opportunity to cure the breach, because it

18   would have been futile. As alleged above, FCA, Honda USA, Hyundai USA, Kia

19   USA, and Toyota Sales USA have long known that the FCA, Honda, Hyundai, Kia,

20   and Toyota Class Vehicles contained the ACU Defect, and that the ACU Defect has

21   caused ACUs and ASICs to malfunction in crashes involving Class Vehicles;

22   however, to date, Honda USA has not instituted a recall or any other repair

23   program, or even acknowledged that the ACU Defect exists—even though Honda

24   Class Vehicles are subject to the NHTSA investigation. Similarly, FCA, Hyundai

25   USA, Kia USA, and Toyota Sales USA have not instituted a recall or any other

26   repair program with respect to the unrecalled FCA, Hyundai, Kia, and Toyota Class

27   Vehicles, or even acknowledged that the ACU Defect exists in all of those Class

28   Vehicles, including the recalled FCA, Hyundai, Kia, and Toyota Class Vehicles.

Therefore, they have refused to recall or repair defective FCA, Hyundai, Kia, and Toyota Class Vehicles, and for those that were recalled, the repair was inadequate because it did not fix the ACU Defect. As such, the Florida Plaintiffs and Florida State Class members had no reason to believe that FCA, Honda USA, Hyundai USA, Kia USA, and Toyota Sales USA would have repaired the ACU Defect if the Florida Plaintiffs and Florida State Class members presented their FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles to them for repair.

2768. As a direct and proximate result of FCA's, Honda USA's, Hyundai USA's, Kia USA's, Toyota Sales USA's breach of the implied warranty of merchantability, the Florida Plaintiffs and Florida State Class members have been damaged in an amount to be proven at trial.

   **c.**  **Florida Count 3: Violation of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*) Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA[7]**

2769. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2770. Plaintiffs Moises Senti and Maximillian Accetta bring this count individually and on behalf of members of the Florida State Class who purchased or leased FCA Class Vehicles, against FCA.

2771. Plaintiffs Fredericka McPherson and Brian Chaiken bring this count individually and on behalf of members of the Florida State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2772. Plaintiff Carl Paul Maurilus brings this count individually and on behalf of members of the Florida State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

---

[7] The Court held in its February 9, 2022 Order that the Florida Plaintiffs stated a claim for Violation of the Florida Deceptive & Unfair Trade Practices Act against FCA, Kia USA, and Hyundai USA. *See* ECF No. 396 at 94.

2773. Plaintiffs John Colbert and Lawrence Graziano bring this count individually and on behalf of members of the Florida State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2774. Plaintiffs Samuel Choc and Tatiana Gales bring this count individually and on behalf of members of the Florida State Class who purchased or leased Toyota Class Vehicles, against Toyota USA, and Toyota Sales USA.

2775. For purposes of the count, Plaintiffs Senti, Accetta, McPherson, Chaiken, Maurilus, Colbert, Graziano, Choc, and Gales shall be referred to as the "Florida Plaintiffs."

2776. The Florida Plaintiffs and Florida State Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

2777. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

2778. The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

2779. In the course of their business, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA, through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

2780. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA had an ongoing duty to the Florida Plaintiffs and Florida State Class members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA owed the Florida Plaintiffs and Florida State Class members a duty to disclose all the material facts concerning the ACU Defect in the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Florida Plaintiffs and Florida State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2781. By misrepresenting the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

2782. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform

its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Florida Plaintiffs and Florida State Class members, about the true safety and reliability of FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles, and the true value of those vehicles.

2783. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles were material to the decisions of the Florida Plaintiffs and Florida State Class members to purchase and lease those vehicles, as FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA intended. The Florida Plaintiffs and Florida State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's misrepresentations that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2784. The Florida Plaintiffs and Florida State Class members had no way of discerning that FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and

Toyota Sales USA's representations were false and misleading, or otherwise learning the facts that the they had concealed or failed to disclose. The Florida Plaintiffs and Florida State Class members did not, and could not, unravel FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's deception on their own.

2785. Had the Florida Plaintiffs and Florida State Class members known the truth about the ACU Defect, the Florida Plaintiffs and Florida State Class members would not have purchased or leased FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles, or would have paid significantly less for them.

2786. The Florida Plaintiffs and Florida State Class members suffered ascertainable losses and actual damages as a direct and proximate result of FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's concealment, misrepresentations, and/or failure to disclose material information.

2787. FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's violations present a continuing risk to the Florida Plaintiffs and Florida State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Their unlawful acts and practices complained of herein affect the public interest.

2788. Pursuant to Fla. Stat. § 501.211, the Florida Plaintiffs and Florida State Class members seek an order enjoining FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

**d.  Florida Count 4: Violation of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2789.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2790.  Plaintiffs Moises Senti, Maximillian Accetta, Fredericka McPherson, Brian Chaiken, Carl Paul Maurilus, John Colbert, Lawrence Graziano, Samuel Choc and Tatiana Gales bring this count individually and on behalf of members of the Florida State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2791.  For purposes of this count, Plaintiffs Senti, Accetta, McPherson, Chaiken, Maurilus, Colbert, Graziano, Choc, and Gales shall be referred to as the "Florida Plaintiffs."

2792.  The Florida Plaintiffs and Florida State Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

2793.  The ZF and ST Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

2794.  The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

2795.  The ZF and ST Defendants had an ongoing duty to the Florida Plaintiffs and Florida State Class members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, the ZF and ST Defendants owed the Florida Plaintiffs and Florida State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class

1   Vehicles because they possessed exclusive knowledge of and intentionally
2   concealed the ACU Defect from the Florida Plaintiffs and Florida State Class
3   members.

4       2796.  In the course of their business, the ZF and ST Defendants, through
5   their agents, employees, and/or subsidiaries, violated the Florida UDTPA by
6   knowingly and intentionally omitting, concealing, and failing to disclose material
7   facts regarding the existence, nature, and scope of the ACU Defect in the Class
8   Vehicles, as detailed above.

9       2797.  Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF
10  Automotive USA, through their agents, employees, and/or subsidiaries, violated the
11  Florida UDTPA by knowingly and intentionally misrepresenting the Class Vehicles
12  as safe and reliable and the defective ACU and ASICs installed in them as properly-
13  functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive
14  Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer
15  Defendants on the design and inclusion of the airbag readiness indicators in the
16  Class Vehicles, which falsely assured Plaintiffs and Class Members that the
17  Occupant Restraint Systems in the Class Vehicles would function properly in a
18  crash.

19      2798.  By misrepresenting, failing to disclose and actively concealing the
20  dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and
21  ST Defendants engaged in deceptive trade practices prohibited by Fla. Stat.
22  § 501.204(1).

23      2799.  The ZF and ST Defendants' unfair or deceptive acts or practices,
24  including their misrepresentations, concealments, omissions, and suppressions of
25  material facts, were designed to mislead and had a tendency or capacity to mislead
26  and create a false impression in consumers that the Class Vehicles had properly-
27  functioning and reliable airbags and seatbelts, and that the Occupant Restraint
28  System did not contain the ACU Defect and would perform its intended function of

activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Florida Plaintiffs and Florida State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2800. The Florida Plaintiffs and Florida State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Florida Plaintiffs and Florida State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

2801. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Florida Plaintiffs and Florida State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Florida Plaintiffs and Florida State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2802. The Florida Plaintiffs and Florida State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

2803. The ZF and ST Defendants' violations present a continuing risk to the Florida Plaintiffs and Florida State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

2804. Pursuant to Fla. Stat. § 501.211, the Florida Plaintiffs and Florida State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

**e. Florida Count 5: Fraud by Omission and Concealment Against FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA**

2805. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2806. Plaintiffs Moises Senti and Maximillian Accetta bring this count individually and on behalf of members of the Florida State Class who purchased or leased FCA Class Vehicles, against FCA.

2807. Plaintiffs Fredericka McPherson and Brian Chaiken bring this count individually and on behalf of members of the Florida State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

2808. Plaintiff Carl Paul Maurilus brings this count individually and on behalf of members of the Florida State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

2809. Plaintiffs John Colbert and Lawrence Graziano bring this count individually and on behalf of members of the Florida State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2810. Plaintiffs Samuel Choc and Tatiana Gales bring this count individually and on behalf of members of the Florida State Class who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

2811. For purposes of the count, Plaintiffs Senti, Accetta, McPherson, Chaiken, Maurilus, Colbert, Graziano, Choc, and Gales shall be referred to as the "Florida Plaintiffs."

1    2812. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai

2    Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA

3    are liable for both fraudulent concealment and non-disclosure. See, e.g.,

4    Restatement (Second) of Torts §§ 550-51 (1977).

5    2813. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

6    serious risks to vehicle occupants, including that it can cause: (1) airbags and

7    seatbelts not to activate during a crash because crashes can sometimes release

8    electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

9    vehicle has not crashed, which is dangerous because it is shocking and difficult for

10   the driver to operate a vehicle when the airbag deploys without warning; and (3)

11   failures of other important post-crash operations of the safety system, such as

12   unlocking doors to facilitate escape or extraction of drivers and passengers by

13   emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

14   2814. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai

15   Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA

16   had a duty to disclose the ACU Defect to the Florida Plaintiffs and the Florida State

17   Class members because:

18           a.    FCA, Honda Japan, Honda USA, Honda Engineering USA,

19                 Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota

20                 USA, and Toyota Sales USA had exclusive access to and far

21                 superior knowledge about technical facts regarding the ACU

22                 Defect;

23           b.    Given the ACU Defect's hidden and technical nature, the

24                 Florida Plaintiffs and Florida State Class members lack the

25                 sophisticated expertise in vehicle components and electrical

26                 phenomena that would be necessary to discover the ACU Defect

27                 on their own;

28

c. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Florida Class Vehicles containing the ACU Defect would have been a material fact to the Florida Plaintiffs' and Florida State Class members' decisions to buy or lease FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles; and

d. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA made incomplete representations about the safety and reliability of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA intentionally concealed, suppressed, and failed to disclose to the Florida Plaintiffs and Florida State Class members that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles that they marketed and offered for sale and lease to the Florida Plaintiffs and Florida State Class members, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA had the duty to disclose the whole truth.

2815. In breach of their duties, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA failed to disclose that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2816. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA intended for the Florida Plaintiffs and Florida State Class members to rely on their omissions—which they did by purchasing and leasing the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2817. That reliance was reasonable, because a reasonable consumer would not have expected that the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles contained a safety defect that poses such a serious risk. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2818. Additionally, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA ensured that the Florida Plaintiffs and Florida State Class members did not discover this information by actively concealing and

1   misrepresenting the true nature of the FCA, Honda, Hyundai, Kia, and Toyota Class

2   Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3        2819. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai

4   Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and Toyota Sales USA

5   actively concealed and suppressed these material facts, in whole or in part, to

6   maintain a market for their Class Vehicles, to protect profits, and to avoid costly

7   recalls that would expose them to liability for those expenses and harm the

8   commercial reputations of Defendants and their products. They did so at the

9   expense of the Florida Plaintiffs and Florida State Class members.

10        2820. To this day, FCA, Honda Japan, Honda USA, Honda Engineering

11   USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and

12   Toyota Sales USA have not fully and adequately disclosed the ACU Defect, and

13   they continue to conceal material information about the defect from consumers and

14   NHTSA. The omitted and concealed facts were material because a reasonable

15   person would find them important in purchasing, leasing, or retaining a new or used

16   motor vehicle, and because they directly impact the value of the FCA, Honda,

17   Hyundai, Kia, and Toyota Class Vehicles purchased or leased by the Florida

18   Plaintiffs and Florida State Class members.

19        2821. Had they been aware of the ACU Defect in the FCA, Honda, Hyundai,

20   Kia, and Toyota Class Vehicles, and FCA's, Honda Japan's, Honda USA's, Honda

21   Engineering USA's, Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's,

22   Toyota USA's, and Toyota Sales USA's callous disregard for safety, the Florida

23   Plaintiffs and Florida State Class members either would not have paid as much as

24   they did for their Class Vehicles, or they would not have purchased or leased them.

25        2822. As alleged in Section V above, if FCA, Honda Japan, Honda USA,

26   Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA,

27   Toyota USA, and Toyota Sales USA had fully and adequately disclosed the ACU

28

1   Defect to consumers and NHTSA, the Florida Plaintiffs and Florida State Class
2   members would have seen such a disclosure.

3   2823.  Accordingly, FCA, Honda Japan, Honda USA, Honda Engineering
4   USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, and
5   Toyota Sales USA are liable to the Florida Plaintiffs and Florida State Class
6   members for their damages in an amount to be proven at trial, including, but not
7   limited to, their lost overpayment for the FCA, Honda, Hyundai, Kia, and Toyota
8   Class Vehicles at the time of purchase or lease.

9   2824.  FCA's, Honda Japan's, Honda USA's, Honda Engineering USA's,
10  Hyundai Korea's, Hyundai USA's, Kia Korea's, Kia USA's, Toyota USA's, and
11  Toyota Sales USA's acts were done maliciously, oppressively, deliberately, with
12  intent to defraud; in reckless disregard of the Florida Plaintiffs' and Florida State
13  Class members' rights and well-being; and to enrich themselves. FCA's, Honda
14  Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai
15  USA's, Kia Korea's, Kia USA's, Toyota USA's, and Toyota Sales USA's
16  misconduct warrants an assessment of punitive damages, as permitted by law, in an
17  amount sufficient to deter such conduct in the future, which amount shall be
18  determined according to proof at trial.

19          **f.      Florida Count 6: Fraud by Omission and Concealment
20                  Against ZF Electronics USA, ZF Passive Safety USA, ZF
                    Automotive USA, ZF TRW Corp., ZF Germany, ST Italy,
21                  ST USA, and ST Malaysia**

22  2825.  Plaintiffs reallege and incorporate by reference all preceding
23  allegations as though fully set forth herein.

24  2826.  The Florida Plaintiffs bring this count individually and on behalf of
25  members of the Florida State Class who purchased or leased Class Vehicles, against
26  ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW
27  Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST
28  Malaysia, and ST USA (collectively, the "ST Defendants").

2827. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2828. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2829. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Florida Plaintiffs and Florida State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Florida Plaintiffs and Florida State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Florida Plaintiffs' and Florida State Class members' decisions to buy or lease Class Vehicles; and

d. The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2830. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2831. The ZF and ST Defendants intended for the Florida Plaintiffs and Florida State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2832. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2833. Additionally, the ZF and ST Defendants ensured that the Florida Plaintiffs and Florida State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2834. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Florida Plaintiffs and Florida State Class members.

2835. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Florida Plaintiffs and Florida State Class members.

2836. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Florida Plaintiffs and Florida State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2837. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Florida Plaintiffs and Florida State Class members would have seen such a disclosure.

2838. Accordingly, the ZF and ST Defendants are liable to the Florida Plaintiffs and Florida State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

2839. The ZF and ST Defendants' acts were done maliciously, oppressively,
deliberately, with intent to defraud; in reckless disregard of the Florida Plaintiffs'
and Florida State Class members' rights and well-being; and to enrich themselves.
The ZF and ST Defendants' misconduct warrants an assessment of punitive
damages, as permitted by law, in an amount sufficient to deter such conduct in the
future, which amount shall be determined according to proof at trial.

**g.** **Florida Count 7: Unjust Enrichment Against FCA, Honda Japan, Honda USA, and Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA**

2840. Plaintiffs reallege and incorporate by reference all allegations in
Sections I-VI above as though fully set forth herein.

2841. Plaintiff Moises Senti brings this count individually and on behalf of
members of the Florida State Class who purchased or leased FCA Class Vehicles,
against FCA.

2842. Plaintiffs Fredericka McPherson and Brian Chaiken bring this count
individually and on behalf of members of the Florida State Class who purchased or
leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda
Engineering USA.

2843. Plaintiff Carl Paul Maurilus brings this count individually and on
behalf of members of the Florida State Class who purchased or leased Hyundai
Class Vehicles, against Hyundai Korea and Hyundai USA.

2844. Plaintiffs John Colbert and Lawrence Graziano bring this count
individually and on behalf of members of the Florida State Class who purchased or
leased Kia Class Vehicles, against Kia Korea and Kia USA.

2845. Plaintiffs Samuel Choc and Tatiana Gales bring this count individually
and on behalf of members of the Florida State Class who purchased or leased
Toyota Class Vehicles, against Toyota USA, Toyota Sales USA, and Toyota
Engineering USA.

2846. For purposes of the count, Plaintiffs Senti, McPherson, Chaiken, Maurilus, Colbert, Graziano, Choc, and Gales shall be referred to as the "Florida Plaintiffs."

2847. The Florida Plaintiffs and Florida State Class members conferred tangible and material monetary benefits upon FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA when they purchased or leased the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA readily accepted and retained these benefits.

2848. The Florida Plaintiffs and Florida State Class members would not have purchased or leased the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA profited from the sale and lease of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles to the detriment and expense of the Florida Plaintiffs and Florida State Class members.

2849. FCA, Honda Japan, Honda USA, and Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA appreciated these monetary benefits. These benefits were the expected result of FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA acting in their pecuniary interest at the expense of their customers.

2850. FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and

Toyota Engineering USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Florida Plaintiffs and Florida State Class members regarding the nature and quality of the FCA, Honda, Hyundai, Kia, and Toyota Class Vehicles while profiting from this deception.

2851. It would be unjust, inequitable, and unconscionable for FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA to retain these benefits, including because they were procured as a result of the wrongful conduct alleged above.

2852. The Florida Plaintiffs and Florida State Class members are entitled to restitution of the benefits FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA unjustly retained and/or any amounts necessary to return the Florida Plaintiff and Florida State Class members to the position they occupied prior to dealing with FCA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA, with such amounts to be determined at trial.

2853. The Florida Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Florida Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Florida Plaintiffs will have no adequate legal remedy.

### 7. Illinois

#### a. Illinois Count 1: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212) Against Kia USA

2854. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2855. Plaintiffs Amanda Swanson and Brian Collins bring this count individually and on behalf of members of the Illinois State Class who purchased or leased Kia Class Vehicles, against Kia USA.

2856. For purposes of this count, Plaintiffs Swanson and Collins shall be referred to as the "Illinois Plaintiffs."

2857. The Illinois Plaintiffs purchased their Kia Class Vehicles from Kia USA authorized dealers. Additionally, Kia USA knew the identity, purpose, and requirements of the Illinois Plaintiffs and Illinois State Class members, and made specific promises through advertising and label information to them about the Kia Class Vehicles. Accordingly, the Illinois Plaintiffs and Illinois State Class members are in privity with Kia USA.

2858. Moreover, the Illinois Plaintiffs and Illinois State Class members were intended and direct beneficiaries of agreements between Kia USA and their dealers regarding sales and leases of the Kia Class Vehicles, as, upon information and belief, the agreements expressly were made for the direct benefit of the Illinois Plaintiffs and Illinois State Class members.

2859. A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILCS 5/2-314 and 5/2A-212.

2860. Kia USA is and was at all relevant times a "merchant" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under 5/2-103(1)(d).

2861. Kia USA is and was at all relevant times a "lessor" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

2862. All Illinois State Class members who purchased Kia Class Vehicles in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

2863. All Illinois State Class members who leased Kia Class Vehicles in Illinois are "lessees" within the meaning of 810 ILCS 5/2A-103(1)(n).

2864. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

2865. The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Kia Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Kia Class Vehicles inherently defective and dangerous.

2866. The Illinois Plaintiffs and Illinois State Class members have provided Kia USA with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against it, and individual notice letters sent by the Illinois State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Illinois Plaintiffs and Illinois State Class members to Kia USA on April 24, 2020.

2867. Alternatively, the Illinois Plaintiffs and Illinois State Class members were excused from providing Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia USA has long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia USA has not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of those Class Vehicles, including the recalled Kia Class Vehicles. Therefore, it has refused to recall or repair defective Kia Class

1  Vehicles, and for those that were recalled, the repair was inadequate because it did
2  not fix the ACU Defect. As such, the Illinois Plaintiffs and Illinois State Class
3  members had no reason to believe that Kia USA would have repaired the ACU
4  Defect if the Illinois Plaintiffs and Illinois State Class members presented their Kia
5  Class Vehicles to it for repair.

6   2868. As a direct and proximate result of Kia USA's breach of the implied
7  warranty of merchantability, the Illinois Plaintiffs and Illinois State Class members
8  have been damaged in an amount to be proven at trial.

9     **b.** **Illinois Count 2: Violation of the Illinois Consumer Fraud**
    **and Deceptive Business Practices Act (815 Ill. Comp. Stat.**
10      **505/1, *et seq.*) Against Kia Korea and Kia USA**

11   2869. Plaintiffs reallege and incorporate by reference all preceding
12  allegations as though fully set forth herein.

13   2870. Plaintiffs Amanda Swanson and Brian Collins bring this count
14  individually and on behalf of members of the Illinois State Class who purchased or
15  leased Kia Class Vehicles, against Kia Korea and Kia USA.

16   2871. For purposes of this count, Plaintiffs Swanson, and Collins shall be
17  referred to as the "Illinois Plaintiffs."

18   2872. Kia Korea, Kia USA, the Illinois Plaintiffs, and the Illinois State Class
19  members are "persons" within the meaning of 815 ILCS 505/1(c).

20   2873. The Illinois Plaintiffs and Illinois State Class members are
21  "consumers" within the meaning of 815 ILCS 505/1(e).

22   2874. The Kia Class Vehicles and the ACUs installed in them are
23  "merchandise" within the meaning of 815 ILCS 505/1(b).

24   2875. Kia Korea and Kia USA were and are engaged in "trade" and
25  "commerce" within the meaning of 815 ILCS 505/1(f).

26   2876. The Illinois Consumer Fraud and Deceptive Business Practices Act
27  ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive
28  acts or practices[.]" 815 ILCS 505/2.

2877. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

2878. Kia Korea and Kia USA had an ongoing duty to the Illinois Plaintiffs and Illinois State Class members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Kia Korea and Kia USA owed the Illinois Plaintiffs and Illinois State Class members a duty to disclose all the material facts concerning the ACU Defect in the Kia Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Illinois Plaintiffs and Illinois State Class members, and they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2879. By misrepresenting the Kia Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Kia Korea and Kia USA engaged in the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Kia Class Vehicles;

    b.    Representing that the Kia Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c.    Representing that the Kia Class Vehicles are of a particular standard, quality, and grade when they are not;

d.   Advertising the Kia Class Vehicles with the intent not to sell or lease them as advertised;

e.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

f.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Kia Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

ILCS 505/2, 815 ILCS 510/2

2880. Kia Korea's and Kia USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois State Class members, about the true safety and reliability of Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Kia Class Vehicles, and the true value of those vehicles.

2881. Kia Korea's and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Kia Class Vehicles were material to the decisions of the Illinois Plaintiffs and Illinois State Class members

to purchase and lease those vehicles, as Kia Korea and Kia USA intended. The Illinois Plaintiffs and Illinois State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Kia Korea's and Kia USA's misrepresentations that the Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2882. The Illinois Plaintiffs and Illinois State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading and/or otherwise learning the facts that Kia Korea and Kia USA had concealed or failed to disclose. The Illinois Plaintiffs and Illinois State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

2883. Had the Illinois Plaintiffs and Illinois State Class members known the truth about the ACU Defect, the Illinois Plaintiffs and Illinois State Class members would not have purchased or leased Kia Class Vehicles, or would have paid significantly less for them.

2884. The Illinois Plaintiffs and Illinois State Class members suffered ascertainable losses and actual damages as a direct and proximate result of Kia Korea's and Kia USA's concealment, misrepresentations, and/or failure to disclose material information.

2885. Kia Korea's and Kia USA's violations present a continuing risk to the Illinois Plaintiffs and Illinois State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Kia Korea's and Kia USA's unlawful acts and practices complained of herein affect the public interest.

2886. Pursuant to 815 ILCS 505/10a, the Illinois Plaintiffs and Illinois State Class members seek an order enjoining Kia Korea's and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFA.

        **c.**    **Illinois Count 3: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2887. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2888. Plaintiffs Amanda Swanson and Brian Collins bring this count individually and behalf of members of the Illinois State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2889. For purposes of this count, Plaintiffs Swanson and Collins shall be referred to as the "Illinois Plaintiffs."

2890. The ZF Defendants, the ST Defendants, the Illinois Plaintiffs, and Illinois State Class members are "persons" within the meaning of 815 ILCS 505/1(c).

2891. The Illinois Plaintiffs and Illinois State Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

2892. The Class Vehicles and the ACUs installed in them are "merchandise" within the meaning of 815 ILCS 505/1(b).

2893. The ZF and ST Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

2894. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

2895. The ZF and ST Defendants had an ongoing duty to the Illinois Plaintiffs and Illinois State Class members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, the ZF and ST Defendants owed the Illinois Plaintiffs and Illinois State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Illinois Plaintiffs and Illinois State Class members.

2896. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

2897. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2898. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unfair or deceptive business practices prohibited by 815 ILCS 505/2, including the use or employment of deception and fraud, and/or the

1    concealment, suppression or omission of material facts, and engaging in conduct
2    which creates a likelihood of confusion or misunderstanding.

3        2899. The ZF and ST Defendants' unfair or deceptive acts or practices,
4    including their misrepresentations, concealments, omissions, and suppressions of
5    material facts, were designed to mislead and had a tendency or capacity to mislead
6    and create a false impression in consumers that the Class Vehicles had properly-
7    functioning and reliable airbags and seatbelts, and that the Occupant Restraint
8    System did not contain the ACU Defect and would perform its intended function of
9    activating the seatbelts and airbags during a collision. Indeed, those
10   misrepresentations, concealments, omissions, and suppressions of material facts did
11   in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois
12   State Class members, about the true safety and reliability of Class Vehicles and/or
13   the defective ACUs and ASICs installed in them, the quality of the Class Vehicles,
14   and the true value of the Class Vehicles.

15       2900. The Illinois Plaintiffs and Illinois State Class members justifiably
16   relied on the ZF and ST Defendants' misrepresentations, omissions, and
17   concealment, as they had no way of discerning that the Class Vehicles contained
18   the ACU Defect, as alleged above. The Illinois Plaintiffs and Illinois State Class
19   members did not, and could not, unravel the ZF and ST Defendants' deception on
20   their own.

21       2901. The ZF and ST Defendants' misrepresentations and concealment of the
22   ACU Defect and true characteristics of the defective ACUs and ASICs in the Class
23   Vehicles were material to the Illinois Plaintiffs and Illinois State Class members, as
24   the ZF and ST Defendants intended. Had they known the truth, the Illinois
25   Plaintiffs and Illinois State Class members would not have purchased or leased the
26   Class Vehicles, or would have paid significantly less for them.

27       2902. The Illinois Plaintiffs and Illinois State Class members suffered
28   ascertainable losses and actual damages as a direct and proximate result of the ZF

and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

2903. The ZF and ST Defendants' violations present a continuing risk to the Illinois Plaintiffs and Illinois State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

2904. Pursuant to 815 ILCS 505/10a, the Illinois Plaintiffs and Illinois State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFA.

### d. Illinois Count 4: Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, *et seq.*) Against Kia Korea and Kia USA

2905. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

2906. Plaintiffs Amanda Swanson and Brian Collins bring this count individually and on behalf of members of the Illinois State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2907. For purposes of this count, Plaintiffs Swanson and Collins shall be referred to as the "Illinois Plaintiffs."

2908. Kia USA, the Illinois Plaintiffs, and Illinois State Class members are "persons" within the meaning of 815 ILCS 510/1(5).

2909. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

2910. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the reliability, safety, and performance of the Kia Class

Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as

detailed above.

2911. Specifically, by misrepresenting the Class Vehicles and the defective

ACUs and ASICs installed in them as safe and/or free from defects, and by failing

to disclose and actively concealing the dangers and risk posed by the Class Vehicles

and the ACU Defect, Kia Korea and Kia USA engaged in one or more of the

following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

      a.    Representing that the Kia Class Vehicles and/or the defective

           ACUs and ASICs installed in them have characteristics, uses,

           benefits, and qualities which they do not have;

      b.    Representing that the Kia Class Vehicles and/or the defective

           ACUs and ASICs installed in them are of a particular standard,

           quality, and grade when they are not;

      c.    Advertising the Kia Class Vehicles and/or the defective ACUs

           and ASICs installed in them with the intent not to sell or lease

           them as advertised; and

      d.    engaging in other conduct which similarly creates a likelihood

           of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9), and (12)

2912. Kia Korea's and Kia USA's unfair and deceptive acts or practices,

including their misrepresentations, concealments, omissions, and suppressions of

material facts, were designed to mislead and had a tendency or capacity to mislead

and create a false impression in consumers that the Kia Class Vehicles had

properly-functioning and reliable airbags and seatbelts, and that the Occupant

Restraint System did not contain the ACU Defect and would perform its intended

function of activating the seatbelts and airbags during a collision. Indeed, those

misrepresentations, concealments, omissions, and suppressions of material facts did

in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois State Class members, about the true safety and reliability of Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Kia Class Vehicles, and the true value of those vehicles.

2913. Kia Korea's and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Kia Class Vehicles were material to the decisions of the Illinois Plaintiffs and Illinois State Class members to purchase and lease those vehicles, as Kia Korea and Kia USA intended. The Illinois Plaintiffs and Illinois State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Kia Korea's and Kia USA's misrepresentations that the Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2914. The Illinois Plaintiffs' and Illinois State Class members' reliance was reasonable, as they had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading, or otherwise learning the facts that they had concealed or failed to disclose. The Illinois Plaintiffs and Illinois State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

2915. Had the Illinois Plaintiffs and Illinois State Class members known the truth about the ACU Defect, the Illinois Plaintiffs and Illinois State Class members would not have purchased or leased Kia Class Vehicles, or would have paid significantly less for them.

2916. The Illinois Plaintiffs and Illinois State Class members suffered ascertainable losses and actual damages through their overpayment at the time of

| | |
|---|---|
| 1 | purchase and lease for Kia Class Vehicles with an undisclosed safety defect as a |
| 2 | direct and proximate result of Kia Korea's and Kia USA's concealment, |
| 3 | misrepresentations, and/or failure to disclose material information. |
| 4 | 2917.  Kia Korea's and Kia USA's violations present a continuing risk to the |
| 5 | Illinois Plaintiffs and Illinois State Class members, as well as to the general public, |
| 6 | because the Class Vehicles remain unsafe due to the defective ACUs and ASICs |
| 7 | therein. Additionally, Kia Korea's and Kia USA's unlawful acts and practices |
| 8 | complained of herein affect the public interest. |
| 9 | 2918.  Pursuant to 815 ILCS 510/3, the Illinois Plaintiffs and Illinois State |
| 10 | Class members seek an order enjoining Kia Korea's and Kia USA's unfair or |
| 11 | deceptive acts or practices and awarding other just and proper relief available under |
| 12 | the Illinois UDTPA. |
| 13 | 2919.  The Illinois Plaintiffs plead this claim separately as well as in the |
| 14 | alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the |
| 15 | Illinois Plaintiffs' claims for damages are dismissed or judgment is entered in favor |
| 16 | of Defendants, the Illinois Plaintiffs will have no adequate legal remedy. |

**e.  Illinois Count 5: Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

| | |
|---|---|
| 20 | 2920.  Plaintiffs reallege and incorporate by reference all allegations in |
| 21 | Sections I-VI above as though fully set forth herein. |
| 22 | 2921.  Plaintiffs Amanda Swanson and Brian Collins bring this count |
| 23 | individually and behalf of members of the Illinois State Class against ZF |
| 24 | Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., |
| 25 | and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, |
| 26 | and ST USA (collectively, the "ST Defendants"). |
| 27 | 2922.  For purposes of this count, Plaintiffs Swanson and Collins shall be |
| 28 | referred to as the "Illinois Plaintiffs." |

2923. The ZF Defendants, ST Defendants, Illinois Plaintiffs, and Illinois State Class members are "persons" within the meaning of 815 ILCS 510/1(5).

2924. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

2925. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

2926. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

2927. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unfair or deceptive business practices prohibited by 815 ILCS 510/2, including the use or employment of deception and fraud, and/or the concealment, suppression or omission of material facts, and engaging in conduct which creates a likelihood of confusion or misunderstanding.

2928. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of

material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2929. The Illinois Plaintiffs and Illinois State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Illinois Plaintiffs and Illinois State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

2930. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Illinois Plaintiffs and Illinois State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Illinois Plaintiffs and Illinois State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2931. The Illinois Plaintiffs and Illinois State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

2932. The ZF and ST Defendants' violations present a continuing risk to the Illinois Plaintiffs and Illinois State Class members, as well as to the general public,

because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

2933. Pursuant to 815 ILCS 510/3, the Illinois Plaintiffs and Illinois State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding any other just and proper relief available under the Illinois UDTPA.

2934. The Illinois Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Illinois Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Illinois Plaintiffs will have no adequate legal remedy.

### f. Illinois Count 6: Fraud by Omission and Concealment Against Kia Korea and Kia USA

2935. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2936. Plaintiffs Amanda Swanson and Brian Collins bring this count individually and on behalf of members of the Illinois State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2937. For purposes of this count, Plaintiffs Swanson, and Collins shall be referred to as the "Illinois Plaintiffs."

2938. Kia Korea and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2939. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3)

failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2940. Kia Korea and Kia USA had a duty to disclose the ACU Defect to the Illinois Plaintiffs and the Illinois State Class members because:

  a. Kia Korea and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

  b. Given the ACU Defect's hidden and technical nature, the Illinois Plaintiffs and Illinois State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

  c. Kia Korea and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Kia Class Vehicles containing the ACU Defect would have been a material fact to the Illinois Plaintiffs' and Illinois State Class members' decisions to buy or lease Kia Class Vehicles; and

  d. Kia Korea and Kia USA made incomplete representations about the safety and reliability of the Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Kia Korea, and Kia USA intentionally concealed, suppressed, and failed to disclose to the Illinois Plaintiffs and Illinois State Class members that the Kia Class Vehicles contained the ACU Defect. Because they voluntarily to provide information about the Kia Class Vehicles that they marketed and offered for sale and lease

to the Illinois Plaintiffs and Illinois State Class members, Kia

Korea and Kia USA had the duty to disclose the whole truth.

2941. In breach of their duties, Kia Korea and Kia USA failed to disclose that the Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

2942. Kia Korea and Kia USA intended for the Illinois Plaintiffs and Illinois State Class members to rely on their omissions—which they did by purchasing and leasing the Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

2943. That reliance was reasonable, because a reasonable consumer would not have expected that the Kia Class Vehicles contained a safety defect that poses such a serious risk. Kia Korea and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2944. Additionally, Kia Korea and Kia USA ensured that the Illinois Plaintiffs and Illinois State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2945. Kia Korea and Kia USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their

products. They did so at the expense of the Illinois Plaintiffs and Illinois State Class members.

2946. To this day, Kia Korea and Kia USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Kia Class Vehicles purchased or leased by the Illinois Plaintiffs and Illinois State Class members.

2947. Had they been aware of the ACU Defect in the Kia Class Vehicles, and Kia Korea's and Kia USA's callous disregard for safety, the Illinois Plaintiffs and Illinois State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

2948. As alleged in Section V above, if Kia Korea and Kia USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Illinois Plaintiffs and Illinois State Class members would have seen such a disclosure.

2949. Accordingly, Kia Korea and Kia USA are liable to the Illinois Plaintiffs and Illinois State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Kia Class Vehicles at the time of purchase or lease.

2950. Kia Korea's and Kia USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Illinois Plaintiffs' and Illinois State Class members' rights and well-being; and to enrich themselves. Kia Korea's and Kia USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**g.** **Illinois Count 7: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

2951. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2952. The Illinois Plaintiffs bring this count individually and on behalf of members of the Illinois State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

2953. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

2954. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

2955. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Illinois Plaintiffs and Illinois State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Illinois Plaintiffs and Illinois State Class members lack the

sophisticated expertise in vehicle components and electrical
phenomena that would be necessary to discover the ACU Defect
on their own;

c.     The ZF and ST Defendants knew that the ACU Defect gave rise
to serious safety concerns for the consumers who use the
vehicles, and the Class Vehicles containing the ACU Defect
would have been a material fact to the Illinois Plaintiffs' and
Illinois State Class members' decisions to buy or lease Class
Vehicles; and

d.     The ZF Defendants made incomplete representations about the
safety and reliability of the Class Vehicles and their Occupant
Restraint System, while purposefully withholding material facts
about a known safety defect, creating a duty to disclose the
whole truth. Specifically, ZF Electronics USA, ZF Passive
Safety USA, and ZF Automotive USA worked with the Vehicle
Manufacturer Defendants on the design and inclusion of the
airbag readiness indicators in the Class Vehicles, which falsely
assured Plaintiffs and Class Members that the Occupant
Restraint Systems in the Class Vehicles would function properly
in a crash.

2956. In breach of their duties, the ZF and ST Defendants failed to disclose
that the Class Vehicles were not safe and reliable, and that their Occupant Restraint
Systems, including their airbags and seatbelt pretensioners could fail in the event of
a crash due to the ACU Defect.

2957. The ZF and ST Defendants intended for the Illinois Plaintiffs and
Illinois State Class members to rely on their omissions—which they did by
purchasing and leasing the Class Vehicles at the prices they paid believing that the
Occupant Restraint Systems in their Class Vehicles would function properly.

2958. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

2959. Additionally, the ZF and ST Defendants ensured that the Illinois Plaintiffs and Illinois State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

2960. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Illinois Plaintiffs and Illinois State Class members.

2961. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Illinois Plaintiffs and Illinois State Class members.

2962. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Illinois Plaintiffs and

1   Illinois State Class members either would not have paid as much as they did for

2   their Class Vehicles, or they would not have purchased or leased them.

3       2963. As alleged in Section V above, if the ZF and ST Defendants had fully

4   and adequately disclosed the ACU Defect to consumers and NHTSA, the Illinois

5   Plaintiffs and Illinois State Class members would have seen such a disclosure.

6       2964. Accordingly, the ZF and ST Defendants are liable to the Illinois

7   Plaintiffs and Illinois State Class members for their damages in an amount to be

8   proven at trial, including, but not limited to, their lost overpayment for the Class

9   Vehicles at the time of purchase or lease.

10      2965. The ZF and ST Defendants' acts were done maliciously, oppressively,

11  deliberately, with intent to defraud; in reckless disregard of the Illinois Plaintiffs'

12  and Illinois State Class members' rights and well-being; and to enrich themselves.

13  The ZF and ST Defendants' misconduct warrants an assessment of punitive

14  damages, as permitted by law, in an amount sufficient to deter such conduct in the

15  future, which amount shall be determined according to proof at trial.

16          **h.**     **Illinois Count 8: Unjust Enrichment Against Kia Korea and**

17                 **Kia USA**

18      2966. Plaintiffs reallege and incorporate by reference all allegations in

19  Sections I-VI above as though fully set forth herein.

20      2967. Plaintiffs Amanda Swanson and Brian Collins bring this count

21  individually and on behalf of members of the Illinois State Class who purchased or

22  leased Kia Class Vehicles, against Kia Korea and Kia USA.

23      2968. For purposes of this count, Plaintiffs Swanson and Collins shall be

24  referred to as the "Illinois Plaintiffs."

25      2969. The Illinois Plaintiffs and Illinois State Class members conferred

26  tangible and material economic benefits upon Kia Korea and Kia USA when they

27  purchased or leased the Kia Class Vehicles. Kia Korea and Kia USA readily

28  accepted and retained these benefits.

2970. The Illinois Plaintiffs and Illinois State Class members would not have purchased or leased their Kia Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Kia Korea and Kia USA profited from the sale and lease of the Kia Class Vehicles to the detriment and expense of the Illinois Plaintiffs and Illinois State Class members.

2971. Kia Korea and Kia USA appreciated those benefits. These benefits were the expected result of Kia Korea and Kia USA acting in their pecuniary interest at the expense of their customers. Kia Korea and Kia USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Illinois Plaintiffs and Illinois State Class members regarding the nature and quality of the Kia Class Vehicles while profiting from this deception.

2972. It would be unjust, inequitable, and unconscionable for Kia Korea and Kia USA to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2973. The Illinois Plaintiffs and Illinois State Class members are entitled to restitution of the benefits Kia Korea and Kia USA unjustly retained and/or any amounts necessary to return the Illinois Plaintiffs and Illinois State Class members to the position they occupied prior to dealing with Kia Korea and Kia USA, with such amounts to be determined at trial.

2974. The Illinois Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Illinois Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Illinois Plaintiffs will have no adequate legal remedy.

8.    **Indiana**

    a.    **Indiana Count 1: Breach of Express Warranty (Ind. Code §§ 26-1-2-313 and 26-1-2.1-210) Against Kia Korea and Kia USA**

2975. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2976. Plaintiff Kenneth Ogorek (hereinafter, "Indiana Plaintiff") brings this count individually and on behalf of members of the Indiana State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

2977. Kia Korea and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

2978. With respect to leases, Kia Korea and Kia USA are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

2979. All Indiana State Class members who purchased Kia Class Vehicles in Indiana are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

2980. All Indiana State Class members who leased Kia Class Vehicles in Indiana are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

2981. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

2982. In connection with the purchase or lease of Kia Class Vehicles, Kia Korea and Kia USA provided the Indiana Plaintiff and Indiana State Class members with written express warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

2983. However, Kia Korea and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, Kia Korea and Kia USA

were aware of the ACU Defect in the Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Indiana Plaintiff and Indiana State Class members.

2984. The Indiana Plaintiff and Indiana State Class members were aware the Kia Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and Kia Korea and Kia USA when the Indiana Plaintiff and Indiana State Class members unknowingly purchased and leased Kia Class Vehicles that came equipped with defective ACUs and ASICs.

2985. Kia Korea and Kia USA misrepresented the Kia Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Indiana Plaintiff and Indiana State Class members were exposed to those misrepresentations, and the Indiana Plaintiff and Indiana State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading or otherwise learning the material facts that Kia Korea and Kia USA had concealed or failed to disclose. Accordingly, the Indiana Plaintiff and Indiana State Class members reasonably relied on Kia Korea's and Kia USA's express warranties when purchasing or leasing their Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

2986. Kia Korea and Kia USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Kia Class Vehicles. Kia Korea and Kia USA also breached their express warranties by selling and leasing Kia Class Vehicles with a defect that was never disclosed to the Indiana Plaintiff and Indiana State Class members.

2987. The Indiana Plaintiff and Indiana State Class members have provided Kia Korea and Kia USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints

1  filed against them, and the individual notice letters sent by Indiana State Class

2  members within a reasonable amount of time after the ACU Defect became public.

3  On April 24, 2020, notice letters were sent on behalf of the Indiana Plaintiff and

4  Indiana State Class members to Kia Korea and Kia USA.

5  2988. Alternatively, the Indiana Plaintiff and Indiana State Class members

6  were excused from providing Kia Korea and Kia USA with notice and an

7  opportunity to cure the breach, because it would have been futile. As alleged above,

8  Kia Korea and Kia USA have long known that the Kia Class Vehicles contained the

9  ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction

10  in crashes involving Class Vehicles; however, to date, Kia Korea and Kia USA

11  have not instituted a recall or any other repair program with respect to the

12  unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in

13  all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore,

14  the Indiana Plaintiff and Indiana State Class members had no reason to believe that

15  Kia Korea and Kia USA would have repaired the ACU Defect if the Indiana

16  Plaintiff and Indiana State Class members presented their Class Vehicles to Kia

17  Korea and Kia USA for repair.

18  2989. As a direct and proximate result of Kia Korea's and Kia USA's breach

19  of their express warranties, the Kia Class Vehicles were and are defective and the

20  ACU Defect in the Indiana Plaintiff's and Indiana State Class members' Kia Class

21  Vehicles was not remedied. Therefore, the Indiana Plaintiff and Indiana State Class

22  members have been damaged, in an amount to be proven at trial, through their

23  overpayment at the time of purchase or lease for Kia Class Vehicles with an

24  undisclosed safety defect that would not be remedied.

25        **b.**    **Indiana Count 2: Breach of Implied Warranty of**
                     **Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212)**

26                       **Against Kia USA**

27  2990. Plaintiffs reallege and incorporate by reference all preceding

28  allegations as though fully set forth herein.

2991. The Indiana Plaintiff brings this count individually and on behalf of members of the Indiana State Class who purchased or leased Kia Class Vehicles, against Kia USA.

2992. A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

2993. Kia USA is and was at all relevant times a "merchant" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), and a "seller" of motor vehicles under § 26-1-2-103(1)(d).

2994. Kia USA is and was at all relevant times a "lessor" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

2995. All Indiana State Class members who purchased Kia Class Vehicles in Indiana are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

2996. All Indiana State Class members who leased Kia Class Vehicles in Indiana are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

2997. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

2998. The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Kia Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Kia Class Vehicles inherently defective and dangerous

2999. The Indiana Plaintiff and Indiana State Class members have provided Kia USA with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints filed against it, and individual notice letters sent by Indiana State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on May 23, 2019, Indiana State Class members sent a notice letter pursuant Ind. Code § 24-5-0.5-5(a) to Kia USA. Moreover, a second notice letter was sent on behalf of the Indiana Plaintiff and Indiana State Class members to Kia USA on April 24, 2020.

3000. Alternatively, the Indiana Plaintiff and Indiana State Class members were excused from providing Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia USA have long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore, the Indiana Plaintiff and Indiana State Class members had no reason to believe that Kia USA would have repaired the ACU Defect if the Indiana Plaintiff and Indiana State Class members presented their Class Vehicles to Kia USA for repair.

3001. As a direct and proximate result of Kia USA's breach of the implied warranty of merchantability, the Indiana Plaintiff and Indiana State Class members have been damaged in an amount to be proven at trial.

    c.    **Indiana Count 3: Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-3, *et seq.*) Against Kia Korea and Kia USA**

3002. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3003. The Indiana Plaintiff brings this count individually and on behalf of members of the Indiana State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3004. Kia Korea and Kia USA are "suppliers" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

3005. Kia Korea, Kia USA, the Indiana Plaintiff, and the Indiana State Class members are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

3006. Kia Korea and Kia USA were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

3007. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

3008. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3009. Kia Korea and Kia USA had an ongoing duty to the Indiana Plaintiff and Indiana State Class members to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, Kia Korea and Kia USA owed the Indiana Plaintiff and Indiana State Class members a duty to disclose all the material facts concerning the ACU Defect in the Kia Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Indiana Plaintiff and Indiana State Class members, and they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3010. By misrepresenting the Kia Class Vehicles and the defective ACUs installed in them as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Kia Korea and Kia USA engaged in one or more of the following unfair or deceptive business practices prohibited by Ind. Code § 24-5-0.5-3:

a.   Representing that the Kia Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

b.   Representing that the Kia Class Vehicles are of a particular standard, quality, and grade when they are not; and

c.   Advertising the Kia Class Vehicles with the intent not to sell or lease them as advertised.

Ind. Code §§ 24-5-0.5-3(b)(1), (2), and (11).

3011. Kia Korea's and Kia USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Indiana Plaintiff and Indiana State Class members, about the true safety and reliability of Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Kia Class Vehicles, and the true value of those vehicles.

3012. Kia Korea's and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true

characteristics of the Occupant Restraint Systems in the Kia Class Vehicles were material to the decisions of the Indiana Plaintiff and Indiana State Class members to purchase and lease those vehicles, as Kia Korea and Kia USA intended. The Indiana Plaintiff and Indiana State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Kia Korea's and Kia USA's misrepresentations that the Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3013. The Indiana Plaintiff and Indiana State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading and/or otherwise learning the facts that Kia Korea and Kia USA had concealed or failed to disclose. The Indiana Plaintiff and Indiana State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

3014. Had the Indiana Plaintiff and Indiana State Class members known the truth about the ACU Defect, the Indiana Plaintiff and Indiana State Class members would not have purchased or leased Kia Class Vehicles, or would have paid significantly less for them.

3015. The Indiana Plaintiff and Indiana State Class members suffered ascertainable losses and actual damages as a direct and proximate result of Kia Korea's and Kia USA's misrepresentations, concealment, and/or failure to disclose material information.

3016. Kia Korea's and Kia USA's violations present a continuing risk to the Indiana Plaintiff and Indiana State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs

1   therein. Kia Korea's and Kia USA's unlawful acts and practices complained of

2   herein affect the public interest.

3       3017. Kia Korea and Kia USA were provided notice of the issues raised in

4   this count and this Complaint by the NHTSA investigations, the numerous

5   complaints filed against them, and the individual notice letters sent by the Indiana

6   State Class members within a reasonable amount of time after the ACU Defect

7   became public. Additionally, on May 23, 2019, Indiana State Class members sent a

8   notice letter pursuant to Ind. Code § 24-5-0.5-5(a) to Kia. Moreover, a second

9   notice letter was sent on behalf of the Indiana Plaintiff and Indiana State Class

10   members pursuant to Ind. Code § 24-5-0.5-5(a) to Kia on April 24, 2020. Because

11   Kia Korea and Kia USA failed to adequately remedy their unlawful conduct within

12   the requisite time period, the Indiana Plaintiff seeks all damages and relief to which

13   he and the Indiana State Class members are entitled.

14       3018. Alternatively, the Indiana Plaintiff and Indiana State Class members

15   were excused from providing Kia Korea and Kia USA with notice and an

16   opportunity to cure the breach, because it would have been futile. As alleged above,

17   Kia Korea and Kia USA have long known that the Kia Class Vehicles contained the

18   ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction

19   in crashes involving Class Vehicles; however, to date, Kia Korea and Kia USA

20   have not instituted a recall or any other repair program with respect to the

21   unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in

22   all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore,

23   the Indiana Plaintiff and Indiana State Class members had no reason to believe that

24   Kia Korea and Kia USA would have repaired the ACU Defect if the Indiana

25   Plaintiff and Indiana State Class members presented their Class Vehicles to Kia

26   Korea and Kia USA for repair.

27       3019. Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Plaintiff and Indiana

28   State Class members seek an order enjoining Kia Korea's and Kia USA's unfair or

deceptive acts or practices and awarding damages and any other just and proper relief available under the Indiana DCSA.

### d. Indiana Count 4: Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-3, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia

3020. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3021. The Indiana Plaintiff brings this count individually and on behalf of members of the Indiana State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3022. The ZF and ST Defendants are "suppliers" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

3023. The ZF and ST Defendants, the Indiana Plaintiff, and the Indiana State Class members are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

3024. The ZF and ST Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

3025. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

3026. The ZF and ST Defendants had an ongoing duty to the Indiana Plaintiff and Indiana State Class members to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, the ZF and ST Defendants owed the Indiana Plaintiff and Indiana State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally

concealed the ACU Defect from the Indiana Plaintiff and Indiana State Class members.

3027. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally omitting, concealing, and/or failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3028. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Indiana Plaintiff and Indiana State Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3029. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction prohibited by Ind. Code § 24-5-0.5-3(a).

3030. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those

misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Indiana Plaintiff and Indiana State Class members, about the true safety and reliability of Class Vehicles and the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3031. The Indiana Plaintiff and Indiana State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Indiana Plaintiff and Indiana State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3032. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Indiana Plaintiff and Indiana State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Indiana Plaintiff and Indiana State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3033. The Indiana Plaintiff and Indiana State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

3034. The ZF and ST Defendants' violations present a continuing risk to the Indiana Plaintiff and Indiana State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3035. The ZF and ST Defendants were provided notice of the issues raised in this count and this Complaint by the NHTSA investigations, the numerous

complaints filed against them, and the individual notice letters sent by the Indiana State Class members within a reasonable amount of time after the ACU Defect became public. Also, on May 23, 2019, Indiana State Class members sent a notice letter pursuant to Ind. Code § 24-5-0.5-5(a) to the ZF Defendants. Moreover, additional notice letters were sent on behalf of the Indiana Plaintiff and Indiana State Class members pursuant to Ind. Code § 24-5-0.5-5(a) on April 24, 2020 (to the ZF Defendants), June 5, 2020 (to ST USA) and May 25, 2022 (to ST Italy and ST Malaysia). Because the ZF and ST Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the Indiana Plaintiff seeks all damages and relief to which he and the Indiana State Class members are entitled.

3036. Alternatively, any requirement to give notice to the Defendants under Ind. Code §§ 24-5-0.5-5 is excused because the ACU Defect is incurable and the ZF and ST Defendants' behavior was part of a scheme, artifice, or device with intent to defraud and mislead.

3037. Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Plaintiff and Indiana State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Indiana DCSA.

### e. Indiana Count 5: Fraud by Omission and Concealment Against Kia Korea and Kia USA

3038. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3039. The Indiana Plaintiff brings this count individually and on behalf of members of the Indiana State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3040. Kia Korea and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3041. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3042. Kia Korea and Kia USA had a duty to disclose the ACU Defect to the Indiana Plaintiff and Indiana State Class members because:

a. Kia Korea and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b. Given the ACU Defect's hidden and technical nature, the Indiana Plaintiff and Indiana State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c. Kia Korea and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Kia Class Vehicles containing the ACU Defect would have been a material fact to the Indiana Plaintiff's and Indiana State Class members' decisions to buy or lease Kia Class Vehicles; and

d. Kia Korea and Kia USA made incomplete representations about the safety and reliability of the Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform

advertising and materials provided with each Class Vehicle, Kia
Korea, and Kia USA intentionally concealed, suppressed, and
failed to disclose to the Indiana Plaintiff and Indiana State Class
members that the Kia Class Vehicles contained the ACU Defect.
Because they volunteered to provide information about the Kia
Class Vehicles that they marketed and offered for sale and lease
to the Indiana Plaintiff and Indiana State Class members, Kia
Korea and Kia USA had the duty to disclose the whole truth.

3043. In breach of their duties, Kia Korea and Kia USA failed to disclose
that the Kia Class Vehicles were not safe and reliable, and that their Occupant
Restraint Systems, including their airbags and seatbelt pretensioners could fail in
the event of a crash due to the ACU Defect.

3044. Kia Korea and Kia USA intended for the Indiana Plaintiff and Indiana
State Class members to rely on their omissions—which they did by purchasing and
leasing the Kia Class Vehicles at the prices they paid believing that the Occupant
Restraint Systems in their Class Vehicles would function properly.

3045. That reliance was reasonable, because a reasonable consumer would
not have expected that the Kia Class Vehicles contained a safety defect that poses
such a serious risk. Kia Korea and Kia USA knew that reasonable consumers
expect that their vehicle has working airbags and seatbelt pretensioners and would
rely on those facts in deciding whether to purchase, lease, or retain a new or used
motor vehicle. Whether a manufacturer's products are safe and reliable, and
whether that manufacturer stands behind its products, are material concerns to a
consumer. Especially here when at least nine people have already died due to the
ACU Defect, and many more have been injured.

3046. Additionally, Kia Korea and Kia USA ensured that the Indiana
Plaintiff and Indiana State Class members did not discover this information by

1    actively concealing and misrepresenting the true nature of the Kia Class Vehicles'

2    Occupant Restraint Systems to consumers and NHTSA.

3        3047. Kia Korea and Kia USA actively concealed and suppressed these

4    material facts, in whole or in part, to maintain a market for their Class Vehicles, to

5    protect profits, and to avoid costly recalls that would expose them to liability for

6    those expenses and harm the commercial reputations of Defendants and their

7    products. They did so at the expense of the Indiana Plaintiff and Indiana State Class

8    members.

9        3048. To this day, Kia Korea and Kia USA have not fully and adequately

10   disclosed the ACU Defect, and they continue to conceal material information about

11   the defect from consumers and NHTSA. The omitted and concealed facts were

12   material because a reasonable person would find them important in purchasing,

13   leasing, or retaining a new or used motor vehicle, and because they directly impact

14   the value of the Kia Class Vehicles purchased or leased by the Indiana Plaintiff and

15   Indiana State Class members.

16       3049. Had they been aware of the ACU Defect in the Kia Class Vehicles,

17   and Kia Korea's and Kia USA's callous disregard for safety, the Indiana Plaintiff

18   and Indiana State Class members either would not have paid as much as they did

19   for their Class Vehicles, or they would not have purchased or leased them.

20       3050. As alleged in Section V above, if Kia Korea and Kia USA had fully

21   and adequately disclosed the ACU Defect to consumers and NHTSA, the Indiana

22   Plaintiff and Indiana State Class members would have seen such a disclosure.

23       3051. Accordingly, Kia Korea and Kia USA are liable to the Indiana Plaintiff

24   and Indiana State Class members for their damages in an amount to be proven at

25   trial, including, but not limited to, their lost overpayment for the Kia Class Vehicles

26   at the time of purchase or lease.

27       3052. Kia Korea's and Kia USA's acts were done maliciously, oppressively,

28   deliberately, with intent to defraud; in reckless disregard of the Indiana Plaintiff's

and Indiana State Class members' rights and well-being; and to enrich themselves. Kia Korea's and Kia USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f. Indiana Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia

3053. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3054. The Indiana Plaintiff brings this count individually and on behalf of members of the Indiana State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3055. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3056. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3057. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Indiana Plaintiff and Indiana State Class members because:

a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.    Given the ACU Defect's hidden and technical nature, the Indiana Plaintiff and Indiana State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Indiana Plaintiff's and Indiana State Class members' decisions to buy or lease Class Vehicles; and

d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3058. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint

1   Systems, including their airbags and seatbelt pretensioners could fail in the event of
2   a crash due to the ACU Defect.

3       3059. The ZF and ST Defendants intended for the Indiana Plaintiff and
4   Indiana State Class members to rely on their omissions—which they did by
5   purchasing and leasing the Class Vehicles at the prices they paid believing that the
6   Occupant Restraint Systems in their Class Vehicles would function properly.

7       3060. That reliance was reasonable, because a reasonable consumer would
8   not have expected that the Class Vehicles contained a safety defect that poses such
9   a serious risk. The ZF and ST Defendants knew that reasonable consumers expect
10  that their vehicle has working airbags and seatbelt pretensioners and would rely on
11  those facts in deciding whether to purchase, lease, or retain a new or used motor
12  vehicle. Whether a manufacturer's products are safe and reliable, and whether that
13  manufacturer stands behind its products, are material concerns to a consumer.
14  Especially here when at least nine people have already died due to the ACU Defect,
15  and many more have been injured.

16      3061. Additionally, the ZF and ST Defendants ensured that the Indiana
17  Plaintiff and Indiana State Class members did not discover this information by
18  actively concealing and misrepresenting the true nature of the Class Vehicles'
19  Occupant Restraint Systems to consumers and NHTSA.

20      3062. The ZF and ST Defendants actively concealed and suppressed these
21  material facts, in whole or in part, to maintain a market for the DS84 ACU, to
22  protect profits, and to avoid costly recalls that would expose them to liability for
23  those expenses and harm the commercial reputations of Defendants and their
24  products. They did so at the expense of the Indiana Plaintiff and Indiana State Class
25  members.

26      3063. To this day, the ZF and ST Defendants have not fully and adequately
27  disclosed the ACU Defect, and they continue to conceal material information about
28  the defect from consumers and NHTSA. The omitted and concealed facts were

material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Indiana Plaintiff and Indiana State Class members.

3064. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Indiana Plaintiff and Indiana State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3065. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Indiana Plaintiff and Indiana State Class members would have seen such a disclosure.

3066. Accordingly, the ZF and ST Defendants are liable to the Indiana Plaintiff and Indiana State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

3067. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Indiana Plaintiff's and Indiana State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### g. Indiana Count 7: Unjust Enrichment Against Kia Korea and Kia USA

3068. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

3069. The Indiana Plaintiff brings this count individually and on behalf of members of the Indiana State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3070. The Indiana Plaintiff and Indiana State Class members conferred tangible and material economic benefits upon Kia Korea and Kia USA when they purchased or leased the Kia Class Vehicles. Kia Korea and Kia USA readily accepted and retained these benefits.

3071. The Indiana Plaintiff and Indiana State Class members would not have purchased or leased their Kia Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Kia Korea and Kia USA profited from the sale and lease of the Kia Class Vehicles to the detriment and expense of the Indiana Plaintiff and Indiana State Class members.

3072. Kia Korea and Kia USA appreciated these benefits. These benefits were the expected result of Kia Korea and Kia USA acting in their pecuniary interest at the expense of their customers. Kia Korea and Kia USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Indiana Plaintiff and Indiana State Class members regarding the nature and quality of the Kia Class Vehicles while profiting from this deception.

3073. It would be unjust, inequitable, and unconscionable for Kia Korea and Kia USA to retain these benefits, including because they were procured as a result of the wrongful conduct alleged above.

3074. The Indiana Plaintiff and Indiana State Class members are entitled to restitution of the benefits Kia Korea and Kia USA unjustly retained and/or any amounts necessary to return the Indiana Plaintiff and Indiana State Class members to the position they occupied prior to dealing with Kia Korea and Kia USA, with such amounts to be determined at trial.

3075. The Indiana Plaintiff plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Indiana Plaintiff' claims for damages are dismissed or judgment is entered in favor of Defendants, the Indiana Plaintiff will have no adequate legal remedy.

### 9. Maryland

#### a. Maryland Count 1: Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A-210) Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA[8]

3076. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3077. Plaintiffs Joseph Fuller and Tina Fuller bring this count individually and on behalf of members of the Maryland State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

3078. Plaintiff Diana King brings this count individually and on behalf of members of the Maryland State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3079. For purposes of this count, Plaintiffs Joseph Fuller, Tina Fuller and King shall be referred to as the "Maryland Plaintiffs."

3080. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under Md. Code. Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

3081. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

3082. All Maryland State Class members who purchased Hyundai and Kia Class Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

3083. All Maryland State Class members who leased Hyundai and Kia Class Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

---

[8] The Court held in its February 9, 2022 Order that the Maryland Plaintiffs stated a claim for breach of express warranty. *See* ECF No. 396 at 143.

3084. The Hyundai and Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

3085. In connection with the purchase or lease of Hyundai and Kia Class Vehicles, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA provided the Maryland Plaintiffs and Maryland State Class members with written express warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

3086. However, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, they were aware of the ACU Defect in the Hyundai and Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Maryland Plaintiffs and Maryland State Class members.

3087. The Maryland Plaintiffs and Maryland State Class members were aware the Hyundai and Kia Class Vehicles were covered by express warranties, and those warranties formed the basis of the bargain that was reached when the Maryland Plaintiffs and Maryland State Class members unknowingly purchased or leased Hyundai and Kia Class Vehicles that came equipped with a defective ACU.

3088. Hyundai Korea, Hyundai USA, Kia Korea and Kia USA misrepresented the Hyundai and Kia Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Maryland Plaintiffs and Maryland State Class members were exposed to those misrepresentations, and the Maryland Plaintiffs and Maryland State Class members had no way of discerning that Hyundai Korea's, Hyundai USA's, Kia Korea's and Kia USA's representations

were false and misleading or otherwise learning the material facts that they had concealed or failed to disclose. The Maryland Plaintiffs and Maryland State Class members reasonably relied on Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's express warranties when purchasing or leasing their Hyundai and Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3089. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Hyundai and Kia Class Vehicles. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA also breached their express warranties by providing a product containing defects that were never disclosed to the Maryland Plaintiffs and Maryland State Class members.

3090. The Maryland Plaintiffs and Maryland State Class members have provided Hyundai Korea, Hyundai USA, Kia Korea and Kia USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the Maryland State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Maryland Plaintiffs and Maryland State Class members to Hyundai and Kia on April 24, 2020.

3091. Alternatively, the Maryland Plaintiffs and Maryland State Class members were excused from providing Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Hyundai Korea, Hyundai USA, Kia Korea and Kia USA have long known that the Hyundai and Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction

in crashes involving Class Vehicles; however, to date, Hyundai Korea, Hyundai USA, Kia Korea and Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Hyundai and Kia Class Vehicles, including the recalled Hyundai and Kia Class Vehicles. Therefore, the Maryland Plaintiffs and Maryland State Class members had no reason to believe that Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA would have repaired the ACU Defect they presented their Class Vehicles to them for repair.

3092. As a direct and proximate result of Hyundai Korea's, Hyundai USA's, Kia Korea's and Kia USA's breach of their express warranties, the Hyundai and Kia Class Vehicles were and are defective and the ACU Defect in the Maryland Plaintiffs' and Maryland State Class members' Hyundai and Kia Class Vehicles was not remedied. Therefore, the Maryland Plaintiffs and Maryland State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Hyundai and Kia Class Vehicles with an undisclosed safety defect that would not be remedied.

    **b.**    **Maryland Count 2: Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212) Against Hyundai USA and Kia USA[9]**

3093. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3094. Plaintiffs Joseph Fuller and Tina Fuller bring this count individually and on behalf of members of the Maryland State Class who purchased or leased Hyundai Class Vehicles, against Hyundai USA.

3095. Plaintiff Diana King brings this count individually and on behalf of members of the Maryland State Class who purchased or leased Kia Class Vehicles, against Kia USA.

---

[9] The Court held in its February 9, 2022 Order that the Maryland Plaintiffs stated a claim for breach of implied warranty. *See* ECF No. 396 at 143.

3096. For purposes of this count, Plaintiffs Joseph Fuller, Tina Fuller and King shall be referred to as the "Maryland Plaintiffs."

3097. Hyundai USA and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles Md. Code Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

3098. With respect to leases, Hyundai USA, and Kia USA are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

3099. All Maryland State Class members who purchased Class Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

3100. All Maryland State Class members who leased Class Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

3101. The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

3102. A warranty that the Hyundai and Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

3103. The Hyundai and Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Hyundai and Kia Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Hyundai and Kia Class Vehicles inherently defective and dangerous.

3104. The Maryland Plaintiffs and Maryland State Class members have provided Hyundai USA and Kia USA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the Maryland State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Maryland Plaintiffs and Maryland State Class members to Hyundai USA and Kia USA on April 24, 2020.

3105. Alternatively, the Maryland Plaintiffs and Maryland State Class members were excused from providing Hyundai USA and Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Hyundai USA and Kia USA, have long known that the Hyundai and Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Hyundai USA and Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Hyundai and Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of those Class Vehicles, including the recalled Hyundai and Kia Class Vehicles. Therefore, they have refused to recall or repair defective Hyundai and Kia Class Vehicles, and for those that were recalled, the repair was inadequate because it did not fix the ACU Defect. As such, the Maryland Plaintiffs and Maryland State Class members had no reason to believe that Hyundai USA and Kia USA would have repaired the ACU Defect if the Maryland Plaintiffs and Maryland State Class members presented their Hyundai and Kia Class Vehicles to them for repair.

3106. As a direct and proximate result of Hyundai USA's and Kia USA's breach of the implied warranty of merchantability, the Maryland Plaintiffs and Maryland State Class members have been damaged in an amount to be proven at trial.

**c.** **Maryland Count 3: Violation of the Maryland Consumer Protection Act (Md. Code Com. Law § 13-101, *et seq.*) Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA**[10]

3107. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3108. Plaintiffs Joseph Fuller and Tina Fuller bring this count individually and on behalf of members of the Maryland State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

3109. Plaintiff Diana King brings this count individually and on behalf of members of the Maryland State Class who purchased or leased Kia Class Vehicles, against Kia Korea, and Kia USA.

3110. For purposes of this count, Plaintiffs Joseph Fuller, Tina Fuller and King shall be referred to as the "Maryland Plaintiffs."

3111. Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, the Maryland Plaintiffs, and Maryland State Class members are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

3112. The Maryland Plaintiffs and Maryland State Class members are "consumers" within the meaning of Md. Code Com. Law § 13-101(c).

3113. The Class Vehicles and ACUs installed in them are "merchandise" within the meaning of Md. Code Com. Law § 13-101(f).

3114. The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices[.]" Md. Code Com. Law § 13-301.

3115. In the course of their business, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety,

---

[10] The Court held in its February 9, 2022 Order that the Maryland Plaintiffs stated a claim against Hyundai USA and Kia USA for Violation of the Maryland Consumer Protection Act based on alleged fraudulent omissions. *See* ECF No. 396 at 99.

1   and performance of the Hyundai and Kia Class Vehicles, the safety of their

2   Occupant Restraint Systems, and the ACU Defect, as detailed above.

3       3116. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had an

4   ongoing duty to the Maryland Plaintiffs and Maryland State Class members to

5   refrain from unfair or deceptive practices under the Maryland CPA in the course of

6   their business. Specifically, Hyundai Korea, Hyundai USA, Kia Korea, and Kia

7   USA owed the Maryland Plaintiffs and Maryland State Class members a duty to

8   disclose all the material facts concerning the ACU Defect in the Hyundai and Kia

9   Class Vehicles because they possessed exclusive knowledge, they intentionally

10   concealed the ACU Defect from the Maryland Plaintiffs and Maryland State Class

11   members, and they made misrepresentations that were rendered misleading because

12   they were contradicted by withheld facts.

13       3117. By misrepresenting the Hyundai and Kia Class Vehicles as safe and

14   reliable and the defective ACU and ASICs installed in them as properly-functioning

15   and free from defects, and by failing to disclose and actively concealing the dangers

16   and risk posed by the ACU Defect to both consumers and NHTSA, Hyundai Korea,

17   Hyundai USA, Kia Korea, and Kia USA engaged in one or more of the following

18   unfair or deceptive business practices prohibited by Md. Code Com. Law § 13-303:

19          a.    Representing that the Hyundai and Kia Class Vehicles and/or the

20               defective ACUs and ASICs installed in them have

21               characteristics, uses, benefits, and qualities which they do not

22               have;

23          b.    Representing that the Hyundai and Kia Class Vehicles and/or the

24               defective ACUs and ASICs installed in them are of a particular

25               standard, quality, and grade when they are not;

26          c.    Failure to state material facts about the Hyundai and Kia Class

27               Vehicles and defective ACUs and ASICs;

28

d.   Advertising the Hyundai and Kia Class Vehicles and/or the defective ACUs and ASICs installed in them with the intent not to sell or lease them as advertised; and

e.   Otherwise engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the safety of the Hyundai and Kia Class Vehicles and/or defective ACUs.

Md. Code Com. Law §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i).

3118.   Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Hyundai and Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Maryland Plaintiffs and Maryland State Class members, about the true safety and reliability of Hyundai and Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Hyundai and Kia Class Vehicles, and the true value of those vehicles.

3119.   Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Hyundai and Kia Class Vehicles were material to the Maryland Plaintiffs and Maryland State Class members, as Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA intended. The Maryland Plaintiffs and Maryland State Class members were exposed to those misrepresentations, concealments, omissions,

and suppressions of material facts, and relied on Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's misrepresentations that the Hyundai and Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3120. The Maryland Plaintiffs and Maryland State Class members had no way of discerning that Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's representations were false and misleading and/or otherwise learning the facts that Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had concealed or failed to disclose. The Maryland Plaintiffs and Maryland State Class members did not, and could not, unravel Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's deception on their own.

3121. Had they known the truth, the Maryland Plaintiffs and Maryland State Class members would not have purchased or leased the Hyundai and Kia Class Vehicles, or would have paid significantly less for them.

3122. The Maryland Plaintiffs and Maryland State Class members suffered ascertainable losses and actual damages as a direct and proximate result of Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's concealment, misrepresentations, and failure to disclose material information.

3123. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's violations present a continuing risk to the Maryland Plaintiffs and Maryland State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's unlawful acts and practices complained of herein affect the public interest.

3124. Pursuant to Md. Code Com. Law § 13-408, the Maryland Plaintiffs and Maryland State Class members seek an order enjoining Hyundai Korea's,

Hyundai USA's, Kia Korea's, and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Maryland CPA.

>            **d.**    **Maryland Count 4: Violation of the Maryland Consumer Protection Act (Md. Code Com. Law § 13-101, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3125. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3126. Plaintiffs Joseph Fuller, Tina Fuller, and Diana King bring this count individually and on behalf of members of the Maryland State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3127. For purposes of this count, Plaintiffs Joseph Fuller, Tina Fuller and King shall be referred to as the "Maryland Plaintiffs."

3128. The ZF Defendants, ST Defendants, Maryland Plaintiffs, and Maryland State Class members are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

3129. The Maryland Plaintiffs and Maryland State Class members are "consumers" within the meaning of Md. Code Com. Law § 13-101(c).

3130. The Hyundai and Kia Class Vehicles and ACUs installed in them are "merchandise" within the meaning of Md. Code Com. Law § 13-101(f).

3131. The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices[.]" Md. Code Com. Law § 13-301.

3132. The ZF and ST Defendants had an ongoing duty to the Maryland Plaintiffs and Maryland State Class members to refrain from unfair or deceptive practices under the Maryland CPA in the course of their business. Specifically, the ZF and ST Defendants owed the Maryland Plaintiffs and Maryland State Class

members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Maryland Plaintiffs and Maryland State Class members.

3133. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3134. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3135. By misrepresenting, failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unfair or deceptive trade practices prohibited by Md. Code Com. Law § 13-301, including failing to state material facts, deception, fraud, and/or knowing concealment, suppression, or omission of material facts.

3136. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-

functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Maryland Plaintiffs and Maryland State Class members, about the true safety and reliability of Class Vehicles and the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3137. The Maryland Plaintiffs and Maryland State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of learning the facts that the ZF and ST Defendants had concealed or failed to disclose. The Maryland Plaintiffs and Maryland State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3138. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Maryland Plaintiffs and Maryland State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Maryland Plaintiffs and Maryland State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3139. The Maryland Plaintiffs and Maryland State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

3140. The ZF and ST Defendants' violations present a continuing risk to the Maryland Plaintiffs and Maryland State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and

ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3141. Pursuant to Md. Code Com. Law § 13-408, the Maryland Plaintiffs and Maryland State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Maryland CPA.

**e.    Maryland Count 5: Fraud by Omission and Concealment Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA**

3142. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3143. Plaintiffs Joseph Fuller and Tina Fuller bring this count individually and on behalf of members of the Maryland State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

3144. Plaintiff Diana King brings this count individually and on behalf of members of the Maryland State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3145. For purposes of this count, Plaintiffs Joseph Fuller, Tina Fuller and Diana King shall be referred to as the "Maryland Plaintiffs."

3146. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3147. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as

unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3148. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had a duty to disclose the ACU Defect to the Maryland Plaintiffs and Maryland State Class members because:

a.  Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.  Given the ACU Defect's hidden and technical nature, the Maryland Plaintiffs and Maryland State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.  Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Hyundai and Kia Class Vehicles containing the ACU Defect would have been a material fact to the Maryland Plaintiffs' and Maryland State Class members' decisions to buy or lease Hyundai and Kia Class Vehicles; and

d.  Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA made incomplete representations about the safety and reliability of the Hyundai and Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA intentionally concealed, suppressed, and failed to disclose to the Maryland Plaintiffs and

Maryland State Class members that the Hyundai and Kia Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Hyundai and Kia Class Vehicles that they marketed and offered for sale and lease to the Maryland Plaintiffs and Maryland State Class members, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had the duty to disclose the whole truth.

3149. In breach of their duties, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA failed to disclose that the Hyundai and Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3150. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA intended for the Maryland Plaintiffs and Maryland State Class members to rely on their omissions—which they did by purchasing and leasing the Hyundai and Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3151. That reliance was reasonable, because a reasonable consumer would not have expected that the Hyundai and Kia Class Vehicles contained a safety defect that poses such a serious risk. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3152. Additionally, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA ensured that the Maryland Plaintiffs and Maryland State Class members did not

discover this information by actively concealing and misrepresenting the true nature
of the Hyundai and Kia Class Vehicles' Occupant Restraint Systems to consumers
and NHTSA.

3153. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA actively
concealed and suppressed these material facts, in whole or in part, to maintain a
market for their Class Vehicles, to protect profits, and to avoid costly recalls that
would expose them to liability for those expenses and harm the commercial
reputations of Defendants and their products. They did so at the expense of the
Maryland Plaintiffs and Maryland State Class members.

3154. To this day, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA
have not fully and adequately disclosed the ACU Defect, and they continue to
conceal material information about the defect from consumers and NHTSA. The
omitted and concealed facts were material because a reasonable person would find
them important in purchasing, leasing, or retaining a new or used motor vehicle,
and because they directly impact the value of the Hyundai and Kia Class Vehicles
purchased or leased by the Maryland Plaintiffs and Maryland State Class members.

3155. Had they been aware of the ACU Defect in the Hyundai and Kia Class
Vehicles, and Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's
callous disregard for safety, the Maryland Plaintiffs and Maryland State Class
members either would not have paid as much as they did for their Class Vehicles,
or they would not have purchased or leased them.

3156. As alleged in Section V above, if Hyundai Korea, Hyundai USA, Kia
Korea, and Kia USA had fully and adequately disclosed the ACU Defect to
consumers and NHTSA, the Maryland Plaintiffs and Maryland State Class
members would have seen such a disclosure.

3157. Accordingly, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA
are liable to the Maryland Plaintiffs and Maryland State Class members for their
damages in an amount to be proven at trial, including, but not limited to, their lost

1 overpayment for the Hyundai and Kia Class Vehicles at the time of purchase or

2 lease.

3     3158. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's acts

4 were done maliciously, oppressively, deliberately, with intent to defraud; in

5 reckless disregard of the Maryland Plaintiffs' and Maryland State Class members'

6 rights and well-being; and to enrich themselves. Hyundai Korea's, Hyundai USA's,

7 Kia Korea's, and Kia USA's misconduct warrants an assessment of punitive

8 damages, as permitted by law, in an amount sufficient to deter such conduct in the

9 future, which amount shall be determined according to proof at trial.

10     **f.**    **Maryland Count 6: Fraud by Omission and Concealment**
**Against ZF Electronics USA, ZF Passive Safety USA, ZF**
11 **Automotive USA, ZF TRW Corp., ZF Germany, ST Italy,**
**ST USA, and ST Malaysia**
12

13     3159. Plaintiffs reallege and incorporate by reference all preceding

14 allegations as though fully set forth herein.

15     3160. The Maryland Plaintiffs bring this count individually and on behalf of

16 members of the Maryland State Class who purchased or leased Class Vehicles,

17 against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF

18 TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST

19 Malaysia, and ST USA (collectively, the "ST Defendants").

20     3161. The ZF and ST Defendants are liable for both fraudulent concealment

21 and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

22     3162. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

23 serious risks to vehicle occupants, including that it can cause: (1) airbags and

24 seatbelts not to activate during a crash because crashes can sometimes release

25 electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

26 vehicle has not crashed, which is dangerous because it is shocking and difficult for

27 the driver to operate a vehicle when the airbag deploys without warning; and (3)

28 failures of other important post-crash operations of the safety system, such as

unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3163. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Maryland Plaintiffs and Maryland State Class members because:

        a.      The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

        b.      Given the ACU Defect's hidden and technical nature, the Maryland Plaintiffs and Maryland State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

        c.      The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Maryland Plaintiffs' and Maryland State Class members' decisions to buy or lease Class Vehicles; and

        d.      The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant

Restraint Systems in the Class Vehicles would function properly in a crash.

3164. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3165. The ZF and ST Defendants intended for the Maryland Plaintiffs and Maryland State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3166. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3167. Additionally, the ZF and ST Defendants ensured that the Maryland Plaintiffs and Maryland State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3168. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their

1  products. They did so at the expense of the Maryland Plaintiffs and Maryland State
2  Class members.

3      3169. To this day, the ZF and ST Defendants have not fully and adequately

4  disclosed the ACU Defect, and they continue to conceal material information about

5  the defect from consumers and NHTSA. The omitted and concealed facts were

6  material because a reasonable person would find them important in purchasing,

7  leasing, or retaining a new or used motor vehicle, and because they directly impact

8  the value of the Class Vehicles purchased or leased by the Maryland Plaintiffs and

9  Maryland State Class members.

10     3170. Had they been aware of the ACU Defect in the Class Vehicles, and the

11 ZF and ST Defendants' callous disregard for safety, the Maryland Plaintiffs and

12 Maryland State Class members either would not have paid as much as they did for

13 their Class Vehicles, or they would not have purchased or leased them.

14     3171. As alleged in Section V above, if the ZF and ST Defendants had fully

15 and adequately disclosed the ACU Defect to consumers and NHTSA, the Maryland

16 Plaintiffs and Maryland State Class members would have seen such a disclosure.

17     3172. Accordingly, the ZF and ST Defendants are liable to the Maryland

18 Plaintiffs and Maryland State Class members for their damages in an amount to be

19 proven at trial, including, but not limited to, their lost overpayment for the Class

20 Vehicles at the time of purchase or lease.

21     3173. The ZF and ST Defendants' acts were done maliciously, oppressively,

22 deliberately, with intent to defraud; in reckless disregard of the Maryland Plaintiffs'

23 and Maryland State Class members' rights and well-being; and to enrich

24 themselves. The ZF and ST Defendants' misconduct warrants an assessment of

25 punitive damages, as permitted by law, in an amount sufficient to deter such

26 conduct in the future, which amount shall be determined according to proof at trial.

27

28

### g. Maryland Count 7: Unjust Enrichment Against Hyundai Korea and Hyundai USA

3174. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

3175. Plaintiffs Joseph Fuller and Tina Fuller bring this count individually and on behalf of members of the Maryland State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

3176. For purposes of this count, Plaintiffs Joseph Fuller and Tina Fuller shall be referred to as the "Maryland Plaintiffs."

3177. The Maryland Plaintiffs and Maryland State Class members conferred tangible and material economic benefits upon Hyundai Korea and Hyundai USA when they purchased or leased the Hyundai Class Vehicles. Hyundai Korea and Hyundai USA readily accepted and retained these benefits.

3178. The Maryland Plaintiffs and Maryland State Class members would not have purchased or leased their Hyundai Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Hyundai Korea and Hyundai USA profited from the sale and lease of the Hyundai Class Vehicles to the detriment and expense of the Maryland Plaintiffs and Maryland State Class members.

3179. Hyundai Korea and Hyundai USA appreciated these benefits, which were the expected result of Hyundai Korea and Hyundai USA acting in their pecuniary interest at the expense of their customers. Hyundai Korea and Hyundai USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled Maryland Plaintiffs and Maryland State Class members regarding the nature and quality of the Hyundai Class Vehicles while profiting from this deception.

3180. It would be unjust, inequitable, and unconscionable for Hyundai Korea and Hyundai USA to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3181. The Maryland Plaintiffs and Maryland State Class members are entitled to restitution of the benefits Hyundai Korea and Hyundai USA unjustly retained and/or any amounts necessary to return the Maryland Plaintiffs and Maryland State Class members to the position they occupied prior to dealing with Hyundai Korea and Hyundai USA, with such amounts to be determined at trial.

3182. The Maryland Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Maryland Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Maryland Plaintiffs will have no adequate legal remedy.

**10. Massachusetts**

    **a. Massachusetts Count 1: Breach of Express Warranty (Mass. Gen. Laws ch. 106, §§ 2-313 and 2A-210) Against Kia Korea and Kia USA[11]**

3183. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3184. Plaintiff Dylan DeMoranville (hereinafter, "the Massachusetts Plaintiff") brings this count individually and on behalf of members of the Massachusetts State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3185. Kia Korea and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws ch. 106, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

3186. Kia Korea and Kia USA are and were at all relevant times "lessors" of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

---

[11] The Court held in its February 9, 2022 Order that the Massachusetts Plaintiff stated a claim for breach of express warranty. *See* ECF No. 396 at 144.

3187. All Massachusetts State Class members who purchased Kia Class Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106, § 2-103(1)(a).

3188. All Massachusetts State Class members who leased Kia Class Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws ch. 106, § 2A-103(1)(n).

3189. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

3190. In connection with the purchase or lease of Kia Class Vehicles, Kia Korea and Kia USA provided the Massachusetts Plaintiff and Massachusetts State Class members with written express warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

3191. However, Kia Korea and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, Kia Korea and Kia USA were aware of the ACU Defect in the Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Massachusetts Plaintiff and Massachusetts State Class members.

3192. The Massachusetts Plaintiff and Massachusetts State Class members were aware the Kia Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain that was reached when the Massachusetts Plaintiff and Massachusetts State Class members unknowingly purchased or leased Kia Class Vehicles that came equipped with defective ACUs and ASICs.

3193. Kia Korea and Kia USA misrepresented the Kia Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the

Massachusetts Plaintiff and Massachusetts State Class members were exposed to those misrepresentations, and the Massachusetts Plaintiff and Massachusetts State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading or otherwise learning the material facts that Kia Korea and Kia USA had concealed or failed to disclose. Accordingly, the Massachusetts Plaintiff and Massachusetts State Class members reasonably relied on Kia Korea's and Kia USA's express warranties when purchasing or leasing their Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3194. Kia Korea and Kia USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Kia Class Vehicles. Kia Korea and Kia USA also breached their express warranties by providing a product containing defects that were never disclosed to the Massachusetts Plaintiff and Massachusetts State Class members.

3195. The Massachusetts Plaintiff and Massachusetts State Class members have provided Kia Korea and Kia USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the Massachusetts State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on May 23, 2019, Massachusetts State Class members sent a notice letter to Kia. Moreover, a second notice letter was sent on behalf of the Massachusetts Plaintiff and Massachusetts State Class members to Kia on April 24, 2020.

3196. Alternatively, the Massachusetts Plaintiff and Massachusetts State Class members were excused from providing Kia Korea and Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged

above, Kia Korea and Kia USA have long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia Korea and Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore, the Massachusetts Plaintiff and Massachusetts State Class members had no reason to believe that Kia Korea and Kia USA would have repaired the ACU Defect if the they presented their Class Vehicles to Kia Korea and Kia USA for repair.

3197. As a direct and proximate result of Kia Korea's and Kia USA's breach of their express warranties, the Kia Class Vehicles were and are defective and the ACU Defect in the Massachusetts Plaintiff's and Massachusetts State Class members' Kia Class Vehicles was not remedied. Therefore, the Massachusetts Plaintiff and Massachusetts State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Kia Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.** **Massachusetts Count 2: Breach of Implied Warranty of Merchantability (Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212) Against Kia USA**[12]

3198. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3199. The Massachusetts Plaintiff brings this count individually and on behalf of members of the Massachusetts State Class who purchased or leased Kia Class Vehicles, against Kia USA.

---

[12] The Court held in its February 9, 2022 Order that the Massachusetts Plaintiff stated a claim for breach of implied warranty. *See* ECF No. 396 at 144.

3200. A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212.

3201. Kia USA is and was at all relevant times a "merchant" with respect to motor vehicles under Mass. Gen. Laws ch. 106, §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

3202. Kia USA is and was at all relevant times a "lessor" of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

3203. All Massachusetts State Class members who purchased Kia Class Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106, § 2-103(1)(a).

3204. All Massachusetts State Class members who leased Kia Class Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws ch. 106, § 2A-103(1)(n).

3205. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

3206. The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Kia Class Vehicles contain the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during an crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Kia Class Vehicles inherently defective and dangerous.

3207. The Massachusetts Plaintiff and Massachusetts State Class members have provided Kia USA with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints

filed against it, and individual notice letters sent by the Massachusetts State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on May 23, 2019, Massachusetts State Class members sent a notice letter to Kia. Moreover, a second notice letter was sent on behalf of the Massachusetts Plaintiff and Massachusetts State Class members to Kia USA, on April 24, 2020.

3208. Alternatively, the Massachusetts Plaintiff and Massachusetts State Class members were excused from providing Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia USA has long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia USA has not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore, the Massachusetts Plaintiff and Massachusetts State Class members had no reason to believe that Kia USA would have repaired the ACU Defect if the they presented their Class Vehicles to Kia USA for repair.

3209. As a direct and proximate result of Kia USA's breach of the implied warranty of merchantability, the Massachusetts Plaintiff and Massachusetts State Class members have been damaged in an amount to be proven at trial.

    **c.**    **Massachusetts Count 3: Violation of the Deceptive Acts or Practices Prohibited By Massachusetts Law (Mass. Gen. Laws ch. 93a, § 1, *et seq.*) Against Kia Korea and Kia USA**[13]

3210. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

_____

[13] The Court held in its February 9, 2022 Order that the Massachusetts Plaintiff stated a claim against Kia USA for violation of Mass. Gen. Laws ch. 93a, § 1, *et seq. See* ECF No. 396 at 101.

3211. The Massachusetts Plaintiff brings this count individually and on behalf of members of the Massachusetts State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3212. Kia Korea, Kia USA, the Massachusetts Plaintiff, and Massachusetts State Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

3213. Kia Korea and Kia USA were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

3214. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

3215. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3216. Kia Korea and Kia USA had an ongoing duty to the Massachusetts Plaintiff and Massachusetts State Class members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Kia Korea and Kia USA owed the Massachusetts Plaintiff and Massachusetts State Class members a duty to disclose all the material facts concerning the ACU Defect in the Kia Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Massachusetts Plaintiff and Massachusetts State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3217. By misrepresenting the Kia Class Vehicles and/or the defective ACUs installed in them as safe, reliable, and free from defects, and by failing to disclose

and actively concealing the dangers and risk posed by the Kia Class Vehicles and the ACU Defect, Kia Korea and Kia USA engaged in unfair or deceptive business practices in the conduct of any trade or commerce, as prohibited by Mass. Gen. Laws ch. 93A, § 2.

3218. Kia Korea's and Kia USA's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Massachusetts Plaintiff and Massachusetts State Class members, about the true safety and reliability of Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Kia Class Vehicles, and the true value of those vehicles.

3219. Kia Korea's and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Hyundai and Kia Class Vehicles were material to the decisions of the Massachusetts Plaintiff and Massachusetts State Class members, as Kia Korea and Kia USA intended. The Massachusetts Plaintiff and Massachusetts State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Kia Korea's and Kia USA's misrepresentations that the Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3220. The Massachusetts Plaintiff and Massachusetts State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading and/or otherwise learning the facts that Kia Korea and Kia USA had concealed or failed to disclose. The Massachusetts Plaintiff and Massachusetts State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

3221. Had they known the truth about the ACU Defect, the Massachusetts Plaintiff and Massachusetts State Class members would not have purchased or leased the Kia Class Vehicles, or would have paid significantly less for them.

3222. The Massachusetts Plaintiff and Massachusetts State Class members suffered ascertainable losses and actual damages as a direct and proximate result of Kia Korea's and Kia USA's concealment, misrepresentations, and/or failure to disclose material information.

3223. Kia Korea's and Kia USA's violations present a continuing risk to the Massachusetts Plaintiff and Massachusetts State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Kia Korea's and Kia USA's unlawful acts and practices complained of herein affect the public interest.

3224. Kia Korea and Kia USA were provided notice of the issues raised in this count and this Complaint by the NHTSA investigations, the numerous complaints filed against them, and the many individual notice letters sent by Massachusetts State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on May 23, 2019, Massachusetts State Class members sent a notice letter pursuant to Mass. Gen. Laws ch. 93A, § 9(3) to Kia. Moreover, a second notice letter was sent on behalf of the Massachusetts Plaintiff and Massachusetts State Class members pursuant to Mass. Gen. Laws ch. 93A, § 9(3) to Kia on April 24, 2020. Kia Korea and Kia USA failed to adequately remedy their unlawful conduct within the requisite time period, the Massachusetts

Plaintiff seeks all damages and relief to which the Massachusetts Plaintiff and Massachusetts State Class members are entitled.

3225. Alternatively, the Massachusetts Plaintiff and Massachusetts State Class members were excused from providing Kia Korea and Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia Korea and Kia USA has long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia Korea and Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore, the Massachusetts Plaintiff and Massachusetts State Class members had no reason to believe that Kia Korea and Kia USA would have repaired the ACU Defect if the they presented their Class Vehicles to Kia Korea and Kia USA for repair.

3226. Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiff and Massachusetts State Class members seek an order enjoining Kia Korea's and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Massachusetts Act.

    **d.**    **Massachusetts Count 4: Violation of the Deceptive Acts or Practices Prohibited By Massachusetts Law (Mass. Gen. Laws ch. 93a, § 1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3227. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3228. The Massachusetts Plaintiff brings this count individually and on behalf of members of the Massachusetts State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany

(collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3229. The ZF Defendants, ST Defendants, Massachusetts Plaintiff, and Massachusetts State Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

3230. The ZF and ST Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

3231. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

3232. The ZF and ST Defendants had an ongoing duty to the Massachusetts Plaintiff and Massachusetts State Class members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, the ZF and ST Defendants owed the Massachusetts Plaintiff and Massachusetts State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Massachusetts Plaintiff and Massachusetts State Class members.

3233. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3234. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Massachusetts Act when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF

Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3235. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in deceptive acts or practices prohibited by Mass. Gen. Laws ch. 93A, § 2.

3236. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Massachusetts Plaintiff and Massachusetts State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3237. The Massachusetts Plaintiff and Massachusetts State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Massachusetts Plaintiff and Massachusetts State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

- 1045 -

3238. The ZF and ST Defendants' misrepresentations, omissions, and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Massachusetts Plaintiff and Massachusetts State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Massachusetts Plaintiff and Massachusetts State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3239. The Massachusetts Plaintiff and Massachusetts State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

3240. The ZF and ST Defendants' violations present a continuing risk to the Massachusetts Plaintiff and Massachusetts State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3241. The ZF and ST Defendants were provided notice of the issues raised in this count and this Complaint by the NHTSA investigations, the numerous complaints filed against them, and the many individual notice letters sent by Massachusetts State Class members within a reasonable amount of time after the allegations of the ACU Defect became public. Also, on May 23, 2019, Massachusetts State Class members sent a notice letter pursuant to Mass. Gen. Laws ch. 93A, § 9(3) to the ZF Defendants, and a second notice letter was sent to the ZF Defendants on behalf of the Massachusetts Plaintiff and Massachusetts State Class members pursuant to Mass. Gen. Laws ch. 93A, § 9(3) on April 24, 2020. Moreover, a notice letter was sent to ST USA on behalf of the Massachusetts Plaintiff and Massachusetts State Class members pursuant to Mass. Gen. Laws ch.

93A, § 9(3) on June 5, 2020, and to ST Italy and ST Malaysia on May 25, 2022. Because the ZF and ST Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the Massachusetts Plaintiff seeks all damages and relief to which the Massachusetts Plaintiff and Massachusetts State Class members are entitled.

3242. Alternatively, any requirement to give notice to the Defendants under Mass. Gen. Laws ch. 93A, § 9(3) is excused because, *inter alia*, on information and belief the ZF and ST Defendants do not maintain a place of business or do not keep assets within Massachusetts.

3243. Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiff and Massachusetts State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Massachusetts Act.

### e. Massachusetts Count 5: Fraud by Omission and Concealment Against Kia Korea and Kia USA

3244. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3245. The Massachusetts Plaintiff brings this count individually and on behalf of members of the Massachusetts State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3246. Kia Korea and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3247. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3)

failures of other important post-crash operations of the safety system, such as
unlocking doors to facilitate escape or extraction of drivers and passengers by
emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

    3248. Kia Korea and Kia USA had a duty to disclose the ACU Defect to the
Massachusetts Plaintiff and Massachusetts State Class members because:

        a.    Kia Korea and Kia USA had exclusive access to and far superior
            knowledge about technical facts regarding the ACU Defect;

        b.    Given the ACU Defect's hidden and technical nature, the
            Massachusetts Plaintiff and Massachusetts State Class members
            lack the sophisticated expertise in vehicle components and
            electrical phenomena that would be necessary to discover the
            ACU Defect on their own;

        c.    Kia Korea and Kia USA knew that the ACU Defect gave rise to
            serious safety concerns for the consumers who use the vehicles,
            and the Kia Class Vehicles containing the ACU Defect would
            have been a material fact to the Massachusetts Plaintiff's and
            Massachusetts  State Class members' decisions to buy or lease
            Kia Class Vehicles; and

        d.    Kia Korea and Kia USA made incomplete representations about
            the safety and reliability of the Kia Class Vehicles and their
            Occupant Restraint System, while purposefully withholding
            material facts about a known safety defect. In uniform
            advertising and materials provided with each Class Vehicle, Kia
            Korea, and Kia USA intentionally concealed, suppressed, and
            failed to disclose to the Massachusetts Plaintiff and
             Massachusetts State Class members that the Kia Class Vehicles
            contained the ACU Defect. Because they volunteered to provide
            information about the Kia Class Vehicles that they marketed and

offered for sale and lease to the Massachusetts Plaintiff and

Massachusetts State Class members, Kia Korea and Kia USA

had the duty to disclose the whole truth.

3249. In breach of their duties, Kia Korea and Kia USA failed to disclose that the Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3250. Kia Korea and Kia USA intended for the Massachusetts Plaintiff and Massachusetts State Class members to rely on their omissions—which they did by purchasing and leasing the Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3251. That reliance was reasonable, because a reasonable consumer would not have expected that the Kia Class Vehicles contained a safety defect that poses such a serious risk. Kia Korea and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3252. Additionally, Kia Korea and Kia USA ensured that the Massachusetts Plaintiff and Massachusetts State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3253. Kia Korea and Kia USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their

1  products. They did so at the expense of the Massachusetts Plaintiff and
2  Massachusetts State Class members.

3      3254. To this day, Kia Korea and Kia USA have not fully and adequately
4  disclosed the ACU Defect, and they continue to conceal material information about
5  the defect from consumers and NHTSA. The omitted and concealed facts were
6  material because a reasonable person would find them important in purchasing,
7  leasing, or retaining a new or used motor vehicle, and because they directly impact
8  the value of the Kia Class Vehicles purchased or leased by the Massachusetts
9  Plaintiff and Massachusetts State Class members.

10      3255. Had they been aware of the ACU Defect in the Kia Class Vehicles,
11  and Kia Korea's and Kia USA's callous disregard for safety, the Massachusetts
12  Plaintiff and Massachusetts  State Class members either would not have paid as
13  much as they did for their Class Vehicles, or they would not have purchased or
14  leased them.

15      3256. As alleged in Section V above, if Kia Korea and Kia USA had fully
16  and adequately disclosed the ACU Defect to consumers and NHTSA, the
17  Massachusetts Plaintiff and Massachusetts State Class members would have seen
18  such a disclosure.

19      3257. Accordingly, Kia Korea and Kia USA are liable to the Massachusetts
20  Plaintiff and Massachusetts State Class members for their damages in an amount to
21  be proven at trial, including, but not limited to, their lost overpayment for the Kia
22  Class Vehicles at the time of purchase or lease.

23      3258. Kia Korea's and Kia USA's acts were done maliciously, oppressively,
24  deliberately, with intent to defraud; in reckless disregard of the Massachusetts
25  Plaintiff's and Massachusetts State Class members' rights and well-being; and to
26  enrich themselves. Kia Korea's and Kia USA's misconduct warrants an assessment
27  of punitive damages, as permitted by law, in an amount sufficient to deter such
28  conduct in the future, which amount shall be determined according to proof at trial.

f.  **Massachusetts Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3259.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3260.  The Massachusetts Plaintiff brings this count individually and on behalf of members of the Massachusetts State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3261.  The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3262.  As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3263.  The ZF and ST Defendants had a duty to disclose the ACU Defect to the Massachusetts Plaintiff and Massachusetts State Class members because:

a.  The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.  Given the ACU Defect's hidden and technical nature, the Massachusetts Plaintiff and Massachusetts State Class members

- 1051 -

lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c. The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Massachusetts Plaintiff's and Massachusetts State Class members' decisions to buy or lease Class Vehicles; and

d. The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3264. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3265. The ZF and ST Defendants intended for the Massachusetts Plaintiff and Massachusetts State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3266. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3267. Additionally, the ZF and ST Defendants ensured that the Massachusetts Plaintiff and Massachusetts State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3268. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Massachusetts Plaintiff and Massachusetts State Class members.

3269. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Massachusetts Plaintiff and Massachusetts State Class members.

3270. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Massachusetts Plaintiff and

1  Massachusetts State Class members either would not have paid as much as they did

2  for their Class Vehicles, or they would not have purchased or leased them.

3      3271. As alleged in Section V above, if the ZF and ST Defendants had fully

4  and adequately disclosed the ACU Defect to consumers and NHTSA, the

5  Massachusetts Plaintiff and Massachusetts State Class members would have seen

6  such a disclosure.

7      3272. Accordingly, the ZF and ST Defendants are liable to the Massachusetts

8  Plaintiff and Massachusetts State Class members for their damages in an amount to

9  be proven at trial, including, but not limited to, their lost overpayment for the Class

10 Vehicles at the time of purchase or lease.

11     3273. The ZF and ST Defendants' acts were done maliciously, oppressively,

12 deliberately, with intent to defraud; in reckless disregard of the Massachusetts

13 Plaintiff's and Massachusetts State Class members' rights and well-being; and to

14 enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment

15 of punitive damages, as permitted by law, in an amount sufficient to deter such

16 conduct in the future, which amount shall be determined according to proof at trial.

17     **11.  Michigan**

18          **a.    Michigan Count 1: Breach of Express Warranty (Mich.
19                  Comp. Laws §§ 440.2313 and 440.2860) Against Kia Korea
                    and Kia USA**

20     3274. Plaintiffs reallege and incorporate by reference all preceding

21 allegations as though fully set forth herein.

22     3275. Plaintiff Kinyata Jones (hereinafter, "Michigan Plaintiff") brings this

23 count individually and on behalf of members of the Michigan State Class who

24 purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

25     3276. The Michigan Plaintiff and Michigan State Class members purchased

26 their Kia Class Vehicles primarily for personal, family, or household purposes.

27

28

3277. Kia Korea and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and "sellers" of motor vehicles under § 440.2103(1)(c).

3278. Kia Korea and Kia USA are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

3279. All Michigan State Class members who purchased Kia Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws §440.2103(1)(a).

3280. All Michigan State Class members who leased Kia Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

3281. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

3282. In connection with the purchase or lease of Kia Class Vehicles, Kia Korea and Kia USA provided the Michigan Plaintiff and Michigan State Class members with written express warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

3283. However, Kia Korea and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, Kia Korea and Kia USA were aware of the ACU Defect in the Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Michigan Plaintiff and Michigan State Class members.

3284. The Michigan Plaintiff and Michigan State Class members were aware the Kia Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain that was reached when they unknowingly purchased or leased Kia Class Vehicles that contained the ACU Defect.

3285.  Kia Korea and Kia USA misrepresented the Kia Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Michigan Plaintiff and Michigan State Class members were exposed to those misrepresentations, and the Michigan Plaintiff and Michigan State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading or otherwise learning the material facts that Kia Korea and Kia USA had concealed or failed to disclose. Accordingly, the Michigan Plaintiff and Michigan State Class members reasonably relied on Kia Korea's and Kia USA's express warranties when purchasing or leasing their Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3286.  Kia Korea and Kia USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Kia Class Vehicles. Kia Korea and Kia USA also breached their express warranties by providing a product containing defects that were never disclosed to the Michigan Plaintiff and Michigan State Class members.

3287.  The Michigan Plaintiff and Michigan State Class members have provided Kia Korea and Kia USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the Michigan State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Michigan Plaintiff and Michigan State Class members to Kia Korea and Kia USA on April 24, 2020.

3288.  Alternatively, the Michigan Plaintiff and Michigan State Class members were excused from providing Kia Korea and Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above,

Kia Korea and Kia USA have long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia Korea and Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore, the Michigan Plaintiff and Michigan State Class members had no reason to believe that Kia Korea and Kia USA would have repaired the ACU Defect if the they presented their Class Vehicles to Kia Korea and Kia USA for repair.

3289. As a direct and proximate result of Kia Korea's and Kia USA's breach of their express warranties, the Kia Class Vehicles were and are defective and the ACU Defect in the Michigan Plaintiff's and Michigan State Class members' Kia Class Vehicles was not remedied. Therefore, the Michigan Plaintiff and Michigan State Class members have been, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Kia Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.    Michigan Count 2: Breach of Implied Warranty of Merchantability (Mich. Comp. Laws §§ 440.2314 and 440.2862) Against Kia USA**

3290. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3291. The Michigan Plaintiff brings this count individually and on behalf of members of the Michigan State Class who purchased or leased Kia Class Vehicles, against Kia USA.

3292. A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

3293. Kia USA is and was at all relevant times a "merchant" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and a "seller" of motor vehicles under § 440.2103(1)(c).

3294. Kia USA is and was at all relevant times a "lessor" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

3295. All Michigan State Class members who purchased Kia Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

3296. All Michigan State Class members who leased Kia Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

3297. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

3298. The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Kia Class Vehicles contain the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during an crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Kia Class Vehicles inherently defective and dangerous.

3299. The Michigan Plaintiff and Michigan State Class members have provided Kia USA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the Michigan State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Michigan Plaintiff and Michigan State Class members to Kia USA on April 24, 2020.

3300. Alternatively, the Michigan Plaintiff and Michigan State Class members were excused from providing Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia USA has long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia USA has not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all of the Kia Class Vehicles, including the recalled Kia Class Vehicles. Therefore, the Michigan Plaintiff and Michigan State Class members had no reason to believe that Kia USA would have repaired the ACU Defect if they presented their Class Vehicles to Kia USA for repair.

3301. As a direct and proximate result of Kia USA's breach of the implied warranty of merchantability, the Michigan Plaintiff and Michigan State Class members have been damaged in an amount to be proven at trial.

**c.    Michigan Count 3: Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*) Against Kia Korea and Kia USA**

3302. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3303. The Michigan Plaintiff brings this count individually and on behalf of members of the Michigan State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3304. Kia Korea, Kia USA, the Michigan Plaintiff, and Michigan State Class members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

3305. Kia Korea and Kia USA were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

3306. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

3307. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3308. Kia Korea and Kia USA had an ongoing duty to the Michigan Plaintiff and Michigan State Class members to refrain from unfair or deceptive practices under the Michigan CPA in the course of their business. Specifically, Kia Korea and Kia USA owed the Michigan Plaintiff and Michigan State Class members a duty to disclose all the material facts concerning the ACU Defect in the Kia Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Michigan Plaintiff and Michigan State Class members, and they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3309. By misrepresenting the Kia Class Vehicles and/or the defective ACUs installed in them as safe, reliable, and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Kia Class Vehicles and the ACU Defect, Kia Korea and Kia USA engaged in unfair or deceptive business practices prohibited by Mich. Comp. Laws §§ 445.903:

a. Representing that the Kia Class Vehicles and/or the defective ACUs and ASICs installed in them have characteristics, uses, benefits, and qualities which they do not have.

b. Representing that the Kia Class Vehicles and/or the defective ACUs installed in them are of a particular standard, quality, and grade when they are not.

- 1060 -

c.  Advertising the Kia Class Vehicles and/or the defective ACUs installed in them with the intent not to sell or lease them as advertised.

d.  Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

e.  Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws §§ 445.903(1)(c), (e), (g), (s), and (cc).

3310. Kia Korea's and Kia USA's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Michigan Plaintiff and Michigan State Class members, about the true safety and reliability of Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Kia Class Vehicles, and the true value of those vehicles.

3311. Kia Korea's and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Kia Class Vehicles were material to the decisions of the Michigan Plaintiff and Michigan State Class members, as Kia Korea and Kia USA intended. The Michigan Plaintiff and Michigan State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Kia

Korea's and Kia USA's misrepresentations that the Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3312. The Michigan Plaintiff and Michigan State Class members had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading and/or otherwise learning the facts that Kia Korea and Kia USA had concealed or failed to disclose. The Michigan Plaintiff and Michigan State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

3313. Had they known the truth about the ACU Defect, the Michigan Plaintiff and Michigan State Class members would not have purchased or leased the Kia Class Vehicles, or would have paid significantly less for them.

3314. Kia Korea's and Kia USA's fraudulent behavior, described herein, concerned whether the Kia Class Vehicles had a functional Occupant Restraint System and the value of the Kia Class Vehicles, and therefore deprived the Michigan Plaintiff and Michigan State Class members of the ability to negotiate fair terms and make an informed decision about whether to purchase or lease Kia Class Vehicles and how much to pay for them.

3315. The Michigan Plaintiff and Michigan State Class members suffered ascertainable losses and actual damages as a direct and proximate result of Kia Korea's and Kia USA's concealment, misrepresentations, and failure to disclose material information.

3316. Kia Korea's and Kia USA's violations present a continuing risk to the Michigan Plaintiff and Michigan State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and

ASICs therein. Kia Korea's and Kia USA's unlawful acts and practices complained of herein affect the public interest.

3317. Pursuant to Mich. Comp. Laws § 445.911, the Michigan Plaintiff and Michigan State Class members seek an order enjoining Kia Korea's and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Michigan CPA.

> **d.** **Michigan Count 4: Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3318. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3319. The Michigan Plaintiff brings this count individually and on behalf of members of the Michigan State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3320. The ZF Defendants, ST Defendants, Michigan Plaintiff, and Michigan State Class members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

3321. The ZF and ST Defendants were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

3322. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

3323. The ZF and ST Defendants had an ongoing duty to the Michigan Plaintiff and Michigan State Class members to refrain from unfair or deceptive practices under the Michigan CPA in the course of their business. Specifically, the ZF and ST Defendants owed the Michigan Plaintiff and Michigan State Class

members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Michigan Plaintiff and Michigan State Class members.

3324. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3325. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Michigan CPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3326. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in one or more of the unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce prohibited by Mich. Comp. Laws § 445.903(1), (1)(c), (e), (g), (s), and (cc), including misrepresenting and failing to reveal material facts that could not reasonably be known by the consumer, and failing to reveal facts that are material to the transaction in light of representations of fact made by the Vehicle Manufacturer Defendants.

3327.    The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Michigan Plaintiff and Michigan State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs installed in them.

3328.    The Michigan Plaintiff and Michigan State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Michigan Plaintiff and Michigan State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3329.    The ZF and ST Defendants' misrepresentations, omissions, and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Michigan Plaintiff and Michigan State Class members, as the ZF and ST Defendants intended. Had they known the truth about the ACU Defect, the Michigan Plaintiff and Michigan State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3330.    The ZF and ST Defendants' fraudulent behavior, described herein, concerned whether Class Vehicles had a functional Occupant Restraint System and the value of the Class Vehicles, and therefore deprived the Michigan Plaintiff and Michigan State Class members of the ability to negotiate fair terms and make an

informed decision about whether to purchase or lease Class Vehicles and how much to pay for them.

3331.     The Michigan Plaintiff and Michigan State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

3332.     The ZF and ST Defendants' violations present a continuing risk to the Michigan Plaintiff and Michigan State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3333. Pursuant to Mich. Comp. Laws § 445.911, the Michigan Plaintiff and Michigan State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Michigan CPA.

### e.     Michigan Count 5: Fraud by Omission and Concealment Against Kia Korea and Kia USA

3334. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3335. The Michigan Plaintiff brings this count individually and on behalf of members of the Michigan State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3336. Kia Korea and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3337. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

- 1066 -

vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3338. Kia Korea and Kia USA had a duty to disclose the ACU Defect to the Michigan Plaintiff and Michigan State Class members because:

      a.    Kia Korea and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.    Given the ACU Defect's hidden and technical nature, the Michigan Plaintiff and Michigan State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

      c.    Kia Korea and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Kia Class Vehicles containing the ACU Defect would have been a material fact to the Michigan Plaintiff's and Michigan State Class members' decisions to buy or lease Kia Class Vehicles; and

      d.    Kia Korea and Kia USA made incomplete representations about the safety and reliability of the Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Kia Korea, and Kia USA intentionally concealed, suppressed, and failed to disclose to the Michigan Plaintiff and Michigan State Class members that the Kia Class Vehicles contained the ACU

Defect. Because they volunteered to provide information about the Kia Class Vehicles that they marketed and offered for sale and lease to the Michigan Plaintiff and Michigan State Class members, Kia Korea and Kia USA had the duty to disclose the whole truth.

3339. In breach of their duties, Kia Korea and Kia USA failed to disclose that the Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, could fail in the event of a crash due to the ACU Defect.

3340. Kia Korea and Kia USA intended for the Michigan Plaintiff and Michigan State Class members to rely on their omissions—which they did by purchasing and leasing the Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3341. That reliance was reasonable, because a reasonable consumer would not have expected that the Kia Class Vehicles contained a safety defect that poses such a serious risk. Kia Korea and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3342. Additionally, Kia Korea and Kia USA ensured that the Michigan Plaintiff and Michigan State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3343. Kia Korea and Kia USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to

protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Michigan Plaintiff and Michigan State Class members.

3344. To this day, Kia Korea and Kia USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Kia Class Vehicles purchased or leased by the Michigan Plaintiff and Michigan State Class members.

3345. Had they been aware of the ACU Defect in the Kia Class Vehicles, and Kia Korea's and Kia USA's callous disregard for safety, the Michigan Plaintiff and Michigan State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3346. As alleged in Section V above, if Kia Korea and Kia USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Michigan Plaintiff and Michigan State Class members would have seen such a disclosure.

3347. Accordingly, Kia Korea and Kia USA are liable to the Michigan Plaintiff and Michigan State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Kia Class Vehicles at the time of purchase or lease.

3348. Kia Korea's and Kia USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Michigan Plaintiff's and Michigan State Class members' rights and well-being; and to enrich themselves. Kia Korea's and Kia USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1

2

**f.    Michigan Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3

4

3349.  Plaintiffs reallege and incorporate by reference all preceding

allegations as though fully set forth herein.

5

6

3350.  The Michigan Plaintiff brings this count individually and on behalf of

7

members of the Michigan State Class who purchased or leased Class Vehicles,

8

against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF

9

TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST

Malaysia, and ST USA (collectively, the "ST Defendants").

10

11

3351.  The ZF and ST Defendants are liable for both fraudulent concealment

and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

12

13

3352.  As explained in Section IV.A, the ACU Defect in Class Vehicles poses

14

serious risks to vehicle occupants, including that it can cause: (1) airbags and

15

seatbelts not to activate during a crash because crashes can sometimes release

16

electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

17

vehicle has not crashed, which is dangerous because it is shocking and difficult for

18

the driver to operate a vehicle when the airbag deploys without warning; and (3)

19

failures of other important post-crash operations of the safety system, such as

20

unlocking doors to facilitate escape or extraction of drivers and passengers by

emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

21

22

3353.  The ZF and ST Defendants had a duty to disclose the ACU Defect to

the Michigan Plaintiff and Michigan State Class members because:

23

24

a.    The ZF and ST Defendants had exclusive access to and far

25

superior knowledge about technical facts regarding the ACU

Defect;

26

27

b.    Given the ACU Defect's hidden and technical nature, the

Michigan Plaintiff and Michigan State Class members lack the

28

sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Michigan Plaintiff's and Michigan State Class members' decisions to buy or lease Class Vehicles; and

    d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3354. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, could fail in the event of a crash due to the ACU Defect.

3355. The ZF and ST Defendants intended for the Michigan Plaintiff and Michigan State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3356. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3357. Additionally, the ZF and ST Defendants ensured that the Michigan Plaintiff and Michigan State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3358. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Michigan Plaintiff and Michigan State Class members.

3359. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Michigan Plaintiff and Michigan State Class members.

3360. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Michigan Plaintiff and

Michigan State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3361. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Michigan Plaintiff and Michigan State Class members would have seen such a disclosure.

3362. Accordingly, the ZF and ST Defendants are liable to the Michigan Plaintiff and Michigan State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

3363. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Michigan Plaintiff's and Michigan State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**12. Minnesota**

    **a.    Minnesota Count 1: Breach of Express Warranty (Minn. Stat. §§ 336.2-313 and 336.2A-210) Against FCA, Kia Korea, and Kia USA**

3364. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3365. Plaintiff Steve Keister brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased FCA Class Vehicles, against FCA.

3366. Plaintiff Bobbi Jo Birk-LaBarge brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3367. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3368. FCA, Kia Korea, and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

3369. FCA, Kia Korea, and Kia USA are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

3370. All Minnesota State Class members who purchased FCA and Kia Class Vehicles in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

3371. All Minnesota State Class members who leased FCA and Kia Class Vehicles in Minnesota are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

3372. The FCA and Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

3373. In connection with the purchase or lease of FCA and Kia Class Vehicles, FCA, Kia Korea, and Kia USA provided the Minnesota Plaintiffs and Minnesota State Class members with written express warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the FCA and Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

3374. However, FCA, Kia Korea, and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, FCA, Kia Korea, and Kia USA were aware of the ACU Defect in the FCA and Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Minnesota Plaintiffs and Minnesota State Class members.

3375. The Minnesota Plaintiffs and Minnesota State Class members were aware the FCA and Kia Class Vehicles were covered by express warranties, and

1  those warranties were an essential part of the bargain between the Minnesota
2  Plaintiffs and Minnesota State Class members, FCA, Kia Korea, and Kia USA
3  when they unknowingly purchased or leased FCA and Kia Class Vehicles that
4  contained the ACU Defect.

5       3376. FCA, Kia Korea, and Kia USA misrepresented the FCA and Kia Class
6  Vehicles as safe and reliable while concealing that they contained the ACU Defect,
7  the Minnesota Plaintiffs and Minnesota State Class members were exposed to those
8  misrepresentations, and the Minnesota Plaintiffs and Minnesota State Class
9  members had no way of discerning that FCA's, Kia Korea's, and Kia USA's
10 representations were false and misleading or otherwise learning the material facts
11 that FCA, Kia Korea, and Kia USA had concealed or failed to disclose.
12 Accordingly, the Minnesota Plaintiffs and Minnesota State Class members
13 reasonably relied on FCA's, Kia Korea's, and Kia USA's express warranties when
14 purchasing or leasing their FCA and Kia Class Vehicles. Plaintiffs allege the
15 information they relied upon in Section II.B above. To aid review of this
16 information, Exhibit 19 provides paragraph numbers for each Plaintiff.

17      3377. FCA, Kia Korea, and Kia USA knowingly breached their express
18 warranties to repair defects in materials and workmanship by failing to repair the
19 ACU Defect or replace the defective ACUs and ASICs in the FCA and Kia Class
20 Vehicles. FCA, Kia Korea, and Kia USA also breached their express warranties by
21 providing a product containing defects that were never disclosed to the Minnesota
22 Plaintiffs and Minnesota State Class members.

23      3378. The Minnesota Plaintiffs and Minnesota State Class members have
24 provided FCA, Kia Korea, and Kia USA with reasonable notice and opportunity to
25 cure the breaches of their express warranties by way of the numerous NHTSA
26 complaints filed against them, and individual notice letters sent by the Minnesota
27 State Class members within a reasonable amount of time after the ACU Defect
28 became public. Additionally, a notice letter was sent on behalf of the Minnesota

1  Plaintiffs and Minnesota State Class members to FCA, Kia Korea, and Kia USA on

2  April 24, 2020.

3      3379. Alternatively, the Minnesota Plaintiffs and Minnesota State Class

4  members were excused from providing FCA, Kia Korea, and Kia USA with notice

5  and an opportunity to cure the breach, because it would have been futile. As alleged

6  above, FCA, Kia Korea, and Kia USA have long known that the FCA and Kia

7  Class Vehicles contained the ACU Defect, and that the ACU Defect has caused

8  ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to

9  date, FCA, Kia Korea, and Kia USA have not instituted a recall or any other repair

10 program with respect to the unrecalled FCA and Kia Class Vehicles, or even

11 acknowledged that the ACU Defect exists in all of the FCA and Kia Class Vehicles,

12 including the recalled FCA and Kia Class Vehicles. Therefore, the Minnesota

13 Plaintiffs and Minnesota State Class members had no reason to believe that FCA,

14 Kia Korea, and Kia USA would have repaired the ACU Defect if they presented

15 their Class Vehicles to FCA, Kia Korea, and Kia USA for repair.

16     3380. As a direct and proximate result of FCA's, Kia Korea's, and Kia

17 USA's breach of their express warranties, the FCA and Kia Class Vehicles were

18 and are defective and the ACU Defect in the Minnesota Plaintiffs' and Minnesota

19 State Class members' FCA and Kia Class Vehicles was not remedied. Therefore,

20 the Minnesota Plaintiffs and Minnesota State Class members have been damaged,

21 in an amount to be proven at trial, through their overpayment at the time of

22 purchase or lease for Kia Class Vehicles with an undisclosed safety defect that

23 would not be remedied.

24          **b.    Minnesota Count 2: Breach of Implied Warranty of**
           **Merchantability (Minn. Stat. §§ 336.2-314 and 336.2A-212)**
25          **Against FCA and Kia USA**

26     3381. Plaintiffs reallege and incorporate by reference all preceding

27 allegations as though fully set forth herein.

28

3382. Plaintiff Steve Keister brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased FCA Class Vehicles, against FCA.

3383. Plaintiff Bobbi Jo Birk-LaBarge brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased Kia Class Vehicles, against Kia USA.

3384. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3385. A warranty that the FCA and Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

3386. The FCA and Kia Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

3387. With respect to leases, the FCA and Kia Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

3388. All Minnesota State Class members who purchased FCA and Kia Class Vehicles in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a),

3389. All Minnesota State Class members who leased FCA and Kia Class Vehicles in Minnesota are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

3390. The FCA and Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

3391. The FCA and Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles

1  were used. Specifically, at the time they were sold and leased the FCA and Kia

2  Class Vehicles contained the ACU Defect, which may cause the airbags and

3  seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors

4  automatically after a crash, the failure to turn off a fuel supply or high-voltage

5  battery after a crash, or the airbags to inadvertently deploy, all of which render the

6  FCA and Kia Class Vehicles inherently defective and dangerous.

7      3392. The Minnesota Plaintiffs and Minnesota State Class members have

8  provided FCA and Kia USA with reasonable notice and opportunity to cure the

9  breaches of their implied warranties by way of the numerous NHTSA complaints

10  filed against them, and individual notice letters sent by the Minnesota State Class

11  members within a reasonable amount of time after the ACU Defect became public.

12  Additionally, a notice letter was sent on behalf of the Minnesota Plaintiffs and

13  Minnesota State Class members to FCA and Kia USA on April 24, 2020.

14      3393. Alternatively, the Minnesota Plaintiffs and Minnesota State Class

15  members were excused from providing FCA and Kia USA with notice and an

16  opportunity to cure the breach, because it would have been futile. As alleged above,

17  FCA and Kia USA have long known that the FCA and Kia Class Vehicles

18  contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs

19  to malfunction in crashes involving Class Vehicles; however, to date, FCA and Kia

20  USA have not instituted a recall or any other repair program with respect to the

21  unrecalled FCA and Kia Class Vehicles, or even acknowledged that the ACU Defect

22  exists in all of the FCA and Kia Class Vehicles, including the recalled FCA and Kia

23  Class Vehicles. Therefore, the Minnesota Plaintiffs and Minnesota State Class

24  members had no reason to believe that FCA and Kia USA would have repaired the

25  ACU Defect if they presented their Class Vehicles to FCA and Kia USA for repair.

26      3394. As a direct and proximate result of the FCA's and Kia USA's breach

27  of the implied warranty of merchantability, the Minnesota Plaintiffs and Minnesota

28  State Class members have been damaged in an amount to be proven at trial.

c. **Minnesota Count 3: Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.* and Minn. Stat. § 8.31, subd. 3a) Against FCA, Kia Korea, and Kia USA**

3395. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3396. Plaintiff Steve Keister brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased FCA Class Vehicles, against FCA.

3397. Plaintiff Bobbi Jo Birk-LaBarge brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3398. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3399. FCA, Kia Korea, Kia USA, the Minnesota Plaintiffs, and the Minnesota State Class members are "persons" within the meaning of Minn. Stat. § 325F.68(3).

3400. The FCA and Kia Class Vehicles and ACUs and ASICs installed in them are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

3401. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

3402. In the course of their business, FCA, Kia Korea, and Kia USA, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of

the Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU
Defect, as detailed above.

3403. FCA, Kia Korea, and Kia USA had an ongoing duty to the Minnesota
Plaintiffs and Minnesota State Class members to refrain from unfair or deceptive
practices under the Minnesota CFA in the course of their business. Specifically,
FCA, Kia Korea, and Kia USA owed the Minnesota Plaintiffs and Minnesota State
Class members a duty to disclose all the material facts concerning the ACU Defect
in the FCA and Kia Class Vehicles because they possessed exclusive knowledge of
and intentionally concealed the ACU Defect from the Minnesota Plaintiffs and
Minnesota State Class members, and they made misrepresentations that were
rendered misleading because they were contradicted by withheld facts.

3404. By misrepresenting the FCA and Kia Class Vehicles as safe and
reliable and the defective ACU and ASICs installed in them as properly-functioning
and free from defects, and by failing to disclose and actively concealing the dangers
and risk posed by the ACU Defect to both consumers and NHTSA, FCA, Kia
Korea, and Kia USA engaged in unfair or deceptive business practices prohibited
by Minn. Stat. § 325F.69, including use, or employment by any person of any fraud,
false pretense, false promise, misrepresentation, misleading statement or deceptive
practice, with the intent that others rely thereon in connection with the sale of any
merchandise.

3405. FCA's, Kia Korea's and Kia USA's unfair and deceptive acts or
practices, including their misrepresentations, concealments, omissions, and
suppressions of material facts, were designed to mislead and had a tendency or
capacity to mislead and create a false impression in consumers that the FCA and
Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and
that the Occupant Restraint System did not contain the ACU Defect and would
perform its intended function of activating the seatbelts and airbags during a
collision. Indeed, those misrepresentations, concealments, omissions, and

suppressions of material facts did in fact deceive reasonable consumers, including the Minnesota Plaintiffs and Minnesota State Class members, about the true safety and reliability of FCA and Kia Class Vehicles and the defective ACUs and ASICs installed in them, the quality of the FCA and Kia Class Vehicles, and their true value.

3406. FCA's, Kia Korea's, and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA and Kia Class Vehicles were material to the decisions of the Minnesota Plaintiffs and Minnesota State Class members to purchase and lease those vehicles, as FCA, Kia Korea, and Kia USA intended. The Minnesota Plaintiffs and Minnesota State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Kia Korea's, and Kia USA's misrepresentations that the FCA and Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3407. The Minnesota Plaintiffs and Minnesota State Class members had no way of discerning that FCA's, Kia Korea's, and Kia USA's representations were false and misleading and/or otherwise learning the facts that FCA, Kia Korea, and Kia USA had concealed or failed to disclose. The Minnesota Plaintiffs and Minnesota State Class members did not, and could not, unravel FCA's, Kia Korea's, and Kia USA's deception on their own.

3408. Had the Minnesota Plaintiffs and Minnesota State Class members known the truth about the ACU Defect, they would not have purchased or leased the FCA and Kia Class Vehicles, or would have paid significantly less for them.

3409. The Minnesota Plaintiffs and Minnesota State Class members suffered ascertainable losses and actual damages as a direct and proximate result of FCA's, Kia Korea's, and Kia USA's misrepresentations, concealment, and/or failure to disclose material information.

3410. FCA's, Kia Korea's, and Kia USA's violations present a continuing risk to the Minnesota Plaintiffs and Minnesota State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. FCA's, Kia Korea's, and Kia USA's unlawful acts and practices complained of herein affect the public interest.

3411. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), the Minnesota Plaintiffs and Minnesota State Class members seek an order enjoining FCA's, Kia Korea's, and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

   **d. Minnesota Count 4: Violation of the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43, *et seq.*) Against FCA, Kia Korea, and Kia USA**

3412. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

3413. Plaintiff Steve Keister brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased FCA Class Vehicles, against FCA.

3414. Plaintiff Bobbi Jo Birk-LaBarge brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3415. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3416. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. Minn. Stat. § 325D.44, Subd. 1.

3417. In the course of their business, FCA, Kia Korea, and Kia USA, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA and Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3418. FCA, Kia Korea, and Kia USA had an ongoing duty to the Minnesota Plaintiffs and Minnesota State Class members to refrain from unfair or deceptive practices under the Minnesota DTPA in the course of their business. Specifically, FCA, Kia Korea, and Kia USA owed the Minnesota Plaintiffs and Minnesota State Class members a duty to disclose all the material facts concerning the ACU Defect in the FCA and Kia Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Minnesota Plaintiffs and Minnesota State Class members, and they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3419. By misrepresenting the FCA and Kia Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, FCA, Kia Korea, and Kia USA engaged in one or more of the following unfair or deceptive business practices prohibited by Minn. Stat. § 325D.44, Subd. 1:

      a.    Representing that the FCA and Kia Class Vehicles and the defective ACUs and ASICs installed in them have characteristics, uses, benefits, and qualities which they do not have;

      b.    Representing that the FCA and Kia Class Vehicles and/or the defective ACUs and ASICs installed in them are of a particular standard, quality, and grade when they are not;

c.     Advertising the Class Vehicles and/or the defective ACUs and ASICs installed in them with the intent not to sell or lease them as advertised; and

d.     Engaging in false, misleading, or deceptive acts or practice in the conduct of trade or commerce pertaining to the FCA and Kia Class Vehicles and the defective ACUs installed in them.

Minn. Stat. §§ 325D.44, Subd. 1(5), (7), (9), and (13).

3420. FCA's, Kia Korea's and Kia USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the FCA and Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Minnesota Plaintiffs and Minnesota State Class members, about the true safety and reliability of FCA and Kia Class Vehicles and the defective ACUs and ASICs installed in them, the quality of the FCA and Kia Class Vehicles, and their true value.

3421. FCA's, Kia Korea's, and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA and Kia Class Vehicles were material to the decisions of the Minnesota Plaintiffs and Minnesota State Class members to purchase and lease those vehicles, as FCA, Kia Korea, and Kia USA intended. The Minnesota Plaintiffs and Minnesota State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Kia Korea's, and Kia USA's

- 1084 -

misrepresentations that the FCA and Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease those vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3422. The Minnesota Plaintiffs and Minnesota State Class members had no way of discerning that FCA's, Kia Korea's, and Kia USA's representations were false and misleading and/or otherwise learning the facts that FCA, Kia Korea, and Kia USA had concealed or failed to disclose. The Minnesota Plaintiffs and Minnesota State Class members did not, and could not, unravel FCA's, Kia Korea's, and Kia USA's deception on their own.

3423. Had the Minnesota Plaintiffs and Minnesota State Class members known the truth about the ACU Defect, they would not have purchased or leased the FCA and Kia Class Vehicles, or would have paid significantly less for them.

3424. The Minnesota Plaintiffs and Minnesota State Class members suffered ascertainable losses and actual damages as a direct and proximate result of FCA's, Kia Korea's, and Kia USA's misrepresentations, concealment, and/or failure to disclose material information.

3425. FCA's, Kia Korea's, and Kia USA's violations present a continuing risk to the Minnesota Plaintiffs and Minnesota State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. FCA's, Kia Korea's, and Kia USA's unlawful acts and practices complained of herein affect the public interest.

3426. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), the Minnesota Plaintiffs and Minnesota State Class members seek an order enjoining FCA's, Kia Korea's, and Kia USA's unfair or deceptive acts or practices and any other just and proper relief available under the Minnesota CFA.

3427. The Minnesota Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Minnesota Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Minnesota Plaintiffs will have no adequate legal remedy.

>            **e.    Minnesota Count 5: Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.* and Minn. Stat. § 8.31, subd. 3a) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3428. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3429. Plaintiffs Steve Keister and Bobbi Jo Birk-LaBarge bring this count individually and on behalf of members of the Minnesota State Class ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3430. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3431. The ZF Defendants, ST Defendants, Minnesota Plaintiffs, and Minnesota State Class members are "persons" within the meaning of Minn. Stat. § 325F.68(3).

3432. The Class Vehicles and defective ACUs installed in them are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

3433. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

3434. The ZF and ST Defendants had an ongoing duty to the Minnesota Plaintiffs and Minnesota State Class members to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business. Specifically, the ZF and ST Defendants owed the Minnesota Plaintiffs and Minnesota State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Minnesota Plaintiffs and Minnesota State Class members.

3435. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3436. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Minnesota CPA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3437. By misrepresenting, failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unfair or deceptive trade practices prohibited by Minn. Stat. § 325F.69, including the use or employment of fraud, false pretense, and deceptive practices.

3438. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Minnesota Plaintiffs and Minnesota State Class members, about the true safety and reliability of Class Vehicles and the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3439. The Minnesota Plaintiffs and Minnesota State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of learning the facts that the ZF and ST Defendants had concealed or failed to disclose. The Minnesota Plaintiffs and Minnesota State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3440. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Minnesota Plaintiffs and Minnesota State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Minnesota Plaintiffs and Minnesota State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3441. The Minnesota Plaintiffs and Minnesota State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

3442. The ZF and ST Defendants' violations present a continuing risk to the Minnesota Plaintiffs and Minnesota State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3443. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), the Minnesota Plaintiffs and Minnesota State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

      **f.**    **Minnesota Count 6: Violation of the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3444. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

3445. Plaintiffs Steve Keister and Bobbi Jo Birk-LaBarge bring this count individually and on behalf of members of the Minnesota State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3446. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3447. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. Minn. Stat. § 325D.44, Subd. 1.

3448. The ZF and ST Defendants had an ongoing duty to the Minnesota Plaintiffs and Minnesota State Class members to refrain from unfair or deceptive practices under the Minnesota DTPA in the course of their business. Specifically, the ZF and ST Defendants owed the Minnesota Plaintiffs and Minnesota State Class

members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the ACU Defect from the Minnesota Plaintiffs and Minnesota State Class members.

3449. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3450. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and intentionally misrepresenting the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3451. By misrepresenting, failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unfair or deceptive trade practices prohibited by Minn. Stat. § 325D.44, Subd. 1, including engaging in false, misleading, or deceptive acts or practices in the conduct of trade or commerce pertaining to the FCA and Kia Class Vehicles and the defective ACUs installed in them.

3452. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead

and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Minnesota Plaintiffs and Minnesota State Class members, about the true safety and reliability of Class Vehicles and the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3453. The Minnesota Plaintiffs and Minnesota State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of learning the facts that the ZF and ST Defendants had concealed or failed to disclose. The Minnesota Plaintiffs and Minnesota State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3454. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the Minnesota Plaintiffs and Minnesota State Class members, as the ZF and ST Defendants intended. Had they known the truth, the Minnesota Plaintiffs and Minnesota State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3455. The Minnesota Plaintiffs and Minnesota State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment, and failure to disclose material information.

3456. The ZF and ST Defendants' violations present a continuing risk to the Minnesota Plaintiffs and Minnesota State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and

ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3457. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), the Minnesota Plaintiffs and Minnesota State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota DTPA.

3458. The Minnesota Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Minnesota Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Minnesota Plaintiffs will have no adequate legal remedy.

### g. Minnesota Count 7: Fraud by Omission and Concealment Against FCA, Kia Korea, and Kia USA

3459. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3460. Plaintiff Steve Keister brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased FCA Class Vehicles, against FCA.

3461. Plaintiff Bobbi Jo Birk-LaBarge brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3462. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3463. FCA, Kia Korea, and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3464. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release

electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3465. FCA, Kia Korea, and Kia USA had a duty to disclose the ACU Defect to the Minnesota Plaintiffs and Minnesota State Class members because:

a. FCA, Kia Korea, and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b. Given the ACU Defect's hidden and technical nature, the Minnesota Plaintiffs and Minnesota State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c. FCA, Kia Korea, and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the FCA and Kia Class Vehicles containing the ACU Defect would have been a material fact to the Minnesota Plaintiffs' and Minnesota State Class members' decisions to buy or lease FCA and Kia Class Vehicles; and

d. FCA, Kia Korea, and Kia USA made incomplete representations about the safety and reliability of the FCA and Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, FCA, Kia Korea, and Kia USA intentionally

concealed, suppressed, and failed to disclose to the Minnesota Plaintiffs and Minnesota State Class members that the FCA and Kia Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the FCA and Kia Class Vehicles that they marketed and offered for sale and lease to the Minnesota Plaintiffs and Minnesota State Class members, FCA, Kia Korea, and Kia USA had the duty to disclose the whole truth.

3466. In breach of their duties, FCA, Kia Korea, and Kia USA failed to disclose that the FCA and Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, could fail in the event of a crash due to the ACU Defect.

3467. FCA, Kia Korea, and Kia USA intended for the Minnesota Plaintiffs and Minnesota State Class members to rely on their omissions—which they did by purchasing and leasing the FCA and Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3468. That reliance was reasonable, because a reasonable consumer would not have expected that the FCA and Kia Class Vehicles contained a safety defect that poses such a serious risk. FCA, Kia Korea, and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3469. Additionally, FCA, Kia Korea, and Kia USA ensured that the Minnesota Plaintiffs and Minnesota State Class members did not discover this

1    information by actively concealing and misrepresenting the true nature of the FCA

2    and Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3    　　　3470. FCA, Kia Korea, and Kia USA actively concealed and suppressed

4    these material facts, in whole or in part, to maintain a market for their Class

5    Vehicles, to protect profits, and to avoid costly recalls that would expose them to

6    liability for those expenses and harm the commercial reputations of Defendants and

7    their products. They did so at the expense of the Minnesota Plaintiffs and

8    Minnesota State Class members.

9    　　　3471. To this day, FCA, Kia Korea, and Kia USA have not fully and

10   adequately disclosed the ACU Defect, and they continue to conceal material

11   information about the defect from consumers and NHTSA. The omitted and

12   concealed facts were material because a reasonable person would find them

13   important in purchasing, leasing, or retaining a new or used motor vehicle, and

14   because they directly impact the value of the FCA and Kia Class Vehicles

15   purchased or leased by the Minnesota Plaintiffs and Minnesota State Class

16   members.

17   　　　3472. Had they been aware of the ACU Defect in the FCA and Kia Class

18   Vehicles, and FCA's, Kia Korea's, and Kia USA's callous disregard for safety, the

19   Minnesota Plaintiffs and Minnesota State Class members either would not have

20   paid as much as they did for their Class Vehicles, or they would not have purchased

21   or leased them.

22   　　　3473. As alleged in Section V above, if FCA, Kia Korea, and Kia USA had

23   fully and adequately disclosed the ACU Defect to consumers and NHTSA, the

24   Minnesota Plaintiffs and Minnesota State Class members would have seen such a

25   disclosure.

26   　　　3474. Accordingly, FCA, Kia Korea, and Kia USA are liable to the

27   Minnesota Plaintiffs and Minnesota State Class members for their damages in an

28

amount to be proven at trial, including, but not limited to, their lost overpayment for the FCA and Kia Class Vehicles at the time of purchase or lease.

3475. FCA's, Kia Korea's, and Kia USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Minnesota Plaintiffs' and Minnesota State Class members' rights and well-being; and to enrich themselves. FCA's, Kia Korea's, and Kia USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **h.    Minnesota Count 8: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3476. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3477. The Minnesota Plaintiffs bring this count individually and on behalf of members of the Minnesota State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3478. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3479. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as

unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3480. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Minnesota Plaintiffs and Minnesota State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Minnesota Plaintiffs and Minnesota State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Minnesota Plaintiffs' and Minnesota State Class members' decisions to buy or lease Class Vehicles; and

    d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant

Restraint Systems in the Class Vehicles would function properly in a crash.

3481. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, could fail in the event of a crash due to the ACU Defect.

3482. The ZF and ST Defendants intended for the Minnesota Plaintiffs and Minnesota State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3483. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3484. Additionally, the ZF and ST Defendants ensured that the Minnesota Plaintiffs and Minnesota State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3485. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their

1    products. They did so at the expense of the Minnesota Plaintiffs and Minnesota
2    State Class members.

3         3486. To this day, the ZF and ST Defendants have not fully and adequately
4    disclosed the ACU Defect, and they continue to conceal material information about
5    the defect from consumers and NHTSA. The omitted and concealed facts were
6    material because a reasonable person would find them important in purchasing,
7    leasing, or retaining a new or used motor vehicle, and because they directly impact
8    the value of the Class Vehicles purchased or leased by the Minnesota Plaintiffs and
9    Minnesota State Class members.

10        3487. Had they been aware of the ACU Defect in the Class Vehicles, and the
11   ZF and ST Defendants' callous disregard for safety, the Minnesota Plaintiffs and
12   Minnesota State Class members either would not have paid as much as they did for
13   their Class Vehicles, or they would not have purchased or leased them.

14        3488. As alleged in Section V above, if the ZF and ST Defendants had fully
15   and adequately disclosed the ACU Defect to consumers and NHTSA, the
16   Minnesota Plaintiffs and Minnesota State Class members would have seen such a
17   disclosure.

18        3489. Accordingly, the ZF and ST Defendants are liable to the Minnesota
19   Plaintiffs and Minnesota State Class members for their damages in an amount to be
20   proven at trial, including, but not limited to, their lost overpayment for the Class
21   Vehicles at the time of purchase or lease.

22        3490. The ZF and ST Defendants' acts were done maliciously, oppressively,
23   deliberately, with intent to defraud; in reckless disregard of the Minnesota
24   Plaintiffs' and Minnesota State Class members' rights and well-being; and to enrich
25   themselves. The ZF and ST Defendants' misconduct warrants an assessment of
26   punitive damages, as permitted by law, in an amount sufficient to deter such
27   conduct in the future, which amount shall be determined according to proof at trial.
28

### i. Minnesota Count 9: Unjust Enrichment Against FCA, Kia Korea, and Kia USA

3491. Plaintiffs reallege and incorporate by reference all preceding allegations in Sections I-VI above as though fully set forth herein.

3492. Plaintiff Steve Keister brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased FCA Class Vehicles, against FCA.

3493. Plaintiff Bobbi Jo Birk-LaBarge brings this count individually and on behalf of members of the Minnesota State Class who purchased or leased Kia Class Vehicles, against Kia Korea, and Kia USA.

3494. For purposes of this count, Plaintiffs Keister and Birk-LaBarge shall be referred to as the "Minnesota Plaintiffs."

3495. The Minnesota Plaintiffs and Minnesota State Class members conferred tangible and material economic benefits upon FCA, Kia Korea, and Kia USA when they purchased or leased the FCA and Kia Class Vehicles. FCA, Kia Korea, and Kia USA readily accepted and retained these benefits.

3496. The Minnesota Plaintiffs and Minnesota State Class members would not have purchased or leased their FCA and Kia Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA, Kia Korea, and Kia USA profited from the sale and lease of the FCA and Kia Class Vehicles to the detriment and expense of the Minnesota Plaintiffs and Minnesota State Class members.

3497. FCA, Kia Korea, and Kia USA appreciated these benefits, which were the expected result of FCA, Kia Korea, and Kia USA acting in their pecuniary interest at the expense of their customers. FCA, Kia Korea, and Kia USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled Minnesota Plaintiffs and Minnesota State Class

members regarding the nature and quality of the FCA and Kia Class Vehicles while profiting from this deception.

3498. It would be unjust, inequitable, and unconscionable for FCA, Kia Korea, and Kia USA to retain these benefits, including because they were procured as a result of FCA's, Kia Korea's, and Kia USA's wrongful conduct alleged above.

3499. The Minnesota Plaintiffs and Minnesota State Class members are entitled to restitution of the benefits FCA, Kia Korea, and Kia USA unjustly retained and/or any amounts necessary to return the Minnesota Plaintiffs and Minnesota State Class members to the position they occupied prior to dealing with FCA, Kia Korea, and Kia USA, with such amounts to be determined at trial.

3500. The Minnesota Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Minnesota Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Minnesota Plaintiffs will have no adequate legal remedy.

### 13. Missouri

#### a. Missouri Count 1: Breach of Express Warranty (Mo. Rev. Stat. §§ 400.2-313 and 400.2A-210) Against Kia Korea and Kia USA

3501. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3502. Plaintiff Dan Sutterfield (hereinafter, "Missouri Plaintiff") brings this count individually and on behalf of members of the Missouri State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3503. Kia Korea and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), and "sellers" of motor vehicles under § 400.2-103(1)(d).

3504. With respect to leases, Kia Korea and Kia USA are and were at all relevant times "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

3505. All Missouri State Class members who purchased Kia Class Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

3506. All Missouri State Class members who leased Kia Class Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

3507. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

3508. In connection with the purchase or lease of Kia Class Vehicles, Kia Korea and Kia USA provided the Missouri Plaintiff and Missouri State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

3509. However, Kia Korea and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, Kia Korea and Kia USA were aware of the ACU Defect in the Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Missouri Plaintiff and Missouri State Class members.

3510. The Missouri Plaintiff and Missouri State Class members were aware the Kia Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them, Kia Korea and Kia USA when the Missouri Plaintiff and Missouri State Class members unknowingly purchased and leased Kia Class Vehicles that came equipped with defective ACUs and ASICs.

3511. Kia Korea and Kia USA misrepresented the Kia Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Missouri Plaintiff and Missouri State Class members were exposed to those misrepresentations, and the Missouri Plaintiff and Missouri State Class members had no way of discerning that Kia Korea's and Kia USA's representations were

false and misleading or otherwise learning the material facts that Kia Korea and Kia
USA had concealed or failed to disclose. Accordingly, the Missouri Plaintiff and
Missouri State Class members reasonably relied on Kia Korea's and Kia USA's
express warranties when purchasing or leasing their Kia Class Vehicles. Plaintiffs
allege the information they relied upon in Section II.B above. To aid review of this
information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3512. Kia Korea and Kia USA knowingly breached their express warranties
to repair defects in materials and workmanship by failing to repair the ACU Defect
or replace the defective ACUs and ASICs in the Kia Class Vehicles. Kia Korea and
Kia USA also breached their express warranties by selling and leasing Kia Class
Vehicles with a defect that was never disclosed to the Missouri Plaintiff and
Missouri State Class members.

3513. The Missouri Plaintiff and Missouri State Class members have
provided Kia Korea and Kia USA with reasonable notice and opportunity to cure
the breaches of their express warranties by way of the numerous NHTSA
complaints filed against them, and the individual notice letters sent by Missouri
State Class members within a reasonable amount of time after the ACU Defect
became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of
the Missouri Plaintiff and Missouri State Class members to Kia Korea and Kia
USA.

3514. Alternatively, the Missouri Plaintiff and Missouri State Class members
were excused from providing Kia Korea and Kia USA with notice and an
opportunity to cure the breach, because it would have been futile. As alleged above,
Kia Korea and Kia USA have long known that the Kia Class Vehicles contained the
ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction
in crashes involving Class Vehicles; however, to date, Kia Korea and Kia USA
have not instituted a recall or any other repair program with respect to the
unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in

all Kia Class Vehicles, including the recalled Kia Class Vehicles—even though all of the Kia Class Vehicles are subject to the NHTSA investigation. Therefore, the Missouri Plaintiff and Missouri State Class members had no reason to believe that Kia Korea and Kia USA would have repaired the ACU Defect if the Missouri Plaintiff and Missouri State Class members presented their Class Vehicles to them for repair.

3515. As a direct and proximate result of Kia Korea's and Kia USA's breach of their express warranties, the Kia Class Vehicles were and are defective and the ACU Defect in the Missouri Plaintiff's and Missouri State Class members' Kia Class Vehicles was not remedied. Therefore, the Missouri Plaintiff and Missouri State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Kia Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.** **Missouri Count 2: Breach of Implied Warranty of Merchantability (Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212) Against Kia USA**

3516. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3517. The Missouri Plaintiff brings this count individually and on behalf of members of the Missouri State Class who purchased or leased Kia Class Vehicles, against Kia USA.

3518. A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.

3519. Kia USA is and was at all relevant times a "merchant" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), and a "seller" of motor vehicles under § 400.2-103(1)(d).

3520. With respect to leases, Kia USA is and was at all relevant times a "lessor" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

3521. All Missouri State Class members who purchased Kia Class Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

3522. All Missouri State Class members who leased Kia Class Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

3523. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

3524. The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Kia Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Kia Class Vehicles inherently defective and dangerous.

3525. The Missouri Plaintiff and Missouri State Class members have provided Kia USA with reasonable notice and opportunity to cure the breaches of its implied warranty by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by Missouri State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Missouri Plaintiff and Missouri State Class members to Kia USA.

3526. Alternatively, the Missouri Plaintiff and Missouri State Class members were excused from providing Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia USA has long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class

Vehicles; however, to date, Kia USA has not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all Kia Class Vehicles, including the recalled Kia Class Vehicles—even though all of the Kia Class Vehicles are subject to the NHTSA investigation. Therefore, the Missouri Plaintiff and Missouri State Class members had no reason to believe that Kia USA would have repaired the ACU Defect if the Missouri Plaintiff and Missouri State Class members presented their Class Vehicles to it for repair.

3527. As a direct and proximate result of Kia USA's breach of the implied warranty of merchantability, the Missouri Plaintiff and Missouri State Class members have been damaged through their overpayment at the time of purchase or lease for Kia Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

      **c.**      **Missouri Count 3: Violation of the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*) Against Kia Korea and Kia USA**

3528. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3529. The Missouri Plaintiff brings this count individually and on behalf of members of the Missouri State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3530. Kia Korea, Kia USA, the Missouri Plaintiff, and Missouri State Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

3531. Kia Korea and Kia USA were and are engaged in "trade or commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

3532. The Missouri Merchandising Practices Act ("Missouri MPA") prohibits unlawful business practices. Mo. Rev. Stat. § 407.020(1).

3533. The Missouri Plaintiff and Missouri State Class Members purchased their Kia Class Vehicles and the ACUs installed in them primarily for personal, family, or household purposes.

3534. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3535. Kia Korea and Kia USA had an ongoing duty to the Missouri Plaintiff and Missouri State Class members to refrain from unfair or deceptive practices under the Missouri MPA in the course of their business. Specifically, Kia Korea and Kia USA owed the Missouri Plaintiff and Missouri State Class members a duty to disclose all the material facts concerning the ACU Defect in the Kia Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Missouri Plaintiff and Missouri State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3536. By misrepresenting the Kia Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Kia Korea and Kia USA engaged in one or more of the following unfair or deceptive business practices prohibited by Mo. Rev. Stat. § 407.020(1): using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the

Kia Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3537. Kia Korea's and Kia USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Missouri Plaintiff and Missouri State Class members, about the true safety and reliability of Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Kia Class Vehicles, and the true value of the Kia Class Vehicles.

3538. Kia Korea's and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Kia Class Vehicles were material to the decisions of the Missouri Plaintiff and Missouri State Class members to purchase and lease those vehicles, as Kia Korea and Kia USA intended. The Missouri Plaintiff and Missouri State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Kia Korea's and Kia USA's misrepresentations that the Kia Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3539. The Missouri Plaintiff's and Missouri State Class members' reliance was reasonable, as they had no way of discerning that Kia Korea's and Kia USA's

representations were false and misleading, or otherwise learning the facts that Kia Korea and Kia USA had concealed or failed to disclose. The Missouri Plaintiff and Missouri State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

3540. Had the Missouri Plaintiff and Missouri State Class members known the truth about the ACU Defect, the Missouri Plaintiff and Missouri State Class members would not have purchased or leased Kia Class Vehicles, or would have paid significantly less for them.

3541. The Missouri Plaintiff and Missouri State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Kia Class Vehicles with an undisclosed safety defect as a direct and proximate result of Kia Korea's and Kia USA's concealment, misrepresentations, and/or failure to disclose material information.

3542. Kia Korea's and Kia USA's violations present a continuing risk to the Missouri Plaintiff and Missouri State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3543. Pursuant to Mo. Rev. Stat. § 407.025, the Missouri Plaintiff and Missouri State Class members seek an order enjoining Kia Korea's and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Missouri MPA.

        **d.**    **Missouri Count 4: Violation of the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3544. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3545. The Missouri Plaintiff brings this count individually and on behalf of members of the Missouri State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3546. The ZF Defendants, the ST Defendants, the Missouri Plaintiff, and Missouri State Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

3547. The ZF and ST Defendants were and are engaged in "trade or commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

3548. The Missouri Merchandising Practices Act ("Missouri MPA") prohibits unlawful business practices. Mo. Rev. Stat. § 407.020(1).

3549. The Missouri Plaintiff and Missouri State Class Members purchased their Kia Class Vehicles and the ACUs installed in them primarily for personal, family, or household purposes.

3550. The ZF and ST Defendants had an ongoing duty to the Missouri Plaintiff and Missouri State Class members to refrain from unfair or deceptive practices under the Missouri MPA in the course of their business. Specifically, the ZF and ST Defendants owed the Missouri Plaintiff and Missouri State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the Missouri Plaintiff and Missouri State Class members.

3551. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

3552.  Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Missouri MPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3553.  By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unlawful business practices prohibited by Mo. Rev. Stat. § 407.020(1), including using or employing deception and fraud, and/or the misrepresentation, concealment, suppression or omission of material facts regarding the ACU Defect.

3554.  The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Missouri Plaintiff and Missouri State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3555. The Missouri Plaintiff and Missouri State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Missouri Plaintiff and Missouri State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3556. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Missouri Plaintiff and Missouri State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Missouri Plaintiff and Missouri State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3557. The Missouri Plaintiff and Missouri State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

3558. The ZF and ST Defendants' violations present a continuing risk to the Missouri Plaintiff and Missouri State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3559. Pursuant to Mo. Rev. Stat. § 407.025, the Missouri Plaintiff and Missouri State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Missouri MPA.

Case 2:19-ml-02905-JAK-PLA Document 543-2 Filed 05/25/22 Page 293 of 520 Page ID #:13599

1
2

### e. Missouri Count 5: Fraud by Omission and Concealment Against Kia Korea and Kia USA

3    3560. Plaintiffs reallege and incorporate by reference all preceding

4    allegations as though fully set forth herein.

5    3561. The Missouri Plaintiff brings this count individually and on behalf of

6    members of the Missouri State Class who purchased or leased Kia Class Vehicles,

7    against Kia Korea and Kia USA.

8    3562. Kia Korea and Kia USA are liable for both fraudulent concealment and

9    non-disclosure. See, e.g., Restatement (Second) of Torts §§ 550-51 (1977).

10   3563. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

11   serious risks to vehicle occupants, including that it can cause: (1) airbags and

12   seatbelts not to activate during a crash because crashes can sometimes release

13   electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

14   vehicle has not crashed, which is dangerous because it is shocking and difficult for

15   the driver to operate a vehicle when the airbag deploys without warning; and (3)

16   failures of other important post-crash operations of the safety system, such as

17   unlocking doors to facilitate escape or extraction of drivers and passengers by

18   emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

19   3564. Kia Korea and Kia USA had a duty to disclose the ACU Defect to the

20   Missouri Plaintiff and the Missouri State Class members because:

21       a.    Kia Korea and Kia USA had exclusive access to and far superior

22             knowledge about technical facts regarding the ACU Defect;

23       b.    Given the ACU Defect's hidden and technical nature, the

24             Missouri Plaintiff and Missouri State Class members lack the

25             sophisticated expertise in vehicle components and electrical

26             phenomena that would be necessary to discover the ACU Defect

27             on their own;

28

c.    Kia Korea and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Kia Class Vehicles containing the ACU Defect would have been a material fact to the Missouri Plaintiff's and Missouri State Class members' decisions to buy or lease Kia Class Vehicles; and

d.    Kia Korea and Kia USA made incomplete representations about the safety and reliability of the Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Kia Korea, and Kia USA intentionally concealed, suppressed, and failed to disclose to the Missouri Plaintiff and Missouri State Class members that the Kia Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Kia Class Vehicles that they marketed and offered for sale and lease to the Missouri Plaintiff and Missouri State Class members, Kia Korea and Kia USA had the duty to disclose the whole truth.

3565. In breach of their duties, Kia Korea and Kia USA failed to disclose that the Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3566. Kia Korea and Kia USA intended for the Missouri Plaintiff and Missouri State Class members to rely on their omissions—which they did by purchasing and leasing the Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3567. That reliance was reasonable, because a reasonable consumer would not have expected that the Kia Class Vehicles contained a safety defect that poses such a serious risk. Kia Korea and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3568. Additionally, Kia Korea and Kia USA ensured that the Missouri Plaintiff and Missouri State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3569. Kia Korea and Kia USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Missouri Plaintiff and Missouri State Class members.

3570. To this day, Kia Korea and Kia USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Kia Class Vehicles purchased or leased by the Missouri Plaintiff and Missouri State Class members.

3571. Had they been aware of the ACU Defect in the Kia Class Vehicles, and Kia Korea's and Kia USA's callous disregard for safety, the Missouri Plaintiff

1  and Missouri State Class members either would not have paid as much as they did
2  for their Class Vehicles, or they would not have purchased or leased them.

3       3572. As alleged in Section V above, if Kia Korea and Kia USA had fully
4  and adequately disclosed the ACU Defect to consumers and NHTSA, the Missouri
5  Plaintiff and Missouri State Class members would have seen such a disclosure.

6       3573. Accordingly, Kia Korea and Kia USA are liable to the Missouri
7  Plaintiff and Missouri State Class members for their damages in an amount to be
8  proven at trial, including, but not limited to, their lost overpayment for the Kia
9  Class Vehicles at the time of purchase or lease.

10      3574. Kia Korea's and Kia USA's acts were done maliciously, oppressively,
11  deliberately, with intent to defraud; in reckless disregard of the Missouri Plaintiff's
12  and Missouri State Class members' rights and well-being; and to enrich themselves.
13  Kia Korea's and Kia USA's misconduct warrants an assessment of punitive
14  damages, as permitted by law, in an amount sufficient to deter such conduct in the
15  future, which amount shall be determined according to proof at trial.

16   **f.   Missouri Count 6: Fraud by Omission and Concealment
     Against ZF Electronics USA, ZF Passive Safety USA, ZF
17   Automotive USA, ZF TRW Corp., ZF Germany, ST Italy,
     ST USA, and ST Malaysia**
18

19      3575. Plaintiffs reallege and incorporate by reference all preceding
20  allegations as though fully set forth herein.

21      3576. The Missouri Plaintiff brings this count individually and on behalf of
22  members of the Missouri State Class who purchased or leased Class Vehicles,
23  against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF
24  TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST
25  Malaysia, and ST USA (collectively, the "ST Defendants").

26      3577. The ZF and ST Defendants are liable for both fraudulent concealment
27  and non-disclosure. See, e.g., Restatement (Second) of Torts §§ 550-51 (1977).

28

3578. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3579. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Missouri Plaintiff and Missouri State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Missouri Plaintiff and Missouri State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Missouri Plaintiff's and Missouri State Class members' decisions to buy or lease Class Vehicles; and

    d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts

about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3580. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3581. The ZF and ST Defendants intended for the Missouri Plaintiff and Missouri State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3582. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3583. Additionally, the ZF and ST Defendants ensured that the Missouri Plaintiff and Missouri State Class members did not discover this information by

1   actively concealing and misrepresenting the true nature of the Class Vehicles'
2   Occupant Restraint Systems to consumers and NHTSA.

3       3584. The ZF and ST Defendants actively concealed and suppressed these
4   material facts, in whole or in part, to maintain a market for the DS84 ACU, to
5   protect profits, and to avoid costly recalls that would expose them to liability for
6   those expenses and harm the commercial reputations of Defendants and their
7   products. They did so at the expense of the Missouri Plaintiff and Missouri State
8   Class members.

9       3585. To this day, the ZF and ST Defendants have not fully and adequately
10  disclosed the ACU Defect, and they continue to conceal material information about
11  the defect from consumers and NHTSA. The omitted and concealed facts were
12  material because a reasonable person would find them important in purchasing,
13  leasing, or retaining a new or used motor vehicle, and because they directly impact
14  the value of the Class Vehicles purchased or leased by the Missouri Plaintiff and
15  Missouri State Class members.

16      3586. Had they been aware of the ACU Defect in the Class Vehicles, and the
17  ZF and ST Defendants' callous disregard for safety, the Missouri Plaintiff and
18  Missouri State Class members either would not have paid as much as they did for
19  their Class Vehicles, or they would not have purchased or leased them.

20      3587. As alleged in Section V above, if the ZF and ST Defendants had fully
21  and adequately disclosed the ACU Defect to consumers and NHTSA, the Missouri
22  Plaintiff and Missouri State Class members would have seen such a disclosure.

23      3588. Accordingly, the ZF and ST Defendants are liable to the Missouri
24  Plaintiff and Missouri State Class members for their damages in an amount to be
25  proven at trial, including, but not limited to, their lost overpayment for the Class
26  Vehicles at the time of purchase or lease.

27      3589. The ZF and ST Defendants' acts were done maliciously, oppressively,
28  deliberately, with intent to defraud; in reckless disregard of the Missouri Plaintiff's

and Missouri State Class members' rights and well-being; and to enrich themselves.
The ZF and ST Defendants' misconduct warrants an assessment of punitive
damages, as permitted by law, in an amount sufficient to deter such conduct in the
future, which amount shall be determined according to proof at trial.

### g.  Missouri Count 7: Unjust Enrichment Against the Kia Korea and Kia USA

3590. Plaintiffs reallege and incorporate by reference all allegations in
Sections I-VI above as though fully set forth herein.

3591. The Missouri Plaintiff brings this count individually and on behalf of
members of the Missouri State Class who purchased or leased Kia Class Vehicles,
against Kia Korea and Kia USA.

3592. The Missouri Plaintiff and Missouri State Class members conferred
tangible and material monetary benefits upon Kia Korea and Kia USA when they
purchased or leased the Kia Class Vehicles. Kia Korea and Kia USA readily
accepted and retained these benefits.

3593. The Missouri Plaintiff and Missouri State Class members would not
have purchased or leased the Kia Class Vehicles, or would have paid less for them,
had they known of the ACU Defect at the time of purchase or lease. Therefore, Kia
Korea and Kia USA profited from the sale and lease of the Kia Class Vehicles to
the detriment and expense of the Missouri Plaintiff and Missouri State Class
members.

3594. Kia Korea and Kia USA appreciated these monetary benefits. These
benefits were the expected result of Kia Korea and Kia USA acting in their
pecuniary interest at the expense of their customers. Kia Korea and Kia USA knew
of these benefits because they were aware of the ACU Defect, yet they failed to
disclose this knowledge and misled the Missouri Plaintiff and Missouri State Class
members regarding the nature and quality of the Kia Class Vehicles while profiting
from this deception.

3595. It would be unjust, inequitable, and unconscionable for Kia Korea and Kia USA to retain these monetary benefits, including because they were procured as a result of Kia Korea's and Kia USA's wrongful conduct alleged above.

3596. The Missouri Plaintiff and Missouri State Class members are entitled to restitution of the benefits Kia Korea and Kia USA unjustly retained and/or any amounts necessary to return the Missouri Plaintiff and Missouri State Class members to the position they occupied prior to dealing with Kia Korea and Kia USA, with such amounts to be determined at trial.

3597. The Missouri Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Missouri Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the Missouri Plaintiff would have no adequate legal remedy.

### 14. Nevada

#### a. Nevada Count 1: Breach of Express Warranty (Nev. Rev. Stat. §§ 104.2313 and 104A.2210) Against Toyota Sales USA[14]

3598. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3599. Plaintiff Gary Samouris (hereinafter, "Nevada Plaintiff") brings this count individually and on behalf of members of the Nevada State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

3600. Toyota Sales USA is and was at all relevant times a "merchant" with respect to motor vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and a "seller" of motor vehicles under § 104.2103(1)(c).

3601. With respect to leases, Toyota Sales USA is and was at all relevant times a "lessor" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

---

[14] The Court held in its February 9, 2022 Order that the Nevada Plaintiff stated a claim for breach of express warranty. *See* ECF No. 396 at 150.

1       3602. All Nevada State Class members who purchased Toyota Class

2   Vehicles in Nevada are "buyers" within the meaning of Nev. Rev. Stat.

3   § 104.2103(1)(a).

4       3603. All Nevada State Class members who leased Toyota Class Vehicles in

5   Nevada are "lessees" within the meaning of Nev. Rev. Stat. § 104A.2103(1)(n).

6       3604. The Toyota Class Vehicles are and were at all relevant times "goods"

7   within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

8       3605. In connection with the purchase or lease of Toyota Class Vehicles,

9   Toyota Sales USA provided the Nevada Plaintiff and Nevada State Class members

10  with warranties in the form of: (a) written express warranties covering the repair or

11  replacement of components that are defective in materials or workmanship, and (b)

12  descriptions of the Toyota Class Vehicles as safe and reliable, and that their

13  Occupant Restraint Systems, including their airbags and seatbelt pretensioners,

14  would function properly in the event of a crash

15      3606. However, Toyota Sales USA knew or should have known that the

16  warranties were false and/or misleading. Specifically, Toyota Sales USA was aware

17  of the ACU Defect in the Toyota Class Vehicles, which made the vehicles

18  inherently defective and dangerous at the time that they were sold and leased to the

19  Nevada Plaintiff and Nevada State Class members.

20      3607. The Nevada Plaintiff and Nevada State Class members were aware the

21  Toyota Class Vehicles were covered by express warranties, and those warranties

22  were an essential part of the bargain between them and Toyota Sales USA when the

23  Nevada Plaintiff and Nevada State Class members unknowingly purchased and

24  leased Toyota Class Vehicles that came equipped with defective ACUs and ASICs.

25      3608. Toyota Sales USA misrepresented the Toyota Class Vehicles as safe

26  and reliable while concealing that they contained the ACU Defect, the Nevada

27  Plaintiff and Nevada State Class members were exposed to those

28  misrepresentations, and the Nevada Plaintiff and Nevada State Class members had

no way of discerning that Toyota Sales USA's representations were false and
misleading or otherwise learning the material facts that Toyota Sales USA had
concealed or failed to disclose. Accordingly, the Nevada Plaintiff and Nevada State
Class members reasonably relied on Toyota Sales USA's express warranties when
purchasing or leasing their Toyota Class Vehicles. Plaintiffs allege the information
they relied upon in Section II.B above. To aid review of this information, Exhibit
19 provides paragraph numbers for each Plaintiff.

3609. Toyota Sales USA knowingly breached its express warranties to repair
defects in materials and workmanship by failing to repair the ACU Defect or
replace the defective ACUs and ASICs in the Toyota Class Vehicles. Toyota Sales
USA also breached its express warranties by selling and leasing Toyota Class
Vehicles with a defect that was never disclosed to the Nevada Plaintiff and Nevada
State Class members.

3610. The Nevada Plaintiff and Nevada State Class members provided
Toyota Sales USA with reasonable notice and opportunity to cure the breaches of
its express warranties by way of the numerous NHTSA complaints filed against it,
and the individual notice letters sent by Nevada State Class members within a
reasonable amount of time after the ACU Defect became public. Additionally, on
April 24, 2020, a notice letter was sent on behalf of the Nevada Plaintiff and
Nevada State Class members to Toyota Sales USA.

3611. Alternatively, the Nevada Plaintiff and Nevada State Class members
were excused from providing Toyota Sales USA with notice and an opportunity to
cure the breach, because it would have been futile. As alleged above, Toyota Sales
USA has long known that the Toyota Class Vehicles contained the ACU Defect,
and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes
involving Class Vehicles; however, to date, Toyota Sales USA has not instituted a
recall or any other repair program with respect to the unrecalled Toyota Class
Vehicles, or even acknowledged that the ACU Defect still exists in all Toyota Class

Vehicles, including the recalled Toyota Class Vehicles—even though Toyota Class Vehicles are subject to the NHTSA investigation. Therefore, the Nevada Plaintiff and Nevada State Class members had no reason to believe that Toyota Sales USA would have repaired the ACU Defect if the Nevada Plaintiff and Nevada State Class members presented their Class Vehicles to it for repair.

3612. As a direct and proximate result of Toyota Sales USA's breach of its express warranties, the Toyota Class Vehicles were and are defective and the ACU Defect in the Nevada Plaintiff's and Nevada State Class members' Toyota Class Vehicles was not remedied. Therefore, the Nevada Plaintiff and Nevada State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Toyota Class Vehicles with an undisclosed safety defect that would not be remedied.

        **b.**    **Nevada Count 2: Breach of Implied Warranty of Merchantability (Nev. Rev. Stat. §§ 104.2314 and 104A.2212) Against Toyota Sales USA**

3613. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3614. The Nevada Plaintiff brings this count individually and on behalf of members of the Nevada State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

3615. A warranty that the Toyota Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

3616. Toyota Sales USA is and was at all relevant times a "merchant" with respect to motor vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and a "seller" of motor vehicles under § 104.2103(1)(c).

3617. With respect to leases, Toyota Sales USA is and was at all relevant times a "lessor" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

3618. All Nevada State Class members who purchased Toyota Class Vehicles in Nevada are "buyers" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

3619. All Nevada State Class members who leased Toyota Class Vehicles in Nevada are "lessees" within the meaning of Nev. Rev. Stat. § 104A.2103(1)(n).

3620. The Toyota Class Vehicles are and were at all relevant times "goods" within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

3621. The Toyota Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Toyota Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Toyota Class Vehicles inherently defective and dangerous.

3622. The Nevada Plaintiff and Nevada State Class members have provided Toyota Sales USA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Nevada State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Nevada Plaintiff and Nevada State Class members to Toyota Sales USA.

3623. Alternatively, the Nevada Plaintiff and Nevada State Class members were excused from providing Toyota Sales USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Toyota Sales USA has long known that the Toyota Class Vehicles contained the ACU Defect,

and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Toyota Sales USA has not instituted a recall or any other repair program with respect to the unrecalled Toyota Class Vehicles, or even acknowledged that the ACU Defect still exists in all Toyota Class Vehicles, including the recalled Toyota Class Vehicles—even though Toyota Class Vehicles are subject to the NHTSA investigation. Therefore, the Nevada Plaintiff and Nevada State Class members had no reason to believe that Toyota Sales USA would have repaired the ACU Defect if the Nevada Plaintiff and Nevada State Class members presented their Class Vehicles to it for repair.

3624. As a direct and proximate result of Toyota Sales USA's breach of the implied warranty of merchantability, the Nevada Plaintiff and Nevada State Class members have been damaged through their overpayment at the time of purchase or lease for Toyota Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

### c. Nevada Count 3: Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. § 598.0903, et seq.) Against Toyota Sales USA and Toyota USA

3625. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3626. The Nevada Plaintiff brings this count individually and on behalf of members of the Nevada State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA and Toyota USA.

3627. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et. seq. prohibits the use of deceptive trade practices in the course of business and occupation.

3628. In the course of their business, Toyota Sales USA and Toyota USA, through their agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the

Toyota Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3629. Toyota Sales USA and Toyota USA had an ongoing duty to the Nevada Plaintiff and Nevada State Class members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Toyota Sales USA and Toyota USA owed the Nevada Plaintiff and Nevada State Class members a duty to disclose all the material facts concerning the ACU Defect in the Toyota Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Toyota Plaintiff and Toyota State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3630. By misrepresenting the Toyota Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Toyota Sales USA and Toyota USA engaged in one or more of the following unfair or deceptive business practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

    a.    Representing that the Toyota Class Vehicles and/or the defective ACU and ASICs installed in them have certifications which they do not have;

    b.    Representing that the Toyota Class Vehicles and/or the defective ACU and ASICs installed in them have characteristics, uses, benefits, and qualities which they do not have;

    c.    Representing that the Toyota Class Vehicles and/or the defective ACU and ASICs installed in them are of a particular standard, quality, and grade when they are not;

d.  Advertising the Toyota Class Vehicles and/or the defective ACU and ASICs installed in them with the intent not to sell or lease them as advertised;

e.  Failing to disclose the defective ACU and ASICs in connection with the sale of the Toyota Class Vehicles; and

f.  Making an assertion of scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true.

Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

3631. Toyota Sales USA's and Toyota USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Toyota Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Nevada Plaintiff and Nevada State Class members, about the true safety and reliability of Toyota Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Toyota Class Vehicles, and the true value of the Toyota Class Vehicles.

3632. Toyota Sales USA's and Toyota USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Toyota Class Vehicles were material to the decisions of the Nevada Plaintiff and Nevada State Class members to purchase and lease those vehicles, as Toyota Sales USA and Toyota USA intended. The Nevada Plaintiff and Nevada State Class members

were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Toyota Sales USA's and Toyota USA's misrepresentations that the Toyota Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Toyota Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3633. The Nevada Plaintiff's and Nevada State Class members' reliance was reasonable, as they had no way of discerning that Toyota Sales USA's and Toyota USA's representations were false and misleading, or otherwise learning the facts that Toyota Sales USA and Toyota USA had concealed or failed to disclose. The Nevada Plaintiff and Nevada State Class members did not, and could not, unravel Toyota Sales USA's and Toyota USA's deception on their own.

3634. Had the Nevada Plaintiff and Nevada State Class members known the truth about the ACU Defect, the Nevada Plaintiff and Nevada State Class members would not have purchased or leased Toyota Class Vehicles, or would have paid significantly less for them.

3635. The Nevada Plaintiff and Nevada State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Toyota Class Vehicles with an undisclosed safety defect as a direct and proximate result of Toyota Sales USA's and Toyota USA's concealment, misrepresentations, and/or failure to disclose material information.

3636. Toyota Sales USA's and Toyota USA's violations present a continuing risk to the Nevada Plaintiff and Nevada State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3637. Pursuant to Nev. Rev. Stat. §§ 41.600, the Nevada Plaintiff and Nevada State Class members seek an order enjoining Toyota Sales USA's and Toyota USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada DTPA.

**d.  Nevada Count 4: Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia.**

3638. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3639. The Nevada Plaintiff brings this count individually and on behalf of members of the Nevada State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3640. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et. seq. prohibits the use of deceptive trade practices in the course of business and occupation.

3641. The ZF and ST Defendants had an ongoing duty to the Nevada Plaintiff and Nevada State Class members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, the ZF and ST Defendants owed the Nevada Plaintiff and Nevada State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the Nevada Plaintiff and Nevada State Class members.

3642. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally omitting, concealing, and failing to disclose material

1  facts regarding the existence, nature, and scope of the defective ACU and ASIC

2  installed in the Class Vehicles, as detailed above.

3      3643.  Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF

4  Automotive USA, through their agents, employees, and/or subsidiaries, violated the

5  Nevada DTPA when they knowingly and intentionally misrepresented the Class

6  Vehicles as safe and reliable and the defective ACU and ASICs installed in them as

7  properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF

8  Passive Safety USA, and ZF Automotive USA worked with the Vehicle

9  Manufacturer Defendants on the design and inclusion of the airbag readiness

10  indicators in the Class Vehicles, which falsely assured Plaintiffs and Class

11  Members that the Occupant Restraint Systems in the Class Vehicles would function

12  properly in a crash.

13      3644.  By misrepresenting, failing to disclose, and actively concealing the

14  dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and

15  ST Defendants engaged in deceptive acts or practices prohibited by the Nevada

16  DTPA.

17      3645.  The ZF and ST Defendants' unfair or deceptive acts or practices,

18  including their misrepresentations, concealments, omissions, and suppressions of

19  material facts, were designed to mislead and had a tendency or capacity to mislead

20  and create a false impression in consumers that the Class Vehicles had properly-

21  functioning and reliable airbags and seatbelts, and that the Occupant Restraint

22  System did not contain the ACU Defect and would perform its intended function of

23  activating the seatbelts and airbags during a collision. Indeed, those

24  misrepresentations, concealments, omissions, and suppressions of material facts did

25  in fact deceive reasonable consumers, including the Nevada Plaintiff and Nevada

26  State Class members, about the true safety and reliability of Class Vehicles and/or

27  the defective ACUs and ASICs installed in them, the quality of the Class Vehicles,

28  and the true value of the Class Vehicles.

3646. The Nevada Plaintiff and Nevada State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Nevada Plaintiff and Nevada State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

3647. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Nevada Plaintiff and Nevada State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Nevada Plaintiff and Nevada State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3648. The Nevada Plaintiff and Nevada State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

3649. The ZF and ST Defendants' violations present a continuing risk to the Nevada Plaintiff and Nevada State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3650. Pursuant to Nev. Rev. Stat. §§ 41.600, the Nevada Plaintiff and Nevada State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada DTPA.

1
2

        **e.**    **Nevada Count 5: Fraud by Omission and Concealment Against Toyota Sales USA and Toyota USA**

3
4

    3651. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

5
6
7

    3652. The Nevada Plaintiff brings this count individually and on behalf of members of the Nevada State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA and Toyota USA.

8
9
10

    3653. Toyota Sales USA and Toyota USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

11
12
13
14
15
16
17
18
19

    3654. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

20
21

    3655. Toyota Sales USA and Toyota USA had a duty to disclose the ACU Defect to the Nevada Plaintiff and Nevada State Class members because:

22
23
24

        a.    Toyota Sales USA and Toyota USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

25
26
27

        b.    Given the ACU Defect's hidden and technical nature, the Nevada Plaintiff and Nevada State Class members lack the sophisticated expertise in vehicle components and electrical

28

phenomena that would be necessary to discover the ACU Defect on their own;

c. Toyota Sales USA and Toyota USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Toyota Class Vehicles containing the ACU Defect would have been a material fact to the Nevada Plaintiff's and Nevada State Class members' decisions to buy or lease Toyota Class Vehicles; and

d. Toyota Sales USA and Toyota USA made incomplete representations about the safety and reliability of the Toyota Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Toyota Sales USA and Toyota USA intentionally concealed, suppressed, and failed to disclose to the Nevada Plaintiff and Nevada State Class members that the Toyota Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Toyota Class Vehicles that they marketed and offered for sale and lease to the Nevada Plaintiff and Nevada State Class members, Toyota Sales USA and Toyota USA had the duty to disclose the whole truth.

3656. In breach of their duties, Toyota Sales USA and Toyota USA failed to disclose that the Toyota Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3657. Toyota Sales USA and Toyota USA intended for the Nevada Plaintiff and Nevada State Class members to rely on their omissions—which they did by purchasing and leasing the Toyota Class Vehicles at the prices they paid believing

1   that the Occupant Restraint Systems in their Class Vehicles would function
2   properly.

3      3658. That reliance was reasonable, because a reasonable consumer would
4   not have expected that the Toyota Class Vehicles contained a safety defect that
5   poses such a serious risk. Toyota Sales USA and Toyota USA knew that reasonable
6   consumers expect that their vehicle has working airbags and seatbelt pretensioners
7   and would rely on those facts in deciding whether to purchase, lease, or retain a
8   new or used motor vehicle. Whether a manufacturer's products are safe and
9   reliable, and whether that manufacturer stands behind its products, are material
10  concerns to a consumer. Especially here when at least nine people have already
11  died due to the ACU Defect, and many more have been injured.

12     3659. Additionally, Toyota Sales USA and Toyota USA ensured that the
13  Nevada Plaintiff and Nevada State Class members did not discover this information
14  by actively concealing and misrepresenting the true nature of the Toyota Class
15  Vehicles' Occupant Restraint Systems to consumers and NHTSA.

16     3660. Toyota Sales USA and Toyota USA actively concealed and suppressed
17  these material facts, in whole or in part, to maintain a market for their Class
18  Vehicles, to protect profits, and to avoid costly recalls that would expose them to
19  liability for those expenses and harm the commercial reputations of Defendants and
20  their products. They did so at the expense of the Nevada Plaintiff and Nevada State
21  Class members.

22     3661. To this day, Toyota Sales USA and Toyota USA have not fully and
23  adequately disclosed the ACU Defect, and they continue to conceal material
24  information about the defect from consumers and NHTSA. The omitted and
25  concealed facts were material because a reasonable person would find them
26  important in purchasing, leasing, or retaining a new or used motor vehicle, and
27  because they directly impact the value of the Toyota Class Vehicles purchased or
28  leased by the Nevada Plaintiff and Nevada State Class members.

3662. Had they been aware of the ACU Defect in the Toyota Class Vehicles, and Toyota Sales USA's and Toyota USA's callous disregard for safety, the Nevada Plaintiff and Nevada State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3663. As alleged in Section V above, if Toyota Sales USA and Toyota USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Nevada Plaintiff and Nevada State Class members would have seen such a disclosure.

3664. Accordingly, Toyota Sales USA and Toyota USA are liable to the Nevada Plaintiff and Nevada State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Toyota Class Vehicles at the time of purchase or lease.

3665. Toyota Sales USA's and Toyota USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Nevada Plaintiff's and Nevada State Class members' rights and well-being; and to enrich themselves. Toyota Sales USA's and Toyota USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

        **f.**     **Nevada Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3666. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3667. The Nevada Plaintiff brings this count individually and on behalf of members of the Nevada State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF

TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3668. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3669. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3670. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Nevada Plaintiff and Nevada State Class members because:

      a.     The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.     Given the ACU Defect's hidden and technical nature, the Nevada Plaintiff and Nevada State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

      c.     The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Nevada Plaintiff's and

Nevada State Class members' decisions to buy or lease Class Vehicles; and

    d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3671. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3672. The ZF and ST Defendants intended for the Nevada Plaintiff and Nevada State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3673. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

1  Especially here when at least nine people have already died due to the ACU Defect,

2  and many more have been injured.

3  3674. Additionally, the ZF and ST Defendants ensured that the Nevada

4  Plaintiff and Nevada State Class members did not discover this information by

5  actively concealing and misrepresenting the true nature of the Class Vehicles'

6  Occupant Restraint Systems to consumers and NHTSA.

7  3675. The ZF and ST Defendants actively concealed and suppressed these

8  material facts, in whole or in part, to maintain a market for the DS84 ACU, to

9  protect profits, and to avoid costly recalls that would expose them to liability for

10 those expenses and harm the commercial reputations of Defendants and their

11 products. They did so at the expense of the Nevada Plaintiff and Nevada State Class

12 members.

13 3676. To this day, the ZF and ST Defendants have not fully and adequately

14 disclosed the ACU Defect, and they continue to conceal material information about

15 the defect from consumers and NHTSA. The omitted and concealed facts were

16 material because a reasonable person would find them important in purchasing,

17 leasing, or retaining a new or used motor vehicle, and because they directly impact

18 the value of the Class Vehicles purchased or leased by the Nevada Plaintiff and

19 Nevada State Class members.

20 3677. Had they been aware of the ACU Defect in the Class Vehicles, and the

21 ZF and ST Defendants' callous disregard for safety, the Nevada Plaintiff and

22 Nevada State Class members either would not have paid as much as they did for

23 their Class Vehicles, or they would not have purchased or leased them.

24 3678. As alleged in Section V above, if the ZF and ST Defendants had fully

25 and adequately disclosed the ACU Defect to consumers and NHTSA, the Nevada

26 Plaintiff and Nevada State Class members would have seen such a disclosure.

27 3679. Accordingly, the ZF and ST Defendants are liable to the Nevada

28 Plaintiff and Nevada State Class members for their damages in an amount to be

1  proven at trial, including, but not limited to, their lost overpayment for the Class
2  Vehicles at the time of purchase or lease.

3      3680. The ZF and ST Defendants' acts were done maliciously, oppressively,
4  deliberately, with intent to defraud; in reckless disregard of the Nevada Plaintiff's
5  and Nevada State Class members' rights and well-being; and to enrich themselves.
6  The ZF and ST Defendants' misconduct warrants an assessment of punitive
7  damages, as permitted by law, in an amount sufficient to deter such conduct in the
8  future, which amount shall be determined according to proof at trial.

9      **g.    Nevada Count 7: Unjust Enrichment Against Toyota Sales
10         USA, Toyota USA, and Toyota Engineering USA**

11     3681. Plaintiffs reallege and incorporate by reference all allegations in
12  Sections I-V above as though fully set forth herein.

13     3682. The Nevada Plaintiff brings this count individually and on behalf of
14  members of the Nevada State Class who purchased or leased Toyota Class
15  Vehicles, against Toyota Sales USA, Toyota USA, and Toyota Engineering USA.

16     3683. The Nevada Plaintiff and Nevada State Class members conferred
17  tangible and material monetary benefits upon Toyota Sales USA, Toyota USA, and
18  Toyota Engineering USA when they purchased or leased the Toyota Class
19  Vehicles. Toyota Sales USA, Toyota USA, and Toyota Engineering USA readily
20  accepted and retained these benefits.

21     3684. The Nevada Plaintiff and Nevada State Class members would not have
22  purchased or leased the Toyota Class Vehicles, or would have paid less for them,
23  had they known of the ACU Defect at the time of purchase or lease. Therefore,
24  Toyota Sales USA, Toyota USA, and Toyota Engineering USA profited from the
25  sale and lease of the Toyota Class Vehicles to the detriment and expense of the
26  Nevada Plaintiff and Nevada State Class members.

27     3685. Toyota Sales USA, Toyota USA, and Toyota Engineering USA
28  appreciated these monetary benefits. These benefits were the expected result of

Toyota Sales USA's, Toyota USA's, and Toyota Engineering USA's acting in their pecuniary interest at the expense of their customers. Toyota Sales USA, Toyota USA, and Toyota Engineering USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Nevada Plaintiff and Nevada State Class members regarding the nature and quality of the Toyota Class Vehicles while profiting from this deception.

3686. It would be unjust, inequitable, and unconscionable for Toyota Sales USA, Toyota USA, and Toyota Engineering USA to retain these monetary benefits, including because they were procured as a result of Toyota Sales USA's, Toyota USA's, and Toyota Engineering USA's wrongful conduct alleged above.

3687. The Nevada Plaintiff and Nevada State Class members are entitled to restitution of the benefits Toyota Sales USA, Toyota USA, and Toyota Engineering USA unjustly retained and/or any amounts necessary to return the Nevada Plaintiff and Nevada State Class members to the position they occupied prior to dealing with Toyota Sales USA, Toyota USA, and Toyota Engineering USA, with such amounts to be determined at trial.

3688. The Nevada Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Nevada Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the Nevada Plaintiff would have no adequate legal remedy.

### 15.    New Jersey

#### a.    New Jersey Count 1: Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212) Against Kia USA

3689. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3690. Plaintiff Gersen Damens (hereinafter, "New Jersey Plaintiff") brings this count individually and on behalf of members of the New Jersey State Class who purchased or leased Kia Class Vehicles, against Kia USA.

3691. A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

3692. Kia USA is and was at all relevant times a "merchant" with respect to motor vehicles under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), and a "seller" of motor vehicles under § 12A:2-103(1)(d).

3693. With respect to leases, Kia USA is and was at all relevant times a "lessor" of motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(p).

3694. All New Jersey State Class members who purchased Kia Class Vehicles in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

3695. All New Jersey State Class members who leased Kia Class Vehicles in New Jersey are "lessees" within the meaning of N.J. Stat. Ann. § 12A:2A-103(1)(n).

3696. The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

3697. The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Kia Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Kia Class Vehicles inherently defective and dangerous.

3698. The New Jersey Plaintiff and New Jersey State Class members have provided Kia USA with reasonable notice and opportunity to cure the breaches of

its implied warranty by way of the numerous NHTSA complaints filed against it, and individual notice letters sent by the New Jersey State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the New Jersey Plaintiff and New Jersey State Class members to Kia USA.

3699. Alternatively, the New Jersey Plaintiff and New Jersey State Class members were excused from providing Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Kia USA has long known that the Kia Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Kia USA has not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all Kia Class Vehicles, including the recalled Kia Class Vehicles—even though all of the Kia Class Vehicles are subject to the NHTSA investigation. Therefore, the New Jersey Plaintiff and New Jersey State Class members had no reason to believe that Kia USA would have repaired the ACU Defect if the New Jersey Plaintiff and New Jersey State Class members presented their Class Vehicles to it for repair.

3700. As a direct and proximate result of Kia USA's breach of the implied warranty of merchantability, the New Jersey Plaintiff and New Jersey State Class members have been damaged through their overpayment at the time of purchase or lease for Kia Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

      **b.**    **New Jersey Count 2: Violation of New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*) Against Kia Korea and Kia USA**

3701. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3702. The New Jersey Plaintiff brings this count individually and on behalf of members of the New Jersey State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3703. Kia Korea and Kia USA, the New Jersey Plaintiff, and New Jersey State Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

3704. The Kia Class Vehicles and the ACU and ASICs installed in them are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

3705. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unfair trade practices. N.J. Stat. Ann. § 56:8-2.

3706. In the course of their business, Kia Korea and Kia USA, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3707. Kia Korea and Kia USA had an ongoing duty to the New Jersey Plaintiff and New Jersey State Class members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Kia Korea and Kia USA owed the New Jersey Plaintiff and New Jersey State Class members a duty to disclose all the material facts concerning the ACU Defect in the Kia Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the New Jersey Plaintiff and New Jersey State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3708. By misrepresenting the Kia Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the ACU Defect to both consumers and NHTSA, Kia Korea and Kia USA

engaged in one or more of the following unfair or deceptive business practices

prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false

pretense, false promise or misrepresentation, or the concealment, suppression or

omission of a material fact with intent that others rely upon such concealment,

suppression or omission, in connection with the advertisement and sale/lease of the

Kia Class Vehicles.

3709. Kia Korea's and Kia USA's unfair and deceptive acts or practices,

including their misrepresentations, concealments, omissions, and suppressions of

material facts, were designed to mislead and had a tendency or capacity to mislead

and create a false impression in consumers that the Kia Class Vehicles had

properly-functioning and reliable airbags and seatbelts, and that the Occupant

Restraint System did not contain the ACU Defect and would perform its intended

function of activating the seatbelts and airbags during a collision. Indeed, those

misrepresentations, concealments, omissions, and suppressions of material facts did

in fact deceive reasonable consumers, including the New Jersey Plaintiff and New

Jersey State Class members, about the true safety and reliability of Kia Class

Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the

Kia Class Vehicles, and the true value of the Kia Class Vehicles.

3710. Kia Korea's and Kia USA's misrepresentations, concealments,

omissions, and suppressions of material facts regarding the ACU Defect and true

characteristics of the Occupant Restraint Systems in the Kia Class Vehicles were

material to the decisions of the New Jersey Plaintiff and New Jersey State Class

members to purchase and lease those vehicles, as Kia Korea and Kia USA intended.

The New Jersey Plaintiff and New Jersey State Class members were exposed to

those misrepresentations, concealments, omissions, and suppressions of material

facts, and relied on Kia Korea's and Kia USA's misrepresentations that the Kia

Class Vehicles and their Occupant Restraint Systems were safe and reliable in

deciding to purchase and lease Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3711. The New Jersey Plaintiff's and New Jersey State Class members' reliance was reasonable, as they had no way of discerning that Kia Korea's and Kia USA's representations were false and misleading, or otherwise learning the facts that Kia Korea and Kia USA had concealed or failed to disclose. The New Jersey Plaintiff and New Jersey State Class members did not, and could not, unravel Kia Korea's and Kia USA's deception on their own.

3712. Had the New Jersey Plaintiff and New Jersey State Class members known the truth about the ACU Defect, the New Jersey Plaintiff and New Jersey State Class members would not have purchased or leased Kia Class Vehicles, or would have paid significantly less for them.

3713. The New Jersey Plaintiff and New Jersey State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Kia Class Vehicles with an undisclosed safety defect as a direct and proximate result of Kia Korea's and Kia USA's concealment, misrepresentations, and/or failure to disclose material information.

3714. Kia Korea's and Kia USA's violations present a continuing risk to the New Jersey Plaintiff and New Jersey State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3715. Pursuant to N.J. Stat. Ann. § 56:8-19, the New Jersey Plaintiff and New Jersey State Class members seek an order enjoining Kia Korea's and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

**c.** **New Jersey Count 3: Violation of New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia.**

3716. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3717. The New Jersey Plaintiff brings this count individually and on behalf of members of the New Jersey State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3718. The ZF Defendants, the ST Defendants, the New Jersey Plaintiff, and New Jersey State Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

3719. The Class Vehicles and ACU and ASICs installed in them are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

3720. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unfair trade practices. N.J. Stat. Ann. § 56:8-2.

3721. The ZF and ST Defendants had an ongoing duty to the New Jersey Plaintiff and New Jersey State Class members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, the ZF and ST Defendants owed the New Jersey Plaintiff and New Jersey State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the New Jersey Plaintiff and New Jersey State Class members.

3722. In the course of their business the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally omitting, concealing, and failing to disclose material facts

regarding the existence, nature, and scope of the ACU Defect in the Class Vehicles, as detailed above.

3723. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3724. By misrepresenting, failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in one or more of the unlawful practices prohibited by N.J. Stat. Ann. § 56:8-2, including the act, use, or employment of any unconscionable commercial practice, and/or concealment, suppression or omission of material facts.

3725. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the New Jersey Plaintiff and New Jersey State Class members, about the true safety and reliability of Class Vehicles

and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3726. The New Jersey Plaintiff and New Jersey State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The New Jersey Plaintiff and New Jersey State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own.

3727. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the New Jersey Plaintiff and New Jersey State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the New Jersey Plaintiff and New Jersey State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3728. The New Jersey Plaintiff and New Jersey State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

3729. The ZF and ST Defendants' violations present a continuing risk to the New Jersey Plaintiff and New Jersey State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3730. Pursuant to N.J. Stat Ann. § 56:8-19, the New Jersey Plaintiff and New Jersey State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

### d. New Jersey Count 4: Fraud by Omission and Concealment Against Kia Korea and Kia USA

3731. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3732. The New Jersey Plaintiff brings this count individually and on behalf of members of the New Jersey State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3733. Kia Korea and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3734. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3735. Kia Korea and Kia USA had a duty to disclose the ACU Defect to the New Jersey Plaintiff and New Jersey State Class members because:

        a.     Kia Korea and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

        b.     Given the ACU Defect's hidden and technical nature, the New Jersey Plaintiff and New Jersey State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    Kia Korea and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Kia Class Vehicles containing the ACU Defect would have been a material fact to the New Jersey Plaintiff's and New Jersey State Class members' decisions to buy or lease Kia Class Vehicles; and

d.    Kia Korea and Kia USA made incomplete representations about the safety and reliability of the Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Kia Korea, and Kia USA intentionally concealed, suppressed, and failed to disclose to the New Jersey Plaintiff and New Jersey State Class members that the Kia Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Kia Class Vehicles that they marketed and offered for sale and lease to the New Jersey Plaintiff and New Jersey State Class members, Kia Korea and Kia USA had the duty to disclose the whole truth.

3736. In breach of their duties, Kia Korea and Kia USA failed to disclose that the Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3737. Kia Korea and Kia USA intended for the New Jersey Plaintiff and New Jersey State Class members to rely on their omissions—which they did by purchasing and leasing the Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3738. That reliance was reasonable, because a reasonable consumer would not have expected that the Kia Class Vehicles contained a safety defect that poses such a serious risk. Kia Korea and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3739. Additionally, Kia Korea and Kia USA ensured that the New Jersey Plaintiff and New Jersey State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3740. Kia Korea and Kia USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the New Jersey Plaintiff and New Jersey State Class members.

3741. To this day, Kia Korea and Kia USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Kia Class Vehicles purchased or leased by the New Jersey Plaintiff and New Jersey State Class members.

3742. Had they been aware of the ACU Defect in the Kia Class Vehicles, and Kia Korea's and Kia USA's callous disregard for safety, the New Jersey

Plaintiff and New Jersey State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3743. As alleged in Section V above, if Kia Korea and Kia USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the New Jersey Plaintiff and New Jersey State Class members would have seen such a disclosure.

3744. Accordingly, Kia Korea and Kia USA are liable to the New Jersey Plaintiff and New Jersey State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Kia Class Vehicles at the time of purchase or lease.

3745. Kia Korea's and Kia USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the New Jersey Plaintiff's and New Jersey State Class members' rights and well-being; and to enrich themselves. Kia Korea's and Kia USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**e.    New Jersey Count 5: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3746. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3747. The New Jersey Plaintiff brings this count individually and on behalf of members of the New Jersey State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3748. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3749. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3750. The ZF and ST Defendants had a duty to disclose the ACU Defect to the New Jersey Plaintiff and New Jersey State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the New Jersey Plaintiff and New Jersey State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the New Jersey Plaintiff's and New Jersey State Class members' decisions to buy or lease Class Vehicles; and

d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3751. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3752. The ZF and ST Defendants intended for the New Jersey Plaintiff and New Jersey State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3753. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3754. Additionally, the ZF and ST Defendants ensured that the New Jersey Plaintiff and New Jersey State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3755. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the New Jersey Plaintiff and New Jersey State Class members.

3756. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the New Jersey Plaintiff and New Jersey State Class members.

3757. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the New Jersey Plaintiff and New Jersey State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3758. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the New Jersey Plaintiff and New Jersey State Class members would have seen such a disclosure.

3759. Accordingly, the ZF and ST Defendants are liable to the New Jersey Plaintiff and New Jersey State Class members for their damages in an amount to be

proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

3760. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the New Jersey Plaintiff's and New Jersey State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f. New Jersey Count 6: Unjust Enrichment Against Kia Korea and Kia USA

3761. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

3762. The New Jersey Plaintiff brings this count individually and on behalf of members of the New Jersey State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

3763. The New Jersey Plaintiff and New Jersey State Class members conferred tangible and material monetary benefits upon Kia Korea and Kia USA when they purchased or leased the Kia Class Vehicles. Kia Korea and Kia USA readily accepted and retained these benefits.

3764. The New Jersey Plaintiff and New Jersey State Class members would not have purchased or leased the Kia Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Kia Korea and Kia USA profited from the sale and lease of the Kia Class Vehicles to the detriment and expense of the New Jersey Plaintiff and New Jersey State Class members.

3765. Kia Korea and Kia USA appreciated these monetary benefits. These benefits were the expected result of Kia Korea and Kia USA acting in their pecuniary interest at the expense of their customers. Kia Korea and Kia USA knew

of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the New Jersey Plaintiff and New Jersey State Class members regarding the nature and quality of the Kia Class Vehicles while profiting from this deception.

3766. It would be unjust, inequitable, and unconscionable for Kia Korea and Kia USA to retain these monetary benefits, including because they were procured as a result of Kia Korea's and Kia USA's wrongful conduct alleged above.

3767. The New Jersey Plaintiff and New Jersey State Class members are entitled to restitution of the benefits Kia Korea and Kia USA unjustly retained and/or any amounts necessary to return the New Jersey Plaintiff and New Jersey State Class members to the position they occupied prior to dealing with Kia Korea and Kia USA, with such amounts to be determined at trial.

3768. The New Jersey Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the New Jersey Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the New Jersey Plaintiff would have no adequate legal remedy.

**16.   New York**

> **a.   New York Count 1: Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349) Against FCA, Honda Japan, Honda USA, and Honda Engineering USA**

3769. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3770. Plaintiff Eric Fishon brings this count individually and on behalf of members of the New York State Class who purchased or leased FCA Class Vehicles, against FCA.

3771. Plaintiff Ravichandran Namakkal bring this count individually and on behalf of members of the New York State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

3772. For purposes of this count, Plaintiffs Fishon and Namakkal shall be referred to as the "New York Plaintiffs."

3773. The New York Plaintiffs and New York State Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

3774. FCA, Honda Japan, Honda USA, and Honda Engineering USA are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

3775. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

3776. In the course of their business, FCA, Honda Japan, Honda USA, and Honda Engineering USA, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA and Honda Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3777. FCA, Honda Japan, Honda USA, and Honda Engineering USA had an ongoing duty to the New York Plaintiffs and New York State Class members to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, they owed the New York Plaintiffs and New York State Class members a duty to disclose all the material facts concerning the ACU Defect in the FCA and Honda Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the New York Plaintiffs and New York State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3778. By misrepresenting the FCA and Honda Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers

and risk posed by the ACU Defect to both consumers and NHTSA, FCA, Honda Japan, Honda USA, and Honda Engineering USA engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

3779. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the FCA and Honda Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the New York Plaintiffs and New York State Class members, about the true safety and reliability of FCA and Honda Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the FCA and Honda Class Vehicles, and the true value of the FCA and Honda Class Vehicles.

3780. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA and Honda Class Vehicles were material to the decisions of the New York Plaintiffs and New York State Class members to purchase and lease those vehicles, as FCA, Honda Japan, Honda USA, and Honda Engineering USA intended. The New York Plaintiffs and New York State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's misrepresentations that the FCA and Honda Class Vehicles and

their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease FCA and Honda Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3781. The New York Plaintiffs' and New York State Class members' reliance was reasonable, as they had no way of discerning that FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's representations were false and misleading, or otherwise learning the facts that they had concealed or failed to disclose. The New York Plaintiffs and New York State Class members did not, and could not, unravel FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's deception on their own.

3782. Had the New York Plaintiffs and New York State Class members known the truth about the ACU Defect, the New York Plaintiffs and New York State Class members would not have purchased or leased FCA and Honda Class Vehicles, or would have paid significantly less for them.

3783. The New York Plaintiffs and New York State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for FCA and Honda Class Vehicles with an undisclosed safety defect as a direct and proximate result of FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's concealment, misrepresentations, and/or failure to disclose material information.

3784. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's violations present a continuing risk to the New York Plaintiffs and New York State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3785. Pursuant to N.Y. Gen. Bus. Law § 349, the New York Plaintiffs and New York State Class members seek an order enjoining FCA's, Honda Japan's,

Honda USA's, and Honda Engineering USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New York DAPA.

      **b.**    **New York Count 2: Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3786. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3787. Plaintiffs Eric Fishon and Ravichandran Namakkal bring this count individually and on behalf of members of the New York State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3788. For purposes of this count, Plaintiffs Fishon and Namakkal shall be referred to as the "New York Plaintiffs."

3789. The New York Plaintiffs and New York State Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

3790. The ZF and ST Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

3791. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

3792. The ZF and ST Defendants had an ongoing duty to the New York Plaintiffs and New York State Class members to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, the ZF and ST Defendants owed the New York Plaintiffs and New York State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally

concealed the ACU Defect from the New York Plaintiffs and New York State Class members.

3793. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

3794. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the New York DAPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3795. By misrepresenting, failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in deceptive acts or practices in the conduct of business, trade or commerce prohibited by N.Y. Gen. Bus. Law § 349.

3796. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those

misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the New York Plaintiffs and New York State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3797. The New York Plaintiffs' and New York State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The New York Plaintiffs and New York State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

3798. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the New York Plaintiffs and New York State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the New York Plaintiffs and New York State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3799. The New York Plaintiffs and New York State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

3800. The ZF and ST Defendants' violations present a continuing risk to the New York Plaintiffs and New York State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

3801. Pursuant to N.Y. Gen. Bus. Law § 349, the New York Plaintiffs and New York State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New York DAPA.

    **c.**    **New York Count 3: Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350) Against FCA, Honda Japan, and Honda USA**

3802. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3803. Plaintiff Eric Fishon brings this count individually and on behalf of members of the New York State Class who purchased or leased FCA Class Vehicles, against FCA.

3804. Plaintiff Ravichandran Namakkal bring this count individually and on behalf of members of the New York State Class who purchased or leased Honda Class Vehicles, against Honda Japan and Honda USA.

3805. For purposes of this count, Plaintiffs Fishon and Namakkal shall be referred to as the "New York Plaintiffs."

3806. FCA, Honda Japan and Honda USA were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

3807. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

3808. FCA, Honda Japan, and Honda USA caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including the New York Plaintiffs and New York State Class members. Numerous examples of these statements and advertisements

1   appear in the preceding paragraphs throughout this Complaint and the Exhibits
2   hereto.

3       3809. In the course of their business, FCA, Honda Japan, and Honda USA,
4   through their agents, employees, and/or subsidiaries, violated the New York FAA
5   by knowingly and intentionally misrepresenting, omitting, concealing, and/or
6   failing to disclose material facts regarding the reliability, safety, and performance of
7   the FCA and Honda Class Vehicles, the safety of their Occupant Restraint Systems,
8   and the ACU Defect, as detailed above.

9       3810. FCA, Honda Japan, and Honda USA had an ongoing duty to the New
10  York Plaintiffs and New York State Class members to refrain from unfair or
11  deceptive practices under the New York FAA in the course of their business.
12  Specifically, they owed the New York Plaintiffs and New York State Class
13  members a duty to disclose all the material facts concerning the ACU Defect in the
14  FCA and Honda Class Vehicles because they possessed exclusive knowledge, they
15  intentionally concealed the ACU Defect from the New York Plaintiffs and New
16  York State Class members, and/or they made misrepresentations that were rendered
17  misleading because they were contradicted by withheld facts.

18      3811. By misrepresenting the Class Vehicles as safe and reliable and the
19  defective ACU and ASICs installed in them as properly-functioning and free from
20  defects, and by failing to disclose and actively concealing the dangers and risk
21  posed by the ACU Defect to both consumers and NHTSA, FCA, Honda Japan, and
22  Honda USA engaged in the false and misleading advertising practices prohibited by
23  N.Y. Gen. Bus. Law § 350.

24      3812. FCA's, Honda Japan's, and Honda USA's unfair and deceptive acts or
25  practices, including their misrepresentations, concealments, omissions, and
26  suppressions of material facts, were designed to mislead and had a tendency or
27  capacity to mislead and create a false impression in consumers that the FCA and
28  Honda Class Vehicles had properly-functioning and reliable airbags and seatbelts,

and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the New York Plaintiffs and New York State Class members, about the true safety and reliability of FCA and Honda Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the FCA and Honda Class Vehicles, and the true value of the FCA and Honda Class Vehicles.

3813. FCA's, Honda Japan's, and Honda USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA and Honda Class Vehicles were material to the decisions of the New York Plaintiffs and New York State Class members to purchase and lease those vehicles, as FCA, Honda Japan, and Honda USA intended. The New York Plaintiffs and New York State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Honda Japan's, and Honda USA's misrepresentations that the FCA and Honda Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease FCA and Honda Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3814. The New York Plaintiffs' and New York State Class members' reliance was reasonable, as they had no way of discerning that FCA's, Honda Japan's, and Honda USA's representations were false and misleading, or otherwise learning the facts that FCA, Honda Japan, and Honda USA had concealed or failed to disclose. The New York Plaintiffs and New York State Class members did not, and could not, unravel FCA's, Honda Japan's, and Honda USA's deception on their own.

3815. Had the New York Plaintiffs and New York State Class members known the truth about the ACU Defect, the New York Plaintiffs and New York State Class members would not have purchased or leased FCA and Honda Class Vehicles, or would have paid significantly less for them.

3816. The New York Plaintiffs and New York State Class members suffered ascertainable losses and actual damages as a direct and proximate result of FCA's, Honda Japan's, and Honda USA's concealment, misrepresentations, and/or failure to disclose material information.

3817. FCA's, Honda Japan's, and Honda USA's violations present a continuing risk to the New York Plaintiffs and New York State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3818. Pursuant to New York FAA, the New York Plaintiffs and New York State Class members seek an order enjoining FCA's, Honda Japan's, and Honda USA's false advertising practices and awarding damages and any other just and proper relief available under the New York FAA.

### d. New York Count 4: Fraud by Omission and Concealment Against FCA, Honda Japan, Honda USA, and Honda Engineering USA

3819. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3820. Plaintiff Eric Fishon brings this count individually and on behalf of members of the New York State Class who purchased or leased FCA Class Vehicles, against FCA.

3821. Plaintiff Ravichandran Namakkal bring this count individually and on behalf of members of the New York State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

3822. For purposes of this count, Plaintiffs Fishon and Namakkal shall be referred to as the "New York Plaintiffs."

3823. FCA, Honda Japan, Honda USA, and Honda Engineering USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3824. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3825. FCA, Honda Japan, Honda USA, and Honda Engineering USA had a duty to disclose the ACU Defect to the New York Plaintiffs and New York State Class members because:

    a.    FCA, Honda Japan, Honda USA, and Honda Engineering USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the New York Plaintiffs and New York State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    FCA, Honda Japan, Honda USA, and Honda Engineering USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the FCA and Honda

Class Vehicles containing the ACU Defect would have been a material fact to the New York Plaintiffs' and New York State Class members' decisions to buy or lease FCA and Honda Class Vehicles; and

    d.    FCA, Honda Japan, Honda USA, and Honda Engineering USA made incomplete representations about the safety and reliability of the FCA and Honda Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, FCA, Honda Japan, Honda USA, and Honda Engineering USA intentionally concealed, suppressed, and failed to disclose to the New York Plaintiffs and New York State Class members that the FCA and Honda Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the FCA and Honda Class Vehicles that they marketed and offered for sale and lease to the New York Plaintiffs and New York State Class members, FCA, Honda Japan, Honda USA, and Honda Engineering USA had the duty to disclose the whole truth.

3826. In breach of their duties, FCA, Honda Japan, Honda USA, and Honda Engineering USA failed to disclose that the FCA and Honda Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3827. FCA, Honda Japan, Honda USA, and Honda Engineering USA intended for the New York Plaintiffs and New York State Class members to rely on their omissions—which they did by purchasing and leasing the FCA and Honda

1    Class Vehicles at the prices they paid believing that the Occupant Restraint Systems

2    in their Class Vehicles would function properly.

3         3828. That reliance was reasonable, because a reasonable consumer would

4    not have expected that the FCA and Honda Class Vehicles contained a safety defect

5    that poses such a serious risk. FCA, Honda Japan, Honda USA, and Honda

6    Engineering USA knew that reasonable consumers expect that their vehicle has

7    working airbags and seatbelt pretensioners and would rely on those facts in

8    deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether

9    a manufacturer's products are safe and reliable, and whether that manufacturer

10   stands behind its products, are material concerns to a consumer. Especially here

11   when at least nine people have already died due to the ACU Defect, and many more

12   have been injured.

13        3829. Additionally, FCA, Honda Japan, Honda USA, and Honda

14   Engineering USA ensured that the New York Plaintiffs and New York State Class

15   members did not discover this information by actively concealing and

16   misrepresenting the true nature of the FCA and Honda Class Vehicles' Occupant

17   Restraint Systems to consumers and NHTSA.

18        3830. FCA, Honda Japan, Honda USA, and Honda Engineering USA

19   actively concealed and suppressed these material facts, in whole or in part, to

20   maintain a market for their Class Vehicles, to protect profits, and to avoid costly

21   recalls that would expose them to liability for those expenses and harm the

22   commercial reputations of Defendants and their products. They did so at the

23   expense of the New York Plaintiffs and New York State Class members.

24        3831. To this day, FCA, Honda Japan, Honda USA, and Honda Engineering

25   USA have not fully and adequately disclosed the ACU Defect, and they continue to

26   conceal material information about the defect from consumers and NHTSA. The

27   omitted and concealed facts were material because a reasonable person would find

28   them important in purchasing, leasing, or retaining a new or used motor vehicle,

and because they directly impact the value of the FCA and Honda Class Vehicles purchased or leased by the New York Plaintiffs and New York State Class members.

3832. Had they been aware of the ACU Defect in the FCA and Honda Class Vehicles, and FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's callous disregard for safety, the New York Plaintiffs and New York State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3833. As alleged in Section V above, if FCA, Honda Japan, Honda USA, and Honda Engineering USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the New York Plaintiffs and New York State Class members would have seen such a disclosure.

3834. Accordingly, FCA, Honda Japan, Honda USA, and Honda Engineering USA are liable to the New York Plaintiffs and New York State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the FCA and Honda Class Vehicles at the time of purchase or lease.

3835. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the New York Plaintiffs' and New York State Class members' rights and well-being; and to enrich themselves. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**e.** **New York Count 5: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3836. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3837. The New York Plaintiffs bring this count individually and on behalf of members of the New York State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3838. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3839. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3840. The ZF and ST Defendants had a duty to disclose the ACU Defect to the New York Plaintiffs and New York State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the New York Plaintiffs and New York State Class members lack the

- 1173 -

1        sophisticated expertise in vehicle components and electrical

2        phenomena that would be necessary to discover the ACU Defect

3        on their own;

4       c.     The ZF and ST Defendants knew that the ACU Defect gave rise

5        to serious safety concerns for the consumers who use the

6        vehicles, and the Class Vehicles containing the ACU Defect

7        would have been a material fact to the New York Plaintiffs' and

8        New York State Class members' decisions to buy or lease Class

9        Vehicles; and

10      d.     The ZF Defendants made incomplete representations about the

11        safety and reliability of the Class Vehicles and their Occupant

12        Restraint System, while purposefully withholding material facts

13        about a known safety defect, creating a duty to disclose the

14        whole truth. Specifically, ZF Electronics USA, ZF Passive

15        Safety USA, and ZF Automotive USA worked with the Vehicle

16        Manufacturer Defendants on the design and inclusion of the

17        airbag readiness indicators in the Class Vehicles, which falsely

18        assured Plaintiffs and Class Members that the Occupant

19        Restraint Systems in the Class Vehicles would function properly

20        in a crash.

21     3841. In breach of their duties, the ZF and ST Defendants failed to disclose

22 that the Class Vehicles were not safe and reliable, and that their Occupant Restraint

23 Systems, including their airbags and seatbelt pretensioners could fail in the event of

24 a crash due to the ACU Defect.

25     3842. The ZF and ST Defendants intended for the New York Plaintiffs and

26 New York State Class members to rely on their omissions—which they did by

27 purchasing and leasing the Class Vehicles at the prices they paid believing that the

28 Occupant Restraint Systems in their Class Vehicles would function properly.

3843. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3844. Additionally, the ZF and ST Defendants ensured that the New York Plaintiffs and New York State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3845. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the New York Plaintiffs and New York State Class members.

3846. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the New York Plaintiffs and New York State Class members.

3847. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the New York Plaintiffs and

New York State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3848. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the New York Plaintiffs and New York State Class members would have seen such a disclosure.

3849. Accordingly, the ZF and ST Defendants are liable to the New York Plaintiffs and New York State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

3850. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the New York Plaintiffs' and New York State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**f.**  **New York Count 6: Unjust Enrichment Against FCA, Honda Japan, Honda USA, and Honda Engineering USA**

3851. Plaintiffs reallege and incorporate by reference all allegations in Sections I- VI above as though fully set forth herein.

3852. Plaintiff Eric Fishon brings this count individually and on behalf of members of the New York State Class who purchased or leased FCA Class Vehicles, against FCA.

3853. Plaintiff Ravichandran Namakkal brings this count individually and on behalf of members of the New York State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

3854. For purposes of this count, Plaintiffs Fishon and Namakkal shall be referred to as the "New York Plaintiffs."

3855. The New York Plaintiffs and New York State Class members conferred tangible and material monetary benefits upon FCA, Honda Japan, Honda USA, and Honda Engineering USA when they purchased or leased the FCA and Honda Class Vehicles. FCA, Honda Japan, Honda USA, and Honda Engineering USA readily accepted and retained these benefits.

3856. The New York Plaintiffs and New York State Class members would not have purchased or leased the FCA and Honda Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA, Honda Japan, Honda USA, and Honda Engineering USA profited from the sale and lease of the FCA and Honda Class Vehicles to the detriment and expense of the New York Plaintiffs and New York State Class members.

3857. FCA, Honda Japan, Honda USA, and Honda Engineering USA appreciated these monetary benefits. These benefits were the expected result of FCA, Honda Japan, Honda USA, and Honda Engineering USA acting in their pecuniary interest at the expense of their customers. FCA, Honda Japan, Honda USA, and Honda Engineering USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the New York Plaintiffs and New York State Class members regarding the nature and quality of the FCA and Honda Class Vehicles while profiting from this deception.

3858. It would be unjust, inequitable, and unconscionable for FCA, Honda Japan, Honda USA, and Honda Engineering USA to retain these monetary benefits, including because they were procured as a result of FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's wrongful conduct alleged above.

3859. The New York Plaintiffs and New York State Class members are entitled to restitution of the benefits FCA, Honda Japan, Honda USA, and Honda Engineering USA unjustly retained and/or any amounts necessary to return the New York Plaintiffs and New York State Class members to the position they occupied

1    prior to dealing with FCA, Honda Japan, Honda USA, and Honda Engineering

2    USA, with such amounts to be determined at trial.

3        3860. The New York Plaintiffs plead this claim separately as well as in the

4    alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the

5    New York Plaintiffs claims for damages are dismissed or judgment is entered in

6    favor of Defendants, the New York Plaintiffs would have no adequate legal

7    remedy.

8        **17.    North Carolina**

9            **a.    North Carolina Count 1: Breach of Express Warranty (N.C.**

10               **Gen. Stat. §§ 25-2-313 and 25-2A-210) Against FCA, Honda**
               **Japan, and Honda USA**[15]

11       3861. Plaintiffs reallege and incorporate by reference all preceding

12   allegations as though fully set forth herein.

13       3862. Plaintiff Constanza Gonzalez brings this count individually and on

14   behalf of members of the North Carolina State Class who purchased or leased FCA

15   Class Vehicles, against FCA.

16       3863. Plaintiff Tonya McNeely brings this count individually and on behalf

17   of members of the North Carolina State Class who purchased or leased Honda

18   Class Vehicles, against Honda Japan and Honda USA.

19       3864. For purposes of this count, Plaintiffs Gonzalez and McNeely shall be

20   referred to as the "North Carolina Plaintiffs."

21       3865. FCA, Honda Japan, and Honda USA are and were at all relevant times

22   "merchants" with respect to motor vehicles under N.C. Gen. Stat. §§ 25-2-104(1)

23   and 25-2A-103(3), and "sellers" of motor vehicles under § 25-2-103(1)(d).

24       3866. With respect to leases, FCA, Honda Japan, and Honda USA are and

25   were at all relevant times "lessors" of motor vehicles under N.C. Gen. Stat. § 25-

26   2A-103(1)(p).

27   _____

28   [15] The Court held in its February 9, 2022 Order that the North Carolina Plaintiffs
     stated a claim for breach of express warranty. *See* ECF No. 396 at 155-56.

3867. All North Carolina State Class members who purchased FCA and Honda Class Vehicles in North Carolina are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

3868. All North Carolina State Class members who leased FCA and Honda Class Vehicles in North Carolina are "lessees" within the meaning of N.C. Gen. Stat. § 25-2A-103(1)(n).

3869. The FCA and Honda Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. §§ 25-2-105(1) and 25-2A-103(1)(h).

3870. In connection with the purchase or lease of FCA and Honda Class Vehicles, FCA, Honda Japan, and Honda USA provided the North Carolina Plaintiffs and North Carolina State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the FCA and Honda Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

3871. However, FCA, Honda Japan, and Honda USA knew or should have known that the warranties were false and/or misleading. Specifically, FCA, Honda Japan, and Honda USA were aware of the ACU Defect in the FCA and Honda Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the North Carolina Plaintiff and North Carolina State Class members.

3872. The North Carolina Plaintiffs and North Carolina State Class members were aware the FCA and Honda Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and FCA, Honda Japan, and Honda USA when the North Carolina Plaintiffs and

1    North Carolina State Class members unknowingly purchased and leased FCA and

2    Honda Class Vehicles that came equipped with defective ACUs and ASICs.

3         3873. FCA, Honda Japan, and Honda USA misrepresented the FCA and

4    Honda Class Vehicles as safe and reliable while concealing that they contained the

5    ACU Defect, the North Carolina Plaintiffs and North Carolina State Class members

6    were exposed to those misrepresentations, and the North Carolina Plaintiffs and

7    North Carolina State Class members had no way of discerning that FCA's, Honda

8    Japan's, and Honda USA's representations were false and misleading or otherwise

9    learning the material facts that FCA, Honda Japan, and Honda USA had concealed

10   or failed to disclose. Accordingly, the North Carolina Plaintiffs and North Carolina

11   State Class members reasonably relied on FCA's, Honda Japan's, and Honda

12   USA's express warranties when purchasing or leasing their FCA and Honda Class

13   Vehicles. Plaintiffs allege the information they relied upon in Section II.B above.

14   To aid review of this information, Exhibit 19 provides paragraph numbers for each

15   Plaintiff.

16        3874. FCA, Honda Japan, and Honda USA knowingly breached their express

17   warranties to repair defects in materials and workmanship by failing to repair the

18   ACU Defect or replace the defective ACUs and ASICs in the FCA and Honda

19   Class Vehicles. FCA, Honda Japan, and Honda USA also breached their express

20   warranties by selling and leasing FCA and Honda Class Vehicles with a defect that

21   was never disclosed to the North Carolina Plaintiffs and North Carolina State Class

22   members.

23        3875. The North Carolina Plaintiffs and North Carolina State Class members

24   have provided FCA, Honda Japan, and Honda USA with reasonable notice and

25   opportunity to cure the breaches of their express warranties by way of the numerous

26   NHTSA complaints filed against them, and the individual notice letters sent by

27   North Carolina State Class members within a reasonable amount of time after the

28   ACU Defect became public. Additionally, on April 24, 2020, a notice letter was

1   sent on behalf of the North Carolina Plaintiffs and North Carolina State Class

2   members to FCA, Honda Japan, and Honda USA.

3        3876. Alternatively, the North Carolina Plaintiffs and North Carolina State

4   Class members were excused from providing FCA, Honda Japan, and Honda USA

5   with notice and an opportunity to cure the breach, because it would have been

6   futile. As alleged above, FCA, Honda Japan, and Honda USA have long known that

7   the FCA and Honda Class Vehicles contained the ACU Defect, and that the ACU

8   Defect has caused ACUs and ASICs to malfunction in crashes involving Class

9   Vehicles; however, to date, the Honda Japan and Honda USA have not instituted a

10  recall or any other repair program, or even acknowledged that the ACU Defect

11  exists—even though Honda Class Vehicles are subject to the NHTSA investigation.

12  Similarly, FCA has not instituted a recall or any other repair program with respect

13  to the unrecalled FCA Class Vehicles, or even acknowledged that the ACU Defect

14  exists in all FCA Class Vehicles, including the recalled FCA Class Vehicles.

15  Therefore, the North Carolina Plaintiffs and North Carolina State Class members

16  had no reason to believe that FCA, Honda Japan, and Honda USA would have

17  repaired the ACU Defect if the North Carolina Plaintiffs and North Carolina State

18  Class members presented their FCA and Honda Class Vehicles to FCA, Honda

19  Japan, and Honda USA for repair.

20       3877. As a direct and proximate result of FCA's, Honda Japan's, and Honda

21  USA's breach of their express warranties, the FCA and Honda Class Vehicles were

22  and are defective and the ACU Defect in the North Carolina Plaintiffs' and North

23  Carolina State Class members' FCA and Honda Class Vehicles was not remedied.

24  Therefore, the North Carolina Plaintiffs and North Carolina State Class members

25  have been damaged, in an amount to be proven at trial, through their overpayment

26  at the time of purchase or lease for FCA and Honda Class Vehicles with an

27  undisclosed safety defect that would not be remedied.

28

**b. North Carolina Count 2: Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) Against FCA[16], Honda Japan, Honda USA, and Honda Engineering USA**

3878. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3879. Plaintiff Constanza Gonzalez brings this count individually and on behalf of members of the North Carolina State Class who purchased or leased FCA Class Vehicles, against FCA.

3880. Plaintiff Tonya McNeely brings this count individually and on behalf of members of the North Carolina State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

3881. For purposes of this count, Plaintiffs Gonzalez and McNeely shall be referred to as the "North Carolina Plaintiffs."

3882. FCA, Honda Japan, Honda USA, and Honda Engineering USA were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

3883. In the course of their business, FCA, Honda Japan, Honda USA, and Honda Engineering USA, through their agents, employees, and/or subsidiaries, violated the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA and Honda Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3884. FCA, Honda Japan, Honda USA, and Honda Engineering USA had an ongoing duty to the North Carolina Plaintiffs and North Carolina State Class members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, FCA, Honda Japan, Honda

---

[16] The Court held in its February 9, 2022 Order that Plaintiff Gonzalez had sufficiently plead a Violation of the North Carolina Unfair and Deceptive Trade Practices Act against FCA. *See* ECF No. 396 at 111.

USA, and Honda Engineering USA owed the North Carolina Plaintiffs and North Carolina State Class members a duty to disclose all the material facts concerning the ACU Defect in the FCA and Honda Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the North Carolina Plaintiffs and North Carolina State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3885. By misrepresenting the FCA and Honda Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, FCA, Honda Japan, Honda USA, and Honda Engineering USA engaged the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-16.

3886. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the FCA and Honda Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the North Carolina Plaintiffs and North Carolina State Class members, about the true safety and reliability of FCA and Honda Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the FCA and Honda Class Vehicles, and the true value of the FCA and Honda Class Vehicles.

3887. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA and Honda Class Vehicles were material to the decisions of the North Carolina Plaintiffs and North Carolina State Class members to purchase and lease those vehicles, as FCA, Honda Japan, Honda USA, and Honda Engineering USA intended. The North Carolina Plaintiffs and North Carolina State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's misrepresentations that the FCA and Honda Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease FCA and Honda Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3888. The North Carolina Plaintiffs' and North Carolina State Class members' reliance was reasonable, as they had no way of discerning that FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's representations were false and misleading, or otherwise learning the facts that FCA, Honda Japan, Honda USA, and Honda Engineering USA had concealed or failed to disclose. The North Carolina Plaintiffs and North Carolina State Class members did not, and could not, unravel FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's deception on their own.

3889. Had the North Carolina Plaintiffs and North Carolina State Class members known the truth about the ACU Defect, the North Carolina Plaintiffs and North Carolina State Class members would not have purchased or leased FCA and Honda Class Vehicles, or would have paid significantly less for them.

3890. The North Carolina Plaintiff and North Carolina State Class members suffered ascertainable losses and actual damages through their overpayment at the

time of purchase and lease for FCA and Honda Class Vehicles with an undisclosed safety defect as a direct and proximate result of FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's concealment, misrepresentations, and/or failure to disclose material information.

3891. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's violations present a continuing risk to the North Carolina Plaintiff and North Carolina State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3892. Pursuant to N.C. Gen. Stat. § 75-16, the North Carolina Plaintiffs and North Carolina State Class members seek an order enjoining FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the North Carolina UDTPA.

   **c.**  **North Carolina Count 3: Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

3893. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3894. Plaintiffs Constanza Gonzalez and Tonya McNeely bring this count individually and on behalf of members of the North Carolina State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3895. For purposes of this count, Plaintiffs Gonzalez and McNeely shall be referred to as the "North Carolina Plaintiffs."

3896. The ZF and ST Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

- 1185 -

3897. The ZF and ST Defendants had an ongoing duty to the North Carolina Plaintiffs and North Carolina State Class members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, the ZF and ST Defendants owed the North Carolina Plaintiffs and North Carolina State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the North Carolina Plaintiffs and North Carolina State Class members.

3898. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

3899. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the North Carolina UDTPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3900. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-1.1(a).

3901. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the North Carolina Plaintiffs and North Carolina State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3902. The North Carolina Plaintiffs and North Carolina State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The North Carolina Plaintiff and North Carolina State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

3903. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the North Carolina Plaintiffs and North Carolina State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the North Carolina Plaintiffs and North Carolina State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3904. The North Carolina Plaintiffs and North Carolina State Class members suffered ascertainable losses and actual damages as a direct and proximate result of

1  the ZF and ST Defendants' misrepresentations, concealment and/or failure to
2  disclose material information.

3  3905. The ZF and ST Defendants' violations present a continuing risk to the
4  North Carolina Plaintiffs and North Carolina State Class members, as well as to the
5  general public, because the Class Vehicles remain unsafe due to the defective
6  ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices
7  complained of herein affect the public interest.

8  3906. Pursuant to N.C. Gen. Stat. § 75-1.1(a), the North Carolina Plaintiffs
9  and North Carolina State Class members seek an order enjoining the ZF and ST
10  Defendants' unfair or deceptive acts or practices and awarding damages and any
11  other just and proper relief available under the North Carolina UDTPA.

12  
13  **d.  North Carolina Count 4: Fraud by Omission and Concealment Against FCA, Honda Japan, Honda USA, and Honda Engineering USA**

14  3907. Plaintiffs reallege and incorporate by reference all preceding
15  allegations as though fully set forth herein.

16  3908. Plaintiff Constanza Gonzalez brings this count individually and on
17  behalf of members of the North Carolina State Class who purchased or leased FCA
18  Class Vehicles, against FCA.

19  3909. Plaintiff Tonya McNeely brings this count individually and on behalf
20  of members of the North Carolina State Class who purchased or leased Honda
21  Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

22  3910. For purposes of this count, Plaintiffs Gonzalez and McNeely shall be
23  referred to as the "North Carolina Plaintiffs."

24  3911. FCA, Honda Japan, Honda USA, and Honda Engineering USA are
25  liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement
26  (Second) of Torts §§ 550-51 (1977).

27  3912. As explained in Section IV.A, the ACU Defect in Class Vehicles poses
28  serious risks to vehicle occupants, including that it can cause: (1) airbags and

- 1188 -

seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3913. FCA, Honda Japan, Honda USA, and Honda Engineering USA had a duty to disclose the ACU Defect to the North Carolina Plaintiffs and North Carolina State Class members because:

   a. FCA, Honda Japan, Honda USA, and Honda Engineering USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

   b. Given the ACU Defect's hidden and technical nature, the North Carolina Plaintiffs and North Carolina State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

   c. FCA, Honda Japan, Honda USA, and Honda Engineering USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the FCA and Honda Class Vehicles containing the ACU Defect would have been a material fact to the North Carolina Plaintiffs' and North Carolina State Class members' decisions to buy or lease FCA and Honda Class Vehicles; and

   d. FCA, Honda Japan, Honda USA, and Honda Engineering USA made incomplete representations about the safety and reliability of the FCA and Honda Class Vehicles and their Occupant

Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, FCA, Honda Japan, Honda USA, and Honda Engineering USA intentionally concealed, suppressed, and failed to disclose to the North Carolina Plaintiffs and North Carolina State Class members that the FCA and Honda Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the FCA and Honda Class Vehicles that they marketed and offered for sale and lease to the North Carolina Plaintiffs and North Carolina State Class members, FCA, Honda Japan, Honda USA, and Honda Engineering USA had the duty to disclose the whole truth.

3914. In breach of their duties, FCA, Honda Japan, Honda USA, and Honda Engineering USA failed to disclose that the FCA and Honda Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3915. FCA, Honda Japan, Honda USA, and Honda Engineering USA intended for the North Carolina Plaintiffs and North Carolina State Class members to rely on their omissions—which they did by purchasing and leasing the FCA and Honda Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3916. That reliance was reasonable, because a reasonable consumer would not have expected that the FCA and Honda Class Vehicles contained a safety defect that poses such a serious risk. FCA, Honda Japan, Honda USA, and Honda Engineering USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in

1  deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether

2  a manufacturer's products are safe and reliable, and whether that manufacturer

3  stands behind its products, are material concerns to a consumer. Especially here

4  when at least nine people have already died due to the ACU Defect, and many more

5  have been injured.

6      3917. Additionally, FCA, Honda Japan, Honda USA, and Honda

7  Engineering USA ensured that the North Carolina Plaintiffs and North Carolina

8  State Class members did not discover this information by actively concealing and

9  misrepresenting the true nature of the FCA and Honda Class Vehicles' Occupant

10  Restraint Systems to consumers and NHTSA.

11      3918. FCA, Honda Japan, Honda USA, and Honda Engineering USA

12  actively concealed and suppressed these material facts, in whole or in part, to

13  maintain a market for their Class Vehicles, to protect profits, and to avoid costly

14  recalls that would expose them to liability for those expenses and harm the

15  commercial reputations of Defendants and their products. They did so at the

16  expense of the North Carolina Plaintiffs and North Carolina State Class members.

17      3919. To this day, FCA, Honda Japan, Honda USA, and Honda Engineering

18  USA have not fully and adequately disclosed the ACU Defect, and they continue to

19  conceal material information about the defect from consumers and NHTSA. The

20  omitted and concealed facts were material because a reasonable person would find

21  them important in purchasing, leasing, or retaining a new or used motor vehicle,

22  and because they directly impact the value of the FCA and Honda Class Vehicles

23  purchased or leased by the North Carolina Plaintiffs and North Carolina State Class

24  members.

25      3920. Had they been aware of the ACU Defect in the FCA and Honda Class

26  Vehicles, and FCA's, Honda Japan's, Honda USA's, and Honda Engineering

27  USA's callous disregard for safety, the North Carolina Plaintiffs and North

28

1  Carolina State Class members either would not have paid as much as they did for

2  their Class Vehicles, or they would not have purchased or leased them.

3       3921. As alleged in Section V above, if FCA, Honda Japan, Honda USA, and

4  Honda Engineering USA had fully and adequately disclosed the ACU Defect to

5  consumers and NHTSA, the North Carolina Plaintiffs and North Carolina State

6  Class members would have seen such a disclosure.

7       3922. Accordingly, FCA, Honda Japan, Honda USA, and Honda

8  Engineering USA are liable to the North Carolina Plaintiffs and North Carolina

9  State Class members for their damages in an amount to be proven at trial, including,

10  but not limited to, their lost overpayment for the FCA and Honda Class Vehicles at

11  the time of purchase or lease.

12       3923. FCA's, Honda Japan's, Honda USA's, and Honda Engineering USA's

13  acts were done maliciously, oppressively, deliberately, with intent to defraud; in

14  reckless disregard of the North Carolina Plaintiffs' and North Carolina State Class

15  members' rights and well-being; and to enrich themselves. FCA's, Honda Japan's,

16  Honda USA's, and Honda Engineering USA's misconduct warrants an assessment

17  of punitive damages, as permitted by law, in an amount sufficient to deter such

18  conduct in the future, which amount shall be determined according to proof at trial.

19         **e.**    **North Carolina Count 5: Fraud by Omission and**

20               **Concealment Against ZF Electronics USA, ZF Passive**
             **Safety USA, ZF Automotive USA, ZF TRW Corp., ZF**

21               **Germany, ST Italy, ST USA, and ST Malaysia**

22       3924. Plaintiffs reallege and incorporate by reference all preceding

23  allegations as though fully set forth herein.

24       3925. The North Carolina Plaintiffs bring this count individually and on

25  behalf of members of the North Carolina State Class who purchased or leased Class

26  Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive

27  USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and

28  ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3926. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

3927. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

3928. The ZF and ST Defendants had a duty to disclose the ACU Defect to the North Carolina Plaintiffs and North Carolina State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the North Carolina Plaintiffs and North Carolina State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the North Carolina Plaintiffs' and North Carolina State Class members' decisions to buy or lease Class Vehicles; and

d.   The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3929. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

3930. The ZF and ST Defendants intended for the North Carolina Plaintiffs and North Carolina State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

3931. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

3932. Additionally, the ZF and ST Defendants ensured that the North Carolina Plaintiffs and North Carolina State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3933. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the North Carolina Plaintiffs and North Carolina State Class members.

3934. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the North Carolina Plaintiffs and North Carolina State Class members.

3935. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the North Carolina Plaintiffs and North Carolina State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

3936. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the North Carolina Plaintiffs and North Carolina State Class members would have seen such a disclosure.

3937. Accordingly, the ZF and ST Defendants are liable to the North Carolina Plaintiffs and North Carolina State Class members for their damages in an

amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

3938. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the North Carolina Plaintiffs' and North Carolina State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f. North Carolina Count 6: Unjust Enrichment Against Honda Japan, Honda Engineering USA, and Honda USA

3939. Plaintiffs reallege and incorporate by reference all allegations in Sections I- VI above as though fully set forth herein.

3940. Plaintiff Tonya McNeely (for purposes of this count, the "North Carolina Plaintiff"), brings this count individually and on behalf of members of the North Carolina State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda Engineering USA, and Honda USA.

3941. The North Carolina Plaintiff and North Carolina State Class members conferred tangible and material monetary benefits upon Honda Japan, Honda Engineering USA, and Honda USA when they purchased or leased the Honda Class Vehicles. Honda Japan, Honda Engineering USA, and Honda USA readily accepted and retained these benefits.

3942. The North Carolina Plaintiff and North Carolina State Class members would not have purchased or leased the Honda Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Honda Japan, Honda Engineering USA, and Honda USA profited from the sale and lease of the Honda Class Vehicles to the detriment and expense of the North Carolina Plaintiff and North Carolina State Class members.

3943. Honda Japan, Honda Engineering USA, and Honda USA appreciated these monetary benefits. These benefits were the expected result of Honda Japan, Honda Engineering USA, and Honda USA acting in their pecuniary interest at the expense of their customers. Honda Japan, Honda Engineering USA, and Honda USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the North Carolina Plaintiff and North Carolina State Class members regarding the nature and quality of the Honda Class Vehicles while profiting from this deception.

3944. It would be unjust, inequitable, and unconscionable for Honda Japan, Honda Engineering USA, and Honda USA to retain these monetary benefits, including because they were procured as a result of Honda Japan's, Honda Engineering USA's, and Honda USA's wrongful conduct alleged above.

3945. The North Carolina Plaintiff and North Carolina State Class members are entitled to restitution of the benefits Honda Japan, Honda Engineering USA, and Honda USA unjustly retained and/or any amounts necessary to return the North Carolina Plaintiff and North Carolina State Class members to the position they occupied prior to dealing with Honda Japan, Honda Engineering USA, and Honda USA, with such amounts to be determined at trial.

3946. The North Carolina Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the North Carolina Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the North Carolina Plaintiff would have no adequate legal remedy.

### 18. Oklahoma

#### a. Oklahoma Count 1: Breach of Express Warranty (Okla. Stat. Ann. tit. 12A, §§ 2-313 and 2A-210) Against FCA

3947. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3948. Plaintiff James Dean (hereinafter, "Oklahoma Plaintiff") brings this count individually and on behalf of members of the Oklahoma State Class who purchased or leased FCA Class Vehicles, against FCA.

3949. FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Okla. Stat. Ann. tit. 12A, §§ 2-104(1) and 2-A-103(3), and a "seller" of motor vehicles under § 2-103(1)(c).

3950. With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Okla. Stat. Ann. tit. 12A, § 2A-103(1)(p).

3951. All Oklahoma State Class members who purchased FCA Class Vehicles in Oklahoma are "buyers" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

3952. All Oklahoma State Class members who leased FCA Class Vehicles in Oklahoma are "lessees" within the meaning of Okla. Stat. Ann. tit. 12A, § 2A-103(1)(n).

3953. The FCA Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, §§ 2-105(1) and 2A-103(1)(h).

3954. In connection with the purchase or lease of FCA Class Vehicles, FCA provided the Oklahoma Plaintiff and Oklahoma State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the FCA Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

3955. However, FCA knew or should have known that the warranties were false and/or misleading. Specifically, FCA was aware of the ACU Defect in the FCA Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Oklahoma Plaintiff and Oklahoma State Class members.

3956. The Oklahoma Plaintiff and Oklahoma State Class members were aware the Honda Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and FCA when the Oklahoma Plaintiff and Oklahoma State Class members unknowingly purchased and leased FCA Class Vehicles that came equipped with defective ACUs and ASICs.

3957. FCA misrepresented the FCA Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Oklahoma Plaintiff and Oklahoma State Class members were exposed to those misrepresentations, and the Oklahoma Plaintiff and Oklahoma State Class members had no way of discerning that FCA's representations were false and misleading or otherwise learning the material facts that FCA had concealed or failed to disclose. Accordingly, the Oklahoma Plaintiff and Oklahoma State Class members reasonably relied on the FCA's express warranties when purchasing or leasing their FCA Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3958. FCA knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the FCA Class Vehicles. FCA also breached its express warranties by selling and leasing FCA Class Vehicles with a defect that was never disclosed to the Oklahoma Plaintiff and Oklahoma State Class members.

3959. The Oklahoma Plaintiff and Oklahoma State Class members have provided FCA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by Oklahoma State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on

April 24, 2020, a notice letter was sent on behalf of the Oklahoma Plaintiff and Oklahoma State Class members to FCA.

3960. Alternatively, the Oklahoma Plaintiff and Oklahoma State Class members were excused from providing FCA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, FCA has long known that the FCA Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, FCA has not instituted a recall or any other repair program with respect to the unrecalled FCA Class Vehicles, or even acknowledged that the ACU Defect exists in all FCA Class Vehicles, including the recalled FCA Class Vehicles—even though FCA Class Vehicles are subject to the NHTSA investigation. Therefore, the Oklahoma Plaintiff and Oklahoma State Class members had no reason to believe that FCA would have repaired the ACU Defect if the Oklahoma Plaintiff and Oklahoma State Class members presented their Class Vehicles to it for repair.

3961. As a direct and proximate result of FCA's breach of their express warranties, the FCA Class Vehicles were and are defective and the ACU Defect in the Oklahoma Plaintiff's and Oklahoma State Class members' FCA Class Vehicles was not remedied. Therefore, the Oklahoma Plaintiff and Oklahoma State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for FCA Class Vehicles with an undisclosed safety defect that would not be remedied.

    **b.**    **Oklahoma Count 2: Breach of Implied Warranty of Merchantability (Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212) Against FCA**

3962. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3963. The Oklahoma Plaintiff brings this count individually and on behalf of members of the Oklahoma State Class who purchased or leased FCA Class Vehicles, against FCA.

3964. A warranty that the FCA Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212.

3965. FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Okla. Stat. Ann. tit. 12A, §§ 2-104(1) and 2-A-103(3), and a "seller" of motor vehicles under § 2-103(1)(c).

3966. With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Okla. Stat. Ann. tit. 12A, § 2A-103(1)(p).

3967. All Oklahoma State Class members who purchased FCA Class Vehicles in Oklahoma are "buyers" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

3968. All Oklahoma State Class members who leased FCA Class Vehicles in Oklahoma are "lessees" within the meaning of Okla. Stat. Ann. tit. 12A, § 2A-103(1)(n).

3969. The FCA Class Vehicles were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, §§ 2-105(1) and 2A-103(1)(h).

3970. The FCA Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the FCA Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage

battery after a crash, or the airbags to inadvertently deploy, all of which render the FCA Class Vehicles inherently defective and dangerous.

3971. The Oklahoma Plaintiff and Oklahoma State Class members have provided FCA with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by Oklahoma State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Oklahoma Plaintiff and Oklahoma State Class members to FCA.

3972. Alternatively, the Oklahoma Plaintiff and Oklahoma State Class members were excused from providing FCA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, FCA has long known that the FCA Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, FCA has not instituted a recall or any other repair program with respect to the unrecalled FCA Class Vehicles, or even acknowledged that the ACU Defect exists in all FCA Class Vehicles, including the recalled FCA Class Vehicles—even though FCA Class Vehicles are subject to the NHTSA investigation. Therefore, the Oklahoma Plaintiff and Oklahoma State Class members had no reason to believe that FCA would have repaired the ACU Defect if the Oklahoma Plaintiff and Oklahoma State Class members presented their Class Vehicles to it for repair.

3973. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, the Oklahoma Plaintiff and Oklahoma State Class members have been damaged through their overpayment at the time of purchase or lease for FCA Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

c.  **Oklahoma Count 3: Violation of the Oklahoma Consumer Protection Act (Okla. Stat. Ann. tit. 15, § 751, *et seq.*) Against FCA[17]**

3974. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3975. The Oklahoma Plaintiff brings this count individually and on behalf of members of the Oklahoma State Class who purchased or leased FCA Class Vehicles, against FCA.

3976. FCA, the Oklahoma Plaintiff, and the Oklahoma State Class members are "persons" within the meaning of Okla. Stat. tit. 15, § 752(1).

3977. FCA is and was engaged in "consumer transactions" within the meaning of Okla. Stat. tit. 15, § 752(2).

3978. The FCA Class Vehicles and ACUs installed in them are "merchandise" within the meaning of Okla. Stat. tit. 15, § 752(7).

3979. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits deceptive and unfair trade practices.

3980. In the course of its business, FCA, through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

3981. FCA had an ongoing duty to the Oklahoma Plaintiff and Oklahoma State Class members to refrain from unfair or deceptive practices under the Oklahoma CPA in the course of its business. Specifically, FCA owed the Oklahoma Plaintiff and Oklahoma State Class members a duty to disclose all the material facts concerning the ACU Defect in the FCA Class Vehicles because it possessed exclusive knowledge, it intentionally concealed the ACU Defect from the

---

[17] The Court held in its February 9, 2022 Order that the Oklahoma Plaintiff had sufficiently plead an Oklahoma Consumer Protection Act claim against FCA. *See* ECF No. 396 at 113.

Oklahoma Plaintiff and Oklahoma State Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3982. By misrepresenting the FCA Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, FCA engaged in one or more of the following unfair or deceptive business practices prohibited by Okla. Stat. tit. 15, § 753:

      a.    Representing that the FCA Class Vehicles and/or the defective ACUs installed in them are approved and certified as safe and reliable;

      b.    Representing that the FCA Class Vehicles and/or the defective ACUs installed in them are of a particular standard, quality, and grade when they are not;

      c.    Advertising the FCA Class Vehicles and/or the defective ACUs installed in them as safe and free from defects, with the intent not to sell or lease them as advertised; and

      d.    Engaging in the immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers described above, which offends established public policy.

Okla. Stat. tit. 15, §§ 753(5), (7), (8), and (20).

3983. FCA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the FCA Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of

- 1204 -

activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Oklahoma Plaintiff and Oklahoma State Class members, about the true safety and reliability of FCA Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the FCA Class Vehicles, and the true value of the FCA Class Vehicles.

3984. FCA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the FCA Class Vehicles were material to the decisions of the Oklahoma Plaintiff and Oklahoma State Class members to purchase and lease those vehicles, as FCA intended. The Oklahoma Plaintiff and Oklahoma State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on FCA's misrepresentations that the FCA Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease FCA Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

3985. The Oklahoma Plaintiff's and Oklahoma State Class members' reliance was reasonable, as they had no way of discerning that FCA's representations were false and misleading, or otherwise learning the facts that FCA had concealed or failed to disclose. The Oklahoma Plaintiff and Oklahoma State Class members did not, and could not, unravel FCA's deception on their own.

3986. Had the Oklahoma Plaintiff and Oklahoma State Class members known the truth about the ACU Defect, the Oklahoma Plaintiff and Oklahoma State Class members would not have purchased or leased FCA Class Vehicles, or would have paid significantly less for them.

3987. The Oklahoma Plaintiff and Oklahoma State Class members suffered ascertainable losses and actual damages through their overpayment at the time of

purchase and lease for FCA Class Vehicles with an undisclosed safety defect as a direct and proximate result of FCA's concealment, misrepresentations, and/or failure to disclose material information.

3988. FCA's violations present a continuing risk to the Oklahoma Plaintiff and Oklahoma State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, FCA's unlawful acts and practices complained of herein affect the public interest.

3989. Pursuant to Okla. Stat. tit. 15, § 761.1, the Oklahoma Plaintiff and Oklahoma State Class members seek an order enjoining the FCA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oklahoma CPA.

        **d.**        **Oklahoma Count 4: Violation of the Oklahoma Consumer Protection Act (Okla. Stat. Ann. tit. 15, § 751, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia.**

3990. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3991. The Oklahoma Plaintiff brings this count individually and on behalf of members of the Oklahoma State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3992. The ZF Defendants, the ST Defendants, the Oklahoma Plaintiff, and Oklahoma State Class members are "persons" within the meaning of Okla. Stat. tit. 15, § 752(1).

3993. The ZF and ST Defendants were and are engaged in "consumer transactions" within the meaning of Okla. Stat. tit. 15, § 752(2).

3994. The Class Vehicles and ACUs installed in them are "merchandise" within the meaning of Okla. Stat. tit. 15, § 752(7).

3995. The Oklahoma CPA prohibits deceptive and unfair trade practices.

3996. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

3997. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

3998. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in deceptive acts or practices prohibited by Okla. Stat. tit. 15, § 753.

3999. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of

activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Oklahoma Plaintiff and Oklahoma State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4000. The Oklahoma Plaintiff and Oklahoma State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Oklahoma Plaintiff and Oklahoma State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

4001. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Oklahoma Plaintiff and Oklahoma State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Oklahoma Plaintiff and Oklahoma State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4002. The Oklahoma Plaintiff and Oklahoma State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

4003. The ZF and ST Defendants' violations present a continuing risk to the Oklahoma Plaintiff and Oklahoma State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

4004. Pursuant to Okla. Stat. tit. 15, § 761.1, the Oklahoma Plaintiff and Oklahoma State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oklahoma CPA.

### e. Oklahoma Count 5: Fraud by Omission and Concealment Against FCA

4005. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4006. The Oklahoma Plaintiff brings this count individually and on behalf of members of the Oklahoma State Class who purchased or leased FCA Class Vehicles, against FCA.

4007. FCA is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4008. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4009. FCA had a duty to disclose the ACU Defect to the Oklahoma Plaintiff and Oklahoma State Class members because:

    a.    FCA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Oklahoma Plaintiff and Oklahoma State Class members lack the

sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    FCA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the FCA Class Vehicles containing the ACU Defect would have been a material fact to the Oklahoma Plaintiff's and Oklahoma State Class members' decisions to buy or lease FCA Class Vehicles; and

d.    FCA made incomplete representations about the safety and reliability of the FCA Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, FCA intentionally concealed, suppressed, and failed to disclose to the Oklahoma Plaintiff and Oklahoma State Class members that the FCA Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the FCA Class Vehicles that they marketed and offered for sale and lease to the Oklahoma Plaintiff and Oklahoma State Class members, FCA had the duty to disclose the whole truth.

4010. In breach of its duties, FCA failed to disclose that the FCA Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4011. FCA intended for the Oklahoma Plaintiff and Oklahoma State Class members to rely on its omissions—which they did by purchasing and leasing the

FCA Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4012. That reliance was reasonable, because a reasonable consumer would not have expected that the FCA Class Vehicles contained a safety defect that poses such a serious risk. FCA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4013. Additionally, FCA ensured that the Oklahoma Plaintiff and Oklahoma State Class members did not discover this information by actively concealing and misrepresenting the true nature of the FCA Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4014. FCA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for its Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. It did so at the expense of the Oklahoma Plaintiff and Oklahoma State Class members.

4015. To this day, FCA has not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the FCA Class Vehicles purchased or leased by the Oklahoma Plaintiff and Oklahoma State Class members.

4016. Had they been aware of the ACU Defect in the FCA Class Vehicles, and FCA's callous disregard for safety, the Oklahoma Plaintiff and Oklahoma State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4017. As alleged in Section V above, FCA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Oklahoma Plaintiff and Oklahoma State Class members would have seen such a disclosure.

4018. Accordingly, FCA is liable to the Oklahoma Plaintiff and Oklahoma State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the FCA Class Vehicles at the time of purchase or lease.

4019. FCA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Oklahoma Plaintiff's and Oklahoma State Class members' rights and well-being; and to enrich themselves. FCA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

      **f.**     **Oklahoma Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

4020. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4021. The Oklahoma Plaintiff brings this count individually and on behalf of members of the Oklahoma State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4022. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4023. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4024. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Oklahoma Plaintiff and Oklahoma State Class members because:

    a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Oklahoma Plaintiff and Oklahoma State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Oklahoma Plaintiff's and Oklahoma State Class members' decisions to buy or lease Class Vehicles; and

d.  The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4025. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4026. The ZF and ST Defendants intended for the Oklahoma Plaintiff and Oklahoma State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4027. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

- 1214 -

4028. Additionally, the ZF and ST Defendants ensured that the Oklahoma Plaintiff and Oklahoma State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4029. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Oklahoma Plaintiff and Oklahoma State Class members.

4030. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Oklahoma Plaintiff and Oklahoma State Class members.

4031. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Oklahoma Plaintiff and Oklahoma State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4032. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Oklahoma Plaintiff and Oklahoma State Class members would have seen such a disclosure.

4033. Accordingly, the ZF and ST Defendants are liable to the Oklahoma Plaintiff and Oklahoma State Class members for their damages in an amount to be

proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

4034. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Oklahoma Plaintiff's and Oklahoma State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### g.  Oklahoma Count 7: Unjust Enrichment Against FCA

4035. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

4036. The Oklahoma Plaintiff brings this count individually and on behalf of members of the Oklahoma State Class who purchased or leased FCA Class Vehicles, against FCA.

4037. The Oklahoma Plaintiff and Oklahoma State Class members conferred tangible and material monetary benefits upon FCA when they purchased or leased the FCA Class Vehicles. FCA readily accepted and retained these benefits.

4038. The Oklahoma Plaintiff and Oklahoma State Class members would not have purchased or leased the FCA Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA profited from the sale and lease of the FCA Class Vehicles to the detriment and expense of the Oklahoma Plaintiff and Oklahoma State Class members.

4039. FCA appreciated these monetary benefits. These benefits were the expected result of FCA acting in its pecuniary interest at the expense of its customers. FCA knew of these benefits because it was aware of the ACU Defect, yet it failed to disclose this knowledge and misled the Oklahoma Plaintiff and

Oklahoma State Class members regarding the nature and quality of the FCA Class Vehicles while profiting from this deception.

4040. It would be unjust, inequitable, and unconscionable for FCA to retain these monetary benefits, including because they were procured as a result of FCA's wrongful conduct alleged above.

4041. The Oklahoma Plaintiff and Oklahoma State Class members are entitled to restitution of the benefits FCA unjustly retained and/or any amounts necessary to return the Oklahoma Plaintiff and Oklahoma State Class members to the position they occupied prior to dealing with FCA, with such amounts to be determined at trial.

4042. The Oklahoma Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Oklahoma Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the Oklahoma Plaintiff would have no adequate legal remedy.

### 19. Pennsylvania

#### a. Pennsylvania Count 1: Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313 and 2A210) Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA

4043. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4044. Plaintiff Larae Angel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Hyundai Class Vehicles, against the Hyundai Korea and Hyundai USA.

4045. Plaintiff Richard Kintzel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

4046. For purposes of this count, Plaintiffs Angel and Kintzel shall be referred to as the "Pennsylvania Plaintiffs."

4047. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and "sellers" of motor vehicles under § 2103(a).

4048. With respect to leases, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

4049. All Pennsylvania State Class members who purchased Hyundai and Kia Class Vehicles in Pennsylvania are "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

4050. All Pennsylvania State Class members who leased Hyundai and Kia Class Vehicles in Pennsylvania are "lessees" within the meaning of 13 Pa. Cons. Stat. § 2A103(a).

4051. The Hyundai and Kia Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

4052. In connection with the purchase or lease of Hyundai and Kia Class Vehicles, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA provided the Pennsylvania Plaintiffs and Pennsylvania State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Hyundai and Kia Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash.

4053. However, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knew or should have known that the warranties were false and/or misleading. Specifically, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA were aware of the ACU Defect in the Hyundai and Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Pennsylvania Plaintiffs and Pennsylvania State Class members.

4054. The Pennsylvania Plaintiffs and Pennsylvania State Class members were aware the Hyundai and Kia Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA when the Pennsylvania Plaintiffs and Pennsylvania State Class members unknowingly purchased and leased Hyundai and Kia Class Vehicles that came equipped with defective ACUs and ASICs.

4055. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA misrepresented the Hyundai and Kia Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Pennsylvania Plaintiffs and Pennsylvania State Class members were exposed to those misrepresentations, and the Pennsylvania Plaintiffs and Pennsylvania State Class members had no way of discerning that Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's representations were false and misleading or otherwise learning the material facts that Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had concealed or failed to disclose. Accordingly, the Pennsylvania Plaintiffs and Pennsylvania State Class members reasonably relied on Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's express warranties when purchasing or leasing their Hyundai and Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4056. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Hyundai and Kia Class Vehicles. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA also breached their express warranties by selling and leasing Hyundai and Kia Class Vehicles with a defect that was never disclosed to the Pennsylvania Plaintiffs and Pennsylvania State Class members.

4057. The Pennsylvania Plaintiffs and Pennsylvania State Class members have provided Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA with reasonable notice and opportunity to cure the breaches of their express warranties by way of the numerous NHTSA complaints filed against them, and individual notice letters sent by the Pennsylvania State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Pennsylvania Plaintiffs and Pennsylvania State Class members to Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA.

4058. Alternatively, the Pennsylvania Plaintiffs and Pennsylvania State Class members were excused from providing Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Hyundai Korea and Hyundai USA have long known that the Hyundai Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Hyundai Korea and Hyundai USA have not instituted a recall or any other repair program with respect to the unrecalled Hyundai Class Vehicles, or even acknowledged that the ACU Defect exists in all Hyundai Class Vehicles, including the recalled Hyundai Class Vehicles—even though all of the Hyundai Class Vehicles are subject to the NHTSA investigation. Similarly, to date, Kia Korea and Kia USA have not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all Kia Class Vehicles, including the recalled Kia Class Vehicles—even though all of the Kia Class Vehicles are subject to the NHTSA investigation. Therefore, the Pennsylvania Plaintiffs and Pennsylvania State Class members had no reason to believe that Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA would have repaired the ACU Defect if

the Pennsylvania Plaintiffs and Pennsylvania State Class members presented their

Class Vehicles to them for repair.

4059. As a direct and proximate result of Hyundai Korea's, Hyundai USA's,

Kia Korea's, and Kia USA's breach of their express warranties, the Hyundai and

Kia Class Vehicles were and are defective and the ACU Defect in the Pennsylvania

Plaintiffs' and Pennsylvania State Class members' Hyundai and Kia Class Vehicles

was not remedied. Therefore, the Pennsylvania Plaintiffs and Pennsylvania State

Class members have been damaged, in an amount to be proven at trial, through

their overpayment at the time of purchase or lease for Hyundai and Kia Class

Vehicles with an undisclosed safety defect that would not be remedied.

  **b.**   **Pennsylvania Count 2: Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212) Against Hyundai USA and Kia USA**

4060. Plaintiffs reallege and incorporate by reference all preceding

allegations as though fully set forth herein.

4061. Plaintiff Larae Angel brings this count individually and on behalf of

members of the Pennsylvania State Class who purchased or leased Hyundai Class

Vehicles, against Hyundai USA.

4062. Plaintiff Richard Kintzel brings this count individually and on behalf

of members of the Pennsylvania State Class who purchased or leased Kia Class

Vehicles, against Kia USA.

4063. For purposes of this count, Plaintiffs Angel and Kintzel shall be

referred to as the "Pennsylvania Plaintiffs."

4064. A warranty that the Hyundai and Kia Class Vehicles were in

merchantable condition and fit for the ordinary purpose for which such goods are

used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

4065. Hyundai USA and Kia USA are and were at all relevant times

"merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and

2A103(c), and "sellers" of motor vehicles under § 2103(a).

4066. With respect to leases, Hyundai USA and Kia USA are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

4067. All Pennsylvania State Class members who purchased Class Vehicles in Pennsylvania are "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

4068. All Pennsylvania State Class members who leased Class Vehicles in Pennsylvania are "lessees" within the meaning of 13 Pa. Cons. Stat. § 2A103(a).

4069. The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

4070. The Hyundai and Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Hyundai and Kia Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Hyundai and Kia Class Vehicles inherently defective and dangerous.

4071. The Pennsylvania Plaintiffs and Pennsylvania State Class members have provided Hyundai USA and Kia USA with reasonable notice and opportunity to cure the breaches of its implied warranty by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by Pennsylvania State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Pennsylvania Plaintiffs and Pennsylvania State Class members to Hyundai USA and Kia USA.

4072. Alternatively, the Pennsylvania Plaintiffs and Pennsylvania State Class members were excused from providing Hyundai USA and Kia USA with notice and

an opportunity to cure the breach, because it would have been futile. As alleged above, Hyundai USA has long known that the Hyundai Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Hyundai USA has not instituted a recall or any other repair program with respect to the unrecalled Hyundai Class Vehicles, or even acknowledged that the ACU Defect exists in all Hyundai Class Vehicles, including the recalled Hyundai Class Vehicles—even though all of the Hyundai Class Vehicles are subject to the NHTSA investigation. Similarly, to date, Kia USA has not instituted a recall or any other repair program with respect to the unrecalled Kia Class Vehicles, or even acknowledged that the ACU Defect exists in all Kia Class Vehicles, including the recalled Kia Class Vehicles—even though all of the Kia Class Vehicles are subject to the NHTSA investigation. Therefore, the Pennsylvania Plaintiffs and Pennsylvania State Class members had no reason to believe that Hyundai USA and Kia USA would have repaired the ACU Defect if the Pennsylvania Plaintiffs and Pennsylvania State Class members presented their Class Vehicles to them for repair.

4073. As a direct and proximate result of Hyundai USA's and Kia USA's breach of the implied warranty of merchantability, the Pennsylvania Plaintiff and Pennsylvania State Class members have been damaged through their overpayment at the time of purchase or lease for Hyundai and Kia Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

        **c.**    **Pennsylvania Count 3: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, *et seq.*) Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA[18]**

4074. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[18] The Court held in its February 9, 2022 Order that the Pennsylvania Plaintiffs stated a claim under the Pennsylvania Unfair Trade Practices and Consumer

4075. Plaintiff Larae Angel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

4076. Plaintiff Richard Kintzel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

4077. For purposes of this count, Plaintiffs Angel and Kintzel shall be referred to as the "Pennsylvania Plaintiffs."

4078. Hyundai Korea, Hyundai USA, Kia Korea, Kia USA, the Pennsylvania Plaintiffs, and Pennsylvania State Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

4079. The Pennsylvania Plaintiffs and Pennsylvania State Class Members purchased their Hyundai and Kia Class Vehicles and the ACUs installed in them primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

4080. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

4081. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

4082. In the course of their business, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA, through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Hyundai and Kia Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

---

Protection Law against Hyundai USA and Kia USA. *See* ECF No. 396 at 114-15.

4083. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had an ongoing duty to the Pennsylvania Plaintiffs and Pennsylvania State Class members to refrain from unfair or deceptive practices under the Pennsylvania CPL in the course of their business. Specifically, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA owed the Pennsylvania Plaintiffs and Pennsylvania State Class members a duty to disclose all the material facts concerning the ACU Defect in the Hyundai and Kia Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Pennsylvania Plaintiffs and Pennsylvania State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

4084. By misrepresenting the Hyundai and Kia Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat. § 201-2(3):

      a.    Representing that the Hyundai and Kia Class Vehicles and/or the defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have.

      b.    Representing that the Hyundai and Kia Class Vehicles and/or the defective ACUs installed in them are of a particular standard, quality, and grade when they are not.

      c.    Advertising the Hyundai and Kia Class Vehicles and/or the defective ACUs installed in them with the intent not to sell or lease them as advertised.

      d.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Cons. Stat. § 201-2(4)(v), (vii), (ix) and (xxi).

4085. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Hyundai and Kia Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Pennsylvania Plaintiffs and Pennsylvania State Class members, about the true safety and reliability of Hyundai and Kia Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Hyundai and Kia Class Vehicles, and the true value of the Hyundai and Kia Class Vehicles.

4086. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Hyundai and Kia Class Vehicles were material to the decisions of the Pennsylvania Plaintiffs and Pennsylvania State Class members to purchase and lease those vehicles, as Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA intended. The Pennsylvania Plaintiffs and Pennsylvania State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's misrepresentations that the Hyundai-Kia Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Hyundai and Kia Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4087. The Pennsylvania Plaintiffs' and Pennsylvania State Class members' reliance was reasonable, as they had no way of discerning that Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's representations were false and misleading, or otherwise learning the facts that Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had concealed or failed to disclose. The Pennsylvania Plaintiffs and Pennsylvania State Class members did not, and could not, unravel Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's deception on their own.

4088. Had the Pennsylvania Plaintiffs and Pennsylvania State Class members known the truth about the ACU Defect, the Pennsylvania Plaintiffs and Pennsylvania State Class members would not have purchased or leased Hyundai and Kia Class Vehicles, or would have paid significantly less for them.

4089. The Pennsylvania Plaintiffs and Pennsylvania State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Hyundai and Kia Class Vehicles with an undisclosed safety defect as a direct and proximate result of Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's concealment, misrepresentations, and/or failure to disclose material information.

4090. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's violations present a continuing risk to the Pennsylvania Plaintiffs and Pennsylvania State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

4091. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), the Pennsylvania Plaintiffs and Pennsylvania State Class members seek an order enjoining the Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Pennsylvania CPL.

### d. Pennsylvania Count 4: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia

4092. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4093. Plaintiffs Larae Angel and Richard Kintzel bring this count individually and on behalf of members of the Pennsylvania State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4094. For purposes of this count, Plaintiffs Angel and Kintzel shall be referred to as the "Pennsylvania Plaintiffs."

4095. The ZF Defendants, the ST Defendants, the Pennsylvania Plaintiffs, and Pennsylvania State Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

4096. The Pennsylvania Plaintiffs and Pennsylvania State Class Members purchased their Class Vehicles and the ACUs installed in them primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

4097. The ZF and ST Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

4098. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

4099. The ZF and ST Defendants had an ongoing duty to the Pennsylvania Plaintiffs and Pennsylvania State Class members to refrain from unfair or deceptive practices under the Pennsylvania CPL in the course of their business. Specifically, the ZF and ST Defendants owed the Pennsylvania Plaintiffs and Pennsylvania State

Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the Pennsylvania Plaintiffs and Pennsylvania State Class members.

4100. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

4101. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4102. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in deceptive acts or practices prohibited by 73 Pa. Cons. Stat. § 201-3.

4103. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint

System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Pennsylvania Plaintiffs and Pennsylvania State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4104. The Pennsylvania Plaintiffs and Pennsylvania State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Pennsylvania Plaintiffs and Pennsylvania State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

4105. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Pennsylvania Plaintiffs and Pennsylvania State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Pennsylvania Plaintiffs and Pennsylvania State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4106. The Pennsylvania Plaintiffs and Pennsylvania State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

4107. The ZF and ST Defendants' violations present a continuing risk to the Pennsylvania Plaintiffs and Pennsylvania State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective

ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

4108. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), the Pennsylvania Plaintiffs and Pennsylvania State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Pennsylvania CPL.

**e.      Pennsylvania Count 5: Fraud by Omission and Concealment Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA**

4109. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4110. Plaintiff Larae Angel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

4111. Plaintiff Richard Kintzel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

4112. For purposes of this count, Plaintiffs Angel and Kintzel shall be referred to as the "Pennsylvania Plaintiffs."

4113. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4114. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as

unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4115. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had a duty to disclose the ACU Defect to the Pennsylvania Plaintiffs and Pennsylvania State Class members because:

    a.    Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

    b.    Given the ACU Defect's hidden and technical nature, the Pennsylvania Plaintiffs and Pennsylvania State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

    c.    Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Hyundai and Kia Class Vehicles containing the ACU Defect would have been a material fact to the Pennsylvania Plaintiffs' and Pennsylvania State Class members' decisions to buy or lease Hyundai and Kia Class Vehicles; and

    d.    Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA made incomplete representations about the safety and reliability of the Hyundai and Kia Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA intentionally concealed, suppressed, and failed to disclose to the Pennsylvania Plaintiffs

and Pennsylvania State Class members that the Hyundai and Kia Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Hyundai and Kia Class Vehicles that they marketed and offered for sale and lease to the Pennsylvania Plaintiffs and Pennsylvania State Class members, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had the duty to disclose the whole truth.

4116. In breach of their duties, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA failed to disclose that the Hyundai and Kia Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4117. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA intended for the Pennsylvania Plaintiffs and Pennsylvania State Class members to rely on their omissions—which they did by purchasing and leasing the Hyundai and Kia Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4118. That reliance was reasonable, because a reasonable consumer would not have expected that the Hyundai and Kia Class Vehicles contained a safety defect that poses such a serious risk. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4119. Additionally, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA ensured that the Pennsylvania Plaintiffs and Pennsylvania State Class members did

not discover this information by actively concealing and misrepresenting the true nature of the Hyundai and Kia Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4120. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Pennsylvania Plaintiffs and Pennsylvania State Class members.

4121. To this day, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Hyundai and Kia Class Vehicles purchased or leased by the Pennsylvania Plaintiffs and Pennsylvania State Class members.

4122. Had they been aware of the ACU Defect in the Hyundai and Kia Class Vehicles, and Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's callous disregard for safety, the Pennsylvania Plaintiffs and Pennsylvania State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4123. As alleged in Section V above, if Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Pennsylvania Plaintiffs and Pennsylvania State Class members would have seen such a disclosure.

4124. Accordingly, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA are liable to the Pennsylvania Plaintiffs and Pennsylvania State Class members for

1   their damages in an amount to be proven at trial, including, but not limited to, their

2   lost overpayment for the Hyundai and Kia Class Vehicles at the time of purchase or

3   lease.

4        4125. Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's acts

5   were done maliciously, oppressively, deliberately, with intent to defraud; in

6   reckless disregard of the Pennsylvania Plaintiffs' and Pennsylvania State Class

7   members' rights and well-being; and to enrich themselves. Hyundai Korea's,

8   Hyundai USA's, Kia Korea's, and Kia USA's misconduct warrants an assessment

9   of punitive damages, as permitted by law, in an amount sufficient to deter such

10  conduct in the future, which amount shall be determined according to proof at trial.

      **f.**    **Pennsylvania Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

14       4126. Plaintiffs reallege and incorporate by reference all preceding

15  allegations as though fully set forth herein.

16       4127. The Pennsylvania Plaintiffs bring this count individually and on behalf

17  of members of the Pennsylvania State Class who purchased or leased Class

18  Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive

19  USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and

20  ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

21       4128. The ZF and ST Defendants are liable for both fraudulent concealment

22  and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

23       4129. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

24  serious risks to vehicle occupants, including that it can cause: (1) airbags and

25  seatbelts not to activate during a crash because crashes can sometimes release

26  electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

27  vehicle has not crashed, which is dangerous because it is shocking and difficult for

28  the driver to operate a vehicle when the airbag deploys without warning; and (3)

failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4130. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Pennsylvania Plaintiffs and Pennsylvania State Class members because:

  a. The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

  b. Given the ACU Defect's hidden and technical nature, the Pennsylvania Plaintiffs and Pennsylvania State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

  c. The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Pennsylvania Plaintiffs' and Pennsylvania State Class members' decisions to buy or lease Class Vehicles; and

  d. The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant

Restraint Systems in the Class Vehicles would function properly in a crash.

4131. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4132. The ZF and ST Defendants intended for the Pennsylvania Plaintiffs and Pennsylvania State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4133. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4134. Additionally, the ZF and ST Defendants ensured that the Pennsylvania Plaintiffs and Pennsylvania State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4135. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their

1   products. They did so at the expense of the Pennsylvania Plaintiffs and

2   Pennsylvania State Class members.

3      4136. To this day, the ZF and ST Defendants have not fully and adequately

4   disclosed the ACU Defect, and they continue to conceal material information about

5   the defect from consumers and NHTSA. The omitted and concealed facts were

6   material because a reasonable person would find them important in purchasing,

7   leasing, or retaining a new or used motor vehicle, and because they directly impact

8   the value of the Class Vehicles purchased or leased by the Pennsylvania Plaintiffs

9   and Pennsylvania State Class members.

10      4137. Had they been aware of the ACU Defect in the Class Vehicles, and the

11   ZF and ST Defendants' callous disregard for safety, the Pennsylvania Plaintiffs and

12   Pennsylvania State Class members either would not have paid as much as they did

13   for their Class Vehicles, or they would not have purchased or leased them.

14      4138. As alleged in Section V above, if the ZF and ST Defendants had fully

15   and adequately disclosed the ACU Defect to consumers and NHTSA, the

16   Pennsylvania Plaintiffs and Pennsylvania State Class members would have seen

17   such a disclosure.

18      4139. Accordingly, the ZF and ST Defendants are liable to the Pennsylvania

19   Plaintiffs and Pennsylvania State Class members for their damages in an amount to

20   be proven at trial, including, but not limited to, their lost overpayment for the Class

21   Vehicles at the time of purchase or lease.

22      4140. The ZF and ST Defendants' acts were done maliciously, oppressively,

23   deliberately, with intent to defraud; in reckless disregard of the Pennsylvania

24   Plaintiffs' and Pennsylvania State Class members' rights and well-being; and to

25   enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment

26   of punitive damages, as permitted by law, in an amount sufficient to deter such

27   conduct in the future, which amount shall be determined according to proof at trial.

28

g.   **Pennsylvania Count 7: Unjust Enrichment Against Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA**

4141. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

4142. Plaintiff Larae Angel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

4143. Plaintiff Richard Kintzel brings this count individually and on behalf of members of the Pennsylvania State Class who purchased or leased Kia Class Vehicles, against Kia Korea and Kia USA.

4144. For purposes of this count, Plaintiffs Angel and Kintzel shall be referred to as the "Pennsylvania Plaintiffs."

4145. The Pennsylvania Plaintiffs and Pennsylvania State Class members conferred tangible and material monetary benefits upon Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA when they purchased or leased the Hyundai and Kia Class Vehicles. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA readily accepted and retained these benefits.

4146. The Pennsylvania Plaintiffs and Pennsylvania State Class members would not have purchased or leased the Hyundai and Kia Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA profited from the sale and lease of the Hyundai and Kia Class Vehicles to the detriment and expense of the Pennsylvania Plaintiffs and Pennsylvania State Class members.

4147. Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA appreciated these monetary benefits. These benefits were the expected result of Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA acting in their pecuniary interest at the expense of their customers. Hyundai Korea, Hyundai USA, Kia Korea, and Kia

USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Pennsylvania Plaintiffs and Pennsylvania State Class members regarding the nature and quality of the Hyundai and Kia Class Vehicles while profiting from this deception.

4148. It would be unjust, inequitable, and unconscionable for Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA to retain these monetary benefits, including because they were procured as a result of Hyundai Korea's, Hyundai USA's, Kia Korea's, and Kia USA's wrongful conduct alleged above.

4149. The Pennsylvania Plaintiffs and Pennsylvania State Class members are entitled to restitution of the benefits Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA unjustly retained and/or any amounts necessary to return the Pennsylvania Plaintiffs and Pennsylvania State Class members to the position they occupied prior to dealing with Hyundai Korea, Hyundai USA, Kia Korea, and Kia USA, with such amounts to be determined at trial.

4150. The Pennsylvania Plaintiffs pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Pennsylvania Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Pennsylvania Plaintiffs would have no adequate legal remedy.

### 20. South Carolina

#### a. South Carolina Count 1: Breach of Express Warranty (S.C. Code Ann. §§ 36-2-313 and 36-2A-210) Toyota Sales USA[19]

4151. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[19] The Court held in its February 9, 2022 Order that the South Carolina Plaintiff stated a claim for breach of express warranty. *See* ECF No. 396 at 160-61.

4152. Plaintiff Michael Hines (hereinafter, "South Carolina Plaintiff") brings this count individually and on behalf of members of the South Carolina State Class who purchased Toyota Class Vehicles, against Toyota Sales USA.

4153. Toyota Sales USA is and was at all relevant times a "merchant" with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), and a "seller" of motor vehicles under § 36-2-103(1)(d).

4154. With respect to leases, Toyota Sales USA is and was at all relevant times a "lessor" of motor vehicles under S.C. Code Ann. § 36-2A-103(1)(p).

4155. All South Carolina State Class members who purchased Toyota Class Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

4156. All South Carolina State Class members who leased Toyota Class Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

4157. The Toyota Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

4158. In connection with the purchase or lease of Toyota Class Vehicles, Toyota Sales USA provided the South Carolina Plaintiff and South Carolina State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Toyota Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

4159. However, Toyota Sales USA knew or should have known that the warranties were false and/or misleading. Specifically, Toyota Sales USA was aware of the ACU Defect in the Toyota Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the South Carolina Plaintiff and South Carolina State Class members.

4160. The South Carolina Plaintiff and South Carolina State Class members were aware the Toyota Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and Toyota Sales USA when the South Carolina Plaintiff and South Carolina State Class members unknowingly purchased and leased Toyota Class Vehicles that came equipped with defective ACUs and ASICs.

4161. Toyota Sales USA misrepresented the Toyota Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the South Carolina Plaintiff and South Carolina State Class members were exposed to those misrepresentations, and the South Carolina Plaintiff and South Carolina State Class members had no way of discerning that Toyota Sales USA's representations were false and misleading or otherwise learning the material facts that Toyota Sales USA had concealed or failed to disclose. Accordingly, the South Carolina Plaintiff and South Carolina State Class members reasonably relied on Toyota Sales USA's express warranties when purchasing or leasing their Toyota Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4162. Toyota Sales USA knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Toyota Class Vehicles. Toyota Sales USA also breached its express warranties by selling and leasing Toyota Class Vehicles with a defect that was never disclosed to the South Carolina Plaintiff and South Carolina State Class members.

4163. The South Carolina Plaintiff and South Carolina State Class members have provided Toyota Sales USA with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by South Carolina State

Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the South Carolina Plaintiff and South Carolina State Class members to Toyota Sales USA.

4164. Alternatively, the South Carolina Plaintiff and South Carolina State Class members were excused from providing Toyota Sales USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Toyota Sales USA has long known that the Toyota Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Toyota Sales USA has not instituted a recall or any other repair program with respect to the unrecalled Toyota Class Vehicles, or even acknowledged that the ACU Defect exists in all Toyota Class Vehicles, including the recalled Toyota Class Vehicles—even though Toyota Class Vehicles are subject to the NHTSA investigation. Therefore, the South Carolina Plaintiff and South Carolina State Class members had no reason to believe that Toyota Sales USA would have repaired the ACU Defect if the South Carolina Plaintiff and South Carolina State Class members presented their Class Vehicles to it for repair.

4165. As a direct and proximate result of Toyota Sales USA's breach of its express warranties, the Toyota Class Vehicles were and are defective and the ACU Defect in the South Carolina Plaintiff's and South Carolina State Class members' Toyota Class Vehicles was not remedied. Therefore, the South Carolina Plaintiff and South Carolina State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Toyota Class Vehicles with an undisclosed safety defect that would not be remedied.

b. **South Carolina Count 2: Breach of Implied Warranty of Merchantability (S.C. Code Ann. §§ 36-2-314 and 36-2A-212) Against Toyota Sales USA[20]**

4166. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4167. The South Carolina Plaintiff brings this count individually and on behalf of members of the South Carolina State Class who purchased Toyota Class Vehicles, against Toyota Sales USA.

4168. A warranty that the Toyota Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.C. Code Ann. §§ 36-2-314 and 36-2A-212.

4169. Toyota Sales USA is and was at all relevant times a "merchant" with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), and a "seller" of motor vehicles under § 36-2-103(1)(d).

4170. With respect to leases, Toyota Sales USA is and was at all relevant times a "lessor" of motor vehicles under S.C. Code Ann. § 36-2A-103(1)(p).

4171. All South Carolina State Class members who purchased Toyota Class Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

4172. All South Carolina State Class members who leased Toyota Class Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

4173. The Toyota Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

4174. The Toyota Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles

---

[20] *Id.*

- 1244 -

were used. Specifically, at the time they were sold and leased, the Toyota Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Toyota Class Vehicles inherently defective and dangerous.

4175. The South Carolina Plaintiff and South Carolina Plaintiff State Class members have provided Toyota Sales USA with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by South Carolina State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the South Carolina Plaintiff and South Carolina State Class members to Toyota Sales USA.

4176. Alternatively, the South Carolina Plaintiff and South Carolina State Class members were excused from providing Toyota Sales USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Toyota Sales USA has long known that the Toyota Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Toyota Sales USA has not instituted a recall or any other repair program with respect to the unrecalled Toyota Class Vehicles, or even acknowledged that the ACU Defect exists in all Toyota Class Vehicles, including the recalled Toyota Class Vehicles—even though Toyota Class Vehicles are subject to the NHTSA investigation. Therefore, the South Carolina Plaintiff and South Carolina State Class members had no reason to believe that Toyota Sales USA would have repaired the ACU Defect if the South Carolina Plaintiff and South Carolina State Class members presented their Class Vehicles to it for repair.

4177. As a direct and proximate result of Toyota Sales USA's breach of the implied warranty of merchantability, the South Carolina Plaintiff and South Carolina Plaintiff State Class members have been damaged through their overpayment at the time of purchase or lease for Toyota Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

    **c.**     **South Carolina Count 3: Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*) Against Toyota USA and Toyota Sales USA**

4178. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4179. The South Carolina Plaintiff brings this count individually and on behalf of members of the South Carolina State Class who purchased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

4180. Toyota USA Toyota Sales USA, the South Carolina Plaintiff, and the South Carolina State Class members are "persons" within the meaning of S.C. Code Ann. § 39-5-10(a).

4181. Toyota USA and Toyota Sales USA were and are engaged in "trade" or "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

4182. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20(a).

4183. In the course of their business, Toyota USA and Toyota Sales USA, through their agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Toyota Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

4184. Toyota USA and Toyota Sales USA had an ongoing duty to the South Carolina Plaintiff and South Carolina State Class members to refrain from unfair or

deceptive practices under the South Carolina UTPA in the course of their business. Specifically, Toyota USA and Toyota Sales USA owed the South Carolina Plaintiff and South Carolina State Class members a duty to disclose all the material facts concerning the ACU Defect in the Toyota Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the South Carolina Plaintiff and South Carolina State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

4185. By misrepresenting the Toyota Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Toyota USA and Toyota Sales USA engaged in unfair or deceptive business practices prohibited by S.C. Code Ann. § 39-5-20(a).

4186. Toyota USA's and Toyota Sales USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Toyota Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the South Carolina Plaintiff and South Carolina State Class members, about the true safety and reliability of Toyota Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Toyota Class Vehicles, and the true value of the Toyota Class Vehicles.

4187. Toyota USA's and Toyota Sales USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Toyota Class Vehicles were material to the decisions of the South Carolina Plaintiff and South Carolina State Class members to purchase and lease those vehicles, as Toyota USA and Toyota Sales USA intended. The South Carolina Plaintiff and South Carolina State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Toyota USA's and Toyota Sales USA's misrepresentations that the Toyota Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Toyota Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4188. The South Carolina Plaintiff's and South Carolina State Class members' reliance was reasonable, as they had no way of discerning that Toyota USA's and Toyota Sales USA's representations were false and misleading, or otherwise learning the facts that Toyota USA and Toyota Sales USA had concealed or failed to disclose. The South Carolina Plaintiff and South Carolina State Class members did not, and could not, unravel Toyota USA's and Toyota Sales USA's deception on their own.

4189. Had the South Carolina Plaintiff and South Carolina State Class members known the truth about the ACU Defect, the South Carolina Plaintiff and South Carolina State Class members would not have purchased or leased Toyota Class Vehicles, or would have paid significantly less for them.

4190. The South Carolina Plaintiff and South Carolina State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Toyota Class Vehicles with an undisclosed safety

1  defect as a direct and proximate result of Toyota USA's and Toyota Sales USA's

2  concealment, misrepresentations, and/or failure to disclose material information.

3      4191. Toyota USA's and Toyota Sales USA's violations present a continuing

4  risk to the South Carolina Plaintiff and South Carolina State Class members, as well

5  as to the general public, because the Class Vehicles remain unsafe due to the

6  defective ACUs and ASICs therein. Additionally, their unlawful acts and practices

7  complained of herein affect the public interest.

8      4192. Pursuant to S.C. Code Ann. § 39-5-140(a), the South Carolina Plaintiff

9  and South Carolina State Class members seek an order enjoining Toyota USA's and

10  Toyota Sales USA's unfair or deceptive acts or practices and awarding damages

11  and any other just and proper relief available under the South Carolina UTPA.

12  
13  
14  
      **d.**    **South Carolina Count 4: Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

15      4193. Plaintiffs reallege and incorporate by reference all preceding

16  allegations as though fully set forth herein.

17      4194. The South Carolina Plaintiff brings this count individually and on

18  behalf of members of the South Carolina State Class against ZF Electronics USA,

19  ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany

20  (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA

21  (collectively, the "ST Defendants").

22      4195. The ZF Defendants, the ST Defendants, the South Carolina Plaintiff,

23  and South Carolina State Class members are "persons" within the meaning of S.C.

24  Code Ann. § 39-5-10(a).

25      4196. The ZF and ST Defendants were and are engaged in "trade" or

26  "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

27  
28

4197. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20(a).

4198. The ZF and ST Defendants had an ongoing duty to the South Carolina Plaintiff and South Carolina State Class members to refrain from unfair or deceptive practices under the South Carolina UTPA in the course of their business. Specifically, the ZF and ST Defendants owed the South Carolina Plaintiff and South Carolina State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the South Carolina Plaintiff and South Carolina State Class members.

4199. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

4200. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the South Carolina UTPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4201. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and

1    ST Defendants engaged in deceptive acts or practices prohibited by S.C. Code Ann.

2    § 39-5-20(a).

3         4202. The ZF and ST Defendants' unfair or deceptive acts or practices,

4    including their misrepresentations, concealments, omissions, and suppressions of

5    material facts, were designed to mislead and had a tendency or capacity to mislead

6    and create a false impression in consumers that the Class Vehicles had properly-

7    functioning and reliable airbags and seatbelts, and that the Occupant Restraint

8    System did not contain the ACU Defect and would perform its intended function of

9    activating the seatbelts and airbags during a collision. Indeed, those

10   misrepresentations, concealments, omissions, and suppressions of material facts did

11   in fact deceive reasonable consumers, including the South Carolina Plaintiff and

12   South Carolina State Class members, about the true safety and reliability of Class

13   Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the

14   Class Vehicles, and the true value of the Class Vehicles.

15        4203. The South Carolina Plaintiff and South Carolina State Class members

16   justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and

17   concealment, as they had no way of discerning that the Class Vehicles contained

18   the ACU Defect, as alleged above. The South Carolina Plaintiff and South Carolina

19   State Class members did not, and could not, unravel the ZF and ST Defendants'

20   deception on their own

21        4204. The ZF and ST Defendants' misrepresentations and concealment of the

22   ACU Defect and true characteristics of the defective ACUs and ASICs in the Class

23   Vehicles were material to the decisions of the South Carolina Plaintiff and South

24   Carolina State Class members to purchase and lease Class Vehicles, as the ZF and

25   ST Defendants intended. Had they known the truth, the South Carolina Plaintiff and

26   South Carolina State Class members would not have purchased or leased the Class

27   Vehicles, or would have paid significantly less for them.

28

4205. The South Carolina Plaintiff and South Carolina State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

4206. The ZF and ST Defendants' violations present a continuing risk to the South Carolina Plaintiff and South Carolina State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

4207. Pursuant to S.C. Code Ann. § 39-5-140(a), the South Carolina Plaintiff and South Carolina State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Carolina UTPA.

### e. South Carolina Count 5: Fraud by Omission and Concealment Against Toyota USA and Toyota Sales USA

4208. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4209. The South Carolina Plaintiff brings this count individually and on behalf of members of the South Carolina State Class who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

4210. Toyota USA and Toyota Sales USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4211. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for

the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4212.  Toyota USA and Toyota Sales USA had a duty to disclose the ACU Defect to the South Carolina Plaintiff and South Carolina State Class members because:

a.  Toyota USA and Toyota Sales USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.  Given the ACU Defect's hidden and technical nature, the South Carolina Plaintiff and South Carolina State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.  Toyota USA and Toyota Sales USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Toyota Class Vehicles containing the ACU Defect would have been a material fact to the South Carolina Plaintiff's and South Carolina State Class members' decisions to buy or lease Toyota Class Vehicles; and

d.  Toyota USA and Toyota Sales USA made incomplete representations about the safety and reliability of the Toyota Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Toyota USA and Toyota Sales USA intentionally concealed, suppressed, and failed to disclose to the South

Carolina Plaintiff and South Carolina State Class members that the Toyota Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Toyota Class Vehicles that they marketed and offered for sale and lease to the South Carolina Plaintiff and South Carolina State Class members, Toyota USA and Toyota Sales USA had the duty to disclose the whole truth.

4213. In breach of their duties, Toyota USA and Toyota Sales USA failed to disclose that the Toyota Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4214. Toyota USA and Toyota Sales USA intended for the South Carolina Plaintiff and South Carolina State Class members to rely on their omissions—which they did by purchasing and leasing the Toyota Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4215. That reliance was reasonable, because a reasonable consumer would not have expected that the Toyota Class Vehicles contained a safety defect that poses such a serious risk. Toyota USA and Toyota Sales USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4216. Additionally, Toyota USA and Toyota Sales USA ensured that the South Carolina Plaintiff and South Carolina State Class members did not discover

1    this information by actively concealing and misrepresenting the true nature of the

2    Toyota Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

3    4217. Toyota USA and Toyota Sales USA actively concealed and suppressed

4    these material facts, in whole or in part, to maintain a market for their Class

5    Vehicles, to protect profits, and to avoid costly recalls that would expose them to

6    liability for those expenses and harm the commercial reputations of Defendants and

7    their products. They did so at the expense of the South Carolina Plaintiff and South

8    Carolina State Class members.

9    4218. To this day, Toyota USA and Toyota Sales USA have not fully and

10   adequately disclosed the ACU Defect, and they continue to conceal material

11   information about the defect from consumers and NHTSA. The omitted and

12   concealed facts were material because a reasonable person would find them

13   important in purchasing, leasing, or retaining a new or used motor vehicle, and

14   because they directly impact the value of the Toyota Class Vehicles purchased or

15   leased by the South Carolina Plaintiff and South Carolina State Class members.

16   4219. Had they been aware of the ACU Defect in the Toyota Class Vehicles,

17   and Toyota USA's and Toyota Sales USA's callous disregard for safety, the South

18   Carolina Plaintiff and South Carolina State Class members either would not have

19   paid as much as they did for their Class Vehicles, or they would not have purchased

20   or leased them.

21   4220. As alleged in Section V above, if Toyota USA and Toyota Sales USA

22   had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the

23   South Carolina Plaintiff and South Carolina State Class members would have seen

24   such a disclosure.

25   4221. Accordingly, Toyota USA and Toyota Sales USA are liable to the

26   South Carolina Plaintiff and South Carolina State Class members for their damages

27   in an amount to be proven at trial, including, but not limited to, their lost

28   overpayment for the Toyota Class Vehicles at the time of purchase or lease.

4222. Toyota USA's and Toyota Sales USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the South Carolina Plaintiff's and South Carolina State Class members' rights and well-being; and to enrich themselves. Toyota USA's and Toyota Sales USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### f. South Carolina Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia

4223. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4224. The South Carolina Plaintiff brings this count individually and on behalf of members of the South Carolina State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4225. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4226. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4227.   The ZF and ST Defendants had a duty to disclose the ACU Defect to the South Carolina Plaintiff and South Carolina State Class members because:

      a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.    Given the ACU Defect's hidden and technical nature, the South Carolina Plaintiff and South Carolina State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

      c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the South Carolina Plaintiff's and South Carolina State Class members' decisions to buy or lease Class Vehicles; and

      d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4228. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4229. The ZF and ST Defendants intended for the South Carolina Plaintiff and South Carolina State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4230. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4231. Additionally, the ZF and ST Defendants ensured that the South Carolina Plaintiff and South Carolina State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4232. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the South Carolina Plaintiff and South Carolina State Class members.

4233. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the South Carolina Plaintiff and South Carolina State Class members.

4234. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the South Carolina Plaintiff and South Carolina State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4235. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the South Carolina Plaintiff and South Carolina State Class members would have seen such a disclosure.

4236. Accordingly, the ZF and ST Defendants are liable to the South Carolina Plaintiff and South Carolina State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

4237. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the South Carolina Plaintiff's and South Carolina State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1      21.   **South Dakota**

2            a.      **South Dakota Count 1: Breach of Express Warranty (S.D.
3                    Codified Laws §§ 57A-2-313 and 57A-2A-210) Against FCA**

4      4238. Plaintiffs reallege and incorporate by reference all preceding

5      allegations as though fully set forth herein.

6      4239. Plaintiff Desiree Meyer (hereinafter, "South Dakota Plaintiff") brings

7      this count individually and on behalf of members of the South Dakota State Class

8      who purchased or leased FCA Class Vehicles, against FCA.

9      4240. FCA is and was at all relevant times a "merchant" with respect to

10     motor vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3),

11     and a "seller" of motor vehicles under § 57A-2-103(1)(d).

12     4241. With respect to leases, FCA is and was at all relevant times a "lessor"

13     of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

14     4242. All South Dakota State Class members who purchased FCA Class

15     Vehicles in South Dakota are "buyers" within the meaning of S.D. Codified Laws

16     § 57A-2-103(1)(a).

17     4243. All South Dakota State Class members who leased FCA Class

18     Vehicles in South Dakota are "lessees" within the meaning of S.D. Codified Laws

19     § 57A-2A-103(1)(n).

20     4244. The FCA Class Vehicles are and were at all relevant times "goods"

21     within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-

22     103(1)(h).

23     4245. In connection with the purchase or lease of FCA Class Vehicles, FCA

24     provided the South Dakota Plaintiff and South Dakota State Class members with

25     warranties in the form of: (a) written express warranties covering the repair or

26     replacement of components that are defective in materials or workmanship, and (b)

27     descriptions of the FCA Class Vehicles as safe and reliable, and that their Occupant

28

Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

4246. However, FCA knew or should have known that the warranties were false and/or misleading. Specifically, FCA was aware of the ACU Defect in the FCA Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the South Dakota Plaintiff and South Dakota State Class members.

4247. The South Dakota Plaintiff and South Dakota State Class members were aware the FCA Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them and FCA when the South Dakota Plaintiff and South Dakota State Class members unknowingly purchased and leased FCA Class Vehicles that came equipped with defective ACUs and ASICs.

4248. FCA misrepresented the FCA Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the South Dakota Plaintiff and South Dakota State Class members were exposed to those misrepresentations, and the South Dakota Plaintiff and South Dakota State Class members had no way of discerning that FCA's representations were false and misleading or otherwise learning the material facts that FCA had concealed or failed to disclose. Accordingly, the South Dakota Plaintiff and South Dakota State Class members reasonably relied on FCA's express warranties when purchasing or leasing their FCA Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4249. FCA knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the FCA Class Vehicles. FCA also breached its express warranties by selling and leasing FCA Class Vehicles with a defect that

1　was never disclosed to the South Dakota Plaintiff and South Dakota State Class

2　members.

3　　　4250. The South Dakota Plaintiff and South Dakota State Class members

4　have provided FCA with reasonable notice and opportunity to cure the breaches of

5　its express warranties by way of the numerous NHTSA complaints filed against it,

6　and the individual notice letters sent by South Dakota State Class members within a

7　reasonable amount of time after the ACU Defect became public. Additionally, on

8　April 24, 2020, a notice letter was sent on behalf of the South Dakota Plaintiff and

9　South Dakota State Class members to FCA.

10　　　4251. Alternatively, the South Dakota Plaintiff and South Dakota State Class

11　members were excused from providing FCA with notice and an opportunity to cure

12　the breach, because it would have been futile. As alleged above, FCA has long

13　known that the FCA Class Vehicles contained the ACU Defect, and that the ACU

14　Defect has caused ACUs and ASICs to malfunction in crashes involving Class

15　Vehicles; however, to date, FCA has not instituted a recall or any other repair

16　program with respect to the unrecalled FCA Class Vehicles, or even acknowledged

17　that the ACU Defect exists in all FCA Class Vehicles, including the recalled FCA

18　Class Vehicles—even though FCA Class Vehicles are subject to the NHTSA

19　investigation. Therefore, the South Dakota Plaintiff and South Dakota State Class

20　members had no reason to believe that FCA would have repaired the ACU Defect if

21　the South Dakota Plaintiff and South Dakota State Class members presented their

22　Class Vehicles to it for repair.

23　　　4252. As a direct and proximate result of FCA's breach of its express

24　warranties, the FCA Class Vehicles were and are defective and the ACU Defect in

25　the South Dakota Plaintiff's and South Dakota State Class members' FCA Class

26　Vehicles was not remedied. Therefore, the South Dakota Plaintiff and South Dakota

27　State Class members have been damaged, in an amount to be proven at trial,

28

through their overpayment at the time of purchase or lease for FCA Class Vehicles with an undisclosed safety defect that would not be remedied.

### b. South Dakota Count 2: Breach of Implied Warranty of Merchantability (S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212) Against FCA

4253. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4254. The South Dakota Plaintiff brings this count individually and on behalf of members of the South Dakota State Class who purchased or leased FCA Class Vehicles, against FCA.

4255. A warranty that the FCA Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

4256. FCA is and was at all relevant times a "merchant" with respect to motor vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), and a "seller" of motor vehicles under § 57A-2-103(1)(d).

4257. With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

4258. All South Dakota State Class members who purchased FCA Class Vehicles in South Dakota are "buyers" within the meaning of S.D. Codified Laws § 57A-2-103(1)(a).

4259. All South Dakota State Class members who leased FCA Class Vehicles in South Dakota are "lessees" within the meaning of S.D. Codified Laws § 57A-2A-103(1)(n).

4260. The FCA Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

4261. The FCA Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter,

they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the FCA Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the FCA Class Vehicles inherently defective and dangerous.

4262. The South Dakota Plaintiff and South Dakota State Class members have provided FCA with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints filed against it, and the individual notice letters sent by South Dakota State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the South Dakota Plaintiff and South Dakota State Class members to FCA.

4263. Alternatively, the South Dakota Plaintiff and South Dakota State Class members were excused from providing FCA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, FCA has long known that the FCA Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, FCA has not instituted a recall or any other repair program with respect to the unrecalled FCA Class Vehicles, or even acknowledged that the ACU Defect exists in all FCA Class Vehicles, including the recalled FCA Class Vehicles—even though FCA Class Vehicles are subject to the NHTSA investigation. Therefore, the South Dakota Plaintiff and South Dakota State Class members had no reason to believe that FCA would have repaired the ACU Defect if the South Dakota Plaintiff and South Dakota State Class members presented their Class Vehicles to it for repair.

4264. As a direct and proximate result of Honda USA's breach of the implied warranty of merchantability, the South Dakota Plaintiff and South Dakota State Class members have been damaged through their overpayment at the time of purchase or lease for FCA Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

### c. South Dakota Count 3: Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*) Against FCA

4265. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4266. The South Dakota Plaintiff brings this count individually and on behalf of members of the South Dakota State Class who purchased or leased FCA Class Vehicles, against FCA.

4267. FCA, the South Dakota Plaintiff, and the South Dakota State Class members are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

4268. The FCA Class Vehicles and ACUs installed in them are "merchandise" within the meaning of S.D. Codified Laws § 37-24-1(7).

4269. FCA is and was engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

4270. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPA") prohibits "deceptive acts or practices." S.D. Codified Laws § 37-24-6(1).

4271. In the course of its business, FCA, through its agents, employees, and/or subsidiaries, violated the South Dakota CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the FCA Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

4272. FCA had an ongoing duty to the South Dakota Plaintiff and South Dakota State Class members to refrain from unfair or deceptive practices under the

1   South Dakota CPA in the course of its business. Specifically, FCA owed the South

2   Dakota Plaintiff and South Dakota State Class members a duty to disclose all the

3   material facts concerning the ACU Defect in the FCA Class Vehicles because it

4   possessed exclusive knowledge, it intentionally concealed the ACU Defect from the

5   South Dakota Plaintiff and South Dakota State Class members, and/or it made

6   misrepresentations that were rendered misleading because they were contradicted

7   by withheld facts.

8       4273. By misrepresenting the FCA Class Vehicles as safe and reliable and

9   the defective ACU and ASICs installed in them as properly-functioning and free

10  from defects, and by failing to disclose and actively concealing the dangers and risk

11  posed by the ACU Defect to both consumers and NHTSA, FCA engaged in unfair

12  or deceptive business practices prohibited by S.D. Codified Laws § 37-24-6(1).

13      4274. FCA's unfair and deceptive acts or practices, including its

14  misrepresentations, concealments, omissions, and suppressions of material facts,

15  were designed to mislead and had a tendency or capacity to mislead and create a

16  false impression in consumers that the FCA Class Vehicles had properly-

17  functioning and reliable airbags and seatbelts, and that the Occupant Restraint

18  System did not contain the ACU Defect and would perform its intended function of

19  activating the seatbelts and airbags during a collision. Indeed, those

20  misrepresentations, concealments, omissions, and suppressions of material facts did

21  in fact deceive reasonable consumers, including the South Dakota Plaintiff and

22  South Dakota State Class members, about the true safety and reliability of FCA

23  Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality

24  of the FCA Class Vehicles, and the true value of the FCA Class Vehicles.

25      4275. FCA's misrepresentations, concealments, omissions, and suppressions

26  of material facts regarding the ACU Defect and true characteristics of the Occupant

27  Restraint Systems in the FCA Class Vehicles were material to the decisions of the

28  South Dakota Plaintiff and South Dakota State Class members to purchase and

1   lease those vehicles, as FCA intended. The South Dakota Plaintiff and South

2   Dakota State Class members were exposed to those misrepresentations,

3   concealments, omissions, and suppressions of material facts, and relied on FCA's

4   misrepresentations that the FCA Class Vehicles and their Occupant Restraint

5   Systems were safe and reliable in deciding to purchase and lease FCA Class

6   Vehicles. Plaintiffs allege the information they relied upon in Section II.B above.

7   To aid review of this information, Exhibit 19 provides paragraph numbers for each

8   Plaintiff.

9        4276. The South Dakota Plaintiff's and South Dakota State Class members'

10   reliance was reasonable, as they had no way of discerning that FCA's

11   representations were false and misleading, or otherwise learning the facts that FCA

12   had concealed or failed to disclose. The South Dakota Plaintiff and South Dakota

13   State Class members did not, and could not, unravel FCA's deception on their own.

14        4277. Had the South Dakota Plaintiff and South Dakota State Class members

15   known the truth about the ACU Defect, the South Dakota Plaintiff and South

16   Dakota State Class members would not have purchased or leased FCA Class

17   Vehicles, or would have paid significantly less for them.

18        4278. The South Dakota Plaintiff and South Dakota State Class members

19   suffered ascertainable losses and actual damages through their overpayment at the

20   time of purchase and lease for FCA Class Vehicles with an undisclosed safety

21   defect as a direct and proximate result of FCA's concealment, misrepresentations,

22   and/or failure to disclose material information.

23        4279. FCA's violations present a continuing risk to the South Dakota

24   Plaintiff and South Dakota State Class members, as well as to the general public,

25   because the Class Vehicles remain unsafe due to the defective ACUs and ASICs

26   therein. Additionally, FCA's unlawful acts and practices complained of herein

27   affect the public interest.

28

4280. Pursuant to S.D. Codified Laws § 37-24-31, the South Dakota Plaintiff and South Dakota State Class members seek an order enjoining FCA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Dakota CPA.

        **d.**        **South Dakota Count 4: Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

4281. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4282. The South Dakota Plaintiff brings this count individually and on behalf members of the South Dakota State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4283. The ZF Defendants, the ST Defendants, the South Dakota Plaintiff, and South Dakota State Class members are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

4284. The Class Vehicles and ACUs installed in them are "merchandise" within the meaning of S.D. Codified Laws § 37-24-1(7).

4285. The ZF and ST Defendants were and are engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

4286. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPA") prohibits "deceptive acts or practices." S.D. Codified Laws § 37-24-6(1).

4287. The ZF and ST Defendants had an ongoing duty to the South Dakota Plaintiff and South Dakota State Class members to refrain from unfair or deceptive practices under the South Dakota CPA in the course of their business. Specifically,

the ZF and ST Defendants owed the South Dakota Plaintiff and South Dakota State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the South Dakota Plaintiff and South Dakota State Class members.

4288. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the South Dakota CPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

4289. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the South Dakota CPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4290. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and ST Defendants engaged in deceptive acts or practices prohibited by S.D. Codified Laws § 37-24-6, including acting, using, or employing deceptive acts or practices and fraud, and/or concealing, suppressing, or omitting material facts.

4291. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead

1    and create a false impression in consumers that the Class Vehicles had properly-

2    functioning and reliable airbags and seatbelts, and that the Occupant Restraint

3    System did not contain the ACU Defect and would perform its intended function of

4    activating the seatbelts and airbags during a collision. Indeed, those

5    misrepresentations, concealments, omissions, and suppressions of material facts did

6    in fact deceive reasonable consumers, including the South Dakota Plaintiff and

7    South Dakota State Class members, about the true safety and reliability of Class

8    Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the

9    Class Vehicles, and the true value of the Class Vehicles.

10        4292. The South Dakota Plaintiff and South Dakota State Class members

11   justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and

12   concealment, as they had no way of discerning that the Class Vehicles contained

13   the ACU Defect, as alleged above. The South Dakota Plaintiff and South Dakota

14   State Class members did not, and could not, unravel the ZF and ST Defendants'

15   deception on their own

16        4293. The ZF and ST Defendants' misrepresentations and concealment of the

17   ACU Defect and true characteristics of the defective ACUs and ASICs in the Class

18   Vehicles were material to the decisions of the South Dakota Plaintiff and South

19   Dakota State Class members to purchase and lease Class Vehicles, as the ZF and

20   ST Defendants intended. Had they known the truth, the South Dakota Plaintiff and

21   South Dakota State Class members would not have purchased or leased the Class

22   Vehicles, or would have paid significantly less for them.

23        4294. The South Dakota Plaintiff and South Dakota State Class members

24   suffered ascertainable losses and actual damages as a direct and proximate result of

25   the ZF and ST Defendants' misrepresentations, concealment and/or failure to

26   disclose material information.

27        4295. The ZF and ST Defendants' violations present a continuing risk to the

28   South Dakota Plaintiff and South Dakota State Class members, as well as to the

general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

4296. Pursuant to S.D. Codified Laws § 37-24-31, the South Dakota Plaintiff and South Dakota State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Dakota CPA.

### e. South Dakota Count 5: Fraud by Omission and Concealment Against FCA

4297. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4298. The South Dakota Plaintiff brings this count individually and on behalf of members of the South Dakota State Class who purchased or leased FCA Class Vehicles, against FCA.

4299. FCA is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4300. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4301. FCA had a duty to disclose the ACU Defect to the South Dakota Plaintiff and South Dakota State Class members because:

a.    FCA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.    Given the ACU Defect's hidden and technical nature, the South Dakota Plaintiff and South Dakota State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    FCA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the FCA Class Vehicles containing the ACU Defect would have been a material fact to the South Dakota Plaintiff's and South Dakota State Class members' decisions to buy or lease FCA Class Vehicles; and

d.    FCA made incomplete representations about the safety and reliability of the FCA Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, FCA intentionally concealed, suppressed, and failed to disclose to the South Dakota Plaintiff and South Dakota State Class members that the FCA Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the FCA Class Vehicles that they marketed and offered for sale and lease to the South Dakota Plaintiff and South Dakota State Class members, FCA had the duty to disclose the whole truth.

4302. In breach of its duties, FCA failed to disclose that the FCA Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems,

1    including their airbags and seatbelt pretensioners could fail in the event of a crash

2    due to the ACU Defect.

3        4303. FCA intended for the South Dakota Plaintiff and South Dakota State

4    Class members to rely on its omissions—which they did by purchasing and leasing

5    the FCA Class Vehicles at the prices they paid believing that the Occupant

6    Restraint Systems in their Class Vehicles would function properly.

7        4304. That reliance was reasonable, because a reasonable consumer would

8    not have expected that the FCA Class Vehicles contained a safety defect that poses

9    such a serious risk. FCA knew that reasonable consumers expect that their vehicle

10   has working airbags and seatbelt pretensioners and would rely on those facts in

11   deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether

12   a manufacturer's products are safe and reliable, and whether that manufacturer

13   stands behind its products, are material concerns to a consumer. Especially here

14   when at least nine people have already died due to the ACU Defect, and many more

15   have been injured.

16       4305. Additionally, FCA ensured that the South Dakota Plaintiff and South

17   Dakota State Class members did not discover this information by actively

18   concealing and misrepresenting the true nature of the FCA Class Vehicles'

19   Occupant Restraint Systems to consumers and NHTSA.

20       4306. FCA actively concealed and suppressed these material facts, in whole

21   or in part, to maintain a market for its Class Vehicles, to protect profits, and to

22   avoid costly recalls that would expose them to liability for those expenses and harm

23   the commercial reputations of Defendants and their products. It did so at the

24   expense of the South Dakota Plaintiff and South Dakota State Class members.

25       4307. To this day, FCA has not fully and adequately disclosed the ACU

26   Defect, and they continue to conceal material information about the defect from

27   consumers and NHTSA. The omitted and concealed facts were material because a

28   reasonable person would find them important in purchasing, leasing, or retaining a

new or used motor vehicle, and because they directly impact the value of the FCA Class Vehicles purchased or leased by the South Dakota Plaintiff and South Dakota State Class members.

4308. Had they been aware of the ACU Defect in the FCA Class Vehicles, and FCA's callous disregard for safety, the South Dakota Plaintiff and South Dakota State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4309. As alleged in Section V above, if FCA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the South Dakota Plaintiff and South Dakota State Class members would have seen such a disclosure.

4310. Accordingly, FCA is liable to the South Dakota Plaintiff and South Dakota State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the FCA Class Vehicles at the time of purchase or lease.

4311. FCA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the South Dakota Plaintiff's and South Dakota State Class members' rights and well-being; and to enrich themselves. FCA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**f.      South Dakota Count 6: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

4312. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4313. The South Dakota Plaintiff brings this count individually and on behalf of members of the South Dakota State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive

1   USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and

2   ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

3       4314. The ZF and ST Defendants are liable for both fraudulent concealment

4   and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

5       4315. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

6   serious risks to vehicle occupants, including that it can cause: (1) airbags and

7   seatbelts not to activate during a crash because crashes can sometimes release

8   electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

9   vehicle has not crashed, which is dangerous because it is shocking and difficult for

10  the driver to operate a vehicle when the airbag deploys without warning; and (3)

11  failures of other important post-crash operations of the safety system, such as

12  unlocking doors to facilitate escape or extraction of drivers and passengers by

13  emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

14      4316. The ZF and ST Defendants had a duty to disclose the ACU Defect to

15  the South Dakota Plaintiff and South Dakota State Class members because:

16      a.    The ZF and ST Defendants had exclusive access to and far

17          superior knowledge about technical facts regarding the ACU

18          Defect;

19      b.    Given the ACU Defect's hidden and technical nature, the South

20          Dakota Plaintiff and South Dakota State Class members lack the

21          sophisticated expertise in vehicle components and electrical

22          phenomena that would be necessary to discover the ACU Defect

23          on their own;

24      c.    The ZF and ST Defendants knew that the ACU Defect gave rise

25          to serious safety concerns for the consumers who use the

26          vehicles, and the Class Vehicles containing the ACU Defect

27          would have been a material fact to the South Dakota Plaintiff's

28

and South Dakota State Class members' decisions to buy or
lease Class Vehicles; and

  d. The ZF Defendants made incomplete representations about the
safety and reliability of the Class Vehicles and their Occupant
Restraint System, while purposefully withholding material facts
about a known safety defect, creating a duty to disclose the
whole truth. Specifically, ZF Electronics USA, ZF Passive
Safety USA, and ZF Automotive USA worked with the Vehicle
Manufacturer Defendants on the design and inclusion of the
airbag readiness indicators in the Class Vehicles, which falsely
assured Plaintiffs and Class Members that the Occupant
Restraint Systems in the Class Vehicles would function properly
in a crash.

  4317. In breach of their duties, the ZF and ST Defendants failed to disclose
that the Class Vehicles were not safe and reliable, and that their Occupant Restraint
Systems, including their airbags and seatbelt pretensioners could fail in the event of
a crash due to the ACU Defect.

  4318. The ZF and ST Defendants intended for the South Dakota Plaintiff and
South Dakota State Class members to rely on their omissions—which they did by
purchasing and leasing the Class Vehicles at the prices they paid believing that the
Occupant Restraint Systems in their Class Vehicles would function properly.

  4319. That reliance was reasonable, because a reasonable consumer would
not have expected that the Class Vehicles contained a safety defect that poses such
a serious risk. The ZF and ST Defendants knew that reasonable consumers expect
that their vehicle has working airbags and seatbelt pretensioners and would rely on
those facts in deciding whether to purchase, lease, or retain a new or used motor
vehicle. Whether a manufacturer's products are safe and reliable, and whether that
manufacturer stands behind its products, are material concerns to a consumer.

1  Especially here when at least nine people have already died due to the ACU Defect,
2  and many more have been injured.

3      4320. Additionally, the ZF and ST Defendants ensured that the South Dakota
4  Plaintiff and South Dakota State Class members did not discover this information
5  by actively concealing and misrepresenting the true nature of the Class Vehicles'
6  Occupant Restraint Systems to consumers and NHTSA.

7      4321. The ZF and ST Defendants actively concealed and suppressed these
8  material facts, in whole or in part, to maintain a market for the DS84 ACU, to
9  protect profits, and to avoid costly recalls that would expose them to liability for
10  those expenses and harm the commercial reputations of Defendants and their
11  products. They did so at the expense of the South Dakota Plaintiff and South
12  Dakota State Class members.

13      4322. To this day, the ZF and ST Defendants have not fully and adequately
14  disclosed the ACU Defect, and they continue to conceal material information about
15  the defect from consumers and NHTSA. The omitted and concealed facts were
16  material because a reasonable person would find them important in purchasing,
17  leasing, or retaining a new or used motor vehicle, and because they directly impact
18  the value of the Class Vehicles purchased or leased by the South Dakota Plaintiff
19  and South Dakota State Class members.

20      4323. Had they been aware of the ACU Defect in the Class Vehicles, and the
21  ZF and ST Defendants' callous disregard for safety, the South Dakota Plaintiff and
22  South Dakota State Class members either would not have paid as much as they did
23  for their Class Vehicles, or they would not have purchased or leased them.

24      4324. As alleged in Section V above, if the ZF and ST Defendants had fully
25  and adequately disclosed the ACU Defect to consumers and NHTSA, the South
26  Dakota Plaintiff and South Dakota State Class members would have seen such a
27  disclosure.

28

4325. Accordingly, the ZF and ST Defendants are liable to the South Dakota Plaintiff and South Dakota State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

4326. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the South Dakota Plaintiff's and South Dakota State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### g. South Dakota Count 7: Unjust Enrichment Against FCA

4327. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

4328. The South Dakota Plaintiff brings this count individually and on behalf of members of the South Dakota State Class who purchased or leased FCA Class Vehicles, against FCA.

4329. The South Dakota Plaintiff and South Dakota State Class members conferred tangible and material monetary benefits upon FCA when they purchased or leased the FCA Class Vehicles. FCA readily accepted and retained these benefits.

4330. The South Dakota Plaintiff and South Dakota State Class members would not have purchased or leased the FCA Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, FCA profited from the sale and lease of the FCA Class Vehicles to the detriment and expense of the South Dakota Plaintiff and South Dakota State Class members.

4331. FCA appreciated these monetary benefits. These benefits were the expected result of FCA acting in its pecuniary interest at the expense of its

customers. FCA knew of these benefits because it was aware of the ACU Defect, yet it failed to disclose this knowledge and misled the South Dakota Plaintiff and South Dakota State Class members regarding the nature and quality of the FCA Class Vehicles while profiting from this deception.

4332. It would be unjust, inequitable, and unconscionable for FCA to retain these monetary benefits, including because they were procured as a result of FCA's wrongful conduct alleged above.

4333. The South Dakota Plaintiff and South Dakota State Class members are entitled to restitution of the benefits FCA unjustly retained and/or any amounts necessary to return the South Dakota Plaintiff and South Dakota State Class members to the position they occupied prior to dealing with FCA, with such amounts to be determined at trial.

4334. The South Dakota Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the South Dakota Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the South Dakota Plaintiff would have no adequate legal remedy.

### 22. Texas

#### a. Texas Count 1: Breach of Implied Warranty of Merchantability (Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212) Against Honda USA, Hyundai USA, and Toyota Sales USA[21]

4335. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[21] The Court held in its February 9, 2022 Order that Plaintiffs DeRouen, Hunt and Green each have stated a claim for breach of implied warranty under Texas law. *See* ECF No. 396 at 167.

4336. Plaintiff Angela Bowens brings this count individually and on behalf of members of the Texas State Class who purchased or leased Honda Class Vehicles, against Honda USA.

4337. Plaintiff Burton Reckles brings this count individually and on behalf of members of the Texas State Class who purchased or leased Hyundai Class Vehicles, against Hyundai USA.

4338. Plaintiffs Brent DeRouen, Danny Hunt, Evan Green, and Joy Davis bring this count individually and on behalf of members of the Texas State Class who purchased or leased Toyota Class Vehicles, against Toyota Sales USA.

4339. For purposes of this count, Plaintiffs Bowens, Reckles, DeRouen, Hunt, Green, and Davis shall be referred to as the "Texas Plaintiffs."

4340. A warranty that the Honda, Hyundai, and Toyota Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

4341. Honda USA, Hyundai USA, and Toyota Sales USA are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and "sellers" of motor vehicles under § 2.103(a)(4).

4342. With respect to leases, Honda USA, Hyundai USA, and Toyota Sales USA are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code Ann. § 2A.103(a)(16).

4343. All Texas State Class members who purchased Honda, Hyundai, and Toyota Class Vehicles in Texas are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)).

4344. All Texas State Class members who leased Honda, Hyundai, and Toyota Class Vehicles in Texas are "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

4345. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(8).

4346. The Honda, Hyundai, and Toyota Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and lease and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, at the time they were sold and leased, the Honda, Hyundai, and Toyota Class Vehicles contained the ACU Defect, which may cause the airbags and seatbelt pretensioners to fail to deploy during a crash, the failure to unlock doors automatically after a crash, the failure to turn off a fuel supply or high-voltage battery after a crash, or the airbags to inadvertently deploy, all of which render the Honda, Hyundai, and Toyota Class Vehicles inherently defective and dangerous.

4347. The Texas Plaintiffs and Texas State Class members have provided Honda USA, Hyundai USA, and Toyota Sales USA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous NHTSA complaints filed against them, and the individual notice letters sent by Texas State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, on April 24, 2020, a notice letter was sent on behalf of the Texas Plaintiffs and Texas State Class members to Honda USA, Hyundai USA, and Toyota Sales USA.

4348. Alternatively, the Texas Plaintiffs and Texas State Class members were excused from providing Honda USA, Hyundai USA, and Toyota Sales USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Honda USA, Hyundai USA, and Toyota Sales USA have long known that Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Hyundai USA and Toyota Sales USA have not

instituted a recall or any other repair program with respect to their unrecalled Class Vehicles, or even acknowledged that the ACU Defect exists in all their Class Vehicles, including the recalled Class Vehicles—even though Hyundai and Toyota Class Vehicles are subject to the NHTSA investigation. Similarly, to date, Honda USA has not instituted a recall or any other repair program, or even acknowledged that the ACU Defect exists—even though Honda Class Vehicles are subject to the NHTSA investigation. Therefore, the Texas Plaintiffs and Texas State Class members had no reason to believe that Honda USA, Hyundai USA, and Toyota Sales USA would have repaired the ACU Defect if the Texas Plaintiffs and Texas State Class members presented their Class Vehicles to them for repair.

4349. As a direct and proximate result of Honda USA's, Hyundai USA's, and Toyota Sales USA's breach of the implied warranty of merchantability, the Texas Plaintiffs and Texas State Class members have been damaged through their overpayment at the time of purchase or lease for Toyota Class Vehicles with an undisclosed safety defect in an amount to be proven at trial.

> **b. Texas Count 2: Violation of the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*) Against Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA**

4350. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4351. Plaintiff Angela Bowens brings this count individually and on behalf of members of the Texas State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

4352. Plaintiff Burton Reckles brings this count individually and on behalf of members of the Texas State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

4353. Plaintiffs Brent DeRouen, Danny Hunt, Evan Green, and Joy Davis bring this count individually and on behalf of members of the Texas State Class

1  who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota
2  Sales USA.

3      4354. For purposes of this count, Plaintiffs Bowens, Reckles, DeRouen,
4  Hunt, Green, and Davis shall be referred to as the "Texas Plaintiffs."

5      4355. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea,
6  Hyundai USA, Toyota USA, Toyota Sales USA, the Texas Plaintiffs, and Texas
7  State Class members are "persons" within the meaning of Tex. Bus. & Com. Code
8  Ann. § 17.45(3).

9      4356. The Texas Plaintiffs and Texas State Class members are "consumers"
10  within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(4).

11      4357. The Honda, Hyundai, and Toyota Class Vehicles are "goods" within
12  the meaning of Tex. Bus. & Com. Code Ann. § 17.45(1).

13      4358. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea,
14  Hyundai USA, Toyota USA, and Toyota Sales USA were and are engaged in
15  "trade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann.
16  § 17.45(6).

17      4359. The Deceptive Trade Practices-Consumer Protection Act ("Texas
18  DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct
19  of any trade or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an
20  "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann.
21  §§ 17.45(5) and 17.50(a)(3).

22      4360. In the course of their business, Honda Japan, Honda USA, Honda
23  Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales
24  USA, through their agents, employees, and/or subsidiaries, violated the Texas
25  DTPA by knowingly and intentionally misrepresenting, omitting, concealing,
26  and/or failing to disclose material facts regarding the reliability, safety, and
27  performance of the Honda, Hyundai, and Toyota Class Vehicles, the safety of their
28  Occupant Restraint Systems, and the ACU Defect, as detailed above.

4361. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA had an ongoing duty to the Texas Plaintiffs and Texas State Class members to refrain from unfair or deceptive practices under the Texas DTPA in the course of their business. Specifically, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA owed the Texas Plaintiffs and Texas State Class members a duty to disclose all the material facts concerning the ACU Defect in the Honda, Hyundai, and Toyota Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Texas Plaintiffs and Texas State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

4362. By misrepresenting the Honda, Hyundai, and Toyota Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA engaged in one or more of the following unfair or deceptive business practices prohibited by Tex. Bus. & Com. Code Ann. §§ 17.46:

  a. Representing that the Class Vehicles and/or the defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have;

  b. Representing that the Class Vehicles and/or the defective ACUs installed in them are of a particular standard, quality, and grade when they are not; and

  c. Advertising the Class Vehicles and/or the defective ACUs installed in them with the intent not to sell or lease them as advertised.

1     Tex. Bus. & Com. Code Ann. §§ 17.46(5), (7), and (9).

2     4363. Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai

3 Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's unfair and

4 deceptive acts or practices, including their misrepresentations, concealments,

5 omissions, and suppressions of material facts, were designed to mislead and had a

6 tendency or capacity to mislead and create a false impression in consumers that the

7 Honda, Hyundai, and Toyota Class Vehicles had properly-functioning and reliable

8 airbags and seatbelts, and that the Occupant Restraint System did not contain the

9 ACU Defect and would perform its intended function of activating the seatbelts and

10 airbags during a collision. Indeed, those misrepresentations, concealments,

11 omissions, and suppressions of material facts did in fact deceive reasonable

12 consumers, including the Texas Plaintiffs and Texas State Class members, about

13 the true safety and reliability of Honda, Hyundai, and Toyota Class Vehicles and/or

14 the defective ACUs and ASICs installed in them, the quality of the Honda,

15 Hyundai, and Toyota Class Vehicles, and the true value of the Honda, Hyundai, and

16 Toyota Class Vehicles.

17     4364. Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai

18 Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's

19 misrepresentations, concealments, omissions, and suppressions of material facts

20 regarding the ACU Defect and true characteristics of the Occupant Restraint

21 Systems in the Honda, Hyundai, and Toyota Class Vehicles were material to the

22 decisions of the Texas Plaintiffs and Texas State Class members to purchase and

23 lease those vehicles, as Honda Japan, Honda USA, Honda Engineering USA,

24 Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA intended. The

25 Texas Plaintiffs and Texas State Class members were exposed to those

26 misrepresentations, concealments, omissions, and suppressions of material facts,

27 and relied on Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai

28 Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's

misrepresentations that the Honda, Hyundai, and Toyota Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Honda, Hyundai, and Toyota Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4365. The Texas Plaintiffs' and Texas State Class members' reliance was reasonable, as they had no way of discerning that Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's representations were false and misleading, or otherwise learning the facts that they had concealed or failed to disclose. The Texas Plaintiffs and Texas State Class members did not, and could not, unravel Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's deception on their own.

4366. Had the Texas Plaintiffs and Texas State Class members known the truth about the ACU Defect, the Texas Plaintiffs and Texas State Class members would not have purchased or leased Honda, Hyundai, and Toyota Class Vehicles, or would have paid significantly less for them.

4367. The Texas Plaintiffs and Texas State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Honda, Hyundai, and Toyota Class Vehicles with an undisclosed safety defect as a direct and proximate result of Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's concealment, misrepresentations, and/or failure to disclose material information.

4368. Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's violations present a continuing risk to the Texas Plaintiffs and Texas State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the

defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

4369. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA were provided notice of the issues raised in this count and this Complaint by the NHTSA investigations, the numerous complaints filed against them, and the many individual notice letters sent within a reasonable amount of time after the ACU Defect became public. Additionally, on May 23, 2019, Texas State Class members sent them a notice letter pursuant to Tex. Bus. & Com. Code Ann. § 17.505(a). Moreover, a second notice letter was sent on behalf of the Texas Plaintiffs and Texas State Class members pursuant to Tex. Bus. & Com. Code Ann. § 17.505(a) to Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA on April 24, 2020. Because all of these Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the Texas Plaintiffs seek all damages and relief to which the Texas Plaintiffs and Texas State Class members are entitled.

4370. Alternatively, any requirement to give notice to the Defendants under Tex. Bus. & Com. Code Ann. § 17.505(a) is excused because, *inter alia*, notice was impracticable due to the necessity of filing suit in order to prevent the expiration of the statute of limitations on certain Texas Plaintiffs and Texas State Class Members' claims.

4371. Pursuant to Tex. Bus. & Com. Code Ann. § 17.50, the Texas Plaintiffs and Texas State Class members seek an order enjoining Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Texas DTPA.

c.   **Texas Count 3: Violation of the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF Germany, ST Italy, ST USA, and ST Malaysia**

4372. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4373. Plaintiffs Angela Bowens, Burton Reckles, Brent DeRouen, Danny Hunt, Evan Green, and Joy Davis bring this count individually and on behalf of members of the Texas State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4374. For purposes of this count, Plaintiffs Bowens, Reckles, DeRouen, Hunt, Green, and Davis shall be referred to as the Texas Plaintiffs.

4375. The ZF Defendants, the ST Defendants, the Texas Plaintiffs, and Texas State Class members are "persons" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(3).

4376. The Texas Plaintiffs and Texas State Class members are "consumers" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(4).

4377. The Class Vehicles are "goods" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(1).

4378. The ZF and ST Defendants were and are engaged in "trade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(6).

4379. The Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann. §§ 17.45(5) and 17.50(a)(3).

4380. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

4381. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Texas DTPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4382. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, The ZF and ST Defendants engaged in deceptive acts or practices prohibited by Tex. Bus. & Com. Code Ann. §§ 17.46.

4383. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Texas Plaintiffs and Texas

State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4384. The Texas Plaintiffs and Texas State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Texas Plaintiffs and Texas State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

4385. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Texas Plaintiffs and Texas State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Texas Plaintiffs and Texas State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4386. The Texas Plaintiffs and Texas State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

4387. The ZF and ST Defendants' violations present a continuing risk to the Texas Plaintiffs and Texas State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

4388. The ZF and ST Defendants were provided notice of the issues raised in this count and this Complaint by the NHTSA investigations, the numerous complaints filed against them, and the many individual notice letters sent within a reasonable amount of time after the ACU Defect became public. A notice letter was

sent on behalf of the Texas Plaintiffs and Texas State Class members pursuant to Tex. Bus. & Com. Code Ann. § 17.505(a) to the ZF Defendants on April 24, 2020, ST USA on June 5, 2020, and ST Italy and ST Malaysia on May 25, 2022. Because the ZF and ST Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the Texas Plaintiffs seek all damages and relief to which the Texas Plaintiffs and Texas State Class members are entitled.

4389. Alternatively, any requirement to give notice to the ZF and ST Defendants under Tex. Bus. & Com. Code Ann. § 17.505(a) is excused because, *inter alia*, notice was impracticable due to the necessity of filing suit in order to prevent the expiration of the statute of limitations on certain Texas Plaintiffs and Texas State Class Members' claims.

4390. Pursuant to Tex. Bus. & Com. Code Ann. § 17.50, the Texas Plaintiffs and Texas State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Texas DTPA.

> **d.    Texas Count 4: Fraud by Omission and Concealment Against Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA**

4391. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4392. Plaintiff Angela Bowens brings this count individually and on behalf of members of the Texas State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

4393. Plaintiff Burton Reckles brings this count individually and on behalf of members of the Texas State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

4394. Plaintiffs Brent DeRouen, Danny Hunt, Evan Green, and Joy Davis bring this count individually and on behalf of members of the Texas State Class

who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

4395. For purposes of this count, Plaintiffs Bowens, Reckles, DeRouen, Hunt, Green, and Davis shall be referred to as the "Texas Plaintiffs."

4396. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4397. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4398. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA had a duty to disclose the ACU Defect to the Texas Plaintiffs and Texas State Class members because:

      a.    Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

      b.    Given the ACU Defect's hidden and technical nature, the Texas Plaintiffs and Texas State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Honda, Hyundai, and Toyota Class Vehicles containing the ACU Defect would have been a material fact to the Texas Plaintiffs' and Texas State Class members' decisions to buy or lease Honda, Hyundai, and Toyota Class Vehicles; and

d.    Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA made incomplete representations about the safety and reliability of the Honda, Hyundai, and Toyota Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA intentionally concealed, suppressed, and failed to disclose to the Texas Plaintiffs and Texas State Class members that the Honda, Hyundai, and Toyota Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Honda, Hyundai, and Toyota Class Vehicles that they marketed and offered for sale and lease to the Texas Plaintiffs and Texas State Class members, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA had the duty to disclose the whole truth.

4399. In breach of their duties, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales

USA failed to disclose that the Honda, Hyundai, and Toyota Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4400. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA intended for the Texas Plaintiffs and Texas State Class members to rely on their omissions—which they did by purchasing and leasing the Honda, Hyundai, and Toyota Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4401. That reliance was reasonable, because a reasonable consumer would not have expected that the Honda, Hyundai, and Toyota Class Vehicles contained a safety defect that poses such a serious risk. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4402. Additionally, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA ensured that the Texas Plaintiffs and Texas State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Honda, Hyundai, and Toyota Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4403. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Texas Plaintiffs and Texas State Class members.

4404. To this day, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Honda, Hyundai, and Toyota Class Vehicles purchased or leased by the Texas Plaintiffs and Texas State Class members.

4405. Had they been aware of the ACU Defect in the Honda, Hyundai, and Toyota Class Vehicles, and Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's callous disregard for safety, the Texas Plaintiffs and Texas State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4406. As alleged in Section V above, if Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Texas Plaintiffs and Texas State Class members would have seen such a disclosure.

4407. Accordingly, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA are liable to the Texas Plaintiffs and Texas State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Honda, Hyundai, and Toyota Class Vehicles at the time of purchase or lease.

4408. Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Texas Plaintiffs' and Texas State Class members' rights and well-being; and to enrich themselves. Honda Japan's, Honda USA's, Honda Engineering USA's, Hyundai Korea's, Hyundai USA's, Toyota USA's, and Toyota Sales USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e. **Texas Count 5: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

4409. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4410. The Texas Plaintiffs bring this count individually and on behalf of members of the Texas State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4411. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4412. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and

seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

      4413. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Texas Plaintiffs and Texas State Class members because:

        a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

        b.    Given the ACU Defect's hidden and technical nature, the Texas Plaintiffs and Texas State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

        c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Texas Plaintiffs' and Texas State Class members' decisions to buy or lease Class Vehicles; and

        d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle

Manufacturer Defendants on the design and inclusion of the
airbag readiness indicators in the Class Vehicles, which falsely
assured Plaintiffs and Class Members that the Occupant
Restraint Systems in the Class Vehicles would function properly
in a crash.

4414. In breach of their duties, the ZF and ST Defendants failed to disclose
that the Class Vehicles were not safe and reliable, and that their Occupant Restraint
Systems, including their airbags and seatbelt pretensioners could fail in the event of
a crash due to the ACU Defect.

4415. The ZF and ST Defendants intended for the Texas Plaintiffs and Texas
State Class members to rely on their omissions—which they did by purchasing and
leasing the Class Vehicles at the prices they paid believing that the Occupant
Restraint Systems in their Class Vehicles would function properly.

4416. That reliance was reasonable, because a reasonable consumer would
not have expected that the Class Vehicles contained a safety defect that poses such
a serious risk. The ZF and ST Defendants knew that reasonable consumers expect
that their vehicle has working airbags and seatbelt pretensioners and would rely on
those facts in deciding whether to purchase, lease, or retain a new or used motor
vehicle. Whether a manufacturer's products are safe and reliable, and whether that
manufacturer stands behind its products, are material concerns to a consumer.
Especially here when at least nine people have already died due to the ACU Defect,
and many more have been injured.

4417. Additionally, the ZF and ST Defendants ensured that the Texas
Plaintiffs and Texas State Class members did not discover this information by
actively concealing and misrepresenting the true nature of the Class Vehicles'
Occupant Restraint Systems to consumers and NHTSA.

4418. The ZF and ST Defendants actively concealed and suppressed these
material facts, in whole or in part, to maintain a market for the DS84 ACU, to

protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Texas Plaintiffs and Texas State Class members.

4419. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Texas Plaintiffs and Texas State Class members.

4420. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Texas Plaintiffs and Texas State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4421. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Texas Plaintiffs and Texas State Class members would have seen such a disclosure.

4422. Accordingly, the ZF and ST Defendants are liable to the Texas Plaintiffs and Texas State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

4423. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Texas Plaintiffs' and Texas State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**f.** **Texas Count 6: Unjust Enrichment Against Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, and Toyota Sales USA, and Toyota Engineering USA**

4424. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

4425. Plaintiff Angela Bowens brings this count individually and on behalf of members of the Texas State Class who purchased or leased Honda Class Vehicles, against Honda Japan, Honda USA, and Honda Engineering USA.

4426. Plaintiff Burton Reckles brings this count individually and on behalf of members of the Texas State Class who purchased or leased Hyundai Class Vehicles, against Hyundai Korea and Hyundai USA.

4427. Plaintiffs Brent DeRouen, Danny Hunt, Evan Green, and Joy Davis bring this count individually and on behalf of members of the Texas State Class who purchased or leased Toyota Class Vehicles, against Toyota USA, Toyota Sales USA, and Toyota Engineering USA.

4428. For purposes of this count, Plaintiffs Bowens, Reckles, DeRouen, Hunt, Green, and Davis shall be referred to as the "Texas Plaintiffs."

4429. The Texas Plaintiffs and Texas State Class members conferred tangible and material monetary benefits upon Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA when they purchased or leased the Honda, Hyundai, and Toyota Class Vehicles. These Defendants readily accepted and retained these benefits.

4430. The Texas Plaintiffs and Texas State Class members would not have purchased or leased the Honda, Hyundai, and Toyota Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, Toyota Sales USA, and Toyota Engineering

USA profited from the sale and lease of the Honda, Hyundai, and Toyota Class Vehicles to the detriment and expense of the Texas Plaintiffs and Texas State Class members.

4431. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA appreciated these monetary benefits. These benefits were the expected result of these Defendants acting in their pecuniary interest at the expense of their customers. Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Texas Plaintiffs and Texas State Class members regarding the nature and quality of the Honda, Hyundai, and Toyota Class Vehicles while profiting from this deception.

4432. It would be unjust, inequitable, and unconscionable for Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA to retain these monetary benefits, including because they were procured as a result of the wrongful conduct alleged above.

4433. The Texas Plaintiffs and Texas State Class members are entitled to restitution of the benefits Honda Japan, Honda USA, Honda Engineering USA, Hyundai Korea, Hyundai USA, Toyota USA, Toyota Sales USA, and Toyota Engineering USA unjustly retained and/or any amounts necessary to return the Texas Plaintiffs and Texas State Class members to the position they occupied prior to dealing with them, with such amounts to be determined at trial.

4434. The Texas Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Texas Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, the Texas Plaintiffs would have no adequate legal remedy.

23.    **Washington**

    a.    **Washington Count 1: Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*) Against Toyota USA and Toyota Sales USA**

4435.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4436.  Plaintiff Dee Roberts (hereinafter, "Washington Plaintiff") brings this count individually and on behalf of members of the Washington State Class who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

4437.  Toyota USA Toyota Sales USA, the Washington Plaintiff, and Washington State Class members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

4438.  The Toyota Class Vehicles and defective ACUs installed in them are "assets" within the meaning of Wash. Rev. Code § 19.86.010(3).

4439.  Toyota USA and Toyota Sales USA are and were engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

4440.  The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code § 19.86.020.

4441.  In the course of their business, Toyota USA and Toyota Sales USA, through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Toyota Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

4442.  Toyota USA and Toyota Sales USA had an ongoing duty to the Washington Plaintiff and Washington State Class members to refrain from unfair or deceptive practices under the Washington CPA in the course of their business.

Specifically, Toyota USA and Toyota Sales USA owed the Washington Plaintiff and Washington State Class members a duty to disclose all the material facts concerning the ACU Defect in the Toyota Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the ACU Defect from the Washington Plaintiff and Washington State Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

4443. By misrepresenting the Toyota Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the ACU Defect to both consumers and NHTSA, Toyota USA and Toyota Sales USA engaged in unfair or deceptive business practices prohibited by Wash. Rev. Code § 19.86.020.

4444. Toyota USA's and Toyota Sales USA's unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Toyota Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Washington Plaintiff and Washington State Class members, about the true safety and reliability of Toyota Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Toyota Class Vehicles, and the true value of the Toyota Class Vehicles.

4445. Toyota USA's and Toyota Sales USA's misrepresentations, concealments, omissions, and suppressions of material facts regarding the ACU

Defect and true characteristics of the Occupant Restraint Systems in the Toyota Class Vehicles were material to the decisions of the Washington Plaintiff and Washington State Class members to purchase and lease those vehicles, as Toyota USA and Toyota Sales USA intended. The Washington Plaintiff and Washington State Class members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Toyota USA's and Toyota Sales USA's misrepresentations that the Toyota Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Toyota Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4446. The Washington Plaintiff's and Washington State Class members' reliance was reasonable, as they had no way of discerning that Toyota USA's and Toyota Sales USA's representations were false and misleading, or otherwise learning the facts that Toyota USA and Toyota Sales USA had concealed or failed to disclose. The Washington Plaintiff and Washington State Class members did not, and could not, unravel Toyota USA's and Toyota Sales USA's deception on their own.

4447. Had the Washington Plaintiff and Washington State Class members known the truth about the ACU Defect, the Washington Plaintiff and Washington State Class members would not have purchased or leased Toyota Class Vehicles, or would have paid significantly less for them.

4448. The Washington Plaintiff and Washington State Class members suffered ascertainable losses and actual damages through their overpayment at the time of purchase and lease for Toyota Class Vehicles with an undisclosed safety defect as a direct and proximate result of Toyota USA's and Toyota Sales USA's concealment, misrepresentations, and/or failure to disclose material information.

4449. Toyota USA's and Toyota Sales USA's violations present a continuing risk to the Washington Plaintiff and Washington State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and practices complained of herein affect the public interest.

4450. Pursuant to Wash. Rev. Code §§ 19.86.090, the Washington Plaintiff and Washington State Class members seek an order enjoining Toyota USA's and Toyota Sales USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Washington CPA.

**b.     Washington Count 2: Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia.**

4451. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4452. The Washington Plaintiff brings this count individually and on behalf of members of the Washington State Class against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4453. The ZF Defendants, the ST Defendants, the Washington Plaintiff, and Washington State Class members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

4454. The Class Vehicles and defective ACUs installed in them are "assets" within the meaning of Wash. Rev. Code § 19.86.010(3).

4455. The ZF and ST Defendants were and are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

4456. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code § 19.86.020.

4457. The ZF and ST Defendants had an ongoing duty to the Washington Plaintiff and Washington State Class members to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, the ZF and ST Defendants owed the Washington Plaintiff and Washington State Class members a duty to disclose all the material facts concerning the ACU Defect in the Class Vehicles because they possessed exclusive knowledge and they intentionally concealed the ACU Defect from the Washington Plaintiff and Washington State Class members.

4458. In the course of their business, the ZF and ST Defendants, through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally omitting, concealing, and failing to disclose material facts regarding the existence, nature, and scope of the defective ACU and ASIC installed in the Class Vehicles, as detailed above.

4459. Additionally, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA through their agents, employees, and/or subsidiaries, violated the Washington CPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4460. By misrepresenting, failing to disclose, and actively concealing the dangers and risk posed by the Class Vehicles due to the ACU Defect, the ZF and

ST Defendants engaged unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce prohibited by Wash. Rev. Code § 19.86.020.

4461. The ZF and ST Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Washington Plaintiff and Washington State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4462. The Washington Plaintiff and Washington State Class members justifiably relied on the ZF and ST Defendants' misrepresentations, omissions, and concealment, as they had no way of discerning that the Class Vehicles contained the ACU Defect, as alleged above. The Washington Plaintiff and Washington State Class members did not, and could not, unravel the ZF and ST Defendants' deception on their own

4463. The ZF and ST Defendants' misrepresentations and concealment of the ACU Defect and true characteristics of the defective ACUs and ASICs in the Class Vehicles were material to the decisions of the Washington Plaintiff and Washington State Class members to purchase and lease Class Vehicles, as the ZF and ST Defendants intended. Had they known the truth, the Washington Plaintiff and Washington State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4464. The Washington Plaintiff and Washington State Class members suffered ascertainable losses and actual damages as a direct and proximate result of the ZF and ST Defendants' misrepresentations, concealment and/or failure to disclose material information.

4465. The ZF and ST Defendants' violations present a continuing risk to the Washington Plaintiff and Washington State Class members, as well as to the general public, because the Class Vehicles remain unsafe due to the defective ACUs and ASICs therein. The ZF and ST Defendants' unlawful acts and practices complained of herein affect the public interest.

4466. Pursuant to Wash. Rev. Code §§ 19.86.090, the Washington Plaintiff and Washington State Class members seek an order enjoining the ZF and ST Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Washington CPA.

    **c.**    **Washington Count 3: Fraud by Omission and Concealment Against Toyota USA and Toyota Sales USA**

4467. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4468. The Washington Plaintiff brings this count individually and on behalf of members of the Washington State Class who purchased or leased Toyota Class Vehicles, against Toyota USA and Toyota Sales USA.

4469. Toyota USA and Toyota Sales USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4470. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for

the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4471. Toyota USA and Toyota Sales USA had a duty to disclose the ACU Defect to the Washington Plaintiff and Washington State Class members because:

a. Toyota USA and Toyota Sales USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b. Given the ACU Defect's hidden and technical nature, the Washington Plaintiff and Washington State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c. Toyota USA and Toyota Sales USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Toyota Class Vehicles containing the ACU Defect would have been a material fact to the Washington Plaintiff's and Washington State Class members' decisions to buy or lease Toyota Class Vehicles; and

d. Toyota USA and Toyota Sales USA made incomplete representations about the safety and reliability of the Toyota Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Toyota USA and Toyota Sales USA intentionally concealed, suppressed, and failed to disclose to the Washington Plaintiff and Washington State Class members that the Toyota

Class Vehicles contained the ACU Defect. Because they
volunteered to provide information about the Toyota Class
Vehicles that they marketed and offered for sale and lease to the
Washington Plaintiff and Washington State Class members,
Toyota USA and Toyota Sales USA had the duty to disclose the
whole truth.

4472. In breach of their duties, Toyota USA and Toyota Sales USA failed to disclose that the Toyota Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4473. Toyota USA and Toyota Sales USA intended for the Washington Plaintiff and Washington State Class members to rely on their omissions—which they did by purchasing and leasing the Toyota Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4474. That reliance was reasonable, because a reasonable consumer would not have expected that the Toyota Class Vehicles contained a safety defect that poses such a serious risk. Toyota USA and Toyota Sales USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4475. Additionally, Toyota USA and Toyota Sales USA ensured that the Washington Plaintiff and Washington State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Toyota Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4476. Toyota USA and Toyota Sales USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Washington Plaintiff and Washington State Class members.

4477. To this day, Toyota USA and Toyota Sales USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Toyota Class Vehicles purchased or leased by the Washington Plaintiff and Washington State Class members.

4478. Had they been aware of the ACU Defect in the Toyota Class Vehicles, and Toyota USA's and Toyota Sales USA's callous disregard for safety, the Washington Plaintiff and Washington State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4479. As alleged in Section V above, if Toyota USA and Toyota Sales USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Washington Plaintiff and Washington State Class members would have seen such a disclosure.

4480. Accordingly, Toyota USA and Toyota Sales USA are liable to the Washington Plaintiff and Washington State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Toyota Class Vehicles at the time of purchase or lease.

4481. Toyota USA's and Toyota Sales USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the

1    Washington Plaintiff's and Washington State Class members' rights and well-

2    being; and to enrich themselves. Toyota USA's and Toyota Sales USA's

3    misconduct warrants an assessment of punitive damages, as permitted by law, in an

4    amount sufficient to deter such conduct in the future, which amount shall be

5    determined according to proof at trial.

6            **d.      Washington Count 4: Fraud by Omission and Concealment
                      Against ZF Electronics USA, ZF Passive Safety USA, ZF
7                     Automotive USA, ZF TRW Corp., ZF Germany, ST Italy,
                      ST USA, and ST Malaysia**
8

9            4482. Plaintiffs reallege and incorporate by reference all preceding

10   allegations as though fully set forth herein.

11           4483. The Washington Plaintiff brings this count individually and on behalf

12   of members of the Washington State Class who purchased or leased Class Vehicles,

13   against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF

14   TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST

15   Malaysia, and ST USA (collectively, the "ST Defendants").

16           4484. The ZF and ST Defendants are liable for both fraudulent concealment

17   and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

18           4485. As explained in Section IV.A, the ACU Defect in Class Vehicles poses

19   serious risks to vehicle occupants, including that it can cause: (1) airbags and

20   seatbelts not to activate during a crash because crashes can sometimes release

21   electrical transients, which cause the ACU to fail; (2) airbags to deploy when the

22   vehicle has not crashed, which is dangerous because it is shocking and difficult for

23   the driver to operate a vehicle when the airbag deploys without warning; and (3)

24   failures of other important post-crash operations of the safety system, such as

25   unlocking doors to facilitate escape or extraction of drivers and passengers by

26   emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

27           4486. The ZF and ST Defendants had a duty to disclose the ACU Defect to

28   the Washington Plaintiff and Washington State Class members because:

a.    The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.    Given the ACU Defect's hidden and technical nature, the Washington Plaintiff and Washington State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Washington Plaintiff's and Washington State Class members' decisions to buy or lease Class Vehicles; and

d.    The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4487. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint

Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4488. The ZF and ST Defendants intended for the Washington Plaintiff and Washington State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4489. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4490. Additionally, the ZF and ST Defendants ensured that the Washington Plaintiff and Washington State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4491. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Washington Plaintiff and Washington State Class members.

4492. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were

material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Washington Plaintiff and Washington State Class members.

4493. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Washington Plaintiff and Washington State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4494. As alleged in Section V above, if the ZF and ST Defendants had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Washington Plaintiff and Washington State Class members would have seen such a disclosure.

4495. Accordingly, the ZF and ST Defendants are liable to the Washington Plaintiff and Washington State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

4496. The ZF and ST Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Washington Plaintiff's and Washington State Class members' rights and well-being; and to enrich themselves. The ZF and ST Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**e.** **Washington Count 5: Unjust Enrichment Against Toyota USA, Toyota Sales USA, and Toyota Engineering USA**

4497. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

4498. The Washington Plaintiff brings this count individually and on behalf of members of the Washington State Class who purchased or leased Toyota Class Vehicles, against Toyota USA, Toyota Sales USA, and Toyota Engineering USA.

4499. The Washington Plaintiff and Washington State Class members conferred tangible and material monetary benefits upon Toyota USA, Toyota Sales USA, and Toyota Engineering USA when they purchased or leased the Toyota Class Vehicles. Toyota USA, Toyota Sales USA, and Toyota Engineering USA readily accepted and retained these benefits.

4500. The Washington Plaintiff and Washington State Class members would not have purchased or leased the Toyota Class Vehicles, or would have paid less for them, had they known of the ACU Defect at the time of purchase or lease. Therefore, Toyota USA, Toyota Sales USA, and Toyota Engineering USA profited from the sale and lease of the Toyota Class Vehicles to the detriment and expense of the Washington Plaintiff and Washington State Class members.

4501. Toyota USA, Toyota Sales USA, and Toyota Engineering USA appreciated these monetary benefits. These benefits were the expected result of Toyota USA, Toyota Sales USA, and Toyota Engineering USA acting in their pecuniary interest at the expense of their customers. Toyota USA, Toyota Sales USA, and Toyota Engineering USA knew of these benefits because they were aware of the ACU Defect, yet they failed to disclose this knowledge and misled the Washington Plaintiff and Washington State Class members regarding the nature and quality of the Toyota Class Vehicles while profiting from this deception.

4502. It would be unjust, inequitable, and unconscionable for Toyota USA, Toyota Sales USA, and Toyota Engineering USA to retain these monetary benefits, including because they were procured as a result of Toyota USA's, Toyota Sales USA's, and Toyota Engineering USA's wrongful conduct alleged above.

4503. The Washington Plaintiff and Washington State Class members are entitled to restitution of the benefits Toyota USA, Toyota Sales USA, and Toyota

Engineering USA unjustly retained and/or any amounts necessary to return the Washington Plaintiff and Washington State Class members to the position they occupied prior to dealing with Toyota USA, Toyota Sales USA, and Toyota Engineering USA, with such amounts to be determined at trial.

4504. The Washington Plaintiff pleads this claim separately as well as in the alternative to his claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Washington Plaintiff's claims for damages are dismissed or judgment is entered in favor of Defendants, the Washington Plaintiff would have no adequate legal remedy.

### 24. Wisconsin

#### a. Wisconsin Count 1: Breach of Express Warranty (Wis. Stat. §§ 402.313 and 411.210) Against Mitsubishi Japan and Mitsubishi USA[22]

4505. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4506. Plaintiff John Sancomb (hereinafter, "Wisconsin Plaintiff") brings this count individually and on behalf of members of the Wisconsin State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

4507. Mitsubishi Japan and Mitsubishi USA are and were at all relevant times "merchants" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

4508. With respect to leases, Mitsubishi Japan and Mitsubishi USA are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

---

[22] The Court held in its February 9, 2022 Order that the Wisconsin Plaintiff has pleaded sufficient facts to state a claim for breach of express warranty against MMNA under Wisconsin law. *See* ECF No. 396 at 169.

4509. All Wisconsin State Class members who purchased Mitsubishi Class Vehicles in Wisconsin are "buyers" within the meaning of Wis. Stat. § 402.103(1)(a).

4510. All Wisconsin State Class members who leased Mitsubishi Class Vehicles in Wisconsin are "lessees" within the meaning of Wis. Stat. § 411.103(1)(n).

4511. The Mitsubishi Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

4512. In connection with the purchase or lease of Mitsubishi Class Vehicles, Mitsubishi Japan and Mitsubishi USA provided the Wisconsin Plaintiff and Wisconsin State Class members with warranties in the form of: (a) written express warranties covering the repair or replacement of components that are defective in materials or workmanship, and (b) descriptions of the Mitsubishi Class Vehicles as safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners, would function properly in the event of a crash

4513. However, Mitsubishi Japan and Mitsubishi USA knew or should have known that the warranties were false and/or misleading. Specifically, Mitsubishi Japan and Mitsubishi USA were aware of the ACU Defect in the Mitsubishi Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Wisconsin Plaintiff and Wisconsin State Class members.

4514. The Wisconsin Plaintiff and Wisconsin State Class members were aware the Mitsubishi Class Vehicles were covered by express warranties, and those warranties were an essential part of the bargain between them, Mitsubishi Japan, and Mitsubishi USA when the Wisconsin Plaintiff and Wisconsin State Class members unknowingly purchased and leased Mitsubishi Class Vehicles that came equipped with defective ACUs and ASICs.

4515. Mitsubishi Japan and Mitsubishi USA misrepresented the Mitsubishi Class Vehicles as safe and reliable while concealing that they contained the ACU Defect, the Wisconsin Plaintiff and Wisconsin State Class members were exposed to those misrepresentations, and the Wisconsin Plaintiff and Wisconsin State Class members had no way of discerning that Mitsubishi Japan's and Mitsubishi USA's representations were false and misleading or otherwise learning the material facts that Mitsubishi Japan and Mitsubishi USA had concealed or failed to disclose. Accordingly, the Wisconsin Plaintiff and Wisconsin State Class members reasonably relied on Mitsubishi Japan's and Mitsubishi USA's express warranties when purchasing or leasing their Mitsubishi Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4516. Mitsubishi Japan and Mitsubishi USA knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the ACU Defect or replace the defective ACUs and ASICs in the Mitsubishi Class Vehicles. Mitsubishi Japan and Mitsubishi USA also breached their express warranties by selling and leasing Mitsubishi Class Vehicles with a defect that was never disclosed to the Wisconsin Plaintiff and Wisconsin State Class members.

4517. The Wisconsin Plaintiff and Wisconsin State Class members have provided Mitsubishi Japan and Mitsubishi USA with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against it, and individual notice letters sent by the Wisconsin State Class members within a reasonable amount of time after the ACU Defect became public. Additionally, a notice letter was sent on behalf of the Wisconsin Plaintiff and Wisconsin State Class members to Mitsubishi USA on April 24, 2020, and a notice letter was sent to Mitsubishi Japan on June 5, 2020.[23]

---

[23] The Court held in its February 9, 2022 Order that the Wisconsin Plaintiff adequately alleged that he provided the requisite notice to Mitsubishi USA, *see*

4518.  Alternatively, the Wisconsin Plaintiff and Wisconsin State Class members were excused from providing Mitsubishi Japan and Mitsubishi USA with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Mitsubishi Japan and Mitsubishi USA have long known that the Mitsubishi Class Vehicles contained the ACU Defect, and that the ACU Defect has caused ACUs and ASICs to malfunction in crashes involving Class Vehicles; however, to date, Mitsubishi Japan and Mitsubishi USA have not instituted a recall or any other repair program, or even acknowledged that the ACU Defect exists— even though Mitsubishi Class Vehicles are subject to the NHTSA investigation. Therefore, the Mitsubishi Plaintiff and Mitsubishi State Class members had no reason to believe that Mitsubishi Japan and Mitsubishi USA would have repaired the ACU Defect if the Wisconsin Plaintiff and Wisconsin State Class members presented their Class Vehicles to Mitsubishi Japan and Mitsubishi USA for repair.

4519.  As a direct and proximate result of Mitsubishi Japan's and Mitsubishi USA's breach of their express warranties, the Mitsubishi Class Vehicles were and are defective and the ACU Defect in the Wisconsin Plaintiff's and Wisconsin State Class members' Mitsubishi Class Vehicles was not remedied. Therefore, the Wisconsin Plaintiff and Wisconsin State Class members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase or lease for Mitsubishi Class Vehicles with an undisclosed safety defect that would not be remedied.

**b.**     **Wisconsin Count 2: Violation of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. § 100.18, *et seq.*) Against Mitsubishi Japan and Mitsubishi USA**

4520.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

ECF No. 396 at 169, but failed to, "include sufficient allegations that notice was provided [to Mitsubishi Japan]. *Id.* The Wisconsin Plaintiff has amended this claim to include the date in which he sent Mitsubishi Japan a notice letter.

4521. The Wisconsin Plaintiff brings this count individually and on behalf of members of the Wisconsin State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

4522. Mitsubishi Japan and Mitsubishi USA are "person[s], firm[s], corporation[s], or association[s]" within the meaning of Wis. Stat. § 100.18(1).

4523. The Wisconsin Plaintiff and Wisconsin State Class are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

4524. The Mitsubishi Class Vehicles and the defective ACUs installed in them are "merchandise" within the meaning of Wis. Stat. § 100.18(1).

4525. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

4526. In the course of their business, Mitsubishi Japan and Mitsubishi USA, through their agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting material facts regarding the reliability, safety, and performance of the Mitsubishi Class Vehicles, the safety of their Occupant Restraint Systems, and the ACU Defect, as detailed above.

4527. By misrepresenting the Mitsubishi Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects, Mitsubishi Japan and Mitsubishi USA violated the Wisconsin DTPA by making assertions, representations and statements of fact which are untrue, deceptive or misleading, as prohibited by Wis. Stat. § 100.18(1).

4528. Mitsubishi Japan's and Mitsubishi USA's misrepresentations of material facts were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Mitsubishi Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those

misrepresentations of material facts did in fact deceive reasonable consumers, including the Wisconsin Plaintiff and Wisconsin State Class members, about the true safety and reliability of Mitsubishi Class Vehicles and/or the defective ACUs and ASICs installed in them, the quality of the Mitsubishi Class Vehicles, and the true value of the Mitsubishi Class Vehicles.

4529. Mitsubishi Japan's and Mitsubishi USA's misrepresentations of material facts regarding the ACU Defect and true characteristics of the Occupant Restraint Systems in the Mitsubishi Class Vehicles were material to the decisions of the Wisconsin Plaintiff and Wisconsin State Class members to purchase and lease those vehicles, as Mitsubishi Japan and Mitsubishi USA intended. The Wisconsin Plaintiff and Wisconsin State Class members were exposed to those misrepresentations of material facts, and relied on Mitsubishi Japan's and Mitsubishi USA's misrepresentations that the Mitsubishi Class Vehicles and their Occupant Restraint Systems were safe and reliable in deciding to purchase and lease Mitsubishi Class Vehicles. Plaintiffs allege the information they relied upon in Section II.B above. To aid review of this information, Exhibit 19 provides paragraph numbers for each Plaintiff.

4530. The Wisconsin Plaintiff's and Wisconsin State Class members' reliance was reasonable, as they had no way of discerning that Mitsubishi Japan's and Mitsubishi USA's representations were false and misleading. The Wisconsin Plaintiff and Wisconsin State Class members did not, and could not, unravel Mitsubishi Japan's and Mitsubishi USA's deception on their own.

4531. Had the Wisconsin Plaintiff and Wisconsin State Class members known the truth about the ACU Defect, the Wisconsin Plaintiff and Wisconsin State Class members would not have purchased or leased Mitsubishi Class Vehicles, or would have paid significantly less for them.

4532. The Wisconsin Plaintiff and Wisconsin State Class members suffered ascertainable losses and actual damages through their overpayment at the time of

1  purchase and lease for Mitsubishi Class Vehicles with an undisclosed safety defect

2  as a direct and proximate result of Mitsubishi Japan's and Mitsubishi USA's

3  misrepresentations of material information.

4      4533. Mitsubishi Japan's and Mitsubishi USA's violations present a

5  continuing risk to the Wisconsin Plaintiff and Wisconsin State Class members, as

6  well as to the general public, because the Mitsubishi Class Vehicles remain unsafe

7  due to the defective ACUs and ASICs therein. Additionally, their unlawful acts and

8  practices complained of herein affect the public interest.

9      4534. Pursuant to Wis. Stat. § 100.18(11)(b)(2), the Wisconsin Plaintiff and

10  Wisconsin State Class members seek an order enjoining Mitsubishi Japan's and

11  Mitsubishi USA's unfair or deceptive acts or practices and awarding damages and

12  any other just and proper relief available under the Wisconsin DTPA.

13          **c.**      **Wisconsin Count 3: Violation of the Wisconsin Deceptive**

14                    **Trade Practices Act (Wis. Stat. § 100.18, *et seq.*) Against ZF Electronics USA, ZF Passive Safety USA, and ZF**

15                    **Automotive USA**

16      4535. Plaintiffs reallege and incorporate by reference all preceding

17  allegations as though fully set forth herein.

18      4536. The Wisconsin Plaintiff brings this count individually and on behalf of

19  members of the Wisconsin State Class against ZF Electronics USA, ZF Passive

20  Safety USA, and ZF Automotive USA.

21      4537. ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive

22  USA are "person[s], firm[s], corporation[s], or association[s]" within the meaning

23  of Wis. Stat. § 100.18(1).

24      4538. The Wisconsin Plaintiff and Wisconsin State Class are members of

25  "the public" within the meaning of Wis. Stat. § 100.18(1).

26      4539. The Class Vehicles and the defective ACUs installed in them are

27  "merchandise" within the meaning of Wis. Stat. § 100.18(1).

28

4540. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

4541. ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA, through their agents, employees, and/or subsidiaries, violated the Wisconsin DTPA when they knowingly and intentionally misrepresented the Class Vehicles as safe and reliable and the defective ACU and ASICs installed in them as properly-functioning and free from defects. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4542. By misrepresenting the Occupant Restraint Systems in the Class Vehicles as properly-functioning and free from defects, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA violated the Wisconsin DTPA by making assertions, representations and statements of fact which are untrue, deceptive or misleading, as prohibited by Wis. Stat. § 100.18(1).

4543. ZF Electronics USA's, ZF Passive Safety USA's, and ZF Automotive USA's misrepresentations of material facts were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had properly-functioning and reliable airbags and seatbelts, and that the Occupant Restraint System did not contain the ACU Defect and would perform its intended function of activating the seatbelts and airbags during a collision. Indeed, those misrepresentations of material facts did in fact deceive reasonable consumers, including the Wisconsin Plaintiff and Wisconsin State Class members, about the true safety and reliability of Class Vehicles and/or the defective ACUs

1  and ASICs installed in them, the quality of the Class Vehicles, and the true value of

2  the Class Vehicles.

3      4544. The Wisconsin Plaintiff and Wisconsin State Class members

4  justifiably relied on ZF Electronics USA's, ZF Passive Safety USA's, and ZF

5  Automotive USA's misrepresentations as they had no way of discerning that the

6  Class Vehicles contained the ACU Defect, as alleged above. The Wisconsin

7  Plaintiff and Wisconsin State Class members did not, and could not, unravel ZF

8  Electronics USA's, ZF Passive Safety USA's, and ZF Automotive USA's deception

9  on their own.

10      4545. ZF Electronics USA's, ZF Passive Safety USA's, and ZF Automotive

11  USA's misrepresentations regarding the Occupant Restraint Systems in the Class

12  Vehicles were material to the decisions of the Wisconsin Plaintiff and Wisconsin

13  State Class members to purchase and lease Class Vehicles, as they intended. Had

14  they known the truth, the Wisconsin Plaintiff and Wisconsin State Class members

15  would not have purchased or leased the Class Vehicles, or would have paid

16  significantly less for them.

17      4546. The Wisconsin Plaintiff and Wisconsin State Class members suffered

18  ascertainable losses and actual damages as a direct and proximate result of ZF

19  Electronics USA's, ZF Passive Safety USA's, and ZF Automotive USA's

20  misrepresentations.

21      4547. ZF Electronics USA's, ZF Passive Safety USA's, and ZF Automotive

22  USA's violations present a continuing risk to the Wisconsin Plaintiff and

23  Wisconsin State Class members, as well as to the general public, because the Class

24  Vehicles remain unsafe due to the defective ACUs and ASICs therein. ZF

25  Electronics USA's, ZF Passive Safety USA's, and ZF Automotive USA's unlawful

26  acts and practices complained of herein affect the public interest.

27      4548. Pursuant to Wis. Stat. § 100.18(11)(b)(2), the Wisconsin Plaintiff and

28  Wisconsin State Class members seek an order enjoining ZF Electronics USA's, ZF

- 1325 -

Passive Safety USA's, and ZF Automotive USA's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Wisconsin DTPA.

### d. Wisconsin Count 4: Fraud by Omission and Concealment Against Mitsubishi Japan and Mitsubishi USA

4549. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4550. The Wisconsin Plaintiff brings this count individually and on behalf of members of the Wisconsin State Class who purchased or leased Mitsubishi Class Vehicles, against Mitsubishi Japan and Mitsubishi USA.

4551. Mitsubishi Japan and Mitsubishi USA are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4552. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4553. Mitsubishi Japan and Mitsubishi USA had a duty to disclose the ACU Defect to the Wisconsin Plaintiff and Wisconsin State Class members because:

a. Mitsubishi Japan and Mitsubishi USA had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.    Given the ACU Defect's hidden and technical nature, the Wisconsin Plaintiff and Wisconsin State Class members lack the sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.    Mitsubishi Japan and Mitsubishi USA knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Mitsubishi Class Vehicles containing the ACU Defect would have been a material fact to the Wisconsin Plaintiff's and Wisconsin State Class members' decisions to buy or lease Mitsubishi Class Vehicles; and

d.    Mitsubishi Japan and Mitsubishi USA made incomplete representations about the safety and reliability of the Mitsubishi Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Mitsubishi Japan, and Mitsubishi USA intentionally concealed, suppressed, and failed to disclose to the Wisconsin Plaintiff and Wisconsin State Class members that the Mitsubishi Class Vehicles contained the ACU Defect. Because they volunteered to provide information about the Mitsubishi Class Vehicles that they marketed and offered for sale and lease to the Wisconsin Plaintiff and Wisconsin State Class members, Mitsubishi Japan and Mitsubishi USA had the duty to disclose the whole truth.

4554. In breach of their duties, Mitsubishi Japan and Mitsubishi USA failed to disclose that the Mitsubishi Class Vehicles were not safe and reliable, and that

their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4555. Mitsubishi Japan and Mitsubishi USA intended for the Wisconsin Plaintiff and Wisconsin State Class members to rely on their omissions—which they did by purchasing and leasing the Mitsubishi Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4556. That reliance was reasonable, because a reasonable consumer would not have expected that the Mitsubishi Class Vehicles contained a safety defect that poses such a serious risk. Mitsubishi Japan and Mitsubishi USA knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4557. Additionally, Mitsubishi Japan and Mitsubishi USA ensured that the Wisconsin Plaintiff and Wisconsin State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Mitsubishi Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4558. Mitsubishi Japan and Mitsubishi USA actively concealed and suppressed these material facts, in whole or in part, to maintain a market for their Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Wisconsin Plaintiff and Wisconsin State Class members.

4559. To this day, Mitsubishi Japan and Mitsubishi USA have not fully and adequately disclosed the ACU Defect, and they continue to conceal material

information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Mitsubishi Class Vehicles purchased or leased by the Wisconsin Plaintiff and Wisconsin State Class members.

4560. Had they been aware of the ACU Defect in the Mitsubishi Class Vehicles, and Mitsubishi Japan's and Mitsubishi USA's callous disregard for safety, the Wisconsin Plaintiff and Wisconsin State Class members either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

4561. As alleged in Section V above, if Mitsubishi Japan and Mitsubishi USA had fully and adequately disclosed the ACU Defect to consumers and NHTSA, the Wisconsin Plaintiff and Wisconsin State Class members would have seen such a disclosure.

4562. Accordingly, Mitsubishi Japan and Mitsubishi USA are liable to the Wisconsin Plaintiff and Wisconsin State Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Mitsubishi Class Vehicles at the time of purchase or lease.

4563. Mitsubishi Japan's and Mitsubishi USA's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Wisconsin Plaintiff's and Wisconsin State Class members' rights and well-being; and to enrich themselves. Mitsubishi Japan's and Mitsubishi USA's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**e.  Wisconsin Count 5: Fraud by Omission and Concealment Against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., ZF Germany, ST Italy, ST USA, and ST Malaysia**

4564. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4565. The Wisconsin Plaintiff brings this count individually and on behalf of members of the Wisconsin State Class who purchased or leased Class Vehicles, against ZF Electronics USA, ZF Passive Safety USA, ZF Automotive USA, ZF TRW Corp., and ZF Germany (collectively, the "ZF Defendants"), and ST Italy, ST Malaysia, and ST USA (collectively, the "ST Defendants").

4566. The ZF and ST Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

4567. As explained in Section IV.A, the ACU Defect in Class Vehicles poses serious risks to vehicle occupants, including that it can cause: (1) airbags and seatbelts not to activate during a crash because crashes can sometimes release electrical transients, which cause the ACU to fail; (2) airbags to deploy when the vehicle has not crashed, which is dangerous because it is shocking and difficult for the driver to operate a vehicle when the airbag deploys without warning; and (3) failures of other important post-crash operations of the safety system, such as unlocking doors to facilitate escape or extraction of drivers and passengers by emergency personnel, and shutting off a crashed vehicle's fuel or power supply.

4568. The ZF and ST Defendants had a duty to disclose the ACU Defect to the Wisconsin Plaintiff and Wisconsin State Class members because:

a.  The ZF and ST Defendants had exclusive access to and far superior knowledge about technical facts regarding the ACU Defect;

b.  Given the ACU Defect's hidden and technical nature, the Wisconsin Plaintiff and Wisconsin State Class members lack the

- 1330 -

sophisticated expertise in vehicle components and electrical phenomena that would be necessary to discover the ACU Defect on their own;

c.   The ZF and ST Defendants knew that the ACU Defect gave rise to serious safety concerns for the consumers who use the vehicles, and the Class Vehicles containing the ACU Defect would have been a material fact to the Wisconsin Plaintiff's and Wisconsin State Class members' decisions to buy or lease Class Vehicles; and

d.   The ZF Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their Occupant Restraint System, while purposefully withholding material facts about a known safety defect, creating a duty to disclose the whole truth. Specifically, ZF Electronics USA, ZF Passive Safety USA, and ZF Automotive USA worked with the Vehicle Manufacturer Defendants on the design and inclusion of the airbag readiness indicators in the Class Vehicles, which falsely assured Plaintiffs and Class Members that the Occupant Restraint Systems in the Class Vehicles would function properly in a crash.

4569. In breach of their duties, the ZF and ST Defendants failed to disclose that the Class Vehicles were not safe and reliable, and that their Occupant Restraint Systems, including their airbags and seatbelt pretensioners could fail in the event of a crash due to the ACU Defect.

4570. The ZF and ST Defendants intended for the Wisconsin Plaintiff and Wisconsin State Class members to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that the Occupant Restraint Systems in their Class Vehicles would function properly.

4571. That reliance was reasonable, because a reasonable consumer would not have expected that the Class Vehicles contained a safety defect that poses such a serious risk. The ZF and ST Defendants knew that reasonable consumers expect that their vehicle has working airbags and seatbelt pretensioners and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Especially here when at least nine people have already died due to the ACU Defect, and many more have been injured.

4572. Additionally, the ZF and ST Defendants ensured that the Wisconsin Plaintiff and Wisconsin State Class members did not discover this information by actively concealing and misrepresenting the true nature of the Class Vehicles' Occupant Restraint Systems to consumers and NHTSA.

4573. The ZF and ST Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the DS84 ACU, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of the Wisconsin Plaintiff and Wisconsin State Class members.

4574. To this day, the ZF and ST Defendants have not fully and adequately disclosed the ACU Defect, and they continue to conceal material information about the defect from consumers and NHTSA. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Wisconsin Plaintiff and Wisconsin State Class members.

4575. Had they been aware of the ACU Defect in the Class Vehicles, and the ZF and ST Defendants' callous disregard for safety, the Wisconsin Plaintiff and

1  Wisconsin State Class members either would not have paid as much as they did for

2  their Class Vehicles, or they would not have purchased or leased them.

3      4576. As alleged in Section V above, if the ZF and ST Defendants had fully

4  and adequately disclosed the ACU Defect to consumers and NHTSA, the

5  Wisconsin Plaintiff and Wisconsin State Class members would have seen such a

6  disclosure.

7      4577. Accordingly, the ZF and ST Defendants are liable to the Wisconsin

8  Plaintiff and Wisconsin State Class members for their damages in an amount to be

9  proven at trial, including, but not limited to, their lost overpayment for the Class

10  Vehicles at the time of purchase or lease.

11      4578. The ZF and ST Defendants' acts were done maliciously, oppressively,

12  deliberately, with intent to defraud; in reckless disregard of the Wisconsin

13  Plaintiff's and Wisconsin State Class members' rights and well-being; and to enrich

14  themselves. The ZF and ST Defendants' misconduct warrants an assessment of

15  punitive damages, as permitted by law, in an amount sufficient to deter such

16  conduct in the future, which amount shall be determined according to proof at trial.

17                  **VIII. <u>PRAYER FOR RELIEF</u>**

18      4579. Plaintiffs, on behalf of themselves and all others similarly situated,

19  respectfully request the Court to grant certification of the proposed Classes and

20  enter judgment against the Defendants, as follows:

21             a.    An order certifying the proposed Classes, designating Plaintiffs

22                  as the named representatives of the Class, designating the

23                  undersigned as Class Counsel, and making such further orders

24                  for the protection of Class members as the Court deems

25                  appropriate, under Fed. R. Civ. P. 23;

26             b.    An order enjoining the Vehicle Manufacturer Defendants to

27                  desist from further deceptive distribution, sales, and lease

28

1    practices with respect to the Class Vehicles and such other

2    injunctive relief that the Court deems just and proper;

3    c.    An award to Plaintiffs and Class Members of compensatory,

4          exemplary, treble, and punitive remedies and damages and

5          statutory penalties, including interest, in an amount to be proven

6          at trial;

7    d.    An award to Plaintiffs and Class Members for the return of the

8          purchase prices of the Class Vehicles, with interest from the

9          time it was paid, for the reimbursement of the reasonable

10         expenses occasioned by the sale, for damages, and for

11         reasonable attorney fees;

12   e.    A Defendant-funded program, using transparent, consistent, and

13         reasonable protocols, under which out-of-pocket and loss-of-use

14         expenses and damages claims associated with the Defective

15         ACUs in Plaintiffs' and Class Members' Class Vehicles, can be

16         made and paid, such that the Defendants, not the Class

17         Members, absorb the losses and expenses fairly traceable to the

18         recalls of the vehicles and correction of the defective DS84

19         ACUs;

20   f.    A declaration that the Defendants must disgorge, for the benefit

21         of Plaintiffs and Class Members, all or part of the ill-gotten

22         profits they received from the sale or lease of the Class Vehicles

23         or make full restitution to Plaintiffs and Class Members;

24   g.    An award of attorneys' fees and costs, as allowed by law;

25   h.    An award of any and all applicable statutory and civil penalties;

26   i.    An award of prejudgment and post judgment interest, as

27         provided by law;

28

j.   Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

k.   Such other relief as may be appropriate, just, and equitable under the circumstances.

## IX.   DEMAND FOR JURY TRIAL

4580. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated: May 26, 2022

Respectfully submitted,

/s/ *Roland Tellis*
Roland Tellis

BARON & BUDD, P.C.
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
Facsimile: 818-986-9698

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com
Katherine McBride
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
Phong-Chau G. Nguyen (SBN 286789)
pgnguyen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

*Co-Lead Counsel for Plaintiffs*

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500

Burbank, CA 91505
Telephone: 310.474.9111
Facsimile: 310.474.8585

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
W. Daniel "Dee" Miles, III (ASB-7656-M75W)
Dee.Miles@Beasleyallen.com
H. Clay Barnett, III (ASB-4878-N68B)
Clay.Barnett@Beasleyallen.com
J. Mitch Williams (ASB-8560-X19D)
Mitch.Wlliams@Beasleyallen.com
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343

BLEICHMAR FONTI & AULD LLP
Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
Anne K. Davis (SBN 267909)
adavis@bfalaw.com
Joshua Samra (SBN 313050)
jsamra@bfalaw.com
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

BOIES SCHILLER FLEXNER LLP
Stephen N. Zack (FBN: 145215)
szack@bsfllp.com
Tyler E. Ulrich (FBN: 94705)
tulrich@bsfllp.com
Ryan B. Witte (FBN: 60628)
rwitte@bsfllp.com
100 South East 2nd Street, Suite 2800
Miami, FL 33131
Telephone: 305-539-8400

CASEY GERRY SCHENK
FRANCAVILLA
BLATT & PENFIELD, LLP
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
Patricia Camille Guerra
camille@cglaw.com

110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

DICELLO LEVITT GUTZLER LLC
Adam J. Levitt (*pro hac vice*)
alevitt@dicellolevitt.com
Ten North Dearborn Street, Eleventh
Floor
Chicago, Illinois 60602
Telephone: 312-214-7900

GIBBS LAW GROUP LLP
Rosemary M Rivas
1111 Broadway Suite 2100
Oakland, CA 94607
510-350-9700
Fax: 510-350-9701
Email: rmr@classlawgroup.com

KELLER ROHRBACK L.L.P
Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

KESSLER TOPAZ MELTZER AND
CHECK LLP
Joseph H Meltzer (*pro hac vice*)
jmeltzer@ktmc.com
280 King of Prussia Road
Radnor, PA 19807
Telephone: 610-667-7706
Facsimile: 610-667-7056

PODHURST ORSECK, P.A.
Peter Prieto (FBN 501492)
pprieto@podhurst.com
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382

PRITZKER LEVINE LLP
Jonathan K. Levine (SBN 220289)
jkl@pritkzkerlevine.com
Elizabeth C. Pritzker
ecp@pritzkerlevine.com
1900 Powell Street, Suite 450
Emeryville, California 94608
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

ROBBINS GELLER RUDMAN
& DOWD LLP
Mark J. Dearman
mdearman@rgrdlaw.com
Jason H. Alperstein
jalperstein@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
Rachel L. Jensen (CBN 211456)
rjensen@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBINS KAPLAN LLP
Stacey P. Slaughter (MN Bar No.
0296971)
Sslaughter@robinskaplan.com
J. Austin Hurt (MN Bar No. 0391802)
Ahurt@robinskaplan.com
Michael J. Pacelli (MN Bar No.
0399484)
Mpacelli@robinskaplan.com
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I certify that on May 26, 2022, a copy of the foregoing **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** was served electronically through the Court's electronic filing system upon all Parties appearing on the Court's ECF service list.

DATED: May 26, 2022           */s/ Roland Tellis*
                                      Roland Tellis