UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**  **(IN CHAMBERS) ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(E) (DKT. 747)**

## I.  Introduction

On August 8, 2019, this multi-district litigation ("MDL") was established and assigned to this Court. Dkt. 1. The MDL concerns airbag control units ("ACUs") that were allegedly defective because they contained a specific component part that is vulnerable to electrical overstress ("EOS"). The alleged defect can result in the failure of airbags in a vehicle to deploy during a collision.

On July 15, 2020, Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation (collectively, "Toyota" or the "Toyota Defendants") filed the Toyota Defendants' Motion to Stay Based on Primary Jurisdiction and to Sever Pursuant to F.R.C.P. Rule 21 (the "Motion to Sever"). Dkt. 191. On August 20, 2021, the Motion to Sever was denied. Dkt. 363.

On July 27, 2020, eight groups of defendants, including the Toyota Defendants, filed individual motions to dismiss, as well as a joint motion to dismiss. Those motions were heard on January 25, 2021, and were taken under submission. On February 9, 2022, an order issued granting the motions in part and denying the motions in part. Dkt. 396.

On December 10, 2020, Toyota filed a Motion to Compel Plaintiffs Alejandra Renteria and Mark Altier to Arbitration (the "Motion to Compel Arbitration"). Dkt. 305. On September 27, 2021, the Motion to Compel Arbitration was denied. Dkt. 374.

On May 26, 2022, a Consolidated Amended Class Action Complaint ("ACAC"), which is the operative one, was filed. Dkt. 477.

On May 26, 2022, Plaintiffs and the Toyota Defendants jointly moved to appoint Patrick A. Juneau as Settlement Special Master. Dkt. 473. On June 7, 2022, an Order issued granting that motion and appointing Juneau as Settlement Special Master. Dkt. 493.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

On July 14, 2023, Plaintiffs filed a Motion for Preliminary Approval of Class Settlement and Direction of Notice Under Fed. R. Civ. P. 23(E) (the "Motion"). Dkt. 747. Through the Motion, Plaintiffs seek the following: an order granting preliminary approval of the settlement with Toyota ("Settlement") and directing notice to the class under Fed. R. Civ. P. 23(e)(1); appointing settlement class counsel and settlement class representatives for purposes of the settlement only; and scheduling a final approval hearing. *Id.* at 9. Plaintiffs also seek an order enjoining all other, related proceedings. *Id.*

On July 17, 2023, Plaintiffs were directed to file a supplemental brief and associated materials providing the basis for their request for attorney's fees and service enhancement awards for lead plaintiffs. Dkt. 748. On July 19, 2023, Plaintiffs filed a supplemental brief in support of the Motion ("Plaintiffs' Supplemental Brief"). Dkt. 750. On July 21, 2023, Plaintiffs filed an Amendment to Exhibits Filed in Support of Motion for Preliminary Approval ("Amendment to Exhibits"). Dkt. 756. A hearing on the Motion was held on July 24, 2023. Dkt. 759. At the hearing, certain additional briefing was requested, with the Motion to be taken under submission upon its filing. *Id.* On July 25, 2023, Toyota filed a Supplemental Brief in Support of Motion for Preliminary Approval ("Toyota's Supplemental Brief"). Dkt. 758. On the same day, Plaintiffs filed a Supplemental Brief Following Hearing on Motion for Preliminary Approval ("Plaintiffs' Second Supplemental Brief"). Dkt. 761.

For the reasons stated in this Order, the Motion is **GRANTED**, subject to certain modifications stated in this Order.

## II.   Factual Background

A.   The Parties

There are 53 plaintiffs named in the ACAC, who purchased or leased vehicles from the Vehicle Manufacturer Defendants, who are identified below. Dkt. 477 ¶ 64. Eleven of those plaintiffs ("Toyota Plaintiffs" or "Plaintiffs") brought claims against the Toyota Defendants. *Id.*; Dkt. 747-1, Settlement Agreement § II.A.29.[1]

The defendants named in the ACAC ("Defendants") are companies from nine different corporate groups: ZF, STMicro, Kia, Hyundai, Hyundai Mobis, Fiat Chrysler, Toyota, Honda, and Mitsubishi. Dkt. 477 ¶ 23. Only the Toyota Defendants are parties to the Settlement for which preliminary approval is sought through the Motion. Dkt. 747 at 10.

Six groups of defendants constitute the "Vehicle Manufacturer Defendants," which are alleged to be "companies that make and sell completed vehicles and their affiliates." Dkt. 477 ¶ 41. The Toyota Defendants constitute one of these groups. There are three groups of defendants that constitute the "Supplier Defendants." *Id.* ¶¶ 25, 42.

B.   Substantive Allegations

---

[1] The 11 Plaintiffs are: Mark Altier, Alejandra Renteria, Samuel Choc, Tatiana Gales, Gary Samouris, Michael Hines, Brent DeRouen, Danny Hunt, Even Green, Joy Davis, and Dee Roberts. Settlement Agreement § II.A.29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

It is alleged that the Toyota Defendants, as well as other Vehicle Manufacturer Defendants, used defective ACUs in their vehicles. *Id.* ¶ 7-10.

It is alleged that ACUs receive and interpret signals crash sensors located on the front of vehicles. *Id.* ¶ 7. The crash sensors detect activity and send corresponding electrical signals to the ACU. *Id.* When the sensors detect a moderate or severe crash, the ACU issues a command to the vehicle's safety system to deploy its airbags and tighten the seatbelts to protect passengers from an imminent collision. *Id.* Within the ACU, the application-specific integrated circuit ("ASIC") processes the signal from the crash sensors and activates the airbags and seatbelts. *Id.* ¶¶ 7, 10, 473.

It is alleged that when an ACU malfunctions, it can cause a vehicle's airbags and seatbelts to fail to perform their function of restraining and protecting those inside a vehicle. *Id.* ¶ 6. It is alleged that large transients are a threat to the functionality of ACUs. *Id.* ¶ 465. Transients are "short duration, high magnitude voltage peaks, commonly referred to as surges or bursts." *Id.* It is alleged that "[f]or decades, participants in the automotive industry – including all the Defendants in this litigation – have known that transients can be generated inside and outside a motor vehicle" and can cause damage to electrical equipment such as ACUs. *Id.* ¶ 466. Because transients threaten the ability of ACUs and ASICs to activate safety restraints in a collision, a properly designed ACU and ASIC can withstand transients. *Id.* ¶ 471. If an ACU is not protected from transients, it can experience electrical overstress ("EOS"). *Id.* ¶¶ 10, 465-484.

It is alleged that the ACUs at issue in this action are defective because they contain a DS84 ASIC, which is more susceptible than competing ASICs to damage from transients. *Id.* ¶¶ 7, 472-85. It is alleged that the DS84 ACU was commercially attractive to Defendants because it was less expensive, and was marketed as a "cost effective ACU." *Id.* ¶ 567. Because of the alleged ACU defect, the vehicles that contain those ACUs are allegedly "less desirable and less valuable than vehicles with properly functioning passenger safety systems." *Id.* 1479.

It is alleged that Defendants have known about the alleged defect for several years. *Id.* ¶ 16. It is alleged that the Supplier Defendants and Vehicle Manufacturer Defendants conspired to conceal the ACU defect so that they could maximize profit. *Id.* ¶¶ 20, 1603-1604, 1744-1745, 1876-1877, 2012-2013, 2143-2144. It is alleged that the Vehicle Manufacturer Defendants made misleading statements to consumers about the vehicles that contain the allegedly defective ACUs. *Id.* ¶¶ 16-19.

It is alleged that Defendants' fraudulent statements caused economic losses to Plaintiffs by causing them to pay more than they otherwise would have for their vehicles, or to purchase vehicles they would not otherwise have acquired. *Id.* ¶¶1618-1619, 1759-1760, 1892-1893, 2027-2028, 2158-2159.

### III.    Summary of Settlement Agreement and Notice

        A.        Class Definition

The settlement agreement between Plaintiffs and Toyota ("Settlement Agreement" or "Agreement") defines the "Class" as follows:

        all persons or entities who or which, on the date of the issuance of the Preliminary Approval

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Order, own/lease or previously owned/leased Subject Vehicles distributed for sale or lease in the United States or any of its territories or possessions. Excluded from this Class are: (a) Toyota, its officers, directors, employees and outside counsel; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers and directors; and Toyota's Dealers and their officers and directors; (b) Settlement Class Counsel, Plaintiffs' counsel, and their employees; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

Settlement Agreement, Dkt. 747 § II.A.7.

"Subject Vehicles" are defined as "those Toyota vehicles listed on Exhibit 2 that contain or contained ZF-TRW ACUs and were distributed for sale or lease in the United States or any of its territories or possessions." *Id.* § II.A.45. Exhibit 2 to the Settlement Agreement provides the following list of Subject Vehicles:

EXHIBIT 2

SUBJECT VEHICLES

Recalled Vehicles

| Model Years | Make and Model |
|---|---|
| 2011-2019 | Toyota / Corolla |
| 2011-2013 | Toyota / Corolla Matrix |
| 2012-2018 | Toyota / Avalon |
| 2013-2018 | Toyota / Avalon HV |

Unrecalled Vehicles

| Model Years | Make and Model |
|---|---|
| 2012-2017 | Toyota / Sequoia |
| 2012-2019 | Toyota / Tacoma |
| 2012-2017 | Toyota / Tundra |

Settlement Agreement, Ex. 2.

