1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  **BARON & BUDD, P.C.**
   15910 Ventura Boulevard, Suite 1600
3  Encino, CA 91436
   Telephone: 818.839.2333
4  Facsimile: 818.986.9698

5  David S. Stellings (*pro hac vice*)
   dstellings@lchb.com
6  **LIEFF CABRASER HEIMANN &**
   **BERNSTEIN, LLP**
7  250 Hudson Street, 8th Floor
   New York, NY 10013-1413
8  Telephone: 212.355.9500
   Facsimile: 212.355.9592

9

10 *Co-Lead Counsel for Plaintiffs*

11

12                UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14

15 *In re ZF-TRW Airbag Control Units*       MDL No. 2905
   *Products Liability Litigation*
16                                           Judge: John A. Kronstadt
   ALL CASES AGAINST TOYOTA
17                                           **MOTION FOR FINAL APPROVAL**
                                             **OF CLASS SETTLEMENT, AND**
18                                           **AWARD OF ATTORNEYS' FEES,**
                                             **EXPENSES, AND SERVICE**
19                                           **AWARDS TO SETTLEMENT CLASS**
                                             **REPRESENTATIVES**
20
                                             Date:    November 16, 2023
21                                           Time:    11:00 a.m.
                                             Dept.:   Courtroom 10B
22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL THE PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 16, 2023 at 11:00 a.m. or at such other date and time as the Court may set, in Courtroom 10B of the United States District Court for the Central District of California, Settlement Class Counsel, on behalf of a proposed Settlement Class of owners and lessees of certain Toyota vehicles, will and hereby do move the Court for an order and judgment granting final approval of the Class Action Settlement and the motion for attorneys' fees, costs, and service awards, and appointing Settlement Class Counsel and Settlement Class Representatives under Fed. R. Civ. P. 23(g)(1).

This Motion is based on:

(1) this Notice of Motion and Motion;

(2) the Memorandum of Points and Authorities below;

(3) the Joint Declaration of Co-Lead Counsel and exhibits thereto, filed concurrently herewith;

(4) the Declaration of Jeanne Finegan, filed concurrently herewith;

(5) the Declaration of Court-Appointed Settlement Special Master Patrick Juneau, previously filed in connection with Plaintiffs' Motion for Preliminary Approval (ECF 747-4);

(6) the Declaration of Kirk D. Kleckner, filed concurrently herewith;

(7) the Declaration of Professor Brian T. Fitzpatrick, filed concurrently herewith;

(8) the records, pleadings, and papers filed, and documents produced in, this litigation; and

(9) such other documentary and oral evidence or argument as Settlement Class Counsel may present to the Court at the hearing of this Motion.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................... 1

II. BACKGROUND ........................................................................................... 4

    A.  The Settlement provides substantial compensation to Toyota Class Members. ...................................................................................... 4

    B.  The Case was complex, risky, and thoroughly investigated. ............... 6

III. ARGUMENT ................................................................................................ 8

    A.  The Settlement is fair, reasonable, and adequate. ............................... 8

        1.  Rule 23(e)(2)(A): Settlement Class Counsel and the Settlement Class Representatives have and will continue to zealously represent the Class. ............................................. 9

        2.  Rule 23(e)(2)(B): The Settlement is the product of good faith, evidence-backed, and arm's-length negotiations. ........... 10

        3.  Rule 23(e)(2)(C): The Settlement represents a fair compromise for substantial compensation. ............................. 12

            a.  The Settlement mitigates the risks, expenses, and delays the Class would bear with continued litigation .................................................................. 14

            b.  Toyota Class Members can obtain relief through a straightforward claims process. ........................... 16

            c.  Counsel seek reasonable attorneys' fees and costs. ....... 16

        4.  Rule 23(e)(2)(D): The Proposed Settlement treats all Toyota Class Members equitably relative to one another. ........ 17

        5.  The Settlement satisfies the Ninth Circuit's approval factors. ...................................................................... 17

            a.  Settlement Class Counsel endorse the Settlement. ........ 18

            b.  The Notice Program is proving a success, and the Class's initial response has been positive. ..................... 18

    B.  The Settlement Class satisfies the applicable Rule 23 requirements and should be certified. ................................................. 19

        1.  Rule 23(a)(1): The Class is sufficiently numerous. ................. 20

        2.  Rule 23(a)(2): The Class Claims present common questions of law and fact. ..................................................... 20

        3.  Rule 23(a)(3): The Settlement Class Representatives' claims are typical of other Toyota Class Members' claims. ..... 21

        4.  Rule 23(a)(4): The Settlement Class Representatives and Settlement Class Counsel have and will continue to adequately protect the interests of the Class. ............................ 22

        5.  Rule 23(b)(3)—Predominance: Common issues of law and fact predominate. ...................................................... 23

        6.  Rule 23(b)(3)—Superiority: Class treatment is superior to other available methods for the resolution of this case. .......... 24

**TABLE OF CONTENTS**
(continued)

Page

C.   The Court should confirm Plaintiffs' Counsel as Settlement
Class Counsel under Rule 23(g)(1)...................................................26

IV.   SETTLEMENT CLASS COUNSEL'S REQUESTED FEE IS FAIR,
REASONABLE, AND APPROPRIATE...............................................26

A.   Settlement Class Counsel obtained substantial monetary
compensation for the Toyota Class.....................................................28

1.   The Settlement provides significant, valuable benefits in
addition to the cash compensation............................................29

2.   The Settlement resulted from Settlement Class Counsel's
zealous representation in complex and risky litigation. ..........30

3.   Settlement Class Counsel's requested fee percentage is
reasonable, appropriate, and strongly supported by
precedent...................................................................................31

4.   Settlement Class Counsel carried considerable financial
burden in prosecuting this complex litigation. ........................33

5.   A lodestar cross-check confirms the requested fees are
reasonable. ................................................................................33

a.   Class Counsel expended a reasonable number of
hours advancing this complex litigation. ......................34

b.   Settlement Class Counsel billed reasonable rates for
those hours......................................................................37

c.   Class Counsel's performance and the results
achieved justify a reasonable lodestar multiplier. .........40

d.   The requested multiplier is squarely in line with
those routinely approved in this Circuit. .......................41

B.   Settlement Class Counsel's expenses are reasonable and
appropriate...........................................................................................42

C.   The Settlement Class Representatives have earned the requested
service awards through four years of dedication to this case. ...........44

V.   CONCLUSION ..............................................................................................45

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................23

*Banh v. Am. Honda Motor Co., Inc.*,
No. 2:19-CV-05984-RGK-AS, 2021 WL 3468113
(C.D. Cal. June 3, 2021) ....................................................................14, 31

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ............................................................32

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...........................................................................26, 27

*Boyd v. Bank of Am. Corp.*,
No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804
(C.D. Cal. Nov. 18, 2014) ........................................................................32

*Brightk Consulting Inc. v. BMW of N. Am., LLC*,
No. SACV 21-02063-CJC (JDEx), 2023 WL 2347446
(C.D. Cal. Jan. 3, 2023) ............................................................................14

*Brown v. CVS Pharmacy, Inc.*,
No. 15-cv-7631, 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ...........43

*Butler v. Sears, Roebuck & Co.*,
702 F.3d 359 (7th Cir. 2012)...................................................................23

*Cisneros v. Airport Terminal Servs. Inc.*,
No. 2:19-CV-02798-VAP-SPx, 2021 WL 3812163
(C.D. Cal. Mar. 26, 2021) ........................................................................44

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ............................................................41

*Elder v. Hilton Worldwide Holdings, Inc.*,
No. 16-CV-00278-JST, 2021 WL 4785936 (N.D. Cal. Feb. 4, 2021) .................11

*Evans v. Zions Bancorp., N.A.*,
No. 2:17-CV-01123 WBS DB, 2022 WL 3030249 (E.D. Cal. Aug. 1, 2022)......12

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012)..................................................................22

*Fernandez v. Victoria Secret Stores, LLC*,
No. CV 06–04149 MMM SHX, 2008 WL 8150856
(C.D. Cal. July 21, 2008) .........................................................................32

*Friedman v. 24 Hour Fitness USA, Inc.*,
No. CV 06-6282 AHM (CTx), 2009 WL 2711956
(C.D. Cal. Aug. 25, 2009) ........................................................................23

*Guido v. L'Oreal, USA, Inc.*,
284 F.R.D. 468 (C.D. Cal. 2012) ............................................................21

*Gutierrez v. Amplify Energy Corp.*,
No. 821 CV 01628 DOC JDEX, 2023 WL 3071198
(C.D. Cal. Apr. 24, 2023) .........................................................................43

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Gutierrez, JR. v. Amplify Energy Corp.,*
No. 8:21-cv-01628-DOC (JDEx) (C.D. Cal. Jan. 26, 2023) ................................ 38

4

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................ *passim*

5

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994) ................................................................ 28

6

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ................................................................ 28

7

*Hernandez v. Dutton Ranch Corp.,*
No. 19-CV-00817-EMC, 2021 WL 5053476
(N.D. Cal. Sept. 10, 2021) ................................................................ 3, 33

8

9

*Herrera v. Wells Fargo Bank, N.A.,*
No. 8:18-CV-00332-JVS-MRW, 2021 WL 9374975
(C.D. Cal. Nov. 16, 2021) ................................................................ 39

10

11

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. 299 (N.D. Cal. 2018) ................................................................ 11

12

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ................................................................ 17, 28, 34, 40

13

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.,*
No. 17-MD-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ............... 6

14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.,*
No. 17-MD-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............. 20

15

16

*In re CRT Antitrust Litig.,*
MDL No. 1917, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ..................... 32, 44

17

*In re First Alliance Mortg. Co.,*
471 F.3d 977 (9th Cir. 2006) ................................................................ 23

18

*In re Hyundai & Kia Fuel Econ. Litig.,*
926 F.3d 539 (9th Cir. 2019) ................................................................ 23, 24

19

20

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) *as amended* (June 19, 2000) ..................... 15, 32, 44

21

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.,*
No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)
*aff'd*, 768 F. App'x 651 (9th Cir. 2019) ................................................ 33, 42

22

23

*In re Nexus 6P Prods. Liab. Litig.,*
No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........ 28, 29

24

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 28

25

*In re Online DVD-Rental Antitrust Litig.,*
779 F.3d 934 (9th Cir. 2015) ................................................................ 44

26

*In re Oracle Sec. Litig.,*
852 F. Supp. 1437 (N.D. Cal. 1994) ................................................ 31

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Takata Airbag Prods. Liab. Litig.*,
No. 14-24009-CV, 2017 WL 11680208 (S.D. Fla. Sept. 19, 2017)......................21

*In re Takata Airbag Prods. Liab. Litig.*,
No. 14-CV-24009, 2022 WL 1669038 (S.D. Fla. Apr. 4, 2022)..........................14

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
No. MDL 3:07–md–1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ......32

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 810 ML 02151J VSF MOX, 2013 WL 12327929
(C.D. Cal. July 24, 2013).................................................................................... 5

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 810ML02151JVSFMOX, 2013 WL 12327929
(C.D. Cal. July 24, 2013)....................................................................................39

*In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ...............................................................12, 16

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015) .................................................................. 5

*In re Volkswagen "Clean Diesel" Mktg.*,
No. 15-MD-02672-CRB, 2022 WL 17730381
(N.D. Cal. Nov. 9, 2022)....................................................................................20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*
No. MDL 2672 CRB (JSC), 2016 WL 6248426
(N.D. Cal. Oct. 25, 2016)...................................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018)................................................................................ 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 4010049
(N.D. Cal. July 26, 2016).......................................................................21, 22, 24, 25

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2019 WL 2077847
(N.D. Cal. May 10, 2019)...................................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 1047834
(N.D. Cal. Mar. 17, 2017)......................................................................27, 33, 39

