KING AND SPALDING LLP
John P. Hooper (pro hac vice)
jhooper@kslaw.com
Jacqueline Seidel (pro hac vice)
jseidel@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone: 212-556-2220
Facsimile: 212-556-2222

BOWMAN AND BROOKE LLP
Vincent Galvin (SBN 104448)
vincent.galvin@bowmanandbrooke.com
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: 408-279-5393
Facsimile: 408-279-5845

*Counsel for Toyota Motor North America,
Inc., Toyota Motor Sales, U.S.A., Inc.,
Toyota Motor Engineering & Manufacturing
North America, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re ZF-TRW Airbag Control Units Products Liability Litigation*<br><br>ALL ACTIONS AGAINST THE TOYOTA DEFENDANTS | MDL No. 2905<br>Case No. 2:19-ml-02905-JAK<br>Judge: Hon. John A. Kronstadt<br><br>**TOYOTA DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL** |

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

    BACKGROUND ........................................................................................ 2

    A. Plaintiffs' Allegations and the Parties' Motion Practice ...................... 2

    B. Discovery, Confirmatory Discovery and Settlement Negotiations .............. 3

    C. Settlement Terms ............................................................................ 3

II.    THE COURT PRELIMINARILY APPROVED THE SETTLEMENT ............ 4

    LEGAL STANDARD ................................................................................ 5

    ARGUMENT .......................................................................................... 5

    A. This Court Has Jurisdiction to Consider and Rule on the Settlement .......... 5

    B. The Settlement Is "Fair, Reasonable, and Adequate" Under the Criteria Discussed in Rule 23(e) and Applied in the Ninth Circuit .......................... 8

    C. The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation. ........................................................... 9

    D. The Risk of Maintaining Class Action Status Through Trial. ................. 12

    E. The Amount Offered in Settlement. ................................................ 13

    F. The Extent of Discovery Completed and The Stage of The Proceedings ... 14

    G. The Experience and Views of Counsel .......................................... 15

    H. The Presence of a Governmental Participant ................................... 16

III.    Settlement Is Not A Product of Collusion ............................................. 16

IV.    This Court Should Issue a Permanent Injunction ................................... 17

    CONCLUSION ...................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d. 964 (E.D. Cal. 2012) ................................................................ 10

*In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*,
315 F.3d 417 (4th Cir. 2003) ............................................................................... 18

*Barbosa v Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................... 11

*Beltran v. Olam Spices & Vegetables, Inc.*,
No. 1:18-CV-01676-NONE-SAB, 2021 WL 1105246 (E.D. Cal.
Mar. 23, 2021) ........................................................................................................ 7

*Betancourt v. Advantage Hum. Resourcing, Inc.*,
No. 14-cv-01788-JST, 2015 WL 12661922 (N.D. Cal. Aug. 28,
2015) ...................................................................................................................... 17

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................. 2

*Bond v. Ferguson Enters.*,
No. 1:09-cv-01662 IEG (AJB), 2011 WL 284962 (E.D. Cal. Jan.
25, 2011) ............................................................................................................... 11

*Chambers, et al. v. Whirlpool Corp., et al.*,
214 F. Supp. 3d 877 (C.D. Cal. Oct. 11, 2016) ..........................................*passim*

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002) ................................................................................ 18

*In re DJ Orthopedics, Inc. Securities Litig.*,
No. 01-cv-2238, 2004 WL 1445101 (S.D. Cal. June 21, 2004) ......................... 12

*Etter v. Thetford Corp.*,
No. CV-1406759-JLS, 2016 WL 11745096 (C.D. Cal. Oct. 24,
2016) ........................................................................................................................ 2

*Gomez v. USF Reddaway Inc.*,
No. LACV1605572JAKFFMX, 2020 WL 10964603 (C.D. Cal.
Sept. 21, 2020) (J. Kronstadt) .............................................................................. 14

*Guilbaud v. Sprint Nextel Corp.*,
  No. 13-cv-04357 (VC), 2016 WL 7826649 (N.D. Cal. Apr. 15,
  2016) ................................................................................................... 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................... 18, 19

*Jimenez v. Allstate Ins. Co.*,
  No. LACV1008486JAKFFMX, 2021 WL 4316961 (C.D. Cal. Sept.
  16, 2021) (J. Kronstadt) ............................................................... 8

*Kearney, et al. v. Hyundai Motor Am.*,
  No. SACV 09-1298-JST, 2013 WL 3287996 (C.D. Cal. June 28,
  2013) ....................................................................................................... 5

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823(N.D. Cal. 2017) ........................................... 11

*In re Linerboard Antitrust Litig.*,
  361 Fed. Appx. 392 (3d Cir. 2010) ............................................... 19

*Linney v. Cellular Alaska P'ship*,
  Case Nos. 98-cv-3008 DLJ, C–97–0203 DLJ, C–97– 0425 DLJ, C–
  97–0457 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997), aff'd,
  151 F.3d 1234 (9th Cir. 1998) ....................................................... 14

*Long v. HSBC USA, Inc.*,
  No. 14 Civ. 6233, 2015 WL 5444651 (S.D.N.Y. Sept 11, 2015) ..... 13

*Manner v. Gucci America, Inc.*,
  No. 15-cv-00045 (BAS)(WVG), 2016 WL 1045961 (S.D. Cal.
  March 16, 2016) ............................................................................. 12

