UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO SETTLEMENT CLASS REPRESENTATIVES (DKT. 815)**

**I.    Introduction**

On August 8, 2019, this multi-district litigation ("MDL") was established and assigned to this Court. Dkt. 1. The MDL concerns airbag control units ("ACUs") that were allegedly defective because they contained a specific component part that is vulnerable to electrical overstress ("EOS"). *Id.* The alleged defect can result in the failure of airbags in a vehicle to deploy during a collision. *Id.*

On July 15, 2020, Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation (collectively, "Toyota" or the "Toyota Defendants") filed the Toyota Defendants' Motion to Stay Based on Primary Jurisdiction and to Sever Pursuant to F.R.C.P. Rule 21 (the "Motion to Sever"). Dkt. 191. On August 20, 2021, the Motion to Sever was denied. Dkt. 363.

On July 27, 2020, eight groups of defendants, including the Toyota Defendants, filed individual motions to dismiss, as well as a joint motion to dismiss. Dkts. 208, 209, 212, 213, 214, 219, 220. Those motions were heard on January 25, 2021, and were taken under submission. Dkt. 323. On February 9, 2022, an order issued granting the motions in part and denying the motions in part. Dkt. 396.

On December 10, 2020, Toyota filed a Motion to Compel Plaintiffs Alejandra Renteria and Mark Altier to Arbitration (the "Motion to Compel Arbitration"). Dkt. 305. On September 27, 2021, the Motion to Compel Arbitration was denied. Dkt. 374.

On May 26, 2022, a Consolidated Amended Class Action Complaint ("ACAC"), which is the operative one, was filed. Dkt. 477.

On May 26, 2022, Plaintiffs and the Toyota Defendants jointly moved to appoint Patrick A. Juneau as Settlement Special Master. Dkt. 473. On June 7, 2022, an order issued granting that motion and appointing Juneau as Settlement Special Master. Dkt. 493.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

On July 14, 2023, Plaintiffs filed a Motion for Preliminary Approval of Class Settlement and Direction of Notice Under Fed. R. Civ. P. 23(E) (the "Preliminary Approval Motion"). Dkt. 747. Through the Preliminary Approval Motion, Plaintiffs sought the following: an order granting preliminary approval of the settlement with Toyota and directing notice to the class under Fed. R. Civ. P. 23(e)(1); appointing settlement class counsel and settlement class representatives for purposes of the settlement only; and scheduling a final approval hearing. *Id.* at 9. Plaintiffs also sought an order enjoining any other related proceedings. *Id.*

A hearing on the Preliminary Approval Motion was held on July 24, 2023. Dkt. 759. At the hearing, certain additional briefing was requested, with the Preliminary Approval Motion to be taken under submission upon its filing. *Id.* On July 25, 2023, both parties filed their supplemental briefing. Dkt. 758, Dkt. 761. On July 31, 2023, an order issued granting the Preliminary Approval Motion, subject to certain modifications (the "Preliminary Approval Order"). Dkt. 770.

On September 22, 2023, Plaintiffs filed a Motion for Final Approval of Class Settlement, and Award of Attorneys' Fees, Expenses, and Service Awards to Settlement Class Representatives (the "Final Approval Motion"). Dkt. 815. On the same day, Toyota filed a Brief in Support of Motion for Final Approval ("Toyota' Brief"). Dkt. 816. On October 30, 2023, Plaintiffs filed a Reply in Support of Motion for Final Approval ("Plaintiffs' Reply"). Dkt. 831. On the same day, Toyota filed a Memorandum of Law in Support of Final Approval and a Memorandum of Law Responding to Objections. Dkts. 832, 833.

A hearing on the Final Approval Motion was held on November 16, 2023, and the matter was taken under submission. For the reasons stated in this Order, the Final Approval Motion is **GRANTED**.

**II.    Background**

    A.    Parties

There are 53 plaintiffs named in the ACAC, all of whom purchased or leased vehicles from the Vehicle Manufacturer Defendants, who are identified below. Dkt. 477 ¶ 64. Eleven of those plaintiffs ("Toyota Plaintiffs" or "Plaintiffs") brought claims against the Toyota Defendants. *Id.*; Dkt. 747-1, Settlement Agreement § II.A.29.[1]

The defendants named in the ACAC ("Defendants") are companies from nine different corporate groups: ZF, STMicro, Kia, Hyundai, Hyundai Mobis, Fiat Chrysler, Toyota, Honda and Mitsubishi. Dkt. 477 ¶ 23. Only the Toyota Defendants are parties to the Settlement for which final approval is sought through the Motion. Dkt. 747 at 10.

Six groups of defendants constitute the "Vehicle Manufacturer Defendants," which are alleged to be "companies that make and sell completed vehicles and their affiliates." Dkt. 477 ¶ 41. The Toyota Defendants constitute one of these groups. There are three groups of defendants that constitute the "Supplier Defendants." *Id.* ¶¶ 25, 42.

---

[1] The 11 Plaintiffs are: Mark Altier, Alejandra Renteria, Samuel Choc, Tatiana Gales, Gary Samouris, Michael Hines, Brent DeRouen, Danny Hunt, Even Green, Joy Davis, and Dee Roberts. Settlement Agreement § II.A.29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

   B.  Substantive Allegations

It is alleged that the Toyota Defendants, as well as other Vehicle Manufacturer Defendants, used defective ACUs in their vehicles. *Id.* ¶¶ 6-10.

It is alleged that ACUs receive and interpret signals from crash sensors located on the front of vehicles. *Id.* ¶ 6. The crash sensors detect activity and send corresponding electrical signals to the ACU. *Id.* When the sensors detect a moderate or severe crash, the ACU issues a command to the vehicle's safety system to deploy its airbags and tighten the seatbelts to protect passengers from an imminent collision. *Id.* Within the ACU, the application-specific integrated circuit ("ASIC") processes the signal from the crash sensors and activates the airbags and seatbelts. *Id.* ¶¶ 6, 10, 473.