The Settlement Agreement defines "Released Parties" as follows:

Toyota, and each of its past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, including the Toyota Dealers, representatives, suppliers, vendors, advertisers, marketers, service providers, distributors and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | | Date | July 31, 2023 |
|---|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | | |

subdistributors, repairers, agents, attorneys, insurers, administrators and advisors. The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein. Notwithstanding the foregoing, "Released Parties" does not include the Excluded Parties.

Settlement Agreement § II.A.35.

The Settlement Agreement defines "Excluded Parties" as: "other than the Released Parties, all defendants named in the Actions and each of their past, present, and future parents, predecessors, successors, spin-offs, assigns, distributors, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, affiliates, officers, directors, employees, associates, dealers, agents and related companies."

Id. § II.A.18.

      B.     Relief to Class Members and Other Payments

The Settlement Agreement provides that the total "Settlement Amount" is $78,500,000 less the credit of $10,000,000 for the provision of future loaner vehicles and outreach programs, as described below. *Id.* § II.A.38. The Settlement Amount is allocated as follows:

| Description of Amount | Amount |
|---|---|
| **Outreach Program** | **$3,500,000** |
| **Future Loaner Vehicle and Future Outreach Programs** | **$10,000,000[2]** |
| **Settlement Fund** | **$65,000,000** |
| **Fees, Costs, and Expenses** | |
|     Service Award to Class Representatives | $27,500[3] |
|     Award of Attorney's Fees and Expenses to Class Counsel | $25,905,000[4] |
|     Settlement Notice Administrator Costs | $6,500,000[5] |
|     Settlement Special Administrator Costs | $500,000[6] |
|     Taxes | TBD |
| **Net Settlement Fund Amount to be Distributed to Class** | **$32,067,500** |
|     Payment of Out-of-Pocket Claims | |

---

[2] The Agreement provides that "Toyota shall receive a credit of $10,000,000 against the Settlement Amount for providing Future Loaner Vehicles and Future Outreach Programs." *Id.* III.H.3.

[3] In support of the Motion it is stated that Plaintiffs will apply for service awards of up to $2500 for each of the 11 named Plaintiffs.

[4] In support of the Motion it is stated that Plaintiffs will seek an award of attorney's fees and expenses up to 33% of the Settlement Amount of $78,500,000.

[5] In support of the Motion it is stated that Kroll Settlement Administration estimates that costs will range from approximately $6 million to $6.5 million. Dkt. 747 at 19.

[6] The fees and costs for the Settlement Special Administrator are estimated to be between $300,000 and $500,000. Dkt. 747 at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| Residual Cash Payments to Class Members | |
|---|---|
| **Total Settlement Amount** | **$78,500,000** |

1.   Settlement Fund

The Settlement Agreement establishes a Settlement Fund of $65 million. *Id.* § III.A.2. The Settlement Agreement provides that the parties will establish a Qualified Settlement Fund ("QSF"), pursuant to Internal Revenue Code § 468B to be held by an escrow agent ("Escrow Agent"). *Id.* § III.A.1. The Settlement Agreement provides that Toyota will deposit $65 million, less the notice and settlement administration costs that will be accrued prior to final approval of the Settlement, into the QSF. *Id.* § III.A.2. The Settlement Agreement also provides that the QSF is to be used for the following purposes:

> (a) to pay valid and approved claims submitted by eligible Class Members to the Out-of-Pocket Claims Process; (b) to pay notice and related costs; (c) to pay for settlement and claims administration, including expenses associated with the Settlement Special Administrator and his consultants, taxes, fees, and related costs; (d) to make residual cash payments to Class Members, to the extent that there are residual amounts remaining and pursuant to Section III.C of this Agreement; (e) to pay Settlement Class Counsel's fees and expenses as the Court awards; (f) to make service award payments to individual Plaintiffs; and (g) to pay Taxes. The Settlement Fund may also be utilized for additional outreach and notice costs that the Parties jointly agree, after consulting with the Settlement Special Master, is necessary in furtherance of the terms of this Settlement.

*Id.*

a)   Out-of-Pocket Claims Process

The Settlement Agreement provides that the Out-of-Pocket Claims Process shall be used to pay for the reasonable out-of-pocket expenses of members of the Class ("Class Members") related to the recall of Subject Vehicles. *Id.* § III.B.1. It also provides that if any unrecalled Subject Vehicles become subject to a recall before the claims period expires, the Out-of-Pocket Claims Process shall also apply to such unrecalled vehicles. *Id.* The following types of "reasonable expenses, documented to the extent reasonable and practicable" may be reimbursed from the QSF:

> (a) reasonable unreimbursed rental car expenses (including the rental car reimbursement set forth in Section III.H.1) and transportation expenses, after requesting and while awaiting the Recall Remedy[7] from a Toyota Dealer; (b) reasonable towing charges to a Toyota Dealer for completion of the Recall Remedy; (c) reasonable childcare expenses incurred during the time in which the Recall Remedy is being performed on the Subject Vehicle by the Toyota Dealer; (d) reasonable unreimbursed out-of-pocket costs associated with repairing ZF-TRW ACUs; and (e) reasonable lost wages resulting from lost time from work directly associated with the drop off and/or pickup of a Class Member's Recalled Vehicle to/from a Toyota Dealer for performance of the Recall Remedy. The Settlement Special Administrator may not use any funds from the Out-

---

[7] The Settlement Agreement defines the "Recall Remedy" as "the repair and/or countermeasures performed to address the Recall on the Recalled Vehicles." *Id.* § II.A.36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

of-Pocket Claims Process for payments to Class Members due to vehicle damage, property damage, or personal injury allegedly from the deployment or non-deployment of an airbag in connection with a ZF-TRW ACU.

*Id.* § III.B.3.

b)    Residual Distribution

The Settlement Agreement provides that, "[u]nless it is administratively unfeasible, any funds that remain after all out-of-pocket expense payments and all other payments listed in Section III.A.3 have been made, shall be distributed on a per capita basis to all Class Members who submitted out-of-pocket claims and to all Class Members who registered for a residual payment only." *Id.* § III.C.1. Such payments are limited to an amount no more than $250 per each Class Member, "unless the Parties agree to a higher cap and jointly recommend the higher amount to the Settlement Special Administrator for approval." *Id.* The Settlement Agreement provides that if any funds remain after making such payments, "and if it is not feasible and/or economically reasonable to distribute the remaining funds to Class Members who submitted claims and/or registered," then the balance shall be distributed as *cy pres*, subject to the agreement of the parties and of the Court. *Id.*

c)    Fees and Payments Deducted from Settlement Fund

(1)    Class Representatives' Service Award

The Settlement Agreement does not state an amount that Plaintiffs will seek in service awards to the named Toyota Plaintiffs. The Settlement Agreement states that "Toyota and Co-Lead Counsel represent that they have not discussed the amount of fees and expenses to be paid prior to agreement on the terms of this Agreement." Settlement Agreement § VIII.A. It further states that any fees and expenses approved by the Court will be paid from the Settlement Fund. *Id.*

In support of the Motion it is stated that Plaintiffs intend to seek service awards of up to $2500 for each of the 11 Toyota Plaintiffs. Dkt. 747 at 20.

(2)    Attorney's Fees Award

The Settlement Agreement does not state the precise amount that Plaintiffs will seek in attorney's fees. The joint declaration of Roland Tellis and David Stellings, co-lead counsel for Plaintiffs ("Co-Lead Counsel Declaration"), states that Plaintiffs will request an award of attorney's fees and expenses of up to 33% of the $78.5 total settlement amount, i.e., $25,905,000. Co-Lead Counsel Declaration ¶ 10.

(3)    Third Party Administrator Costs

The Settlement Agreement provides that Kroll Notice Media ("Kroll") shall serve as the Settlement Notice Administrator. Settlement Agreement § II.A.42. The Motion states that Kroll estimates that the notice costs in this matter, "plus the costs of supporting the Settlement Special Master in the claims program," will be between approximately $6 million and $6.5 million. Dkt. 747 at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|----------|--------------------------|------|---------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

The Settlement Agreement also provides that Patrick A. Juneau and Patrick J. Hron of Juneau David APLC shall serve as the Settlement Special Administrator and are to "oversee and administer the Settlement Fund." *Id.* § II.A.43. Juneau was appointed by the Court as the Settlement Special Master on June 7, 2022. Dkt. 493. Plaintiffs have submitted a declaration by Juneau ("Juneau Declaration"), which states that his fees and costs for administering the settlement are expected to be in the range of $300,000 and $500,000. Dkt. 747-3 ¶ 9.

Based on the foregoing, the total costs of administering the settlement are estimated to be in the range of $6.3 million and $7 million.

       2.    <u>Outreach Program</u>

The Settlement Agreement provides that Toyota will undertake an outreach program (the "Outreach Program") to increase recall participation. *Id.* § III.G.1. The budget for the Outreach Program is $3.5 million. *Id.* § III.G.2. The Agreement provides that Toyota will pay for the Outreach Program separate and apart from the funds Toyota is to deposit into the QSF ("Settlement Fund"). If Toyota's expenditures on the Outreach Program are less than $3.5 million, it the Settlement Agreement provides that it shall deposit the difference into the QSF to be distributed as residual payments to Class Members. *Id.* § III.G.4.