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)..............................................................................33

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) .38

*In re Zoom Video Commc'ns, Inc. Privacy Litig.*,
No. 20-CV-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022).............3, 31

*Ingram v. Oroudjian*,
647 F.3d 925 (9th Cir. 2011)..............................................................................37

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ................................................................. 20

4

*Johnson v. City of Grants Pass*,
72 F.4th 868 (9th Cir. 2023) .................................................................... 21

5

*Keegan v. Am. Honda Motor Co, Inc.*,
No. CV1009508MMMAJWX, 2014 WL 12551213
(C.D. Cal. Jan. 21, 2014) ......................................................................... 39

6

7

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ..................................................................... 40

8

*Kim v. Space Pencil, Inc.*,
No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ...... 16

9

10

*Looper v. FCA US LLC*,
No. LACV 14-00700-VAP (DTBx), 2017 WL 11650429
(C.D. Cal. Mar. 23, 2017) ........................................................................ 21

11

*Miller v. Ghirardelli Chocolate Co.*,
No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ..... 28, 31

12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 18

13

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ...... 15

14

15

*Ochinero v. Ladera Lending, Inc.*,
No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334
(C.D. Cal. July 19, 2021) ......................................................................... 41

16

17

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ..................................................... 10, 11, 18

18

*Pan v. Qualcomm Inc.*,
No. 16-CV-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ....... 29

19

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ................................................................... 21

20

*Perez v. Rash Curtis & Assocs.*,
No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ...... 39

21

*Pokorny v. Quixtar, Inc.*,
No. C 07–0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013) ......... 31

22

*Rainbow Bus. Sols. v. MBF Leasing LLC*,
No. 10-CV-01993-CW, 2017 WL 6017844 (N.D. Cal. Dec. 5, 2017) ..... 31

23

24

*Ramirez v. Trans Union, LLC*,
No. 12-CV-00632-JSC, 2022 WL 17722395 (N.D. Cal. Dec. 15, 2022) ...... 38

25

*Rieckborn v. Velti PLC*,
No. 13-3889, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................... 34

26

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................... 13

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*,
     No. CV 02-1089 PSG (VBKx), 2021 WL 4786889

4   (C.D. Cal. Aug. 24, 2021) ......................................................................40

5   *Sarabia v. Ricoh USA, Inc.*,
     No. 820 CV 00218 JLS KES, 2023 WL 3432160

6   (C.D. Cal. May 1, 2023) ........................................................................40

7   *Schroeder v. Envoy Air, Inc.*,
     No. CV 16-4911-MWF (KSX), 2019 WL 2000578
     (C.D. Cal. May 6, 2019) ........................................................................39

8   *Six (6) Mexican Workers v. Ariz. Citrus Growers*,
     904 F.2d 1301 (9th Cir. 1990) ..............................................................27

9

10  *Smith v. Cardinal Logistics Mgmt. Corp.*,
     No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ...........25

11  *Spann v. J.C. Penney Corp.*,
     211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................34

12  *Staton v. Boeing Co.*,
     327 F.3d 938 (9th Cir. 2003) ..........................................21, 27, 31, 43

13  *Stetson v. Grissom*,
     821 F.3d 1157 (9th Cir. 2016) ..............................................................40

14

15  *Stockwell v. City & Cty. of San Francisco*,
     749 F.3d 1107 (9th Cir. 2014) ..............................................................20

16  *Stuart v. RadioShack Corp.*,
     No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ....32

17  *Trosper v. Styker Corp.*,
     No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ...25

18  *United Steelworkers of Am. v. Phelps Dodge Corp.*,
     896 F.2d 403 (9th Cir. 1990) ................................................................38

19

20  *Vizcaino v. Microsoft Corp.*,
     290 F.3d 1043 (9th Cir. 2002) ......................................................*passim*

21  *Wahl v. Yahoo! Inc.*,
     No. 17-CV-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ...11

22  *Waldrup v. Countrywide Fin. Corp.*,
     No. 2:13-CV-08833-CAS-AGRx, 2020 WL 13356468

23  (C.D. Cal. July 16, 2020) ......................................................................38

24  *Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011) ........................................................................20, 21

25  *Willner v. Manpower Inc.*,
     No. 11-cv-2846, 2015 WL 3863625 (N.D. Cal. June 22, 2015) ...........43

26  *Wolin v. Jaguar Land Rover N. Am., LLC*,
     617 F.3d 1168 (9th Cir. 2010) ..................................................23, 24, 25

27  **Rules**

28  Fed. R. Civ. P. 12(b) ..................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 23(a)(1) ..................................................................20

Fed. R. Civ. P. 23(a)(3) ..................................................................21

Fed. R. Civ. P. 23(a)(4) ..................................................................22

Fed. R. Civ. P. 23(e) ......................................................................27

Fed. R. Civ. P. 23(e)(2)(A) ...............................................................9

Fed. R. Civ. P. 23(e)(2)(B) .............................................................10

Fed. R. Civ. P. 23(e)(2)(C) ..........................................12, 14, 16, 18

Fed. R. Civ. P. 23(e)(2)(D) .............................................................17

Fed. R. Civ. P. 23(h) ................................................................28, 43

**Rules**

5 *Moore's Federal Practice—Civil* § 23.22 (2016) ....................20

Federal Judicial Center, *Manual for Complex Litigation*
  § 21.71 (4th ed.) ..........................................................................28

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class
  Action Settlements: 1993–2008,*
  7 J. Empirical Legal Stud. 248 (2010) ......................................43

Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class
  Actions 2009-2013,*
  92 N.Y.U. L. Rev. 937 (2017) ..........................................42, 43

William B. Rubenstein et al., 4 Newberg and Rubenstein on Class Actions § 13:49
  (5th ed. 2012) ..............................................................................11

William B. Rubenstein et al., 5 Newberg and Rubenstein on Class Actions § 15:89
  (6th ed.) ........................................................................................42

**Other Authorities**

Fed. R. Civ. P. 23(h) committee note ........................................28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Four years of hard-fought litigation have paid off for the Toyota Class Members: in exchange for a release of their claims, they will receive settlement benefits worth more than $147,800,000. The Settlement is non-reversionary. It includes a $65 million cash payment by Toyota, a $3.5 million outreach program, and a $10 commitment from Toyota to provide future loaner vehicles and reimbursements (*see* ECF 770 ("Prelim. Order") at 25-26); and an Extended New Parts Warranty valued at $69,300,000, with still additional prospective value in the event of a future recall for additional Toyota Class Vehicles. *See* Declaration of Kirk Kleckner ("Kleckner Decl."), § 2(a)-(b).

The Settlement is an outstanding result for the Toyota Class Members.[1] It compensates them for economic losses and ensures that the Recalled Vehicles receive the available Recall Remedy without delay or inconvenience. Specifically, the Settlement provides payments to Toyota Class Members through: (a) reimbursement of reasonable out-of-pocket expenses related to obtaining the Recall Remedy for a Recalled Vehicle, and (b) potential residual distribution payments of up to $250 for each Class Member, regardless of whether or not they incurred any out-of-pocket expenses. *See* Settlement Agreement ("SA"), ECF 756-3, § III.B-C.

The Settlement provides significant, valuable benefits to Toyota Class Members above and beyond cash payments, including:

- An Extended New Parts Warranty, SA § III.F, valued by a leading warranty expert at $69,300,000 in economic value for Toyota Class Members with Recalled Vehicles. *See* Kleckner Decl. § 2(a)-(b).
- A comprehensive Outreach Program designed to significantly increase Recall Remedy completion rates for the Recalled Vehicles. SA § III.G.

---

[1] Capitalized terms not defined herein have the same definitions and meanings used in the Settlement Agreement.

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

The Court found that this program provides a $3.5 million benefit to the Class. Prelim. Order at 26.

- A Future Rental Car Reimbursement, Loaner Vehicle, and Outreach Program to require that: (a) if a Settlement Class Member with a recalled Toyota Subject Vehicle seeks a Recall Remedy, he or she will receive a loaner vehicle (or reimbursement for reasonable rental car costs), and (b) if the unrecalled Toyota Subject Vehicles are recalled in the future, Toyota will implement the recall and ease any inconvenience for Toyota Class Members in obtaining the ACU recall repair. SA § III.H. The Court previously found that this benefit provides $10 million of value to the Toyota Class Members. Prelim. Order at 26.

- An innovative, ten-year-long Settlement Inspection Program, which will benefit all Toyota Class Members by mandating procedures for the active investigation and documentation of airbag non-deployments in Subject Vehicles that may be caused by electrical overstress. SA § III.E.

In sum, this proposed resolution—reached after four years of litigation and investigation, and a year of intensive settlement negotiations overseen by the Court-appointed Settlement Special Master—provides comprehensive, valuable benefits that address the Toyota Class Members' interests in numerous, complementary ways. This is a remarkable result, particularly given that Plaintiffs have not yet sustained RICO or fraud claims against Toyota.

The responses so far indicate that the Class agrees. With several years left in the three-year claims period—designed to allow as many Toyota Class Members as possible to obtain a Recall Repair and submit claims—the Class is already showing its support for the Settlement. The Notice Administrator reports "encouraging" metrics that portend strong participation and no objections. *See* § III.A.5.b, *infra*.

Settlement Class Counsel worked thousands of hours (worth more than $10 million) on a purely contingent basis to achieve this result. To compensate them for their significant investment of time, money and risk, Class Counsel seek $25 million in fees—calculated using the capped, discounted hourly rates set forth in the Common Benefit Order entered by the Court—and $472,730.40 in costs.

As described in detail below, the requested fees are approximately 16.9% of the Settlement's guaranteed economic value to the class, the relevant metric for fee analysis in the Ninth Circuit.[2] *See In re Zoom Video Commc'ns, Inc. Privacy Litig.,* No. 20-CV-02155-LB, 2022 WL 1593389, at *10 (N.D. Cal. Apr. 21, 2022) (both "monetary and non-monetary benefits" contribute to settlement value); *accord* Declaration of Brian Fitzpatrick T. Fitzpatrick ("Fitzpatrick Decl.") ¶¶ 12-13, 27. Such a fee award is comfortably in line with awards in this Circuit. *See Hernandez v. Dutton Ranch Corp.,* No. 19-CV-00817-EMC, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) (collecting cases and finding that "[d]istrict courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund . . . [s]uch awards are routinely upheld by the Ninth Circuit");[3] Fitzpatrick Decl. ¶¶ 17, 19-23.[4] The reasonableness of the requested fees is further confirmed

---

[2] This percentage is calculated by dividing $25 million in attorneys' fees into a denominator of $147.8 million in settlement value. The denominator includes: the $78.5 million in the Settlement Amount, plus $69.3 million in economic value from the Extended Warranty. *See* Kleckner Decl. § 2(a)-(b). The $147.8 million number is conservative — it does not include the potential value attributed to the extended warranty for the unrecalled Toyota Class Vehicles.

[3] Internal citations are omitted throughout unless otherwise indicated.

[4] Professor Fitzpatrick even more conservatively calculates the percentage recovery using a denominator of $134.3 million, compromised of: $69.3 million from the Extended Warranty, plus $65 million, which is the cash compensation to the Class (exclusive of the commitments from Toyota for loaner vehicles and rental reimbursements). This yields a percentage of approximately 18.6% for the attorneys' fees request. Professor Fitzpatrick's calculations show that even when the settlement value is construed to be "as conservative as possible," the percentage of the recovery is still well within a reasonable range. Fitzpatrick Decl. ¶ 18.

by a lodestar cross-check that yields a routine multiplier of 2.17. *See* § IV.A.5.d, *infra*; *see also* Fitzpatrick Decl. ¶ 29 (this requested multiplier is "*below* the lodestar multipliers that are typical in complex cases with large recoveries like the settlement here").