*McCormick v. American Equity Investment Life Insurance Co.*,
  No. 2:05–cv–06735–CAS(MANx), 2016 WL 850821 (C.D. Cal.
  Feb. 29, 2016) .......................................................................... 18, 19

*Morales v. Steveco, Inc.*,
  No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767 (E.D. Cal. Nov.
  10, 2011) ........................................................................................ 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................. 15, 16

*National Ass'n of Chain Drug Stores v. New England Carpenters
  Health Benefits Fund*,
  582 F.3d 30 (1st Cir. 2009) ............................................................ 9

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................ 9, 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008) ................................................................ 12

*Phillips Petroleum Company v. Shutts*,
   472 U.S. 797 (1985) ................................................................ 6, 7

*Rodriguez v. W. Pub'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................ 16

*Ross v. Trex Co.*,
   No. 09-cv-00670 (JSW), 2013 WL 791229 (N.D. Cal. Mar. 4,
   2013) ................................................................ 18

*Rotandi v. Miles Indus. Ltd.*,
   No. C11-02146 (EDL), 2014 WL 12642117 (N.D. Cal. Jan. 15,
   2014) ................................................................ 18

*Sarkisov v. StoneMor Partners L.P.*,
   No. 13-cv-04834 (JD), 2015 WL 5769621 (N.D. Cal. Sept. 30,
   2015) ................................................................ 15

*Sebastian v. Sprint/United Management Co.*,
   No. 8:18-cv-00757-JLS-KES, 2019 WL 13037010 (C.D. Cal. Dec.
   5, 2019) ................................................................ 13

*Staton v. Boeing Corp.*,
   327 F.3d 938 (9th Cir. 2008) ................................................................ 2, 5, 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prod. Liab. Litig.*,
   No. 8:10-ML-02151 (JVS), 2013 WL 3224585 (C.D. Cal. June 17,
   2013) ................................................................ 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prods. Liab. Litig.*,
   No. 8:10-ML-02151, 2013 WL 12327929 (C.D. Cal. July 24, 2013) .............. 10

*Ugas v. H&R Block Enterprises, LLC*,
   No. 09-cv-06510 (CAS)(SHX), 2013 WL 12114094 (C.D. Cal.
   Nov. 18, 2013) ................................................................ 18

*Vasquez v. First Student, Inc.*,
   No. 14-cv-06760 (ODW), 2014 WL 6837279 (C.D. Cal. Dec. 3,
   2014) ................................................................ 6

*Wade v. Kroger Co.*,
   No. 3:01CV-699-R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008).................17

*Williams v. Costco Wholesale Corp.*,
   No. 02-cv-2003, 2010 WL 2721452 (S.D. Cal. July 7, 2010) ...........................11

*Williams v. General Electric Capital Auto Lease, Inc.*,
   159 F.3d 266 (7th Cir. 1998) ...........................................................................18

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778(JCS), 2011 WL 1230826 (N.D. Cal. April 1, 2011)...............16

**Statutes**

28 U.S.C. § 1332(d)(2) ................................................................................5, 6

28 U.S.C. § 1367(a) ...........................................................................................6

28 U.S.C. § 1651(a) ....................................................................................17, 19

28 U.S.C. § 2283.....................................................................................17, 18, 19

**Other Authorities**

Fed. R. Civ. P. 23(b) ..........................................................................................7

Fed. R. Civ. P. 23(c) ..........................................................................................7

Fed. R. Civ. P. 23(e) ..................................................................................*passim*

Fed. R. Civ. P. 23(f)..........................................................................................12

1

# I.    **INTRODUCTION**

2          Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America,

3    Inc., and Toyota Motor Engineering & Manufacturing North America, Inc.

4    (collectively, "Toyota") support the Toyota Plaintiffs' ("Plaintiffs," and together

5    with Toyota, the "Toyota Parties") request that this Court find that the class action

6    Settlement is "fair, reasonable and adequate," and finally approve it, pursuant to

7    Rule 23, as amended.[1]  After extensive discovery and motion practice and litigation

8    for about three years, Toyota and Plaintiffs' Counsel commenced settlement

9    negotiations that lasted more than a year and required significant assistance from

10   Settlement Special Master Patrick A. Juneau.  Ultimately, the parties reached a

11   compromise and agreed to the Settlement that is before this Court.

12         The Settlement provides significant and immediate benefits to the Class of

13   Toyota's customer, that includes:

14   - Reimbursement for certain reasonable out-of-pocket expenses related to
15     the Recall;

16   - Potential residual distribution payments of up to $250 to each Class
17     Member who submitted out-of-pocket claims related to the Recall and to
18     each Class Member who registered for a residual payment, including
19     those who own or lease Unrecalled Vehicles;

20   - An Extended New Parts Warranty for Recalled Vehicles that complete the
21     Recall;

22   - A robust Subject Vehicle inspection program;

23   - An outreach program to provide additional notification to Class Members
24     of the Recall; and

25   ---

[1]      The essential terms of the Settlement are summarized in Plaintiff's Motion
26   for Preliminary Approval of Class Settlement and Direction of Notice under Fed. R.
     Civ. P. 23(e) ("Motion for Preliminary Approval").  Dkt. No. 747.  The Amended
27   Settlement Agreement, Dkt. No. 756-3 and Exhibits 1-3 of the Amended Settlement
     Agreement, Dkt. No. 747-1 and 756-4, forth in greater detail the rights and
28   obligations of the Toyota Parties.  If there is any conflict between this
     Memorandum and the Settlement Agreement, the Settlement Agreement governs.