It is alleged that when an ACU malfunctions, it can cause airbags and seatbelts to fail to perform their function of restraining and protecting those inside a vehicle. *Id.* ¶ 6. It is alleged that large transients are a threat to the functionality of ACUs. *Id.* ¶ 465. Transients are "short duration, high magnitude voltage peaks, commonly referred to as surges or bursts." *Id.* It is alleged that "[f]or decades, participants in the automotive industry – including all the Defendants in this litigation – have known that transients can be generated inside and outside a motor vehicle" and can cause damage to electrical equipment such as ACUs. *Id.* ¶ 466. Because transients threaten the ability of ACUs and ASICs to activate safety restraints in a collision, a properly designed ACU and ASIC can withstand transients. *Id.* ¶ 471. If an ACU is not protected from transients, it can experience electrical overstress ("EOS"). *Id.* ¶¶ 10, 465-484.

It is alleged that the ACUs at issue in this action are defective because they contain a DS84 ASIC, which is more susceptible than competing ASICs to damage from transients. *Id.* ¶¶ 7, 472-85. It is alleged that the DS84 ACU was commercially attractive to Defendants because it was less expensive, and was marketed as a "cost effective ACU." *Id.* ¶ 567. Because of the alleged ACU defect, the vehicles that contain those ACUs are allegedly "less desirable and less valuable than vehicles with properly functioning passenger safety systems." *Id.* ¶ 1479.

It is alleged that Defendants have known about the alleged defect for several years. *Id.* ¶ 16. It is alleged that the Supplier Defendants and Vehicle Manufacturer Defendants conspired to conceal the ACU defect so that they could maximize their profits. *Id.* ¶¶ 20, 1603-1604, 1744-1745, 1876-1877, 2012-2013, 2143-2144. It is alleged that the Vehicle Manufacturer Defendants made misleading statements to consumers about the vehicles that contain the allegedly defective ACUs. *Id.* ¶¶ 16-19.

It is alleged that Defendants' fraudulent statements caused economic losses to Plaintiffs by causing them to pay more than they otherwise would have for their vehicles, or to purchase vehicles they would not otherwise have acquired. *Id.* ¶¶ 1618-1619, 1759-1760, 1892-1893, 2027-2028, 2158-2159.

**III.**  **Summary of Settlement Agreement**

   A.  Class Definition

The settlement agreement between Plaintiffs and Toyota ("Settlement Agreement" or "Agreement") defines the "Class" as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

> all persons or entities who or which, on the date of the issuance of the Preliminary Approval Order, own/lease or previously owned/leased Subject Vehicles distributed for sale or lease in the United States or any of its territories or possessions. Excluded from this Class are: (a) Toyota, its officers, directors, employees and outside counsel; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers and directors; and Toyota's Dealers and their officers and directors; (b) Settlement Class Counsel, Plaintiffs' counsel, and their employees; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

Settlement Agreement, Dkt. 747-1 § II.A.7.

"Subject Vehicles" are defined as "those Toyota vehicles listed on Exhibit 2 that contain or contained ZF-TRW ACUs and were distributed for sale or lease in the United States or any of its territories or possessions." *Id.* § II.A.45. Exhibit 2 to the Settlement Agreement provides the following list of Subject Vehicles:

**EXHIBIT 2**

**SUBJECT VEHICLES**

**Recalled Vehicles**

| Model Years | Make and Model |
|---|---|
| 2011-2019 | Toyota / Corolla |
| 2011-2013 | Toyota / Corolla Matrix |
| 2012-2018 | Toyota / Avalon |
| 2013-2018 | Toyota / Avalon HV |

**Unrecalled Vehicles**

| Model Years | Make and Model |
|---|---|
| 2012-2017 | Toyota / Sequoia |
| 2012-2019 | Toyota / Tacoma |
| 2012-2017 | Toyota / Tundra |

Dkt. 747-1, Ex. 2.

The Settlement Agreement defines "Released Parties" as follows:

> Toyota, and each of its past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, including the Toyota Dealers, representatives, suppliers, vendors, advertisers, marketers, service providers, distributors and subdistributors, repairers, agents, attorneys, insurers, administrators and advisors. The Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein. Notwithstanding the foregoing, "Released Parties" does not include the Excluded Parties.

*Id.* § II.A.35.

The Settlement Agreement defines "Excluded Parties" as: "other than the Released Parties, all defendants named in the Actions and each of their past, present, and future parents, predecessors, successors, spin-offs, assigns, distributors, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, affiliates, officers, directors, employees, associates, dealers, agents and related companies." *Id.* § II.A.18.

  B.  Relief to Class Members and Other Payments

The Settlement Agreement provides that the total "Settlement Amount" is $78,500,000 less the credit of $10,000,000 for the provision of future loaner vehicles and outreach programs, as described below. *Id.* § II.A.38. The Settlement Amount is allocated as follows:

| Description of Amount | Amount |
|---|---|
| **Outreach Program** | **$3,500,000** |
| **Future Loaner Vehicle and Future Outreach Programs** | **$10,000,000[2]** |
| **Settlement Fund** | **$65,000,000** |
|  **Fees, Costs, and Expenses** | |
|   Service Award to Class Representatives | $27,500 |
|   Award of Attorney's Fees and Expenses to Class Counsel | $25,905,000 |
|   Settlement Notice Administrator Costs | $6,500,000 |
|   Settlement Special Administrator Costs | $500,000 |
|   Taxes | TBD |
|  **Net Settlement Fund Amount to be Distributed to Class** | **$32,067,500** |
|   Payment of Out-of-Pocket Claims | |
|   Residual Cash Payments to Class Members | |
| **Total Settlement Amount** | **$78,500,000** |

  1.  <u>Settlement Fund</u>

The Settlement Agreement establishes a Settlement Fund of $65 million. *Id.* § III.A.2. The Settlement Agreement provides that the parties will establish a Qualified Settlement Fund ("QSF"), pursuant to Internal Revenue Code § 468B to be held by an escrow agent ("Escrow Agent"). *Id.* § III.A.1. The Settlement Agreement provides that Toyota will deposit $65 million, less the notice and settlement administration costs that will be accrued prior to final approval of the Settlement, into the QSF. *Id.* §

---

[2] The Agreement provides that "Toyota shall receive a credit of $10,000,000 against the Settlement Amount for providing Future Loaner Vehicles and Future Outreach Programs." *Id.* § III.H.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

III.A.2. The Settlement Agreement also provides that the QSF is to be used for the following purposes:

> (a) to pay valid and approved claims submitted by eligible Class Members to the Out-of-Pocket Claims Process; (b) to pay notice and related costs; (c) to pay for settlement and claims administration, including expenses associated with the Settlement Special Administrator and his consultants, taxes, fees, and related costs; (d) to make residual cash payments to Class Members, to the extent that there are residual amounts remaining and pursuant to Section III.C of this Agreement; (e) to pay Settlement Class Counsel's fees and expenses as the Court awards; (f) to make service award payments to individual Plaintiffs; and (g) to pay Taxes. The Settlement Fund may also be utilized for additional outreach and notice costs that the Parties jointly agree, after consulting with the Settlement Special Master, is necessary in furtherance of the terms of this Settlement.