       3.    <u>Future Rental Car Reimbursement, Loaner Vehicle and Outreach Program</u>

The Settlement Agreement also provides that if any Class Member seeks a recall, after the Effective Date[8], from a Toyota dealer during the Claims Period and is not provided with a courtesy loaner vehicle while repairs are being performed, that Class Member may be eligible for reimbursement from the Settlement Fund for reasonable rental costs. *Id.* § III.H.1. Similarly, if any unrecalled Subject Vehicles become subject to a recall related to the alleged ACU defect in the future, Class Members of such vehicles may request a courtesy loaner vehicle or may submit a claim for reimbursement of reasonable rental car costs from the Settlement Fund. *Id.* The Settlement Agreement also provides that Toyota will provide outreach related to unrecalled Subject Vehicles if those vehicles become subject to a ZF-TRW ACU recall in the future. *Id.* § III.H.2. The Settlement Agreement states that Toyota will "receive a credit of $10,000 against the Settlement Amount for providing Future Loaner Vehicles and Future Outreach Programs." *Id.* § III.H.3. The Settlement Special Administrator will have "the right to audit and confirm such compliance." *Id.*

       4.    <u>Other Settlement Benefits Not Included in Calculation of Settlement Amount</u>

          a)    Inspection Program

The Settlement Agreement provides that if final approval of the settlement is granted, Toyota shall institute the Settlement Inspection Program. *Id.* § III.E.1. The protocol for the Settlement Inspection Program is described in Exhibit 3 to the Settlement Agreement, as modified by the Amendment to Exhibits. Dkt. 747-1, Ex. 3; Dkt. 756-2. The Settlement Inspection Program is to operate for 10 years.

---

[8] The Settlement Agreement defines the "Effective Date" as "the latest date on which the Final Approval Order and/or Final Judgment approving this Agreement becomes final." Settlement Agreement § II.A.13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|----------|--------------------------|------|---------------|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Dkt. 756-2 at 67. The Settlement Agreement provides that Toyota will offer an inspection for Subject Vehicles that are involved in a frontal crash and "when Toyota has been notified of a claim that a ZF-TRW airbag control unit ("ZF-TRW ACU"), seatbelt pretensioner, and/or airbag did not deploy." *Id.* The Settlement Agreement provides that, to the extent that the inspection reveals that there is an electrical overstress condition, Toyota will provide the Settlement Special Master with the information related to the inspection. *Id.* at 68. The Settlement Special Master "will be required to provide Toyota's counsel and Co-Lead Counsel a quarterly report providing the number of electrical overstress events along with the model and model year of each such vehicle." *Id.* The revised version of Exhibit 3 to the Settlement Agreement, submitted with the Amendment to Exhibits, clarifies that "[n]othing in this Protocol imposes any obligation upon ZF-TRW." Dkt. 756-2 at 8.

b)      Extended New Parts Warranty

The Settlement Agreement provides that Toyota will "extend the time period for the service part warranty coverage, which covers any new parts installed pursuant to the Recall." *Id.* § III.F.1. The extended new parts warranty is to last for 12 year, measured from the date that an order granting preliminary approval issues. *Id.*

     C.      Notice and Payment Plan

         1.      <u>In General</u>

The Settlement Agreement provides a process for notifying Class Members of the settlement. *Id.* § IV. Notice will be provided through several channels, including by publication in media outlets, creation of a settlement website, establishment of a toll-free telephone number, internet banner notifications, and direct mailed notice. *Id.* § IV.B-D. The Settlement Notice Administrator shall send direct mailed notice "by e-mail where a valid Class Member e-mail address is available, or U.S. Mail, proper postage prepaid, to Class Members as identified by data provided to the Settlement Notice Administrator by S&P Global Automotive, formerly known as Polk." *Id.* § IV.D.1.

Plaintiffs have submitted the declaration of Jeanne C. Finegan, Managing Director and Head of Kroll Notice Media Solutions ("Finegan Declaration"), attached to which is a description of the proposed notice program ("Notice Program"). Dkt. 747-2, Ex. A.[9] The Notice Program is designed to reach approximately 90% of the Class, with an average frequency of three times. *Id.* at 12. There are approximately 5.2 million Subject Vehicles covered in the Settlement. *Id.* at 13. Kroll has been provided with the Vehicle Identification Numbers ("VINs") for the Subject Vehicles, and it has requested from S&P Global Automotive the names and addresses associated with those VINs. *Id.*

The Notice Plan states that once a preliminary approval order issues, Kroll will promptly begin sending direct mailed notices to those Class Members for whom Kroll has obtained a physical address but no valid email address. *Id.* Kroll will check all physical addresses against the National Change of Address database. *Id.* Additionally, any notices that are returned as non-deliverable will be re-mailed to any address indicated by the postal service. *Id.* at 14. For any notices that are returned as non-deliverable

---

[9] The Amendment to Exhibits contains a revised description of the Notice Program. Dkt. 756-2 at 10. The only change in the revised version is that the description of the Notice Program refers to "Toyota Airbag Control Unit Products Liability Litigation," instead of "ZF-TRW Airbag Control Units Products Liability Litigation." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

and for which a new address is not indicated by the postal service, Kroll will "perform a further advanced address search through a third-party vendor to obtain a more current address using best efforts and all available information." *Id.*

Kroll will use email as a primary method of notice to those Class Members with known email addresses. *Id.* Kroll anticipates receiving email address data for approximately 45% of the Class Members. *Id.* If Kroll receives a "bounce back" message for any emailed notice, Kroll will re-send the notice to a secondary email address, if one is available. *Id.* If email notice is returned to Kroll two times, Kroll will send a direct notice by U.S. Mail to that Class Member. *Id.* Among other methods of providing notice, Kroll will also use keyword search advertisements on Google Ads. *Id.* Additionally, "[s]ocial media ads will follow the targeted Class Members across users' newsfeeds, stories, and videos. These ads will target those who have 'liked' or 'follow' Toyota groups and pages across Facebook and Instagram." *Id.*

A copy of the proposed notice to be sent to Class Members ("Proposed Notice") is attached to the Finegan Declaration. Dkt. 747-2, Ex. C. The Proposed Notice summarizes the terms of the Settlement Agreement and the benefits to be provided to Class Members. *Id.* at 44-45. It identifies the Subject vehicles and informs potential Class Members that they may be eligible for the benefits described if they "own, lease, or previously owned or leased a Subject Vehicle." *Id.* at 45. It directs Class Members to visit the settlement website to determine whether their vehicle is part of the Class. *Id.* The Notice informs Class Members that counsel for Plaintiffs ("Plaintiffs' Counsel") "will request up to 33% of the Settlement Amount (i.e. up to $25,905,000) in attorneys' fees and expenses," and will request service awards of up to $2500 for each of the 11 Toyota Plaintiffs. *Id.* The Notice also explains how Class Members may submit claims for reimbursement of out-of-pocket expenses, as well as how other aspects of the Settlement will work. *Id.* at 52-55.

2.  Opt-Outs and Objections

Class Members will be notified that they may participate, object to, or opt out of the Settlement Agreement. *Id.* at 58. To opt out, a Class Member must mail a written request for exclusion to the Settlement Notice Administrator at the address provided in the Proposed Notice, "postmarked on or before a date ordered by the Court specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Direct Mailed Notice and Preliminary Approval Order." Settlement Agreement § V.A. The written request for exclusion must include: "the Class Member's name, address, telephone number, VIN(s) of the Subject Vehicle(s) forming the basis of the Class Member's inclusion in the Class, the date of purchase or lease of any such Subject Vehicle(s), a statement indicating their request to be excluded from the Class, and a handwritten signature (an electronic signature is insufficient)." *Id.*

To object to the Settlement, a Class Member must "file with the Court, on or before a date ordered by the Court in the Preliminary Approval Order a written statement of his or her objections." *Id.* § VI.A. A written objection must include the following:

(1) the MDL case name "*In re ZF-TRW Airbag Control Units Products Liability Litigation*"; (2) the Class Members name, address (the objector's actual address must be included), and telephone number; (3) Subject Vehicle(s) VIN(s); (4) the date(s) of purchase or lease of any such Subject Vehicle(s); (5) the specific grounds for the objections and whether it applies only to the objector,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

to a specific subset of the Class, or to the entire Class; (6) whether the Class Member is represented by Counsel; and (7) the Class Member's personal signature.

*Id.*

D.      Release of Claims

The Settlement Agreement provides for a general release of claims against Toyota by Class Members. *Id.* § VII.B. The release is as follows:

> In consideration for the relief provided above, Plaintiffs and each Class Member, on behalf of themselves and any other legal or natural persons and entities who or which may claim by, through or under them, including their executors, administrators, heirs, assigns, predecessors and successors, agree to fully, finally and forever release, relinquish, acquit, discharge and hold harmless the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, losses and damages and relief of any kind and/or type regarding the subject matter of the Actions, including, but not limited to, injunctive or declaratory relief compensatory, exemplary, statutory, punitive, restitutionary damages, civil penalties, and expert or attorneys' fees and costs, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or unasserted, and whether based on federal, state or local law, statute, ordinance, rule, regulation, code, contract, tort, fraud or misrepresentation, common law, violations of any state's or territory's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, or other laws, unjust enrichment, any breaches of express, implied or any other warranties, violations of any state's Lemon Laws, the Racketeer Influenced and Corrupt Organizations Act, or the Magnuson-Moss Warranty Act, or any other source, or any claims under the Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses 16. C.F.R. § 433.2, or any claim of any kind, in law or in equity, arising from, related to, connected with, and/or in any way involving the Actions.

*Id.*

The Settlement Agreement also provides that, notwithstanding this release, "Plaintiffs and Class Members are not releasing and are expressly reserving all rights relating to claims for personal injury, wrongful death, or actual physical property damage arising from an incident involving a Subject Vehicle, including the deployment or non-deployment of an airbag." *Id.* § VII.D. Additionally, the Settlement Agreement provides that "Plaintiffs and Class Members are not releasing and are expressly reserving all rights relating to claims against Excluded Parties, with the exception of" the released claims described above. *Id.* § VII.E. The Settlement Agreement also provides:

> Plaintiffs expressly understand and acknowledge, and all Plaintiffs and Class Members will be deemed by the Final Approval Order and Final Judgment to acknowledge and waive Section 1542 of the Civil Code of the State of California . . . . Plaintiffs and Class Members expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

*Id.* § VII.I.