Finally, the work performed by the Settlement Class Representatives made this Settlement possible. Settlement Class Counsel seek an award of $2,500 each for Plaintiffs' commendable service in this litigation.

Plaintiffs respectfully ask the Court to certify the Settlement Class, grant final approval to the Settlement, approve an aggregate award of $25,472,730.40 million in attorneys' fees and costs to be allocated by Co-Lead Counsel among Participating Counsel[5] for their common benefit work devoted to obtaining this significant result, and award the Settlement Class Representatives $2,500 each as service awards for their time and commitment to this important case.

## II.   BACKGROUND

The Court is familiar with the history of this litigation, much of which is detailed in Plaintiffs' preliminary approval briefing and in the Court's Preliminary Approval Order. *See* ECF 747 at 2-8; Prelim. Order at 1-2. In the interest of efficiency, Plaintiffs incorporate those briefs and the Order by reference and provide the following summary of key points.

### A.   The Settlement provides substantial compensation to Toyota Class Members.

As discussed above, the proposed Settlement provides substantial and valuable benefits to the Class. This includes $78.5 million in cash and commitments from Toyota, comprised of a $65 million cash payment to the settlement fund, plus a commitment from Toyota to spend $3.5 million on a comprehensive Outreach Program to increase Recall participation and improve Subject Vehicle safety (SA § III.G.2), and to provide a Future Rental Car Reimbursement, Loaner Vehicle and

---

[5] Participating Counsel is defined in the Court's March 18, 2020 Common Benefit Order. ECF 111 at 2.

Outreach Program to ensure that in the event of a future recall of the Unrecalled

Vehicles, recall repairs are performed with minimal inconvenience for Toyota Class

Members (SA § III.H). The latter commitment is reasonably estimated to provide

$10 million in value for the Class. *See* ECF 758 and 758-1 (Toyota's supplemental

filing with underlying data that supports the cost of these two programs). Both of

these commitments provide calculable monetary benefits to the Class. *See* Prelim.

Order at 26 ( "the total recovery to the class can reasonably be calculated to have a

value of at least $78.5 million, including the Settlement Fund, the $10 million credit

for future loaner vehicles and outreach, and the $3.5 million to be spent on the

current Outreach Program").

In addition to the $78.5 million, the Settlement provides a long-term

Extended Warranty for any Class member who obtains a recall repair for a Recalled

Vehicle. SA § III.F. Economist Kirk Kleckner has calculated the value of the

Extended Warranty as $69,300,000 for Toyota Class Members with Recalled

Vehicles, and a prospective value of at least 60% of that amount for Toyota Class

Members with Unrecalled Vehicles. Kleckner Decl. ¶¶2(a)-(b). Courts have

accepted and relied upon Mr. Kleckner's valuations in a number of large

automotive class action settlements like this one. *See, e.g.*, *In re Volkswagen & Audi*

*Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) (accepting

Kleckner's warranty valuations); *In re Toyota Motor Corp. Unintended*

*Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 810 ML 02151J

VSF MOX, 2013 WL 12327929, at *9 n.10 (C.D. Cal. July 24, 2013) (finding

Kleckner's warranty valuation to be "both reliable and relevant").[6]

---

[6] *See also In re Takata Airbags Products Liability Litig.*, Case No. 15-MD-2599
(S.D. Fla.), ECF 2162 (order granting motion for final approval of BMW
settlement, supported by ECF 2033-2, declaration of Kirk Kleckner), ECF 2385,
2256-4 (same for and Nissan settlements); ECF 3121 (order denying motion to
exclude testimony of Kirk Kleckner on warranty valuation). *In re Chrysler-Dodge-*
*Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-MD-02777-

*Footnote continued on next page*

Finally, the Settlement also creates an innovative ten-year-long Settlement Inspection Program, which benefits all Toyota Class Members by mandating procedures for the active investigation and documentation of airbag non-deployments that may be caused by electrical overstress. SA § III.E.

Importantly, this Settlement is non-reversionary. If there are any funds remaining after all valid, complete, and timely claims are paid, the Settlement requires a redistribution of the remaining funds to Toyota Class Members unless and until it is economically infeasible to do so, at which time any modest remaining amount will be directed to *cy pres* recipients, subject to Court approval. SA § III.C ¶ 2. This ensures that *all* of the cash secured by the Settlement will inure to the benefit of the Class and the interests advanced in this litigation.

## B. The Case was complex, risky, and thoroughly investigated.

The valuable settlement compensation for the Class was not easily obtained, as evidenced in part by the *four years* of work it took to reach this result.

Indeed, this case presented a unique set of facts and complex issues from the beginning. The consolidated litigation traces back to 2019, when NHTSA expanded its investigation into ZF-TRW's DS84 ACUs to include Toyota and other automobile manufacturers. Settlement Class Counsel and other attorneys filed 26 class action lawsuits alleging that Toyota and other Defendants knowingly misrepresented and withheld information about the relevant ACU Defect from consumers who purchased and leased Toyota Class Vehicles. Since then, Settlement Class Counsel have dedicated more than four years to the extensive investigation, litigation, and discovery of the complex technologies and legal issues in this case.

Those years brought significant challenges and a commensurate amount of work to meet them. After the initial centralization into this MDL, the Court tasked Co-Lead Counsel with filing a consolidated complaint. *See* ECF 106. This was no

EMC, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019); ECF 561 (order granting motion for final approval of settlement, supported by ECF 491-4, declaration of Kirk Kleckner on warranty valuation).

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

small feat given that Plaintiffs asserted claims against six vehicle manufacturer groups and three component supplier groups, a total of *twenty-nine* Defendants— including four Toyota entities—based on Plaintiffs' investigation at the time. In the face of a remarkable aggregation of defendants, Plaintiffs thoroughly investigated and aggressively pursued their claims, as evidenced by the detailed factual allegations and legal claims in the 564-page Consolidated Consumer Class Action Complaint. *See* ECF 119.

In response to the Consolidated Complaint, Toyota filed a motion: (a) to stay the Toyota Plaintiffs' claims under the "primary jurisdiction" doctrine while NHTSA investigated the ACU Defect and evaluated Toyota's recall, and (b) to sever claims against Toyota from the other Vehicle Manufacturer Defendant groups in this consolidated MDL. ECF 191.

While the motions to stay and sever were pending, Plaintiffs and Toyota continued to engage in other substantial motion practice. First, on July 27, 2020, Toyota filed a motion to dismiss pursuant to Rule 12(b)(6),[7] and Toyota Motor Corporation (Toyota Japan) filed a motion to dismiss pursuant to Rule12(b)(2). ECF 214. Toyota also joined in the Defendants' omnibus 50-page Joint Motion to Dismiss. ECF 208. Plaintiffs researched, drafted, and filed approximately 90 pages of extensive, consolidated opposition briefing on the myriad challenges raised therein. ECF 281, 289. This Court later granted part of Toyota's motion and the Joint Motion, and ordered Plaintiffs to amend. ECF 396.

While the Parties[8] briefed the pleading challenges, Toyota *also* filed a motion to compel arbitration on December 10, 2020, which Plaintiffs successfully opposed,

---

[7] Toyota Motor Corporation provisionally joined the Toyota Motion pending resolution of its Rule 12(b)(2) challenge. *See* ECF 214 (Toyota Motor Corporation's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and Toyota's Motion to Dismiss Pursuant to 12(b)(6)).

[8] Reference to the "Parties" herein refers to the settling parties, the Toyota Defendants and the Toyota Plaintiffs; the Settlement does not create obligations for or release the remaining Defendants.

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

1   and this Court denied. ECF 305, 374.

2       Alongside these lengthy and complicated briefing efforts, the Parties also

3   engaged in extensive document and information exchanges. This included the

4   production and review of approximately 145,000 pages of documents and 4,500

5   native files from Toyota (including Excel spreadsheets, video/audio files, etc.),

6   many containing technical presentations and data that Toyota provided to NHTSA.

7   Plaintiffs propounded requests for production and interrogatories to the Toyota

8   Defendants, jurisdictional discovery on Toyota Motor Corporation, and responded

9   to the discovery requests that Toyota served on Plaintiffs. The Parties met and

10  conferred extensively regarding this discovery and a variety of other topics,

11  including Toyota's ESI disclosures. Toyota also produced relevant documents that

12  aided in the Parties' settlement discussions.

13      On May 26, 2022, Plaintiffs filed their three-volume, 1,335-page

14  Consolidated Amended Class Action Complaint (ACAC), which reflected their

15  deep investigation into the technology, mechanics, and other issues around the ACU

16  Defect; plus evidence of Defendants' knowledge of the defect, all gained through

17  years of litigation and discovery and their own independent investigation and

18  experts. ECF 477.

19      After Plaintiffs filed the operative ACAC, the Court appointed Patrick A.

20  Juneau as Settlement Special Master pursuant to Fed. R. Civ. P. Rule 53. ECF 473.

21  Thereafter, the Parties commenced a series of settlement discussions and related

22  information exchanges that facilitated more than a year of difficult negotiations.

23  Those negotiations ultimately resulted in the Settlement Agreement now before the

24  Court.

25  **III.   ARGUMENT**

26      **A.   The Settlement is fair, reasonable, and adequate.**

27      A "district court's task in reviewing a settlement is to make sure it is 'not the

28  product of fraud or overreaching by, or collusion between, the negotiating parties,

and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 617 (9th Cir. 2018) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

As detailed above, the Settlement provides significant, comprehensive benefits to the Settlement Class. This result, and all of the factors set forth in Fed. R. Civ. P. 23(e)(2), weigh strongly in favor of final approval. Indeed, the Court held in its Preliminary Approval Order that "a consideration of the applicable factors demonstrates that the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant preliminary approval." Prelim. Order at 22. The same conclusions support final approval here.

## 1. Rule 23(e)(2)(A): Settlement Class Counsel and the Settlement Class Representatives have and will continue to zealously represent the Class.

Settlement Class Counsel and the Settlement Class Representatives fought hard to protect the interests of the Class. These efforts resulted in the Settlement. *See* § II.A, *supra*. As the outcome reflects, Settlement Class Counsel showed dedication to investigating, prosecuting, and resolving this action over the course of nearly four years. *See* Fed. R. Civ. P. 23(e)(2)(A).

As detailed above, Settlement Class Counsel exerted significant effort to uncover the facts to advance and refine the Class claims. This includes the pursuit and review of substantial discovery from Toyota, along with discovery from other Defendants relevant to the Toyota Plaintiffs' claims—coupled with Plaintiffs' own investigative efforts and retention of technical experts. This research and investigation included review and synthesis of the tens of thousands of documents and electronically-stored information produced to date, which is reflected in the technical, evidence-based details in the 1,300+ page ACAC.

Settlement Class Counsel also fielded defensive pleading challenges from every angle—including researching, drafting, and filing approximately 90 pages of

extensive opposition briefing in response to Rule 12 challenges, a process that fleshed out the strengths and vulnerabilities of Plaintiffs' claims. Settlement Class Counsel were therefore well-positioned to evaluate the case and to negotiate a fair and reasonable Settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). They have done so.

The Settlement Class Representatives are likewise actively engaged. Each has seen this litigation through the course of several years. These Representatives support the agreement on behalf of the Class, and remain willing to protect the Class until the Court finally approves the Settlement and Settlement administration is complete. Co-Lead Decl. ¶ 8. The Class was and remains well represented.

### 2.    Rule 23(e)(2)(B): The Settlement is the product of good faith, evidence-backed, and arm's-length negotiations.

As the Court observed in granting preliminary approval, the Settlement arose out of intensive negotiations overseen by the Court-appointed Settlement Special Master Juneau, and there is "no evidence of fraud, overreaching, or collusion among the parties." Prelim. Order at 20; s*ee also* Fed. R. Civ. P. 23(e)(2)(B).