- A potential rental car reimbursement, loaner vehicle and outreach program for any related future ZF-TRW ACU recall(s) affecting the Unrecalled Vehicles.

This Settlement should be granted final approval as it more than satisfies the requirements in Rule 23(e), as amended, including the eight factors set forth in *Staton v. Boeing Corp.*, 327 F.3d 938, 952 (9th Cir. 2008), and "the [S]ettlement is not the product of collusion among the negotiating parties" as required in *In re Bluetooth Headset Prod. Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 947 (9th Cir. 2011).

In addition to these substantial benefits, there is a "strong judicial policy favor[ing] settlement, particularly where complex class action litigation is concerned." *Etter v. Thetford Corp.*, No. CV-1406759-JLS (RNBX), 2016 WL 11745096, at *9 (C.D. Cal. Oct. 24, 2016) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  Accordingly, the Court should finally approve the Settlement and dismiss the action as it pertains to the Toyota Defendants.[2]

## BACKGROUND

### A.    Plaintiffs' Allegations and the Parties' Motion Practice

This action alleges violations of consumer protection statutes and breaches of warranties, among other claims, arising out of allegedly defective DS84 Airbag Control Units ("ACUs") that were included in vehicles manufactured by various automotive manufacturers, including Toyota.  Plaintiffs allege that the DS84 ACUs are defective because they contain a defective DS84 with a unique application-specific integrated circuit ("ASIC") which makes the DS84 ACUs less resistant to

---

[2]    As was required by the Preliminary Approval Order, on November 15, 2022, the Settlement Notice Administrator filed the list of opt-outs, the results of the dissemination of the notice and all objections with the Court.  Also pursuant to the Preliminary Approval Order, the Toyota Parties will file supplemental memoranda of law - on November 30, 2022 - in further support of the Settlement which will discuss the results of the Class Notice Program and will respond to the objections and opt-outs.

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

transient electricity than other ACUs. While Plaintiffs believe they have meritorious claims, Toyota Defendants deny liability and the propriety of any litigation class or classes, and it is entirely possible that the Court would find against Plaintiffs. The Toyota Parties have filed multiple motions on a wide range of topics which are outlined in Plaintiffs' Motion for Preliminary Approval, Dkt. No. 747, at Section II.B.

### B.    Discovery, Confirmatory Discovery and Settlement Negotiations

In their Motion for Preliminary Approval, Plaintiffs' Counsel discussed their extensive investigation regarding the facts and the law relevant to the claims and defenses in this case, including the formal and confirmatory discovery exchanged between the Toyota Parties. Dkt. No. 747.

Toyota and Plaintiffs' Counsel engaged in active litigation for over three years when they began conducting settlement negotiations over a year ago (while simultaneously continuing to litigate the case). During that time, the Toyota Parties held numerous settlement meetings, including at least six in-person sessions, and dozens more telephonic and videoconference discussions to continue those negotiations, many of which included the Court-approved Settlement Special Master Juneau.

### C.    Settlement Terms

Under the proposed Settlement, the Toyota Parties have agreed to a settlement amount of $78.5 million in payments and credits (the "Settlement Amount"). The Settlement Amount will fund numerous Settlement benefits for Class Members which include (1) reimbursement for certain reasonable out-of-pocket expenses related to the Recall; (2) potential residual distribution payments of up to $250 per Class Member for all Subject Vehicles, including those that were not part of the Recall; (3) a robust Subject Vehicle inspection program; (4) an Extended New Parts Warranty for vehicles that complete the Recall; (5) an outreach program

to notify Class Members of the Recall; and (6) a potential rental car reimbursement, loaner vehicle, and outreach program for any related future ZF-TRW ACU recall(s) affecting Subject Vehicles.  *See* Settlement Agreement, at § III.

Additional details on the Settlement Terms, including the relief, are included in the Settlement Agreement and Plaintiffs' Motion for Preliminary Approval.  *See generally* Settlement Agreement (Dkt. No. 756-3, 747-1, 756-4) and Plaintiffs' Motion for Preliminary Approval (Dkt. No. 747).

## II.    THE COURT PRELIMINARILY APPROVED THE SETTLEMENT

In the Court's 34-page order granting the motion for preliminary approval of the Settlement, Dkt. No. 770 ("Preliminary Approval Order"), the Court vetted the Settlement based on the requirements specified in Rule 23(e). The Court found that "[a] consideration of the applicable factors demonstrates that the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant preliminary approval."  *See* Preliminary Approval Order, at p. 22 of 34.  The Court carefully evaluated: "Whether the Class Representatives and Plaintiff's Counsel Have Adequately Represented the Putative Class," "Whether the Settlement Was Negotiated at Arm's Length," "Whether the Relief Provided for the Class Is Adequate," and "Whether the Proposal Treats Putative Class Members Equitably Relative to Each Other."  *Id.* at pp. 19-22.