*Id.*

### a)   Out-of-Pocket Claims Process

The Settlement Agreement provides that the Out-of-Pocket Claims Process shall be used to pay for the reasonable out-of-pocket expenses of members of the Class ("Class Members") related to the recall of Subject Vehicles. *Id.* § III.B.1. It also provides that if any unrecalled Subject Vehicles become subject to a recall before the claims period expires, the Out-of-Pocket Claims Process shall also apply to such unrecalled vehicles. *Id.* The following types of "reasonable expenses, documented to the extent reasonable and practicable" may be reimbursed from the QSF:

> (a) reasonable unreimbursed rental car expenses (including the rental car reimbursement set forth in Section III.H.1) and transportation expenses, after requesting and while awaiting the Recall Remedy[3] from a Toyota Dealer; (b) reasonable towing charges to a Toyota Dealer for completion of the Recall Remedy; (c) reasonable childcare expenses incurred during the time in which the Recall Remedy is being performed on the Subject Vehicle by the Toyota Dealer; (d) reasonable unreimbursed out of-pocket costs associated with repairing ZF-TRW ACUs; and (e) reasonable lost wages resulting from lost time from work directly associated with the drop off and/or pickup of a Class Member's Recalled Vehicle to/from a Toyota Dealer for performance of the Recall Remedy. The Settlement Special Administrator may not use any funds from the Out-of-Pocket Claims Process for payments to Class Members due to vehicle damage, property damage, or personal injury allegedly from the deployment or non-deployment of an airbag in connection with a ZF-TRW ACU.

*Id.* § III.B.3.

### b)   Residual Distribution

The Settlement Agreement provides that, "[u]nless it is administratively unfeasible, any funds that remain after all out-of-pocket expense payments and all other payments listed in Section III.A.3 have

---

[3] The Settlement Agreement defines the "Recall Remedy" as "the repair and/or countermeasures performed to address the Recall on the Recalled Vehicles." *Id.* § II.A.36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

been made, shall be distributed on a per capita basis to all Class Members who submitted out-of-pocket claims and to all Class Members who registered for a residual payment only." *Id.* § III.C.1. Such payments are limited to no more than $250 per each Class Member, "unless the Parties agree to a higher cap and jointly recommend the higher amount to the Settlement Special Administrator for approval." *Id.* The Settlement Agreement provides that if any funds remain after making such payments, "and if it is not feasible and/or economically reasonable to distribute the remaining funds to Class Members who submitted claims and/or registered," then the balance shall be distributed as *cy pres*, subject to the agreement of the parties and of the Court. *Id.* § III.C.2.

      c)    Fees and Payments Deducted from Settlement Fund

      (1)    <u>Class Representatives' Service Award</u>

The Settlement Agreement does not state an amount that Plaintiffs will seek in service awards to the named Toyota Plaintiffs. The Settlement Agreement states that "Toyota and Co-Lead Counsel represent that they have not discussed the amount of fees and expenses to be paid prior to agreement on the terms of this Agreement." *Id.* § VIII.A. It further states that any fees and expenses approved by the Court will be paid from the Settlement Fund. *Id.*

The Final Approval Motion states that Plaintiffs seek service awards of $2500 for each of the 11 Toyota Plaintiffs. Dkt. 747 at 20.

      (2)    <u>Attorney's Fees Award</u>

The Settlement Agreement does not state the precise amount that Plaintiffs will seek in attorney's fees. The joint declaration of Roland Tellis and David Stellings, co-lead counsel for Plaintiffs ("Co-Lead Counsel Declaration"), states that Plaintiffs will request an award of attorney's fees and expenses of up to 33% of the $78.5 million total settlement amount, i.e., $25,905,000. Co-Lead Counsel Declaration, Dkt. 747-1 ¶ 10.

      (3)    <u>Third Party Administrator Costs</u>

The Settlement Agreement provides that Kroll Notice Media ("Kroll") shall serve as the Settlement Notice Administrator. Dkt. 747-1 § II.A.42. The Preliminary Approval Motion stated that the notice costs in this matter, "plus the costs of supporting the Settlement Special Master in the claims program," will be between approximately $6 million and $6.5 million. Dkt. 747 at 19.

The Settlement Agreement also provides that Patrick A. Juneau and Patrick J. Hron of Juneau David APLC shall serve as the Settlement Special Administrator and are to "oversee and administer the Settlement Fund." *Id.* § II.A.43. Juneau was appointed by the Court as the Settlement Special Master on June 7, 2022. Dkt. 493. In connection with the Preliminary Approval Motion, Plaintiffs submitted a declaration by Juneau ("Juneau Declaration"), which stated that his fees and costs for administering the settlement would be in the range of $300,000 and $500,000. Dkt. 747-3 ¶ 9.

Based on the foregoing, the total costs of administering the settlement are estimated to be in the range of $6.3 million and $7 million. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

    2.  <u>Outreach Program</u>

The Settlement Agreement provides that Toyota will undertake an outreach program (the "Outreach Program") to increase recall participation. *Id.* § III.G.1. The budget for the Outreach Program is $3.5 million. *Id.* § III.G.2. The Agreement provides that Toyota will pay for the Outreach Program separate and apart from the funds Toyota is to deposit into the QSF ("Settlement Fund"). *Id.* If Toyota's expenditures on the Outreach Program are less than $3.5 million, the Settlement Agreement provides that it shall deposit the difference into the QSF to be distributed as residual payments to Class Members. *Id.* § III.G.4.