      E.    CAFA Notice

The Notice Plan states that "Kroll will provide notice of the proposed Settlement under CAFA, 28 U.S.C. §1715(b), to appropriate state and federal government officials." Dkt. 747-2, Ex. A at 18.

**IV.**    **Analysis**

      A.    Class Certification

          1.    Legal Standards

The first step in considering whether preliminary approval of the Settlement Agreement should be granted is to determine whether a class can be certified. "[T]he Ninth Circuit has taught that a district court should not avoid its responsibility to conduct a rigorous analysis because certification is conditional: Conditional certification is not a means whereby the District Court can avoid deciding whether, at that time, the requirements of the Rule have been substantially met." *Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741-WQH, 2007 WL 627977, at *2 n.3 (S.D. Cal. Feb. 22, 2007) (quoting *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974)). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts 'must pay undiluted, even heightened, attention to class certification requirements.' " *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

That the parties have reached a settlement "is relevant to a class certification." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Consequently, when

      [c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Id.* at 620 (internal citations omitted). "In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance." *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) (citing *Amchem*, 521 U.S. at 620).

The first step for class certification is to determine whether the proposed class meets each of the requirements of Fed. R. Civ. P. 23(a). *Dukes*, 564 U.S. at 350–51; *Hanon v. Dataproducts Corp.*, 976

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. If these four prerequisites are met, the proposed class must meet one of the requirements of Fed. R. Civ. P. 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiffs rely on Rule 23(b)(3). *See* Dkt. 747 at 36. It provides, in relevant part, that a class proceeding "may be maintained" if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

        2.     <u>Application</u>

            a)     Fed. R. Civ. P. 23(a) Requirements

                (1)    <u>Numerosity</u>

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (quoting *Advert. Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)). Although there is no specific numeric requirement, courts generally have found that a class of at least 40 members is sufficient. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Plaintiffs state that the Class includes current and former owners and lessees of at least 5.2 million Subject Vehicles. Dkt. 747 at 32. This is sufficient to satisfy the numerosity requirement.

                (2)    <u>Commonality</u>

Rule 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires a showing that the "class members 'have suffered the same injury,'" *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)), and "does not mean merely that they have all suffered a violation of the same provision of law." *Id.* The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. In assessing commonality, "even a single common question will do." *Dukes*, 564 U.S. at 359 (internal quotation marks omitted). In general, the commonality element is satisfied where the action challenges "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs state that their claims "are rooted in common questions relating to Defendants' omission of important information about a serious defect in the Subject Vehicles." Dkt. 747 at 33. Plaintiffs also assert that Toyota deployed uniform misrepresentations, such as the alleged misrepresentations made in the Monroney labels for every Subject Vehicle. *Id.* at 33 n.12. In cases "where fraud claims arise out of a uniform course of conduct, commonality is commonly found." *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *3 (N.D. Cal. Nov. 9, 2022) ("While the injuries to each class member may not be precisely the same, because they are rooted in common questions of fact and law regarding emissions and fuel economy test results and how the realities differed from Porsche's representations, commonality is found here."). Plaintiffs have identified at least one common question as to whether Toyota's alleged omissions and uniform misrepresentations to Class Members were fraudulent. For this reason, the commonality requirement is satisfied.

(3)   Typicality

The typicality requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Representative claims "need not be substantially identical." *Id.* The test of typicality is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Like commonality, typicality is construed permissively. *Hanlon*, 150 F. 3d at 1020. The commonality and typicality requirements of Rule 23(a) tend to merge. *Dukes*, 564 U.S. at 349 n.5.

Plaintiffs allege that the named Toyota Plaintiffs suffered similar injuries as other Class Members. Each Class Member purchased or leased a Subject Vehicle with allegedly defective DS84 ACUs, and, as a result, Plaintiffs contend that each Class Member paid more for their Subject Vehicle than they should have. Dkt. 747 at 34. Thus, the typicality requirement is satisfied.

(4)   Adequacy of Lead Plaintiff and Class Counsel

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "Adequacy of representation also depends on the qualifications of counsel." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (citing *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982), *abrogated on other grounds by Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)). "[T]he named representative's attorney [must] be qualified, experienced, and generally capable to conduct the litigation . . . ." *Id.* (quoting *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1323 (9th Cir.), *vacated on other grounds by* 459 U.S. 810 (1982)).

There is nothing to suggest that the named Toyota Plaintiffs have interests that are antagonistic to those of other Class Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs argue that their counsel "have undertaken an enormous amount of work, effort, and expense in this MDL and in advancing the Toyota Plaintiffs' claims." Dkt. 747 at 35. They further argue that counsel "have demonstrated their willingness to devote whatever resources were necessary to reach a successful outcome throughout the nearly four years since this consolidated litigation began." *Id.* Co-lead Counsel declare that "[i]nvestigating and prosecuting this complex litigation to date has required significant work, effort, and expense over the course of several years." Dkt. 747-1 ¶ 3.

For purposes of preliminary approval, the proposed award of attorney's fees and incentive awards for Plaintiffs appear reasonable. The proposed fee and incentive awards are not so disproportionate to the relief provided to the Class to warrant a finding that Plaintiffs and counsel are not adequate representatives. *Cf. Staton*, 327 F.3d at 975-78 (rejecting incentive awards to 29 class representatives of up to $50,000 each). Issues about the attorney's fees and incentive award, including those discussed in this Order, will be addressed when considering whether the Settlement Agreement is reasonable and fair. *See id.* at 958 ("Although we later question whether the settlement agreement . . . was the result of disinterested representation, that question is better dealt with as part of the substantive review of the settlement than under the Rule 23 inquiry. Otherwise, the preliminary class certification issue can subsume the substantive review of the class action settlement.").

For the foregoing reasons, the adequacy requirement is satisfied.

        b)      Rule 23(b)(3) Requirements

           (1)    <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The predominance analysis assumes that the Rule 23(a)(2) commonality requirement has already been established, *Hanlon*, 150 F.3d at 1022, and "focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Hanlon*, 150 F.3d at 1022). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 William Rubenstein, *Newberg on Class Actions* § 4:50, at 196–97 (5th ed. 2012)). Where the issues of a case "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778 at 535–39 (2d ed. 1986)).

"Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citations omitted). "Therefore, even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

even though other important matters will have to be tried separately.'" *In re Hyundai*, 926 F.3d at 557–58 (quoting *Tyson Foods, Inc.*, 577 U.S. at 453).

Further, the requirements of Fed. R. Civ. P. 23(b)(3) "must be considered in light of the reason for which certification is sought—litigation or settlement . . . ." *Id.* at 558. A class may be certifiable for settlement even though it "may not be certifiable for litigation" where "the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *Id.*

As noted, Plaintiffs' claims arise from Toyota's alleged course of conduct of manufacturing and selling vehicles containing defective ACUs without disclosing the alleged defect to Class Members. Plaintiffs have identified several questions that are common to all Class Members, including "when Defendants first learned of the ACU Defect, and whether Defendants' pervasive representations about the Subject Vehicles' airbags and safety systems were misleading to reasonable consumers." Dkt. 747 at 37. Such questions do not turn on an assessment of individual facts. Whether Toyota's actions were fraudulent is a question that is central to Plaintiffs' claims, and which is capable of resolution on a classwide basis. For these reasons, the predominance requirement is satisfied.

(2)   Superiority

Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This issue is evaluated by considering the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

The benefits of resolving the claims at issue in a class action outweigh the interest of any Class Member who could pursue and control an individual action. There are approximately 5.2 million Subject Vehicles covered by the Class definition. Plaintiffs assert that the maximum damages sought by each Class Member "are relatively small in comparison to the substantial cost of prosecuting each one's individual claims, especially given the technical nature of the claims at issue." Dkt. 747 at 38. In light of the large number of Class Members and the cost of bringing an individual claim relative to the potential recovery, it would be substantially less efficient for Class Members to pursue their claims on an individual basis than on a classwide basis. Further, Class Members may not have a strong incentive to pursue their claims individually. Nothing suggests that the management of this action has been, or will be, difficult. Moreover, that the parties have reached a settlement would obviate any potential management issues. For these reasons, the superiority requirement is satisfied.

\*       \*       \*

For the foregoing reasons, it has been shown that the Class should be conditionally certified for the purpose of settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

B.      Preliminary Approval of the Settlement Agreement

1.      <u>Legal Standards</u>

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action. First, a court must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton*, 327 F.3d at 952). In the second step, which occurs after preliminary approval, notification to class members, and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted. *See, e.g.*, *id.*

At the preliminary stage, "the settlement need only be *potentially fair*." *Id.* This is due, in part, to the policy preference for settlement, particularly in the context of complex class action litigation. *See Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

As the Ninth Circuit has explained:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*

Notwithstanding this deference, "[w]here . . . the parties negotiate a settlement agreement before the class has been certified, 'settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). "Specifically, 'such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). This scrutiny "is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)).

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following non-exclusive factors, which originally were described in *Hanlon*, are among those that may be considered during both the preliminary and final approval processes:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the amount offered in settlement;
(4) the extent of discovery completed and the stage of the proceedings;
(5) the experience and views of counsel;
(6) any evidence of collusion between the parties; and
(7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every settlement, and other factors may be considered. For example, courts often assess whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process. *Acosta*, 243 F.R.D. at 386.