Negotiations leading up to the Settlement continued for more than a year. The lengthy timeframe reflects the detailed and technical nature of the negotiations, and efforts to inform and support them through a parallel investigatory process and exchanges of documents and information. With negotiations ongoing, and as described above (§ II.B), Defendants in this litigation produced more than a million pages of documents relevant to Plaintiffs' claims and the relevant defect in this case. Co-Lead Decl. ¶ 4. Toyota itself produced approximately 145,000 pages of documents, as well as approximately 4,500 native files including excel spreadsheets, video and audio files. Settlement Class Counsel have reviewed and analyzed relevant documents produced by Toyota, the other Defendants, and material they obtained through their own investigative efforts, in addition to the

1   responses to multiple sets of interrogatories and requests for admission served on
2   multiple Defendants, and other confirmatory discovery. *Id.* ¶ 5.

3         This robust exchange of information and documents further demonstrates
4   that the Settlement was reached in a procedurally fair manner between well-
5   informed parties. *See Wahl v. Yahoo! Inc.*, No. 17-CV-02745-BLF, 2018 WL
6   6002323, at *4 (N.D. Cal. Nov. 15, 2018) (granting final approval of class
7   settlement where the parties had exchanged "sufficient information to evaluate the
8   case's strengths and weaknesses"); *see also* William B. Rubenstein et al.,
9   4 Newberg and Rubenstein on Class Actions § 13:49 (5th ed. 2012) (extensive
10  exchange of information shows "the parties have a good understanding of the
11  strengths and weaknesses of their respective cases and hence that the settlement's
12  value is based upon such adequate information"); *In re Anthem, Inc. Data Breach
13  Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (discovery exchanged gave the parties
14  "a good sense of the strength and weaknesses of their respective cases" and was
15  "indicative of a lack of collusion"); *Elder v. Hilton Worldwide Holdings, Inc.*, No.
16  16-CV-00278-JST, 2021 WL 4785936, at *7 (N.D. Cal. Feb. 4, 2021) ("[T]he
17  extent of discovery completed supports approval of a proposed settlement" and
18  shows "both plaintiffs and defendants ha[ve] a clear view of the strengths and
19  weaknesses of their cases."); *Ontiveros*, 303 F.R.D. at 371 (granting final approval
20  where class counsel had "conducted discovery and non-discovery investigation").

21        Likewise, Settlement Special Master Juneau's oversight and guidance
22  demonstrates the fair and arm's length nature of the negotiations. "Settlements
23  reached with the help of a mediator are likely non-collusive." *Evans v. Zions
24  Bancorp., N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL 3030249, at *7 (E.D. Cal.
25  Aug. 1, 2022); *see also* Prelim. Order at 20 (noting Special Master Juneau's opinion
26  that "the outcome . . . is the result of a fair, thorough, and fully-informed arms-
27  length process between highly capable, experienced and informed parties and
28  counsel.").

Finally, the Settlement is non-reversionary, meaning that *none* of the value obtained for the Class will revert to Toyota if unclaimed. This, too, shows a lack of collusion and supports approval. *See* Prelim. Order at 20.

### 3. Rule 23(e)(2)(C): The Settlement represents a fair compromise for substantial compensation.

Avoiding years of additional, risky litigation in exchange for immediate and significant benefits is a principled compromise that works to the clear benefit of the Class. *See* Fed. R. Civ. P. 23(e)(2)(C). In short, the Settlement provides the Class significant value now, not years from now (if ever). *See In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) ("Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."

As noted above, the Agreement secures a non-reversionary Settlement Amount of $78.5 million, inclusive of commitments, to compensate the Class. It provides significant, relevant benefits to Toyota Class Members above and beyond those payments too, including a valuable long-term Extended New Parts Warranty. All Toyota Class Members also stand to benefit from the innovative Settlement Inspection Program, which will ensure investigation and documentation of relevant incidents in Subject Vehicles for ten years.

The compensation available to Toyota Class Members represents a material portion of Plaintiffs' economic damages attributable to Toyota, while Plaintiffs continue to seek damages from the ZF and ST Defendants. Plaintiffs' damages will be measured by calculating the difference in value between the Class Vehicles as marketed and the defective Class Vehicles actually received. ACAC ¶ 1456. A precise calculation of that difference will ultimately involve expert testimony at a later stage of this ongoing litigation. However, other forms of available data provide some benchmarks of the general scope of the economic damages due to the ACU

Defect. Market evidence shows that there is a difference in price attributable to variations in vehicle safety system functionality. For example, a 2011 Jeep Wrangler sold with seat-mounted, front side airbags is $500 more expensive than the same model without them. Of course, the addition of side mounted airbags makes the vehicle safer, but the lack of side mounted airbags is not comparable to the risk of airbag failure and other malfunctions due to the ACU Defect. Regardless, this market data point shows that material economic differences do indeed result from differences in the effectiveness of vehicle safety systems. ACAC ¶ 1457. In another example, in the *Takata* airbag litigation, Plaintiffs' experts performed a conjoint analysis and found that the overpayment percentage for vehicles with the dangerous airbag defect at issue in that case (which results in shards of metal shooting through the passenger compartment) was approximately ten percent of the vehicle purchase price. ACAC ¶ 1458. Again, the Takata defect is not identical to the ACU Defect here such that damages could be directly compared at this stage, but the results there provide yet another reference for the kinds of economic losses that result from differences in vehicle safety.

Plaintiffs' actual damages in this case may, at the appropriate juncture and with expert opinion, differ materially from either or both of these figures.[9] In any event, the compensation and benefits available under the Settlement offer a material amount of either figure. Importantly, as noted above, the benefits that the Settlement confers upon the Toyota Class Members reflects just one of three defendant groups from whom the Toyota Plaintiffs seek to recover their economic loss damages incurred when they purchased or leased Toyota Class Vehicles with the ACU Defect. The Toyota Plaintiffs will continue to pursue the portions of their damages attributable to the ZF and ST Defendants as well, which are significant.

---

[9] Treble damages, which are available under RICO, do not traditionally factor into settlement value assessment. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009).

The recovery obtained from Toyota is a notable result for the compromise of contested claims against one of several potentially liable defendant corporate families.

In addition to the potential damages in this case, the recovery here is also well in line with that recently approved in automotive defect cases in this Circuit and others. *See Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-CV-05984-RGK-AS, 2021 WL 3468113, at *7 (C.D. Cal. June 3, 2021) ("The settlement adequately and fairly compensates class members. They will receive automatic benefits (like the warranty extension and Infotainment System Online Resource), and they will have the opportunity to file claims for added relief in a streamlined process."); *Brightk Consulting Inc. v. BMW of N. Am., LLC*, No. SACV 21-02063-CJC (JDEx), 2023 WL 2347446, at *2 (C.D. Cal. Jan. 3, 2023) (extended warranty and out-of-pocket costs); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-CV-24009, 2022 WL 1669038, at *1 (S.D. Fla. Apr. 4, 2022) (approving Volkswagen settlement as the latest in several similar settlements in the *Takata* MDL).

The settlement reflects a fair, reasonable, and adequate compromise of Plaintiffs' claims, especially considering (i) the costs, risks, and delay of trial and appeal and (ii) the effectiveness of the proposed distribution plan. *See* Fed. R. Civ. P. 23(e)(2)(C). This Court found the same in its Preliminary Approval Order. Prelim. Order at 20-21.

a.   **The Settlement mitigates the risks, expenses, and delays the Class would bear with continued litigation.**

Plaintiffs believe in the strength of their case and were prepared to take it all the way to trial. But many hurdles lay ahead. The Settlement benefits described above are even more impressive given the inherent uncertainties of continued litigation.

For example, Plaintiffs submit the operative ACAC states valid, cognizable claims, including under RICO, but many of their claims did not survive Toyota's

earlier pleading challenge.[10] As demonstrated by the Court's ruling on Defendants' first round of motions to dismiss and the arguments raised in the pending second round, individual and technical requirements for Plaintiffs' claims, among other challenges, could stand in the way of success in some instances. And even if not, Plaintiffs would still face an expensive, lengthy, and uncertain process to certify a litigation class. Assuming their claims ultimately made it to trial, Plaintiffs would still have to prove an intricate multi-party fraud, among other things. And if Plaintiffs prevailed at trial, they would have to re-litigate virtually all of these issues in the inevitable appeals. Avoiding years of additional, costly, and risky litigation in exchange for the immediate and significant Settlement benefits is a principled compromise to the clear benefit of the Class.

The Settlement eliminates all potential future risk, cuts through payment delay, and provides the Class with "certain and timely" compensation. Prelim. Order at 21. This factor strongly favors final approval. *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair.") (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) *as amended* (June 19, 2000)); *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant."); *In re Toys "R" US*, 295 F.R.D. at 453 (similar); Fed. R. Civ. P. 23(e)(2)(C)(i).

---

[10] The Court previously sustained only Nevada Count 1, South Carolina Count 1, South Carolina Count 2, and Texas Count 2. *See* ECF 396 at 149-50, 160-61, 166-167. These counts allege breach of express or implied warranty.

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

1

2

**b.**   **Toyota Class Members can obtain relief through a straightforward claims process.**

`

3   The Parties, in consultation with the Settlement Notice and Claims

4   Administrators, designed a simple and efficient claims process to maximize Class

5   member participation. Toyota Class Members submit claims for out-of-pocket

6   compensation and for residual payments using the same, streamlined Claim Form.

7   The Claim Form is available through various channels, and Toyota Class Members

8   may choose to submit their Claim Form either online through the Settlement

9   website, or in hard copy. Finegan Decl. ¶¶ 6, 48. The Settlement's method for

10  processing claims and distributing relief is straightforward, fair, and reasonable, and

11  "should be effective in distributing relief to the Class" (Prelim. Order at 21),

12  weighing in further favor of final approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

13  **c.**   **Counsel seek reasonable attorneys' fees and costs.**

14  Settlement Class Counsel's reasonable fee request is detailed below (§ IV)

15  but in this context it is worth reiterating that "terms of . . . [the] proposed award of

16  attorneys' fees" are fair and reasonable, particularly in light of the substantial, non-

17  reversionary recovery for the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also*

18  Prelim. Order at 29 ("The evidence submitted in connection with the Motion shows

19  that, to date, the attorney's fees submitted by Plaintiffs' counsel are largely

20  reasonable. Additionally, as noted, the requested fee award will likely constitute a

21  reasonable percentage of the total value of the recovery to the Class.").

22  The reasonableness of the fee request is further supported by the Declaration

23  of Professor Brian T. Fitzpatrick, a law professor at Vanderbilt University who has

24  authored many publications on attorneys' fees in class action settlements. *See*

25  Fitzpatrick Decl. ¶¶ 3-4.

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

**4.**     <u>**Rule 23(e)(2)(D): The Proposed Settlement treats all Toyota Class Members equitably relative to one another.**</u>

In its order granting Preliminary Approval of the Settlement, the Court observed that the Settlement distributes relief among Toyota Class Members in a "fair and reasonable" way. Prelim. Order at 22. This remains true. The Settlement provides benefits reasonably proportional to the economic harm Toyota inflicted on each Class Member by the ACU Defect. Toyota Class Members with Recalled Vehicles may submit claims for reimbursement of out-of-pocket costs already incurred, and Toyota Class Members with Unrecalled Vehicles will become eligible to participate in that reimbursement claims process should their vehicle be recalled during the three-year claims period. Additional, relevant benefits are available for Toyota Class Members that spend time, effort, and resources to obtain a recall repair. Finally, *all* Toyota Class Members may register to receive a residual payment at the conclusion of the claims period. These reasonable parameters and objective criteria ensure that the Settlement treats Toyota Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D).