The Court also noted: "[t]he [Class] Notice Program, which is expected to reach at least 90% of the Class with an average frequency of three times, should be effective," and "satisfies the requirements of Rule 23(e)(1)(B)."  *Id.* at pp. 21, 30. The Settlement Notice Administrator has filed a declaration which describes the current status of Class Notice, *see* Dkt. No. 815-2 and will file an updated declaration with the results of Class Notice, a list of the opt-outs, and the objections received by the Court-ordered date of October 30, 2023.  The results of the dissemination of the notice and the Class's reaction to the Settlement will be discussed in detail in Toyota's supplemental memoranda of law in support of final

1  approval.

2  ## LEGAL STANDARD

3  Federal Rule of Civil Procedure 23, as amended, sets forth that "the claims,

4  issues, or defenses of a certified class … may be settled … only with the court's

5  approval."  Fed. R. Civ. P. 23(e).  "Whether to approve a class action settlement is

6  'committed to the sound discretion of the trial judge[,]' who must examine the

7  settlement for 'overall fairness.'"  *Chambers, et al. v. Whirlpool Corp., et al.*, 214

8  F. Supp. 3d 877, 886 (C.D. Cal. Oct. 11, 2016) (citing *Class Plaintiffs v. City of*

9  *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied, 506 U.S. 953 (1992);

10 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

11 Before approving a class-action settlement, Rule 23 of the Federal Rules of

12 Civil Procedure requires the Court to determine whether the proposed settlement is

13 "fair, reasonable, and adequate."  *Kearney, et al. v. Hyundai Motor Am.*, No. SACV

14 09-1298-JST (MLGx), 2013 WL 3287996, *4 (C.D. Cal. June 28, 2013) (citing

15 Fed. R. Civ. P. 23(e)(2)).To determine whether a settlement agreement meets these

16 standards, a district court must consider of the factors set out by *Staton*.  *Id.* (citing

17 *Staton v. Boeing Corp.*, 327 F.3d 938, 959 (9th Cir. 2008)).

18 "In addition to these factors, where 'a settlement agreement is negotiated

19 prior to formal class certification,' the Court must also satisfy itself that 'the

20 settlement is not the product of collusion among the negotiating parties.'" *Id.* (citing

21 *Bluetooth* , 654 F.3d at 946-47 (internal citation and quotations omitted)).

22 "Accordingly, the Court must look for explicit collusion and 'more subtle signs that

23 class counsel have allowed pursuit of their own self-interests and that of certain

24 class members to infect the negotiations.'"  *Id.* (citing *Bluetooth*, 654 F.3d at 947).

25 ## ARGUMENT

26 **A.**   **This Court Has Jurisdiction to Consider and Rule on the Settlement**

27      1.   The Court Has Original Jurisdiction Over All Claims Being

28           Resolved As Part of the Settlement

This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because Plaintiffs' operative Consolidated Amended Class Action Complaint alleges that the amount in controversy in this class action exceeds $5,000,000 dollars, exclusive of interest and costs, and members of the proposed and the plaintiff classes are citizens of states different from Defendants' home states. *See* Dkt. No. 477, ¶ 224; *see also Vasquez v. First Student, Inc.*, No. 14-cv-06760 (ODW), 2014 WL 6837279, at *2 (C.D. Cal. Dec. 3, 2014) (noting that, pursuant to 28 U.S.C.A. § 1332(d)(2), the Class Action Fairness Act provides federal courts original jurisdiction over class actions in which (1) the class consists of at least 100 proposed members; (2) the matter in controversy is greater than $5,000,000 after aggregating the claims of the proposed class members, exclusive of interest and costs; and (3) any member of a class of plaintiffs is a citizen of a State different from any defendant).  In addition, the existence of original jurisdiction authorizes this Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III.").

          2.    <u>The Court Has Personal Jurisdiction Over All Class Members</u>

This Court has personal jurisdiction over Plaintiffs, who are parties to this class action and have agreed to serve as representatives for the Settlement Class. As will be discussed more fully in the Toyota Defendants' Supplemental Brief in Support of Final Approval, the Court also has personal jurisdiction over absent Class Members because due-process compliant notice has been provided to the Class.  The court in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10-ML-02151 (JVS), 2013 WL 3224585, at *4 (C.D. Cal. June 17, 2013), citing to *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 811-12 (1985), held that a court properly exercises personal

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

jurisdiction over absent, out-of-state Class members where the court and the parties have safeguarded absent Class members' right to due process.

The extraordinary notice provided to Class Members will be discussed in further detail in Toyota's Supplemental Memorandum in Support of Final Approval. The notice provided to the Class, combined with the opportunity to object and appear at the Fairness Hearing, fully satisfies due process in order to obtain personal jurisdiction over a Rule 23(b)(3) class. *See Phillips Petroleum Co.*, 472 U.S. at 811-12 (finding that the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing absentees with an opportunity to be heard or an opportunity to exclude themselves from the class).

### 3. Notice Satisfied the Requirements of Rule 23(c) and (e) and Due Process

Under Rule 23(e)(1) and 23(c)(2)(B), the Court must direct the best notice that is practicable under the circumstances in a reasonable manner to all Class Members who would be bound by the proposed Settlement. *See Beltran v. Olam Spices & Vegetables, Inc.*, No. 1:18-CV-01676-NONE-SAB, 2021 WL 1105246, at *4 (E.D. Cal. Mar. 23, 2021) (citing FED. R. CIV. P. 23(e)(1)). Here and pursuant to the Court's Order Re Motion for Preliminary Approval (Dkt. 770), Class Notice is being accomplished through a combination of Direct Mail Notice (via email and U.S. first class mail), Publication Notice, notice through the Settlement website, Long Form Notice, and social media notice. *See* Settlement Agreement, Dkt. 756-3, p. 22. The Settlement Notice Administrator will file the results of the dissemination of the Class Notice Program with the Court by October 30, 2023. Preliminary Approval Order, Dkt. 770, at 33 of 34. Toyota will provide the Court with its discussion of the Class Notice Program, including any objections and opt-outs, in its Supplemental Brief in Support of Final Approval, which will also be filed by the Court-ordered deadline of October 30, 2023. *Id.*, at 33 of 34.