    3.  <u>Future Rental Car Reimbursement, Loaner Vehicle and Outreach Program</u>

The Settlement Agreement also provides that if any Class Member seeks a recall, after the Effective Date[4], from a Toyota dealer during the Claims Period and is not provided with a courtesy loaner vehicle while repairs are being performed, that Class Member may be eligible for reimbursement from the Settlement Fund for reasonable rental costs. *Id.* § III.H.1. Similarly, if in the future any unrecalled Subject Vehicles become subject to a recall related to the alleged ACU defect, Class Members of such vehicles may request a courtesy loaner vehicle or may submit a claim for reimbursement of reasonable rental car costs from the Settlement Fund. *Id.* The Settlement Agreement also provides that Toyota will provide outreach related to unrecalled Subject Vehicles if those vehicles become subject to a ZF-TRW ACU recall in the future. *Id.* § III.H.2. The Settlement Agreement states that Toyota will "receive a credit of $10,000 against the Settlement Amount for providing Future Loaner Vehicles and Future Outreach Programs." *Id.* § III.H.3. The Settlement Special Administrator will have "the right to audit and confirm such compliance." *Id.*

    4.  <u>Other Settlement Benefits Not Included in Calculation of Settlement Amount</u>

      a)  Inspection Program

The Settlement Agreement provides that if final approval of the settlement is granted, Toyota shall institute the Settlement Inspection Program. *Id.* § III.E.1. The protocol for the Settlement Inspection Program is described in Exhibit 3 to the Settlement Agreement, as modified by the Amendment to Exhibits. Dkt. 747-1, Ex. 3; Dkt. 756-2. The Settlement Inspection Program is to operate for 10 years. Dkt. 747-1 at 67. The Settlement Agreement provides that Toyota will offer an inspection for Subject Vehicles that are involved in a frontal crash and "when Toyota has been notified of a claim that a ZF-TRW airbag control unit ("ZF-TRW ACU"), seatbelt pretensioner, and/or airbag did not deploy." *Id.* The Settlement Agreement provides that, to the extent that the inspection reveals that there is an electrical overstress condition, Toyota will provide the Settlement Special Master with the information related to the inspection. *Id.* at 68. The Settlement Special Master "will be required to provide Toyota's counsel and Co-Lead Counsel a quarterly report providing the number of electrical overstress events along with the model and model year of each such vehicle." *Id.* The revised version of Exhibit 3 to the Settlement Agreement, submitted with the Amendment to Exhibits, clarifies that "[n]othing in this Protocol imposes

---

[4] The Settlement Agreement defines the "Effective Date" as "the latest date on which the Final Approval Order and/or Final Judgment approving this Agreement becomes final." Settlement Agreement § II.A.13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

any obligation upon ZF-TRW." Dkt. 756-4 at 2.

      b)      Extended New Parts Warranty

The Settlement Agreement provides that Toyota will "extend the time period for the service part warranty coverage, which covers any new parts installed pursuant to the Recall." *Id.* § III.F.1. The extended new parts warranty is to last for 12 years, measured from the date that an order granting preliminary approval issues. *Id.*

    C.      Release of Claims

The Settlement Agreement provides for a general release of claims against Toyota by Class Members. *Id.* § VII.B. The release is as follows:

> In consideration for the relief provided above, Plaintiffs and each Class Member, on behalf of themselves and any other legal or natural persons and entities who or which may claim by, through or under them, including their executors, administrators, heirs, assigns, predecessors and successors, agree to fully, finally and forever release, relinquish, acquit, discharge and hold harmless the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, losses and damages and relief of any kind and/or type regarding the subject matter of the Actions, including, but not limited to, injunctive or declaratory relief compensatory, exemplary, statutory, punitive, restitutionary damages, civil penalties, and expert or attorneys' fees and costs, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or unasserted, and whether based on federal, state or local law, statute, ordinance, rule, regulation, code, contract, tort, fraud or misrepresentation, common law, violations of any state's or territory's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, or other laws, unjust enrichment, any breaches of express, implied or any other warranties, violations of any state's Lemon Laws, the Racketeer Influenced and Corrupt Organizations Act, or the Magnuson-Moss Warranty Act, or any other source, or any claims under the Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses 16. C.F.R. § 433.2, or any claim of any kind, in law or in equity, arising from, related to, connected with, and/or in any way involving the Actions.

*Id.*

The Settlement Agreement also provides that, notwithstanding this release, "Plaintiffs and Class Members are not releasing and are expressly reserving all rights relating to claims for personal injury, wrongful death, or actual physical property damage arising from an incident involving a Subject Vehicle, including the deployment or non-deployment of an airbag." *Id.* § VII.D. Additionally, the Settlement Agreement provides that "Plaintiffs and Class Members are not releasing and are expressly reserving all rights relating to claims against Excluded Parties, with the exception of" the released claims described above. *Id.* § VII.E. The Settlement Agreement also provides:

> Plaintiffs expressly understand and acknowledge, and all Plaintiffs and Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Members will be deemed by the Final Approval Order and Final Judgment to acknowledge and waive Section 1542 of the Civil Code of the State of California . . . . Plaintiffs and Class Members expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

*Id.* § VII.I.

      D.    Notice of Settlement

Notice of the settlement was administered by Kroll Settlement Administration LLC (the "Administrator"). Declaration of Jeanne Finegan, Dkt. 815-2 ¶ 1. The Administrator effected both direct mailed notice and additional multimedia efforts to raise awareness about the Settlement Agreement. *Id.* ¶ 3. The Administrator estimated that, as a result of its efforts, it reached over 95% of the class members. *Id.*

On September 22, 2023, the Administrator provided an initial declaration detailing its outreach efforts and the preliminary results of those efforts. *Id.* ¶ 56. On October 30, 2023, the Administrator provided a supplemental declaration that included updated results as of that date. Declaration of Jeanne Finegan, Dkt. 831-2 ¶ 2.

      1.    <u>Individual Notice</u>

To effect direct notice to class members, Toyota provided the Administrator with seven data files that identified 4,906,985 unique Vehicle Identification Numbers ("VINs") corresponding to Subject Vehicles for potential class members. Dkt. 815-2 ¶ 12. Using that data, the Administrator worked with a third-party aggregation service, S&P Global Automotive, to acquire vehicle registration information from the state Departments of Motor Vehicles ("DMVs") for all 50 states and the U.S. territories. *Id.* ¶ 13. S&P Global Automotive also provided contact information for all current and former owners and lessees of Subject Vehicles. *Id.* Between these efforts, the Administrator gathered 8,528,729 contact records for potential class members. *Id.* Of those records, 402,145 records contained neither a physical mailing address nor a valid email. *Id.* ¶ 15.