Amended Fed. R. Civ. P. 23(e) provides further guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. A court must consider whether:

> (A) the class representatives and [Plaintiff's] counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[10] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. *Id.*

---

[10]  Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

2.  Application

a)  Whether the Class Representatives and Plaintiff's Counsel Have Adequately Represented the Putative Class

As discussed above in connection with the issue of class certification, Plaintiffs and their counsel have adequately represented the Class. Counsel have prosecuted this case zealously since the litigation began in 2019. Dkt. 747 at 22. "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008).

Plaintiffs state that their counsel have retained technical experts and have obtained and reviewed substantial discovery. *Id.* This included the review of "approximately 145,000 pages of documents and 4,500 native files from Toyota (including Excel spreadsheets, video/audio files, etc.), many containing technical presentations and data that Toyota provided to NHTSA." *Id.* at 15. Co-lead Counsel declare that Plaintiffs' Counsel "have reviewed and analyzed the extensive set of relevant documents produced by Toyota and the other Defendants, as well as confirmatory discovery from Toyota and material they obtained through their own investigative efforts, to inform Plaintiffs' understanding of the strengths and weaknesses of their claims against Toyota." Dkt. 747-1 ¶ 5.

Further, Plaintiffs' Counsel opposed Toyota's motion to dismiss, which was granted in part and denied in part. *Id.* Plaintiffs' Counsel also opposed Toyota's motion to compel arbitration and Toyota's motion to sever, which were both denied. *Id.* This procedural history shows that Plaintiffs' Counsel is very familiar with the case, and that Plaintiffs have sufficient information to make an informed decision about settlement.

In support of the Motion it is also stated that the Toyota Plaintiffs have been actively engaged in the litigation. They have collected documents and provided them to counsel, worked with counsel to prepare responses to interrogatories, and assisted counsel in reviewing and evaluating the terms of the Settlement Agreement. *Id.* at 22-23.

This factor weighs in favor of preliminary approval of the Settlement Agreement.

b)  Whether the Settlement Was Negotiated at Arm's Length

Courts evaluate the settlement process as well as the terms to which the parties have agreed to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Rodriguez*, 563 F.3d at 965. (quoting *Hanlon*, 150 F.3d at 1027). Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947 (internal quotation marks and citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

There is no evidence of fraud, overreaching, or collusion among the parties. Counsel "spent considerable time and resources in arms' length settlement negotiations for more than a year." Dkt. 747-1 ¶ 5. The parties participated in "at least six in-person sessions, and dozens more telephonic and videoconference discussions to continue those negotiations." Dkt. 747 at 17; Dkt. 747-1 ¶ 6. The in-person mediation sessions were overseen by Court-appointed Settlement Special Master Juneau. Dkt. 747-1 ¶ 6.

Juneau states in his declaration that "[t]hroughout the mediation process, the parties engaged in extensive adversarial negotiations over virtually every issue in the case." Dkt. 747-3 ¶ 6. Juneau also declares that the negotiations were lengthy, exhaustive, and "sometimes difficult and contentious," and they involved "many very qualified attorneys with extensive experience and knowledge in class action law." *Id.* Additionally, Juneau provides his opinion that "the outcome of these mediated negotiations is the result of a fair, thorough, and fully-informed arms-length process between highly capable, experienced and informed parties and counsel." *Id.* Juneau confirmed all of these statements at the hearing. He made an informed and detailed assessment of the settlement process, and stated the basis for his view that the Motion should be granted.

Further, the Settlement Fund is non-reversionary. Dkt. 747 at 20. The Settlement Agreement provides that, unless it is administratively unfeasible, any funds that remain after payments have been made will be distributed on a per capita basis to those Class Members who submitted out-of-pocket claims and to those who registered for a residual payment only, with a limit of $250 per Class Member. Settlement Agreement § III.C.1. If any funds remain after those residual payments are made, and "if it is not feasible and/or economically reasonable to distribute the remaining funds to Class Members who submitted claims and/or registered," then the balance will be distributed *cy pres. Id.* § III.C.2. At the hearing it was explained that this approach is warranted because it may cost more than the amount of any distributions to Class Members to send them.

Nor is there a clear-sailing provision in the Settlement Agreement. The Settlement Agreement states that "Toyota and Co-Lead Counsel represent that they have not discussed the amount of fees and expenses to be paid prior to agreement on the terms of this Agreement." *Id.* § VIII.A. The Settlement Agreement also states that Toyota reserves its right to oppose the anticipated motion for attorney's fees. Although issues are presented as to the amount of the allocation of the Settlement Agreement to attorney's fees, counsel persuasively addressed that issue at the hearing. Thus, the parties have not allocated a disproportionate amount of the settlement to be paid to counsel; provided, however, the determination of the precise amount of a fee award is discussed below.

For the foregoing reasons, this factor supports preliminary approval.

        c)    Whether the Relief Provided for the Class Is Adequate

            (1)    <u>Strength of Plaintiffs' Claims, and the Costs, Risks and Delays of Trial and Appeal</u>

It is "well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

have been achieved by the negotiators." *Id.* at 625. "Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez*, 563 F.3d at 965 ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value.").

The Settlement Agreement provides for a total Settlement Amount of $78.5 million, with $65 million to be placed into the Settlement Fund, $3.5 million to be designated for the Outreach Program, and a $10 million credit for Toyota's provision of future loaner vehicles and reimbursements. It also provides for several other benefits that have not presently been quantified, including the Extended New Parts Warranty and the Inspection Program. The Settlement Agreement offers substantial compensation to Class Members.

Plaintiffs have identified significant risks of continued litigation. They note that "while Plaintiffs submit their operative ACAC states valid, cognizable claims, including under RICO, their claims did not survive Toyota's earlier pleading challenge." Dkt. 747 at 27. Litigation could continue for years, with large associated costs. By contrast, the Settlement provides Class Members with certain and timely relief.

These considerations support the conclusion that the Settlement Agreement is reasonable.

(2)   The Effectiveness of Any Proposed Method of Distributing Relief
to the Class

The proposed method of distributing relief to the class is fair and reasonable. The Notice Program, which is expected to reach at least 90% of the Class with an average frequency of three times, should be effective. Dkt. 747-2, Ex. A at 12.

Class Members may submit claims for out-of-pocket compensation and for residual payments using the same claim form. Dkt. 747 at 28. Claim forms will be made available to Class Members through several means, including U.S. mail, email, the Internet, and social media. *Id.* Class Members may submit claim forms either online or by hard copy. *Id.*

Plaintiffs have submitted a copy of the claim form in connection with the Motion. Finegan Decl., Dkt. 747-2, Ex. F. To receive reimbursement of out-of-pocket expenses, Class Members must submit basic information and provide copies of documentation of such expenses, which may include a receipt, invoice, or credit cart statement. *Id.* at 74. Class Members may submit a claim form without providing documentation of expenses, subject to the provision that they may need to provide alternative forms of proof to be eligible for reimbursement. *Id.* at 72. Class Members may also choose to register only for residual distribution payments. *Id.* Class Members who are eligible for compensation may receive payment either by check or by electronic payment.

The proposed process for submitting claims and receiving payments is not excessively burdensome, and it should be effective in distributing relief to the Class. Therefore, this factor weighs in favor of preliminary approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

(3)      The Terms of Any Proposed Award of Attorney's Fees

The Settlement Agreement does not provide for the award of a specific amount of attorney's fees. *See* Settlement Agreement § VII.A. As noted, the Settlement Agreement states that counsel have not discussed the amount of fees and expenses to be paid prior to agreement on the terms of the Settlement Agreement. Attorney's fees and expenses are to be paid from the Settlement Fund, which is non-reversionary. *Id.* This factor also supports preliminary approval of the Settlement Agreement. As noted, the Attorney's Fees issue is discussed is discussed in more detail below.

d)      Whether the Proposal Treats Putative Class Members Equitably Relative to Each Other

The Settlement Agreement provides reimbursement to Class Members for their documented out-of-pocket expenses related to the recall of Subject Vehicles. *Id.* § B.1. The residual of the Settlement Fund will be distributed to Class Members who submit claims, on a per capita basis. *Id.* § C.1. This method of distributing relief is fair and reasonable. Accordingly, this factor weighs in favor of preliminary approval.

\*      \*      \*

A consideration of the applicable factors demonstrates that the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant preliminary approval. Accordingly, the Motion is **GRANTED** as to the request that the Settlement Agreement be preliminarily approved.

C.      Incentive Awards

1.      Legal Standards

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

2.      Application

Plaintiffs intend to file a motion, in connection with a motion for final approval, seeking approval of service awards in the amount of $2500 for each of the named Toyota Plaintiffs. Dkt. 750 at 14. Co-Lead Counsel declare that each of the Toyota Plaintiffs spent approximately 20 hours on this litigation. Dkt. 750-1, Declaration of Plaintiffs' Co-Lead Counsel in Support of Supplemental Briefing on Preliminary Approval ("Supplemental Co-Lead Decl.") ¶ 20. If approved, this service award would result in an hourly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

rate of $125.

Co-Lead Counsel declare that each of the Toyota Plaintiffs has dedicated significant time over the past four years to further the interests of the Settlement Class. *Id.* ¶ 19. Their activities include "providing extensive factual information to assist counsel with drafting the complaints; regularly communicating with counsel to stay abreast of developments in this litigation; searching for relevant and responsive materials about their Class Vehicles, and providing those materials to counsel for production in discovery; conferring with counsel to prepare and finalize detailed responses to Interrogatories; working with counsel to review and evaluate the terms of the proposed Settlement Agreement; and expressing their continued willingness to protect the Class until the Settlement is approved and its administration completed." *Id.*

Based on a consideration of the Toyota Plaintiffs' active roles in the litigation, the number of hours spent on the case, and the four-year period that it has been pending, incentive awards in the amount of $2500 are reasonable. This determination will be subject to de novo review in connection with a motion for final approval.