**5.**     <u>**The Settlement satisfies the Ninth Circuit's approval factors.**</u>

The Ninth Circuit has identified a number of additional factors for courts to consider when evaluating a class action settlement. *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (factors are (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement). Most of these (factors 1-5) overlap with the Rule 23(e)(2)(C) factors and are addressed above. The remaining relevant factors (6 and 8), addressed below, favor final approval as well.

### a. Settlement Class Counsel endorse the Settlement.

Courts can give "considerable weight" to the opinions of experienced class counsel who are familiar with the litigation in weighing whether to grant final settlement approval. *Ontiveros*, 303 F.R.D. at 371 ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*. No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Based on their own significant experience in complex automotive defect class cases like this one, and their work in this case day in and day out for over four years, Settlement Class Counsel are confident in the result obtained for the Class here and the process used to reach it, and strongly recommend its approval. Co-Lead Decl. ¶ 33. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., No. MDL 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (granting final settlement approval where "Lead Counsel ha[d] . . . a successful track record of representing [plaintiffs] in cases of this kind . . . [and] attest[ed] that both sides engaged in a series of intensive, arm's-length negotiations" and there was "no reason to doubt the veracity of Lead Counsel's representations").

### b. The Notice Program is proving a success, and the Class's initial response has been positive.

Following preliminary approval, the Parties worked with respected class notice provider Kroll Notice Media to roll out the Court-approved Notice Program with great and ongoing success. Kroll reports that the Notice Program was designed to reach "virtually all" Toyota Class Members and has already reached over an estimated 95% of Toyota Class Members. Declaration of Jeanne Finegan ("Finegan

Decl.") ¶¶ 14, 55. To date, Kroll has emailed 3,756,293 individual notices, along with an additional 387,333 emails to secondary email addresses, and has also mailed direct notices to 4,572,584 potential Toyota Class Members. *Id.* ¶¶ 16-17, 21. Kroll also engaged in a comprehensive supplemental publication and media notice campaign, with notices issued in widely-circulated print publications, and an online and social media campaign that has generated over 30 million impressions. *Id.* ¶¶ 26-30, 39. While several years yet remain in the claims period, the Class is already showing their support for the Settlement. Toyota Class Members are visiting the Settlement Website at an impressive rate, with 1,975,136 page views registered from 760,346 unique visitors so far. *Id.* ¶ 7. As of September 21, 2023, moreover, Kroll had received 215,262 Settlement Claims, the vast majority of which were submitted through the streamlined submission portal available on the Settlement Website. *Id.* ¶ 49. In contrast, Kroll has received only 26 Requests for Exclusion and no potential Toyota Class Member has objected to the Settlement. *Id.* ¶¶ 52-53.

Together, these are "encouraging" signs of the Class's engagement that—coupled with the ongoing Notice Program, and remaining time in the Claims Period—will yield substantial participation from the Class in the months and years to come. *Id.* ¶¶ 49-50. As it stands, the positive response from the Class supports final approval, and Settlement Class Counsel have every reason to believe it will stay that way.

* * *

The Settlement is fair, reasonable, and adequate, and merits final approval.

## B.   The Settlement Class satisfies the applicable Rule 23 requirements and should be certified.

After considering the relevant Rule 23(a) and 23(b)(3) requirements at the preliminary approval phase, the Court concluded the necessary requirements were satisfied and "the Class should be conditionally certified for the purpose of

settlement." Prelim. Order at 16, 22. This remains true, and the Settlement Class should be finally certified for settlement purposes.

### 1.    Rule 23(a)(1): The Class is sufficiently numerous.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). The Class includes current and former owners and lessees of at least 5.2 million Subject Vehicles, which is "sufficient to satisfy the numerosity requirement." Prelim. Order at 13; *see also* 5 *Moore's Federal Practice—Civil* § 23.22 (2016) (a "class of 41 or more is usually sufficiently numerous."). Numerosity remains satisfied.

### 2.    Rule 23(a)(2): The Class Claims present common questions of law and fact.

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).

Courts routinely find commonality where, as here, the class claims arise from an automaker's alleged uniform course of fraudulent conduct to misrepresent and conceal a defect in its vehicles. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *3 (N.D. Cal. Nov. 9, 2022); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 536661, at *6 (N.D. Cal. Feb. 11, 2019); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2017 WL 11680208, at *3

(S.D. Fla. Sept. 19, 2017); *Looper v. FCA US LLC*, No. LACV 14-00700-VAP
(DTBx), 2017 WL 11650429, at *4 (C.D. Cal. Mar. 23, 2017).

Like those cases, the Settlement Class's claims here are rooted in common
questions about the Toyota Defendants' omission of material information about a
defect in the Subject Vehicles. *See* Prelim. Order at 14 (describing common
question of "whether Toyota's alleged omissions and uniform misrepresentations to
Class Members were fraudulent"); *see also Guido v. L'Oreal, USA, Inc.*, 284 F.R.D.
468, 478 (C.D. Cal. 2012) (whether misrepresentations "are unlawful, deceptive,
unfair, or misleading to reasonable consumers are the type of questions tailored to
be answered in 'the capacity of a classwide proceeding'") (quoting *Dukes*, 564 U.S.
at 350)).

These common questions will, in turn, generate common answers "apt to
drive the resolution of the litigation" for the Settlement Class as a whole. *See
Dukes*, 564 U.S. at 350. Conversely, "[w]ithout class certification, individual Class
members would be forced to separately litigate the same issues of law and fact
which arise from" the Defendants' fraud. *In re Volkswagen "Clean Diesel" Mktg.,
Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at
*10 (N.D. Cal. July 26, 2016). Commonality remains satisfied. *See* Prelim. Order at
14.

### 3.    Rule 23(a)(3): The Settlement Class Representatives' claims are typical of other Toyota Class Members' claims.

Under Rule 23(a)(3), "'the claims or defenses of the representative parties'"
must be "'typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d
657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). Representative claims
are "'typical' if they are reasonably coextensive with those of absent class
members; they need not be substantially identical." *Johnson v. City of Grants Pass*,
72 F.4th 868, 888 (9th Cir. 2023) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957
(9th Cir. 2003)). Here, the same course of conduct injured the Settlement Class

Representatives and the other members of the Settlement Class in the same ways. Each purchased or leased Subject Vehicles with defective DS84 ACUs. As a result, they paid more for their Subject Vehicles than they reasonably should have. The typicality requirements are satisfied. *See also* Prelim. Order at 14 (finding typicality).

### 4. Rule 23(a)(4): The Settlement Class Representatives and Settlement Class Counsel have and will continue to adequately protect the interests of the Class.

Rule 23(a)(4)'s adequacy requirement is met where "(1) . . . the named plaintiffs and their counsel have [no] conflicts of interest with other class members and (2) . . . the named plaintiffs and their counsel [have] prosecute[d] the action vigorously on behalf of the class.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). Both are true here. *See* Prelim. Order at 15 (finding adequacy satisfied for both the Toyota Plaintiffs and Class Counsel at preliminary approval).

The Settlement Class Representatives "are entirely aligned [with the Settlement Class] in their interest in proving that [Defendants] misled them and share the common goal of obtaining redress for their injuries." *VW 2L Preliminary Approval Order*, 2016 WL 4010049, at *11. They understand their duties, have agreed to consider the interests of absent Class Members, and have reviewed and uniformly endorsed the Settlement terms. *See* Co-Lead Decl. ¶ 8. The Settlement Class Representatives are more than adequate.

Furthermore, as discussed more fully in § IV below, Settlement Class Counsel have undertaken extensive amounts of work, effort, and expense in this MDL and specifically in litigating the Toyota Plaintiffs' Claims. They have demonstrated their willingness to devote whatever resources were necessary to reach a successful outcome throughout the four years of investigation, litigation, and parallel settlement negotiations. They, too, satisfy Rule 23(a)(4).

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

### 5. Rule 23(b)(3)—Predominance: Common issues of law and fact predominate.

The predominance inquiry "focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Hanlon*, 150 F.3d at 1022). At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012). Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

The Ninth Circuit favors class treatment of fraud claims stemming from a "'common course of conduct.'" *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *Hanlon*, 150 F.3d at 1022-23. Even outside of the settlement context, predominance is readily met for consumer claims arising from the defendants' common course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173, 1175 (9th Cir. 2010) (consumer claims based on uniform omissions certifiable where "susceptible to proof by generalized evidence," even if individualized issues remain); *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009) ("Common issues frequently predominate" in actions alleging "injury as a result of a single fraudulent scheme.").

Here, too, questions of law and fact common to the Toyota Class Members' claims predominate over any questions affecting only individual members because the common issues "turn on a common course of conduct by the defendant . . . in [a] nationwide class action." *See Hyundai*, 926 F.3d at 559 (citing *Hanlon*, 150 F.3d at 1022–23). Defendants' common course of conduct—manufacturing and selling

vehicles with defective ACUs without disclosing that alleged defect to consumers Toyota Class Members—is central to Plaintiffs' claims. Common, unifying questions include, for example: when Toyota first learned of the ACU Defect, whether representations about the Subject Vehicle's airbags and safety systems were misleading to reasonable consumers, and whether Toyota's actions were fraudulent. *See* Prelim. Order at 16 (finding predominance satisfied based on these questions).

Indeed, "[i]n many consumer fraud cases, the crux of each consumer's claim is that a company's mass marketing efforts, common to all consumers, misrepresented the company's product"—here, the vehicles' inclusion of passenger safety features without defects. *See In re Hyundai*, 926 F.3d at 559. In sum, Toyota allegedly "perpetrated the same fraud in the same manner against all Class Members." *Volkswagen*, 2016 WL 4010049, at *12. Predominance remains satisfied.

### 6.     <u>Rule 23(b)(3)—Superiority: Class treatment is superior to other available methods for the resolution of this case.</u>

The superiority inquiry asks "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In other words, it "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76. Under Rule 23(b)(3),

> the Court evaluates whether a class action is a superior method of adjudicating plaintiff's claims by evaluating four factors: "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action."

*Trosper v. Styker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *17 (N.D.

1   Cal. Aug. 21, 2014).

2          Class treatment here is far superior to litigating millions of individual

3   consumer actions. "From either a judicial or litigant viewpoint, there is no

4   advantage in individual members controlling the prosecution of separate actions.

5   There would be less litigation or settlement leverage, significantly reduced

6   resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023; *see also*

7   *Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases,

8   particularly where common issues predominate for the proposed class, is an inferior

9   method of adjudication."). The maximum damages sought by each Class Member,

10  while significant at the individual level, are relatively small in comparison to the

11  substantial cost of prosecuting each one's individual claims, especially given the

12  technical nature of the claims at issue. *See Smith v. Cardinal Logistics Mgmt. Corp.*,

13  No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) (small interest

14  in individual litigation where damages averaged $25,000-$30,000 per year of

15  work).

16         Class resolution is also superior from an efficiency and resource perspective.

17  Indeed, "[i]f Class Members were to bring individual lawsuits against [Defendants],

18  each Member would be required to prove the same wrongful conduct to establish

19  liability and thus would offer the same evidence." *Volkswagen*, 2016 WL 4010049,

20  at *12. The conduct at issue involves over 5.2 million Subject Vehicles, and "there

21  is the potential for just as many lawsuits with the possibility of inconsistent rulings

22  and results." *Id.* "Thus, classwide resolution of their claims is clearly favored over

23  other means of adjudication, and the proposed Settlement resolves Class Members'

24  claims at once." *Id.* Superiority is met here, and Rule 23(e)(1)(B)(ii) is satisfied.