**B.**    **The Settlement Is "Fair, Reasonable, and Adequate" Under the Criteria Discussed in Rule 23(e) and Applied in the Ninth Circuit**

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action. "If preliminary approval is granted, class members are notified and invited to make any objections. Upon reviewing the results of that notification, a court makes a final determination as to whether an agreement is 'fundamentally fair, adequate, and reasonable.'" *See Jimenez v. Allstate Ins. Co.*, No. LACV1008486JAKFFMX, 2021 WL 4316961, at *4 (C.D. Cal. Sept. 16, 2021) (J. Kronstadt) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

The claims of a certified class may be settled only with court approval, and the Court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[3]

The 2018 Committee Notes recognize that, prior to the December 1, 2018 amendment (the "Amendment"), each circuit had developed its own list of factors to be considered in determining whether a proposed class action settlement was fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes. According to the Committee Notes, the Amendment is not intended to displace any such factors, but rather to direct the parties to present the settlement to the court in terms of a shorter list of core concerns by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal. *See id.*

---

[3]    Effective December 1, 2018, Rule 23(e)(2) was amended to provide that the Court may approve the Settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

When evaluating the fairness of a settlement, courts in the Ninth Circuit generally weigh the *Staton* factors, many of which overlap with the requirements set forth in the amendments to Rule 23(e)(2):

1.  the strength of plaintiffs' case;

2.  the risk, expense, complexity, and likely duration of further litigation;

3.  the risk of maintaining class action status throughout the trial;

4.  the amount offered in settlement;

5.  the extent of discovery completed, and the stage of the proceedings;

6.  the experience and views of counsel;

7.  the presence of a governmental participant; and

8.  the reaction of the class members to the proposed settlement.[4]

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).

These factors are "by no means an exhaustive list of relevant considerations," and "[t]he relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026). "The ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *National Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

**C.    <u>The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation.</u>**

The potential weaknesses in Plaintiffs' case and the enormous complexity, expense, and likely duration of further motion and discovery practice and a trial of

---

[4]    *See* footnote 3, *supra*.

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

this litigation weigh in favor of a finding that the Settlement is fair, reasonable, and adequate. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d. 964, 975 (E.D. Cal. 2012) (internal quotation marks omitted) ("In evaluating the strength of the case, a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement agreement].").  If this class action were to proceed, it would undoubtedly be a costly and lengthy process for all Toyota Parties.  "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Id.* at 976.

As the Court has already seen and ruled on in several instances, this litigation involves millions of Class Members and multiple legal claims and defenses.  If this case were to proceed as a litigation class, it would require an enormous outlay of additional time, money, and energy from the Court and the Toyota Parties.  The Court recognized in the Preliminary Approval Order that "while Plaintiffs submit their operative ACAC states valid, cognizable claims, including under RICO, their claims did not survive Toyota's earlier pleading challenge." Dkt. No. 770, at 21 of 34 (citing Dkt. No. 747 at 27). Additionally "litigation could continue for years, with large associated costs." *See id.*  If the litigation does not settle, then those motions and several other related and unfiled motions would need to be heard and decided upon, which includes risk for the Toyota Parties.

The Settlement, which guarantees that Class Members receive substantial recoveries, provides significant advantages over "rolling the dice" and proceeding to final adjudication on the merits—after which the Class might achieve nothing. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-02151, 2013 WL 12327929, at *14, 20 (C.D. Cal. July 24, 2013) (approving class settlement noting, "[s]imply put, Plaintiffs might eventually recover more with continued litigation, but they also might recover nothing").

"Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Barbosa v Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). Moreover, settlement is encouraged in class actions where possible. *See id.* (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which present serious problems of management and expense.")).

As such, and in contrast to this risk, uncertainty, and possible length, it is beneficial to Class Members that, through this Settlement, they will be able to receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *See Whirlpool Corp.*, 214 F. Supp. 3d at 888 (citing *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 526); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (stating the relief provided by settlement is "preferable to lengthy and expensive litigation with uncertain results"). Just as the Court found that this factor weighed in favor of granting preliminary approval, it also weighs in favor of final approval, as the Settlement would avoid all of the lengthy, costly, and uncertain aspects of litigation. *See also, e.g.*, *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 2721452, at *3 (S.D. Cal. July 7, 2010) ("Given these risks, the Court agrees that the actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery through full adjudication."); *Bond v. Ferguson Enters.*, No. 1:09-cv-01662 IEG (AJB), 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources, potentially outweighing any additional recovery obtained through successful litigation.").