On August 11, 2023, the Administrator commenced a direct mail notice campaign to potential class members. *Id.* ¶ 19. The Administrator conducted a National Change of Address search to determine the most recent address for each potential class member. *Id.* ¶ 21. The Administrator thereafter mailed the court-approved notice to 4,572,584 potential class members. *Id.* As of October 30, 2023, 216,825 notices had returned as undeliverable as addressed. Dkt. 831-2 ¶ 8. The Administrator re-mailed 2,775 of those notices using forwarding addresses that were maintained on file with the United States Postal Service. *Id.* For the other 214,050 notices that lacked valid forwarding addresses, the Administrator ran an advanced address search and re-mailed notices to the 96,255 updated addresses obtained through that search. *Id.*

On August 14, 2023, the Administrator also commenced a direct email notice campaign to potential class members. Dkt. 815-2 ¶ 16. Of the 3,756,293 initial email notices sent through this campaign, 467,789 emails bounced back. *Id.* ¶ 17. As to those to whom these emails had been sent, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

Administrator sent a second set of emails to 387,333 potential class members with valid secondary emails. *Id.* Of those emails, 40,583 bounced back. *Id.* The Administrator supplemented this direct email notice campaign by sending a postcard to all of those it could not reach by email for whom a valid mailing address was available. *Id.*

Following a conference with Class Counsel, on October 29, 2023, the Administrator sent a "Reminder Email Notice" to the 3,552,278 email addresses on file for potential class members who received the initial email notice and had not yet filed a registration/claim form. Dkt. 831-2 ¶ 9. As of October 30, 2023, 97,237 of those emails bounced back. *Id.*

   2.  <u>CAFA Notice</u>

CAFA requires that defendants serve notice on appropriate federal and state officials of a proposed class action settlement within ten days of the filing of a motion for preliminary approval. 28 U.S.C. § 1715(b). The Preliminary Approval Motion was filed on July 14, 2023. Dkt. 747. The CAFA Notice was sent on July 18, 2023. Dkt. 815-2 ¶ 11. The Administrator served the required notice and accompanying materials on the appropriate official of each State and the appropriate federal official. *Id.*

   3.  <u>Settlement Website</u>

On August 11, 2023, the Administrator established a case-specific website for this action at the URL www.airbagcontrolunitsettlement.com (the "Website"). *Id.* ¶ 4. The Website provides comprehensive information about the Settlement Agreement, as well as answers to frequently asked questions, contact information for the Administrator and Class Counsel, key dates, and links to important documents, including the Settlement Agreement and the Motion for Preliminary Approval. *Id.* The Website provides a "lookup feature" through which potential class members can input their VIN to determine whether their vehicle is eligible for benefits under the Settlement Agreement. *Id.* ¶ 5. In addition, the Website offers an online registration/claim form, that class members can use to submit claims directly, as well as a downloadable form for class members to submit claims by mail. *Id.* ¶ 6.

As of October 30, 2023, the Website had tracked a total of 975,820 unique users who registered 2,585,916 page views. Dkt. 831-2 ¶ 11.

   4.  <u>Publication and Media Notice</u>

The Administrator supplemented its direct notice effort and Website with supplemental publication and media efforts that it conducted during August and September 2023. Dkt. 815-2 ¶ 25. *First*, the Administrator published a notice in *People Magazine*, in English with a Spanish sub-headline. *Id.* ¶ 27. *Second*, the Administrator published a notice in eight territorial newspapers, including *Pacific Daily News*, *Samoa News* and *Virgin Island Daily News*, along with banner advertising on the websites of those newspapers. *Id.* ¶ 29. *Third*, the Administrator implemented internet display banner advertisements, in both the United States and U.S. territories, and targeted those advertisements to potential class members based on data sourced from dealership and service department records. *Id.* ¶ 34. *Fourth*, the Administrator implemented social media advertisements across Facebook, Instagram and YouTube that targeted individuals who "liked" or "followed" Toyota groups and pages. *Id.* ¶ 36. *Fifth*, the Administrator issued a press release over PR Newswire's US1 newsline about the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

*Id.* ¶ 40. *Sixth,* the Administrator provided geotargeted online display and social media advertisements in both English and Spanish to all California, New Hampshire and Pennsylvania residents over the age of 18. *Id.* ¶¶ 42–47.

As a result of these efforts, the Administrator estimated that it served more than 30 million online and social media impressions across the United States and U.S. territories. *Id.* ¶ 39. Moreover, on October 25, 2023, the Administrator commenced a supplemental digital media notice campaign that is to continue through November 24, 2023. Dkt. 831-2 ¶¶ 10–11.

        5.      <u>Additional Outreach Efforts</u>

The Administrator made other efforts to enable class members to receive individualized assistance and ask questions. *First*, the Administrator established a dedicated email address, info@airbagcontrolunitsettlement.com, to receive and respond to class member inquiries. Dkt. 815-2 ¶ 8. *Second*, the Administrator established a 24-hour, toll-free telephone line that class members can call to obtain information about the settlement. *Id.* ¶ 9. During business hours, the line is staffed by operators who are trained to answer questions about the settlement. *Id.*

As of September 21, 2023, the email address had received 465 emails. *Id.*[5] As of October 30, 2023, the telephone line had received 19,377 calls. Dkt. 831-2 ¶ 12.

        6.      <u>Results</u>

The deadline for submitting a request for exclusion or an objection was October 20, 2023. Dkt. 815-2 ¶ 51. The deadline for filing a claim for inclusion in the class is December 16, 2023. *Id.* ¶ 50.

As of October 30, 2023, the Administrator had received 272,716 registration/claim forms, of which 272,175 were submitted electronically and 541 were submitted via mail. Dkt. 831-2 ¶ 3. As of the same date, the Administrator had received 67 timely requests for exclusion. *Id.* ¶ 13; *see* Dkt. 831-2, Ex. B.[6] The Administrator continues to receive and process registration/claim form submissions and will continue to report to Class Counsel on the status of claim intake and review. *Id.* ¶ 4.

**IV.**    <u>**Analysis**</u>

      A.      Class Certification

The Preliminary Approval Order analyzed whether conditional certification of the Settlement Class was appropriate. Dkt. 770 at 13–16. That analysis, which is incorporated by this reference, was the basis for granting conditional certification of the Settlement Class. The analysis, and the resulting outcome, have not changed. Dkt. 815 at 29–36. Therefore, the Final Approval Motion is granted as to certification of the Settlement Class.