      D.    Attorney's Fees

          1.   <u>Legal Standards</u>

Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.* "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965.

District courts have discretion to choose between a lodestar method and the percentage method to evaluate the reasonableness of a request for an award of attorney's fees in a class action. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). A court may also choose one method and then perform a cross-check with the other. *See, e.g., Staton*, 327 F.3d at 973.

When using the percentage method, a court examines what percentage of the total recovery is allocated to attorney's fees. Usually, the Ninth Circuit applies a "benchmark award" of 25%. *Id.* at 968. However, awards that deviate from the benchmark have been approved. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("Ordinarily, . . . fee awards [in common fund cases] range from 20 percent to 30 percent of the fund created."); *Schroeder v. Envoy Air, Inc.*, No. CV-16-4911-MWF-KSx, 2019 WL 2000578, at *7 (C.D. Cal. May 6, 2019) (internal citations omitted) ("[T]he 'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors,'" including "'(1) the results achieved; (2) the risks of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.'")

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Such factors "'includ[e] the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (quoting *In re Bluetooth Headset Prods.*, 654 F.3d at 941–42). A "district court *must* apply a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky." *Id.* at 1166 (quoting *Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016)) (internal quotations omitted).

        2.   <u>Application</u>

In response to questions raised during the hearing as to the appropriateness of the time entries used to make the lodestar calculation, as well the range of time and number of counsel involved in certain issues, counsel make a detailed and persuasive presentation. As requested, Plaintiffs also have submitted a Supplemental Brief regarding attorney's fees in support of the Motion. Dkt. 750. The Supplemental Brief states that Plaintiffs will file a motion for attorney's fees, expenses, and service awards at least four weeks before the proposed October 20, 2023 objection/opt-out deadline. *Id.* at 5. It states that Plaintiffs' Counsel anticipate that they will request an award of up to 33% of the $78.5 million Settlement Amount in attorney's fees and expenses, *i.e.,* an award of $25,905,000. [11] *Id.* at 6. In the Supplemental Brief, Plaintiffs argue that "the requested percentage of the total settlement value is actually much lower" than 33%, "after taking into account both the monetary and non-monetary benefits obtained for the Class. *Id.* at 7. In particular, Plaintiffs state that in the forthcoming attorney's fees motion, they will present a declaration from a warranty valuation expert who will opine on the market value of the Extended New Parts Warranty. *Id.* They anticipate that this testimony will show that the warranty provides significant additional economic benefit for the Class. *Id.*

Plaintiffs' Counsel have submitted preliminary fee and time data in connection with the Supplemental Brief. However, they state that Co-Lead Counsel is still in the process of performing a detailed audit of the time submitted to date pursuant to the Court-approved Common Benefit Order ("CBO"). *Id.* at 9; *see* Dkt. 111. The CBO "establishes the requirements for compensable common benefit work, including 13 specific categories to record and track the nature of the tasks performed," and it imposes limitations on the hourly rates for all participating Plaintiffs' counsel. Dkt. 750 at 9. Those limits are as follows: $895/hour for partners; $350-$600/hour for associates; $415/hour for document review attorneys; and $175-275/hour for paralegals and assistants. *Id.*

---

[11]  Throughout the Supplemental Brief, Plaintiffs refer to the maximum requested fee and expenses award as $25.9 million. However, the Proposed Notice informs Class Members that counsel "will request up to 33% of the Settlement Amount (i.e. up to $25,905,000)." Dkt. 747-2 at 45. This Order relies on the $25,905,000 figure stated in the Proposed Notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Plaintiffs' Counsel state that attorneys are continuing to review and audit time submissions to ensure that "(a) the work reflected was authorized by Co-Lead Counsel; (b) entries were coded to the appropriate task code; (c) entries were not erroneously submitted, and (d) to exercise reasonable billing judgment in the time submitted, among other critical auditing tasks." *Id.* at 10. They state that, because this work still needs to be completed, the time charts they have submitted in connection with the Supplemental Brief pursuant to this Court's order are not final, and may be subject to change between now and the filing of a motion for final approval. *Id.* at 11.

Additionally, Plaintiffs' Counsel state that they expect that a substantial amount of future work will be needed to implement the Settlement Agreement. This includes work required to obtain final approval, litigate any appeals that may be lodged, and oversee and implement the Settlement Agreement until the end of the three years claims period. *Id.* Plaintiffs' Counsel anticipate that this work will require no less than 1150 hours, for a total additional lodestar of no less than $750,000. *Id.*

a)      Percentage Approach

As noted, Plaintiffs' Counsel anticipate requesting an award of $25,905,000, which presently represents 33% of the $78.5 million Settlement Amount. The Settlement Amount is comprised of the $65 million to be paid into the Settlement Fund, the $3.5 million to be paid for the Outreach Program, and the $10 million credit that Toyota is to receive "against the Settlement Amount for providing Future Loaner Vehicles and Future Outreach Programs." *See* Settlement Agreement §§ I.A.38, III.A-H.

At the hearing, questions were presented to counsel as to the valuation of the $10 million credit Toyota is to receive for the Future Rental Car Reimbursement, Loaner Vehicle and Outreach Program. These included whether it was possible accurately to estimate the number of Class Members who would use it. The Settlement Agreement provides as follows with respect to this program:

1. If a Class Member who, after the Effective Date, seeks the Recall Remedy from a Toyota Dealer during the Claims Period and is not provided with a loaner vehicle while the Recall Remedy is being performed, then that Class Member is eligible for reimbursement from the Settlement Fund for reasonable rental car costs, if the Class Member completes and submits a Registration/Claim Form. Should Unrecalled Vehicles be subject to a ZF-TRW ACU recall, Class Members of such Unrecalled Vehicles may request a courtesy loaner vehicle, or alternatively may submit a claim for reimbursement of reasonable rental car costs from the Settlement Fund during the Claims Period.

2. Toyota shall also provide outreach related to Unrecalled Vehicles should Unrecalled Vehicles be subject to a ZF-TRW ACU recall in the future.

Settlement Agreement §§ H.1-2.

Toyota has provided additional support for the value of the $10 million credit allocated to future reimbursement, loaner vehicles, and outreach. *See* Dkt. 758 at 2-3. Toyota explains that it has spent, or will be spending, at least $7.05 million on outreach for Recalled Vehicles, of which there are 2,891,976. *Id.* at 2. Based on this calculation, Toyota states that "it is reasonable to expect that it will spend at least

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

$5 million on future outreach if the 2,285,878 Unrecalled Vehicles are recalled in the future." *Id.*

Toyota also explains that the current recall completion rate for the 2,891,976 Recalled Vehicles is approximately 62%. *Id.* It states that it has spent approximately $4.8 million to provide loaner vehicles for certain Recalled Vehicles that have been presented as part of the recall. *Id.* Toyota explains that, as part of the Future Program, it will provide future loaner vehicles to "certain of the (i) 1,098,951 Recalled Vehicles that may still come forward to receive the Recall Remedy; and (ii) 2,285,878 currently Unrecalled Vehicles that may be provided a loaner vehicle if there is a future ZF-TRW ACU recall of these vehicles." *Id.* at 2-3. Toyota also states that "[g]iven that [it] has spent approximately $4.8 million on loaner vehicles for the approximately 1,793,025 Recalled Vehicles that have received the Recall Remedy, it is reasonable to expect that it will spend at least $5 million for future loaner vehicles" for the remaining 1,098,951 Recalled Vehicles that have not completed the recall, plus the 2,285,878 Unrecalled Vehicles should the ACUs in those vehicles be recalled in the future. *Id.* at 3.

In light of this evidence, it is reasonable to include the $10 million credit for the provision of future loaner vehicles and outreach in the total value of the Settlement Agreement. Thus, the total recovery to the class can reasonably be calculated to have a value of at least $78.5 million, including the Settlement Fund, the $10 million credit for future loaner vehicles and outreach, and the $3.5 million to be spent on the current Outreach Program.

For the reasons discussed, Plaintiffs have presented substantial support for the position that the requested award will likely be reasonable under the percentage method. If the total value of the settlement is calculated at $78.5 million, the requested award would constitute 33% of the total recovery. This allocation would slightly exceed the 25% "benchmark award" in the Ninth Circuit; nonetheless, an attorney's fees award exceeding the benchmark is not *per se* unreasonable. An upward adjustment from the benchmark may be warranted in light of the results achieved, the risks of litigation, non-monetary benefits conferred by the litigation, customary fees in similar cases, the contingent nature of the fee, the burden carried by counsel, or the reasonable expectations of counsel. *Vizcaino*, 290 F.3d at 1048-50. Such an adjustment may be warranted here, where favorable results were achieved for the Class, substantial non-monetary benefits will be conferred, and counsel have undertaken significant risks in pursuing this litigation over the course of several years. *See* Dkt. 761 at 5-6.

As noted, Plaintiffs also anticipate that evidence submitted in connection with the motion for final approval will show that the Extended New Parts Warranty adds substantial value to the Settlement Agreement. Plaintiffs' Counsel state that, based on their past experience in similar automotive class settlements, they expect that with the value of the Extended New Parts Warranty included, the anticipated $2,905,000 fee request "will sit near the Ninth Circuit's 25% benchmark." Dkt. 761 at 2. If so, the requested award will likely not ultimately constitute a significant upward departure from the Ninth Circuit's 25% benchmark.