25                                      * * *

26         The Settlement Class meets all relevant requirements of Rule 23(a) and (b).

27  Plaintiffs thus request that the Court confirm the certification of the Settlement

28  Class and the appointment of the Settlement Class Representatives.

**C.   The Court should confirm Plaintiffs' Counsel as Settlement Class Counsel under Rule 23(g)(1).**

Settlement Class Counsel have undertaken a significant amount of work, effort, and expense in litigating the Toyota Plaintiffs' Claims. Following these efforts, the Court appointed Co-Lead Counsel and the PSC as Settlement Class Counsel at the preliminary approval stage. Prelim. Order at 29. In the intervening period, Settlement Class Counsel have continued to demonstrate the skill and experience necessary to oversee and effectuate this Settlement through their efforts in the approval process and in overseeing the Notice Program roll out. Plaintiffs thus request that the Court confirm Settlement Class Counsel under Rule 23(g)(1) in connection with Final Approval of the Settlement.

## IV.   SETTLEMENT CLASS COUNSEL'S REQUESTED FEE IS FAIR, REASONABLE, AND APPROPRIATE.

This is a complex case, both factually and legally. For four years, Settlement Class Counsel have doggedly pursued Toyota, and the other Defendants, for equipping and selling Class Vehicles with a dangerous safety defect. Describing the litigation as protracted and contentious would be an understatement. As the Court is well aware, the parties dispute nearly every fact and Defendants—including Toyota—have raised every conceivable challenge against Plaintiffs' claims. Settlement Class Counsel persisted despite these hurdles, in an immense effort and substantial allocation of resources, and achieved a remarkable result. Settlement Class Counsel now seek fair and reasonable compensation for the time and effort it took to do so, which they undertook without any guarantee of recovery or reimbursement.

"[L]awyer[s] who recover[] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This "common benefit doctrine" allows a court to "assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those

benefited by the suit." *Id.*; Fitzpatrick Decl. ¶¶ 10-13. Here, Settlement Class Counsel request attorneys' fees of $25 million, which reflects approximately 16.8% of the total Settlement value obtained for Toyota Class Members (i.e., $147,800,000).[11] For the reasons explained below, the request is "'fundamentally fair, adequate, and reasonable'" considering the facts and circumstances of this litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); Fitzpatrick Decl. ¶ 17.

In deciding whether a requested attorneys' fee amount is appropriate, courts in this Circuit look to a number of factors including: (1) the results achieved; (2) the complexity of the case and skill required; (3) the risks of litigation; (4) the benefits to the class beyond the immediate generation of a cash fund; (5) the market rate of customary fees for similar cases; (6) the contingent nature of the representation and financial burden carried by counsel; and (7) a lodestar cross-check. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) ("*VW 2L Fee Order*") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-52 (9th Cir. 2002)); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); Fitzpatrick Decl. ¶ 16. Each factor strongly supports Settlement Class Counsel's request in this case. *Id.* ¶¶17-30. For the reasons below, the Court should affirm its preliminary finding that Plaintiffs' requested fee was "likely [to] be reasonable," and award the well-supported and reasonable request.

---

[11] As the Court noted in its Preliminary Approval Order, Settlement Class Counsel anticipated a fee request of "up to 33%" of the $78.5 million Settlement Amount, and the actual percentage would be lower after taking into account both the monetary and non-monetary benefits to the Class. Prelim. Order at 24. Settlement Class Counsel's fee request is now far below 33% after incorporating the value of the Extended New Parts Warranty. In any event, the Court noted that even the 33% figure "may be warranted here, where favorable results were achieved for the Class, substantial non-monetary benefits will be conferred, and counsel have undertaken significant risks in pursuing this litigation over the course of several years." *Id.* at 26.

Prelim. Order at 26.

Finally, as discussed in § IV.B. below, Settlement Class Counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Miller v. Ghirardelli Chocolate Co*., No. 12-CV-04936-LB, 2015 WL 758094, at \*7 (N.D. Cal. Feb. 20, 2015) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters) (citing *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994)). Here, they request reasonable expenses of $472,730.40.

## A. Settlement Class Counsel obtained substantial monetary compensation for the Toyota Class.

The result Class Counsel secured for the Class is the central factor to evaluate the reasonableness of a requested fee. *In re Bluetooth*, 654 F.3d at 942; *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also In re Nexus 6P Prods. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at \*12 (N.D. Cal. Nov. 12, 2019) ("The most critical factor is the results achieved for the class."); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (same); Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed.) ("The 'fundamental focus is the result actually achieved for class members.'") (citing Fed. R. Civ. P. 23(h) committee note).

That principle strongly supports the requested fees here. As described in detail above, the Settlement provides sizeable monetary relief to the Class—$78.5 million in cash compensation and commitments, including a $65 million cash common fund, a $3.5 million outreach program, and a $10 million credit for Toyota's commitment to provide future loaner vehicles and reimbursements. The Court held in its Preliminary Approval Order that "the total recovery to the class can reasonably be calculated to have a value of at least $78.5 million, including the Settlement Fund, the $10 million credit for future loaner vehicles and outreach, and the $3.5 million to be spent on the current Outreach Program." Prelim. Order at 26.

Individual cash compensation to Toyota Class Members is also substantial, and fairly reflects the harm each Class Member suffered at the hands of Toyota on account of the ACU Defect. That this Settlement achieves material monetary relief through the compromise of contested claims is a remarkable result and strongly supports the requested fees. *See In re Nexus 6P*, 2019 WL 6622842, at *12 (upward adjustment from the 25% benchmark was warranted where settlement "allow[ed] all class members to receive a monetary benefit").

## 1. The Settlement provides significant, valuable benefits in addition to the cash compensation.

As described above, the Settlement also secures a comprehensive set of valuable non-monetary benefits for Toyota Class Members, which are "appropriate to include . . . in the denominator of the percentage method." Fitzpatrick Decl. ¶ 15. This includes the Extended Warranty available to every Class member who obtains an available Recall Repair. This 12-year Extended Warranty, valued by a leading economist in this field at $69,300,000 for Toyota Class Members with Recalled Vehicles, and with an additional prospective value of at least 60% of that for Toyota Class Members with Unrecalled Vehicles should a recall be required (Kleckner Decl. 2(a)-(b)), is reasonably and properly considered part of the Settlement value secured for the Class. *See* infra § II.A.

The innovative ten-year Inspection Protocol, which mandates procedures for the active investigation and documentation of airbag non-deployments that may be caused by electrical overstress, likewise provides valuable benefits to the Class. This significant (but unquantified) nonmonetary relief further supports the requested fee. *See Pan v. Qualcomm Inc*., No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *12 (S.D. Cal. July 31, 2017) (concluding that "substantial" non-monetary relief that could not be accurately valued supported fee award of nearly 30%).

**2.** **The Settlement resulted from Settlement Class Counsel's zealous representation in complex and risky litigation.**

This case involves dozens of Defendants and allegations of an enduring and complex scheme. Defendants include six vehicle manufacturer groups and three component supplier groups, comprising a total of twenty-nine Defendants (many of them based outside the U.S.) that played various roles in the design, manufacture, testing, and sale of the Class Vehicles, and concealing the defect therein.

Investigating and uncovering the ACU Defect and evidence thereof in numerous crashes that Plaintiffs identified over the course of almost 15 years was technically challenging—in particular given the range of Class Vehicles implicated—with vehicle models dating as far back as 2010. Plaintiffs allege that the ACU Defect can be traced back to the ZF and STMicro Defendants' design and testing of the DS84 ACU as far back as 2008. They also alleged that Toyota and the other Vehicle Manufacturer Defendants had knowledge of the ACU Defect, at minimum, shortly after the DS84 ACUs were installed in the Class Vehicles, and coordinated with each other to share information about and to conceal it from consumers.

Investigating allegations of an extensive scheme that began nearly 15 years ago required comprehensive analysis of contemporaneous documentation and complex testing and engineering documents. Arriving at a nuanced understanding of the ways in which the Class Vehicles experience the defect in crashes (and otherwise) took time, effort, and expertise. To do so, Settlement Class Counsel worked closely with experts to understand the complex minutiae of electrical engineering principles and microchip circuitry. Complexities aside, it was a risky case, too, for several reasons. As detailed above, the majority of Plaintiffs' claims against Toyota (and others) have not yet survived a motion to dismiss.

That Settlement Class Counsel achieved such substantial relief at this juncture speaks to their skill, effort, and dedication to the Class. It also strongly

supports their fee request. *See, e.g.*, *Hanlon*, 150 F.3d at 1029 (The "complexity and novelty of the issues" can justify upward departure from benchmark); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1450–51 (N.D. Cal. 1994) (same).

### 3. Settlement Class Counsel's requested fee percentage is reasonable, appropriate, and strongly supported by precedent.

When a settlement establishes a common fund, it is both appropriate and preferred to award attorneys' fees based on a percentage of the monetary benefit obtained. *See Vizcaino*, 290 F.3d at 1047. The fund is not limited to cash payments, and reasonably includes *all* benefits obtained for the Class with a calculable economic value. Fitzpatrick Decl. ¶ 15; *see also In re Zoom,* 2022 WL 1593389, at *10 (subsequent history omitted); *Miller*, 2015 WL 758094, at *5 (same) (collecting cases); *Banh*, 2021 WL 3468113, at *7 ("[I]t is the complete package taken as a whole . . . that must be examined for overall fairness.").[12]

Settlement Class Counsel request $25 million in fees. As explained above, this represents approximately 16.9% of the calculable Settlement Value obtained in this case. Even under Professor Fitzpatrick's "as conservative as possible" valuation of the Settlement, which excludes the added value of (a) the Outreach program, (b) Future Rental Car Reimbursement, Loaner Vehicle, and Outreach Program, (c) or Settlement Inspection Program, and (d) the prospective relief in the Extended New Parts Warranty, the requested fees represent only approximately 18% of the $134 million valuation. Fitzpatrick Decl. ¶¶ 18-19. Either amount is well below the "benchmark award of" 25%, and awards commonly approved in this Circuit. *See*

---

[12] *See also, e.g., Rainbow Bus. Sols. v. MBF Leasing LLC*, No. 10-CV-01993-CW, 2017 WL 6017844, at *1 (N.D. Cal. Dec. 5, 2017) (the fund from which a fee percentage is calculated includes "the total benefit made available to the settlement class, including costs, fees, and injunctive relief"); *Staton*, 327 F.3d at 974 (when "accurately ascertained," the value of "injunctive relief" is included "as part of the value of a common fund for purpose of applying the percentage method of determining fees."); *Pokorny v. Quixtar, Inc.*, No. C 07–0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) (similar).

Fitzpatrick Decl. ¶¶ 17, 20-23 (discussing empirical analyses showing a mean and median awarded percentages in all class action cases of 23.9% and 25). Notably, Professor Fitzpatrick found that "some *four-fifths* of fee awards in the Ninth Circuit are above what class counsel requested here." *Id*. at ¶ 21.[13]

Consistent with this authority, in granting preliminary approval, the Court observed that "Plaintiffs have presented substantial support for the position that the requested award will likely be reasonable under the percentage method," pending further information on the value of the Extended Warranty. Prelim. Order at 26. That further information is now before the Court, with the Extended Warranty valued by a respected expert to be at least $69,300,000 in economic value for Toyota Class Members with Recalled Vehicles, and prospective value of at least 60% of that amount Toyota Class Members with Unrecalled Vehicles.