1

### D.    The Risk of Maintaining Class Action Status Through Trial.

2      If the litigation were to continue, Toyota would strenuously argue that a

3  litigation class could not be certified here, and, even if a litigation class were

4  certified, Toyota would appeal the decision pursuant to Fed. R. Civ. P. 23(f). The

5  risk of maintaining class action status is magnified as "nationwide class

6  certification under California law or the laws of multiple states is rare." *See*

7  *Whirlpool Corp.*, 214 F. Supp. 3d, at 888 (citing *Mazza*, 666 F.3d at 585 (vacating

8  class certification order because the district court "erroneously concluded that

9  California law could be applied to the entire nationwide class")); *In re Pharm.*

10  *Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) ("While

11  numerous courts have talked-the-talk that grouping of multiple state laws is lawful

12  and possible, very few courts have walked the grouping walk.")).

13      Further, if Plaintiffs were to obtain class certification of a litigation class and

14  defeat a motion for summary judgment, then trial preparation would be necessary to

15  continue to prosecute this litigation, which would be hard-fought, zealously

16  contested, time consuming, uncertain, and expensive. *See Manner v. Gucci*

17  *America, Inc.*, No. 15-cv-00045 (BAS)(WVG), 2016 WL 1045961, *6 (S.D. Cal.

18  March 16, 2016) (approving the settlement where continued litigation would be

19  "expensive, complex, and time consuming"); *In re DJ Orthopedics, Inc. Securities*

20  *Litig.*, No. 01-cv-2238 KRBB, 2004 WL 1445101, *3 (S.D. Cal. June 21, 2004)

21  (finding the settlement to be "a more favorable path because the ultimate results of

22  continued litigation are both uncertain and costly").  The Court in its Preliminary

23  Approval Order noted that Plaintiffs "identified significant risks of continued

24  litigation," which supported the conclusion that the Settlement Agreement is

25  reasonable. *See* Preliminary Approval Order, Dkt. No. 770, p. 21 of 34.  In light of

26  these risks and the certainty that comes with the Settlement relief, this factor weighs

27  in favor of the Settlement.

28

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
                                  FINAL APPROVAL
                                  CASE NO. 2:19-ML-02905-JAK

### E.    The Amount Offered in Settlement.

The Settlement is fair, reasonable, and adequate, particularly when compared to the significant consideration offered in this settlement. In granting preliminary approval of the Settlement Agreement, the Court noted that the Settlement "offers substantial compensation to Class Members" which includes "a total Settlement Amount of $78.5 million, with $65 million to be placed into the Settlement Fund, $3.5 million to be designated for the Outreach Program, and a $10 million credit for Toyota's provision of future loaner vehicles and reimbursements. It also provides for several other benefits that have not presently been quantified, including the Extended New Parts Warranty and the Inspection Program." Preliminary Approval Order, Dkt. No. 770, 21 of 34.

When evaluating the sufficiency of a settlement, the Court must consider the settlement as a whole and not its individual components, such as the direct cash relief provided through the class monetary fund. *See Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."); *see also Sebastian v. Sprint/United Management Co.*, No. 8:18-cv-00757-JLS-KES, 2019 WL 13037010 (C.D. Cal. Dec. 5, 2019) (same).

Further, "the provisions of a class action settlement must be viewed in terms of a range of probabilities, not mere possibilities." *Id.* at 630. The Court's essential function is to assess "whether the settlement falls below the lowest point in the range of reasonableness." *Long v. HSBC USA, Inc*., No. 14 Civ. 6233, 2015 WL 5444651, at *5 (S.D.N.Y. Sept 11, 2015) (citation omitted)."[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes*." Whirlpool Corp.*, 214 F. Supp. 3d at 889 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)) (internal quotation marks omitted). Considering the significant multi-faceted benefits provided to the Class Members

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

1  and the allegations provided in the Amended Master Class Action Complaint, this

2  factor also weighs in favor of granting final approval.

3      **F.**    **The Extent of Discovery Completed and The Stage of The**

4             **Proceedings**

5       The Settlement here should be "presumed fair" as it followed "sufficient

6  discovery and genuine arms-length negotiation." *Id.* (citing *Nat'l Rural*

7  *Telecommc'ns.*, 221 F.R.D. at 528); *Linney v. Cellular Alaska P'ship*, Case Nos.

8  98-cv-3008 DLJ, C–97–0203 DLJ, C–97– 0425 DLJ, C–97–0457 DLJ, 1997 WL

9  450064, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234, 1234 (9th Cir. 1998)

10  ("The involvement of experienced class action counsel and the fact that the

11  settlement agreement was reached in arm's length negotiations, after relevant

12  discovery had taken place create a presumption that the agreement is fair."); *Gomez*

13  *v. USF Reddaway Inc.*, No. LACV1605572JAKFFMX, 2020 WL 10964603, at *4

14  (C.D. Cal. Sept. 21, 2020) ("courts often consider whether the settlement is the

15  product of good faith, arms-length negotiations") (J. Kronstadt).  As noted in the

16  Preliminary Approval Order, "'[t]he extent of the discovery conducted to date and

17  the stage of the litigation are both indicators of [Class] Counsel's familiarity with

18  the case and of [Toyota] Plaintiffs having enough information to make informed

19  decisions." *See* Preliminary Approval Order, Dkt No. 770, at p. 19 of 34 (quoting

20  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008)).

21       As discussed more in Plaintiffs' Motion for Preliminary Approval, even after

22  the settlement discussions began, Toyota provided to Plaintiffs approximately

23  145,000 pages of documents, as well as approximately 4,500 native files including

24  excel spreadsheets, video and audio files relevant to Plaintiffs' claims and the

25  relevant alleged defect in this case. *See* Motion for Preliminary Approval, Dkt. No.