---

[5] The Administrator did not provide an update on emails that had been sent to the dedicated case-specific email address as of October 30, 2023. *See* Dkt. 831-2.

[6] Class members were not instructed to submit objections, if any, to the Administrator. However, as of October 30, 2023, the Administrator had received zero objections. *Id.* ¶ 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

B. Final Approval of the Settlement agreement

1. <u>Legal Standards</u>

Rule 23(e) requires a two-step process in considering whether to approve the settlement of a class action. Fed. R. Civ. P. 23(e). *First*, in the preliminary approval process, a court must make a preliminary determination as to whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). At this stage, "the settlement need only be potentially fair." *Id.*

*Second,* if preliminary approval is granted, class members are notified and invited to make any objections. Upon reviewing the results of that notification, a court makes a final determination as to whether an agreement is "fundamentally fair, adequate, and reasonable." *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following non-exclusive factors, which originally were described in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), are among those that may be considered during both the preliminary and final approval processes:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the amount offered in settlement;
(4) the extent of discovery completed and the stage of the proceedings;
(5) the experience and views of counsel;
(6) any evidence of collusion between the parties; and
(7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process. *Acosta*, 243 F.R.D. at 386.

The recently amended Fed. R. Civ. P. 23(e) provides further guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. A court must consider whether:

(A) the class representatives and Plaintiff's counsel have adequately represented the class;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3);[7] and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. *See id.* As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. Advisory Committee Comments to 2018 Amendments to Rule 23.

        2.      <u>Application</u>

The Preliminary Approval Order addressed many of the relevant factors. Dkt. 770 at 19–22. None of the facts and circumstances as to any of them has changed since the issuance of the Preliminary Approval Order. Dkt. 815 at 19–26. However, because the Administrator has completed the notice process, the reaction of Settlement Class Members to the proposed settlement may now be considered in evaluating whether it is fair and appropriate.

Of the 272,716 claim forms that were received by the Administrator, 67 were from individuals who opted out of the settlement, and three were from individuals who objected to the settlement. This result reflects a low proportion of opt outs and objections, which "indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (collecting cases); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (quoting *Nat'l Rural Telecomms. Corp. v. DirecTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004))); *Kearney, et al. v. Hyundai Motor Am.*, No. CV-09-1298-JST, 2013 WL 3287996, at *7 (C.D. Cal. June 28, 2013) (J. Staton) (16 objections and 179 requests for exclusion out of 646,834 recipients of notice were "infinitesimal" figures).

In addition, the objections that were received do not demonstrate that the settlement is fundamentally unfair or unreasonable.

---

[7] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

    a)  Kochenderfer Objection

The first objection, submitted by Rebecca Kochenderfer (the "Kochenderfer Objection"), focuses on the requested fee award by Class Counsel of approximately $25 million. Dkt. 831-1. Kochenderfer, who implies that Class Counsel have inflated their hours billed on this matter, argues that the requested fee award is "patently outrageous" and requests that a third party audit Class Counsel's billing records in order to verify their accuracy. *Id.* at 2. This objection is unpersuasive because, pursuant to this Court's Standing Order, Class Counsel has provided specific and comprehensive time entries detailing their work on this matter, including "all of the tasks on which [each] attorney worked, the hours worked on each task, and the hourly rates of each attorney." *See* Standing Order § 10(e). Based on this evidence, and as found in the Preliminary Approval Order, Class Counsel's requested fee award is reasonable and sufficiently supported, as well as consistent with fee awards in similar matters. Kochenderfer raises no other issues as to the fairness, adequacy and reasonableness of the Settlement Agreement. For these reasons, the Kochenderfer Objection does not weigh against final approval.

    b)  Haase and Kress Objection

The second objection was submitted by Diane Haase and John Kress (the "Haase and Kress Objection"), who are in turn represented by John Kress, Steve Miller and Jonathan Fortman. Dkt. 827. As a preliminary matter, the objectors' attorneys are serial objectors who are specifically "well-known and recognized by Courts for routinely filing meritless objections to class action settlements." *Roberts v. Electrolux Home Products, Inc.*, No. CV-12-1644-CAS, 2014 WL 4568632, at *15 (C.D. Cal. Sept. 11, 2014) (listing cases in which objections by Kress, Miller and Fortman were made that did not have merit); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 890 (C.D. Cal. 2016) (describing Kress, Miller and Fortman as "serial objectors who are well-known for routinely filing meritless objections to class action settlements for the improper purpose of extracting a fee rather than to benefit the Class"). Objections lodged by frequent objectors are generally given less weight because they "levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors." *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 n.3 (N.D. Cal. 2012) (internal quotations and citation omitted).

The Haase and Kress Objection is substantively unpersuasive. The objectors argue that the settlement is improper because the parties do not identify the *cy pres* beneficiaries to which remaining funds will be donated and because the settlement is "tantamount to a coupon settlement." Dkt. 827 at 4–7, 8–13. These arguments are unsupported by case law. There is no obligation to specify a *cy pres* beneficiary at present because the purpose of *cy pres* is to delay the selection of a beneficiary until an appropriate time when all relevant information is available and a suitable selection may be made. Here, that time will present itself when "the claims period has expired and the amount of the unclaimed fund is known." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990). Further, the Settlement Agreement does not, as would a coupon settlement, require class members to "hand over … more money to obtain the benefits of the Settlement." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *28 (N.D. Cal. Aug. 17, 2018). Therefore, Haase and Kress's objections to the structure of the settlement do not alter the conclusion reached in the Preliminary Approval Order that the settlement is fundamentally fair.

Haase and Kress also contest Class Counsel's requested fee award, arguing that the award is too high,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

that it is unsupported by precedent and that it is the product of an unfair "clear sailing arrangement" by which Toyota has agreed not to object to Class Counsel's fee request. Dkt. 827 at 7–8, 13–18. As the Preliminary Approval Order expressly found, there is no "clear sailing arrangement" here because Toyota has expressly "reserve[d] its right to oppose [Class Counsel's] motion for attorney's fees." Dkt. 770 at 20; *see* Dkt. 747-1 § VIII.A. Moreover, for the reasons discussed in the Preliminary Approval Order, Class Counsel's requested fee award is not only reasonable and well-supported but consistent with established precedent in this Circuit. *See* Dkt. 770 at 23–29. For these reasons, the Haase and Kress Objection does not weigh against final approval.