The substantial arguments presented by counsel in response to the questions raised at the hearing are very helpful. However, the estimates as to additional values are not yet finalized. This leaves open issues as to the percentage approach.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

        b)      Lodestar Cross-Check

Plaintiffs' counsel have submitted tables summarizing their rates and hours worked to date. *See* Dkt. 751-1, Exs. A-B.

Plaintiffs state that, because the time entries of counsel are still being audited, the requested lodestar submitted in connection with the attorney's fees motion may be "modified from the current amounts, and may otherwise change from its current format." Dkt. 750 at 11. However, they state that "the data at present shows the general scope and scale of the lodestar incurred on this litigation so far, and supports the reasonableness of the anticipated request." *Id.*

The total lodestar to date is $35,241,678.50. Dkt. 751 at 2.[12] Counsel have apportioned a percentage of this total lodestar to Toyota. They explain that "[i]n complex, multi-defendant litigation like this, in which work is performed to advance multiple claims both collectively and specifically, it is common for counsel to apportion a percentage of the total lodestar attributable to a particular settling Defendant, because it is not practicable to disaggregate the common benefit work across each individual defendant, and because the vast majority of the work performed is for the benefit of the entire MDL, not just the case against one of the Defendants." Dkt. 750 at 12. Thus, Co-Lead Counsel have estimated that 70% of the total work is attributable to the six Vehicle Manufacturer Defendants, with the other 30% attributable to the two Supplier Defendants. *Id.* Of the 70% attributable to the Vehicle Manufacturer Defendants, Co-Lead Counsel estimate that approximately 40% is associated with Toyota. This estimate is based on the size of the Toyota Class, the "focused efforts on Toyota and the other Defendants' joint pleading challenges," Toyota's unique challenges to Plaintiff's claims, including the motion to sever, the motion to compel arbitration, and the appeal, the discovery that advanced the Toyota Plaintiffs' claims, and the negotiation efforts with Toyota. *Id.* at 12-13.

Based on the foregoing estimates and calculations, Plaintiffs estimate that the lodestar to date that is attributable to Toyota is approximately $9,867,699.98. Dkt. 751 at 2. They estimate that the final lodestar, including the anticipated future work, will be $10,617,669.98. *Id.*

Plaintiffs estimate that, of their ultimate requested award of $25,905,000, $25 million will be for attorney's fees, and $900,000 will be for expenses. Dkt. 750 at 13. Based on this estimate, the requested fee award, excluding the amount requested for expenses, would represent a multiplier of approximately 2.35, *i.e.*, $25 million / $10,617,669.98. Without including anticipated future fees, the multiplier would be approximately 2.53, *i.e.*, 25 million / $9,867,699.98).

        (1)      Whether the Rates Claimed are Reasonable

As noted, the rates that may be charged by Class Counsel are capped by CBO Order. Dkt. 111. That order was issued without prejudice to a review "of the reasonableness of any fee request even if its bases comply with this Order, including as to hourly rates." *Id.* at 1. Plaintiffs state that the Court-capped hourly rates fall substantially below their usual hourly rates, resulting in a reduction to the overall lodestar of approximately 11.5% from the market rate fees of participating counsel. Dkt. 750 at

---

[12] On July 20, 2023, Plaintiffs filed a Notice of Errata, which stated that, "[d]ue to inadvertent error," the Supplemental Brief and related materials omitted the time submitted by one of the firms representing Plaintiffs. Dkt. 751 at 2. The Notice of Errata provides the corrected lodestar numbers and corresponding tables. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

12. The charts submitted by counsel include both the capped rates and usual market rates for each timekeeper.

Plaintiffs' use of the Court-capped hourly rates provides support for the reasonableness of the rates claimed. However, Plaintiffs have not provided any additional evidence to support the reasonableness of the hourly rates. The rates claimed appear reasonable based on the Court's familiarity with rates in similar cases and quality of work performed in this matter. However, Plaintiffs shall provide further evidence supporting the reasonableness of these rates in connection with the anticipated attorney's fees motion.

(2)     Whether the Hours Charged Are Reasonable

Plaintiffs' Counsel have provided tables showing the hours worked to date on this matter. Those tables reflect that Plaintiffs' Counsel have worked a total of 62,217.3 hours on this matter to date. *See* Dkt. 751-1, Ex. A. That work was spread across ten different task categories. *Id.* As noted above, these tables include hours worked in relation to all Defendants in this matter, not just Toyota. Plaintiffs have estimated that $9,867,669.98 of the total lodestar to date of $35,241,678.50 is attributable to Toyota.

As noted, and discussed at the hearing, the tables submitted by counsel show that for several tasks, a large number of attorneys and paralegals worked on that task. *See* Dkt. 751-1, Ex. A. For example, for certain tasks, over 100 different attorneys and paralegals billed time. *Id.* The number of hours billed varied significantly, with some individuals logging less than 0.5 hours on a given task. *See id.* The large number of individuals who worked on certain tasks, and the small amount of time billed by some of those individuals, raise some concerns as to whether the work was performed efficiently.

In response to these concerns, Plaintiffs' Counsel described at the hearing how their approach to performing work on this matter was generally efficient. At the hearing on the Motion, counsel explained that attorneys at each participating firm were directed to consult with experienced attorneys when beginning a new task. Such consultations may result in substantial time savings because the experienced attorney can provide guidance and instruct a more junior attorney as to how to effectively complete a task or approach a familiar issue. Counsel explained that many of the attorneys who billed only a small amount of time on a given task are attorneys who were consulted for advice and who were not actively working on the litigation. Such collaboration between attorneys and other staff would justify the large number of individuals who worked on certain tasks. Similar time entries could have resulted from similar consultations between counsel at different firms.

For these reasons, the hours charged to date appear to be reasonable.

c)     Conclusion on Attorney's Fees

As noted, assuming that Plaintiffs' anticipated future hours are included in the lodestar, the requested fee award would result in a multiplier of 2.35. If the anticipated future hours are not included, the multiplier would be 2.53. Plaintiffs have provided support for the reasonableness of that multiplier. Plaintiffs cite a 2017 study of attorney's fees awarded in 458 class actions over a five-year period between 2009 and 2013, which concluded that the average multiplier in cases with settlements valued over $67.5 million was 2.71. Dkt. 761 at 5 (citing Theodore Eisenberg, Geoffrey Miller, & Roy Germano,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Attorneys' Fees in Class Actions 2009-2013*, 92 N.Y.U. L. Rev. 937, 967 (2017)). Plaintiffs have submitted a summary chart of ten decisions from within the Ninth Circuit that have approved "similar lodestar multipliers to that here," some of which involved multipliers significantly higher than the one requested. Dkt. 761 at 5; Dkt. 761-1, Appendix A.

The relevant factors provide support for the application of a multiplier between 2.35 and 2.53. Plaintiffs note that Toyota has "challenged every claim at every step of the way" throughout this litigation, and Plaintiffs' Counsel successfully opposed both Toyota's motion to sever and its motion to compel arbitration. Dkt. 761 at 6. However, Plaintiffs also identify substantial risks that have been presented by this litigation. They note that their RICO and fraud claims against Toyota were dismissed, but "Plaintiffs pressed on thereafter, researching and developing a 1,300+ page factually detailed operative Complaint that they believe adequately states claims against Toyota and each of the remaining Defendants." *Id.* Plaintiffs also assert that "[a]t this stage—and notably without any of their RICO or fraud claims yet upheld by the Court against Toyota—Plaintiffs successfully obtained" a settlement that "provides tens of millions of dollars in benefits to all Class members." *Id.* Further, Plaintiffs' Counsel have undertaken years of complex work on a purely contingent basis, with a risk of obtaining no payment at all. In light of these factors, the application of the multiplier requested is likely to be reasonable.

The evidence submitted in connection with the Motion shows that, to date, the attorney's fees submitted by Plaintiffs' counsel are largely reasonable. Additionally, as noted, the requested fee award will likely constitute a reasonable percentage of the total value of the recovery to the Class. However, because, as noted earlier, and as discussed at the hearing, further submissions will be necessary to confirm many of these issues, and to finalize, *inter alia,* whether any multiplier will apply and if so, its amount, it is determined on a preliminary basis that an award in a range between $25,155,000 and $25,905,000 is reasonable.

    E.    Appointment of Class Representative and Class Counsel

For the reasons stated above, Plaintiff's Counsel and the Toyota Plaintiffs have been adequate representatives of the Class. Therefore, the Toyota Plaintiffs are approved as Class Representatives. The Class Representatives are: Mark Altier, Alejandra Renteria, Samuel Choc, Tatiana Gales, Gary Samouris, Michael Hines, Brent DeRouen, Danny Hunt, Evan Green, Joy Davis, and Dee Roberts.

Additionally, Co-Lead Counsel and the members of the Plaintiffs' Steering Committee are approved as Class Counsel. Class Counsel includes the following entities: Baron & Budd, P.C., Lieff Cabraser Heimann & Bernstein, LLP, Ahdoot & Wolfson, PC, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Bleichmar Fonti & Auld LLP, Boies, Schiller & Flexner L.L.P., Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, DiCello Levitt Gutzler LLC, Gibbs Law Group LLP, Keller Rohrback L.L.P., Kessler Topaz Meltzer and Check LLP, Podhurst Orseck, P.A., Pritzker Levine LLP, Robbins Geller Rudman & Dowd LLP, and Robins Kaplan LLP.