As Professor Fitzpatrick opined, "[i]n my opinion, this percentage is easy to justify under the Ninth Circuit's factors in light of the empirical studies of class action fees and in light of the research on the economic incentives in class action litigation." Fitzpatrick Decl. ¶ 19.[14] Settlement Class Counsel respectfully submit

---

[13] *See also, e.g.*, *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07–md–1827 SI, 2011 WL 7575003, at *1 (N.D. Cal. Dec. 27, 2011) (awarding attorneys' of 30% of $405 million settlement fund); *In re CRT Antitrust Litig.*, MDL No. 1917, 2016 WL 4126533, at *5 (N.D. Cal. Aug. 3, 2016) (awarding 30% of $576,750,000 fund); *In re Mego*, 213 F.3d at 463 (upholding district court's award of 33 1/3 percent of the settlement fund); *Vizcaino*, 290 F.3d at 1046 (affirming fee award of 28% of $96,885,000 settlement fund under the percentage method); *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (awarding 33% of $5,800,000 settlement); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM SHX, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34% of the $8,500,000 common fund); *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding 33% of common fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33% of common fund).

[14] Indeed, even if measured against the more conservative $78.5 million Settlement Amount (which does not reflect the full settlement value obtained for the Class), the

*Footnote continued on next page*

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

the request is indeed reasonable and appropriate, as supported by the favorable and valuable outcome achieved for the Class in this case, and the dedicated, focused, and technical work that Settlement Class Counsel undertook to obtain it.

### 4.   Settlement Class Counsel carried considerable financial burden in prosecuting this complex litigation.

It is an established practice to reward attorneys who, as here, assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994). Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney. *Id.*; *see also Vizcaino*, 290 F.3d at 1051. Settlement Class Counsel devoted tens of thousands of hours and advanced whatever expenses were necessary to investigate and see this case through to a successful outcome, all with no guarantee of reimbursement. Co-Lead Decl. ¶¶ 14, 28. In so doing, Settlement Class Counsel "turn[ed] down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary handle this complex case." *VW 2L Fee Order*, 2017 WL 1047834, at *3. This factor further supports Settlement Class Counsel's request.

### 5.   A lodestar cross-check confirms the requested fees are reasonable.

"Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of

---

reasonable fee request (31.8%) continues to find strong support. In this Circuit, "fee awards exceed[] the [25%] benchmark" in "*most* common fund cases." *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *2 (N.D. Cal. Dec. 6, 2017) *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (emphasis added); *see also Hernandez*, 2021 WL 5053476, at *6 (collecting cases and finding that attorneys' fees awards that are one-third of the total settlement fund "are routinely upheld by the Ninth Circuit").

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. Nevertheless, courts employ a streamlined lodestar analysis to "cross-check" the reasonableness of a requested award. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050. In so doing, the Court need not "closely scrutinize each claimed attorney-hour, but [may] instead use[ ] information on attorney time spent to focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *see also Rieckborn v. Velti PLC*, No. 13-3889, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) (similar).

As explained below and in the accompanying Co-Lead Counsel Declaration, Settlement Class Counsel worked a reasonable number of hours billed at reasonable rates under the circumstances of this complex, multi-district litigation.

### a.  **Class Counsel expended a reasonable number of hours advancing this complex litigation.**

As summarized above, this is a technical case that required thorough investigation and analysis undertaken over nearly four years. *See, e.g.*, § II, *supra*; Co-Lead Decl. ¶¶ 3-5. During this time, Settlement Class Counsel have dedicated some 69,602.5 hours in advancing this litigation through to date.

In complex, multi-defendant litigation like this, in which counsel performs work to advance multiple claims collectively, the vast majority of the work is for the benefit of the entire MDL, not just the case against one of the Defendants. For that reason, it is common for counsel to apportion a percentage of the total lodestar attributable to a particular settling defendant, because it is not practicable to disaggregate the common benefit work across each individual defendant. That approach applies equally here.

In their professional judgment and based on their familiarity with the work performed at their direction, Co-Lead Counsel estimate the work fairly and reasonably attributed to efforts that benefited the Settlement Class and the

prosecution of their claims against Toyota as follows: from the total hours worked, 70% of the efforts are attributable to the six Vehicle Manufacturer Defendants, and the remaining 30% of work is specific to the two supplier Defendants (ZF and ST Micro), recognizing that much of the work for the suppliers also advances the claims against the Vehicle Manufacturer Defendants. *Id*. ¶¶ 15-16; *see also* ECF 750-1 at ¶ 13 (Co-Lead declaration for preliminary settlement approval estimating the same).

Within the amount allotted to the Vehicle Manufacturer Defendants, Co-Lead Counsel estimate approximately 40% of that work is reasonably associated with Toyota. This apportionment to Toyota is supported by: (a) the size and scale of the Toyota Class, which alone covers nearly a third of the at least 15 million Class Vehicles at issue in this consolidated litigation; (b) the focused efforts on Toyota and the other Defendants' joint pleading challenges to Plaintiffs' Consolidated Class Action Complaint; (c) Toyota's unique attacks on Plaintiffs' claims and the resulting work required to respond, including the motion to sever claims against Toyota from all other Defendants, the motion to compel arbitration, and the appeal (since dropped) of the same; (d) the discovery, investigative and expert work that developed and advanced the Toyota Plaintiffs' claims to this favorable resolution; and (e) the focused, intensive, and novel efforts to develop and negotiate over the course of more than a year a comprehensive Settlement structure with Toyota as the first settling Defendant—including innovative features such as the Inspection Program—that Co-Lead Counsel reasonably anticipate will inform efficient negotiations in any subsequent settlements in this case.

Based on the above, the estimated Toyota lodestar for purposes of the attorneys' fee request, using the applicable rate caps, is approximately $10,820,547.22. Co-Lead Decl. ¶ 17. Including the anticipated future work to implement and protect the Settlement through the three-year Claims Period, Settlement Class Counsel expects the lodestar attributable to Toyota to be

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

$11,520,547.22.[15]

That time was (and will continue to be) spent effectively. With those hours, Settlement Class Counsel reviewed and analyzed the more than a hundred thousand documents obtained through discovery from Toyota for Toyota Plaintiffs' claims, and millions more of pages of relevant documents in the MDL, all of which informed the efforts to prosecute Plaintiffs' claims. Co-Lead Decl. ¶ 23. Reviewing, coding, analyzing and summarizing this discovery was a very significant undertaking that was critical to the litigation and resolution of this case. *Id.*

Settlement Class Counsel also engaged in thorough legal research and briefing efforts on issues for each of Toyota's motions, as well as the Joint Motion brought by all Defendants. *Id.* ¶ 22. Indeed, Toyota moved to stay the Toyota Plaintiffs' claims during the pendency of NHTSA's investigation, and tried to sever those claims so it could create a separate litigation track, and moved to compel Toyota Plaintiffs to arbitrate their claims. Toyota Plaintiffs' thorough and careful efforts to respond to each of these challenges ultimately prevailed to keep their claims in the consolidated pleadings before this Court. Toyota's pleading challenges, however, proved more successful, and most of Toyota Plaintiffs' claims against Toyota did not survive its motion to dismiss. ECF 396. Toyota Plaintiffs pressed on thereafter, researching and

---

[15] Based on their experience in defending and implementing other automotive class settlements, Settlement Class Counsel estimate that approximately $700,000 in lodestar (1,050 more hours over three years) will be necessary for the on-the-ground efforts to finalize, implement, and protect the Settlement. This will include, for example, work required to: (1) obtain final approval of the Settlement; (2) defend the Settlement against objections, if any; (3) protect the Settlement on appeal (if any appeals are lodged); and (4) oversee and help implement the Settlement, which will include, among other things, responding to inquiries from Class members who owned or leased one of the approximately 5.2 million Subject Vehicles. Co-Lead Decl. ¶¶ 18-19. Settlement Class Counsel's reasonable hours appropriately reflect the efforts necessary to secure and protect the favorable outcome here.

developing a 1,300+ page factually detailed operative Complaint that they believe adequately states claims against Toyota and each of the remaining Defendants.

The settlement process itself also took an enormous amount of time and persistence, and involved dozens of meetings, calls, information and data exchanges and much more. *Id*. ¶ 6. Underpinning all of this was Settlement Class Counsel's work to fully understand the complex electrical engineering principles and related issues involved in the ACU Defect, which provided the framework for understanding the allegations and alleged damages in this case.

As this (partial) list demonstrates, this litigation (and its result) took monumental effort. Importantly, the Toyota Plaintiffs and Settlement Class Counsel fought hard to reach this stage, facing challenges from Toyota at every turn. The results won, after the hurdles faced, strongly support the fee award requested here. Fitzpatrick Decl. ¶ 29 ("class counsel's lodestar confirms that their fee request is reasonable"). As the Court found at preliminary approval, "the hours charged to date appear to be reasonable." Prelim. Order at 28.

### b.   Settlement Class Counsel billed reasonable rates for those hours.

In granting preliminary approval, the Court found that "[t]he rates claimed appear reasonable based on the Court's familiarity with rates in similar cases and quality of work performed in this matter." Prelim. Order at 28. That alone is enough to support the reasonable rates requested. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (Courts may "rely on [their] own familiarity with the legal market.").

Moreover, the Court-entered common benefit order ("CBO") (ECF 111) imposes limitations on the hourly rates for all participating Plaintiffs' Counsel. *Id*. at 6 ($895/hour for partners; $350-$600/hour for associates; $415/hour for document review attorneys; and $175-$275/hour for paralegals and assistants). For many timekeepers, these Court-capped hourly rates fall well below their standard

and customary rates. *See* Co-Lead Decl. ¶¶ 10, 24. Indeed, the total lodestar applying each timekeeper's standard and routinely Court-approved hourly rates is $12,100,004.84, for a reduction of nearly 10.6% ($1,279,457.62) from the market-rate fees of participating counsel. Settlement Class Counsel respectfully submit that compliance with the CBO provides strong support for the reasonableness of the rates used.

Further, consistent with the Court's request for additional evidence supporting their hourly rates (Prelim. Order at 28), Plaintiffs proffer that the reasonableness of Settlement Class Counsel's rates is also confirmed by comparison to rates commonly approved for attorneys in this Circuit. Indeed, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Courts in this Circuit routinely approve similar or higher hourly rates to those here in complex class action cases like this. *See, e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (approving hourly rates ranging "from $1,325 to $560 for partners and associates, and $485-$455 for 'litigation support' and paralegals"); *Gutierrez, JR. v. Amplify Energy Corp.*, No. 8:21-cv-01628-DOC (JDEx) (C.D. Cal. Jan. 26, 2023), ECF Nos. 667, 726 (standard hourly rates of $650-$1,010/hour for partners, $640-$675/hour for associates, and $525/hour for discovery/document review attorneys were "consistent with market rates"); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 527 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (approving hourly rates up to $1,075 for partners and $660 for associates); *Waldrup v. Countrywide Fin. Corp.*, No. 2:13-CV-08833-CAS-AGRx, 2020 WL 13356468, at *2 (C.D. Cal. July 16, 2020) (approving Baron & Budd's hourly rates of $825 to $975 for partners, and $495 to $625 for associates, requested at ECF

479-1 at 16).[16]

Overall, the blended average billing rate for the work described above is approximately $500.57 per hour. Co-Lead Decl. ¶ 17. This is in line with average rates in this District and reasonable here given the skill, experience, and reputation of Settlement Class Counsel—all of whom the Court appointed through a competitive leadership application process. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), ECF 3396-2 ¶ 29 (N.D. Cal. June 30, 2017) (noting that the average blended rate of 40 class action settlements approved in that District in 2016 and 2017 was $528.11 per hour); *VW 2L Fee Order*, 2017 WL 1047834, at *5 (approving blended average billing rate of $529 per hour); *Herrera v. Wells Fargo Bank, N.A.*, No. 8:18-CV-00332-JVS-MRW, 2021 WL 9374975, at *13 (C.D. Cal. Nov. 16, 2021) (approving a blended rate of approximately $613 per hour); *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (reviewing cases and finding blended rate of $634.48 to be reasonable).