26  747, p. 15.  Furthermore, the Toyota Parties' negotiations lasted over a year,

27  included the production of confirmatory discovery, and involved numerous

28  mediation sessions before Settlement Special Master Juneau.  In light of these

efforts, the Court previously determined that this "factor weighs in favor of preliminary approval of the Settlement Agreement," and it should also therefore weigh strongly in favor of final approval.  *See* Preliminary Approval Order, Dkt. No. 770, at p. 19.

As such, the Toyota Parties here clearly "entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions." *Whirlpool Corp.*, 214 F. Supp. 3d at 889;  *See Nat'l Rural Telecommc'ns*, 221 F.R.D. at 527-28 (finding that the parties' understanding of the factual and legal issues through completion of discovery "strongly militates in favor of the [c]ourt's approval of the settlement"); *Sarkisov v. StoneMor Partners L.P.*, No. 13-cv-04834 (JD), 2015 WL 5769621, at *3 (N.D. Cal. Sept. 30, 2015) (finally approving settlement where "the discovery done in the case was appropriate, and plaintiff's counsel has detailed a sufficiently robust investigation into class and liability issues.").  Thus, this factor also supports approval of the Settlement.

## G.    The Experience and Views of Counsel

The Toyota Parties are represented by counsel who investigated and considered their own and the opposing parties' positions and measured the terms of the Settlement against the risks of continued litigation. The Court referenced Settlement Special Master Juneau's declaration that the negotiations involved "many very qualified attorneys with extensive experience and knowledge in class action law." *See* Preliminary Approval Order, Dkt. No. 770, at p. 19 (citing Dkt. 747-1 ¶ 6).

As stated in *Whirlpool Corp.*, and in language equally applicable here, at this stage, [the parties' counsel] "are most closely acquainted with the facts of the underlying litigation…[and] are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Whirlpool Corp.*, 214 F. Supp. 3d at 889 (citing *Nat'l Rural Telecommc'ns*, 221

1  F.R.D. at 528).  As such, great weight should be accorded to Co-Lead Counsel's

2  judgment in recommending this Settlement for final approval.  *Id.*; *see also*

3  *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has

4  long deferred to the private consensual decision of the parties.").

5      **H.**    **The Presence of a Governmental Participant**

6        There is no government participant in this case.  Therefore, this factor is

7  inapplicable.  *See Wren v. RGIS Inventory Specialists*, No. C-06-05778(JCS), 2011

8  WL 1230826, *10 (N.D. Cal. April 1, 2011), supplemented by 2011 WL 1838562

9  (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered

10  this factor inapplicable to the analysis).

11  **III.**    **SETTLEMENT IS NOT A PRODUCT OF COLLUSION**

12        "A settlement following sufficient discovery and genuine arms-length

13  negotiation is presumed fair," because these conditions "suggest . . . that the Parties

14  arrived at a compromise based on a full understanding of the legal and factual

15  issues surrounding the case." *National Rural Telecommunications v. DIRECTV*,

16  221 F.R.D. at 527-28 (C.D. Cal. 2004) (citations omitted). Here, there can be no

17  question that the Settlement was not a product of collusion, and instead was the

18  result of hard-fought, arm's length negotiation.  In granting preliminary approval,

19  the Court carefully scrutinized the Settlement and noted that Juneau declared that it

20  is his opinion that "the outcome of these mediated negotiations is the result of a

21  fair, thorough, and fully-informed arms-length process between highly capable,

22  experienced and informed parties and counsel." *See* Preliminary Approval Order,

23  Dkt. No. 770, at p. 20 of 34 (citing (citing Dkt. 747-1 ¶ 6).

24        Furthermore, Settlement Special Master Juneau attended numerous mediation

25  sessions with Toyota and Plaintiffs' Counsel.  The assistance of an impartial

26  mediator also strongly suggests the absence of collusion. *See, e.g., Morales v.*

27  *Steveco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at *11 (E.D. Cal.

28  Nov. 10, 2011).

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

In addition, the Settlement Fund is non-reversionary, meaning that all available funds will be distributed to Class Members, unless administratively unfeasible, in which case remaining amounts in the Qualified Settlement Fund will go to an approved *cy pres* recipient.  *See* Settlement Agreement, Dkt. No. 756-3, III.C. ("any funds that remain after all out-of-pocket expense payments and all other payments…have been made, shall be distributed on a *per capita* basis to all Class Members who submitted out-of-pocket claims and to all Class Members who registered for a residual payment only" and if funds still remain "or it is not feasible and/or economically reasonable to distribute the remaining funds to Class Members…, then the balance shall be distributed *cy pres*….").  This further indicates a lack of collusion, supporting final approval.  *Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-cv-01788-JST, 2015 WL 12661922, at *7 (N.D. Cal. Aug. 28, 2015). Simply put, "the risk of collusion among counsel is so small that it is effectively non-existent." *Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at *3 (W.D. Ky. Nov. 20, 2008).

## IV.    <u>THIS COURT SHOULD ISSUE A PERMANENT INJUNCTION</u>

Assuming this Court finally approves the Settlement, the Court should issue a permanent injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283.  The rights and interests of the Class Members and the jurisdiction of this Court will be impaired if Class Members who have not opted out of the Class proceed with other actions alleging substantially similar claims to those asserted in this litigation and/or those claims that are resolved and/or released pursuant to the Settlement Agreement.