For the foregoing reasons, there have been no material changes with respect to any of the relevant circumstances since the issuance of the Preliminary Approval Order. Therefore, the same determinations are warranted at this time with respect to the fairness analysis. Consequently, the distribution of the settlement funds in the manner set forth in the Preliminary Approval Order is approved.

    C.    Incentive Award

        1.    <u>Legal Standards</u>

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

    1) the risk to the class representative in commencing suit, both financial and otherwise;
    2) the notoriety and personal difficulties encountered by the class representative;
    3) the amount of time and effort spent by the class representative;
    4) the duration of the litigation and;
    5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

        2.    <u>Application</u>

Plaintiffs request incentive awards in the amount of $2500 for each of the 11 named Toyota Plaintiffs. Dkt. 815 at 44. The Preliminary Approval Order analyzed whether these awards were appropriate in light of the relevant factors. Dkt. 770 at 22–23. It concluded that incentive awards in the amount of $2500 were reasonable but stated that this determination would be subject to de novo review in connection with a motion for final approval. *Id.* at 23.

Since that time, there have been no material changes that would affect the analysis in the Preliminary Approval Order. *See* Dkt. 815 at 55–56. Plaintiffs continue to maintain that each of the Toyota Plaintiffs spent approximately 20 hours on this litigation and that each has dedicated significant efforts over the past four years to protect and further the interests of the Settlement Class. *Id.* Therefore, for the reasons stated in the Preliminary Approval Order, incentive awards of $2500 to each of the named Toyota Plaintiffs are appropriate and approved.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

      D.      Attorney's Fees and Costs

           1.      Legal Standards

Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount*." Id.* "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965.

District courts have discretion to choose between a lodestar method and the percentage method to evaluate the reasonableness of a request for an award of attorney's fees in a class action. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). A court may also choose one method and then perform a cross-check with the other. *See, e.g.*, *Staton*, 327 F.3d at 973.

When using the percentage method, a court examines what percentage of the total recovery is allocated to attorney's fees. Usually, the Ninth Circuit applies a "benchmark award" of 25%. *Id.* at 968. However, awards that deviate from the benchmark have been approved. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("Ordinarily, . . . fee awards [in common fund cases] range from 20 percent to 30 percent of the fund created."); *Schroeder v. Envoy Air, Inc.*, No. CV-16-4911-MWF-KSx, 2019 WL 2000578, at *7 (C.D. Cal. May 6, 2019) (internal citations omitted) ("[T]he 'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors,'" including "'(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.'")

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Such factors "'includ[e] the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (quoting *In re Bluetooth Headset Prods.*, 654 F.3d at 941–42). A "district court *must* apply a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky." *Id.* at 1166 (quoting *Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016)) (internal quotations omitted).

           2.      Application

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

In the Preliminary Approval Motion, Plaintiffs stated that they anticipated filing a request for a fee award of $25,905,000, i.e., $25,000,000 in attorney's fees and $905,000 in expenses. Dkt. 750 at 13. The Preliminary Approval Order analyzed this request with respect to both the percentage and lodestar methods. *First*, with respect to the percentage method, it determined that the total recovery to the class could reasonably be calculated to have a value of at least $78.5 million and that Class Counsel's requested award, constituting 33% of that value, was potentially warranted. Dkt. 770 at 23–26. *Second*, with respect to the lodestar method, the Preliminary Approval Order determined that Class Counsel's hours and hourly rates were reasonable, which supported the application of a multiplier between 2.35 and 2.53. *Id.* at 26–29. Based on these considerations, the Preliminary Approval Order concluded that an award in the range of $25,155,000 and $25,905,000 was reasonable. *Id.* at 29. It directed Class Counsel to file further briefing and evidence to resolve remaining issues relating to the award, including the total benefit of the settlement and the reasonableness of counsel's rates. *Id.*

As part of the Final Approval Motion, Class Counsel request an aggregate fee award of $25,472,730.40, consisting of $25,000,000 in attorney's fees and $472,730.40 in expenses. Dkt. 815 at 14. This total is less than Plaintiffs originally anticipated. *See* Dkt. 750 at 13. In support of the request, Plaintiffs provide additional evidence, including a declaration from a warranty valuation expert who has opined on the market value of the Extended New Parts Warranty (*see* Declaration of Kirk D. Kleckner ("Kleckner Decl."), Dkt. 815-3) and another declaration from an expert on appropriate fee awards in this Circuit (*see* Declaration of Brian T. Fitzpatrick ("Fitzpatrick Decl."), Dkt. 815-4). Class Counsel have also provided documentation of their hourly rates and hours charged in connection with this matter.

      a)      Percentage Approach

The Preliminary Approval Order concluded that the Settlement Amount could reasonably be calculated to have a value of at least $78.5 million, including the Settlement Fund, the $10 million credit for future loaner vehicles and outreach and the $3.5 million to be spent on the current Outreach Program." Dkt. 770 at 26. Class Counsel's requested award of $25,472,730 would represent 32.4% of that amount. *See* Dkt. 815 at 37. The Preliminary Approval Order found that an award above the Ninth Circuit's 25% benchmark "may be warranted here, where favorable results were achieved for the Class, substantial non-monetary benefits will be conferred, and counsel have undertaken significant risks in pursuing this litigation over the course of several years." Dkt. 770 at 26.

Plaintiffs now argue that attorney's fees should be calculated based on an additional $69.3 million in economic value to the class stemming from the Settlement Agreement's Expended New Parts Warranty. Dkt. 815 at 13 n.2. Under that warranty, Toyota will extend, by 12 years, "the time period for the service part warranty coverage, which covers any new parts installed pursuant to the Recall." Dkt. 747-1 § III.F.1. Plaintiffs argue that the long-term benefits of this program, for class members who obtain recall repairs for recalled vehicles, contribute to its overall $69.3 value, a figure that is "conservative" because "it does not include the potential value attributed to the extended warranty for the unrecalled Toyota Class Vehicles." Dkt. 815 at 13 n.2. In support of its valuation, Plaintiffs have provided the declaration of Kirk D. Kleckner ("Kleckner"), an economist and warranty expert with prior experience providing valuations in large automotive class action settlements. *Id.* at 15; *see, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 10-ML-2151-J, 2013 WL 12327929, at *9 n.10 (C.D. Cal. July 24, 2013) (Kleckner's warranty valuation was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

"both reliable and relevant"); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-MD-02777-EC, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019).