    F.    Appointment of a Settlement Administrator

Plaintiffs state that "[t]he parties selected Kroll Notice Media as the Settlement Notice Administrator based on its extensive experience in administering large-scale notice programs in complex class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

cases." Dkt. 747 at 19. The Finegan Declaration describes Jeanne C. Finegan's experience and credentials relevant to administering notice of the Settlement. *See* Dkt. 747-2. Finegan states that she has "served as an expert and ha[s] been directly responsible for the design and implementation of over 1,000 notice programs, including some of the largest and most complex programs ever implemented in the United States as well as globally in over 140 countries and 37 languages." *Id.* ¶ 6. Based on the evidence provided, Kroll appears to be an appropriate administrator.

As noted, the costs of administration of the Notice Program are estimated to be between $6 million and $6.5 million. Plaintiffs state that they believe this cost is "reasonable and necessary given the extensive size of the Class associated with some 5.2 million vehicles, and the proportional costs to send notice and administer claims."

Kroll is approved as Settlement Notice Administrator.

Plaintiffs also propose that Patrick Hron and Patrick Juneau, of Juneau David APLC, serve in the role of Settlement Special Administrator, to oversee and administer the Settlement Fund. Dkt. 747 at 19. Juneau was previously appointed by the Court to serve as the Settlement Special Master. Dkt. 747-3 ¶ 2; Dkt. 493. His work was effective and efficient. Juneau declares that, as a court-appointed Settlement Special Master, he has "overseen and distributed billions of dollars in settlement funds to millions of class members in numerous large, high profile, complex and multi-party federal and state mass and class action cases." Dkt. 747-3 ¶ 4. Based on the evidence provided and Juneau's experience in this matter, Hron and Juneau are appropriate administrators.

As noted, Juneau estimates that, based on his "experience and reasonable assumptions for this settlement albeit with limited foresight at this time about the total volume of claims that will be received and will require assessment," that the fees and costs for the Settlement Special Administrator over the three to four year administration of the settlement will be between $300,000 and $500,000. Juneau and Hron are approved to serve as Settlement Special Administrator.

      G.    Proposed Notice

          1.    <u>Legal Standards</u>

Rule 23(e)(1)(B) requires that a court "direct notice in a reasonable manner to all class members who would be bound by" a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

          2.    <u>Application</u>

As noted, the summary of the terms of the Settlement Agreement, advise each of the Class Members about the process for submitting a claim form, and informs each Class Member of their rights and options. Dkt. 747-2, Ex. C. It is estimated that direct notice will reach over 90% of the Class. Dkt. 747-2 ¶ 19. The Proposed Notice satisfies the requirements of Rule 23(e)(1)(B). Therefore, the Proposed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Notice, as well as the Notice Program, are approved.

## V. Request for Preliminary Injunction

Plaintiffs request that this Court "issue a preliminary injunction pending final approval of the settlement, enjoining Class Members and their representatives from pursuing claims that are similar to those alleged in the ACAC." Dkt. 747 at 44. Specifically, Plaintiffs assert that, pursuant to the All Writs Act, this Court may "issue a preliminary injunction and stay all other actions, pending final approval by the Court; and (ii) issue a preliminary injunction enjoining potential Class Members, pending the Court's determination of whether the Settlement Agreement should be given final approval, from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court." *Id.* at 41-42.

The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, the Anti-Injunction Act bars a federal court from granting an injunction to stay proceedings in a state court, except "as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Plaintiffs contend that the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act applies here. Dkt. 747 at 41-42. They assert that because "substantial negotiations have progressed to the point of settlement, competing actions and communications would jeopardize the realization of a nationwide settlement, interfere with this Court's ability to manage the settlement, and potentially cause unnecessary confusion for Class Members." *Id.* at 44.

"Courts have held that the existence of advanced federal in personam litigation may, in some instances, permit an injunction in aid of jurisdiction." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1102 (9th Cir. 2008). If "the possibility of an earlier state court judgment is disruptive to settlement negotiations in federal court, the existence of the state court action might sufficiently interfere with the federal court's flexibility to justify an injunction." *In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002). District courts in this Circuit have stated that "[a] district court may enjoin state proceedings which affect the rights of class members, where the court is supervising a settlement of a class action that is so far advanced that it is equivalent to a res over which the court requires control and where it would be intolerable to have conflicting orders from different courts." *Jacobs v. CSAA Inter-Ins.*, No. C07-00362MHP, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) (citing *In re Baldwin–United Corp.* (*Single Premium Deferred Annuities Ins. Litigation*), 770 F.2d 328, 337 (2d Cir. 1985)). The Ninth Circuit has affirmed the issuance of such an injunction where "a competing state class action covering a portion of the federal class posed a significant danger to the delicate and transitory process of approving a settlement agreement, and thereby threatened the district court's ability to resolve the litigation." *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 845 (9th Cir. 2005) (discussing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)).

However, "[t]he leading treatise on class actions counsels against antisuit injunctions at the preliminary approval stage '[i]n all but very rare circumstances.'" *Pedraza v. Pier 1 Imports U.S. Inc*, No. 816CV01447JLSDFM, 2017 WL 11617994, at *2 (C.D. Cal. Sept. 26, 2017) (citing Newberg on Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Actions § 13:19 (5th ed)). Particular concerns are raised because at the preliminary approval stage,
"the court has not given notice to the class, not heard objections to the settlement, not weighed the
settlement's strengths and weaknesses in an adversarial setting, and likely not finally certified a class;
in short, there is no final judgment." Newberg § 13:19. The Ninth Circuit has reversed the issuance of
an injunction where "none of the considerations that have induced courts to issue injunctions despite
the strictures of the Anti–Injunction Act was present." *Negrete*, 523 F.3d at 1103 ("This was not an MDL
case; discovery was not complete; no class settlement was imminent, in fact, as far as the record
shows no serious settlement progress had been made; and, finally, there was no evidence of collusive
procedures, reverse auction or otherwise, even assuming that the existence of those would justify an
injunction of state proceeding.").

Despite these concerns, the same treatise advises that "[t]he single situation that raises the strongest
argument in favor of an antisuit injunction at the preliminary approval stage concerns actions in federal
court—particularly those consolidated by the Judicial Panel on Multidistrict Litigation into a single MDL
proceeding—that are robustly litigated and aim to settle a large, complex matter without significant
imposition by strategically filed parallel state cases." *Id.* This is the situation presented here. Indeed,
complex litigation cases where the parties "seek complicated, comprehensive settlements to resolve as
many claims as possible in one proceeding," are "especially vulnerable to parallel state actions that
may 'frustrate the district court's efforts to craft a settlement in the multi-district litigation before it.'" *In re
Diet Drugs*, 282 F.3d at 236. In such cases where settlement has reached preliminary approval, "the
challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other
for a presents a genuine threat to the jurisdiction of the federal court." *Id.*

Plaintiffs have identified substantial concerns that the potential filing of copycat lawsuits in other
jurisdictions may impose on this Court's jurisdiction and its ability effectively to manage the settlement
process. Therefore, it is determined that the issuance of a preliminary injunction, which will remain in
place until a ruling is made with respect to the motion for final approval of the Settlement Agreement, is
necessary and appropriate in aid of this Court's continuing jurisdiction and authority over the action.

For the foregoing reasons, the request for a preliminary injunction is **GRANTED IN PART.** Pending the
decision on the motion for final approval, all proceedings in this action, other than proceedings
necessary to carry out or enforce the Settlement Agreement or this Order, are temporarily stayed and
suspended, until further order from this Court. Further, potential Class Members are enjoined from
challenging in any action or proceeding any matter covered by this Settlement Agreement, except for
proceedings in this Court to determine whether the Settlement Agreement will be given final approval.

The issue as to whether a permanent injunction should be granted will be considered de novo in
connection with the motion for final approval, if that motion is granted.

**VI.** <u>**Conclusion**</u>

For the reasons stated in this Order, the Motion is **GRANTED.**

The following schedule, in accordance with the parties' Settlement Agreement, is adopted:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| EVENT | DEADLINES |
|---|---|
| Initial Class Notice to be Disseminated | August 11, 2023 |
| Toyota's Counsel shall provide to the Settlement Notice Administrator a list of all counsel for anyone who has then-pending economic-loss litigation against Toyota relating to ZF-TRW ACU claims involving the Subject Vehicles and/or otherwise covered by the Release, other than those counsel in the Actions | August 16, 2023 |
| Direct Mail Notice to be Substantially Completed | September 11, 2023 |
| Plaintiffs' Motion, Memorandum of Law and Other Materials in Support of their Requested Award of Attorneys' Fees, Reimbursement of Expenses, and Request for Class Representatives' Service Awards to be Filed with the Court | September 22, 2023 |
| Parties' Motion for Final Approval, Memoranda of Law, and Other Materials in Support of Final Approval to be Filed with the Court | September 22, 2023 |
| Deadline for Receipt by the Clerk of All Objections Filed and/or Mailed by Class Members | October 20, 2023 |
| Postmark Deadline for Class Members to Mail their Request to Exclude Themselves (Opt-Out) to Settlement Notice Administrator | October 20, 2023 |
| Deadline for filing Notice of Intent to Appear at Hearing on Motion for Final Approval by Class Members and/or their Personal Attorneys | November 3, 2023 (filing is to be with Clerk of the Court with copies served on Co-Lead Counsel and Toyota's Counsel) |
| Settlement Notice Administrator Shall File List of Opt-Outs and the Results of the Dissemination of the Notice with the Court | October 30, 2023 |
| Parties' Supplemental Memorandum of Law in Further Support of the Settlement to be Filed with the Court and Response to Objections and Requests for Exclusion from the Class | October 30, 2023 |
| Hearing on Motion for Final Approval | November 16, 2023 at 11:00 a.m. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML19-02905 JAK (MRWx) | Date | July 31, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

**IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer      TJ