Finally, recent data on the average rates charged in this district provides still further evidence in support of the rates used. Specifically, the "Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies." *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 02-1089 PSG

---

[16] *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 810ML02151JVSFMOX, 2013 WL 12327929, at *33 (C.D. Cal. July 24, 2013) (approving rates up to $950 per hour over ten years ago in automotive class action); *Schroeder v. Envoy Air, Inc.*, No. CV 16-4911-MWF (KSX), 2019 WL 2000578, at *8 (C.D. Cal. May 6, 2019) (approving rates of up to $890 for partners and up to $750 for associates); *Keegan v. Am. Honda Motor Co, Inc.*, No. CV1009508MMMAJWX, 2014 WL 12551213, at *23 (C.D. Cal. Jan. 21, 2014) (approving class counsel's hourly rates up to $875 for partners and $595 for associates).

(VBKx), 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021). "[N]umerous courts in this District and elsewhere have turned to the annual Real Rate Report as a helpful guide." *Sarabia v. Ricoh USA, Inc.*, No. 820 CV 00218 JLS KES, 2023 WL 3432160, at *8 (C.D. Cal. May 1, 2023) (collecting cases).

The most recent Real Rate Report, based on data collected through Q2 of 2022 (i.e., not adjusted for the subsequent inflation in the last year), supports the reasonableness of the hourly rates reflected in the CBO. *See* Co-Lead Decl. ¶ 26-27. Specifically, it reflects hourly rates for litigation partners in Los Angeles of $516 (for the first quartile) to $1,049 (for the third quartile), with an average hourly rate of $725. *Id.*, ¶ 27 and Ex. C, at 16. For Los Angeles litigation associates, hourly rates are $400-$855 per-hour, with an average hourly rate of $642. *Id*. These figures are well in line with those charged here.

### c.   Class Counsel's performance and the results achieved justify a reasonable lodestar multiplier.

The Ninth Circuit *requires* an upward multiplier when certain risk factors are present and authorizes a multiplier for certain "reasonableness" factors, including the quality of representation, the complexity of the issues presented, and most importantly, the benefit obtained for the class.[17] *See, e.g.*, *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *In re Bluetooth*, 654 F.3d at 942. In this Circuit, multipliers in the 1-4 range are "presumptively acceptable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D.

---

[17] The "reasonableness" factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

1    326, 334 (N.D. Cal. 2014).

2          At preliminary approval, based on Settlement Class Counsel's estimated

3    multiplier between 2.35 and 2.53, the Court found that the "the application of the

4    multiplier requested is likely to be reasonable." Prelim. Order at 29. Settlement

5    Class Counsel confirm that the lodestar of $11,520,547.22 (using the capped billing

6    rates from the CBO) yields a moderate multiplier of 2.17 for work performed in

7    furtherance of Plaintiffs' claims against Toyota, including time anticipated for the

8    on-the-ground work necessary to implement, oversee, and protect this Settlement

9    through potential appeals. Co-Lead Decl. ¶¶ 18, 19.

10         This requested multiplier is "*below* the lodestar multipliers that are typical in

11   complex cases with large recoveries like the settlement here." Fitzpatrick Decl. ¶ 29

12   (citing a study showing mean and median multipliers of 2.70 and 2.09, respectively,

13   for recoveries between $69.6 million and $175.5 million). And it is more than

14   justified by this litigation, especially when considering the contingent nature of

15   Settlement Class Counsels' work. Moreover, as discussed at length above, the result

16   obtained by Settlement Class Counsel in light of the significant challenges they

17   faced at every turn and the enormous effort they undertook in this litigation over the

18   course of four years more than supports the modest multiplier they request here. *See*

19   §§ II.B, IV.A.2, *supra*.

20              **d.    The requested multiplier is squarely in line with those routinely approved in this Circuit.**

21

22         While the relevant facts and history of this case provide ample support for

23   the multiplier sought, it also bears mention that the request is squarely within the

     "presumptively acceptable range of 1.0-4.0" in this Circuit. *Dyer*, 303 F.R.D. at

24   334; *see also Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx),

25   2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021) ("lodestar multipliers of 1.5 to

26   3.0 are most common"). This presumption is borne out in court orders routinely

27   approving multipliers in line with those sought here.

28

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

1         Multipliers for large settlements, like this one, tend to fall on the high end of

2  the 1-4 range. A 2017 study of attorneys' fees awarded in 458 class actions over a

3  five-year period (2009-2013) by Theodore Eisenberg and Geoffrey Miller found

4  that the *average* multiplier in cases with settlements valued over $67.5 million was

5  2.72 (above the multipliers here). *See* Theodore Eisenberg, Geoffrey Miller & Roy

6  Germano, *Attorneys' Fees in Class Actions 2009-2013*, 92 N.Y.U. L. Rev. 937, 967

7  (2017); *see also* William B. Rubenstein et al., 5 Newberg and Rubenstein on Class

8  Actions § 15:89 (6th ed.) (presenting data from three different fee studies, including

9  Eisenberg & Miller, with the mean lodestar multiplier for settlement funds at or

10  near the size in this case from each study was: 2.7, 2.39, and 2.72).

11        As this data shows, courts routinely approve lodestar multipliers at or above

12  those sought here, this includes settlements with a percentage of the fund near or

13  above the benchmark 25% as well. *See Vizcaino*, 290 F.3d at 1051 n.6 (approving

14  3.65 multiplier, and citing appendix of cases showing "a range of 0.6-19.6, with

15  most . . . from 1.0-4.0 and a bare majority . . . in the 1.5-3.0 range"); *In re NCAA*

16  *Grant-in-Aid*, 2017 WL 6040065, at *1 (attorneys' fees based on a 3.66 multiplier

17  and 20% of a $208 million fund); *see also* ECF 761-1 (compendium chart of cases

18  with percentage near or above the benchmark 25%, and with a lodestar multiplier of

19  approximately 2.5 or above).

20        Settlement Class Counsel's requested multiplier—2.17 with anticipated

21  future time and 2.31 without, *see* Co-Lead Decl. ¶¶ 17, 19—is a reasonable and

22  appropriate multiplier, based on both the record in this case, and with reference to

23  awards regularly made in this Circuit. Fitzpatrick Decl. ¶ 29.

### B.   Settlement Class Counsel's expenses are reasonable and appropriate.

25        Settlement Class Counsel may "recover their reasonable expenses that would

26  typically be billed to paying clients in non-contingency matters." *Brown v. CVS*

27  *Pharmacy, Inc*., No. 15-cv-7631, 2017 WL 3494297, at *9 (C.D. Cal. Apr. 24,

28

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

2017); *see also Staton*, 327 F.3d at 974; Fed. R. Civ. P. 23(h). This includes expenses that are reasonable, necessary, and directly related to the litigation. *See Willner v. Manpower Inc.*, No. 11-cv-2846, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015).

Here, Settlement Class Counsel seek $472,730.40 in litigation expenses. This includes $397,730.40 in funds expended by Lead Counsel and PSC firms to advance the common benefit, and $75,000 that Settlement Class Counsel are responsibly reserving to cover the anticipated costs associated with the future on-the-ground administration and Settlement implementation efforts over the course of the next three years. Co-Lead Decl. ¶ 28. At approximately 0.3% of the total Settlement value of $147,800,000, these costs are *significantly* less than the average costs awarded in class action settlements. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 267 (2010) (mean and median of 2.8% and 1.7% before 2002 and 2.7% and 1.7% thereafter); Eisenberg-Miller, *Attorneys' Fees* (2017), *supra*, at 963 (mean and median of 3.9% and 1.7% since 2009).

More importantly, these costs are commensurate with the stakes, complexity, and intensity of this particular litigation. This includes, for example, costs for eDiscovery services and the document processing platform necessary for processing, maintaining, and analyzing the millions pages of documents produced in this litigation, for witness and expert fees necessary given the technical nature of the litigation and the efforts undertaken to resolve it, and for travel expenses related to, among other things, hearing attendance and meetings and negotiations throughout the United States. Co-Lead Decl. ¶¶ 28-31.

No doubt, this is a technical, complex case, and it has been expensive to prosecute. But, as courts have recognized, "Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Gutierrez v. Amplify Energy Corp.*, No. 821 CV 01628 DOC JDEX,

2023 WL 3071198, at *7 (C.D. Cal. Apr. 24, 2023). Those incentives apply equally here, and Settlement Class Counsel expended only that which they believed was necessary to advance the interests of the Class. The requested costs are reasonable and should be reimbursed.

## C. The Settlement Class Representatives have earned the requested service awards through four years of dedication to this case.

Settlement Class Counsel request service awards of $2,500 for each of the 11 Settlement Class Representatives, to be paid from the Settlement fund. At the preliminary approval phase, this Court concluded that based on the Settlement Class Representatives "active roles in the litigation, the number of hours spent on the case, and the four-year period that it has been pending, incentive awards in the amount of $2,500 are reasonable." Prelim. Order at 23. That conclusion remains sound. The requested amount falls below the $5,000 "presumptively reasonable" service award in this Circuit, and the time and efforts the proposed Representatives dedicated to prosecuting this case clearly supports the request here. *In re CRT*, 2016 WL 4126533, at *11. *See also, e.g.*, *Cisneros v. Airport Terminal Servs. Inc.*, No. 2:19-CV-02798-VAP-SPx, 2021 WL 3812163, at *9 (C.D. Cal. Mar. 26, 2021) ("Courts have generally found that $5,000 incentive payments are reasonable."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (affirming awards of $5,000); *In re Mego*, 213 F.3d at 463 (same).

The Settlement Class Representatives have protected and continue to protect the interests of the Class by, among other things: providing extensive factual information to assist counsel with drafting the complaints; regularly communicating with counsel to stay abreast of developments in this litigation; searching for relevant and responsive materials about their Class Vehicles, and providing those materials to counsel for production in discovery; conferring with counsel to prepare and finalize detailed responses to Interrogatories, Requests for Production of Documents, and Requests for Admissions; evaluating the terms of the Settlement

Agreement; and expressing their continued willingness to protect the Class until the Settlement is approved and its administration completed. Settlement Class Counsel estimates that over the course of four years, and conservatively, these efforts took at least 20 hours of time from each of the Toyota Plaintiffs. They have earned the moderate service awards requested.

## V.    CONCLUSION

Settlement Class Representatives and Settlement Class Counsel respectfully request that the Court certify the Settlement Class and appoint Settlement Class Counsel and Settlement Class Representatives; grant final approval to the Settlement; and award $25,000,000 in attorneys' fees and $472,730.40 in reasonable expenses to be allocated by Co-Lead Counsel among the firms performing work under the Common Benefit Order, and award Class Representatives $2,500 each as service awards.

Dated: September 22, 2023            Respectfully submitted,

*/s/ Roland Tellis*
**BARON & BUDD, P.C.**
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333
Facsimile: 818.986.9698

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
David Stellings (*pro hac vice*)
dstellings@lchb.com
John T. Nicolaou (*pro hac vice*)
jnicolaou@lchb.com

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

Katherine McBride
kmcbride@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 83151)
ecabraser@lchb.com
Nimish R. Desai (SBN 244953)
ndesai@lchb.com
Phong-Chau G. Nguyen (SBN 286789)
pgnguyen@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

*Co-Lead Counsel for Plaintiffs*

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on September 22, 2023, I electronically filed the

3   foregoing document with the Clerk of the Court using the CM/ECF system which

4   will send notification of such filing to all counsel of record, including counsel for

5   Defendants.

6

7                                        */s/ Roland Tellis*
                                         Roland Tellis

8

9   2856508.5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND AWARD OF ATTYS' FEES AND COSTS
MDL No. 2905