Numerous federal courts in this circuit and elsewhere have recognized their power to enjoin class members who did not opt out of a Settlement from filing or continuing to prosecute state court actions that would interfere with the implementation of a finally approved class action Settlement. *See Ugas v. H&R*

*Block Enterprises, LLC*, No. 09-cv-06510 (CAS)(SHX), 2013 WL 12114094, at *1 (C.D. Cal. Nov. 18, 2013); *Guilbaud v. Sprint Nextel Corp.*, No. 13-cv-04357 (VC), 2016 WL 7826649, at *5 (N.D. Cal. Apr. 15, 2016); *In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*, 315 F.3d 417, 441-42 (4th Cir. 2003); *In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002); *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 275 (7th Cir. 1998). The fact that Settlement Class Members have been afforded an opportunity to opt out of the Settlement justifies the issuance of an injunction to aid the Court in its management of the Settlement. *See Ross v. Trex Co.*, No. 09-cv-00670 (JSW), 2013 WL 791229 (N.D. Cal. Mar. 4, 2013).

Courts may issue a permanent injunction pursuant to the "necessary in aid of" exception to the Anti-Injunction Act. 28 U.S.C. § 2283. This exception allows a federal court to effectively prevent its jurisdiction over a settlement from being undermined by pending parallel litigation in state courts. *Hanlon*, 150 F.3d at 1026 ("[A] federal court may intervene and enjoin state court proceedings in three narrow circumstances, one of which includes when it is necessary to protect the court's jurisdiction."). In addition, another exception to the Anti-Injunction Act permits courts to issue injunctions where it is necessary "to protect or effectuate [a court's] judgment[]," such as where a court has finally approved a class action settlement. *McCormick v. American Equity Investment Life Insurance Co.*, No. 2:05–cv–06735–CAS(MANx), 2016 WL 850821, *6 (C.D. Cal. Feb. 29, 2016); *Rotandi v. Miles Indus. Ltd.*, No. C11-02146 (EDL), 2014 WL 12642117, at *3 (N.D. Cal. Jan. 15, 2014) (enjoining all class members who did not opt out from the settlement from "commencing or prosecuting any new action, … against the released party relating to or arising out of the subject matter of the action" under the All Writs Act and the Anti-Injunction Act).

Furthermore, the All Writs Act also permits this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[]." 28 U.S.C. § 1651(a). The

1  All Writs Act permits a federal district court to protect its jurisdiction by enjoining

2  parallel actions by class members that would interfere with the court's ability to

3  oversee a class action settlement. *See Hanlon*, 150 F.3d at 1025; *In re Linerboard*

4  *Antitrust Litig.*, 361 Fed. Appx. 392, 396 (3d Cir. 2010). The Court may issue an

5  injunction as soon as the litigation reaches the settlement stage in order to

6  "effectuate a final settlement." *See Hanlon*, 150 F.3d at 1025. The Court, in its

7  Preliminary Approval Order found that the Toyota "Plaintiffs have identified

8  substantial concerns that the potential filing of copycat lawsuits in other

9  jurisdictions may impose on this Court's jurisdiction and its ability effectively to

10 manage the settlement process." *See* Preliminary Approval Order, Dkt. No. 770, at

11 32 of 34. Similarly, the present circumstances warrant a permanent injunction in

12 order to prevent those Settlement Class Members who did not opt out of the

13 Settlement from interfering with the implementation of the Settlement and

14 jeopardizing the rights and interests of the Settlement Class Members and this

15 Court's jurisdiction. *See, e.g.*, *McCormick*, 2016 WL 850821, *6.

### CONCLUSION

16

17         In light of the arguments above, Toyota respectfully requests that the Court

18 enter an Order granting final approval, pursuant to Federal Rule of Civil Procedure

19 23(e), to the Toyota Parties' proposed class action Settlement and providing such

20 other and further relief as the Court deems reasonable and just.

21

22

23 DATED: September 22, 2023          KING & SPALDING LLP

24                                   */s/ John P. Hooper*

25                                   John P. Hooper (*pro hac vice*)
                                     jhooper@kslaw.com
26                                   Jacqueline Seidel (*pro hac vice*)
                                     jseidel@kslaw.com
27                                   1185 Avenue of the Americas
28                                   New York, NY 10036

1
2

Telephone: 212-556-2220
Facsimile: 212-556-2222

3
4
5
6
7

BOWMAN AND BROOKE LLP
Vincent Galvin (SBN 104448)
vincent.galvin@bowmanandbrooke.com
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: 408-279-5393
Facsimile: 408-279-5845

8
9
10
11

*Counsel for Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc.*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on September 22, 2023, I electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to the e-mail addresses denoted on the Electronic Mail

5  Notice List, and I hereby certify that I have mailed the foregoing document or paper

6  via the United States Postal Service to the non-CM/ECF participants indicated on

7  the Electronic Mail Notice List.

8          I certify under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct. Executed on September 22, 2023.

10

11                                                   */s/ John P. Hooper*
                                                    John P. Hooper

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TOYOTA DEFENDANTS' BRIEF ISO MOTION FOR
FINAL APPROVAL
CASE NO. 2:19-ML-02905-JAK