Assuming, *arguendo*, that the Extended New Parts Warranty contributes an additional $69.3 million in potential value to the class, Class Counsel's requested fee award would represent 16.9% of the overall $147.8 million recovery, which is well below the 25% benchmark. However, it is not necessary to resolve the question of the warranty's valuation because, as the Preliminary Approval Order already stated, an award over the 25% benchmark is reasonably warranted in light of Class Counsel's successful representation over a four-year period, the significant monetary and non-monetary benefits achieved for the class through the settlement, and the financial risk incurred by Class Counsel in prosecuting this action. *See* Dkt. 770 at 23–26. Therefore, whether Class Counsel's fee award represents 32.4% of the $78.5 million Settlement Amount calculated in the Preliminary Approval Order, or 16.9% of the $147.8 million value proffered in the Plaintiffs' Final Approval Motion, the fee award is reasonable under the percentage method.

    b)    Lodestar Cross-Check

The total lodestar to date is $10,820,547.22. Dkt. 815 at 45. Including anticipated future work to implement and protect the settlement through the three-year claims period, Class Counsel expect that their final lodestar will total $11,520,547.22. *Id.* at 45-46.

As found in the Preliminary Approval Order, Class Counsel's hours are reasonable because their approach to performing work on this matter was generally efficient. Dkt. 770 at 28. The Preliminary Approval Order also found that, because Class Counsel's hourly rates were capped by the CBO Order, those rates were reasonable. *Id.* In support of the Final Approval Motion, Class Counsel have provided additional evidence to establish that their rates are fair in light of the experience of counsel as well as the amounts charged by other counsel who have performed similar work in class action matters in this District and Circuit. *See* Dkt. 815 at 47–50. Therefore, Class Counsel's lodestar is accepted as reasonable and appropriate without adjustment.

Accepting Class Counsel's lodestar, and assuming that Class Counsel's anticipated future hours are included in the lodestar, the requested fee award would result in a multiplier of 2.21. If the anticipated future hours are not included, the multiplier would be 2.35. In support of these multipliers, Plaintiffs have provided the declaration of Fitzpatrick, a law professor and expert on attorney's fees in class action settlements. Dkt. 815 at 26. He has opined that Class Counsel's requested multipliers are below the lodestar multipliers that are typical in complex cases with large recoveries like the settlement here. Dkt. 815-4 ¶ 29. The Preliminary Approval Order also previously determined that the relevant factors support a multiplier between 2.35 and 2.53. Dkt. 770 at 29. Therefore, Class Counsel's updated lodestar, with a maximum multiplier of 2.35, is reasonable.

    c)    Conclusion on Attorney's Fees

The evidence submitted in connection with the Final Approval Motion shows that, to date, the attorney's fees requested by Plaintiffs' counsel are reasonable. Further, consistent with the determination in the Preliminary Approval Order, the requested fee award will likely constitute a reasonable percentage of the total value of the recovery to the class. Therefore, based on a consideration of the range that was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA ML 19-2905 JAK (MRWx) | Date | November 28, 2023 |
|---|---|---|---|
| Title | In Re: ZF-TRW Airbag Control Units Products Liability Litigation | | |

approved in the Preliminary Approval Order, the appropriateness of the application of a multiplier and the expert testimony that has been presented in connection with the Final Approval Motion, it is determined that Class Counsel's requested fee award of $25,472,730.40 is appropriate and approved.

      E.      Request for Permanent Injunction

The Preliminary Approval Order granted in part Plaintiffs' request for a preliminary injunction pursuant to the All Writs Act, 28 U.S.C. § 1615(a). Dkt 770 at 32. It temporarily stayed and suspended all proceedings in this action, other than proceedings necessary to carry out or enforce the Settlement Agreement or the Preliminary Approval Order, until further order from this Court. *Id.* It further enjoined potential Class Members from challenging in any action or proceeding any matter covered by the Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval. *Id.*

Plaintiffs now request a permanent injunction pursuant to the All Writs Act. Dkt. 816 at 23. They argue that the rights and interests of class members will be impaired if class members who did not opt out of the class proceed with other actions alleging substantially similar claims to those asserted in this litigation. *Id.* They argue that district courts in this Circuit have issued permanent injunctions under similar circumstances. *Id.* at 23-25.

As determined by the Preliminary Approval Order, Plaintiffs have identified substantial issues that the potential filing of similar lawsuits in other jurisdictions may impede the jurisdiction of this Court to manage the settlement process. Dkt. 770 at 32. However, the concerns that were presented in issuing a preliminary injunction in connection with preliminary approval are no longer relevant. *See id.* at 31-32; *see, e.g.*, *Pedraza v. Pier 1 Imports U.S. Inc*, No. 16-CV-01447-JLS, 2017 WL 11617994, at *2 (C.D. Cal. Sept. 26, 2017) ("The leading treatise on class actions counsels against antisuit injunctions at the preliminary approval stage '[i]n all but very rare circumstances.'"). District courts often grant permanent injunctions at the final approval stage where, as here, oversight of a comprehensive settlement may be impeded by parallel state actions. *See, e.g.*, *In re Smashburger IP Holder LLC*, No. 19-CV-00993-JAK, 2023 WL 6626117, at *2 (C.D. Cal. Oct. 10, 2023); *Ugas v. H&R Block Enterprises, LLC*, No. 09-CV-06510-CAS, 2013 WL 12114094, at *1 (C.D. Cal. Nov. 18, 2013). An injunction is also appropriate here because class members were given an opportunity to opt out of the settlement. *See generally Ross v. Trex Co.*, No. 09-CV-00670-JSW, 2013 WL 791229 (N.D. Cal. Mar. 4, 2013). Therefore, the issuance of a permanent injunction is appropriate to assist the Court's continuing jurisdiction over this action. This determination is without prejudice to an application by a non-party to this litigation for leave to file an action in another court.

**V.**      **Conclusion**

For the reasons stated in this Order, the Final Approval Motion is **GRANTED**.

**IT IS SO ORDERED.**

                                                                                                 _____ : _____

Initials of Preparer    tj